**OBJECTION DEADLINE: March 4, 2019 at 4:00 p.m. (EST)**

**BROWN RUDNICK LLP**
Edward S. Weisfelner
Howard S. Steel
7 Times Square
New York, NY  10036
Tel:  212-209-4800
eweisfelner@brownrudnick.com
hsteel@brownrudnick.com

**STUTZMAN, BROMBERG, ESSERMAN
& PLIFKA, A PROFESSIONAL
CORPORATION**
Sander L. Esserman
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*

**HAGENS BERMAN
SOBOL SHAPIRO LLP**
Steve W. Berman (admitted pro hac vice)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
Elizabeth J. Cabraser
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the MDL Court*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------X
                                        :
In re:                                  :        Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,     :        Case No.: 09-50026 (MG)
        f/k/a General Motors Corp., et al.,  :
                                        :
                      Debtors.          :        (Jointly Administered)
------------------------------------------------------------X
```

**THE ECONOMIC LOSS PLAINTIFFS' OBJECTION TO GENERAL
MOTORS LLC'S MOTION PURSUANT TO SECTION 105(A) OF
THE BANKRUPTCY CODE TO (A) STAY PROCEEDINGS RELATING
TO THE PROPOSED SETTLEMENT AND (B) GRANT RELATED RELIEF**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND ..................................................................................................9

I.    New GM's Fabian Strategy Of Delay Has Reached Its Apex With The Stay
Motion.................................................................................................... 9

II.    The Proposed Settlement Timeline Anticipates And Accommodates Judge
Furman's Forthcoming Rulings On Substantive Issues Pending In The MDL. ............... 11

OBJECTION ......................................................................................................13

I.    New GM's Indefinite Stay Would Significantly Prejudice Plaintiffs, The GUC
Trust And Old GM's Unsecured Creditors, While Denying The Stay Will Not
Unduly Prejudice New GM. ......................................................................... 13

II.    The Amendments To Rule 23 Reinforce Longstanding Practice In This Circuit
Regarding A Court's Role In Initially Evaluating A Proposed Settlement. .................... 16

III.    New GM Vastly Overstates The Overlap Between Issues Being Decided In The
MDL Action And The Relevant Issues To Be Decided Here During The
Preliminary Approval Stage........................................................................... 19

    A.    This Court Can Find The Proposed Classes Likely Satisfy The Rule 23(a)
Elements Without Considering Issues Being Decided In The MDL Court.......... 20

        1.    This Court Can And Should Find That The Proposed Class
Representatives Are Adequate. ................................................. 20

        2.    The Court Can And Should Find That Common Questions Exist........... 22

        3.    This Court Can Find That The Proposed Classes Likely Satisfy
The Rule 23(b)(1)(B) Elements Without Considering Issues Being
Decided In The MDL Court...................................................... 24

            a.    The Fund Is A Classically Limited Fund  Because It Is
Inadequate To Satisfy All Claims, And The Proposed
Settlement Provides Fair And Adequate Relief. ........................... 24

            b.    Class Members Will Be Treated Equitably. ................................ 28

        4.    In The Alternative, At This Preliminary Stage, The Economic Loss
Plaintiffs Have Demonstrated That The Court Will Likely Be Able
To Certify Limited Fund Classes Under Rule 23(b)(1)(A). ..................... 30

IV.    New GM's Argument That The MDL Court Is Deciding Constitutional Issues Is
       False And, Even If True, Should Not Impact The Timing Here...................................... 31

       A.    New GM's *Daubert* Challenge. ............................................................................ 31

       B.    New GM's Reliance Challenge. ........................................................................... 33

       C.    New GM's Attempt To Simulate A Standing Issue In Connection With The
             Adequacy Of The Recalls Also Fails..................................................................... 34

V.     The Court Should Approve The Form And Manner Of The Proposed Notice And
       Permit Plaintiffs To Prepare For Mailing. ........................................................................ 34

CONCLUSION.....................................................................................................................35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams Extract Co. v. Pleasure Hours, Inc. (In re Corrugated Container Antitrust Litig.)*,
  643 F.2d 195 (5th Cir. 1981) .................................................................................................21

*Altrichter v. Inamed Corp. (In re Silicone Gel Breast Implant Products Liab. Litig.)*,
  2:97-CV-11441, 2010 WL 11506713 (N.D. Ala. May 19, 2010) ................................9, 25, 29

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013).................................................................................................................5

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002) ..............................................................................................1

*In re Baldwin-United Corp.*,
  55 B.R. 885 (Bankr. S.D. Ohio 1985).....................................................................................24

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ..................................................................................................1

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*,
  290 F.R.D. 409 (S.D.N.Y. 2012) ............................................................................................22

*Broomfield v. Craft Brew Alliance, Inc.*,
  No. 17-cv-01027, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018)...........................................26

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) ................................................................................................23

*Chamberlan v. Ford Motor Co.*,
  223 F.R.D. 524 (N.D. Cal. 2004)............................................................................................23

*In re Chemtura Corp.*,
  448 B.R. 635 (Bankr. S.D.N.Y. 2011).................................................................................24, 25

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)...............................................................................................16, 17

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)................................................................................................................13

*In re ConAgra Foods Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ......................................................................................26

*In re Curtis*,
40 B.R. 795 (Bankr. D. Utah 1984) ........................................................................15

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)...................................................................................32

*In re Dial Complete Mktg. & Sales Practices Litig.*,
320 F.R.D. 326 (D.N.H. 2017) ..............................................................................26

*Doe v. Karadzic*,
192 F.R.D. 133 (S.D.N.Y. 2000) ...........................................................................27

*Dover v. British Airways, PLC (UK)*,
321 F.R.D. 49 (E.D.N.Y. 2017)..............................................................................33

*Dzielak v. Whirlpool Corp.*,
No. 2:12–0089, 2017 WL 1034197 (D.N.J. Mar. 17, 2017)...................................26

*Elliott v. General Motors LLC (In re Motors Liquidation Co.)*,
829 F.3d 135 (2d Cir. 2016)...................................................................................14

*Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litig.)*,
765 F.2d 343 (2d Cir. 1985).....................................................................................6

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
326 F.R.D. 592 (N.D. Cal. 2018) ...........................................................................26

*In re Ford Motor Co. Ignition Switch Products Liab. Litig.*,
174 F.R.D. 332 (D.N.J. 1997).................................................................................33

*Ge Dandong v. Pinnacle Performance Ltd.*,
No. 10 Civ. 8086, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) .....................21, 23

*In re Gen. Motors LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y.), *modified on reconsideration*, 2017 WL
3443623 (S.D.N.Y. Aug. 9, 2017) ...........................................................................8

*In re Gen. Motors LLC Ignition Switch Litig.*,
339 F. Supp. 3d 262 (S.D.N.Y. 2018)..................................................................4, 8

*In re Gen. Motors LLC Ignition Switch Litig.*,
No. 14-md-2543, 2016 WL 3920353 (S.D.N.Y. July 15, 2016) .............................34

*Goldin v. Primavera Familienstiftung (In re Granite Partners, L.P.)*,
194 B.R. 318 (Bankr. S.D.N.Y. 1996).....................................................................13

*Guido v. L'Oréal, USA, Inc.*,
  Nos. 2:11-cv-01067, 2:11-cv-05465, 2014 WL 6603730 (C.D. Cal. July 24,
  2014) ...................................................................................................................25

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...............................................................26

*Heaven Sent Ltd. v. Commercial Union Ins. Co. (In re Heaven Sent Ltd.)*,
  37 B.R. 597 (Bankr. E.D. Pa. 1984) .....................................................................13

*Karcich v. Stuart (In re IKON Office Sols., Inc. Sec. Litig.)*,
  194 F.R.D. 166 (E.D. Pa. 2000) .............................................................................6

*Keegan v. Am. Honda Motor Co.*,
  284 F.R.D. 504 (C.D. Cal. 2012) .........................................................................23

*Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship)*,
  277 B.R. 181 (Bankr. S.D.N.Y. 2002) ...................................................................6

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .............................................................................................13

*In re Lenovo Adware Litig.*,
  15-md-02634, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ................................33

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  11 MD 2262 Civ. 5723, 2018 WL 3475465 (S.D.N.Y. July 19, 2018) .................16

*Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.)*,
  801 F.2d 60 (2d Cir. 1986) .....................................................................................6

*May v. Wheeler Grp., Inc. (In re Wheeler Grp., Inc.)*,
  75 B.R. 200 (Bankr. S.D. Ohio 1987) ..................................................................14

*McHale v. Alvarez (In re The 1031 Tax Grp., LLC)*,
  397 B.R. 670 (Bankr. S.D.N.Y. 2008) ...................................................................6

*MF Glob. Holdings, Ltd. v. Allied World Assurance Co. (In re MF Glob.
