1   rulemaking, is a complicated process in and of
2   itself.
3             ELIZABETH CABRASER:  It's very
4   complicated.  This took a lot of negotiation with
5   the Federal Appellate Rules Committee because
6   nobody wants to overburden the Courts of Appeal
7   as a matter of policy.
8             HON. ELIZABETH LAPORTE:  It's okay to
9   burden the trial courts apparently.
10            ELIZABETH CABRASER:  Well, yes.  With
11  apologies, yes.  And so rather than have an
12  elaborate procedure at the appellate level, with
13  panels that may not know anything about the
14  underlying case or settlement, would have to read
15  the whole record.  This is a way to make sure
16  that even if, you know, the hostage move doesn't
17  take place until a notice of appeal, it can still
18  be dealt with by the district court without
19  having to go through a remand process or any of
20  the other elaborate workarounds.
21            And then the second area of major
22  change, and there is a very lengthy committee
23  note on this, is that what is called front-
24  loading in the settlement approval process.  So
25  rather than wait until the notice has gone out

1   and the final approval hearing, to come in with
2   information, with experts, with all the details
3   on the settlement, that now takes place at the
4   front end, before the notice goes out.  And that
5   is a major, major shift.
6              Judges did not like a situation where
7   they had preliminarily approved a settlement
8   because the settling parties said it was great,
9   they sent out the notice, they get in objections
10  and questions, they look at the settlement and
11  then they have all these unresolved questions and
12  they're supposed to make a final decision.  And
13  they don't like the pressure of having to do that
14  after a lot of time and money and effort has gone
15  in to the notice process and they're at the end.
16  They don't want to send people back to square
17  one.
18              So the solution, and this was proposed
19  by judges, was let's just do as much of this as
20  we can.  We can't do everything, it's
21  preliminary, but let's do as much of it as we can
22  at the front end so that before we send out that
23  notice, right, we have information.  And by the
24  way, since the judge has information and it's on
25  the record, it can then be put on the settlement

Page 20

1   website so that class members who are getting the
2   notice can have that information and they don't
3   have to guess about what's gone on and what's
4   going on.
5             And as I say, that is all supposed to
6   take effect next year.  But surprise, surprise,
7   it's happening now, partly because it is a
8   codification of some judges and some courts' best
9   practices and partly because judges were waiting
10  for this and now they have it and they're using
11  it.
12            HON. ELIZABETH LAPORTE:  Yeah.
13            QUYEN TRUONG:  So these rule changes
14  are really going to be important to kind of clear
15  the underbrush and definitely in the settlement
16  context, but overall with the class action
17  process.  And we're going to get to further
18  discussion of settlement agreements, as well as
19  such an important component of the whole process.
20            But let's start first with sort of the
21  entire update from Noah on the juris prudence
22  here that's evolving and starting more at, maybe
23  at the front end on the certification and
24  standing and other issues as well.
25            NOAH LEVINE:  Sure.  Sure.  So time