**DRINKER BIDDLE & REATH LLP**

1177 Avenue of the Americas
41st Floor
New York, New York 10036-2714
Telephone:  (212) 248-3140
Facsimile:  (212) 248-3141
E-mail: kristin.going@dbr.com
      clay.pierce@dbr.com
      marita.erbeck@dbr.com
Kristin K. Going
Clay J. Pierce
Marita S. Erbeck

*Attorneys for the Motors Liquidation Company*
*GUC Trust Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
             :
In re:                :      Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,  :      Case No.: 09-50026 (MG)
      f/k/a General Motors Corp., et al.,  :
             :
           Debtors.  :      (Jointly Administered)
-------------------------------------------------------------X

**REPLY BRIEF IN SUPPORT OF MOTORS LIQUIDATION COMPANY GUC TRUST'S MOTION TO APPROVE (I) THE GUC TRUST ADMINISTRATOR'S ACTIONS, (II) THE SETTLEMENT AGREEMENT BY AND AMONG THE SIGNATORY PLAINTIFFS AND THE GUC TRUST PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363, AND 1142 AND BANKRUPTCY RULES 3002, 9014, AND 9019, AND (III) AUTHORIZE THE REALLOCATION OF GUC TRUST ASSETS**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 3

    I.    New GM Lacks Standing to Object to the Settlement Motion. ........................... 3

        A.    New GM Lacks Prudential Standing, Which is Fatal to Its
            Participation in the Settlement Proceedings. .............................................. 3

        B.    New GM Fails to Demonstrate that it Has Constitutional Standing. ......... 5

        C.    New GM's Pecuniary Interests are Unaffected by the Settlement
            Agreement and Thus, New GM Also Lacks Standing Under
            Section 1109 of the Bankruptcy Code. ....................................................... 6

        D.    Consideration of Class Action Principles Also Establishes that
            New GM Does Not Have Standing to Object to the Settlement. ............... 9

    II.    The Settlement is Consistent with the Terms of the Plan and the GUC
        Trust Agreement. ............................................................................................ 11

    III.    Ortiz Specifically Contemplated this Type of Limited Fund .............................. 15

CONCLUSION ................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Alpha Natural Res. Inc.*,
   544 B.R. 848 (Bankr. E.D. Va. 2016) ...........................................................5, 6, 7, 8

*Alumax Mill Prods., Inc. v. Congress Fin. Corp.*,
   912 F.2d 996 (8th Cir. 1990) ...................................................................................9

*Armco Inc. v. N. Atl. Ins. Co.*,
   No. 98 CIV. 6084 AGS, 1999 WL 173579 (S.D.N.Y. Mar. 29, 1999) ....................9

*Bhatia v. Piedrahita*,
   756 F.3d 211 (2d Cir. 2014)..............................................................................9, 10

*In re Big Apple Volkswagen*,
   LLC, 571 B.R. 43 (S.D.N.Y. 2017) ........................................................................5

*Breeden v. Kirkpatrick & Lockhart, LLP*,
   268 B.R. 704 (S.D.N.Y. 2001), *aff'd sub nom. Breeden v. Kirkpatrick &*
   *Lockhart LLP (In re Bennett Funding Grp.)*, 336 F.3d 94 (2d Cir. 2003)................5

*In re C.P. Hall Co.*,
   750 F.3d 659 (7th Cir. 2014) ..................................................................................7

*Cooksey v. Futrell*,
   721 F.3d 226 (4th Cir. 2013) ..................................................................................5

*Dickinson v. Burnham*,
   197 F.2d 973 (2d Cir. 1952)..................................................................................15

*Eichenholtz v. Brennan*,
   52 F.3d 478 (3d Cir. 1995).......................................................................................9

*Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)*,
   829 F.3d 135 (2d Cir. 2016)....................................................................................5

*In re Global Indus. Techs., Inc.*,
   645 F.3d 201 (3d Cir. 2011)....................................................................................7

*Guffanti v. Nat'l Surety Co.*,
   196 N.Y. 452 (N.Y. 1909) ....................................................................................15

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*,
   747 F.3d 44 (2d Cir. 2014)......................................................................................4

*Hirsch v. Arthur Anderson & Co.*,
    72 F.3d 1085 (2d Cir. 1995) ............................................................................................ 3

*In re Hutchinson*,
    5 F.3d 750 (4th Cir. 1993) .............................................................................................. 7

*In re Ionosphere Clubs, Inc.*,
    101 B.R. 844 (Bankr. S.D.N.Y. 1989) ............................................................................ 7

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
    843 F.2d 636 (2d Cir. 1988) ............................................................................................ 3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................................ 5

*McConnell v. Fed. Election Comm'n*,
    540 U.S. 93 (2003) .......................................................................................................... 6

*Montesa v. Schwartz*,
    836 F.3d 176 (2d Cir. 2016) ............................................................................................ 5

