# <u>EXHIBIT D</u>

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  IN RE:  GENERAL MOTORS LLC
   IGNITION SWITCH LITIGATION,
4
                                      14 MD 2543 (JMF)
5
   ------------------------------x
6

7                                     New York, N.Y.
                                      March 1, 2019
8                                     9:35 a.m.

9  Before:

10                        HON. JESSE M. FURMAN,

11                                    District Judge

12                        APPEARANCES

13

14 HILLIARD MUNOZ GONZALES LLP
   BY:  ROBERT HILLIARD
15          -AND-
   LIEFF CABRASER HEIMANN AND BERNSTEIN LLP
16 BY:  ELIZABETH JOAN CABRASER
            -AND-
17 HAGENS BERMAN SOBOL SHAPIRO LLP (Seattle)
   BY:  STEVE W. BERMAN
18      Attorneys for Plaintiffs

19 KIRKLAND & ELLIS LLP
        Attorneys for Defendants
20 BY:  RICHARD CARTIER GODFREY
        WENDY BLOOM
21      ANDREW B. BLOOMER
        RENEE SMITH
22
   DEREK POTTS
23      Attorney for Plaintiffs

24

25

 1          THE DEPUTY CLERK:  Counsel, please state your

 2   appearance for the record.

 3          MS. CABRASER:  Good morning, your Honor.  Elizabeth

 4   Cabraser for plaintiffs.

 5          MR. BERMAN:  Good morning, your Honor.  Steve Berman.

 6          MR. HILLIARD:  Good morning, Judge.  Bob Hilliard.

 7   May I introduce Mr. Derek Potts who's come from Houston.  He

 8   has the largest remaining docket of EPS cases.

 9          Subject to an agreement reached late last night with

10   GM, he had requested permission to address the Court.  We

11   discussed it this morning, and I don't believe it's necessary

12   anymore, but he's traveled all this way.  So I wanted to

13   introduce him.  He was prepared to speak to you about his

14   docket cases and the remand issues.  So I appreciate him coming

15   all this way.

16          THE COURT:  Welcome, Mr. Potts.

17          MR. GODFREY:  Good morning, your Honor.  Rick Godfrey

18   on behalf of New Gm.  With me is Mr. Bloomer, Ms. Smith, and

19   Ms. Bloom.

20          THE COURT:  Good morning to you.  I heard that you

21   guys inadvertently headed to the airport instead of coming

22   here.  You know what Freud would say about that; right?  You

23   don't have to comment.

24          MR. GODFREY:  I'm not sure how I could describe my

25   team ignoring my questions like why are we going to La Guardia.

 1          THE COURT:  Welcome.  I'm glad you readied the ship,

 2   so to speak, and everyone is here.  A reminder to speak into

 3   the microphone so that anyone on CourtCall can hear us.  Let's

 4   get into it.

 5          The first item is the bankruptcy proceedings which

 6   have become a little more involved.  I know the motion to

 7   withdraw the reference has been filed.  I accepted it as

 8   related, and it is now assigned to me.

 9          I confess that I have not read the submissions with

10   care at this point.  I have skimmed them, and I did notice, I

11   think, if I'm not mistaken, that New GM is arguing that the

12   motion to withdraw the reference would be unnecessary if

13   Judge Glenn were to grant a stay.  So it raises in my mind the

14   question of what order these things should be addressed in and

15   briefing schedules and what have you.

16          Any thoughts on these issues?

17          MR. GODFREY:  Yes, your Honor.  Rick Godfrey on behalf

18   of New GM.

19          The way the schedule is currently set in the

20   bankruptcy court is that the plaintiffs' proposed settlement is

21   scheduled to be presented and heard on March 11.  Unless there

22   is a change in that schedule, we have no time to await a stay

23   resolution and then brief withdrawal.  Withdrawal briefing

24   should take place now.  We filed an opening brief.  We think

25   it's mandatory.  We also think in the alternative, it's

1    permissive.

2           If Judge Glenn agrees with us due to the substantial

3    overlap, near identical overlap of the issues that this Court

4    has pending, and grants the stay, then there will be no reason

5    for this Court to rule on the withdrawal motion.

6           But if Judge Glenn either does not grant the motion to

7    stay or just simply does not rule on it, that hearing on the

8    approval of the proposed settlement should not take place

9    without the withdrawal motion being decided.

10          I can get into as much detail as the Court wants, but

11   you asked me a precise question on briefing, and my answer is

12   we should be briefing it right now.

13          THE COURT:  Although March 11 is a week from Monday.

14   So that doesn't give a whole lot of time to brief these things,

15   let alone decide them.

16          MR. GODFREY:  We are moving as expeditiously as

17   possible.  We've moved very promptly.  We asked for a schedule

18   on the stay motion.  We filed on the 22nd.  We will be filing

19   our objections on Monday, the 4th.  But the plaintiffs have set

20   a schedule --

21          THE COURT:  And you're filing your objections to the

22   settlement on March 4?

23          MR. GODFREY:  Yes.

24          THE COURT:  Is there a briefing schedule before

25   Judge Glenn on the motion for a stay?

1         MR. GODFREY:  I think it's automatic, your Honor.

2         THE COURT:  But he hasn't altered the default

3    schedule?

4         MR. GODFREY:  Mr. Bloomer is reminding me of

5    something.  If I might have a second, your Honor?

6         THE COURT:  Sure.

7         (Defense counsel conferred)

8         MR. GODFREY:  It's automatic, your Honor.  We had

9    asked for a scheduling conference, but that did not take place.

10   So it's automatic in terms of briefing.

11        THE COURT:  And is it a two-week/one-week briefing

12   schedule?

13        MR. BERMAN:  Our brief in opposition to the motion to

14   stay is due on Monday.

15        THE COURT:  Okay.  Do you have thoughts of how we

16   should be proceeding, what I should be doing?

17        MR. BERMAN:  Yes, I do have thoughts, your Honor.

18        THE COURT:  I would expect so.

19        MR. BERMAN:  Our thoughts, Ms. Cabraser's and I, are

20   as follows:  In its brief -- I just had a chance to skim it,

21   but at page 2, New GM says there is a stay motion before

22   Judge Glenn.  In the absence of a stay, this Court should

23   withdraw the reference to the Rule 23 motion from the

24   bankruptcy court.

