UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
IN RE: MOTORS LIQUIDATION COPMANY,
formerly known as GENGERAL MOTORS
CORPORATION,

        Debtor.
-------------------------------------------------------x

ROGER DEAN GILLISPIE,

        Appellant,

    -v-                                                                No. 17 CV 8538-LTS

WILMINGTON TRUST COMPANY, as
Trustee for and Administrator of the Motors
Liquidation Company General Unsecured
Creditors Trust and GENERAL MOTORS
LLC,

        Appellees.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Roger Dean Gillispie ("Appellant") appeals the Memorandum Opinion and Order entered by Judge Glenn, in In re Motors Liquidation Co., 576 B.R. 761, 765 (Bankr. S.D.N.Y. 2017) (the "Bankruptcy Decision"), denying Appellant's motion to pursue claims against General Motors LLC ("New GM") pursuant to 42 U.S.C. section 1983 ("Section 1983") and Ohio state law for vicarious liability for the acts of GM employees who, in concert with government actors, allegedly deprived him of his civil rights, or, alternatively, to permit Appellant to file a post-bar-date proof of claim against Motors Liquidation Company ("Old GM"), as represented by Wilmington Trust Company as trustee and administrator of Motors Liquidation Company General Unsecured Creditors Trust ("GUC").

The Court has jurisdiction of this timely-filed appeal pursuant to 28 U.S.C. section 158(a)(1).

The Court has considered carefully the submissions of all parties and, for the following reasons, affirms the Bankruptcy Decision.

BACKGROUND

Familiarity with the factual and procedural background of this appeal is presumed. Unless otherwise noted, the parties do not dispute the relevant facts, which are summarized below.

In 1991, Appellant was convicted of rape, kidnapping, aggravated robbery, and gross sexual imposition, stemming from two separate incidents in 1988. See Bankruptcy Decision, 576 B.R. at 765. Later that year, he was again convicted upon a re-trial, and his conviction was affirmed in state court eight times. See id. at 765-66, 765 n.1 (detailing the history of Appellant's criminal proceedings). Appellant was imprisoned from 1991 until after the sale of the assets and bar date described below.

"On June 1, 2009 . . . , Old GM and certain of its affiliates (collectively, the "Debtors") filed Chapter 11 petitions in [the bankruptcy c]ourt." Id. at 766. On June 2, 2009, the bankruptcy court entered an order approving the procedures to sell substantially all of Old GM's assets pursuant to 11 U.S.C. section 363 ("Section 363"). Id. citing (citing In re Motors Liquidation Company, et al., 09-50026-MG, Docket Entry No. 274).

The bankruptcy court ordered that the Debtors send notice of the sale procedures to all known creditors by mail and publish notice in several "global, national, and local newspapers." Bankruptcy Decision, 576 B.R. at 766 (citing In re Motors Liquidation Company,

et al., 09-50026-MG, Docket Entry No. 274). On July 5, 2009, the bankruptcy court entered an order authorizing the sale of substantially all of Old GM's assets to New GM pursuant to Section 363. Id.; In re Gen. Motors Corp., 407 B.R. 463 (Bankr. S.D.N.Y. 2009) (subsequent history omitted) (the "Sale Order"). The sale was free and clear of all debts and liabilities except those explicitly assumed in the Sale Order, which are irrelevant to the current action. Sale Order, 407 B.R. at 481-82.

On September 16, 2009, the bankruptcy court entered an order establishing a bar date of November 30, 2009, for any pre-petition creditor to file a proof of claim against Old GM. Bankruptcy Decision, 576 B.R. at 766-67 (citing In re Motors Liquidation Company, et al., 09-50026-MG, Docket Entry No. 4079). The bankruptcy court ordered that notice of the bar date be disseminated in a manner similar to the sale procedures. See id.

Although Old GM's agent proffers evidence that notice of both the sale and of the bar date, along with a proof of claim form, were sent to Appellant's last known address, no party disputes that Appellant did not actually receive the correspondence owing to his continued incarceration. See id. at 766. Appellant did not timely file a proof of claim. Id.

On December 15, 2009, Appellant filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio. Appellant alleged, inter alia, that, prior to his criminal trial, he was not provided with the reports of the detectives who originally investigated the crimes, in which the detectives eliminated Appellant as a suspect.[1] Gillispie v.

