**HEARING DATE: MAY 30, 2019**
                                        **HEARING TIME: 10:00 A.M.**

**WILK AUSLANDER LLP**
1515 Broadway, 43rd Floor
New York, New York 10036
Telephone: (212) 981-2300
Eric J. Snyder, Esq.

*Counsel for Kimberly and Tammy McCall*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------x
In re:                                       :
                                             :     Chapter 11
MOTORS LIQUIDATION COMPANY, *et al.*,        :
f/k/a General Motors Company, *et al*.       :     Case No. 09-50026(MG)
                                             :
                     Debtors.      :
                                             :     (Jointly Administered)
------------------------------------------x

## OBJECTION TO MOTION BY GENERAL MOTORS LLC TO ENFORCE STAY AS TO KIMBERLY AND TAMMY MCCALL

01093195.3

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ..................................................................................................................... 3

ARGUMENT ........................................................................................................................... 7

   I. DAMAGES UNDER THE AWDA ARE ASSUMED LIABILITIES UNDER THE
      SALE AGREEMENT ...................................................................................................... 7

     a. The November 2015 Decision Limited its Holding to "Actions Where
        Compensatory Damages are not Permissible." Because Compensatory Damages
        are not Permissible Under the AWDA, New GM Assumed Products Liabilities
        Under the AWDA. ..................................................................................................... 7

     b. Under New York Law, the Court Should Hold that Claims Under the AWDA
        were Assumed by New GM ........................................................................................ 8

       i. The Sale Agreement Should be Interpreted Under New York Law. ..................... 8

       ii. Holding that Product Liabilities did not Include Claims Under the AWDA
          Would Render New GM's Assumption of all Wrongful Death Claims
          Meaningless. ...................................................................................................... 10

       iii. Holding that the McCalls Cannot Recover Under the AWDA Will Lead to
          an Absurd Result. ............................................................................................... 10

   II. THE JULY 2017 OPINION IS NOT *RES JUDICATA* AS TO THE MCCALLS. .......... 13

   III. THE HOLDING IN THE AUGUST 2017 OPINION IS NOT DISPOSITIVE. .............. 14

   IV. THE CHRYSLER-OVERTON DECSION IS NOT APPLICABLE. .............................. 15

CONCLUSION ..................................................................................................................... 16

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anderson v. FCA, US, LLC*, 2019 WL 826479 at *3 (D. M.D. Ga. Feb. 21, 2019) .................................. 15

*Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (2007) ........................................................................ 9

*Cara Assocs., L.L.C. v. Milstein*, 140 A.D.3d 657, 658 (1st Dep't 2016) ...................................... 9

*Cole v. Macklowe*, 99 A.D.3d 595, 595 (1st Dep't 2012) ............................................................ 9

*In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. On Sept. 22, 1993*,
    121 F. 3d 1421, 1425 (11th Cir. 1997) .................................................................................. 13

*In re G&G Retail, Inc.*, 2010 WL 743918 (Bankr. S.D.N.Y. Feb 24, 2010) .................................. 9

*In re Motors Liquidating Co.,* 541 B.R.104 (Bankr. S.D.N.Y. 2015) .................................. 1, 6, 7, 8, 10, 14

*In re Motors Liquidating Co.,* 571 B.R.565 (Bankr. S.D.N.Y. 2017) .................................. 1, 2, 7, 8, 12, 14

*In re Motors Liquidating Co.,* 576 B.R. 33 (Bankr. S.D.N.Y. 2017) ........................................ 1, 2, 7, 8, 14

*In re Motors Liquidating Co.*, 590 B.R. 39 (S.D.N.Y. 2018) ................................................... 1,7

*In re Old Carco LLC*, 593 B.R. 182 (Bankr. S.D.N.Y. 2018) .................................................... 3

*In re U.S. Wireless Data, Inc.*, 2006 WL 6914921, at *4 (S.D.N.Y. June 21, 2006) .................. 8

