**HEARING DATE AND TIME:  May 30, 2019 at 10:00 a.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **Case No.:  09-50026 (MG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

**REPLY BRIEF BY GENERAL MOTORS LLC TO OBJECTION**
**TO MOTION TO ENFORCE THE BANKRUPTCY COURT'S JULY 5, 2009**
**SALE ORDER AND INJUNCTION, AND THE RULINGS IN CONNECTION**
**THEREWITH, WITH RESPECT TO KIMBERLY McCALL AND TAMMY McCALL**

# TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ................................................................. 1

**ARGUMENT** .............................................................................................. 4

    I.    THE McCALLS' ERRONEOUS VIEW OF THE COURT'S PRIOR RULINGS ON PUNITIVE DAMAGES DOES NOT WITHSTAND SCRUTINY ................................................................................... 4

    II.    GRANTING THE McCALL MOTION TO ENFORCE WILL NOT BE "ABSURD" OR AGAINST PUBLIC POLICY ........................................ 9

    III.    THE McCALLS ARE BOUND BY THE RULINGS IN THE JULY 2017 OPINION ..................................................................................... 14

    V.    THE McCALL LAWSUITS SHOULD BE STAYED UNTIL ALL INFIRMITIES ARE ADDRESSED ..................................................... 16

**PRELIMINARY STATEMENT** ................................................................. 1

**ARGUMENT** .............................................................................................. 4

    I.    THE McCALLS' ERRONEOUS VIEW OF THE COURT'S PRIOR RULINGS ON PUNITIVE DAMAGES DOES NOT WITHSTAND SCRUTINY ................................................................................... 4

    II.    GRANTING THE McCALL MOTION TO ENFORCE WILL NOT BE "ABSURD" OR AGAINST PUBLIC POLICY ........................................ 9

    III.    THE McCALLS ARE BOUND BY THE RULINGS IN THE JULY 2017 OPINION ..................................................................................... 14

    V.    THE McCALL LAWSUITS SHOULD BE STAYED UNTIL ALL INFIRMITIES ARE ADDRESSED ..................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Power Co. v. Turner*,
   575 So. 2d 551 (Ala. 1991) ...................................................................................13

*Carter* v. *City of Birmingham*,
   444 So. 2d 373 (Ala. 1983) ..................................................................................11

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995) ......................................................................................15, 16

*City of Newport* v. *Fact Concerts, Inc.*,
   453 U.S. 247 (1983) ..............................................................................................11

*Lance, Inc. v. Ramanauskas*,
   731 So. 2d 1204 (Ala. 1999) ................................................................................11

*Moragne v. States Marine Lines, Inc.*,
   398 U.S. 375 (1970) ......................................................................................12, 13

*Morales v. Kavulich & Assoc., P.C.*,
   294 F.Supp.3d 183 (S.D.N.Y. 2018) .....................................................................4

*In re Gen. Motors Corp.*,
407 B.R. 463 (Bankr. S.D.N.Y. 2009), *aff'd in part, vacated in part, reversed
in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017) .......................6, 16

*In re Motors Liquidation Co.*,
   541 B.R. 104 (Bankr. S.D.N.Y. 2015) ........................................................... *passim*

*In re Motors Liquidation Co.*,
   576 B.R. 313 (Bankr. S.D.N.Y. 2017) ...................................................1, 6, 14

*In re Motors Liquidation Co.*,
   590 B.R. 39 (S.D.N.Y. 2018) .................................................................................8

*In re Old Carco LLC*,
   593 B.R. 182 (Bankr. S.D.N.Y. 2018) ...........................................................11, 12

*Painter v. Tenn. Valley Auth.*,
   476 F.2d 943 (5th Cir. 1973) ..........................................................................11, 12

*Springer v. Bryant*,
   897 F.2d 1095 (11th Cir. 1990) ...........................................................................12

*Tillis Trucking Co. v. Moses*,
748 So. 2d 874 (Ala. 1999)............................................................................................10

*In re UBS AG Secs. Litig.*,
No. 07 Civ. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)...............................4

**Statutes**

42 U.S.C. § 1983.................................................................................................................11

Ala. Code § 6-5-410............................................................................................................13

Alabama Wrongful Death Act ..................................................................................... *passim*

Bankruptcy Code Chapter 7.................................................................................................8

Bankruptcy Code § 363 ......................................................................................................13

Bankruptcy Code § 363(m)................................................................................................16

**Other Authorities**

1 Ala. Pattern Jury Instr. Civ. 11.28 (3d ed. Dec. 2018 Update)..................................10

*Accept More Product Liability Claims*, THE CENTER FOR AUTO SAFETY (Aug. 28,
2009), *available at* http://www.autosafety.org/chrysler-accept-more-product-
liability-claims ..................................................................................................................15

General Motors LLC ("**New GM**") submits this reply brief ("**Reply**") (i) in response to the *Objection To Motion By General Motors LLC To Enforce Stay As To Kimberly and Tammy McCall*, dated May 15, 2019 [ECF No. 14509] ("**Objection**" or "**McCall Obj.**") filed by the McCalls,[1] and (ii) in further support of the relief requested in the McCall Motion to Enforce.

