UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|   |   |
|---|---|
| . | Case No. 09-50026-mg |
| IN RE: . | |
| . | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, . | |
| . | One Bowling Green |
| . | New York, NY 10004 |
| . | |
| Debtors. . | Thursday, May 30, 2019 |
| . | 3:04 p.m. |

. . . . . . . . . . . . . . . .

TRANSCRIPT OF MOTION TO AUTHORIZE BY GENERAL MOTORS LLC TO
ENFORCE THE BANKRUPTCY COURT'S JULY 5, 2009 SALE ORDER AND
INJUNCTION AND THE RULINGS IN CONNECTION THEREWITH, WITH
RESPECT TO KIMBERLY MCCALL AND TAMMY MCCALL
(CC: DOC # 14477, 14509, 14515)
**BEFORE THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For New GM:                King & Spalding
                          By:  ARTHUR J. STEINBERG, ESQ.
                          1185 Avenue of the Americas
                          New York, NY 10036-2601
                          (212) 556-2158

                          Lighfoot Franklin
                          By:  MICHAEL L. BELL, ESQ.
                          The Clark Building
                          400 20th Street, North
                          Birmingham, AL  35203
                          (205) 581-0700

APPEARANCES CONTINUED

Audio Operator:            Matthew, ECR

Transcription Company:     Access Transcripts, LLC
                          517 Dell Road
                          Landing, NJ  07850
                          (855) 873-2223
                          www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

For Tammy McCall and        Wilk Auslander
Kimberly McCall:            By:  ERIC SNYDER, ESQ.
                                 ELOY A. PERAL, ESQ.
                            1515 Broadway
                            New York, NY  10036
                            (212) 981-2300

                            Prince Glover Hayes
                            By:  JOSHUA P. HAYES, ESQ.
                            701 Rice Mine Road North
                            Tuscaloosa, AL  35406
                            (205) 345-1234


TELEPHONIC APPEARANCES:

For New GM:                 Paul, Weiss, Rifkind, Wharton &
                            Garrison LLP
                            By:  DANIEL A. YOUNGBLUT, ESQ.
                            1285 Avenue of the Americas
                            New York NY 10019-6064
                            (212) 373-3968

3

1        (Proceedings commence at 3:04 p.m.)

2        THE COURT:  May I have the appearances, please, first

3   for Motors Liquidation.

4        MR. STEINBERG:  Good afternoon, Your Honor.  Arthur

5   Steinberg from King & Spalding on behalf of New GM.  And next

6   to me is Michael Bell from the Lightfoot firm, who is the

7   Alabama trial counsel in this matter.

8        THE COURT:  Okay.  Thank you.

9        MR. SNYDER:  Your Honor, good afternoon.  Eric

10  Snyder, Wilk Auslander, for Tammy and Kimberly McCall.  With me

11  is my associate, Eli Peral, and Josh Hayes, who is one of the

12  Alabama counsels in the --

13        THE COURT:  All right.  Thank you.

14        MR. SNYDER:  -- Alabama proceeding.

15        THE COURT:  Mr. Steinberg, you can argue.

16        MR. STEINBERG:  Your Honor, this motion to enforce

17  essentially boils down to one issue, which is whether under

18  Section 2.3(a)(9) of the sale agreement, New GM contractually

19  assumed the punitive damage liability of Old GM.  And as Your

20  Honor knows, that the default provision on the sale agreement

21  under Section 2.3(b) is that if you don't specifically find

22  yourself in the assume liability section of the sale agreement,

23  meaning that it's not specifically mentioned, then the default

24  mechanism of that it is a retained liability of Old GM.

25        Here, the McCalls are only pointing to Section

4

1   2.3(a)(9), so I think the issue has been narrowed to whether --

2         THE COURT:  Hang on just a second.  Whoever is on the

3   phone, would you put your phone on mute, please?

4         Go ahead, Mr. Steinberg.

5         MR. STEINBERG:  So here the only section that they're

6   pointing to in the assumed liability of the sale agreement is

7   Section 2.3(a)(9), and they're arguing solely a contractual

8   assumption theory.  So the issue is whether Section 2.3(a)(9)

9   had New GM assuming punitive damage liability for the Alabama

10  wrongful death claim.

11        And there are at least four decisions that emanated

12  from the General Motors case where the Court has looked at

13  Section 2.3(a)(9) and has determined that there was no

14  contractual assumption of punitive damage liability.  The first

15  decision was Judge Gerber's decision in November of 2015 where

16  he went through a textual analysis of Section 2.3(a)(9) and

17  said that New GM did not assume the punitive damage liability

18  based on Old GM conduct.

19        And then the second was Your Honor's July 2017

20  decision, which related to the 2016 threshold issues, where

21  Your Honor said that Judge Gerber's decision was the law of the

22  case for this matter.  And as a matter of bankruptcy law, since

23  Old GM is an insolvent seller, would not have been liable for

24  punitive damages, neither would New GM as the purchaser in a

25  363 sale.

5

```
1            THE COURT:  And the McCalls argue at a footnote that
2   that decision was incorrect because Section 726 of the
3   Bankruptcy Code deals with Chapter 7 cases, not Chapter 11
4   cases.  Could you just address that briefly?
5            MR. STEINBERG:  Sure.  Section -- in effect, the
6   subordination of punitive damages is in the Chapter 7 of the
7   Bankruptcy Code, but in Chapter 11, they incorporate the best
8   interest test.  And the decisions in this area have adopted the
9   Chapter 7 rationale and applied it to the Chapter 11 cases.
10           THE COURT:  And in this, the best interest wouldn't
11  be satisfied if you give -- if punitive damages were paid out.
12  Creditors would not recover -- unsecured creditors would not
13  recover as much as they would have in a liquidation.
14           MR. STEINBERG:  And the reality was, in the Old GM
15  bankruptcy plan, punitive damages didn't get any recovery.
16           THE COURT:  Okay.
17           MR. STEINBERG:  And the third was -- and Your Honor
18  wrote another decision in August of 2017 in the Reichwald
19  matter where Reichwald was a plaintiff, like, from Georgia and
20  argued that he was not bound by Your Honor's July 2017
21  decision.  Reichwald had not appealed that decision, and Your
22  Honor had decided that Reichwald was bound on res judicata
23  principles.  But in the context of that decision, Your Honor
24  noted that you agreed with Judge Gerber on his contractual
25  interpretation of Section 2.3(a)(9).
```

6

1              And then the <u>Reichwald</u> decision and Your Honor's 2016

2    decision went up to Judge Furman on appeal.  And Judge Furman

3    affirmed you both --

4              THE COURT:  That's on further appeal.

5              MR. STEINBERG:  Right.  It's now on further appeal.

6    But right now, the state of the record is that you have been

7    affirmed.  Judge Gerber's decision was never appealed.

8              THE COURT:  Do I need to reach the issue here?  It's

9    on appeal.  I mean, I was affirmed by Judge Furman, but the

10   issue has gone before the Second Circuit.  Do I need to reach

11   the issue here?

