UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                              Debtors.

------------------------------------------------------------------------x

FOR PUBLICATION

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO PERMIT FILING OF LATE CLAIM

*A P P E A R A N C E S:*

Gary Peller, Esq.
*Counsel for Celestine Elliott and*
*Lawrence Elliott*
600 New Jersey Avenue, N.W.
Washington, DC 20001

DRINKER BIDDLE & REATH LLP
*Attorneys for The Motors Liquidation*
*Company GUC Trust Administrator*
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
By:    Kristin K. Going, Esq.
        Marita S. Erbeck, Esq.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
*Counsel for General Motors LLC*
1285 Avenue of the Americas
New York, New York 10019
By:    Paul M. Basta, Esq.
        Aidan Synnott, Esq.
        Kyle J. Kimpler, Esq.
        Sarah Harnett, Esq.

KING & SPALDING
*Counsel for General Motors LLC*
1185 Avenue of the Americas
By:    Arthur Steinberg, Esq.
        Scott Davidson, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

  Celestine and Lawrence Elliott (the "Elliotts") purchased General Motors vehicles in 2006 and 2007. On June 1, 2009, General Motors Corporation ("Old GM") filed for bankruptcy. The Court established November 30, 2009 as the bar date and General Motors LLC ("New GM") emerged from bankruptcy in 2011. Between 2012 and 2014, New GM issued dozens of recalls related to vehicles sold before the bankruptcy filing. Several of those recalls applied to the Elliotts' vehicles, including recalls related to an issue with the ignition switch and an issue with the driver's door module ("DDM").

  On January 21, 2019, the Elliotts moved the Court to "lift the bar date" to allow the Elliotts to assert a late class claim based on the DDM defect. ("Motion," ECF Doc. # 14399.) The Wilmington Trust Company, as the General Unsecured Creditors Trust (the "GUC Trust") administrator, objects to the Motion. ("GUC Trust Objection," ECF Doc. # 14417.) General Motors LLC ("New GM") joined the GUC Trust Objection. ("New GM Joinder," ECF Doc. # 14418.)

  The Court finds that the Elliotts have failed to satisfy the standard for permitting late claims related to the DDM defect. The Elliotts filed the Motion with respect to the DDM defect almost ten years after the bar date in this case. They argue this delay should be excused because they did not receive proper notice of the bar date. Even if the Court assumes the Elliotts' due process rights were violated, however, this would only explain a portion of the Elliotts' delay. The Elliotts should have filed the Motion no later than December 2016. Their counsel attended a hearing on November 16, 2016 during which the Court explained that it was ready to decide whether late claims could be filed and that parties should proceed with filing late claims motions.

Despite this, the Elliotts waited until January 21, 2019 to file the Motion. The Court finds that there is no excuse for this significant delay.

It appears the Elliotts believe they preserved their ability to file a late claims motion by filing a joinder to motions to permit the filing of late claims that were filed by other parties in December 2016. ("Elliott Joinder," ECF Doc. # 13811.) The Court disagrees. The motions the Elliotts joined very clearly asserted claims based only on defective ignition switches, side airbags, and power steering, *specifically identified by recall numbers*. By joining these motions, the Elliotts only preserved their right to file claims based on these same defects. The Court has not yet decided the late claims motion with respect to the owners of vehicles that were the subject of recalls specifically identified in the late claims motion filed by economic loss claimants. The Elliott Joinder may have timely preserved their arguments with respect to those defects, but the determination of that portion of the Elliotts' claim must await the determination of the economic loss plaintiffs' pending motions. The Elliotts' late claims motion did not preserve the Elliotts' right to file a late claim based on the DDM defect, as the Elliotts now seek to do in the Motion.

For these reasons, the Motion is **DENIED** with respect to the DDM defect.

## I. BACKGROUND

The Elliotts purchased a new 2006 Chevrolet Trailblazer at a now-defunct Chevrolet dealership in the District of Columbia in 2006. (Motion at 5.) A year later, they purchased a new 2007 Chevrolet Cobalt at the same dealership. (*Id.*)

