**McDermott, Will & Emery**
340 Madison Ave.
New York, New York 10173-1922
Telephone: (212) 547-5429
Facsimile: (212)
E-mail: kgoing@mwe.com
Kristin K. Going

HEARING DATE AND TIME: **August 12, 2019
@ 10:00 A.M. (ET)**
OBJECTION DEADLINE: **August 5, 2019
@ 4:00 P.M. (ET)**

*Attorneys for the Motors Liquidation Company
GUC Trust Administrator*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re                                                          :
                                                               :       Chapter 11 Case No.
                                                               :
**MOTORS LIQUIDATION COMPANY**, *et al.*,                      :       09-50026 (MG)
f/k/a General Motors Corp., *et al.*                           :
                                                               :       **(Jointly Administered)**
                                                               :
Debtors.                                                       :
---------------------------------------------------------------x

**MOTION OF WILMINGTON TRUST COMPANY, AS GUC TRUST
ADMINISTRATOR, FOR AN ORDER (A) AUTHORIZING THE EXPEDITED
PAYMENT OF EXCESS GUC DISTRIBUTABLE ASSETS PURSUANT TO
SECTION 5.4 OF THE GUC TRUST AGREEMENT, AND (B) APPROVING SUCH
DISTRIBUTION AS AN APPROPRIATE EXERCISE OF THE GUC TRUST
ADMINISTRATOR'S RIGHTS, POWERS AND/OR PRIVILEGES
PURSUANT TO SECTION 8.1(e) OF THE GUC TRUST AGREEMENT**

TO:   THE HONORABLE MARTIN GLENN
      UNITED STATES BANKRUPTCY JUDGE

Wilmington Trust Company, not in its individual capacity and solely in its capacity as trust administrator and trustee (the "GUC Trust Administrator") of the Motors Liquidation Company GUC Trust (the "GUC Trust"), as established under the Debtors' Second Amended Joint Chapter 11 Plan dated as of March 18, 2011 [ECF No. 9836] (as confirmed, the "Plan") of the above-captioned post-effective date debtors (the "Debtors"), submits this motion (the "Motion") seeking entry of an Order, in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 1142(b) of title 11 of the United States Code (the "Bankruptcy

Code"), Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Sections 5.4, 5.8 and 8.1 of the Second Amended and Restated Motors Liquidation Company GUC Trust Agreement dated as of July 30, 2015 (together with prior iterations of such agreement, as applicable, the "GUC Trust Agreement") (A) authorizing an expedited distribution of Excess GUC Distributable Assets pursuant to Sections 5.4 and 5.8 of the GUC Trust Agreement, and (B) acknowledging that such distribution is an appropriate exercise of the GUC Trust Administrator's rights, powers and/or privileges pursuant to Section 8.1(e) of the GUC Trust Agreement. In support of the foregoing, the GUC Trust Administrator respectfully represents as follows:[1]

## PRELIMINARY STATEMENT

1. By this Motion, the GUC Trust Administrator seeks authority to make a payment of Excess GUC Distributable Assets earlier than provided for in the GUC Trust Agreement. The timing of the excess distribution is warranted because it will allow the GUC Trust Beneficiaries to access their distributions and avoid an unnecessary delay in receipt of the distributions and the corresponding loss of the time value of money.

2. Earlier this year, the parties to the Term Loan Avoidance Action reached a global settlement, which settlement has already been approved by this Court. By operation of the AAT Settlement Agreement and Approval Order, the aggregate 502(h) claim became an Allowed General Unsecured Claim in the amount of $231,000,000.00 on July 1, 2019 (the "502(h) Claim").

3. Pursuant to Section 5.3 of the GUC Trust Agreement, the 502(h) Claim is entitled to receive a pro rata distribution equal to the percentage recovery received by other

---

[1] Capitalized terms not defined in the Preliminary Statement shall have the meaning ascribed to them the first time they appear in the remainder of this Motion. Capitalized terms not otherwise defined in the Motion shall have the meanings ascribed to them in the Plan or the GUC Trust Agreement, as applicable. Any description herein of the terms of the Plan or the GUC Trust Agreement is qualified in its entirety by the terms of the Plan or the GUC Trust Agreement, as applicable.

previously Allowed General Unsecured Claims. Thus, the 502(h) Claim is entitled to a distribution of $68,471,056.60, to bring it current with all pro rata distributions made by the GUC Trust on account of Allowed General Unsecured Claims.

4.  After deduction of $68,471,056.60 to pay the 502(h) claim, the GUC Trust Administrator is currently holding reserves that were established for the full potential amount of a Term Loan Avoidance Action 502(h) claim. These reserves are no longer necessary given the Term Loan Avoidance Action settlement.

