**WILK AUSLANDER LLP**
1515 Broadway, 43rd Floor
New York, New York 10036
Telephone: (212) 981-2300
Eric J. Snyder, Esq.
*Counsel for Kimberly and Tammy McCall*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------ x

In re:                                          :

                                                :        Chapter 11

MOTORS LIQUIDATION COMPANY, *et al.*,           :

f/k/a General Motors Company, *et al.*          :        Case No. 09-50026(MG)

                                                :

                              Debtors.    :

                                                :        (Jointly Administrated)

------------------------------------------------ x

<u>NOTICE OF APPEAL</u>

**PLEASE TAKE NOTICE,** that Kimberly and Tammy McCall appeal to the United States

District Court for the Southern District of New York pursuant to 28 U.S.C. §158(a)(1), from the

*Memorandum Opinion and Order Enforcing Provisions of Sale Order with Respect to Punitive*

*Damage Claims Made by Kimberly and Tammy McCall, both Individually and as Representatives*

entered by the United States Bankruptcy Court for the Southern District of New York on July 10,

2019 [ECF No. 14554] (the "Order"), including, without limitation, any and all judgments, orders,

decrees, rulings, opinions and/or decisions that merged into and/or became part of the Order, and/or

upon which the Order is based. A copy of the Order is attached hereto as Exhibit A.

The names of all parties to the Order appealed from and the names, addresses and telephone

numbers of their respective attorneys are as follows:

KING & SPALDING
*Counsel for General Motors LLC*
1185 Avenue of the Americas
New York, New York 10036
By: Arthur Steinberg, Esq.
      Scott Davidson, Esq.

01103154.1

KIRKLAND & ELLIS LLP
*Counsel for General Motors LLC*
300 North LaSalle
Chicago, IL 60654
By:  Richard C. Godfrey, P.C. (admitted *pro hac vice*)
      Andrew Bloomer, P.C. (admitted *pro hac vice*)


LIGHFOOT FRANKLIN
*Counsel for General Motors LLC*
The Clark Building
400 20th Street, North
Birmingham, AL 35203
By:  Michael L. Bell, Esq.


WILK AUSLANDER LLP
*Counsel for Kimberly and Tammy McCall*
1515 Broadway, 43rd Floor
New York, New York 10036
By:  Eric J. Snyder, Esq.


PRINCE GLOVER HAYES
*Counsel for Kimberly and Tammy McCall*
701 Rice Mine Road North
Tuscaloosa, AL 35406
By:   Joshua P. Hayes, Esq.


There is no Bankruptcy Appellate Panel in this District and, thus, the optional election

in Official Form 417A is not applicable.


Dated:   New York, New York          **WILK AUSLANDER LLP**
          July 24, 2019

                                      By:  /s/ Eric J. Snyder
                                            Eric J. Snyder, Esq.
                                      1515 Broadway, 43rd Floor
                                      New York, New York 10036
                                      (212) 981-2300

                                      *Counsel for the Kimberly and Tammy McCall*

## EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                                                        Debtors.
-------------------------------------------------------------------------x

**FOR PUBLICATION**

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

**MEMORANDUM OPINION AND ORDER ENFORCING PROVISIONS OF SALE ORDER**
**WITH RESPECT TO PUNITIVE DAMAGE CLAIMS MADE BY KIMBERLEY AND TAMMY**
**McCALL, BOTH INDIVIDUALLY AND AS REPRESENTATIVES**

*A P P E A R A N C E S:*

KING & SPALDING
*Counsel for General Motors LLC*
1185 Avenue of the Americas
New York, New York 10036
By:    Arthur Steinberg, Esq.
       Scott Davidson, Esq.

KIRKLAND & ELLIS LLP
*Counsel for General Motors LLC*
300 North LaSalle
Chicago, IL 60654
By:    Richard C. Godfrey, P.C. (admitted *pro hac vice*)
       Andrew Bloomer, P.C. (admitted *pro hac vice*)

LIGHFOOT FRANKLIN
*Counsel for General Motors LLC*
The Clark Building
400 20th Street, North
Birmingham, AL 35203
By:    Michael L. Bell, Esq.

WILK AUSLANDER LLP
*Counsel for Kimberly and Tammy McCall*
1515 Broadway, 43rd Floor
New York, New York 10036
By:    Eric J. Snyder, Esq.

PRINCE GLOVER HAYES
*Counsel for Kimberly and Tammy McCall*
701 Rice Mine Road North
Tuscaloosa, AL 35406
By:    Joshua P. Hayes, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is a *Motion to Enforce the Bankruptcy Court's July 5, 2009 Sale Order and Injunction and the Rulings in Connection Therewith, with Respect to the McCall Plaintiffs* ("Motion, ECF Doc. # 14,477) filed by General Motors LLC ("New GM") on April 10, 2019.  Several exhibits support the Motion, including two different complaints, both filed in Hale County Circuit Court of Alabama, one by Tammy McCall, the other by Kimberly McCall. ("McCall Complaints," ECF Doc. # 14,477-2.)  The McCall Complaints both contain claims for punitive damages, including claims for wrongful death under the Alabama Wrongful Death Act ("AWDA"), through which only punitive damages are recoverable.  New GM's Motion argues, among other things, that the punitive damage claims, including the wrongful death claims, cannot proceed and asks the Court to enjoin them.

Tammy and Kimberly McCall (collectively, the "McCalls") filed a joint objection to the Motion on May 15, 2019.  ("McCall Objection," ECF Doc. # 14,509.)  In response, New GM filed a reply.  ("New GM Reply," ECF Doc. # 14,515.)  The Motion, Objection, and Reply require the Court to examine the scope of three of its prior decisions, dealing with the sale agreement ("Sale Agreement") between New GM and General Motors Corporation ("Old GM") entered into during the early stages of Old GM's bankruptcy.  Under the Sale Agreement, New GM purchased substantially all of Old GM's assets free and clear of most liabilities.

2

The three relevant decisions were issued in November 2015 by Judge Gerber ("November 2015"), and in July 2017 ("July 2017 Decision") and August 2017 ("August 2017 Decision") by me. The November 2015 Decision holds that New GM did not contractually assume liability for punitive damages under the Sale Agreement. The July 2017 Decision holds that New GM cannot be liable for punitive damages based on conduct by Old GM, both because of Judge Gerber's decision that New GM did not contractually assume liability for punitive damages (which I found to be law of the case), and, second, as explained below, for the independent reason that under the Bankruptcy Code priority scheme, punitive damages cannot be recovered against Old GM and, therefore, New GM, as the section 363 buyer, cannot be liable for punitive damages based on Old GM's conduct. *See In re Motors Liquidation Co.*, 571 B.R. 565, 575-77 (Bankr. S.D.N.Y. 2017). Both of those holdings were found to be law of the case in the August 2017 Decision, which the District Court later affirmed.

