**BROWN RUDNICK LLP**
Edward S. Weisfelner
7 Times Square
New York, NY 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com

**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, A PROFESSIONAL CORPORATION**
Sander L. Esserman
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs in the Bankruptcy Court*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman (admitted pro hac vice)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs in the MDL Court*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., | : | Case No.: 09-50026 (MG) |
| f/k/a General Motors Corp., et al., | : | |
| Debtors. | : | (Jointly Administered) |

**THE ECONOMIC LOSS PLAINTIFFS' OMNIBUS OBJECTION TO (I) MOTION OF MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST FOR AN ORDER APPROVING THE DISTRIBUTION PLAN; (II) MOTION OF WILMINGTON TRUST COMPANY, AS GUC TRUST ADMINISTRATOR, FOR AN ORDER AUTHORIZING THE EXPEDITED PAYMENT OF EXCESS GUC DISTRIBUTABLE ASSETS; AND (III) MOTION OF WILMINGTON TRUST COMPANY, AS GUC TRUST ADMINISTRATOR, FOR AN ORDER AUTHORIZING THE EXPEDITED DISTRIBUTION TO HOLDERS OF 502(H) CLAIMS**

**TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ........................................................................3

OBJECTION ........................................................................6

CONCLUSION ........................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Atl. Pipe Corp.*,
304 F.3d 135 (1st Cir. 2002) .....8

*In re Ballard*,
502 B.R. 311 (Bankr. S.D. Ohio 2013) .....7

*In re Joint E. & S. Dists. Asbestos Litig.*,
120 B.R. 648 (E.D.N.Y. & S.D.N.Y. 1990) .....7

*In re Motors Liquidation Co.*,
529 B.R. 510 (Bankr. S.D.N.Y. 2015), *aff'd in part, rev'd in part, vacated in part sub nom. Elliot v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir. 2016) .....3

*In re Motors Liquidation Co.*,
580 B.R. 319 (Bankr. S.D.N.Y. 2018) .....4

*In re Motors Liquidation Co.*,
591 B.R. 501 (Bankr. S.D.N.Y. 2018) .....4

*In re Sosa*,
443 B.R. 263 (Bankr. D.R.I. 2011) .....8

To: The Honorable Martin Glenn, United States Bankruptcy Judge:

The Ignition Switch Plaintiffs[1] and certain Non-Ignition Switch Plaintiffs[2] (together, the "**Economic Loss Plaintiffs**") submit this omnibus objection (the "**Objection**") to the: (i) AAT Distribution Motion;[3] (i) GUC Trust Distribution Motion;[4] and (i) 502(h) Distribution Motion[5] (collectively, the "**Motions**") and respectfully represent as follows.

## PRELIMINARY STATEMENT

1. The Economic Loss Plaintiffs object to the expedited distribution of nearly all of the remaining GUC Trust assets and the distribution of nearly all Avoidance Action Trust assets prior to either a judicial resolution of the Economic Loss Plaintiffs' entitlement to share in those assets or, alternatively, a mediated resolution of the Economic Loss Plaintiffs' entitlements.

2. The Economic Loss Plaintiffs have been litigating issues related to their entitlement to file late claims against the Debtor's estate and, in that connection, their proposed

---

[1] The term "**Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, prior to July 10, 2009, owned or leased a vehicle with an ignition switch defect included in Recall No. 14V-047 (the "**Ignition Switch Defect**").

[2] The term "**Non-Ignition Switch Plaintiffs**" shall mean those plaintiffs asserting economic loss claims or persons suffering economic losses who, prior to July 10, 2009, owned or leased a vehicle with defects in ignition switches, side airbags or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-118 and 14V-153.

[3] *Motion of Motors Liquidation Company Avoidance Action Trust for Entry of an Order Pursuant to Sections 105 and 1142 of the Bankruptcy Code and Bankruptcy Rule 3020 Approving the Distribution Plan to the Avoidance Action Trust's Beneficiaries*, dated July 8, 2019 [ECF No. 14552] (the "**AAT Distribution Motion**").

