Hearing Date and Time: August 12, 2019 at 10:00am(ET)

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York  10178
Telephone:  (212) 808-7800

Attorneys for JPMorgan Chase Bank, N.A.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case |
| MOTORS LIQUIDATION COMPANY, *et al.*, | Case No. 09-50026 (MG) |
| Debtors. | (Jointly Administered) |

**RESPONSE OF JPMORGAN CHASE BANK, N.A. IN SUPPORT OF MOTION BY GUC TRUST ADMINISTRATOR FOR AN ORDER AUTHORIZING EXPEDITED DISTRIBUTION TO HOLDERS OF 502(h) CLAIMS RESULTING FROM THE AAT SETTLEMENT AGREEMENT PURSUANT TO SECTIONS 5.3 AND 5.8 OF THE GUC TRUST AGREEMENT**

**TO:    THE HONORABLE MARTIN GLENN**
**        UNITED STATES BANKRUPTCY JUDGE**

JPMorgan Chase Bank, N.A. ("JPMorgan") submits this Response in support of the *Motion of Wilmington Trust Company, as GUC Trust Administrator, for an Order Authorizing Expedited Distribution to Holders of 502(h) Claims Resulting from the AAT Settlement Agreement Pursuant to Sections 5.3 and 5.8 of the GUC Trust Agreement* dated July 23, 2019 [ECF No. 14566](the "Catch-up Distribution Motion").[1]  JPMorgan respectfully represents as follows in support of the Catch-up Distribution Motion:

---

[1] Capitalized terms used in this Statement without definition have the meanings ascribed thereto in, or by reference in, the Catch-up Distribution Motion.

Preliminary Statement

1.  The GUC Trust was established pursuant to the Chapter 11 Plan of the old General Motors Debtors to distribute to the Debtors' general unsecured creditors the value of the New GM stock that the Debtors' received in the Section 363 sale of their operating businesses and assets, all as described in the Catch-up Distribution Motion. The establishment of the GUC Trust pursuant to the Plan and GUC Trust Agreement was authorized pursuant to this Court's Confirmation Order with respect to the Plan [ECF No. 9941].

2.  The Term Loan Avoidance Action had been commenced before the GUC Trust was established. It was recognized by the Plan's drafters and the Term Lender defendants that a recovery on the Term Loan Avoidance Action by the Avoidance Action Trust would give rise under Bankruptcy Code Section 502(h) to claims in favor of the Term Lenders that would be entitled to distributions from the GUC Trust (called the "Term Loan Avoidance Action Claims" in the GUC Trust Agreement).

3.  Since the Term Loan Avoidance Action was still pending at the time that the GUC Trust Agreement was negotiated, the GUC Trust Agreement did not permit distributions on the Term Loan Avoidance Action Claims before they were allowed, but it did contain express, carefully-crafted provisions that protected their unresolved Term Loan Avoidance Action Claims against the GUC Trust while the Avoidance Action Trust's claims against them were being resolved. Whenever a *pro rata* distribution was made by the GUC Trust to the holders of Allowed General Unsecured Claims before resolution of the Term Loan Avoidance Action Claims, the GUC Trust Agreement required funding of a reserve in the amount that would have been distributed on account of $1.5 billion of Term Loan Avoidance Action Claims had they been allowed at the time of the distribution. Thus, when and to the extent the unresolved Term Loan

Avoidance Action Claims became Allowed General Unsecured Claims by settlement or judicial determination, the Term Lenders holding the newly-allowed Claims were assured of a dedicated source for full funding of a catch-up distribution on their Claims equal to the cumulative percentage level of prior distributions from the GUC Trust on Allowed General Unsecured Claims (defined here as the "Catch-up Distribution").  Then, *after* the Catch-up Distribution was fully funded, any remaining excess reserved amounts would be available for *pro rata* distribution to holders of all Allowed General Unsecured Claims (including allowed Term Loan Avoidance Action Claims).

4. The GUC Trust Administrator carried out the GUC Trust Agreement's provisions and funded a reserve for the Catch-up Distribution to the Term Lenders.  The global settlement of the Term Loan Avoidance Action gave rise to $231 million of allowed Term Loan Avoidance Action Claims entitling the Term Lenders to a $68,471,056.60 (defined here as the "Catch-up Amount") Catch-up Distribution to them.  But since the reserve was based on the full $1.5 billion in dispute in the Term Loan Avoidance Action, the amount held in reserve by the GUC Trust is more than $443 million.  Therefore, making the Catch-up Distribution to the Term Lenders as required by the GUC Trust Agreement – which is the distribution contemplated by the Catch-up Distribution Motion – will free up more than $375 million of excess funds in the reserve for *pro rata* distribution on account of all Allowed General Unsecured Claims (subject to holdbacks for Trust expenses and liabilities).

