**BINDER & SCHWARTZ LLP**
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 510-7008

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                                              Debtors.

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

------------------------------------------------------------------------x
MOTORS LIQUIDATION COMPANY AVOIDANCE
ACTION TRUST, by and through the Wilmington Trust
Company, solely in its capacity as Trust Administrator and
Trustee,

                                              Plaintiff,

                      against

JPMORGAN CHASE BANK, N.A., *et al.*,

                                              Defendants.

Adversary Proceeding

Case No. 09-00504 (MG)

------------------------------------------------------------------------x

**MOTORS LIQUIDATION COMPANY
AVOIDANCE ACTION TRUST'S OMNIBUS RESPONSE TO
OBJECTIONS TO MOTION FOR ENTRY OF AN ORDER APPROVING THE
<u>DISTRIBUTION PLAN TO THE AVOIDANCE ACTION TRUST'S BENEFICIARIES</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    I.    THE DISTRIBUTION PLAN COMPLIES WITH THE AAT AGREEMENT AND THE PLAN AND SHOULD BE APPROVED ................... 3

    II.   NEW GM LACKS STANDING TO OBJECT TO THE AAT DISTRIBUTION MOTION ................................................................................ 7

    III.  THE AAT IS NOT A PARTY TO THE PROPOSED SETTLEMENT BETWEEN THE GUC TRUST AND THE ECONOMIC LOSS PLAINTIFFS AND HAS NEVER TAKEN "INCONSISTENT POSITIONS" ............................ 9

CONCLUSION .................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Findley v. Blinken (In re Joint E. & S. Dists. Asbestos Litig.)*,
 120 B.R. 648 (E.D.N.Y. & S.D.N.Y. 1990) ........................................................................... 7

*In re Ballard*,
 502 B.R. 311 (Bankr. S.D. Ohio 2013) ................................................................................. 7

*In re Motors Liquidation Co.*,
 580 B.R. 319 (Bankr. S.D.N.Y. 2018) .................................................................................. 8

*In re Motors Liquidation Co.*,
 591 B.R. 501 (Bankr. S.D.N.Y. 2018) .................................................................................. 5

*SWE & C Liquidating Trust v. Saudi Arabian Oil Co. (In re Stone & Webster, Inc.)*,
 373 B.R. 353 (Bankr. D. Del. 2007) ..................................................................................... 9

TO:  THE HONORABLE MARTIN GLENN
     UNITED STATES BANKRUPTCY JUDGE

In further support of its motion for approval of the plan for distributing proceeds to its beneficiaries (the "**AAT Distribution Motion**"), the Motors Liquidation Company Avoidance Action Trust (the "**AAT**") submits this omnibus response to the objections filed by (i) the Economic Loss Plaintiffs (ECF Doc. No. 14571); and (ii) General Motors LLC ("**New GM**") (ECF Doc. No. 14572).[1]

## PRELIMINARY STATEMENT

1. The AAT's sole objectives are to maximize the value of the Term Loan Litigation and then to distribute expeditiously the litigation proceeds to its beneficiaries. The AAT achieved the former objective when this Court approved the Global Settlement Agreement and the AAT received the $231 million settlement payment. Now the AAT seeks to achieve the latter objective and thus to conclude its work.

2. The objections filed by the Economic Loss Plaintiffs and New GM are misguided and seek to interfere with the AAT's fulfillment of its mandate under the Plan and the AAT Agreement. The AAT's proposed distribution plan is fully consistent with its governing trust agreement and the Plan and would result in prompt distributions to the AAT's beneficiaries. The indefinite and likely lengthy delay of the AAT's distributions sought by the Economic Loss Plaintiffs will be to the detriment of the AAT's unsecured creditor beneficiaries, and thus their objection should be overruled.

3. The AAT's beneficiaries are the DIP Lenders, who are entitled to 30% of the distributable proceeds, and the holders of Allowed General Unsecured Claims (as defined in the

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meaning set forth in the AAT Distribution Motion (ECF Doc. No. 14552).

