Hearing Date: August 12, 2019 at 10:00 A.M. EST

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Daniel H. Golden
Mitchell P. Hurley
Naomi Moss

*Attorneys for the Participating Unitholders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*,<br>f/k/a General Motors Corp., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (MG)<br><br>(Jointly Administered) |

**THE PARTICIPATING UNITHOLDERS' REPLY TO OBJECTIONS TO THE MOTION OF WILMINGTON TRUST COMPANY, AS GUC TRUST ADMINISTRATOR, FOR AN ORDER (A) AUTHORIZING THE EXPEDITED PAYMENT OF EXCESS GUC DISTRIBUTABLE ASSETS PURSUANT TO SECTION 5.4 OF THE GUC TRUST AGREEMENT, AND (B) APPROVING SUCH DISTRIBUTION AS AN APPROPRIATE EXERCISE OF THE GUC TRUST ADMINISTRATOR'S RIGHTS, POWERS AND/OR PRIVILEGES PURSUANT TO SECTION 8.1(E) OF THE GUC TRUST AGREEMENT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT..................................................................................................1

ARGUMENT............................................................................................................................4

    I.      New GM Does Not Have Standing to Be Heard in Opposition to the
           Distribution Motion ............................................................................................4

          A.      New GM Lacks Prudential Standing ...........................................................4

          B.      New GM Lacks Constitutional Standing......................................................6

          C.      New GM Lacks "Party in Interest" Standing...............................................7

    II.     Economic Loss Plaintiffs Do Not Have Allowed or Disputed General
           Unsecured Claims, and Therefore No Reserve for their Purported Claims
           is Required ..........................................................................................................8

    III.    The Adjustment Shares Process Provides a Potential Alternative Means of
           Recovery for the Economic Loss Plaintiffs ..........................................................10

    IV.    The GUC Trust's Position on the Status of the Economic Loss Plaintiffs'
           Claims is Entirely Consistent...............................................................................11

    V.     The Unitholders will be Prejudiced if Distributions are not Made ........................12

CONCLUSION........................................................................................................................14

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..................................................................................................6

*In re Ionosphere Clubs, Inc.*,
    101 B.R. 844 (Bankr. S.D.N.Y. 1989)......................................................................8

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
    843 F.2d 636 (2d Cir. 1988)................................................................................. 4-5

*In re Lehman Bros. Holdings Inc.*,
    11civ.3760, 2012 WL 1057952 (S.D.N.Y. Mar. 26, 2012) .....................................7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..................................................................................................6

*In re Motors Liquidation Co.*,
    539 B.R. 677 (Bankr. S.D.N.Y. 2015)....................................................3-4, 13-14

*In re Motors Liquidation Co.*,
    580 B.R. 319 (Bankr. S.D.N.Y. 2018) ................................................. 2, 4, 6-8

*Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
    430 B.R. 65 (S.D.N.Y. 2010)....................................................................................7

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..............................................................................................6

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................................6

**Statutes**

11 U.S.C. § 1109.............................................................................................................7

Certain unaffiliated holders (the "**Participating Unitholders**") of more than 65 percent of

the beneficial units of the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), by and

through their undersigned counsel, hereby submit this reply (the "**Reply**") to the Objections[1] to

the *Motion of Wilmington Trust Company, as GUC Trust Administrator, for an Order (A)*

*Authorizing the Expedited Payment of Excess GUC Distributable Assets Pursuant to Section 5.4*

*of the GUC Trust Agreement, and (B) Approving Such Distribution as an Appropriate Exercise of*

*the GUC Trust Administrator's Rights, Powers and/or Privileges Pursuant to Section 8.1(e) of the*

*GUC Trust Agreement* [Docket No. 14565] (the "**Distribution Motion**").  In support of this Reply,

the Participating Unitholders respectfully state as follows:[2]

## PRELIMINARY STATEMENT[3]

1.      Although styled as an objection to the Distribution Motion, the New GM Objection

does not actually challenge the distribution that the GUC Trust now proposes to make.  Instead,

