**McDermott, Will & Emery LLP**
340 Madison Ave.
New York, New York 10173-1922
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
E-mail: kgoing@mwe.com
Kristin K. Going

*Attorneys for the Motors Liquidation Company*
*GUC Trust Administrator*

HEARING DATE AND TIME: August 12, 2019
@ 10:00 A.M. (ET)
OBJECTION DEADLINE: August 5, 2019
@ 4:00 P.M. (ET)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                                  :     **Chapter 11**
**In re**                                                         :
                                                                  :
                                                                  :     **Case No. 09-50026 (MG)**
                                                                  :
**MOTORS LIQUIDATION COMPANY,** *et al.*,                         :
**f/k/a General Motors Corp.,** *et al.*                          :
                                                                  :
                                                                  :
          **Debtors.**                                            :     **(Jointly Administered)**
------------------------------------------------------------------x

**OMNIBUS REPLY OF WILMINGTON TRUST COMPANY, AS GUC TRUST
ADMINISTRATOR, TO OBJECTIONS TO MOTION FOR AN ORDER
(A) AUTHORIZING THE EXPEDITED PAYMENT OF EXCESS GUC
DISTRIBUTABLE ASSETS PURSUANT TO SECTION 5.4 OF THE GUC TRUST
AGREEMENT, AND (B) APPROVING SUCH DISTRIBUTION AS AN APPROPRIATE
EXERCISE OF THE GUC TRUST ADMINISTRATOR'S RIGHTS, POWERS AND/OR
PRIVILEGES PURSUANT TO SECTION 8.1(E) OF THE GUC
TRUST AGREEMENT**

## TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................................ ii

I.    Objections by the Economic Loss Plaintiffs ................................................................2

    A.    The Court Should Reject the Economic Loss Plaintiffs' Request to Enjoin the Excess Distribution ..................................................................................2

    B.    The Court Should Reject the Economic Loss Plaintiffs' Alternative Request to Direct Mandatory Mediation .............................................................3

II.    New GM's Objection ....................................................................................................4

    A.    New GM Lacks Standing to Object to the Excess Distribution Motion ..................5

    B.    The GUC Trust Administrator Has Not Taken Any Conflicting Legal Positions. ...................................................................................................7

    C.    The Economic Loss Plaintiffs Do Not Hold Disputed General Unsecured Claims, and Even if They Did, the GUC Trust Administrator is Not Required to Maintain a Reserve for Them. ...........................................................8

        1.    The Settlement Agreement is a Compromise of Disputed Positions. .........10

        2.    The Limited Fund Sought to Be Certified in Connection with the Settlement Agreement is the Adjustment Shares. .......................................12

    D.    The GUC Trust Administrator is Contractually Entitled to Submit Questions Regarding Its Actions to the Bankruptcy Court ....................................13

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AmChem Prods., Inc. v. Windsor,*
 521 U.S. 591 (1997)..........................................................................................................4

*Bates v. Long Island R. Co.,*
 997 F.2d 1028 (1993)......................................................................................................11

*Breeden v. Kilpatrick & Lockhart LLP,*
 336 F.3d 94 (2d Cir. 2003)................................................................................................6

*In re Broadway City, LLC,*
 358 B.R. 628 (Bankr. S.D.N.Y. 2007)............................................................................12

*Clapper v. Amnesty Int'l USA,*
 568 U.S. 398 (2013)..........................................................................................................6

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*
 343 F. Supp. 3d 394 (S.D.N.Y. 2018)..............................................................................4

*Joel A. v. Giuliani,*
 218 F.3d 132 (2d Cir. 2000)..............................................................................................4

*Mon Chong Loong Trading Co. v. Travelers Excess and Surplus Lines Co.,*
 No. 12 Civ. 6509, 2014 WL 5525237 (S.D.N.Y. Oct. 27, 2014) ............................. 11-12

*Scott v. Residential Capital, LLC,*
 2015 WL 629416 (S.D.N.Y. 2000)...................................................................................6

*In re Venture Mortg. Fund, L.P.,*
 245 B.R. 460 (Bankr. S.D.N.Y. 2000)............................................................................12

