# brownrudnick

EDWARD S. WEISFELNER
direct dial: 212.209.4900
fax: 212.938.2900
eweisfelner@brownrudnick.com

August 22, 2019

<u>VIA EMAIL AND ECF FILING</u>

The Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

**RE:**    *In re Motors Liquidation Company, et al.*, **Case No. 09-50026 (MG)**

Dear Judge Glenn:

   We write on behalf of the Ignition Switch Plaintiffs and certain Non-Ignition Switch Plaintiffs (together, the "**Economic Loss Plaintiffs**") to further update the Bankruptcy Court following General Motors LLC's letter dated August 7, 2019.   In particular, attached as **Exhibit A** and **Exhibit B** are copies of the *Economic Loss Plaintiffs' Motion For Reconsideration Of The Court's August 6, 2019 Summary Judgment Opinion And Order, Or, In The Alternative, Motion For Certification Of Order For Interlocutory Appeal* [Docket No. 7055] and the accompanying *Memorandum Of Law In Support* [Docket No. 7056], filed in the MDL Court on August 20, 2019.

          Respectfully submitted,

           */s/ Edward S. Weisfelner*
          Edward S. Weisfelner
          Kenneth Aulet
          BROWN RUDNICK LLP
          Seven Times Square
          New York, New York 10036
          Tel: 212-209-4800
          eweisfelner@brownrudnick.com
          kaulet@brownrudnick.com



The Honorable Martin Glenn
August 22, 2019
Page 2

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*

Steve W. Berman (admitted pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Tel: 206-623-7292
steve@hbsslaw.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Tel: 414-956-1000
ecabraser@lchb.com

*Co-Lead Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the MDL Court*

cc:      Counsel of Record via CM/ECF

**<u>EXHIBIT A</u>**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION<br>SWITCH LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | No. 14-MD-2543 (JMF) |

**ECONOMIC LOSS PLAINTIFFS' MOTION FOR RECONSIDERATION OF
THE COURT'S AUGUST 6, 2019 SUMMARY JUDGMENT OPINION AND ORDER,
OR, IN THE ALTERNATIVE, MOTION FOR CERTIFICATION OF
<u>ORDER FOR INTERLOCUTORY APPEAL</u>**

The Economic Loss Plaintiffs respectfully request that the Court reconsider its August 6, 2019 Opinion and Order Regarding New GM's Motion for Summary Judgment as to the Bellwether Economic Loss Plaintiffs' Claims for Benefit-of-the-Bargain Damages (Dkt. No. 7019) (the "Order"), or, in the alternative, that the Court certify the Order for Interlocutory Appeal.  Reconsideration under Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3 is necessary to remedy three clear errors and prevent manifest injustice:

*First*, the Court declined to follow Ninth Circuit precedent applying California law even though the Second Circuit requires the Court to "defer conclusively" to that precedent.  *See*, *e.g*., *U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) ("[W]e 'defer conclusively' to another circuit's decision when it addresses a question of state law from a state within that circuit.") (quoting *Desiano v. Warner-Lambert & Co*., 467 F.3d 85, 90 (2d Cir. 2006)).  Under controlling Ninth Circuit precedent, benefit-of-the-bargain damages are "based on what a purchaser would have paid at the time of purchase had the purchaser received all the information" (*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015)), notwithstanding (and *not accounting for*) any benefits received after purchase.  *Nguyen v. Nissan N. Am., Inc.*, 2019 WL 3368918, at *6 (9th Cir. July 26, 2019).  These precedents explicitly fulfill the dual purposes of recompense and deterrence under clear California law.  *See*, *e.g*., *Stout v. Turney*, 586 P.2d 1228, 1232 (Cal. 1978).  A belated recall does not remedy the fact of the harm at the time of sale.

*Second*, as a result of the Court's earlier rulings, only Texas Plaintiffs who have suffered manifestation are asserting claims under Texas law.  The Court appears to have overlooked either the existence of the record of manifested harm, or the implications of that record, when

- 1 -

ruling, as a matter of law, that the Texas Plaintiffs would be made whole by a belated recall remedy.

*Third*, the Court went against the overwhelming weight of authority and ignored established eocnomic theory in holding, as a matter of law, that using historical supply under these circumstances as an input to a well-accepted damages model precludes redress for any consumer.  The Order also requires Plaintiffs, in violation of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), to offer a damages model that analyzes what other, hypothetical plaintiffs could have bought from a different, hypothetical GM that never existed.  Here, the actual GM customers suffered actual harm by paying what they actually paid.

*Alternatively*, if the Court decides not to reconsider its grant of summary judgment in favor of GM on the bellwether Plaintiffs' claim for benefit-of-the-bargain damages, Plaintiffs request that that the Court certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b).  Because the Order significantly alters the landscape of this litigation on matters over which there is substantial ground for disagreement, and an immediate appeal may greatly advance the ultimate resolution of this MDL, the Court "should not hesitate to certify an interlocutory appeal."  *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (internal quotation marks omitted).

010440-11/1176748 V1

Respectfully Submitted,

DATED:  August 20, 2019          HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____ */s/ Steve W. Berman* _____
        Steve W. Berman
*steve@hbsslaw.com*
Sean R. Matt
*sean@hbsslaw.com*
Andrew M. Volk
*andrew@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

DATED:  August 20, 2019          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: _____ */s/ Elizabeth J. Cabraser* _____
        Elizabeth J. Cabraser
*ecabraser@lchb.com*
Rachel Geman
*rgeman@lchb.com*

275 Battery St., 29th Floor
San Francisco, CA 94111
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

010440-11/1176748 V1

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on August 20, 2019, which will send notification of such filing to the e-mail addresses registered.

