

Eric B. Fisher
Binder & Schwartz LLP
366 Madison Avenue 6th Floor
New York, NY 10017

(T) 212.933.4551
(F) 212.510.7299
efisher@binderschwartz.com

August 26, 2019

**By ECF and Federal Express**

The Honorable Martin Glenn
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, New York 10004

Re:   *In re Motors Liquidation Company, f/k/a General Motors Corporation, et al.*,
      Case No. 09-50026 (MG)

Dear Judge Glenn:

We write on behalf of the Motors Liquidation Company Avoidance Action Trust (the "AAT"), with the concurrence of the Motors Liquidation Company GUC Trust (the "GUC Trust"), pursuant to the Court's request at the August 12, 2019 hearing that the Trusts explore the feasibility of winding down the AAT by transferring the remaining funds to the GUC Trust. We are writing to report that, after careful analysis, the Trusts have concluded that transferring the AAT's assets to the GUC Trust would be detrimental to the beneficiaries of both the AAT and the GUC Trust. As described in greater detail below, a transfer of the AAT's assets to the GUC Trust would likely subject those assets to taxation. Further, even were there no adverse tax consequences, the process of seeking to transfer the AAT's assets would require each Trust to incur costs that would not be offset by any potential benefits, and any transfer would expose the beneficiaries of the AAT to potential conflicts of interest.

**Background of the Two Trusts**

Pursuant to the Plan, the GUC Trust and the AAT were created as separate Trusts, with distinct roles in managing the liquidation of the MLC estate. The GUC Trust was to be responsible for resolving claims, distributing the New GM Securities to unsecured creditors with allowed claims, and winding down the affairs of the MLC estate. The AAT was to be responsible for prosecuting the Term Loan Avoidance Action and distributing the proceeds to its beneficiaries: the DIP Lenders and unsecured creditors with allowed claims. At the time the two Trusts were created, the same population of unsecured creditors were beneficiaries of both the GUC Trust and the AAT.

However, after creation of the GUC Trust, and as contemplated by the Plan, the GUC Trust sought and obtained no-action relief from the United States Securities and Exchange Commission thereby allowing the GUC Trust to change the form of its units from entries on the books and records of the GUC Trust to tradeable global certificates registered in the name of the Depository Trust Company ("DTC"). In June 2012, the GUC Trust units became transferable in accordance with DTC procedures.

The Honorable Martin Glenn
August 26, 2019
Page 2

After that time, the population of original unsecured creditors that are beneficiaries of the AAT became distinct from the holders of freely-tradable GUC Trust units. Since issuance, the total volume of trading in GUC Trust units has exceeded 140 million units. Because the DTC is the registered holder of the global note representing all outstanding GUC Trust units, the GUC Trust does not know the identities of the beneficial owners of the units. Thus, although the precise difference in the beneficiary populations is not known by the Trusts, it is believed to be significant based on the extensive trading of GUC Trust units.

Although the AAT's prospects for recovering proceeds for distribution were initially uncertain, following the Second Circuit's decision on the effectiveness of the UCC-1 termination statement, it became more likely that the AAT would succeed in recovering proceeds for distribution. It also became evident that because the two Trusts had different beneficiaries, their interests could diverge, and they should take steps to address potential conflicts. A determination was made that rather than appoint a new trust administrator for one of the Trusts, it would be more efficient and less costly to have Wilmington Trust Company continue as trust administrator for each Trust and to replace FTI Consulting, Inc. as monitor for the AAT. Accordingly, FTI Consulting, Inc. continued as monitor of the GUC Trust and the Court appointed Arthur J. Gonzalez to serve as the AAT's independent monitor. *See generally* Dkt. Nos. 13164, 13229.

**The Trusts Have Distinct Tax Treatment**

The GUC Trust and the AAT have differing tax status with the Internal Revenue Service (the "IRS").

The GUC Trust's status as a Disputed Ownership Fund taxed as a Qualified Settlement Fund was approved by the IRS in a private letter ruling issued on March 2, 2011. Based on its tax status, the GUC Trust is a taxable entity for U.S. federal income tax purposes and pays taxes based on its modified gross income. For example, the income and gains generated on the distribution of New GM common stock and warrants to allowed claimants were taxable to the GUC Trust.

Section 7.1(c) of the Trust Agreement provides that the AAT is a liquidating trust that is treated as a grantor trust formed with the sole purpose of liquidating and distributing its assets pursuant to the Plan in accordance with Treasury Regulation section 301.7701-4(d). In connection with each request to extend the duration of the AAT beyond its initial term, the AAT has sought and obtained private letter rulings from the IRS that the additional trust duration will not adversely impact its tax status as a liquidating trust. Also, as a liquidating trust, the distribution of assets has no tax consequences to the AAT, but rather to the beneficiaries of the Trust.

It is the understanding of the AAT Administrator and GUC Trust Administrator that if the AAT were to distribute the balance of proceeds to the GUC Trust (and not directly to its beneficiaries), (i) the AAT might lose its status as a liquidating trust and there could be adverse

The Honorable Martin Glenn
August 26, 2019
Page 3

tax implications, and (ii) any payment to the GUC Trust would likely be considered income to the GUC Trust and therefore would be subject to tax.

**It Is Not in the Interest of the AAT's Beneficiaries to Transfer the AAT's Assets to the GUC Trust**

The AAT Administrator, the GUC Trust Administrator and each Trust's respective monitor have concluded that it is likely that a transfer of the AAT's assets to the GUC Trust would be detrimental to the Trusts. With respect to the AAT, the likely tax consequences that would result from such a transfer would be very costly to the AAT beneficiaries. With respect to both the AAT and the GUC Trust, before initiating such a transfer, both Trusts would have to seek supplemental private letter rulings from the IRS, which, on average, have taken the Trusts four to six months to obtain. Then, even if the tax implications were not prohibitive, one or both Trust Agreements would have to be amended and notice would have to be provided to all beneficiaries of the Trusts. And, the elimination of the AAT and the changes to the structure of the GUC Trust might require a modification to the Plan, along with corresponding notices and the Court's approval.

In addition, because of the differing beneficiaries of the Trusts, separate legal and administrative work would have to be performed to protect each distinct beneficiary pool. Accordingly, it is likely that even in the absence of adverse tax consequences, the costs of transferring the AAT's assets to the GUC Trust would far outweigh any potential savings to the AAT's beneficiaries and would impose a cost to the GUC Trust's beneficiaries for which there would be no corresponding benefit.

Further, even were savings possible, given the uncertainty of the pending settlement between the GUC Trust and the Economic Loss Plaintiffs, there exists the potential for a conflict of interest that requires that the interests of the AAT's beneficiaries be considered by their administrator subject to advice and review by separate counsel and monitor.

For these reasons, the Trust Administrators and the court-appointed monitors of both the AAT and the GUC Trust have concluded that a transfer of the assets of the AAT to the GUC Trust is not in the best interest of the beneficiaries of their respective Trusts.

We thank the Court for its attention to this letter.

Respectfully,

/s/ Eric B. Fisher

Eric B. Fisher

cc:    All counsel of record (via ECF)