# brownrudnick

EDWARD S. WEISFELNER
direct dial: 212.209.4900
eweisfelner@brownrudnick.com

October 23, 2019

<u>VIA EMAIL AND ECF FILING</u>

The Honorable Martin Glenn
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

RE:    **In re Motors Liquidation Company,** *et al.,*
       **Case No. 09-50026 (MG) – Proposed Briefing Schedule for Late Claims**

Dear Judge Glenn

As the Court knows, the undersigned, together with Sander Esserman of the Stutzman, Bromberg, Esserman & Plifka firm, serve as designated bankruptcy counsel for the Economic Loss Plaintiffs as that term has been generally used in these proceedings. We write in response to the letter sent to Your Honor yesterday, just before 5 p.m., from counsel to the GUC Trust. That letter seeks to update the Court on recent meet and confer sessions, and requests a status conference in order to finalize a briefing schedule advanced by the GUC Trust and the so called Participating Unit Holders. For the reasons outlined below, and as we hope to be able to elaborate on at any scheduling conference the Court holds, we believe moving forward on the schedule proposed to deal with the issues outlined is not in the best interests of the parties or this Court.

In the first instance, we believe a little more relevant background is important. First, Judge Furman's August 6, 2019 decision is the subject of a contested motion for reconsideration or, in the alternative, a request that the decision be certified for an interlocutory appeal. Briefing on that contested matter was only recently concluded this past Friday, October 18, 2019.[1] Judge Furman has a scheduling conference set for December 18, 2019. While there is no guarantee that Judge Furman will decide the motion on any particular schedule, many of the participants believe it is likely that a decision will be rendered in advance of the December 18th conference. Were the District Court to reconsider its August Decision, the parties might be better off moving forward on the February 2019 Settlement Agreement rather than litigating the issues that were sought to be resolved in that agreement.

Second, all of the parties, with the notable exception of the Avoidance Action Trust ("<u>AAT</u>") and the remaining PIWD Plaintiffs, participated in an all-day mediation session overseen by former district court judge Layn Phillips on September 11, 2019. Certain proposals were advanced by and between the participants to that mediation session intended to globally resolve all contested matters in both the District Court and this Court. Without wanting to violate mediation confidentiality, suffice it to

---

[1]    The relevant briefing on this issue is attached.



October 23, 2019
Page 2

say that the mediation is still very much active.  Indeed, only recently, we have initiated a dialogue with counsel to the AAT that may result in their participation in and contribution toward a global settlement.

Finally, it should be noted that, as far as we are aware, neither counsel for the AAT or the remaining PIWD Plaintiffs have been consulted about either the issues suggested or the briefing schedule proposed by counsel to the GUC Trust.

It is our view that the parties should not go back to all-out litigation, including briefing hotly contested issues, until the declaration of an impasse in the mediation.  In addition, we submit that if Judge Furman were to reconsider his August decision, as we believe he should, the parties would be better served by reviving the Settlement Agreement and moving forward on the same as expeditiously as possible.

Separate and apart from our concern about the timing of restarting the years' long litigation that was the subject of no less than three fully negotiated settlement agreements, we think there are nuances involved in the issues as framed by the GUC Trust that should be considered before the parties are sent off to brief those issues.  For example, New GM contends that the finding of a "due process violation" was only as to the 2009 Sale Order and not with regard to the Bar Date Order.  These and other subtle issues should be explored before briefing is ordered.  Indeed, if the parties are really interested in narrowing issues quickly, we submit that the first issue that should be briefed following an impasse in the mediation and/or the District Court's denial of the reconsideration motion is the equitable mootness issue.

We thank the Court for its attention and we are available if the Court has any questions or needs any additional information.

Respectfully submitted,

**BROWN RUDNICK LLP**

*/s/ Edward S. Weisfelner*
Edward S. Weisfelner

Attachments.
63528565 v1

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GENERAL MOTORS LLC | ) | No. 14-MD-2543 (JMF) |
| IGNITION SWITCH LITIGATION | ) | |
| | ) | Hon. Jesse M. Furman |
| *This Document Relates To All Actions* | ) | |
| | ) | |

## DEFENDANT GENERAL MOTORS LLC'S MEMORANDUM
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OR
## INTERLOCUTORY APPEAL OF THE COURT'S AUGUST 6, 2019 SUMMARY
## JUDGMENT OPINION AND ORDER

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654-3406
Phone:  312-862-2000
Fax:  312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

LEGAL STANDARD ........................................................................................... 2

ARGUMENT ....................................................................................................... 3

I. THE COURT CORRECTLY APPLIED CALIFORNIA LAW ON THE
BENEFIT-OF-THE-BARGAIN MEASURE OF DAMAGES. ........................................ 3

    A. Neither *Nguyen* Nor *Pulaski* Applies To This Court's Holdings Regarding
The Application Of California's Benefit-Of -The-Bargain Damages
Measure ..................................................................................................... 4

    B. The Second Circuit's Rule Regarding Deference To Another Circuit's
Decisions Does Not Apply, But Even If It Did, The Rule Does Not
Require Or Allow This Court To Ignore State Court Authority ...................... 6

    C. Plaintiffs' Policy Arguments Are Contrary To California Law ...................... 8

II. THE COURT CORRECTLY HELD THAT TEXAS FOLLOWS THE "LESSER
OF" RULE, WHICH ALSO APPLIES WHERE A DEFECT HAS
MANIFESTED. ....................................................................................................... 10

III. THE COURT CORRECTLY HELD THAT BOEDEKER FAILED TO
DETERMINE MARKET-BASED DAMAGES. ....................................................... 13

    A. Under Bellwether State Law, Difference In Value Damages Require Proof
Of A Decrease In Market Price ..................................................................... 13

    B. Under Bellwether State Law As Well As Basic Economics, To Determine
A Decrease In Market Price, Boedeker Was Required To Account For
Willingness To Sell *At Actual And But-For Prices*. ........................................ 14

    C. Plaintiffs' Experts Concede They Did Not Consider *Willingness To Sell At
Any Alleged Actual Or But-For Prices*. ........................................................ 15

    D. Plaintiffs' Claim That A Change in Willingness To Pay Alone
"Sufficiently Approximates" A Change In Market Prices Is Contrary To
Law And Violates Economics 101. ............................................................... 16

    E. Plaintiffs' Claim That A Change In Willingness To Pay Alone
"Sufficiently Approximates" A Change In Market Prices Also Has No
Basis In The Record .................................................................................... 17

i

## TABLE OF CONTENTS (CONT'D)

                                                                                                            **Page**

F.      Plaintiffs' Purported "Policy" Arguments Are Contrary To Bellwether
        State Law. ........................................................................................................ 19

G.      Plaintiffs' *Comcast* Argument Is Incorrect And Irrelevant................................. 22

IV.    THERE IS NO BASIS FOR AN INTERLOCUTORY APPEAL.................................. 22

CONCLUSION.................................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Adelphia Commc'ns. Corp.*,
  2008 WL 361082 (S.D.N.Y. Feb. 11, 2008)...................................................22, 24

*AIU Ins. Co. v. TIG Ins. Co.*
  577 Fed. Appx. 24 (2d Cir. 2014).................................................................7

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012), *as amended* (July 13, 2012) .......................2

*Apple, Inc. v. Samsung Elecs. Co.*,
  2014 WL 976898 (N.D. Cal. Mar. 6, 2014).................................................16

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018)..................................................................14

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
  2019 WL 3202745 (S.D.N.Y. July 16, 2019) .......................................23, 24

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) .......................................................................9

*Casey v. Merck & Co., Inc.*,
  653 F.3d 95 (2d Cir. 2011)..............................................................................7

*Celotex Corp v. Catrett*,
  477 U.S. 317 (1986).......................................................................................11

*Century Pacific, Inc. v. Hilton Hotels Corp.*,
  574 F. Supp. 2d 369 (S.D.N.Y. 2008).........................................................25

*Chin v. Chrysler Corp.*,
  182 F.R.D. 448 (D.N.J. 1998)......................................................................10

*Chowning v. Kohl's Dep't Stores, Inc.*,
  733 F. App'x 404 (9th Cir. 2018) ..................................................................8

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)........................................................................................22

*Desiano v. Warner-Lambert & Co.*,
  467 F.3d 85 (2d Cir. 2006).............................................................................7

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Ecommission Solutions, LLC v. CTS Holdings, Inc.*,
 2016 WL 6901318 (S.D.N.Y. Nov. 23, 2016) ...........................................................6

*Estevez-Yalcin v. The Children's Village*,
 2006 WL 3420833 (S.D.N.Y. Nov. 27, 2006) .........................................................24

*Evinger v. McDaniel Title Co.*,
 726 S.W.2d 468 (Mo. Ct. App. 1987) ......................................................................13

*In re Facebook, Inc., IPO Secs. & Derivative Litig.*,
 986 F. Supp. 2d 524 (S.D.N.Y. 2014) ...............................................................23, 25

*Factors Etc., Inc. v. Pro Arts, Inc.*,
 652 F.2d 278 (2d Cir. 1981) ...............................................................................7, 8

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
 174 F.R.D. 332 (D.N.J. 1997) ..................................................................................10

*Gaind v. Cordero*,
 515 F. App'x 68 (2d Cir. 2013) ...............................................................................11

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
 22 F.3d 1219 (2d Cir. 1994) .....................................................................................12

*Garber v. Office of the Comm'r of Baseball*,
 120 F. Supp. 3d 334 (S.D.N.Y. 2014) ......................................................22, 23, 24

*Garland v. Herrin*,
 724 F.2d 16 (2d Cir. 1983) .......................................................................................19

*In re Gen. Motors LLC Ignition Switch Litig.*,
 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ......................................................4, 11

*In re Gen. Motors LLC Ignition Switch Litig.*,
 2016 WL 4410008 (S.D.N.Y. Aug. 18, 2016) ...........................................................6

*In re Gen. Motors LLC Ignition Switch Litig.*,
 257 F. Supp. 3d 372 (S.D.N.Y. 2017) .........................................................4, 11, 12

