

Eric B. Fisher
Binder & Schwartz LLP                    (T) 212.933.4551
366 Madison Avenue 6th Floor             (F) 212.510.7299
New York, NY 10017                       efisher@binderschwartz.com

October 28, 2019

**By ECF and Federal Express**

The Honorable Martin Glenn
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, New York 10004

> Re:    *In re Motors Liquidation Company, f/k/a General Motors Corporation, et al.*,
>        Case No. 09-50026 (MG)

Dear Judge Glenn:

        We write on behalf of the Motors Liquidation Company Avoidance Action Trust (the "AAT") to set forth the AAT's position concerning how Judge Furman's August 6, 2019 decision (the "MDL Summary Judgment Decision") impacts the AAT's motion for approval of its distribution plan to the holders of Allowed General Unsecured Claims, ECF Doc. No. 14552 (the "AAT Distribution Motion"). As set forth below, the unapproved portions of the AAT Distribution Motion should be approved because the MDL Summary Judgment Decision makes evident that the prospect that the Economic Loss Plaintiffs (the "ELPs") will have a claim against the AAT is remote and speculative; and in the unlikely event that such a claim were to arise, it would not occur for many years. Further, even were the ELPs to have a claim against the AAT at some date in the distant future, the value of any individual claim would be below the threshold entitling any claimant to a distribution from the AAT. For each of these reasons, we respectfully request that the Court approve the AAT Distribution Motion.[1]

        Following the hearing on August 12, 2019, this Court entered an Order approving the AAT's initial distribution to the DIP Lenders (the United States Department of the Treasury and Export Development Canada), ECF Doc. No. 14611, and the AAT made its initial distribution to the DIP Lenders on September 3, 2019. The Court reserved decision with regard to the balance of the AAT Distribution Motion, which sought: (i) approval of the AAT's initial distribution to the holders of Allowed General Unsecured Claims; (ii) approval of the procedures for identifying holders of Allowed General Unsecured Claims and the form of notice to be provided to them; and (iii) authorization for the AAT to take all other actions necessary or appropriate to effectuate

---

[1] Because the AAT is not a participant in the litigation between the GUC Trust and the ELPs, it has not sought to be included in the schedule to brief the issues set out in the GUC Trust's October 22 letter to the Court (ECF Doc. No. 14625). However, we want to correct two statements concerning the AAT made in the ELPs' October 23, 2019 letter to the Court (ECF Doc. No. 14627). First, counsel for the GUC Trust did share with us their proposed briefing schedule prior to submitting it to the Court, and we advised them that we would be writing the Court separately to address the issues specific to the AAT. Second, although we did speak with counsel for the ELPs at his request, we advised counsel that the AAT would not be offering to pay money to the ELPs.

The Honorable Martin Glenn
October 28, 2019
Page 2

the distribution to its beneficiaries.  The ELPs objected to any distribution to the holders of Allowed General Unsecured Claims principally on the basis that there may come a time when the ELPs would seek a distribution from the AAT and, therefore, the funds should not be distributed to current beneficiaries.

As Judge Furman noted, the MDL Summary Judgment Decision "change[d] the landscape in dramatic ways," and has altered the path of the MDL litigation that previously had a tentative trial date set for January 2020.  *In re Gen. Motors LLC Ignition Switch Litig.*, --- F. Supp. 3d ---, 2019 WL 3564698, at *17 (S.D.N.Y. Aug. 6, 2019).  What was going to be a long process has now become longer, and it is unlikely that the ELPs' litigation will be resolved within the next several years.  Even if the ELPs are permitted to seek an interlocutory appeal of the MDL Summary Judgment Decision, resolution of that appeal would not likely occur until mid to late next year, at the earliest.  And then, if the ELPs are successful, there would remain resolution of numerous complex issues that will also likely take years to litigate, such as class certification, authorization to file late claims, the admissibility of certain expert testimony, and any subsequent appeals.  Distribution to the AAT's known beneficiaries should not be delayed for the many years it will take to fully adjudicate whether the ELPs will ever be entitled to assert a claim against the AAT (whether individually or as a class).

