**MCDERMOTT WILL & EMERY LLP**
340 Madison Ave.
New York, New York 10173
Telephone: (212) 547-5429
Facsimile: (646) 417-7313
E-mail: kgoing@mwe.com
Kristin K. Going

<u>**HEARING DATE AND TIME**</u>: **January 7, 2020**
**@ 11:00 a.m. EST**

<u>**OBJECTION DEADLINE**</u>: **December 31, 2019**
**@ 4:00 p.m. EST**

*Attorneys for the Motors Liquidation Company*
*GUC Trust Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
**In re**                                                        :
:                          **Chapter 11 Case No.**
:
:                          **09-50026 (MG)**
**MOTORS LIQUIDATION COMPANY,** *et al.*,                        :
**f/k/a General Motors Corp.,** *et al.*                         :  **(Jointly Administered)**
:
**Debtors.**                                                     :
-----------------------------------------------------------------x

**NOTICE OF HEARING ON MOTION OF WILMINGTON TRUST COMPANY,**
**AS GUC TRUST ADMINISTRATOR, FOR AN ORDER GRANTING AUTHORITY**
**TO REALLOCATE AND USE DISTRIBUTABLE CASH**
**FOR THE PURPOSES OF FUNDING ADMINISTRATIVE AND**
**REPORTING FEES, COSTS AND EXPENSES OF THE GUC TRUST**

**PLEASE TAKE NOTICE** that on December 18, 2019, Wilmington Trust Company, solely in its capacity as trust administrator and trustee (in such capacity, the "**GUC Trust Administrator**"), of the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan dated March 18, 2011, filed a motion (the "**Motion**") for an order, pursuant to sections 105(a) and 1142(b) of title 11 of the United States Code and section 6.1 the Second Amended and Restated Motors Liquidation Company GUC Trust Agreement dated as of July 30, 2015, authorizing the reallocation and use of Distributable Cash (as defined in the Motion) to fund anticipated administrative and reporting fees, costs and expenses of the GUC Trust, all as more fully described in the Motion, and that a hearing will

be held before the Honorable Judge Martin Glenn, United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **January 7, 2020 at 11:00 a.m. (Eastern Standard Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to this Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) McDermott Will & Emery LLP, attorneys for Wilmington Trust Company as GUC Trust Administrator, 340 Madison Avenue, New York, New York 10173 (Attn: Kristin K. Going, Esq.); (ii) FTI Consulting, as the GUC Trust Monitor, 3 Times Square, 11th Floor New York, NY 10036 (Attn: Conor Tully); (iii) Paul, Weiss, Rifkind, Wharton & Garrison LLP, attorneys for the United States Department of the Treasury, 1285 Avenue of the Americas, New York, NY (Attn: Douglas R. Davis, Esq. and Lauren Shumejda, Esq.); (iv) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Erik Rosenfeld); (v) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); and (vi) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York,

New York 10014 (Attn: William K. Harrington, Esq.), so as to be received no later than **December 31, 2019 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served with respect to the Motion, Wilmington Trust Company, acting in its capacity as GUC Trust Administrator may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
December 18, 2019

                                        McDERMOTT WILL & EMERY LLP

                                        By:    /s/   Kristin K. Going
                                               Kristin K. Going
                                               340 Madison Avenue
                                               New York, New York 10173
                                               Tel: (212) 547-5429
                                               E-mail: kgoing@mwe.com

                                               *Attorneys for the Motors Liquidation*
                                               *Company GUC Trust Administrator*

| | |
|---|---|
| **MCDERMOTT WILL & EMERY LLP**<br>340 Madison Ave.<br>New York, New York 10173<br>Telephone: (212) 547-5400<br>Facsimile: (646) 417-7313<br>E-mail: kgoing@mwe.com<br>Kristin K. Going | <u>**HEARING DATE AND TIME**</u>: January 7, 2020<br>@ 11:00 a.m. EST<br><u>**OBJECTION DEADLINE**</u>: December 31, 2019<br>@ 4:00 p.m. EST |

