# Exhibit B

EFILED IN OFFICE
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

**16-A-1280**

JAN 31, 2020 04:36 PM

*Angie T. Davis*
Angie T. Davis, Clerk of State Court
Cobb County, Georgia

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

| | |
|---|---|
| ROBERT RANDALL BUCHANAN, Individually, and as Administrator of the ESTATE OF GLENDA MARIE BUCHANAN,<br><br>  Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>  Defendant. | )<br>)<br>)<br>)<br>) CAFN: 16-A-1280-7<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FIRST AMENDED COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Robert Randall Buchanan, Individually, and as Administrator of the Estate of Glenda Marie Buchanan, Deceased, by and through counsel, and files his First Amended Complaint for Damages, and states as follows:

**I.    INTRODUCTION**

1.    This is an action to recover damages for the pain and suffering and wrongful death of Glenda Marie Buchanan ("Mrs. Buchanan"), who was killed in an automobile crash that occurred on November 10, 2014, in Paulding County, Georgia, (the "crash").

**II.    PARTIES**

2.    Plaintiff Robert Randall Buchanan is the Personal Representative for the Estate Glenda Marie Buchanan, who sustained fatal injuries as a result of the crash described below.

1

3. Defendant General Motors LLC ("GM" or "New GM") is a citizen of Delaware and Georgia, and does business in all fifty states, including the State of Georgia. New GM's principal place of business is in Detroit, Michigan.

4. New GM is a limited liability corporation with one member: General Motors Holding, LLC. General Motors Holding, LLC is a citizen of Delaware and Michigan, and is a holding company and direct parent of New GM. General Motors Holding, LLC is a limited liability corporation with one member: General Motors Company. General Motors Company is a citizen of Delaware and Michigan and is publicly traded.

5. General Motors Corporation ("Old GM") was a Delaware corporation with its headquarters in Detroit, Michigan. Old GM, through its various entities, designed, manufactured, marketed, distributed, and sold Chevrolet, Pontiac, Saturn, and other brand automobiles in Georgia, elsewhere in the United States, and worldwide.

6. In June of 2009, Old GM filed for bankruptcy. On July 9, 2009, the United States Bankruptcy Court approved the sale of substantially all of Old GM's assets pursuant to a Master Sales and Purchase Agreement ("Agreement"). The Agreement became effective on July 10, 2009. The Agreement approved the sale of Old GM to New GM.

7. The Agreement defines Defendant's "Purchased Assets" as:

(xiv) all books, records, ledgers, files, documents, correspondence, lists, plats, specifications, surveys, drawings, advertising and promotional materials (in whatever form or medium), including Tax books and records and Tax Returns used or held for use in connection with the ownership or operation of the Purchased Assets or Assumed Liabilities, including the Purchased Contracts, customer lists, customer information and account records, computer files, data processing records, employment and personnel records, advertising and marketing data and records, credit records, records relating to suppliers, legal records and information and other data;

2

(xv) all goodwill and other intangible personal property arising in connection with the ownership, license, use or operation of the Purchased Assets or Assumed Liabilities; . . .

AMENDED AND RESTATED MASTER SALE AND PURCHASE AGREEMENT at Section 2.2.

8.  Along with the Purchased Assets, New GM also expressly took on a range of liabilities. "Liabilities" is defined in the Agreement as "any and all liabilities and obligations of every kind and description whatsoever, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, contingent, determined or undeterminable, on or off-balance sheet or otherwise, or due or to become due, including Indebtedness and those arising under any Law, Claim, Order, Contract or otherwise."

9.  Among many others, the Liabilities assumed by New GM under the Agreement include:

> (vii) (A) all Liabilities arising under express written warranties of Sellers [i.e., Old GM] that are specifically identified as warranties and delivered in connection with sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser [i.e., New GM] prior to or after the Closing and (B) all obligations under Lemon Laws; . . .
>
> (ix) all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of accidents, incidents, or other distinct and discreet occurrences that happen on or after the Closing Date and arise from such motor vehicles' operation or performance; . . .[1]

---

[1] Pursuant to an order of the bankruptcy court, this particular category of assumed liabilities is "regardless of when the product was purchased."

3

(xi) all Liabilities arising out of, relating to, in respect of, or in connection with the use, ownership or sale of the Purchased Assets after the Closing; . . .

New GM also assumed responsibility for compliance with a wide range of laws and other regulations, including:

(a) From and after the Closing, Purchaser [New GM] shall comply with the certification, reporting, and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by Seller [Old GM].

(b) From and after the Closing, Purchaser [New GM] shall be responsible for the administration, management and payment of all Liabilities arising under (i) express written warranties of Sellers [Old GM] . . . (ii) Lemon Laws.

10. Moreover, the Bankruptcy Court order approving the Agreement made clear that New GM assumed "the warranty and recall obligations of both [Old GM] and [New GM]."

11. Pursuant to the Agreement and other orders of the Bankruptcy Court, New GM emerged out of bankruptcy and continued the business of Old GM with many, if not most, of Old GM's employees and, on information and belief, with most of the same senior-level management, officers, and directors, as well as its records, tests, and documents generated in the creation of the defective steering wheel angle sensors ("SWAS").

