UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
|  | . | Case No. 09-50026-mg |
| IN RE: | . | Chapter 11 |
|  | . |  |
| MOTORS LIQUIDATION COMPANY, | . | One Bowling Green |
|  | . | New York, NY 10004 |
|  | . |  |
| Debtors. | . | Wednesday, February 5,2020 |
| . . . . . . . . . . . . . . . | . | 11:04 a.m. |

TRANSCRIPT OF CASE MANAGEMENT CONFERENCE REGARDING THE BRIEFING
SCHEDULE FOR THE AAT DISTRIBUTION MOTION
**BEFORE THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT JUDGE**


APPEARANCES:

| | |
|---|---|
| For New GM: | King & Spalding<br>By:  ARTHUR J. STEINBERG, ESQ.<br>1185 Avenue of the Americas<br>New York, NY 10036-2601<br>(212) 556-2158 |
| | Paul, Weiss, Rifkind, Wharton &<br>Garrison LLP<br>By:  KYLE J. KIMPLER, ESQ.<br>1285 Avenue of the Americas<br>New York NY 10019-6064<br>(212) 373-3968 |
| For Ignition Switch<br>Plaintiffs and<br>Non-Ignition Switch<br>Plaintiffs: | Brown Rudnick LLP<br>By:  EDWARD WEISFELNER, ESQ.<br>Seven Times Square<br>Times Square Tower<br>New York, NY  10036<br>(212) 209-4800 |

APPEARANCES CONTINUED


| | |
|---|---|
| Audio Operator: | F. Ferguson, ECR |
| Transcription Company: | Access Transcripts, LLC<br>517 Dell Road<br>Landing, NJ  07850<br>(855) 873-2223<br>www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

For the GUC Trust        Akin Gump Strauss Hauer & Feld LLP
Unitholders:             By:  DAVID M. ZENSKY, ESQ.
                         One Bryant Park
                         New York, NY  10036-6745
                         (212) 872-1000

                         McDermott Will & Emery
                         By:  MICHAEL R. HUTTENLOCHER, ESQ.
                         340 Madison Avenue
                         New York, NY  10173-1922
                         (212) 547-5482

For the Avoidance       Binder & Schwartz LLP
Action Trust:           By:  ERIC FISHER, ESQ.
                              NEIL BINDER, ESQ.
                              LINDSAY BUSH, ESQ.
                         366 Madison Avenue, 6th Floor
                         New York, NY  10017
                         (212) 933-4551

3

1      (Proceedings commence at 11:04 a.m.)

2          THE COURT:  Please be seated.  We're here in <u>Motors</u>

3  <u>Liquidation Company</u>, 09-50026.  I have a list of appearances in

4  front of me.

5          So I set this conference in an order dated

6  January 28th, which is ECF 14-662.  The Court has received

7  correspondence and some proposed orders that generally relate

8  to the subject.  A couple of other things I would say at the

9  outset:

10         At the request of some of the parties in the trust,

11 the Court entered a show-cause order establishing February 26th

12 as the deadline by which the remaining late claim movants must

13 file notice of intention to proceed pro se or counsel to the

14 remaining late claim movants, if any, must file notice of

15 appearance in this Chapter 11 case.  That show-cause order is

16 ECF 14-658 and is self-explanatory.

17         Let me put a couple of things on the record that

18 relate to that, however.  So that order was 14-658.  14-661 was

19 the scheduling order for briefing late claims motions.  It

20 actually put off the schedule on briefing in the AAT motion

21 until the conference today.

22         In response to the order to show cause and the

23 scheduling order, my chambers received a telephone call on

24 January 31st from a late claim potential movant, Joelle Moza,

25 M-O-Z-A, individually and as a representative of the estate of

4

1    Loretta Moza, her mother.  She called to inquire about the

2    order to show cause, 14-658, and the scheduling order, 14-661,

3    she had received in the mail.  She was -- as reported by my law

4    clerk, she said she was confused by these documents because a

5    previous attorney had told her that she no longer could pursue

6    claims on behalf of her mother due to the pending bankruptcy

7    case.  She wanted to know whether she should retain counsel and

8    how to proceed with the case.

9          My law clerk checked with me and after speaking with

10   me, my law clerk explained to Ms. Moza that we could not

11   provide her with any legal advice and referred her back to the

12   documents she had received in the mail.  She said she

13   understood but wanted to confirm this was not a scam.  My law

14   clerk told her the documents she received in the mail were

15   legitimate court documents.  That's all the information I have

16   on it.

