**BINDER & SCHWARTZ LLP**
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 510-7008

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                               Debtors.

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

---------------------------------------------------------------------x

MOTORS LIQUIDATION COMPANY AVOIDANCE
ACTION TRUST, by and through the Wilmington Trust
Company, solely in its capacity as Trust Administrator and
Trustee,

                           Plaintiff,

              against

JPMORGAN CHASE BANK, N.A., *et al.*,

                           Defendants.

Adversary Proceeding

Case No. 09-00504 (MG)

---------------------------------------------------------------------x

**MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION**
**TRUST'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ITS**
**MOTION FOR ENTRY OF AN ORDER APPROVING THE**
**DISTRIBUTION PLAN TO THE AVOIDANCE ACTION TRUST'S BENEFICIARIES**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL BACKGROUND..................................................................................... 2

ARGUMENT ...................................................................................................................... 4

      I.      THE TWO OBJECTIONS TO DISTRIBUTION SHOULD BE OVERRULED ... 4

            A.      The Objection Filed by the Economic Loss Plaintiffs Should Be
Overruled as Moot Because It Has Been Superseded by Events................ 4

            B.      The Objection Filed By New GM Should Be Overruled Because
New GM Has No Standing to Object ........................................................ 6

      II.      THE ECONOMIC LOSS PLAINTIFFS LACK ANY VIABLE CLAIM TO
DISTRIBUTIONS FROM THE AAT.................................................................... 8

      III.    ANY FURTHER REQUEST TO DELAY THE AAT DISTRIBUTION IS
AN INDEFINITE, OPEN-ENDED DELAY THAT COMES UNFAIRLY
AT THE EXPENSE OF THE AAT'S BENEFICIARIES .................................... 12

CONCLUSION................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Doral Ctr, Inc. v. Ionosphere Clubs, Inc.* (*In re Ionosphere Clubs, Inc.*),
208 B.R. 812 (S.D.N.Y. 1997) ................................................................... 8

*In re Dow Corning Corp.*,
244 B.R. 721 (Bankr. E.D. Mich. 1999) ..................................................... 8

*In re General Motors LLC Ignition Switch Litigation*,
407 F. Supp. 3d 212 (S.D.N.Y. 2019) ...................................................... 10

*In re James Wilson Assocs.*,
965 F.2d 160 (7th Cir. 1992) ...................................................................... 8

*In re Kunec*,
27 B.R. 650 (Bankr. M.D. Pa. 1982) .......................................................... 8

*In re Motors Liquidation Co.*,
539 B.R. 676 (Bankr. S.D.N.Y. 2015) ..................................................... 12

*In re Motors Liquidation Co.*,
580 B.R. 319 (Bankr. S.D.N.Y. 2018) .................................................. 6, 7

*In re Smith*,
179 B.R. 437 (Bankr. E.D. Pa. 1995) ........................................................ 8

*In re Stone & Webster, Inc.*,
373 B.R. 353 (Bankr. D. Del. 2007) .......................................................... 7

*Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*),
843 F.2d 636 (2d Cir. 1988) ...................................................................... 6

*Premium Mortg. Corp. v. Equifax, Inc.*,
583 F.3d 103 (2d Cir. 2009) ...................................................................... 6

*Savage & Assocs., P.C. v. Mandl* (*In re Teligent, Inc.*),
417 B.R. 197 (Bankr. S.D.N.Y. 2009) ....................................................... 8

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ................................................................................ 11

*Slobodian v. IRS* (*In re Net Pay Solutions, Inc.*),
822 F.3d 144 (3d Cir. 2016) .................................................................... 11

ii

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) .......................................................................................................... 7

**Statutes**

11 U.S.C. § 1109(b) ................................................................................................................... 7

28 U.S.C. § 2072(b) ................................................................................................................. 11

TO:    **THE HONORABLE MARTIN GLENN**
       **UNITED STATES BANKRUPTCY JUDGE**

The Motors Liquidation Company Avoidance Action Trust (the "**AAT**") submits this supplemental brief in further support of its motion for approval of the plan for distributing proceeds to its beneficiaries (the "**AAT Distribution Motion**").[1]

## PRELIMINARY STATEMENT

1.      The AAT formulated its distribution plan and sought the Court's approval thereof in July 2019, promptly after the AAT received the proceeds of its global resolution of the Term Loan Avoidance Action.  In August 2019, the Court authorized the AAT to proceed with distribution of 30% of the available proceeds to the DIP Lenders, but held the remainder of the AAT's distribution plan in abeyance on the basis of objections filed by the Economic Loss Plaintiffs and New GM.

