**HEARING DATE AND TIME: March 26, 2020 at 2:00 p.m.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **Case No.:  09-50026 (MG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

**REPLY BRIEF BY GENERAL MOTORS LLC TO OBJECTION**
**TO MOTION TO ENFORCE THE BANKRUPTCY COURT'S JULY 5, 2009**
**SALE ORDER AND INJUNCTION, AND THE RULINGS IN CONNECTION**
**THEREWITH, WITH RESPECT TO ROBERT RANDALL BUCHANAN**

36543862

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 7

    A.    The Independent Claim/Punitive Damages Landscape Has Changed Since 2015................................................................................................................ 7

    B.    The Allegations Buchanan Identifies in Support of His "Independent Claim" are Insufficient to Allow Such Claim to Pass Through the Bankruptcy Gate ....................................................................................... 9

    C.    Buchanan's So-Called Independent Claim Is Impermissibly Based on "Wholesale Imputation," and Violates Previous Decisions Of This Court ......... 13

    D.    As Buchanan's Independent Claim is Inappropriate, His Request for Punitive Damages Based on Such Claim Should be Stricken ............................. 16

    E.    The Buchanan Lawsuit Should Be Stayed Until All Infirmities Are Addressed.......................................................................................................... 16

CONCLUSION...................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...............................................................................................13

*Celotex Corp. v. Edwards*
514 U.S. 300 (1995)...............................................................................................17

*F5 Capital v. Pappas,*
856 F.3d 61 (2d Cir. 2017).....................................................................................13

*Holland v FCA US LLC,*
No. 1:15 CV 121, 2015 WL 7196197 (N.D. Ohio Nov. 16, 2015) ...................4, 13

*In re JPMorgan Chase & Co. Derivative Litig.,*
No. 12 CIV. 03878 (GBD), 2014 WL 1297824 (S.D.N.Y. Mar. 31, 2014) ...........13

*In re Matter of Motors Liquidation Co.,*
829 F.3d 135 (2d Cir. 2016)...................................................................................15

*In re Motors Liquidation Co.,*
529 B.R. 510 (Bankr. S.D.N.Y. 2015), *aff'd in part, vacated in part, rev'd in
part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017) .........................13

*In re Motors Liquidation Co.,*
943 F.3d 125 (2d Cir. 2019)...........................................................................1, 2, 7

*In re Motors Liquidation Co.,*
568 B.R. 217 (Bankr. S.D.N.Y. 2017) ..........................................................5, 8, 10

*In re Motors Liquidation Co.,*
576 B.R. 313 (Bankr. S.D.N.Y. 2017) .......................................................8, 10, 11

*Wayne Cty. Emps.' Ret. Sys. v. Dimon,*
629 F. App'x 14 (2d Cir. 2015)...............................................................................13

**Other Authorities**

Restatement (Third) of Torts: Prod. Liab., § 13) ...........................................................5

General Motors LLC ("**New GM**") submits this reply brief ("**Reply**") in response to *Robert Randall Buchanan's Objection To Motion By General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction, And The Rulings In Connection Therewith, With Respect To Robert Randall Buchanan*, dated March 12, 2020 [ECF No. 14684] ("**Objection**") filed by Buchanan,[1] and in further support of the relief requested in the Buchanan Motion to Enforce.

## PRELIMINARY STATEMENT

Buchanan's Amended Complaint violates the Sale Order and, in particular, the Second Circuit's 2019 Opinion, which incredibly, was not even cited, let alone addressed by Buchanan in the Objection. Simply put, Buchanan's so-called Independent Claim for "failure to warn" is nothing more than a failure to warn claim against the manufacturer (*i.e.*, Old GM) of the Subject Vehicle. If recognized by applicable state law, such a claim is part of the Assumed Liability which Buchanan concedes cannot bear punitive damages.[2]

The Second Circuit 2019 Opinion specifically dealt with a post-363 Sale accident involving a Used Car Purchaser,[3] the same paradigm as Buchanan. The Second Circuit held that the Sale Order would be enforced against a Used Car Purchaser, except for Assumed Liabilities which do

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion By General Motors LLC To Enforce The Bankruptcy Court's July 5, 2009 Sale Order And Injunction And The Rulings In Connection Therewith, With Respect To Robert Randall Buchanan*, filed by New GM on February 4, 2020 [ECF No. 14667] ("**Buchanan Motion to Enforce**"). Capitalized terms not defined in this Preliminary Statement or in the Buchanan Motion to Enforce are defined in subsequent sections of this Reply.

[2]    *See* Objection, ¶ 5 (referencing that Counts I and II in the Amended Complaint are Product Liabilities, that Count III is a failure to warn claim allegedly based on New GM conduct, and that Count V asserts a claim for punitive damages allegedly based on New GM conduct).

[3]    *See In re Motors Liquidation Co.*, 943 F.3d 125, 127 (2d Cir. 2019) ("New GM assumed the liability of Old GM with respect to post-Sale accidents involving automobiles manufactured by Old GM; the claims thus assumed include those by persons who did not transact business with Old GM, such as individuals who never owned Old GM vehicles (but collided with one) and (hypothetical) ***persons who bought Old GM cars used after the Sale***." (emphasis added)).

