**Reply Deadline: April 20, 2020**
**Hearing Date and Time: TBD**

Lisa M. Norman (admitted pro hac vice)
T. Joshua Judd (admitted pro hac vice)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
713-850-4200  Telephone
713-850-4211  Facsimile
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Counsel for Additional Ignition Switch*
*Pre-Closing Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>MOTORS LIQUIDATIONS COMPANY, et al.<br>f/k/a General Motors Corp., et al.<br><br>Debtors. | Chapter 11<br>Case No.: 09-50026 (MG)<br><br><br>(Jointly Administered) |

### BRIEF IN SUPPORT OF MOTION FILED BY ADDITIONAL IGNITION SWITCH PRE-CLOSING ACCIDENT PLAINTIFFS FOR AUTHORITY TO FILE LATE PROOFS OF CLAIM FOR PERSONAL INJURIES AND WRONGFUL DEATHS

The Additional Ignition Switch Pre-Closing Accident Plaintiffs[1] (the "Movants" or "Andrews Myers Plaintiffs"), by and through the undersigned counsel, hereby file this Brief in Support of their Motion to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths ("Motion") and supplements thereto [ECF Nos. 14018, 14046, 14112, 14195 and 14346], and in support thereof, the Movants respectfully state as follows:

---

[1] The "Additional Ignition Switch Pre-Closing Accident Plaintiffs", identified in Doc. 14018, 14046, 14112, 14195 and 14346, were not included in the Omnibus Motion filed by Certain Ignition Switch Pre-Closing [Docket No. 13807] but are seeking the same relief set forth in the motion at Docket No. 13807, which was still pending and for which oral arguments had not yet occurred when these "Additional Ignition Switch Pre-Closing Accident Plaintiffs" filed their late claims motion, and supplements thereto. These "Additional Ignition Switch Pre-Closing Accident Plaintiffs" are included in the subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles, but did not receive notice of the filing of Docket No. 13807 or the deadline to join in that motion.

1

## TABLE OF CONTENTS

Table of Authorities……………………………………………………………………………….3

Identification of movants…………………………………………………………………………5

Preliminary statement…………………………………………………………………………...5

Background…………………………………………………………………………………………..6

Arguments……………………………………………………………………………………………..10

     I.      The Ignition Switch Plaintiffs Need Not Satisfy The *Pioneer* Factors In Order To Obtain Authority To File The Late Proposed Class Claim Because They Suffered A Due Process Violation.

     II.      The Bankruptcy Court Tolled The Time For Ignition Switch Plaintiffs To File Late Claims Motions

     III.      The Equitable Mootness Ruling Effectively Postponed Any Late Claims Motion by Movants Until That Ruling Was Set Aside.

     IV.      The Scheduling Orders for the Four Threshold Issues Effectively Postponed Any Late Claims Motions Until the Due Process Issue Was Decided.

     V.      The Court Made Clear the It Would Decide All Late Claims Issues at One Time

Conclusion……………………………………………………………………………………20

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Axinn v. Metro. Distribution Servs., Inc. (In re Golden Distribs., Ltd.)*,
    128 B.R. 349 (Bankr. S.D.N.Y. 1991) ............................................................................12

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ....................................................................................................10

*City of N.Y. v. N.Y., New Haven & Hartford R.R.*,
    344 U.S. 293, motion to modify denied, 345 U.S. 901 (1953) .........................................11

*Elliott v. General Motors LLC (In re Motors Liquidation Co.)*,
    829 F.3d 135 (2d Cir. 2016).....................................................................................5, 8

*In re AMR Corp.*,
    492 B.R. 660 (Bankr. S.D.N.Y. 2013) ............................................................................12

*In re Ciena Capital LLC*,
    No. 08-13783 (AJG), 2010 WL 3156538 (Bankr. S.D.N.Y. Aug. 10, 2010) ...................14

*In re Drexel Burnham Lambert Grp. Inc.*,
    151 B.R. 674 (Bankr. S.D.N.Y.), aff'd sub nom.
    *Indian Motocycle Assocs., Inc. v. Drexel Burnham Lambert Grp., Inc.*
    *(In re Drexel Burnham Lambert Grp., Inc.)*, 157 B.R. 532 (S.D.N.Y. 1993) .................12

