Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
David Giller
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

*Counsel for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*,<br>f/k/a General Motors Corp., *et al.*,<br><br>                                     Debtors. | Chapter 11<br><br>Case No. 09-50026 (MG)<br><br>(Jointly Administered) |

**REPLY OF GENERAL MOTORS LLC WITH RESPECT
TO MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION
TRUST'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ITS MOTION
<u>FOR ENTRY OF AN ORDER APPROVING THE PROPOSED DISTRIBUTION PLAN</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................... 1

REPLY ...................................................................................................................................... 4

    A.    Objections to the Original Motion Are Not Moot. .................................................. 4

    B.    New GM Has Standing To Oppose the Original Motion. ...................................... 7

    C.    The AAT Cannot Ignore Plaintiffs' Claims. ............................................................ 8

        1.    The AAT Cannot Ignore Plaintiffs' Claims On the Basis that They Are Speculative. ............................................................................................................. 9

        2.    The AAT Cannot Ignore Plaintiffs' Claims Based on the Minimum Distribution Threshold in the Avoidance Trust Agreement. ..................................................... 10

    D.    The AAT Cannot Make a Distribution Without Establishing a Reserve for Plaintiffs' Claims. ................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ................................................................................................ 13

*Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.*,
   559 U.S. 393 (2010) ........................................................................................... 12, 13

*Slobodian* v. *IRS (In re Net Pay Solutions, Inc.)*,
   822 F.3d 144 (3d Cir. 2016) ..................................................................................... 13

*In re Stone Barn Manhattan LLC*,
   405 B.R. 68 (Bankr. S.D.N.Y. 2009) ......................................................................... 8

**Treatises**

1 McLaughlin on Class Actions § 1:1 (16th ed.) ............................................................ 13

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC ("New GM") submits this reply (the "Reply") to the supplemental brief (the "Brief")[1] filed by the Motors Liquidation Company Avoidance Action Trust (the "AAT"), and respectfully states as follows:

**INTRODUCTION**

1. The AAT seeks to have this Court approve a "distribution of all remaining proceeds and to wind down the trust" (Br. 1), even though the AAT has not resolved the claims asserted by the Economic Loss Plaintiffs ("Plaintiffs"), nor established a reserve for such claims. Rather, the AAT asserts that it can simply ignore Plaintiffs' claims, and proceed as if such claims do not exist. The AAT advances three arguments for why it should be able to distribute all of its assets now and wind down despite its failure to resolve Plaintiffs' claims. None have any merit.

2. First, the AAT argues that prior objections to the Original Motion have "been superseded by events and [are] moot." (Br. 5.) The AAT is correct that circumstances have changed since the Original Motion was filed in July 2019. At that time, Plaintiffs and the GUC Trust were pursuing a proposed class settlement—over the objections of New GM—that would have, among other things, required the GUC Trust to contribute up to $13.7 million and resulted in Plaintiffs releasing their claims against the AAT. Even under those circumstances, the Court did not approve the Original Motion. Now, Plaintiffs, the GUC Trust, and New GM are seeking

---

[1] *Motors Liquidation Company Avoidance Action Trust's Supplemental Brief in Further Support of Its Motion for Entry of an Order Approving the Distribution Plan to the Avoidance Action Trust's Beneficiaries* [ECF No. 14681], filed on March 6, 2020. Capitalized terms not otherwise defined herein shall have the meanings given to them in *Motion of Motors Liquidation Company Avoidance Action Trust for Entry of an Order Pursuant to Sections 105 and 1142 of the Bankruptcy Code and Bankruptcy Rule 3020 Approving the Distribution Plan to the Avoidance Action Trust's Beneficiaries* (the "Original Motion") [ECF No. 14552], filed on July 8, 2019. Reference is made to the Fourth Amended and Restated Motors Liquidation Company Avoidance Action Trust Agreement attached as Exhibit A to the Motion (the "Avoidance Trust Agreement") and the Second Amended and Restated Motors Liquidation Company GUC Trust Agreement attached as Exhibit D to the Motion (the "GUC Trust Agreement").

approval of a proposed global settlement (the "Global Settlement") that would, among other things, require the GUC Trust to contribute $50 million to settle Plaintiffs' claims and would expressly *preserve* Plaintiffs' claims against the AAT.[2]  While circumstances have changed significantly over the past nine months, they do not justify a different outcome with respect to the Original Motion.  Rather, they highlight the intransigence of the AAT, and lay bare its warped logic:  while the GUC Trust has agreed to increase its settlement contribution nearly four-fold, the AAT asks the Court to let it completely off the hook by authorizing the AAT to distribute all of its assets, thereby obviating Plaintiffs' claims with respect to the AAT.

