**BROWN RUDNICK LLP**
Edward S. Weisfelner
Kenneth J. Aulet
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
eweisfelner@brownrudnick.com
kaulet@brownrudnick.com

**STUTZMAN, BROMBERG, ESSERMAN**
**& PLIFKA, A PROFESSIONAL**
**CORPORATION**
Sander L. Esserman
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch*
*Plaintiffs and Certain Non-Ignition Switch*
*Plaintiffs in the Bankruptcy Court*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
:
In re:                                                  :          Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,                     :          Case No.: 09-50026 (MG)
   f/k/a General Motors Corp., et al.,   :
:
      Debtors.            :          (Jointly Administered)
------------------------------------------------------------X

**RESPONSE OF THE ECONOMIC LOSS PLAINTIFFS TO THE MOTORS**
**LIQUIDATION COMPANY AVOIDANCE ACTION TRUST'S SUPPLEMENTAL**
**BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR ENTRY OF AN ORDER**
**APPROVING THE DISTRIBUTION PLAN TO THE AVOIDANCE ACTION TRUST'S**
**BENEFICIARIES**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................2

RESPONSE............................................................................................................4

    I.   The Economic Loss Plaintiffs' Objections Are Not Moot...................................4

    II.  Due Process Violations With Respect to the Economic Loss Plaintiffs Undercut the AAT's Position ......................................................................................5

    III. The $25 Minimum Distribution Provisions Does  Not Affect the Rights of the Economic Loss Plaintiffs ...........................................................................7

CONCLUSION......................................................................................................11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re General Motors LLC Ignition Switch Litigation*,
  407 F. Supp. 3d 212 (S.D.N.Y. 2019)....................................................................2,8

*In re Motors Liquidation Co.*, 529 B.R. 510, 525, 574, 583 (Bankr. S.D.N.Y.
  2015), *aff'd in part and rev'd in part sub nom. Elliott v. General Motors LLC*
  (*In re Motors Liquidation Co.*), 829 F.3d 135, 166 (2d Cir. 2016) ......................5, 7

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393, 408 (2010)...........................................................................................8

The Economic Loss Plaintiffs[1] hereby file this Response (the "Response") to the *Motors Liquidation Company Avoidance Action Trust's Supplemental Brief In Further Support Of Its Motion For Entry Of An Order Approving The Distribution Plan To The Avoidance Action Trust's Beneficiaries* (the "Supplemental Brief" or "Supp. Br.") (Bankr. Dkt. No. 14681), and in further support of their Objection (Bankr. Dkt. No. 14571) to the AAT Distribution Motion (Bankr. Dkt. No. 14552), and respectfully state as follows:[2]

## PRELIMINARY STATEMENT

1.     The Supplemental Brief of the Motors Liquidation Company Avoidance Action Trust (the "AAT") ignores and, essentially, asks this Court to thwart the Economic Loss Plaintiffs' due process rights simply because the landscape in which the parties have been litigating and attempting to negotiate a consensual resolution of the Economic Loss Plaintiffs' claims has been altered.  The AAT claims that the termination of a proposed settlement between the Economic Loss Plaintiffs and the GUC Trust moots the Economic Loss Plaintiffs' opposition to the AAT Distribution Motion.  It does not.  In point of fact, a new settlement agreement among the Economic Loss Plaintiffs, the GUC Trust, the Participating Unitholders and New GM (the "Global Settlement") has only recently been finalized and filed with both this Court[3] and the MDL Court.

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings given to them in *The Economic Loss Plaintiffs' Omnibus Objection to (I) Motion of Motors Liquidation Company Avoidance Action Trust for an Order Approving the Distribution Plan; (II) Motion of Wilmington Trust Company, as GUC Trust Administrator, for an Order Authorizing the Expedited Payment of Excess GUC Distributable Assets; and (III) Motion of Wilmington Trust Company, as GUT Trust Administrator, for an Order Authorizing the Expedited Distribution to Holders of 502(H) Claims*, filed July 29, 2019 [Bankr. Dkt. No. 14571] (the "Objection").

[2]    The Economic Loss Plaintiffs join in and adopt the arguments in the *Reply of General Motors LLC With Respect to Motors Liquidation Company Avoidance Action Trusts' Supplemental Brief in Further Support of its Motion for Entry of an Order Approving the Proposed Distribution Plan*, filed March 27, 2020 [Bankr. Dkt. No. 14692] (the "New GM Reply").