Holdings, Ltd.)*,
  561 B.R. 608 (Bankr. S.D.N.Y. 2016) .................................................................13

*Microsoft Corp. v. Motorola, Inc.*,
  904 F. Supp. 2d 1109 (W.D. Wash. 2012) ...........................................................26

*In re Motors Liqudation Co.*,
  591 B.R. 501 (Bankr. S.D.N.Y. 2018) ........................................................... *passim*

*In re Motors Liquidation Co.*,
    529 B.R. 510 (Bankr. S.D.N.Y. 2015), *aff'd in part & vacated in part*, 590
    B.R. 39 (S.D.N.Y. 2018)................................................................................14

*In re Motors Liquidation Co.*,
    580 B.R. 319 (Bankr. S.D.N.Y. 2018) ..................................................... *passim*

*In re MyFord Touch Consumer Litig.*,
    291 F. Supp. 3d 936 (N.D. Cal. 2018) .........................................................26

*In re Nova Real Estate Inv. Tr.*,
    23 B.R. 62 (Bankr. E.D. Va. 1982)..............................................................25

*O'Neill v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*),
    981 F.2d 1450 (5th Cir. 1993) ....................................................................24

*Opperman v. Path, Inc.*,
    No. 13-cv-00453, 2016 WL 3844326 (N.D. Cal. July 15, 2016) ...............33

*Ortiz v. Chop't Creative Salad Co.*,
    No. 13 Civ. 2541, 2014 WL 1378922 (S.D.N.Y. Mar. 25, 2014) .............16

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)...........................................................................9, 10, 29, 30

*Pinsker v. Borders, Inc. (In re BGI, Inc.)*,
    465 B.R. 365 (Bankr. S.D.N.Y. 2012)...........................................................7

*Price v. L'Oréal USA, Inc.*,
    17 Civ. 614, 2018 WL 3869896 (S.D.N.Y. Aug. 15, 2018) .....................26

*Queenie, Ltd. v. Nygard Int'l*,
    321 F.3d 282 (2d Cir. 2003)....................................................................6, 13

*Sanchez-Knutson v. Ford Motor Co.*,
    310 F.R.D. 529 (S.D. Fla. 2015)..................................................................26

*SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp.,
    Inc.)*,
    960 F.2d 285 (2d Cir. 1992)..........................................................................21

*Stott v. Capital Fin. Servs., Inc.*,
    277 F.R.D. 316 (N.D. Tex. Sept 12, 2011)...................................................27

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015)............................................................................32

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................................16

*Walker v. Wilde (In re Walker)*,
    927 F.2d 1138 (10th Cir. 1991) .........................................................................................16

*Wenzel v. Partsearch Techs., Inc. (In re Partsearch Techs., Inc.)*,
    453 B.R. 84 (Bankr. S.D.N.Y. 2011) ...................................................................................7

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ...........................................................................................23

## Statutes

11 U.S.C §105 .............................................................................................................................13

11 U.S.C § 502 ............................................................................................................................24

## Other Authorities

4 NEWBURG ON CLASS ACTIONS (4th ed. 2002) ..................................................................1

Fed. R. Bankr. P. 9019 ...............................................................................................................10

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

The Economic Loss Plaintiffs[1] submit this objection (the "**Objection**") to the Stay Motion[2] and respectfully represent as follows.

## PRELIMINARY STATEMENT

1.      New GM's Stay Motion is a textbook example of a renewed attempt at unreasonable delay and should be denied.  As this Court correctly predicted,[3] New GM once again seeks to thwart the settlement between the Plaintiffs and the GUC Trust,[4] notwithstanding the strong judicial policy favoring settlements,[5] and the fact that the underlying due process violation in connection with the Bar Date at issue occurred over nine years ago.

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings given to them in *The Economic Loss Plaintiffs' Motion to:  (1) Extend Bankruptcy Rule 7023 to These Proceedings; (2) Approve the Form and Manner of Notice; (3) Grant Class Certification for Settlement Purposes Upon Final Settlement Approval; (4) Appoint Class Representatives and Class Counsel for Settlement Purposes; and (5) Approve the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust Pursuant to Rule 23* [Docket No. 14408] (the "**Rule 23(e) Motion**").

[2]     *General Motors LLC's Motion Pursuant to Section 105(a) of the Bankruptcy Code to (A) Stay Proceedings Relating to the Proposed Settlement and (B) Grant Related Relief* [Docket No. 14431] (the "**Stay Motion**").

[3]     *See In re Motors Liquidation Co.,* 591 B.R. 501, 508 (Bankr. S.D.N.Y. 2018) ("[T]he Court expects that New GM will continue its efforts to thwart any settlement that requires New GM to contribute Adjustment Shares . . . .").

[4]     This Court has long recognized New GM's delay tactics and obstructionist conduct.  *See In re Motors Liquidation Co.,* 580 B.R. 319, 325 (Bankr. S.D.N.Y. 2018) ("New GM's counsel had made it clear in open court for months that New GM would do whatever it could to prevent additional ignition switch defect claims to be filed and allowed in the bankruptcy case.  So it is no real surprise that New GM aggressively sought to torpedo any deal between the Signatory Plaintiffs and the GUC Trust."); *id.* at 328 ("New GM has demonstrated that it would like to force individual adjudications of millions of separate ignition switch defect claims."); *id.* at 324 (noting the conduct of New GM was "very troubling"); *In re Motors Liquidation Co.,* 591 B.R. at 506 ("New GM sought to use the GUC Trust as a foil against claims that New GM is liable for defects in vehicles manufactured by Old GM by arguing that the GUC Trust is liable. . . . For too long, the GUC Trust 'at New GM's behest,' worked to thwart the Claimants' efforts to recover compensation for their injuries.") (citation omitted); *id.* at 507 ("New GM's phalanx of lawyers has aggressively done everything in its capacity to build roadblocks in the way of the Claimants' efforts to obtain allowed unsecured claims against the GUC Trust.").

[5]     Courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex."  (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 NEWBURG ON CLASS ACTIONS § 11.41 (4th ed. 2002) (citing cases).

2.      "Rather than working cooperatively with the GUC Trust and Claimants to facilitate a fair resolution of claims," by its Stay Motion, New GM once again musters its apparently unlimited legal resources in an effort to "torpedo efforts to streamline a workable claims resolution process," and "force individual adjudications of millions of separate ignition switch defect claims." *In re Motors Liquidation Co.*, 591 B.R. at 506; *In re Motors Liquidation Co.*, 580 B.R. at 328.

3.      The Stay Motion should be denied for a multitude of reasons.  There are no rulings pending before the MDL Court that, if relevant to the proceedings before this Court, cannot be accommodated at contemplated stages of the Rule 23(e) Motion.  Furthermore, to the extent New GM relies on the pending bellwether class certification proceedings before the MDL Court, and as will demonstrated below, those proceedings are simply irrelevant to the certification sought here.

4.      Indeed, the Stay Motion can only be understood as yet another manifestation of New GM's war of attrition and delay.  New GM is not seeking any sort of temporary halt that would ultimately benefit an orderly, lawful and equitable resolution.  Rather, New GM seeks to freeze these proceedings *ad infinitum*.  Aside from being irrelevant to these proceedings, Judge Furman's anticipated class certification decision on the Bellwether States under Rule 23(b)(3) does not end the inquiry; rather, it's a first step in a process that will take years to resolve. Therefore, a stay pending resolution of the MDL Briefing accomplishes nothing, would be unprecedented, may result in many months if not years of delay, and would cause significant prejudice to Plaintiffs, the GUC Trust and the GUC Trust Beneficiaries.

5.      Moving forward now on the Rule 23(e) Motion accomplishes the goal of providing a framework for ameliorating the harm caused by Old GM's bankruptcy, promotes the

overriding public interest in facilitating settlements, and comports with sound case management. This Court provided "guidance to the parties moving forward" in its Rule 23 Decision – the Plaintiffs and the GUC Trust have taken that guidance to heart and seek to move forward under the Rule 23(e) Motion and the 9019 Motion (together, the "**Settlement Motions**"). New GM, on the other hand, seeks to fashion a perpetual roadblock. That roadblock should be promptly removed by this Court.

6.      All parties anticipate Judge Furman's rulings on the MDL Briefing on or about June 1, 2019. Accordingly, this Court and the parties will undoubtedly have the benefit of Judge Furman's rulings well in advance of the final fairness hearing, without the need for a stay. Thus, this Court and the parties will be able to accommodate and assimilate Judge Furman's rulings on summary judgment (which may impact the size of the proposed Classes) and *Daubert* in the notice mailing,[6] the final fairness hearing, and claims estimation process.

7.      Accordingly, contrary to New GM's contentions in the Stay Motion, preliminarily adjudicating the Rule 23(e) Motion now certainly does not "jump ahead" of the MDL Court. The fundamental predicate underpinning the Stay Motion thus fails. This is demonstrated by the following projected timeline for adjudicating the Settlement Motions:

| Approximate Date | Event |
|---|---|
| March 15, 2019 | Preliminary approval of proposed Settlement |

---

[6]    The proposed Classes consist of approximately 26,180,000 potential members. However, if Judge Furman rules on summary judgment that pre-recall sellers do not have claims, the proposed Classes are reduced to approximately 11,900,000 members. The difference in notice costs is approximately $13 million to $6 million. Accordingly, the Plaintiffs and the GUC Trust have agreed to hold the proposed notice to the proposed Classes in abeyance until Judge Furman's ruling so as to not unnecessarily expend resources. This agreement does not support further delay or a stay of these proceedings as New GM suggests, as the form and manner of notice are appropriate and should be approved without further delay. The Plaintiffs and GUC Trust will utilize the time between approval and mailing to make progress by coordinating with their notice expert, Epiq, preparing an efficient state of the art notice program and obtaining registration data for the proposed Class members.