*Morrison v. Warren*,
    174 Misc. 233 (Supp. Ct. N.Y. Cnty 1940) .................................................................. 15

*In re Motors Liquidation Co.*,
    430 B.R. 65 (S.D.N.Y. 2010) .......................................................................................... 3

*In re Motors Liquidation Co.*,
    580 B.R. 319 (Bankr. S.D.N.Y. 2018) ................................................................. 3, 4, 5, 7

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) .................................................................................................. 15, 16

*Premium Mortg. Corp. v. Equifax, Inc.*,
    583 F.3d 103 (2d Cir. 2009) ............................................................................................ 4

*In re Quigley Co., Inc.*,
    391 B.R. 695 (Bankr. S.D.N.Y. 2008) ............................................................................ 4

*Rosenthal v. Nierenberg*,
    No. 09 CIV 8237 NRB, 2010 WL 3290994 (S.D.N.Y. Aug. 10, 2010) ......................... 6

*Shearson Lehman Hutton, Inc. v. Wagoner*,
    944 F.2d 114 (2d Cir. 1991) ............................................................................................ 3

*In re Teligent Inc.*,
    640 F.3d 53 (2d Cir. 2011) .......................................................................................... 7, 8

*Wittman v. Personhuballah*,
  136 S. Ct. 1732 (2016) ............................................................................................5

**STATUTES, RULES & REGULATIONS**

11 U.S.C. § 1109 .............................................................................................3, 6, 7, 8

11 U.S.C. § 1109(b) .....................................................................................................6


Fed. R. Civ. P. 23 .........................................................................................................2

Fed. R. Civ. P. 23(b)(1)(B) ...............................................................................2, 15, 17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 Advisory Committee's Note to 1966 Amendment, 39 F.R.D.
  69, 101 (1966) ...................................................................................................16-17

U.S. Const. Article III ..............................................................................................5, 7

By and through its undersigned counsel, the GUC Trust Administrator[1] of the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as established under the Debtors' Second Amended Joint Chapter 11 Plan dated as of March 18, 2011 [ECF No. 9836] (as confirmed, the "Plan") of the above-captioned post-effective date debtors (the "**Debtors**"), respectfully submits this *Reply Brief in Support of Motors Liquidation Company GUC Trust's Motion to Approve (I) the GUC Trust Administrator's Actions, (II) the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust Pursuant to Bankruptcy Code Sections 105, 363, and 1142 and Bankruptcy Rules 3002, 9014, and 9019, and (III) Authorize the Reallocation of GUC Trust Assets* (the "**Reply**"), seeking entry of an order approving the Settlement Agreement and the actions taken by the GUC Trust in furtherance of the Settlement Agreement.  In further support of its Motion, the GUC Trust Administrator respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      New GM has provided a new twist on the old lawyerism, "if the facts are against you, argue the law."  In New GM's world, if the facts are against you, change them.  New GM has repeatedly misstated the terms of the Settlement in furtherance of its arguments against it.  But there is one thing New GM has finally admitted—that in their view, there is no settlement between the GUC Trust and the Plaintiffs that could ever be approved by this Court, because there is no class that could ever be certified, and any settlement that includes the potential to trigger the accordion feature of the Sale Agreement would be an impermissible plan modification.

---

[1]   Capitalized terms not defined herein shall have the meaning ascribed to them in the *Motion of Motors Liquidation Company GUC Trust to Approve (I) the GUC Trust Administrator's Actions, (II) the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust Pursuant to Bankruptcy Code Sections 105, 363, and 1142 and Bankruptcy Rules 3002, 9014, and 9019, and (III) Authorize the Reallocation of GUC Trust Assets* (the "**Motion**"), the Settlement Agreement, the Plan or the GUC Trust Agreement, as applicable. Any description herein of the terms of the Plan or the GUC Trust Agreement is qualified in its entirety by the terms of the Plan or the GUC Trust Agreement, as applicable.

2.      As this Court is well aware, both bankruptcy and class action law favors settlement. The two parties to the dispute here—potential claimants of Old GM and the GUC Trust—have reached a settlement.  Yet the settlement is under attack once again by a party with no pecuniary interest in the Settlement Agreement, whose tactics can only be described as pathological adversariness.  Despite not having an actual interest in the settlement, New GM urges this Court to determine that there can be no settlement **ever** between the GUC Trust and the Plaintiffs.  New GM's objection should be overruled on the simple basis that New GM lacks standing to make such an objection in the first place.  To the extent this Court decides to indulge New GM's pathological adversariness, the objection should be overruled because the Plaintiffs are prepared to make the record required pursuant to Rule 23, this is exactly the type of circumstance where a limited fund class should be certified, and the Settlement terms comply with the Sale Agreement, the Plan and the GUC Trust Agreement.