25            So our position is let's let this play out because if

1  Judge Glenn enters a stay, by GM's own words in the brief,

2  there is no need for you to wrestle with the withdrawal motion.

3        Now, Mr. Godfrey says that the timing is such that you

4  have to launch into the withdrawal motion because the

5  preliminary approval process may go ahead on March 11, the

6  judge may issue a preliminary approval order and not give a

7  stay, and therefore, you need to decide this.

8        And I suggest that let Judge Glenn decide if he's

9  going to approve the settlement and/or deny a stay.  Then we

10 can deal with the bankruptcy withdrawal motion.  As a practical

11 matter, there is not that big of a rush.

12       THE COURT:  Does it not moot the withdrawal motion if

13 he does approve the settlement?

14       MR. BERMAN:  No.  If he approves the settlement, then

15 as I understand it, New GM will with more force want the

16 withdrawal motion.  If he denies the preliminary approval, then

17 I don't think they're going to want the withdrawal motion.  If

18 he grants preliminary approval, it's almost a de facto denial

19 of the stay, in which case we can brief the withdrawal motion.

20       But there is not this urgency because if he grants

21 preliminary approval, we then have to go and subpoena from Polk

22 and/or New GM the names and addresses of all the class members.

23       So there is going to be a long time period before

24 there is actually a final approval hearing, like five months.

25 Between the date he approves the preliminary approval and the

1   actual final settlement would be a five-month period.

2            THE COURT:  I see.

3            MR. BERMAN:  So I'm suggesting, let's see what

4   happens.  And then if the stay is denied, we can wrestle with

5   the timing of briefing on the withdrawal motion.

6            THE COURT:  All right.  Meaning your position is we

7   shouldn't even set a briefing schedule on the withdrawal

8   motion.

9            MR. BERMAN:  That's correct, until we find out if it's

10  needed.

11           THE COURT:  Right now I assume under the default

12  rules, you would normally have -- I don't know how these things

13  work.

14           MR. BERMAN:  We would normally do it on the default

15  rules.  Our opposition to the mother to withdraw is due next

16  Friday.

17           THE COURT:  Right.

18           MR. BERMAN:  If you want to go ahead with briefing, we

19  would ask for some more time on that because he's wrestling

20  with the stay motion due Monday, and then effectively that

21  would only give us Tuesday through Friday to work on the

22  withdrawal motion.  So at a minimum, we'd want to push that out

23  a little bit.

24           THE COURT:  I know you're capable of doing more than

25  one thing at a time, but I hear you.

1     Mr. Godfrey, there seems some wisdom in letting things

2  play out.  Let me put it this way:  I don't think I would be in

3  a position to decide the withdrawal motion by March 11.  It's

4  not fully briefed, and I haven't started looking at it.  It's a

5  big issue to decide in that timeframe.  It's essentially a week

6  from now.

7     So I don't see much choice in letting things play out

8  and seeing what Judge Glenn does with both the settlement and

9  the stay application.  And then we can assess where there's

10  urgency and what the schedule should be.  No?

11     MR. GODFREY:  Well, first, this is driven by the

12  plaintiffs' insistence of having a March 11 preliminary

13  approval date.  If they change the date, this Court has plenty

14  of time to consider the withdrawal matter.

15     Second, withdrawal is mandatory.  We don't think on

16  the issues at hand, Judge Glenn has jurisdiction or should be

17  deciding them.  Third --

18     THE COURT:  So why did you wait until February 22 to

19  file the motion then?

20     MR. GODFREY:  They filed their papers on February 1 or

21  February 2.  We filed our motion to stay --

22     THE COURT:  Right.  But you've been threatening a

23  motion to withdraw the reference for literally six months, if I

24  remember correctly.  Certainly this is not the first time I

25  heard it.

1    So I would think you could have either filed before

2  they filed their motion.  I think the motion schedule was

3  previously set.  So in that regard, Judge Glenn was

4  entertaining it, or you could have been in a position to file

5  it on February 2.

6    MR. GODFREY:  No.  Because we actually read their

7  papers.  Their papers have serious problems.  We actually tied

8  our motion to the request.  And we demonstrate the overlap.  We

9  demonstrate the inconsistent risk.  We demonstrate the waste of

10  judicial resources, and we do that in our papers based on what

11  they filed.

12    THE COURT:  So what do you propose?

13    MR. GODFREY:  What I propose is either one of two

14  things:  Either they adjourn the March 11 date so that

15  Judge Glenn has the opportunity to determine whether there is a

16  stay that will be entered or not; we simultaneously brief

17  withdrawals so that if Judge Glenn denies the stay motion; this

18  Court can then in due course take up the withdrawal motion.

19  There is no rush on this, other than the rush created by the

20  plaintiffs.

21    THE COURT:  And I don't know how Judge Glenn's

22  calendar operates.

23    What leads us to believe that he actually is going to

24  rule on the settlement on March 11?

25    MR. GODFREY:  That's what plaintiffs have asked for.

1    That's what we're preparing for.  We're preparing for a

2    hearing -- the bankruptcy counsel is for New GM.  We're

3    preparing for a hearing on preliminary approval, at which point

4    they'll be off to the races, at which point they'll be saying

5    it's already a done deal and you don't need to worry about

6    withdrawal.  That's what we'll hear.  This should be decided

7    beforehand.

8            THE COURT:  And what's the harm -- assuming that he

9    does grant preliminary approval, it's just preliminary.

10           So what's the harm?  How does it moot the withdrawal

11   motion?

12           MR. GODFREY:  Well, first, we don't think he has the

13   authority, since withdrawal is mandatory.  Secondly, he will be

14   making rulings on virtually every issue that currently is

15   pending before this Court.

16           These are the identical issues with one narrow

17   exception, and you can't even reach that exception until you

18   make the rulings that are pending before this Court on class

19   certification, on Daubert, and on summary judgment.