---

[1] Although the parties have not proffered a specific date on which Appellant became aware of the existence of these reports, Appellant does not contest that he was aware of them prior to Old GM's filing of its bankruptcy petition. See Gillispie v. Timmerman-Cooper, 835 F. Supp. 2d at 492 (stating that on February 23, 2008, Appellant filed a motion for a new trial in state court based on, inter alia, the existence of the reports by the original investigators).

Timmerman-Cooper, 835 F. Supp. 2d 482 (S.D. Ohio 2011).  The district court found that the withholding of these reports deprived Appellant of the opportunity to impeach the quality of the subsequent investigation by another detective that led to his arrest, in violation of Brady v. Maryland, 373 U.S. 83 (1963).  Gillispie v. Timmerman-Cooper, 835 F. Supp. 2d at 506-509.  On December 15, 2011, the district court conditionally granted the writ and ordered that Appellant be released or retried in state court.  Id. at 509.

The Ohio Court of Appeals then vacated Appellant's conviction and ordered a new trial, based in part on evidence of a potential alternative perpetrator.  State v. Gillispie, No. 24456, 2012 WL 1264496 (Ohio Ct. App. Apr. 13, 2012).  The trial court then dismissed his indictment because the prosecution could not produce the detectives' reports and the Ohio Court of Appeals affirmed the dismissal.  State v. Gillispie, 65 N.E.3d 791 (Ohio Ct. App. 2016).

Appellant filed a civil suit against several governmental entities and officials in Ohio asserting claims, inter alia, pursuant to 42 U.S.C. Section 1983 for the infringement of his federal constitutional rights and under state law for malicious prosecution.  (Gillispie v. the City of Miami Township et al., No. 13 CV 416 (S.D. Ohio), Compl., Docket Entry No. 1 and Am. Compl., Docket Entry No. 18.)  Appellant also asserts claims against several GM employees who he alleges conspired with law enforcement to secure Appellant's arrest and conviction, and against GM itself (both Old and New) through a theory of vicarious liability.  (See id. at ¶ 53.)

Following the filing of the civil complaint, Appellant filed his motion with the bankruptcy court for leave to proceed in his civil suit against New GM or, alternatively, to file a post-bar-date proof of claim against Old GM.  (In re Motors Liquidation Company, et al., 09-50026-MG, Docket Entry No. 12727.)  The bankruptcy court denied the motion in its entirety.

DISCUSSION

Generally, a district court "review[s] the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law de novo." Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006) (quoting In re Enron Corp., 419 F.3d 115, 124 (2d Cir. 2005)); see also In re Santiago-Monteverde, 512 B.R. 432, 436 (S.D.N.Y. 2014) ("On appeal, the court may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings") (internal quotation marks and citation omitted).

Appellant's Claims Against New GM

The Court first turns to Appellant's contention that the Sale Order cannot function to bar his Section 1983 cause of action against New GM. Appellant contends that (1) his interest in a civil judgment upon his Section 1983 cause of action is not within the statutory definition of a "claim"[2] and thus may not be discharged by a Section 363 sale of assets free and clear of all liabilities and (2) the Sale Order could not discharge any potential judgment against New GM because Appellant did not and, indeed, could not receive constitutionally adequate notice of the effect GM's bankruptcy would have on his civil case.

---

[2]  Appellant argues that, because GUC originally argued before the bankruptcy court that Appellant's Section 1983 action was not a bankruptcy claim, GUC should be judicially estopped from asserting on appeal that Appellant's civil case is such a claim. The doctrine of judicial estoppel is generally only appropriate when the party offering an inconsistent argument was initially successful in advancing its prior contention. See New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001). In this case, neither GUC nor Appellant successfully argued that the Section 1983 suit did not constitute a claim, and thus any change of position on appeal "poses little threat to judicial integrity." Id. Furthermore, the contention that Appellant held a valid bankruptcy claim was and continues to be advanced by New GM.