*In re Wireless Data, Inc.*, 547 F.3d 484 (2d Cir. 2008) ......................................................... 4, 8

*Isaacs v. Westchester Wood Works*, 278 A.D.2d 184, 185 (1st Dep't 2000) ........................... 10

*Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970) .................................................. 11,12

*Nova Cas. v. Harleysville Worchester Ins. Co.*, 146 A.D.3d 428, 428 (1st Dep't 2017) ............. 9

*Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*, 63 N.Y.2d 396, 404 (1984) .......... 9

**Statutes**

11 U.S.C. 103(b) ....................................................................................................................... 8
Ala. Code, 1975, § 6-5-410 ................................................................................. 1, 2, 7, 8, 10, 12, 13, 14
Ala. Code, 1975, § 6-5-462 ................................................................................................... 12

The McCall Plaintiffs[1], by their counsel, Wilk Auslander LLP, interpose this objection (the "Objection") to the relief sought by New GM in the McCall Motion to Enforce. In support of the Objection, the McCalls state as follows:

## PRELIMINARY STATEMENT

1. Two facts are undisputed:

   **A. New GM specifically assumed wrongful death claims under the Sale Agreement when it purchased the assets of Old GM; and**

   **B. The Alabama Wrongful Death Act ("AWDA"), the wrongful death statute in Alabama, has been construed as allowing a jury to assess punitive damages only.**

2. When the Sale Agreement was consummated during 2009, the wrongful death claims pled under the AWDA alleged in the McCall Lawsuits "passed through the gate" and were obligations of New GM.

3. Despite New GM's contentions to the contrary, the issues related to AWDA claims have not been "repeatedly litigated." In fact, in the first decision addressing New GM's assumption of punitive damages, the November 2015 Decision,[2] Judge Gerber made clear that he was addressing only whether New GM assumed punitive damages "*in actions in which the assertion against New GM of compensatory claims is permissible.*" November 2015 Decision, 541 B.R. 104, 107 (Bankr. S.D.N.Y. 2015) (emphasis added). Because New GM admits that the AWDA allows for punitive damages *only* (McCall Motion to Enforce, pp. 16-20), the November 2015 Decision does not apply to claims made under the AWDA.[3]

---

[1] Capitalized terms not otherwise defined herein shall retain the meaning ascribed to them in the McCall Motion to Enforce.

[2] The McCalls were not a party to this decision and received no notice of its consideration.

[3] In the July 2017 Opinion, this Court determined that the November 2015 Decision was law of the case. July 2017 Opinion, 571 B.R. 576-77. In the August 2017 Opinion, this Court made the same finding, *see* 573 B.R. 313, as did the District Court with respect to the July 2017 Opinion and August 2017 Opinion, *see* May 2018 Opinion, 590 B.R.

1

01093195.3

4. It is also clear that the issue of AWDA claims has not been repeatedly litigated because New GM itself has told this Court as much. In December 2016, this Court issued its Order to Show Cause setting forth procedures for litigating five "2016 Threshold Issues." This December 2016 Show Cause Order did not address any specific issues related to the AWDA.

5. In February 2017, New GM represented to this Court, by letter, that the "unique Alabama state law issue is not one of the 2016 Threshold Issues set forth in the Show Cause Order." See ECF 13851. Relying on New GM's representation, this Court denied a request to brief issues related to AWDA claims. ECF 13852.

6. As a result, when this Court issued its July 2017 and August 2017 Opinions, it left undisturbed Judge Gerber's November 2015 Decision, which applies only "in actions in which the assertion against New GM of compensatory claims is permissible." 541 B.R. at 107. There is no legitimate purpose served by extending that determination to those rare instances where punitive damages for wrongful death are the sole form of relief available.

7. Should this Court now revisit the issue, the only way to harmonize the assumption of Products Liabilities for wrongful death by New GM in the Sale Agreement with the July 2017 and August 2017 Opinions is to take the approach of Judge Gerber: punitive damage claims in wrongful death lawsuits are barred only to the extent that compensatory damages are available. This is the only result that will not render New GM's assumption of wrongful death claims arising from Products Liabilities in the Sale Agreement meaningless, absurd and at odds with the November 2015 Decision.