## PRELIMINARY STATEMENT

It is undisputed that the McCalls' claims under the Alabama Wrongful Death Act seek punitive damages against New GM based on Old GM's conduct. It is similarly undisputed that, based on prior rulings of this Court, New GM did not assume liability for punitive damages based on Old GM's conduct pursuant to section 2.3(a)(ix) of the Sale Agreement. Accordingly, the only matter in dispute is whether there is another provision in the Sale Agreement wherein New GM assumed liability for punitive damages. The McCalls cite no other section of the Sale Agreement and none exists. Section 2.3(b) of the Sale Agreement is clear; unless an Old GM liability is expressly delineated as an Assumed Liability, it remains a Retained Liability of Old GM. As a result, the McCall Motion to Enforce should be granted.

The McCalls acknowledge that "[t]he Alabama Wrongful Death Act . . . has been construed as allowing a jury to assess punitive damages only." (McCall Obj. ¶ 1.) New GM, however, did not assume liability for punitive damage claims, as has been consistently recognized by this Court. *In re Motors Liquidation Co.*, 541 B.R. 104, 108 (Bankr. S.D.N.Y. 2015) ("New GM did not contractually assume liability for punitive damages based on Old GM knowledge or conduct."); *see also In re Motors Liquidation Co.*, 576 B.R. 313, 324 n.7 (Bankr. S.D.N.Y. 2017). In the face

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion By General Motors LLC To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction And The Rulings In Connection Therewith, With Respect To Kimberly McCall and Tammy McCall*, filed by New GM on April 10, 2019 [ECF No. 14477] ("**McCall Motion to Enforce**"). Capitalized terms not defined in this Preliminary Statement or in the McCall Motion to Enforce are defined in subsequent sections of this Reply.

1

of this impasse, the McCalls argue there should be an implied exception to the Court's rulings because punitive damages are the only relief available under the Alabama Wrongful Death Act.

In support of their proposed implied exception, the McCalls rely heavily, if not solely, on Judge Gerber's recitation of the issue: "the extent to which claims for punitive damages may be based on Old GM's knowledge or conduct in actions in which the assertion against New GM of compensatory damage claims is permissible."  (McCall Obj. ¶ 1 (citing *Motors Liquidation Co.*, 541 B.R. at 107.))  Based on this language, the McCalls suggest that claimants can pursue punitive damage claims against New GM when compensatory damages are unavailable.  However, nothing in section 2.3(a)(ix) of the Sale Agreements says that.  Moreover, nothing in this Court's 2015 decision (or this Court's subsequent decisions confirming the bar on punitive damages) supports the McCalls' interpretation.  In fact, the exception urged by the McCalls is never referenced in the Court's actual ruling or its analysis of the issue.  Rather, the Court unequivocally held that:

> New GM did not contractually assume liability for punitive damages based on Old GM knowledge or conduct.  ***Nor is New GM liable for punitive damages based on Old GM conduct under other theories, such as by operation of law as a result of New GM's assumption of certain liabilities for compensatory damages.***  Consequently, under the April Decision and Judgment, punitive damages may not be premised on Old GM knowledge or conduct, or anything else that took place at Old GM.

*Motors Liquidation Co.*, 541 B.R. at 108 (emphasis added).  Had the Court intended that New GM assume punitive damages in *some circumstances*, as the McCalls now urge, then the Court would have qualified its ruling to that effect, or at least *discussed* that exception somewhere in its analysis. But instead, the Court found that New GM did not assume punitive damages under any theory, including as a result of New GM's "assumption of certain liabilities for compensatory damages." Notably, the example of the theory that the Court rejected is precisely the theory upon which the McCalls' argument is predicated:  because New GM assumed compensatory damages, and because

compensatory damages are unavailable under the Alabama Wrongful Death Act, then New GM necessarily assumed punitive damages under the Alabama Wrongful Death Act.

The McCalls' efforts to cabin the import of Judge Gerber's 2015 decision is further misplaced because "the assertion against New GM of compensatory claims is permissible" under section 2.3(a)(ix) of the Sale Agreement. That Alabama law does not provide a compensatory cause of action in wrongful death suits, does not change the analysis. Furthermore, the failure by New GM, as purchaser, to contractually assume a claim is not the same as the prohibition of a claim. In any event, the McCalls have asserted claims against New GM for compensatory damages in the Alabama Lawsuits, so the November 2015 Decision is binding on the McCalls even by their own misguided interpretation of the Court's prior rulings.[2]

The Court's rulings regarding no assumption of punitive damages under section 2.3(a)(ix) of the Sale Agreement is further reinforced by the Court's independent ruling (affirmed by Judge Furman) that New GM cannot be held liable for damages for which Old GM had no liability. As Old GM was an insolvent debtor and sold substantially all of its assets for less than the aggregate amount of allowed claims, it could have no liability for punitive damages under settled bankruptcy law. New GM therefore cannot have assumed liability that Old GM, as the insolvent seller, did not have.