12             MR. STEINBERG:  You do in that they are moving

13   forward in their Alabama case, asserting the punitive damage

14   liability without regard to all of these decisions, which we

15   say is a violation of Your Honor's --

16             THE COURT:  Well, do I need to reach the issue of

17   whether the priority scheme of the Bankruptcy Code precludes

18   the availability of punitive damages?

19             MR. STEINBERG:  I think it's the law of the case

20   already, and I think they're bound by res judicata principles.

21             THE COURT:  Yeah, but my question was a different

22   one.  Can I decide the issues -- can I decide it as purely a

23   contractual --

24             MR. STEINBERG:  Sure.

25             THE COURT:  -- issue without having to decide the

ACCESS TRANSCRIPTS, LLC        ⚖        1-855-USE-ACCESS (873-2223)

7

 1  issue of whether res judicata, law of the case, whether I was

 2  right, whether I was wrong?

 3          MR. STEINBERG:  Yes.

 4          THE COURT:  Okay.  Let me ask you --

 5          MR. STEINBERG:  They are not arguing a successful

 6  liability theory.  They're arguing strictly that the section --

 7  the provision of the sale agreement provided for the

 8  contractual assumption of a liability.  So Your Honor clearly

 9  can decide, which I think you have previously interpreted, as

10  well as Judge Gerber, that on a contractual assumption basis,

11  there is no assumption of the punitive damage liability.

12          THE COURT:  Let me ask -- I have some questions I

13  wanted to ask you.  Okay.

14          In Paragraph 59 of your motion, you state that,

15  quote, "The McCalls also assert claims for personal injuries

16  arising from the accident.  These claims, as phrased in the

17  McCall complaints, are Product Liabilities" -- and those are

18  initial caps -- "as defined in the sale agreement as amended.

19  As such, to the extent the McCalls can establish liability with

20  respect to the assumed product liabilities, they could obtain

21  compensatory damages from New GM."

22          Does this mean that the plaintiffs may recover

23  compensatory damages for product liabilities on behalf of the

24  deceased?

25          MR. STEINBERG:  No.  No, but there are other

1  defendants in the litigation.  People were passengers in the

2  vehicle.

3         THE COURT:  Okay.

4         MR. STEINBERG:  And they are seeking compensatory

5  damages there.

6         THE COURT:  So is it your argument that the

7  plaintiff's only remedy where a person has died, caused by a

8  defective product, is for his estate representative to recover

9  punitive damages under the Alabama Wrongful Death Act?  In

10 other words, the estate representative cannot maintain a

11 negligence or breach of warranty or any product liability claim

12 seeking compensatory damages.  Is that your position?

13        MR. STEINBERG:  May I ask my Alabama counsel who is

14 trying the matter?

15        THE COURT:  Yes.  Mr. Bell?

16        MR. STEINBERG:  Mike, do you want to just address?

17        MR. BELL:  Mike Bell --

18        THE COURT:  Go up to the mike.

19        MR. BELL:  -- from the Lightfoot Franklin firm, Your

20 Honor.

21        THE COURT:  Good afternoon.

22        MR. BELL:  Good afternoon.  It's a pleasure to be

23 here.  It's much cooler.

24        A personal representative can pursue, under product

25 liability theories, a compensatory damage claim.  It's called

1    Aquaslide claim.

2            THE COURT:  I know -- I've read Aquaslide.

3            MR. BELL:  Okay.  It --

4            THE COURT:  And I've got some more questions about it

5    I'll ask you.  But go ahead and finish reading.

6            MR. BELL:  If there's a period of survival, they're

7    able to do that.

8            THE COURT:  That was part of my question.  Okay.  So

9    maybe I didn't bring all the cases out, but I've been reading

10   Alabama cases for the last couple of days.  Yes, I do have

11   Aquaslide.  Aquaslide is 406 So.2d 873 (1981).

12           So as I understand it, first of all, breach of

13   warranty claims includes implied warranty, fitness for its

14   defective purpose.  Essentially, your argument is that the

15   vehicle because of the position of the gas tank or whatever was

16   not fit for the purpose.  It blew up when it was hit, it's

17   essentially right.  Is that correct?

18           MR. BELL:  That would be the claim, right.

19           THE COURT:  The complaint does not -- the complaint

20   you filed does not assert a breach of warranty claim.

21           MR. STEINBERG:  It's not an open point.  They're the

22   defense.

23           MR. BELL:  I'm on the GM side.

24           THE COURT:  I'm sorry.  The complaint that was filed

25   does not assert a breach of warranty.

10

1          MR. BELL:  It does not.  That's right.

2          THE COURT:  And the Alabama Supreme Court has said

3 that breach of warranty is a contract claim, correct?

4          MR. BELL:  Correct.

5          THE COURT:  And it survived -- and when the statue on

6 survival has now been interpreted, they reversed earlier

7 decisions, and breach of contract claim survives the death of

8 person who was injured or killed by the defective product.

9          MR. BELL:  That's right.  There is that ability to

10 make that claim if you meet the factors.

11          THE COURT:  And what I've been trying to figure out

12 is whether the estate -- whether an estate representative --

13 whether this one was (indiscernible) can assert a breach of

14 warranty claim and recover compensatory damages.  And I know

15 compensatory damages are recoverable.  Are compensatory damage

16 -- I couldn't find any cases that said that compensatory

17 damages are cutoff by death.

18          MR. BELL:  The practice or the understanding under

19 Alabama law that we operate under is the Aquaslide claims can

20 be made for a period of survival for pain and suffering, for

21 mental anguish, and those sorts of things only.

22          THE COURT:  Is there a case that says that?

23          MR. BELL:  There has to be because --

24          THE COURT:  I can't find it.

25          MR. BELL:  Let me -- Chandler v. Ensley, methyl ethyl

11

1  ketone peroxide was the chemical involved.  It's a case from

2  before I was a lawyer, about '85, and it's <u>Chandler v. Ensley</u>.

3  It was a -- UNITED STATES was a party.  I think that case

4  actually dealt with that issue.

5       THE COURT:  And I've seen where cases say that from

6  the time of the injury until death, compensatory damages are

7  recoverable, but they don't say it's not recoverable after.  So

8  for example, are there any Alabama cases that say that

9  compensatory damages for future earnings are cutoff by death,

10  or is -- do you look at the expected working life of the

11  decedent, and you've got a statute?

12       Alabama Code 1975 Section 6-11-1, "In any civil

13  action based upon tort and any action for personal injury based

14  upon breach of warranty, except actions for wrongful death,"

15  and gives the sections, "the damages accessed by the fact-

16  finder shall be itemized as follows:  one, past damages; two,

17  future damages; three, punitive damages.  The fact-finder shall

18  not reduce any future damages to present value.  Where the

19  Court determines that any one or more of the above categories

20  is not recoverable in the action, those categories shall be

21  omitted from the itemization."

22       What I haven't -- there may -- I'm not an Alabama

23  lawyer.  I haven't seen any cases that say future wages are

24  cutoff by death if, but for the accident, the decedent would

25  have been expected to work for another 20 years, and a jury is,

1  you know, asked to calculate what their future wages that

2  they've lost would be, are there cases that say, no, you don't

3  do that?