Old GM filed for bankruptcy on June 1, 2009. *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 145 (2d Cir. 2016) (hereinafter *2016 2nd Cir. Opinion*). On the same day, Old GM filed a motion to sell substantially all of its assets to New GM free and clear of all liens and

encumbrances pursuant to 11 U.S.C. § 363. *Id.* The next day, the Court ordered Old GM to provide notice of the proposed sale order to interested parties and to post publication notice of the same. *Id.* at 146. On July 5, 2009, the Court issued an order (the "Sale Order") approving the section 363 sale. *Id.* November 30, 2009 was set as the bar date for any individual or entity to file a proof of claim. *Id.* The Court ordered Old GM to publish notice of the bar date in the Financial Times, the Wall Street Journal, the New York Times, USA Today, the Detroit Free Press/Detroit News, Le Journal de Montreal, Montreal Gazette, the Globe and Mail, and the National Post at least thirty days prior to the bar date. (ECF Doc. # 4079, at 7.) Old GM filed a Chapter 11 liquidation plan on August 31, 2010, and amended plans on December 8, 2010 and March 29, 2011. *2016 2nd Cir. Opinion*, 829 F.3d at 147. When the second amended plan was confirmed on March 29, 2009, Old GM established the GUC Trust to administer the claims against Old GM and Old GM dissolved. *Id.* at 147–48.

Between 2012 and 2014, New GM issued over 60 recalls relating to various defects in GM vehicles. *Id.* Several of these recalls applied to the Elliotts' vehicles. With respect to the DDM defect, New GM issued recalls on August 16, 2012, June 13, 2013, and July 2, 2014, (GUC Trust Objection at 10–11 (citing NHTSA Campaign No. 12V406000, 13V-248, and 14V404000).)

After the recalls were issued, owners of defective GM vehicles, including the Elliotts, filed lawsuits across the country asserting claims against both Old GM and New GM. On April 1, 2014, the Elliotts filed a four-page letter as a *pro se* complaint in the Superior Court for the District of Columbia relating to both of their General Motors vehicles. (Motion at 6.) The complaint alleged both ignition switch and non-ignition switch defects in the Elliotts' Cobalt and non-ignition switch defects in the Elliotts' Trailblazer. (*Id.* at 7.) After retaining counsel, the

4

Elliotts amended their complaint so that it only asserted non-successor liability claims against New GM related to the Cobalt. (Motion at 7 n.4.)

On April 21, 2014, New GM moved to enforce the Sale Order against individuals asserting damages arising from a defective ignition switch in their GM vehicles, including the Elliotts. *2016 2nd Cir. Opinion*, 829 F.3d at 150–51. On May 16, 2014, the Court entered a scheduling order identifying various threshold issues and setting a schedule to resolve the issues. ("2014 Ignition Switch Order," ECF Doc. # 12697.) The order also stated:

> [T]he GUC Trust agrees that it shall not assert a timeliness objection to any claims that the Plaintiffs may attempt to assert against the Old GM bankruptcy estate and/or the GUC Trust, based directly or indirectly on the ignition switch issue, as a result of the Plaintiffs' delay in asserting such claims during the "Interval." For purposes hereof, (a) the "Interval" shall commence on the date of this Order and shall end 30 days after a Final Order is entered with respect to an adjudication of the Threshold Issues (as defined in this Order), and (b) "Final Order" shall mean the entry of an order by a court of competent jurisdiction, and there are no pending appeals, and the time period to file an appeal of such order has expired.

(*Id.* at 3.)

On August 1, 2014, New GM filed additional motions to enforce the Sale Order against, *inter alia*, individuals alleging damages arising from defects other than the ignition switch defect. *2016 2nd Cir. Opinion*, 829 F.3d at 151 n.17. The Court then entered an order extending the schedule set forth in the 2014 Ignition Switch Order to the non-ignition switch defect claimants. ("2014 Non-Ignition Switch Order," ECF Doc. # 12898 ¶ 1.)

On September 19, 2014, the Elliotts joined the *Bledsoe* lawsuit in the district court to assert independent and non-derivative claims for economic loss against New GM regarding the Trailblazer's defective DDM on behalf of themselves and similarly situated residents of the District of Columbia. (*Id.* at 9 (citing *Bledsoe et al. v. General Motors LLC*, 1:14-cv-7631 (S.D.N.Y)).) This action was also stayed at the request of New GM. (*Id.* at 9-10.)