5.  This Motion seeks authority to make the distribution of Excess GUC Distributable Assets in an amount of $320,880,639.00 (the "Excess Distribution"), earlier than on the quarterly schedule contemplated by Section 5.4 of the GUC Trust Agreement. Section 5.8 of the GUC Trust Agreement expressly permits such modification of the otherwise quarterly distribution.

6.  Finally, the GUC Trust Administrator seeks a determination by the Court that the Excess Distribution is an appropriate exercise of the GUC Trust Administrator's rights, powers, and/or privileges.

## JURISDICTION

7.  The Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334(b), paragraph II of the order of the Court dated as of March 29, 2011 confirming the Plan [ECF No. 9941] (the "Confirmation Order"), Article XI of the Plan, and Sections 5.4, 5.8 and 8.1 of the GUC Trust Agreement. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

I.  **Distribution of Excess GUC Distributable Assets Pursuant to the GUC Trust Agreement**

8.  The GUC Trust was established pursuant to Article VI of the Plan. The primary purposes of the GUC Trust are to resolve disputed general unsecured claims, distribute trust assets to GUC Trust beneficiaries, and to wind down the estates of the dissolved Debtors.

9.  Pursuant to the GUC Trust Agreement, the GUC Trust was created on behalf of, and for the benefit of holders of (i) general unsecured claims that are allowed as of the Initial Distribution Record Date; (ii) general unsecured claims that are disputed as of the Initial Distribution Record Date but are later allowed pursuant to the claim resolution procedures; (iii) Term Loan Avoidance Action Claims and Other Avoidance Action Claims in the amount collected against the respective defendants. These categories of claims are defined in the GUC Trust Agreement as Allowed General Unsecured Claims.

10. Integral to its duties under the GUC Trust Agreement is the obligation of the GUC Trust Administrator to determine what, if any, distributions should be made to GUC Trust Beneficiaries on a quarterly basis.

11. Specifically, Section 5.4(b)(iii) of the GUC Trust Agreement provides:

> Beginning with the calendar quarter ended September 30, 2015, the GUC Trust Administrator shall, as promptly as practicable following the beginning of such calendar quarter, distribute, subject to Section 5.4(c), the Excess GUC Trust Distributable Assets in each case determined as of the last date of the prior calendar quarter, to the holders of Units outstanding on the Excess Distribution Record Date for the current calendar quarter (including Units distributed or to be distributed to holders of Resolved Allowed General Unsecured Claims pursuant to Section 5.3(a)(ii) on such Distribution Date)…

12. Further, Excess GUC Distributable Assets is defined in the GUC Trust Agreement as:

> (i) the amount of the GUC Trust Distributable Assets held by the GUC Trust, or the Debtors, as applicable (after providing for all distributions then required to be made in respect of Resolved Allowed General Unsecured Claims), minus (ii) the amount of the GUC Trust Distributable Assets (A) necessary for the satisfaction of Claims in the amount of the Aggregate Maximum Amount pursuant to Section 5.3(a)(i), (B) comprising the

4

> Additional Holdback, the Reporting and Transfer Holdback, the Protective Holdback and the Taxes on Distribution Holdback…

13. Thus, the GUC Trust Administrator must determine what amounts should be distributed to GUC Trust Beneficiaries after taking into account all Disputed General Unsecured Claims, Unresolved Term Loan Avoidance Action Claims and Unresolved Other Avoidance Action Claims and reserving a sufficient amount for the Additional Holdback, Reporting and Transfer Holdback, Protective Holdback and Taxes on Distribution Holdback.

14. The GUC Trust Administrator has spent significant time with the GUC Trust Monitor and the GUC Trust professionals working to determine the necessary amounts for the required Additional Holdback, Reporting and Transfer Holdback, Protective Holdback and Taxes on Distribution Holdback.  As a result of those discussions and modeling, the GUC Trust Administrator has determined that after (i) payment of the 502(h) Claim and (ii) the necessary holdbacks established pursuant to the terms of the GUC Trust Agreement, the amount of Excess GUC Trust Distributable Assets total $320,880,639.00.