The McCalls, however, argue that those decisions do not apply to them and that their cases are unique. They assert that the November 2015 Decision only applies to cases in which compensatory damages are claimed in addition to punitive damages, and because AWDA only allows for the recovery of punitive damages, they are not bound. Further, they allege that under the Sale Agreement, New GM contractually assumed liability for all wrongful death claims, including claims made for punitive damages under AWDA. Thus, the McCalls argue they can proceed with their wrongful death claims against New GM.

As explained below, however, the Court disagrees with the McCalls' analysis of the Court's prior decisions and their interpretation of the Sale Agreement. The Court finds that the punitive damages claims in the McCall Complaints cannot proceed. Therefore, New GM's Motion is **GRANTED** and the McCalls are enjoined from further pursuing punitive damages

claims against New GM either in their capacities as individuals or as personal representatives of the estates of the deceased. In addition, since their complaints make improper allegations against New GM, the McCalls must amend them.

## I.    PRIOR RULINGS

### A. The 363 Sale

On June 1, 2009, Old GM filed a chapter 11 petition in the Southern District Bankruptcy Court. Soon after, Old GM sold substantially all of its assets, "free and clear" of most liabilities, to an entity that later became New GM. An order by the bankruptcy court approving the sale was entered July 5, 2009 (the "Sale Order"). *See In re Motors Liquidation Co.*, 571 B.R. at 569, *aff'd in part & vacated and remanded in part*, 590 B.R. 39 (S.D.N.Y. 2018).

Under the *Amended and Restated Master Sale and Purchase Agreement*, New GM assumed certain liabilities of Old GM ("Assumed Liabilities"). Included in the Assumed Liabilities were "(ix) all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles . . . manufactured sold or delivered by [Old GM] . . . which arise directly out of accidents, incidents or other distinct and discreet occurrences that happen on or after the Closing Date . . . ." ("Sale Agreement," ECF Doc. # 14,477-1, at 87.) "[E]xcept for Assumed Liabilities, New GM is not liable for claims based on Old GM conduct . . . ." *In re Motors Liquidation Co.*, 576 B.R. 313, 316 (Bankr. S.D.N.Y. 2017).

Approximately five years after the close of the sale, New GM disclosed to the National Highway Traffic Safety Administration defects involving the ignition switches in vehicles manufactured by Old GM. *See In re Motors Liquidation Co.*, 590 B.R. at 45. New GM then issued recalls for the allegedly defective vehicles. As a result, a slew of plaintiffs commenced actions against New GM asserting, among other things, claims based on the conduct of Old GM.

4

09-50026-mg    Doc 14569    Filed 07/24/19    Entered 07/24/19 16:25:42    Main Document
Pg 8 of 31
09-50026-mg    Doc 14554    Filed 07/10/19    Entered 07/10/19 08:32:25    Main Document
Pg 5 of 28

New GM has sought to enjoin those claims by moving in the bankruptcy court to enforce the "free and clear" provisions of the Sale Order. *Id.*

### B. The Bankruptcy Court's November 2015 Opinion

New GM's response to the multiple litigations filed in the wake of its disclosure regarding the defects in the ignition switches led to the bankruptcy court issuing several decisions regarding the applicability of the Sale Order. The bankruptcy court's role was not to "decide nonbankruptcy issues involving the merits of the plaintiffs' claims[,]" rather to serve as a "gatekeeper" to decide which claims could proceed against New GM in the nonbankruptcy forums. *See In re Motors Liquidation Co.*, 541 B.R. 104, 108 (Bankr. S.D.N.Y. 2015).

On November 9, 2015, Judge Gerber issued a decision ("November 2015 Decision") addressing whether New GM contractually assumed Old GM's liability for punitive damages under the Sale Agreement. Based on a plain reading of the Sale Agreement and upon consideration of extrinsic evidence, Judge Gerber held that New GM did not contractually assume punitive damages claims. *Id.* at 117-21. Judge Gerber concluded, however, that the Sale Order did not bar punitive damages claims against New GM arising out of its own knowledge and conduct. *Id.* at 121 (stating that "New GM may be held responsible, on claims for both compensatory and punitive damages, for its *own* knowledge and conduct"). The holdings from Judge Gerber's November 2015 Decision were memorialized in a judgment. ("December 2015 Judgment," ECF Doc. # 13,563.) Neither the November 2015 Decision nor the December 2015 Judgment were appealed. *In re Motors Liquidation Co.*, 590 B.R. at 49.

### C. The Bankruptcy Court's July 2017 Opinion

The punitive damages issue resurfaced in 2017. This time the issue was not whether New GM contractually assumed punitive damages claims, but rather whether New GM could liable for

punitive damages under a successor liability theory. *See In re Motors Liquidation Co.*, 571 B.R.

565, 570 (Bankr. S.D.N.Y. 2017) [herein the "July 2017 Decision]. Because the plaintiffs in post-

sale accident cases for vehicles manufactured by Old GM did not have prepetition claims, they

were not bound by the Sale Order. *See Morgan Olson, LLC v. Federico (In re Grumman Olson*

*Indus., Inc.)*, 445 B.R. 243, 254 (Bankr. S.D.N.Y. 2011) ("A sale order under § 363(f) that

purports to free a purchaser from the debtor's liability does not bind parties in interest that did not

receive appropriate notice of the sale. . . . [F]or reasons of practicality or due process, or both, . . .

a person injured after the sale (or confirmation) by a defective product manufactured and sold

prior to the bankruptcy does not hold a 'claim' in the bankruptcy case and is not affected by either

the § 363(f) sale order or the discharge under 11 U.S.C. § 1141(d)."), *aff'd*, 467 B.R. 694, 711

(S.D.N.Y. 2012) ("The Court holds only that, under the circumstances presented in this case, to

enforce the Sale Order to enjoin the [plaintiffs'] state law suit would deny them due process and

violate the Bankruptcy Code's requirements of notice and opportunity to be heard for those

affected by a bankruptcy court's rulings. Thus, the Court agrees with the Bankruptcy Court that

the [plaintiffs'] are entitled to judgment as a matter of law, and [the buyer's] adversary complaint

should be dismissed."). The conclusion that New GM did not contractually assume punitive

damages liability based on Old GM's conduct, therefore, left open the question whether

bankruptcy law nevertheless placed a limitation on state law that might permit punitive damages

based on state successor liability claims.

The issue whether such plaintiffs could recover punitive damages was briefed after the

Court entered an order to show cause in December 2016 ("December 2016 OSC," ECF Doc. #

13,802), setting forth five threshold issues ("2016 Threshold Issues") to be resolved regarding

claims asserted against New GM involving vehicles manufactured by Old GM. Threshold issue

four was: "Are Post-Closing Accident Plaintiffs bound by the Sale Order or may they bring

successor liability claims against New GM and seek punitive damages in connection therewith

notwithstanding the Court's rulings in the November 2015 Decision . . . ?" *Id.* The December

2016 OSC was served on the McCalls' counsel, but no response was filed on their behalf. (ECF

Doc. # 13,804, at 66.)