[4] *Motion of Wilmington Trust Company, as GUC Trust Administrator, for an Order (A) Authorizing the Expedited Payment of Excess GUC Distributable Assets Pursuant to Section 5.4 of the GUC Trust Agreement, and (B) Approving such Distribution as an Appropriate Exercise of the GUC Trust Administrator's Rights, Powers and/or Privileges Pursuant to Section 8.1(e) of the GUC Trust Agreement*, dated July 23, 2019 [ECF No. 14565] (the "**GUC Trust Distribution Motion**").

[5] *Motion of Wilmington Trust Company, as GUC Trust Administrator, for an Order Authorizing Expedited Distribution to Holders of 502(h) Claims Resulting from the AAT Settlement Agreement Pursuant to Sections 5.3 and 5.8 of the GUC Trust Agreement*, dated July 23, 2019 [ECF No. 14566] (the "**502(h) Distribution Motion**").

class claims against Old GM for nearly five years. Their latest efforts to remedy their denial of due process in connection with the original bar date set in this case most recently culminated in their entry into a Settlement Agreement with the GUC Trust on February 1, 2019. Motions seeking approval of that Settlement Agreement and certification of settlement classes (the "**Settlement Motions**") have been fully briefed since March 8, 2019. However, oral argument was adjourned *sine die* and no further proceedings have been scheduled.

3. As part of the Settlement, the Economic Loss Plaintiffs agreed to, *inter alia*, waive their rights to GUC Trust assets and Avoidance Action Trust assets following final court approval of the Settlement in exchange for, *inter alia*, the GUC Trust's consent to the filing of the class claims and agreement to file a motion seeking to estimate the allowed amount of those class claims. Approval of the Settlement Motions would provide the Economic Loss Plaintiffs the opportunity to receive a recovery from any additional shares of New GM common stock that are required to be issued following the estimation proceedings.

4. The Settlement Agreement presents a fair, reasonable, and adequate resolution of the numerous disputes related to the proposed class claims and the Economic Loss Plaintiffs will continue to press for its approval. However, in the event that the Settlement Motions are not approved in their entirety, it would be highly prejudicial to the Economic Loss Plaintiffs to be deprived of any opportunity to obtain a pro rata recovery from assets currently held by the GUC Trust and Avoidance Action Trust. By comparison, any prejudice to GUC Trust Beneficiaries caused by rejecting the request for expedited distributions and imposing a brief delay in distributions is negligible.

5. Accordingly, the Economic Loss Plaintiffs object to the distributions requested in the Motions prior to the resolution of the Settlement Motions. In the alternative, the GUC Trust,

Participating Unitholders, Economic Loss Plaintiffs, and New GM should be directed to mediation in an attempt to resolve New GM's objections to the Settlement Motions and the Motions should be adjourned during the pendency of said mediation.

**BACKGROUND**

6. Over ten years ago, Old GM filed for chapter 11 in this Court, having knowledge of the Ignition Switch Defect, yet failing to disclose the same.[6] It was not until 2014 that New GM first publicly disclosed the defect and issued a multitude of recalls for serious safety defects in millions of Old GM vehicles, including the Ignition Switch Defect and other defects in ignition switches, side airbags, and power steering. This resulted in the filing of numerous class actions, many of which were consolidated in a multi-district litigation before Judge Furman in the District Court for the Southern District of New York (the "**MDL**").

7. In connection with litigation before the Bankruptcy Court of various issues raised by these class actions, the Bankruptcy Court held that: (i) the Ignition Switch Plaintiffs were known creditors who did not receive constitutionally adequate notice of the November 30, 2009 bar date for filing proofs of claim against Old GM; (ii) this lack of notice prejudiced their ability to timely file claims; and (iii) the "obvious remedy" for this due process violation was leave to file late claims. *See id.* at 583.