5. The distribution of the Catch-up Amount from the GUC Trust to the holders of the Term Loan Avoidance Action Claims was a key economic driver of the AAT Settlement.  As can readily be seen from a review of the AAT Settlement Agreement, the allowance and allocation among JPMorgan and other Term Lenders of the Term Loan Avoidance Action Clams (referred

to as the "Allowed GUC Trust Claims" in the AAT Settlement Agreement) was a heavily negotiated and carefully documented integral element of the AAT Settlement. Moreover, the GUC Trust expressly agreed in the AAT Settlement Agreement to make the Catch-up Distribution in accordance with the applicable provisions of the GUC Trust Agreement. This Court's Approval Order, entered after notice to all interested parties, expressly allowed the Term Loan Avoidance Action Claims in favor of JPMorgan and other Term Lenders, and authorized the GUC Trust to execute, deliver and perform the AAT Settlement Agreement. The Approval Order is no longer subject to appeal. Accordingly, there can be no issue about the authority of the GUC Trust to make the Catch-up Distribution or the entitlement of JPMorgan and other holders of allowed Term Loan Avoidance Action Claims to receive it.[2]

6. The Late Claimants' Omnibus Objection[3] provides no basis to deny or delay the distribution of the $68,471,056.60 Catch-up Amount to the Term Lenders pursuant to the Catch-up Distribution Motion. The Objection does not assert any right on the part of the Late Claimants to share in the Catch-up Distribution or offer any justification to defer making the Catch-up Distribution to the holders of the Term Loan Avoidance Action Claims. The reason for this, as noted, is that the Catch-up Distribution is to be fully funded from a reserve dedicated by the GUC Trust Agreement to the payment of the Catch-up Distribution *before* any of the reserved funds can be distributed to other claimants. To the extent, if any, that the Late Claimants have any entitlement, it is an entitlement to share in a distribution of $375 million freed up as a result of the

---

[2] The Catch-up Distribution Motion deals solely with the authority of the GUC Trust to expedite the Catch-up Distribution, not with the GUC Trust's authority to make the distribution or the entitlement of the holders of allowed Term Loan Avoidance Action Claims to receive it.

[3] *The Economic Loss Plaintiff's Omnibus Objection to (i) Motion of Motors Liquidation Company Avoidance Action Trust for an Order Approving the Distribution Plan; (ii) Motion of Wilmington Trust Company, as GUC Trust Administrator, for an Order Authorizing the Expedited Payment of Excess GUC Trust Distributable Assets; and (iii) Motion of Wilmington Trust Company, as GUC Trust Administrator, for an Order Authorizing the Expedited Distribution to Holders of 502(h) Claims* dated July 29, 2019 (the "Late Claimants' Omnibus Objection"). The objectors are referred to herein as the "Late Claimants."

- 4 -

Term Loan Avoidance Action settlement. That $375 million can only become available for distribution *after* the Catch-up Distribution has been fully funded.[4]

### Allowance of Term Loan Avoidance Action Claims

7.  JPMorgan, in its capacities as a lender and administrative agent under the General Motors Corporation Term Loan Agreement dated as of November 29, 2006, and various other lenders were defendants in the Term Loan Avoidance Action brought by the Avoidance Action Trust in this Court to recover approximately $1.5 billion paid by the Debtor to JPMorgan and the other lender-defendants (collectively, the "Term Lenders") . In such capacities, JPMorgan is a party to the AAT Settlement Agreement pursuant to which the Term Loan Avoidance Action was finally resolved approximately nine years after it was commenced. The Avoidance Action Trust and the GUC Trust are both parties to the AAT Settlement Agreement.

8.  This Court entered the Approval Order approving the AAT Settlement Agreement on June 13, 2019 [ECF No. 14530], upon motion by the Avoidance Action Trust [ECF No. 14505] to which the GUC Trust filed a joinder [ECF No.1183]. As provided for in Section 4(g)(2) of the AAT Settlement Agreement and noted in paragraph 4 of the Approval Order, the GUC Trust provided notice of the Approval Motion to counsel to the "Signatory Plaintiffs," which, by definition, includes the counsel who filed the Late Claimants' Omnibus Objection. There were no objections by the Late Claimants (or any other party in interest) to the Approval Order or the Approval Motion.