AAT Agreement), who are entitled to 70% of the distributable proceeds plus the $13.7 million that the AAT has deposited into a segregated account.  The Economic Loss Plaintiffs do not object to the proposed distribution to the DIP Lenders, and it is the AAT's understanding that no party objects to the prompt distribution of the DIP Lenders' share of distributable proceeds.  With respect to the proposed distribution to holders of Allowed General Unsecured Claims, the AAT's distribution plan would result in the prompt distribution of proceeds to its current beneficiaries, as required by the AAT Agreement.  The Economic Loss Plaintiffs do not argue— and would have no basis to argue—that they are beneficiaries of the AAT.  Accordingly, consistent with its obligations under the AAT Agreement and subject to the Court's approval, the AAT is required to proceed with the distribution plan it has proposed.

4. Finally, New GM has no standing to be heard with respect to the AAT Distribution Motion and, in any event, its objection is without merit.  New GM lacks standing because the AAT's proposed distribution to its beneficiaries will have no economic impact whatsoever on any interest of New GM.  The objection is without merit because in attempting to manufacture a purported contradiction New GM deliberately conflates the AAT and the GUC Trust—two distinct trusts—referring to them both without differentiation as Wilmington Trust.  As explained in detail below, the AAT has never taken a position that is any way at odds with positions taken in its distribution motion.

# ARGUMENT

## I. THE DISTRIBUTION PLAN COMPLIES WITH THE AAT AGREEMENT AND THE PLAN AND SHOULD BE APPROVED

5. Pursuant to the Plan, the AAT was created for the "sole purpose" of maximizing the value of its only asset—the Term Loan Litigation—and distributing the proceeds to its beneficiaries. AAT Agreement ¶ E & § 2.2.[2]

6. The AAT has now maximized the value of the Term Loan Litigation by entering into the Global Settlement Agreement, which was approved by this Court on June 13, 2019, and receiving the $231 million settlement payment in exchange for dismissal of the Term Loan Litigation.

7. The AAT Distribution Motion seeks to fulfill the mandate of the AAT Agreement, which requires that the AAT distribute the settlement proceeds to its beneficiaries "in an expeditious but orderly manner and subject to the provisions of the Plan, the Confirmation Order and [the AAT] Agreement." AAT Agreement § 2.5.

8. The AAT's beneficiaries are the DIP Lenders, who are entitled to 30% of the distributable proceeds, and the holders of Allowed General Unsecured Claims (as defined in the AAT Agreement), who are entitled to 70% of the proceeds plus the $13.7 million that the AAT has placed into a segregated account.

9. The objections filed by the Economic Loss Plaintiffs and New GM solely relate to the portion of the AAT's distribution of proceeds to the holders of Allowed General Unsecured Claims. There have been no objections to the distribution of 30% of the proceeds to the DIP Lenders, and there is no reason to delay such distribution.

---

[2] The AAT Agreement is attached as Exhibit A to the AAT Distribution Motion.

3

10.  With respect to the AAT's proposed distribution of proceeds to holders of Allowed General Unsecured Claims, the AAT may only make distributions to creditors that meet the definitions set forth in the AAT Agreement.

11.  The AAT Agreement provides that to identify the population of holders of General Unsecured Claims that are entitled to participate in the initial distribution, the AAT Trust Administrator must first establish a record date (defined in the AAT Agreement as the "**Initial GUC Record Date**").³  AAT Agreement § 5.2(a).  The Initial GUC Record Date must be a date *after* the AAT has repaid its litigation funding costs (i.e., the DIP Lender Advances, the CE Capital Providers' Entitlement, and the LW Capital Provider's Entitlement) and funded the Segregated Account, but *before* the first distribution.  While the AAT has repaid its litigation funders and paid $13.7 million into the segregated account, the Initial GUC Record Date has not been established by the AAT Trust Administrator pending approval of the AAT Distribution Motion by this Court.  After Court approval of the Distribution Plan, the Initial GUC Record Date will be the last day of the calendar quarter before the initial distribution date.  *Id.*

12.  According to the AAT Agreement, it is the holders of General Unsecured Claims that are allowed as of the Initial GUC Record Date that are entitled to participate in the AAT's first distribution of proceeds.  AAT Agreement § 5.2(a).  This includes: (i) holders of unsecured claims that were allowed as of March 29, 2011; (ii) holders of Resolved Allowed General Unsecured Claims that were disputed as of March 29, 2011 but have been resolved prior to the Initial GUC Record Date; and (iii) Term Lenders to the extent of any payment to the AAT.  GUC Trust Agreement ¶ F (Background), § 1.1(ddd).