New GM seeks yet again to attack the proposed settlement between the GUC Trust and the

Economic Loss Plaintiffs (the "**Settlement**").  New GM will have the opportunity to press its

objections to the Settlement when a hearing on approval of the Settlement is scheduled, but that

---

[1] On July 29, 2019, the Economic Loss Plaintiffs (as defined in the Economic Loss Plaintiffs Objection) filed *The Economic Loss Plaintiffs' Omnibus Objection to (i) Motion of Motors Liquidation Company Avoidance Action Trust for an Order Approving the Distribution Plan; (ii) Motion of Wilmington Trust Company as GUC Trust Administrator, for an Order Authorizing the Expedited Payment of Excess GUC Distributable Assets; and (iii) Motion of Wilmington Trust Company as GUC Trust Administrator, for an Order Authorizing the Expedited Distribution to Holders of 502(h) Claims* [Docket No. 14571] (the "**Economic Loss Plaintiffs Objection**").  On August 5, 2019, New GM filed the *Objection of General Motors LLC to GUC Trust Distribution Motion* [Docket No. 14586] (the "**New GM Objection**" and together with the Economic Loss Plaintiffs Objection, the "**Objections**").

[2] On July 30, 2019, the Participating Unitholders filed *The Participating Unitholders Joinder to the Motion of Wilmington Trust Company, as GUC Trust Administrator, for an Order (A) Authorizing the Expedited Payment of Excess GUC Distributable Assets Pursuant to Section 5.4 of the GUC Trust Agreement, and (B) Approving Such Distribution as an Appropriate Exercise of the GUC Trust Administrator's Rights, Powers and/or Privileges Pursuant to Section 8.1(e) of the GUC Trust Agreement* [Docket No. 14576] joining in the relief requested by the Distribution Motion.

[3] Capitalized terms used but otherwise not defined in this Reply shall have the meanings ascribed to such terms in the *Debtors' Second Amended Joint Chapter 11 Plan*, dated as of March 18, 2011 [Docket No. 9836] (the "**Plan**") or the Distribution Motion, as applicable.

time is not now.  As such, and for the reasons set forth herein, the Court should overrule the New

GM Objection.

2.    *First*, New GM has no standing to object to the Distribution Motion, and should

not be permitted to interject itself into this matter.  As the Court held in its *Memorandum Opinion*

*and Order Regarding Motion to Enforce the Settlement Agreement By and Among the Signatory*

*Plaintiffs and the GUC Trust* dated January 18, 2018, the burden falls squarely on New GM to

demonstrate (i) prudential standing, (ii) constitutional standing, and (iii) Bankruptcy Code section

1109 standing.  *See In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018).  New

GM has not shown, and cannot show, that any of the three standing requirements have been met

here, much less all three.

3.    *Second*, the GUC Trust was established under Old GM's confirmed Plan and the

accompanying *Motors Liquidation Company GUC Trust Agreement* (as subsequently amended

and restated, the "**GUC Trust Agreement**") almost five years prior to the recalls.  The Court

confirmed the Plan, including the pool of assets to be distributed to holders of Allowed General

Unsecured Claims, based on the claims against Old GM that were identified at that time.  Likewise,

when calculating whether the GUC Trust can make an Excess Distribution, the reserve provisions

in the Plan and the GUC Trust Agreement apply only to claims that were Disputed as of the

Effective Date (March 31, 2011) and any Term Loan Avoidance Action 502(h) Claim. *See* GUC

Trust Agreement § 1.1 (aa).  The putative claims of the Economic Loss Plaintiffs were not even

identified, much less Disputed, by the Effective Date, and therefore no reserve for those claims is

required.