*Winter v. Natural Res. Def. Council, Inc.,*
 555 U.S. 7 (2008)..............................................................................................................3

**Statutes, Rules & Regulations**

11 U.S.C. § 502(h) ...............................................................................................................13

11 U.S.C. § 1109...............................................................................................................5, 7

Fed. R. Bankr. P. 7065..........................................................................................................2

Fed. R. Civ. P. 23..................................................................................................................4

Fed. R. Civ. P. 23(b)(3) ........................................................................................................... 3

Fed. R. Civ. P. 23(e)(2) ......................................................................................................... 12

Wilmington Trust Company, not in its individual capacity and solely in its capacity as trust administrator and trustee (the "GUC Trust Administrator") of the Motors Liquidation Company GUC Trust (the "GUC Trust"), by its undersigned counsel, submits this omnibus reply (the "Reply") to the objections filed in connection with the *Motion for an Order (A) authorizing an expedited distribution of Excess GUC Distributable Assets pursuant to Sections 5.4 and 5.8 of the GUC Trust Agreement, and (B) acknowledging that such distribution is an appropriate exercise of the GUC Trust Administrator's rights, powers and/or privileges pursuant to Section 8.1(e) of the GUC Trust Agreement* (the "Excess Distribution Motion").[1]

1. There were two objections filed to the Excess Distribution Motion. One objection was filed by the Economic Loss Plaintiffs [Dkt. No. 14571], who have an executed settlement agreement with the GUC Trust in which they disclaim any right to any of the funds subject to the Excess Distribution Motion.

2. The second objection was filed by New GM [Dkt. No. 14586], a party that does not have standing to object to the Excess Distribution Motion as it does not claim to have any right to the funds subject to the Excess Distribution Motion, and has filed the objection in an attempt to assert the rights of Economic Loss and Personal Injury Plaintiffs.

3. Both objections should be overruled as they ignore the plain language of the GUC Trust Agreement.

---

[1] Capitalized terms not otherwise defined in this Reply shall have the meanings ascribed to them in the Excess Distribution Motion, the Plan or the GUC Trust Agreement, as applicable. Any description herein of the terms of the Plan or the GUC Trust Agreement is qualified in its entirety by the terms of the Plan or the GUC Trust Agreement, as applicable.

**I.      Objections by the Economic Loss Plaintiffs**

  **A.    The Court Should Reject the Economic Loss Plaintiffs' Request to Enjoin the Excess Distribution**

4. The Economic Loss Plaintiffs object to the GUC Trust Administrator making the Excess Distribution before this Court approves the settlement agreement entered into between the Economic Loss Plaintiffs and the GUC Trust Administrator (the "Settlement Agreement"). The Economic Loss Plaintiffs acknowledge they are not entitled to any of the Excess Distribution. The Economic Loss Plaintiffs also do not claim that the GUC Trust Administrator is required to reserve any funds on account of the claims that they have settled with the GUC Trust Administrator.

5. The Economic Loss Plaintiffs have entered into the Settlement Agreement to fully resolve their claims and they continue to be bound by that agreement. As part of that Settlement Agreement, the Economic Loss Plaintiffs did not bargain for – nor did they receive – a stay preventing the GUC Trust Administrator from completing its remaining wind-up obligations.

6. Although the Economic Loss Plaintiffs decline to name the relief they are seeking, the Economic Loss Plaintiffs are asking this Court to issue a preliminary injunction prohibiting the Excess Distributions from being made prior to the Settlement Agreement being approved. The Economic Loss Plaintiffs do not cite any provisions of the GUC Trust Agreement or the Plan to support their request, and they cannot—because there are no contractual provisions that support their request for an injunction.

7. Nor have the Economic Loss Plaintiffs complied with the procedural requirements necessary for issuing the injunctive relief they seek. To obtain such relief pursuant to Bankruptcy Rule 7065, the Economic Loss Plaintiffs are required to file an adversary proceeding and establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction

is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Even if the Economic Loss Plaintiffs' request was procedurally proper, they have not offered any evidence to meet this rigorous test and there is no reason to believe that they could meet such a test even if they tried. In short, the Economic Loss Plaintiffs' objection to the Excess Distribution should be rejected.