*s/ Steve W. Berman*

Steve W. Berman

010440-11/1176748 V1

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | No. 14-MD-2543 (JMF) |
| GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | |
| This Document Relates to: | |
| ALL ACTIONS | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
RECONSIDERATION OF THE COURT'S AUGUST 6, 2019 SUMMARY JUDGMENT
OPINION AND ORDER, OR, IN THE ALTERNATIVE, MOTION FOR
<u>CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   STANDARD OF REVIEW ..................................................................................... 2

III.  ARGUMENT .......................................................................................................... 3

    A.    Relevant Ninth Circuit authority contradicts the Court's rulings, as
        the Court itself observed. ............................................................................ 3

        1.    California law bases benefit-of-the-bargain damages on
            what a purchaser would have paid at the time of purchase
            without regard to subsequent events. ............................................. 3

        2.    The Court was required to follow the Ninth Circuit's
            interpretation of California law concluding that Plaintiffs
            are entitled to a remedy without regard to subsequent
            repairs. ............................................................................................ 4

        3.    The faithful application of Ninth Circuit and California law
            does not provide a windfall to Plaintiffs. ...................................... 6

    B.    The Court's conclusion that a recall remedy makes Texas Plaintiffs
        whole overlooks that *all* of the Texas Plaintiffs suffered from
        manifested defects. ...................................................................................... 8

    C.    A jury could properly credit Plaintiffs' use of a fixed supply to
        appropriately simulate the but-for market. ................................................. 8

        1.    The Order creates a mismatch between liability theory and
            damage model, and compensates identically situated
            consumers differently. ................................................................... 10

        2.    The Order misconstrues other conjoint decisions. ....................... 12

        3.    Boedeker's market simulation thus appropriately used fixed
            supply. ........................................................................................... 15

IV.   IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS
      ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C.
      § 1292(B) .............................................................................................................. 16

V.    CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apodaca v. Whirlpool Corp.*,
2013 U.S. Dist. LEXIS 176363 (C.D. Cal. Nov. 8, 2013)........................................................3

*Apple, Inc. v. Samsung Electronics Co.*,
2014 WL 976898 (N.D. Cal. Mar. 6, 2014)..........................................................................13

*In re Arris Cable Modem Consumer Litig.*,
327 F.R.D. 334 (N.D. Cal. 2018).........................................................................................13

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
2014 WL 1881075 (S.D.N.Y. May 9, 2014) ..................................................................16, 17

*Balintulo v. Daimler AG*,
727 F.3d 174 (2d Cir. 2013)..........................................................................................16, 18

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
2019 WL 3202745 (S.D.N.Y. July 16, 2019) .......................................................................17

*BCS Servs., Inc. v. Heartwood 88*,
637 F.3d 750 (7th Cir. 2011) .............................................................................................15

*City of N.Y. v. Baretta U.S.A. Corp.*,
524 F.3d 384 (2d Cir. 2008)...............................................................................................16

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).........................................................................................................2, 9

*Daugherty v. Am. Honda Motor Co., Inc.*,
144 Cal. App. 4th 824 (2006) ...........................................................................................3, 4

*Factors Etc., Inc. v. Pro Arts, Inc.*,
652 F.2d 278 (2d Cir. 1981)..................................................................................................5

*Fazio v. Cypress/GR Houston I, L.P.*,
403 S.W.3d 390 (Tex. Ct. App. 2013) ...................................................................................8

*In re Gen. Motors LLC Ignition Switch Litig.*,
2019 WL 3564698 (S.D.N.Y. Aug. 6, 2019)................................................................. *passim*

*In re GM LCC Ignition Switch Litig.*,
2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017)......................................................................2, 3

*In re GM LLC Ignition Switch Litig.,*
2018 WL 1638096 (S.D.N.Y. Apr. 3, 2018)..........................................................................18

*Hadley v. Kellogg Sales Co.,*
324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...............................................................................13

*Hauter v. Zogarts,*
534 P.2d 377 (Cal. 1975) .......................................................................................................4

*In re Joint E. & S. Dist. of N.Y. Asbestos Litig.,*
897 F.2d 626 (2d Cir. 1990)..................................................................................................16

*Klinghoffer v. S.N.C. Achille Lauro,*
921 F.2d 21 (2d Cir. 1990)....................................................................................................17

*Kwikset Corp. v. Superior Court,*
246 P.3d 877 (Cal. 2011) .......................................................................................................3

*Miller v. Fuhu, Inc.,*
2015 WL 7776794 (C.D. Cal. Dec. 1, 2015) .......................................................................13

*Mui Ho v. Toyota Motor Corp.,*
931 F. Supp. 2d 987 (N.D. Cal. 2013) ...................................................................................3

*In re MyFord Touch Consumer Litig.,*
2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ......................................................................5

*Nguyen v. Nissan N. Am., Inc.,*
2019 WL 3368918 (9th Cir. July 26, 2019)................................................................. *passim*

*In re NJOY, Inc. Consumer Class Action Litig.,*
120 F. Supp. 3d 1050 (C.D. Cal. 2015) ..........................................................................13, 14

*Pulaski & Middleman, LLC v. Google, Inc.,*
802 F.3d 979 (9th Cir. 2015) .......................................................................................1, 4, 5, 9

*Roach v. T.L. Cannon Corp.,*
778 F.3d 401 (2d Cir. 2015)..................................................................................................10

*Saavedra v. Eli Lilly & Co.,*
2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) .................................................................12, 13

*Stout v. Turney,*
586 P.2d 1228 (Cal. 1978) ...............................................................................................2, 3, 7

*Swint v. Chambers Cty. Comm'n,*
514 U.S. 35 (1995)................................................................................................................16

*U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*,
   916 F.3d 143 (2d Cir. 2019)...........................................................................1, 4

*Zakaria v. Gerber Prods. Co.*,
   2017 WL 9512587 (C.D. Cal. Aug. 9, 2017)................................................13, 14

## STATUTES

28 U.S.C. § 1292(b)............................................................................................16

Cal. Civ. Code § 1760........................................................................................4