*GHK Assocs. v. Mayer Grp., Inc.*,
 224 Cal. App. 3d 856, 274 Cal. Rptr. 168 (Cal. Ct. App. 1990)..............................17

*Grant & Eisenhofer, P.A. v. Bernstein Liebhard, LLP*,
 2016 WL 5416502 (S.D.N.Y. Sept. 28, 2016) ...........................................................3

*Hadley v. Kellogg Sales Co.*,
 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...................................................................14

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Hand Elecs., Inc. v. Snowline Joint Unified Sch. Dist.*,
   21 Cal. App. 4th 862 (1994) .................................................................6

*Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*,
   443 S.W.3d 820 (Tex. 2014)................................................................14

*Isra Fruit Ltd. v. Agrexeco Agric. Exp. Co. Ltd.*,
   804 F.2d 24 (2d Cir. 1986)..................................................................24

*Kimes v. Grosser*,
   195 Cal. App. 4th 1556 (2011) .............................................................6

*Kin Long Ko v. Holder*,
   312 F. App'x 429 (2d Cir. 2009) .........................................................11

*Koehler v. Bank of Bermuda, Ltd.*,
   101 F.3d 863 (2d Cir. 1996)................................................................24

*Kwikset Corp. v. Superior Ct. of Orange Cty.*,
   246 P.3d 877 (Cal. 2011) .....................................................................8

*Magnuson v. Newman*,
   2013 WL 5942338 (S.D.N.Y. Nov. 6, 2013) ........................................3

*In re Marriage of Cream*,
   16 Cal. Rptr. 2d 575 (Cal. Ct. App. 1993) .........................................14

*Marsu, B.V. v. Walt Disney Co.*,
   185 F.3d 932 (9th Cir. 1999) ..............................................................17

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
   174 F. Supp. 2d 4 (S.D.N.Y. 2001) ...................................................23

*Montanile v. Nat'l Broad. Co.*,
   216 F. Supp. 2d 341 (S.D.N.Y. 2002)..................................................2

*Nguyen v. Nissan North America, Inc.*,
   932 F.3d 811 (9th Cir. 2019) ..................................................... *passim*

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ..............................................16

*Orr Chevrolet, Inc. v. Courtney*,
   488 S.W.2d 883 (Tex. App. 1972)..........................................10, 11, 12

*Pac. States Sav. & Loan Co. v. Hise, State Guar.*,
   25 Cal. 2d 822 (Cal. 1945)..................................................................14

Case 1:14-mb-02543-JMF    Document 7290    Filed 10/07/19    Page 9 of 35

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Peterson v. Cont'l Boiler Works, Inc.*,
    783 S.W.2d 896 (Mo. 1990) ........................................................................14

*Phillips v. City of New York*,
    775 F.3d 538 (2d Cir. 2015)......................................................................3, 11

*Pla v. Renaissance Equity Holdings LLC*,
    2013 WL 3185560 (S.D.N.Y. June 24, 2013) ...........................................3

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) .......................................................... *passim*

*Redwood City Elementary Sch. Dist. v. Gregoire*,
    276 P.2d 78 (Cal. Ct. App. 1954) .............................................................13

*Robi v. Five Platters, Inc.*,
    918 F.2d 1439 (9th Cir. 1990) ...................................................................17

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989).......................................................................7

*Saavedra v. Eli Lilly & Co.*,
    2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ........................................16

*Silvas v. Gen. Motors, LLC*,
    2014 WL 1572590 (S.D. Tex. Apr. 17, 2014) .........................................10

*SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*,
    2014 WL 6603951 (S.D.N.Y. Nov. 20, 2014)..........................................2

*Stout v. Turney*,
    586 P.2d 1228 (Cal. 1978) .....................................................................4, 9

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson*,
    2016 WL 6562075 (C.D. Cal. Aug. 9, 2016)............................................17

*In re Tobacco Cases II*,
    240 Cal. App. 4th (Cal. Ct. App. 2015) ............................................7, 8, 10

*In re Toyota Motors Corp. Hybrid Brake Mktg. Sales Pracs. & Prods. Liab. Litig*,
    915 F. Supp. 2d 1151, 1154 (C.D. Cal. 2013). ........................................12

*U.S. Bank Natl. Assn. v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019)......................................................................7

*Van Buskirk v. United Grp. of Companies, Inc.*,
    2019 WL 3850584 (2d Cir. Aug. 16, 2019).............................................2

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Vista Chevrolet Inc. v. Lewis*,
    704 S.W.2d (Tex. App. 1985)................................................................13

*Zakaria v. Gerber Prod. Co.*,
    2017 WL 9512587 (C.D. Cal. Aug. 9, 2017)....................................16, 17

*Zakaria v. Gerber Prod. Co.*,
    755 F. App'x 623 (9th Cir. 2018) ........................................5, 13, 17, 22

**Statutes**

28 U.S.C. § 1292(b) ......................................................................23, 24, 25

**Rules**

Fed. R. Civ. Proc. 23..........................................................................22

Fed. R. Civ. Proc. 56(c) ......................................................................11

Fed. R. Civ. Proc. 59(e) ........................................................................2

Fed. R. Evid. 408 ...................................................................................6

Local Civil Rule 6.3................................................................................2

**Other Authorities**

Judicial Council of California Civil Jury Instruction 3903J: Damage to Personal
    Property (Economic Damage)..........................................................6

Walter Nicholson and Christopher Snyder, *Microeconomic Theory*............14

## INTRODUCTION

Plaintiffs' reconsideration motion is contrary to well-settled Bellwether state law and ignores the summary judgment record, including dispositive admissions by plaintiffs and their alleged damages experts. Plaintiffs provide no basis for the Court to revisit its well-reasoned decision, one that Judge Glenn has described as a "remarkable...carefully crafted opinion." 8/12/19 Bankr. Hearing Tr. at 55 (Bankr. Dkt. 14612).

*First*, the Court correctly held that under California's benefit-of-the-bargain measure of damages, New GM's recall repairs could reduce or eliminate plaintiffs' benefit of the bargain damages altogether. Plaintiffs' argument that this Court should have disregarded settled California damages law and instead "defer[red] conclusively" to the Ninth Circuit's decisions in *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015), and *Nguyen v. Nissan North America, Inc.*, 932 F.3d 811, 820–21 (9th Cir. 2019), is simply wrong. Pls. Memo at 1-2. Neither case addressed California law's requirement that plaintiffs seeking benefit-of-the-bargain damages may only claim the *lesser of* cost of repair or market value, the issue before this Court. Moreover, under the law, this Court was not required to defer to either of those decisions.

*Second*, the Court correctly held that Texas measures damages by the lesser of cost of repair or the difference in fair market value and does not permit benefit-of-the-bargain recovery where a defendant has repaired a defective vehicle at no cost to plaintiffs. On reconsideration, plaintiffs now claim (and argue) for the first time that they may recover for the defect manifestation itself, regardless of any economic loss or injury. But plaintiffs provide no evidence or law to support their new claim, and Texas law makes clear that the "lesser of" rule applies even where a defect has manifested.

*Third*, plaintiffs offer no basis in law or the record for the Court to reconsider its holding that Boedeker's damages methodology fails to measure a difference in *market* value under

Bellwether state law.  Plaintiffs *and* Boedeker concede that Boedeker's methodology does not consider or address *willingness to sell at actual and but-for prices*, which is legally required under Bellwether state law to determine any alleged difference-in-value damages.

In sum, plaintiffs' motion identifies no error at all, much less a clear error, cites no change in controlling law, and provides no other reason for the Court to reconsider its decision.

## LEGAL STANDARD

"Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"  *SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*, 2014 WL 6603951, at *1 (S.D.N.Y. Nov. 20, 2014) (Furman, J.).  Such a motion is "an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority.  The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . ."  *Van Buskirk v. United Grp. of Companies, Inc.*, 2019 WL 3850584, at *3 (2d Cir. Aug. 16, 2019) ("the district court overlooked nothing" when plaintiffs sought to add evidence and new arguments on reconsideration); *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002) (Reconsideration is an "extraordinary remedy to be employed sparingly. . . .").

A reconsideration motion "is not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided." *Id*.  It also is not "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012).

Arguments "raised for the first time in plaintiffs' motion for reconsideration" are "not properly presented" and are therefore "waived." *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015).[1]

Plaintiffs' motion here does satisfy these exacting standards or warrant the "extraordinary" relief they request.

## ARGUMENT

## I. THE COURT CORRECTLY APPLIED CALIFORNIA LAW ON THE BENEFIT-OF-THE-BARGAIN MEASURE OF DAMAGES.

Plaintiffs cite no case law controverting the Court's conclusion that under California, Missouri, and Texas law, plaintiffs claiming benefit-of-the-bargain damages may only seek "the *lesser* of the cost to repair the defective vehicle *or* the difference in market value." SJ Op. at 8 (emphasis added). Instead, plaintiffs ask the Court to ignore the settled California law on this point and "defer conclusively" to two Ninth Circuit cases that do not even address California law holding that post-sale repairs can reduce or eliminate point of sale damages. *Compare* Pls. Mem. at 1, 3-6, *with* SJ Op. 16-18.

As an initial matter, plaintiffs never before made this "deference" argument, raising it now for the first time in their reconsideration motion.[2] It has thus been waived. *Phillips* 775 F.3d at 544. Regardless, plaintiffs' argument is contrary to (i) the Ninth Circuit cases on which they rely, (ii) binding Second Circuit law, and (iii) binding California state law.

---

[1] *See also Magnuson v. Newman*, 2013 WL 5942338, at *1 (S.D.N.Y. Nov. 6, 2013) (Furman, J.) (denying reconsideration of summary judgment where plaintiffs failed to assert factual arguments previously); *Pla v. Renaissance Equity Holdings LLC*, 2013 WL 3185560, at *1 (S.D.N.Y. June 23, 2013) (Furman, J.) (denying reconsideration when plaintiffs argued for the first time that they had no opportunity to explore defendants' conduct); *Grant & Eisenhofer, P.A. v. Bernstein Liebhard, LLP*, 2016 WL 5416502, at *1 (S.D.N.Y. Sept. 28, 2016) (Furman, J.) (denying reconsideration when movant "did not make the argument in its initial motion papers").