Further, although the AAT is not a party to the MDL and does not have first-hand knowledge of the proceedings, it is apparent that the MDL Summary Judgment Decision has jeopardized the ELPs' ability to certify a class.  The MDL Summary Judgment Decision held that the ELPs' proffered expert witness did not "provide competent proof of Plaintiffs' damages," *In re Gen. Motors LLC Ignition Switch Litig.*, 2019 WL 3564698, at *13, and granted New GM's motion for summary judgment on the ELPs' claims in three Bellwether cases, *id.* at *17.  As a result, absent reversal on appeal, the ELPs are left without a viable theory of class-wide or common injuries, which will make class certification very difficult.

The possibility has been raised that even if a class were not certified, individuals who suffered economic losses as a result of defective ignition switches (and/or other defects) may seek permission to file late claims.  That process, too, if it were even possible, would take considerable time and unfairly delay payment to the AAT's known beneficiaries.  However even if individuals were someday permitted to file late claims based on a defective ignition switch, any such claimant is almost certain not to be entitled to a distribution from the AAT.  The AAT Agreement provides that the Trust Administrator is not permitted to make a payment of less than $25 to any holder of an Allowed General Unsecured Claim.  ECF Doc. No. 14552-1 (AAT Agreement § 5.6).  Based on the amount of distributable proceeds and the current aggregate amount of Allowed General Unsecured Claims, a claimholder must have an allowed claim in excess of $8,000 in order to be eligible for a distribution from the AAT.[2]  Thus even if an

---

[2] As of today, a distribution from the AAT will be at a rate of approximately 0.3% of the claim amount. Of course, if the ELPs' claims, which they estimate to be between $7 to $10 billion, *see Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 150 (2d Cir. 2016), were allowed, the

The Honorable Martin Glenn
October 28, 2019
Page 3

individual had economic losses of $1,000, the distribution amount would be approximately $3. It seems implausible that any individual would have a claim for economic loss in excess of $8,000 and, as a result, no individual claimant would be entitled to a distribution from the AAT.[3]

There will be many years of additional litigation before a determination is made regarding the certification of a class (or classes) of ELPs, which will first require the reversal of the MDL Summary Judgment Decision on appeal, followed by success on a renewed motion seeking class certification before the district (or bankruptcy) court. The remote possibility that the ELPs will have a claim at all will not be determined for many years, and even then, a distribution from the AAT would be highly unlikely or, at best, minimal. In these circumstances, there is no reasonable justification to delay distributions to the known AAT beneficiaries who will continue to suffer prejudice by having their distributions delayed.

For these reasons, the AAT respectfully requests that the Court permit the AAT to make a distribution to its remaining beneficiaries without further delay.

We thank the Court for its attention to this letter.

Respectfully,

s/ Eric B. Fisher

Eric B. Fisher


cc:    All counsel of record (via ECF)

---

distribution rate would be much lower and the threshold amount necessary to obtain a distribution from the AAT would be considerably higher than $8,000, thereby making it only more unlikely that any individual ELP would ever be entitled to a distribution.

[3] In addition, because no individual ELP would have a right to receive a distribution from the AAT, there is considerable doubt as to whether there would be a right to a distribution even were the individuals certified to proceed as part of a class. Were a late claim even permitted, it would be based on the failure to provide notice of the automotive defects prior to the bar date. However, had they received such notice and filed a claim, and had the claim been allowed, no individual claimant would be entitled to a distribution from the AAT unless the distribution exceeded the $25 threshold. The substantive rights of the ELPs, if certified as a class, cannot be greater than the distribution rights of other similarly-situated small claimholders. *See Shady Grove Orthopedic Assoc, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407-08 (2010) (individual plaintiffs cannot use class certification to "enlarge or modify any substantive right").