*Attorneys for the Motors Liquidation Company*
*GUC Trust Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
**In re**                                                      :             **Chapter 11 Case No.**
:
:             **09-50026 (MG)**
**MOTORS LIQUIDATION COMPANY,** *et al.*,     :
**f/k/a General Motors Corp.,** *et al.*             :             **(Jointly Administered)**
:
**Debtors.**                                          :
-----------------------------------------------------------------x

**MOTION OF WILMINGTON TRUST COMPANY, AS GUC TRUST
ADMINISTRATOR, FOR AN ORDER GRANTING AUTHORITY TO REALLOCATE
AND USE DISTRIBUTABLE CASH FOR THE
PURPOSES OF FUNDING ADMINISTRATIVE AND REPORTING
<u>FEES, COSTS AND EXPENSES OF THE GUC TRUST</u>**

**TO:   THE HONORABLE MARTIN GLENN**
       **UNITED STATES BANKRUPTCY JUDGE**

Wilmington Trust Company, not in its individual capacity and solely in its capacity as trust administrator and trustee (the "<u>GUC Trust Administrator</u>") of the Motors Liquidation Company GUC Trust (the "<u>GUC Trust</u>"), as established under the Debtors' Second Amended Joint Chapter 11 Plan dated as of March 18, 2011 [ECF No. 9836] (as confirmed, the "<u>Plan</u>") of the above-captioned post-effective date debtors (the "<u>Debtors</u>"), submits this motion (the "<u>Motion</u>") seeking entry of an Order, in the form attached hereto as <u>Exhibit A</u> (the "<u>Order</u>"),

pursuant to sections 105(a) and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code") and section 6.1 of the Second Amended and Restated Motors Liquidation Company GUC Trust Agreement dated as of July 30, 2015 (together with prior iterations of such agreement, as applicable, the "GUC Trust Agreement") authorizing the reallocation and use of Distributable Cash (as defined below) to fund anticipated administrative and reporting fees, costs and expenses of the GUC Trust. In support of the foregoing, the GUC Trust Administrator respectfully represents as follows:[1]

## PRELIMINARY STATEMENT

1. On the effective date of the Plan (the "Effective Date"), the GUC Trust was funded with a sum of cash that was intended to satisfy the claims resolution and distribution costs of the GUC Trust (the "Administrative Costs") as well as compliance costs incurred by the GUC Trust in connection with the regulatory reporting requirements of the U.S. Securities and Exchange Commission (the "Reporting Costs"). The funding amount was based on an estimated three-year life of the GUC Trust. The GUC Trust, however, has continued operations past its anticipated duration.

2. One major obstacle currently prevents the GUC Trust from winding down: the ongoing litigation related to ignition switch recalls issued by New GM in 2014 (the "Recall Litigation").

3. With respect to the Recall Litigation, the GUC Trust and the Economic Loss Plaintiffs have attempted to settle several times to no avail. Pursuant to the Court's September 25,

---

[1] Capitalized terms not defined in the Preliminary Statement shall have the meaning ascribed to them the first time they appear in the remainder of this Motion. Capitalized terms not otherwise defined in the Motion shall have the meanings ascribed to them in the Plan or the GUC Trust Agreement, as applicable. Any description herein of the terms of the Plan or the GUC Trust Agreement is qualified in its entirety by the terms of the Plan or the GUC Trust Agreement, as applicable.

2

2018 ruling, before a settlement can be approved, the Plaintiffs must seek class certification pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). Thus, in order to resolve the Late Claims Motions, the GUC Trust will be involved in costly and time consuming litigation concerning either certification of the Economic Loss Plaintiffs class(es) and/or litigation of the Late Claims Motions. In addition, there are sixty-eight potential personal injury/wrongful death plaintiffs who continue to seek to assert late claims against the GUC Trust. Given the current posture of the Recall Litigation, under any potential path forward, the GUC Trust is expected to remain in existence until at least 2021.

4. In addition, while the GUC Trust continues in existence, it is required to comply with its SEC reporting obligations. The Plan contemplated that, predominantly for liquidity purposes, interests in the GUC Trust (*i.e.* Trust Units) would be transferable if such transferability was approved by the SEC. SEC approval was obtained, but it was conditioned upon ongoing public reporting (including 10-K, 10-Q and 8-K reporting). Satisfying these regulatory requirements results in expenses to the GUC Trust. Among other things, the GUC Trust must comply with the Sarbanes-Oxley Act of 2002, which requires the implementation and maintenance of extensive internal controls related to financial reporting.