12. The allegations pertaining to Old GM are included for purposes of background and historical context, and to set forth the scope of New GM's liabilities and responsibilities under the Agreement. This Complaint does not assert any causes of action against Old GM; all causes of action and attributions of liability are directed solely against New GM.

III. **JURISDICTION AND VENUE**

13. Plaintiff Robert Randall Buchanan is a resident of Douglas County, Georgia.

14. New GM is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in the State of Michigan. GM's registered agent in this state is CSC of Cobb County, Inc., 192 Anderson Street, S.E., Suite 125, Marietta, Cobb County, Georgia 30060. New GM has previously been served and is subject to the jurisdiction and venue of this Court.

15. On October 25, 2016, New GM entered into a Joint Stipulation consenting to jurisdiction and venue in this Court.

IV. **STATEMENT OF FACTS**

16. The product involved in this action is a 2007 Chevrolet Trailblazer, vehicle identification number 1GNDS13S972239115 (the particular vehicle involved in the incident is hereafter referred to as the "Trailblazer").

17. Mrs. Buchanan's Trailblazer had a version of ESC in it. New GM calls its ESC system, StabiliTrak. Per New GM, using a variety of coordinated sensors, "StabiliTrak helps improve vehicle stability, particularly during emergency maneuvers. The StabiliTrak control module compares your steering input with the vehicle's actual response and, if necessary, makes small, individual brake and engine torque applications to enhance control and helps you keep on track."

18. In a 2011 Press Release, New GM said, "StabiliTrak is the most significant safety feature since the development of the safety belt. It is already making a big difference in improving safety on America's roads. According to the Insurance Institute for Highway Safety, electronic stability control systems such as StabiliTrak have reduced the risk of being involved in a fatal crash by 33 percent during the past 10 years."

5

19. One of the components that is integral to the performance of StabiliTrak is the steering wheel angle sensor ("SWAS"). According to GM, "The (SWAS) is a critical part of the ESC system and measures the steering wheel position and rate of turn." If the SWAS fails, the StabiliTrak will not work.

20. Old GM's and New GM's component supplier, Alps Electric (North America), Inc. ("Alps") manufactured the SWAS in Mrs. Buchanan's Trailblazer.

21. The SWAS that was used in Mrs. Buchanan's Trailblazer was also used in 777,808 other 2006-2009 Chevrolet Trailblazer and GMC Envoy, 2006-2007 Buick Rainier, 2006-2009 Saab 9-7x and 2006-2007 Isuzu Ascender vehicles, hereinafter the "Subject Vehicles."

22. Old GM began receiving high rates of warranty claims for SWAS failures in the Subject Vehicles almost immediately upon the first sale of the 2006 model year vehicles.

23. The warranty claims were so high that Old GM attempted to get Alps to reimburse GM for the costs of these warranty claims. The Design Release Engineer for the SWAS, Paul Shaub, as well as other Old GM employees, knew that the technology had "well known issues," meaning the SWAS in the Subject Vehicles were failing at a high rate and disabling the StabiliTrak system.

24. Old GM never warned owners and operators of the Subject Vehicles that these sensors were failing at high rates and that these failures disabled the StabiliTrak in their vehicles.

25. Mr. Shaub, as well as numerous other Old GM employees, became New GM employees. After becoming New GM employees, New GM also chose not to warn owners and

operators of the Subject Vehicles that these sensors were failing at high rates and that these failures disabled the StabiliTrak in their vehicles.

26. Mrs. Buchanan purchased the Trailblazer as a used vehicle on February 8, 2011.

27. Despite its knowledge of the high failure rates of the SWAS in the Subject Vehicles, including Mrs. Buchanan's vehicle, and that the SWAS had well-known technology issues, New GM chose not to warn Mrs. Buchanan of the defective SWAS in her Trailblazer on or before November 10, 2014.

28. The incident forming the basis for this action is a crash which occurred on November 10, 2014 at approximately 3:15 p.m. on Mulberry Rock Road, east of Carl Haley Road, in Paulding County, Georgia.

29. Mrs. Buchanan was driving the Trailblazer west on Mulberry Rock Road. For unknown reasons, Mrs. Buchanan traveled off the north side of the roadway with her right side tires. She then turned the Trailblazer left back onto the road. She lost control of the Trailblazer and the Trailblazer went across the road and down into a ditch, overturning as it did so.

30. Mrs. Buchanan was properly belted with the lap shoulder belt and the Trailblazer was equipped with StabiliTrak. The SWAS failed before the crash disabling the StabiliTrak which caused the crash and Mrs. Buchanan's fatal injuries.

V. **CLAIMS FOR RELIEF**

**COUNT I**
**STRICT LIABILITY OF DEFENDANT**
**GENERAL MOTORS LLC**

31. Old GM designed, selected, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold the Trailblazer, and its components.

32. Old GM sold the Trailblazer as a new product within ten (10) years before the filing of this action.

33. The Trailblazer left the control of Old GM in the same condition as it was at the time and place of the crash, with the exception of ordinary wear and tear.