17         Whether -- I'm not going to do anything further with

18   it.  If any of the counsel in the case believe that they should

19   be in touch with Ms. Moza, I'm going to leave it to you to

20   decide that but that reports fully on what transpired.  That's

21   the only inquiry that the Court received from anyone who

22   received the order to show cause and the briefing schedule.

23         With respect to the issues as to which I set this

24   conference today, Mr. Fisher, let me hear from you first

25   because I think both matters really do relate to the AAT and

5

1  the two matters as indicated in the order that I want to

2  address are the briefing schedule for the AAT distribution

3  motion and I won't recount the whole history obviously.  You

4  had made a distribution motion and there's a history about it.

5  New GM's counsel responded to your letter and indicated its

6  view that it was more appropriate that the AAT have the

7  opportunity first, since it's the one that's seeking relief, to

8  file any supplemental brief if it wishes to do so.  And in

9  response to that, other parties having the opportunity to file

10 a response.

11         The second matter I raised in the order was whether

12 the AAT should be ordered to participate in a mediation before

13 retired Judge Phillips.  So those are the two things I would

14 like for you to address.

15         Go ahead, Mr. Fisher.

16         MR. FISHER:  Good morning, Your Honor.  Eric Fisher

17 for the Avoidance Action Trust.  I just wanted to provide a

18 60-second recap --

19         THE COURT:  Please go ahead.

20         MR. FISHER -- of where the Avoidance Action Trust is

21 at the moment.

22         THE COURT:  Sure.  Okay.

23         MR. FISHER:  Our goal has always been to distribute

24 as much of the money that we have recovered in the Term Loan

25 litigation as possible to our beneficiaries and to distribute

6

1  that as quickly as we possibly can.  As the Court knows, we

2  took in $231 million in a global settlement of the Term Loan

3  case and we had an additional 2.2 approximately million dollars

4  that we had previously taken in from individual settlements.

5          At this point, we have paid all litigation funding

6  expenses of the Avoidance Action Trust.  We have held back

7  seven and a half million dollars to meet potential costs that

8  the Trust may incur in the future.  And pursuant to an order of

9  this Court dated August 16, 2019, we distributed $38.3 million

10 to the DIP lenders, who are the 30 percent beneficiaries of our

11 trust.

12         And since that August 2019 order, we are in the

13 current holding pattern that we are in.  I'd say we're on pause

14 and we're eager to distribute the approximately $102 million

15 that we have available at the moment to distribute to our

16 allowed unsecured beneficiaries.  And then our plan beyond

17 that, which we laid out in the distribution motion that we

18 filed back in July 2019, would be that to the extent that

19 there's money left over from the seven-and-a-half-million-

20 dollar hold-back -- and at this point, we expect that there

21 will be -- we would plan to make a further distribution to the

22 DIP lenders and to our unsecured creditors to push out as much

23 cash as possible from the trust into the hands of our

24 beneficiaries.  That's where we are.

25         I wanted to first deal with your Court -- the Court's

1  question about mediation and then pivot to the briefing

2  schedule, because I think the two issues are related.  And I

3  don't want to dwell on this, but we did think that it was not

4  appropriate for New GM to raise with the Court issues that

5  concerned positions that the Avoidance Action Trust was taking

6  in a conference with the Court that we weren't notified about,

7  they didn't notify us about, and they didn't tell us that any

8  issue concerning the AAT would be raised with the Court during

9  that conference.  So we've told that to the New GM and I'm

10  happy for the chance to address the issue directly for the

11  Court.

12         THE COURT:  The reason that I -- at that hearing, I

13  urged Ms. Goin (phonetic) to contact you.  She'd indicated

14  that, on the subject of mediation, she indicated that she had

15  only advised you -- I don't know if it was a day before a

16  mediation session, and that you had declined to participate at

17  that point.  With such short notice, I was not at all

18  surprised.  I mean, you're a lawyer for a client and it, under

19  any circumstances, would require client input.

20         So I didn't particularly put weight on what anybody

21  said in an argument as to whether you should or shouldn't

22  participate.  And even with respect to the proposed scheduling

23  order, which I think it had been communicated to me that you

24  had objected to the schedule, I entered an order, gave anybody

25  who wanted, including you, a chance to respond.  You did.  And

8

1  we're here, so --

2         MR. FISHER:  Okay.  Well, so --

3         THE COURT:  So I wouldn't get too caught up with

4  whether New GM, in your absence, took a position on whether or

5  not you should or shouldn't participate in mediation.  We're

6  here to talk about it now.