2.      Since then, the AAT has renewed its request to have the remainder of its distribution plan approved on several occasions; and in February 2020, the AAT, at the direction of the Court, participated in a mediation with the Economic Loss Plaintiffs and New GM to see if the parties could arrive at a consensual resolution of the logjam.  The mediation was unsuccessful.

3.      The AAT should now finally be permitted to proceed with the distribution of all remaining proceeds and to wind down the trust.  As set forth below, the only objection filed by the Economic Loss Plaintiffs back in July 2019 sought a supposed "brief delay" to allow for resolution of issues concerning what was then their settlement agreement with the GUC Trust. The delay has not been brief.  In any event, their objection has been superseded by events and

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meaning set forth in the AAT Distribution Motion (Bankr. Dkt. No. 14552) or the AAT's Omnibus Response to the Objections to the AAT Distribution Motion (Bankr Dkt. No. 14598).

rendered moot because the pending settlement that was the basis for the requested delay was terminated by the GUC Trust many months ago.

4.      The single objection filed by New GM should also be overruled because New GM lacks any standing to object to the AAT's distribution.  New GM has no claims against, or financial interest in, the AAT.

5.      Finally, even if the Economic Loss Plaintiffs were to be afforded some belated opportunity to assert new objections to the AAT's distribution, those objections would necessarily fail because the Economic Loss Plaintiffs are not current or potential future beneficiaries of the AAT.  It has become clear that the Economic Loss Plaintiffs seek an open-ended, indefinite delay of the AAT's distribution, based on meritless or superseded arguments, at the expense of the AAT's known beneficiaries, who already have been deprived of their distributions for more than seven months.

6.      For the reasons set forth herein, the two pending objections to the AAT Distribution Motion should be overruled, and the remainder of the AAT Distribution Motion should be approved without further delay.

## PROCEDURAL BACKGROUND

7.      The global settlement of the Term Loan Avoidance Action was approved by this Court on June 13, 2019.  Bankr. Dkt. No. 14611.  The AAT received the $231 million settlement payment on July 1, 2019, and filed the AAT Distribution Motion on July 8, 2019 (Bankr. Dkt. No. 14552), seeking the Court's permission to distribute the settlement proceeds to its beneficiaries.

8.      There were two objections filed in response to the AAT Distribution Motion, one by the Economic Loss Plaintiffs (Bankr. Dkt. No. 14571) (the **"ELP Objection"**), and a second

2

by New GM (Bankr. Dkt. No. 14572) (the **"New GM Objection"**).[2]

9.      On August 12, 2019, the Court held a hearing on the AAT Distribution Motion and approved the portion of the motion seeking to distribute 30% of the proceeds to the DIP Lenders.  The Court deferred decision on the remainder of the AAT Distribution Motion, which concerned distribution of the remaining 70% of proceeds to holders of Allowed General Unsecured Claims.[3]

10.      As directed by the Court at the August 12, 2019 hearing, the AAT filed a letter on October 28, 2019 addressing the impact on the AAT Distribution Motion of a recent opinion by Judge Furman issued in the MDL.  Bankr. Dkt. No. 14631.  In its letter, the AAT explained why the implications of that opinion further weighed in favor of allowing the AAT to move forward with its distribution.  Neither New GM nor the Economic Loss Plaintiffs responded to the AAT's letter.

11.      The Court held a status conference on December 10, 2019, predominantly to address issues regarding the scope and timing of briefing by the GUC Trust, the Economic Loss Plaintiffs, and New GM, but where the AAT Distribution Motion was again discussed.  At the conference, the Court refused the Economic Loss Plaintiffs' counsel's passing request that the Court require the AAT to join the ongoing mediation efforts among the Economic Loss Plaintiffs, the GUC Trust, and New GM.

12.      The Court held another status conference on February 5, 2020, during which the Court set a briefing schedule for supplemental briefing on the AAT Distribution Motion and

---

[2] There was also a letter from a pro se individual named Cheryl England, which did not object to the distribution, but requested that the AAT proceed cautiously in making distributions.  Bankr. Dkt. No. 14593.

[3] The Court's approval of the distribution to the DIP Lenders was reflected in an Order dated August 16, 2019 (Bankr. Dkt. No. 14610).

directed the AAT to participate in mediation with the Economic Loss Plaintiffs and New GM supervised by the Hon, Layn R. Phillips (Ret.).  The AAT participated in that mediation on February 14, 2019.