1

not bear punitive damages.[4]   For non-Assumed Liabilities, paragraph 46 of the Sale Order explicitly holds that New GM shall not be deemed to have de facto merged or be considered a mere continuation of Old GM, *or its enterprise*.  In particular, New GM shall have no successor, transferee, derivative or vicarious liabilities of any kind for any claim, including **under any product liability**, whether known before or after the 363 Sale.  Moreover, any actions taken by New GM in connection with the Sale Agreement cannot be used as a basis for a successor/transferee type claim against New GM.[5]

Under the Sale Agreement, New GM agreed, among other things, (a) to perform Old GM's "glove box" warranty claim, (b) agreed to comply with Old GM's recall obligations under federal law with respect to Old GM vehicles, and (c) agreed to hire the majority of Old GM's employees. Those actions cannot form the foundation of a new and separate claim against New GM (*i.e.*, an Independent Claim).[6]  Essentially, the Second Circuit clarified that an Independent Claim cannot be based on the fact that New GM purchased the majority of Old GM's assets and, in that capacity,

---

[4]   *See Motors Liquidation Co.*, 943 F.3d at 133 ("Here, punitive damages are not an Assumed Liability in the Sale Agreement, and the Sale Order's free and clear provision bars punitive damages claims under a theory of successor liability.").

[5]   The text of paragraph 46 of the Sale Order is as follows: "Except for the Assumed Liabilities expressly set forth in the MPA, none of the Purchaser, its present or contemplated members or shareholders, its successors or assigns, or any of their respective affiliates or any of their respective agents, officials, personnel, representatives, or advisors shall have any liability for any claim that arose prior to the Closing Date, relates to the production of vehicles prior to the Closing Date, or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date. The Purchaser shall not be deemed, as a result of any action taken in connection with the MPA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, to: (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Purchased Assets from and after the Closing); (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. Without limiting the foregoing, the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted, or unasserted, fixed or contingent, liquidated or unliquidated."

[6]   *See, e.g.,* Sale Order, ¶ 46, June 2017 Opinion, August 2017 Opinion.

2

is viewed by certain state courts, in certain situations, as a "successor" to Old GM.[7]  Nor can an

Independent Claim be based (in whole or part) on duties and obligations that New GM agreed to

perform under the Sale Agreement.  Rather, an Independent Claim against New GM must be based

solely on New GM's post-363 Sale, newly-incurred duties, in its capacity as a non-successor, and

a non-manufacturer/non-seller of an Old GM vehicle.

Paragraph 48 of the Sale Order is also highly relevant to this issue.  It provides that for

non-Assumed Liabilities, New GM shall have ***no responsibility or obligation*** of Old GM relating

to the purchased assets.  That means if New GM assumed Old GM's duty to warn as part of its

assumption of Product Liabilities, it did not also incur its own separate duty to warn an Old GM

vehicle owner as an Independent Claim, unless post-363 Sale, New GM incurred a new duty, in

its capacity as a non-successor, and a non-manufacturer/non-seller of an Old GM vehicle.[8]

Here, Buchanan is transparent in what he is trying to do.  He told the Georgia Court both

orally, and in writing, that he is seeking punitive damages based on a failure to warn claim against

New GM, but that duty is premised on a ***manufacturer's*** (*i.e.*, Old GM's) duty to warn under

Georgia law.[9]  That type of claim is at best an Assumed Liability and not an Independent Claim.

---

[7]    *See* n.14 *infra*.

[8]    The text of paragraph 48 of the Sale Order is as follows: "Except for the Assumed Liabilities, or as expressly permitted or otherwise specifically provided for in the MPA or this Order, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Sellers arising under or related to the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided in this Order and the MPA, the Purchaser shall not be liable for any claims against the Sellers or any of their predecessors or Affiliates, and the Purchaser shall have no successor, transferee, or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Sellers or any obligations of the Sellers arising prior to the Closing."

[9]    *See* Excerpt from Buchanan's PowerPoint presentation, used in the Georgia Court, which is attached to the Buchanan Motion to Enforce as Exhibit "I."  While that PowerPoint presentation references an investigation performed by New GM with respect to the Buchanan accident, such investigation occurred ***four years after the accident*** (in 2018), and there is no causal link between that investigation and any alleged failure to warn Mrs. Buchanan four years earlier.  Moreover, Buchanan's argument—quoted below—is that a manufacturer has the duty to warn—but here, the manufacturer was Old GM, not New GM. *See also* Georgia Court January 27, 2020 Hr'g Tr., at 37:8-10 ("What's the law in Georgia on that?  A manufacturer has a duty to warn months, years or

Notably, Buchanan has never corrected these misstatements in the Georgia Court even though he has had multiple opportunities to do so.

Even Buchanan's Amended Complaint highlights the fallacy of his argument. Buchanan acknowledges that Count I of his Amended Complaint asserts an Assumed Liability.[10] Paragraph 35(c), which is in Count I of the Amended Complaint, states that there was a failure to warn Buchanan of the defects in her vehicle.[11] Since Buchanan's wife was a Used Car Purchaser having purchased her Old GM vehicle after the 363 Sale, the only one who could have warned her was New GM (not Old GM). That means if there was a breach by New GM of a failure to warn obligation it was a breach of an Assumed Liability, which Buchanan concedes is not a separate Independent Claim and cannot bear punitive damages.