*In re Motors Liquidation Co.*,
    529 B.R. 510 (Bankr. S.D.N.Y. 2015), aff'd in part, rev'd in part,
    vacated in part sub nom. *Elliott v. General Motors LLC*
    *(In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir. 2016) ................................. *passim*

*In re PT-1 Commc'ns, Inc.*,
    292 B.R. 482 (Bankr. E.D.N.Y. 2003) ............................................................................14

*In re Residential Capital, LLC*,
    No. 12-12020 (MG), 2015 WL 2256683 (Bankr. S.D.N.Y. May 11, 2015) ...................12

*In re Thomson McKinnon Sec. Inc.*,
    130 B.R. 717 (Bankr. S.D.N.Y. 1991) .....................................................................12, 13

*Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*,
    600 F.3d 135 (2d Cir. 2010) ........................................................................................11

*Koepp v. Holland*,
    593 F. App'x 20 (2d Cir. 2014) ....................................................................................11

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,*
    507 U.S. 380 (1993) ............................................................................................ passim

*Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP),*
    809 F.3d 94 (2d Cir. 015)................................................................................10

*United States v. Ben Zvi,*
    242 F.3d 89 (2d Cir. 2001)..........................................................................10, 11

*United States v. Stanley,*
    54 F.3d 103 (2d Cir. 1995)..........................................................................10, 11

## Other Authorities

18 James WM. Moore, Moore's Federal Practice (3d ed. 2016) …..............................................10

## IDENTIFICATION OF MOVANTS

1.      Of the 389 Additional Ignition Switch Pre-Closing Accident Plaintiffs represented

by the undersigned counsel who sought authority to file late claims, only twelve (12) plaintiffs

remain. These twelve (12) Movants are identified as follows:

> Bertha Brown,
> Joann Donato,
> Kathryn Enders,
> Rodney Gentry,
> Chas Grant,
> Melinda Lynch,
> Louella Martinez,
> John McDonough,
> Ruby Merritt,
> David Pier,
> Sandra Samuels, and
> Shakira Stephenson.

## PRELIMINARY STATEMENT

2.      In the April 2015 Decision, the Bankruptcy Court held that the Ignition Switch

Plaintiffs were known creditors who did not receive actual notice of the November 30, 2009 Bar

Date for filing proofs of claim against Old GM.[2] This notice failure prejudiced their ability to

timely file claims and violated their due process rights. See id. at 574. ***The Bankruptcy Court

identified the "obvious remedy" for this due process violation as leave to file late claims***. See

id. at 583. Accordingly, designating the Ignition Switch Plaintiffs' proposed claims as timely,

without conducting a *Pioneer* review, is the proper outcome to give good faith and fidelity to the

April 2015 Decision.

3.      Having failed to appeal the due process violation as it relates to the Bar Date, the

GUC Trust cannot now seek to evade the Movants' claims by arguing that the they do not satisfy

---

[2] *See In re Motors Liquidation Co.*, 529 B.R. 510, 573-74 (Bankr. S.D.N.Y. 2015), aff'd in part, rev'd in part, vacated in part sub nom. *Elliott v. General Motors LLC* (In re Motors Liquidation Co.), 829 F.3d 135 (2d Cir. 2016)

the *Pioneer* factors. Both the April 2015 Decision and controlling case law are clear that creditors who suffer a due process violation may assert late claims and need not rely on the *Pioneer* factors for demonstrating excusable neglect.

4.      Even if, *arguendo*, the Pioneer factors were applicable, any argument of delay by the GUC Trust must be limited to the period from February 2014, when the Ignition Switch Defect was finally disclosed, to May 16, 2014.[3]

## BACKGROUND

5.      Movants incorporate the Late Claims Motion and proofs of claim attached thereto as if set forth fully herein.[4]

6.      In September 2009, approximately two months after the 363 Sale, the Bankruptcy Court entered the Bar Date Order establishing November 30, 2009 as the Bar Date for filing proofs of claim against Old GM. *See In re Motors Liquidation Co.*, 529 B.R. at 535.

7.      In February 2012, the Bankruptcy Court issued the Late Filed Claims Order, which provides, in relevant part, that "all claims filed against [Old GM] on or after the date of entry of this Order shall be deemed disallowed (each, a "Late Claim"), except any Late Claim . . . as to which the Court has entered an order deeming such Late Claim timely filed . . . ."[5]

8.      Over four years after the bar date passed, in February and March 2014, New GM for the first time publicly disclosed the existence of the Ignition Switch Defect and issued a

---

(the "**April 2015 Decision**").