3.     Second, the AAT asserts that Plaintiffs' claims are "speculative" and therefore Plaintiffs are "not current or potential future beneficiaries of the AAT." (Br. 2.)  Of course, New GM (and the GUC Trust) agrees that Plaintiffs' claims lack merit and that Plaintiffs face nearly insurmountable obstacles in light of Judge Furman's August 2019 summary judgment decision. Unlike the AAT, however, New GM (and the GUC Trust) understands that it cannot simply declare victory and go home based on the present state of affairs.  Rather than continuing to litigate Plaintiffs' claims to final resolution, including through appeals, New GM (and the GUC Trust) recognizes the benefits of settling with Plaintiffs and ceasing further costly litigation.  The AAT, on the other hand, asks this Court to find, as a matter of both law and fact, that Plaintiffs' claims are so entirely baseless that they can simply be ignored (notwithstanding that New GM and the GUC Trust are paying $120 million, plus up to $34.5 million in attorney's fees, to resolve such claims).  Not surprisingly, the AAT points to no provision of the Plan or the Avoidance Trust

---

[2] *See Motion For Entry Of An Order (I) Approving The GUC Trust Administrator's Actions; (II) Approving The Settlement Agreement And The Release Agreement Pursuant To Federal Rule Of Bankruptcy Procedure 9019; And (III) Authorizing The Reallocation Of GUC Trust Assets* (the "GUC Trust Approval Motion") [ECF No. 14691], filed on Mar. 27, 2020.  Reference is made to the Settlement Agreement attached as Exhibit A to the GUC Trust Approval Motion (the "Settlement Agreement").

2

Agreement that permits the AAT to ignore claims that it deems "speculative," or that enables this Court to conclude that Plaintiffs could not be "potential future beneficiaries of the AAT." That would require significant litigation, which New GM, Plaintiffs, and the GUC Trust have sought to avoid by entering into the Global Settlement.

4.  Third, the centerpiece of the AAT's argument is that Plaintiffs' claims are unlikely to be large enough to entitle *individual* Plaintiffs to meet the $25 minimum distribution threshold in the Avoidance Trust Agreement. This argument is mere speculation by the AAT as to the merits of Plaintiffs' claims, something that this Court should not decide at this stage. Further, the AAT *presumes* that Plaintiffs would not have allowed *class claims*, which could, on a class-wide basis, exceed the $8,000 threshold required to receive a $25 distribution from the AAT. Notably, Section 5.11 of the Plan provides that an allowed class claim will be treated as "a single Claim" for purposes of distributions under the Plan. The AAT's argument that this somehow violates the Rules Enabling Act is frivolous; the minimum distribution provision in the Avoidance Trust Agreement is not a "substantive right" provided under law, and a fundamental purpose of class actions is to provide relief to individuals whose claims are too small to litigate individually.

5.  In sum, the AAT cannot just ignore Plaintiffs' claims, especially where those claims are being expressly preserved as against the AAT pursuant to the Global Settlement. Before making any distribution, the AAT must, at a minimum, establish an appropriate reserve for Plaintiffs' claims, as required under the Avoidance Trust Agreement. Tellingly, the AAT continues to ignore the reserve provisions of the Avoidance Trust Agreement.