[3]    *See Motion for Entry of an Order (I) Approving the GUC Trust Administrator's Actions; (II) Approving the Settlement Agreement and the Release Agreement Pursuant to Federal Rule of Bankruptcy Procedure 9019; and (III) Authorizing the Reallocation of GUC Trust Assets*, filed March 27, 2020 [Bankr. Dkt. No. 14691].

2.      Furthermore, the AAT ignores the 2009 due process violations suffered by the Economic Loss Plaintiffs and attempts to recast these violations as dilatory conduct by the Economic Loss Plaintiffs.  To be clear, the Economic Loss Plaintiffs have diligently sought to resolve the issues that resulted from the due process violations they suffered and are implicated by the AAT's request to distribute assets.  There is, quite simply, no basis to raze the Economic Loss Plaintiffs' due process rights with respect to the AAT assets merely because affording the Economic Loss Plaintiffs' due process delays AAT's requested distribution of such assets.

## BACKGROUND

3.      When the AAT filed the AAT Distribution Motion on July 8, 2019 (Bankr. Dkt. No. 14552), the Settlement Motions (*see* Bankr. Dkt. Nos. 14408, 14409), seeking approval of the proposed settlement agreement between the Economic Loss Plaintiffs and the GUC Trust and Participating Unitholders, were pending before this Court.

4.      That proposed settlement provided that the Economic Loss Plaintiffs would waive and release any rights or claims to the assets of the AAT in exchange for the GUC Trust's agreement to seek issuance of Adjustment Shares for the benefit of the Economic Loss Plaintiffs. Thus, when the AAT Distribution Motion was filed, the Economic Loss Plaintiffs did not know whether they would be: (a) waiving their rights to assets of the AAT; or (b) if the settlement was not approved, forced to litigate certain issues, such as their ability to file a late class proof of claim.  In light of this uncertainty, the Economic Loss Plaintiffs filed a limited objection (Bankr. Dkt. No.14571) to the AAT Distribution Motion, requesting that any distributions of the AAT assets be delayed until the adjudication of the Settlement Motions.

5.      On August 6, 2019, Judge Furman issued a decision in the MDL.  *See In re General Motors LLC Ignition Switch Litigation*, 407 F. Supp. 3d 212 (S.D.N.Y. 2019).

6.      At a hearing on August 12, 2019, the Court approved the AAT's request to distribute 30% of the trust proceeds, but deferred approval of distributions of the remaining proceeds to holders of Allowed General Unsecured Claims.

7.      On August 22, 2019, the Economic Loss Plaintiffs filed a letter informing this Court that they had filed a motion for reconsideration of Judge Furman's August 6th decision (Bankr. Dkt. No. 14614).

8.      On September 25, 2019, the GUC Trust and Participating Unitholders informed the Court that the proposed settlement had been terminated and the Settlement Motions were moot (Bankr. Dkt. No. 14622).

9.      After the settlement was terminated, the Economic Loss Plaintiffs, the GUC Trust, Participating Unitholders, and New GM continued to confer to find a new path forward that would allow for the expeditious resolution of issues that would have been resolved by the settlement.  On October 22, 2019, the GUC Trust submitted a letter updating the Court regarding the status of the parties' meet and confers and proposing a briefing schedule for "threshold issues" now ripe for adjudication by the Court (Bankr. Dkt. No. 14625).

10.      The Economic Loss Plaintiffs did not oppose the briefing proposed by the GUC Trust, but filed a letter with the Court the following day to provide additional relevant background and to inform the Court that the Economic Loss Plaintiffs had recently initiated communications with counsel to the AAT in the hopes that the AAT would participate in and contribute to a global settlement (Bankr. Dkt. No. 14627).

11.      On October 28, 2019, over two months after Judge Furman issued his August 6th decision, the AAT filed a letter arguing that Judge Furman's decision in the MDL weighed in

favor of allowing the AAT to move forward with its requested distribution (Bankr. Dkt. No. 14631).

12.     The Court held status conferences on December 10, 2019 and February 5, 2020. At the February 5th conference, the Court set a briefing schedule for supplemental briefing on the AAT Distribution Motion and directed the AAT to participate in mediation with the Economic Loss Plaintiffs and New GM, which took place on February 14, 2019 but was not successful.