| April 15, 2019 | New GM provides VINs to Epiq (30 days) |
| May 15, 2019 | IHS / Polk begins providing registration data to Epiq (30 days) |
| June 7, 2019 | Epiq begins mailing notices to Class members (21 days) |
| July 15, 2019 | IHS / Polk completes provision of registration data to Epiq (30 days from June 15) |
| August 15, 2019 | Epiq completes notice mailing (30 days) |
| September 15, 2019 | Expiration of objection and comment period (30 days from last notice mail) |
| October 2019 | Final fairness hearing |
| November – December 2019 | Final approved of proposed Settlement and certification of the Classes for settlement purposes |
| January – February 2020 | Claims estimate hearing begins |

8.    As previously stated, Judge Furman's pending ruling on class certification for trial purposes, which only relates to the three Bellwether States is irrelevant to the proceedings before this Court.[7]    Contrary to New GM's claim that this Court would have to evaluate class certification issues that have been fully briefed, but not yet decided, in the MDL Court, the issues before this Court under the Rule 23(e) Motion are completely *separate and distinct* from the issues in the MDL Briefing.    The Rule 23(e) Motion is grounded in issues properly before this Court and simply does not involve substantial overlap with proceedings before the MDL Court for multiple reasons:

---

[7]    Moreover, as New GM is well aware, Judge Furman's class certification ruling for the Bellwether States is only a prelude to further proceedings that will either result in applying that ruling to other states or additional bellwether adjudications.    New GM's scorched earth litigation approach in the MDL Action belies its contention in the Stay Motion that all this Court need do is wait a bit to have all issues in the MDL Action related to economic loss claims decided because that will likely take years, given that the MDL Action is using a bellwether class certification process.    New GM has shown it is largely unwilling to work in good faith to apply the MDL Court's rulings in an efficient way, and New GM engenders much unnecessary litigation.    For example, after New GM disputed the MDL plaintiffs' position that many states do not have a manifestation requirement, the MDL Court ruled in favor of the MDL plaintiffs' position across the board.    *See In re Gen. Motors LLC Ignition Switch Litig.,* 339 F. Supp. 3d 262 (S.D.N.Y. 2018).

4

- <u>Separate Putative Economic Loss Classes And Different Defendants</u>:  Here, the proposed Classes are all plaintiffs who owned or leased vehicles with certain defects *pre-Sale*, and in the MDL Action, the proposed classes are residents of three states (California, Missouri, and Texas) who bought or leased vehicles with certain defects *post-Sale*.[8]  And here, the settling defendant is the GUC Trust; in the MDL Action, the defendant opposing class certification is New GM.

- <u>Separate Class Certification Issues</u>:  Here, this Court is being asked to consider a settlement class under Rule 23(e), where trial manageability is not an issue.  Moreover, in this Court, the Economic Loss Plaintiffs move for certification under Rule 23(b)(1)(B), or in the alternative, Rule 23(b)(1)(A).  This is distinct from the Rule 23(b)(3) opt-out class sought in the MDL Action, where the issues of predominance and superiority are paramount.   Even the Rule 23(a) considerations before this Court and the MDL Action are completely different because there are different numbers (Rule 23(a)(1)), different commonality considers (here, pivotal, bankruptcy-specific questions with common answers regarding the Class members' due process rights as creditors (Rule 23(a)(2)), and different representatives and claims (Rule 23(a)(3) and (4)).  Here, the proposed Classes share a common interest in remedying the violation of their due process rights and triggering the maximum number of Adjustment Shares.  The proposed classes in the MDL Action share a common interest in holding New GM accountable for wrongdoing between 2009 and 2014 (plus some limited successor liability claims).

- <u>Separate Factual Issues</u>:  The bankruptcy claims brought by the Economic Loss Plaintiffs (pre-Sale purchasers) necessarily focus exclusively on the conduct of Old GM, whereas the live claims in the MDL Action concern almost exclusively consumers who purchased their cars post-Sale, and focus on the conduct of New GM.  *See In re Motors Liquidation Co.*, 591 B.R. at 513 n. 16 (citing *In re Motors Liquidation Co.*, 571 B.R. 565, 572-74 (Bankr. S.D.N.Y. 2017), *aff'd in part & rev'd in part*, 590 B.R. 39 (S.D.N.Y. 2018)).

9.     Beyond overstating the overlap between the Rule 23 issues before this Court and the MDL Court, the Stay Motion relies on misstating the burden of proof at the preliminary approval stage, erroneously arguing that, in effect, this Court must conduct a *de facto* trial of all substantive issues now.  This, of course, is not the law.  *See, e.g.*, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (explaining that in determining whether to grant

---

[8]     The limited exception is residents of Missouri who bought or leased vehicles with the Ignition Switch Defect pre-Sale who fall within the proposed Classes in this Court and, with respect to successor liability claims, in the MDL Action.

settlement class certification, the merits of plaintiffs' claims may be considered "to the extent –
but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites
for class certification are satisfied"); *Karcich v. Stuart (In re IKON Office Sols., Inc. Sec. Litig.)*,
194 F.R.D. 166, 179, 181 (E.D. Pa. 2000) (explaining that in evaluating the fairness of a
proposed settlement under Rule 23, "the court should avoid conducting a mini-trial").

10.    Broad stay orders, like that sought by New GM, are an extraordinary exercise of a
bankruptcy court's equitable discretion, and only appropriate in unusual circumstances and if
they promote judicial economy, reduce the risk of confusion, and prevent inconsistent results, all
without working an undue hardship or prejudice against the litigant.[9] Almost universally these
orders arise in the context of staying actions against non-debtors where proceeding with such
actions would adversely affect the debtor's estate, frustrate the statutory scheme embodied in the
Bankruptcy Code or interfere with the debtor's efforts to reorganize[10]—none of which are
present here.

11.    Indeed, New GM offers paltry and unconvincing legal authority in support of its
stay request – relying on inapt precedent such as rulings involving arbitration contracts in
bankruptcy; Judge Drain's "Preservation of Estate Claims Procedures Order" that provides for
parties to enter into stipulations with the debtors tolling the statute of limitations with respect to
estate claims and causes of action; and, randomly, the sixth order in a series of "Stay Orders" by

---

[9]    *See Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litig.)*, 765 F.2d 343, 348 (2d Cir.
1985); *Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60, 64 (2d Cir.
1986); *Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship)*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002);
*McHale v. Alvarez (In re The 1031 Tax Grp., LLC)*, 397 B.R. 670, 674 (Bankr. S.D.N.Y. 2008).

[10]   *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003) (explaining that a stay normally only
applies when litigating a claim against the non-debtor will have an immediate adverse economic consequence
for the debtor's estate, such as a claim to establish an obligation of which the debtor is a guarantor, a claim
against the debtor's insurer, and actions where "there is such identify between the debtor and the third-party
defendant that the debtor may be said to be the real party in interest").

Judge Peck in *Lehman* consensually staying certain estate avoidance actions. *See* Stay Motion at 43-44. Such disparate "authorities" fall far short of supporting the unwarranted and prejudicial delay New GM seeks under the Stay Motion.

12.     In fact, any stay is inappropriate under the circumstance of this case for several reasons: <u>First</u>, a stay would not significantly promote judicial economy. The Old GM bankruptcy is almost ten years old. This Court has thoughtfully considered myriad issues involving the key stakeholders, and has adjudicated two prior settlement attempts between the Plaintiffs and GUC Trust. This Court is keenly familiar with the Plaintiffs' claims, the GUC Trust and the governing documents at issue. This Court regularly adjudicates requests for class certification for settlement purposes under Rule 23.[11] In fact, this Court in its recent "Rule 23" Decision provided an in-depth overview of the Rule 23 issues in play for the preliminary approval hearing. *See In re Motors Liquidation Co.*, 591 B.R. at 518-27. There are no competing efficiencies to be gained by halting this Court's progress. The issues before the MDL Court and this Court are distinct and do not materially overlap. Given that the decisions on the MDL Briefing will not be dispositive of the issues before this Court (and will not even be dispositive as between the MDL parties), it would be inefficient to stop now only to inevitably restart later.

13.     <u>Second</u>, a stay would adversely affect the administration of the Old GM case and significantly prejudice multiple parties. As this Court has recognized "class treatment of the economic loss claims here supports rather than adversely affects the administration of Old GM's case; only a few important matters, this one included, remain to be resolved." *In re Motors*

---

[11]     *See, e.g., In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y.) [ECF Nos. 4808 and 5968]; *Pinsker v. Borders, Inc. (In re BGI, Inc.)*, 465 B.R. 365 (Bankr. S.D.N.Y. 2012); *Wenzel v. Partsearch Techs., Inc. (In re Partsearch Techs., Inc.)*, 453 B.R. 84 (Bankr. S.D.N.Y. 2011).

*Liquidation Co.*, 591 B.R. at 537.  Given the recent announcement of an agreement in principal to resolve the Term Loan Avoidance Action Litigation,[12] there may be light at the end of the tunnel for winding down the Old GM case and making final distributions.  However, if the Settlement Motions do not promptly proceed, the GUC Trust's limited remaining resources will continue to dissipate and distributions to GUC Trust Beneficiaries shall remain stalled.

14.    <u>Finally</u>, the parties in interest will benefit from the work done concurrently by this Court and the MDL Court.  New GM's claim of risk of inconsistent rulings is totally overblown.  Indeed, there is no risk of inconsistent rulings between this Court and the MDL Court if this Court timely considers the Settlement Motions.  The Economic Loss Plaintiffs have and will continue to assimilate the MDL Court's decisions at the notice, final approval, and estimation stages.[13]  Accordingly, considering the Settlement Motions now materially advances proceedings

---

[12]    *See* Letter, *Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, Case No. 09-00504 (MG) (Bankr. S.D.N.Y. Feb. 1, 2019), ECF No. 1168.

[13]    For example, Judge Furman has already issued rulings on manifestation, incidental damages, and unjust enrichment in all jurisdictions.  *See In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262 (S.D.N.Y. 2018); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372 (S.D.N.Y.), *modified on reconsideration*, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017).  Presently before Judge Furman on summary judgment are issues relating to benefit-of-the-bargain damages, lost-time damages, whether certain vehicles are defective, and whether used car purchasers have claims, among other issues.  Judge Furman is very likely to rule on these issues well before the estimation proceedings begin under the Proposed Settlement.  And to the extent Judge Furman's summary judgment decision impacts class notice, it may only reduce the number of notices that will be sent, not the manner and form of said notice.