3.      Finally, in considering whether to certify the class of economic loss plaintiffs and approve the Settlement Agreement, it is important that this Court keep in mind the purpose of certifying a Rule 23(b)(1)(B) class here.  It is to allow the Economic Loss Plaintiffs to file late class proofs of claim.  Once the claims are filed, the Settlement Agreement follows the steps established in the Plan, the Sale Agreement and GUC Trust Agreement – the very steps contemplated and even anticipated by New GM at the time of the MSPA and Plan Confirmation, as evidenced by New GM's own securities filings.  *See* General Motors Company Form 10-Q filed August 16, 2010[2] ("We determined that it is probably that general unsecured claims allowed against MLC will ultimately exceed $35 billion by at least $2 billion.  In the circumstance where estimated general unsecured claims equal $37 billion, under the terms of the Purchase Agreement,

---

[2] https://www.sec.gov/Archives/edgar/data/1467858/000119312510189968/d10q.htm.

2

we would be required to issue 2.9 million Adjustment Shares to MLC."). For New GM to now argue that the Purchase Price Adjustment, or "accordion," feature can never be triggered is bad faith.

## **ARGUMENT**

### I.    **New GM Lacks Standing to Object to the Settlement Motion.**

4.    Standing is "a threshold issue in all cases" since prospective litigants who lack standing "are not entitled to have their claims litigated in federal court." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991). The prerequisite of standing is no different in bankruptcy, as only parties with standing have the right to appear and be heard in a bankruptcy case. *In re Motors Liquidation Co.*, 430 B.R. 65, 92 (S.D.N.Y. 2010). A party wishing to object or otherwise be heard must show the existence of (1) prudential standing, (2) constitutional standing, *and* (3) standing under section 1109 of the Bankruptcy Code. *In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018). At all times, the "burden to establish standing remains with the party claiming that standing exists." *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).

### A.    **New GM Lacks Prudential Standing, Which is Fatal to Its Participation in the Settlement Proceedings.**

5.    The doctrine of prudential standing is a threshold issue that "bars litigants from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves." *Motors Liquidation*, 580 B.R. at 340 (quoting *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 643 (2d Cir. 1988)) (citations omitted). The doctrine is separate from the concept of constitutional standing and "has been considered a valuable prudential limitation, self-imposed by the federal courts." *Id.* "The prudential concerns limiting third-party standing are particularly relevant" in bankruptcy proceedings, which "regularly involve numerous

parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself." *Johns-Manville Corp.*, 843 F.2d at 644. When a court has found that a party lacks prudential standing, the inquiry ends, and the court need not consider the issues of constitutional or section 1109 standing. *See Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 747 F.3d 44, 48-49 (2d Cir. 2014).

6.     Here, New GM lacks prudential standing because it is not a party to or an intended third-party beneficiary of the Settlement Agreement. *See, e.g., Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (explaining that "[a] non-party to a contract governed by New York law lacks standing . . . in the absence of terms that clearly evidence[] an intent to permit enforcement by the third party") (internal quotation marks and citation omitted) (alteration in original). The Settlement, by its terms, is binding only on the GUC Trust and the relevant groups of Plaintiffs. As this Court has previously observed in a different context, "New GM is not a party to the Settlement Agreement, and the Settlement Agreement does not contain unambiguous language manifesting an intent to make New GM a beneficiary of that contract." *Motors Liquidation*, 580 B.R. at 348–49. Moreover, the actual parties to the settlement have been active in the negotiation process, are represented by capable counsel, and are all completely capable of asserting their own legal rights. There is simply no role for New GM to play at this juncture. As neither a party nor a beneficiary of the Settlement Agreement, New GM cannot satisfy the requirement that a party "must assert [its] own legal rights and interests, and cannot rest [its] claim to relief on the legal rights or interests of third parties." *In re Quigley Co., Inc.*, 391 B.R. 695, 702 (Bankr. S.D.N.Y. 2008). New GM has no rights under the Settlement and therefore lacks prudential standing.

4

B.    **New GM Fails to Demonstrate that it Has Constitutional Standing.**

7.      In addition to failing the prudential standing test, New GM is also unable to

demonstrate that it has constitutional standing.  The requirement that a party have constitutional

standing is rooted in Article III of the United States Constitution, which grants federal courts

jurisdiction to hear "cases" and "controversies." U.S. Const. Art. III, § 2.  *Motors Liquidation*, 580

B.R. at 340-41.  Only parties with constitutional standing meet the Article III "case or controversy"

requirement.  *Id.*; *In re Alpha Natural Res. Inc.*, 544 B.R. 848, 854 (Bankr. E.D. Va. 2016) (quoting

*Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013); *see also Wittman v. Personhuballah*, 136

S. Ct. 1732, 1736 (2016) ("Article III of the Constitution grants the federal courts the power to

decide legal questions only in the presence of an actual 'Cas[e]' or 'Controvers[y],'  which

"requires a party invoking a federal court's jurisdiction to demonstrate standing.") (alterations in

original).  Put differently, "the doctrine of standing identifies disputes appropriate for judicial

resolution." *Alpha*, 544 B.R. at 854; *Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016).  The

limitations of Article III standing apply equally in bankruptcy proceedings.  *In re Big Apple*

*Volkswagen*, LLC, 571 B.R. 43, 49 (S.D.N.Y. 2017) (citing *Elliott v. Gen. Motors LLC (In re*

*Motors Liquidation Co.)*, 829 F.3d 135, 168 (2d Cir. 2016)).