20           THE COURT:  Mr. Berman, what's the harm in asking

21   Judge Glenn to put the brakes on settlement approval to first

22   sort out whether to put the brakes on altogether and/or whether

23   he should be resolving these things at all?

24           MR. BERMAN:  Well, First of all, the premise of

25   Mr. Godfrey's motion is there is this huge overlap between

1    what's before you and what's before Judge Glenn.  That's just

2    not true.  There are five good reasons why it's not true.

3    First of all, the parties are not the same.  In the bankruptcy

4    court --

5            THE COURT:  I'm less interested in the merits at the

6    moment.  You'll have your opportunity to brief those I imagine.

7            MR. BERMAN:  Because New GM has known of this schedule

8    since they filed their papers.  They could have filed the

9    motion to withdraw weeks ago, and we would have had time for

10   your Honor to consider this.  So they're the ones crunching the

11   time.

12           At the same time, Judge Glenn is pushing us because

13   this settlement proposal is on its third version.  He wants to

14   get it going.  So we're kind of following the schedule that

15   we've worked out with him ahead of time.

16           So we filed it for a hearing on March 11.  We don't

17   know if he's going to act on it on March 11.  I doubt he will.

18   I assume he's going to take some time to consider the briefing.

19           But again, I harken back to New GM's brief because

20   they're taking a different position now than they did in the

21   withdrawal brief they filed in front of you where they say in

22   their withdrawal brief:  "In the absence of a stay, the Court

23   should withdraw the reference."

24           So they're saying let the stay issue be decided first,

25   and then we can figure out if you should entertain withdrawal

1   from the bankruptcy court.

2           THE COURT:  I certainly think it's hard to square that

3   position with the position that withdrawal is mandatory.

4   Again, I'll presumably have an opportunity to consider those

5   things in due course.

6           I think I'm inclined to reach out to Judge Glenn and

7   just figure out what's going on on his end of things.  I did

8   speak to him earlier this week, but at the time, I wasn't clear

9   what the state of play was.

10          Right now my inclination is to wait and see how things

11  play out in front of him and, on that basis, figure out whether

12  we need to brief the withdrawal motion and, if so, on what

13  schedule.

14          So to that end, plaintiffs need not respond by next

15  Friday, and I certainly am not going to decide it by March 11.

16  I will tell you that.  But I'll talk to Judge Glenn.  That will

17  inform, I suppose, what kind of schedule we need to set.

18          I guess my inclination is to set a default schedule

19  right now that we can always alter in the event that it's

20  appropriate to do so.

21          So, Mr. Berman, what do you propose on that score?

22          MR. BERMAN:  My team would like two weeks from

23  March 8.

24          THE COURT:  All right.  So the more efficient way of

25  saying that is March 22.

1      MR. BERMAN:  Yes, sir.

2      THE COURT:  I'll give you till March 22 and GM until

3  March 29 to file a reply.  If there is reason or need to alter

4  that after I speak with Judge Glenn, I will alert you and we

5  will revisit it.

6      Mr. Godfrey.

7      MR. GODFREY:  To be precise, we asked for a stay or,

8  in the alternative, a stay allowing the briefing and the

9  resolution of the withdrawal motion.  That was what we asked

10  for, was relief on the motion for a stay.

11      So it was a two-part motion, the first part being just

12  a stay.  But in the event the court, that is, Judge Glenn, did

13  not agree with that, then a stay allowing this Court to have

14  full briefing and ruling on the withdrawal motion.

15      THE COURT:  So something in the nature of an

16  administrative stay.

17      MR. GODFREY:  Correct.

18      THE COURT:  But those are issues for Judge Glenn.

19      MR. GODFREY:  Yes.  It wasn't a stay and then

20  withdrawal.  It was a stay, period.  And if you don't grant the

21  stay, then at least enter a stay until the withdrawal motion

22  can be briefed and decided by this Court.

23      THE COURT:  Am I wrong in thinking that if he were to

24  deny a stay, that you would have an ability to appeal that

25  ruling to me?  Is that wrong?

1    MR. GODFREY:  I think we'd have an ability to appeal

2    that ruling, but at that point, I think it would merge as a

3    practical matter in the withdrawal papers.  They are slightly

4    different standards, but it comes to the same outcome

5    eventually.

6          THE COURT:  All right.  Very good.

7          And then taking a step back, more broadly, I take

8    it -- well, what are your respective views -- and they may

9    differ -- on how this intersects with the motions that are

10   pending before me in terms of what order they should be.

11         I take it GM's position is that I should decide the

12   motions pending before me, and then that would have a bearing,

13   if not resolve, the motions.

14         MR. GODFREY:  It's not just GM's position, your Honor.

15   The settlement agreement itself, in comments made by bankruptcy

16   counsel for the plaintiffs, are that this Court's decisions

17   will have impacts.

18         In fact, there is a provision in the proposed

19   settlement agreement that depending upon how this Court rules,

20   they may have to re-do the notice.  They may have to re-do

21   various terms of the agreement.  There are provisions in the

22   agreement which recognize this.

23         In our papers, we outline all the statements they've

24   made over the past three months indicating that they are

25   dependent upon -- and this Court's rulings have an ultimate

1    bearing upon -- the terms of the settlement, the proposed

2    settlement.

3         THE COURT:  And I take it that you're moving to

4    withdraw the reference only as to the Rule 23 motion before the

5    bankruptcy court; correct?

6         MR. GODFREY:  That's correct.

7         THE COURT:  All right.

8         Mr. Berman, did you want to say anything on that

9    front?

10        MR. BERMAN:  Mr. Godfrey is correct that your rulings

11   on summary judgment in particular will have bearing on

12   ultimately who gets money out of the adjusted shares.

13        I don't think your ruling on class certification will

14   impact the bankruptcy for a couple of reasons:  One, before you

15   on class certification is a test case of just three states; and

16   two, before you is a litigated Rule 23(b)(3) class.

17        Before the bankruptcy court is a 23(b)(1)(A) class

18   which is a limited fund class settlement which is a whole

19   different standard, and it's a settlement of class which has a

20   different standard as well.  So the class certification rulings

21   I think are very much different.

22        THE COURT:  All right.  But it sounds like everybody

23   is in agreement that it probably makes sense to take up the

24   pending motions before me before turning to the bankruptcy

25   motions in the event that I do withdraw the reference.