Provided that the conditions specified in Section 363(f) are met, a bankruptcy court may authorize a trustee or debtor in possession to sell property of the estate "free and clear of any interest in such property" pursuant to Section 363(b). Although courts have not fashioned a precise definition for the term, the Second Circuit has held that successor liability claims against the purchaser in a Section 363 sale constitute "interest[s] in such [sold] property" that can be extinguished by a Section 363 sale if they fall within the statutory definition of a claim as set forth in 11 U.S.C. section 101(5) ("Section 101(5)"). See Elliott v. GM LLC (In re Motors Liquidation Co.) ("Elliot"), 829 F.3d 135, 155 (2d Cir. 2016).

Section 101(5) defines the term "claim" as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C.S. § 101(5) (LexisNexis 2014) (emphasis added). The Supreme Court has stated that the definition of the term "claim" should be construed as broadly as possible. See Johnson v. Home State Bank, 501 U.S. 78, 83 (1991) ("Congress intended by [the language of Section 101(5)] to adopt the broadest available definition of 'claim.'"). Appellant argues that because he was precluded, pursuant to the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477, 486 (1994), from bringing a Section 1983 action challenging his conviction or term of imprisonment until his conviction was reversed, vacated, expunged, or invalidated, he did not have a claim against Old GM until well after the bar date had passed and after the Sale Order had been entered.

To determine whether a contract-based civil cause of action or other potential payment obligation constitutes a contingent claim under Section 101(5), rather than a future claim not encompassed by that definition, courts look to whether the obligation arose from pre-petition conduct and whether any "future event that [would trigger the obligation] was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created."  In re Chateaugay Corp. ("Chateaugay I"), 944 F.2d 997, 1004 (2d Cir. 1991) (quoting In re All Media Properties, Inc., 5 Bankr. 126, 133 (Bankr. S.D. Tex. 1980), aff'd, 646 F.2d 193 (5th Cir. 1981)) (internal quotation marks omitted).  In Chateaugay I, the Second Circuit applied this principle to the characterization of an unmatured claim of the Environmental Protection Agency for clean-up costs arising from obligations imposed by the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq.  The Second Circuit later applied this test to determine whether a claim arose from an indemnification contract.[3]  See In re Manville Forest Prod. Corp., 209 F.3d 125, 129 (2d Cir. 2000).  Lower courts within this circuit have applied this analysis in the tort context.  See e.g., In re Agway, Inc., 313 B.R. 31, 42 (Bankr. N.D.N.Y. 2004) (applying the fair contemplation test to a tort cause of action).

Appellant argues that, in the absence of a Second Circuit decision explicitly applying the fair contemplation test to a tort claim,[4] this Court should hold that a tort cause of

---

[3]   The Second Circuit has also characterized the analysis in Chateaugay I generally as finding that a contingent claim exists when such a "right to payment is contingent on future events . . . [and] the claim . . . result[s] from pre-petition conduct fairly giving rise to that contingent claim."  In re Motors Liquidation Co., 829 F.3d at 156 (quoting Chateaugay I, 944 F.2d at 1005)) (internal quotation marks and alterations omitted).

[4]   Because a Section 1983 action functions to protect an individual's constitutional rights, it "creates a species of tort liability."  Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305 (1986).

action qualifies as a claim for bankruptcy purposes only after all elements required to bring suit exist, and thus that Appellant's civil suit did not mature into a claim until his criminal case was favorably terminated and he was able to bring suit under non-bankruptcy law.  This reasoning closely parallels the Third Circuit's 1984 holding in Matter of M. Frenville Co., Inc. (In re M. Frenville Co.), 744 F.2d 332, 337 (3d Cir. 1984), that a bankruptcy claim only arises after the underlying civil cause of action accrues under non-bankruptcy law.  Before the Third Circuit finally overturned in re M. Frenville Co. in In re Grossman's Inc., 607 F.3d 114 (3d Cir. 2010), this holding was heavily criticized for disregarding the Supreme Court's instruction to define the term "claim" broadly and for ignoring the text of the statutory definition of "claim," which expressly includes contingent and unmatured rights to payment.  The Court agrees with the weight of lower court authority in this circuit that the fair contemplation test, rather than the discredited standard articulated in In re M. Frenville Co., is the appropriate analytical template for the determination of whether a potential tort cause of action is a contingent "claim" within the meaning of the Bankruptcy Code.