---

39, 62. However, as set herein, to the extent the November 2015 Decision is the law of the case, it only applies "in actions in which the assertion against New GM of compensatory claims is permissible."

2

01093195.3

# BACKGROUND

**The Old GM Bankruptcy and Sale Agreement**

8. When Old GM entered into the Sale Agreement with New GM, New GM explicitly agreed to assume all Products Liabilities, specifically including all wrongful death claims. *See* Sale Agreement §2.3(a) [Assumed and Retained Liabilities] (McCall Motion to Enforce, Ex. B):

> (ix) all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of accidents, incidents or other distinct and discreet occurrences that happen on or after the Closing Date and arise from such motor vehicles' operation or performance (for avoidance of doubt, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability arising or contended to arise by reason of exposure to materials utilized in the assembly or fabrication of motor vehicles manufactured by Sellers and delivered prior to the Closing Date, including asbestos, silicates or fluids, regardless of when such alleged exposure occurs);

9. On June 26, 2009, the Sale Agreement was originally approved by the Bankruptcy Court. On July 5, 2009, the Sale Agreement was modified and approved by the Bankruptcy Court and an Order approving the bankruptcy plan was entered the same day. On July 10, 2009, the sale contemplated by the Sale Agreement closed. (McCall Motion to Enforce, ¶11.)

10. Therefore, when the sale to New GM was consummated, New GM was contractually liable for all wrongful death claims. There was no "carve-out" for claims under the AWDA or any other wrongful death statute and certainly no exclusion for punitive damage claims. The gate swung open wide.

**The Chrysler Bankruptcy and Master Transaction Agreement**

11. Old Carco LLC f/k/a Chrysler LLC ("Old Chrysler") filed for Chapter 11 relief thirty-two days earlier. Because New GM relies on the Chrysler-Overton Decision in the McCall

3

01093195.3

Motion to Enforce, and because the two cases involved the bankruptcy of automobile manufacturers in the same court at the same time, the Chrysler bankruptcy proceeding is instructive for both its similarities to the Old GM case, and its differences.

12.    On April 30, 2009, Old Chrysler filed for Chapter 11 relief and simultaneously entered into a Master Transaction Agreement ("MTA") by which FCA US f/k/a Chrysler Group LLC ("New Chrysler") purchased substantially all of the assets of Old Chrysler. The Bankruptcy Court approved the transaction, as amended, and the sale closed on June 10, 2009.

13.    The order (the "Chrysler Sale Order") approving the MTA and the sale of the assets from Old Chrysler to New Chrysler authorized the transfer of the purchased assets "free and clear of all Claims except for Assumed Liabilities" (as defined in the MTA) and free of successor liability. (Chrysler Sale Order ¶ 9.) It stated, in pertinent part:

> Except for the Assumed Liabilities expressly set forth in the Purchase Agreement or described therein or Claims against any Purchased Company, none of the Purchaser, its successors or assigns or any of their respective affiliates shall have any liability for any Claim that (a) arose prior to the Closing Date, (b) relates to the production of vehicles prior to the Closing Date or (c) otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date.... Without limiting the foregoing, the Purchaser shall not have any successor, derivative or vicarious liabilities of any kind or character for any Claims ... now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

(Sale Order ¶ 35; *see also id*. ¶¶ 39, 42); Chrysler-Overton Opinion, 593 B.R. at 185.

14.    Section 2.09 of the MTA enumerated, "for the avoidance of doubt," certain "Excluded Liabilities" that New Chrysler did not assume. They included "all Product Liability Claims arising from the sale of Products or Inventory prior to the Closing." (MTA § 2.09(i).) The MTA broadly defined an excluded Product Liability Claim as:

> Any Action arising out of, or otherwise relating to in any way in respect of claims for personal injury, wrongful death or property damage resulting from exposure to, or any other warranty claims, refunds, rebates, property damage, product

4

01093195.3

recalls, defective material claims, merchandise returns and/or any similar claims, or any other claim or cause of action, whether such claim is known or unknown or asserted or unasserted with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by [Old Chrysler].