Finally, Judge Bernstein's Chrysler-Overton Opinion is directly on point and the McCalls' attempt to distinguish that decision is unavailing.

In sum, the Court should grant the McCall Motion to Enforce and prohibit the McCalls from seeking punitive damages from New GM in the Alabama Court.[3]

---

[2]    *See* McCall Motion to Enforce, Exh. B (McCall Complaints, Wherefore Clauses (both seeking compensatory damages)).

[3]    In the McCall Motion to Enforce, New GM also asserted that the McCalls cannot seek punitive damages from New GM in connection with any assumed Product Liabilities. The McCalls did not respond to this point in their

## ARGUMENT

### I.     THE McCALLS' ERRONEOUS VIEW OF THE COURT'S PRIOR RULINGS ON PUNITIVE DAMAGES DOES NOT WITHSTAND SCRUTINY

#### A.     The November 2015 Decision Held That New GM Did Not Contractually Assume Punitive Damages

A review of the background as to how the Punitive Damages Issue was first raised in the Bankruptcy Court is helpful in putting the November 2015 Decision in context.   In a Case Management Order entered by Judge Gerber on August 19, 2015, the Court directed, among other things, that the parties submit letters identifying "any other matters that need to be addressed by this Court[.]"  ECF No. 13383, at 2 (¶ g).  In response to the Case Management Order, New GM submitted a letter identifying various issues that the Court should address.   Among them was the following:

> Whether the following claims, causes of action or requests for damages are barred by the Judgment, April 15 Decision, Sale Order and Injunction, and/or any other rulings by the Court:
>
>> i. requests for punitive/special damages against New GM *based in any way on Old GM conduct*, including but not limited to post-363 Sale accidents of Old GM vehicles ("**Punitive Damages Issue**").

ECF No. 13390, ¶ 5(a)(i) (emphasis added).  As evident by the above-quoted language, New GM did not qualify the Punitive Damages Issue in any way; it related to *all* requests for punitive damages by *all plaintiffs*.

---

Objection and thus any argument to the contrary is waived.  *See, e.g.*, *Morales v. Kavulich & Assoc., P.C.*, 294 F.Supp.3d 183, 196 n. 2 (S.D.N.Y. 2018) ("Defendants did not oppose this argument in their opposition memorandum and thus waives any argument challenging Rosewall's vicarious liability."); *In re UBS AG Secs. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that party "concedes through silence" arguments by its opponent that it fails to address).  New GM also asserted that the McCall Complaints contain inappropriate allegations barred by the December 2015 Judgment.  While the McCalls do not oppose this request for relief (McCall Obj. at 16 n.5), they have not proposed alternate language to correct these deficiencies.

Judge Gerber entered a scheduling order on September 3, 2015 ("**September 2015 Scheduling Order**"), setting forth, among other things, a briefing schedule for the Punitive Damages Issue. *See* ECF No. 13416. The September 2015 Scheduling Order adopted the same language New GM used in its letter to describe the Punitive Damages Issue: "The briefing schedule with respect to the issue ('Punitive Damages Issue') in complaints filed against [New GM] that request punitive/special/exemplary damages against New GM *based in any way on the conduct of [Old GM]* shall be as follows [briefing schedule followed.]" *Id.* at ¶ 1 (emphasis added). To reiterate, this language was not qualified in any way.

Thereafter, Judge Gerber issued the November 2015 Decision, which parsed the language in the Sale Agreement and expressly held that "[b]y reason of the first sentence of Section 2.3(b), all Old GM liabilities that were not Assumed Liabilities, including those not listed, were Retained Liabilities under the Sale Agreement." *Motors Liquidation Co.*, 541 B.R. at 112; *see also id.* at 118 ("under this drafting structure [of Section 2.3(b)], unless a liability was covered as an Assumed Liability under Section 2.3(b), New GM did *not* assume it"). He then reviewed the specific language in section 2.3(a)(ix) of the Sale Agreement, and, after looking "at the totality of the contractual language, and extrinsic evidence, and employ[ing] common sense," held that "New GM neither agreed to, nor did, contractually take on Old GM's punitive damages liability." *Id.* at 117. Judge Gerber ruled that based on his analysis of section 2.3(a)(ix) he could not "conclude that punitive damages are for 'death, personal injury, or other injury . . .,' or, at least, conclude that they are unambiguously so. If one relies on plain meaning alone, punitive damages cannot be said to be covered within the meaning of Section 2.3(a)(ix)." *Id.* at 119 (footnote omitted).