4      MR. BELL:  They can't do it.  For 31 years of trying

5  wrongful death cases, I've never had a single claim for lost

6  wages because it's -- Alabama has taken the policy decision

7  under the Wrongful Death Act to make it a punitive damage claim

8  only, with the Aquaslide --

9      THE COURT:  That's limited to torts.  Aquaslide --

10     MR. BELL:  Aquaslide.

11     THE COURT:  -- says that the Wrongful Death Act

12  is -- applies only to tort, and the breach of warranty claim

13  that the Supreme Court of Alabama said is contract.  And so the

14  Wrongful Death Act doesn't apply to it.

15     You know this stuff better than I do, but I've been

16  looking, and I can't find something that -- I'm not saying it

17  isn't there, but I can't find it.

18     MR. BELL:  Josh Hayes, who is a plaintiff lawyer in

19  our state, who is representing the parties in this case, he can

20  correct me if I'm wrong, but in a wrongful death case, even

21  with a period of survival for an Aquaslide claim, it is

22  considered a tort claim.  It is simply you get the mental

23  anguish, the pain and suffering for that moment of survival, if

24  an Aquaslide claim is made.  Otherwise, it's limited to

25  punitive damages.  There's never been -- there's not a vehicle

13

1  under Alabama law at all to allow a true lost --

2          THE COURT:  Well, but that's -- you're saying it's a

3  tort claim then.  But your Supreme Court has clearly said that

4  breach of warranty claim, compensatory damages, if they

5  survive, if someone survives the crash, damages are

6  compensatory damages and punitive damages, but let's put

7  punitive damages aside, compensatory damages are recoverable

8  for breach of warranty, a contract claim, where their -- an

9  injury is resulting from a defective product.  You know, it

10 satisfies the requirements of -- wasn't fit for its intended

11 purpose, etc.  Is that true?

12         MR. BELL:  The only part that I'm not clear on is

13 whether it's truly a contract claim versus a tort claim.  We've

14 always treated it as a tort claim.

15         THE COURT:  The cases I read clearly said it's a

16 contract claim.

17         MR. BELL:  And really, I wish I read Chandler v.

18 Ensley, and the reason I said methyl ethyl ketone peroxide,

19 it's an easy word to word search with Westlaw.  But that case,

20 there was a claim, a breach of warranty claim under Aquaslide

21 and a death claim.  These gentlemen survived for 30 seconds in

22 a big tank where there was a flash fire.  In fact, one of them

23 lived for several days, as I recall.

24         MR. STEINBERG:  Your Honor, your questions are

25 obviously important to give you a fuller --

1           THE COURT:  Well, let me give you a fuller idea of

2    why I'm asking these questions.  Okay.

3           So Judge Bernstein's decision in <u>Old Carco</u> is on

4    appeal before Judge Nathan in the district court.  The Alabama

5    attorney general filed an amicus brief in that case.  And

6    first, as the solicitor general of Alabama argues, that

7    punitive damages doesn't mean the same thing in the

8    wrongful -- Alabama wrongful death statute that it means

9    elsewhere.  I'm skeptical of that argument.  The pattern jury

10   instruction, which you attached, like every other pattern jury

11   instruction on punitive damages I've seen, it's punishment, not

12   compensatory.  But the Alabama attorney general has argued on

13   appeal from the <u>Old Carco</u> decision.  It's Docket Number

14   18-CV-11290.  If you haven't -- have you read it,

15   Mr. Steinberg?

16          MR. STEINBERG:  I did when we filed the first motion.

17   I looked at all the briefing that was going up on appeal.

18          THE COURT:  And it's Document Number 16 on the

19   district court docket.  And this brief argues that, quote,

20   "Alabama's wrongful death damages are not punitive as that term

21   is used in the sale order, referring to the Chrysler sale

22   order."  And I understand the argument to be the proper

23   construction of the statute does not use the term "punitive

24   damages" in the same way as has been used and applied in the

25   Chrysler and General Motors bankruptcy cases.  And I must say,

15

1   it seems to me the Alabama pattern jury instruction that you

2   attached strongly refutes the attorney general's argument.

3           But be that as it may, I'm asking myself -- if I rule

4   in your favor, there's going to be an appeal, and the Alabama

5   attorney general is going to file another brief that probably

6   looks just like the one he filed in Old Carco.  And nobody's

7   addressed -- it's similar to the arguments that are made here.

8   Not precisely the same.

9           And so I have that question.

10          MR. STEINBERG:  May I just say one thing before you

11  go to the next question?

12          THE COURT:  Go ahead.

13          MR. STEINBERG:  When you read the response to our

14  motion to enforce, they don't make the argument that you're

15  referring to that the Alabama solicitor general made or that

16  was made in Chrysler Overton.  They don't try to quibble

17  whether punitive damages were really some quasi-compensatory

18  damage type issue.  They are saying that it is improper as a

19  matter of contractual assumption, fundamental fairness, and

20  public policy.  So they're not making the distinction that is

21  troubling, Your Honor.  That is why our papers didn't apply to

22  argument that was not made.

23          Now, there's obviously a technical argument that if

24  they haven't made the argument, it's abandoned.  But Your Honor

25  has --

16

1      THE COURT:  I can read the briefs in the district

2  court now, Mr. Steinberg.

3      MR. STEINBERG:  Right.  But Your Honor reviews these

4  issues not just for the particular plaintiff but because there

5  could be another Alabama plaintiff down the road, and you would

6  want it to be as comprehensive as possible.

7      The only thing that I could suggest is that to the

8  extent that we are not fully sanguine on the research for the

9  particular questions that you're asking under Alabama law, and

10  I'd assume the other side will ask for the same thing, to

11  prepare, you know, simultaneous briefs and submit it within a

12  week's period to --

13      THE COURT:  That's the rest of my note.

14      MR. STEINBERG:  Yeah.  Okay.  I'm just saying to Your

15  Honor that I understand the issue.  I was just trying to

16  explain why we didn't fully address it because we didn't think

17  it was relevant to this issue, but I understand that it could

18  be relevant in other Alabama type cases.  And certainly

19  relevant because Your Honor is considering it.

20      Now, you were going to ask another question, and I

21  interrupted, so I apologize for that.

22      I will say, as you're looking at your notes, that we

23  understand that we have an appeal in the Second Circuit on

24  punitive damages issue with regard to your 2017 decisions.  We

25  have --

17

1        THE COURT:  You know, actually I don't worry about

2   appeals very much.  I'll either get affirmed or reversed, so

3   that's one --

4        MR. STEINBERG:  Right.  And the res judicata doctrine

5   is that it's res judicata unless it's overturned on appeal, and

6   we believe it's only relevant to the people generally who took

7   the appeal, although that is an issue that people could debate.

8        But the reality is, is that in the context of this

9   case, they're about to -- they finished a mediation, which

10  failed.  We obviously didn't want to bring this to Your Honor's

11  attention if we thought this case could be settled because we

12  have settled -- we're ten years past the sale order.  We have

13  settled every Alabama Wrongful Death Act case that came up in

14  some type of resolution, so that this issue didn't have to be

15  teed up this way.