5

On April 15, 2015, this Court issued an opinion resolving some of the threshold issues identified in the 2014 Ignition Switch Order. The opinion enforced the Sale Order in part and dismissed any would-be claims against the GUC Trust. The Second Circuit summarized this opinion by stating:

> The bankruptcy court first determined plaintiffs lacked notice consistent with procedural due process. *Id.* at 540–60. In particular, the bankruptcy court found that the ignition switch claims were known to or reasonably ascertainable by Old GM prior to the sale, and thus plaintiffs were entitled to actual notice, as opposed to the mere publication notice that they received. *Id.* at 556–60. The bankruptcy court found, however, that with one exception plaintiffs had not been "prejudiced" by this lack of notice— the exception being claims stemming from New GM's own wrongful conduct in concealing defects . . . . In the same decision, the bankruptcy court addressed arguments by GUC Trust that it should not be held as a source for relief either. Applying the factors set out in *In re Chateaugay Corp.* ("*Chateaugay III*"), 10 F.3d 944 (2d Cir. 1993), the bankruptcy court concluded that relief for any late claims against GUC Trust was equitably moot, as the plan had long been substantially consummated. *MLC II*, 529 B.R. at 583–92.

*2016 2nd Cir. Opinion*, 829 F.3d at 151.

On May 27, 2015, the Court issued another opinion clarifying that the holdings in the April 15, 2015 opinion applied to the non-ignition switch defect claimants as well. *Id.*

On appeal, the Second Circuit ruled that the Sale Order covered individuals asserting economic loss claims arising from the ignition switch defect or other defects because they held contingent claims. *Id.* at 157 (citing 11 U.S.C. § 101(5)). The Court went on to rule, however, that the Sale Order could not enjoin the ignition switch claimants because their due process rights were violated. The Court stated that the ignition switch claimants should have received actual notice of the proposed Sale Order because Old GM knew or should have known about the ignition switch defect. *Id.* at 166. The Second Circuit did not extend this ruling to the non-

6

ignition switch claimants however. Instead, the Court "vacate[d] the bankruptcy court's decision to enjoin those claims . . . and remand for further proceedings consistent with this opinion."[1] *Id.*

Following the Second Circuit's opinion, this Court issued an order to show cause regarding next steps identifying additional threshold issues. ("December 13, 2016 Order," ECF Doc. # 13802.) One of the threshold issues in that order was "[c]an the Ignition Switch Plaintiffs and/or Non-Ignition Switch Plaintiffs satisfy the requirements for authorization to file late proof(s) of claim against the GUC Trust and/or are such claims equitably moot . . . ?" (*Id.* at 3.) With respect to this issue, the order to show cause provided that Brown Rudnick LLP and Goodwin Procter LLP shall file motions seeking authority to file late proofs of claims by December 22, 2016. (*Id.* at 5.) If other parties wished to join that motion, they were to file a joinder by January 6, 2017. (*Id.*) The December 13, 2016 Order also stayed the non-ignition switch actions until the threshold issues defined therein were resolved. (*Id.* at 5.)

Pursuant to the December 13, 2016 Order, Brown Rudnick LLP filed a motion seeking authority to file late claims on behalf of "the Ignition Switch Plaintiffs and the Non-Ignition Switch Plaintiffs." ("Economic Losses Late Claims Motion," ECF Doc. # 13806, at 5.) The Economic Losses Late Claims Motion defined the Ignition Switch Plaintiffs as "plaintiffs who, as of November 30, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047." (*Id.* at 5 n.1.) It defined the Non-Ignition Switch Plaintiffs as "plaintiffs who, as of November 30, 2009, owned or leased a vehicle with defects in ignition switches, side airbags, or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-118 and 14V-153." (*Id.*) Also pursuant to the December 13, 2016 Order, Goodwin Proctor LLP filed a

---

[1] The Elliotts' counsel argues that he must be permitted discovery on the issue whether Old GM violated the Elliotts' due process rights because, he alleges, Old GM knew about the DDM defect and failed to disclose it at the time of its June 2009 bankruptcy. Because the Court concludes that this late claim motion must be denied even if the Elliotts were denied due process in 2009, no discovery is necessary or appropriate now.

7

motion seeking authority to file late claims on behalf of "Ignition Switch Pre-Closing Accident Plaintiffs." ("Accident Plaintiffs Late Claims Motion," ECF Doc. # 13807.) That motion defined the "Ignition Switch Pre-Closing Accident Plaintiffs" as "the subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles."[2] (*Id.* at 1 n.1.)

On January 3, 2017, the Elliotts and three other individuals filed a document stating that they were joining "the motions filed by other parties for leave to file late proofs of claim" pursuant to the December 13, 2016 Order. ("Elliott Joinder," ECF Doc. # 13811, at 1.) The Elliott Joinder explained that the Elliotts "seek to recover for the economic loss they suffered when they purchased hazardous vehicles containing the Delta Ignition Switch defect" and "for economic loss they suffered in from [*sic*] a nonignition switch safety hazard . . . ." (*Id.*) The Elliotts claim that consideration of their claim was stayed pending resolution of the issues identified in the December 13, 2016 Order. (Motion at 10-11 (citing December 13, 2016 Order, at 5).)