15. Additionally, Section 5.8 of the GUC Trust Agreement offers the GUC Trust Administrator flexibility to make distributions not otherwise in compliance with the provisions discussed above.  Specifically, if the GUC Trust Administrator determines in good faith that it is necessary or desirable in order to carry out the intent and purposes of the Plan, Confirmation Order, Liquidation Order and the GUC Trust Agreement to make any distribution in a manner not in technical compliance with the distribution framework established elsewhere in the GUC Trust Agreement, it may make such a distribution, but only with the approval of the GUC Trust Monitor and the Bankruptcy Court.  GUC Trust Agreement § 5.8.  In addition, any such distribution must not result in any holder of an Allowed General Unsecured Claim receiving more than it would otherwise be entitled to; specifically, section 5.8 of the GUC Trust Agreement prohibits any distribution to any holder greater than the holder would have otherwise received had such claim been an Initial Allowed General Unsecured Claim.  <u>Id.</u>

5

**II.     The Term Loan Avoidance Action Settlement**

16.     On July 31, 2009, the Official Committee of Unsecured Creditors of Motors Liquidation Company commenced an adversary proceeding against JPMorgan Chase Bank, N.A., individually and as Administrative Agent, and various lenders party to a term loan agreement, dated as of November 29, 2006, between General Motors Corporation, as borrower, JPMorgan Chase Bank, N.A., as agent, and various institutions as lenders (the "Term Loan"), styled *Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. et al., Adv. Pro. No. 09-00504* (Bankr. S.D.N.Y. July 31, 2009) (the "Term Loan Avoidance Action").

17.     The Term Loan Avoidance Action seeks the return of approximately $1.5 billion that had been transferred by the Debtors to the lender-defendants in satisfaction of the Term Loan, on a theory that such lenders' security interests in the Debtors' property (the "Term Loan Collateral") were not properly perfected, and thus such lenders were unsecured creditors of the Debtors as of the bankruptcy filing. The Motors Liquidation Company Avoidance Action Trust (the "Avoidance Action Trust") is the successor-plaintiff to the Term Loan Avoidance Action.

18.     On or about January 31, 2019, the parties to the Term Loan Avoidance Action reached an agreement in principle on the terms of a settlement (the "AAT Settlement") that was ultimately the subject of a motion before this Court [ECF No. 14505].

19.     The AAT Settlement involved a global resolution of all claims, asserted or that could be asserted, against all parties. At its core, the AAT Settlement required payment of $231 million (the "AAT Settlement Amount") to the AAT to resolve its claims. Among other terms, the AAT Settlement also provided for the allowance of Resolved General Unsecured Claims against the GUC Trust pursuant to section 502(h) of the Bankruptcy Code in the aggregate amount of $231 million (the "502(h) Claim") in favor of the Term Lender Parties

6

upon payment of the AAT Settlement Amount to the AAT. Specifically, the agreement memorializing the AAT Settlement (the "AAT Settlement Agreement") provided: "[a]utomatically at the Effective Time,[2] there shall be allowed against the GUC Trust, in favor of the Term Lender Parties, Resolved Allowed General Unsecured Claims (as defined in the GUC Trust Agreement) in the aggregate amount of $231,000,000 (two hundred and thirty-one million dollars) . . . ." AAT Settlement Agreement § 4(c)(ii).

20. On June 13, 2019, the Bankruptcy Court entered the *Order Pursuant to Sections 105 and 1142 of the Bankruptcy Code and Bankruptcy Rule 9019 Approving the Settlement Agreement and Related Relief* [ECF No.14530] (the "Approval Order"). The Approval Order approved the AAT Settlement and expressly provided that "[t]he claims arising in favor of the Term Lenders as a result of the AAT Settlement Payment are allowed claims against the GUC Trust and the AAT pursuant to Bankruptcy Code section 502(h)." Approval Order § 11. Accordingly, upon payment of the Settlement Amount by Term Lenders, there arose 502(h) claims in favor of the Term Lenders against the GUC Trust.

21. As of July 1, 2019, the GUC Trust continues to hold approximately $443,800,000 in reserve in respect of the potential unsecured claims of the defendants in the Term Loan Avoidance Action.

22. On July 1, 2019, the Term Lenders paid the Settlement Amount to the AAT. Thus, the Effective Time of the Settlement occurred on the first business day of the third quarter.

23. The July 1 Settlement Amount payment created an allowed claim against the GUC Trust pursuant to Section 502(h) of the Bankruptcy Code, in the amount of

---

[2] The "Effective Time" is the "time and date on which the wire transfer(s) contemplated by Section 2(a) are completed and the AAT has received confirmation of such wire transfer(s)."

7

$231,000,000.³ Thus the $443,800,000 reserve on account of the Term Loan Avoidance Action is no longer necessary.

## RELIEF REQUESTED

24. By this Motion, the GUC Trust Administrator requests entry of an order (i) authorizing the GUC Trust Administrator to make an Excess Distribution in the amount of $320,880,639.00 on the Excess Distribution Record Date, which date shall be prior to the fourth quarter of 2019 and (ii) acknowledging that the Excess Distribution and the modification of the timing of the Excess Distribution is an appropriate exercise of the GUC Trust Administrator's rights, powers and/or privileges.