This Court held that because Judge Gerber's November 2015 decision was not appealed, it

remained law of the case, meaning New GM cannot be held liable for punitive damages on a

contractual basis. *Id.* at 576. In addition, this Court found that due to the priority scheme in the

Bankruptcy Code, which subordinates claims for punitive damages in chapter 7 cases, the Post-

Closing Accident Plaintiffs could not bring successor liability claims against New GM seeking

punitive damages based solely on Old GM's conduct either. *Id.* at 576-77 (citing 11 U.S.C. §

726(a)(3)-(4)). Under chapter 7 of the Bankruptcy Code, punitive damages claims are not paid

unless all general unsecured claims are paid in full. The "best interest of creditors" test in section

1129(a)(7) means that unsecured creditors in a chapter 11 case must receive at least as much as

they would in a theoretical chapter 7 liquidation. For a deeply-insolvent debtor, such as Old GM

in this case, that means punitive damages could not be paid in a liquidating chapter 11 plan. To

hold otherwise, the Court noted, would only punish other innocent creditors, rather than further

the purposes of punitive damages, which include punishing a wrongdoer and deterrence. *Id.* at

577, 580. And, because "a successor corporation may only be liable to the same extent as its

predecessor, New GM cannot held liable" for a punitive damage claim, something "its

predecessor would never have had to pay under the Bankruptcy Code." [1] *Id.* at 579-80.

---

[1]    In chapter 7 cases, section 727(a)(4) provides that payment of allowed claims for exemplary or punitive
damages can only made if allowed unsecured creditor claims are paid in full. The "best interest of creditors" test in
section 1129(a)(7) effectively prevents payment of punitive damages claims in a chapter 11 case such as this one if
unsecured claims are not paid in full. As explained in the July 2017 Decision:

### D. The Bankruptcy Court's August 2017 Opinion

The next decision involving punitive damages involves a case with facts not dissimilar to the McCall Complaints. This Court issued that opinion August 31, 2017 (the "August 2017 Decision") in response to a personal injury lawsuit filed by Kaitlyn Reichwaldt in a Georgia state court. *See In re Motors Liquidation Co.*, 576 B.R. 313 (Bankr. S.D.N.Y. 2017). Reichwaldt suffered personal injuries when a 1984 Chevrolet pickup truck struck her vehicle on January 27, 2015. According to her complaint, the impact caused the truck's fuel tank to explode, resulting in severe burns. Reichwaldt sued New GM alleging the placement of the truck's fuel tank was defective. She made negligence and strict liability claims and sought both compensatory and punitive damages. *Id.* at 319.

This Court held that Reichwaldt's complaint failed to properly allege independent claims

---

While section 726(a) applies to cases under chapter 7 of the Bankruptcy Code, the "best interest of creditors" test mandates that claimants in a chapter 11 case must receive at least as much as they would receive in a chapter 7 case. *See, e.g.*, *In re Best Payphones, Inc.*, 523 B.R. 54, 75 (Bankr. S.D.N.Y. 2015) ("Section 11 U.S.C. § 1129(a)(7) requires a creditor to receive or retain at least as much property under the plan as it would in a hypothetical chapter 7 liquidation. It is the lowest point below which a proposed distribution may not fall, and must be read together with 11 U.S.C. § 726(a), which governs the priority of distribution in a chapter 7 case."). In other words, punitive damages are never available in the case of an insolvent debtor like Old GM. . . . . An insolvent debtor like Old GM often pays general unsecured claims on a *pro rata* basis. In contrast, as a rule an insolvent debtor would never pay a penny of punitive damages unless all higher priority claims are paid in full. And in the case of Old GM, not all higher priority claims will be paid in full.

*In re Motors Liquidation Co.*, 571 B.R. at 576–77.

Exposing a section 363 buyer to punitive damages based on the conduct of the insolvent seller—when the Bankruptcy Code prevents recovery of punitive damages from the insolvent seller—would seriously chill a robust section 363 sale process designed to maximize creditor recoveries. The buyer would be unable to quantify the financial risk to which it was exposing itself in purchasing the assets; the stronger the financial condition of the buyer, the greater the risk of a large punitive damages award based on the insolvent seller's conduct.

*Id.* at 580

based solely on New GM's wrongful conduct. *Id.* at 322. For instance, Reichwaldt alleged

failure to warn against New GM; however, her complaint did not "sufficiently distinguish

between the conduct of Old GM and New GM[,]" a requirement for the claim to pass through the

bankruptcy gate. *Id.* The Court emphasized that an independent claim against New GM "must

clearly allege specific conduct of New GM upon which it is based. Simply adding 'and New GM

LLC' to paragraphs of a complaint concerning Old GM conduct is not enough . . . ." *Id.* The

Court barred the Reichwaldt complaint from passing through the bankruptcy gate. *Id.* at 323.

("Reichwaldt's complaint cannot pass the bankruptcy gate because (i) it fails to clearly

differentiate between Old GM and New GM; and (ii) it fails to specify conduct of New GM upon

which the purportedly Independent Claims are based.")

      The Court also reiterated that New GM did not contractually assume liability for punitive

damages arising from Old GM's conduct and that such punitive damages are not available against

New GM on a successor liability theory. In other words, plaintiffs may not seek punitive

damages from New GM based on conduct of Old GM. *Id.* at 323-24. The Court found the issue

is *res judicata* because Reichwaldt's counsel received notice of the December 2016 OSC, which

specifically identified the issue whether plaintiffs may assert claims for punitive damages against

New GM based on conduct of Old GM and stated that "plaintiffs served with that order would be

bound by the Court's rulings on the 2016 Threshold Issues." *Id.* at 317 (citing December 2016

OSC at 1). Moreover, the November 2015 Decision, finding that New GM did not contractually

assume liability for punitive damages related to Old GM's conduct, and the July 2017 Decision,

finding that New GM could not be liable for punitive damages under a successor liability theory,

are law of the case, meaning they "should not be revisited." *Id.* at 324.