8. Accordingly, on December 22, 2016, the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs filed a motion seeking authority to file late class claims against the Old GM estate (the "**Late Claims Motion**").[7] Thereafter counsel for the Economic Loss

[6] *See In re Motors Liquidation Co.*, 529 B.R. 510, 557 (Bankr. S.D.N.Y. 2015), *aff'd in part, rev'd in part, vacated in part sub nom. Elliot v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir. 2016).

[7] *Motion for an Order Granting Authority to File Late Class Proofs of Claim*, dated Dec. 22, 2016 [ECF No. 13806].

Plaintiffs, the GUC Trust, and the Participating Unitholders engaged in arm's-length negotiations concerning a potential settlement that would resolve the many disputes related to the Late Claims Motion.

9. Following two failed settlement attempts,[8] on February 1, 2019, the Economic Loss Plaintiffs and the GUC Trust entered into the Settlement Agreement, which includes a class settlement of the Economic Loss Plaintiffs' claims. That same day, the GUC Trust and Economic Loss Plaintiffs filed the Settlement Motions to seek approval of the same and obtain certification of a class of Ignition Switch Plaintiffs and a class of Non-Ignition Switch Plaintiffs (the "**Classes**").[9]

10. The Settlement Motions establish a streamlined process for allowing and estimating the Economic Loss Plaintiffs' class claims and providing the Classes a potential source of recovery. Among other things, the Settlement provides for the members of the Classes to waive and release any rights or claims against the GUC Trust, including rights to assets currently held or previously distributed by the GUC Trust, and rights to Avoidance Action Trust assets following final court approval of the Settlement. In exchange, the GUC Trust agrees to

[8] Following initial settlement negotiations in 2017, the GUC Trust abruptly decided not to execute the agreement and, after conducting a trial, the Court determined that the unexecuted settlement agreement was unenforceable. *See In re Motors Liquidation Co.*, 580 B.R. 319 (Bankr. S.D.N.Y. 2018). Subsequently, after the GUC Trust retained new counsel and enacted management changes, certain Plaintiffs and the GUC Trust entered into a new settlement agreement on April 24, 2018. However, the Court held that the settlement as drafted could not be approved unless the Ignition Switch and Non-Ignition Switch Plaintiffs can certify one or more classes for settlement under Rule 23 and denied the motion seeking to approve the April 24, 2018 settlement without prejudice. *See In re Motors Liquidation Co.*, 591 B.R. 501 (Bankr. S.D.N.Y. 2018).

[9] *The Economic Loss Plaintiffs' Motion to: (1) Extend Bankruptcy Rule 7023 to These Proceedings; (2) Approve the Form and Manner of Notice; (3) Grant Class Certification for Settlement Purposes Upon Final Settlement Approval; (4) Appoint Class Representatives and Class Counsel for Settlement Purposes; and (5) Approve the Settlement Agreement by and among the Signatory Plaintiffs and the GUC Trust Pursuant to Rule 23*, dated Feb. 1, 2019) [ECF No. 14408] (the "**Rule 23 Motion**"); *Motion of Motors Liquidation Company GUC Trust to Approve (I) the GUC Trust Administrator's Actions, (II) the Settlement Agreement by and Among the Signatory Plaintiffs and the GUC Trust Pursuant to Bankruptcy Code Sections 105, 363, and 1142 and Bankruptcy Rules 3002, 9014, and 9019, and (III) Authorize the Reallocation of GUC Trust Assets*, dated Feb. 1, 2019 [ECF No. 14409] (the "**Rule 9019 Motion**," and together with the Rule 23 Motion, the "**Settlement Motions**").

pay for noticing costs (up to a cap), consents to the filing of the class claims, and agrees to file a motion seeking entry of an order estimating the Economic Loss Plaintiffs' class claims in an amount that may trigger New GM's obligation to issue additional shares of New GM common stock (the "**Adjustment Shares**") under the terms of the Sale Agreement.