9.  The AAT Settlement Agreement provided for payment of $231 million to the Avoidance Action Trust on behalf of JPMorgan and the other Term Lenders. Pursuant to Section 502(h) of the Bankruptcy Code, Section 4(c) of the AAT Settlement Agreement and paragraph 11

---

[4] This Response is limited to the Catch-up Distribution Motion. JPMorgan is entitled to a *pro rata* portion of the distributions to holders of Allowed General Unsecured Claims contemplated by the other two motions covered by the Late Claimants' Omnibus Objection and would like the other two motions to be granted, but the priority rights to the reserve described in this Response apply only to the Catch-up Distribution.

of the Approval Order, $231 million of Term Loan Avoidance Action Claims arose and were allowed in favor of JPMorgan and other Term Lenders.[5]  Of those allowed Term Loan Avoidance Action Claims, $141,141,000 were allocated to JPMorgan in accordance with Sections 4(c)(ii) and (e) of the AAT Settlement Agreement.

<u>Reserve for, and Treatment of, Term Loan Avoidance Action Claims</u>

10.   From the outset, the GUC Trust Agreement recognized and provided for the possibility that Term Loan Avoidance Action Claims would arise and be allowed in favor of defendants to the Term Loan Avoidance Action as a result of recoveries by the Avoidance Action Trust.  Thus, the GUC Trust Agreement contains the following provisions, among others:

a. Section 1.1 of the GUC Trust Agreement defines "Term Loan Avoidance Action Claims" to mean "the additional General Unsecured Claims that have arisen as a result of recovery of proceeds of the Term Loan Avoidance Action (or any related unsecured claims)."  In addition, "Unresolved Term Loan Avoidance Action Claim" is defined as a Term Loan Avoidance Action Claim that has not yet arisen because it has not yet been resolved by settlement or judicial determination.

b. Section 5.5(a) of the GUC Trust Agreement provides that, during the period that distributions are being made by the GUC Trust to holders of Allowed General Unsecured Claims but not to holders of Unresolved Term Loan Avoidance Action Claims, the GUC Trust will retain and hold in reserve, for $1.5 billion in the aggregate of Unresolved Term Loan Avoidance Action Claims, the amount that would be distributable to the holders of such claims if

---

[5]     Similarly, $231 million of "Term Loan Avoidance Action Claims" also arose and were allowed in favor of JPMorgan and other Term Lenders within the meaning of the Avoidance Action Trust's trust agreement.  Because the Avoidance Action Trust has not yet made any distributions on general unsecured claims, there is no Catch-up Distribution with respect to that Trust.

they are allowed. Paragraph 15 of the Catch-up Distribution Motion states that the GUC Trust held more than $443 million in reserve for the Unresolved Term Loan Avoidance Action Claims as of July 1, 2019.

c. Section 5.3(a) of the GUC Trust Agreement provides that, as promptly as practicable following the end of the calendar quarter during which any Unresolved Term Loan Avoidance Action Claims are allowed, the Catch-up Distribution is to be made to the holders of the newly-allowed Term Loan Avoidance Action Claims from the reserve. Pursuant to Section 5.4 of the GUC Trust Agreement, if any reserved funds remain *after* the Catch-up Distribution because the allowed Term Loan Avoidance Action Claims total less than $1.5 billion, the excess funds are to be released from reserve and become available as "Excess GUC Trust Distributable Assets" for *pro rata* distribution to all holders of Allowed General Unsecured Claims (including the allowed Term Loan Avoidance Action Claims), subject to holdback for other Trust expenses and liabilities.

<u>JPMorgan and the Term Lenders Have First Call on the Reserve to Collect the Catch-up Amount</u>

11. By virtue of the reserve and Catch-up Distribution mechanism outlined above, JPMorgan and other Term Lenders are entitled to the Catch-up Amount from the more than $443 million held in the reserve dedicated to the Term Loan Avoidance Action Claims *before* any other claimants have access to the excess reserved funds. Once the $68,471,056.60 Catch-up Distribution to the holders of the allowed Term Loan Avoidance Action Claims has been fully funded, the more than $375 million excess remaining in reserve becomes eligible for inclusion in Excess GUC Trust Distributable Assets (to the extent not needed for GUC Trust expenses or

liabilities). Unlike the Catch-up Distribution, the rights of all holders of Allowed General Unsecured Claims to distributions of Excess GUC Trust Distributable Assets are of equal priority so those funds are distributable on a *pro rata* basis to all holders of Allowed General Unsecured Claims (including the holders of allowed Term Loan Avoidance Action Claims).