---

³ New GM is incorrect that the Initial GUC Record Date "is synonymous with the 'Distribution Record Date' set forth in the Plan, *i.e.*, March 29, 2011." New GM Objection ¶ 14.

4

13. In addition, if there are Disputed General Unsecured Claims (as that term is defined in the Plan) at the time of the initial AAT distribution, then the AAT Trust Administrator is required to retain a reserve of the proceeds that would be distributable to the holders of Disputed General Unsecured Claims if such claims were to be allowed. AAT Agreement § 5.5(a); *see also id.* § 1.1(kk).

14. As of today, there are no Disputed General Unsecured Claims because all General Unsecured Claims have been resolved in accordance with the claim resolution procedures set forth in the Plan. The interests of the Economic Loss Plaintiffs do not fit within the definition of Disputed General Unsecured Claims in the Plan because, to date, no proofs of claim have been filed on their behalf. As this Court previously held in the context of the motion to approve the Settlement between the Economic Loss Plaintiffs and the Motors Liquidation Company GUC Trust (the "**GUC Trust**"):

> It is therefore clear that in any estimation proceeding, the Court would need to consider whether the "claims" the Movants ask the Court to settle and estimate are even capable of being allowed—and under applicable bankruptcy law, the Court cannot do so here if claims are unfiled or if classes are not certified because the Bankruptcy Code and Rules require that as a prerequisite to participating in a distribution by having an allowed claim, creditors must file a proof of claim.

*See In re Motors Liquidation Co.*, 591 B.R. 501, 530 (Bankr. S.D.N.Y. 2018). *See also* Bankr. Dkt. No. 9941 (Plan § 1.54) ("For the avoidance of doubt, if no proof of Claim has been filed by the applicable deadline and the Claim (other than an Asbestos Personal Injury Claim) has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated, such Claim shall not be valid and shall be disregarded.").

15. Although the Economic Loss Plaintiffs have sought leave to file late claims, to date this Court has not adjudicated whether the filing of such late claims will be authorized, and a class has not been certified. Accordingly, under the terms of the Plan and the AAT Agreement,

5

they are not holders of Allowed General Unsecured Claims entitled to a distribution; nor are they holders of Disputed General Unsecured Claims that would require the AAT to reserve funds in anticipation of the allowance of such claims.

16. Thus, it is not the AAT's position—as New GM contends—that the Economic Loss Plaintiffs "are not capable of holding 'Allowed General Unsecured Claims' and are equally not capable of being trust beneficiaries." New GM Objection ¶ 1. The AAT has never taken any position on these issues and does not do so here. Rather, it is the AAT's position that the AAT Trust Administrator is required to "make timely distributions" and "not unduly prolong the existence of the Trust," AAT Agreement § 2.5, and since the Economic Loss Plaintiffs are not holders of Allowed or Disputed General Unsecured Claims, there is no basis under the Plan or the AAT Agreement for the AAT to refrain from making a distribution to its beneficiaries.

17. What the Economic Loss Plaintiffs seek is to delay distributions to holders of Allowed General Unsecured Claims to protect a hypothetical future "opportunity to pursue a recovery" from the AAT. *See* Economic Loss Plaintiffs' Objection ¶ 17. Any ultimate determination as to whether the Economic Loss Plaintiffs have a claim to any proceeds of the AAT turns on the outcome of protracted and hotly contested litigation to which the AAT is not a party.

18. Specifically, the Economic Loss Plaintiffs have executed a settlement agreement with the GUC Trust in which the Economic Loss Plaintiffs have waived any right to recover from the AAT. What the Economic Loss Plaintiffs seek is to delay distributions to holders of Allowed General Unsecured Claims during what could be a protracted litigation while the Economic Loss Plaintiffs seek confirmation of an agreement that provides that they have no entitlement to a distribution from the AAT. They seek this delay so that, in the event that their

6

settlement is not approved, they may then go forward with a motion seeking leave to file late claims, a process which would also be the subject of extensive litigation. Then, assuming that the Economic Loss Plaintiffs' were permitted to file claims in the hypothetical scenario where the settlement is not approved, their claims would have to be settled and estimated.