4.    Contrary to New GM's assertion in the New GM Objection, the GUC Trust does

not take, and has never taken, novel or inconsistent positions on the status of the Economic Loss

Plaintiffs' claims.  Rather, in the Distribution Motion, the GUC Trust simply (and correctly) sets

forth the types of claims that are entitled to a distribution.  Distribution Motion ¶ 9.  By definition,

the Economic Loss Plaintiffs' putative claims do not fall within any of these qualifying categories

and are not entitled to a reserve, and thus there is no justification for any further delay of

distributions to the Unitholders.  To the extent New GM objects to the Settlement because it could

result in Allowed General Unsecured Claims for the Economic Loss Plaintiffs in the future, New

GM should raise its objection – an objection that the Participating Unitholders submit is misguided

– in connection with approval of the Settlement, not in opposition to the instant Distribution

Motion.

5.     Significantly, the proposed distribution does not extinguish the Economic Loss

Plaintiffs' ability to recover on their putative claims.  In recognition of the fact that there could be

unanticipated liabilities, including late-filed claims, or that the total amount of Allowed General

Unsecured Claims could be greater than anticipated, the Plan contains a built-in mechanism that

allows for the possibility of late filed claimants receiving a recovery on their claims:  the

Adjustment Shares mechanism.  Thus, to the extent the Court does ultimately determine that the

Economic Loss Plaintiffs have Allowed General Unsecured Claims, the Plan offers them a

potential recovery through the Adjustment Shares mechanism.  The New GM Objection appears

to be just one more attempt by New GM to side-step its contractual obligation to honor the

bargained-for Adjustment Shares mechanism.

6.     Finally, as Judge Gerber previously held, interfering with Unitholder distributions

is "serious business."  *See In re Motors Liquidation Co.*, 539 B.R. 677, 683 (Bankr. S.D.N.Y. 2015)

(the "**Stay Decision**").  The Unitholders would suffer material harm from further delay of GUC

Trust distributions, due to the likelihood that Unitholders will obtain greater yields on the funds to

3

which they are entitled if the distributions are not delayed, as the Court observed in the Stay Decision. *Id.* at 684. It should not be lost on the Court that the Economic Loss Plaintiffs did not post a bond following the Stay Decision nor did the Economic Loss Plaintiffs or New GM oppose or seek to stay the most recent $112 million distribution that took place in November 2016.

## ARGUMENT

I. **New GM Does Not Have Standing to Be Heard in Opposition to the Distribution Motion**

7. As this Court held the last time New GM attempted to interfere in a dispute in which it had no standing, "New GM, the party for which standing is at issue, has the burden of demonstrating (i) prudential standing, (ii) constitutional standing, and (iii) Bankruptcy Code Section 1109 standing." *In re Motors Liquidation Co.*, 580 B.R. at 340 (citation omitted). "All three standing requirements must be met to have standing." *Id.* (citation omitted). Here, New GM cannot demonstrate any of the three standing requirements.

A. **New GM Lacks Prudential Standing**

8. A party seeking to appear in federal court must demonstrate prudential standing. *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 644 (2d Cir. 1988) ("The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself."). "The doctrine, self-imposed by federal courts, bars litigants 'from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves.'" *In re Motors Liquidation Co.*, 580 B.R. at 340 (citing *Kane*, 843 F.2d at 643).

9. New GM cannot demonstrate prudential standing because it has not pointed – and

4

cannot point – to any actual harm it will suffer if the GUC Trust makes an expedited distribution to its Unitholders.  New GM is not a GUC Trust Beneficiary or Unitholder, and therefore has no possible interest in the current GUC Trust assets that could be prejudiced by an expedited distribution.  Apparently acknowledging this lack of harm, New GM admits that the purpose of its objection is *not* to prevent the GUC Trust's proposed distribution, but to "prevent Wilmington Trust from taking contrary legal positions on the same issues with respect to the Economic Loss Plaintiffs in connection with the Settlement" – "contrary legal positions" which, as explained in Section IV below, the GUC Trust has not taken.  New GM Objection ¶ 1.  In other words, the supposed "injury" New GM seeks to rectify through its objection – the possibility that the GUC Trust may take a position adverse to New GM's interests relating to approval of the Settlement – has not occurred, and involves an entirely distinct and separate dispute.  A desire to limit the arguments an opponent may make in another dispute is no basis for prudential standing.