        **B.    The Court Should Reject the Economic Loss Plaintiffs' Alternative Request to Direct Mandatory Mediation**

8.    At the conclusion of their objection, the Economic Loss Plaintiffs request, in the alternative, "that the Court direct the GUC Trust, Participating Unitholders, Economic Loss Plaintiffs, and New GM (the lone objector to the Settlement Motions) to mediation and adjourn the Motions until the mediation is complete." (Econ. Loss Pl. Obj. ¶ 19.) The Court should reject this request.

9.    First, the Economic Loss Plaintiffs and the GUC Trust have already agreed upon a settlement of the Economic Loss Plaintiffs' claims and are seeking its approval from this Court. The Economic Loss Plaintiffs cannot use the passage of time to cast the Settlement Agreement away and attempt to negotiate a better deal for themselves. The parties to the Settlement Agreement have submitted it to this Court and advocated for its approval. The Court should not countenance this attempt by the Economic Loss Plaintiffs to obtain Court authority to re-trade the Settlement Agreement by ordering the parties to go to mediation.

10.    Second, the Economic Loss Plaintiffs argue that the mediation would "attempt to resolve New GM's objections to the Settlement Motions." (Econ. Loss Pl. Obj. ¶ 20.) Here, New GM has asserted objections concerning the very structure and propriety of a limited fund, non-opt out class action settlement pursuant to Fed. R. Civ. P. 23(b)(3). There is nothing – short of a full-scale renegotiation of the Settlement Agreement – that could resolve those objections.

3

11. In addition, New GM's objections to the Settlement Agreement are legal in nature, and require the Court's determination. They are not objections that the parties themselves can resolve. Approval of a settlement class requires the Court to conduct its own analysis of whether the putative class has met the requirements of Rule 23, and in some instances even requires heightened scrutiny. *See, generally*, *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). New GM's objections to the Settlement Agreement cannot be mediated away. This Court is required to rule upon the propriety of the settlement class that has been put forth for certification.

12. In fact, given the ferocity of New GM's objections, it would certainly cast doubt on the fairness of the Settlement Agreement if the parties emerged from behind closed doors with a side agreement that resolves New GM's objections. Such a procedure would smack of potential "collusion" that could cast doubt on the procedural fairness of the parties' Settlement Agreement. *See generally, Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000) ("the district court must determine that a class action settlement is . . . not a product of collusion."); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) ("Court approval of a class action settlement must be premised on a hearing and subsequent finding that the settlement is 'fair, reasonable, and adequate' and not the product of collusion or some other malfeasance.").

## II.    New GM's Objection

13. New GM's objection is best characterized as a party attempting to assert the rights of another party, in requesting this Court to issue an advisory opinion.

14. Despite spending a significant portion of its objection asserting the rights of the Economic Loss Plaintiffs, it is not clear by the end of its objection whether New GM even opposes the Excess Distribution being made. In its conclusion, New GM requests this Court "approve the Motion and authorize the distribution described therein but only on the express basis that

Economic Loss Plaintiffs are not capable of holding Allowed General Unsecured Claims (as defined in the GUC Trust Agreement) because the Proposed Class Claims were neither Allowed nor Disputed as of March 2011." (New GM Obj. ¶ 23.)

15. New GM is asking this Court to issue an advisory opinion with regard to the Settlement Agreement—which has yet to be heard by this Court. Furthermore, whether Economic Loss Plaintiffs are, as New GM characterizes it, "capable of holding Allowed General Unsecured Claims" is not the question to be answered in determining the Excess Distribution that needs to be made.

    A.    **New GM Lacks Standing to Object to the Excess Distribution Motion**

16. Once again, the Court must start its analysis of New GM's objection at the gating issue of standing. New GM is not a creditor, potential late claimant or Unitholder of the GUC Trust.