## I.    INTRODUCTION

Plaintiffs respectfully request that the Court reconsider its August 6, 2019 summary judgment Opinion and Order on the Bellwether Economic Loss Plaintiffs' claims for benefit-of-the bargain damages[1] and modify its holding that there is no "benefit-of-the-bargain" remedy. GM knowingly sold millions of dangerous and defective cars, thus subjecting Plaintiffs to unreasonable safety risks.  GM only issued a recall when the defects came to light and the cover-up was no longer tenable.  This fraudulent course of conduct is precisely what the consumer laws at issue were designed to prevent, deter, and punish.  Unfinished recalls made after the cover-up was exposed are not legally sufficient substitutes under state substantive law.[2]

Plaintiffs submit that the Court committed clear error in three, fundamental respects, and that its ruling, if not corrected, would bring about a manifest injustice to millions of damaged consumers.

*First*, the Court declined to follow Ninth Circuit precedent applying California law even though the Second Circuit requires the Court to "defer conclusively" to that precedent.  *See*, *e.g*., *U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) ("[W]e 'defer conclusively' to another circuit's decision when it addresses a question of state law from a state within that circuit.") (quoting *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 90 (2d Cir. 2006)).  Under controlling Ninth Circuit precedent, benefit-of-the-bargain damages are "based on what a purchaser would have paid at the time of purchase had the purchaser received all the information" (*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015)), notwithstanding (and *not accounting for*) any benefits received after purchase.  *Nguyen v. Nissan*

---

[1] *In re GM LLC Ignition Switch Litig.*, 2019 WL 3564698 (S.D.N.Y. Aug. 6, 2019) ("*Order*").

[2] Plaintiffs are grateful for the Court's careful management of this MDL.  Yet the need for this MDL, including both the consumer and the personal injury tracks, would simply not exist if GM had not made the unfortunate cost/benefit decision to engage in conduct that flouted the law.

*N. Am., Inc.*, 2019 WL 3368918, at *6 (9th Cir. July 26, 2019).  These precedents explicitly fulfill the dual purposes of recompense and deterrence under clear California law.  *See*, *e.g.*, *Stout v. Turney*, 586 P.2d 1228, 1232 (Cal. 1978).  A belated recall does not remedy the fact of the harm at the time of sale.

*Second*, as a result of the Court's earlier rulings, only Texas Plaintiffs who have suffered manifestation are asserting claims under Texas law.  The Court appears to have overlooked either the existence of the record of manifested harm, or the implications of that record, when ruling, as a matter of law, that the Texas Plaintiffs would be made whole by a belated recall remedy.

*Third*, the Court went against the overwhelming weight of authority and ignored established economic theory in holding, as a matter of law, that using historical supply under these circumstances as an input to a well-accepted damages model precludes redress for any consumer.  The Order also requires Plaintiffs, in violation of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), to offer a damages model that analyzes what other, hypothetical plaintiffs could have bought from a different, hypothetical GM that never existed.  Here, the actual GM customers suffered actual harm by paying what they actually paid.

In the alternative to reconsideration, Plaintiffs request certification for interlocutory appeal because the Court's Order on hotly-disputed and "close" questions dramatically alters the landscape of this litigation, *Order*, 2019 WL 3564698 at *12, and is hugely consequential to the millions of impacted members of the proposed Classes.

## II.    STANDARD OF REVIEW

The "major grounds justifying reconsiderations are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *In re GM LLC Ignition Switch Litig.*, 2017 WL 3443623, at *1 (S.D.N.Y. Aug. 9,

2017) (internal quotations omitted).  As the Court has noted, the Court has "broad discretion" in determining whether to grant such a motion."  With proposed Classes in the three bellwether states and the remaining 48 jurisdictions waiting in the wings, Plaintiffs request that the Court again exercise that discretion and reconsider and reverse its Order.

### III.   ARGUMENT

**A.   Relevant Ninth Circuit authority contradicts the Court's rulings, as the Court itself observed.**

      **1.   California law bases benefit-of-the-bargain damages on what a purchaser would have paid at the time of purchase without regard to subsequent events.**

In *Stout v. Turney*, the California Supreme Court defined "benefit-of-the-bargain" damages as "satisfying the expectancy interest" and "award[ing] the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive."  586 P.2d 1228, 1232 (Cal. 1978).  In so holding, the court explained that "benefit-of-the-bargain" damages are "a more effective deterrent" than the "out-of-pocket" measure of damages because the former "contemplates an award even when the property received has a value equal to what was given for it."  *Id.*  Similarly, the court in *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 890 (Cal. 2011), held that consumers are "economically harmed" when they pay more for a product than they would have paid if the product were accurately labeled— "whether or not a court might objectively view the products as functionally equivalent."

California courts are particularly concerned with protecting the safety of consumers.  It is "a basic rule of California law" that "a fact can give rise to a duty to disclose and an actionable omission if it implicates safety concerns that a reasonable consumer would find material."  *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 997 (N.D. Cal. 2013); *see also Apodaca v. Whirlpool Corp.*, 2013 U.S. Dist. LEXIS 176363, at *16 (C.D. Cal. Nov. 8, 2013) ("Nondisclosures about safety considerations of consumer products are material."); *Daugherty v.*

*Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 836 (2006) (duty to disclose defect can arise

when there are "safety concerns posed by the defect").  Likewise, California courts have

construed statements about safety liberally in favor of injured consumers, and have held

"promises of safety to be representations of fact" as opposed to non-actionable puffery.  *Hauter*

*v. Zogarts*, 534 P.2d 377, 381 (Cal. 1975).  California law thus does not allow a car manufacturer

to avoid liability for the knowing sale of dangerously defective vehicles simply by belatedly

repairing the defects only after a massive public outcry when the impacts of its fraudulent

misconduct were revealed.  Again, this is a matter of substantive law.  Cal. Civ. Code § 1760, for

example, provides that the statute must "be liberally construed and applied to promote its

underlying purposes, which are to protect consumers against unfair and deceptive business

practices and to provide efficient and economical procedures to secure such protection."