[2] *See, e.g.*, July 29, 2019 Lead Counsel Ltr. (Dkt. 6987) (no argument Court owes conclusive deference to *Nguyen*).

A.    Neither *Nguyen* Nor *Pulaski* Applies To This Court's Holdings Regarding The Application Of California's Benefit-Of-The-Bargain Damages Measure.

Plaintiffs claim that the Ninth Circuit's *Nguyen* and *Pulaski* decisions "contradict" the Court's holding regarding recall repairs under California law, because those cases purportedly hold that subsequent events—even repairs that fully fix an alleged defect at no cost—must be ignored in assessing plaintiffs' entitlement to benefit-of-the-bargain damages. Pls. Mem. at 3. Plaintiffs' argument makes no sense and is not the law anywhere. *See* SJ Op. at 26 n. 10 ("If Plaintiffs' argument that post-sale remedies could never be considered were correct, then short of a court judgment, no seller could ever give or restore a person's benefit-of-their bargain post-sale, and double recovery would be commonplace." (quoting New GM's SJ Reply)). Moreover, plaintiffs simply regurgitate the same points and passages of *Nguyen* and *Pulaski* they argued before on summary judgment, claiming post-sale recalls and other "subsequent events" should never be considered when *measuring* damages at the time of sale.[3]

The Court has already fully considered these arguments and rejected them, correctly holding that Bellwether state law recognizes a distinction between the questions of (i) *when* damages are measured and (ii) *whether* plaintiffs are entitled to recover those damages.[4] The Court thus held—consistent with *Nguyen, Pulaski, Stout v. Turney*, 586 P.2d 1228, 1232 (Cal. 1978), and its own prior rulings *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 401 (S.D.N.Y. 2017) ("FACC MTD Op."); *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL

---

[3] Pls. Memo at 5 (such measurements "need not account for benefits received after purchase" (quoting *Nguyen*, 932 F.3d at 820–21; citing *Pulaski*, 802 F.3d at 989; *compare with* July 29, 2019 Ltr. from Lead Counsel re *Nguyen* (Dkt. 6987), *2 (quoting *Nguyen*, 932 F.3d at 820–21)); Pls. SJ Opp. (Dkt. 6059), at 27-28 (quoting *Pulaski*, 802 F.3d at 989).

[4] SJ Op. at 11 n. 5 ("[A]lthough the Court has held that benefit-of-the-bargain damages must be measured at the 'time of sale'—i.e., when the bargain in question was struck—it does not follow that subsequent events cannot mitigate or otherwise reduce a plaintiff's entitlement to such damages.").

3920353, at \*10 (S.D.N.Y. July 15, 2016) ("TACC MTD Op.")—that benefit of the bargain damages must be measured as a difference in market value at the time of purchase.[5]  SJ Op. 10, 11, 26.  But the Court further held that such damages must be reduced (or completely eliminated) when a defendant repairs an alleged defect.  SJ Op. 16-18 ("defendant's mitigation of an injury may leave the plaintiff unable to prove a right to . . . damages").

*Nguyen* and *Pulaski* simply do not address post-sale repairs, the "lesser of" rule, or California's mitigation doctrine.  In neither case did the defendant attempt to eliminate or mitigate any alleged injury.  *Nguyen*, 932 F.3d 811; *Pulaski*, 802 F.3d 979.  Instead, the Ninth Circuit addressed whether the post-sale "benefits" plaintiffs derived from *using* the products had to be accounted for in the difference in market value calculation.[6]  Because neither *Nguyen* nor *Pulaski* addressed California's law regarding post-sale repairs and/or mitigation, neither decision contradicts or undermines this Court's ruling.[7]

---

[5]  Plaintiffs erroneously suggest the Court's reference to a "contrary conclusion" in *Pulaski* pertained to the Court's discussion of the California mitigation doctrine.  Pls. Mem. at 4-5.  The Court's opinion, however, explains that its potential disagreement is with the *Pulaski*'s suggestion that California might permit recovery for subjective rather than objective loss. SJ Op. at 14-15.  But plaintiffs and Boedeker here do not claim they can recover for some undefined subjective losses.  Moreover, New GM respectfully suggests that *Pulaski*'s reference to "would have paid" does not indicate it would have approved recovery of a subjective loss rather than a difference in market value.  The Court held that the term "would have paid" is ambiguous and could mean subjective willingness to pay (*e.g.*, would have been willing to pay) or the price a buyer would in fact pay in the market (*e.g.*, would have paid because that was the market value).  *Id.* at 10 n. 4.  The *Pulaski* court also emphasized that the damages model at issue measured the actual "monetary loss" based on a "Smart Pricing" discount calculated using the defendant Google's own "internally-calculated price adjustment," which Google used to set advertising prices that would have been paid in the actual market.  *Pulaski*, 802 F.3d at 982, -89.  Finally, the Ninth Circuit's subsequent decision in *Zakaria v. Gerber Prod. Co.*, 755 F. App'x 623, 624–25 (9th Cir. 2018), makes clear that California law does not permit recovery based on willingness-to-pay alone.  *Id.* at 625 (recognizing that because "the subjective value consumers place" on an attribute does not "set the price" for a product, the willingness to pay measured by "conjoint analysis alone" does "not create a genuine issue of material fact regarding the amount of restitution or actual damages." (citing *Pulaski*, 802 F.3d at 989)).

[6]  *Nguyen* criticized the district court for focusing on post-purchase "performance issues" and the value the plaintiff derived from driving the vehicle "for approximately 26,629 miles before" malfunction.  932 F.3d at 814-16, 820.  Likewise, *Pulaski* faulted the district court for insisting that a damage model had to account for the revenue generated for a plaintiff from ads placed on inferior websites.  *See* 802 F.3d at 984, 989 (damage model based on a difference in market price plaintiff would have in fact paid for ads, not a difference in revenue generated by the ads).

[7]  Plaintiffs inexplicably suggest that because Volkswagen and Fiat Chrysler in different cases having different factual allegations voluntarily "paid many billions of dollars in settlements *after* belatedly fixing the cars," plaintiffs here

5

**B.      The Second Circuit's Rule Regarding Deference To Another Circuit's
         Decisions Does Not Apply, But Even If It Did, The Rule Does Not Require Or
         Allow This Court To Ignore State Court Authority.**

Plaintiffs do not dispute the Court's holding that California law follows the "traditional

rule that the measure of damages for tortious injury to personal property—such as an automobile—

is the lesser of (i) the diminution in value or (ii) the reasonable cost of repairs."[8]  SJ Op. at 16-17.

Rather, plaintiffs argue for the first time that the Court should "defer conclusively" to plaintiffs'

own erroneous interpretation of the Ninth Circuit's *Nguyen* and *Pulaski* decisions.  Pls. Mem. 4-

5.  As discussed above, however, neither *Nguyen* nor *Pulaski* contains any relevant holdings to

which the Court could, much less should, defer.  Regardless, no deference to those decisions is

---

must have viable benefit-of-the-bargain damages claims.  Pls. Mem. at 6 n.5.  This is nonsense.  Both cases are
irrelevant, and plaintiffs' position is incorrect and irreconcilable with the factual record in both *Volkswagen* and *Fiat
Chrysler*—despite the fact that Lead Counsel in all three cases overlap.  *First*, any settlement—let alone one between
non-parties—is not evidence of liability or damages in this case.  *In re Gen. Motors LLC Ignition Switch Litig.*, 2016
WL 4410008, at *5 (S.D.N.Y. Aug. 18, 2016) (J. Furman) (Fed. R. Evid. 408 "prohibit[s] introduction of settlement
evidence to prove the validity of a claim"); *see also Ecommission Solutions, LLC v. CTS Holdings, Inc.*, 2016 WL
6901318, at *3 (S.D.N.Y. Nov. 23, 2016) (declining to consider settlement between plaintiff and the defendant in a
different case, because "the settlement was not a determination of the validity of plaintiff's claim against [the other
defendant.]").  *Second*, the *Volkswagen* class settlement occurred *prior* to any motion for class certification—so no
theory of class-wide damages was proffered, litigated, or ruled upon—and *before* the fixes were implemented and in
many instances before a fix was even identified.  Case No. 3:15-md-02672, ECF No. 1685 (N.D. Cal. July 26, 2016);
Case No. 3:15-md-02672, ECF No. 2103, at 7-9 (N.D. Cal. Oct. 25, 2016) (discussing timeline for proposing repairs
months after class settlement).  *Third*, the *Fiat Chrysler* case settled while the motion for class certification was still
pending because, as plaintiffs' motion for preliminary approval of the class settlement—filed by Lead Counsel in *Fiat
Chrysler* who is also Lead Counsel in this case—recognized: "FCA and Bosch dispute Plaintiffs' damages theories
and submitted multiple expert declarations to support their argument that damages are not calculable on a classwide
basis.  If the Court were to deny class certification, the case would be dead, and the Class Members would receive
nothing."  Case No. 3:17-md-02777, ECF No. 491 at 10 (N.D. Cal. Jan. 10, 2019).

[8] *See also Kimes v. Grosser*, 195 Cal. App. 4th 1556, 1559 (2011) (owner of damaged personal property "entitled to
recover the lesser of (1) the diminution of the property's market value caused by the injury, or (2) the reasonable cost
of repairing the property"); *Hand Elecs., Inc. v. Snowline Joint Unified Sch. Dist.*, 21 Cal. App. 4th 862, 869–70 (1994)
("If the cost of repairs exceeds the depreciation in value, the plaintiff may only recover the lesser sum.  Similarly, if
depreciation is greater than the cost of repairs, the plaintiff may only recover the reasonable cost of repairs."); Judicial
Council of California Civil Jury Instruction 3903J: Damage to Personal Property (Economic Damage) ("The harm to
[name of plaintiff]'s [item of personal property, e.g., automobile].  To recover damages for harm to personal property,
[name of plaintiff] *must prove the reduction in the [e.g., automobile]'s value or the reasonable cost of repairing it,
whichever is less.* [If there is evidence of both, [name of plaintiff] is entitled to the lesser of the two amounts]."
(emphasis added)).