5. The GUC Trust has prepared budgets (attached to this Motion) to address the likely administrative and reporting costs of the GUC Trust for the calendar year 2020.[2] However, Court approval is necessary to reallocate funds—which would otherwise be distributable to Unitholders ("Distributable Cash")—for purposes of satisfying the costs set forth in those budgets.

---

[2] On seven prior occasions, this Court has authorized such reallocation. Each time, the GUC Trust has presented an annual budget to the Court for the use of such funds, and in each of those instances the GUC Trust has complied with such budgets in an aggregate sense.

3

6.    Pursuant to this Motion, the GUC Trust Administrator is seeking authority to reallocate Distributable Cash in the aggregate amount equal to (i) $6,540,300 to fund the calendar year 2020 budget for Administrative Costs (the "2020 Administrative Costs Budget," attached hereto as Exhibit B), and (ii) $4,279,200[3] to fund the calendar year 2020 budget for Reporting Costs (the "2020 Reporting Costs Budget," attached hereto as Exhibit C, and together with the 2020 Administrative Costs Budget, the "2020 Budgets").[4]

## JURISDICTION

7.    The Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334(b), paragraph II of the order of the Court dated as of March 29, 2011 confirming the Plan [ECF No. 9941] (the "Confirmation Order"), Article XI of the Plan, and Sections 4.1 and 6.1 of the GUC Trust Agreement. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

**I.    The Motors Liquidation Company GUC Trust**

    **A.    General Overview**

8.    The GUC Trust was established pursuant to Article VI of the Plan. The primary purposes of the GUC Trust are to resolve disputed general unsecured claims, distribute trust assets to GUC Trust beneficiaries, and to wind down the estates of the dissolved Debtors.

---

[3] The request for reallocation of approximately $10.8 million represents approximately 3.3% of GUC Trust Distributable Assets.

[4] Pursuant to Section 6.4 of the GUC Trust Agreement, the GUC Trust Administrator is required to seek the approval of the 2020 Administrative Costs Budget from the GUC Trust Monitor and the DIP Lenders (no approval of the 2020 Reporting Costs Budget is required). The GUC Trust Administrator submitted the 2020 Administrative Costs Budget to the GUC Trust Monitor and the DIP Lenders for approval on November 27, 2019; the GUC Trust thereafter received the necessary approval of the 2020 Administrative Costs Budget. The 2020 Budgets were also filed publicly with the SEC on November 26, 2019 under the cover of a Current Report on Form 8-K. A copy of that 8-K filing is attached hereto as Exhibit D.

9.  Pursuant to the GUC Trust Agreement, holders of disputed general unsecured claims become entitled to receive distributions of cash from the GUC Trust if, and to the extent that, such disputed general unsecured claims become Allowed General Unsecured Claims. *See* GUC Trust Agreement § 5.3.

10. In addition, each holder of an Allowed General Unsecured Claim retains a contingent right to receive, on a *pro rata* basis, additional Distributable Cash, to the extent such cash has not been set aside in a reserve for holders of remaining disputed claims or for use by the GUC Trust in satisfying Administrative Costs or Reporting Costs. Plan § 4.3.[5] The GUC Trust issues units ("Trust Units," and the holders of Trust Units, the "Unitholders") in respect of these contingent rights at a rate of one Trust Unit per $1,000 in amount of Allowed General Unsecured Claim. GUC Trust Agreement § 1.1(jjjj).

11. As contemplated by the Plan, the GUC Trust Administrator obtained a no-action letter (the "No-Action Relief") from the U.S. Securities and Exchange Commission (the "SEC"), which authorized the issuance of the Trust Units in transferable form. Transferability, while beneficial to holders of Allowed General Unsecured Claims who would otherwise be unable to liquidate their contingent beneficial interests in the GUC Trust, created additional regulatory and reporting requirements for the GUC Trust.