34. The Trailblazer was defective and unreasonably dangerous when distributed and sold by Old GM.

35. The defects in the Trailblazer include, but are not limited to, the following:

   (a) The failure of the SWAS in the Trailblazer which disabled the StabiliTrak system;

   (b) The disabled StabiliTrak system in the Trailblazer failed to activate and this failure caused the Trailblazer to go out of control, leave the road, and rollover;

   (c) A failure to adequately warn Mrs. Buchanan and other owners and operators of Subject Vehicles, or the public in general, about the unsafe and defective condition and design of the Subject Vehicles so that individuals like Mrs. Buchanan could make informed and prudent decisions regarding traveling or riding in such vehicles;

   (d) A failure to implement safe, technologically feasible, and economically practical design alternatives which would have mitigated or cured the design defect noted above.

36. The defective Trailblazer caused Mrs. Buchanan's fatal injuries.

37. New GM is strictly liable in tort to Plaintiff for the fatal injuries sustained by Mrs. Buchanan as a result of the defects resulting from Old GM's design, manufacture, marketing and sale of the Trailblazer.

## COUNT II
## NEGLIGENCE OF
## GENERAL MOTORS CORPORATION

38.     Old GM was negligent in designing, inspecting, testing, manufacturing, assembling, marketing, selling and providing warnings for the Trailblazer.

39.     Old GM negligently installed the defective SWAS on the Subject Vehicles which failed and disabled the StabiliTrak system on Mrs. Buchanan's Trailblazer.

40.     The disabling of the StabiliTrak caused Mrs. Buchanan to lose control of her Trailblazer, resulting in a fatal crash.

41.     Old GM's failure to exercise due care proximately caused Mrs. Buchanan's fatal injuries.

42.     New GM is liable for the Old GM's aforementioned negligence.

## COUNT III
## NEGLIGENCE OF GENERAL MOTORS LLC

43.     New GM negligently failed to warn Mrs. Buchanan of the defective SWAS in the Trailblazer.

44.     New GM also negligently failed to warn Mrs. Buchanan that the defective SWAS in her vehicle disabled StabiliTrak, which increased the risk of a fatal rollover crash.

45.     New GM's failure to warn Mrs. Buchanan proximately caused her fatal injuries.

9

## COUNT IV
## INJURIES AND DAMAGES

46.Robert Randall Buchanan, as surviving spouse of Glenda Marie Buchanan, deceased, has standing to recover for the wrongful death of his wife, Glenda Marie Buchanan.

47.Robert Randall Buchanan, as Administrator of the Estate of Glenda Marie Buchanan, has standing to recover the general damages and special damages of Glenda Marie Buchanan.

48.Mrs. Buchanan was killed, and Plaintiff is entitled to recover from New GM the full value of the life of Mrs. Buchanan.

49.Mrs. Buchanan experienced physical and emotional pain and suffering.

50.Mrs. Buchanan's estate incurred funeral and burial expenses.

51.Robert Randall Buchanan has been deprived of the full society, companionship and services of Mrs. Buchanan.

## COUNT V
## PUNITIVE DAMAGES

52.New GM, through its conduct in failing to warn of a known defect in the Subject Vehicles, including the Trailblazer, demonstrated, and continues to demonstrate, an entire want of care, evidencing a reckless indifference and disregard to the consequences of its actions. Plaintiff, pursuant to O.C.G.A. § 51-12-5.1, is entitled to an award of punitive damages to punish New GM and deter New GM from such conduct in the future.

**WHEREFORE**, Plaintiff demands judgment against General Motors LLC, in an amount which will fully and completely compensate Plaintiff for the aforementioned injuries, damages and court costs. Plaintiff also demands punitive damages to punish and deter New GM for its failure to warn of a known defect in the Subject Vehicles, including the Trailblazer.

Plaintiff demands a jury trial.

**RESPECTFULLY SUBMITTED** this 31st day of January, 2020.

              **THE COOPER FIRM**

              */s/ Lance A. Cooper*
              **LANCE A. COOPER**
              Georgia State Bar No. 186100

531 Roselane Street
Suite 200
Marietta, GA 30060
770/427-5588

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a copy of the foregoing on counsel of record by email to the following:

| | |
|---|---|
| C. Bradford Marsh<br>Myrece R. Johnson<br>**Swift, Currie, McGhee & Hiers, LLP**<br>The Peachtree, Suite 300<br>1355 Peachtree Street, NE<br>Atlanta, Georgia 30309 | Brian Kappel<br>Rachel Lary<br>Michael Bell<br>Christopher Yearout<br>**Lightfoot, Franklin & White LLC**<br>400 20th Street North<br>The Clark Building<br>Birmingham, AL 35203 |
| Michael Cooney<br>**Dykema Gossett**<br>400 Renaissance Center<br>Detroit, MI 48243 | |

This the 31st day of January, 2020.

                                                              **THE COOPER FIRM**

                                                              */s/ Lance A. Cooper*

531 Roselane Street                             **LANCE A. COOPER**
Suite 200                                         Georgia State Bar No. 186100
Marietta, GA 30060                         **Attorney for Plaintiff**
770/427-5588