7         MR. FISHER:  Okay.  So we have -- following that

8  telephone conference with the Court, we have had conversations

9  with counsel for the Economic Loss Plaintiffs and with counsel

10 for New GM, we have tried our best to understand their

11 position.  We have consulted closely with our trust monitor and

12 with our trust administrator.  We have evaluated the positions

13 that they've advanced, and we've engaged in some measure of

14 negotiating of whether there's a resolution and, of course, I'm

15 not going to discuss the substance of that.

16        But in broad strokes, we've been very clear that in

17 the letter to the Court back in October 2019, and in

18 conversations with them ever since, that we do not think that

19 there is any legal or practical way that they could assert a

20 claim against our trust.  Our negotiating position in

21 settlements reflects our view of that.  We think that it would

22 be unfair to our beneficiaries to pay more than is reasonable

23 to make them go away so that we can make our distribution.  And

24 so our negotiations have continued but to date, have not borne

25 fruit.

9

1    And we don't think -- given how far apart we are, we

2  don't think that mediation would be productive.  We think it

3  takes time and money.  We think both sides are perfectly

4  capable of continuing to talk to one another.  What we do think

5  could help bring about a resolution here is actually requiring

6  the other side to put in writing, before this Court, the basis

7  on which they think that there's any conceivable claim that

8  either New GM or the Economic Loss Plaintiffs may someday, in

9  any conceivable scenario, have against our trust.  And --

10    THE COURT:  Why don't you tell that to Judge Philips?

11    MR. FISHER:  Well, of course if Your Honor thinks

12  that that's where we should continue these discussions, of

13  course we'll be guided by whatever the Court thinks is best.

14  But we really think and this brings me to the briefing

15  schedule.  I mean, their briefing schedule, you know, it goes

16  out until April 20th.  And April 20th is essentially, under

17  their proposal, the first time they would ever put in writing

18  before this Court the basis on which they're asserting that

19  they have any kind of claim against the AAT.

20    So our briefing schedule differs from theirs in two

21  respects:  It's faster.  We would have the issues briefed

22  entirely by March 9th.  And as the Court pointed out, it flips

23  the order.  But the reason for that is because we don't really

24  know exactly what arguments or positions they're going to

25  articulate.  They know full well why it is that we say that

10

1 they have no conceivable claim against the AAT.  And so the

2 briefs would just miss each other.  It wouldn't -- it just

3 wouldn't be good briefing.  They need to lay out their

4 arguments so that we know what it is that we're -- that we need

5 to respond to.  And then we propose replying by March 9th and

6 we think the pressure of parties actually having to articulate

7 their positions on the merits before this Court could help

8 contribute to bringing about a resolution here.

9          THE COURT:  I want to play devil's advocate one

10 minute.  I have no doubt that you have what you believe are

11 compelling arguments as to why the economic loss claimants have

12 no claim against the AAT.  And it certainly may be that at some

13 point in time I will have to resolve that.

14     (Cell phone ringing)

15          THE COURT:  Could be an important call you're

16 missing, Mr. Weisfelner.

17          MR. WEISFELNER:  Oh, I'm sure it was.  Again,

18 apologies.

19          THE COURT:  Okay.  There are a lot of moving pieces

20 going on right now.  And I never compel anybody to settle if

21 the parties -- any settlement has to be one that's consensually

22 reached by the parties, hopefully well-informed parties.  But

23 in light -- and one of the reasons the schedule -- the briefing

24 schedule is stretched out is because there are a lot of moving

25 pieces going on at the present time, which may result in really

11

1 a change in the landscape as to what we're -- what I have to

2 deal with or Judge Furman has to deal with.  And I think that,

3 again, playing devil's advocate, I'm not ordering it yet, but

4 if you're satisfied with the papers that you've already

5 submitted, fine.  Just say, you know, we -- the AAT does not

6 wish to file any supplemental brief.

7          If you want to file a supplemental brief, I mean, I

8 think that, assuming that I order the AAT to participate in a

9 mediation before Judge Phillips, who's been remarkably

10 successful in what he's accomplished in GM Motors Liquidation,

11 the benefit of it is you've laid out your position for Judge

12 Phillips and he'll understand quite clearly what your position

13 is in any mediation and try and reach your client -- will try

14 and reach some resolution that's something of a compromise or

15 not.

16          But I think -- let's assume, because I am going to

17 order you to go to do the mediation.  Okay?  I don't --

18 frankly, the time and expense of doing the mediation in the

19 context of this case, frankly, is not very great, Mr. Fisher.

20 And I think that before the mediation, you should set out your

21 position, whether it's just saying, it's set out in our prior

22 motion, we have nothing else to add, or a supplemental brief

23 that I may ultimately have to read and decide.  But lay out

24 your position so that it's fully -- you know, it's clear.  I'm

25 not saying that the prior motion papers aren't.  That's why I

12

1 say if you don't want to file anything, fine, don't file

2 anything.