## ARGUMENT

### I.    THE TWO OBJECTIONS TO DISTRIBUTION SHOULD BE OVERRULED

13.    The AAT was created with the sole objective of prosecuting the Term Loan Avoidance Action and distributing the proceeds to its beneficiaries.  The Term Loan Avoidance Action has been fully resolved for almost nine months, and the AAT respectfully requests that the Court permit the AAT to distribute its remaining proceeds to its beneficiaries.

14.    The portion of the AAT Distribution Motion seeking to allow the AAT to distribute the remaining 70% share to holders of Allowed General Unsecured Claims has been held in suspense on the basis of the ELP and New GM Objections.  For the reasons set forth below, and in the AAT's prior filings in support of the AAT Distribution Motion, both of the objections should be overruled, and the balance of the AAT Distribution Motion should be granted.

### A.    The Objection Filed by the Economic Loss Plaintiffs Should Be Overruled as Moot Because It Has Been Superseded by Events

15.    When the Court decided to defer action on the remainder of the AAT Distribution Motion, motions were still pending before the Court (the **"Settlement Motions"**), seeking approval of the third settlement agreement entered into between the Economic Loss Plaintiffs and the GUC Trust (the **"Third ELP/GUC Trust Settlement Agreement"**).  Under the Third ELP/GUC Trust Settlement Agreement, "the Economic Loss Plaintiffs agreed to, *inter alia*, waive their rights to GUC Trust assets and Avoidance Action Trust assets following final court approval of the Settlement."  ELP Objection ¶ 3.  The ELP/GUC Trust Settlement Agreement

did not include the AAT as a party and did not contemplate any payment to the Economic Loss Plaintiffs by the AAT.  *Id* ¶ 2.

16.     In their objection to the AAT Distribution Motion, the Economic Loss Plaintiffs claimed that they sought only a "brief delay in distributions" (*id.* ¶ 4) until the adjudication of their Settlement Motions.  *See also* ELP Objection ¶ 18 (Economic Loss Plaintiffs seek to "adjourn the [AAT Distribution] Motion[] until the Settlement Motions are fully adjudicated").  At the time of their objection, the Settlement Motions had already been pending for almost five months.

17.     Things have changed since the ELP Objection was filed: specifically, the GUC Trust formally terminated the Third ELP/GUC Trust Settlement Agreement, and thus the Economic Loss Plaintiffs are no longer seeking adjudication of the Settlement Motions.  Bankr. Dkt. No. 14622.  Accordingly, the Economic Loss Plaintiffs' request to delay further AAT distributions until those motions have been adjudicated has been superseded by events and is moot.

18.     In the alternative, the Economic Loss Plaintiffs requested that the "Court direct the GUC Trust, Participating Unitholders, Economic Loss Plaintiffs, and New GM (the lone objector to the Settlement Motions) to mediation and adjourn the [AAT Distribution Motion] until the mediation is complete."  ELP Objection ¶ 19.  The ELP Objection did not contemplate that the AAT would participate or play any role in the requested mediation.  *Id.*  At the August 12, 2019 hearing, the Court denied the Economic Loss Plaintiffs' request to order the GUC Trust, the Participating Unit Holders and New GM to mediation.  Hearing Tr. at 55.  Thus, the alternative relief sought by the Economic Loss Plaintiffs in their Objection has also been

superseded by events and rendered moot.[4]

19.    Because the objections stated by the Economic Loss Plaintiffs were tied to a

settlement agreement that has since been terminated, their objections are now moot and there is

no reason to further delay the AAT's distribution.

### B.    The Objection Filed by New GM Should Be Overruled Because New GM Has No Standing to Object

20.    New GM lacks standing to object to the AAT Distribution Motion.  In order to be

heard on its objection, New GM must prove that it has (i) prudential standing, (ii) constitutional

standing, and (iii) standing under section 1109 of the Bankruptcy Code.  *See In re Motors

Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018).  New GM can make none of these

three required showings.

21.    New GM cannot show that it has prudential standing.  This judge-made doctrine

"bars litigants 'from asserting the constitutional and statutory rights of others in an effort to

obtain relief for injury to themselves.'"  *In re Motors Liquidation Co.*, 580 B.R. at 340 (quoting

*Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636, 643 (2d Cir. 1988)).

In the context of a contract dispute, only parties to the contract and intended third-party

beneficiaries of the contract have prudential standing to appear, unless the contract contains

"terms that clearly evidence[] an intent to permit" such standing.  *Premium Mortg. Corp. v.

Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (internal citation omitted).  Here, New GM is not

entitled to any distributions from the AAT and is neither a party to nor a beneficiary of the AAT

---

[4] The AAT is generally aware that there are ongoing settlement discussions between and among the
Economic Loss Plaintiffs, the GUC Trust, the Participating Unitholders, and New GM, but that a final
settlement has not been concluded.  If and when a settlement is reached, and the terms disclosed, the AAT
reserves the right to further address the impact of the settlement on the AAT Distribution Motion.

Agreement, which contains no terms that suggest any intent on behalf of the parties to permit third-party standing.

22.    Nor can New GM demonstrate constitutional standing, which requires a showing of "an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *In re Motors Liquidation Co.*, 580 B.R. at 341 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)) (internal quotation marks and citation omitted).  Non-parties to a contract ordinarily cannot show a "concrete and particularized injury." *Id.*  Here, because New GM is not and could never be entitled to any distributions from the AAT, New GM cannot show any economic impact that this Court's approval of the AAT Distribution Motion could possibly have on it.  Further, the AAT Distribution Motion has no impact on the amount of Allowed General Unsecured Claims and thus does not increase the risk to New GM that the Plan's "accordion feature" will be triggered.  Without any financial interest in the outcome of this Court's approval of the AAT Distribution Motion or any other interest at stake, New GM lacks standing to be heard.  *See, e.g.*, *In re Stone & Webster, Inc.*, 373 B.R. 353, 362 (Bankr. D. Del. 2007) (purchaser of debtor's assets who had no right to proceeds of trust or trust's claims lacked standing to intervene in adversary proceeding), *aff'd,* 2008 WL 4890896 (D. Del. Nov. 12, 2008).

23.    Finally, New GM will also be unable to show that it has party-in-interest standing under section 1109 of the Code, which permits any "party in interest" to "appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109(b).  The Bankruptcy Code does not define "party in interest," and the phrase has been interpreted to mean that "anyone who has a *legally protected interest* that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains." *In re James Wilson Assocs.,* 965 F.2d

160, 169 (7th Cir. 1992) (emphasis added).  In other words, a party must show that it has "a

direct financial stake in the outcome of the case."  *Savage & Assocs., P.C. v. Mandl* (*In re*

*Teligent, Inc.*), 417 B.R. 197, 210 (Bankr. S.D.N.Y. 2009) (quoting *Doral Ctr, Inc. v. Ionosphere*

*Clubs, Inc.* (*In re Ionosphere Clubs, Inc.*), 208 B.R. 812, 814 (S.D.N.Y. 1997)).  Here, for the

reasons discussed above, New GM cannot make that showing, as the outcome of the AAT

Distribution Motion cannot possibly have any pecuniary impact on New GM.  *See, e.g.*, *id.* at

210-11 (law firm that had previously represented debtor's former officer did not have standing to

challenge provision in settlement agreement between officer and debtor requiring officer to sue

firm for legal malpractice; firm had "no stake in the outcome of the 9019 Motion" because

settlement did not require it to pay any money).

## II.    THE ECONOMIC LOSS PLAINTIFFS LACK ANY VIABLE CLAIM TO DISTRIBUTIONS FROM THE AAT

24.    Even if this Court were to decide to entertain new objections that have never

before been filed by the Economic Loss Plaintiffs, the Economic Loss Plaintiffs would still have

no right to distributions from the AAT, either individually or on a classwide basis.[5]

25.    As an initial matter, the Economic Loss Plaintiffs are not holders of Allowed or

Disputed General Unsecured Claims, and thus have no claim to distributions from the AAT,

---

[5] The Court should not permit the Economic Loss Plaintiffs to come forward with new or different objections more than seven months after the deadline for objections to the AAT Distribution Motion.  As explained above in Point I, the Economic Loss Plaintiffs' only objections are now moot, and any further objections they may belatedly seek to assert are waived.  *See In re Dow Corning Corp.*, 244 B.R. 721, 734 (Bankr. E.D. Mich. 1999), *rev'd on other grounds,* 255 B.R. 445 (E.D. Mich. 2000), *aff'd and remanded,* 280 F.3d 648 (6th Cir. 2002) (creditors waived objection based upon allegedly improper solicitation of acceptances because "there was no reference to such an argument in their briefs, nor did they make (or even suggest) a showing that manifest injustice would result from a finding of waiver"); *In re Smith*, 179 B.R. 437, 447 (Bankr. E.D. Pa. 1995) (creditor waived objections raised in post-trial briefs by failing to raise them in originally set of objections to plan confirmation); *In re Kunec*, 27 B.R. 650, 651 (Bankr. M.D. Pa. 1982) (creditor waived all objections that he failed to brief).