Buchanan's discussion of the imputation doctrine is an irrelevant side-show. Knowledge (by a former employee of Old GM that is hired by New GM as contemplated by the Sale Agreement) is not actionable, as a separate claim, unless it is coupled with a separate legal duty incurred after the 363 Sale.[12] Buchanan has linked that legal duty to a manufacturer's duty to warn, which again is, at most, an Assumed Liability but not an Independent Claim.

---

even decades after the date of the first sale of the product."). A copy of the Georgia Court's January 27, 2020 hearing transcript is attached hereto as **Exhibit "A."**

[10]    *See* Objection, ¶ 5 ("Counts I and II assert Product Liability claims assumed by New GM in the Sale Agreement.").

[11]    The full text of paragraph 35(c) of the Buchanan Amended Complaint is as follows: "35. The defects in the Trailblazer include, but are not limited to, the following: . . . (c) A failure to adequately warn Mrs. Buchanan and other owners and operators of Subject Vehicles, or the public in general, about the unsafe and defective condition and design of the Subject Vehicles so that individuals like Mrs. Buchanan could make informed and prudent decisions regarding traveling or riding in such vehicles[.]"

[12]    *See Holland v FCA US LLC*, Case No. 1:15 CV 121, 2015 WL 7196197, at *4 (N.D. Ohio Nov. 16, 2015) ("While the [post-sale] TSB may serve as evidence that FCA had knowledge of the potential existence of rust and corrosion on 2004-2005 Pacificas, knowledge alone is insufficient to establish a duty on the part of FCA to warn Plaintiffs that their vehicles may be affected. Plaintiffs must allege a relationship between FCA and Plaintiffs that gave rise to a duty to warn.").

Buchanan's discussion of the *Pitterman* case fares no better. *First*, Pitterman specifically withdrew any request for punitive damages so that issue was not relevant in that case.[13] *Second*, *Pitterman* was decided before the Second Circuit 2019 Opinion which recognized the full application of the Sale Order, including the provisions relating to no-successor/transferee liability; that Opinion clarified and defined the landscape going forward of how Independent Claims should be construed for post-363 Sale product liability cases.[14] *Third*, Pitterman originally did not get through the bankruptcy gate because of the same type of infirmities that, as described herein, are present in Buchanan's Amended Complaint. And, *fourth*, unlike Pitterman, Buchanan expressly linked his New GM duty to warn claim to the duty to warn that a manufacturer (Old GM) of the Subject Vehicle has; at most, that is an Assumed Liability which does not encompass punitive damages.

Significantly, it is indisputable that Buchanan's Original Complaint violated applicable rulings from this Court. Indeed, Buchanan's immediate amendment to that complaint, after receipt of a demand letter from New GM, was tantamount to an admission of his misconduct. But try as he might, Buchanan cannot allege a facially valid Independent Claim against New GM. Buchanan's Independent Claim is based solely on the following alleged facts: (a) a statement by New GM's CEO noting the importance of a safety feature in New GM vehicles, (b) Old GM and New GM allegedly shared a common component supplier, (c) Old GM received warranty claims, and ***allegedly*** attempted to seek reimbursement from the component supplier, (d) New GM hired

---

[13]  *See In re Motors Liquidation Co.*, 568 B.R. 217, 229 (Bankr. S.D.N.Y. 2017) ("The Pitterman Plaintiffs have amended their complaint to remove any claim for punitive damages.").

[14]  Restatement (Third) of Torts: Prod. Liab., § 13, and the cases that rely on it which discuss liability of a "successor," do not apply here because of the Second Circuit 2019 Decision. Specifically, if a liability is based on rights contemplated by the Sale Agreement, or if the foundational basis of the liability is based on the defendant being a purchaser of the debtor's assets, that is a form of transferee liability proscribed by the Sale Order as upheld by the Second Circuit 2019 Decision.

employees of Old GM as contemplated by the Sale Agreement, and (e) Old GM and New GM never warned Buchanan of alleged issues relating to the component. Even assuming these allegations are true, they cannot form the factual predicate of an Independent Claim. They clearly are not based *solely* on New GM conduct. Essentially, they are allegations that support a claim based on Old GM's alleged duty to warn. As noted, that would be an Assumed Liability which cannot bear punitive damage. Importantly, Buchanan asserts *no* conduct or interaction of any kind between New GM and the owner of the vehicle. Without that conduct, New GM, as a non-successor to Old GM, and as non-manufacturer/non-seller of the Subject Vehicle, could not have incurred a new and separate duty to the owner of the Subject Vehicle. In sum, those alleged facts do not allege a facially valid Independent Claim.