[3] In light of this limited period of delay, this Court, speaking to counsel for the GUC Trust, expressed the view that: "You can't be serious. . . . [Y]ou really think that . . . I'm going to find that the delay from February until May of [2014] would support an argument that I should not permit late claims for ignition switch economic loss plaintiffs?" See Hr'g Tr. 41:8-16, dated Jan. 12, 2017 [ECF No. 13826].

[4] *See* Doc. 14018, 14046, 14112, 14195 and 14346.

[5] *Order Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for an Order Disallowing Certain Late Filed Claims*, dated February 8, 2012 [ECF No. 11394] (the "Late Filed Claims Order") at 1-2.

recall, NHTSA Recall Number 14V-047, impacting approximately 1.6 million vehicles owned or leased by Ignition Switch Plaintiffs.

9.      In April 2014, New GM sought to enjoin the prosecution of numerous class actions arising out of the Ignition Switch Defect by filing the Motion to Enforce.[6] The Bankruptcy Court identified threshold issues (the "Threshold Issues") to be determined on the Motion to Enforce.

10.     The Bankruptcy Court also tolled the Ignition Switch Plaintiffs' time to file the Motion until final resolution of the threshold issues, including appeals. Specifically, the Bankruptcy Court ordered that:

> [T]he GUC Trust agrees that it shall not assert a timeliness objection to any claims that the Plaintiffs may attempt to assert against the Old GM bankruptcy estate and/or the GUC Trust, based directly or indirectly on the ignition switch issue, as a result of Plaintiffs' delay in asserting such claims during "Interval." For purposes hereof, (a) the "Interval" shall commence on the date of this Order and shall end 30 days after a Final Order is entered with respect to an adjudication of the Threshold Issues . . . and (b) "Final Order" shall mean the entry of an order by a court of competent jurisdiction, and there are no pending appeals . . . .[7]

11.     In the April 2015 Decision, the Bankruptcy Court held that Old GM failed to provide constitutionally adequate notice of the Bar Date to the Ignition Switch Plaintiffs, which prejudiced them in filing timely claims and violated their due process rights. *See In re Motors Liquidation Co.*, 529 B.R. at 525, 574.

12.     The Bankruptcy Court expressly recognized that "[t]he remedy with respect to the denial of notice sufficient to enable the filing of claims before the Bar Date is obvious. That is

---

[6] See *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 [ECF No. 12620] (the "Motion to Enforce").

[7] *Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 To Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect thereto, and (III) Adversary Proceeding No. 14-01929*, dated May 16, 2014 [ECF No. 12697] (the "Scheduling Order"), at 3; see also Supplemental Scheduling Order at 2 (ordering "that, except as specifically set forth herein, the May 16

leave to file late claims. And the Court may grant leave from the deadline imposed by the

Court's Bar Date Order . . . ." *Id.* at 583. Thus, the Bankruptcy Court advised that the Ignition

Switch Plaintiffs could file motion to allow late claims. *See id.* at 598. Likewise, the Judgment

states that:

> Plaintiffs were prejudiced by the failure to receive the notice due process required
> of the deadline ("Bar Date") to file proofs of claim against the Old GM
> bankruptcy estate. Any Plaintiff may petition the Bankruptcy Court (on motion
> and notice) for authorization to file a late or amended proof of claim against the
> Old GM bankruptcy estate.

*See* Judgment, dated June 1, 2015 [ECF 13177], ¶ 6. These holdings were not appealed.

13.    On the direct appeal, the Second Circuit addressed whether the Ignition Switch

Plaintiffs suffered a due process violation in connection with the Sale Order and the proper

remedy for a due process violation.[8] In relevant part, the Second Circuit affirmed that the

Ignition Switch Plaintiffs were known creditors of Old GM entitled to actual notice of the Sale

Order. *See Elliott*, 829 F.3d at 161, 166. The Second Circuit further held that "[b]ecause

enforcing the Sale Order would violate procedural due process . . . these plaintiffs thus cannot be

'bound by the terms of the [Sale] Order[].'" *Id.* at 166.

14.    After the Second Circuit issued its mandate remanding the case to the Bankruptcy

Court for further proceedings consistent with the Second Circuit Opinion,[9] the Bankruptcy Court

entered the Order to Show Cause identifying initial issues to be addressed on remand.[10]

---

Scheduling Order remains in full force and effect, and is binding on all parties").