6.  Finally, as it did with the prior settlement, the Court should defer consideration of the Motion until the Global Settlement becomes effective. The AAT's arguments require the Court to make numerous findings regarding Plaintiffs' claims, including, for example, whether Plaintiffs

3

could certify a class, whether individual Plaintiffs or a class could prove claims in excess of $8,000, and whether Plaintiffs could be "potential future beneficiaries" under the Avoidance Trust Agreement. Certain of these issues, such as class certification, will be addressed, at least in part, by the MDL Court in connection with the Global Settlement, and the Court will not know how the MDL Court has handled such issues until after the final hearing on the Global Settlement. Further, issues concerning the merits of Plaintiffs' claims are equally applicable to the GUC Trust. Until the effective date of the Global Settlement, at which time Plaintiffs will release their claims against the GUC Trust (but not the AAT), the Court cannot know whether it may need to address these issues again. For example, in the unlikely event that the Global Settlement were not approved on a final basis by the MDL Court, the GUC Trust would presumably continue to litigate Plaintiffs' claims before this Court, raising the same issues that the AAT implicitly raises in the Original Motion. Accordingly, to the extent the Court is prepared to address the merits of Plaintiffs' claims in connection with the AAT's requested distribution, it should do so only after the MDL Court has fully considered the Global Settlement and the issues raised therein, and once it is certain that it need not later address the same or similar issues regarding the GUC Trust (*i.e.*, after the Global Settlement is final and effective).

## REPLY

### A. Objections to the Original Motion Are Not Moot.

7. The AAT suggests that Plaintiffs' objections to the Original Motion are moot because they have been "superseded by events." (Br. 5.) Notably, the AAT does not make this argument with regard to New GM's objections, nor could it.[3] New GM's Objection to the Original

---

[3] *See Objection and Reservation of Rights of General Motors LLC with Respect to Motion of Avoidance Action Trust for Entry of an Order Approving the Proposed Distribution Plan* (the "Objection") [ECF. No. 14572], filed on July 29, 2019.

4

Motion raised a number of issues that remain plainly at issue today, including the AAT's obligation to maintain a proper disputed claims reserve for Plaintiffs' claims, as required under the Avoidance Trust Agreement, and the AAT's inability to ignore Plaintiffs' claims. (Obj. 20-22.)[4]

8. In any event, the AAT is wrong to suggest that recent events have bolstered its attempts to distribute all of its assets. The opposite is true. Under the prior proposed settlement being considered in July 2019, the AAT would have received a full and final release from Plaintiffs and the class contemplated under that settlement. Still, the Court did not approve the proposed distribution, at least partly due to the uncertainty regarding whether that settlement could be approved following Judge Furman's August 2019 summary judgment decision.[5] In other words, the risk that the proposed settlement would fail—and that Plaintiffs would therefore continue to pursue claims against the AAT and/or the GUC Trust—informed the Court's decision to defer authorizing the distribution. Otherwise, as New GM and the Plaintiffs argued, Plaintiffs would potentially be left pursuing claims against two trusts with no, or insufficient, remaining assets.

9. Hindsight confirms the Court's wisdom. The proposed settlement was terminated in September 2019. Had the Court permitted the GUC Trust and the AAT to distribute nearly all of their assets one month earlier, it is unlikely that the GUC Trust would have subsequently engaged with Plaintiffs and New GM in meaningful settlement negotiations, similar to those that led, ultimately, to the Global Settlement.

---

[4] New GM also objected to the Original Motion on the basis that the AAT took the position that Plaintiffs could not be beneficiaries of the AAT because their claims were not filed on or before March 29, 2011. (Obj. 9-12.) The AAT subsequently disclaimed any reliance on this interpretation of the Avoidance Trust Agreement. *See Motors Liquidation Company Avoidance Action Trust's Omnibus Response to Objections* (the "Original Reply") [ECF No. 14598], filed on Aug. 9, 2019, at ¶¶ 12, 19.

[5] *See* Aug. 12, 2019 Hr'g Tr. p. 22 ("The Court: So don't tell me that I ought to approve excess distributions to all allowed claims when your motion to approve a class settlement is pending.").

5

10. While circumstances have changed substantially since August 2019, they have done so in a way that *heightens* concerns over the AAT's proposed distribution, rather than *moots* those concerns. Pursuant to the Global Settlement, Plaintiffs and New GM are expressly preserving all claims against the AAT, which has chosen not to settle with Plaintiffs. Pursuant to the Plan, the assets of the Old GM estate were split into two trusts (the GUC Trust and the AAT), and unsecured creditors of Old GM were entitled to recoveries from both sources. Plaintiffs assert that they have significant claims against Old GM and therefore should be able to recover from *both* the GUC Trust and the AAT. Unfortunately, only the GUC Trust is a party to the Global Settlement, and therefore Plaintiffs are only releasing the GUC Trust thereunder, while preserving claims against the AAT and the Old GM estate (solely to the extent recoverable from the AAT).