## RESPONSE

### I.    The Economic Loss Plaintiffs' Objections Are Not Moot

13.     As an initial matter, the AAT's argument that the termination of the proposed settlement between the Economic Loss Plaintiffs and GUC Trust and withdrawal of the Settlement Motions somehow moots the Economic Loss Plaintiffs' objections to the AAT Distribution Motion is completely backwards. *See* Supp. Br. ¶¶ 15-19.  The termination of the settlement and Settlement Motions only heightens the Economic Loss Plaintiffs' concerns regarding the AAT's proposed distribution and the importance of addressing these concerns with due process.

14.     As the AAT acknowledges, pursuant to the contemplated settlement between the Economic Loss Plaintiffs and the GUC Trust, the Economic Loss Plaintiffs would have waived any rights to the AAT assets upon approval of the settlement. *Id.* at ¶ 15.  Thus, if the settlement had been *approved*, the Economic Loss Plaintiffs would have no claim to the assets of the AAT and their interest in, and objection to, distributions of the AAT assets would be moot.

15.     But, this is not what occurred.  Instead, the contemplated settlement never became effective, and so the Economic Loss Plaintiffs' rights with respect to the assets of the AAT trust have not been waived and remain unadjudicated.  All the more reason to, in the interest of justice

4

and to ensure due process, hold off on granting the AAT's request to distribute assets until the Economic Loss Plaintiffs' rights with respect to those assets crystalize.  The termination of the contemplated settlement between the Economic Loss Plaintiffs and the GUC Trust does not "supersede" or "moot" the Economic Loss Plaintiffs' request to delay distributions – rather, it ripens and bolsters this request.

16.     Indeed, the new Global Settlement among the Economic Loss Plaintiffs, the GUC Trust, the Participating Unitholders, and New GM expressly *preserves* the Economic Loss Plaintiffs' claims against the AAT.  Thus, if the Global Settlement is finalized, as contemplated, it will have direct implications for the AAT and its ability to ignore the rights of the Economic Loss Plaintiffs.  At a minimum, this Court should consider the Global Settlement before adjudicating the AAT Distribution Motion.

## II.    Due Process Violations With Respect to the Economic Loss Plaintiffs Undercut the AAT's Position

17.     The AAT's contention that the Economic Loss Plaintiffs lack any viable claim to distributions from the assets of the AAT is also without merit.

18.     The AAT argues that, because the Economic Loss Plaintiffs never filed a claim in the Old GM Bankruptcy, they "are not holders of Allowed or Disputed General Unsecured Claims" entitled to distributions from the AAT.  *See* Supp. Br. at ¶ 25.  This argument, however, completely ignores a critical fact: the Economic Loss Plaintiffs' failure to file a claim in the Old GM Bankruptcy was the result of a due process violation – namely, the Economic Loss Plaintiffs' were not provided with sufficient notice to enable them to file claims before the Bar Date.  Indeed, this Court held, and the Second Circuit affirmed, that certain of the Economic Loss Plaintiffs were not barred by the Bar Date Order and Sale Order *because* of this due process violation.  *See In re Motors Liquidation Co.*, 529 B.R. 510, 525, 574, 583 (Bankr. S.D.N.Y.

2015), *aff'd in part and rev'd in part sub nom. Elliott v. General Motors LLC* (*In re Motors Liquidation Co.*), 829 F.3d 135, 166 (2d Cir. 2016).

19.     The AAT's argument that the Economic Loss Plaintiffs have no right to AAT distributions because they lack status as holders of an Allowed or Disputed General Unsecured Claim – a status that was denied to them by virtue of a due process violation – is inconsistent with prior law of the case. *See id.*

20.     Just as certain of the Economic Loss Plaintiffs cannot be bound by the Bar Date Order and Sale Order because they did not receive adequate notice thereof, the constituent documents that the AAT relies upon to bar recovery by the Economic Loss Plaintiffs were entered without adequate notice to the Economic Loss Plaintiffs and, thus, cannot be enforced against them.

21.     In an attempt to bolster its meritless argument, the AAT insinuates that the Economic Loss Plaintiffs have been dilatory and "sat on their rights" with respect to seeking authority to file late claims. *See* Supp. Br. at ¶ 25. Nothing could be farther from the truth. The Economic Loss Plaintiffs have held off on seeking adjudication of the Late Claims Motions because they have been diligently working to reach a settlement that would obviate the need to adjudicate the issues set forth therein and, critically, seek recourse from the assets of the AAT.