in this Court, with the double benefit of overlaying developments in the MDL Court into the estimation stage.[14] A stay is the last thing these cases need. The Stay Motion should be denied.

## BACKGROUND

I.    **New GM's Fabian Strategy Of Delay
      Has Reached Its Apex With The Stay Motion.**

15.    New GM has a history of obstruction in these cases. Its scorched earth litigation tactics first utilized the GUC Trust as a foil "at New GM's behest" to thwart the Plaintiffs' efforts to recover compensation for their injuries. *See In re Motors Liquidation Co.*, 591 B.R. at 506. When the GUC Trust and the Plaintiffs spent months negotiating a settlement that would permit late claims to be filed and establish procedures for the Court to estimate the claims, and "signed off" on the final form of a settlement agreement, New GM "aggressively sought to torpedo" the deal. *See In re Motors Liquidation Co.*, 580 B.R. at 325.

16.    After adjudication of the unexecuted settlement agreement, the Plaintiffs and the GUC Trust continued their efforts "to bring an end to years of litigation, and to provide for the *possibility* of recovery by Claimants." *In re Motors Liquidation* Co., 591 B.R. at 507. "Rather than working cooperatively with the GUC Trust and [the Plaintiffs] to facilitate a fair resolution of claims, New GM has worked assiduously to torpedo efforts to streamline a workable claims

---

[14]   The *Silicon Gel Breast Implant Products Liability Litigation* is particularly instructive here, and underscores the folly of the Stay Motion. *See Altrichter v. Inamed Corp. (In re Silicone Gel Breast Implant Products Liab. Litig.)*, 2:97-CV-11441, 2010 WL 11506713 (N.D. Ala. May 19, 2010). It is a prime example of a multi-phase path forward supporting adjudication of the Settlement Motions now, and their approval (namely that certification of the proposed Classes for settlement purposes here does not run afoul of *Amchem* and *Ortiz* as New GM blithely suggests). There, Judge Pointer explicitly rejected the need to create sub-classes at the class certification and estimation stage and found that formal sub-classing may be appropriate at a later proposed distribution stage. *See id.* at *44. On appeal, Judge Proctor found that the lack of sub-classes at the class certification and estimation stage was appropriate and did not conflict with *Amchem* and *Ortiz* (which concerned subdividing classes into current and future injury claimants), explaining that in those cases, "the Supreme Court did not fault the district courts for their failure to sub-class *per se*; rather, the certification errors arose because significant conflicts permeated the class settlements and distributions, and the lack of sub-classing exacerbated those concerns." *Id.* at *45. In juxtaposition, Judge Pointer found that the class's unified interests in obtaining a $31.5 million fund was superior to not receiving anything. *Id.* Here, the interests of the proposed Class members are aligned in seeking to maximize the Adjustment Shares, and class certification is appropriate under Rule 23(a), Rule 23(b), *Ortiz*, and Rule 23(e).

resolution process." *Id.* at 506. This Court has found their conduct "very troubling." *In re Motors Liquidation Co.*, 580 B.R. at 324.

17.     In its recent Rule 23 Decision, this Court provided rulings that "may provide guidance to the parties for moving forward," while acknowledging "New GM will continue its efforts to thwart any settlement that requires New GM to contribute Adjustment Shares." *In re Motors Liquidation Co.*, 591 B.R. at 508-09.

18.     In response to the Rule 23 Decision, the Economic Loss Plaintiffs and the GUC Trust took stock of this Court's guidance and crafted the Settlement Agreement and the Settlement Motions to seek approval of the same in compliance with the Rule 23 Decision and each of the elements of Rule 23(a), Rule 23(b)(1)(B), Rule 23(e), *Amchem*, *Ortiz* and Bankruptcy Rule 9019.

19.     The Settlement Motions were filed on February 1, 2019. *See* Docket Nos. 14408, 14409.[15] The Settlement Agreement includes a class settlement of the Ignition Switch Plaintiffs' and Non-Ignition Switch Plaintiffs' claims, and settlement on an individual basis of certain Pre-Closing Accident Plaintiffs' claims.

20.     The Settlement will substantially reduce costs and the expenditure of resources and eliminate the risk of uncertain litigation outcomes. Moreover, the Settlement Agreement establishes a streamlined process for allowing Plaintiffs' claims and providing Plaintiffs a potential source of recovery from the Adjustment Shares.

---

[15]     The Economic Loss Plaintiffs intend to further supplement the record in support of the Settlement Motions with a declaration providing additional support for the Settlement Motions, including additional details and confirmations with respect to the number of claimants asserting claims for alleged personal injury and wrongful death in pre-Sale accidents, discovery to date in the MDL Action, the value of the Proposed Class Claims against the Old GM estate, and calculations showing that the proposed Classes are clearly getting a better deal under the proposed Settlement than could be achieved through successful *seriatim* litigation.

21. Taking a different approach than Plaintiffs' efforts post the Rule 23 Decision, New GM has returned to its standard playbook and attempted to erect a series of roadblocks in response to the Settlement Motions, filing at the very last minute its Stay Motion and *Motion to Withdraw the Reference of Economic Loss Plaintiffs' Rule 23 Motion*, dated Feb. 22, 2019 [ECF No. 14433]. Both efforts seek unwarranted delay of these cases, and should be denied.

## II.   The Proposed Settlement Timeline Anticipates And Accommodates Judge Furman's Forthcoming Rulings On Substantive Issues Pending In The MDL.

22. There are only a limited number of issues pending before Judge Furman that will bear on the settlement approval proceedings here. Contrary to New GM's unsupported contention that the settling parties are seeking to ram-through the proposed Settlement, *the timeline for completion of the proposed Settlement ensures that these limited issues are decided by Judge Furman well before this Court reaches the final approval stage (assuming preliminary approval is granted)*. In other words, the proposed schedule has been crafted to assimilate the impact of substantive rulings made by Judge Furman that are relevant to the proposed Settlement proceedings.

23. The proposed Settlement will progress in three stages. The first is a "Preliminary Approval Phase," which began when the Economic Loss Plaintiffs filed the Rule 23(e) Motion and concludes with the Court's decision on the preliminary relief requested in the Rule 23(e) Motion. The second phase, the "Notice and Comment Phase," begins if and when the Court grants preliminary approval and is comprised of the following steps: (i) the settlement administrator (Epiq Systems) obtains from New GM vehicle identification numbers (VINs) for all vehicles included in the proposed Classes and submits those VINs to third-party data provider IHS Polk; (ii) using those VINs, Polk retrieves from motor vehicle registration agencies across the country the names and addresses of Class members, which Polk produces on a rolling basis

to Epiq; (iii) on a rolling basis, Epiq mails individual notices to the Class members; and (iv) if

they so desire, Class members comment or object by 30 days from the last notice mailing. The

Notice and Comment Phase takes a minimum of five months to complete. The last stages are,

respectively, final approval following the final fairness hearing, then claims estimation

proceedings, followed by approval of allocation and distribution procedures if Adjustment

Shares are triggered.

24.      Judge Furman is expected to issue his rulings on the pending summary judgment,

*Daubert*, and Bellwether class certification motions on or about June 1, 2019. If so, the Court

will have the benefit of those rulings *long before*: (i) the Court makes final findings on whether:

(a) the Rule 23 requirements are satisfied for settlement purposes; and (b) the proposed

Settlement is fair, reasonable, and adequate and should receive final approval; and (ii) claims

estimation proceedings begin.

25.      New GM derides the prospect of mailing notices before Judge Furman renders

rulings that could impact the number of people ultimately included in the Classes. *See* Stay

Motion at 41-43. This is a manufactured concern because notices will not be mailed until the

population of the Classes is fixed by summary judgment rulings that Judge Furman is anticipated

to make. Returning to the above timeline, if preliminary approval is granted by March 15, 2019,

the time required to obtain the names and addresses of the Class members from Polk means that

notices will not be ready for mailing any earlier than June 7, 2019. The bulk of the notice costs

are associated with printing and mailing the notices.  If, as planned, those notices are not mailed until after the contours of the Classes are finalized, no resources will be wasted.[16]

**OBJECTION**

I.    **New GM's Indefinite Stay Would Significantly
      Prejudice Plaintiffs, The GUC Trust And Old GM's Unsecured
      Creditors, While Denying The Stay Will Not Unduly Prejudice New GM.**

26.    The Bankruptcy Court should exercise its broad and sound discretion under Bankruptcy Code Section 105(a) to deny the request for a stay.

27.    Broad stays or injunctions on pending litigation are properly reserved for significant, if not extraordinary and unusual, circumstances.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003); *Heaven Sent Ltd. v. Commercial Union Ins. Co. (In re Heaven Sent Ltd.)*, 37 B.R. 597 (Bankr. E.D. Pa. 1984).  Broad stays customarily arise when proceedings threaten the debtor's estate or impede reorganization, neither of which is present here.  *See Goldin v. Primavera Familienstiftung (In re Granite Partners, L.P.)*, 194 B.R. 318, 327 (Bankr. S.D.N.Y. 1996).  The prolonged and indefinite stay urged by New GM, supposedly in deference to the MDL Court, but actually in the service of delay and obstruction, is indistinguishable from abstention by the Court.  As such, it should be denied since "it is a judge's duty to decide all cases within his jurisdiction that are brought before him."  *MF Glob. Holdings, Ltd. v. Allied World Assurance Co. (In re MF Glob. Holdings, Ltd.)*, 561 B.R. 608, 617 (Bankr. S.D.N.Y. 2016); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) ("The doctrine of abstention,

---

[16]   As the Economic Loss Plaintiffs previously informed the Court at the December 20, 2018 status conference, Judge Furman's summary judgment rulings may impact the number of persons ultimately included in the Classes.  For instance, it is possible that Judge Furman will rule, as New GM has argued in the MDL Action, that persons who sold their cars before the recalls have no claims.  If so, the Classes here could be reduced by millions.  But with notice mailing not planned until late June 2019 at the earliest (and subject to adjustment, if needed), Old GM vehicle owners/lessees who have no claims by virtue of Judge Furman's rulings will not be part of the Proposed Settlement and will not be mailed notice.