8.      Under the case or controversy requirement, a party seeking to assert standing "must

have a 'personal stake in the outcome of the controversy.'"  *Breeden v. Kirkpatrick & Lockhart,*

*LLP*, 268 B.R. 704, 708 (S.D.N.Y. 2001) (citation omitted), *aff'd sub nom. Breeden v. Kirkpatrick*

*& Lockhart LLP (In re Bennett Funding Grp.)*, 336 F.3d 94 (2d Cir. 2003).  Thus, "a party must

establish an invasion of a legally protected interest that is concrete and particularized and actual

or imminent, not conjectural or hypothetical."  *Motors Liquidation*, 580 B.R. at 341 (internal

quotations omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "Non-

parties to a contract ordinarily do not have a 'concrete and particularized injury.'" *Motors Liquidation*, 580 B.R. at 342.

9.      New GM cannot establish that the Court's approval of the Settlement Agreement will constitute "an invasion of a concrete and particularized legally protected interest." *Rosenthal v. Nierenberg*, No. 09 CIV 8237 NRB, 2010 WL 3290994, at *3 (S.D.N.Y. Aug. 10, 2010) (quoting *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 227 (2003)).   Thus, there is no potential "injury in fact" to New GM.   Critically, the Settlement contemplates a multi-phase process.  First, the Court must approve the Settlement Agreement, which is inconsequential to non-parties like New GM.   Only after the Court approves the Settlement Agreement and allows late claims to be filed, can the GUC Trust Administrator seek estimation of the Economic Loss class claims, along with the claims of individual settling PIWD claimants.  It is this contingent future estimation process that could potentially trigger the Purchase Price Adjustment feature of the Sale Agreement.  Only this second step of this process potentially implicates New GM's interests, and New GM will have every opportunity to be heard if and when there is an estimation hearing. However, that is not the issue presently before the Court.   Until that later point, any adverse consequence to New GM remains too remote and too speculative to satisfy the injury in fact requirement.

> **C.      New GM's Pecuniary Interests are Unaffected by the Settlement Agreement and Thus, New GM Also Lacks Standing Under Section 1109 of the Bankruptcy Code.**

10.      Even where a party has established both prudential and constitutional standing—which New GM has not—the Bankruptcy Code separately requires "party in interest" standing under section 1109, which provides that only "parties in interest" may appear and be heard in

bankruptcy courts.  11 U.S.C. § 1109(b).[3]  The Bankruptcy Code does not define the term "party in interest," but courts have construed it to include all persons whose pecuniary interests are "directly affected" by the bankruptcy proceeding, *Alpha*, 544 B.R. at 855, or who have a financial stake in the outcome, *In re Teligent Inc.*, 640 F.3d 53, 60 (2d Cir. 2011).  Put differently, this Court has noted that "to establish party in interest standing under section 1109, a proposed participant must either be a party enumerated in the statute or: (1) have a direct stake in the proceeding and be a creditor of a debtor or be able to assert an equitable claim against the estate."  *Motors Liquidation*, 580 B.R. at 342 (quoting *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989)) (internal quotations omitted).

11.    "Article III standing and standing under the Bankruptcy Code are effectively coextensive." *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 211 (3d Cir. 2011).  A party objecting to relief requested in a chapter 11 case, therefore, must be a party in interest *and* otherwise satisfy the requirements for standing under Article III of the Constitution.

12.    The recent decision in *Alpha Natural Resources* is instructive.  In that case, the debtor sought approval of a settlement between itself and the state of West Virginia for liabilities related to the debtor's coal mining operations in the state.  A group of "Environmental Parties" (various conservation groups) filed an objection to the settlement motion.

13.    Before it could address the merits of the objection, the court first had to determine whether the objectors possessed standing under section 1109.  The objectors were required to show that "the Bankruptcy Code conferred . . . the right to butt into a settlement negotiation between other parties."  *Alpha*, 544 B.R. at 856 (quoting *In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014)).  The court canvased decisions from several circuits and found that a "party in interest" was

---

[3] Section 1109(b) of the Bankruptcy Code also specifically identifies the debtor, the trustee, a creditors' committee, an equity security holders' committee, creditors, equity security holders, or any indenture trustee as parties in interest.

"generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings." *Alpha*, 544 B.R. at 855 (quoting *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir. 1993)); *see also Teligent*, 640 F.3d at 60 (finding "parties in interest typically have a financial stake in the outcome of the litigation . . . .").

14.    The court ultimately concluded that the Environmental Parties lacked both constitutional standing and standing under section 1109 of the Bankruptcy Code.  With respect to constitutional standing, the Environmental Parties had "fail[ed] to plead how they, or their members could be harmed by the approval of the West Virginia Settlement." *Alpha*, 544 B.R. at 856.  Turning to section 1109 standing, the court likewise found none of the Environmental Parties were a "party in interest" because "the Environmental Parties [had] no pecuniary interest at stake." *Id*.  Moreover, even if the Environmental Parties had possessed a pecuniary interest, standing could only attach under section 1109 if that pecuniary interest would be "directly affected" by the settlement. *Id*.  Citing the Second Circuit's decision in *In re Teligent, Inc*., the court found that a "remote pecuniary interest" would not satisfy the standing requirement. *Id*.  (citing *Teligent, Inc.*, 640 F.3d at 61) (finding no 1109 standing where a parties' pecuniary interest was "too remote").

15.    New GM does not fall into any of the categories listed in section 1109 of the Bankruptcy Code and thus its standing rests on a showing that it is otherwise permitted to object because it is a "party in interest."  New GM is not directly affected by the Settlement Motion.  The Settlement contemplates only an agreement between the GUC Trust to allow late claims to be filed, thus ending years of litigation over whether Plaintiffs have a right to file late claims in the bankruptcy, along with an agreement as to the rights to the Trust assets.  New GM has no right to Trust assets, it therefore has no interest in how they are apportioned.  New GM has no "pecuniary interest" in the Settlement, and any interest that it may claim to have based on its obligations to

supplement the Trust fund is not yet ripe and too remote to confer standing. This Court should not permit New GM to "butt into a settlement negotiation between other parties."

16.     It is telling that New GM relies upon an argument that the Settlement Agreement modifies the Plan and Sale Agreement as an attempt to show "party in interest" standing. By contrast, New GM is silent on how the actual terms of the Settlement Agreement affect its rights. The mere fact that the Settlement Agreement allows late filed class proofs of claim to be filed, in order to proceed with the process set forth and **agreed to** by New GM in the Sale Agreement does not affect New GM's pecuniary interests. Once more, at the time the Sale Agreement was entered into and the Plan was confirmed, New GM explicitly contemplated that the Purchase Price Adjustment would in fact be triggered.

### D.      Consideration of Class Action Principles Also Establishes that New GM Does Not Have Standing to Object to the Settlement.

17.     In general, non-parties to a class settlement do not have standing to object to its approval. The solitary exception to this general principle is where "the settlement agreement *formally* strips a non-settling party of a legal claim or cause of action, such as a cross-claim for contribution or indemnification, invalidates a non-settling party's contract rights, or the right to present relevant evidence at a trial." *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014) (emphasis in original). This exception is exceedingly narrow and "[i]n practice, such prejudice has only been found to exist in rare circumstances, such as when the settlement agreement strips a non-settling party of a claim for contribution or indemnification, or invalidates a non-settling party's contract rights." *Armco Inc. v. N. Atl. Ins. Co.*, No. 98 CIV. 6084 AGS, 1999 WL 173579, at *1 (S.D.N.Y. Mar. 29, 1999) (citing *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995); *Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1002 (8th Cir. 1990)).

18.     The Second Circuit's decision in the *Bhatia* case is illustrative of this point. *Bhatia* involved a settlement of a class action brought by investors related to the Madoff Ponzi scheme. Certain non-settling defendants claimed that a provision of the settlement agreement between plaintiffs and the settling defendants prejudiced the non-settling defendants because it required investors who made claims under the settlement agreement to submit to the jurisdiction of the court for purposes of the settlement agreement.  The non-settling defendants claimed that this provision prejudiced them because it was detrimental to their right to assert that certain foreign investors' participation in the settlement should bar or limit claims in a litigation in the Netherlands.  These defendants wanted to be able to argue that the foreign investors had already submitted to personal jurisdiction in U.S. Court.  The Second Circuit found no formal prejudice.  The provision of the settlement agreement only undercut the non-settling defendants' arguments regarding personal jurisdiction in the Netherlands action, it did not foreclose the argument.  The Court noted that "[i]t is not . . . sufficient for the Non-Settling Defendants to show they were somehow 'undercut' through the loss of some practical or strategic advantage." *Id.* at 219.  Like in *Bhatia*, New GM is not a party to the Settlement Agreement and is thus unable to object to, or otherwise affect, its consideration.  New GM is not stripped of any legal claims or causes of action, nor are its contract rights affected.