1    MR. BERMAN:  That's correct.

2    THE COURT:  Okay.  There is a lot going on.  We will,

3  I'm sure, have more to discuss on this front.  In the meantime,

4  that is the schedule we'll follow.

5    I will tell you that I am certainly trying and will

6  try to get you rulings on the pending motions as soon as

7  possible.  You might have inferred that I've been a little busy

8  over the last few months.  And in that regard, there are so

9  many hours in the day.  So it is what it is.  But I'm going to

10  do as best I can.

11    Mr. Godfrey.

12    MR. GODFREY:  I know the Court has been busy.

13    THE COURT:  Yes.  Partially because of you and

14  unrelated matters, but we don't have to discuss that.

15    MR. GODFREY:  I was playing back in my mind when you

16  said I think we're all in agreement.  I'm not sure I understood

17  the Court correctly.  So if I could rephrase what I think we're

18  in agreement on.  I think the withdrawal motion needs to take

19  place before Judge Glenn decides any issues on the proposed

20  settlement.

21    I think before any issues on the proposed settlement

22  can be decided, this Court needs to rule on various issues.  I

23  cannot disagree more with Mr. Berman about his characterization

24  of the class issues, but that's for another day.  So I'm not

25  sure --

1    THE COURT:  I think I was referring just to in the

2    event that I do withdraw the reference, what order I should

3    take up the motions.  There it seems like everybody is in

4    agreement that the motions that are already pending before

5    me --

6    MR. GODFREY:  I apologize.  I misunderstood.  Yes.  I

7    agree with that.

8    THE COURT:  Very good.

9    Anything else to discuss on that front?  All right.

10   Good.

11   Mr. Berman, who is counsel in the case, the motion to

12   withdraw the reference case?  I don't have the docket number

13   handy, but on your side.

14   MR. BERMAN:  Ms. Cabraser and I, along with our

15   bankruptcy lawyers.

16   THE COURT:  Have you entered a notice of appearance in

17   the matter?

18   MR. BERMAN:  No, we have not.  We're still trying to

19   figure out why that happened.  A new case was opened.  If we

20   need to file a notice of appearance, we will do so.

21   THE COURT:  My understanding of how things these

22   things work -- I confess I think this is the first motion to

23   withdraw I've received as a judge.  But I think it gets filed

24   in the bankruptcy court, and then it's transmitted to the clerk

25   of the district court and opened as a new case.  So that's why

1   it happened that way.

2        I would just urge you to enter a notice of appearance

3   so that in the event I do issue orders or there is any need to

4   do anything, you will actually receive them.

5        MR. BERMAN:  We will get that done today.

6        MS. CABRASER:  We'll just do one omnibus notice of

7   appearance for all the counsel so that everybody is on the

8   docket.

9        THE COURT:  Great.  Excellent.

10       MR. GODFREY:  We will also check that, your Honor.

11  Obviously bankruptcy counsel is resident here.  We at Kirkland

12  are pro hac vice.  So we will check that as well.  We may have

13  to enter an appearance in that also.

14       THE COURT:  You all should definitely figure it out.

15  I think there was counsel certainly on your side, but I don't

16  remember who it was.

17       MR. GODFREY:  It was Paul, Weiss and King & Spalding

18  who are resident here.  But having heard what you said to

19  Mr. Berman, we'll figure it out on our side.  We may be filing

20  an appearance also.

21       THE COURT:  Okay.  On the agenda, items 2 through 4,

22  is there any need to discuss anything?  It doesn't look like

23  it.  That is, coordinated, related actions, document

24  production, and deposition updates.

25       MR. GODFREY:  Just briefly, your Honor.  During the

1   last status, I had put a marker down about a case in Maryland,

2   the Mary Schroeder case.  I am pleased to report that the

3   matter and the issue have now been resolved.  So we will not

4   have any risk of needing this Court's intervention, and I

5   thought the Court should be aware of that.

6           THE COURT:  Good.  Thank you.

7           MR. GODFREY:  Secondly, Ms. Bloom has been very busy

8   in the last three months.

9           THE COURT:  I think the last few years.

10          MR. GODFREY:  Well, I'm informed that the status is

11  we're now down to 174 MDL cases.  Close to 90 percent of all

12  cases that have been filed in the MDL have now been resolved.

13  Over half of the remaining cases were filed last year or early

14  this year.

15          So the progress in terms of an endgame resolution for

16  the personal injury docket has been significant.  We're not

17  quite done yet, but even this week -- and Ms. Bloom can report

18  further either now or in chambers.  She's been negotiating like

19  mad and getting some resolutions.  So the numbers are changing

20  almost on a daily and weekly basis.

21          THE COURT:  All right.  Can I just get clarification.

22  This is sort of merging into the next item on the agenda.  You

23  said 174.  Your letter of February 22 indicated less than 350,

24  including 176 post-sale order claims.

25          Are you referring to --

1        MR. GODFREY:  I'm referring to just this Court, not

2    the presale.

3        Ms. Bloom is going to take over now.

4        THE COURT:  I think there are some presale claims

5    pending before me.

6        MS. BLOOM:  So there are 172 remaining post-sale

7    claims, and I do think that by the end of March, a good number

8    of those will be gone.  We have settlement conferences set up

9    for one that affects 34, one that affects 8, one that affects

10   7.  I'm optimistic that a good number of these will all be gone

11   by the end of March.

12       The only thing I'd say is there is a group of 68

13   claims that remain, just so that you know, by one firm.  They

14   have informed us that they have a number of additional claims

15   that they have not yet filed that they're working through.

16       So then for us, in terms of being able to work with

17   them to try to resolve those post-sale claims, there is a big

18   process where we have to get the information from them and

19   review it internally.

20       So for that group of 68 claims, post-sale claims, it

21   may not be until summer now that we can resolve those or

22   attempt to resolve them in light of that additional information

23   that we have learned.  So you may see new claims filed, and I

24   would anticipate they'll all be from that one firm.