Appellant selectively quotes language from the Second Circuit's opinion in LTV Steel Co. v. Shalala (In re Chateaugay Corp.) ("Chateaugay II"), 53 F.3d 478, 497 (2d Cir. 1995), where the court stated that "[a] claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation—'a right to payment'—under the relevant non-bankruptcy law," in support of his argument that that his potential Section 1983 cause of action was not a claim until it had accrued upon the vacatur of Appellant's conviction  Id. (quoting In re National Gypsum Co., 139 B.R. 397, 405 (N.D. Tex. 1992)) (internal quotation marks omitted).  The holding in Chateaugay II is, however, entirely consistent with the application of the fair

contemplation test.  The Chateaugay II court held that obligations created by the Coal Industry Retiree Health Benefit Act of 1992 (the "Coal Act"), 26 U.S.C. §§ 9701-9722, which mandated that mining companies pay health care benefits for retired miners, did not give rise to a claim under the Bankruptcy Code because the Coal Act did not become effective until after the debtor filed its petition, and thus none of the parties could have reasonably expected pre-petition that liability for such benefits would attach.  See Chateaugay II, 53 F.3d at 485, 497-98.[5]  Chateaugay II thus excluded a claim that had no factual or legal basis prior to the bankruptcy, and did not deal with the treatment of a claim for an injury that had occurred pre-petition but would not accrue for litigation purposes absent further factual developments.

Appellant points to several cases for the proposition that a cause of action for malicious prosecution, which similarly requires that the underlying case against the civil plaintiff be terminated in his favor, does not constitute a claim for bankruptcy purposes until the civil cause of action is ripe to be successfully litigated.  The Court is not persuaded by this authority, which generally addresses the question of whether a malicious prosecution cause of action constitutes the property of a debtor's bankruptcy estate, an analysis that does not turn on the existence of a "claim" against the debtor as specified in Section 101(5).  See e.g., In re Jenkins, 410 B.R. 182, 193-94 (Bankr. W.D. Va. 2008).  The remaining out-of-circuit decisions relied upon by Appellant contain little reasoning or discussion of relevant precedent interpreting the

---

[5] The other decisions cited by Appellant are similarly inapposite, mostly addressing situations in which the legal relationship giving rise to the liability was created by a statute enacted after the filing of the bankruptcy petition.  See e.g., In re Duplan Corp., 212 F.3d 144, 151-53 (2d Cir. 2000).

scope of the term "claim." See e.g., Austin v. BFW Liquidation, LLC (In re BFW Liquidation, LLC), 471 B.R. 652, 667 (Bankr. N.D. Ala. 2012)).[6]

Here, Appellant's civil suit is clearly premised on the pre-petition conduct of GM's employees, and Appellant's ability to bring this suit was contingent only on the vacatur of his conviction. Although a favorable termination of his criminal proceedings was not assured, Appellant's decades-long quest to establish his innocence and overturn his conviction leads to the inescapable inference that the eventual occurrence of such a contingency was well within his actual contemplation prior to the petition. Appellant's Section 1983 cause of action against New GM is thus a claim against Old GM within the meaning of the Bankruptcy Code, of which New GM accepted the transfer of Old GM's assets free and clear to pursuant to Section 363 and consistent with the Sale Order.

The Court next turns to Appellant's argument that he did not receive adequate notice of the bar date and sale. To comport with due process, a known creditor, whose identity can be ascertained through the exercise of reasonable diligence, is entitled to actual notice, whereas an unknown creditor is entitled to only constructive notice. See Elliott, 829 F.3d at 159

---

[6] Appellant argues that the Austin decision can be read to hold that a malicious prosecution cause of action does not constitute a bankruptcy claim until it accrues under state law. 471 B.R. at 667. To the extent that Austin can be read to support such a holding, that court appears to have adopted the discredited accrual test articulated in In re M. Frenville Co. and rejected by the Eleventh Circuit, which applies a relationship test that examines whether a tort cause of action is attributable to the debtor's pre-petition conduct and whether a sufficient relationship between the claimant and the debtor's product was created prior to the petition. Epstein v. Official Comm. of Unsecured Creditors of Estate of Piper Aircraft Corp., 58 F.3d 1573, 1577 (11th Cir. 1995); cf. Stone v. Kmart Corp., No. 2:06-CV-302-WKW, 2007 WL 1034959, at *3 (M.D. Ala. Mar. 30, 2007) (finding that "[t]he accrual time for [the p]laintiff's malicious prosecution claim under Alabama law does not control this action" and looking to the time of the plaintiff's pre-petition arrest to determine whether her cause of action constituted a bankruptcy claim).