(MTA Definitions Addendum, at p. 90, *as amended* by Amendment No. 1 to MTA, at ¶ 36.); Chrysler-Overton Opinion, 593 B.R. at 185-86. It is clear that the MTA left no remedy for claimants injured in defective Old Chrysler vehicles manufactured and sold before the closing.

14. Following public outcry and Congressional pressure, on August 27, 2009, New Chrysler issued a letter to Senator Richard Durbin promising that New Chrysler would accept products liability claims on vehicles manufactured by Old Chrysler prior to the closing date that were involved in post-closing accidents. A copy of the letter is annexed hereto as Ex. A.

15. By Stipulation and Order, dated November 19, 2009, the parties amended § 2.08(h) to the MTA to expand the scope of Assumed Liabilities relating to Product Liability Claims. (ECF Doc. # 5988 in Old Chrysler case.) As amended, New Chrysler assumed liability for post-closing accidents involving vehicles manufactured and sold by Old Chrysler before the closing, but the assumption expressly excluded liability for punitive damages.

16. Under the amendment ("Amendment No. 4"), Assumed Liabilities included:

(i) all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and (ii) all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles ... solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) *do not include any claim for exemplary or punitive damages*.

(MTA, Amendment No. 4, ¶ 1 (emphasis added)); Chrysler-Overton Opinion, 593 B.R. at 186.

17. There are three significant differences between the GM Sale Agreement and the MTA that are relevant here: In this case: a) the November 2015 Decision limited the exclusion of

5

01093195.3

punitive damages to cases where compensatory damages were permissible; b) the GM Sale Agreement does not exclude punitive damages from its assumption of Product Liabilities, while in the Chrysler bankruptcy, the MTA specifically does; and c) New Chrysler was sold to Fiat, a bona fide purchaser for value, while GM was a "bailout"; there was no independent third-party operator and there was complete continuity between the assets and personnel of Old GM and New GM.

**The McCalls' Accident and The November, 2015 Decision,
July 2017 Opinion and August, 2017 Opinion**

18. On November 2, 2014 (the "Accident Date"), the accident that gave rise to the McCalls' Lawsuits occurred. (McCall Motion to Enforce ¶ 25, Ex. B.) As of the Accident Date, this Court had not made any determination as to whether New GM had assumed claims for punitive damages, a determination that Judge Gerber later characterized in the November 2015 Decision as "[a]t best,… ambiguous." November 2015 Decision, 541 B.R. at 108.

19. The November 2015 Decision arises from litigation related to faulty ignition switches of vehicles manufactured by Old GM. In the November 2015 Decision, the Court agreed to determine, *inter alia,* what it defined as the "Punitive Damage Issue": "the extent which claims for punitive damages may be based on Old GM knowledge or conduct *in actions in which the assertion against New GM of compensatory damage claims is permissible.*" November 2015 Decision, 541 B.R at 107 (emphasis added). Therefore, Judge Gerber's determination in the November 2015 Decision is specifically limited to actions where compensatory damages are allowed.

20. When this Court addressed this issue as "Threshold Issue Four" in the July 2017 Opinion, it held that the November 2015 Decision was law of the case, as did this Court in the August 2017 Opinion. The July 2017 Opinion addressed this issue as a "threshold" issue in the

6

01093195.3

abstract. In the August 2018 Opinion, the Court relied on law of the case with respect to the November 2015 Decision and July 2017 Opinions and *res judicata* principles. In neither the July 2017 Opinion nor the August 2017 Opinion did the Court state it was extending the holding in the November 2015 Decision to exclude cases where compensatory damage claims are not permissible, which is the case here with respect to the McCall Lawsuits and their claims under the AWDA.