Judge Gerber then held that, even if section 2.3(a)(ix) of the Sale Agreement was ambiguous, the extrinsic evidence "overwhelmingly weighs against New GM's assumption of Old

GM's punitive damages obligations[.]" *Id.*  That extrinsic evidence included, among other things, (i) that no party asked New GM to assume punitive damages in connection with the 363 Sale, (ii) while compensatory damages may be a commercially necessary expense for the purchaser, punitive damages were not, (iii) since punitive damages punish past conduct and deter future conduct, "imposing punitives for Old GM conduct would not be consistent with punitive damages' purposes; claims for punitive damages if asserted against Old GM would have been at least subordinated, if not disallowed," and (iv) "[t]he notion that anyone would choose to assume millions, if not billions, of dollars of punitive damages exposure—especially without mentioning it—is entirely implausible."[4]  *Id.* at 120 (footnotes omitted).  As a result, Judge Gerber concluded —without qualification— that New GM did not contractually assume any liability for punitive damages.[5]

In addition, Judge Gerber also held:

> And just as the Court concludes that liability for punitive damages was not contractually assumed by New GM, *neither was such liability effectively assumed by New GM as a matter of law as a result of New GM's assumption of certain liabilities for compensatory damages*. The two types of damages claims are fundamentally distinct.  As New GM properly observes, punitive damages serve a very different purpose than compensatory damages do, and are of a fundamentally different character.  "Punitive damages by definition are not intended to

---

[4]    The McCalls disagree with Judge Gerber's analysis that the U.S. government, as purchaser, was concerned about quantifying the risk for assuming Old GM's liabilities. (McCall Obj. ¶ 39.)  Of course, Judge Gerber had a firm basis for his analysis.  He presided over the Sale Hearing and he heard testimony about how the government would not go forward with the 363 Sale if it was required to assume certain Old GM liabilities.  *See Gen. Motors Corp.*, 407 B.R. 463, 493 (Bankr. S.D.N.Y. 2009*), aff'd in part, vacated in part, reversed in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017) ("[Old] GM's counsel noted in summation that the F & D Bondholders Committee was expecting this Court to play Russian Roulette, and the comparison was apt. So that the F & D Bondholders Committee could throw GM into a plan negotiation process, the Court would have to gamble on the notion that the U.S. Government didn't mean it when it said that it would not keep funding GM. There is no reason why any fiduciary, or any court, would take that gamble.").

[5]    In its August 2017 Opinion, this Court unqualifiedly held that, even if the law of the case doctrine did not apply, it disagreed with "Reichwaldt's contract interpretation arguments. . . for the same reasons articulated in the November 2015 Opinion, December 2015 Judgment, and July 2017 Opinion."  *Motors Liquidation Co.*, 576 B.R. at 324 n.7.  This Court did not qualify that holding in any respect.

compensate the injured party, but rather to punish the tortfeasor . . . and to deter him and others from similar extreme conduct."

*Motors Liquidation Co.*, 541 B.R. at 121 (footnotes omitted) (emphasis added).

The fact that New GM is not liable for ***any*** punitive damages based on Old GM conduct is also confirmed in paragraph 6 of the December 2015 Judgment:

> New GM did not contractually assume liability for punitive damages from Old GM. Nor is New GM liable for punitive damages based on Old GM conduct under any other theories, such as by operation of law. ***Therefore, punitive damages may not be premised on Old GM knowledge or conduct, or anything else that took place at Old GM.*** [emphasis added]

Taken together, the November 2015 Decision and December 2015 Judgment bar punitive damages claims against New GM based on Old GM's conduct by ***all*** plaintiffs, including plaintiffs (like the McCalls) asserting wrongful death claims based on the Alabama Wrongful Death Act. There is no implicit exception that would permit the assertion of punitive damages in certain circumstances. And, since the November 2015 Decision was not qualified in any way, this Court's subsequent Opinions holding that Judge Gerber's punitive damages rulings are the law of the case continue to govern.

### B.    The July 2017 Opinion Contains An Independent Basis For Concluding That New GM Cannot Be Liable For Punitive Damages

Even if the November 2015 Decision/December 2015 Judgment were qualified in some respect (they were not), this Court independently held, in the July 2017 Opinion, that New GM is not liable for any punitive damages based on Old GM conduct because of federal bankruptcy law. *See Motors Liquidation Co.*, 571 B.R. at 576-77, 579-80.  Specifically, this Court held that, because Old GM would not have had to pay punitive damages as an insolvent debtor, New GM could not be liable for such claims based on Old GM conduct:

> An insolvent debtor like Old GM often pays general unsecured claims on a *pro rata* basis. In contrast, as a rule an insolvent debtor would never pay a penny of punitive damages unless all higher priority claims are paid in full. And in the case of Old

> GM, not all higher priority claims will be paid in full. As Judge Gerber held in an earlier opinion in this case, punitive damages are subordinated in liquidating cases because "the victims of the punitive damages would in reality be only other, wholly innocent, creditors."