16       It is an interesting issue, but they want to go to

17  the next phase of discovery, which is expert discovery on the

18  punitive damage issue, and they were unprepared to stay the

19  matter to allow anything to be finally determined.  They did

20  agree to a three-week informal stay until this hearing or to

21  the day after this hearing.

22       But if Your Honor doesn't promptly rule, unless they

23  agree to further extend this formal stay, then they are going

24  to go off to the races, even though we believe that Your

25  Honor's decisions prevent them from suing on punitive damages

1 to the extent that it is the punitive damages that everybody

2 understands it to be, which I think was a bedrock principle of

3 their objection.

4            THE COURT:  Okay.  Let me hear from the other side.

5            MR. STEINBERG:  I have some --

6            THE COURT:  You have more?

7            MR. STEINBERG:  I do have more.

8            THE COURT:  Yeah, go ahead.

9            MR. STEINBERG:  But I'll try to be brief.

10           THE COURT:  Go ahead.

11           MR. STEINBERG:  I was going to say besides these

12 opinions and the Chrysler Overton opinion, which Your Honor is

13 obviously familiar with, that the admitted facts from their

14 objection are that the McCalls are seeking punitives and not

15 compensatory damages under the Wrongful Death Act, and that the

16 punitive damage relief is solely based on Old GM conduct,

17 nothing to do with New GM.  And that the sole basis for New

18 GM's responsibility to pay the Old GM punitive damage liability

19 is the contractual assumption that they believe exists under

20 Section 2.3(a)(9).  And like the Reichwalds, they did receive

21 the order to show the December 2016 show-case order, and they

22 did not appeal the July 2017 opinion.

23           Now, they put a lot of emphasis on a fragment of a

24 sentence that appears once in Judge Gerber's decision to say

25 why that shouldn't be the law of the case.  And the fragment is

1  in actions where the assertion against New GM, a compensatory

2  damage claim, is permissible.  That's the clause that they're

3  looking at.

4        And we believe in our papers -- and I won't try to

5  regurgitate it unless Your Honor has a specific question -- I

6  think we give the context of how this decision was framed.  I

7  think we talk about what is actually in the decision beside

8  that fragment of a clause and what's in the judgment.  And all

9  of it is a much broader context.

10        THE COURT:  The judgment doesn't have that language

11  though.

12        MR. STEINBERG:  The judgment doesn't have that

13  language at all.  And the language of the judgment is that

14  there is no punitive damages under other theories, such as by

15  operation of law, as a result of New GM's assumption of certain

16  liabilities for compensatory damages.  That actual language

17  picks up the argument that they're making.

18        We also think, as a pure matter, the clause refers to

19  actions, not causes of actions.  Actions, meaning the

20  litigation, and they are suing for compensatory damages under

21  other legal theories in that case so that technically they need

22  to fragment.  But the reality is, is what Judge Gerber was

23  talking about, he was framing the issue as to whether under

24  2.3(a)(9) as a matter of contractual interpretation, was there

25  an assumption of punitive damages.  That's what that language,

1  we believe, means.

2         And so therefore -- and we think that the judge's

3  decision was right on all fours.  That is the law of the case,

4  and you could decide this on a contractual assumption basis.

5  What the punitive damages claims are that are blocked and what

6  are the quasi claims that could survive, maybe that's the thing

7  that you'll ask us to look at.  But we think for what they're

8  arguing, under the Wrongful Death Act --

9         THE COURT:  May I ask you something, Mr. Steinberg?

10 Let's assume that I agree with you and myself in the past, that

11 New GM did not assume liability for punitive damages, you know,

12 because it's law of the case or I reached exactly the same

13 decision that Judge Gerber did, reasoning through it, which I

14 think I did anyway.  But let's say that I agree with all of

15 that.  Okay.  Do the McCalls get to argue to the Court in

16 Alabama that punitive damages under the Alabama Wrongful Death

17 Act don't mean punitive damages the way one would think of it?

18 Essentially, the Alabama attorney generals, is that an issue

19 for the state court in Alabama to decide?

20        MR. STEINBERG:  I think if the issue is are they

21 really asserting punitive damages in the way that it's blocked

22 from the sale agreement, and they have to recognize that they

23 can't get that.  If they wanted to argue that what I'm really

24 arguing is not punitive damages but something else, then I

25 think you're in the issue as to whether, as a gatekeeper, that

21

1  gets through the gate or whether that's something you could

2  determine.

3         Obviously Judge Bernstein had the issue teed up for

4  him, and so he determined it.  And that's what's up on appeal.

5  But I can't say for you for sure that if someone wants to argue

6  that they're not presenting something that is barred by a

7  bankruptcy order but is asserting something totally different,

8  they can't go to another judge to say why that is right.

9         With saying that, I'm not sure I don't have the right

10  to come back and say, that's all a charade, and they're really

11  trying to circumvent your order.

12         THE COURT:  Well, if you're saying it, say it now,

13  but --

14         MR. STEINBERG:  Well, I think, Your Honor, the issue

15  that --

16         THE COURT:  I mean, the pattern jury instruction that

17  you attached is -- I tried enough cases before I became a judge

18  where usually representing defendants, not always but usually

19  representing defendants where sometimes they got the -- have

20  the jury instructed on punitive damages.  It sure looks like

21  that Alabama pattern jury instruction.  It says not

22  compensatory, punitive punishment.

23         MR. STEINBERG:  I think we're saying to you that if

24  they're going to be pursuing a claim under the Alabama Wrongful

25  Death Act and seeking what is labeled as punitive damages and

22

1  that is barred, then we would ask Your Honor to enter an order

2  that blocks that.

3        THE COURT:  What sent me down the path of researching

4  Alabama law, which is not something I do all of the time, as to

5  what claims -- what tort claims, what contract claims can be

6  asserted, what's recoverable is -- and they do make this

7  argument, that that's a terrible thing to tell the McCalls they

8  can't recover for the death of their loved ones or whoever

9  they're representing.  And I understand that argument.

10       MR. STEINBERG:  I do too.

11       THE COURT:  And that's what sent me down the road.

12  Well, is that really true?  And so that sent me into looking

13  about what about breach of warranty, and sure enough, Alabama

14  Supreme Court has now said, I think quite clearly, that the

15  wrongful death statute doesn't apply to contract claims, only

16  to tort claims.  And the survival statute also, that contract

17  claims survive, whether they've been brought before the

18  decedent -- before the person dies or after the person dies.

19  Contract claims survive.  Breach of warrant contract claims

20  survive.

21       And so that then said, well, what damages are

22  recoverable for that.  And so is it really true that if the

23  McCalls are barred by the Alabama Wrongful Death Act from

24  seeking punitive -- because it's quite clear that the statute

25  says only punitive damages, and the cases say only punitive

23

1 damages.  So if they're really precluded from seeking recovery,

2 do they have another -- maybe they haven't asserted it in their

3 complaint.  They didn't assert the breach of warranty.