At a hearing on December 21, 2018, the GUC Trust explained that it was pursuing a settlement with the parties that filed the Economic Losses Late Claims Motion and the Accident Plaintiffs Late Claims Motion.[3] (ECF Doc. # 14395.) The parties further explained that the Elliotts' claim based on the DDM defect would not be encompassed in the proposed settlement and the Elliotts would file a late claims motion by January 21, 2019. (Motion at 11.) The Elliotts filed the Motion on that date.

---

[2] The Accident Plaintiffs Late Claims Motion refers to this Court's August 8, 2014 order (ECF Doc. # 12826) for the definitions of "Ignition Switch Pre-Closing Accident Plaintiffs," "Ignition Switch," and "Subject Vehicles."

[3] Those parties subsequently filed a motion seeking class action certification for settlement purposes. (The "Settlement Motion," ECF Doc. # 14408.) On March 6, 2019 this Court entered an order adjourning the scheduled hearing to consider the Settlement Motion *sine die*. (ECF Doc. # 14459.)

8

The Motion indicates that the Elliotts submit "proposed proof of individual, class and representative claims." (*Id.* at 1.) The Motion attaches a proof of claim ("Proof of Claim," ECF Doc. # 14399-1) and a rider to the proof of claim. ("Rider," ECF Doc. # 14399-2.) The Rider explains that the Elliotts wish to assert an economic loss claim against Old GM and the GUC Trust. (Proof of Claim Rider ¶ 1.) The Rider also explains that the Elliotts wish to assert these claims on behalf of themselves and a proposed class of "[a]ll residents of the District of Columbia who, prior to June 2009, either owned or leased a GM vehicle subject to Recall No. 14V404."[4] (*Id.* ¶ 2.)

## II. LEGAL STANDARD

Federal Rule of Bankruptcy Procedure 9006(b)(1) governs the filing of proofs of claim after a bar date. *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005). It states:

> [W]hen an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

FED. R. BANKR. P. 9006(b)(1). Accordingly, a proof of claim filed after the bar date will only be permitted if the failure to file before the bar date "was the result of excusable neglect."

In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), the Supreme Court stated that the determination of whether a party has shown "excusable neglect" is "taking account of all relevant circumstances surrounding the party's omission. *Id.* at 395. Under *Pioneer*, a court must consider four factors: "the danger of prejudice to the debtor, the

---

[4]   New GM filed a joinder to the GUC Trust Objection to dispute the Elliotts' ability to file claims on behalf of a class. (New GM Joinder ¶ 3.) The Elliotts acknowledge that "permission to file proof of claim on behalf of absent class members depends on the Court granting a timely motion for class certification . . . and intend to so move expeditiously." (Motion at 1 n.1 (citing *In re Motors Liquidation Co.*, 591 B.R. 501 (Bankr. S.D.N.Y. 2018)).) Despite the representation that a motion for class certification would be filed "expeditiously," the Elliotts' counsel has not filed a motion for class certification. The Court does not need to reach this issue because the Court finds that the Elliotts should not be permitted to file a late claim, even if only asserted in their individual capacity.

9

length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

The Second Circuit takes a "hard line" approach when applying *Pioneer* and deciding whether to allow a late-filed claim. *Midland Cogeneration Venture Ltd. P'ship (In re Enron Corp.)*, 419 F.3d 115, 128 (2d Cir. 2005). When balancing these factors, "it is the third factor—the reason for delay—that predominates, and the other three are significant only in close cases." *See Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415–16 (2d Cir. 2004). "The burden of proving excusable neglect lies with the late-claimant." *Enron*, 419 F.3d at 121 (quoting *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000)).