## BASIS FOR RELIEF

25. The relief requested is consistent with the terms of the Plan, the Confirmation Order and the GUC Trust Agreement. The GUC Trust Administrator has the power and authority to perform such "functions as are provided in the Plan and the Trust Agreement," including to modify timing of distributions made to holders of Allowed General Unsecured Claims. Confirmation Order ¶¶ 15, 31, 35; GUC Trust Agreement § 5.8.

26. The GUC Trust Administrator has sought and obtained the approval of the GUC Trust Monitor to make the Excess Distribution on an expedited basis.

27. The relief requested herein is also supported by governing bankruptcy law. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 1142(b) further provides the Court with authority to direct any necessary party "to perform any [act] . . . that is necessary for the consummation of the plan." 11 U.S.C. §1142(b). Thus, the Bankruptcy Code itself permits the GUC Trust

---

³ The expedited payment of the 502(h) claim is the subject of a separate motion before this Court.

Administrator's request to modify the timing of the Excess Distribution on a schedule other than as contemplated by Section 5.4 of the GUC Trust Agreement.

**I.     The GUC Trust Should Be Permitted to Make the Expedited Excess Distribution Pursuant to Section 5.8 of the GUC Trust Agreement**

28.    As set forth herein, the AAT Settlement Amount was paid on July 1, 2019. If the Excess Distribution was made in strict compliance with Section 5.4(b)(iii) of the GUC Trust Agreement, the Excess Distribution would not occur until sometime between the first week of September and October 3, 2019. However, the GUC Trust is prepared to make the Excess Distribution earlier than that, and through the Motion, seeks the authority to do so.

29.    Further, the relief requested herein does not result in any holder of an Allowed General Unsecured Claim to receive a distribution in excess of the distribution that such holder would have received had such claim been an Initial Allowed General Unsecured Claim, nor does it unfairly discriminate among the holders of the Units.

30.    Finally, as required by Section 5.8 of the GUC Trust Agreement, the GUC Trust Administrator has consulted with the GUC Trust Monitor with respect to making the Excess Distribution as described herein, GUC Trust Agreement § 6.1, and the GUC Trust Monitor supports such relief.

31.    Expediting the Excess Distribution furthers the goals of the GUC Trust Agreement by providing a distribution to the GUC Trust Beneficiaries and moving the GUC Trust one step closer to its ultimate wind down.

**II.    The Court Should Find that Modification of the Timing of the Excess Distribution is an Appropriate Exercise of the GUC Trust Administrator's Authority and Approve Actions Taken by the GUC Trust Administrator in Connection Therewith Pursuant to Section 8.1(e) of the GUC Trust Agreement**

32.    The GUC Trust Administrator seeks a determination by the Court that (i) modification of the distribution framework established by the GUC Trust Agreement for payment of the Excess Distribution and (ii) the payment of the Excess Distribution itself are appropriate exercises of the GUC Trust Administrator's rights, powers, and/or privileges.

33.    "The practice is well established by which trustees seek instructions from the court, given upon notice to creditors and interested parties, as to matters which involve difficult questions of judgment."  Mosser v. Darrow, 341 U.S. 267, 274 (1951); see also In the Matter of the Application of U.S. Bank Nat'l Ass'n, No. 651625/2018, NYSCEF No. 1 (N.Y. Sup. Ct. April 4, 2018) (petition seeking an order, following an estimation proceeding, that instructs and authorizes trustees to make distributions pursuant to method proposed); In re Am. Home Mort. Inv. Trust 2005-2, No. 14 Civ. 2494 (AKH), 2014 U.S. Dist. LEXIS 111867, at *29-30 (explaining that "[t]rust instruction proceedings are a well-established procedure by which trustees (and other affected parties) can seek judicial guidance from the court about how to resolve immediate and difficult issues of interpretation of governing documents"), In re Peierls Family Inter Vivos Trusts, 59 A.3d 471, 477 (Del. Ch. 2012) (noting that a "request for judicial relief involving a trust can be appropriate in many circumstances").