9

**E. The District Court's May 2018 Opinion**

The November 2015 Decision, July 2017 Decision, and August 2017 Decision

(collectively, the "Punitive Damages Rulings") were all appealed to the United States District

Court for the Southern District of New York, which issued a single opinion on May 29, 2018,

addressing all three decisions. *See In re Motors Liquidation Co.*, 590 B.R. 39 (S.D.N.Y. 2018)

[hereinafter the "District Court Decision"]. In short, the District Court held that the November

2015 Decision, finding that New GM did not contractually assume liability for punitive damages,

is law of the case, and that this Court's July 2017 Decision holding that punitive damages claims

against New GM based on Old GM conduct are barred by federal bankruptcy law is correct. *Id.*

62-63. In other words, New GM cannot be held liable for punitive damages under a successor

liability theory. *Id.* at 63. ("In short, the [District] Court affirms the Bankruptcy Court's decision

precluding punitive damages claims against New GM based on Old GM conduct.") The District

Court also affirmed the August 2017 Decision, finding that "*res judicata* and law-of-the-case

doctrine bars Reichwaldt from relitigating earlier decisions precluding the pursuit of punitive

damages against New GM based on Old GM conduct." *Id.* at 66.

The District Court Decision has been appealed to the Second Circuit. A decision is

pending. (Motion, at 2 n.4.)

**F. The Chrysler Opinion**

After the District Court Decision, another judge of this Court was faced with a similar

issue to the one at hand in a separate bankruptcy case involving Chrysler LLC ("Old Chrysler").

Like GM's bankruptcy case, Old Chrysler entered into a transaction, the same day it filed its

petition, to sell substantially all of its assets to a newly created entity, Chrysler Group LLC ("New

Chrysler"). *See In re Old Carco LLC*, 593 B.R. 182, 185 (Bankr. S.D.N.Y. 2018) [hereinafter the

"Chrysler Decision"]. The deal closed June 10, 2009. As part of the sale, New Chrysler purchased assets free and clear, except for assumed liabilities, and free of successor liability. The assumed liabilities include product liability claims arising from motor vehicle accidents occurring on or after the closing, but expressly exclude claims for exemplary or punitive damages. *Id.* at 185-86.

Exactly seven years after the sale closed, two occupants of a 2002 Jeep Liberty were involved in a serious car accident in Alabama. The accident occurred when the Jeep manufactured by Old Chrysler was struck by another vehicle causing the Jeep to overturn. The collision resulted in the death of the driver of the Jeep, Sue Ann Graham, and serious injuries to the passenger, J.G., Graham's minor son. The executor of the estate of Graham and the legal guardian of Graham's son J.G. filed a lawsuit against New Chrysler in Alabama state court. Graham's executor sought damages under AWDA (the same Alabama statute involved in this case) and J.G.'s legal guardian sought both compensatory and punitive damages. *Id.* at 187.

New Chrysler moved in the bankruptcy court to enforce the sale order, arguing that the wrongful death claim was barred by the sale agreement because the sale agreement expressly excludes claims for exemplary or punitive damages and recovery under AWDA is limited to punitive damages. In addition, New Chrysler argued that punitive damages for J.G. were also barred by the sale order, as the allegations in the complaint did not give rise to independent claims against New Chrysler. *Id.* at 188.

In response, counsel for the executor and guardian argued that the phrase "exemplary or punitive damages" in the sale agreement was ambiguous and not intended to exclude claims brought under AWDA, as claims under AWDA include damages that are compensatory in effect. They further argued that excluding recovery under AWDA is against Alabama public policy and

would lead to absurd results.  *Id.* at 188-89.

Judge Bernstein issued his opinion on November 1, 2018.  The Court found that the contractual provision in the sale agreement, excluding claims for exemplary or punitive damages from assumed liabilities, was not ambiguous, *id.* at 191-92, and that the recoverable damages under AWDA are clearly punitive, rather than compensatory, in nature.  *Id.* at 195 ("In short, the damages awarded under the Wrongful Death Act are still punitive damages, whether based on mere negligence or on more egregious wrongdoing, because they are intended to punish and deter rather than compensate.").  Judge Bernstein said that to argue otherwise "ignores over 140 years of settled Alabama law."  *Id.* at 192.  The court painstakingly outlined decades of caselaw in which Alabama state courts, including the Alabama Supreme Court, have made clear that the purpose of the Alabama statute is to punish the wrongdoer and deter homicides, rather than compensate the victims.  *Id.* at 192-93.  In fact, the courts have stated that evidence regarding a decedent's loss is inadmissible and that juries cannot consider the pecuniary value of the life of the decedent.  *Id.* at 192.  Although Judge Bernstein recognized the potentially harsh reality of this conclusion, he stated that the result "flows from interpretation accorded to the nature of the damages recoverable under the Wrongful Death Act[, which] the Alabama legislature has chosen not to change . . . to permit the award of compensatory damages . . . ."  *Id.* at 198.

The court granted the portion of the motion seeking to enforce the sale order and enjoin the prosecution of the wrongful death case.  *Id.*  The court also found that the minor's son's claim for punitive damages could pass through the bankruptcy gate, but only to the extent it is based solely on post-closing conduct of New Chrysler.  *Id.* at 199 ("[I]njuries proximately caused by the post-[c]losing breach of any duty to warn or recall would not be barred to the extent they are cognizable claims under Alabama law").

The Chrysler Decision was appealed to the District Court, which affirmed. *In re Old Carco LLC*, 2019 WL 2336849, at *1 (S.D.N.Y. May 21, 2019). In doing so, the District Court stated it was settled law that collectible damages under Alabama's Wrongful Death Act are punitive damages. It described the caselaw on the issue as overwhelming and stated that "Alabama authority is clear that the damages available are not punitive in name only. Rather, [they] are to punish tortfeasors, not to compensate victims." *Id*. at *4. The District Court also rejected the plaintiffs' argument that such a conclusion leads to absurd results because only Alabama residents would be barred from suing New GM for wrongful death. As the District Court points out, an analogous situation exists for Alabama residents attempting to sue the federal government under AWDA. Punitive damages cannot be recovered against United States government or its agencies per statute, so those claims are similarly barred. *Id*. at *6-7 (citing *Painter v. Tennessee Valley Authority*, 476 F.2d 943, 944 (5th Cir. 1973)). Moreover, the District Court stated that permitting Alabama residents to sue New GM and recover punitive damages would be an equally absurd result "because claimants in other states [are] barred from seeking [punitive damages] awards." *Id*. at *7.

## II.    THE CURRENT MOTION

### A.    The McCall Complaints

Pertinent to this opinion are two lawsuits filed in Hale County Circuit Court of Alabama. The plaintiff in the first lawsuit is Tammy McCall, individually and as personal representative of the estate of Samuel Jerry McCall, deceased. Case number 36-CV-2016-900040.00 was filed on June 2, 2016. (McCall Complaints, at 2-6.) The plaintiff in the second suit is Kimberly McCall, individually and as personal representative of Hannah Charity Foreman, deceased. The case number is 36-CV-2016-900046.00; an amended complaint was filed on November 13, 2017. (*Id*.,

at 7-11.)