11. In response, New GM objected to the Settlement Motions and filed the Stay Motion, seeking to delay proceedings on the Settlement Motions pending rulings by the MDL court on summary judgment, *Daubert*, and bellwether class certification motions, which remain *sub judice* in the MDL.[10]

12. The Settlement Motions and Stay Motion have been fully briefed since March 8, 2019. However, the Court adjourned the hearings on the Settlement Motions and the Stay Motion *sine die* and no further proceedings on these motions have been scheduled.[11]

13. Thereafter, on June 13, 2019, the Court approved a settlement agreement resolving the Term Loan Avoidance Action.[12] As a result of the settlement, $231 million was paid into the Avoidance Action Trust and the Term Lender Parties received general unsecured claims against the GUC Trust pursuant to Bankruptcy Code Section 502(h) in the amount of this settlement payment.

---

[10] *General Motors LLC's Motion Pursuant to Section 105(a) of the Bankruptcy Code to (A) Stay Proceedings Relating to the Proposed Settlement and (B) Grant Related Relief*, dated Feb. 22, 2019 [ECF No. 14431] (the "**Stay Motion**"). New GM also filed the *Motion to Withdraw the Reference of Economic Loss Plaintiffs' Rule 23 Motion*, dated Feb. 22, 2019 [ECF No. 14433], requesting that Judge Furman withdraw the reference of the Rule 23 Motion in the event that the Stay Motion is denied. This motion remains *sub judice* in the MDL.

[11] *See Order Adjourning March 11, 2019 Hearings Sine Die on (I) Motion of Economic Loss Plaintiffs for Class Certification (ECF Doc. # 14408), (2) Motion to Approve Compromise (ECF Doc. # 14409), (3) Motion to Stay Proceedings Related to Class Certification (ECF Doc. # 14431) and (4) Motion to File Under Seal (ECF Doc. # 14451)*, dated Mar. 6, 2019 (ECF No. 14459).

[12] *See Order Pursuant to Sections 105 and 1142 of the Bankruptcy Code and Bankruptcy Rule 9019 Approving the Settlement Agreement and Related Relief*, dated June 13, 2019 (ECF No. 14530).

14. On July 1, 2019, the $231 million settlement payment was transferred to the Avoidance Action Trust. *See* AAT Distribution Motion ¶ 25. On July 8, 2019, the AAT Distribution Motion was filed seeking authority to distribute most of the proceeds of the Avoidance Action Trust. Under this motion, approximately $103.1 million will be distributed to holders of allowed General Unsecured Claims.[13]

15. On July 23, 2019, the GUC Trust Distribution Motion and 502(h) Distribution Motion were filed seeking to distribute *on an expedited basis* most of the approximately $443.8 million held in reserve in respect of potential unsecured claims of the defendants in the Term Loan Avoidance Action as of July 1, 2019. *See* GUC Trust Distribution Motion ¶ 22. Specifically, the GUC Trust seeks authority for an expedited distribution of $68,471,056.60 to holders of Bankruptcy Code Section 502(h) claims arising from the settlement of the Term Loan Avoidance Action, and $320,880,639.00 to GUC Trust Beneficiaries.

**OBJECTION**

16. In order to resolve the numerous complex disputes arising out of the Late Claims Motion, the GUC Trust and the Economic Loss Plaintiffs entered into a good faith, arm's-length Settlement Agreement and filed motions seeking approval of the same, which remain pending before the Bankruptcy Court. The Economic Loss Plaintiffs continue to believe that the Settlement is in the best interest of the Classes and remain committed to working with the GUC Trust to obtain court approval of the Settlement. The pending Motions place the GUC Trust's commitment to the Settlement Agreement in question.

---

[13] Following repayment of litigation funding and other expenses and obligations, and taking into account the $7.5 million holdback for expenses associated with distribution and windup, approximately $127.8 million remains available for distribution to Avoidance Action Trust Beneficiaries. *See id.* ¶¶ 35, 37. 30% will be distributed to the DIP Lenders and 70% will be distributed to holders of allowed General Unsecured Claims. *See id.* ¶ 27. In addition, the Avoidance Action Trust paid $13.7 million into a segregated account to repay litigation funding by the GUC Trust. This amount will be included in distributions to holders of allowed General Unsecured Claims. *See id.* ¶¶ 33, 35.