<u>The Catch-up Distribution Has Already Been Authorized by this Court</u>

12. Pursuant to Section 4(c)(ii) of the AAT Settlement Agreement, the GUC Trust agreed that it would treat the Term Loan Avoidance Action Claims allowed under the AAT Settlement Agreement and Approval Order in accordance with the terms of the Approval Order and the GUC Trust Agreement, including specifically Section 5.3 thereof. As noted above, Section 5.3(a) is the provision requiring the GUC Trust to make the Catch-Up Distribution to the holders of allowed Term Loan Avoidance Action Claims. No additional Court authorization is generally required for the GUC Trust to make distributions in accordance with the provisions of the GUC Trust Agreement.[6]

13. To the extent any Court authorization is deemed required with respect to the Catch-up Distribution, it is already contained in the Approval Order. Paragraph 3 of the Approval Order expressly authorizes the GUC Trust to execute, deliver and perform the AAT Settlement Agreement, including its agreement to make the Catch-up Distribution, and paragraph 11 of the Approval Order expressly allows the Term Loan Avoidance Action Claims in favor of JPMorgan and other Term Lenders. As noted above, the Approval Order is no longer subject to appeal.

<u>The Late Claimant's Omnibus Objection Provides No Basis to Delay the Catch-up Distribution</u>

14. The Late Claimants' Omnibus Objection provides no basis to deny the Catch-up Distribution Motion. While the Late Claimants' Omnibus Objection facially objects to the Catch-

---

[6] As noted above and in the Catch-up Distribution Motion, the only reason for that Motion is to obtain authorization to make the distribution of the Catch-up Amount sooner than the time contemplated by Section 5.3 of the GUC Trust Agreement.

- 8 -

up Distribution Motion (in addition to the *pro rata* distributions on account of all Allowed General Unsecured Claims contemplated by the other two motions to which it objects), it sets forth no basis on which the Late Claimants could share in the Catch-up Distribution and offers no justification to defer the Catch-up Distribution to the holders of the Term Loan Avoidance Action Claims. There is no such basis or justification.

15. Indeed, paragraph 20 of the Late Claimants' Omnibus Objection notes that, as a result of the settlement of the Term Loan Avoidance Action, amounts held in reserve in excess of the Catch-up Amount should be taken into account in attempting to resolve New GM's objections to the pending settlement between the GUC Trust and the Late Claimants. Thus, at most, the Late Claimants' Omnibus Objection appears to assert rights only to the portion of the reserve in excess of the Catch-up Amount. Inasmuch as the excess becomes available for other claims only *after* the Catch-up Distribution of the Catch-up Amount to the holders of allowed Term Loan Avoidance Action Claims has been fully funded, there is no reason to delay the Catch-up Distribution.

<u>Conclusion</u>

16. To date, JPMorgan and other Term Lender defendants have received nothing on their $231 million of Term Loan Avoidance Action Claims that were expressly allowed pursuant to the AAT Settlement Agreement and this Court's Approval Order, while the holders of previously allowed general unsecured claims have received more than 29.6% of the amounts of their claims. Making the Catch-up Distribution so that the Term Lenders can receive the Catch-up Amount and, thus, equalize distributions among Allowed General Unsecured Claims, would carry out the intention and carefully-constructed provisions of the Plan, the Confirmation Order, the GUC Trust Agreement, the AAT Settlement Agreement and the Approval Order.

17. To its credit, the GUC Trust is seeking through the Catch-up Distribution Motion to carry out the letter and intention of the AAT Settlement Agreement by making the Catch-up Distribution without any unnecessary delay. JPMorgan urges the Court to grant the Catch-up

Distribution Motion to permit expedited distribution of the Catch-up Amount to JPMorgan and other Term Lenders in respect of their allowed Term Loan Avoidance Action Claims.

Dated:  August 5, 2019
New York, New York

Respectfully submitted,

WACHTELL, LIPTON, ROSEN & KATZ

By: /s/ Harold S. Novikoff
Harold S. Novikoff
Marc Wolinsky
51 West 52nd Street
New York, NY  10019
(212) 403-1249
Email:  HSNovikoff@wlrk.com
Email:  MWolinsky@wlrk.com

KELLEY DRYE & WARREN LLP

John M. Callagy
Nicholas J. Panarella
Martin A. Krolewski
101 Park Avenue
New York, NY  10178
(212) 808-7800
Email:  jcallagy@kelleydrye.com
Email:  npanarella@kelleydrye.com
Email:  mkrolewski@kelleydrye.com