19. It would be unwarranted to withhold distributions to the AAT's beneficiaries where the only circumstances in which the Economic Loss Plaintiffs could conceivably seek a recovery from the AAT is if their settlement fails and a lengthy and complicated litigation involving the interests of the Economic Loss Plaintiffs results in a determination that they may seek to recover from the AAT. Such an open-ended delay would be detrimental to the AAT beneficiaries who could be required to wait years for their distribution on account of non-beneficiaries, whose interests are not contemplated by the Plan or the AAT Agreement.[4]

## II.    NEW GM LACKS STANDING TO OBJECT TO THE AAT DISTRIBUTION MOTION

20. New GM submitted an "objection and reservation of rights" in opposition to the AAT Distribution Motion that asks this Court to (i) approve the AAT Distribution Motion on the express basis that the Economic Loss Plaintiffs are not legally capable of holding Allowed General Unsecured Claims; or, in the alternative (ii) deny the Distribution Motion and require

---

[4] The Economic Loss Plaintiffs cite two cases in support of their contention that the AAT's distribution should be delayed indefinitely until their litigation is fully resolved. *See* Economic Loss Plaintiffs' Objection ¶ 18. Neither case offers a basis for the relief that they seek. *Findley v. Blinken (In re Joint E. & S. Dists. Asbestos Litig.)*, 120 B.R. 648 (E.D.N.Y. & S.D.N.Y. 1990), involved the reorganization of the nation's leading producer of asbestos and the creation of a personal injury settlement trust as part of the plan, which was the exclusive source of recovery for all asbestos-related claims. The courts instituted a mandatory, national class action and enjoined all pending cases until the class was certified to ensure that the trust didn't distribute proceeds in an inequitable or inconsistent manner. Here, the Economic Loss Plaintiffs are not similarly situated to the AAT beneficiaries, the AAT was not created for their exclusive benefit, and their claim to proceeds of the AAT is remote, at best. *In re Ballard*, 502 B.R. 311 (Bankr. S.D. Ohio 2013), is irrelevant because it involved a motion by a Chapter 7 debtor for contempt and for damages arising out of violation of an automatic stay by the Internal Revenue Service.

that the AAT establish a reserve for the Economic Loss Plaintiffs. *See* New GM Objection ¶ 23. New GM's objection should be disregarded or overruled because New GM lacks standing to object to the AAT's Distribution Motion and seek the relief sought by the objection.

21.   In order to be heard on its objection, New GM has the burden of proving (i) prudential standing, (ii) constitutional standing, and (iii) standing pursuant to Section 1109 of the Bankruptcy Code. *See In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018). Prudential standing "bars litigants from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury themselves." *Id.* (internal quotation marks omitted). If a party establishes prudential standing, it then must demonstrate constitutional standing, which requires a showing of "an invasion of a legally protected interest that is concrete and particularized and actual or imminent . . .." *Id.* (internal quotation marks omitted). Finally, to establish party-in-interest standing under Section 1109, a party must have a direct stake in the proceeding and be a creditor of the debtor or able to assert an equitable claim against the estate. *Id.* at 342.

22.   New GM lacks prudential, constitutional, and bankruptcy code standing. New GM is not a beneficiary of the AAT, is not party to the AAT Agreement, and is not entitled to any distributions from the AAT. Further, New GM does not, nor may it, assert the rights of other parties. On these facts alone, New GM cannot demonstrate that it has a direct interest in the AAT Distribution Motion sufficient to confer standing. *Cf. In re Motors Liquidation Co.*, 580 B.R. at 348-51 (holding that New GM did not have standing to be heard on issue of whether the GUC Trust and Economic Loss Plaintiffs entered into a binding settlement agreement, even if New GM had a direct and substantial economic interest in the agreement).

8

23. Here, there is no aspect of the AAT Distribution Motion that could have any economic impact on New GM.[5] Without any financial interest in the outcome of this Court's approval of the Distribution Motion, New GM lacks standing to be heard. *See, e.g.*, *SWE & C Liquidating Trust v. Saudi Arabian Oil Co. (In re Stone & Webster, Inc.)*, 373 B.R. 353, 362 (Bankr. D. Del. 2007) (purchaser of debtor's assets who had no right to proceeds of trust's claims lacked standing to intervene in adversary proceeding), *aff'd,* 2008 WL 4890896 (D. Del. Nov. 12, 2008).