10.     New GM also claims that it has an "economic interest in ensuring that the Economic Loss Plaintiffs, to the extent they have valid claims, receiv[e] the maximum possible amount of distributions from the GUC Trust."  New GM Objection ¶ 53.  This is exactly the type of assertion of "the constitutional and statutory rights of others" that the prudential standing doctrine is designed to prevent.  *Kane*, 843 F.2d at 643.  To the extent the Economic Loss Plaintiffs have an interest in "receiving the maximum possible amount of distributions from the GUC Trust," the proper parties to assert that interest are the Economic Loss Plaintiffs, not New GM.

11.     The only financial interest of its own that New GM points to is the possibility that, if the Settlement is approved, the Economic Loss Plaintiffs may ultimately receive an Allowed General Unsecured Claim in an amount sufficient to trigger New GM's obligation to issue Adjustment Shares.  New GM Objection ¶ 53.  In other words, the sole interest New GM identifies

is "in the final outcome or approval of the Settlement Agreement" and "is substantially attenuated" from the present issue of whether or not the GUC Trust may make expedited distributions to its beneficiaries. *In re Motors Liquidation Co.*, 580 B.R. at 349 (holding that New GM lacked prudential standing to appear in connection with Economic Loss Plaintiffs' attempt to enforce putative agreement with the GUC Trust).

### B.   New GM Lacks Constitutional Standing

12.    "Once a party has shown that it has prudential standing, it then must prove that it has constitutional standing. Specifically, under the case or controversy requirement of Article III of the United States Constitution, a party must have a personal stake in the outcome of the controversy to have standing." *In re Motors Liquidation Co.*, 580 B.R. at 341 (internal quotation marks omitted) (citations omitted).  Similar to the prudential standing requirements, "[a] party can only assert its own legal rights and cannot assert the rights of third parties." *Id.*  Furthermore, "[t]he Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

13.    To prove constitutional standing, a party must establish "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  Importantly, a party "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm," as such a claim is "too speculative to satisfy the well-established requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401-02 (2013) (internal quotation marks omitted).

14.     For the same reasons it cannot demonstrate prudential standing, New GM cannot demonstrate constitutional standing.  Again, as explained above, New GM asserts rights that, if they exist at all, belong to the Economic Loss Plaintiffs, which the constitution bars.  *See In re Motors Liquidating Co.*, 580 B.R. at 349 (holding that "a party can only assert its own legal rights, not the rights of third-parties" and finding that New GM lacks constitutional standing because it is "attempting to assert the legal rights of the GUC Trust") (internal citation omitted).

15.     Furthermore, the only injuries to itself that New GM points to are speculative. Specifically, New GM is concerned that:  (1) in connection with approval of the Settlement, the GUC Trust may take positions that New GM believes are contrary to New GM's interests and inconsistent with the GUC Trust's current positions, and (2) if the Settlement is ultimately approved and the Economic Loss Plaintiffs' claims are Allowed, New GM may be obligated to issue them Adjustment Shares.  Both of these are "conjectural" and "hypothetical" harms that are properly addressed, if at all, to the extent they arise in connection with the Settlement and its approval.

C.     **New GM Lacks "Party in Interest" Standing**

16.     Lastly, if both prudential and constitutional standing are met, the Bankruptcy Code separately requires "party in interest" standing under section 1109.  *See* 11 U.S.C. § 1109; *In re Lehman Bros. Holdings Inc.*, 11civ.3760, 2012 WL 1057952, at *3 (S.D.N.Y. Mar. 26, 2012) (explaining that "[s]ection 1109(b) creates an independent standing hurdle for parties wishing to appear or be heard in bankruptcy proceedings") (internal citation omitted); *Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430 B.R. 65, 92 (S.D.N.Y. 2010) ("[S]ection 1109(b) of the Bankruptcy Code does not satisfy or replace the constitutional and prudential limitations on standing. Rather, a party must establish both.") (citation omitted).  To establish party

in interest standing under section 1109, a proposed participant must either be a party enumerated in the statute or: (1) have a "direct" stake in the proceeding and (2) "be a creditor of a debtor . . . or be able to assert an equitable claim against the estate." *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 848-49 (Bankr. S.D.N.Y. 1989) (holding that "one purpose of the Code is to convert the bankrupt's estate into cash and distribute it among creditors. The term 'party in interest' should be interpreted in light of this purpose.") (internal citations omitted).