17. Despite having the burden of proof to show standing, New GM does not provide any support for its ability to object and be heard on the Excess Distribution Motion, and never mentions standing in its objection. New GM has failed to demonstrate that it can satisfy (i) prudential standing, (ii) constitutional standing, or (iii) Bankruptcy Code Section 1109 standing, yet all three must be met to have standing to object and be heard. See, Memorandum Opinion and Order Regarding Motion to Enforce the Settlement Agreement by and among the Signatory Plaintiffs and the GUC Trust, Dkt. 14212 at pg. 28, *citing Scott v. Residential Capital, LLC*, 2015 WL 629416, at *3 (S.D.N.Y. Feb. 13, 2015.) As this Court has previously recognized, "third parties to contracts do not have prudential standing unless they are intended beneficiaries of that contract." *Id.*, pg. 43. New GM is not a party nor an intended beneficiary to the Settlement Agreement, and is not a party or intended beneficiary to the GUC Trust Agreement. This Court already determined that New GM lacked standing to contest the motion to enforce the prior

5

settlement agreement. For the same reasons, New GM lacks prudential standing to object to the Excess Distribution Motion.

18. Similarly, New GM lacks constitutional standing because it does not have a personal stake in the outcome of the controversy. Whether the GUC Trust Administrator makes an expedited distribution of Excess GUC Distributable Assets has no bearing on whether or not the Economic Loss Plaintiffs will ultimately trigger the so called Adjustment Shares provided for in the Plan. Throughout its objection, New GM ironically attempts to assert the rights of the Economic Loss Plaintiffs, arguing that the Economic Loss Plaintiffs hold Disputed General Unsecured Claims, despite the clear language of the GUC Trust Agreement that states that they do not. As the Second Circuit has recognized, "[a] party must assert [its] own legal rights . . . and cannot rest [its] claim to relief on the legal rights or interests of third parties." *Breeden v. Kilpatrick & Lockhart LLP*, 336 F.3d 94, 101 (2d Cir. 2003). New GM is not asserting its own rights in connection with the objection, it is arguing on behalf of the Economic Loss Plaintiffs.

19. Furthermore, New GM, as a non-party to the Settlement Agreement as well as the GUC Trust Agreement, does not have a concrete and particularized injury necessary to establish constitutional standing. *See, Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401-02 (2013) (constitutional standing requires threatened injury that is certain and impending, a party "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm"). Whether the Excess Distribution is made has no direct impact on New GM, because New GM is not entitled to any of the Excess Distribution funds, and the funds in the GUC Trust have no impact on whether or not the Adjustment Shares get triggered. The only thing that impacts New GM's potential liability is an estimation or other determination that claims against the GUC Trust exceed $35 billion.

20. Finally, if both prudential and constitutional standing are met—which they are not here—Section 1109 of the Bankruptcy Code requires "party in interest" standing be met as well. Section 1109 provides that in order to have "party in interest" standing, the party must be a party enumerated by the statute (which New GM is not) or have a direct stake in the proceeding *and* be a creditor or able to assert an equitable claim against the estate. New GM is not a creditor of the GUC Trust[2] nor has it asserted any equitable claims against the GUC Trust.

21. As New GM has failed to meet its burden of proof as to the issue of standing, its Objection should be overruled on the basis of standing alone.

22. Despite the fact that New GM does not having standing to propound any objection to the Excess Distribution Motion, the GUC Trust Administrator will demonstrate below that none of New GM's objections have merit, and the entire objection should be overruled even if New GM had standing to assert the objections.

**B.    The GUC Trust Administrator Has Not Taken Any Conflicting Legal Positions.**

23. New GM's entire argument is premised on a flawed theory, first articulated in the Preliminary Statement to its Objection: "[i]f the Economic Loss Plaintiffs are capable of holding Allowed General Unsecured Claims, then the applicable provisions of the Plan and GUC Trust Agreement require Wilmington Trust to maintain a sufficient reserve for such disputed claims. (See Plan § 7.2; GUC Trust Agreement § 5.5)."

24. That is simply not what the GUC Trust Agreement and Plan provide. The relevant provision of Section 5.5 of the GUC Trust Agreement states:

> Notwithstanding anything in this Trust Agreement to the contrary, the GUC Trust Administrator…shall at all times, subject to the provisions of Sections 5.3(c) and 6.1, retain:

---

[2] Many years ago New GM filed a contingent administrative claim against the GUC Trust but later withdrew it.