Pursuant to binding Second Circuit law, the Ninth Circuit's interpretation of the foregoing

California law controls.

> **2.      The Court was required to follow the Ninth Circuit's interpretation of
> California law concluding that Plaintiffs are entitled to a remedy without
> regard to subsequent repairs.**

Central to the Court's ruling that the California Plaintiffs have no remedy other than a

belated repair was its disagreement with Ninth Circuit precedent interpreting California law.

*See*, *e.g.*, *Order*, 2019 WL 3564698, at \*6 (explicitly declining to follow *Pulaski & Middleman,*

*LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015), which had interpreted *Kwikset*, and

failing to discuss the implications for this case of *Nguyen v. Nissan N. Am., Inc.*, 2019 WL

3368918 (9th Cir. July 26, 2019)).  However, the Second Circuit directs the Court to "defer

conclusively" to another Circuit Court's opinion that "addresses a question of state law from a

state within that circuit."  *U.S. Bank Nat'l Ass'n*, 916 F.3d at 150 (quoting *Desiano v. Warner-*

*Lambert & Co.*, 467 F.3d 85, 90 (2d Cir. 2006)).[3]  Thus, the Court erred in rejecting *Pulaski*'s

holding that "UCL…restitution is based on what a purchaser would have paid at the time of

purchase had the purchaser received all the information."  *Pulaski*, 802 F.3d at 989.  The Court

also erred in failing to apply *Nguyen*, 2019 WL 3368918, at *7, which relied on *Stout* for the

proposition that damages are measured at purchase.  The Ninth Circuit explained that the

damages "*need not account for benefits received after purchase* [where] the focus is on the value

of the service at the time of purchase.  Instead[,] the focus is on the difference between what was

paid and what a reasonable consumer would have paid at the time of purchase without the

fraudulent or omitted information."  *Id.* at *6 (quoting *Pulaski*, 802 F.3d at 989) (emphasis

added).[4]  The Ninth Circuit's application of *Stout* must govern.

As a result, and pursuant to *Pulaski* and *Nguyen* and the California state-court rulings that

inform those decisions, the California Plaintiffs are entitled to the difference in value between

the cars they thought they were getting (*i.e.*, cars without safety defects known to GM) and the

dangerously defective cars they unwittingly received.  Notably, in *Nguyen*, the Ninth Circuit

*rejected* the lower court's holding that purchasers who "derived value" from the defective part

"by selling [or] repurposing it" would not be entitled to damages.  2019 WL 3368918, at *3.

Instead, those defrauded consumers are entitled to damages precisely because such after-the-fact

---

[3] If there is any exception to this rule, it is only in "the *rare* instance when it can be said *with
conviction* that the pertinent court of appeals has disregarded clear signals emanating from the state's
highest court pointing toward a different rule."  *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 283 (2d
Cir. 1981) (emphasis added).  That is not the case here, where the relevant Ninth Circuit decisions are
fully consistent with California state court decisions on restitution and the calculation of benefit-of-the-
bargain damages in cases involving fraud by the defendant and safety risk to the plaintiff.

[4] The concept of restitution is "treated similarly" under the CLRA and the Song-Beverly Act.  *Nguyen*
2019 WL 3368918, at *6 n.6 (citing *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 58-59
(2006)).  *Nguyen* effectively overrules *In re MyFord Touch Consumer Litig.*, 2016 WL 7734558 (N.D.
Cal. Sept. 14, 2016), insofar as *MyFord* touch holds that *Pulaski* applies only "to situations in which a
plaintiff seeks (1) restitution under (2) California's UCL."  *MyFord Touch*, 2016 WL 7734558, at *18.

benefits are not factored into the calculation. *Id.* at *6. The analysis is not altered by the fact that the damages sought in *Nguyen* were calculated based on the cost of repair, rather than through a conjoint analysis. Either method might be proper in a given case. The salient point is that—just like Plaintiffs here who received at least a partial fix—Class members who received some or all of the "value" of their defective parts in *Nguyen* were *still* permitted to seek benefit-of-the-bargain damages.[5]

### 3. The faithful application of Ninth Circuit and California law does not provide a windfall to Plaintiffs.

The Court expressed concern that allowing Plaintiffs a remedy beyond repair could lead to a "windfall" for Plaintiffs if the remedy does not consider the value of the repair. *Order*, 2019 WL 3564698, at *6. However, Plaintiffs' proposed damage model explicitly accounts for the recall repairs and their timing, and demonstrates that the amount of overpayment damages increases or decreases according to the length of time between a consumer's purchase and the availability of the recall repair. *See* Plaintiffs' Opposition to General Motors LLC's Motion for Summary Judgment against the Bellwether Economic Loss Plaintiffs (Dkt. No. 6059) at 20, 24 (referencing Mr. Boedeker's analysis). Plaintiffs' expert Dr. Joshua Gans also addressed this issue and provided an easy means of ensuring that no Plaintiff will receive a windfall. *See* May 17, 2018 Gans Rep., ¶¶ 20-24 and ¶¶ 50-57 (Dkt. No. 5858, Ex. 217). As Dr. Gans explained:

> This viewpoint [referring to other experts] also suggests an alternative construction of the aggregate level of damages consistent with the theory of harm that between purchase and recall purchasers of at-issue vehicles were driving around at a greater degree of risk. Depending on the length of time they were driving around, compared with a "but for" world that a defect was

---

[5] Tellingly, in the recent diesel fraud class actions against Volkswagen and Fiat Chrysler, the manufacturers collectively paid many billions of dollars in settlements *after* belatedly fixing the cars—begging the question of why they agreed to settle at all if cost of repair is the exclusive benefit-of-the-bargain remedy.