6

required under *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278 (2d Cir. 1981), and its progeny.[9]

*First*, the "deference" discussed in *Factors* and subsequent cases only applies when another circuit court predicts how a state court within its boundaries would decide a "*question of first impression*." 652 F.2d at 283 (If "the pertinent court of appeals has essayed its own prediction of the course of state law on a question of first impression within that state, the federal courts of other circuits should defer to that holding.").[10] But where, as here, the issues are not ones of first impression but are issues on which the state courts have already ruled, the district court is obliged to follow and apply that state law, just as this Court did. *Id*. ("The ultimate source for state law adjudication in diversity cases is the law as established by the constitution, statutes, or authoritative court decisions of the state.").

*Second,* the *Factors* deference is not appropriate when the circuit court's holding "had been superseded by a later pronouncement from state legislative or judicial sources." *Id*. Plaintiffs' erroneous interpretation of *Pulaski* as prohibiting any consideration of post-purchase repairs or damages mitigation as irrelevant to restitution has been superseded. Specifically, *In re Tobacco Cases II* held that the post-sale value from a product must be considered in determining restitution under the UCL. 240 Cal. App. 4th 779, 802 (Cal. Ct. App. 2015) ("As plaintiffs did not establish

---

[9]  The cases cited by plaintiffs, *U.S. Bank Natl. Assn. v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019), and *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 90 (2d Cir. 2006), involved questions of federal law, which the Second Circuit made clear were not subject to the deference described in *Factors*. *See also Desiano*, 467 F.3d at 92 n.4 (questioning the continued relevance of *Factors* deference when unsettled questions may be certified to state supreme court); *Casey v. Merck & Co., Inc.,* 653 F.3d 95, 101 (2d Cir. 2011) (certifying question to Virginia state court and declining to defer to Fourth Circuit's decision).

[10]  The Second Circuit has criticized *Factors* as constitutionally suspect and contrary to *Erie* and its progeny. *See Rogers v. Grimaldi*, 875 F.2d 994, 1003 (2d Cir. 1989) (a diversity court "is obliged to apply whatever substantive standards the forum state uses in predicting the content of foreign law"). Indeed, the Second Circuit recently acknowledged this problem in *AIU Ins. Co. v. TIG Ins. Co.*, electing to view a question of unsettled Illinois law "as a New York state court would" and "adhere to the *consensus* drawn from" various federal and state court decisions. 577 Fed. Appx. 24, 27 (2d Cir. 2014) (unpublished) (emphasis added). Here, plaintiffs offer no reason why New York state courts would "defer conclusively" to inapplicable statements in *Nguyen* or *Pulaski*, when various state and federal courts have actually applied the California measure of damages at issue as well as its mitigation doctrine in a situation such as this. *See* SJ Op. 16-18 (collecting cases).

any price/value differential the court lacked discretion to award restitution."). Indeed, the Ninth Circuit itself recently acknowledged that "[t]o the extent that *Pulaski* is inconsistent with *In re Tobacco Cases II*…we must follow *In re Tobacco Cases II*." *Chowning v. Kohl's Dep't Stores, Inc.*, 733 F. App'x 404, 405-06 (9th Cir. 2018) (affirming summary judgment where plaintiffs failed to establish that the "value of what the plaintiff received was less than what the plaintiff paid" (internal quotations omitted)).

*Third*, even assuming plaintiffs' interpretation of *Pulaski* were correct (it is not), this Court must "disregard" a circuit court's decision that "inadvertently overlooked" prior state court decisions. *Factors,* 652 F.2d at 283. Here, the Court has already explained how *Pulaski* overlooked aspects of *Kwikset Corp. v. Superior Ct. of Orange Cty.*, 246 P.3d 877 (Cal. 2011), ignoring the California Supreme Court's distinction between standing and entitlement to a monetary award. SJ Op. at 14-15. Thus, even under *Factors*, no deference is due.

### C.    Plaintiffs' Policy Arguments Are Contrary To California Law.

Plaintiffs argue that repair costs do not cover the "unreasonable [post-sale] risk" they were purportedly subject to prior to the recall repair. Pls. Mem. at 7. They assert for the first time that plaintiffs could rely on the "alternative construction" of damages calculated by Dr. Gans, which he claimed was "consistent with the theory of harm that *between purchase and recall* purchasers were driving around at a greater degree of risk." Ps. Mem. 6-7 (quoting Gans' expert report) (emphasis added).

This argument fails. *First*, it is contrary to plaintiffs' threshold argument that the damages measurement is limited to the point of sale only and may not consider post-sale repairs or mitigation. *Second*, this argument violates California law, under which plaintiffs may recover no more than the cost of repair, and then, only if that cost is less than the difference in value. *See* SJ Op. at 16-18. *Third*, plaintiffs cite no cases allowing them to recover alleged economic losses

8

based on a purported risk of post-sale harm.  That is because plaintiffs' purported risk of physical harm is not an economic loss, which is the only damage alleged in the 5ACC.[11]

*Fourth*, plaintiffs' new claim about Gans' "alternative construction" of Boedeker's damages calculation, raised for the first time in their motion for reconsideration, is improper.  Pls. Mem. 6-7.  As the Court recognized, plaintiffs relied only on Boedeker's damage calculations, not Dr. Gans' alternative calculations, in opposing New GM's summary judgment motion.  SJ Op. at 30 ("Plaintiffs do not point to any *other* evidence that could support a finding of damages.").  Moreover, plaintiffs do not dispute the Court's conclusion that Dr. Gans "merely 'analyzed Mr. Boedeker's . . . analysis'" and so "Gans's testimony [did] not affect the Court's analysis or conclusions."  SJ Op. at 30 n.11; Pls. Mem. at 6-7.  Nor do plaintiffs address how Dr. Gans' "alternative construction" of Boedeker's damages (which does no more than subtract a portion of Boedeker's damages attributable to one of several conjoint survey scenarios) could be valid when the Court rejected Boedeker's methodology for failing to measure market-based damages.  SJ Op. at 31-35; New GM Gans *Daubert* Motion (Dkt. 6130), New GM Gans *Daubert* Reply (Dkt. 6281).

Relying on *Stout v. Turney*, 586 P.2d 1228, 1232-33 (Cal. 1978), plaintiffs argue next that benefit-of-the-bargain damages provide deterrence because they "contemplate[] an award even when the property received has a value equal to what was received."  Pls. Mem. at 3.  This argument misconstrues both *Stout* and California law.  In *Stout*, the court addressed the deterrent effect of permitting "lost profit" damages.  *Stout* at 1233.  Here, plaintiffs do not seek "lost profits," and neither Boedeker nor Gans calculated such damages.  Instead they seek difference in market

---

[11]  Nor is it a legally compensable damage recognized by tort law, which ordinarily compensates only for actual, not potential, physical harm.  *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 & n. 1 (7th Cir. 2002).

value damages, which they may not recover without evidence of a difference in market value.[12]

Finally, ignoring their own failure of proof, plaintiffs assert that denying economic loss damages in this case would leave manufacturers with no incentive to address defects. To the contrary, the law provides ample deterrence, including (1) the federal law requirement to recall and repair for safety defects; (2) tort damages to those with personal injuries or property damages caused by defective products; (3) economic loss damages if the state law requirements are met under the "lesser of" rule; (4) regulatory oversight by federal and state agencies, and (5) injunctive relief where the elements are satisfied, which is "'the primary form of relief available under the UCL to protect consumers from unfair business practices.'" *In re Tobacco Cases II*, 240 Cal. App. 4th at 790.[13] A rule that requires defendants to pay the difference in value without consideration of any post-sale repairs would be bad public policy because it would discourage a manufacturer from making any repairs at all, much less early repairs.

## II. THE COURT CORRECTLY HELD THAT TEXAS FOLLOWS THE "LESSER OF" RULE, WHICH ALSO APPLIES WHERE A DEFECT HAS MANIFESTED.

Relying on *Orr Chevrolet, Inc. v. Courtney*, 488 S.W.2d 883, 886 (Tex. App. 1972) and other authorities, this Court held that Texas law (1) measures damages by the lesser of cost of repair or the difference in fair market value, and (2) does not permit benefit-of-the-bargain

---

[12] In addition, the California Supreme Court has held that restitution may not be awarded for purposes of deterrence alone, and is instead confined to restoration of money or property lost by the plaintiff and acquired by the defendant. *See In re Tobacco Cases II*, 240 Cal. App. 4th at 794–95, 801–02. "Plaintiffs ignore well-settled law, including California Supreme Court authority, that restitution under the UCL may not be based solely on deterrence, no matter how egregious the defendant's conduct." *Id.* at 794.

[13] *See also, e.g., Silvas v. Gen. Motors, LLC,* 2014 WL 1572590, at *3 (S.D. Tex. Apr. 17, 2014) ("The Court is of the opinion that NHTSA is far better equipped than this Court to address the broad and complex issues of automotive safety and the regulation of automotive companies in connection with a nationwide recall."); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 464 (D.N.J. 1998) ("the administrative remedy provided by NHTSA, including recall of vehicles for inspection and/or repair, is more appropriate than civil litigation seeking equitable relief and money damages in a federal court."); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 353 (D.N.J. 1997) (same).

recovery where a defendant has repaired a defective vehicle.  SJ Op. at 24-25.[14]  The Texas

plaintiffs' new argument that they can obtain compensation for a manifest defect even if the

product has been repaired has no basis in the evidence or the law.  Pls. Mem. at 8.

   *First*, plaintiffs' argument, "raised for the first time in plaintiffs' motion for

reconsideration," is "not properly presented" and thus "waived."  *Phillips*, 775 F.3d at 544; *see*

*also Gaind v. Cordero*, 515 F. App'x 68, 69-70 (2d Cir. 2013); *Kin Long Ko v. Holder*, 312 F.