12. While the No-Action Relief exempts the GUC Trust from the registration requirements associated with publicly traded companies pursuant to section 12(g) of the Securities Exchange Act of 1934, the GUC Trust is required to (i) file quarterly Form 10-Qs, (ii) file yearly

---

[5] Prior to entry of the Court's *Order Authorizing the GUC Trust Administrator (A) to Exercise and/or Liquidate New GM Warrants and Liquidate New GM Common Stock, and (B) to Make Corresponding Amendments to the GUC Trust Agreement* (the "Conversion Order") [ECF No. 13271], holders of Allowed General Unsecured Claims held contingent rights to receive common stock and warrants issued by New GM. Such entitlement was converted into an equivalent amount of cash following entry of the Conversion Order.

Form 10-Ks, (iii) file periodic Form 8-Ks describing any material events, (iv) establish comprehensive internal controls to ensure that the aforementioned financial reporting complies with the Sarbanes-Oxley Act of 2002 ("SOX"), and (v) provide a Wilmington Trust Company employee who must certify to compliance with SOX in his or her individual capacity.

### B.    GUC Trust Funding

13. An initial budget for the GUC Trust's Administrative Costs was proposed by the Debtors and approved by the Court in March 2011 as part of the Plan confirmation process (the "Initial Budget"). *See* Confirmation Order ¶ 37. The Initial Budget was limited by a finite sum of cash which the DIP Lenders were willing to provide for the wind-down of the Debtors' estates. While the GUC Trust's general Administrative Costs (including the costs associated with claims resolution and trust asset distributions) were intended to be primarily funded by the cash contributed by Motors Liquidation Company ("MLC") to the GUC Trust on the Effective Date (the "Wind-Down Budget Cash"), the GUC Trust Agreement affords the GUC Trust Administrator the flexibility to "hold back" from distributions (with the approval of the GUC Trust Monitor) an amount of Distributable Cash necessary to fund any current, and anticipated future, cost overruns associated with the primary functions of the GUC Trust. *See* GUC Trust Agreement § 6.1(b) and (d). Such "held-back" Distributable Cash may then be reallocated with the approval of the Court, and such reallocated funds are labeled as "Other GUC Trust Administrative Cash" designated for Administrative Costs. *Id.*

14. Reporting Costs were addressed differently. Reporting Costs are primarily comprised of the fees and expenses directly related to complying with the No-Action Relief, including the production of public reports and compliance with SOX. While transferability of the

6

Trust Units was viewed as beneficial to holders of Allowed General Unsecured Claims, the DIP Lenders did not agree to fund any of the Reporting Costs with Wind-Down Budget Cash.

15. As no funds were designated for Reporting Costs in the Initial Budget, the GUC Trust Agreement provided for such costs to be funded from Distributable Cash. As such, the GUC Trust Agreement provides the GUC Trust Administrator with the ability to "hold back" from distributions (with the approval of the GUC Trust Monitor) an amount of Distributable Cash necessary to fund any current and future anticipated Reporting Costs. *See* GUC Trust Agreement § 6.1(c). Such "held-back" Distributable Cash may then be reallocated with the approval of the Court, and such reallocated funds are labeled as "Other GUC Trust Administrative Cash" designated for Reporting Costs. *Id.*

16. On seven separate past occasions, when Wind-Down Budget Cash and/or Other GUC Trust Administrative Cash was nearly depleted, the GUC Trust Administrator has requested Court authority to reallocate funds from otherwise distributable assets for satisfaction of Administrative Costs and Reporting Costs. In each instance, the Court authorized the GUC Trust's reallocation and use in accordance with the budgets presented to the Court [ECF Nos. 11507, 12248, 13063, 13564, 13849, 14247 & 14401].

## II. Recall Litigation

17. Beginning in January 2014, General Motors LLC ("New GM") conducted a series of recalls relating to ignition switch and other defects in vehicles manufactured by both MLC and New GM (the "Recalls"). Since the Recalls were first announced, New GM has disclosed that several hundred actions, including over 100 putative class actions (collectively the "Recall Actions"), have been filed against New GM relating to the Recalls and/or the underlying defects. *See* Motors Liquidation Company GUC Trust Form 10-Q filed on November 13, 2018 at 44.