3            But I do agree with New GM's standpoint.  You're the

4 one that's seeking the relief.  You ought to have your position

5 laid out to the Court or to the mediator.  They ought to go

6 next at this briefing before me, and then if there's something

7 that's a reply to whatever the other parties in interest

8 submit, fine.  A narrower reply to whatever is part, that would

9 be the normal way that I would view the briefing schedule.

10            MR. FISHER:  Sure.  On the narrow briefing point,

11 Your Honor, I think what's most important to us is the

12 opportunity to reply because we really don't feel as though we

13 know what the other --

14            THE COURT:  Well, are you telling me you don't wish

15 to file anything now?  This is your -- look.  I --

16            MR. FISHER:  Sure.

17            THE COURT:  What I'm saying is if you file a reply,

18 it's going to be a reply to what they -- the opposition that

19 they filed to your motion.  It's not going to be -- you're not

20 going to raise new arguments.  If you have arguments that you

21 want to make that you haven't made before, or you want to

22 succinctly state your position again that not only I will have,

23 but Judge Phillips would have, fine.  If you don't want to do

24 that, fine.  But any reply you file, if you're going to file a

25 reply, the reply has to be directed only to the arguments that

13

1  are raised by the other side.  I'm not going to give you a free

2  shot, and then because somebody can come back and say, well, we

3  want to file another brief.  We're not going to do that.

4        MR. FISHER:  So, Your Honor, we'd be happy to file an

5  open brief to set out our position more clearly and more fully

6  and -- but provided that we have an opportunity to reply to

7  whatever it is that they say.

8        THE COURT:  But replies, again, replies should be

9  directed to --

10        MR. FISHER:  Of course.

11        THE COURT:  -- the opposition that's filed.  And I'm

12  sure you'll do that.  Again, I didn't go back and read your --

13  the brief from the earlier go-around.  If you want to -- again,

14  if you want to stand on that, that's fine.

15        MR. FISHER:  No, I think -- Your Honor, I do think

16  there are benefits to our amplifying our position.  There's no

17  doubt about it.  I -- my --

18        THE COURT:  Look, it isn't only going to be my eyes

19  because I am going to order you to go to the mediation.

20        MR. FISHER:  Okay.

21        THE COURT:  I don't -- frankly I don't see the down

22  sides.  The argument that it's additional time and expense, I

23  -- I'm sorry.  I don't -- in the context of this whole matter,

24  I don't -- I'm not putting much weight into that.  Okay?  I

25  don't think -- if there's -- you know, Judge Phillips, who's

14

1  been -- who's a very experienced judge and a very experienced

2  mediator, after one session, will decide with others whether

3  people should come back or not, or whether it's a single

4  session.  I'm not going to get into that now.  Okay.

5          MR. FISHER:  I have nothing further, Your Honor.

6          THE COURT:  What -- when -- here's what I would

7  suggest.  When we finish today, let's take a short break.  See

8  if you can agree with other counsel as to when you're going to

9  file your supplemental brief.  Okay?  Because rather than me

10 just setting the date for it.  Let's see what we get to today.

11 Okay?

12         MR. FISHER:  Yes.

13         THE COURT:  Anything else you want to add at this

14 point?

15         MR. FISHER:  No, Your Honor.

16         THE COURT:  Thanks very much, Mr. Fisher.

17         Mr. Weisfelner, go ahead.

18         MR. WEISFELNER:  Thank you, Judge.

19         Your Honor, just a couple of minutes with some

20 necessary background, I think, would put everything into

21 context.

22         As Your Honor knows, as all the parties in court are

23 aware, the GUC Trust, New GM, and the Economic Loss Plaintiffs,

24 continue in a mediated effort designed to reach a global

25 resolution.  And by "global," I don't mean to leave the AAT

15

1  out, but we have devised a framework that would allow us to go

2  forward, with or without the AAT on board.

3         That effort towards a mediated settlement, as Your

4  Honor quite rightly noticed, is taking up an awful lot of

5  attention.  There are self-imposed deadlines that the parties

6  are working towards.  But the other important thing to keep in

7  mind is that elements of the anticipated settlement would

8  impact on the AAT as currently contemplated by one or more

9  parties to the settlement; in particular, what, if any,

10  estimated dollar amount gets placed into the settlement

11  agreement, reflecting either the class claim, or classes'

12  claims, or individual claims.