because they have never filed a claim in the Old GM Bankruptcy. Moreover, the Economic Loss

Plaintiffs have sat on their rights. The Economic Loss Plaintiffs first filed a motion seeking

authority to file late claims (the "**Late Claims Motion**") against the Old GM estate on December

22, 2016—*more than four years ago*. ELP Objection ¶ 8. Thereafter, the Economic Loss

Plaintiffs have serially delayed adjudication of the Late Claims Motion pending settlement

discussions with the GUC Trust and the Participating Unitholders. *Id.*

26.     The Economic Loss Plaintiffs should not be permitted to thwart the AAT's efforts

to make distributions to its known beneficiaries, when the Economic Loss Plaintiffs have made

the tactical decision to stall their effort to seek to assert late claims for years. The AAT, which

plays no role in the claims resolution process, is powerless to force a resolution of the Late

Claims Motion and should not be prevented from distributing assets based on a claim that may,

or may not, ever be litigated to conclusion by the Economic Loss Plaintiffs.

27.     Moreover, and even more fundamentally, the Economic Loss Plaintiffs have no

prospect of having future allowed claims that would entitle them to a distribution from the AAT.

Section 5.6 of the AAT Agreement forbids the Trust Administrator from making any cash

payment of less than $25 to any holder of an Allowed General Unsecured Claim. *See* AAT

Agreement § 5.6 ("Notwithstanding anything to the contrary contained herein, no Cash payment

in an amount less than $25 shall be made by the Trust Administrator to any holder of an Allowed

General Unsecured Claim or Unit under any circumstance . . . ."). Given the amount of

distributable proceeds and the current aggregate amount of Allowed General Unsecured Claims,

the currently operative distribution rate from the AAT is approximately 0.3 percent—in other

words, an Allowed General Unsecured Claim of $1,000 would, as of today, receive an AAT

distribution amount of approximately $3.

28.     Based on this current distribution rate and the AAT Agreement's $25 distribution

threshold, a claimholder must have an Allowed General Unsecured Claim in excess of $8,000 to

be eligible for a distribution from the AAT.[6]  And in light of Judge Furman's recent rulings

concerning the calculation of the Economic Loss Plaintiffs' damages, it is a practical

impossibility that any individual Economic Loss Plaintiff could hold an allowed claim in excess

of $8,000, much less one in excess of the higher distribution threshold that would result if the

Economic Loss Plaintiffs' claims were allowed in full.

29.     In the ignition-switch litigation, Judge Furman held that the proper measure of

damages is the *lesser* of (i) the cost of repair or (ii) the difference between the fair-market value

of the vehicle as warranted and the fair-market value of the vehicle as sold, reduced according to

the Economic Loss Plaintiffs' ability to mitigate or avoid damages.  *See In re General Motors

LLC Ignition Switch Litigation*, 407 F. Supp. 3d 212 (S.D.N.Y. 2019).  Because, New GM,

through a series of recalls, offered free post-sale repairs of the relevant vehicle defects, it is

implausible that any individual Economic Loss Plaintiff could show post-mitigation damages in

excess of $8,000 for the cost of repairing an ignition switch.

30.     It has been suggested, therefore, that the Economic Loss Plaintiffs may instead

seek a class distribution from the AAT, in the aggregate amount of the Economic Loss Plaintiffs'

total damages.  While Section 5.11 of the Plan provides that a class proof of claim, if allowed,

will be treated as a single claim, nothing in the Plan permits the Economic Loss Plaintiffs to

bundle their individual claims together and obtain as a class distribution what they could not

---

[6] Of course, if the Economic Loss Plaintiffs' claims were allowed, those claims would further dilute the overall claims pool.  Consequently, the distribution rate for allowed claims could be much lower, and the threshold amount necessary to obtain a distribution from the AAT could be significantly higher than $8,000.

obtain individually under the AAT Agreement.  Moreover, Judge Furman's recent damages

rulings—which are still binding, even following that court's decision to certify an interlocutory

appeal—have made it extremely difficult for the Economic Loss Plaintiffs to certify a class.