Finally, it bears noting that even though the Second Circuit and this Court came to the same conclusion that Post-Sale Accident Plaintiffs cannot seek punitive damages against New GM based on a successor/transferee theory of recovery, the reasoning was different. The Second Circuit based its ruling on a full application of the provisions of the Sale Order, while this Court premised its holding based on the provisions of the Bankruptcy Code (an insolvent debtor would not be liable for punitive damages so neither should its alleged successor). Importantly, the Second Circuit never held this Court's reasoning was incorrect; it just never had to reach the issue this Court ruled on. Under this Court's analysis (which remains valid), Old GM, as the manufacturer of the Subject Vehicle would never be liable for punitive damages based on a failure to warn. It logically follows that New GM, as the purchaser of Old GM's assets, who had no relationship or interaction with Buchanan, would not have a greater liability (*i.e.*, punitive damages) under a failure to warn claim than the manufacturer of the Subject Vehicle had.

Accordingly, by its Buchanan Motion to Enforce, New GM requests this Court's assistance in enforcing important Sale Order limitations against the unwarranted and improper punitive damages request in the Amended Complaint. Until these issues are appropriately addressed, Buchanan should be stayed from further litigation in the Georgia Court, as it is New GM's position that, without the necessary changes cited herein being made by Buchanan, his continued litigation there is in violation of this Court's Sale Order and other rulings.[15]

## ARGUMENT

### A.    The Independent Claim/Punitive Damages Landscape Has Changed Since 2015

In its recent Opinion, the Second Circuit conclusively stated that Used Car Purchasers are bound by the Sale Order and Sale Agreement. Specifically, the Second Circuit held:

> There is a single question on this appeal. New GM assumed the liability of Old GM with respect to post-Sale accidents involving automobiles manufactured by Old GM; *the claims thus assumed include* those by persons who did not transact business with Old GM, such as individuals who never owned Old GM vehicles (but collided with one) and (hypothetical) *persons who bought Old GM cars used after the Sale*. The question on appeal is whether New GM is liable for punitive damages with respect to such claims. We conclude, as a matter of contract interpretation, that New GM is not.

*Motors Liquidation Co.*, 943 F.3d at 127 (emphasis added). The Second Circuit further ruled that "punitive damages are not an Assumed Liability in the Sale Agreement, and the Sale Order's free and clear provision bars punitive damages claims under a theory of successor liability." *Id*. at 133. Thus, Mrs. Buchanan—who purchased the Subject Vehicle after the closing of the 363 Sale—is bound by the Sale Order and the rulings prohibiting punitive damages claims against New GM.

---

[15]    While Buchanan has cured some of the improper allegations in his Original Complaint, Buchanan is seeking – through his Amended Complaint – to add an improper successor liability allegation in violation of the Sale Order and the Bankruptcy Court's December 2015 Judgment. *See* Amended Complaint, ¶ 11 ("Pursuant to the Agreement and other orders of the Bankruptcy Court, New GM *emerged out of bankruptcy* and continued the business of Old GM . . ." (emphasis added)). New GM was never in bankruptcy; it was a new and distinct company that purchased the assets of Old GM.

Moreover, after the November 2015 Decision, this Court has clarified what type of allegations are not sufficient to allege an Independent Claim. For example, this Court held in the June 2017 Opinion that it "is not acceptable . . . to base allegations *on generalized knowledge* of both Old GM and New GM. To pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct." *Motors Liquidation Co.*, 568 B.R. at 231 (emphasis added). The Buchanan Amended Complaint fails to meet this standard.

Subsequently, this Court reiterated the holding in the August 2017 Opinion, finding that "conclusory allegations and generalities" are insufficient to properly allege an Independent Claim. *In re Motors Liquidation Co.*, 576 B.R. 313, 320 (Bankr. S.D.N.Y. 2017). This Court further held:

> [Reichwaldt's] Proposed FAC does not identify any specific New GM conduct upon which to base an Independent Claim. The New GM conduct to which the Proposed FAC refers is a series of public statements from New GM CEO Mary Barra, made to Congress in the context of the ignition switch scandal. While the merits of the case are appropriately decided by the Georgia Federal Court, general statements such as that New GM will "do the right thing" and "accept responsibility for our mistakes" do not satisfy this Court's requirement that Independent Claim plaintiffs "clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct." Permitting a complaint through the bankruptcy gate on the basis of general public statements such as these would completely end-run this Court's gatekeeping function. The Proposed FAC's allegations that New GM purchased Old GM's books and records and has profited from maintenance, repair, and selling parts for Old GM vehicles—without a specific tie to the truck model or alleged design defect at issue here—are impermissible bases for an Independent Claim.

*Id.* at 322-23 (citations omitted). Contrary to Buchanan's arguments, the holdings in the June 2017 Opinion and the August 2017 Opinion are directly applicable to the inadequate allegations for an Independent Claim made in the Buchanan Amended Complaint.

It is ironic that Buchanan asserts that New GM's reliance on the *Pitterman* decision with regard to his improperly pled Independent Claim is "unavailing" (*see* Objection, ¶¶ 17, 19) since he specifically relies (albeit wrongly) on *Pitterman* to support his flawed argument. *See* Objection,

¶ 9.  In any event, *Pitterman's* holding regarding improperly pled Independent Claims is on point and binding on Buchanan.  In contrast, Buchanan's reliance on other rulings made in *Pitterman* are misplaced because of the distinctions regarding Pitterman cited on pages 5 above, including that, in *Pitterman*, the plaintiff dropped his claim for punitive damages.