[8] See *Elliott v. General Motors LLC* (*In re Motors Liquidation Co.*), 829 F.3d 135, 166 (2d Cir. 2016) (the "Second Circuit Opinion").

[9] Mandate, *Elliott v. General Motors LLC*, Docket Nos. 15-2844(L), 15-2847(XAP), 15-2848(XAP) (2d Cir. Sept. 30, 2016) [ECF No. 454].

[10] *Order to Show Cause Regarding Certain Issues Arising from Lawsuits with Claims Asserted Against General Motors LLC ("New GM") that Involve Vehicles Manufactured by General Motors Corporation ("Old GM")*, dated Dec. 13, 2016 [ECF No. 13802], at 2-3.

15.     Pursuant to the Order to Show Cause, on December 22, 2016, the Ignition Switch
Plaintiffs (and certain Non-Ignition Switch Plaintiffs) filed their late claims motion ("Original
Late Claims Motion"). Notably, none of the Movants herein received notice of the Order to
Show Cause because they had thus far not been involved in this bankruptcy case.

16.     Following two status conferences on the Original Late Claims Motion and related
discovery, this Court entered an order providing for briefing on two issues related to that motion:
(i) whether the Ignition Switch Plaintiffs must satisfy the Pioneer factors in order to obtain the
relief requested in their motion; and (ii) whether and as of when the GUC Trust's agreement to
toll any timeliness objections to late proofs of claim applies to certain plaintiffs seeking authority
to file late claims.[11]

17.     While the Original Late Claims Motion was pending and as soon as Movant's
personal injury counsel became aware of the existence of the Order to Show Cause, Movants
filed their Motion. Movants herein are Ignition Switch Pre-closing Accident Plaintiffs as that
term is defined in the Original Late Claims Motion. Movants are seeking the same relief sought
in the Original Late Claims Motion, i.e., authority to file late claims after the Bar Date.

18.     Thereafter, Movants were Signatory Plaintiffs to the 2017 settlement agreement
with the GUC Trust [ECF No. 14093-8] and participated in the evidentiary hearings to enforce
that settlement agreement. However, because the settlement agreement was ultimately not
enforced, the Movants have continued unabated since July of 2017 to seek authority to file their
late claims and the right to potentially recover from the GUC Trust for personal injury and
wrongful death caused by Debtors' defective products.

---

[11] See *Order Establishing, Inter Alia, Briefing Schedule for Certain Issues Arising From Late Claim Motions Filed
by Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs and Certain Ignition Switch Pre-Closing Accident
Plaintiffs*, dated Mar. 2, 2017 [ECF No. 13869].

## ARGUMENT

I.    **The Ignition Switch Plaintiffs Need Not Satisfy The *Pioneer* Factors In Order To Obtain Authority To File The Late Proposed Class Claim Because They Suffered A Due Process Violation.**

19.    Under the law of the case doctrine, the prior rulings in these proceedings govern with respect to the finding that Ignition Switch Plaintiffs are known creditors who did not receive constitutionally adequate notice of the Bar Date and the remedy for this due process violation is leave to file late claims.

20.    The "law of the case" doctrine holds that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); see also 18 James WM. Moore, Moore's Federal Practice § 134.20[2] (3d ed. 2016). Under a branch of law of the case doctrine called the mandate rule, a lower court is precluded from relitigating "matters expressly decided by the appellate court" and "issues impliedly resolved by the appellate court." *Statek Corp. v. Dev. Specialists, Inc.* (*In re Coudert Bros. LLP*), 809 F.3d 94, 98-99 (2d Cir. 2015). "[W]here an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the [lower] court from reopening the issue on remand . . . ." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001); *United States v. Stanley*, 54 F.3d 103, 107 (2d Cir. 1995) (holding that lower court on remand could not reopen issue that party failed to raise on first appeal).

21.    In the April 2015 Decision, the Bankruptcy Court held that the Ignition Switch Plaintiffs were known creditors entitled to actual notice of the Bar Date Order. *See In re Motors Liquidation Co.*, 529 B.R. at 525. The failure to provide constitutionally adequate notice

10

prejudiced the Ignition Switch Plaintiffs in timely filing claims and violated their due process rights. *See id.* at 526, 574.