11. Permitting the AAT to distribute all of its remaining assets now amounts to a *de facto* dismissal of Plaintiffs' claims as against the AAT, even though such claims are preserved under the Global Settlement. Permitting the AAT's distribution would also reward the AAT's tactic of "free-riding" on the back of a settlement funded by other parties. The Court should not reward that litigation tactic. Instead, the same concern that existed in August 2019—that a "distribution of all remaining proceeds" would prejudice Plaintiffs' ability to pursue claims against the AAT—is all but certain here.

12. Approval of the AAT's proposed distribution now would have other significant consequences. When negotiating the Global Settlement, New GM and the GUC Trust looked to the AAT to bridge a gap to resolve the amount demanded by Plaintiffs. The parties to the Global Settlement ultimately concluded that the AAT's participation should not delay finalizing an otherwise global deal, and New GM therefore agreed to contribute additional amounts on the condition that Plaintiffs and New GM split any future recoveries from the AAT. Authorizing the

6

AAT distribution now would foreclose the possibility that New GM might be reimbursed, at least partially, for picking up a larger share of the Global Settlement. In addition, an immediate distribution would undermine the possibility that the AAT might still become a party to the Global Settlement before notice is sent to class members, and therefore undermine the possibility of a truly global resolution of Plaintiffs' claims and a cessation of litigation in this Court.

### B. New GM Has Standing To Oppose the Original Motion.

13. Although the purpose of having the parties submit supplemental briefing was to address issues not previously briefed for the Court, the AAT's Supplemental Brief repeats the very same arguments that it made in its Original Reply concerning New GM's standing. This issue was addressed in New GM's Objection and considered at the August 2019 hearing, and therefore New GM will not repeat its past arguments.[6] New GM has a substantial interest in ensuring that Plaintiffs, to the extent they have valid claims, receive the maximum possible recovery in these chapter 11 cases, including from the AAT.

14. As a result of the Global Settlement, New GM's financial interest has increased further. As discussed above, because the AAT refused to contribute to a settlement of Plaintiffs' claims,[7] New GM was effectively forced to increase its contribution. In recognition of this, the Global Settlement provides that any recovery Plaintiffs obtain from the AAT will be split equally between Plaintiffs and New GM. (Settlement Agreement ¶ 81(a).) Accordingly, New GM has a direct financial stake in ensuring that Plaintiffs, to the extent they hold valid claims, may recover from the AAT, and therefore have standing to ensure that the AAT does not distribute all of its

---

[6] *See* Aug. 12, 2019 Hr'g Tr. p. 33 ("The Court: [. . .] I don't think where I am in my thinking would change one bit whether New GM has standing or doesn't have standing.").

[7] *See AAT Letter to Court* [ECF No. 14631], filed Oct. 28, 2019 (stating that AAT "advised counsel that the AAT would not be offering to pay money to the ELPs").

7

assets now. *See, e.g., In re Stone Barn Manhattan LLC*, 405 B.R. 68, 74 (Bankr. S.D.N.Y. 2009) ("[A] pecuniary interest directly affected by the bankruptcy proceeding provides standing under § 1109(b).").

    **C.    The AAT Cannot Ignore Plaintiffs' Claims.**

15.    At bottom, the AAT argues that it should be permitted to distribute all of its assets because Plaintiffs' claims are "speculative" and not "viable." It argues that Plaintiffs cannot be "potential future beneficiaries of the AAT," and that even if Plaintiffs could be beneficiaries, they would not be entitled to receive distributions under the Avoidance Trust Agreement because it is a "practical impossibility" that individual Plaintiffs' claims would exceed $8,000 entitling them to a minimum distribution of $25.