22.     The present circumstances are not the result of some nefarious scheme by the Economic Loss Plaintiffs to stall resolution of the Late Claims Motions and the ability of the AAT to distribute assets, but rather the unpredictable series of events that unfolded and "changed the landscape" (*see* Bankr. Dkt. No. 14622) in which the parties were attempting to consensually resolve the Economic Loss Plaintiffs' claims. This changed landscape, however, is not, as the AAT suggests, a basis to forego the Economic Loss Plaintiffs' right to have the issues related to

their claims against the AAT resolved in accordance with due process.  As a consequence, and in the absence of a consensual resolution with the AAT, distribution of the AAT's assets must be delayed.

### III.    The $25 Minimum Distribution Provisions Does Not Affect the Rights of the Economic Loss Plaintiffs

23.    The AAT also contends that, even if the Economic Loss Plaintiffs held an Allowed General Unsecured Claim, they have no entitlement to any distribution from the AAT because the AAT Agreement "forbids the Trust Administrator from making any payment of less than $25 to any holder of an Allowed General Unsecured Claim." Supp. Br. at ¶ 27 (citing AAT Agreement § 5.6 (the "De Minimis Distribution Clause")). In particular, the AAT argues that, based on Judge Furman's recent ruling concerning the calculation of the Economic Loss Plaintiffs' damages, individual Economic Loss Plaintiffs will not be able to establish sufficient damages to be entitled to the minimum $25 distribution per claim (Supp. Br. at ¶¶ 28-29); and that, even if the Economic Loss Plaintiffs were certified as a class, they could not recover on an aggregated class claim against the AAT because of this restriction (Supp. Br. at ¶¶ 30-32).  This argument fails for multiple reasons.

24.    *First*, as explained above, the AAT Agreement, and the De Minimis Distribution Clause therein, were entered without due process as to the Economic Loss Plaintiffs.  The AAT Agreement, thus, cannot be enforced against the Economic Loss Plaintiffs, who were known creditors of Old GM, but deprived of notice and an opportunity to weigh in on documents and provisions that would adversely affect their rights in the future.  *Cf. In re Motors Liquidation Co.*, 529 B.R. at 525, 574, 583, *aff'd in part sub nom. Elliott*, 829 F.3d at 166.

25.    *Second*, Judge Furman's recent decision addressing the calculation of the Economic Loss Plaintiffs' damages has been appealed to the Second Circuit.  If Judge Furman's

restrictive measure of damages[4] is reversed on appeal, each Economic Loss Plaintiff likely can demonstrate a claim significantly in excess of what is required to satisfy the $25 threshold. Moreover, even if Judge Furman's decision is not ultimately reversed, the Economic Loss Plaintiffs may succeed in presenting an alternative damages model that would allow for recovery from the AAT notwithstanding the De Minimis Distribution Clause.

26.    *Finally*, AAT's argument that a class claim on behalf of the Economic Loss Plaintiffs (which would assuredly be more than the $25 threshold) is somehow an improper "end-run" around the De Minimis Distribution Clause is both legally and factually flawed. *See* Supp. Br. at ¶¶ 31-32. The AAT's argument is premised upon the incorrect proposition that the ability to aggregate legal liabilities into a single claim is a substantive change in rights. *See id.* It is not. In fact, *Shady Grove* – one of the few cases cited by the AAT (*see* Supp. Br. at ¶ 31) – squarely rejected the AAT's proposition, finding that the accumulation of legal liabilities into a single claim is *not* a substantive change in rights. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (finding that "rule allowing multiple claims . . . neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed"). The AAT has liability to the Economic Loss Plaintiffs, regardless of whether they proceed by individual or class claim, because the De Minimis Distribution Clause does not eliminate the AAT's *liability* to *de minimis* claimants. *See* AAT Agreement § 5.6 (requiring liabilities to *de minimis* claimants be tracked and reserves held for those claims). Thus, a class claim on behalf of the Economic Loss Plaintiffs would not impermissibly alter any substantive right. *See Shady Grove*, 559 U.S. at 408.

---

[4]    Judge Furman held that the proper measure of each Economic Loss Plaintiff's damages is the less of the cost of repairing the defective ignition switch or the difference between the fair-market value of the vehicle as warranted and the fair-market value of the vehicle sold, taking into account each Economic Loss Plaintiff's ability to mitigate damages. *See In re General Motors LLC Ignition Switch Litigation*, 407 F. Supp. 3d 212 (S.D.N.Y. 2019).