under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.").

28.    Every balancing factor that this Court may consider (including risk of inconsistent ruling, prejudice, fairness, and judicial economy) tilts heavily in favor of denying the Stay Motion.  This is particularly so given the genesis of the claims at issue,[17] the arduous path to get to the Settlement Motions, and, as this Court has acknowledged, that "class treatment of the economic loss claims here supports rather than adversely affects the administration of the Old GM's case."  *In re Motors Liquidation Co.*, 591 B.R. at 537; *see also May v. Wheeler Grp., Inc. (In re Wheeler Grp., Inc.*), 75 B.R. 200, 200 (Bankr. S.D. Ohio 1987) ("The liquidation of claims is a necessary step in bringing any bankruptcy case to a conclusion.").

29.    Contrary to New GM's bald statement that the "proposed stay does not prejudice the Plaintiffs," any stay of the Settlement Motions would impose significant prejudice on the Plaintiffs, the GUC Trust and the GUC Trust Beneficiaries.  As set forth above, New GM requests an unlimited stay.  That is nonsensical.

30.    It is incontrovertible that any delay would impose significant hardship on the Plaintiffs, the GUC Trust and the GUC Trust Beneficiaries by:  (i) stalling Plaintiffs' day in Court to seek to resolve the prejudice emanating from the lack of due process in connection with the Bar Date; (ii) hindering Plaintiffs' efforts to seek allowance and estimation of their claims against the Old GM estate; and (iii) stalling the ability of the GUC Trust to promptly wind down

---

[17]    As former Judge Gerber and the Second Circuit both recognized, plaintiffs lacked any meaningful opportunity to be heard in connection with the Bar Date, *see Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 166 (2d Cir. 2016), and plaintiffs were plainly prejudiced with respect to the Bar Date for filing claims.  The remedy with respect to the denial of notice sufficient to enable the filing of claims before the Bar Date is obvious.  That is leave to file late claims.  *In re Motors Liquidation Co.*, 529 B.R. 510, 526, 574 (Bankr. S.D.N.Y. 2015), *aff'd in part & vacated in part*, 590 B.R. 39 (S.D.N.Y. 2018).

(particularly in light of the recent agreement in principle to resolve the Term Loan Avoidance Action Litigation)[18] and make final distributions to GUC Trust Beneficiaries.

31.    Granting the Stay Motion would not only adversely affect Plaintiffs, the GUC Trust and the GUC Trust Beneficiaries, it would also be anathema to the interests of judicial economy, and the expeditious and economical determination of litigation.  *See In re Curtis*, 40 B.R. 795, 800 (Bankr. D. Utah 1984).  This Court has repeatedly stressed its desire for speedy resolution and to move forward expeditiously.  *See In re Motors Liquidation Co.*, 580 B.R. at 328; *In re Motors Liquidation Co.*, 591 B.R. at 508.  Consideration of the Settlement Motions does exactly that.

32.    Significant resources have been expended to ready the Settlement Motions for hearing.  The Settlement Motions seek to establish a framework to permit late claims to be filed and establish procedures for the Court to estimate the claims - in other words, a path to progress. Consideration of the Settlement Motions will not disrupt the estate or its creditors, rather it advances these cases towards conclusion.  Moreover, considering the Settlement Motions now is judicially efficient as the particular settlement class certification issues are squarely before this Court.  It cannot be underscored enough that, under any timetable, this Court will benefit from the MDL Court's decisions on summary judgment and *Daubert* issues prior to the final fairness hearing, and the MDL Court's class certification decision for the Bellwether States is merely an initial step in a process just beginning and not relevant to the certification issues presented here. This Court and the parties can and will accommodate and assimilate Judge Furman's rulings on summary judgment (which may impact the size of the Classes) and *Daubert* in connection with the notice mailing, the final fairness hearing and claims estimation.

---

[18]    *See* Letter, *Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, Case No. 09-00504 (MG) (Bankr. S.D.N.Y. Feb. 1, 2019), ECF No. 1168.

33.     Finally, denying the Stay Motion will not prejudice New GM.  The Stay Motion does not even claim that it will.  New GM's arsenal of attorneys are readying its challenges to the Settlement Motions, and, as this Court has adeptly noted, New GM will "do whatever it [can] to prevent additional ignition switch defect claims to be filed and allowed in the bankruptcy cases."  *In re Motors Liquidation Co.*, 580 B.R. at 325; *see also Walker v. Wilde (In re Walker)*, 927 F.2d 1138, 1143 (10th Cir. 1991) (the cost of defending an action is not a sufficient basis for denying relief from the stay).  Accordingly, this Court should not suspend the Settlement Motions and the Stay Motion should be denied.

## II.     The Amendments To Rule 23 Reinforce Longstanding Practice In This Circuit Regarding A Court's Role In Initially Evaluating A Proposed Settlement.

34.     Rule 23, as revised as of December 1, 2018, directs that the Court determine whether it will "likely be able to" grant final approval under Rule 23(e)(2) and "certify the class for purposes of judgment on the proposal" before directing notice of a settlement to the class. Fed. R. Civ. P. 23(e)(1)(B).  These recent modifications reflect the longstanding practice in this Circuit of determining whether there is "'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11 MD 2262, 12 Civ. 5723, 2018 WL 3475465, at *1 (S.D.N.Y. July 19, 2018) (quoting *In re Traffic Exec. Ass'n E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980)).  This determination has involved an initial assessment of:  (i) "procedural" fairness, focused on whether the settlement resulted from arm's-length negotiations informed by developed facts, *see Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); and (ii) the agreement's terms—collectively, the "*Grinnell* factors," *see, e.g., Ortiz v. Chop't Creative Salad Co.*, No. 13 Civ. 2541, 2014 WL 1378922, at *11 (S.D.N.Y. Mar. 25, 2014) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

35.     The newly amended Rule 23 does not change this fundamental inquiry.  *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (observing "[c]ourts have generated lists of factors to shed light on" whether a proposed settlement is "fair, reasonable, and adequate," and noting "[t]he goal of this amendment is not to displace any factor").  But the Rule now "focus[es]" the inquiry on "the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal," *id.*—that is, whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Those factors, which largely reflect the *Grinnell* framework, are readily satisfied here.

36.     Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement."  Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note to 2018 amendment.  Here, the history of the case leaves no doubt about the arm's-length nature of the proposed Settlement.  As the Court is aware, following the filing of the hotly-contested Late Claims Motions, the Economic Loss Plaintiffs entered into settlement negotiations with the GUC Trust and certain GUC Trust Beneficiaries culminating in the completion of an agreement that the Economic Loss Plaintiffs considered final.  Nevertheless, the parties litigated *through trial* the question of whether the agreement was enforceable.  This Court held it was not.  This resulted in another round of negotiations, with final arm's-length discussions occurring after this Court's ruling as to the applicability of Rule 23.  *See* Rule 23(e)

17

Motion at 3-4, 45-46 (noting the involvement, and relevance of the involvement, of capable, experienced counsel).

37.     Further, the negotiations in each instance were on the heels of heavily-contested litigation over whether Old GM violated due process in failing to give the Economic Loss Plaintiffs notice of the Bar Date.  It was also against the backdrop of litigation that gave the Economic Loss Plaintiffs insight into the knowledge of Old GM as to the defects at issue.  *See* Rule 23(e) Motion at 2-4, 45-46.  This is a mature record.

38.     And the Economic Loss Plaintiffs note that the Settlement provides that the allocation (apportionment of relief) stage will entail the involvement of Magistrate Judge Cott, S.D.N.Y.

39.     Next, Rule 23(e)(2)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(C)-(D).  The Court must also ultimately assess the Settlement's effectiveness in distributing relief to the Classes.   *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).  Here, these elements are handily satisfied, as the Economic Loss Plaintiffs addressed in their Rule 23(e) Motion.  *See* Rule 23(e) Motion at 46-49.  Notably, the Class members all have a common interest in maximizing the Adjustment Shares, have all suffered a common due process violation based on the failure to provide them with constitutionally adequate notice of the Bar Date, and will all be subject to the same allocation process.  There are no future Class members.

40.     The Economic Loss Plaintiffs have amply demonstrated that the proposed Settlement is presumptively fair, adequate, and reasonable.  This issue is ripe for this Court's determination now on the mature record that has already been developed.

18

41.     Finally, New GM concedes, as it must, that the Court does not certify a Class at the preliminary approval stage, and the new Rule 23(e) governs the nature of the Court's Rule 23 inquiry.  As the Advisory Committee Notes summarize:

> [I]f a class has not been certified, the parties must ensure that the court has a basis for concluding that it will be able, after the final hearing, to certify the class.  Although the standards for certification differ for settlement and litigation purposes, the court cannot make the decision regarding the prospects for certification without a suitable basis in the record.

Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment.