19.     As a non-party to the Settlement, whose interests are not at stake, New GM's objection should be seen for what it is—just another contrived roadblock on the journey toward an appropriate resolution of this litigation.  New GM's objections to the Settlement Agreement are strategic in nature, and the benefit they seek to gain in moving to stay the Settlement Proceedings is a tactical advantage only.  It is the height of artifice, and a sad irony to be sure, that New GM would appear in this Court and feign outrage at the supposed transgressions they conjure of the Plaintiffs' rights to due process, trial by jury, and individual compensation.  New GM has no interest in protecting these

10

rights.  And the very capable counsel who actually represent Plaintiffs prefer to do their best to play the hand New GM dealt them and do their best to maximize their recovery under the Plan this Court confirmed.

20.    Because New GM has not satisfied the standing requirement, the Court should not indulge its obstructionist actions and should find that it lacks standing.

## II.    The Settlement is Consistent with the Terms of the Plan and the GUC Trust Agreement.

21.    New GM repeatedly alleges that the Plaintiffs claims are being allowed under the terms of the Settlement.  This is simply not true.  Thus, New GM's claim that the settlement results in an impermissible Plan modification is also not true.  New GM falsely alleges that because the Plaintiffs' claims are being allowed under the terms of the Settlement Agreement, the Plan mandates that they must be GUC Trust Beneficiaries and must receive, what New GM characterizes as $495M in existing GUC Trust assets.  As the GUC Trust Administrator has acknowledged repeatedly, the Settlement Agreement **does not allow** the Plaintiffs claims.  Rather, the Settlement Agreement allows the Plaintiffs late claims to be filed.  Once filed, the GUC Trust Administrator is proceeding pursuant to Section 7.3 of the Plan and Section 5.1 of the GUC Trust Agreement for estimation of those disputed claims.

22.    New GM also tries to confuse this Court into believing that the Plaintiffs become GUC Trust Beneficiaries pursuant to the Settlement Agreement.  This is also simply not true.  The GUC Trust Agreement defines GUC Trust Beneficiaries as "holders of Allowed General Unsecured Claims."  *See* Section F of GUC Trust Agreement.  No Plaintiff can become a GUC Trust Beneficiary unless and until he or she has an allowed claim.  And under the Settlement Agreement, Plaintiffs cannot have an allowed claim unless and until their claims are estimated and allowed by this Court.

11

23.    Furthermore, the GUC Trust Agreement and the Plan are very clear about who is entitled to distribution of GUC Trust assets.  Under the terms of the GUC Trust Agreement as well as Section 7.2 of the Plan, the GUC Trust Administrator can only pay allowed claims.  New GM's argument that the Plaintiffs should receive a portion of the remaining cash held by the GUC Trust Administrator pursuant to the Settlement Agreement actually violates the terms of the Plan and GUC Trust Agreement.

24.    The GUC Trust has a limited amount of assets which today consist of cash in the amount of approximately $495M and the right to seek additional shares from New GM should claims reach a specific threshold.  Despite New GM's protestations about the lack of a record regarding the limited fund, there is no dispute as to the amount of the GUC Trust's assets today.  Furthermore, the only reason the GUC Trust even has $495M is because Section 7.2 of the Plan and Section 5.5 of the Trust Agreement require the GUC Trust to reserve such amount on account of the maximum amount of the 502(h) claim arising as a result of the Avoidance Action litigation.  None of the $495M is available to be paid to Plaintiffs.  Pursuant to the terms of the Trust Agreement, the $495M must be used to pay (i) any 502(h) claim resulting from the Avoidance Action Litigation (ii) existing trust beneficiaries and (iii) the administrative expenses of the GUC Trust.

25.    New GM also challenges the release provisions of the Settlement Agreement— whereby Unitholders and the GUC Trust release any right to the Adjustment Shares and the Plaintiffs release any right to the current cash in the GUC Trust.  Absent this release, the Unitholders could be entitled to a portion of the Adjustment Shares, if and when they were triggered.  These releases are not an impermissible plan modification.  If anything, the releases act as a cap on Unitholders recovery under the Plan.

26.    New GM argues that Section 7.4 of the Plan is being modified by the Settlement

Agreement.  Section 7.4 of the Plan provides:  "If, on or after the Effective Date, any Disputed

Claim becomes, in whole or in part, an Allowed Claim, the Debtors, the GUC Trust

Administrator . . . shall, on the next applicable distribution date following when the Disputed

Claim becomes an Allowed Claim, if all other conditions to such distribution have been satisfied,

distribute to the holder thereof the distributions, if any, that such holder would have received had

its claim been Allowed on the Effective Date . . . ."  The Settlement Agreement is not modifying

the Plan, it is following Section 7.4 precisely.  If this Court estimates the Plaintiffs claims in an

amount that triggers the accordion, then and only then do Plaintiffs become allowed claimholders,

and Section 7.4 of the Plan is implemented.  Here again, the fatal flaw in New GM's argument

regarding a Plan modification is the notion that Plaintiffs claims are allowed at the time the

Settlement is approved, thereby magically turning all Plaintiffs into GUC Trust Beneficiaries and

holders of Allowed Claims.  This is not what the Settlement Agreement provides.