25       THE COURT:  Which firm is that?

1    MS. BLOOM:  And then your Honor is correct.  On the

2    presale docket, we've made really tremendous progress, and that

3    impacts both the personal injury/wrongful death claims that

4    have been pending before Judge Glenn, as well as your Honor.

5    We are now down to 110 presale claims.  98 of those

6    are with Mr. Potts, and the parties are meeting next month,

7    March 21, again, with Mr. Black as mediator.  He is the same

8    mediator that we used for the Bailey firm in Houston, and we

9    had good success.

10    And we're hopeful not only to resolve those presale

11    claims but also that we'll be able to resolve Mr. Potts'

12    remaining claims in the MDL that are post sale.  So then you

13    really would be down to just a handful of presale claims.

14    THE COURT:  You said 110 presale claims?

15    MS. BLOOM:  Yes.

16    THE COURT:  That's presale claims pending on the MDL

17    docket?

18    MS. BLOOM:  Yes.  Before your Honor.

19    THE COURT:  So I'm confused because the letter you

20    guys filed yesterday seems to have 171 in that category.

21    MS. BLOOM:  So after filing the letter that you

22    reviewed late last night, we filed the announcement of a

23    settlement that we just entered into on Wednesday where we

24    settled a bunch of presale claims.  Yes.

25    So that meant that -- so we were struggling with that.

1    We hadn't signed the term sheet.  So I had the team send in the

2    letter without incorporating those numbers and then reported

3    the numbers to your Honor last night in a letter.

4            THE COURT:  All right.  Are you filing anything with

5    respect to that settlement before me?

6            MS. BLOOM:  Your Honor, that's good actually a good

7    point.  The other thing I wanted to bring up is that because a

8    number of these settlements now involve presale claims, the

9    mediator that we have used, Dan Balhoff, who was the original

10   mediator for the Hilliard post-sale docket, requested that he

11   would like the same process that was used then which is that he

12   be appointed special master.  It does help in terms of being

13   able to send out offer letters to have the imprimatur of the

14   Court.

15           So there will be about four or five of these

16   settlements actually starting next week where we will be filing

17   with your Honor papers very similar to what we did with the

18   post-sale docket where we will be seeking to have a qualified

19   settlement fund set up that your Honor will oversee and also to

20   have Mr. Balhoff appointed as the settlement special master for

21   those cases.

22           THE COURT:  I think you indicated in the letter

23   reporting on the settlement with Mr. Hilliard's presale docket

24   a similar intention.  Correct?

25           MS. BLOOM:  That's exactly right.  He will be one of

1    the dockets that will be coming along with the very same sort

2    of paperwork.  That's right.

3          THE COURT:  Will it be same as the one that I

4    previously approved?

5          MS. BLOOM:  Yes.  They will be virtually identical.

6    You'll see a trust agreement, and then you'll see the same

7    qualified settlement fund administrator, Scott Freeman, that

8    we'd be proposing in each of these qualified settlement funds.

9    And then you will see in each of them a motion to appoint

10   Mr. Balhoff as the settlement special master.  So, yes.  They

11   will be virtually identical but just different plaintiff law

12   firms, different aggregate settlements.

13         THE COURT:  It would be helpful if when you file it,

14   if you could file a letter just identifying if there are any

15   changes from the motion that I approved several years ago on

16   that front, just to sort of draw my attention to those.  That

17   would be helpful.

18         MS. BLOOM:  Sure.  I don't imagine that there would be

19   anything really that has changed.  It's just for tax purposes

20   you need separate funds for the different plaintiff lawyer

21   groups and the different groups that are putting money into the

22   fund.  So they'll be virtually identical, but I will, to the

23   extent there is anything different, make sure to do a cover

24   note.

25         THE COURT:  All right.  Great.

1    Mr. Hilliard, anything on that?

2    MR. HILLIARD:  On behalf of new Gm, your Honor, all

3  conveyed to you accurately.

4    THE COURT:  Mr. Godfrey.

5    MR. GODFREY:  I was thinking that when we send in the

6  papers, we should update the Court on statistics so we all have

7  the current statistics about where we stand just in terms of

8  pending cases, etc.

9    Either way, we're at the 90 percent mark.  In terms of

10  a plan, there is one group that's going to be at the end.  The

11  theory is that the number of new cases except for this one

12  group has dropped off precipitously, but I can't make any

13  representations to the Court that that won't change at some

14  time.

15    THE COURT:  Certainly there is no objection if you

16  want to update me sooner, but there is the monthly report.  As

17  you saw from my endorsement, I think, given that the numbers

18  are low enough now, I think we should actually move to an

19  actual spreadsheet as to each individual plaintiff and where

20  things stand as to that plaintiff and so forth.

21    One follow-up question.  Ms. Bloom, you referred to

22  the 68 pages remaining from one firm that has a number of other

23  unfiled claims.

24    Can you tell me what firm that is.

25    MS. BLOOM:  That is the Langdon & Emison firm.  That

1   is the same firm that we settled with this week, an aggregate

2   settlement of their presale docket.  So it is also the same

3   firm that earlier -- I don't remember if it was before we met

4   with you or sort of in the interim, but we also sort of did an

5   aggregate settlement with them for one set of their post-sale

6   claims that were affiliated with one referring counsel.  Now

7   we're dealing with what's left of their post-sale docket.  So

8   that's sort of the last big push I think that's here really

9   after the Potts firm.

10          THE COURT:  All right.  Very good.

11          Now, Mr. Potts, I know you came all this way.  If

12   there's anything you want to say, you're welcome to.

13          MR. POTTS:  If you will give me just one minute,

14   your Honor.

15          When we talk about post-sale claims, we have a group

16   of claims that are not ignition switch I submit in that bucket.

17   We have 23 of those.  Those are ESC or EPS claims.  As the

18   Court knows, those cases have not been worked up.  There has

19   been virtually no discovery.

20          I read your order a couple days ago saying you were

21   inclined to remand those.  I just want to let you know we

22   wholeheartedly support that.  Those people have waited for

23   years and have years more to wait because there has been no

24   discovery done.  So as soon as that could be done, we would ask

25   the Court to do that.