(citing Chemetron Corp v. Jones, 72 F.3d 341, 345-48 (3d Cir. 1995)).  On appeal, Appellant concedes that he was not a known creditor, but argues that no form of notice would have been constitutionally adequate to apprise him that GM's bankruptcy could extinguish his right to seek relief for his deprivation of civil rights.[7]

        Courts have expressed concern that a lack of notice could preclude the discharge of a claim where the claimant cannot yet be identified because she has not yet had any contact with the debtor and may never incur any harm from the debtor's actions except in the future through "[s]heer fortuity," Chateaugay I, 944 F.2d at 1003.  As an example of such a situation, the Second Circuit posited a hypothetical debtor company that built many bridges pre-petition, one of which collapsed post-petition due to a defect, injuring motorists who had no notice of the defect and were unfortunate enough to be crossing that bridge at that time.  Id.  No such circumstances are presented here; Appellant was aware of the harm he had suffered and the identity of GM's employees whom he alleges conspired with state authorities to deprive him of his civil rights well before the bankruptcy filing.  While viability of Appellant's Section 1983 suit was contingent on the favorable resolution of his criminal case, he was actively litigating prior to the bankruptcy filing to vindicate his rights and bring that contingency to fruition and, like any other contingent creditor, Appellant could have inferred that any suits he might wish to bring against GM could be affected by its bankruptcy.

        Citing to authority holding that incarcerated prisoners may be entitled to reasonable actual notice of forfeiture proceedings against them, Appellant also argues that, as an

---

[7]     Appellant does not challenge the bankruptcy court's determination that, to the extent Appellant was a traditional unknown creditor, the publication notice provided was constitutionally sufficient.  See Bankruptcy Decision at 778.

incarcerated prisoner, he was entitled to actual notice. See e.g., Armendariz-Mata v. U.S. Dep't of Justice, 82 F.3d 679 (5th Cir. 1996). The cited authorities are, however, inapposite, as they deal with the question of notice to specific persons known to claim interests in allegedly forfeitable property, whose locations were known. They do not address, much less reject, the rule that creditors whose identity and contact information cannot be gleaned through the exercise of reasonable diligence may be bound through constructive notice by publication.

Accordingly, the Court finds that Appellant was an unknown creditor and that he received adequate constructive notice of the sale and bar date through publication notice.[8]

Denial of Application to File a Late Proof of Claim Against Old GM

Appellant next argues that the bankruptcy court erred in denying his motion to file a post-bar-date proof of claim. The bankruptcy court's decision to deny Appellant's motion to allow a post-bar-date filing of his proof of claim against Old GM is reviewed for abuse of discretion. In re Enron Corp., 419 F.3d at 124. The bankruptcy court may be found to abuse its discretion only when its "decision rest[s] on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (ii) [its] decision . . . , though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." In re Aquatic Dev. Grp., Inc., 352 F.3d 671, 678 (2d Cir. 2003) (quotation marks, citations, and alterations omitted).

Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1), a bankruptcy court may permit a party to file a late proof of claim if his failure to meet the deadline was attributable to excusable neglect. Courts are "permitted, where appropriate, to accept late filings caused by

---

[8]   See supra note 7.

inadvertence, mistake, or carelessness, as well as by intervening circumstance beyond the party's control." Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 389 (1993). In considering whether to grant a motion for a late filing a court should consider "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. at 395. The Second Circuit has taken a hard line in evaluating claims of excusable neglect in the context of failure to comply with deadlines set by court rules and orders. See Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003.)