## ARGUMENT

### I. DAMAGES UNDER THE AWDA ARE ASSUMED LIABILITIES UNDER THE SALE AGREEMENT

#### a. The November 2015 Decision Limited its Holding to "Actions Where Compensatory Damages are not Permissible." Because Compensatory Damages are not Permissible Under the AWDA, New GM Assumed Products Liabilities Under the AWDA.

21. As set forth above, Judge Gerber recognized in the November 2015 Decision that it only applied to "conduct in actions in which the assertion against New GM of compensatory damage claims is permissible." November 2015 Decision, 541 B.R. 107. Since the AWDA does not allow for compensatory damages (McCall Motion to Enforce, pp 16-20), New GM assumed liabilities under the AWDA.

22. New GM assumed compensatory damages. (McCall Motion to Enforce, ¶¶ 5, 59.) Therefore, Judge Gerber's denial of punitive damages as to Assumed Liabilities in cases only where compensatory damages are permissible is an equitable and common sense approach. It ensures that *all* plaintiffs asserting wrongful death claims have a potential for recovery, *even if the damages are solely punitive.*

23. Since the July 2017 Opinion, August 2017 Opinion and May 2018 Opinion all held that the November 2015 Decision was law of the case, the gate remains open to Assumed

7

01093195.3

Liabilities for wrongful death that allow for punitive damages, such as the AWDA, when compensatory damages are not available and the McCall Motion to Enforce should be denied.

### b. Under New York Law, the Court Should Hold that Claims Under the AWDA were Assumed by New GM

24. In light of the plain language of the November 2015 Decision, it is clear that New GM assumed liabilities under the AWDA.

25. However, New GM will no doubt argue that the July 2017 Opinion extended the holding to enjoin cases even where compensatory damages are not permissible.[4] This Court should not entertain any attempt to alter, or improperly extend, the November 2015 Decision.

26. An interpretation of the Sale Agreement that extends the November 2015 Decision to eliminate all punitive damage relief, even under circumstances where compensatory damages are not available, would render Judge Gerber's very careful, express qualification -- "[to] actions in which the assertion against New GM of compensatory damage claims is permissible"-- meaningless. Furthermore, such an outcome would lead to an absurd result: the greater the injury to citizens of Alabama from Old GM vehicles arising from Product Liabilities claims, the less likely they will be compensated.

#### i. The Sale Agreement Should be Interpreted Under New York Law.

27. To the extent the Court is required to harmonize an ambiguity or inconsistency under the Sale Agreement (the Sale Agreement specifically assumes wrongful death Product

---

[4] Since: a) there is no requirement under the Bankruptcy Code to subordinate punitive damages in Chapter 11; and b) the subordination provisions in Section 726 only apply in Chapter 7 cases, the McCalls believe that the July 2017 Opinion and August 2017 Opinion (collectively, the "2017 Opinions") were wrongly decided as a matter of law. *See* 11 U.S.C. 103(b)("Subchapters I and II of Chapter 7 of [Title 11] apply only in a case under such chapter."); *In re U.S. Wireless Data, Inc.*, 2006 WL 6914921, at *4 (S.D.N.Y. June 21, 2006), *aff'd sub nom,. In re Wireless Data, Inc.*, 547 F.3d 484 (2d Cir. 2008)(same). In the unlikely event that this Court determines that the 2017 Opinions apply to the present case, they reserve their rights to maintain that the 2017 Opinions were wrongly decided for the reasons argued by the appellants in the 2017 Opinions. In the event the 2017 Opinions are reversed or modified, the McCalls reserve their right to amend the McCall Complaints accordingly.

8

01093195.3

Liabilities claims which, under Alabama law, have been construed to be punitive and this Court has held that punitive damage claims are not assumable under certain circumstances), the Court should apply New York law. *See* Section 9.12 of the Sale Agreement; McCall Motion to Enforce, Ex. C, p. 99 (reflects that New York law applies); *In re G&G Retail, Inc.*, 2010 WL 743918 (Bankr. S.D.N.Y. Feb 24, 2010)(relying on New York law to determine ambiguities in a contract); Chrysler-Overton Decision, 593 B.R. at 190-91(same).