*Motors Liquidation Co.*, 571 B.R. at 577 (quoting *In re Motors Liquidation Co.*, No. 09-50026, 2012 WL 10864205, at *11 (Bankr. S.D.N.Y. Aug. 6, 2012); *see also Motors Liquidation Co.*, 571 B.R. at 580 ("Old GM was deeply insolvent, and it would have never been liable for punitive damages until all higher priority claims were paid in full. Likewise, New GM cannot be held liable for damages that the Bankruptcy Code dictates would never have been paid by Old GM.") (citation omitted).

This Court then ruled that New GM may not be held liable for punitive damages on ***any*** successor liability theory (whether contractual or otherwise), "[b]ecause a successor corporation may only be liable to the same extent as its predecessor, New GM cannot be held liable for a claim that its predecessor [Old GM] would not have to pay under the Bankruptcy Code." *Id.* at 579-80. The Court thus concluded that "Post-Closing Accident Plaintiffs may not assert claims against New GM for punitive damages based on Old GM conduct." *Id.* at 581.

> Judge Furman agreed, stating that:

> punitive damages against New GM based on Old GM conduct are barred by federal bankruptcy law. By definition, successor liability claims derive from the liability of the predecessor entity. It follows that if claims cannot be brought against a predecessor entity, they cannot be brought against the successor. Substantially for the reasons explained by Judge Glenn, punitive damages claims could not have gone forward against Old GM as a matter of bankruptcy law—and, thus, are unavailable against New GM based solely on Old GM's conduct.

*In re Motors Liquidation Co.*, 590 B.R. 39, 63-64 (S.D.N.Y. 2018) (affirming this Court's unqualified "decision precluding punitive damages claims against New GM based on Old GM conduct").

The McCalls relegate this argument to a footnote, asserting that, because the Bankruptcy Code does not subordinate punitive damages claims in a chapter 11 case and Section 726 only applies in chapter 7 cases, this Court's July 2017 Opinion and August 2017 Opinion were "wrongly decided as a matter of law."  (McCall Obj. at 8 n. 4.)  However, as this Court correctly noted:

> While section 726(a) applies to cases under chapter 7 of the Bankruptcy Code, the "best interest of creditors" test mandates that claimants in a chapter 11 case must receive at least as much as they would receive in a chapter 7 case.  *See, e.g.*, *In re Best Payphones, Inc.*, 523 B.R. 54, 75 (Bankr. S.D.N.Y. 2015) ("Section 11 U.S.C. § 1129(a)(7) requires a creditor to receive or retain at least as much property under the plan as it would in a hypothetical chapter 7 liquidation.  It is the lowest point below which a proposed distribution may not fall, and must be read together with 11 U.S.C. § 726(a), which governs the priority of distribution in a chapter 7 case.").  In other words, punitive damages are never available in the case of an insolvent debtor like Old GM.

*Motors Liquidation Co.*, 571 B.R. at 576-77.

The McCalls simply cannot disregard these clearing rulings (which they did not appeal) because they believe they were wrongly decided.[6]

## II.    GRANTING THE McCALL MOTION TO ENFORCE WILL NOT BE "ABSURD" OR AGAINST PUBLIC POLICY

The McCalls alternatively argue that even if the Court applies its previous rulings that New GM cannot be liable for punitive damages based on Old GM conduct, it should create an exception here and decline to enforce the Sale Order and Sale Agreement because doing so would be "absurd" and against public policy.  (McCall Obj. ¶¶ 33-41.)  Here, the McCalls argue that enforcing the Sale Order and prohibiting their assertion of punitive damages against New GM would be inequitable, but their argument only considers one-side of the equation.  The McCalls fail to consider the lack of equities in permitting punitive damage claims based on Old GM conduct

---

[6]    The McCalls' "reservation of rights" in footnote 4 of their Objection should also be rejected.  The McCalls were served with the December 2016 Show Cause Order (*see* McCall Motion to Enforce, Exh. "C"), did not participate in those proceedings and did not appeal the rulings in the July 2017 Opinion.  They are thus bound by the July 2017 Opinion whether or not others have appealed the order.

to proceed against New GM.  Punitive damages are assessed to punish the wrongdoer (Old GM)

and to deter future conduct (of Old GM).  The Alabama wrongful death pattern jury instruction

illustrates this point:

> This is a claim for the wrongful death of (name of decedent).
>
> ***The damages in this case are punitive and not compensatory***.  Punitive damages
> are awarded to preserve human life, ***to punish*** (name of defendant) for (his/her/its)
> ***wrongful conduct, and to deter or discourage*** (name of defendant) ***and others
> from doing the same or similar wrongs in the future***.
>
> ***The amount of damages must be directly related to (name of defendant)'s
> culpability***, and by that I mean ***how bad (his/her) wrongful conduct was.  You do
> not consider the monetary value of (name of decedent)'s life because the damages
> are not to compensate (name of plaintiff) or (name of decedent)'s family from a
> monetary standpoint because of (his/her) death***.
>
> The amount you award is within your discretion based on the evidence and the
> guidelines in this instruction.