4      If they had or if it could be amended to do that, are

5 they entitled to recover compensatory damage.  Yes.  Well, what

6 compensatory damages are recoverable?  That, frankly, is not

7 addressed at all by the Alabama attorney general in Old Carco

8 in the appeal.  And you know, if there is another avenue for

9 compensatory damages that are available to Alabama plaintiffs

10 that provide for compensatory damages, then the argument that,

11 oh, it's horrible that they cant seek punitive damages against

12 New GM, well, that's what got me headed down this road.

13      MR. STEINBERG:  I understand.

14      THE COURT:  Okay.

15      MR. STEINBERG:  Two things about that, Your Honor.  I

16 think you have perceived over the course of years that you've

17 been administering the GM case that GM's approach to personal

18 injury cases are different than economic loss cases.  And --

19      THE COURT:  I know you tried to mediate it.  I know

20 you've settled most of them, and I commend that.  I think

21 that's great, but --

22      MR. STEINBERG:  And so what I wanted to say --

23      THE COURT:  -- this one's not settled.

24      MR. STEINBERG:  -- is no matter how you ruled on this

25 matter, if you ruled in our favor, we would still try to settle

24

1  the claims.  We would still try to resolve the principle.  I

2  know there is a part of their litigation is going forward, but

3  we understand the circumstance that you're grappling with,

4  which is why as an Alabama resident gets into an accident in

5  Alabama and dies, why are they not entitled to an assumed

6  liability when ever other plaintiff who got into an accident in

7  another state may haven't.

8          THE COURT:  Well, they may have an assumed liability

9  for compensatory damages, but what --

10          MR. STEINBERG:  Right.

11          THE COURT:  -- how do you measure that?  What's

12  recoverable?  What's not recoverable?

13          MR. STEINBERG:  Right.  And --

14          THE COURT:  So if Mr. Bell says his 35 years of

15  experience show -- or the 30 years of experience show -- I

16  don't mean to make you too old.  Okay.  Show that it

17  stops -- the compensatory damages stop at debt, well, you know.

18          MR. STEINBERG:  And Your Honor, what I would say

19  about that is that, you know, after the sale agreement, there

20  were a lot of issues that needed to be addressed on a sort of a

21  fairness basis, that tried it to try to deal with it.  So I

22  wanted to tell you that we were going to try to be fair no

23  matter what.

24          THE COURT:  I'm sure.  That's not -- I don't have to

25  deal -- I don't deal with that.

25

1          MR. STEINBERG:  But if you had to deal with it on

2    pure legal principles, which is why we're here today as to what

3    is fair, there is on the flip-side something --

4          THE COURT:  I'm not looking -- I'm looking at --

5          MR. STEINBERG:  Okay.

6          THE COURT:  I'm trying to figure out what the legal

7    principles require, Mr. Steinberg.

8          MR. STEINBERG:  Okay.  So if I had to address their

9    public policy concerns, there is nothing fair about having one

10   plaintiff with the right to seek punitive damages, and every

11   other plaintiff in every other state not being able to do it

12   based on some -- a judge -- and I'm not saying you would do

13   this, but a judge deciding that I'm going to rewrite the

14   contractual bargain that had been reached --

15         THE COURT:  I'm not rewriting contractual bargains.

16   Okay.

17         MR. STEINBERG:  Okay.  So --

18         THE COURT:  I've got to interpret the contractual

19   bargain.  I think I've already done that.

20         MR. STEINBERG:  Right.

21         THE COURT:  You all are going to tell me why I

22   haven't or why what I did was wrong or --

23         MR. STEINBERG:  And in terms of, you know, fairness,

24   Judge Gerber had to deal with some of these issues at the sale

25   decision, at the sale hearing where the pre-sale accident

1  plaintiffs came to him and said, why aren't you -- I was in an

2  accident; why isn't those claims being assumed; why is the

3  government only taking the post-sale accidents.  So there were

4  lots of reasons why the government chose the line that it did.

5        But Judge Gerber had to write a decision whether it

6  was subject -- it was solely in the purchaser's discretion as

7  to which liabilities it was going to contractually assume or

8  not.  And in his sale decision, he said that was New GM's call.

9  I'm not going to second guess what the think, what they thought

10  was important or not, and this was not part --

11        THE COURT:  Okay.  Let me hear from Mr. Snyder.

12        MR. STEINBERG:  Okay.

13        THE COURT:  So the first question, Mr. Snyder, is is

14  it correct that the McCalls are only seeking punitive damages,

15  punishment, not arguing that the Alabama wrongful death statute

16  doesn't mean what it seems to mean?

17        MR. SNYDER:  Your Honor, I hate to hedge yes, but I

18  didn't want to -- after reading Your Honor's <u>Reichwald</u> -- the

19  August 20th decision where the Court said, I dealt with this a

20  month ago, I didn't want to be in a position where law of the

21  case was law of the case.  In this Court, whatever happens at

22  the Second Circuit, happens at the Second Circuit.

23        We dropped the footnote, and I'd be glad to go into

24  it if the Court would permit why I respectfully believe the

25  decision in this Court in the July 2017 was wrongly decided.

1  But be that as it may, we're here now.  Those decisions have

2  gone up.

3          I decided, after speaking with counsel, that we

4  wouldn't do it the way everyone else did and try to argue that

5  something that walks and talks and looks like a duck isn't a

6  duck.  The Alabama statute is a punitive damage statute.  The

7  pattern -- PJI says it's a punitive statute.  The Supreme Court

8  has said more than once it's a punitive damage statue, as has

9  Judge Bernstein in <u>Chrysler</u>.

10         THE COURT:  The Alabama attorney general

11 notwithstanding.

12         MR. SNYDER:  The Alabama --

13         THE COURT:  The statute says punitive damage is the

14 patterned jury instruction, clearly punitive, not compensatory.

15         MR. SNYDER:  Correct, Your Honor.  And his role is

16 different than mine.  You know, I -- we're here today.  We have

17 those decisions too by this Court, one by Judge Bernstein.  As

18 a matter of fact, one by Judge Gerber and one by Judge Furman.

19 So it's baseball season.  They're 5 and 0.  I understand why

20 they didn't bring this three years ago.  It was in mediation.

21 We're now three months before trial, and they have those

22 decisions under their belt.

23         But in my experience, Your Honor, Judge Gerber

24 chooses his words very carefully, having been on the wrong end

25 of many of his decisions.  The language that Mr. Steinberg

28

1  cites to I don't think is surplusage.  The decision says what

2  it said.  I don't know why --

3          THE COURT:  I understand your argument, and I

4  understand Mr. Steinberg's argument.  But you can go ahead.  I

5  don't want to cut you off.

6          MR. SNYDER:  That's fine, Your Honor.  I --

7          THE COURT:  But I -- it's --

8          MR. SNYDER:  It's clear.

9          THE COURT:  I'm focused on what the language you

10 point to.

11         MR. SNYDER:  Got it, Judge.

12         THE COURT:  The only thing that I would say,

13 Mr. Snyder, is I'm not ruling from the bench.  That's number

14 one.  I read that contract over plenty of times.

15         MR. SNYDER:  Right.

16         THE COURT:  And you're fighting an uphill battle,

17 even if I were deciding it as a, you know, first instance.