### III. DISCUSSION

The Court analyzes the Motion under the four *Pioneer* factors. The Court finds that the reason for delay, the length of delay, and the prejudice to the debtor weigh in favor of denying the Motion. The fourth factor, good faith of the proposed claimant, would not be enough to overcome the other three factors even if the Court found it to be present here. It is also far from clear on the facts here that the Elliotts' counsel acted in good faith: the Elliotts' counsel has actively participated in the proceedings in this Court and in the MDL against New GM in the district court, the Elliott Joinder did not include the DDM defect, and the late claims motions it was joining did not include the DDM defect. If the Elliotts' counsel intended to seek to file a late claim based on the DDM defect, he should have done so no later than January 2017.[5]

---

[5] As already discussed, the Elliott's 2006 Chevrolet Trailblazer was the subject of three recalls relating to the DDM in 2012, 2013 and 2014. While the Elliotts sued New GM in September 2014, they did not move to assert late claims against Old GM relating to the DDM defect until the late claims motion was filed in January 2019. The GUC Trust argues that "excusable neglect" should be measured against the dates of the recalls in 2012, 2013 and 2014. While that argument is a strong one, the Court concludes below that the excusable neglect standard has not been satisfied even measured against the January 2017 date when the Elliott Joinder was filed.

10

Because the Second Circuit has instructed that the factor of the reason for delay predominates when balancing these factors, *see Williams*, 391 F.3d at 415–16, the Court finds that the Motion must be denied.

### A. Reason for the Delay

The Elliotts argue that their failure to file a timely proof of claim should be excused because they did not receive proper notice of the bar date. The Elliotts received publication notice of the bar date, but the Elliotts argue it was insufficient because (1) they were entitled to actual notice of the bar date because Old GM knew or should have known about the DDM defect, and (2) the publication notice was inadequate in various respects. (Motion at 24.) But even if the Court assumes that the Elliotts' due process rights were violated, this would only explain a portion of the Elliotts' delay. It would not explain why the Elliotts waited more than six years after they received the first DDM defect recall and over two years longer than any other party to file their late claims motion. Considering that the Elliotts' counsel attended the relevant hearings and should have been aware of the need to file a late claims motion, the Court does not find that there is any explanation for this additional delay.

On November 16, 2016 this Court held a case management conference to discuss how to proceed following the *2016 2nd Cir. Opinion*. ("November 16, 2016 Transcript," ECF Doc. # 13796.) The Elliotts' counsel attended the hearing. At the hearing, the Court made it clear that it was time to decide whether late claims should be permitted. (*Id.* at 64:12–20.) The Court explicitly warned the parties that the time to file late claims motions had arrived and that the parties needed to do so diligently. Specifically, the Court stated:

> [I]n an entirely different context, this morning, I reviewed—reasoned to review a prior decision of mine where I denied leave to file a late claim, and the argument was that they didn't have proper notices of bar date, and I denied their leave to file a late claim because once they had notice that they

11

> hadn't been—you know, once they found out they hadn't been given proper notice of the bankruptcy, there was nothing to keep them from filing a motion for leave to file late claim, and they waited a year and I said no.
>
> All right. So, you know, to the extent you're acting on behalf of others or other counsel here are acting on behalf of others, be mindful that as I understand—I'm not deciding anything, but as I understand it and decided once before, the law on motions to file a late claim, you've got to act with some diligence. So if somebody turns around a year from now and files a motion to file a late claim, good luck.[6]

(*Id.* at 70:20–71:11.) Even though the Elliotts' counsel was in the courtroom on November 16, 2016 and received this warning, the Elliotts waited until January 2019 to file the Motion seeking to file a late class claim relating to the DDM defect.

It appears the Elliotts' counsel believes the Elliotts preserved their right to file a late claims motion relating to the DDM defect when he filed the Elliott Joinder on January 3, 2017. But that document only indicates that the Elliotts joined "the motions filed by other parties for leave to file late proofs of claim in these proceedings." (Elliott Joinder at 1.) The only filings that fit this description are the Economic Losses Late Claims Motion and the Accident Plaintiffs Late Claims Motion. The Economic Losses Late Claims Motion explicitly states that it was made with respect to the vehicles included in recall numbers 14V-047, 14V-355, 14V-394, 14V-400, 14V-118 and 14V-153. (Economic Losses Late Claims Motion at 5 n.1.) The Accident Plaintiffs Late Claims Motion was filed on behalf of "the subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles." (Accident Plaintiffs Late Claims Motion at 1 n.1.) By joining these motions, the Elliotts only preserved their right to file claims related to pre-closing accidents and to recall numbers 14V-047, 14V-355, 14V-394, 14V-

---

[6] *See In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 515387, at *7 (Bankr. S.D.N.Y. Feb. 6, 2015).

12

400, 14V-118 and 14V-153. It did not preserve their right to file a late claim related to recall number 14V-404, as they are now attempting to do. (Proof of Claim Rider ¶ 1.)