34.    Judge Wiles considered a similar request for instruction in In re Tronox Inc., No. 09-10156 (MEW), 2015 Bankr. LEXIS 1974 (Bankr. S.D.N.Y. June 17, 2015).  In that matter, the trustee of the Tronox Incorporated Tort Claims Trust (established under the Tronox debtors' plan of reorganization, and governed by a trust agreement and a set of trust distribution procedures) filed a motion seeking instruction regarding whether the trustee was correct with respect to certain past action.  See id. at *1-2.  The court noted that because the trustee was seeking "'comfort' as to actions already taken rather than . . . 'instructions' as to what the

10

[t]rustee should do going forward in administering the [t]rust," it had "some skepticism as to whether the motion . . . [was] an appropriate request for instructions." Id. at *21. The court based its skepticism on the notion that "[o]rdinarily a [t]rustee seeks instructions when it has not yet taken action and where the [t]rustee is unsure as to what to do, and may even face liability for an incorrect choice." Id. (citations omitted). The court further noted that the request before it was "not really a request for 'instructions' as to how to interpret the existing [t]rust documents[,]" but "more of a request for an advisory opinion as to whether a proposed change to the" trust distribution procedures "would be consistent (or inconsistent) with the terms of the [debtors' plan] and the vested rights of claimants." Id. at *22. Noting, however, that it was "plain that further litigation – and thereby further delays in distributions to the beneficiaries of the [t]rust, who [had] already been waiting for many years – [were] inevitable unless some binding clarification of these issues is provided[,]" and based upon the conclusion that the court, under the plan, had "continuing jurisdiction over any issue relating to the interpretation and application of the [t]rust [a]greement" and the trust distribution procedures, the court found that it was "appropriate" to exercise its jurisdiction and issue the ruling as requested. Id. at *23.

35. Here, the GUC Trust Administrator is specifically authorized to seek forward-looking guidance from the Court pursuant to § 8.1(e) of the GUC Trust Agreement, which provides, in relevant part, that

> where the GUC Trust Administrator determines, in its reasonable discretion, that it is necessary, appropriate, or desirable, the GUC Trust Administrator will have the right to submit to the Bankruptcy Court . . . any question or questions regarding any specific action proposed to be taken by the GUC Trust Administrator with respect to the [GUC Trust Agreement], the GUC Trust, or the GUC Trust Assets . . . . Pursuant to the Plan, the Bankruptcy Court has retained jurisdiction for such purposes and may approve or disapprove any such proposed action upon motion by the GUC Trust Administrator.

GUC Trust Agreement § 8.1(e).

36. The GUC Trust Administrator has determined that, given the (i) current status of the settlement agreement entered into between the GUC Trust Administrator and a purported class of economic loss plaintiffs alleging a right to file late claims against the GUC Trust and (ii) timing of payment of the AAT Settlement Amount – on the first day of the third quarter – and the interest in resolving remaining claim issues to the extent possible, it is necessary, appropriate, and desirable to ask the Court at this time whether the actions the GUC Trust Administrator proposes to take in connection therewith are permissible and appropriate. As in Tronox, the Court has continuing jurisdiction to interpret, implement, or enforce the GUC Trust Agreement. Plan § 11.1(i); see also GUC Trust Agreement § 8.1(e). Unlike the Tronox trustee, however, the GUC Trust Administrator is seeking instruction regarding forward-looking action it proposes to take based on its interpretation of the relevant documents. Based on the foregoing, it is well within the Court's authority to issue a ruling "approv[ing] . . . [the described] proposed action" by the GUC Trust Administrator. GUC Trust Agreement § 8.1(e).

37. Accordingly, the Court should find that the payment of the Excess Distribution and modification of the schedule for such distribution is an appropriate exercise of the GUC Trust Administrator's authority and approve the actions to be taken pursuant therewith.

## **NOTICE**

38. The GUC Trust Administrator has served notice of this Motion on (a) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014, (b) the parties in interest in accordance with the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures*, dated May 5, 2011 [ECF No. 10183], and (c) any other required notice parties under Section 6.1(b)(iv) of the GUC Trust Agreement. The GUC Trust Administrator respectfully submits that no other or further notice need be provided.

DM_US 161219253-4.T18860.0010

## CONCLUSION

WHEREFORE, the GUC Trust Administrator respectfully requests that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing the GUC Trust to modify the timing of the Excess Distribution pursuant to section 5.8 of the GUC Trust Agreement, (ii) acknowledge that such Excess Distribution and modification of the timing is an appropriate exercise of the GUC Trust Administrator's authority and approve the actions to be taken pursuant therewith, and (iii) granting such other and further relief as may be deemed just and proper.

Dated:  New York, New York
        July 23, 2019

                                        McDermott Will & Emery
                                        By:    /s/  *Kristin K. Going*
                                              Kristin K. Going
                                              340 Madison Ave.
                                              New York, NY 10173-1922
                                              Tel: (212) 547-5429
                                              E-mail: kgoing@mwe.com

                                              *Attorneys for the Motors Liquidation*
                                              *Company GUC Trust Administrator*