The McCall Complaints allege the same set of relevant facts.  On November 2, 2014, Samuel McCall was driving a 2004 Chevrolet Suburban ("Subject Vehicle") in which Tammy McCall, Kimberly McCall, and Hannah Foreman were passengers.  (*Id.*, at 3 ¶ 6, at 9 ¶ 8.)  As they traveled on Highway 69, a vehicle going in the opposite direction operated by April Richardson swerved into their lane of travel and struck their vehicle.  (*Id.*, at 3 ¶ 7, at 9 ¶ 9.)  The collision resulted in the deaths of Samuel McCall and Hannah Foreman, as well as of April Richardson.  (*Id.*, at 4 ¶ 12, at 9 ¶ 10.)  Tammy McCall and Kimberly McCall suffered personal injuries.  (*Id.*, at 5 ¶ 15, at 10 ¶ 14.)

The defendants in the McCall Complaints include New GM, the personal representative of the estate of April Richardson, and numerous fictitious defendants.  (*Id.* at 2, 7.)  Both complaints allege that Old GM, "the predecessor in business" to New GM, "manufactured, designed, sold, assembled, or distributed the [Subject Vehicle] and placed [it] into the stream of commerce . . . ." (*Id.* at 3 ¶ 2, at 8 ¶ 3.)  The Complaints also allege that New GM "designed, engineered, manufactured, marketed, sold, assembled, distributed, and/or placed into the stream of commerce[,]" the Subject Vehicle.  (*Id.*, at 4 ¶ 9, at 9 ¶ 11.)  The Complaint alleges "the [S]ubject [V]ehicle was defective in design or manufacture in that is was unreasonably susceptible to a post-collision fire . . . ." (*Id.*, at 4 ¶ 11, at 9 ¶ 13.)  The McCalls, on behalf of the Samuel McCall and Hannah Foreman estates, seek awards of punitive damages against all defendants including New GM under Alabama's Wrongful Death Act.  The McCalls, as individuals, also demand compensatory and punitive damages for their own injuries.  (*Id.* at 5, 10.)

### B. New GM's Motion

New GM's Motion asserts that the continued prosecution of the McCall Complaints "violates the Sale Order and Injunction, and other applicable Court rulings." (Motion ¶ 2.) The McCall Complaints contain two wrongful death claims filed pursuant to AWDA. Under AWDA, only an award for punitive damages can be made, but under the Sale Order, New GM did not assume claims for punitive damages. (*Id.* ¶ 3.) In essence, New GM alleges the McCall Complaints "seek to impose punitive damages on New GM for Old GM conduct[,]" which the Court previously held in its prior Punitive Damages Rulings is improper. (*Id.* ¶ 2.) Therefore, New GM asks that the Court bar the wrongful death claims from passing through the bankruptcy gate and proceeding in Alabama state court. (*Id.* ¶ 58.)

The Motion alleges the McCall Complaints present the exact issue confronted in Judge Bernstein's Chrysler Decision. (*Id.* ¶ 29.) New GM seeks a similar ruling. New GM recognizes that it "has assumed [liability for] compensatory damages . . . claims (if proven)" arising out of injuries to Tammie and Kimberly McCall. (Id. ¶ 5). However, it denies that it assumed liability for punitive damages claims. Both Tammie and Kimberly McCall have filed claims individually seeking awards of punitive damages, in addition to compensatory damages. (*Id.* ¶ 60.) New GM requests the Court strike the McCalls' punitive damages request from the McCall Complaints. (*Id.* ¶ 61.)

New GM argues the McCalls are bound by the Court's prior Punitive Damages Rulings, which are law of the case and *res judicata*. (Id. ¶ 41-42.) It asserts that the McCalls were served with the December 2016 OSC but never objected or appealed the July 2017 Decision. (*Id.* ¶ 6.) Therefore, New GM argues, the McCalls are now bound.

Lastly, New GM asks the Court to strike certain allegations in the McCall Complaints,

which allege New GM manufactured or designed the Subject Vehicle.  (*Id.* ¶ 62.)  The Subject

Vehicle was a 2004 model, meaning its manufacture pre-existed New GM.  New GM requests the

Court order the allegations be corrected.  (*Id.* ¶ 63.)

### C.  The McCall Objection

The McCall Objection argues the November 2015 Decision, holding that New GM did not

contractually assume claims for punitive damages under the Sale Agreement, only applies to cases

in which compensatory damages are permissible.  (McCall Objection ¶ 21-22.)  Therefore, the

Objection argues, the later decisions holding that the November 2015 Decision is law of the case

does not prevent the bankruptcy court from finding that wrongful death claims that allow only for

punitive damage awards are assumed liabilities under the Sale Agreement.  (*Id.* ¶ 23.)  The

McCalls ask that the Court find that New GM assumed liability for claims under AWDA as

plainly stated in the Sale Agreement.  (*Id.* ¶ 24.)  The Sale Agreement states New GM assumed

"all Liabilities to third parties for death . . . ."  (*Id.* ¶ 8) (citing Sale Agreement § 2.3(a).)  The

McCall Objection states finding that Alabama Wrongful Death Act claims were not assumed

would render that provision meaningless and also lead to absurd results, as only residents of

Alabama would be barred from suing New GM for wrongful death caused by Old GM's defective

automobiles.  (*Id.* ¶¶ 30, 33.)  Moreover, "[i]t would bizarrely allow plaintiffs who suffer lesser

injuries to sue New GM but eliminate the only remedy for the much more serious injury of

death."  (*Id.* ¶ 37.)

The McCall Objection also argues that the July 2017 Decision is not *res judicata* as to the

McCalls.  (*Id.* ¶ 42.)  It points out that counsel for another wrongful death plaintiff wrote to the

Court in February 2017 advising it of Alabama's unique wrongful death statute and requesting

permission to file a 10-page brief in response to the December 2016 OSC.  (*Id.* ¶ 43) (citing ECF

Doc. # 13,847.)  In response, counsel for New GM wrote the Court a letter stating the "unique

punitive damages issue under Alabama law is not part of any of the 2016 Threshold Issues[, and

that the counsel] should file a separate pleading in accordance with appropriate bankruptcy

procedure, to raise th[e] issue with [the] Court."  (ECF Doc. # 13,851.)  The Court then entered an

order denying the request for a separate brief "[f]or the reasons set forth in New GM's letter . . . ."

(ECF Doc. # 13,852.)

The McCalls assert the punitive damages issue is not *res judicata* because the "issues

surrounding the [Alabama Wrongful Death Act] were specifically not addressed in the July 2017

[Decision] at New GM's request."  (McCall Objection ¶ 44.)

Lastly, the McCall Objection states the Court should not rely on the August 2017

Decision, because the McCalls did not participate in the briefing and argument concerning the

December 2016 OSC after a request to include an interpretation of the Alabama Wrongful Death

Act was denied.  (*Id.* ¶ 46.)