17. In the event that the Settlement is not approved, the parties will return to their respective positions *status quo ante* and the litigation of the Late Claims Motion will be revived. In that event, the equitable result would be to provide the Economic Loss Plaintiffs with the opportunity to pursue a recovery from assets held by the GUC Trust and Avoidance Action Trust. They will be unable to do so if the Motions are approved. The distributions planned under the Motions will render the GUC Trust and Avoidance Action Trust bereft of assets, severely prejudicing the Economic Loss Plaintiffs in the event that the Settlement is not approved.

18. For these reasons, the Economic Loss Plaintiffs object to the distribution of GUC Trust assets or Avoidance Action Trust assets prior to the resolution of the Settlement Motions. In particular, the GUC Trust Distribution Motion and 502(h) Motion seek to expedite distributions that otherwise would not occur until sometime between the first week of September and October 3, 2019. There is no justification for expediting distributions while the Settlement Motions remain *sub judice*. Accordingly, the Economic Loss Plaintiffs request that the Court adjourn the Motions until the Settlement Motions are fully adjudicated. *See In re Joint E. & S. Dists. Asbestos Litig.*, 120 B.R. 648, 658 (E.D.N.Y. & S.D.N.Y. 1990) (holding that a bankruptcy court may stay proceedings under Bankruptcy Code Section 105 in order to preserve trust assets and effectuate a plan of reorganization); *In re Ballard*, 502 B.R. 311, 322 (Bankr. S.D. Ohio 2013) (noting that through Bankruptcy Code Section 105, Congress made sure that bankruptcy courts had the tools necessary to manage the litigation before them).

19. In the alternative, and given the extended amount of time since the Plaintiffs sought relief from the deprivation of their due process rights and the likely costs of pursuing the Settlement Motions and likely appeals, the Economic Loss Plaintiffs request that the Court direct

the GUC Trust, Participating Unitholders, Economic Loss Plaintiffs, and New GM (the lone objector to the Settlement Motions) to mediation and adjourn the Motions until the mediation is complete. *See In re Atl. Pipe Corp.*, 304 F.3d 135, 145 (1st Cir. 2002) (holding that "it is within a district court's inherent power to order non-consensual mediation in those cases in which that step seems reasonably likely to serve the interests of justice"); *In re Sosa,* 443 B.R. 263, 267-68 (Bankr. D.R.I. 2011) (noting that the court may order mediation under Bankruptcy Rule 7016 or as an exercise of the court's inherent power to manage and control its calendar).

20. In this mediation, the parties will be able to take into account the results of the Term Loan Avoidance Action settlement in an attempt to resolve New GM's objections to the Settlement Motions. In particular, the aggregate allowed General Unsecured Claims against the Old GM estate has increased to over $32 billion—$3 billion shy of the threshold necessary to trigger the issuance of Adjustment Shares by New GM.[14] Further, amounts previously required to be held in reserve by the GUC Trust on account of the maximum amount of the Bankruptcy Code Section 502(h) claims arising from the Term Loan Avoidance Action is now available.

21. The Economic Loss Plaintiffs reserve all rights to supplement this Objection and be heard at the hearings on the Motions.

## CONCLUSION

**WHEREFORE**, for all of the reasons stated above, the Economic Loss Plaintiffs respectfully request that this Court: (i) adjourn the Motions until the Settlement Motions are fully adjudicated or, in the alternative, until the parties are provided an opportunity to mediate the Late Claims Motion; and (ii) grant such other and further relief as is just and proper.

---

[14] According to the conjoint analysis conducted by Plaintiffs' experts, the total amount of the Class members' aggregated claims could equal or exceed $77 billion. *See* Rule 23 Motion ¶ 40.

Dated: July 29, 2019
New York, New York

Respectfully submitted,

*/s/ Edward S. Weisfelner*

Edward S. Weisfelner
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, A PROFESSIONAL CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: 206-623-7292
steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch Plaintiffs and Certain Non-Ignition Switch Plaintiffs in the MDL Court*