### III. THE AAT IS NOT A PARTY TO THE PROPOSED SETTLEMENT BETWEEN THE GUC TRUST AND THE ECONOMIC LOSS PLAINTIFFS AND HAS NEVER TAKEN "INCONSISTENT POSITIONS"

24. Even if the Court were to consider New GM's objection regarding the purported inconsistent legal positions taken by "Wilmington Trust," the objection suffers from several fatal flaws.

25. *First*, New GM's objection blurs the distinction between two distinct trusts (the AAT and the GUC Trust) by defining "Wilmington Trust" to mean Wilmington Trust Company in its capacity as the Trust Administrator for the AAT (New GM Objection at 1), and then using that term interchangeably and without differentiation to refer to both the AAT and the GUC Trust. The Plan created the AAT as a distinct trust from the GUC Trust. *Compare* Plan § 6.2 (addressing the creation of the GUC Trust) *with* § 6.5 (addressing the creation of the AAT). The

---

[5] Notably, New GM did not object to the AAT's motion to approve the Global Settlement Agreement with the Term Lenders, even though the Global Settlement Agreement increased the total amount of allowed unsecured claims in the amount of the Term Lenders' $231 million claim under Section 502(h) of the Bankruptcy Code. The Court approved the Global Settlement Agreement on June 13, 2019. In contrast to that motion which brought the total amount of allowed claims closer to triggering the Plan's "accordion feature," the AAT Distribution Motion has no impact on the amount of Allowed General Unsecured Claims and thus New GM has no interest at stake.

9

fact that Wilmington Trust Company is authorized to act for both trusts does not eliminate the distinction between the two trusts.

26. *Second*, the AAT is not a party to the settlement between the Economic Loss Plaintiffs and has never taken a position about any issues concerning that settlement or the administration of the GUC Trust.

27. *Third*, it is not the AAT's role to allow or disallow claims, as it plays no role in the claims resolution process. Following Plan Confirmation, claims allowance became the exclusive domain of the GUC Trust. *See* GUC Trust Agreement § 5.1(a) ("objections to, and requests for estimation of Disputed General Unsecured Claims against the Debtors may be interposed and prosecuted only by the GUC Trust Administrator").[6]

28. *Fourth*, given that it has no role in the claims resolution process, the AAT has never taken a position as to whether or not the Economic Loss Plaintiffs qualify as holders of Allowed or Disputed General Unsecured Claims for purposes of making a distribution—it relies on the GUC Trust to provide such information:

> The Trust Administrator shall communicate with the GUC Trust Administrator to obtain such information regarding, as of a given date, (A) the holders and amounts of General Unsecured Claims, Disputed General Unsecured Claims, Unresolved Term Loan Avoidance Action Claims, Unresolved Other Avoidance Action Claims and Resolved Allowed General Unsecured Claims, (B) the respective Maximum Amounts of all Disputed General Unsecured Claims, Unresolved Term Loan Avoidance Action Claims and Unresolved Other Avoidance Action Claims, (C) the Current Total Amount, (D) the Aggregate Maximum Amount, (E) any components of the foregoing and (E) [sic] any other information within the custody or control of the GUC Trust Administrator which shall be necessary or desirable in order for the Trust Administrator to timely make

---

[6] A copy of the GUC Trust Agreement is attached as Exhibit D to the AAT Distribution Motion.

10

any calculation or determination hereunder to identify and make distributions to the GUC Beneficiaries[7] . . .

AAT Agreement § 8.5.

29. Accordingly, New GM's objections to the AAT Distribution Motion are without merit and should be overruled by this Court.

## CONCLUSION

WHEREFORE, the AAT respectfully requests that the Court enter an order substantially in the form of the Distribution Order attached as Exhibit B to its motion: (i) approving the AAT's plan for distributing proceeds to its beneficiaries; (ii) approving the Notice Form; (iii) authorizing the AAT to take all other actions necessary or appropriate to effectuate the distribution to its beneficiaries; (iv) overruling the objections asserted by New GM and the Economic Loss Plaintiffs; and (v) granting such other and further relief as the Court deems necessary.

Dated: New York, New York
August 9, 2019

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

/s/ Eric B. Fisher
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 510-7008

*Attorneys for the Motors Liquidation Company Avoidance Action Trust*

---

[7] "GUC Beneficiaries" are defined as "the holders of Allowed General Unsecured Claims or Units received in respect of such claims." AAT Agreement § 1.1 (xx).

11