17.     New GM is not a party in interest under the Bankruptcy Code.  As this Court has previously acknowledged, "New GM is no longer a creditor, as its proof of claim has been withdrawn." *In re Motors Liquidating Co.*, 580 B.R. at 350.  Furthermore, New GM has no direct stake in these proceedings, as its only "personal stake," if any, lies in challenging approval of the Settlement and any asserted claim by the Economic Loss Plaintiffs, not in preventing the GUC Trust's expedited distributions.  *Cf. id.* at 350-51 (New GM was not a "party in interest" because its interest, if any, was in challenging the approval of a settlement agreement that may affect its rights, not in the threshold issue of whether a valid settlement agreement was formed).

18.     Because, as in the past, New GM has failed to meet any of the standing requirements that would allow it to interfere in the GUC Trust's relationship with its beneficiaries, the New GM Objection must be denied on standing grounds.

**II.     Economic Loss Plaintiffs Do Not Have Allowed or Disputed General Unsecured Claims, and Therefore No Reserve for their Purported Claims is Required**

19.     Even assuming that New GM had standing – and it does not – New GM's Objection fails on the merits, as it is based on a fundamental misunderstanding of the requirements the GUC Trust Agreement imposes with respect to reserves.

20.     As an initial matter, it is clear that the Economic Loss Plaintiffs do not currently hold Allowed General Unsecured Claims that could be satisfied by the current assets of the GUC

8

Trust.  The Plan provides that the holders of Allowed General Unsecured Claims ***as of the Initial***

***Distribution Record Date of the Plan*** (defined as the Plan's Effective Date) receive distributions

pursuant to the Plan "[a]s soon as is reasonably practicable after the Effective Date."  Plan § 4.3.

The Plan went effective on March 31, 2011.  It is undisputed that the Economic Loss Plaintiffs'

claims were not Allowed as of that date.

21.     Furthermore, the Economic Loss Plaintiffs also do not currently hold *Disputed*

General Unsecured Claims, as that term is defined in the Plan and the GUC Trust Agreement.  The

Plan provides very specific guidance as to what kinds of claims constitute "Disputed" claims.  With

respect to claims for which no proof of Claim was filed by the applicable deadline (like the

Economic Loss Plaintiffs' purported claims), the Plan provides that "Disputed" means "a Claim

(other than an Asbestos Personal Injury Claim) that has been or hereafter is listed on the Schedules

as other than disputed, contingent, or unliquidated, but as to which the Debtors or any other party

in interest has interposed an objection or request for estimation which has not been withdrawn or

determined by a Final Order… ."  *See* Plan § 1.54.  Because the Economic Loss Plaintiffs have not

yet filed proofs of claim, such claims must have been included on Old GM's Schedules in order to

be considered "Disputed Claims."[4]  Again, it is undisputed that the Economic Loss Plaintiffs do

not have such claims.

22.     Despite this, the New GM Objection states that if the Economic Loss Plaintiffs "are

capable" of ever holding Allowed General Unsecured Claims, then the GUC Trust Administrator

is required to maintain a reserve on account of such claims.  *See* New GM Objection ¶ 2.  But that

is not what the Plan and GUC Trust Agreement actually provide.  In reality, those documents

obligate the GUC Trust to maintain a reserve only for (i) the maximum Bankruptcy Code 502(h)

---

[4] The term "Schedules" specifically is limited to schedules and statements as "supplemented or amended *through the Confirmation Date*," a date that has long passed.  Plan § 1.119.

claim that could arise out of the Term Loan Avoidance Action and (ii) "Disputed General Unsecured Claims."