7

(a) sufficient GUC Trust Distributable Assets as the GUC Trust Administrator shall determine, with approval of the GUC Trust Monitor, as would be distributable (I) to all holders of Disputed General Unsecured Claims at the time outstanding as if all Disputed General Unsecured Claims were allowed at the Maximum Amount, but only until such Disputed General Unsecured Claims are resolved…

25. Maximum Amount is defined in the GUC Trust Agreement to mean:

(A) with respect to any Disputed General Unsecured Claim, (x) the amount agreed to by the Debtors and/or the GUC Trust Administrator and the holder of such claim (which shall include any agreed capped amount pursuant to ADR Procedures approved by the Bankruptcy Court); (y) the amount, if any, estimated or determined by the Bankruptcy Court in accordance with Bankruptcy Code Section 502(c); or (z) absent any such agreement, estimation or determination, the liquidated amount set forth in the proof of claim filed by the holder of such claim, or in the case of unliquidated claims, the amount estimated by the Debtors and/or the GUC Trust Administrator with the approval of the GUC Trust Monitor, and after final resolution of such Disputed General Unsecured Claim or dismissal of such Disputed General Unsecured Claim by Final Order, zero"

26. The GUC Trust Administrator has taken positions consistent with these provisions in both the Settlement Agreement and with regard to the Excess Distribution. Section 5.4 of the GUC Trust Agreement and the definition of Excess GUC Distributable Assets both require a determination of the existence of Disputed General Unsecured Claims. New GM adds its own language to section 5.4 and the definition of Disputed General Unsecured Claims—it tries to contort these sections to include a concept that a reserve must be established for any party "capable of holding an Allowed Unsecured Claim"—but that language is simply not found anywhere in the GUC Trust Agreement or the Plan.

C.  **The Economic Loss Plaintiffs Do Not Hold Disputed General Unsecured Claims, and Even if They Did, the GUC Trust Administrator is Not Required to Maintain a Reserve for Them.**

27. The GUC Trust Administrator has consistently taken the position that the Economic Loss Plaintiffs do not have Disputed General Unsecured Claims, as that term is defined in the GUC Trust Agreement as "holders of General Unsecured Claims against the Debtors that are Disputed

8

as of March 31, 2011." Because the Economic Loss Plaintiffs do not hold Disputed General Unsecured Claims, there is no reserve required for their claims, and because there are no remaining Disputed General Unsecured Claims, the GUC Trust must make a distribution of Excess GUC Distributable Assets pursuant to Section 5.4 of the GUC Trust Agreement.

28. However, even if this Court were to ignore the plain language of the GUC Trust Agreement and find that the Economic Loss Plaintiffs do in fact hold Disputed General Unsecured Claims, the GUC Trust Administrator is still not required to reserve any amounts on account of the Economic Loss Plaintiffs by virtue of the definition of Maximum Amount set forth above. The GUC Trust Administrator is required to reserve either: (i) the amount agreed to by the GUC Trust and the holder of the claim; (ii) the amount estimated in accordance with 502(c) or (iii) in the case of an unliquidated claim, the amount estimated by the GUC Trust Administrator with approval of the GUC Trust Monitor.

29. Thus, even if the Economic Loss Plaintiffs held Disputed General Unsecured Claims, the GUC Trust Administrator would still not be required to reserve any amounts on account of those Disputed General Unsecured Claims because the GUC Trust Administrator has satisfied not one, but two, of the reserve requirements in the Maximum Amount definition.

30. First, the amount of the claim against the GUC Trust Distributable Assets has been agreed to between the GUC Trust Administrator and the Economic Loss Plaintiffs in the Settlement Agreement (and the GUC Trust Administrator has in fact reserved for the maximum amount of noticing costs that it could be required to pay under the terms of the Settlement Agreement). In the Settlement Agreement, the Economic Loss Plaintiffs have agreed that they are not entitled to any of the GUC Trust Distributable Assets and, thus, there is no need to have a reserve for any alleged Disputed General Unsecured Claims (other than the class notice costs).