> disclosed immediately and, thus, rectified immediately, the median
> value of harm is as listed in the following table.  In this table, in
> each row *we subtract the 'recall immediately' loss from the
> relevant number calculated by Mr Boedeker* (Figure 20).

*Id.* at ¶ 53 (emphasis added).  This evidence in the record, in particular the calculation where the

entire recall-immediately value is subtracted from the damage amount, should fully address the

Court's concern.

Even outside the four corners of damage model specifications (which implicate classic

jury issues), the belated repair does not retroactively remedy the unreasonable risk to which GM

knowingly subjected Plaintiffs.[6]  If anything, as discussed below, the implications of the Order

provide dangerous incentives to manufacturers to retain the profits made by delaying necessary

recalls *and* continuing to sell massive numbers of defective vehicles.

While the Court is reluctant to issue a ruling "as a matter of policy," *Order*, 2019 WL

3564698, at *17, the Court *is* bound to apply California law, including Ninth Circuit

interpretation of California law.  As discussed above, "the 'benefit-of-the-bargain' rule" should

serve as an "effective deterrent (in that it contemplates an award even when the property

received has a value equal to what was given for it)."  *Stout*, 586 P.2d at 1232.  And California

courts are particularly concerned with protecting the safety of consumers, as demonstrated above

in the *Mui Ho*, *Apodaca*, *Daugherty*, and *Hauter* decisions.  Further, the applicable laws

themselves—not free-floating policies, but *substantive governing laws*—embed protection of

consumer safety in the language, implementation, and interpretation of the statutes themselves,

---

[6] This is not a case in which the manufacturer unknowingly sells vehicles with a non-safety related
defect, later discovers the defect, and corrects the defect within a reasonable time of that discovery—
thereby fulfilling the consumer's bargain.  Indeed, the facts here could not be more different than this
scenario, yet the Court holds as a matter of law that the bargain was fulfilled by a belated repair.
Plaintiffs did not receive the benefit of the bargain, because GM knowingly forced them—for years—to
unwittingly drive dangerous cars and assume unreasonable risks.  GM's pre-sale knowledge, and the fact
that a serious safety defect is at issue, distinguishes this case from a "run-of-the-mill" recall that restores
the bargain.

including provisions for damages. The Court's Order is directly at odds with this well-established California law.

The Court should reconsider its ruling and correct its holding consistent with California law and the Ninth Circuit's binding interpretation thereof.

**B.** **The Court's conclusion that a recall remedy makes Texas Plaintiffs whole overlooks that *all* of the Texas Plaintiffs suffered from manifested defects.**

As the Court held, "[t]he general principle governing damages" in Texas is that a plaintiff should "recover the amount necessary to put him in as good a position as if the contract had been performed." *Order*, 2019 WL 3564698, at *8 (quoting *Smith v. Kinslow*, 598 S.W.2d 910, 912 (Tex. Civ. App. 1980)). In other words, Texas damages law is intended to make the plaintiff whole. The record shows that *all* the Texas Plaintiffs suffered ill-effects from the manifestation of the defects in their cars. *See* Plaintiffs' Opp. To Gen. Motors LLC's Motion for Summary Judgment Against the Bellwether Economic Loss Plaintiffs (Dkt. No. 6059) at 32. Accordingly, the Texas Plaintiffs cannot be made whole by a belated repair as a matter of law; the repair (even if effective) does not compensate for the manifestation.[7] Because the Court did not consider the fact of manifestation in ruling that Texas Plaintiffs can be made whole by an effective recall remedy, the Court should reconsider and change its ruling.

**C.** **A jury could properly credit Plaintiffs' use of a fixed supply to appropriately simulate the but-for market.**

Plaintiffs respectfully submit that the Court's holding regarding the manner in which an economist must calculate benefit-of-the-bargain damages in consumer litigation involving the sale of defective products constitutes clear, manifestly unjust error. The Court held that an

---

[7] Part of the reason why consumers would not knowingly pay full-price for a defective vehicle is because an unreliable vehicle is quite obviously worth less than a reliable one. The appropriate damages here, then, are properly based on the lowered value of the vehicle, assessed "at the time of the sale induced by the fraud." *Fazio v. Cypress/GR Houston I, L.P.*, 403 S.W.3d 390, 395 (Tex. Ct. App. 2013).

economist must calculate such damages by considering how many defective products a defendant would have been willing to sell *if* the defendant had disclosed the defect prior to marketing any of its products. *Order*, 2019 WL 3564698, at *15-16.

Under the Court's reasoning, damages would be based on "factors that have [] no relationship to the actual harm" that the defendant "did or did not cause." Aug. 31, 2018 Gans Rep., ¶ 7 (Dkt. No. 6075, Ex. 41); *see also* May 17, 2018 Gans Rep., ¶¶ 20-24 (Dkt. No. 5848, Ex. 217). This is contrary to fundamental principles of economics, *see, e.g.*, *id*., and violates *Comcast Corp. v. Behrend*, which requires the damages model to be tethered to the plaintiffs' theory of liability. 569 U.S. 27, 35 (2013). The holding, moreover, effectively eliminates damages as a matter of law in certain cases when a defendant knowingly sells an inferior or even dangerous product, which in turn is inconsistent with state law. *See* Aug. 31, 2018 Gans Rep., ¶ 17 (Dkt. No. 6075, Ex. 41).

Plaintiffs respectfully submit that the Court should conclude on reconsideration that a jury could properly base damages on the quantity of defective products that a defendant sold rather than the quantity the defendant would have sold if it had disclosed the defect prior to sale. This is especially so because no previous defective products case appears to have required Plaintiffs to deviate from the actual quantity supplied when calculating the "but for" world, and the Ninth Circuit has held specifically that damages must be construed broadly in a vehicle defect case under California law. *Nguyen*, 2019 WL 3368918, at *4; *see also Pulaski*, 802 F.3d at 989 (holding that Plaintiffs need only establish a reasonable basis for their damages, so long as any computation is not "arbitrary").