App'x 429, 431 (2d Cir. 2009).  The Texas plaintiffs' claim that they "suffered ill-effects from the

manifestation" and are entitled to "compensat[ion] for the manifestation," Pls. Mem. at 8, was

never made in their summary judgment opposition, and cannot now be raised on reconsideration.[15]

   *Second*, and equally problematic, the Texas plaintiffs introduce a whole new theory of

damages—that manifestation alone causes injury, even if that manifestation does not result in any

economic loss or physical injury.  Plaintiffs have not claimed much less mentioned this damages

theory in the preceding five-plus years of this litigation and do not cite a single authority that has

accepted it.  Just as the Court rejected plaintiffs' brand devaluation theory, the Court should reject

plaintiffs' new and unsupported damages theory, especially given the impropriety of raising new

arguments (and claims) on a motion to reconsider.  *See TACC MTD Op.*, 2016 WL 3920353, at

*7-10; *FACC MTD Op.*, 257 F. Supp. 3d at 395-399.  Nor do plaintiffs offer any expert or factual

support for this new theory, which is an independent reason for rejecting it.[16]

---

[14]  Plaintiffs on reconsideration do not address the Court's holding that plaintiffs failed to present evidence of a market
price as required by Texas law.  Regardless, that ruling was entirely correct.  SJ Op. at 23-25.  Moreover, to the extent
the Texas plaintiffs contend their damages are determined at the point of sale without regard to repairs, *e.g.*, Pls. Memo
at 8 n.7, the Court rejected this argument based on Texas authorities such as *Orr Chevrolet*.  SJ Op. at 24-25.  Plaintiffs
provide no authority or explanation as to why the Court's conclusion was wrong.  *See also supra* I.A.

[15]  The Texas plaintiffs' assertion that the record shows they all experienced a manifest defect is incorrect.  Pls. Mem.
at 8.  In fact, the record demonstrates that four of the five Texas plaintiffs have no evidence of manifestation and thus
summary judgment should be granted against all of their claims.  Dkt. 7096 at 9-11.

[16]  *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of
summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element

*Third*, on the merits, plaintiffs do not cite a single case—from Texas or any other state—holding that repairs cannot reduce damages to zero because a defect has manifested. Pls. Mem. at 8. Their new argument thus cannot satisfy the requirements of a motion for reconsideration, such as clear error or change in controlling law.

*Fourth*, the case law rejects plaintiffs' argument. Texas cases applying the "lesser of" rule do so *after* a defect or problem has manifested. For example, in *Orr Chevrolet* the plaintiff alleged a defect caused him to lose use of the vehicle. 488 S.W.2d at 885. Despite this defect allegedly causing loss of use, the Texas appellate court held that the "lesser of" rule applied, *id.* at 886, meaning the plaintiff would have zero damages if the vehicle had been repaired. And cases from other jurisdictions squarely hold that a repair precludes benefit-of-the-bargain damages even if the defect manifested pre-repair. In *In re Toyota Motors Corp. Hybrid Brake Mktg. Sales Pracs. & Prods. Liab. Litig.*, for example, the plaintiff's vehicle manifested a defect in its anti-lock braking system ("ABS"). 915 F. Supp. 2d 1151, 1154 (C.D. Cal. 2013). Toyota repaired the defect, the plaintiff admitted the ABS functioned properly post-repair, and thus the plaintiff could not recover benefit-of-the-bargain damages because he "cannot complain that he received less than what he paid for—that is a vehicle with a safe and operable ABS." *Id.* at 1159.

*Fifth*, plaintiffs' argument contradicts Texas damages jurisprudence. As the Court has held, Texas law requires a manifest defect for recovery. *FACC MTD Opinion*, 257 F. Supp. 3d at 450-52. The Court's summary judgment decision also followed Texas law in holding that Texas applies the "lesser of" rule in measuring damages. SJ Op. at 24-25. Therefore, in every instance where Texas courts apply the "lesser of" rule to measure damages, they are doing so when the

---

essential to that party's case, and on which that party will bear the burden of proof at trial."); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.").

plaintiff already has shown a manifest defect. This is because if a Texas plaintiff had no manifest

defect, that plaintiff would have no claim at all and no need to measure damages under the "lesser

of" rule. Plaintiffs' argument that the "lesser of" rule does not apply (and cannot reduce damages

to zero) where a defect has manifested itself would mean the "lesser of" rule never applies—an

argument that cannot be reconciled with Texas law. Plaintiffs provide no basis for the Court to

reconsider its decision under Texas law.

## III.  THE COURT CORRECTLY HELD THAT BOEDEKER FAILED TO DETERMINE MARKET-BASED DAMAGES.

### A.  Under Bellwether State Law, Difference In Value Damages Require Proof Of A Decrease In Market Price.

In yet another first-time[17] reconsideration argument, plaintiffs contend they are not

required to prove a change in market price. Pls. Mem. at 15 ("[T]he Court should reconsider its

holding that the absence of a but-for market price is fatal to Plaintiffs' claims."). But this Court

correctly held that Texas, Missouri, and California law require plaintiffs to prove a decrease in

*market* price. SJ Op. at 29 ("in each Bellwether State, the evidence must actually be of market

value—evidence of private valuations masquerading as evidence of market value will not do");

*see also, e.g.*, *Vista Chevrolet Inc. v. Lewis*, 704 S.W.2d, 363, 371-72 (Tex. App. 1985); *Evinger*

*v. McDaniel Title Co.,*, 726 S.W.2d 468, 474-75 (Mo. Ct. App. 1987); *Zakaria*, 755 Fed. App'x at

624-25 (California); *Redwood City Elementary Sch. Dist. v. Gregoire*, 276 P.2d 78, 81-82 (Cal.

---

[17] Until now, plaintiffs and their experts claimed they could and would prove a change in market price. *See, e.g.*, Dkt. 2761 at 1 ("All Plaintiffs allege 'manifest' damages in the decreased market value of their cars"); Pls. Daubert Opp. (Dkt. 6187) at 9 (claiming Boedeker's analysis establishes "the loss in market value arising from the fact that the defect has now been disclosed"); Pls. Class Reply Br. (Dkt. 6181) at 36 n.54 (claiming Boedeker calculated a "drop in new market equilibrium price"); Ex. 27, Boedeker 2nd Rpt. ¶ 32a (claiming to have calculated the "market price at which all consumers who bought the product with the alleged false statement would buy the product again if they find out about the falsity of the statement."); Ex. 111, 6/28/18 Gans Dep. Tr. at 282:23-283:13 ("Q. The price that Boedeker has determined in the 'but-for' world is not a market equilibrium price, right?  A. Oh, yes, it is. . . . It's a market equilibrium price where you're constrained to be selling the same number of vehicles in the actual as in the but-for world. So it's definitely a market equilibrium price."); Ex. 36, Gans Report 5/18/18 ¶ 31 ("Mr. Boedeker calculates the 'but for' market price"); 5ACC ¶¶ 41, 45-262.

Ct. App. 1954).  Plaintiffs ignore this dispositive Bellwether state court precedent because they have no answer to it.[18]

### B. Under Bellwether State Law As Well As Basic Economics, To Determine A Decrease In Market Price, Boedeker Was Required To Account For Willingness To Sell *At Actual And But-For Prices*.

Plaintiffs argue that Boedeker properly used a "fixed supply."[19]  Pls. Mem. at 14.  But, as the Court correctly held, to prove a decrease in market prices, Boedeker was required to consider not only "the actual quantity supplied," *id.* at 9, but also *willingness to sell at the alleged actual and but-for prices* used in his analysis.  SJ Op. at 29-30, 34-37, 41-42 (citing Bellwether state cases).[20]  Put simply, as a matter of both Bellwether state law and Economics 101, willingness to sell a "fixed supply" for $10,000 or $2,500 does not establish willingness to sell the same quantity for $100, $1 or some other lower price.[21]  Because Boedeker failed to account for *willingness to*

---

[18] Plaintiffs regurgitate their prior cites to *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 370-73 (N.D. Cal. 2018), and *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1103-04 (N.D. Cal. 2018).  Pls. Mem. at 13.  But as this Court explained, those and other cases gave "little or no consideration of the market price issue."  SJ Op. at 39.

[19]  In fact, as New GM explained in its Boedeker *Daubert* reply, Boedeker's so-called fixed supply of vehicles "actually sold" does not factor into Boedeker's methodology for estimating alleged per-vehicle economic loss at all and instead is used only to calculate class-wide damages.  *See* New GM Boedeker *Daubert* Reply (Dkt. 6294), at 16-17; *see also* New GM Gans *Daubert* Reply (Dkt. 6281), at 2-3 (refuting plaintiffs' claim that multiplying a median differences in demand by the number of class vehicles is the "proper" way to account for supply and demand).

[20] *See also id.* at 29 (*quoting In re Marriage of Cream*, 16 Cal. Rptr. 2d 575, 579 (Cal. Ct. App. 1993) (stating that fair market value "is the highest *price* on the date of valuation *that would be agreed to by a seller, being willing to sell but under no obligation or urgent necessity to do so*, and a buyer . . . ")); *see also* Op. at 30 (*citing Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 831 (Tex. 2014) (observing that an "offer *price* does not, alone, tend to establish the property's market value at the time it was made. [An] offer is some evidence of what a willing buyer will pay, but it is not, alone, evidence of what a willing seller will accept") (emphasis added); *see also Pac. States Sav. & Loan Co. v. Hise, State Guar.*, 25 Cal. 2d 822, 837–38 (Cal. 1945) ("That market value is the *amount for which a property can be sold by a willing seller* to a willing buyer, is quite generally recognized.") (emphasis added); *Peterson v. Cont'l Boiler Works, Inc.*, 783 S.W.2d 896, 900 (Mo. 1990) ("'Fair market value'…is a phrase without ambiguity in the law. It means the *price* which property will bring when it is *offered for sale by an owner who is willing but under no compulsion to sell* and is bought by a buyer who is willing or desires to purchase but is not compelled to do so.").