7

18.     Shortly after the issuance of the Recalls, the GUC Trust became involved in a number of contested matters related to the Recall Actions. In April and August 2014, New GM filed three motions [ECF Nos. 12620, 12807, 12808] (collectively, the "Motions to Enforce the Sale Order") seeking an order from the Court declaring that (i) New GM has no liability for the claims at issue in the Recall Actions with respect to vehicles manufactured by MLC, and (ii) that such claims are barred by the sale order and injunction (the "Sale Order") relating to the section 363 sale of the Debtors' assets to New GM (the contested matters related to the Motions to Enforce the Sale Order and the Late Claims Motions (defined below) are defined herein as the "Recall Litigation").

19.     Thereafter, certain personal injury/wrongful death plaintiffs (the "PIWD Plaintiffs") and economic loss plaintiffs (the "Economic Loss Plaintiffs" and together with the PIWD Plaintiffs, the "Plaintiffs") filed motions seeking leave to file late proofs of claim against the GUC Trust (the "Late Claims Motions,").[6]

20.     The Late Claims Motions were stayed pending discussions between the GUC Trust and the Plaintiffs regarding a potential settlement of the Late Claims Motions (the "Proposed Plaintiff Settlement"). Starting in mid-2017, the GUC Trust engaged in discussions with counsel for certain Economic Loss Plaintiffs and Personal Injury/Wrongful Death Plaintiffs regarding a potential settlement of certain issues underlying the Late Claims Motions. These discussions meaningfully progressed, but did not culminate in an executed settlement agreement.[7]

21.     Starting in or about February 2018, the GUC Trust resumed settlement discussions with the Plaintiffs. On or about April 25, 2018, the GUC Trust entered into a settlement agreement

---

[6] *See* ECF Nos. 13806, 13807, 13811, 13818, 14018, 14112 and 14195.
[7] The breakdown of these settlement negotiations and subsequent litigation is well-known to the Court, and described more fully in the Court's January 18, 2018 *Memorandum Opinion and Order Regarding Motion to Enforce the Settlement Agreement By and Among the Signatory Plaintiffs and the GUC Trust* [ECF No. 14212].

with certain of the Plaintiffs to settle the Late Claims Motions and other related issues (the "Settlement Agreement")[8].

22. On May 3, 2018, the GUC Trust filed motions with the Court requesting, among other things, approval of the Settlement Agreement and estimation by the Court of the value of the claims asserted by the Plaintiffs. Before these motions were adjudicated, the Court requested briefing on whether a class of economic loss plaintiffs must be certified pursuant to Federal Rule of Civil Procedure 23 prior to approval of the Settlement Agreement and related issues. Simultaneous briefs on that issue were filed on June 12, 2018, and the Court heard oral argument on those issues on July 19, 2018.

23. On September 25, 2018, the Court issued the *Memorandum Opinion and Order Concluding that the Signatory Plaintiffs and the GUC Trust Must Satisfy Civil Rule 23 for the Proposed Settlement to be Approved and Denying Three Pending Motions Without Prejudice* [ECF No. 14374] (the "Rule 23 Decision"), in which the Court concluded before it can approve the Settlement Agreement, the Plaintiffs must certify a class for settlement purposes under Rule 7023. The Court also noted that while "[t]he Proposed Settlement makes a lot of sense, ending years of uncertainty and litigation and providing Claimants with the possibility of recovery . . . approval of the Proposed Settlement first requires Rule 23 class certification for settlement purposes."

24. On November 6, 2018, the Court entered the *Order Scheduling Case Management Conference* [ECF No. 14377], scheduling a case management conference on December 19, 2018 to discuss future proceedings involving the Late Claims Motions and whether the Signatory Plaintiffs and GUC Trust intend to propose a new settlement that addresses any of these issues.

---

[8] On May 22, 2018, the GUC Trust entered into an amended version of the Settlement Agreement intended to clarify the intent of certain provisions of the Settlement Agreement.

9

25. The parties participated in a meet and confer on December 7, 2018. Thereafter, on December 12, 2018, the parties filed status letters as required by the *Order Scheduling Case Management Conference*, which articulated the parties' respective positions concerning a new settlement agreement, scheduling of future proceedings and mediation.