13         Now, let's turn back to how all of that impacts the

14  AAT.  And understand that our position, vis-à-vis the AAT

15  counsel, was that in order to break this logjam, the logjam

16  being they want to make a distribution, that we ought to either

17  involve them in mediation, which they have adamantly refused,

18  up to and including ten minutes before Mr. Fisher got to the

19  podium, but beyond that, we said to counsel, afford the parties

20  an opportunity please to sit down with your decision-makers,

21  the monitor, or whoever it is at Wilmington that calls the

22  shots.

23         Once upon a time, Your Honor will recall that

24  Wilmington, represented by Gibson Dunn, were both the subject

25  of -- a very distant memory but it rings sort of true today --

16

1  that we had some difficulty with the powers that be at

2  Wilmington in terms of operating in what I'll call, in general,

3  "good faith."  It's reminiscent of that old-time experience

4  with Wilmington that we thought was cured with new counsel.

5           THE COURT:  Mr. Weisfelner, that's past history.

6           MR. WEISFELNER:  Okay.

7           THE COURT:  And in setting this conference, I

8  indicated, with respect to whether the AAT and the order set

9  along with a representative of the AAT, with settlement

10 authority shall be ordered to attend the mediation.

11          MR. WEISFELNER:  And I recognize that gentleman with

12 the striped tie.  I think I know who he is.  My point is simple

13 and, with all kidding aside, the parties on my side of the

14 courtroom have asked for two things:  One, participate in

15 mediation.  The answer's been a resounding no.

16          THE COURT:  Well, the answer now is a yes.

17          MR. WEISFELNER:  Okay.  But alternatively we did ask,

18 and some people might think it was more efficient.  I don't

19 particularly care that we get an opportunity to talk directly

20 to the powers that be, but that's neither here nor there.

21          I think that the biggest problem that we have in

22 communicating with each other is I think we've been crossing

23 each other in the dark as to what the true threshold issues

24 are.  Now, Your Honor, if I can help you to recall what their

25 position was in their October letter, I think it highlights why

17

1 we've been missing each other.

2       To summarize the arguments that the AAT has put

3 forward as to why we can have no legal or probable way to

4 assert a claim, is their contention that their constituent

5 documentation that was approved by the bankruptcy court back

6 during the day before or in connection with confirmation, said

7 two critical things:  Number one, you had to have been a

8 contested claimant or a registered claimant or an allowed

9 claimant as of a date certain to even qualify to have any

10 attention paid to you; similarly, according to their

11 constituent documentation, you had to be awarded a claim in a

12 dollar amount sufficient to afford you a $25 distribution.

13       In their judgment, and it's their judgment, it's not

14 a court order, your client doesn't qualify as holding a

15 contested claim as of a date certain, and based on our

16 assumptions, our assumptions, that the impact of Judge Furman's

17 August decision, you'll never get there.  That's not a judicial

18 determination, that's their conclusion based on their reading

19 of an order that has since been certified for a direct appeal.

20       My point being that, in much the same way, that the

21 appellate courts in this jurisdiction have determined that the

22 sale order violated due process, that the bar order violated

23 due process.  How in the world do they suspect that their

24 constituent documents locking in the $25 limitation or the

25 requirement that you be on file by a date certain, before the

1  recall was ever noticed?  That's a figment of their imaginative

2  creation.

3          So if we want to have a threshold issue that gets us

4  to the point of focus, it's do your constituent documents, to

5  the extent they require a $25 minimum distribution and/or that

6  you be registered as of a date certain, as if those issues

7  won't be resolved as part of our global settlement without

8  them.  Is that effective?  Does it bind anybody?  If you get

9  beyond that point, then I think the rest of their arguments

10  fall away.

11          THE COURT:  May I ask this?  First, have dates been

12  established for additional mediation sessions with Judge

13  Phillips?

14          MR. FISHER:  If needed.  The parties are in the

15  process of exchanging definitive documentation that will, as I

16  understand it, will be circulated to the parties, ultimately

17  filed, both with this Court and with the District Court.  Some

18  issues may involve or require a withdrawal of the reference.

19  Some of them may require Your Honor sitting on a 9019.

20          THE COURT:  Yeah.  And as I've always tried to be

21  careful about this.  I think the last time you were here, I

22  asked did anybody object to me speaking with Judge Furman.  No

23  one did, although maybe on the phone.  And I did speak with

24  Judge Furman and he and I -- we only had one conversation about

25  it, but there was -- he and I discussed 9019s, partial

19

1 withdrawal of the reference.  No definitive answers on any of

2 that, but we -- he and I did have a conversation.  And I don't

3 know what the schedule going forward with Judge Furman will be,

4 but my question is really is there a session with Judge

5 Phillips at this stage or when, assuming I'm going to enter, if

6 necessary, I'll enter a written order requiring the AAT to

7 mediate.  I'm not sure if the written order is going to be

8 necessary, but I'm happy to sign one.