31.    Further, even were there a class, the Economic Loss Plaintiffs would not be

permitted to use Rule 23 as an end-run around the AAT Agreement's distribution threshold

because doing so would violate the Rules Enabling Act, which forbids any interpretation of the

Federal Rules of Civil Procedure that would "abridge, enlarge or modify any substantive right."

28 U.S.C. § 2072(b); *cf. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393,

423 (2010) (Stevens, J., concurring) (under the Rules Enabling Act, "[a] federal rule cannot

govern" where it would displace a state-law provision that is "procedural in the ordinary use of

the term but is so intertwined with a state right or remedy that it functions to define the scope of

the state-created right").

32.    Here, an attempt by the Economic Loss Plaintiffs to avoid the AAT Agreement's

$25 distribution threshold by aggregating their claims would be an effort to use Rule 23—a

purely procedural rule—to obtain a substantive benefit that no individual Economic Loss

Plaintiff would be able to obtain on his or her own:  payment on a claim that fails to meet the

distribution threshold.  *See generally Slobodian v. IRS* (*In re Net Pay Solutions, Inc.*), 822 F.3d

144 (3d Cir. 2016) (rejecting trustee's effort to aggregate multiple transfers in order to exceed the

statutory threshold for bringing a preference action).  Such an application of Rule 23 would also

be unfair to similarly situated claimholders.  Under the AAT agreement, 42% of the holders of

holders of Allowed General Unsecured Claims are not entitled to receive a distribution because

their claims fall below the $8,000 threshold.  It would be inequitable for individual members of

an Economic Loss Plaintiffs' class to receive a payment based on a claim that does not meet the

threshold for distribution.  The Economic Loss Plaintiffs should not be permitted to use a class

claim to achieve for themselves what they could not achieve as individual claimholders.

III.    **ANY FURTHER REQUEST TO DELAY THE AAT DISTRIBUTION IS AN INDEFINITE, OPEN-ENDED DELAY THAT COMES UNFAIRLY AT THE EXPENSE OF THE AAT'S BENEFICIARIES**

33.     The several months' delay contemplated by the ELP Objection was limited in

duration and tied to adjudication of a Settlement Motion that was pending.  With the settlement

now terminated, any further delay in AAT distributions would be indefinite and untethered to

any event in the foreseeable future.

34.     For the Economic Loss Plaintiffs to assert a claim against the AAT, first the

Economic Loss Plaintiffs would have to have a class (or classes) certified.  Next, the Economic

Loss Plaintiffs would have to be permitted to file a late claim.  Then, if it were able to do so, the

claim would have to be estimated.  Further, given Judge Furman's ruling that the Economic Loss

Plaintiffs failed to come forward with a viable benefit-of-the-bargain theory of damages (a ruling

that was adhered to on reconsideration), the AAT believes that the Economic Loss Plaintiffs'

ability to estimate their claims in a manner that would permit payment by the AAT is highly

questionable and would be cost prohibitive for the Economic Loss Plaintiffs to pursue.

35.     Any one of these steps could take years and is extremely unlikely to yield a

distribution from the AAT to the Economic Loss Plaintiffs.  Hypothetical, unasserted claims

should not be permitted as the basis of an indefinite delay of distributions to the AAT's

remaining beneficiaries.  *In re Motors Liquidation Co.*, 539 B.R. 676, 683 (Bankr. S.D.N.Y.

2015) (stating that beneficiaries "have a justified expectation of receiving . . . distributions in the

absence of very good reasons to the contrary").  There is no clear path forward for the Economic

Loss Plaintiffs to assert a claim against the AAT, and they have failed even to articulate the

process that they envision will achieve that result.

## CONCLUSION

WHEREFORE, the AAT respectfully requests that the Court enter an order: (i) approving the AAT's plan for distributing proceeds to its beneficiaries; (ii) approving the Notice Form; (iii) authorizing the AAT to take all other actions necessary or appropriate to effectuate the distribution to its beneficiaries; (iv) overruling the objections asserted by New GM and the Economic Loss Plaintiffs; and (v) granting such other and further relief as the Court deems necessary.


Dated:  New York, New York           Respectfully submitted,
        March 6, 2020

                                     **BINDER & SCHWARTZ LLP**

                                     /s/ Eric B. Fisher
                                     Eric B. Fisher
                                     Neil S. Binder
                                     Lindsay A. Bush
                                     Lauren K. Handelsman
                                     366 Madison Avenue, 6th Floor
                                     New York, New York 10017
                                     Tel: (212) 510-7008

                                     *Attorneys for the Motors Liquidation*
                                     *Company Avoidance Action Trust*