**B.    The Allegations Buchanan Identifies in Support of His "Independent Claim" are Insufficient to Allow Such Claim to Pass Through the Bankruptcy Gate**

The Buchanan Lawsuit has been pending for almost four years and, during that time period, Buchanan has taken significant discovery.  Despite these facts and the opportunity to amend the Original Complaint, Buchanan can only point to a few allegations in support of his so-called Independent (failure to warn) Claim.  And, as demonstrated below, none of these allegations are sufficient to allow Buchanan's alleged Independent Claim to pass through the bankruptcy gate.

Buchanan's identified allegations, and New GM's explanations below, demonstrate why Buchanan has not pled a facially valid Independent Claim:

> **Buchanan's Allegation:** "Despite its knowledge of the high failure rates of the SWAS in the Subject Vehicles, including Mrs. Buchanan's vehicle, and that the SWAS had well-known technology issues, New GM chose not to warn Mrs. Buchanan of the defective SWAS in her Trailblazer on or before November 10, 2014."  Objection, at pp. 6-7.

**New GM Response:**  This is a conclusory and general allegation that is legally insufficient to allege an Independent Claim.  *See* June 2017 Opinion; August 2017 Opinion.  In addition, as stated in another allegation identified by Buchanan below, these alleged "high failure rates" began "almost immediately upon the first sale of the 2006 model year vehicles[.]"  This clearly demonstrates that this allegation concerns, and at a minimum is based upon, Old GM knowledge and not solely New GM knowledge.  As this Court has held, it is inappropriate "to base allegations on generalized knowledge of both Old GM and New GM.  To pass through the bankruptcy gate, a complaint must clearly allege that its

causes of action are based **solely** on New GM's post-closing wrongful conduct." *Motors Liquidation Co.*, 568 B.R. at 231.

**Buchanan Allegation**:  "Old GM's and New GM's component supplier, Alps Electric (North America), Inc. ("Alps") manufactured the SWAS in Mrs. Buchanan's Trailblazer," (¶ 20), and the Subject Vehicles. (¶ 21).  Objection, at p. 7.

**New GM Response**:  Again, it is inappropriate to allege an Independent Claim based on **both** Old GM **and** New GM conduct, which this allegation clearly does.  Further, whether or not Alps was a New GM supplier, is not germane to establishing whether New GM incurred a new post-363 Sale duty to warn Buchanan.

**Buchanan Allegations:**  "[A]lmost immediately upon the first sale of the 2006 model year vehicles[,]" "Old GM began receiving high rates of warranty claims for SWAS failures in the Subject Vehicles[.]" (¶ 22).  "The warranty claims were so high that Old GM attempted to get Alps to reimburse GM for the cost of these warranty claims." (¶ 23).  Objection, at p. 7.

**New GM Response:**  This allegation **only** concerns Old GM conduct, which is clearly insufficient to allege an Independent Claim.

**Buchanan Allegation:**  "New GM emerged out of bankruptcy and continued the business of Old GM with many, if not most, of Old GM's employees [sic] and, on information and belief, with most of the same senior-level management, officers, and directors, as well as its records, tests, and documents generated in the creation of the defective steering wheel angle sensors." (¶ 11).  Objection, at p. 7.

**New GM Response:**  In addition to this allegation inappropriately asserting that New GM "emerged" out of bankruptcy (which it did not), it is nothing more than a general, successor liability allegation that is barred by the Sale Order for establishing an Independent Claim. *See Motors Liquidation Co.*, 576 B.R. at 323 ("allegations that New GM purchased Old GM's books and records and has profited from maintenance, repair, and selling parts for Old GM vehicles—without a specific tie to the truck model or alleged design defect at issue here—are impermissible bases for an Independent Claim").

10

**Buchanan Allegation:** "The Design Release Engineer for the SWAS, Paul Shaub, as well as other Old GM employees, knew that the technology had "well known issues," meaning the SWAS in the Subject Vehicles were failing at a high rate and disabling the StabiliTrak system." (¶ 23).  Objection, at p. 7.

**New GM Response:**  Again, this allegation *only* concerns Old GM conduct, which is clearly insufficient to allege an Independent Claim.

**Buchanan Allegation:**  "Mr. Shaub, as well as numerous other Old GM employees, became New GM employees.  After becoming New GM employees, New GM also chose not to warn owners and operators of the Subject Vehicles that these sensors were failing at high rates and that these failures disabled the StabiliTrak in their vehicles." (¶ 25).  Objection, at p. 7.