22.     The Bankruptcy Court concluded that the obvious remedy for this due process violation was leave to file late claims. *See id.* at 583. The Bankruptcy Court recognized that it could "grant leave from the deadline imposed by the Court's Bar Date Order" under the Second Circuit's decisions in *Manville IV* and *Koepp*, see id., which both hold that a party cannot be bound by an order entered in violation of that party's due process rights. *See Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135, 158 (2d Cir. 2010) ("*Manville IV*") (remedying violation of due process rights by denying enforcement of order); *Koepp v. Holland*, 593 F. App'x 20, 22-23 (2d Cir. 2014) (order purporting to vest certain real property in a reorganized railroad free and clear of interests could not operate to extinguish plaintiffs' predecessor-in-interest's easement on land belonging to railroad where there was no evidence that predecessor-in-interest received notice of the bankruptcy).

23.     These holdings in the April 2015 Decision were not appealed and cannot now be challenged under the law of the case doctrine. *See Ben Zvi*, 242 F.3d at 95; *Stanley*, 54 F.3d at 107. Because the April 2015 Decision clearly endorsed the filing of the Ignition Switch Plaintiffs' proposed claims against the GUC Trust, the Motion should be granted without application of the *Pioneer* factors.

24.     Moreover, ample authority supports the Bankruptcy Court's ruling that the Ignition Switch Plaintiffs' proposed claims may proceed as a remedy for the violation of their due process rights. A known creditor who fails to receive constitutionally adequate notice of the bar date cannot be bound by that bar date. *See City of N.Y. v. N.Y., New Haven & Hartford R.R.*, 344 U.S. 293, 296-97 (finding that the bar date order could not be sustained absent

constitutionally appropriate notice), motion to modify denied, 345 U.S. 901 (1953); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 2256683, at *6 (Bankr. S.D.N.Y. May 11, 2015) ("[I]f a debtor who files for chapter 11 bankruptcy protection does not give 'reasonable notice' to a creditor of the bankruptcy proceeding and the applicable bar date(s), the creditor's proof of claim cannot be constitutionally discharged."); *In re AMR Corp.*, 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013) ("The bar date is strictly enforced except when a known creditor is not listed on the schedules and fails to receive notice of the bar date.").

25.     Absent a binding bar date, there is no basis for precluding a creditor from filing claims after the bar date. *See In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674, 680-82 (Bankr. S.D.N.Y.) (holding that known creditor who did not receive actual notice of bar date could file late proof of claim), aff'd sub nom. I*ndian Motocycle Assocs., Inc. v. Drexel Burnham Lambert Grp., Inc.* (*In re Drexel Burnham Lambert Grp., Inc.*), 157 B.R. 532 (S.D.N.Y. 1993); *In re Thomson McKinnon Sec. Inc.*, 130 B.R. 717, 720-21 (Bankr. S.D.N.Y. 1991) (holding that known creditor was not time-barred and could file late proof of claim because debtor failed to give actual notice of the bar date order); *Axinn v. Metro. Distribution Servs., Inc.* (*In re Golden Distribs., Ltd.*), 128 B.R. 349, 351 (Bankr. S.D.N.Y. 1991) (holding that creditor who did not receive proper notice of the bar date order was not time-barred by that order and, therefore, could file a late proof of claim).

26.     In each of these opinions, the Bankruptcy Court permitted creditors to file late claims on due process grounds alone, explicitly holding that the creditor need not demonstrate excusable neglect. *See In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. at 680 ("If Claimant was a known creditor, it was entitled to actual notice of the bar date and will be permitted to file a proof of claim. If Claimant was unknown, the excusable neglect standard applies."); *In re*

12

*Thomson McKinnon Sec. Inc.*, 130 B.R. at 720-21 (explaining that known creditor who did not receive actual notice of the bar date order "need not rely on the doctrine of excusable neglect in requesting an extension of time to file a proof of claim"); *In re Golden Distribs., Ltd., 128 B.R. at 351* (holding that creditor who did not receive proper notice of the bar order need not demonstrate excusable neglect to obtain authority to file a late claim).

27.    Accordingly, Movants, as Ignition Switch Plaintiffs, need not satisfy the *Pioneer* factors in order to obtain authority to file their proposed claims under the April 2015 Decision and as a matter of due process.