16.    These arguments lack any foundation in the Plan or the Avoidance Trust Agreement, and amount to nothing more than the AAT's assessment—rather than a final judgment—of the merits of Plaintiffs' claims. While New GM shares the AAT's overall assessment of Plaintiffs' claims, that is not a suitable basis, on the present record, to permit the AAT to distribute all of its assets. The Court need look no further than the Global Settlement, pursuant to which New GM is paying $70 million (plus up to $34.5 million in attorney's fees) and the GUC Trust is paying $50 million to resolve Plaintiffs' claims. Every argument that the AAT makes could also be made by the GUC Trust (and, with limited exceptions, New GM). Indeed, although Judge Furman's August 2019 summary judgment opinion undoubtedly cast Plaintiffs' claims into serious doubt, it is noteworthy that the GUC Trust has agreed to *increase* the amount it would pay to settle Plaintiffs' claims from $13.7 million under the prior settlement to $50 million under the Global Settlement.

### 1. The AAT Cannot Ignore Plaintiffs' Claims On the Basis that They Are Speculative.

17. Nothing in the Plan, the Avoidance Trust Agreement, or the Bankruptcy Code permits the AAT to ignore Plaintiffs' claims simply because the AAT believes that Plaintiffs' claims are speculative. The AAT has not pointed to any such provision. Plaintiffs' claims undoubtedly constitute Disputed General Unsecured Claims, which is evident by the fact that the GUC Trust (with, until very recently, the support of the AAT) has repeatedly sought to settle such claims over the past three years.

18. The AAT asserts, without support, that Plaintiffs are not "potential future beneficiaries of the AAT." (Br. 2.) Later in its own Brief, however, the AAT refutes this very assertion by explaining precisely how the Plaintiffs could become potential beneficiaries of the AAT:

> For the Economic Loss Plaintiffs to assert a claim against the AAT, first the Economic Loss Plaintiffs would have to have a class (or classes) certified. Next, the Economic Loss Plaintiffs would have to be permitted to file a late claim. Then, if it were able to do so, the claim would have to be estimated. Further, given Judge Furman's ruling that the Economic Loss Plaintiffs failed to come forward with a viable benefit-of-the-bargain theory of damages (a ruling that was adhered to on reconsideration), the AAT believes that the Economic Loss Plaintiffs' ability to estimate their claims in a manner that would permit payment by the AAT is highly questionable and would be cost prohibitive for the Economic Loss Plaintiffs to pursue.
>
> Any one of these steps could take years and is extremely unlikely to yield a distribution from the AAT to the Economic Loss Plaintiffs.

(Br. 12.) While it may be costly and take significant time to resolve these issues, the AAT cannot argue that Plaintiffs are somehow *prohibited* from ever having claims against the AAT, or that such claims are *impossible*. Instead, the AAT asks this Court, in the context of a distribution motion, to find that Plaintiffs' claims lack any merit, as the AAT believes.

9

19. Ultimately, as the AAT acknowledges, there are a number of disputes that would have to be finally resolved before the Court could conclude that Plaintiffs' claims are not viable as a matter of law. For example, among other issues: (i) whether Plaintiffs can assert class claims, (ii) the effect of prior rulings in the MDL proceedings on the Bankruptcy Court, (iii) whether Plaintiffs can introduce new expert testimony to support Plaintiffs' claims consistent with Judge Furman's August 2019 decision, and (iv) the merits of Plaintiffs' claims in 51 different jurisdictions. The existence of these issues, many of which remain unresolved, are evidence of the "disputed" nature of Plaintiffs' claims. They also make the benefits of settling obvious.

### 2. The AAT Cannot Ignore Plaintiffs' Claims Based on the Minimum Distribution Threshold in the Avoidance Trust Agreement.

20. Perhaps recognizing that it cannot dismiss Plaintiffs' claims by fiat, the AAT places significant weight on Section 5.6 of the Avoidance Trust Agreement, which provides in relevant part:

> [N]o Cash payment in an amount less than $25 shall be made by the Trust Administrator to any holder of an Allowed General Unsecured Claim or Unit under any circumstance; *provided* that the Trust Administrator shall carry the entitlement of such holder of an Allowed General Unsecured Claim or Unit to such amount on its books and records . . .