27.    In fact, the Plan explicitly provides that an allowed class proof of claim shall be treated as a single claim for purposes of the Plan provisions governing distributions and class claims previously allowed in this case have been treated as such.[5]  Thus, contrary to the AAT's argument, the De Minimis Distribution Clause does not bar any possible right of the Economic Loss Plaintiffs to AAT distributions: if the Economic Loss Plaintiffs can certify as a class and assert a class proof of claim that is in excess of $8,000 in the aggregate (likely given the number of Economic Loss Plaintiffs), the Economic Loss Plaintiffs would be entitled to a distribution from the AAT.

28.    The AAT complains about the "unfair" delay in distributing funds requested by the Economic Loss Plaintiffs (*see* Supp. Br. at ¶¶ 33-35);  but, the AAT's obligation to delay the distribution of funds under these circumstances is an obligation that comes directly from the AAT Agreement, which the AAT ironically argues precludes what the Economic Loss Plaintiffs request. *See* AAT Agreement §§ 5.5 (requiring AAT to retain sufficient assets to satisfy Disputed General Unsecured Claims outstanding if all such claims were to be allowed at the maximum amount), 5.6 (requiring the AAT to track liabilities to *de minimis* claimants and reserve funds for these claims).  Absent a settlement, the AAT cannot make any distributions unless and until it sets aside, at a minimum, reserves for those Economic Loss Plaintiffs that may subsequently

---

[5]    *See* Plan § 5.11; *see also Order Pursuant to Fed. R. Bankr. P. 9019 And Fed. R. Civ. P. Rule 23 Approving Agreement Resolving Proof Of Claim No. 51095 and Implementing Modified Dex-Cool Class Settlement*, entered on May 4, 2011 [ECF No. 10172], at 3 ("ORDERED that the Resubmitting Participating Class Members shall be awarded an allowed general unsecured claim in the amount of $2,205,570.00 (the 'Total Allowed Unsecured Claim') . . . and it is further ORDERED that Co-Lead Class Counsel is specifically authorized and directed to administer the proceeds resulting from the Total Allowed Unsecured Claim and otherwise make pro rata distributions of the cash proceeds to the Resubmitting Participating Class Members in accordance with the Agreement"); *Order Pursuant to Fed. R. Bankr. P. 9019 And Fed. R. Civ. P. Rule 23 Approving Agreement Resolving Proof Of Claim No. 44887 and Implementing Class Settlement*, entered on August 11, 2010 [ECF No.6622], at 3 ("ORDERED that an award of a general unsecured claim in the amount of $554,050 to the Participating Soders Class Members is fair and reasonable").

qualify for a non-*de-minimis* distribution. This is not "unfair" to the AAT and its beneficiaries; it's what's required under the AAT Agreement and due process.

*   *   *

29.    The AAT essentially acknowledges that the Economic Loss Plaintiffs *could*, if successful in what would admittedly be costly litigation, become beneficiaries of the AAT entitled to distributions therefrom (Supp. Br. at ¶¶ 34-35), but asks this Court to summarily find, on a distribution motion, that the Economic Loss Plaintiffs have no viable claim against the AAT and thus, no possible interest in the assets the AAT asks to distribute. This request flies in the face of the Economic Loss Plaintiffs' right to due process. As the AAT admits, in order for this Court to determine, as a matter of law, that the Economic Loss Plaintiffs lack any viable claims or entitlements against the AAT, the Court would need to decide a number of issues, including whether the Economic Loss Plaintiffs can assert a class claim, the impact of prior rulings in the MDL (including those on appeal), and whether the Economic Loss Plaintiffs can present an alternative damage theory consistent with Judge Furman's August 2019 decision in the MDL. The AAT cannot, consistent with due process and its contractual obligations, distribute assets until these actively disputed issues have been finally resolved through litigation or binding settlement.

## CONCLUSION

WHEREFORE, for all the reasons set forth herein, in the Objection, and in the New GM

Reply, the Economic Loss Plaintiffs respectfully request that the Court deny the AAT

Distribution Motion and grant such other and further relief as the Court deems just and proper.

Dated: March 27, 2020
New York, New York

Respectfully submitted,

*/s/ Edward S. Weisfelner*
Edward S. Weisfelner
Kenneth J. Aulet
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
kaulet@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs and Certain Non-Ignition Switch
Plaintiffs in the Bankruptcy Court*