42.     Thus, New GM is wrong to suggest that it is somehow harder to certify a class for settlement purposes than for litigation purposes.  *See* Stay Motion at 19-20.  The point is whether there is a basis for this Court to conclude that it will likely be able to certify the proposed Rule 23(b)(1) class on the ample record presented.  The timing proposed under the current schedule accommodates exactly that process.

### III.    New GM Vastly Overstates The Overlap Between Issues Being Decided In The MDL Action And The Relevant Issues To Be Decided Here During The Preliminary Approval Stage.

43.     New GM contends that this Court cannot determine whether to approve the sending of notice without waiting for Judge Furman's rulings on the pending summary judgment, *Daubert*, and class certification motions in the MDL Action.  More specifically, New GM argues that the Court is in no position to evaluate whether to grant preliminary approval because the pending motions in the MDL Action impact whether a limited fund exists, whether the relief is adequate, whether the proposed representatives here are adequate, and whether common issues exist.  *See* Stay Motion at 23-40.

44.     As demonstrated above in Section II, New GM drastically overstates the burden of determining whether preliminary approval should be granted; it is not a trial on all Rule 23

elements, as New GM advocates.  In any event, New GM's arguments that the Economic Loss

Plaintiffs will not be able to satisfy all elements of Rule 23 on a settlement basis fail.

### A. This Court Can Find The Proposed Classes Likely Satisfy The Rule 23(a) Elements Without Considering Issues Being Decided In The MDL Court.

45.     The Rule 23(e) Motion demonstrates that all Rule 23(a) elements are satisfied at

this time.  *See* Rule 23(e) Motion at 25-31.  New GM contends that the Court cannot assess Rule

23(a)(4) adequacy or Rule 23(a)(2) commonality without first reviewing rulings to be made by

Judge Furman.  *See* Stay Motion at 30-32, 39-40.  New GM is wrong again.

### 1. This Court Can And Should Find That The Proposed Class Representatives Are Adequate.

46.     New GM feigns confusion over who the proposed Class representatives are (*see*

Stay Motion at 30), when it is obvious that the proposed representatives are the 74 Economic

Loss Plaintiffs identified in the Proposed Class Claims.  There are 44 Economic Loss Plaintiffs

serving as representatives of the Ignition Switch Class,[19] and there are 30 Economic Loss

Plaintiffs serving as representatives of the Non-Ignition Switch Class.[20]  Collectively, these

Economic Loss Plaintiffs reside in 34 states and, therefore, cover a substantial portion of the

country.

---

[19]  They are:  Patricia Barker, Marion Smoke, Camille Burns, Grace Belford, Ray Wieters, Michael And Sylvia Benton, Crystal Hardin, Esperanza Ramirez, Annet Tivin, Michael Pesce, Lisa Teicher, Maria E. Santiago, Neysa Williams, Jennifer Dunn, Dennis Walther, Heather Holleman, James Dooley, Philip Zivnuska, D.D.S., Robert Wyman, Colin Elliott, Diana Cnossen, Jacqueline Smith, David Cleland, Frances Howard, Kenneth Robinson, Patrice Witherspoon, Laurie Holzwarth, Wayne Wittenberg, Michael Amezquita, Lorraine De Vargas, Bernadette Romero, Sandra Levine, Michael Rooney, Bonnie Taylor, Paulette Hand, William Bernick, George Mathis, Mary Dias, Catherine Senkle, Shenyesa Henry, Lisa Simmons, Blair Tomlinson, D.D.S., and Stephanie Renee Carden.

[20]  They are:  Yvonne James-Bivins, Gerald Smith, Patricia Barker, Esperanza Ramirez, Wandell Littles Beazer, Stacey Bowens, Maria E. Santiago, Verlena Walker, Dennis Walther, Keith Nathan, Lyle Wirtjes, Melody Lombardo, Susan Viens, Diana Cnossen, Sophia Marks, David Price, Jacqueline Smith, Bryan Wallace, David Cleland, Frances Howard, Patrice Witherspoon, Lorraine De Vargas, Lisa Axelrod, Georgianna Parisi, Annette Hopkins, Catherine Senkle, Shenyesa Henry, Lisa Simmons, Malinda Stafford, and Stephanie Renee Carden.

47.     Rule 23(a)(4) adequacy is manifest here.  Class counsel is qualified, experienced, and able to conduct the litigation and have been diligently discharging their duties.  Not even New GM argues otherwise.  And the proposed representatives do not have interests that are antagonistic to one another—the other touchstone of adequacy.  *See SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 960 F.2d 285, 291 (2d Cir. 1992); *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086, 2013 WL 5658790, at *7 (S.D.N.Y. Oct. 17, 2013) (primary adequacy inquiry is whether the plaintiff's interests are antagonistic to those of the class).

48.     The Economic Loss Plaintiffs are members of the Classes they seek to represent, have suffered economic loss from the same wrongful conduct by Old GM, and seek to hold Old GM responsible for conduct that violated the legal rights and interests of the Classes.  The proposed Class representatives have and will continue to diligently prosecute the claims and protect the Class members, and both Economic Loss Plaintiffs and absent putative Class members alike are united in seeking to obtain the maximum amount of Adjustment Shares.  *See Adams Extract Co. v. Pleasure Hours, Inc. (In re Corrugated Container Antitrust Litig.)*, 643 F.2d 195, 208 (5th Cir. 1981) ("so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes").

49.     New GM says that this Court cannot adjudicate adequacy before Judge Furman assesses the adequacy for litigation purposes of the proposed representatives for the three-state bellwether classes in the MDL Action, *see* Stay Motion at 31, yet New GM fails to acknowledge that 66 of the proposed representatives here are not plaintiffs in the MDL Action.  For these 66

Economic Loss Plaintiffs, what Judge Furman finds about the adequacy of *other* plaintiffs has no relevance.

### 2.    The Court Can And Should Find That Common Questions Exist.

50.    As regards the Rule 23(a)(2) commonality inquiry, New GM contends that the Court cannot find at this time that all members of the proposed Classes pursue a common theory of recovery, *see* Stay Motion at 27-29, and that the Economic Loss Plaintiffs cannot demonstrate commonality because they propose a single Non-Ignition Switch Class encompassing multiple recalls, while in the MDL Action, plaintiffs seek to certify classes divided by recall, *see* Stay Motion at 39-40. New GM once again misses the mark.

51.    The commonality inquiry asks whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists when the claims are "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 418 (S.D.N.Y. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). Commonality is "not demanding" and is met if at least one issue is common to the class. *Id.*

52.    In automobile defect cases, commonality is often found based upon a common question concerning the existence of a defect. For instance, proposed representatives of a class of purchasers of vehicles with alleged alignment defects "easily satisf[ied] the commonality requirement" because all of their claims involved, among other things, "the same alleged defect,"

22

which was "found in vehicles of the same make and model." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).[21]

53.    The Court has sufficient information to find that the relatively low commonality hurdle is satisfied without awaiting any findings from the MDL Court.    Proof of Old GM's failure to provide notice of claims, Old GM's knowledge of defects, and Old GM's failure to disclose defects are examples of common issues that focus solely on Old GM's conduct and will be "central to the validity of the claims in this litigation."    *Ge Dandong*, 2013 WL 5658790, at *5.    Other issues common to members of each of the proposed Classes include whether they have the right to seek to maximize the Adjustment Shares and whether Old GM engaged in fraudulent, deceptive, or unfair acts or practices by failing to disclose the defects that were known to Old GM.    These facts are common whether a class contains cars subject to multiple defects or whether separate classes are certified for separate defects.    Notably, the separate recalls present a unifying theme:    through its recall notices, New GM has admitted that the cars subject to the recalls have a defect affecting motor vehicle safety.    As to the issues central to this action and Settlement, commonality suffuses not only the factual defect questions, but also the legal and factual questions regarding Old GM's historical conduct toward a class of un-notified creditors in failing to disclose the safety defects that implicated the lives and well-being of class members and procedural opportunities that negated their legal rights and economic interests.

---

[21]    *See also, e.g.*, *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 524 (C.D. Cal. 2012) (finding commonality relating to uniform rear suspension defect, noting that "[t]he fact that some vehicles have not yet manifested premature or excessive tire wear is not sufficient, standing alone, to defeat commonality"); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) (finding commonality when Ford knew but concealed the risk that intake manifolds would prematurely crack); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016) (commonality satisfied where plaintiffs alleged "consistent" theories of liability and damages for all class members, and where GM inaccurately communicated vehicle safety ratings "allow[ing] it to command a price premium").

**3.    This Court Can Find That The Proposed Classes
Likely Satisfy The Rule 23(b)(1)(B) Elements Without
Considering Issues Being Decided In The MDL Court.**

**a.    The Fund Is A Classically Limited Fund
Because It Is Inadequate To Satisfy All Claims, And The
Proposed Settlement Provides Fair And Adequate Relief.**

54.    The Rule 23(e) Motion outlines the presumptively necessary characteristics of

limited fund class actions, to wit:  (i) the fund is inadequate; (ii) the whole of the inadequate fund

is devoted to plaintiffs' claims; and (iii) class members are treated equitably.  *See* Rule 23(e)

Motion at 33-41.  New GM contends that the Court cannot grant preliminary approval without

knowing how Judge Furman will rule on damages and *Daubert* issues.  *See* Stay Motion at 24-

26.  Indeed, New GM goes so far as to assert that preliminary approval cannot be granted until

the Court makes "a detailed finding on the likely outcome" of the claims estimation proceeding.

*Id.* at 25.