27.    Similarly, the Settlement does not impermissibly modify the GUC Trust

Agreement.  Notwithstanding the fact that New GM is not one of the many enumerated third party

beneficiaries of the GUC Trust Agreement set forth in Section 13.4 of the GUC Trust Agreement,

the GUC Trust Administrator will respond to the arguments made by New GM regarding a

modification of the GUC Trust Agreement, as they suffer from a flaw similar to the arguments

regarding Plan modification.

28.    The argument that Section 5.3(a) of the GUC Trust Agreement is being

impermissibly modified by the Settlement Agreement also relies on the falsehood that Plaintiffs

claims are being allowed at the time the Settlement Agreement is approved.  As New GM

recognizes in its objection, Section 5.3(a) establishes that Resolved Allowed General Unsecured

Claims are entitled to catch up distributions.  To the extent that Plaintiffs claims become Resolved Allowed General Unsecured Claims after estimation, they will receive their catch up distribution in the form of the Adjustment Shares.  Contrary to New GM's allegations, the Settlement is consistent with Section 5.3(a) of the GUC Trust Agreement.

29.    Furthermore, Section 13.13(a) of the GUC Trust Agreement provides the GUC Trust Administrator with the right to amend or supplement the GUC Trust Agreement "without notice to or consent of the Bankruptcy Court or any GUC Trust Beneficiary for the purpose of . . . making any other changes to this Trust Agreement that do not adversely affect the interests of the GUC Trust Beneficiaries or the DIP Lenders in any material respect."  Thus, to the extent that the GUC Trust Agreement would need to be modified to effectuate the terms of the Settlement Agreement, the GUC Trust has the right to do so.

30.    New GM's final argument is that the Settlement Agreement is an impermissible Plan modification because it contemplates that the Adjustment Shares would be issued directly to the Plaintiffs, rather than distributed first to the GUC Trust Administrator, who would then turn around and issue the Adjustment Shares to the Plaintiffs.  This provision of the Settlement was an attempt to limit the administrative expense of the GUC Trust receiving a distribution from New GM and then distributing that same amount out to Plaintiffs.  New GM is not arguing that the GUC Trust would be required to issue the Adjustment Shares to a party other than the Plaintiffs, but rather New GM argues that the GUC Trust has no right to transfer its right to receive the Adjustment Shares without its consent under the Terms of the Sale Agreement.  However the GUC Trust isn't transferring its contingent right to receive the Adjustment Shares, it is simply providing for an efficient distribution of GUC Trust Assets.  In the event the Purchase Price Adjustment

14

provision is triggered and Adjustment Shares are issued, the Plaintiffs would become GUC Trust

Beneficiaries, and only GUC Trust Beneficiaries are entitled to the Adjustment Shares.

### III.    Ortiz Specifically Contemplated this Type of Limited Fund.

31.    The one thing all parties appear to agree on is that *Ortiz v. Fibreboard Corp.*, 527

U.S. 815, 821 (1999) clarified the explicit standards for a limited fund class under  Rule 23

(b)(1)(B).  Ortiz details the historical examples of a limited fund, and nearly all of them are

factually analogous to the situation at hand.  "Classic limited fund class actions include claimants

to trust assets, a bank account, insurance proceeds, company assets in a liquidation sale . . . ."  *Id.*

at 834 (citing Adv. Comm. Notes 697).  While the Supreme Court provided significant historical

background regarding Rule 23(b)(1)(B), the *Ortiz* case itself was concerned primarily with how

far outside the traditional limited fund circumstances a court should wander.  None of that is

relevant here, because we are within the bounds of the historical use of a limited fund.  The facts

before this Court are substantially similar to the circumstances contemplated by the Advisory

Committee that drafted Rule 23.   Indeed, *Ortiz* affirmatively cites several of the Advisory

Committee's "illustrative" examples for limited fund treatment.  *See id.* at 834-35 *citing Dickinson*

*v. Burnham*, 197 F.2d 973 (2d Cir. 1952) (similarly situated stockholders seeking payment from a

fund that was insufficient to pay all their claims); *Guffanti v. Nat'l Surety Co.*, 196 N.Y. 452 (N.Y.

1909) (creditors' claims exceeded debtor's assets and absent creditors would be prejudiced without

a limited fund); *Morrison v. Warren*, 174 Misc. 233 (Sup. Ct. N.Y. Cnty. 1940) (beneficiaries'

claims exceed insurance proceeds).