1    THE COURT:  All right.  We'll turn to that in a

2  moment.  I'm happy to hear further from you on that if you

3  want.

4    Ms. Smith.

5    MS. SMITH:  Yes, your Honor.  I just want to clarify

6  that the Court's order that I believe Mr. Potts is referring to

7  related to a certain subset of 18 claims.  The Court has not

8  addressed -- and the parties all agree that we are not going to

9  address -- what the next steps are for the group of what we

10  call order 153 claims.  So I just wanted to make sure there was

11  a clarification of what groups we were talking about here.

12    THE COURT:  I was planning to ask for that

13  clarification since there are a lot of numbers being thrown

14  around even as to the 18.  One of you says 17.  The other says

15  18.

16    MS. SMITH:  We're good with 18.  It should be 18.  So

17  I apologize for the confusion.

18    THE COURT:  And the 23 that Mr. Potts just referred to

19  is in the pot, no pun intended, of cases that I thought there

20  was agreement.  And in fact, I think I already ruled on it in

21  order 160 that there's basically a 60-day period during which

22  you're going to try and resolve them.  If you don't, then we

23  would go from there.

24    Is that correct?

25    MS. SMITH:  Thank you, your Honor.  That is correct.

1    Just so the record is not unclear about this, we do

2    not agree that there has been no discovery related to those

3    cases, but we don't need to address that now.  But I just

4    wanted to respond briefly to that.

5    THE COURT:  Mr. Potts, you can tell me if you think

6    otherwise, but it sounds like we should take that up after the

7    end of that 60-day period, if you will.

8    I think the inclination that I shared in my

9    endorsement on the agenda letter, suffice it to say, I would

10   probably have the same inclination with respect to non ignition

11   switch claims that remain after that 60-day period, which is to

12   say my gut at the moment is that those should probably be

13   remanded sooner rather than later if they're not resolved.

14   MR. POTTS:  I would agree.  GM just recently agreed to

15   mediate those.  So we were going to attempt to mediate those

16   with the rest of our docket on March 21.

17   THE COURT:  All right.

18   MR. POTTS:  Thank you.

19   THE COURT:  Good luck to you all on that.

20   So sticking to the agenda letter, we've more or less

21   moved into item number 5.  But wave one and wave two, wave one,

22   there are just the two remaining plaintiffs and a fully

23   submitted summary judgment motion that I will rule on

24   relatively soon I hope.

25   Is there anything to discuss as to wave two or the

1    order numbered 137, 140, and 148?

2            MR. GODFREY:  No, your Honor, not from New GM's

3    perspective.

4            MR. HILLIARD:  No, your Honor.

5            THE COURT:  As to the personal injury next steps, I

6    think I resolved -- "resolved" may be the wrong word -- but

7    took care of most of it in order number 160, including the

8    dispute with respect to two of the plaintiffs, Cleveland and

9    Gabriel.

10            MS. BLOOM:  I should also just inform your Honor with

11    respect to the Cleveland and Gabriel matter, the parties were

12    able to work out just yesterday.  Because the plaintiff firm is

13    based in New Orleans and Mr. Balhoff, who has mediated hundreds

14    of these claims, is based in Baton Rouge which is right close

15    to there.  So the parties have agreed to mediate with him.  So

16    we will not need the services of Judge Cott.  We will be aiming

17    to have that mediation occur in March as well.

18            THE COURT:  Great.  Thanks for letting me know that.

19            Am I correct that the plaintiffs who would be subject

20    to order number 160 -- that in that process that they would

21    include pro se plaintiffs?

22            MS. SMITH:  Yes.  There will be a couple of plaintiffs

23    who are pro se I think excluded from the process which would be

24    ones that are in what we call the order 137 process where

25    counsel has moved to withdraw and we don't know where they're

1    going to end up.

2         But I think there are two or three that are in the

3    wave process or subject to that wave three where they've gone

4    through order 137.  They've either amended or complied or

5    whatever they needed to do, and their claims still exist.

6         They are proceeding pro se.  So the next steps on

7    those claims we thought -- and I think agreed by Mr. Hilliard

8    and his team -- would be to include them in the wave as well.

9         THE COURT:  All right.  There is one pro se plaintiff

10   who has filed a number of things before me, Ms. Kramer.

11        Her case I presume would be in that list.  Is that

12   correct?

13        MS. SMITH:  That is correct, your Honor.

14        THE COURT:  So I am concerned.  I just want to make

15   sure -- the procedures are complicated, and I periodically see

16   lawyers who file things saying that they're befuddled by the

17   number of orders and the number of ECF hits and so forth.  All

18   the more confusing for a nonlawyer to navigate.

19        I want to make sure that any pro se litigants are

20   clearly advised of and capable of understanding what they need

21   to do in order to comply with order 160 and whatever else they

22   need to do.

23        Any thoughts on that?

24        MR. HILLIARD:  Your Honor, we took your endorsement to

25   heart.  We're familiar with Ms. Kramer and are sensitive to and

1  have communicated with her throughout the years.  We intend to

2  work with GM to unbefuddle procedure to be sure that it is

3  simple, direct, concise, and be available as well to answer any

4  questions along the way of the pro se plaintiffs.

5       I'm happy to submit it to the Court for the Court's

6  review to be sure that you agree that this is what the Court

7  expects us to do.  But I think we're clear as to the purpose

8  and to be sure that they don't feel overwhelmed or overworded,

9  if I can use that, in regards to what they need to do in order

10  to protect their interests.

11       THE COURT:  All right.

12       Mr. Godfrey.

13       MR. GODFREY:  We agree with that.  We think it's

14  actually beneficial, not just to the Court but to the parties,

15  to try to simplify procedures.  It will probably save us more

16  time and money in the long run if we do that.  So we'll work

17  with the plaintiffs in that regard pursuant to this Court's

18  suggestion.

19       THE COURT:  What are your thoughts?  I guess I was

20  thinking at a minimum that having some sort of notice in more

21  lay terms that would be served on any pro se plaintiffs, along

22  with whatever orders are applicable, would make sense but sort

23  of translating those into more understandable lay terms.