Consistent with precedent, the bankruptcy court focused on the reason for delay as the primary factor in its evaluation of Appellant's request. See Bankruptcy Decision at 775, 778-79 (citing In re Lehman Bros. Holdings, Inc., 433 B.R. 113, 119-20 (Bankr. S.D.N.Y. 2010)). The bankruptcy court determined that Appellant's failure to file a proof of claim was based on a mistake of law, namely his perception that he did not have a claim within the meaning of the Bankruptcy Code until his conviction was vacated. Id. at 778-79 (citing Canfield v. Van Atta Buick/GMC Truck, 127 F.3d 248, 251 (2d Cir. 1997), for the proposition that the failure to adhere to a court order constituted an inexcusable mistake of law).

Appellant argues that: (1) his failure to timely file a proof of claim was not based on an error of law because he could not bring his Section 1983 suit prior to the bar date; (2) his failure to file was excusable because, as of the bar date, he was incarcerated and concentrating on pursuing his freedom from a wrongful conviction; and (3) it is inequitable to prohibit him from pursuing his claim against Old GM, by not granting him the opportunity to file a post-bar-date proof of claim, if he is precluded from pursuing the claim against New GM by the Sale Order.

Appellant's first argument, that his failure to file a proof of claim against Old GM was not based on a mistake of law, is grounded in his theory that his Section 1983 action did not qualify as a bankruptcy claim until he could file the civil complaint, after the successful termination of his criminal case. As previously explained, Appellant's understanding of the scope of the term "claim" in the bankruptcy context is simply incorrect as a matter of law. Appellant's expectation of recovering through civil action was a contingent claim for which he could have timely filed a proof of claim with the bankruptcy court notwithstanding his mistaken legal conclusion to the contrary. Appellant's failure to timely file his proof of claim thus was indeed based on a mistake of law and the bankruptcy court did not err in finding the mistake insufficient to excuse his failure to comply with the published bar date.

Appellant's contention that he should be excused from compliance with the published deadline to file a proof of claim against GM's bankruptcy estate while he was imprisoned is also unavailing.[9] The Court is mindful that it is indeed difficult to diligently supervise one's legal affairs while incarcerated and accepts Appellant's representation that his priority was to secure his own freedom before turning his attention to collecting civil damages for the harm he suffered. Appellant, however, offers no authority, and the Court's own research has disclosed none, to support the proposition that a claimant who was otherwise able to file a proof of claim should be excused from timely doing so because he was focused on more pressing priorities. Cf. In re Settlement Facility Dow Corning Tr., No. 14-10347, 2017 U.S. Dist. LEXIS 49210, at *7 (E.D. Mich. Mar. 31, 2017) (a claimant with prior knowledge of litigation was not permitted to file a late claim on the basis of her imprisonment before a bar date). A bar date rule

---

[9] The Bankruptcy Decision acknowledged this argument, but did not specifically address it. See 576 B.R. at 768, 778-79.

that would yield to undisclosed subjective priorities of creditors would effect no viable gatekeeping function at all.

Appellant's appeal to equitable concerns is also insufficient to support a determination that the bankruptcy court abused its discretion. Appellant is aggrieved that he is now barred from seeking recourse against both Old and New GM for their alleged role in his arrest and subsequent prosecution. Appellant's predicament is the result of the operation of a bankruptcy system that both affords opportunities to assert timely claims against debtors and permits the sale of assets free and clear of such claims. Appellant was eligible to avail himself of the claim procedure, but failed to do so in compliance with the law. While Appellant has thus forfeited his ability to seek redress against both entities, he is in the same position as any other claimant who was allegedly harmed by GM's tortious or unlawful conduct, whether serious or trivial, and did not assert his or her claim in a timely fashion. The record shows no inequitable treatment that would render the denial of Appellant's late claim filing application abusive of the bankruptcy court's discretion.

Accordingly, the Court concludes that the bankruptcy court did not abuse its discretion in denying Appellant's motion to file a post-bar-date notice of claim.

CONCLUSION

For the foregoing reasons, the Bankruptcy Decision is affirmed and Appellant's appeal is dismissed. The Clerk of Court is respectfully directed to enter judgment affirming the bankruptcy courts' October 18, 2017, Memorandum Opinion and Order and close this case.

SO ORDERED.

Dated: New York, New York
      March 27, 2019

      /s/ Laura Taylor Swain
     LAURA TAYLOR SWAIN
     United States District Judge