28. It is well settled that a contract must be "read as a whole and if possible it will be so interpreted as to give effect to its general purpose." *Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (2007) (internal citations omitted). Parties are presumed to have intended that each provision included in their agreement has meaning. *See Nova Cas. v. Harleysville Worchester Ins. Co.*, 146 A.D.3d 428, 428 (1st Dep't 2017) ("We reject this interpretation, because it renders a portion of the contract meaningless and fails to read all contractual clauses together contextually"). Courts must "avoid an interpretation that would leave contractual clauses meaningless." *Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*, 63 N.Y.2d 396, 404 (1984). A "cardinal rule of construction [is] that a court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect." *Cara Assocs., L.L.C. v. Milstein*, 140 A.D.3d 657, 658 (1st Dep't 2016) (citation omitted).

29. Further, it is well settled that "a contract should not be interpreted to produce an absurd result, one that is commercially unreasonable, or one that is contrary to the intent of the parties." *Cole v. Macklowe*, 99 A.D.3d 595, 595 (1st Dep't 2012). Where the contract provisions are unambiguous on their face, effect will be given to their plain and natural meaning; however "[c]onflicting contract provisions should be harmonized, if reasonably possible, so as

9

not to leave any provision without force and effect." *Isaacs v. Westchester Wood Works*, 278 A.D.2d 184, 185 (1st Dep't 2000).

### ii. Holding that Product Liabilities did not Include Claims Under the AWDA Would Render New GM's Assumption of all Wrongful Death Claims Meaningless.

30. As set forth above, it would be entirely inconsistent with either the November 2015 Decision or the Sale Agreement for the Court to now hold that, despite New GM's plain assumption of all Product Liabilities involving wrongful death, New GM did not assume liability under the AWDA. Such an interpretation renders the assumption of these liabilities meaningless, because the McCalls cannot collect any other type of damage other than punitive damages under the AWDA.

31. Furthermore, the ability to receive relief for products liability claims is so important that Congress insured that the MTA would align with the Sale Agreement by compelling New Chrysler to ultimately assume all products liability claims. Therefore, assumption of liabilities under the AWDA not only is consistent with the November 2015 Decision and the Sale Agreement, it fulfills an important Congressional imperative.

32. It cannot be overstated: such an outcome, the ability to only collect punitive damages, is unique to the AWDA. No other state denies compensatory damages to holders of wrongful death claims. In order to avoid eliminating the assumption of these type of claims, this Court should maintain the law of the case under the November 2015 Decision and not extend the injunction to the AWDA, thereby eliminating any recovery for Alabama wrongful death victims.

### iii. Holding that the McCalls Cannot Recover Under the AWDA Will Lead to an Absurd Result.

10

01093195.3

33. Distilled to its essence, New GM is asking this Court to hold that—unlike the residents of every other State—the residents of Alabama are barred from suing for wrongful deaths that Old GM's allegedly defective automobiles may have caused. Granting the relief sought by New GM would prohibit Alabama residents the same rights of recovery allowed to residents of every other state. Destroying Alabama's wrongful death cause of action is contrary to well-established public policy in favor of recognizing a remedy for wrongful death. That public policy has been recognized by the United States Supreme Court and still is equally important today.

34. Almost fifty years ago in *Moragne v. States Marine Lines, Inc* 398 U.S. 375 (1970), the United States Supreme Court recognized a well-established public policy in favor of providing a remedy for wrongful death and, on that basis, reversed a line of its own precedent about the availability of a wrongful-death claim under federal maritime law.

35. The Court reasoned that, "[w]here existing law imposes a primary duty, violations of which are compensable if they cause injury, nothing in ordinary notions of justice suggests that a violation should be non-actionable simply because it was serious enough to cause death." *Id.* at 382. "On the contrary," the Court held that the absence of a wrongful death cause of action "has been criticized ever since its inception, and described in such terms as barbarous." *Id.* (internal citation omitted).