1 Ala. Pattern Jury Instr. Civ. 11.28 (3d ed. Dec. 2018 Update) (emphasis added).[7]  Although the

McCalls may argue that permitting punitive damages to proceed is proper given the unavailability

of compensatory damages under the Alabama Wrongful Death Act, the fact remains that a jury

would ***not*** be seeking to fashion a remedy that would approximate compensatory damages, but

instead would be ***instructed not to compensate the McCalls***, but instead to ***punish New GM*** **solely**

**because of Old GM's alleged conduct**.

The unavailability of compensatory damages under the Alabama Wrongful Death Act does

not create an "absurdity" that warrants punishing New GM; rather, it is a reflection of Alabama

public policy.  *See, e.g.*, *Tillis Trucking Co. v. Moses*, 748 So. 2d 874, 890-91 (Ala. 1999) (refusing

to disturb the "long-standing" conclusion that the wrongful death statute is "intended to punish the

wrongdoer" and noting that both the legislature and the Supreme Court of the United States have

---

[7]    A copy of the Alabama wrongful death pattern jury instruction is attached hereto as **Exhibit "A."**

"declined to disturb the statute"); *Lance, Inc. v. Ramanauskas*, 731 So. 2d 1204, 1221 (Ala. 1999) (explaining that the Alabama Supreme Court had, "under the crushing weight of 150 years of stare decisis, consistently held that our wrongful-death statute allows for the recovery of punitive damages only"); *cf. In re Old Carco LLC*, 593 B.R. 182, 198 (Bankr. S.D.N.Y. 2018) ("the Alabama legislature has chosen not to change the Wrongful Death Act to permit the award of compensatory damages in wrongful death actions" and "[w]hile the result is unsatisfactory, the Court is powerless to change the result").

Indeed, the Alabama Wrongful Death Act has foreclosed causes of action for plaintiffs before. For example, following the United States Supreme Court's holding in *City of Newport* v. *Fact Concerts, Inc.*, 453 U.S. 247, 271 (1983) (that municipal entities may not be sued for punitive damages), the Alabama Supreme Court recognized that wrongful death damages are punitive and held that 42 U.S.C. § 1983 actions cannot be maintained in Alabama against municipalities for wrongful death. *Carter* v. *City of Birmingham*, 444 So. 2d 373, 379-80 (Ala. 1983). In the Chrysler-Overton Opinion, Judge Bernstein similarly dismissed these arguments. There, like here, the plaintiff argued that the "restriction on punitive damages to preclude claims under the Wrongful Death Act would lead to the absurd result of preventing wrongful death claims brought by Alabamians against New Chrysler while permitting the same claims brought by citizens of other states." *Old Carco*, 593 B.R. at 196. In rejecting this argument, Judge Bernstein specifically noted that "[t]his argument is not new. It has been considered and rejected in analogous situations involving federal statutes that preclude the recovery of punitive damages." *See Old CarCo*, 593 B.R. at 196. Judge Bernstein quoted the following excerpt of the Fifth Circuit decision in *Painter v. Tenn. Valley Auth* in support of his ruling in the Chrysler-Overton Opinion:

> It is altogether anamolous [sic] that similarly situated survivors could maintain this action against the TVA under the law of practically any other state while those who

have the misfortune of being relegated to the use of Alabama law are permitted no right of action at all. This lack of uniformity of tort responsibility of a federal institution based on the fortuity of geography is irrational....

The aberration in such cases must find its remedy through an appropriate Congressional waiver of the TVA's immunity to punitive damages or by the creation of some uniform federal right of action, or by Alabama's amendment or reinterpretation of its law.

*Painter v. Tenn. Valley Auth.*, 476 F.2d 943, 944-45 (5th Cir. 1973); *see also Springer v. Bryant*, 897 F.2d 1095, 1090-91 (11th Cir. 1990). Accordingly, arguments such as those advanced by the McCalls have been considered before and rejected on multiple occasions.

Additionally, even if this Court were to consider public policy considerations, those concerns actually weigh in favor of this Court ensuring that the Sale Order is enforced in accordance with its terms and the Court's prior rulings. As this Court explained in the July 2017 Opinion:

Exposing a section 363 buyer to punitive damages based on the conduct of the insolvent seller—when the Bankruptcy Code prevents recovery of punitive damages from the insolvent seller—would seriously chill a robust section 363 sale process designed to maximize creditor recoveries. The buyer would be unable to quantify the financial risk to which it was exposing itself in purchasing the assets; the stronger the financial condition of the buyer, the greater the risk of a large punitive damages award based on the insolvent seller's conduct.

*Motors Liquidation Co.*, 571 B.R. at 580. Likewise, Judge Bernstein described the public policy argument as a "variation of the 'absurd result' argument" and held that there were "strong federal policies" that favored New Chrysler's interpretation of the Chrysler Sale Agreement, given that the "exclusion at issue was contained in a contract of sale approved by the Court." *Old Carco*, 593 B.R. at 197.

*Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970), cited by the McCalls in the Objection, is inapposite. *First*, the United States Supreme Court in *Moragne* was addressing a situation where there was no law that provided for a wrongful death claim in a specific maritime

setting.  The Supreme Court, overruling a previous decision, held that "an action does lie under general maritime law for death caused by violation of maritime duties."  *Id.* at 409.  This has nothing to do with (i) the Alabama Wrongful Death Act or its unique structure that only provides for the imposition of punitive damages, and not compensatory damages, or (ii) federal bankruptcy law regarding 363 sales or the distribution priorities of the Bankruptcy Code.  *Second*, the Supreme Court stated that the numerous wrongful death statutes that existed at the time, "taken as a whole, make it clear that there is no present public policy ***against allowing*** recovery for wrongful death."  *Id.* at 390 (emphasis added).  But this does not imply that is against public policy ***to deny or limit*** a recovery for wrongful death in certain situations, as the Alabama Wrongful Death Act does.  *Moragne* does not stand for this proposition; in fact, the Supreme Court recognized:

> as Mr. Justice Holmes did 45 years ago, that the work of the legislatures has made the allowance of recovery for wrongful death the general rule of American law, and its denial the exception.

*Id.* at 393.  This matter is one such exception.

Contrary to the McCalls' conclusory "quantification of risk" argument (McCall Obj. ¶¶ 39-40), and as noted by Judge Gerber, New GM (or any 363 sale purchaser) would never have agreed to assume punitive damages under any scenario, including under the Alabama Wrongful Death Act, because the risk would be enormous and unjustified by commercial considerations.  *See Motors Liquidation Co.*, 541 B.R. at 120 ("The notion that anyone would choose to assume millions, if not billions, of dollars of punitive damages exposure—especially without mentioning it—is entirely implausible.").[8]  As exemplified by the jury instructions that would be given to an Alabama jury, a single jury award seeking to punish New GM for Old GM conduct could upend

---

[8]    Imposition of wrongful death punitive damages in Alabama would manifest those risks because there is no statutory cap on those damages.  *See* Ala. Code § 6-5-410 (no cap on wrongful death damages); *see also Ala. Power Co. v. Turner*, 575 So. 2d 551, 555-56 (Ala. 1991).

any reasonable assessment of the liabilities that New GM intended to assume. Preservation and enforcement of the terms of the Sale Order are therefore critical to ensuring that potential purchasers are confident enough to bid for assets in sales conducted pursuant to section 363 of the Bankruptcy Code.

## III.    THE McCALLS ARE BOUND BY THE RULINGS IN THE JULY 2017 OPINION

The McCalls do not dispute that they (i) were served with the December 2016 Show Cause Order, (ii) did not file any pleadings in connection with the 2016 Threshold Issues, and (iii) did not appeal the July 2017 Opinion. In these respects, the McCalls are in the exact same position as the Reichwaldt Plaintiff. Accordingly, for the same reason that the "July 2017 Opinion—including the ruling on punitive damages—is *res judicata* as to Reichwaldt," the July 2017 Opinion applies to the McCalls, and the following rulings are *res judicata* as to them: (i) New GM did not **contractually** assume liability for punitive damages based on Old GM conduct; and (ii) New GM cannot **otherwise** be held liable for punitive damages as a successor to Old GM, because Old GM would not have been required to pay such damages under the Bankruptcy Code.[9]

The McCalls' argument based on a letter filed by a different Alabama plaintiff (Oglesby), who requested permission to brief the Alabama wrongful death/punitive damages issue as another threshold issue does not help them. New GM objected to this request because it raised unique Alabama state law issue, *i.e.*, that although the Alabama Wrongful Death Act provides for punitive damages only, Alabama wrongful death claimants should be able to recover punitive damages

---

[9]    Contrary to the McCalls' argument, this Court did not find that Reichwaldt "'actively participate[d] in the briefing and argument concerning the December 2016 OSC, which led to the June 2017 Opinion and July 2017 Opinion[.]'" (McCall Obj. ¶ 46 (quoting *Motors Liquidation Co.*, 576 B.R. at 323).) There, the Court was referring to the active participation by the Goodwin Proctor firm, which, according to Reichwaldt at the time, was not representing her in those proceedings. *See Motors Liquidation Co.*, 576 B.R. at 317 ("Reichwaldt claims that Goodwin Proctor represented another Butler Wooten client in connection with the 2016 Threshold Issues, but not her.") In fact, the clause immediately before the quoted language in the Objection was: "Reichwaldt's Georgia counsel—Butler Wooten—chose not to respond to the December 2016 OSC[.]" *Motors Liquidation Co.*, 576 B.R. at 323.

because it was somewhat compensatory in nature and their sole remedy.  *See* ECF. Nos. 13847, 13851.[10]

The July 2017 Opinion unequivocally ruled that New GM did not assume punitive damages pursuant to section 2.3(a)(ix) of the Sale Agreement (or as a matter of successor liability law).  The McCalls never appealed those issues and it is the Court's section 2.3(a)(ix) ruling that the McCalls are collaterally attacking now.  The McCalls are not asserting the issue raised by Oglesby that punitive damages are more akin to compensatory damages in Alabama wrongful death cases.  And, as noted, the "sole remedy" issue has nothing to do with the only issue the McCalls are raising: that being, whether New GM, as purchaser, contractually assumed punitive damages liability under section 2.3(a)(ix).  That issue was determined adverse to the McCalls position by Judge Gerber, Judge Glenn and Judge Furman.