18         MR. SNYDER:  No, Your Honor, I hear you, but I think

19 the difference here is out because Alabama's a black swan,

20 right.  You have a statute where they are the only state that

21 says, well, GM took wrongful death, they took products

22 liability, but in Alabama, the only wrongful death products

23 liability you can get is punitive damages.  So they took

24 wrongful death, they took products liability, but they didn't

25 take punitive damages.

1        And so it's a matter of contractual interpretation,

2   which is where both you and Judge Gerber started.  They took

3   something and they didn't take something, and at least for

4   Alabama it's mutually -- it's exclusive.  It can't be --

5        THE COURT:  No, It isn't mutually exclusive,

6   Mr. Snyder.

7        MR. SNYDER:  Okay.

8        THE COURT:  I explained how I headed down the road of

9   figuring out whether there was -- whether it was asserted here

10  or not or whether it could still be asserted or not, whether

11  there was an alternate route by which compensatory damages

12  could be sought by representatives of the deceased.  And that's

13  what got me down the road of --

14       MR. SNYDER:  And Your Honor --

15       THE COURT:  -- contractual claims for breach of

16  warranty.

17       MR. SNYDER:  And I meant to start there, Your Honor,

18  and two people died here.  And I think that I appreciate the

19  Court is looking for, for lack of a better term, another way.

20  And --

21       THE COURT:  I'm looking to see whether Alabama law

22  provides another way.  I'm not looking to create out a whole

23  cloth another way.

24       MR. SNYDER:  And I'm not suggesting you are, Your

25  Honor, but I do think that the federal framework that would

30

1  suggest that if you're injured, you get money, if you're killed

2  you don't, or if the accident is 50 miles to the west of

3  Mississippi, but the degree and size of the injury dictates

4  whether New GM is on the hook or not.  I'm not arguing the

5  public policy.  The Alabama AG did.  I'm arguing as a matter of

6  contractual interpretation under New York law.

7         What does it mean when you have those results?  What

8  do you -- when you have results where they said they're taking

9  wrongful death claims.  I mean, if you're taking wrongful death

10  claims, you're taking wrongful death claims.  I know the Court

11  disagrees.  When I read that Judge Gerber, who in the footnote

12  in the response, they pointed out that no one knows better than

13  Judge Gerber what they were doing when they were quantifying

14  risk, and that's true.  But that also, that sentence is in

15  there.  If the judge didn't care --

16         THE COURT:  I'm not creating -- look, Mr. Snyder, if

17  you think I'm going to create an exception for one state out of

18  the union and allow punitive damages to be recovered in Alabama

19  where it can't be in any other state, that's not happening.

20         MR. SNYDER:  I wasn't suggesting that, Your Honor.  I

21  was suggesting --

22         THE COURT:  That's what you're asking for.

23         MR. SNYDER:  Well, I'm asking to put Judge Gerber's

24  sentence in context.  I know the Court said it wasn't in the

25  judgment.  It wasn't in your 2017 decisions.  Judge Bernstein

31

1  didn't mention it.  But that doesn't mean it wasn't there.  The

2  caption is the punitive damage issue.  That was on Page 1 of

3  the decision.

4          THE COURT:  I understand your argument --

5          MR. SNYDER:  Okay.

6          THE COURT:  -- quite clearly on that point.

7          MR. SNYDER:  I understand, Your Honor.  So

8  if -- well, if the Court is suggesting, and I'll take up the

9  suggestion, that we brief the issue or go back on the issue of

10 whether contract warranty claims survive --

11         THE COURT:  It's not -- actually, I want to be clear,

12 and I think the Alabama Supreme Court has been clear, that they

13 have recognized implied warranties, not just expressed

14 warranties.

15         And I'm using the term -- I don't remember the words

16 in the decisions I read where there was fitness for the

17 intended purpose.  I understand the Plaintiff's argument that

18 cars shouldn't be designed so that they explode, that the gas

19 tank is exposed.  I remember the Pinto cases, for example.

20 Okay.  Not -- that's not obviously my issue.  Okay.

21         But Alabama, that -- you know, I've read eight

22 Alabama Supreme Court decisions that deal with some portion of

23 this area, the survival statute, the warranty versus tort,

24 what's covered by the Alabama wrongful death statute, tort

25 claims, not contract claims.

1        But the one thing I didn't find, and maybe there is a

2    straightforward answer, a clear answer that says it cuts off at

3    death.  Although one of the Supreme Court cases I read affirmed

4    a judgment below where the jury was instructed, and you know,

5    the decedent lasted a few minutes after the accident, and the

6    jury returned a fairly substantial verdict for pain and stuff

7    and mental anguish.  I read that as clearly open, no matter

8    what I do.  I don't know.  You, a state court judge will have

9    to interpret the complaint as to whether those are in the case

10   or not.  Maybe they're not.

11        MR. SNYDER:  Well, Your Honor, I understand from

12   Alabama counsel that both of the decedents lived for

13   approximately 30 minutes prior to death, which is horrible to

14   think about, so --

15        THE COURT:  It was a horrible accident.  I just, you

16   know --

17        MR. SNYDER:  And so I don't know if there is a

18   Aquaslide exception, and I don't know if counsel.  And we

19   certainly had not looked into the implied warranty that the

20   Court raises here and whether that survives.

21        THE COURT:  I mean, part of the public policy

22   arguing, that's terrible.  You're denying people that were

23   killed in Alabama the relief that's available to people

24   elsewhere in the country because Alabama decided as a matter of

25   policy to say punitive damages, not compensatory damages.

33

1  Okay.

2           Okay.  I'm sorry.  Go ahead.

3           MR. SNYDER:  No, Your Honor.  And I tried to stay

4  away from the public policy arguments.  I stayed away from the

5  AG's argument.  I tried --

6           THE COURT:  You read the AG's brief.

7           MR. SNYDER:  I did, Your Honor.  I didn't agree with

8  it.  But in this Court, it doesn't fly, quite frankly.  I think

9  it's a very difficult --

10          THE COURT:  I don't want to get sandbagged.  Maybe

11 that's an overstatement because Mr. Steinberg will argue you

12 didn't raise the argument below.  I shouldn't even consider it.

13 If I rule against you, which I haven't decided yet, but when

14 you get to a district judge and you argue, you get the Alabama

15 attorney general to file an amicus brief on the appeal if I

16 rule against you.  So yes, I am going to require both sides to

17 submit additional briefs.  There are a couple of issues that I

18 want to address.

19          Look, I'm very sympathetic to the plight of the

20 representatives of the deceased plaintiffs, if they lived the

21 30 minutes or not.  The notion that Alabama law combined with

22 the prohibition on punitive damages prevents any recovery,

23 that's a pretty unsettling concept.  It may be what the answer

24 is.  It may not.

25          Go ahead with your argument.

34

1          MR. SNYDER:  Your Honor --

2          THE COURT:  I've read more than just your papers.

3  I've read lots of stuff.

4          MR. SNYDER:  Your Honor, and I appreciate the Court's

5  thoughtful analysis.  We laid out -- we kept it fairly simple.