Even if filing a joinder were sufficient to preserve the Elliotts' right to file a late claims motion at a later date, the Elliott Joinder fails to indicate that the Elliotts wished to file a late claim based on the DDM defect. The Elliott Joinder states that the Elliotts "seek to recover for the economic loss they suffered when they purchased hazardous vehicles containing the Delta Ignition Switch defect" and "for economic loss they suffered in from [sic] a non-ignition switch safety hazard . . . ." (Elliott Joinder at 1.) In the context of the joinder in the already filed Economic Losses Claims Motion, the Court concludes that the only fair reading of the Elliotts' joinder refers to the non-ignition switch defects specifically identified in the Economic Losses Late Claims Motion. (*See* Economic Losses Late Claims Motion at 5 n.1 (stating that the motion was brought by parties that owned or leased a vehicle with defects in ignition switches, side airbags, or power steering).)

If the Elliotts wanted to file a late claims motion with respect to the DDM defect they should have done so two or more years ago. Accepting the Elliotts' argument would open the door years-later to the potential for numerous additional late claims against the limited fund remaining in the GUC Trust based on defects that were not specifically identified but were the subject of other vehicle recalls. The Court does not find any reason to excuse the additional delay. Accordingly, the reason for delay factor weighs in favor of denying the Motion.

13

### B. The Length of the Delay

The Elliotts filed the Motion almost ten years after the bar date. While a portion of this delay may have been excusable, the Elliotts do not have an excuse for the last two years of the delay. *In re Enron Corp.*, 419 F.3d at 128 ("[A] long delay . . . with a strong explanation might be more acceptable than a short delay with a weak explanation . . . ."). A delay of two years, let alone a delay of almost ten years, is significant. *See*, e.g. *In re Dana Corp.*, No. 06–10354, 2008 WL 2885901, at *6 (Bankr. S.D.N.Y. July 23, 2008) (finding that twenty-one-month delay was substantial); *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) (finding that fifteen-month delay was substantial); *In re AMR Corp.*, 492 B.R. 660, 667 (Bankr. S.D.N.Y. 2013) (finding that filing claim "more than five months after the Court entered the Bar Date Order and more than three months after the Bar Date had passed" was "significant"). Accordingly, this factor weighs in favor of denying the Motion.

### C. The Danger of Prejudice to the Debtor

The GUC Trust argues that it would be prejudiced because allowing the Elliotts' claim would open the floodgates to additional late claims. (GUC Trust Objection at 35.) The Court agrees. Prejudice to the GUC Trust "is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency." *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 121 (Bankr. S.D.N.Y. 2010). "Allowing even a single late claim risks inspiring similar efforts from creditors who also missed the bar date." *In re Motors Liquidation Co.*, No. 09-50026 (MG), 2019 WL 1313718, at *9 (Bankr. S.D.N.Y. Mar. 22, 2019); *see also Meadows v. AMR Corp.*, 539 B.R. 246, 252 (S.D.N.Y. 2015) (finding that the allowance of late claims "years after the confirmation of the debtors' reorganization plan would create a serious risk of opening the floodgates to other potential late claims"). Here, the

Elliotts seek leave to file a late class claim, compounding the prejudice that the GUC Trust and all other Old GM creditors face. Accepting the Elliotts' argument would open the door to the potential for numerous additional late claims based on defects that were not specifically identified in the earlier late claims motions but were the subject of other vehicle recalls.

### D. Whether the Movant Acted in Good Faith

The good faith factor, even if the Court found it to be satisfied here, would not be enough to tip the balance to permit the Elliotts to assert late claims based on the DDM defect. The GUC Trust does not dispute that the Elliotts acted in good faith. (GUC Trust Objection at 37 ("As to the fourth and final element, there is no reason to suspect the Elliotts have acted in bad faith.").). The Court does not share that view for the reasons explained above, but the Court concludes it is unnecessary to finally resolve that question. The other *Pioneer* factors are sufficient to deny the Elliotts leave to a file a late claim on their own behalf or on the behalf of a class.

### IV. CONCLUSION

The reason for delay, the length of delay, and the resulting prejudice all weigh in favor of denying the Motion. The good faith factor, even if satisfied, would not tip the balance in favor of permitting late claims for the DDM defect. Therefore, the Court concludes that the Elliotts cannot show excusable neglect. Accordingly, the Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 28, 2019

    New York, New York

                                    *____Martin Glenn_____*
                                    MARTIN GLENN
                             United States Bankruptcy Judge

15