**D.  New GM's Reply**

New GM, in its reply, alleges that the argument in the McCall Objection that the

November 2015 Decision applies only to cases in which compensatory damages are available is

erroneous.  (New GM at 4-7.)  New GM contends the November 2015 Decision applies to all

requests for punitive damages by all plaintiffs.  (*Id.* at 4.)  In addition, New GM states that the

July 2017 Decision, in which this Court held that New GM cannot be held liable for punitive

damages under a successor liability theory because of federal bankruptcy law, is an independent

basis for finding that New GM cannot be liable for punitive damages.  (*Id.* at 7-9.)  Furthermore,

New GM argues that granting the Motion will not be "absurd" or against public policy because

allowing the recovery of punitive damages from New GM would "punish New GM solely

17

because of Old GM's alleged conduct[,]" a result that does not further the purpose of AWDA, which is not intended to compensate the McCalls but rather to punish a wrongdoer. (*Id.* at 9-14.) Lastly, New GM maintains that the July 2017 Decision is *res judicata*. (*Id.* at 14-15.)

### III.    DISCUSSION

#### A.  Only Punitive Damages Are Recoverable under AWDA

A threshold issue is whether AWDA provides for the recovery of only punitive damages, or something else.  If AWDA claims are not true punitive damages claims, but rather are more akin to compensatory damages, then the McCalls have an argument that New GM assumed the wrongful death claims in the Sale Agreement and that the prior Punitive Damages Rulings are inapplicable.  But the McCalls do not challenge New GM's position that the recoverable damages under the statute are truly punitive.  In fact, they agree they are.  *See* McCall Objection ¶ 1 ("Two facts are undisputed . . . B. The Alabama Wrongful Death Act . . . has been construed as allowing a jury to asses punitive damages only.")  Instead, their primary argument is that New GM assumed claims for punitive damages awarded under the AWDA in the Sale Agreement regardless.

Irrespective of the McCalls' position, the District Court affirmed Judge Bernstein's Chrysler Decision, finding only punitive damages are recoverable under AWDA.  While neither the bankruptcy court nor district court decisions in *Chrysler* are binding on this Court, this Court finds that both decisions thoroughly analyzed the issues and were correctly decided.  AWDA only permits recovery of exemplary or punitive damages.  As a result, any argument that New GM contractually assumed liability for the wrongful death claims because the wrongful death claims seek compensatory, rather than punitive, damages fails.

### B.  New GM Did Not Contractually Assume Liability for Punitive Damages Awarded under AWDA

Turning to the McCalls' main argument, they contend the November 2015 Decision, which found that New GM did not contractually assume punitive damages, applies only to cases in which compensatory damages are also sought.  The McCalls' premise their argument on a fragment of one sentence from Judge Gerber's November 2015 Decision.  At the beginning of that decision, when reciting the issues, Judge Gerber states, "[T]he Court here must decide . . . the extent to which claims for punitive damages based on Old GM knowledge or conduct in actions in which the assertion against New GM *for compensatory damages claims is permissible . . . .*"  *In re Motors Liquidation Co.*, 541 B.R. at 107 (emphasis added).  This suggested interpretation, however, does not withstand scrutiny when considering the remainder of the opinion.  Nowhere in Judge Gerber's analysis does he differentiate between situations where only punitive damages are claimed and those where claims for punitive damages are made along with claims for compensatory damages.  More importantly, the holdings from the November 2015 Decision do not restrict the applicability of the decision in the manner suggested by the McCalls.  For instance, Judge Gerber states: "[B]oth by resort to normal textual analysis and extrinsic evidence, the Court comes to the same conclusion—that New GM did not contractually assume punitive damages claims."[2]  *Id.* at 121.  The omission of any statement qualifying the holding is telling.  Had Judge Gerber wished to confine his decision in the manner suggested by the McCalls, he surely would have said so.

---

[2]    This holding is restated in the December 2015 Judgment, which is further evidence that Judge Gerber did not intend to restrict his holding only to cases involving claims compensatory damages.  The December 2015 Judgment states: "New GM did not contractually assume liability for punitive damages from Old GM.  Nor is new GM liable for punitive damages based on Old GM conduct under any other theories, such as by operation of law." (December 2015 Judgment ¶ 6.)

When considering the November 2015 Decision as a whole, the Court rejects the McCalls'

assertion that New GM contractually assumed liability for claims under AWDA.  The Court finds

that the November 2015 Decision, holding that New GM did not assume punitive damages,

applies to claims for punitive damages made under AWDA.  Therefore, it is law of the case that

New GM did not contractually assume liability for AWDA claims.  "[W]hen a court has ruled on

an issue, that decision should generally be adhered to by that court in subsequent stages in the

same case."  *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) (citing *United States v.*

*Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)) (quotation marks omitted).  Under the law of the

case doctrine, "a court should adhere to its earlier decisions in subsequent stages of litigation

unless compelling reasons counsel otherwise." *Tomasino v. Estee Lauder Companies, Inc.*, 2015

WL 1470177, at *1–2 (E.D.N.Y. Mar. 31, 2015).  The McCalls have not advanced any

compelling reasons why the Court should not adhere to the November 2015 Decision.  Thus, the

Court believes it should continue to follow it.

Even if the November 2015 Decision is interpreted to apply only to cases involving

compensatory damages, this Court would come to same conclusion as a matter of contractual

interpretation.  The Court agrees with the textual analysis performed by Judge Gerber.  Under the

Sale Agreement, New GM only assumed liability for specific liabilities enumerated under section

2.3(a).  All other liabilities were retained by Old GM.  (*See* Sale Agreement, at 87-88 §§ 2.3(a)-

(b) ("The 'Assumed Liabilities' shall consist *only* of the following Liabilities of [Old GM] . . . .

[New GM] shall not assume, or become liable to pay, perform or discharge, any Liability of [Old

GM], whether occurring or accruing before, at or after the Closing, *other than the Assumed*

*Liabilities*.") (emphasis added).)  The only enumerated liability that arguably applies is subsection

(ix).  In it, New GM assumes liability to third parties for death and personal injury, but not

punitive damages. Punitive damages do not compensate "for any of those injuries, but rather accomplish other societal goals . . . ." *In re Motors Liquidation Co.*, 541 B.R. at 119. Therefore, they were not expressly assumed. Likewise, claims for punitive damages under AWDA also do not compensate for death or personal injury, so they were also not expressly assumed.