23.     Notably, in defining "Disputed General Unsecured Claims," the GUC Trust Agreement uses the Plan's defined term "Disputed": "'Disputed General Unsecured Claims' means General Unsecured Claims against the Debtors that are Disputed.'"   *See* GUC Trust Agreement ¶ F.   Hence, contrary to New GM's assertion that the GUC Trust must maintain a reserve for any claims that "are capable" in the future of being deemed Allowed General Unsecured Claims, the GUC Trust Agreement's reserve requirements are strictly limited to purported claims that meet the Plan's specific criteria for "Disputed" claims.

**III.     The Adjustment Shares Process Provides a Potential Alternative Means of Recovery for the Economic Loss Plaintiffs**

24.     While the Economic Loss Plaintiffs have no entitlement to the current GUC Trust Assets, the MSPA[5] and the Plan provide a mechanism by which late-filed claims such as the Economic Loss Plaintiffs' purported claims may receive a recovery, to the extent they ultimately become Allowed General Unsecured Claims.

25.     Specifically, pursuant to the MSPA, if the Court estimates the aggregate amount of Allowed General Unsecured Claims at an amount exceeding $35 billion, then New GM must issue Adjustment Shares.   *See* MSPA § 3.2(c).   If the Court estimates the aggregate Allowed General Unsecured Claims at an amount at or exceeding $42 billion, New GM must issue the maximum amount of Adjustment Shares.   *Id*.   Nothing in the Plan, the MSPA or the GUC Trust Agreement suggests that otherwise valid, late-filed claims may never be deemed Allowed General Unsecured Claims, nor that Allowance of such late-filed claims may not trigger the Adjustment Shares

---

[5] *See Second Amended and Restated Master Sale and Purchase Agreement, by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser, dated as of June 26, 2009* (the "**MSPA**").

provision.

**IV.    The GUC Trust's Position on the Status of the Economic Loss Plaintiffs' Claims is Entirely Consistent**

26.    According to New GM, in connection with the instant Distribution Motion, the GUC Trust denies that the Economic Loss Plaintiffs are "capable" of holding Allowed General Unsecured Claims or of being GUC Trust Beneficiaries, but in connection with the Settlement claims the opposite.  New GM Objection ¶¶ 3-4.  New GM is wrong on both counts.  By the Distribution Motion, the GUC Trust simply and correctly observes that the Economic Loss Plaintiffs do not have Allowed General Unsecured Claims and are not GUC Trust Beneficiaries as those terms are defined in the Plan and the GUC Trust Agreement.  As such, no reserve is required for the Economic Loss Plaintiffs, and the GUC Trust is free to make distributions to its current Unitholders under the plain terms of the governing documents.

27.    Moreover, in the Distribution Motion, the GUC Trust takes no position concerning whether the Economic Loss Plaintiffs are "capable" of holding Allowed General Unsecured Claims or "capable" of being GUC Trust Beneficiaries.  Nor should it have taken a position on those questions. Only *actual* Allowed General Unsecured Claims and *actual* GUC Trust Beneficiaries are entitled to distributions and reserves under the Plan and GUC Trust Agreement.  Hence, the GUC Trust properly concerns itself with those existing claims and beneficiaries alone.

28.    The separate question of whether the Economic Loss Plaintiffs' claims can *ever* become Allowed General Unsecured Claims – thereby making the Economic Loss Plaintiffs future GUC Trust Beneficiaries entitled to the GUC Trust Assets – is an open, litigable question.  Rather than expend additional time and estate resources litigating this question, the Economic Loss Plaintiffs and the GUC Trust have reached a Settlement.  The Settlement resolves this question by providing, *inter alia*, that the Economic Loss Plaintiffs will give up any entitlement they may have

11

to the GUC Trust Assets in exchange for:  (i) the GUC Trust consenting to their late-filed class claims, and (ii) the opportunity to ask the Court to estimate the aggregate amount of their purported class claims.  Pursuant to the Settlement, the validity and value, if any, of the Economic Loss Plaintiffs' claims will be determined and estimated by the Court.  If the Court estimates their claims in an amount sufficient to trigger New GM's obligation to issue Adjustment Shares, the Economic Loss Plaintiffs will be entitled to receive the full amount of issued Adjustment Shares as a recovery on their claims.  No matter what the Court rules, however, it will not change the fact that, as of the Effective Date, the Economic Loss Plaintiffs had neither Allowed nor Disputed claims within the meaning of the Plan and the GUC Trust Agreement.