9

31. Second, the GUC Trust Administrator, with approval of the GUC Trust Monitor, has estimated, consistent with the terms of the Settlement Agreement, that the amount of the claim against the existing GUC Trust Distributable Assets is no more than the maximum amount of noticing costs set forth in the Settlement Agreement. Put differently, the fact that the GUC Trust Administrator is seeking to make a distribution of Excess GUC Trust Distributable Assets is entirely consistent with the Settlement Agreement that the GUC Trust Administrator has entered into with the Economic Loss Plaintiffs and certain Personal Injury Plaintiffs.

### 1. The Settlement Agreement is a Compromise of Disputed Positions.

32. New GM goes to great lengths to try and show the GUC Trust Administrator is somehow taking contradictory positions while ignoring the simple truth that the positions taken by the GUC Trust Administrator in the Settlement Agreement are, in fact, the product of a settlement of disputed issues. The Settlement Agreement is the embodiment of the compromises that both the GUC Trust Administrator and the Economic Loss Plaintiffs have provided to one another to get a deal done. It should not be lost on the Court that given New GM's stout refusal to attempt to negotiate a settlement with the Economic Loss Plaintiffs that such concepts of compromise would be confusing to New GM.

33. Absent a settlement, the GUC Trust would continue to litigate the question of whether the Economic Loss Plaintiffs are entitled to file late proofs of claims, but for settlement purposes, the GUC Trust Administrator has agreed to allow the Economic Loss Plaintiffs to file late proofs of claims. Absent the Economic Loss Plaintiffs agreeing in the settlement context to look solely to any Adjustment Shares for recovery, the GUC Trust Administrator would not agree that the Economic Loss Plaintiffs are entitled to file late proofs of claims or that they could ever hold Allowed General Unsecured Claims. Pursuant to the terms of the Settlement Agreement, the

Economic Loss Plaintiffs may hold Allowed General Unsecured Claims if and when such determination is made by this Court pursuant to an estimation proceeding.

34. Moreover, New GM's attempt to apply the doctrine of judicial estoppel to positions made in support of a settlement agreement is inapposite. To apply the doctrine of judicial estoppel, "the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner." *Bates v. Long Island R. Co.*, 997 F.2d 1028, 1038 (1993).

35. As discussed herein, the GUC Trust is not taking an inconsistent position. (*See infra* ¶¶ 26-30.) But, even assuming that the GUC Trust has *argued* an inconsistent position, the position taken in support of the Settlement Agreement cannot serve as a basis for the application of the doctrine of judicial estoppel. "A settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel." *Bates*, 997 F.2d at 1038 (internal citations omitted); *see also Mon Chong Loong Trading Co. v. Travelers Excess and Surplus Lines Co.*, No. 12 Civ. 6509, 2014 WL 5525237, at *4 (S.D.N.Y. Oct. 27, 2014) ("An agreed-upon settlement is simply a compromise and its approval by the court is not the sort of success for a claim, defense or legal theory that may trigger judicial estoppel"); *In re Broadway City, LLC*, 358 B.R. 628, 635 (Bankr. S.D.N.Y. 2007) (rejecting request to apply judicial estoppel because "a settlement blessed by the Court . . . should be given no more preclusive effect than a stipulation of settlement."); *In re Venture Mortg. Fund, L.P.*, 245 B.R. 460, 473 (Bankr. S.D.N.Y. 2000)("while some courts have judicially estopped a litigant from asserting facts inconsistent with statements in a prior proceeding that resulted in a settlement, the law in this circuit is otherwise.") (internal citations omitted).

36. The GUC Trust's arguments in favor of approving the Settlement Agreement similarly do not require this Court to rule one way or the other as to the merits of the underlying dispute. Rather, the Court must only determine whether the proposed Settlement Agreement is "fair, reasonable, and adequate" after considering the factors listed in Rule 23(e)(2), none of which requires the Court to endorse the merits of the factual or legal positions taken by the parties that led to that settlement.

37. In short, New GM's objection fails because judicial estoppel cannot be triggered under the circumstances.

### 2. The Limited Fund Sought to Be Certified in Connection with the Settlement Agreement is the Adjustment Shares.

38. New GM also argues in its objection that the GUC Trust Administrator has taken inconsistent positions regarding what constitutes the limited fund for purposes of the class sought to be certified in connection with the Settlement.