1.      **The Order creates a mismatch between liability theory and damage model, and compensates identically situated consumers differently.**

The Order correctly observed that the market price of a product arises from the intersection between supply and demand. *See Order*, 2019 WL 3564698, at *10-11. The Court reasoned that because suppliers can change both price and quantity when selling new products, an economist calculating damages in a defective-products case must also consider the quantity of defective products a company would have sold *had it disclosed the defect prior to sale*. *See id.* at *30-31. This was mistaken under *Comcast* and creates economic outcomes that are inconsistent with state law. *See* Aug. 31, 2018 Gans Rep., ¶¶ 7-18 (Dkt. No. 6075, Ex. 41); May 17, 2018 Gans Rep., ¶¶ 20-24 (Dkt. No. 5848, Ex. 217).

*First*, the Order creates a mismatch between damages and the liability theory, contrary to *Comcast*, which requires "a model for determining classwide damages [that] measure[s] damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) (discussing *Comcast*, 569 U.S. at 35). Here, Plaintiffs' liability theory is that they paid GM for one thing (defect-free, safe vehicles) but received another (dangerously defective vehicles). Plaintiffs' damages model measures the difference between what Plaintiffs and Class members thought they were buying from this defendant and what they received. *See Nguyen*, 2019 WL 3368918, at *7 (explaining that "Plaintiff has demonstrated the nexus between his legal theory . . . and his damages model"). A damages analysis should calculate damages for the vehicles GM actually sold, not the lower number GM might have sold (to different people) if they had told the truth prior to sale. The Order, however, requires Plaintiffs to offer a damages model that analyzes what other, hypothetical plaintiffs could have bought from a different, hypothetical GM that never existed (Aug. 31, 2018 Gans. Rep., ¶ 16 (Dkt. No. 6075, Ex. 41))—

thereby creating a version of the problem found in *Comcast*, where the plaintiffs sought damages for anticompetitive effects that were not attached to their theory of liability.

*Second*, the implications of the ruling are that consumers who have suffered identical harm are compensated differently. Consider two consumers who purchase defective steel from the same hardware store for the same price. The sheets of steel are identical except that they were manufactured by different companies. Under the Order's reasoning, the two manufacturers would receive different damages in their otherwise identical cases against the two companies because, for example, one manufacturer might be highly diversified and only willing to sell this type of steel at a very high price, while the other company might sell only this product and thus have been willing to drop its price considerably. Damages for the two consumers thus vary for reasons that "have no relationship to the actual harm" each defendant "did or did not cause." Aug. 31, 2018 Gans Rep., ¶ 7 (Dkt. No. 6075, Ex. 41).

*Third*, the Order creates economic incentives that are inconsistent with state law because it incentivizes a manufacturer "to knowingly sell defective vehicles." *Id.* at ¶¶ 7, 18 & n.22 (citing relevant literature); *see also id* at ¶16 (noting that this rewards a company for intentionally lying). It also exculpates defendants from their tortious conduct based solely on whether *other* companies could easily supply a product, as the steel example illustrates. *See also* May 17, 2018 Gans Rep., ¶¶ 20-24 (Dkt. No. 5848, Ex. 217). And the Order untethers the amount of damages from the severity of the wrongful conduct by allowing consumers to recover for relatively minor deception—such as a product that contained less fruit juice than advertised—but bars recovery for dangerous defects in motor vehicles purportedly repaired many years after sale.

Case 1:14-md-02543-JMF   Document 7056   Filed 06/20/19   Page 17 of 25

The Order's hypothetical illustrates the above points.  It describes a widget manufacturer that would repair a defective product prior to sale for $5 per widget rather than losing $25 per sale when selling a defective widget.  *See Order*, 2019 WL 3564698, at *14.  The Court is unquestionably correct that this example illustrates precisely what a manufacturer *should* do prior to sale (and, if the manufacturer did so, there would be no lawsuit for the sale of defective widgets).  But in defective-products cases, the manufacturer chooses another, tortious path: providing consumers a product that was only worth $75 and telling them that the product was worth $100.  Having deprived consumers of that $25, the widget manufacturer cannot attempt to pay only $5 in damages after the fact.

### 2.    The Order misconstrues other conjoint decisions.

The Order suggests that it follows several other opinions holding that damages must be based on the intersection of consumer demand with the quantity a producer would be willing to supply if the producer first disclosed its wrongdoing.  *See Order*, 2019 WL 3564698, at *13-15. Plaintiffs respectfully note that the cited opinions did not reach that conclusion.

### a.    Consumer willingness to pay was irrelevant in *Saavedra*, a decision on which the Court relied.

Much of the confusion in this area of law stems from *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014), which involved alleged economic injury from certain prescription drugs.  The *Saavedra* court placed great emphasis on the unique nature of the market for prescription drugs, and the fact that prescription drug prices are *not* always set based on the intersection of consumer willingness to pay and supply.  *See id.* (observing that "numerous complicating factors . . . sever the relationship between price" and consumer demand).  For this reason, a survey of what consumers might be willing to pay for prescription drugs cannot always help an economist, court, or jury determine the price of those drugs.

To be sure, the *Saavedra* court also faulted the plaintiffs' expert for "ignoring supply" in the proposed model. *Saavedra*, 2014 WL 7338930, at *6. But this comment is unclear and misplaced, because *Saavedra* recognized that there was no reason to find that price had any relationship at all to consumer willingness to pay and supply. *See id.*[8] And, importantly, *Saavedra* did not cite any consumer case suggesting a need to consider supply. Instead, it referred to Judge Lucy Koh's opinion in a patent dispute between Apple and Samsung. *See id.* (citing *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 976898, at *11 (N.D. Cal. Mar. 6, 2014)). But damages in patent cases are measured based on a defendant's wrongful profits from infringing and are unrelated to whether the end consumer received the benefit of the bargain. *See, e.g., Apple*, 2014 WL 976898, at *11. Indeed, Judge Koh issued two opinions last year *approving* the use of actual real-world supply when measuring damages in *consumer* litigation, which Plaintiffs discuss below. *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1104–06 (N.D. Cal. 2018); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 372–73 (N.D. Cal. 2018).