[21]  As Dr. List explained, without accounting for the market's willingness to sell at various prices, "an economist can say nothing about market equilibrium."  Ex. 30A, 2/23/18 List Report, ¶ 124; *see also* Walter Nicholson and Christopher Snyder, *Microeconomic Theory*, 12th ed., at p. 11 ("As [famous economist Alfred] Marshall noted, just as you cannot tell which blade of scissors does the cutting, so too you cannot say that either demand or supply alone determines price.")  Moreover, plaintiffs concede that "the market price of a product arises from the intersection between *supply* and demand."  Pls. Mem. at 10) (emphasis added).  Indeed, Dr. Gans concedes that a supply curve

14

*sell* the alleged "fixed supply" *at actual and but-for prices*, he did not measure market prices under Bellwether state law.  SJ Op. at 33-35 ("Boedeker did not estimate any possible changes in New GM's willingness to *sell* a car with a known, acknowledged, and disclosed defect . . . Under the substantive law of the Bellwether States discussed above this evidence does not suffice to establish damages.").

       **C.**      **Plaintiffs' Experts Concede They Did Not Consider *Willingness To Sell At Any Alleged Actual Or But-For Prices.***

Ignoring Boedeker's dispositive admissions, plaintiffs argue (without any record citations) that "Boedeker acknowledged only that he did not inquire into GM's willingness to sell in a flawed but-for world in which GM never deceived anyone, let alone all Class members."  Pls. Mem. at 15 n. 9.  Not so, as the Court correctly concluded that Boedeker and Dr. Gans repeatedly testified that Boedeker's computation did not consider willingness to sell *any* quantities *in any world* at *any actual and but-for market prices*.  *See*, *e.g*., Ex. 40, 7/6/18 Boedeker Dep.Tr. at 462:11-18; Ex. 34, 7/5/18 Boedeker Dep. Tr. at 235:3-20 ("Q. And there's no information that you've looked at about GM's willingness to sell vehicles at different price points at all either? A. No."); Ex. 40, 7/6/18 Boedeker Dep. Tr. at 462:11-18 ("Q. You are not opining that New GM would be willing to sell these option packages at the prices offered in your conjoints, are you? . . .  A. I'm not opining on New GM's willingness to sell those option packages at those prices. That is correct."); Ex. 110, 6/29/18 Gans Dep. Tr. at 429:2-8 ("Q. So [Boedeker] did not analyze GM's willingness to sell at the actual or but-for price?  A. No[.]").  Dr. Gans, whose work is simply derivative of Boedeker's, likewise did not consider willingness to sell at actual and but-for prices, and therefore he did not measure any change in market price.  Ex. 111, Gans Dep. Tr. at 283:22-25 (in Boedeker's

_____

shows *willingness to sell different quantities at different prices*." Ex. 147, 6/28/18 Gans Dep. Tr. at 55:15-19 (emphasis added).

15

methodology, "*a firm is compelled* to sell the same quantity and clear the market" (emphasis added)); *id.* at 281:6-10 ("My opinion is that I would find it highly unlikely that GM -- it would have wanted to -- to sell the same amount of cars at the price implied by Mr. Boedeker's 'but-for' analysis.")

### D.   Plaintiffs' Claim That A Change in Willingness To Pay Alone "Sufficiently Approximates" A Change In Market Prices Is Contrary To Law And Violates Economics 101.

Plaintiffs argue, yet again for the first time on reconsideration, that "it was appropriate for Boedeker to use fixed supply in *approximating* the but-for market price." Pls. Mem. at 15 (emphasis added). But other courts repeatedly have rejected plaintiffs' claim that an alleged change in willingness to pay alone is legally sufficient to determine market price. *See Zakaria*, 2017 WL 9512587, at *17-21 (decertifying class because conjoint analysis measuring only plaintiffs' changed willingness to pay was "insufficient to establish a basis for calculating either restitution or actual damages" under California law).[22] As this Court correctly concluded, "[i]f a gap remains in the evidence that could support fact finding about market value, the Bellwether States do not permit a plaintiff to plug the gap with assumptions." SJ Op. at 41-42.

Plaintiffs once again cite *Nguyen* and *Pulaski* to argue that the "Ninth Circuit has held specifically that damages must be construed broadly in a vehicle defect case under California law." Pls. Mem. at 9. Construing cognizable damages broadly is one thing; making them up in a manner

---

[22]   *See also In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1122 (C.D. Cal. 2015) ("A consumer's subjective valuation of the purported safety message, measured by their relative willingness to pay for products with or without the message, . . . does not permit the court to calculate the true market price of NJOY e-cigarettes absent the purported misrepresentations."); (emphasis omitted)); *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 976898, at *12 (N.D. Cal. Mar. 6, 2014) (denying permanent injunction because proffered conjoint analysis measured only demand and did "not account for supply at all, much less the real-world intersection of market demand and market supply, which sets the real-world market price"); *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014) (denying class certification because proffered conjoint analysis accounted for demand but not supply; such a "method of computing damages converts the lost-expectation theory from an objective evaluation of relative fair market values to a seemingly subjective inquiry of what an average consumer wants.").

16

contrary to law and/or economics is something else.[23]  Moreover, as this Court correctly held: "although Plaintiffs may not need to prove the *amount* of damages to an absolute certainty to survive summary judgment, they do—under the law of all three Bellwether States—need *some evidence of the fact of damages (if not more) to create a triable issue on that element of their claim*."  SJ Op. at 27 (emphasis added) (*citing Robi v. Five Platters, Inc.,* 918 F.2d 1439, 1443 (9th Cir. 1990) ("It is well-established under California law that while the *fact of damages must be clearly shown*, the amount need not be proved with the same degree of certainty…" (emphasis added)).[24]  Tellingly, plaintiffs do not dispute the Court's holding that Bellwether state law requires "some evidence of the *fact* of damages (if not more)."  *id.* (emphasis added).  Here, the Court correctly held that plaintiffs offer no such evidence, requiring summary judgment against their claims.[25]

### E.    Plaintiffs' Claim That A Change In Willingness To Pay Alone "Sufficiently Approximates" A Change In Market Prices Also Has No Basis In The Record.

Plaintiffs point to no record evidence proving that (i) a change in willingness to pay

---

[23]  In *Nguyen*, plaintiffs proffered a market-based measure of damages—*i.e.*, cost of repair based on market prices for the repair—and thus did not base their damages estimates solely on "willingness to pay" for repairs. 932 F.3d at 821. Likewise, as the Ninth Circuit recognized in *Zakaria*, the *Pulaski* plaintiffs proposed to measure their damages using the defendant's (Google's) own algorithm for setting the *market* prices actually paid by advertisers.  *Zakaria*, 755 F. App'x at 625 (citing *Pulaski*, 802 F.3d at 989)).

[24]  *See also Zakaria v. Gerber Prod. Co.*, 2017 WL 9512587, at *21–22 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018) (granting summary judgment where plaintiffs failed "to provide reliable evidence of *any* damages suffered by herself or members of the class"); *TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson,* 2016 WL 6562075, at *11 (C.D. Cal. Aug. 9, 2016) (plaintiff's failure to offer proof of either the fact or quantum of damages required entry of summary judgment); *GHK Assocs. v. Mayer Grp., Inc.,* 224 Cal. App. 3d 856, 873–74, 274 Cal. Rptr. 168, 179 (Cal. Ct. App. 1990)  ("Where the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty.  The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.").

[25]  Nor did *Nguyen* or *Pulaski* address or alter the Bellwether state law requirement that plaintiffs "need some evidence of the *fact* of damages (if not more)" to survive summary judgment on difference-in-value damages.  SJ Op. at 27.  In fact, *Pulaski* quotes language regarding "reasonable basis" and "approximation" from *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 938–39 (9th Cir. 1999), which in turn quotes *GHK Assocs. v. Mayer Grp., Inc.,* 224 Cal. App. 3d 856 (Cal. Ct. App. 1990).  *GHK* itself makes clear that this language only applies once the "*fact of damages is certain*."  *Id.* at 873-74 (emphasis added)).

"approximates" (ii) a change in market price.  To the contrary, Dr. Gans' textbook states that the supply curve for cars is "elastic"[26] and Boedeker's Report confirms that an "elastic" supply curve could translate to a zero or minimal change in market price, regardless of change in "willingness to pay."  Indeed, according to Boedeker, if "GM's supply elasticity is sufficiently high," then considering supply elasticity may result in "$0 damages."  Ex. 27, Boedeker 2nd Rpt. ¶ 15.  Simply put, Boedeker's calculation of *billions of dollars in purported damages* does not approximate *$0 or minimal damages*—which Boedeker concedes may be the outcome of his methodology if he had considered supply elasticity.  *See* Ex. 27, Boedeker 2nd Rpt. ¶ 15 (discussing supply elasticity); Ex. 31, Boedeker 3rd Rpt. (reflecting estimated Bellwether state damages totaling billions).[27] Thus, far from "approximating" market price, willingness to pay (without willingness to sell at actual and but-for prices) creates demonstrably fictitious damages where there are none.  In addition, "[t]o assume, as Boedeker does, that New GM would sell the same number of vehicles in the but-for world despite commanding a lower price for each vehicle at the same marginal cost per sale is to assume a massive forced sale—contrary to the substantive law in all three Bellwether States."  SJ Op. at 41-42.

Boedeker's novel approach would also result in an enormous damages number exceeding differences (if any) in actual and "but for" market prices by many orders of magnitude, and even exceeding the price paid for the vehicle.  As the Court noted, "Boedeker's model suggests that

---

[26] Ex. 114, Gans, et al, *Principles of Microeconomics*, at 105 ("manufactured goods, such as books, *cars* and televisions, *have elastic supplies* because the firms that produce them can run their factories longer in response to a higher price." (emphasis added)); Ex. 34, 7/5/18 Boedeker Dep. Tr. at 62:24-63:6 ("A. In general, cars as a good do have an elastic supply curve.  Just like the demand for cars is elastic, right. …").