26. On December 20, 2018, the GUC Trust, Economic Loss Plaintiffs and Personal Injury/Wrongful Death Plaintiffs participated in a status conference in which the parties articulated a path forward for a new settlement agreement that included class certification for the Economic Loss Plaintiffs ("Settlement 3.0"), and on February 1, 2019, the Economic Loss Plaintiffs filed *The Economic Loss Plaintiffs' Motion to: (1) Extend Bankruptcy Rule 7023 to These Proceedings; (2) Approve the Form and Manner Of Notice; (3) Grant Class Certification For Settlement Purposes Upon Final Settlement Approval; (4) Appoint Class Representatives and Class Counsel for Settlement Purposes; and (5) Approve the Settlement Agreement by and Among The Signatory Plaintiffs and the GUC Trust Pursuant To Rule 23* [ECF No. 14408] and the GUC Trust filed the *Motion of Motors Liquidation Company GUC Trust to Approve (I) the GUC Trust Administrator's Actions, (II) the Settlement Agreement by and among the Signatory Plaintiffs and the GUC Trust Pursuant to Bankruptcy Code Sections 105, 363, and 1142 and Bankruptcy Rules 3002, 9014 and 9019, and (III) Authorize the Reallocation of GUC Trust Assets* [ECF No. 14409] in order to move forward with adjudicating the issues involved in Settlement 3.0. On February 22, 2019, New GM filed a motion requesting a stay of the proceedings related to Settlement 3.0 and a motion to withdraw the reference with regard to the Economic Loss Plaintiffs' request to certify a class pursuant to Rule 23.

27. On March 6, 2019, this Court entered an order adjourning the motions related to Settlement 3.0, including the Economic Loss Plaintiffs' class certification motion and New GM's motion to stay, *Sine Die.*

28. On August 6, 2019, Judge Furman issued a summary judgment ruling in the MDL finding that (i) Economic Loss Plaintiffs' damages in the three Bellwether states would be the lesser of the cost of the repair or the diminution in market value caused by the tort and (ii) Economic Loss Plaintiffs cannot prove their benefit of the bargain legal theory because they have not met their burden to establish damages.

29. After careful analysis of Judge Furman's decision and the impact on Settlement 3.0, on September 25, 2019, the GUC Trust terminated Settlement 3.0 pursuant to its contractual right to do so.

30. In order to move forward with resolution of the Late Claims Motions that are still pending, on October 22, 2019, the GUC Trust filed a letter setting forth an agreed upon proposed briefing schedule for litigating the Late Claims, and the Court held a status conference on December 10, 2019, instructing the parties to meet and confer and provide the Court with a further briefing proposal by January 15, 2020.

### III.    Current Cash Needs and the 2019 Budgets

31. The GUC Trust estimates that, as of the end of the calendar year 2019 (after accrual of unpaid December 2019 costs), it held Other GUC Trust Administrative Cash designated for Administrative Costs in the amount of $3,959,000, and Other GUC Trust Administrative Cash designated for Reporting Costs in the amount of $787,500. *See* Exhibits B and C. Such amounts are insufficient to fund the operations of the GUC Trust for the 2020 calendar year.

32. As detailed in the 2020 Budgets, the GUC Trust Administrator anticipates that approximately $10,499,300 (which includes a $2 million contingency fund, described below) will be necessary to fund Administrative Costs for the 2020 calendar year. In addition, approximately $5,066,700 (which amount includes a $500,000 contingency fund) will be necessary to be reallocated to fund Reporting Costs for the 2020 calendar year. *See* Exhibits B and C. Given the current status of the Recall Litigation, the GUC Trust Administrator believes that the flexibility to use additional funds for purposes of addressing such litigation matters (the $2 million contingency), and for satisfying the additional reporting obligations triggered by such litigation (the $500,000 contingency), is necessary and appropriate.

33. Cost saving measures may, and hopefully will, lead to a budget excess, as it has in prior years. Accordingly, the GUC Trust Administrator, in consultation with the GUC Trust Monitor, crafted the 2020 Budgets in a manner that minimizes the amount of Distributable Cash that needs to be reallocated, while simultaneously ensuring adequate funds to satisfy 2020 costs and expenses, based upon currently known facts and circumstances.