9          Are there dates with Judge Phillips at that point?

10          MR. WEISFELNER:  I think there is reserved time with

11 Judge Phillips if and only if, in the process of documenting

12 how far we've gotten so far, there's a glitch or an impasse.

13          THE COURT:  Well, if there's a glitch or an impasse

14 with the AAT, that may be -- the AAT's position, I'm thinking

15 back to when the distribution motion came out, and it was quite

16 a strong, respectable position.  I'm not disputing that.

17          I think that you've not been able, outside of

18 mediation, to make progress in reaching a settlement.  I think

19 one or a few sessions with Judge Phillips would be appropriate,

20 whether it's in the form of written mediation statements so

21 that Judge Philips understands each side's position with

22 respect to the AAT, whether it's the supplemental brief that

23 Mr. Fisher is going to file in this court could be used as a

24 mediation statement, but it does seem to me that anybody on

25 your side of the courtroom, Mr. Weisfelner, Judge Philips would

20

1  benefit likewise from having a mediation statement.  It may

2  ultimately be the brief that you're -- that is going to be

3  filed here, but I think he ought to have some paper in front of

4  him that would -- going into a mediation session, that he

5  understand these are the arguments that each side are making.

6          MR. WEISFELNER:  Two things relative to that.  If I

7  had my druthers, given an order of the Court that the AAT shall

8  participate in mediation, I would suggest that the AAT, on the

9  one hand, New GM and the Economic Loss Plaintiffs on the other,

10 sit down telephonically with Judge Phillips.  I say

11 telephonically because he's on the West Coast, not -- I mean,

12 he's in New York occasionally, but suggest a meeting with Judge

13 Phillips either by phone or in person if it could be arranged

14 in New York.  And the parties discuss with Judge Phillips how

15 to best facilitate his mediation.  Does he want written

16 statements?  Does he want briefs?  How would he like to go

17 about this?  I would suggest that as stage one.

18          As an alternative, by the way, to the stage one, or

19 as a parallel track, if at any point Wilmington or Judge

20 Gonzales or anybody else wants to take us up on the opportunity

21 to sit down without the mediator, we're happy to accommodate.

22 So that would be my suggestion, Judge.

23          THE COURT:  Okay.  Anybody else on that?

24          Mr. Kimpler, you want to be heard?

25          MR. KIMPLER:  Good morning, Your Honor.  Kyle Kimpler

21

1 from Paul Weiss on behalf of New GM.

2          I'll be very brief, Your Honor.  I just want to be

3 clear that the mediation is ongoing and progress is being made.

4 There is nothing definitive to report to the Court at this

5 point.  I just have to say that.

6          As far as the scheduling goes on the mediation,

7 certain dates were made available, I think, two or so weeks

8 ago.  We'll have to check with Judge Phillips whether those are

9 still on his calendar, and we will do so immediately.

10          And then lastly on the issue of briefing, we'll talk

11 with Mr. Fisher and see if we can come up with something.  I do

12 think though that there could be an issue as to the scope of

13 that briefing.  Because on the one hand, you could say, to

14 determine that, you have to go through all of the late claim

15 motions, you know, all of the merits of Plaintiff's claims, et

16 cetera.  I don't think that's what's being envisioned.  I think

17 what's really being envisioned is, is there a way that the AAT

18 can make a distribution and essentially just disregard the

19 Plaintiff's claims?  And to the extent that is the issue that

20 needs to be briefed, we are -- you know, we'll work with the

21 schedule.

22          THE COURT:  Okay.  Thank you.

23          MR. KIMPLER:  Thank you.

24          THE COURT:  Anybody else?

25          Mr. Fisher.  Mr. Fisher, go ahead.

22

1    MR. FISHER:  Your Honor, I don't want to belabor the

2  merits that Mr. Weiss (sic) wants to argue to, but just very,

3  very briefly, and we'll set it forth in the brief and/or

4  mediation statement.  But you know our position is that even if

5  Judge Furman had credited and not discredited the damages

6  analysis contract, even if at some future date this Court

7  allows late claims by the Economic Loss Plaintiffs, even if

8  Economic Loss Plaintiffs assert claims, they won't have a claim

9  against AAT.  So that's, you know, and that's -- we'll play

10  that out in our discussions with them and in our brief to the

11  Court.  But that's why we say that there's no reasonable claim

12  against the AAT here.  I don't feel like our position was

13  fairly characterized.