**New GM Response:**  Buchanan identifies no, new independent conduct by Mr. Shaub (or any other New GM employee) which would support an Independent Claim.  This allegation is based (at least in major part) on what Mr. Shaub is alleged to have learned as an ***Old GM employee***.  Permitting an Independent Claim to pass through the bankruptcy gate based on this type of general, conclusory allegation "would completely end-run this Court's gatekeeping function."  *Motors Liquidation Co.*, 576 B.R. at 323.  Furthermore, an important factor why the U.S. government agreed to participate as the purchaser in the 363 Sale was to preserve the jobs of Old GM employees.  The knowledge that came with the hiring of Old GM employees was therefore a natural by-product of the 363 Sale.  That knowledge might have some relevance to establish an Assumed Liability against New GM.  But it does not, standing alone, create a new duty for New GM, especially because the Sale Order expressly holds that (a) New GM is not a successor to Old GM, (b) New GM is acquiring Old GM's business free and clear of successor/transferee liability, (c) New GM is not liable for actions taken in connection with the Sale Agreement, and (d) New GM is not acquiring Old GM's obligations (*i.e.*, failure to warn) unless it is in the context of an Assumed Liability.

11

In addition, in his Objection, Buchanan asserts that Count III in his Amended Complaint is an Independent Claim (Objection, ¶ 5). But a review of the allegations in that Count unquestionably demonstrates that it is not. Paragraphs 43 to 45 (which do not incorporate by reference previous paragraphs in the Amended Complaint) merely assert in general and conclusory fashion that New GM failed to warn Mrs. Buchanan of the SWAS and the allegedly disabled StabiliTrak. Buchanan's request for punitive damages similarly asserts, in conclusory and general fashion, that "New GM, through its conduct in failing to warn of a known defect in the Subject Vehicle, including the Trailblazer . . . ." Amended Complaint, ¶ 52. Significantly, no New GM volitional conduct of any kind is alleged. No specific interaction between New GM and the owner of the Subject Vehicle is alleged. Buchanan does not try and allege that a non-successor, and a non-manufacturer/non-seller of the Subject Vehicle somehow has a duty to him (which it does not). Rather, Buchanan is clear. As explained to the Georgia Court, the failure to warn claim against New GM comes from duties imposed on the manufacturer (Old GM). As referenced in his own Amended Complaint, the failure to warn Buchanan (a Used Car Purchaser) is an Assumed Liability, which, by definition, cannot be an Independent Claim.[16] Thus, not only are Buchanan's allegations general and conclusory and therefore legally insufficient to plead an Independent Claim, but they also are based either on the conduct of Old GM or an improper successor liability theory, which disqualifies the claim from being considered an Independent Claim and bars any viable path for seeking punitive damages against New GM.

---

[16] *See* December 2015 Judgment, at p. 2 n.3 (defining "Independent Claim" as "a claim or cause of action asserted against New GM that is based solely on New GM's own independent post-Closing acts or conduct. Independent Claims do not include (a) Assumed Liabilities, or (b) Retained Liabilities, which are any Liabilities that Old GM had prior to the closing of the 363 Sale that are not Assumed Liabilities").

**C.    Buchanan's So-Called Independent Claim Is Impermissibly Based on "Wholesale Imputation," and Violates Previous Decisions Of This Court**

Buchanan bases his so-called Independent Claim on conclusory and wholesale imputation allegations.  As the U.S. Supreme Court explained in *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009), allegations (like Buchanan's) that are "conclusory" are "*not* entitled to be assumed true."  And even assuming *arguendo* that some of Buchanan's allegations are non-conclusory (they are not), they still must "*plausibly* suggest an entitlement to relief."  *Id.*  But there is nothing inherently "plausible" about an allegation that New GM "continued the business of Old GM" with "many of Old GM's employees . . .," and somehow those facts created a new and independent duty from New GM to the Old GM vehicle owner.[17]  In short, the fact that Buchanan alleges wholesale imputation in a complaint does not automatically elevate those allegations to any status that is entitled to deference.

The imputation doctrine does not, by itself, allow Buchanan to assert an Independent Claim.  Knowledge without a legal duty does not create a new claim.  *See Holland*, 2015 WL 7196197, at *4.  Buchanan is essentially attempting to transfer an alleged Old GM obligation, based on Old GM conduct, to New GM as an Independent Claim (and not as an Assumed Liability), which is contrary to the "free and clear" aspects of the Sale Order.  In this regard, Buchanan is asserting a successor liability claim against New GM "dressed up" to look like something else, as Judge Gerber warned.  Thus, Judge Gerber expressly cautioned other courts dealing with this issue to be wary of this improper litigation tactic.  *See In re Motors Liquidation*

---

[17]    Other courts have afforded no deference to "wholesale imputation" allegations in other contexts. *See, e.g., Wayne Cty. Emps.' Ret. Sys. v. Dimon*, 629 F. App'x 14, 16 (2d Cir. 2015); *F5 Capital v. Pappas*, 856 F.3d 61, 83 (2d Cir. 2017); *In re JPMorgan Chase & Co. Derivative Litig.*, No. 12 CIV. 03878 GBD, 2014 WL 1297824, at *5 (S.D.N.Y. Mar. 31, 2014) (rejecting wholesale imputation allegations and stating:  "Plaintiff's conclusory allegations are insufficient.") (citing *Guttman*, 823 A.2d at 499 (courts should not "accept cursory contentions of wrongdoing as a substitute for the pleading of particularized facts.")).