## II.    The Bankruptcy Court Tolled The Time For Ignition Switch Plaintiffs To File Late Claims Motions

28.    Assuming, *arguendo*, that the *Pioneer* factors were applicable, the Bankruptcy Court's consideration of these factors must take into account the GUC Trust's agreement to not assert a timeliness objection against the Ignition Switch Plaintiffs for any delay in asserting claims during the "Interval" from May 16, 2014, when the Scheduling Order was entered, until 30 days after a "Final Order" is entered on the Threshold Issues. *See* Scheduling Order at 3.

29.    Specifically, in the Scheduling Order, the Bankruptcy Court ordered that:

> [T]he GUC Trust agrees that it shall not assert a timeliness objection to any claims that the Plaintiffs may attempt to assert against the Old GM bankruptcy estate and/or the GUC Trust, based directly or indirectly on the ignition switch issue, as a result of the Plaintiffs' delay in asserting such claims during the "Interval."

Scheduling Order at 3. While Movants herein were not yet involved in this case when the Scheduling Order was entered, as similarly situated Ignition Switch Plaintiffs, Movants assert that they, too, are beneficiaries of the aforementioned tolling period.

30.     Movants' motion was filed before the expiration of the tolling period. Thus, any examination of the *Pioneer* factors, and any related discovery, should be limited to events prior to the commencement of the tolling period on May 16, 2014.

31.     Indeed, the GUC Trust conceded at the January 12, 2017 status conference that "for the ignition switch economic loss plaintiffs, the only possible argument about *Pioneer* factors is February to May 2014"—the time between the first public disclosure of the Ignition Switch Defect and the start of the tolling period. See Hr'g Tr. 41:4-7, dated Jan. 12, 2017 [ECF No. 13826].

32.     In particular, one *Pioneer* factor considers the length of delay in filing a motion seeking authority to file a late claim. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). In light of the tolling agreement, the relevant delay is, at most, this three month period from February to May 2014. Accordingly, even if the Ignition Switch Plaintiffs were required to satisfy the *Pioneer* factors to obtain authority to file late claims (which they are not), it is evident that they have satisfied the factor considering the length of delay. *See In re Ciena Capital LLC*, No. 08-13783 (AJG), 2010 WL 3156538, at *3 (Bankr. S.D.N.Y. Aug. 10, 2010) (eighteen month delay not substantial); *In re PT-1 Commc'ns, Inc.*, 292 B.R. 482, 489 (Bankr. E.D.N.Y. 2003) (delay of three and a half months after discovery of alleged liability not substantial).

## III.     The Equitable Mootness Ruling Effectively Postponed Any Late Claims Motion by Movants Until That Ruling Was Set Aside.

33.     In addition to the impediment of the Late Filed Claims Order, the April 2015 Decision also held that any late claim filed by an Ignition Switch Pre-Closing Accident Plaintiff would be barred as equitably moot. *Motors Liquidation*, 529 B.R. at 592. The combined effect of the equitable mootness ruling and the Late Filed Claims Order was to render the act of seeking

permission to file a late proof of claim relating to the Ignition Switch Defect a waste of time and resources. Given the twelve year concealment of the Ignition Switch Defect, coupled with the pendency of the second Motion to Enforce and the tolling imposed by the September 2014 Scheduling Order (discussed below), there was an uninterrupted period of seven years during which no legitimate basis existed for the Movants to seek allowance of late claims relating to the Ignition Switch Defect. It was not until the Second Circuit vacated the equitable mootness ruling in July 2016, that the Movants had a basis to argue that they should be permitted to file their proofs of claim.

34.    In sum, until the due process violation was adjudicated, the Late Filed Claims Order and the Bar Date Order were impenetrable barriers to filing an untimely proof of claim. Any such proof of claim would be *per se* late because the mere publication of notice of the Bar Date would have been sufficient to bar the claim. That began to change when this Court found that the Ignition Switch Plaintiffs were prejudiced by the due process violation inflicted on them, but the equitable mootness ruling in the April 2015 Decision remained as a bar until July 2016.

## IV.    The Scheduling Orders for the Four Threshold Issues Effectively Postponed Any Late Claims Motions Until the Due Process Issue Was Decided.