21. The AAT fails to quote the *proviso* in Section 5.6 (requiring the AAT to "carry the entitlement" of a small claim holder on the AAT's books and record), which completely undercuts the AAT's argument that it can *disregard* claims that it *believes* will fall short of the distribution threshold. Similarly, the AAT fails to explain how this provision has any application at all to Plaintiffs' *disputed* claims. On its face, Section 5.6 applies only to claims that are already allowed, while saying nothing about the treatment of *disputed* claims. Ultimately, the AAT's position appears to be that Section 5.6—plainly an administrative provision intended to reduce the administrative cost to the AAT of sending *de minimis* distributions—permits the AAT to disregard claims that it speculates may fall short of the threshold without first having to object to, estimate,

10

or litigate the claim in question. That interpretation has no basis in the Plan or the Avoidance Trust Agreement.[8]

22. The AAT's argument suffers a more fundamental flaw: it assumes that Plaintiffs could not assert a class claim. While New GM agrees that individual Plaintiffs are extremely unlikely to prove damages in excess of $8,000; it is another question altogether whether a class potentially comprising millions of individuals could collectively assert claims in excess of $8,000. If Plaintiffs could certify a class claim to recover from the AAT, that claim could quite possibly exceed the minimum distribution threshold. Critically, Section 5.11 of the Plan provides that "[i]f a class proof of claim is Allowed, it *shall* be treated as a single Claim for purposes of Article V [Provisions Governing Distributions] of this Plan."[9] Accordingly, for the AAT's "minimum distribution" argument to prevail, this Court must find either that (i) Plaintiffs cannot certify a class and assert a class proof of claim, or (ii) such class claim would total less than $8,000 in the aggregate.

23. The AAT attempts to evade this issue by arguing that Plaintiffs cannot use Rule 23 as an "end-run" around Section 5.6 of the Avoidance Trust Agreement, and doing so would violate the Rules Enabling Act. (Br. 11.) That contention suffers several fatal flaws. First, to the extent

---

[8] Notably, the GUC Trust Agreement also contains an identical minimum distribution threshold of $25. *See* GUC Trust Agreement § 5.6(a)(i).

[9] Class claims previously allowed in this case have, in fact, been treated as a single claim. *See, e.g.*, *Order Pursuant to Fed. R. Bankr. P. 9019 and Fed. R. Civ. P. Rule 23 Approving Agreement Resolving Proof of Claim No. 51095 and Implementing Modified Dex-Cool Class Settlement*, entered on May 4, 2011 [ECF No. 10172], at 3 ("ORDERED that the Resubmitting Participating Class Members shall be awarded an allowed general unsecured claim in the amount of $2,205,570.00 (the 'Total Allowed Unsecured Claim') . . . and it is further ORDERED that Co-Lead Class Counsel is specifically authorized and directed to administer the proceeds resulting from the Total Allowed Unsecured Claim and otherwise make *pro rata* distributions of the cash proceeds to the Resubmitting Participating Class Members in accordance with the Agreement"); *Order Pursuant to Fed. R. Bankr. P. 9019 and Fed. R. Civ. P. Rule 23 Approving Agreement Resolving Proof of Claim No. 44887 and Implementing Class Settlement*, entered on Aug. 11, 2010 [ECF No. 6622], at 3 ("ORDERED that an award of a general unsecured claim in the amount of $554,050 to the Participating Soders Class Members is fair and reasonable"). The claims register maintained in this case treats these class claims as single claims.

there is a conflict between the Plan (which treats a class claim as one claim for purposes of distributions under the Plan) and the Avoidance Trust Agreement (which implements the distribution mechanics of the Plan, including the minimum distribution threshold), the provisions of the Plan must prevail.[10] The AAT's argument is therefore backwards: the Avoidance Trust Agreement cannot, by operation of Section 5.6, limit the rights of putative class members set forth in the Plan.

24. But even if the Court were to consider the AAT's arguments under the Rules Enabling Act, it would find them meritless. There is no violation of the Rules Enabling Act because, as in *Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.*, 559 U.S. 393 (2010), there are no substantive rights at issue here. Section 5.6 of the Avoidance Trust Agreement is an administrative provision that avoids the costs and administrative burdens of requiring the AAT to send *de minimis* distributions to its beneficiaries. Further, the AAT's baseless claim seeks to deprive Plaintiffs of relief under Rule 23, defeating the purpose of the rule.