55.    As an initial matter, New GM misapprehends the nature of a claims estimate

proceeding.  Estimating claims under Bankruptcy Code Section 502(c) "provides a means for a

bankruptcy court to achieve reorganization, and/or distribution of claims, without awaiting the

results of legal proceedings that could take a very long time to determine."  *In re Chemtura

Corp.*, 448 B.R. 635, 649-50 (Bankr. S.D.N.Y. 2011); *see also O'Neill v. Cont'l Airlines, Inc.* (*In

re Cont'l Airlines, Inc.*), 981 F.2d 1450, 1461 (5th Cir. 1993) (Section 502(c)(1) "serves two

purposes: 1) the section is designed to avoid the need to await the resolution of outside lawsuits

to determine issues of liability or amount owed by means of anticipating and estimating the

likely outcome of these actions, and 2) the section is designed to promote a fair distribution to

creditors through a realistic assessment of uncertain claims").  A formal trial on the merits is not

held, which "would eviscerate the purpose underlying § 502(c) . . . ."  *In re Baldwin-United

Corp.*, 55 B.R. 885, 899 (Bankr. S.D. Ohio 1985).

24

56.    And while the court estimates "the expected value of a claim based on the probability of the success of various potential outcomes if decided on the merits," *Chemtura*, 448 B.R. at 650, courts in this District have rejected an "all or nothing basis" that awards "the full value of the claim if the claimant proves its case by a preponderance" but awards "a zero value if the claimant fails to prove its claim." *Id.* An estimate is just that—an estimate. As one court has remarked: "An estimate necessarily implies no certainty; it is not a finding or a fixing of an exact amount. It is merely the court's best estimate for the purpose of permitting the case to go forward and thus not unduly delay the matter." *In re Nova Real Estate Inv. Tr.*, 23 B.R. 62, 66 (Bankr. E.D. Va. 1982). Thus, the exacting inquiry that New GM now demands at this preliminary approval stage will not operate even at the claims estimation phase. New GM truly is "putting the cart before the horse" (and loading the cart with dynamite).

57.    Furthermore, the Court has before it an adequate record to find that it is likely that the fund is inadequate. The Economic Loss Plaintiffs have proffered the reliable conjoint analysis of expert Stefan Boedeker estimating damages exceeding $77 billion, an appropriate tool to establish the limited nature of the fund. *See Altrichter v. Inamed Corp. (In re Silicone Gel Breast Implant Products Liab. Litig.)*, 2:97-CV-11441, 2010 WL 11506713, at *2 (N.D. Ala. May 19, 2010) (limited nature of settlement fund established by Ernst & Young report showing that company liabilities dwarfed assets). Conjoint analysis is one of the most widely-used quantitative methods of market research and "has been used for decades as a way of estimating the market's willingness to pay for various product features." *Guido v. L'Oréal, USA, Inc.*, Nos. 2:11-cv-01067, 2:11-cv-05465, 2014 WL 6603730, at *5 (C.D. Cal. July 24, 2014).

58.    Numerous courts across the country have accepted choice-based conjoint analysis as a reliable methodology for calculating price premiums on a class-wide basis in consumer class

actions, including to determine the "but-for" market value of automobiles with undisclosed defects. *See*, *e.g.*, *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027, 2018 WL 4952519, at *14-20 (N.D. Cal. Sept. 25, 2018); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1106-1110 (N.D. Cal. 2018); *Price v. L'Oréal USA, Inc.*, 17 Civ. 614, 2018 WL 3869896, at *9-11 (S.D.N.Y. Aug. 15, 2018); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936 (N.D. Cal. 2018); *Dzielak v. Whirlpool Corp.*, No. 2:12–0089, 2017 WL 1034197, at *5-6 (D.N.J. Mar. 17, 2017); *In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 334 (D.N.H. 2017); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 601, 604-06 (N.D. Cal. 2018); *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 539 (S.D. Fla. 2015); *In re ConAgra Foods Inc.*, 90 F. Supp. 3d 919, 1022-32 (C.D. Cal. 2015); *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1120 (W.D. Wash. 2012).  Mr. Boedeker's methodology hues closely to these widely-accepted conjoint principles.

59.    As explained in the Rule 23(e) Motion at 33-37, there can be no doubt that the fund is inadequate.  If New GM's obligation to contribute 30 million Adjustment Shares is triggered (the maximum amount that may be required under the AMSPA), the value of those shares approximates $1.15 billion.  This is but 1.5% of Proposed Class Claims that exceed $77 billion; therefore, the fund will be wholly inadequate to satisfy the Class members' claims. Indeed, even if the sizes of the Classes are substantially contracted by rulings that Judge Furman may make on summary judgment in the MDL Action, Class members' claims will continue to dwarf the aggregate value of the Adjustment Shares.  There is sufficient evidence at this juncture to conclude that the ultimate claims value will far exceed the value of the Adjustment Shares to grant preliminary approval.

26

60.    New GM is also incorrect in asserting that the claims must be "liquidated" before determining that it is likely that the fund will be found to be inadequate.  *See* Stay Motion at 24. For instance, in *Doe v. Karadzic*, 192 F.R.D. 133 (S.D.N.Y. 2000), the court explained that where there is a "reasonable method by which to calculate, or even estimate, with comfortable certainty, [defendant's] potential liability to the class members," class members' claims need not be liquidated in order to assess whether a fund is limited.  *Id.* at 140 n.11 (quoting *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, No. MDL 1203, CIV. A. 98–20594, 1999 WL 782560, at *7 (E.D. Pa. Sept. 27, 1999)); *see also Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 328 (N.D. Tex. Sept 12, 2011) (determining that, based on the evidence regarding class members' damages presented to the court, "the amount contemplated is a 'sufficiently reliable conclusion regarding the probable total of the aggregated liquid damages'" to determine that a limited fund exists) (citation omitted).

61.    In a similar vein, New GM also contends that the Court cannot assess whether the relief in the proposed Settlement is likely to be adequate without awaiting rulings from Judge Furman.  *See* Stay Motion at 32-35.  New GM is again wrong, because it once again wants a claims trial at the preliminary approval stage (where it does not belong).  The Court need not be an oracle to conclude that the proposed Settlement provides Class members with a superior chance of recovering substantial monies, particularly given Rule 23(e)(2)'s command that the Court consider "the costs, risks, and delay of trial and appeal."

62.    The road to recovery via the late claims process is perilous.  The GUC Trust has asserted various defenses, including untimeliness and equitable mootness.  Even if the Economic Loss Plaintiffs can overcome these defenses, the prospect of substantial recovery is dimmed by the need to share the Remaining GUC Trust Assets and Adjustment Shares with other GUC

27

Trust Beneficiaries. If the late claims process generates the minimum amount necessary to trigger the issuance by New GM of the maximum amount of Adjustment Shares (approximately $10.15 billion), the amount of Allowed General Unsecured Claims would increase from about $31.85 billion to $42 billion. *See* Rule 23(e) Motion at 39. This would leave approximately $1.6 billion to satisfy all claims (approximate value of the Adjustment Shares of $1.15 billion plus the $457.9 million value of the Remaining GUC Trust Assets). *See id.* And this amount would be distributed on a *pro rata* basis to all Allowed General Unsecured Creditors, providing each Plaintiff with a recovery of less than 4 cents on the dollar. *See id.*[22]

63.    In contrast, the proposed Settlement is a far superior outcome. It removes some the litigation risks with respect to the GUC Trust's defenses, and sets the stage for potentially distributing approximately $1.15 billion to satisfy the proposed Class members' aggregate claims of $10.15 billion would provide each Plaintiff with approximately 11 cents on the dollar. *See id.* And the same result obtains if proposed Class members' claims are estimated in an amount sufficient to trigger the Adjustment Shares but at a level that does not trigger the maximum amount of those shares. This relatively simple math exercise demonstrates that the relief in the proposed Settlement is likely to be fair, reasonable, and adequate.

### b.    Class Members Will Be Treated Equitably.

64.    New GM's next challenge is to assert that preliminary approval cannot be granted because the Court is in no position to determine at this time whether all proposed Class members will be treated equitably and whether subclasses are necessary to resolve any potential conflicts that may arise. *See* Stay Motion at 27-29. But the Court does not need to make decisions regarding sub-classing at this phase.

---

[22]    The Rule 23(e) Motion at 38 n.45 explains why increasing the assets available for distribution by clawing back prior distributions of GUC Trust Assets is most improbable.

65.    For example, in *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, the settlement, like the one proposed here, proceeded in a phased manner.  In the first phase, the court found that a limited fund existed, certified the limited fund class, and approved the settlement as fair, adequate, and reasonable and the product of non-collusive, good-faith bargaining.  2010 WL 11506713, at * 12.  In doing so, the court overruled objections to the settlement's lack of a predetermined plan for the fund's distribution, leaving the issue for later consideration as "not essential to determination of the initial question of whether the overall settlement fund available for distribution is adequate in the circumstances." *Id.*  In the second phase, class counsel presented a distribution plan that called for a *pro rata* division of the entire settlement fund among all claimants without regard to each claimant's level of injury.  The court preliminarily approved the distribution plan, directed that it be described in another notice sent to the class, then granted final approval of the distribution plan in which each claimant received approximately $725. *Id.* at *13.

66.    As in the *Breast Implant* litigation, the need for subclasses—if any—can be determined later in the distribution phase.  For now, all members of the Classes are united by a common quest to obtain the largest amount of Adjustment Shares as is possible.