32.    *Ortiz* identifies three characteristics of a limited fund, all found in the class sought

to be certified here.  First, there must be an inadequacy of the fund to pay all the claims.  There is

no dispute that no claimant is being paid in full on account of any claims asserted against the GUC

15

Trust.  Second, the whole of the inadequate fund must be devoted to the claims.  Here New GM

makes much of the fact that in the event of an estimation that triggers the Adjustment Shares, the

shares could be divided among the economic loss class and the individual personal injury plaintiffs

who are signatories to the Settlement Agreement.  The fact that there are individual pre-sale

personal injury plaintiffs[4] who are also settling and whom will also have their claims estimated by

the Bankruptcy Court does not defeat the nature of the limited fund.  Rather, as explained in Ortiz,

this second prong ensures "that the defendant or estate or constructive trustee with the inadequate

assets had no opportunity to benefit himself or claimants of a lower priority by holding back on

the amount distributed to the class."  *Ortiz*, 527 U.S. at 839.  Again, there is no dispute that none

of the limited fund here is being retained by the GUC Trust or provided to any claimant whose

claim ranks lower in priority than the Economic Loss Plaintiffs.  Finally, Ortiz requires that the

proposed class have a common theory of recovery.  Here, the purpose of certifying the class is to

allow the class to file a class proof of claim which will be estimated to determine whether or not

plaintiffs are entitled to the Adjustment Shares.

33.    Furthermore, as the Advisory Committee's Note to the 1966 Amendment to Rule

23 explained, with regard to limited fund cases:

> In various situations, an adjudication as to one or more members of
> the class will necessarily or probably have an adverse practical
> effect on the interests of other members who should therefore be
> represented in the lawsuit.  This is plainly the case when claims are
> made by numerous persons against a fund insufficient to satisfy all
> claims.  A class action by or against representative members to settle
> the validity of the claims as a whole, or in groups, followed by
> separate proof of the amount of each valid claim and proportionate
> distribution of the fund, meets the problem.  Fed. R. Civ. P. 23

---

[4] New GM repeatedly alleges that pre-sale personal injury plaintiffs that have not signed the settlement agreement and have not filed proposed proofs of claims or joinders are somehow participating in the Settlement, having their claims estimated and providing releases to the GUC Trust.  This is simply not true.  As stated in the Settlement Agreement, only PIWD claimants who are signatories to the Settlement Agreement are participating in any stage of the Settlement.

> Advisory Committee's Note to 1966 Amendment, 39 F.R.D. 69, 101 (1966).

34.     Here, the adverse practical effect of requiring each economic loss plaintiff to file an individual proof of claim is no individual economic loss claimant would be able to trigger the Purchase Price Adjustment.  It is only through estimation of a class proof of claim that the Adjustment Shares may be triggered.

35.     New GM's hyper-technical arguments regarding what constitutes a limited fund would lead to absurd results.  New GM argues that there is not a limited fund here because New GM's stock price necessarily fluctuates.  Under that theory, any assets capable of appreciation or depreciation, or any money in an interest bearing account could not be construed as a limited fund.

36.     Finally, New GM's arguments all suffer from a fatal flaw.  They ignore that the Plaintiffs' rights against the GM estate are defined and necessarily limited by bankruptcy principles.  This is not a case, like the cases New GM cites, where a solvent entity is seeking to limit its liability by use of (b)(1)(B) by manufacturing the appearance of a limited fund.  This case, like the *Manville* case, involves a trust fund created by a Chapter 11 plan.  If there is any such thing as a limited fund, a trust created by a Chapter 11 Plan to pay a class of creditors cents on the dollar must fit the bill.

## **CONCLUSION**

WHEREFORE, for the reasons set forth in the Motion and the foregoing Reply, the Parties respectfully request that the Court: (i) enter an order approving the actions to be undertaken by the GUC Trust Administrator under the terms of the Settlement Agreement and authorizing the reallocation of $13.72 million of GUC Trust Assets for notice costs; and (ii) approve the Settlement pursuant to Bankruptcy Rule 9019; and (iii) grant such other relief as is just and equitable.

Dated:  New York, New York
        March 8, 2019

                                    Respectfully submitted,

                            By:   /s/   *Kristin K. Going*
                                    Kristin K. Going
                                    Clay J. Pierce
                                    Marita S. Erbeck
                                    DRINKER BIDDLE & REATH LLP
                                    1177 Avenue of the Americas
                                    41st Floor
                                    New York, NY 10036-2714
                                    Tel: (212) 248-3140
                                    E-mail: kristin.going@dbr.com
                                            clay.pierce@dbr.com
                                            marita.erbeck@dbr.com

                                    *Attorneys for the Motors Liquidation*
                                    *Company GUC Trust Administrator*

18