24  That's one option.

25       Another option would be to sort of have a separate

1    order that would lay it out in more clear, understandable ways

2    for an unrepresented party.  In either case, I would think it

3    would make sense to sort of settle on that before the list of

4    wave three plaintiffs is nailed down or maybe even before

5    March 20 when I think order number 160 requires GM to serve

6    those plaintiffs with its notice.  It might make sense to have

7    something done before then so that you could serve along with

8    that notice whatever we come up with.

9         Thoughts.

10        MR. HILLIARD:  A separate order makes sense to me,

11   Judge.  It could be the deadlines would be almost identical to

12   those who are represented, but we might be able to be fairly

13   flexible to something that may come up, and separate orders

14   might keep it cleaner in regards to how we handle pro se

15   plaintiffs.  We'll confer with GM this afternoon and tomorrow

16   to try to get it started quickly.

17        THE COURT:  So you why don't you report back let's say

18   within a week so that we hopefully can have something resolved

19   before that March 20 deadline.

20        Does that make sense?

21        MR. HILLIARD:  Yes, sir.

22        THE COURT:  I recognize, Mr. Hilliard, you don't

23   actually represent these people, but if I could task you with

24   on behalf of the Court, I suppose, representing their interest

25   in terms of me figuring out a good way of handling this, that

 1   would be helpful.

 2                MR. HILLIARD:  I will, Judge.

 3                THE COURT:  Great.  Thanks.

 4                Do we know how many pro se plaintiffs are already in

 5   this group approximately?

 6                MS. SMITH:  I believe it's two is what Mr. Hilliard is

 7   saying.

 8                MR. HILLIARD:  Pardon me for interrupting.  Goodwin is

 9   the second one.  So Kramer and Goodwin.

10                THE COURT:  All right.  I'm pleased that it's not a

11   large number, but I do want to make sure that they are clearly

12   advised of what they need to do so that they don't run into

13   trouble inadvertently.  All right.  Very good.  So I'll expect

14   something within a week on that front.

15                So that leaves 18 I take it we're now in agreement.

16                Is that correct?

17                MR. GODFREY:  Yes.

18                THE COURT:  All right.  I think, as we've discussed,

19   I've shared my inclination.  I don't really see why the

20   12(b)(6) and statute of limitations repose arguments that New

21   GM wants to bring -- I don't see what efficiency is gained from

22   having those litigated before me as opposed to sending them

23   back to a transfer judge for any number of reasons.  So I

24   really wouldn't be inclined to keep those and would be inclined

25   to remand them.

1       By contrast, to the extent that New GM thinks that my

2  December 2017 opinion with respect to airbag deployment would

3  dispose of any cases in that group, I think there is a stronger

4  argument that, given my familiarity with those issues and what

5  have you, that New GM should at least have an opportunity to

6  make that argument.

7       So I've got an agreed upon joint proposal I take it

8  for timing and procedures for remand.  I don't know if that

9  means that you've accepted my inclination.

10      MR. HILLIARD:  We've learned that your inclinations

11  are usually best accepted.

12      THE COURT:  Sometimes I change my mind.

13      MR. HILLIARD:  Sometimes you do.  We've spent time

14  together and have come up to this agreement, subject to the

15  Court's approval, on our suggested next step for remand.

16      THE COURT:  All right.  Ms. Smith.

17      MS. SMITH:  Yes, your Honor.  We also took your

18  inclination to heart.  Although we passionately -- and I mean

19  passionately -- believe these claims would be served by

20  remaining here, at the same time that this agreed process is

21  going on, we will be working on settling these claims as well.

22  So we're, again, cautiously optimistic that at least some of

23  these will resolve before we ever get through the process.

24      But taking the Court's inclination to heart and kind

25  of wanting to get peace and having these at least 18 procedures

1   resolved, we did work out an agreement with lead counsel last

2   night on this.  But to make clear, for the next steps on the

3   next 60 claims, this is of course without prejudice to

4   maintaining our position on whether they should be remanded or

5   not.

6          THE COURT:  Understood.  So this proposal looks good

7   to me.  So I'm happy to bless it.  I would think it would make

8   sense to memorialize this in a stand-alone order separate and

9   apart from the post status conference order.  So why don't you

10  convert this into a proposed order and let's say submit it

11  within the next week as well.

12         Does that make sense?

13         MS. SMITH:  Yes, your Honor.

14         MR. HILLIARD:  Yes, sir.

15         THE COURT:  As I said before, I think we can defer

16  discussion of the 23 cases or however many other order 153

17  cases there may be until the 60-day period is over.

18         Mr. Potts, is that good with you?

19         MR. POTTS:  It is.

20         THE COURT:  Excellent.  Are there other cases in the

21  mix that wouldn't fall in one of the buckets that we just

22  discussed?  Anything else to discuss?

23         MS. SMITH:  I believe from New GM's perspective on the

24  personal injury cases, that covers it.

25         THE COURT:  What about the 110 presale order claims?

1   Where do those stand?

2          MS. BLOOM:  So I really think by the end of March

3   there is just a handful remaining.  If we don't have a

4   successful resolution with the Potts firm, then we would still

5   have their 98 or so claims plus the handful of others

6   remaining.

7          So what I would suggest is that we take this up at the

8   next status or some such thing when we have a better sense of

9   where we are with that, but I'm cautiously optimistic.

10          THE COURT:  Mr. Potts, to the extent that you have the

11   largest number of those, does that make sense?

12          MR. POTTS:  Yes.  I believe by March 21st, we'll know

13   where we stand.

14          THE COURT:  Good luck on that front as well.  I'll

15   leave it to you to figure out if Mr. Potts has the majority of

16   those claims and we're going to discuss them at the next

17   conference, then it might make sense for him to come back so

18   that we can have an informed discussion about what to do if any

19   of those cases remain.

20          Since I think it makes sense to raise it now, my

21   suggestion about a tracking spreadsheet of some sort.  I take

22   it from the last line of your letter from yesterday that you're

23   okay with that and agree it would be a good idea, and you're

24   all nodding.