36. Noting that Congress and every state legislature has provided a remedy for wrongful death, the Court held that "[t]his legislative establishment of policy carries significance beyond the particular scope of each of the statutes involved" and "has become itself a part of our law, to be given its appropriate weight not only in matters of statutory construction but also in those of decisional law." *Id.* at 390–91. Following the Supreme Court's direction in *Morange*,

11

01093195.3

this Court should give appropriate weight to the AWDA when reconciling it with the July 2017 Opinion.

37. New GM's attempts to eliminate the ability of Alabama residents to rely upon the AWDA leads to the same absurd and unjust results that led to the creation of the wrongful death cause of action more than 150 years ago. It would bizarrely allow plaintiffs who suffer lesser injuries to sue New GM but eliminate the only remedy for the much more serious injury of death. Such relief would allow a personal injury claim to survive in the estate if the plaintiff died of some other cause, Ala. Code, 1975, § 6-5-462, but would terminate the claim if the plaintiff died of the personal injury. These are the same "barbarous" results that the United States Supreme Court criticized in *Moragne*.

38. Allowing claims under the AWDA harmonizes the intent of the parties and the determinations of this Court. For example, this Court's policy considerations in finding that New GM did not assume punitive damages in the July 2017 Opinion was explicit:

> Exposing a 363 buyer to punitive damages based on the conduct of the insolvent seller---when the bankruptcy code prevents damages from the insolvent seller— would seriously chill a robust section 363 sale process designed to maximize recoveries. The buyer would be unable to quantify the financial risk to which it was exposing itself in purchasing the assets, the stronger the financial condition of the buyer the greater the risk of large punitive damages award based on the insolvent seller's conduct.

July 2017 Opinion, 571 B.R. at 580.

39. At the time of the sale (2009) and as late as the McCalls's accident (2014) there had been no finding, by contractual interpretation or otherwise, that punitive damages would be excluded. Therefore, there is no evidence, nor could there be, that the existence of claims under the AWDA was considered by New GM in "quantifying their risk." Furthermore, in this case. where New GM simply continued the business of Old GM and all costs including the purchase

12

01093195.3

price were financed by funds lent by the US government, the need to quantify risk is clearly not as great a priority.

40. In fact, the opposite is true: New GM specifically quantified the risk associated with assuming wrongful death claims including those in Alabama under AWDA, which only allows for punitive damage claims. Such an interpretation is validated by Judge Gerber's limitation of the Punitive Damage Issue to cases where damages for compensatory damages would not otherwise be admissible, and would avoid the absurd result eschewed by New York courts of providing the least degree of redress for the most severe injury.

41. Denying the McCall Motion to Enforce here will not "flood" the gates because the inability to obtain non-punitive damages under a wrongful death statute is unique to Alabama: "[Alabama] is the only one of all the fifty states that provides for punitive damages only and allows for the recovery of punitive damages only upon a showing of mere negligence." *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. On Sept. 22, 1993*, 121 F. 3d 1421, 1425 (11th Cir. 1997). For all of these reasons, the McCall Motion to Enforce should be denied.

## II. THE JULY 2017 OPINION IS NOT *RES JUDICATA* AS TO THE MCCALLS.

42. New GM argues that that since "the McCalls were served with the December 2016 Show Cause order [they] are thus bound by the Court's ruling on the 2016 Threshold Issues (i.e. those set forth in the July 2017 Opinions)." (McCall Motion to Enforce, ¶ 41.) This statement is wrong for two reasons.