## IV.    THE CHRYSLER-OVERTON OPINION IS DIRECTLY ON POINT

The McCalls' attempts to distinguish the Chrysler Sale Agreement from the New GM Sale Agreement falls flat.  *First*, as demonstrated herein, the November 2015 Decision was not qualified in any way and was applicable to all punitive damages claims.  *Second*, while Amendment No. 4 to the Chrysler Sale Agreement specifically disclaimed assumption of punitive damages, this amendment came months after the New GM Sale Agreement was approved and the amendment, as acknowledged by the McCalls, was done to "align" the two agreements. [11]  The bottom line is

---

[10]    New GM also stated in its letter to the Court in February 2017 that if Oglesby wanted "to raise her unique issue as it relates to the Sale Order with the Court, then she should file an appropriate pleading setting forth her requested relief."  ECF No. 13851, at 1.  Oglesby never raised this issue with the Court, and the Oglesby lawsuit was subsequently settled.  Despite being on notice of the 2016 Threshold Issues and the Oglesby letter, the McCalls never raised the Alabama state law issue with this Court either.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995) (reaffirming principle that creditors are required to obey a bankruptcy court's injunction unless and until it is modified or reversed, notwithstanding whether creditors had grounds to object to the injunction)).

[11]    As stated in the McCall Motion to Enforce, Amendment No. 4 to the Chrysler Sale Agreement was specifically intended to make Chrysler's approach "consistent with that taken by General Motors as part of its bankruptcy process." *Chrysler to Accept More Product Liability Claims*, THE CENTER FOR AUTO SAFETY (Aug. 28, 2009), *available at* http://www.autosafety.org/chrysler-accept-more-product-liability-claims.  The McCalls agree with

that although the Chrysler sale agreement and the GM Sale Agreement used different language, the final conclusion was the same: neither purchaser assumed punitive damages of the seller. *Finally*, the Bankruptcy Court held that New GM, as a "newly-formed Delaware corporation that, as of the date of the Sale Hearing, is wholly-owned by the U.S. Treasury[, is] a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby." Sale Order, ¶ R; *see also Gen. Motors Corp*., 407 B.R. at 494 ("the Court finds that the Purchaser is a good faith purchaser, for sale approval purposes, and also for the purpose of the protections section 363(m) provides"). The fact that Old Chrysler was sold to Fiat, while Old GM was sold to a newly-formed, government-sponsored company, does not change the result.

## V.    THE McCALL LAWSUITS SHOULD BE STAYED UNTIL ALL INFIRMITIES ARE ADDRESSED

Despite clear rulings from this Court that plaintiffs, like the McCalls, cannot seek punitive damages from New GM based on Old GM conduct, the McCalls continue to press forward in the trial court and assert punitive damages against New GM based on Old GM conduct. The rule is "well-established" that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'" *Celotex*, 514 U.S. at 306. Continuation of the McCall Lawsuits without regard to and in violation of existing Bankruptcy Court rulings constitutes a violation of the Sale Order and related other Bankruptcy Court rulings. This Court should expressly stay the McCalls from proceeding with their lawsuits until all bankruptcy-related issues are addressed and resolved in compliance with all applicable Orders.

---

this point, as they assert in their Objection that "the ability to receive relief for products liability claims is so important that Congress insured that the [Chrysler Sale Agreement] would align with the [New GM] Sale Agreement by compelling New Chrysler to ultimately assume all products liability claims." (McCall Obj. ¶ 31.)

## **CONCLUSION**

For all of the foregoing reasons, New GM respectfully requests that this Court enter the

proposed order attached to the McCall Motion to Enforce as Exhibit "G," granting the relief sought

in the McCall Motion to Enforce, and for such other and further relief as the Court may deem just

and proper.

Dated: New York, New York
        May 24, 2019                         Respectfully submitted,


                                             _   /s/ Arthur Steinberg_____
                                             Arthur Steinberg
                                             Scott Davidson
                                             KING & SPALDING LLP
                                             1185 Avenue of the Americas
                                             New York, New York  10036
                                             Telephone:     (212) 556-2100
                                             Facsimile:     (212) 556-2222

                                             -and-

                                             Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                                             Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                                             KIRKLAND & ELLIS LLP
                                             300 North LaSalle
                                             Chicago, IL 60654
                                             Telephone:     (312) 862-2000
                                             Facsimile:     (312) 862-2200

                                             *Attorneys for General Motors LLC*