6  Well, really three points.  One is it's not law of the case,

7  and I hope that the Court doesn't find in light of the history

8  that we're stopped at the gate.

9          The second issue, and as we said in the footnote, is

10 that we believe that the Court's July 2017 decision was wrong

11 in a matter of law, and we put that in there.

12         Just as an aside, Your Honor, Mr. Steinberg and Judge

13 Furman rely on the <u>Best Payphones</u> case, Judge Bernstein's case.

14 The judge never got to the decision on the impact of Section

15 103(b) on Chapter 11.  He said he may.  The case was settled.

16 And so --

17         THE COURT:  Mr. Snyder, I'm not sure I need to reach

18 that issue.  I'm -- you know, judges get reversed, but judges

19 also decide things on alternate grounds.  And I'm not sure that

20 I need to reach that as an alternate ground if I'm going to

21 rule against you, which I haven't decided that.

22         MR. SNYDER:  I understand, Your Honor, but when I

23 hear Mr. Steinberg say, you know, if we're reversing the Second

24 Circuit, you know, it only applies to people that raise the

25 issue.  So I want to make it clear that in our papers we raised

1 the issue that the July 2017 was wrong as a matter of law.

2        THE COURT:  His argument is that you received -- the

3 order to show cause was served on you.  It identified the

4 punitive damages.  I understand you're arguing about what some

5 other Alabama person wanted to argue.  I don't -- I really

6 don't think it was the same thing.  And some other Court will

7 have to decide whether you were on notice, didn't object, and

8 therefore are barred -- you're bound by the decision language.

9 But I'm not -- that's not for me to decide.

10        MR. SNYDER:  Understood, Your Honor, insofar as the

11 Court has stated it's read the papers.  And again, thanking

12 Your Honor for looking at this maybe a different way than all

13 of the parties did.  I have nothing further.

14        THE COURT:  Okay.  Thank you.

15        Briefly, Mr. Steinberg.

16        MR. STEINBERG:  Briefly.

17        Your Honor, our papers cite, and I -- and you

18 probably have read the cases that courts struggled in certain

19 cases where there's a statute that says lack of municipality,

20 the TVA can't be sued for punitive damages, and does the

21 Alabama Wrongful Death Act kind of apply to sue a municipality.

22 And courts upheld -- Fifth Circuit, Eleventh Circuit, have said

23 that there is no punitive damage claim.  And they basically

24 point to the Alabama legislature, who for years have been

25 said -- have been criticized saying, you need to broaden the

36

1  statute so that people don't have the liability.  And that's

2  essentially the same rationale that Judge Bernstein did in the

3  Overton case.

4         THE COURT:  Okay.  Mr. Bell, I don't want to be

5  unfair to you to put you on the spot about this.  And I

6  understand your position that the death cutoff future damages.

7  I'll use that term.  It didn't cutoff damages for -- and I read

8  the Alabama cases on the saying of a breach of warranty claim

9  had been personal injury, compensable damages include pain and

10 suffering, mental anguish, all of that is potentially

11 recoverable in a breach of warranty claim.  Is that correct?

12        MR. BELL:  Yes.  Yes is the short answer.  There all

13 right three scenarios that play out under Alabama law.  There

14 is a death where the tragic incident is instant.

15        THE COURT:  Yes.

16        MR. BELL:  Then there's one where there's a period of

17 survival.  And then there's one where there's a period of

18 survival, and the lawsuit gets filed while the person is

19 surviving.

20        THE COURT:  That's distinction I'm aware of.

21        MR. BELL:  Okay.  Okay.  Right.

22        THE COURT:  I've read those cases.

23        MR. BELL:  When you brought up the survival statute,

24 that was those cases.

25        THE COURT:  I've read the survival statutes.

1          MR. BELL:  So it's just those two scenarios that are

2     at issue.

3          THE COURT:  Okay.

4          MR. BELL:  But here's the distinction.  When there's

5     a period of survival, with the 31 years of experience, it's

6     always limited to the pain and suffering and mental anguish

7     during that period of survival.  There's no compensatory damage

8     claim for lost income, lost wages.  We've never had that under

9     Alabama law, only in personal injury cases.

10         THE COURT:  Are there other kinds of damages?  You're

11    an experienced lawyer who tries these cases.  Are there other

12    kinds of damages that are cutoff by debt?  So you said future

13    wages are cutoff by debt.

14         MR. BELL:  That's a good -- actually, if somebody

15    sues for fraud and the lawsuit is pending, and then they pass

16    away, well then the administrator of the estate at that point

17    there.  But that -- maybe that wasn't your question.

18         THE COURT:  No, no, no.  I just -- look, you've

19    acknowledged -- and you may argue when this case gets back that

20    they failed to plead breach of warranty.  I don't know what

21    that's going to be. So just hypothetical, the case that

22    properly pled the contractual claim of breach of warranty and

23    sought compensatory damages, are there other categories of

24    damages that you believe are cutoff by death of the plaintiff?

25    So you've said that pain and suffering, mental anguish for the

38

1  period in which they survived.  As I said, I read one case

2  where the poor person survived only minutes, frankly, and yet a

3  jury returned a verdict and got affirmed.  Are there other

4  categories that you believe are cutoff by the death of the

5  plaintiff?

6           MR. BELL:  Your Honor, you've hit on the distinction

7  because we've -- our practice is tort recovery is limited to

8  mental anguish, pain, and suffering.  Now, if it were a breach

9  of contract claim, that -- you raise a very interesting issue.

10 And I leaned over to Josh to see if he could think of an

11 example of that either, and I think we're both having the same

12 experience.

13          THE COURT:  Here's what I want done.  And I'll tell

14 you what I want additional supplemental briefs on, unless your

15 colleague from Alabama wants to address any of the issues I've

16 talked about today.

17          MR. HAYES:  No, Your Honor.  It --

18          THE COURT:  Just state your name when you go up.

19          MR. HAYES:  Yeah, sure.  Pleasure to be with you,

20 Your Honor.  May it please the Court, Josh Hayes on behalf of

21 the McCalls.  And it is a unique and dumbfounding issue.  I

22 agree with Mr. Bell in theory that -- with what he's said.  I

23 would like to take a fresh look in light of what the Court said

24 today, and we'll be doing that.

25          THE COURT:  Mostly I'm asking questions, you know.

39

1  I -- okay.  Thank you very much.

2          MR. HAYES:  Thank you.

3          THE COURT:  And welcome to New York.

4          MR. HAYES:  Yeah.

5          THE COURT:  All right.  So I would like supplemental

6  briefs on two matters.  I'd like counsel for each party to file

7  a supplemental brief addressing the arguments set forth in the

8  attorney general's amicus brief in <u>Chrysler</u>.  And that amicus

9  brief is filed in 18-CV-11290, and it's Docket Number 16.  I

10 think you indicated you both have seen it.

11         MR. SNYDER:  Yes, Your Honor.

12         THE COURT:  And the second thing I would like

13 addressed is assuming contractual claim for breach of warranty,

14 what is the measure of damages recoverable on such claims, and

15 what effect does the death of the -- I'll call them the injured

16 parties -- have on the recovery of damages.