Moreover, a review of the extrinsic evidence weighs against a finding that New GM assumed liability for AWDA claims from Old GM. New GM only assumed liability for post-sale personal injury claims after receiving complaints from several state attorney general offices that purchasers of GM vehicles would not be "*compensated* for death or serious injuries caused by defects in [Old] GM products." ("Limited Objection of the States," ECF Doc. # 1926, at 4 (emphasis added); *In re Motors Liquidation Co.*, 541 B.R. at 120.) However, no one ever asked the Court to require New GM to assume punitive damages claims under AWDA. (*See generally* Limited Objection of the States.) Additionally, punitive damages claims are intended to punish past conduct and deter wrongdoing. *In re Motors Liquidation Co.*, 541 B.R. at 119. Neither goal, however, would be furthered by imposing punitive damages on New GM for Old GM's conduct. And last, Judge Gerber stated that "[t]he notion that anyone would choose to assume millions, if not billions of dollars of punitive damages exposure—especially without mentioning it—is entirely implausible." *Id.* at 120. It is equally implausible that New GM would agree to assume some claims for punitive damages, including punitive damages claims under AWDA for which there is no cap, *see* Ala. Code § 6-5-410, but not others and fail to mention it. Accordingly, in addition to finding it is law of the case that New GM did not contractually assume claims under AWDA, the Court comes to the same conclusion, based on an independent contractual analysis.

### C. New GM Cannot Be Held Liable for Punitive Damages Awarded under AWDA under a Successor Liability Theory

The McCalls also argue that the July 2017 Decision and August 2017 Decision in which this Court held that New GM could not be liable for punitive damages based solely on Old GM conduct under a successor liability theory should not bind them. The McCalls do not dispute that they were served with the December 2016 OSC, but rather they argue that punitive damages under AWDA was not a 2016 Threshold Issue. The McCalls allege New GM informed the Court it was not a threshold issue and seem to infer this resulted in them not responding to the December 2016 OSC. They further argue that eliminates claim preclusion from applying to the July 2017 Decision.

While the July 2017 Decision and August 2017 Decision may not be *res judicata* as to the McCalls, the Court finds it unnecessary to reach that conclusion. The Court holds the 2016 Threshold Issue did address the issue whether punitive damages, sought either in combination with compensatory damages or alone, are recoverable against New GM under a successor liability theory. This Court's July 2017 Decision was premised on punitive damages claims being subordinated in bankruptcy. Whether the punitive damages claims are stand-alone claims or coupled with compensatory damages claims, they still would be subordinated. Therefore, in bankruptcy cases such as Old GM's, with a deeply insolvent debtor with a liquidating chapter 11 plan, the punitive damages claims would not be recoverable. That is true even when the punitive damages claims are made pursuant to AWDA.

The Court, therefore, finds the July 2017 and August 2017 Decisions are law of the case, and that New GM cannot be held liable for AWDA claims based on Old GM's conduct under a successor liability theory. Law of the case is an "analytically distinct concept" from *res judicata*. *Tomasino v. Estee Lauder Companies, Inc.*, 2015 WL 1470177, at *2. There is no obligation for

22

"a court to revisit a prior ruling on a question of law merely because certain parties did not

participate in the earlier ruling . . . ." *In re Motors Liquidation Co.*, 590 B.R. at 62. The Court

believes the prior decisions resolve the issue.

### D. Alabama Law May Provide the McCalls with a Compensatory Remedy

The McCalls suggest the ruling made by the Court today renders New GM's assumption

of all wrongful death claims meaningless and will lead to absurd results. A similar argument

was made in the *Chrysler* case before Judge Bernstein and he rejected it. On appeal to the

District Court, the Alabama Attorney General filed an *amicus* brief further pressing the issue,

Brief for State of Alabama as Amici Curiae Supporting Appellant, *In re Old Carco LLC*, 2019

WL 2336849 (S.D.N.Y. May 21, 2019), but the District Court too rejected the argument.

While the argument that compensatory damages are recoverable in an injury case but not

in a death case could certainly raise questions about the fairness of the Alabama legislative

policy that creates such a result, that of course is an Alabama state law issue raised and rejected

multiple times by the Alabama courts. New GM assumed liability for *compensatory damages*

claims for post-sale accidents caused by defects in vehicles manufactured by Old GM, but it did

not assume liability for punitive damages based on Old GM conduct. This Court has no writ that

would allow it to modify the contractual assumption of liability.

The McCalls argue that "[i]t would bizarrely allow plaintiffs who suffer lesser injuries to

sue New GM but eliminate the only remedy for the much more serious of death . . . [and] would

allow a personal injury claim to survive in the estate if the plaintiff died of some other cause . . .

but would terminate the claim if the plaintiff died of the personal injury." The District Court's

affirmance of the Chrysler Decision resolves this argument. The District Court rejected the

argument because it had previously been refused in analogous situations involving Alabama

residents suing the federal government and its agencies under AWDA, which they could not do

because of federal statutes barring punitive damage awards against the federal government. The District Court also pointed out that permitting the plaintiffs' AWDA claims to proceed would actually be absurd because then only Alabama residents could sue for punitive damages. The District Court's decision on the issue, although not binding, is persuasive and the Court believes it was correctly decided. Thus, the Court chooses to follow it today.

There is an additional reason why the alleged unfairness advanced by the McCalls is misplaced. While neither the parties in this case nor in the *Chrysler* case raised the issue in their briefs in the bankruptcy court, this Court, at the hearing on the Motion, questioned whether, in fact, compensatory damages are available under Alabama state law in a case such as this one based on a contract (breach of implied warranties) rather than tort theory. *See* Transcript of Hearing, May 30, 2019, at 8–13, 36–40 (ECF Doc. # 14,522). The Court directed counsel for New GM and for the McCalls to file supplemental briefs. (*Id.* at 39–40.) Both New GM's and the McCalls' supplemental briefs agree that compensatory damages are available to the McCalls, as personal representatives of the estates of the deceased, under breach of warranty theories, but, they argue, recoverable damages are limited to compensatory damages incurred between the time of the breach and death of the decedent. ("New GM Supplemental Brief," ECF Doc. # 14,547, at 6-10; "McCalls Supplemental Brief," ECF Doc. # 14,546, at 1-3.)

The origins of product liability law in Alabama and elsewhere are based on both tort and contract law principles. *See Restatement (Third) of Torts: Prod. Liab.* § 1 cmt. a (American Law Institute 1998) ("Thus, 'strict products liability' is a term of art that reflects the judgment that products liability is a discrete area of tort law which borrows from both negligence and warranty. It is not fully congruent with classical tort or contract law. Rather than perpetuating confusion spawned by existing doctrinal categories, §§ 1 and 2 define the liability for each form of defect

in terms directly addressing the various kinds of defects. As long as these functional criteria are met, courts may utilize the terminology of negligence, strict liability, or the implied warranty of merchantability, or simply define liability in the terms set forth in the black letter."). New GM's assumption of liability for post-sale accident cases for product defects in vehicles manufactured by Old GM is not limited to tort theories of liability. New GM's Assumed Liabilities include "(ix) all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles . . . manufactured sold or delivered by [Old GM] . . . which arise directly out of accidents, incidents or other distinct and discreet occurrences that happen on or after the Closing Date . . . ." ("Sale Agreement," ECF Doc. # 14,477-1, at 87.)