29.    When the motion to approve the Settlement under Bankruptcy Rule 9019 is before this Court, New GM is free to oppose that motion based on whatever arguments it deems appropriate, including its contention that the Economic Loss Plaintiffs are "not capable" of triggering the Adjustment Shares.  With respect to the Distribution Motion, however, that contention simply is not relevant, and cannot be the basis for any further delay of distributions to the Unitholders.

**V.    The Unitholders will be Prejudiced if Distributions are not Made**

30.    The GUC Trust is in complete compliance with its obligations under the Settlement. Importantly, the Settlement does not require that the GUC Trust hold back distributions pending adjudication of the Settlement motions.

31.    The Economic Loss Plaintiffs are well aware that in order to obtain a stay of GUC Trust distributions, they must post a bond.  Indeed, in 2015, the Economic Loss Plaintiffs sought to stay an approximately $135 million distribution from the GUC Trust pending the Second

12

Circuit's consideration of Judge Gerber's Threshold Issues Decision.[6] In connection therewith, Judge Gerber ruled that a stay of a GUC Trust distribution of that size would require a $10.6 million bond. *In re Motors Liquidating Co.*, 539 B.R. at 679. No bond was posted. The Economic Loss Plaintiffs also did not seek to stay or holdback the next GUC Trust distribution that was made in November 2016 in the amount of approximately $112 million.

32.    In addition, although the Economic Loss Plaintiffs rest their arguments on the existence of the Settlement, the Settlement does not provide that the GUC Trust is prohibited from distributing assets to the Unitholders. Instead, the Economic Loss Plaintiffs are seeking a stay of the potential distribution and requesting mediation, notwithstanding the fact that Economic Loss Plaintiffs and the GUC Trust have already negotiated the terms of their deal. Indeed, the GUC Trust and the Economic Loss Plaintiffs spent an extensive amount of time engaged in arm's-length, good faith negotiations with respect to the terms of the Settlement, which terms the Participating Unitholders continue to support.

33.    In connection with a previous attempt to interfere with Unitholder distributions, this Court ruled that such an interference is "serious business." *In re Motors Liquidating Co.*, 539 B.R. at 683. This Court noted that, given the time value of money, Unitholders are able to obtain greater yields by receiving their distributions earlier, and would suffer material losses from delays in distribution. *Id.* The Economic Loss Plaintiffs' claim that the Unitholders will suffer no prejudice from a delay in distributions flatly ignores this ruling. *Id.* at 683-84.

---

[6] *See The Ignition Switch Plaintiffs' and Certain Non-Ignition Switch Plaintiffs' Request for a Stay of Distributions of GUC Trust Assets and Response to Motion of Wilmington Trust Company, as GUC Trust Administrator and Trustee, for an Order Granting Authority (A) to Exercise New GM Warrants and Liquidate New GM Common Stock and (B) to Make Correspondence Amendments to the GUC Trust Agreement* [Docket No. 13246].

## CONCLUSION

For the reasons set forth above and in the Distribution Motion, the Participating Unitholders respectfully request that the Court (a) overrule the Objections, (b) approve the Distribution Motion, and (c) grant such other and further relief as the Court deems just, proper and equitable.

Dated: August 9, 2019
New York, New York                       AKIN GUMP STRAUSS HAUER & FELD LLP

By:     /s/ Daniel H. Golden
        Daniel H. Golden
        Mitchell P. Hurley
        Naomi Moss
        One Bryant Park
        New York, NY 10036
        (212) 872-1000 (Telephone)
        (212) 872-1002 (Facsimile)

        *Attorneys for the Participating Unitholders*