39. The GUC Trust Administrator and the Economic Loss Plaintiffs were quite clear in the papers relating to the Settlement Agreement that the "limited fund" was the Adjustment Shares, and that the limited fund did not include any GUC Trust Distributable Assets. (*See* Paragraph 87 of the *Motion of Motors Liquidation Company GUC Trust to Approve (I) the GUC Trust Administrator's Actions, (II) the Settlement Agreement by and among the Signatory Plaintiffs and the GUC Trust Pursuant to Bankruptcy Code Sections 105, 363, and 1142 and Bankruptcy Rules 3002, 9014 and 9019, and (III) Authorize the Reallocation of GUC Trust Assets* [Dkt. No. 14409], "Finally, given that nearly all of the GUC Trust's Assets have been distributed or reserved for the Bankruptcy Code section 502(h) claim emanating from the Avoidance Action Litigation, it is likely that the GUC Trust would run out of funds prior to completing the litigation of the Plaintiff's Claims. *See also*, *The Economic Loss Plaintiffs' Motion to: (1) Extend Bankruptcy Rule 7023 to*

12

*These Proceedings; (2) Approve the Form and Manner Of Notice; (3) Grant Class Certification For Settlement Purposes Upon Final Settlement Approval; (4) Appoint Class Representatives and Class Counsel for Settlement Purposes; and (5) Approve the Settlement Agreement by and Among The Signatory Plaintiffs and the GUC Trust Pursuant To Rule 23* [Dkt. No. 14408] "This proceeding, which resolves a major issue in a bankruptcy that has spanned a decade, concerns a "classic" limited fund class action, where the available funds—the Adjustment Shares—are undeniably insufficient to satisfy Class members' claims, which will reach into the billions.")

40.    It is New GM that has consistently argued that the GUC Trust Distributable Assets are part of the "limited fund" described in the Settlement Agreement.  Incredibly, New GM has now taken its own argument, attempted to hoist it upon the GUC Trust, and then turned around and alleged that the GUC Trust was taking contradictory positions by dissipating the limited fund that was a part of the Settlement Agreement.  That is simply not true.

41.    The GUC Trust Administrator and the Economic Loss Plaintiffs have been clear that the limited fund encompassed in the Settlement Agreement contains only the Adjustment Shares.  After the Excess Distribution is made, there will be no change to the limited fund embodied in the Settlement Agreement.

**D.    The GUC Trust Administrator is Contractually Entitled to Submit Questions Regarding Its Actions to the Bankruptcy Court.**

42.    In objecting to what New GM characterizes as a "comfort order", New GM conveniently forgets to even acknowledge the plain language of § 8.1(e) of the GUC Trust Agreement which provides:

> Notwithstanding the foregoing, where the GUC Trust Administrator determines, in its reasonable discretion, that it is necessary, appropriate or desirable, the GUC Trust Administrator will have the right to submit to the Bankruptcy Court or any other court of competent jurisdiction any question or questions regarding any specific action proposed to be taken by the GUC Trust Administrator with respect to this Trust Agreement, the GUC Trust, or the GUC Trust Assets, including

13

the administration and distribution of GUC Trust Assets and the termination of the GUC Trust.

43. The relief sought by the GUC Trust Administrator is expressly provided for in the GUC Trust Agreement. The cases cited by New GM are inapplicable because neither of those cases concerned trust agreements with specific provisions to seek Court approval of a proposed action.

WHEREFORE, for the foregoing reasons, the GUC Trust Administrator respectfully requests that the Court overrule the Economic Loss Plaintiffs' Objection and the New GM Objection, and enter an order authorizing the GUC Trust make the Excess Distribution prior to the end of the third fiscal quarter, and grant such other and further relief as may be deemed just and proper.

Dated:   New York, New York
         August 9, 2019

McDermott Will & Emery LLP

By:   /s/  *Kristin K. Going*
      Kristin K. Going
      340 Madison Ave.
      New York, NY 10173-1922
      Tel: (212) 547-5429
      E-mail: kgoing@mwe.com

      *Attorneys for the Motors Liquidation
      Company GUC Trust Administrator*