> **b.    Neither *Zakaria* nor *NJOY* required plaintiffs to consider how much of a product the defendant would have supplied if it had disclosed its wrongdoing prior to sale.**

The Order cites *Zakaria v. Gerber Prods. Co.*, 2017 WL 9512587, at *10 (C.D. Cal. Aug. 9, 2017), and *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1119 (C.D. Cal. 2015), but neither opinion suggested that it is inappropriate to use actual historical

---

[8] Other aspects of *Saavedra* are simply incorrect. For example, the court stated that the proposed conjoint survey was *also* invalid because it measured demand in the present, whereas all of the drug sales had occurred in the past. 2014 WL 7338930, at *6. This conclusion would effectively bar the use of conjoint in litigation because all litigation surveys are conducted to approximate past demand and is contrary to the almost overwhelming weight of authority approving the use of conjoint analysis to measure benefit-of-the-bargain damages. *See Order*, 2019 WL 3564698, at *15 (collecting cases); *see also, e.g., Miller v. Fuhu, Inc.*, 2015 WL 7776794, at *21 (C.D. Cal. Dec. 1, 2015) ("[N]umerous courts . . . have accepted" conjoint analyses "as reliable methodologies for calculating price premiums on a classwide basis in consumer class actions.").

supply to calculate damages.  The *Zakaria* court expressly distinguished cases, like this one, in which an expert uses real-world prices and real-world supply.  2017 WL 9512587, at *19-20.  It concluded that *without* these features, a "conjoint analysis is not sufficiently tethered to actual market conditions, including pricing and premiums."  *Id.* at *20.  Similarly, while the *NJOY* court faulted the plaintiffs' expert for failing to take into account real market features such as brand, 120 F. Supp. 3d at 1119, the court reached no conclusion about whether it would be appropriate to calculate damages based on actual, historical supply provided that the conjoint survey included other real-world considerations.  *Zakaria* and *NJOY* do not support the proposition that conjoint surveys cannot consider historical supply in calculating damages.

   c.   **Judge Koh's near-simultaneous opinions in *Hadley* and *Arris* support Plaintiffs' position.**

   In light of the foregoing, Plaintiffs ask the Court to reconsider the persuasiveness it ascribed (or failed to ascribe) to the many opinions confirming that it is proper to use actual supply when calculating consumer damages.  *Order*, 2019 WL 3564698, at *15 (collecting more than a dozen cases).  Plaintiffs point in particular to Judge Koh's opinions in *Hadley* and *Arris*. The Court cites *Hadley* for the proposition that it is only proper to use actual quantity supplied to calculate damages when the "inferior" product is already on the market.  *Order*, 2019 WL 3564698, at *15 & n.14.  But that is not how *Hadley* should be read given that Judge Koh upheld the use of a conjoint based on actual quantity supplied seven days later in *Arris*.  In both cases, an expert named Steve Gaskin conducted a conjoint analysis for Plaintiffs and, in both cases, he used real-world prices and real-world quantity in his analysis.  In one case (*Hadley*), he conducted this analysis when the "inferior" product (unhealthy cereal) was widely marketed.  In the other case (*Arris*), the inferior product (a defective modem) was not marketed as such (because no company advertises that it is selling a defective modem).

-14-

Whether the inferior product is available should not impact whether it is appropriate to assess damages based on real-world supply, especially because, in the case of a cover-up, the real-world example does not exist due to defendants' own actions.  *See*, *e.g.*, *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 759 (7th Cir. 2011) (Posner, J.) ("[T]he only remaining issue is the amount of damages . . . .  On that phase of the case the plaintiff has a more relaxed burden of proof . . . especially if as in this case the defendants' conduct has made it difficult for the plaintiff to prove the precise extent of his damages.").  There is no legal or economic basis to distinguish cases involving a product defect, such as *Arris*, from those involving mislabeling of a non-defective product, such as *Hadley*.

### 3.   Boedeker's market simulation thus appropriately used fixed supply.

In light of the foregoing, including *Nguyen*'s mandate to construe damages broadly (*see* 2019 WL 3368918, at \*4), it was appropriate for Boedeker to use fixed supply in approximating the but-for market price.  Thus, the Court should reconsider its holding that the absence of a but-for market price is fatal to Plaintiffs' claims.  *See* Boedeker Bellwether Rep., ¶ 66 (Dkt. No. 5848, Ex. 214) (explaining that the "number of vehicles that were supplied without disclosure in the actual-world is identical to the number of vehicles supplied in the but-for world where the defect was disclosed and for which economic losses have to be computed").[9]  GM's proposed but-for world, which the Court adopted, is incompatible with the Court's definition of the benefit-of-the-bargain theory.  *See also* Boedeker Bellwether Rebuttal (with Errata), ¶ 385 (Dkt. No. 5848, Ex. 215) ("Deriving economic damages from the difference between equilibrium

---

[9] Contrary to the Court's erroneous findings that Boedeker's "model measures only the effect that a disclosed defect would have on *willingness to pay*" and that Boedeker "admits that he did not inquire into New GM's willingness to sell," *Order*, 2019 WL 3564698, at \*13 (emphasis in original), Boedeker acknowledged only that he did not inquire into GM's willingness to sell in a flawed but-for world in which GM never deceived anyone, let alone all Class members.

market quantities and prices in the actual and Dr. List's but-for world is seriously flawed.  Such an economic loss model compensates only a portion of class members obviously and so it cannot be adequate to compute class-wide damages.").