[27] *See* Ex. 147, 6/28/18 Gans Dep. 261:7-14 ("Q. [S]ome people in the 'but-for' world may have a willingness to pay of negative $100,000, right? A. Yeah."); *see also* Ex. 29A, 2/23/18 Rossi Rpt. Figure 4 (showing respondents with negative willingness to pay); Ex. 30-A, 2/23/18 List Rpt. ¶¶ 116-18; Ex. 30-B, 8/13/18 List Rpt. ¶¶ 55-59 & App'x 5 (between 26.6-39.1% of survey respondents would be willing to pay the same amount or more in scenarios with disclosed defects); Ex. 29A, 2/23/18 Rossi Rpt., App'x E at 71-83 (change in willingness to pay for various respondents of $353,832, $188,022, $155,596, *etc.*).

Plaintiff Deloris Hamilton should receive as much as $4,714 in benefit-of-the-bargain damages even though she paid only $3,500 for her car. . . .  That is, a jury would have to conclude that New GM would have been willing to pay Hamilton to accept her car.  In these circumstances, no reasonable jury could do so."[28]  SJ Op. at 38 n. 13.  Plaintiffs have no evidence that Boedeker's model "approximates" a change in market value for *any* named plaintiff or class member, much less for the alleged class as a whole.[29]

### F.    Plaintiffs' Purported "Policy" Arguments Are Contrary To Bellwether State Law.

This Court already rejected plaintiffs' "policy"-based arguments, correctly holding that the "Court's task here is not to decide what makes sense as a matter of policy" but "[i]nstead, it is to apply the substantive law of each Bellwether State."  SJ Op. at 42; *Garland v. Herrin*, 724 F.2d 16, 18-20 (2d Cir. 1983) ("A federal court should not make such a policy-based extension of state law, a development better left to the state's own courts or its legislature.").  Plaintiffs' reconsideration policy arguments add nothing new to what the Court already has considered.

*First,* plaintiffs erroneously claim that the Court's Opinion "effectively eliminates damages

---

[28]  In fact, because Boedeker's willingness-to-pay-based model does not incorporate the actual vehicle market prices paid by any plaintiffs or putative class members, neither Boedeker nor the plaintiffs know how many thousands or millions of putative class members would receive more in benefit-of-the-bargain damages than they paid for their vehicles under Boedeker's methodology.

[29]  For example, in 2009, named plaintiffs Michael and Sylvia Benton purchased a used 2005 Cobalt for $12,568.30 from a non-GM dealer.  Plaintiffs claim the actual value of the car was only $3,294.70.  *See* Pls. Class Ex. 43 (reporting the Bentons' damages as high as $9,274).  But neither Boedeker nor plaintiffs have any basis for asserting that the Bentons' non-GM dealer would have been willing to sell the car to the Bentons for only $3,294.70—a nearly 74% sales price reduction.  SUF Reply ¶ 367; *see also* New GM Class Cert Opp. at 24-26.  Indeed, the Bentons have no factual record to claim that Boedeker's median damages should apply to them at all.  Although the Court suggested that "Boedeker came up with a chart that Plaintiffs cite as their sole evidence showing difference-in-value damages" (SJ Op. at 33, citing Pls. Class Ex. 43), the undisputed factual record shows that his chart was created by plaintiffs' counsel with Boedeker offering no opinions regarding damages for any named plaintiff.  *See* Pls. SJ Opp. (Dkt. 6059), at 36 ("[Boedeker's] *classwide* methodology shows each Plaintiff's damages by simply plugging in a few simple record facts for each Plaintiff, which Plaintiffs have done." (citing Pls. Class Ex. 43)); Pls. SUF Resp. (Dkt. 6063), ¶ 367 ("Undisputed that Mr. Boedeker and Dr. Gans have not yet calculated damages for any individual plaintiff."); GM SJ Reply (Dkt. 6194), at 12 (quoting Boedeker: determining damages on a "vehicle-by-vehicle basis, plaintiff-by-plaintiff basis, new purchase, used purchase basis" is "way to[o] complex to answer here with any specificity").

as a matter of law" and "creates economic incentives that are inconsistent with state law because it incentivizes a manufacturer to 'knowingly sell defective vehicles.'" Pls. Mem. at 9, 11. To the contrary, the Opinion applies long established and settled governing state law requiring plaintiffs to demonstrate a change in *market* price to recover difference-in-value damages.[30]

*Second*, plaintiffs contend that the Court "requires Plaintiffs to offer a damages model that analyzes what other, hypothetical plaintiffs could have bought from a different, hypothetical GM that never existed." Pls. Mem. at 10. Not true; the Court simply required plaintiffs and their experts to measure damages according to governing state law (and basic economics). Moreover, Boedeker's survey itself is based on "hypothetical" but-for purchasers who are informed of a defect at the point of sale. Ex. 27, Boedeker 2nd Rpt. ¶ 663 ("[T]he law requires me to quantify the economic loss at the point of purchase had consumers known about the defect. This clearly has to be a hypothetical situation . . . ."). And his proposed model involves but-for sellers who are not just "hypothetical," but are "compelled" to supply at a price they are not "willing" to accept. Ex. 111, Gans Dep. Tr. at 283:22-25 (in Boedeker's model, "*a firm is compelled* to sell the same quantity and clear the market" (emphasis added)); *id.* at 281:6-10 ("My opinion is that I would find it highly unlikely that GM -- it would have wanted to -- to sell the same amount of cars at the price implied by Mr. Boedeker's 'but-for' analysis."). "Compelling" the sale of a certain quantity of product—no matter how low (or negative) the price—is contrary to Bellwether state law

---

[30] Plaintiffs' policy-based example involving steel purchasers (Pls. Mem. at 11) ignores that a change in *market* price may be determined not only by the *defendant's* willingness to sell at actual and but-for prices, but also by *other market sellers'* willingness to sell at actual and but-for prices. Ex. 114, Gans, *et al*, *Principles of Microeconomics*, at 67 ("A market is a group of buyers *and sellers* of a particular good or service." (emphasis added)). This is particularly true in plaintiffs' steel example, where the "sheets of steel are identical" and are sold at the "same hardware store." Pls. Mem. at 11. Here, Boedeker's and Dr. Gans' models chose to define New GM as "the seller in both the actual world and the 'but-for' world," Ex. 147, 6/28/18 Gans Dep. 296:18-19, 23, even though GM vehicles could be sold (and re-sold) by entities other than GM. Ex. 27, Boedeker 2nd Rpt. ¶¶ 105-113 (detailing the "many factors" and market realities impacting the supply of used cars and the resulting market prices including the "earlier new car supply," "new car promotions and discounts," and the "supply of new and used cars").

requiring *willingness* to sell without "compulsion." *See* SJ Op. at 41-42 (citing Bellwether state cases).

*Third*, plaintiffs argue that "[a] damages analysis should calculate damages for the vehicles GM actually sold, not the lower number GM might have sold (to different people) if they had told the truth prior to sale." Pls. Mem. at 9-10. As an initial matter, plaintiffs rely only on unsupported "policy" and cite no Bellwether state cases for the proposition that market prices are based solely on the willingness to pay by the original as opposed to "different" buyers. Bellwether state law is to the contrary, and requires consideration of not only the original buyers' willingness to pay, but also *market* buyers' willingness to pay and *market* sellers' *willingness to sell at actual and but-for prices*. *See supra* at III.B. If buyers are willing to pay $10 for 100 widgets without a defect, but are willing to pay *negative* $5 for 100 widgets with a defect, then *negative* $5 is not a "market price," because sellers are not willing to sell 100 widgets for that price. *See also* New GM Boedeker *Daubert* Reply (Dkt. 6294) at 19 n. 29 ("In any event, as Dr. McFadden explains, it would 'not matter if the vehicles in this case were already sold,' because 'any market price in economics' requires consideration of the current owners' willingness to sell at that price, regardless of whether the product had already been sold zero times, once, or ten times."); Ex. 42B, 8/13/18 McFadden Rpt. re Boedeker ¶¶ 9-10 (citing economics textbooks, emphasis added); Ex. 29B, 8/13/18 Rossi Rpt., at 10 ("market price" requires "willingness to sell at that price"). Moreover, Dr. Gans himself opined in the *Whirlpool* litigation involving economic loss claims arising from an alleged washing machine defect that, "if the court believes that the but-for *market*place should be taken into consideration," then this "requires a measure of the supply response to a change in prices." Ex. 118, Gans *Whirlpool* Rpt. ¶¶ 61, 65 (emphasis added). In short, plaintiffs' argument erroneously conflates the question of how to measure change-in-

market-price damages with the number of consumers, if any, who would receive such damages.

*Fourth*, contrary to plaintiffs' argument, the Court's decision does not render irrelevant the quantity of "vehicles GM actually sold." Pls. Mem. at 10. As Drs. McFadden and Rossi explain, once a change in market price (if any) is calculated for each plaintiff's vehicle (by allowing for a supply response in the but-for world), "[e]ach class member would receive an award equal to the[ir] estimated overpayment."[31]

### G. Plaintiffs' *Comcast* Argument Is Incorrect And Irrelevant.

Contrary to plaintiffs' arguments, *Comcast* does not permit damages models that conflict with state law and/or basic economics just because they are purportedly "tethered" to plaintiffs' liability theory. Plaintiffs' argument is an irrational proposition that cannot be squared with *Comcast's* holding. *See Comcast Corp. v. Behrend,* 569 U.S. 27, 36–38, (2013) (rejecting class-wide damage model measuring legally invalid antitrust damages); *see also Zakaria*, 755 F. App'x at 624–25 (affirming decertification of a class under *Comcast* and granting summary judgment due to invalid damages methodology). Moreover, *Comcast* relates to class certification under Rule 23(b)(3). This Court's summary judgment ruling did not address class certification or Rule 23, but instead held that plaintiffs' damages claims failed as a matter of state law. Plaintiffs' reliance on *Comcast* is misplaced and does not save their claims.