## RELIEF REQUESTED

34. By this Motion, the GUC Trust Administrator requests entry of an order (i) authorizing the GUC Trust Administrator to reallocate and use Distributable Cash in an amount necessary to satisfy in full projected Administrative Costs and projected Reporting Costs for the calendar year 2020.

35. In support of the relief requested herein, the GUC Trust Administrator submits that the additional fees and expenses the GUC Trust Administrator seeks to fund hereunder will enable

the GUC Trust Administrator to satisfy its obligations under the GUC Trust Agreement and will directly benefit unsecured creditors.[9]

## BASIS FOR RELIEF

36.    The relief requested herein is consistent with the terms of the Plan, the Confirmation Order, the GUC Trust Agreement and applicable bankruptcy law.  The GUC Trust Administrator has the power and authority to perform such "functions as are provided in the Plan and the Trust Agreement" including, (i) if acting in consultation with the GUC Trust Monitor, seeking Court authority to reallocate and use Distributable Cash to fund administrative and reporting fees, costs and expenses, and (ii) seeking Court authority to extend the duration of the GUC Trust.  Confirmation Order ¶¶ 15, 31, 35; GUC Trust Agreement §§ 4.1, 6.1.

37.    The relief requested herein, pursuant to the terms hereof, is also supported by governing bankruptcy law and offers immediate and long-term benefits to GUC Trust beneficiaries.  With respect to the GUC Trust Administrator's request to reallocate and use Distributable Cash, Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 1142(b) further provides the Court with authority to direct any necessary party "to perform any [act] . . . that is necessary for the consummation of the plan."  11 U.S.C. §1142(b).

---

[9] As required by Section 6.1 of the GUC Trust Agreement, the GUC Trust Administrator has consulted with the GUC Trust Monitor with respect to the proposed reallocation and use of Distributable Cash.  GUC Trust Agreement § 6.1. The GUC Trust Monitor has indicated that it supports the relief requested herein.

**I.      The GUC Trust Should Be Permitted to Reallocate and Use Distributable Cash in Amounts Necessary to Fund Excess Estimated Administrative Costs and Reporting Costs**

38.     The claims resolution process with respect to general unsecured claims that were asserted by the bar date is complete.  The Recall Litigation, however, is far from over.  As noted above, the GUC Trust expects to engage in litigation efforts regarding Rule 23 issues and/or the Late Claims Motions through 2020.  The costs of such litigation will need to be paid from Distributable Cash.

39.     Further, while it remains in existence, the GUC Trust must file public reports with the SEC and to maintain internal controls for SOX compliance.  Were the GUC Trust to cease such activities, the No-Action Relief would no longer be applicable, and the Trust Units would no longer be transferable.  Such a result would be highly detrimental to the Unitholders who, the GUC Trust Administrator understands, rely on the liquidity created by transferability of said Trust Units.  The reporting obligations, and their attendant costs, are therefore a direct benefit to the Unitholders and are justified.

40.     The GUC Trust Administrator submits that the 2020 Budgets are necessary and appropriate for effectively administering the GUC Trust and performing all required reporting duties in the calendar year 2020.

**NOTICE**

41.     The GUC Trust Administrator has served notice of this Motion on (a) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014, (b) the parties in interest in accordance with the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures*, dated May 5, 2011

[ECF No. 10183], and (c) any other required notice parties under Section 6.1(b)(iv) of the GUC Trust Agreement. The GUC Trust Administrator respectfully submits that no other or further notice need be provided.

## **CONCLUSION**

WHEREFORE, the GUC Trust Administrator respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, (i) authorizing the reallocation and use of Distributable Cash to fund certain fees, costs and expenses of the GUC Trust and (ii) granting such other and further relief as may be deemed just and proper.

Dated:  New York, New York
        December 18, 2019

                                     McDermott Will & Emery LLP

                                     By:    /s/  *Kristin K. Going*
                                               Kristin K. Going
                                               340 Madison Ave.
                                               New York, NY 10173
                                               Tel: (212) 547-5429
                                               E-mail: kgoing@mwe.com

                                               *Attorneys for the Motors Liquidation*
                                               *Company GUC Trust Administrator*