14    THE COURT:  Now, let me ask this, Mr. Fisher.  Do you

15  want an order from the Court that the AAT mediate?  I'm happy

16  to sign an order.

17    MR. FISHER:  Your Honor, I consider -- we consider

18  ourselves as having been ordered by the Court to participate in

19  mediation.

20    THE COURT:  Let's take a break until noon.  I would

21  like for you all to discuss and see if you can agree, on a --

22  and I am going to require you, if you wish, to file a

23  supplemental brief, to go first.  I -- what I would -- and

24  maybe you would disagree with this.  I would certainly envision

25  what you're going to file also could serve as a mediation

1  statement at the AAT, so you're not going to be duplicating

2  what you're going to be doing.  You have your brief

3  incorporated by reference.  I'll go back and read it.

4          So I do think -- as I've said, I think it would be

5  beneficial for the mediator to see in writing what the AAT's

6  position is, clearly stated, and what the New GM and Economic

7  Loss Plaintiffs clearly state it is.  And the mediation may be

8  unsuccessful, in which case, you know, in terms of the schedule

9  here, because of the moving pieces that are going on now that

10 are very important, you're not going to get a hearing, you

11 know, next week or in two weeks or something like that.  I want

12 to make that clear.

13         I think it's important, what that the GUT Trust,

14 Economic Loss Plaintiffs, New GM, have an opportunity to get

15 their, you know, get, if there's going to be a settlement, that

16 it get done in writing, and what, you know, what specific

17 pieces it envisions that Judge Furman would do, that I would

18 do, et cetera.  I think the last time I spoke with all of you,

19 I mentioned that in MF Global, Judge Marrero and I had sat

20 together because we both had to approve a settlement.  I

21 mentioned that to Judge Furman in our call.  We didn't decide

22 anything because we don't know what you're all going to

23 actually be proposing, but that's basically the sum and

24 substance of my conversations with Judge Furman.  At an

25 appropriate time, he and I will continue to talk about it.

24

1          Let me ask, are there dates set with Judge Furman

2    when things are supposed to be done?  I thought I vaguely

3    remembered a date in February when he was told that there was

4    likely to be a written -- written motions presented?

5          Mr. Kimpler.

6          MR. KIMPLER:  Kyle Kimpler for New GM again, Your

7    Honor.  I believe tentative dates have been floated for

8    potential motion papers.  I believe during a more recent

9    discussion, there was some discussion about how those dates may

10   get pushed off by a matter of weeks, not more.

11         THE COURT:  Okay.  All right.  Let's take a recess.

12   Why don't you talk -- see whether you can work out an agreement

13   on briefing schedule, potential dates for availability.  I know

14   you have to check with Judge Phillips about when he's

15   available.

16         I absolutely -- whether it's Judge Gonzales who's in

17   the courtroom or whether there's someone else at Wilmington

18   Trust, mediation only makes sense, in my view, and this is what

19   I -- you know, counsel, along with representatives with

20   settlement authority.  They may still have to run up the

21   flagpole with others.  That's not everybody.  But you've got to

22   have people with settlement authority who will participate in

23   mediation.

24         Mr. Weisfelner's suggestion that there be a phone

25   call with Judge Phillips, that's fine with me as well.  Okay.

25

1  Let's take a break until noon.  Okay?  Thank you very much.

2       (Recess taken at 11:42 a.m.)

3       (Proceedings resumed at 12:46 p.m.)

4            THE COURT:  Please be seated.  We're back on the

5  record in <u>Motors Liquidation Company</u>, 09-50026.

6            Mr. Fisher?

7            MR. FISHER:  Your Honor, Eric Fisher for the

8  Avoidance Action Trust.

9            THE COURT:  You'll tell me you settled?

10           MR. FISHER:  No.  Sorry to keep the Court waiting and

11  to have so little to report, but, as the Court might imagine,

12  we ended up speaking about a lot more besides just the briefing

13  schedule.  But we have agreed on a briefing schedule.

14           THE COURT:  Okay.

15           MR. FISHER:  So the Avoidance Action Trust's opening

16  brief will be --

17           THE COURT:  Let me suggest this.  Give me the dates

18  on the record but submit a proposed order that includes it so

19  that I can do it on the docket.  Okay?  But go ahead and lay it

20  out.

21           MR. FISHER:  So the AAT's opening brief will be due

22  March 6.  The Economic Loss Plaintiffs and New GM's opposition

23  is due March 27.  And then the AAT's reply is due April 15.

24  And separate from the briefing schedule, and consistent with

25  what Your Honor ordered from the bench, the parties will

26

1  jointly reach out to Judge Phillips and try to get that process

2  going as soon as possible.