*Co.*, 529 B.R. 510, 528 (Bankr. S.D.N.Y. 2015), *aff'd in part, vacated in part, rev'd in part*, 829

F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017) ("any court analyzing claims that are

supposedly against New GM only must be extraordinarily careful to ensure that they are not in

substance successor liability claims, 'dressed up to look like something else'" (*quoting Burton v.*

*Chrysler Grp., LLC (In re Old Carco LLC)*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013)).

Buchanan's argument is also contrary to this Court's July 10, 2017 Order regarding the

*Pitterman* lawsuit. There, this Court, in exercising its gate-keeping function, specifically held that

New GM's motion to enforce was granted to the extent that *Pitterman* was relying on a 2006

Technical Service Bulletin to support an alleged "failure to warn" Independent Claim. The Court

precluded *Pitterman* "from relying on conduct of Old GM in support of their alleged Independent

Claims against New GM[.]"[18] The Court stated: "I don't think I should permit you to rely on

Paragraph 25 [relating to the 2006 Technical Services Bulletin] in support of an independent claim

against New GM." June 29, 2017 Hr'g Tr., at 4:3-5.[19] In response, *Pitterman* argued that "New

GM, after 2009, was aware of its existence." *Id.* at 4:13. But the Court was unpersuaded and

rejected that argument, ruling instead that:

> Mr. Hirsch, I am precluding you from relying on the allegation in Paragraph
> 25 in support of a failure to warn independent claim against New GM. You can
> call New GM witnesses and show that they had knowledge of this alleged defect.
> That's going to be up to Judge Hall. Okay?
>
> But what I'm not going to do is -- this is exactly what I wrote the opinion
> to prevent you from doing, to bootstrap your independent -- your purported
> independent claim by relying on conduct of Old GM. If you have witnesses from
> New GM who are going to testify at your trial that they had knowledge of this
> alleged defect, you know, Judge Hall will decide whether that testimony is

---

[18]   *Order Granting In Part And Denying In Part General Motors LLC's Motion To Enforce The Ruling In The Bankruptcy Court's June 7, 2017 Opinion With Respect To The Pitterman Plaintiffs*, dated July 10, 2017 [ECF No. 13991] ("**July 2017 Order**"), at 1-2. A copy of the July 2017 Order is attached hereto as **Exhibit "B."**

[19]   A copy of the June 29, 2017 Hearing Transcript is attached hereto as **Exhibit "C."**

admissible or not, but you're not -- I'm not permitting you -- you're attempting to do exactly what I precluded you from doing. Okay?

*Id.*, at 5:5-18; *see also id.* at 6:11-13 ("What I am precluding is the plaintiff from relying on conduct of Old GM in support of its alleged independent claim against New GM.").  The July 2017 Order entered in connection with the *Pitterman* motion to enforce held, in relevant part:

> ORDERED that the Motion is granted with respect to Paragraph 25 of the Amended Complaint to the extent that the Pitterman Plaintiffs are hereby enjoined and may not use the 2006 Technical Service Bulletin to support their alleged Independent Claims against New GM; and it is further
>
> ORDERED that the Pitterman Plaintiffs are precluded from relying on conduct of Old GM in support of their alleged Independent Claims against New GM . . . .

July 2017 Order, at 1-2.

Buchanan similarly should be precluded from improperly relying on Old GM conduct—like, for example, warranty data that Old GM obtained "almost immediately upon the first sale of the 2006 model year vehicle"—to establish an Independent Claim.

Importantly, in July 2016, the Second Circuit stated that viable Independent Claims must be based ***solely*** on New GM post-363 Sale conduct, and not Old GM conduct.[20]  The Buchanan Amended Complaint fails to satisfy that standard.  The allegations therein are either conclusory or general, or are based specifically on Old GM conduct.  That is not a validly-pled Independent Claim, but an assumed Product Liability that cannot support a request for punitive damages.

---

[20]    *See In re Matter of Motors Liquidation Co.,* 829 F.3d 135, 157 (2d Cir. 2016) ("independent claims are claims based on New GM's own post-closing wrongful conduct. . . .  These sorts of claims are based on New GM's post-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct.").

**D.    As Buchanan's Independent Claim is Inappropriate, His Request for Punitive Damages Based on Such Claim Should be Stricken**

The only possible way to assert punitive damages against New GM in connection with a post-363 Sale accident involving an Old GM vehicle is through a viable Independent Claim based solely on alleged wrongful post-363 Sale New GM conduct. Since Buchanan has not done so, and his failure to warn claim should at most be viewed as an alleged assumed Product Liability, his punitive damage request fails and should be stricken from the Amended Complaint.