35.    New GM filed its first motion to enforce the Sale Order (a "Motion to Enforce") on April 22, 2014, which motion only related to economic loss claims against New GM based upon the Ignition Switch Defect. In connection with the first Motion to Enforce, on May 16, 2014, this Court entered the first of a series of scheduling orders. That order set forth an early iteration of the Four Threshold Issues and imposed in the sixth "ordered" paragraph a tolling on late claims motions as discussed above. Even if the genesis of this tolling was an agreement between economic loss plaintiffs and the GUC Trust, the tolling was made a part of the ordered provisions of the May 16 Scheduling Order because this Court wanted a coordinated briefing

15

schedule on the Ignition Switch issues and did not want the distraction of possibly hundreds of parties making their own motions on issues of particular interest to them. This Court maintained tight control over its own docket and dictated the timing and sequence in which it was going to decide the key issues raised by the Motions to Enforce. The Court decided that the Four Threshold Issues took precedence. Moreover, the adjudication of late claims motions ahead of the Court's determination of the Four Threshold Issues would make no sense given the focus of the Four Threshold Issues on whether a due process violation had occurred. Absent such determination, a late claims motion was either premature or would be denied outright because, absent finding a due process violation, claims filed five years after the Bar Date would be late and disallowed *per se*.

36.     Months after the first Motion to Enforce was filed, on August 1, 2014, New GM filed a second Motion to Enforce, this time against the Ignition Switch Pre-Closing Accident Plaintiffs. By this date, the Stipulated Facts that were agreed to by the parties to the first Motion to Enforce were almost completed without any input from the Ignition Switch Pre-Closing Accident Plaintiffs.[12] Before New GM filed the August 2014 Motion to Enforce, this Court had entered a further Scheduling Order (the July 2014 Scheduling Order) pertaining only to the first Motion to Enforce. Subsequently, on September 15, 2014, the Court entered yet another Scheduling Order (the Sept. 2014 Scheduling Order), pertaining specifically to the August 2014 Motion to Enforce.

37.     In substance, the Sept. 2014 Scheduling Order instructed the Ignition Switch Pre-Closing Accident Plaintiffs to "catch up" with the economic loss plaintiffs covered under the first

---

[12] The Stipulated Facts were filed with the Court eight (8) days after the second Motion to Enforce was filed and two months before the undersigned counsel was engaged to address the issues raised in the second Motion to Enforce.

Motion to Enforce and the prior Scheduling Orders and to sign onto the Stipulated Facts and to brief the Four Threshold Issues at the same time and pace as the economic loss plaintiffs.

38.    More importantly, the Sept. 2014 Scheduling Order expressly channeled the Ignition Switch Pre-Closing Accident Plaintiffs into the same schedule as was set for the first Motion to Enforce: "Until further order of the Court, the schedule governing New GM's Ignition Switch Motion to Enforce (which is subject to various Orders previously entered by the Court, copies of which shall be provided by New GM to Plaintiffs upon written request) shall govern the schedule for the Pre-Closing Accident Motion to Enforce." Sept. 2014 Scheduling Order at 2.

39.    The tolling undeniably put all late claims motions arising from Motions to Enforce into the queue behind the Four Threshold Issues. The definition of the "Interval" was driven by the timing and ultimate determination of the Four Threshold Issues. There would have been no purpose to any Ignition Switch Plaintiff filing a late claims motion until after the Four Threshold Issues had been determined. The tolling provision of the May 2014 Scheduling Order essentially says that.

40.    Moreover, the Movants identified herein were not yet aware of the Court had entered any order allowing for late claims motion to be filed. Once it became known to Movants that the late claims motions of the Original Ignition Switch Plaintiff were being considered by this Court, Movants promptly filed their Motion.

**V.    The Court Made Clear the It Would Decide All Late Claims Issues at One Time**

41.    Apart from the practical impossibility of having facially late claims accepted as timely before the due process rulings were made and before the Second Circuit vacated the equitable mootness ruling, the Court's docket makes clear that the Court expected litigants to wait their turn.