25. The facts of *Shady Grove* demonstrate the absurdity of the AAT's argument. In *Shady Grove*, the Court held that a New York state law that would have *precluded* a class action under Rule 23 did not affect any substantive right. *See id*. at 408–409. Specifically, the state law prevented class actions for suits to recover penalties. *See id.* at 401. However, the Court determined that this law did *not* involve a substantive right and that even though "the *consequence* of excluding certain class actions may be to cap the damages a defendant can face in a single suit, [] the law itself alters only procedure." *Id.* at 409; *see also id.* at 433 (Stevens, J., concurring) ("The text of CPLR § 901(b) expressly and unambiguously applies not only to claims based on

---

[10] *See* Avoidance Trust Agreement § 13.8 (providing that provisions of the Plan supersede provisions of the Avoidance Trust Agreement).

New York law but also to claims based on federal law or the law of any other State . . . . It is therefore hard to see how § 901(b) could be understood as a rule that, though procedural in form, serves the function of defining New York's rights or remedies."). As Justice Stevens acknowledged "the bar for finding an Enabling Act problem is a high one." *Id.* at 432 (Stevens, J., concurring).

26. There is no "substantive right" at issue here. There is not even a state law at issue, as there was in *Shady Grove*. The provision in question is from the Avoidance Trust Agreement, and the AAT has cited no authority, and New GM is aware of none, holding that an administrative, contractual provision in a trust agreement, such as the one here, grants a substantive right. This is evident from the language of the Avoidance Trust Agreement itself, which simply states that the AAT will not distribute cash payments less than $25. This does not involve any issue of substantive law (or any law), and is the exact type of procedural issue that the Court in *Shady Grove* stated did not override Rule 23.

27. In addition, the AAT's argument ignores the fundamental purpose of class actions. Class actions are specifically designed to provide a mechanism for monetary relief for individuals whose claims are "too small to warrant the expense and burden of initiating separate actions." McLaughlin on Class Actions § 1:1 (16th ed.); *Phillips Petroleum Co.* v. *Shutts*, 472 U.S. 797, 809 (1985) ("Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually. For example, this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available."). It is notable that in *Slobodian* v. *IRS (In re Net Pay Solutions, Inc.)*, 822 F.3d 144 (3d Cir. 2016), which the AAT cites, the court explained that allowing the trustee to aggregate multiple transfers to eliminate the minimum threshold in § 547(c)(9) would render it "ineffective"

13

since it was designed to *protect* individual creditors. Similarly, the AAT's actions here would obviate the purpose of Rule 23 and the protection of class action relief for Plaintiffs. Indeed, since most chapter 11 plans include a minimum distribution threshold, the AAT's argument, if accepted, would effectively nullify the use of class proofs of claim in bankruptcy. In sum, since there is no substantive right at issue here, there is no merit to the AAT's argument, and no violation of the Rules Enabling Act.

### D. The AAT Cannot Make a Distribution Without Establishing a Reserve for Plaintiffs' Claims.

28. Rather than speculate on the merits of Plaintiffs' claims or whether they might satisfy the minimum distribution thresholds in the Avoidance Trust Agreement, the AAT should instead comply with the disputed claims reserve requirements set forth in the Avoidance Trust Agreement.

29. Specifically, the AAT "shall . . . retain sufficient GUC Distributable Trust Assets as the Trust Administrator shall determine . . . as would be distributable (I) to all holders of Disputed General Unsecured Claims at the time outstanding as if all Disputed General Unsecured Claims were allowed at the Maximum Amount . . . ." (Avoidance Trust Agreement § 5.5(a).) Moreover, if a Disputed General Unsecured Claim becomes an Allowed General Unsecured Claim, then the AAT is required to distribute the "pro rata amount of GUC Trust Distributable Assets that the holder of such Resolved Allowed General Unsecured Claim would have received had such Resolved Allowed General Unsecured Claim been an Initial Allowed General Unsecured Claim." (*Id*. § 5.3(b)(i).) Finally, Section 5.3(d) of the Avoidance Trust Agreement explains the underlying intent of the reserve provisions:

> For the avoidance of doubt, it is intended that the distributions to be made to holders of Resolved Allowed General Unsecured Claims in accordance with this Section 5.3 shall provide such holders, as nearly as possible, with the exact same amount

14

of distributions as if such holders had been holders of Initial Allowed General Unsecured Claims.