67.    Notably, this case does not present the types of conflicts that afflicted the doomed asbestos-related settlement in *Ortiz*, where there were conflicts between:  (i) the currently injured, who wanted generous, immediate payments; and (ii) the interests of exposure-only plaintiffs, who wanted to ensure the availability of ample funds in the future.  There were also conflicts between:  (i) those who were exposed to Fibreboard's asbestos products before 1959 during the time period covered by the insurance policy with the most coverage; and (ii) those who were exposed after 1959, when policies with lower limits were in place.  *See Ortiz v.*

*Fibreboard Corp.*, 527 U.S. 815, 856-57 (1999).    Because the settlement lacked structural safeguards to protect disparate groups of class members, "the conflict was as contrary to the equitable obligation entailed by the limited fund rationale as it was to the requirements of structural protection applicable to all class actions under Rule 23(a)(4)." *Id.*  None of these intra-class inequity issues are present here, where all members of the proposed Classes were denied due process, suffered economic losses and seek recovery from the same source.[23]

68.    In arguing that differences in state law require the creation of subclasses, New GM throws shade on the prospect of a nationwide class here by saying that "the MDL Court has already identified distinctions among state laws that make nationwide classes impossible."  Stay Motion at 29.  This is simply untrue, as Judge Furman has made no such finding.  To the contrary, the parties are proceeding with a three-state bellwether class certification approach at the MDL Court's suggestion and by agreement of the parties in order to speed along the class certification process in the MDL Action.  Further, differences in state law—even if material— would not preclude certification here, as New GM is attempting to import a predominance of common issues *litigation* standard under Rule 23(b)(*3*) to this proposed *Settlement* under Rule 23(b)(*2*).  Predominance is not a factor in evaluating settlement classes, let alone under Rule 23(b)(2) where it is not even a required element.

### 4.    In The Alternative, At This Preliminary Stage, The Economic Loss Plaintiffs Have Demonstrated That The Court Will Likely Be Able To Certify Limited Fund Classes Under Rule 23(b)(1)(A).

69.    Even though the Rule 23(e) Motion demonstrates that certification in the alternative under Rule 23(b)(1)(A) is proper, New GM fails to address the topic.  New GM offers

---

[23]    *Ortiz* cast doubt on the prospect that subclasses are always necessary to accommodate differences in the strengths of certain plaintiffs' claims.  In commenting that "at some point there must be an end to reclassification with separate counsel" (*id.* at 857), the Court foresaw that there would likely be instances where sub-classing is not necessary to cover all potential conflicts.

no argument as to why the Court is not in a position at this time to determine that prosecution of separate actions by individual class members would create the risk of "inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the" defendant. Fed. R. Civ. P. 23(b)(1)(A).

IV.    **New GM's Argument That The MDL Court Is Deciding Constitutional Issues Is False And, Even If True, Should Not Impact The Timing Here.**

70.    New GM correctly characterizes the following regarding the MDL Action: (a) New GM has moved to strike plaintiffs' conjoint expert under *Daubert*; (b) New GM has raised defenses to the predominance element of Rule 23(b)(3), including but not limited to purported individual differences in reliance; and (c) the parties dispute whether the recalls were effective. Yet New GM is wrong to simulate a question over standing (jurisdiction) as a way to suggest that *this* Court should somehow be at a standstill. These issues have no bearing on whether this Court will likely be able to certify the Classes, there are no extant Constitutional issues before the MDL Court that militate in favor of a stay here, and the Stay Motion should be denied.

A.    **New GM's *Daubert* Challenge.**

71.    First, New GM argues that the Economic Loss Plaintiffs' expert found that many proposed Class members were uninjured (and thus lack standing), and that this purported lack of standing defeats certification because a class cannot be certified absent "common evidence to show all class members suffered some injury." *See* Stay Motion 35-36. This is a willful misreading of the report, the testimony, and the law.

72.    By way of brief background, and as New GM's own cases support, even when there are individual differences in damages (which here there are not because damages are not at issue and the class has a unitary interest in triggering the maximum Adjustment Shares), they do

not defeat commonality or predominance (the latter of which is a Rule 23(b)(3) element *not at issue here*), especially when "the evidence necessary to make out such damages claims, while individual, is easily accessible." In such instances, "individual damages considerations do not threaten to overwhelm the litigation." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015). Nor must damages be proven at class certification even in litigated Rule 23(b)(3) cases; all that is required "is that the plaintiffs must be able to show that their damage stemmed from the defendant's actions that created the legal liability." *Id.* (citation and internal quotation marks omitted). Accordingly, there are no Article III standing issues "that the MDL Court is poised to decide" that impact whether this Court will likely be able to certify the Classes.

73. Moreover, New GM's contention that the MDL Plaintiffs' expert found that a certain percent of the population he studied was uninjured is false, and based on a pronounced mischaracterization of Mr. Boedeker's work. Mr. Boedeker's conjoint analysis took survey responses and, in combination with a market simulation, translated them into dollar values for individual features or groups of features offered in a car, including whether the car is defective. This allowed a comparison of the demand curve for a car without defects to a demand curve for a car with undisclosed defects, and the estimation of whether and how much consumers were overcharged—*all* consumers.

74. New GM thus misstates the relevance of variation in willingness-to-pay in the Boedeker model, in that willingness-to-pay was not used to quantify economic losses. Mr. Boedeker showed that every purchaser overpaid for their cars, regardless of individual willingness-to-pay, which belies New GM's standing arguments. But even if there were uninjured Class members, as there are in many cases, it would not implicate standing issues in this Circuit, as New GM's own authority makes clear. *See, e.g., Denney v. Deutsche Bank AG*,

32

443 F.3d 253, 263-64 (2d Cir. 2006) ("[P]assive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court.") (citing Herbert B. Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th ed. 2002)); *see also*, *e.g.*, *Dover v. British Airways, PLC (UK)*, 321 F.R.D. 49 (E.D.N.Y. 2017) (certifying a class in which all members were exposed to wrongful fuel surcharge, even though a small portion of the class may not have actually paid a higher charge).

75.     New GM's reliance on cases where only a willingness-to-pay analysis was used is misplaced.  *See*, *e.g.*, *Opperman v. Path, Inc.*, No. 13-cv-00453, 2016 WL 3844326 (N.D. Cal. July 15, 2016).  While the class in *Opperman* included persons who could not have been injured by the wrongful conduct, here, "all class members were exposed to the same disclosure—that is no disclosure at all—and purchased the allegedly defective product.  Although all class members may not prevail on the merits of their claims, plaintiffs' proposed Classes do not include members 'who, by definition, could not have been injured.'"  *In re Lenovo Adware Litig.*, 15-md-02634, 2016 WL 6277245, at *15 (N.D. Cal. Oct. 27, 2016) (citation omitted).

### B.     New GM's Reliance Challenge.

76.     Next, New GM's unremarkable statement that individual differences in reliance can defeat class certification—although not so under these facts—does not support the proposition that there is a lurking *Constitutional* issue here.  *Cf. In re Ford Motor Co. Ignition Switch Products Liab. Litig.*, 174 F.R.D. 332 (D.N.J. 1997) (cited by GM) (distinguishable in that the recall itself provided the predominant relief sought; focusing on Rule 23(b)(3)).

77.     First, here there is no predominance requirement at all because the parties are proceeding under an entirely different section of Rule 23, namely, Rule 23(b)(1)(B) (and alternatively Rule 23(b)(1)(A)).

78.     Second, even if the predominance requirement *were* implicated here, it would be satisfied; New GM's argument is factually as well as legally misplaced.  In addition to being irrelevant under Rule 23(b)(1), New GM's argument is counterfactual to what actually happened here because a universal and uniform concealment of material information from the entire class and a universal and uniform denial of due process occurred.

79.     There are no Constitutional standing issues that implicate the jurisdiction of this Court and the proposed Settlement should be considered now.

### C.     New GM's Attempt To Simulate A Standing Issue In Connection With The Adequacy Of The Recalls Also Fails.

80.     New GM seeks to have it both ways in that it ignores relevant actual rulings from the MDL Court as a basis to seek delay here to obtain further rulings from the MDL Court.  To the extent the MDL Court has addressed Article III issues in connection with recalls, the Court ruled that it "does not find that the recalls moots plaintiffs' claims."  *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-md-2543, 2016 WL 3920353, at *40 (S.D.N.Y. July 15, 2016).  Accordingly, this issue has no impact on whether this Court will likely be able to certify the Classes.

81.     New GM is trying to avoid the logical answer that this issue will be dealt with at the estimation stage by turning it into a Constitutional challenge that purportedly warrants putting the brakes on the entire case here before even the first stage.  This is misplaced and the Stay Motion should be denied.

### V.     The Court Should Approve The Form And Manner Of The Proposed Notice And Permit Plaintiffs To Prepare For Mailing.

82.     As outlined above, the most efficient way to proceed at this time given the five months that it takes to obtain the names and addresses of Class members and ready the notice mailing is to grant preliminary approval with the understanding that notice mailing will not begin

until Judge Furman's forthcoming orders establish the universe of Plaintiffs here who will be able to pursue claims. If this initial step is unduly delayed, several months or more will need to be added to the entire process of approving (or not) the proposed Settlement and estimating claims. No prejudice will befall any party by getting the notice ball rolling at this time.

## **CONCLUSION**

WHEREFORE, for all of the reasons stated above, the Economic Loss Plaintiffs respectfully request that this Court deny the Stay Motion and grant such other and further relief as is just and proper.

Dated: March 3, 2019
New York, New York

Respectfully submitted,

_/s/ Edward S. Weisfelner_
Edward S. Weisfelner
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

_Designated Counsel for the Ignition Switch_
_Plaintiffs and Certain Non-Ignition Switch_
_Plaintiffs in the Bankruptcy Court_

Steve W. Berman (admitted pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: 206-623-7292

35

steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch Plaintiffs
and Certain Non-Ignition Switch Plaintiffs in the
MDL Court*