25          MR. GODFREY:  From New GM's perspective, I think at

1    this stage it's appropriate and necessary.

2         MR. HILLIARD:  We agree, Judge.  It's a good idea.

3         THE COURT:  It would obviously be helpful if you are

4    conferring about it to make sure everybody is in agreement as

5    to who the plaintiffs are and what orders they're subject to

6    and what upcoming deadlines there are and so forth.

7         I think GM has been filing these letters.  If you

8    could make sure that you confer before you file them to make

9    sure you work out numbers and who they are and so forth, that

10   would be great.  All right?  Terrific.

11        MR. GODFREY:  Your Honor, in that regard, do you want

12   to see a draft of the formatting before we actually populate it

13   with the information to make sure it captures what you're

14   interested in?

15        THE COURT:  Sure.  I think that's a great idea.  We

16   can do that informally.  If you just want to email my chambers,

17   we can give you feedback.

18        MR. GODFREY:  We don't want to prepare something and

19   then your Honor says you're missing the three pieces of

20   information you want.  So we'll do that and send it to your

21   chambers.

22        THE COURT:  The thing that I'm most eager to ensure,

23   number one, is that we're aware of the status of every

24   plaintiff and that we're aware of who the plaintiffs are; two,

25   that they're all subject to something, not just sort of

1   languishing; and number three, that we are all, including

2   myself, aware of whatever upcoming deadlines there are so that

3   we can kind of monitor them and make sure that what needs to be

4   done does in fact get done and what have you.

5        It partially dovetails with other items on my agenda

6   from the endorsement which are there are these motions that are

7   kind of floating out there.  And sometimes it takes us time to

8   get to the bottom of whether these things are live, moot, etc.

9        I think it would be helpful in terms of that as well.

10  So that would be great.  Why don't you just share it

11  informally.  Then once we're all on the same page, you can

12  start submitting those monthly.

13       Ms. Smith, did you want to say something?

14       MS. SMITH:  I didn't know if you wanted us to address

15  your two specific questions about terminating certain dockets.

16       THE COURT:  Sure.

17       MS. SMITH:  Number two I think on your agenda was the

18  docket number 5383.  I believe New GM and lead counsel both

19  believe that those motions and claims on that docket may be

20  terminated if they have been mooted.

21       THE COURT:  Okay.

22       MS. SMITH:  Number 3 on your agenda is the status of

23  the motion to dismiss 25 claims.  And that's docket 5974.  All

24  the claims on that motion except for one we agree may be

25  terminated, and that is the claim of Ms. Uglow, case number

1  15 CV 04385.

2       To what your Honor was saying, in going through this

3  process, to answer your question, we realize that Ms. Uglow had

4  never responded to the motion to dismiss.  Under order 153,

5  there was a requirement to either state she was going to amend

6  or withdraw certain things.  So we will probably send a letter

7  on that coming up.

8       Other than Ms. Uglow's claim, that docket may also be

9  terminated.  I believe lead counsel is in agreement with that

10  as well.

11       THE COURT:  Can I propose, in part for my own internal

12  housekeeping reasons and in part just to make sure that things

13  are 100 percent clear, does it not make more sense to deny the

14  motion in its entirety and then you can file a new motion with

15  respect to Ms. Uglow and serve that on her?

16       MS. SMITH:  I think that should be fine.  We can do

17  that within the week or so.

18       THE COURT:  Good.  I'll take care of that then.  That

19  would be helpful.

20       I assume we've covered at least what we can cover in

21  open session on the settlement front.

22       Is there anything further to discuss out here?

23       MR. GODFREY:  Just one second, your Honor.  Let me

24  look through my notes.

25       THE COURT:  Sure.

1       MR. GODFREY:  Not from New GM's perspective,

2    your Honor.

3            THE COURT:  Anything else from the front table?

4            MR. HILLIARD:  Not from the PI side, Judge.

5            MR. BLOOMER:  Nothing from GM.

6            THE COURT:  In a few minutes, we'll retire to the

7    robing room and have an in-camera discussion.  A couple

8    questions before we do so.  Number one, I assume no need for a

9    court reporter in that session.

10            MR. HILLIARD:  No, sir.

11            THE COURT:  Everyone said no just for the record.

12            Number two, we should figure out a next conference

13    date.  So thoughts on that front.  It would probably make

14    sense -- it sounds like certainly by the end of March a lot

15    will be clearer on the PI/wrongful death side.  I'm not sure

16    how much there is to discuss on the economic loss side until I

17    resolve the motions and sort out the reference issues, etc.

18            Sometime in April maybe, given --

19            MR. HILLIARD:  Your Honor, I would ask the Court if

20    the 17th, 18th, or 19th of April would work.  I have a trial in

21    the first part of April that will go, and I would be

22    unavailable the in first two weeks.

23            THE COURT:  The 19th definitely doesn't because

24    Passover starts that evening.  I could do the 17th or 18th.

25            MR. GODFREY:  I'm flying back from vacation on the

1    17th, but I could do the 18th, your Honor.

2           THE COURT:  I'm relieved to hear that you take

3    vacation, Mr. Godfrey.

4           MR. GODFREY:  I hit a certain age, and my wife is

5    enforcing the rule, at least occasionally.

6           THE COURT:  Which day are you flying back?

7           MR. GODFREY:  The 17th.  So I could be here on the

8    18th.

9           THE COURT:  Does the 18th work for everybody?

10          MS. CABRASER:  I think it works for plaintiff,

11   your Honor.

12          MR. HILLIARD:  It works.

13          THE COURT:  So let's do the 18th at 9:30.  I will look

14   for your proposed order memorializing what we've done today in

15   the next few days.  As discussed, you should submit a separate

16   order with respect to the remand issues and the pro se issues

17   and what have you.

18          Anything else?

19          MR. GODFREY:  No, your Honor.  Thank you.

20          THE COURT:  Great.

21          MR. HILLIARD:  Thank you, your Honor.

22          THE COURT:  Depending on how many people are coming

23   into the robing room, we may need a few extra chairs.  So if

24   you could help my staff carry some in, that would be great, and

25   I'll see you in there in a few moments.  Thanks.