43. *First*, New GM admits that during February 2017, another Alabama plaintiff (Oglesby), wrote this Court (the "Oglesby Letter") with a request to file a ten-page brief addressing the ADWA as one of the threshold issues. *See* ECF No. 13847; McCall Motion to Enforce, ¶20. A copy of the Oglesby Letter is annexed hereto as Ex. B. Importantly, New GM responded, "Ms. Oglesby's request should be denied because her *unique* Alabama state law issue

13

is *not* one of the 2016 Threshold Issues set forth in the Show Cause Order." *See* ECF 13851; McCall Motion to Enforce, ¶ 20 (emphasis added). This Court relied on New GM's representation and held that "[f]or the reasons set forth in New GM's letter, Ogelsby's request is DENIED." *See* ECF 13852.

44. New GM now contends that issues related to the AWDA have already been decided by this Court despite: a) recognizing that relief under the AWDA is "unique;" and b) specifically requesting that the unique nature of the AWDA *not* be considered by this Court as a threshold issue. However, it is clear that issues surrounding the AWDA were specifically not addressed in the July 2017 Opinion at New GM's request.

45. *Second*, Judge Gerber specifically limited his analysis in the November 2015 Decision to events where compensatory damages were permissible. As stated above, that is not the case under the AWDA. To the extent this Court determines that it should consider whether the November 2015 Decision was extended to situations where compensatory damages are not available, the time for such a determination did not present itself until now.

### III. THE HOLDING IN THE AUGUST 2017 OPINION IS NOT DISPOSITIVE.

46. Unlike the Reichwaldts (the plaintiffs from Georgia in the August 2017 Opinion), the McCalls did not (a) "actively participate in the briefing and argument concerning the December 2016 OSC, which led to the June 2017 Opinion and July 2017 Opinion," August 2017 Opinion, 576 B.R at 323 (why would they after the request by Oglesby to include an interpretation of the AWDA was denied?); or (b) concede that [they are] bound by the June 2017 Opinion and July 2017 Opinion" (a position the McCalls have specifically rejected in the McCalls' 2018 Letters and is supported by the November 2015 Decision limiting the damage holding).

47. Finally, since "Georgia's wrongful death statute is not at all like Alabama's

14

01093195.3

wrongful death statute," *Anderson v. FCA*, US, LLC, 2019 WL 826479 at *3 (D. M.D. Ga. Feb. 21, 2019), this Court should not rely on the August 2017 Decision when deciding the McCall Motion to Enforce.

## IV.   THE CHRYSLER-OVERTON DECSION IS NOT APPLICABLE.

48.   The November 2015 Decision specifically limited the enforceability of the Sale Order and Injunction to cases where compensatory damages were not available. November 2015 Decision, 541 B.R. at 107. In the Chrysler-Overton Decision, *all* punitive damages were specifically excluded under the MTA. Because of this, the fact that "New Chrysler and other shareholders that participated in the negotiation struck a bargain under which new Chrysler agreed… to assume liability for compensatory damages…but not to assume punitive damages." Chrysler-Overton Decision, 593 B.R. at 197, is not present here.

49.   No such bargain was struck by New GM: as stated above, the Sale Agreement does not exclude punitive damages from assumed Product Liabilities, and it is the McCalls's position that the November 2015 Decision, which this Court, as well as the District Court, have held is law of the case, did not extend to accidents in states where compensatory damages are permissible.

15

01093195.3

## CONCLUSION

WHEREFORE, Kimberly and Tammy McCall respectfully request entry of an Order denying the McCall Motion to Enforce[5] and/or granting such other and further relief as is just.

| | |
|---|---|
| Dated: New York, New York<br>May 15, 2019 | **WILK AUSLANDER LLP**<br><br>By: /s/ Eric J. Snyder<br>Eric J. Snyder, Esq.<br>1515 Broadway, 43rd Floor<br>New York, New York 10036<br>(212) 981-2300<br><br>*Counsel for the Kimberly and Tammy McCall* |

---

[5] To the extent the McCall Motion to Enforce seeks correction of certain allegations related to New GM's manufacturing of Old GM vehicles (McCall Motion to Enforce, ¶¶ 62, 63), the McCalls do not oppose the McCall Motion to Enforce.

01093195.3