17         I've asked a lot of questions specifically about

18 future earnings because that was -- sort of jumped out at me.

19 I read Alabama cases that deal with -- and I looked for the

20 pattern jury instructions, and I couldn't find them by just

21 hitting and clicking on Westlaw. They talk about them.  I've

22 seen some of the jury instructions that have been given.  They

23 were no surprise to me. I've seen them before when I used to

24 try cases.

25         But -- so that future earnings was one area.  Are

40

1  there other areas or elements of damage that are cutoff by the

2  death by reason of the wrongful act.

3          Okay.  So those are the two matters that I want

4  supplemental briefs.  And I would like simultaneous briefs.

5  How much time do you want to do that?

6          MR. STEINBERG:  Ten days okay with you guys?

7          MR. SNYDER:  He's on vacation next week.  Three weeks

8  good, Judge?

9          MR. STEINBERG:  Your Honor, the only thing I'm --

10          THE COURT:  They want to chart ahead with discovery.

11          MR. STEINBERG:  Right.  That's the only thing that I

12  would say is that if they're going to --

13          THE COURT:  Agree to hold off on discovery

14  until -- on anything to do with punitive damages.

15          MR. STEINBERG:  To do with damages, yes.

16          MR. SNYDER:  Your Honor, part of the problem, we've

17  been discussing this.  You know, the Court only sees what's in

18  front of them, I know.  We have a trial date of September.

19          THE COURT:  Okay.

20          MR. SNYDER:  If we get -- if that's adjourned it's a

21  year, so we have co-counsel.  We'll do it in two weeks, and

22  we'll stay for two weeks.  He'll go on vacation and his

23  co-counsel --

24          MR. STEINBERG:  I'm happy he's going to stay it, but

25  Your Honor --

41

1              THE COURT:  I want a week after you turn in the

2    briefs.  I mean, I don't --

3              MR. STEINBERG:  I would like you to stay until the

4    judge decides the matter.  And if the judge says he's going to

5    decide the matter there --

6              THE COURT:  Let -- hold on.  Mr. Snyder, all I can

7    tel you is I don't let things linger very long.

8              MR. SNYDER:  I am fully aware.  I read the <u>Elliott</u>

9    decision, which took about a day, so if the Court needs three

10   weeks --

11             THE COURT:  Oh, no, if you're going to get your

12   briefs in in two weeks, I want at least a week after that --

13             MR. SNYDER:  Until the Court decides, that's fine

14   with us, sir.

15             THE COURT:  Okay.  All right.  And I'll -- I'm

16   mindful -- what's the trial date?

17             MR. HAYES:  Your Honor, September 16th, I believe.

18             THE COURT:  Okay.  What is it that you want to get on

19   punitive damages?  You read a financial report and --

20             MR. HAYES:  I'm sorry?  I --

21             THE COURT:  What discovery is it that you want to

22   take on punitive damages?  Every punitive damages that, years

23   ago, I used to try, they asked for financial statements.

24   They -- you're looking for the wealth of the defendant.

25             MR. HAYES:  I was confused by this gentleman's --

1          THE COURT:  Mr. Steinberg.

2          MR. HAYES:  Mr. Steinberg, his staying discovery on

3  punitives because I don't know what he's talking about.  We

4  have experts that are going to testify about the car and what

5  it -- went wrong.  That's the only thing I'm going to get.

6          THE COURT:  Mr. Bell, is there a real issue here?

7  Come on.

8          MR. BELL:  I want to say welcome to Alabama.  No,

9  that's the problem.  You -- they're seeking discovery of the

10  defect of the design for which they're seeking punitive

11  damages.  If the car is deemed to be defective, then they're

12  seeking to punish Chrysler -- I mean, GM.

13          THE COURT:  No, I'm sorry.  Mr. Bell, discovery about

14  the defect of the car is relevant to -- I don't view that as

15  punitive damages research.  Okay.

16          You -- the case is going forward as to other

17  plaintiffs.  There were two injured parties who lived, right?

18          MR. BELL:  That's correct.

19          THE COURT:  So the case is going forward.  They want

20  their discovery.  They want a complete discovery about the

21  defect.  They're entitled to that as to the two who lived.

22          MR. BELL:  No question about that.

23          THE COURT:  Okay.  So what's the -- the only

24  thing -- I'm sensitive to -- but then I started thinking about,

25  you know, when I used to handle punitive damage cases, they're

43

1  fighting about financial statements.  Well, GM's a public

2  company.  I'm --

3          MR. BELL:  That is -- it's the defect stuff or the

4  defect research they're doing, but it is for both sides.

5          THE COURT:  I'm not staying discovery about the

6  defect.

7          MR. BELL:  Yes.

8          THE COURT:  You've got to -- you agree you have to

9  try that anyway.

10          MR. BELL:  We have, yes, for the other two, that's

11  correct.

12          THE COURT:  So I'm not staying discovery about

13  defects.  Okay.  Does everybody understand what I'm saying on

14  this?

15          MR. BELL:  Yes, Your Honor.

16          THE COURT:  I misunderstood before.

17          MR. SNYDER:  You'll go forward on the defect, but any

18  discovery on punitive damages will stay the decision.

19          MR. STEINBERG:  By the way, I was confused about that

20  too, obviously.  My information was different.

21          The only thing is, Judge, do you want to put a page

22  limit, or you don't care?

23          THE COURT:  Yeah, I usually want a page limit, but --

24          MR. SNYDER:  Twenty-five, thirty?

25          THE COURT:  Twenty-five pages limit.  Please try to

44

1  keep -- the shorter you keep it the better it is.  Twenty-five

2  pages excluding table of contents and table of authorities.

3          MR. SNYDER:  Will do, Your Honor, and two weeks.

4          THE COURT:  Two weeks.

5          MR. SNYDER:  Thank you again, Your Honor.

6          MR. STEINBERG:  You could have taken three weeks if

7  you're going to review discovery going forward anyway, if you

8  would have wanted it, but it's up to you.

9          MR. SNYDER:  Does the Court care -- if the Court

10 doesn't care and we're not staying discovery, three weeks would

11 be preferable, so it's four weeks or whatever you need, again,

12 if we're not -- that's fine.

13         THE COURT:  Okay.  I'm not staying discovery.  Three

14 weeks from today for the supplemental briefs.

15         MR. SNYDER:  Thank you, Your Honor.

16         THE COURT:  Okay.  Enjoy your vacation.

17         MR. BELL:  Thank you, Your Honor.

18         MR. STEINBERG:  Thank you, Your Honor.

19         THE COURT:  Okay.  Thanks.  We're adjourned.

20      (Proceedings concluded at 4:03 p.m.)

21                         *  *  *  *  *

22

23

24

25

45

1      # **C E R T I F I C A T I O N**

2

3            I, Lisa Luciano, court-approved transcriber, hereby

4      certify that the foregoing is a correct transcript from the

5      official electronic sound recording of the proceedings in the

6      above-entitled matter, and to the best of my ability.

7

8

9      _____

10     LISA LUCIANO, AAERT NO. 327      DATE:  June 1, 2019

11     ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