In Alabama, the death of injured party as a result of a product defect abates the products liability *tort* claim (assuming it was not filed prior to death), limiting the tort remedy to a punitive damages' claim under AWDA. But, as explained below, the breach of warranty contract claim is not abated.

Alabama has a survival statute providing that contract claims do not abate on the death of a decedent and "survive in favor of . . . personal representatives[.]" *See* Ala. Code § 6-5-462. The Alabama Supreme Court in *Benefield v. Aquaslide 'N' Dive Corp.*, 406 So. 2d 873 (Ala. 1982), held that breach of implied warranty claims under the U.C.C. are contract claims that "survive[] in favor of the personal representative regardless of whether the decedent filed the action before his death. The fact that the decedent dies as a result of the injuries sued upon does not change this general rule." *Id.* at 875; *see id.* at 874 ("This case presents a question of first impression on whether simultaneous recovery of both punitive damages for wrongful death under a tort claim and compensatory damages for injuries suffered by the decedent between the date of his injury and the date of his death under a contract claim may be sought. We answer the

question in the affirmative."). Therefore, the McCalls, in their capacities as personal representatives, could assert contract breach of warranty claims for defective design seeking to recover compensatory damages against New GM on behalf of the estates.

In *Aquaslide*, the decedent broke his neck while using a waterslide and died nine days later as a result. The estate brought a breach of warranty claim seeking recovery for pain and suffering and medical expenses incurred by the decedent between the time of his injury and death. *Id.* at 874. Those claims were asserted in addition to a punitive damage claim under AWDA. The Alabama Supreme Court held that the compensatory damages claim was cognizable on the contract breach of warranty claim.

Indeed, seven years later in *Industrial Chemical and Fiberglass Corp. v. Chandler*, 547 So. 2d 812, (Ala. 1988), the Alabama Supreme Court upheld a $2.5 million verdict, which included damages for pain and suffering, awarded under a breach of contract theory to a widow, whose husband survived for only seconds after an industrial incident resulting in a fire. *See id.* at 819–20. Additionally, the Alabama Supreme Court stated in *Simmons v. Clemco Industries*, 368 So.2d 509 (Ala. 1979), that plaintiffs can recover "lost wages, pain and suffering, medical expenses and other damages which occurred between the time of the alleged breach of warranty and death of the plaintiff[,]" under a breach of contract theory. *Id.* at 515. All three cases state that a plaintiff can recover compensatory damages incurred between the time of injury and death.[3] *Chandler* certainly makes clear that multi-million-dollar compensatory damages claims

---

[3] What appears to remain an open question of Alabama law is whether a plaintiff estate representative can recover compensatory damages including, for example, lost future earnings of the decedent that the decedent likely would have earned had he or she not died . That, of course, is a state law question for the Alabama courts.

may be recoverable on the contractual breach of warranty claim even where the decedent's death is nearly instantaneous with the accident.[4]

Under Alabama law, plaintiff estate representatives such as the McCalls can recover compensatory damages under a contractual breach of warranty claim that does not abate as a result of the death of the injured party.[5] Whether the existing Alabama state court complaints adequately plead (or can now be amended to plead) contractual breach of warranty claims is a question for the Alabama court, not for this Court. Therefore, the McCalls assertion that the AWDA claims are the only remedies for death and that personal injury claims in Alabama only survive if decedent's die of some cause other than the one inflicting the injury sued upon are erroneous.

### E. The McCall Complaints Contain Improper Allegations

"To pass through the bankruptcy gate, [a claim] must clearly allege specific conduct of New GM upon which it is based." (August 2017 Decision at 322.) "Allegations that speak of New GM as the successor of Old GM (e.g. allegations that refer to New GM as the 'successor of,' or a 'mere continuation of,' or a 'de facto successor of' of Old GM) are proscribed by the Sale Order . . . and complaints that contain such allegations are and remain stayed, unless and until they are amended . . . ." (December 2015 Judgment ¶ 16.) Moreover, "[a]llegations that allege or suggest that New GM manufactured or designed an Old GM Vehicle . . . are proscribed by the

---

[4] At the hearing on this Motion, it was represented to the Court that the decedents in the McCall Complaints survived for 30 minutes after the accident.

[5] Although not relevant to the McCalls' cases, Alabama plaintiffs can also recover compensatory damages for injuries and pecuniary loss incurred between the time of injury and death under a tort theory; however, the tort claim must have been filed before the decedent's death for it to survive. *See* Ala. Code § 6-5-462 ("[A]ll personal claims upon which an action has been filed, except for injuries to the reputation, survive in favor of . . . personal representatives[.]"); s*ee, e.g., King v. Natl. Spa and Pool Inst., Inc.,* 607 So. 2d 1241, 1246-47 (Ala. 1992) ("The fact that the injury that serves as the basis for the personal injury action later gives rise to a wrongful death claim does not extinguish the original personal injury claim. . . . [T]he presence of the Wrongful Death Act no longer operates to extinguish a personal injury claim where the injury results in death.")

27

Sale Order . . . and complaints that contain such allegations are and remain stayed, unless and until they are amended . . . ." (*Id.* ¶ 18.)

Both McCall Complaints allege that Old GM is New GM's "predecessor in business," (McCall Complaints, at 3 ¶ 2, at 8 ¶ 3), and that New GM "designed, engineered, manufactured, marketed, sold, assembled, distributed, or placed into the stream of commerce" the Subject Vehicle, (*Id.*, at 4 ¶ 9, at 9 ¶ 11). These allegations are improper and prohibited by the December 2015 Judgment. Thus, the McCalls must amend their complaints and remove those allegations.

## IV.    CONCLUSION

For the reasons explained above, New GM's Motion is **GRANTED** to the extent provided herein. The McCalls and their counsel are hereby stayed and enjoined from prosecuting the wrongful death claims in the McCall Complaints under the AWDA, which only permits recovery of punitive damages. In addition, the McCalls and their counsel are stayed and enjoined from prosecuting the punitive damage claims asserted by the McCalls based on the conduct of Old GM. Further, the McCalls are ordered to remove the impermissible allegations described above and to clarify the allegations against New GM in the McCall Complaints. The McCalls may allege that New GM assumed liability for compensatory damages for post-sale accidents, but they cannot state that New GM is the successor to Old GM or that New GM, *inter alia*, designed, manufactured, or sold the Subject Vehicle.

**IT IS SO ORDERED.**

Dated: July 10, 2019
New York, New York

*Martin Glenn*

MARTIN GLENN
United States Bankruptcy Judge

28