## IV.    IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)

If the Court decides not to reconsider its grant of summary judgment in favor of GM on the bellwether Plaintiffs' claim for benefit-of-the-bargain damages, Plaintiffs request that the Court certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b).  Section 1292(b) gives the district courts "first line discretion to allow interlocutory appeals." *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995).  The Court may certify its Order for such an appeal if it finds that the Order (i) "involves a controlling question of law" about which (ii) "there is substantial ground for difference of opinion," and (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 2014 WL 1881075 (S.D.N.Y. May 9, 2014).  Where, as here, a ruling satisfies these criteria and "involves a new legal question or is of special consequence," the Court "should not hesitate to certify an interlocutory appeal." *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (internal quotation marks omitted).

While Plaintiffs believe the entire Order is worthy of interlocutory review, it suffices for § 1292(b) purposes for the Court to find that a single issue meets the criteria.[10]  Plaintiffs therefore focus on the Court's ruling that Plaintiffs' conjoint analysis is insufficient to prove

---

[10] When a district court grants a motion for interlocutory review under § 1292(b), "the entire order is certified."  *City of N.Y. v. Baretta U.S.A. Corp.*, 524 F.3d 384, 391-92 (2d Cir. 2008).  And once the order is certified, the Second Circuit exercises independent judgment in deciding whether to address issues that are fairly encompassed within the order.  *In re Joint E. & S. Dist. of N.Y. Asbestos Litig.*, 897 F.2d 626, 635 (2d Cir. 1990).

Case 1:14-md-02543-JMF   Document 7056   Filed 08/20/19   Page 22 of 29

benefit-of-the-bargain damages as a matter of law, *Order*, 2019 WL 3564698, at *11, as that crucial holding meets the § 1292(b) standard.

*First*, the Court's rejection of Plaintiffs' conjoint analysis and its ruling that repairs restore the bargain is "controlling" with respect to the bellwether state Plaintiffs' ability to obtain benefit-of-the-bargain damages, because, as the Court noted, "there is no other evidence from which a factfinder could find [such] damages" here. *Id.* at *17. In order to be "controlling," the "resolution of an issue need not necessarily terminate an action," *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990), as it is enough that reversal would "importantly affect the conduct of [the] action." *Atlantica Holdings*, 2014 WL 1881075, at *1. Certainly, in eliminating Plaintiffs' main claim for damages, the Court's Order "importantly affects" the conduct of this action—or, as the Court puts it, "the ruling changes the landscape in *dramatic* ways." *Order*, 2019 WL 3564698, at *17 (emphasis added). By the same token, reversal would have a commensurately dramatic effect, as it would allow Plaintiffs the possibility of obtaining benefit-of-the-bargain damages in this action, and thereby remedy GM's wrongdoing.

*Second*, the Court effectively recognized that there is substantial ground for difference of opinion with respect to Plaintiffs' conjoint analysis when it noted that "the issue is a close one." *Id.* at *11. Indeed, in ruling on whether Plaintiffs' analysis was sufficient to prove benefit-of-the-bargain damages, the Court acknowledged that "various courts have approved of the use of conjoint analyses to measure benefit-of-the-bargain damages—in some cases, no less, analyses proffered by Boedeker himself." *Id.* at *15-16 (citing cases). That is to say that, unlike in *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 2019 WL 3202745, at *2 (S.D.N.Y. July 16, 2019) (Furman, J.), the issue here is *not* "a close question with a clear answer," but one on which courts have differed.

*Third*, an immediate appeal "may materially advance the ultimate termination of the litigation," consistent with § 1292(b).   In fact, prior to GM's initial motion for summary judgment with respect to Plaintiffs' claims for benefit-of-the-bargain damages, GM informed the Court "'that a ruling on its proposed motion would materially advance the litigation.'"  *See In re GM LLC Ignition Switch Litig.*, 2018 WL 1638096, at *1 (S.D.N.Y. Apr. 3, 2018).   The availability of these damages, or the lack thereof, will be a major driver of any resolution of this case, and it makes little sense to proceed through Class certification and trial (to say nothing of discovery and motion practice on the next suite of states) without a final resolution one way or the other.

*Finally*, the Court's Order is hugely consequential to Plaintiffs' proposed Classes of millions of consumers, making interlocutory review all the more appropriate.  *See Balintulo*, 727 F.3d at 186.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court reconsider and reverse its Order.  In the alternative, the Court should certify its rulings for interlocutory appeal given their manifest importance to continued proceedings.

010440-11 1176651 V1

DATED:  August 20, 2019                 HAGENS BERMAN SOBOL SHAPIRO LLP

                                        By: _____ */s/ Steve W. Berman* _____
                                             Steve W. Berman
                                        Sean R. Matt
                                        Andrew M. Volk
                                        1301 Second Avenue, Suite 2000
                                        Seattle, WA  98101
                                        Telephone:  (206) 623-7292
                                        Facsimile:  (206) 623-0594
                                        steve@hbsslaw.com
                                        sean@hbsslaw.com
                                        andrew@hbsslaw.com


DATED:  August 20, 2019                 LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

                                        By: _____ */s/ Elizabeth J. Cabraser* _____
                                             Elizabeth J. Cabraser
                                        Rachel Geman
                                        275 Battery St., 29th Floor
                                        San Francisco, CA 94111
                                        Telephone:  (415) 956-1000
                                        Facsimile:  (415) 956-1008
                                        ecabraser@lchb.com
                                        rgeman@lchb.com

                                        *Co-Lead Counsel with Primary Focus on Economic
                                        Loss Cases*

010440-11  1176651 V1

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on August 20, 2019, which will send notification of such filing to the e-mail addresses registered.

*/s/ Steve W. Berman*
Steve W. Berman