## IV.   THERE IS NO BASIS FOR AN INTERLOCUTORY APPEAL.

"Interlocutory appeals are presumptively disfavored" and not intended "to provide early review of difficult rulings in hard cases." *Garber v. Office of the Comm'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014); *see also In re Adelphia Commc'ns. Corp.*, 2008 WL 361082,

---

[31] Ex. 29B, 8/13/18 Rossi Rpt., at 4; *see* Ex. 142, 4/10/18 McFadden Dep. at 15:12-19 ("the damage is the difference between the price actually paid and the price that would have been paid in that but-for world . . . that difference would apply to each [class member]").

at *1 (S.D.N.Y. Feb. 11, 2008).   Rather, an interlocutory appeal "is appropriate only 'in extraordinary cases where appellate review might avoid protracted and expensive litigation,' and where it poses no threat of 'piecemeal litigation.'"   *Garber*, 120 F. Supp. 3d at 337.

Under these standards, an interlocutory appeal may be certified only if (1) the "order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."   28 U.S.C. § 1292(b).   The party seeking certification "bears the burden of demonstrating that all three prongs of Section 1292(b) are met."   *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 2019 WL 3202745, at *1 (S.D.N.Y. July 16, 2019). "[E]ven when the elements of section 1292(b) are satisfied, the district court retains 'unfettered discretion' to deny certification."   *Garber*, 120 F. Supp. 3d at 337; *see also In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014).

Plaintiffs' request for an interlocutory appeal fails each of the statutory requirements and should be denied.   *First*, plaintiffs have not shown "there is substantial ground for difference of opinion."   While plaintiffs note the Court's observation that the "issue is a close one," Pls. Mem. at 17, that is not sufficient for the extraordinary procedure of an interlocutory appeal.   *Garber*, 120 F. Supp. 3d at 337; *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 174 F. Supp. 2d 4, 8 (S.D.N.Y. 2001) ("While deciding the conflict preemption issue was not easy, section 1292(b) is not intended to be a 'vehicle to provide early review of difficult rulings in hard cases.'").   Moreover, the Court's holding is based on the clear "substantive law in all three of the Bellwether States, which defines market value to mean 'the price that a willing buyer would pay to a willing seller . . . .'" SJ Op. at 41.   Plaintiffs did not dispute this law in their summary judgment opposition or their motion for reconsideration, and thus "are merely quibbling with this Court's

Case 1:14-md-02543-JMF    Document 7250    Filed 10/30/19    Page 52 of 59

application of the facts to the law, not with the underlying legal rule, which is necessary if this Court is to certify an immediate appeal." *Estevez-Yalcin v. The Children's Village*, 2006 WL 3420833, at *4 (S.D.N.Y. Nov. 27, 2006). While plaintiffs claim various courts have approved the use of conjoint analysis, the Court correctly explained that in those decisions the experts— unlike Boedeker—either took into consideration market prices, or the defendants apparently did not raise (and thus the other courts did not consider) the market price issue. SJ Op. at 38-39. In any event, "disagreement among courts outside the circuit does not alone support the certification of an interlocutory appeal." *Barclays*, 2019 WL 3202745, at *2, 3.

*Second*, to satisfy the "materially advance" prong, an interlocutory appeal must shorten the time required for the litigation.[32] Here, plaintiffs provide no explanation as to how an interlocutory appeal would save time and thus have failed to carry their burden on this element. Pls. Mem. at 18. Plaintiffs cite New GM's prior statements that benefit-of-the-bargain damages will be a "major driver" in the litigation, *id.*, but those statements are not relevant to whether an immediate appeal would save time now. In fact, such an appeal now would result in unnecessary piecemeal litigation, as the pending summary judgment arguments, which will shortly be fully briefed, would have to be handled in a separate, additional appeal. Such piecemeal litigation would prolong, rather than shorten, the time required for litigation, making an interlocutory appeal improper. If there is going to be an appeal, it should be on the complete summary judgment record. *See, e.g.*, *Adelphia*, 2008 WL 361082, at *1 (denying interlocutory appeal because although it would "dispel some of the uncertainty surrounding … claims[] which lie at the heart of this case," it would not

---

[32] *See, e.g.*, *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996) ("The use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation."); *Isra Fruit Ltd. v. Agrexco Agric. Exp. Co. Ltd.*, 804 F.2d 24, 26 (2d Cir. 1986) (denying certification where interlocutory appeal would not result in "any appreciable saving of time"); *Garber*, 120 F. Supp. 3d at 337; *Estevez-Yalcin*, 2006 WL 3420833, at *4-5.

resolve other issues).

*Third*, the "controlling questions of law" element requires "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Facebook*, 986 F. Supp. 2d at 536; *see also Century Pacific, Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008). Questions "regarding application of the appropriate law to the relevant facts are generally not suitable for certification under § 1292(b)." *Facebook*, 986 F. Supp. 2d at 536. A summary judgment ruling is "essentially a fact-based inquiry, making an interlocutory appeal inappropriate." *Century Pacific*, 574 F. Supp. at 372.

The question plaintiffs seek to certify—"the Court's ruling that Plaintiffs' conjoint analysis is insufficient to prove benefit-of-the-bargain damages as a matter of law," Pls. Mem. at 16-17—is not a "pure question of law" that can be decided "without having to study the record." Instead, that ruling is a classic example of applying the law (measuring damages as the price that a willing buyer would pay to a willing seller) to the facts (Boedeker's analysis in this case, as well as Boedeker's and Gans' deposition admissions and other evidence). The Court held that plaintiffs had no proof of willingness to sell at actual and but-for prices. SJ Op. at 31-34. The only way for this Court to rule on this issue was to examine Boedeker's opinion, his methodology, his results, and deposition testimony, *id,* at 30-35, 40-41, and the Second Circuit would have to study the same record facts—confirming that an interlocutory appeal in inappropriate.

## CONCLUSION

Plaintiffs' reconsideration motion is nothing more than an attempt to take a second bite at the apple, raising new arguments and claims for the first time, and seeking to relitigate old arguments and questions already decided by the Court. Plaintiffs' arguments are incorrect and do not satisfy the exacting standards for reconsideration. The Court's opinion and order should stand, and plaintiffs' motion should be denied.

Respectfully submitted,

Dated:  October 7, 2019                 */s/ Richard C. Godfrey, P.C.*

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654-3406
Phone:  312-862-2000
Fax:  312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

26

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2019, I electronically filed the foregoing using the

CM/ECF system which will serve notification of such filing to the email of all counsel of record

in this action.

By: /s/ *Andrew B. Bloomer, P.C.*
Andrew B. Bloomer, P.C.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | No. 14-MD-2543 (JMF) |
| GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | |
| This Document Relates to: | |
| ALL ACTIONS | |

**ECONOMIC LOSS PLAINTIFFS' MOTION FOR RECONSIDERATION OF
THE COURT'S AUGUST 6, 2019 SUMMARY JUDGMENT OPINION AND ORDER,
OR, IN THE ALTERNATIVE, MOTION FOR CERTIFICATION OF
ORDER FOR INTERLOCUTORY APPEAL**

The Economic Loss Plaintiffs respectfully request that the Court reconsider its August 6, 2019 Opinion and Order Regarding New GM's Motion for Summary Judgment as to the Bellwether Economic Loss Plaintiffs' Claims for Benefit-of-the-Bargain Damages (Dkt. No. 7019) (the "Order"), or, in the alternative, that the Court certify the Order for Interlocutory Appeal.  Reconsideration under Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3 is necessary to remedy three clear errors and prevent manifest injustice:

*First*, the Court declined to follow Ninth Circuit precedent applying California law even though the Second Circuit requires the Court to "defer conclusively" to that precedent.  *See*, *e.g.*, *U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) ("[W]e 'defer conclusively' to another circuit's decision when it addresses a question of state law from a state within that circuit.") (quoting *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 90 (2d Cir. 2006)).  Under controlling Ninth Circuit precedent, benefit-of-the-bargain damages are "based on what a purchaser would have paid at the time of purchase had the purchaser received all the information" (*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015)), notwithstanding (and *not accounting for*) any benefits received after purchase.  *Nguyen v. Nissan N. Am., Inc.*, 2019 WL 3368918, at *6 (9th Cir. July 26, 2019).  These precedents explicitly fulfill the dual purposes of recompense and deterrence under clear California law.  *See*, *e.g.*, *Stout v. Turney*, 586 P.2d 1228, 1232 (Cal. 1978).  A belated recall does not remedy the fact of the harm at the time of sale.

*Second*, as a result of the Court's earlier rulings, only Texas Plaintiffs who have suffered manifestation are asserting claims under Texas law.  The Court appears to have overlooked either the existence of the record of manifested harm, or the implications of that record, when

- 1 -

ruling, as a matter of law, that the Texas Plaintiffs would be made whole by a belated recall remedy.

*Third*, the Court went against the overwhelming weight of authority and ignored established eocnomic theory in holding, as a matter of law, that using historical supply under these circumstances as an input to a well-accepted damages model precludes redress for any consumer.  The Order also requires Plaintiffs, in violation of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), to offer a damages model that analyzes what other, hypothetical plaintiffs could have bought from a different, hypothetical GM that never existed.  Here, the actual GM customers suffered actual harm by paying what they actually paid.

*Alternatively*, if the Court decides not to reconsider its grant of summary judgment in favor of GM on the bellwether Plaintiffs' claim for benefit-of-the-bargain damages, Plaintiffs request that that the Court certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b). Because the Order significantly alters the landscape of this litigation on matters over which there is substantial ground for disagreement, and an immediate appeal may greatly advance the ultimate resolution of this MDL, the Court "should not hesitate to certify an interlocutory appeal." *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (internal quotation marks omitted).

010440-11/1176748 V1

Respectfully Submitted,

DATED:  August 20, 2019                    HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____ */s/ Steve W. Berman*_____
       Steve W. Berman
*steve@hbsslaw.com*
Sean R. Matt
*sean@hbsslaw.com*
Andrew M. Volk
*andrew@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

DATED:  August 20, 2019                    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: _____ */s/ Elizabeth J. Cabraser*_____
       Elizabeth J. Cabraser
*ecabraser@lchb.com*
Rachel Geman
*rgeman@lchb.com*

275 Battery St., 29th Floor
San Francisco, CA 94111
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

- 3 -

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on August 20, 2019, which will send notification of such filing to the e-mail addresses registered.

_s/ Steve W. Berman_
Steve W. Berman

010440-11/1176748 V1