3  THE COURT:  Appreciate it.

4  Mr. Weisfelner?

5  MR. WEISFELNER:  Just, I guess, two caveats.  The

6  date of March 27th --

7  THE COURT:  Yes.

8  MR. WEISFELNER:  -- I indicated I will have to run by

9  the co-leads because I'm not doing the work.  Yes, because I am

10  unique among all the attorneys; I am not getting paid.

11  THE COURT:  I would agree with that, but go on.

12  MR. WEISFELNER:  But I'm not -- and I'm not getting

13  paid, which in this situation, makes me unique.  We're on a

14  contingency fee.

15  THE COURT:  Okay.

16  MR. WEISFELNER:  And --

17  THE COURT:  I didn't mean to make light of it, but in

18  any event --

19  MR. WEISFELNER:  The other caveat I wanted to raise

20  is we're going to go along with these dates for the reason that

21  Mr. Fisher ultimately made in our discussion.

22  Your Honor, historically, every time either Your

23  Honor or Judge Gerber, before him, set briefing schedules, it

24  was after the parties articulated their version of what are we

25  briefing, what are the threshold issues that are going to be

27

resolved through this briefing schedule.  I pressed for that to
be a prerequisite.  Mr. Fisher responded, well, you know what;
when you see my brief, you'll know what the issues are.

At this point, I've had enough.  I'll see his brief,
then I'll figure out the issues as he has sought to articulate
it, and we'll respond.  Not the way to run a railroad, in my
opinion.

THE COURT:  Okay.  You're not doing the work anyway,
so let someone else worry about it.

Anybody else want to be heard?  Okay.

You're all going to reach out to Judge Phillips and
try and -- I mean, I think -- I always leave it to a mediator
to decide whether he or she wants a mediation statement.  It
may well be that -- actually, with this briefing schedule, I'm
not sure whether what briefing will done before you get a date
from Judge Phillips, but I always defer to a mediator to decide
how they want to conduct the mediation, what they want, whether
they want short mediation statements.  Oftentimes, they'll just
take the briefs that have been filed.  So I'm going to leave
that to Judge Phillips to do.  Okay?

Keep me advised of whatever schedule you agree upon
with Judge Furman.  And obviously whatever briefs you file, if
you're presenting a 9019 here, and if it moves forward, that
he's going to do class certification issues, please exchange --
I'd like to see all briefs that are filed in District Court.

28

1  I'm sure he would like to see whatever briefs get filed here as

2  well, but I would like to see what the schedule is for all that

3  is, so keep me advised on that.  Okay?

4       Do you have another date with Judge Furman to get

5  back to him again?  Anybody else?

6       MR. KIMPLER:  Your Honor, Kyle Kimpler for New GM.

7  There is no set date for Judge Furman.  There have been

8  discussions that we would, if things were to be filed, would

9  preview those dates with his clerk in advance.  Certainly we

10 would be happy to do the same with you as well.

11      THE COURT:  Okay.  Fair enough.  All right.  Anything

12 else we need to talk about today?  Mr. Weisfelner?

13      MR. WEISFELNER:  Your Honor, one other point that

14 actually Mr. Zirinsky raised and I think it's critically

15 important.  Any settlement of the matters that we're discussing

16 should, whenever it be reached, is going to require very

17 expensive notice, estimated to be something in the $12 million

18 range.  If there is one global settlement, there is one notice

19 cost.

20      Multiple settlements will not reduce the amount of

21 cost, they'll be duplicative.  And I think all parties need to

22 keep that in mind, that while a settlement with all the parties

23 other than the AAT is contemplated and possible, should there

24 be an ultimate resolution with the AAT after what we've been

25 referring to as the global settlement, I can tell Your Honor

29

1   that the cost of notice may be prohibitive and may require the

2   parties to get to an ultimate litigated resolution, rather than

3   a settled resolution.

4           THE COURT:  We'll take this one step at a time,

5   Mr. Weisfelner.

6           MR. WEISFELNER:  Yes, indeed.

7           THE COURT:  Okay.   All right.  We're adjourned.

8   Thank you very much, everybody.

9       (Proceedings concluded at 12:52 p.m.)

10                          * * * * *

11

12

13

14

15                **C E R T I F I C A T I O N**

16

17           I, Lisa Luciano, court-approved transcriber, hereby

18   certify that the foregoing is a correct transcript from the

19   official electronic sound recording of the proceedings in the

20   above-entitled matter, and to the best of my ability.

21

22

23   _____

24   LISA LUCIANO, AAERT NO. 327     DATE:  February 11, 2020

25   ACCESS TRANSCRIPTS, LLC