**E.    The Buchanan Lawsuit Should Be Stayed Until All Infirmities Are Addressed**

Contrary to Buchanan's allegation, New GM did not file the Buchanan Motion to Enforce to "gain perceived leverage" in seeking to block the deposition of Mary Barra in the Buchanan Lawsuit.[21] The Buchanan Motion to Enforce was precipitated by Buchanan's improper request for punitive damages—which violates rulings by this Court and the Second Circuit. The punitive damages request *was* the basis for Mary Barra's deposition.[22] New GM sought interlocutory review of that ruling by the Georgia Court of Appeals, which was recently granted. New GM's interlocutory appeal seeks to overrule the Georgia Court's order allowing this deposition to take place. Separately, New GM is seeking in this Court a ruling that Buchanan's request for punitive damages is improper. If New GM is successful on the Buchanan Motion to Enforce, and Buchanan

---

[21]    Buchanan appears to contend that bankruptcy issues were not raised in the Georgia Court until the discovery dispute that precipitated the Buchanan Motion to Enforce. *See* Objection, at ¶ 13. This is simply wrong. In its Answer *filed almost four years ago* (on June 3, 2016), New GM asserted that Buchanan's punitive damages claim violated the Bankruptcy Court's rulings and the Original Complaint must be amended to remove that request. Specifically, New GM's Answer asserted the following defense: "GM LLC . . . affirmatively asserts that Plaintiff must amend the Complaint to remove the punitive damages claim or be in violation of the New York Bankruptcy Court's Sale Order and Injunction and recent decisions and judgments entered by the Bankruptcy Court." *See* New GM's Answer, ¶ 35 (citations omitted). A copy of New GM's Answer is attached hereto as **Exhibit "D."** To suggest that New GM raised these issues for the first time following the hearing on its Motion for a Protective Order in the Georgia Court, or that this was in any way a surprise to Buchanan, is simply false.

[22]    The Georgia Court—*by agreement of both parties*—entered an order staying the execution of the court's order directing New GM's CEO, Mary Barra, to sit for a deposition until resolution of New GM's appeal of that order to the Georgia Court of Appeals. By order dated March 13, 2020, the Georgia Court of Appeals granted New GM's application for interlocutory review.

is directed to strike his request for punitive damages, that will be relevant to whether Ms. Barra's

deposition should go forward as the request for punitive damages was, indeed, the basis for the

deposition.[23] This is not "gaining leverage"; it is an appropriate way to enforce this Court's rulings

and its injunction in the Sale Order (as New GM has done many times before) and, specifically, to

require Buchanan to comply with this Court's Orders and to play by the same rules as other

plaintiffs (something he blatantly did not do in the Georgia Court).

The rule is "well-established" that "'persons subject to an injunctive order issued by a court

with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have

proper grounds to object to the order.'" *Celotex Corp. v. Edwards* 514 U.S. 300, 306 (1995).

Continuation of the Buchanan Lawsuit without regard to and in violation of existing Bankruptcy

Court rulings and its injunction in the Sale Order constitutes a violation of the Sale Order, and the

other Bankruptcy Court rulings.   Since Buchanan refuses to recognize the previously-issued

injunctions, the only way to compel compliance with the Sale Order is to enforce those Orders by

expressly staying Buchanan from proceeding with his Georgia lawsuit until all bankruptcy-related

---

[23]   Buchanan asserts that "[a]lthough the Plaintiff raised the punitive damages issue at the discovery hearing before
the State Court, the punitive damages issue was not the primary basis for requiring Ms. Barra's deposition."
Objection, at 14 n.9.  Buchanan is attempting to now rewrite history and to backtrack on the unequivocal
statements he made at the hearing before the Georgia Court, which resulted in the order directing Ms. Barra's
deposition. The problem with his argument is that there is a transcript of what he said and argued, which transcript
shows that his arguments are untrue.  Thus, statements at the hearing on New GM's motion for a protective order
that refute Buchanan's assertions here include: (i) "Why depose Ms. Barra? Her deposition is reasonably
calculated to lead to admissible evidence. That's the bottom line. How is it relevant?  ***It's relevant to Mr.
Buchanan's punitive damages claim.*** There's a punitive damages claim under Georgia law, and the conduct even
after the incident is admissible in certain circumstances, and particularly in this circumstance." (Georgia Court
January 27, 2020 Hr'g Tr., at 18:15-21 (emphasis added)), and (ii) "Why depose her? Again, it's reasonably
calculated to lead to the discovery of admissible evidence, ***testimony relevant to punitive damages claims***, and
she's the only witness who can answer certain questions." (*Id.* at 36:10-15 (emphasis added)).

In reality, it is Buchanan that sought to gain perceived leverage in the Georgia Court by first referring to Old GM
conduct to obtain Ms. Barra's deposition on the punitive damages claim.  Then, after obtaining authority to take
Ms. Barra's deposition under such barred circumstances, Buchanan then sought to cover his tracks by amending
his complaint, albeit unsuccessfully, to cure the infirmities therein.

issues are addressed and resolved.  Like all litigants, Buchanan and his counsel do not have the option of simply ignoring or defying the Orders of this Court.

## **CONCLUSION**

For all of the foregoing reasons, and for the reasons set forth in the Buchanan Motion to Enforce, New GM respectfully requests that this Court enter the proposed order attached to the Buchanan Motion to Enforce as Exhibit "J," granting the relief sought in the Buchanan Motion to Enforce, and for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
     March 23, 2019

                          Respectfully submitted,


                          */s/ Arthur Steinberg*
                          Arthur Steinberg
                          Scott Davidson
                          KING & SPALDING LLP
                          1185 Avenue of the Americas
                          New York, New York  10036
                          Telephone:    (212) 556-2100
                          Facsimile:    (212) 556-2222

                          *Attorneys for General Motors LLC*