42.    One of the earliest indications is this Court's ruling in the Phaneuf matter. There, a plaintiff in one of the many lawsuits caught up in the first Motion to Enforce sought to have its issues and problems with the application of the Motion to Enforce to its particular lawsuit adjudicated ahead of the timing set for the "communal" determination of the Four Threshold Issues. This plaintiff (unlike virtually all of the other plaintiffs affected by the first Motion to Enforce) had refused to voluntarily stay its lawsuit while the Four Threshold Issues were being briefed and decided. In response, this Court stated:

> In this jointly administered proceeding in which I address issues in New GM's Motion to Enforce and the Groman Adversary, I must determine whether one out of 88 Ignition Switch Actions—brought by a group of plaintiffs (the "Phaneuf Plaintiffs"), suing on their own behalf and on behalf of a purported class—should be allowed to proceed when the plaintiffs in every other Ignition Switch Action agreed to stay their actions while the issues in the Motion to Enforce were being litigated. Some of the issues that I'll later decide may turn out to be difficult, but those here are not. I rule that the Phaneuf Plaintiffs should be treated no differently than those in the 87 other Ignition Switch Actions who agreed to voluntary stays, with adherence to the orderly procedures in this Court that were jointly agreed to by counsel for those other plaintiffs and New GM.

In re Motors Liquidation Co., 513 B.R. 467, 470 (Bankr.S.D.N.Y.2014). The Court went on to hold that "[u]nder section 105(d) authority given to me by Congress, I established an orderly process…. My efforts to manage 88 cases, with largely overlapping issues, require that they proceed in a coordinated way." Id. at 478.

43.    In August 2014, this Court again addressed whether issues would be adjudicated out of sequence. "Once again, a plaintiff group wishing to proceed ahead of all of the others (only one week after I issued the written opinion memorializing my earlier oral ruling proscribing such an effort) has asked to go it alone. Its request is denied." In re Motors Liquidation Co., 514 B.R. 377, 380 (Bankr. S.D.N.Y. 2014). Still not having received the message, the same lawyer implicated in that decision (but this time for a different plaintiff) again

tried to go his own way, first, by refusing to brief the Four Threshold Issues with the group and,

then, attacking the rulings after the issuance of the April 2015 Decision and the June 2015

Judgment. This Court began its decision rejecting these efforts by stating:

> [i]n still another filing in his efforts to go it alone in connection with litigation
> arising from the announcement by [New GM] of the defects in its ignition
> switches . . . and the issuance of two opinions in connection with that controversy
> following briefing by other counsel who ably presented plaintiffs' arguments,
> Gary Peller Esq., this time on behalf of the "Bledsoe Plaintiffs," a subset of the
> clients he has represented (individually and as purported class representatives) in
> this case has filed many motions seeking post-judgment relief from this Court. . . .
> The motions are denied.

*In re Motors Liquidation Co.*, 534 B.R. 538, 540-41. (Bankr.S.D.N.Y.2014). The Court went on

to list counsel's unsuccessful efforts to go it alone. "All in all, Peller and Hornal have made more

than 20 substantive filings (not counting notices of appeal and notices for leave to appeal), all of

which, no matter how frivolous were considered by the Court; seven of which resulted in

substantive orders of the Court; and three of which were addressed in full written opinions (or

parts of larger opinions) by the Court." *Id.* at 549-50.

44.     Most lawyers participating in these proceedings would have viewed the Court's

alignment and selection of the Four Threshold Issues, its issuance of multiple Scheduling Orders

governing the timing of briefings and hearings, its efforts to maintain order by coordinating so

many plaintiffs into a lock-step process, and its consistent refusal to hear one group ahead of

another or to take issues out of order, as an edict to that all late claims issues would be decided at

one time. Because the late claims issues were not ripe until the due process and equitable

mootness issues were finally decided, it would have been a fool's errand to pursue Movant's late

claims back in 2014.

## **CONCLUSION**

WHEREFORE, Movants respectfully request that this Court enter an Order granting the

Ignition Switch Plaintiffs leave to file their proposed late claims.

Dated: March 27, 2020

Respectfully submitted,

ANDREWS MYERS, P.C.

*/s/ Lisa M. Norman*
Lisa M. Norman (admitted pro hac vice)
T. Joshua Judd (admitted pro hac vice)
ANDREWS MYERS, P.C.
1885 St. James Place, 15th Floor
Houston, Texas 77056
713-850-4200  Telephone
713-850-4211  Facsimile
Lnorman@andrewsmyers.com
Jjudd@andrewsmyers.com

*Bankruptcy Counsel for Additional Ignition
Switch Pre-Closing Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), copies will also be served by email on March 27, 2020 on those parties listed as "Notice Parties" under the Court's December 12, 2016 Order to Show Cause [ECF No. 13802], with paper copies served by first class mail postage prepaid on all Notice Parties for whom email addresses are unavailable.

*/s/  Lisa M. Norman*
LISA M. NORMAN