It is indisputable that the Avoidance Trust Agreement seeks to preserve the AAT's assets to ensure *pro rata* distributions to all holders of Allowed General Unsecured Claims, regardless of when such claims become Allowed.[11]

30. The AAT's only explanation for why it need not establish an appropriate reserve for Plaintiffs' disputed claims is that Plaintiffs' claims have not been "filed" and therefore do not fall within the definition of "Disputed General Unsecured Claims" in the Avoidance Trust Agreement. (Br. 9.) That argument is wrong for at least three reasons.

31. First, Plaintiffs' Late Claim Motions have been pending for several years, and the AAT should not be permitted to distribute all of its assets, effectively mooting Plaintiffs' claims, based solely on a narrow interpretation of the definition of "Disputed General Unsecured Claims" that excludes *pending* requests to file late claims for which the AAT is on notice.

32. Second, the Avoidance Trust Agreement defines "Disputed General Unsecured Claims" as "General Unsecured Claims against the Debtors that are Disputed (as defined in the Plan) *as of the Initial GUC Record Date* . . . ." (Avoidance Trust Agreement § 1.1(kk) (emphasis added).) The AAT concedes that the "Initial GUC Record Date has *not* been established by the AAT Trust Administrator pending approval of the AAT Distribution Motion by this Court. *After Court approval of the Distribution Plan*, the Initial GUC Record Date will be the last day of the calendar quarter before the initial distribution date." (Original Reply 4 (emphasis added).) Accordingly, whether Plaintiffs' claims constitute Disputed General Unsecured Claims must be

---

[11] *See also* Plan § 7.2 (requiring AAT to "withhold from the property to be distributed to holders of beneficial interests in . . . the Avoidance Trust" an amount sufficient to pay Disputed General Unsecured Claims in the event they later become Allowed General Unsecured Claims).

15

tested as of the Initial GUC Record Date, which has not yet occurred. Further, it is possible that Plaintiffs' Late Claims Motion will be resolved, and Plaintiffs' claims "filed," *before* such future Initial GUC Record Date.

33. Third, pursuant to the Global Settlement, the Plaintiffs' Late Claims Motions will be resolved, the GUC Trust will consent to the late filing of Plaintiffs' claims, and such claims will be registered as "Disputed General Unsecured Claims" on the claims register, though recoverable solely from the AAT. (Settlement Agreement ¶¶ 142 & 143.) Pursuant to that certain *Order Disallowing Certain Late Filed Claims* entered on February 8, 2012 [ECF No. 11394], late claims may be filed either upon order of the Court (as Plaintiffs have sought via the Late Claims Motion for several years) or upon "the written consent of the GUC Trust." Accordingly, upon the final effective date of the Global Settlement, Plaintiffs' claims will be "filed" and registered as "Disputed General Unsecured Claims," and the AAT must hold a reserve for such claims.

## CONCLUSION

34. Having failed to consensually resolve Plaintiffs' claims, the AAT now seeks to distribute all of its assets so that it can effectively render those claims moot. There is no basis in the Plan or the Avoidance Trust Agreement for the AAT to unilaterally disregard claims it deems meritless. Nor should this Court condone such request. Absent an appropriate reserve, approval of the proposed distribution would deplete a source of potential recovery available to the Plaintiffs. Should the Global Settlement be approved on a final basis, the AAT's assets would be the sole remaining source of potential recovery for Plaintiffs' claims, claims that are expressly preserved under the Global Settlement.

WHEREFORE, for all of the reasons set forth herein and in New GM's Original Objection, New GM respectfully requests that this Court deny the Original Motion and grant such other and further relief as the Court may deem just and proper.

Dated:   March 27, 2020
         New York, New York

/s/ Paul M. Basta
Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
David Giller
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

*Counsel for General Motors LLC*