Paul M. Basta
Kyle J. Kimpler
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

*Bankruptcy Counsel for General Motors LLC*

Richard C. Godfrey, P.C.
Wendy L. Bloom
Andrew Bloomer, P.C.
Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654-3406
Telephone:  (312) 862-2000
Facsimile: (312) 862-2200

*MDL 2543 Counsel for General Motors LLC*

Counsel for Additional Parties Listed on the
Signature Page

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, et al.,<br>f/k/a General Motors Corp., et al.,<br><br>                               Debtors. | Chapter 11<br><br>Case No. 09-50026 (MG)<br><br>(Jointly Administered) |
| In re:<br><br>GENERAL MOTORS LLC<br>IGNITION SWITCH LITIGATION<br><br>*This Document Relates To*<br>*All Economic Loss Actions* | No. 14-MD-2543 (JMF)<br>No. 14-MC-2543 (JMF)<br><br>Hon. Jesse M. Furman |

**JOINT MEMORANDUM OF LAW BY (i) GENERAL MOTORS LLC, (ii) THE MOTORS LIQUIDATION COMPANY GUC TRUST, AND (iii) THE ECONOMIC LOSS PLAINTIFFS IN SUPPORT OF THEIR MOTION TO WITHDRAW THE REFERENCE OF THE ECONOMIC LOSS PLAINTIFFS' MOTION FOR AN ORDER GRANTING AUTHORITY TO FILE LATE CLASS PROOFS OF CLAIM AND RELATED FILINGS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 5

I.  OLD GM'S BANKRUPTCY, THE SALE OF ASSETS TO NEW GM, AND THE
ESTABLISHMENT OF A LATE CLAIMS DEADLINE. ...................................................... 5

II.  THE ECONOMIC LOSS PLAINTIFFS' MOTION IN BANKRUPTCY COURT
FOR AN ORDER GRANTING AUTHORITY TO FILE LATE PROOFS OF
CLAIMS. ......................................................................................................................... 6

III.  THE MDL 2543 LITIGATION OVERLAPS WITH THE BANKRUPTCY
COURT LITIGATION AND SPECIFICALLY THE LATE CLAIMS MOTIONS. ............ 7

IV.  THE PROPOSED CLASS SETTLEMENT WOULD RESOLVE THE PUTATIVE
CLASS CLAIMS IN MDL 2543 AND CLASS CLAIMS AGAINST THE GUC
TRUST IN THE BANKRUPTCY COURT. ...................................................................... 9

ARGUMENT ....................................................................................................................... 10

I.  WITHDRAWAL OF THE REFERENCE IS PROPER IN ORDER TO
EFFECTUATE THE PROPOSED CLASS SETTLEMENT. ............................................. 11

II.  PERMISSIVE WITHDRAWAL WILL PROMOTE EFFICIENCY AND
UNIFORMITY. ............................................................................................................. 13

III.  VARIOUS *ORION* FACTORS DO NOT APPLY BECAUSE THE SETTLING
PARTIES AGREE THAT WITHDRAWAL OF THE REFERENCE IS
NECESSARY FOR APPROVAL AND IMPLEMENTATION OF THE
PROPOSED CLASS SETTLEMENT. ............................................................................. 16

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1800Postcards, Inc. v. Morel*,
153 F. Supp. 2d 359 (S.D.N.Y. 2001)..........................................................................3, 14, 15

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002)............................................................................................12

*In re Casimiro*,
2006 WL 1581897 (E.D. Cal. June 6, 2006) .......................................................................15

*In re Dana Corp.*,
379 B.R. 449 (S.D.N.Y. 2007)...........................................................................................11

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)..........................................................................................3, 12

*In re Durso Supermarkets, Inc.*,
170 B.R. 211 (S.D.N.Y. 1994)...........................................................................................15

*In re Ephedra Prod. Liab. Litig.*,
329 B.R. 1 (S.D.N.Y. 2005)...............................................................................................14

*In re G.M. Crocetti, Inc.*,
2008 WL 4601278 (S.D.N.Y. Oct. 15, 2008) ....................................................................13

*In re GCC-Chase, LLC*,
2016 WL 4427042 (Bankr. W.D.N.C. July 29, 2016) ........................................................13

*In re Guthrie*,
2013 WL 2350355 (Bankr. E.D. Mich. May 2, 2013).........................................................13

*Mishkin v. Ageloff*,
220 B.R. 784 (S.D.N.Y. 1998)......................................................................................3, 11, 15

*In re Motors Liquidation Co.*,
538 B.R. 656 (S.D.N.Y. 2015)...........................................................................................14

*In re Motors Liquidation Co.*,
829 F.3d 135 (2d Cir. 2016)................................................................................................6

*In re Orion Pictures Corp.*,
4 F.3d 1095, 1101 (2d Cir. 1993).......................................................................................11

*In re Parmalat Finanziaria S.p.A.*,
   320 B.R. 46 (S.D.N.Y. 2005) .............................................................................................14

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993) ............................................................................................................7

*Providence Real Estate Venture, LLC v. Great Circle Capital, LLC*,
   2016 WL 4134571 (W.D.N.C. Aug. 2, 2016) .........................................................13

*United States ex rel. Rahman v. Oncology Assocs., P.C.*,
   269 B.R. 139 (D. Md. 2001) ...............................................................................................12

*In re Reliance Sec. Litig.*,
   2002 WL 35645209 (D. Del. Feb. 8, 2002) .................................................................3, 12

*ResCap Liquidating Trust v. PHH Mortgage Corp.*,
   518 B.R. 259 (S.D.N.Y. 2014) ..........................................................................................15

*Scott v. AIG Prop. Cas. Co.*,
   2017 WL 1380607 (S.D.N.Y. Apr. 17, 2017) .........................................................11

*Solutia, Inc. v. FMC Corp.*,
   2004 WL 1661115 (S.D.N.Y. July 27, 2004) .........................................................15

*In re Standing Order of Reference Re: Title 11*,
   Case No. 1:12-mc-32 (S.D.N.Y. Feb. 1, 2012) ...................................................10

**Statutes**

28 U.S.C. § 157(d) ..............................................................................................................2, 10

28 U.S.C. § 1334 .....................................................................................................................10

**Rules**

Federal Rule of Civil Procedure 23 ............................................................................ *passim*

## INTRODUCTION

Today, a motion was filed in this Court seeking preliminary approval of a nationwide class settlement of economic loss claims arising from seven recalls of GM vehicles in 2014, including claims for vehicles manufactured or sold before and after Old GM sold substantially all of its assets in a 2009 bankruptcy sale to New GM.[1]  The parties to that preliminary approval motion (collectively, the "Settling Parties") are (i) General Motors LLC ("New GM"); (ii) the Motors Liquidation Company GUC Trust (the "GUC Trust"); and (iii) plaintiffs seeking to represent classes of purchasers and lessees of the recalled vehicles.[2]  The proposed settlement includes the economic loss claims asserted against New GM pending in this Court, as well as putative economic loss class claims plaintiffs seek to file against the GUC Trust in the Bankruptcy Court, which are the subject of the Economic Loss Plaintiffs'[3] Motion for an Order Granting Authority to File Late Proofs of Claims, filed in the Bankruptcy Court on December 22, 2016 (the "Initial Late Claims Motion"; collectively with the filings listed in notes 4 and 6, the "Late Claims Motions"), as amended on April 24, 2018.[4]  Bankr. Docket No. 13806, attached as Ex. 1.  In order to effectuate the preliminary and final approval of the proposed Settlement Agreement,[5] the Settling Parties seek to withdraw the reference as to the Late Claims Motions and the putative class proofs of

---

[1]    *See* Joint Motion for Preliminary Approval of Class Settlement, Certification of Class for Purposes of Settlement, Approval of Notice Procedures, and Appointment of Class Counsel & Class Representatives ("Preliminary Approval Motion"), Docket No. 7816.

[2]    The Settlement Agreement defines the proposed Class and its subclasses, and also lists the specific vehicles and recalls covered by the Agreement.

[3]    The economic loss plaintiffs who filed the Initial Late Claims Motion are among the economic loss plaintiffs who are parties to the Settlement Agreement.

[4]    *See Notice Of Filing Of Amended Exhibits To Motion For An Order Granting Authority To File Late Class Proofs Of Claim* on April 24, 2019 [Bankr. Docket No. 14280] ("Notice of Amended Exhibits").  The Settling Parties' request for withdrawal of the reference encompasses the Notice of Amended Exhibits as well.  The parties dispute the propriety of the amendment and reserve all rights and defenses.

[5]    In the Settlement Agreement, the Settling Parties agree to seek withdrawal of the reference with respect to the Late Claims Motions.  Settlement Agreement ¶ 140.

claims the plaintiffs sought to file through the Late Claims Motions against the GUC Trust.[6]

The Settling Parties seek to withdraw the reference for the Late Claims Motions because their proposed comprehensive class settlement requires approval pursuant to Federal Rule of Civil Procedure 23 and withdrawing the reference would promote efficiency and uniformity in the administration of the law and, in particular, the approval process of the Settling Parties' Settlement Agreement. Once this Court withdraws the reference as to the Late Claims Motions, it may then (for the reasons discussed more fully in the memoranda in support of the Preliminary Approval Motion filed today) preliminarily approve the proposed Settlement Agreement with respect to both (i) the class claims sought to be asserted against the GUC Trust and (ii) the class claims asserted against New GM. The proposed class settlement is intended to resolve, among other things, the various disputes at issue in the Late Claims Motions pertaining to the GUC Trust. Accordingly, if the proposed class settlement receives final approval by this Court, the Late Claims Motions will become moot and the Proposed Proofs of Claim asserted thereby will be resolved as against the GUC Trust.[7]

For the reasons that follow, because the settlement of the proposed bankruptcy class claims against the GUC Trust is overlapping and interlocking with the settlement of class claims pending in this Court, permissive withdrawal of the reference is warranted.[8] *See* 28 U.S.C. § 157(d) ("The

---

[6]   Certain parties also filed joinders to the Initial Late Claims Motion, as permitted by the Bankruptcy Court's December 13, 2016 Order To Show Cause. Bankr. Docket No. 13802; *see also* Bankr. Docket No. 13811 ("Peller Joinder"); Bankr. Docket No. 13818 ("Groman Plaintiffs' Joinder"). The economic loss plaintiffs that filed these joinders are members of the proposed Settlement Class. The Settling Parties also request withdrawal of these joinders as to their economic loss claims, as related filings.

[7]   If, however, this Court denies either preliminary or final approval, the Settlement Agreement provides and the Settling Parties will jointly request that the Late Claims Motions be returned to the Bankruptcy Court. Settlement Agreement ¶ 168.j. Further, and as set forth in the Settlement Agreement, the Economic Loss Plaintiffs and New GM will continue to pursue Proposed Proofs of Claim (as defined in the Settlement Agreement) against the Avoidance Action Trust ("AAT") and its assets in the Bankruptcy Court notwithstanding approval of the Settlement Agreement, and the Settling Parties do not seek to withdraw the reference with respect to such claims against the AAT. *Id.* ¶ 142.

[8]   The Settling Parties seek withdrawal of the reference only as to (i) the Initial Late Claims Motion (with its

2

district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party for cause shown."); *see also, e.g.*, *Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y. 1998) (withdrawal of reference in core proceedings was warranted, because the proceedings were "overlapping and interlocking"); *1800Postcards, Inc. v. Morel*, 153 F. Supp. 2d 359, 367 (S.D.N.Y. 2001) (where facts, transactions and issues underlying creditors' committee's complaint overlapped with claims pending in the District Court, "efficiency counsels withdrawing the referral of the Committee's claims").

First, district courts regularly withdraw the reference in order to facilitate or effectuate a class or other settlement involving both bankruptcy and non-bankruptcy claims and parties. *See*, *e.g.*, *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 288 (2d Cir. 1992) (noting that district court withdrew certain claims from the bankruptcy court pursuant to 28 U.S.C. § 157(d) to "facilitate settlement"), *affirming In re Drexel Burnham Lambert Grp., Inc.*, 130 B.R. 910, 915 (S.D.N.Y. 1991) (noting that "the Court withdrew the reference as to all of the Debtors' Chapter 11 cases, retained jurisdiction of the Securities Litigation Claims and other non-core, non-related matters and re-referred all core matters to the Bankruptcy Court"); *In re Reliance Sec. Litig.*, 2002 WL 35645209, at *6 n.7 (D. Del. Feb. 8, 2002), *opinion corrected*, 2002 WL 35645207 (D. Del. Mar. 20, 2002) (noting that district court agreed to grant an uncontested motion to withdraw the reference, which was "necessary for the implementation of the settlement").

---

proposed class proofs of claim), (ii) the Notice of Amended Exhibit, (iii) the Peller Joinder, and (iv) the Groman Plaintiffs' Joinder; all other litigation against the GUC Trust will remain before and proceed in the Bankruptcy Court.

Additionally, the GUC Trust filed today in the Bankruptcy Court a Bankruptcy Rule 9019 motion ("GUC Trust Motion") seeking approval of, among other things:  (i) the GUC Trust's entry into and performance of the terms and conditions of the proposed settlement; (ii) the GUC Trust's release of claims against New GM for Adjustment Shares under Section 3.2(c) of the Amended and Restated Master Sale Purchase Agreement; and (iii) the GUC Trust's distribution of $300 million in GUC Trust Assets to its unitholders.  The Settling Parties do not seek withdrawal of the reference as to the GUC Trust Motion and have noticed a joint hearing of this Court and the Bankruptcy Court at which time the GUC Trust Motion will be presented.

3

Second, withdrawal of the reference will promote efficiency and uniformity in the administration of the law. The proposed Settlement Agreement filed today covers both putative class claims against New GM that are before this Court and putative class claims against the GUC Trust that are before the Bankruptcy Court. The proposed Settlement Agreement involves: (i) a single agreement among the GUC Trust, New GM, and Plaintiffs and Plaintiffs' Class Counsel,[9] on behalf of purchasers and lessees of Old GM and New GM vehicles subject to the seven (7) recalls asserting class claims against the GUC Trust and New GM (Settlement Agreement at 1, ¶¶ 12, 57); (ii) a single Common Fund that will be distributed pursuant to the Allocation Decision (*id.* ¶¶ 17, 81); (iii) a single negotiation over Attorneys' Fees and Expenses (*id.* ¶ 149); (iv) a single Class Action Settlement Administrator (*id.* ¶¶ 13, 95-102); (v) a single Qualified Settlement Fund Administrator and Trustee (*id.* ¶¶ 57, 78-79); (vi) a single Settlement Claim Review Protocol and Settlement Claim Form (*id.* ¶¶ 83-85); (vii) a single Short Form Notice, Summary Settlement Notice, and Long Form Notice (*id.* ¶¶ 86-90); and (viii) a single objection process (*id.* ¶¶ 108-111).[10] In the interests of efficiency and uniformity, a single Court should consider whether the Settlement Agreement should be approved. It would be wasteful and judicially inefficient, as well as risk inconsistent rulings, for two Courts to simultaneously consider all of the Rule 23 issues relevant to preliminary and final approval of the same Settlement Agreement—particularly where one of those Courts (the MDL Court) would sit in review of the other Court's decision.

Moreover, efficiency and uniformity will also be served because of the overlap between the class claims asserted against New GM and those sought to be asserted against the GUC Trust.

---

[9]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Settlement Agreement.

[10]   The proposed Settlement Agreement was negotiated among the same counsel for economic loss plaintiffs in both the Bankruptcy Court and this Court, as well as counsel for the GUC Trust and New GM—all under the supervision and with the mediation assistance of the Honorable Layn Phillips, retired U.S. District Court Judge.

4

Both sets of claims involve many of the same vehicle models, six of the same recalls,[11] alleged damages arising from overpayment at purchase, and millions of the same proposed class members. To the extent that Class Members wish to object to the Settlement Agreement, it would be more efficient to address these objections in a single Court. It would also reduce the administrative burden on Class Members, as well as potential confusion as to which Court has jurisdiction over their claims. Given this substantial overlap, withdrawal of the reference will result in the most efficient use of judicial resources.

Finally, withdrawal of the reference will promote efficiency and uniformity because determining whether to approve the proposed settlement of the class claims sought to be asserted against the GUC Trust and those asserted against New GM will involve application and consideration of the same Federal Rule of Civil Procedure 23 legal standards. Withdrawal of the reference will permit these legal standards to be uniformly applied to the proposed Settlement Agreement by this Court.

Accordingly, for these reasons, this Court should withdraw the reference of the Late Claims Motions from the Bankruptcy Court, such that any objections to the Preliminary Approval Motion and final approval of the Settlement Agreement are filed in and determined by this Court.

## BACKGROUND

## I. OLD GM'S BANKRUPTCY, THE SALE OF ASSETS TO NEW GM, AND THE ESTABLISHMENT OF A LATE CLAIMS DEADLINE.

On June 1, 2009, Old GM filed a Chapter 11 bankruptcy petition. On July 5, 2009, the Bankruptcy Court entered an order authorizing New GM's purchase of substantially all of Old GM's assets.[12]

---

[11]    *See* n.16, *infra*, and accompanying text.

[12]    The sale was memorialized in the Amended and Restated Master Sale And Purchase Agreement By And Among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation And Chevrolet-Saturn Of Harlem,

After the Sale, the Bankruptcy Court entered an order establishing November 30, 2009 as the deadline for general unsecured creditors to file proofs of claims against Old GM.  In *In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016), the Second Circuit held, among other things, that plaintiffs with claims against the Old GM estate relating to the Delta ignition switch defect were not provided adequate notice of the sale of assets from Old GM to New GM.[13]  The Second Circuit also vacated the Bankruptcy Court's equitable mootness ruling with respect to plaintiffs' ability to file late claims as premature because plaintiffs had not sought to file any claims against the GUC Trust at the time of the ruling, but such ruling was without prejudice to the GUC Trust's ability to raise that issue again in the future.  *Id.* at 168 & n.31.

Following the Second Circuit's ruling, plaintiffs were required by the Bankruptcy Court to seek leave to file "late claims" motions related to recalls by December 22, 2016.[14]

## II.   THE ECONOMIC LOSS PLAINTIFFS' MOTION IN BANKRUPTCY COURT FOR AN ORDER GRANTING AUTHORITY TO FILE LATE PROOFS OF CLAIMS.

On December 22, 2016, two economic loss claimants filed the Initial Late Claims Motion, seeking to assert proposed nationwide class claims against the GUC Trust under Rule 23(b)(3).

One claimant, Patricia Barker (who is also a plaintiff in MDL 2543), sought leave to file a class claim against the GUC Trust on behalf of an "Ignition Switch Class," defined as "all persons in the United States who, as of November 30, 2009, either owned or leased a defective Old GM vehicle included in Recall No. 14V-047."  Initial Late Claims Motion at 12.

---

Inc., as Sellers, And NGMCO, Inc., Dated As Of June 26, 2009, and effectuated in the Bankruptcy Court's July 5, 2009 Order (i) Authorizing Sale Of Assets Pursuant To Amended And Restated Master Sale And Purchase Agreement With NGMCO, Inc., A U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale; And (iii) Granting Related Relief (the "363 Sale" or the "Sale").  Bankr. Docket No. 2968.

[13]   The Second Circuit did not address whether there had been any Due Process violation with respect to the other recalled vehicle defects that are the subject of the Late Claims Motions.

[14]   "If other plaintiffs wish to join in a Late Claim Motion, they . . . [were required to] file a joinder (not to exceed two pages) with the [Bankruptcy] Court by January 6, 2017."  Bankr. Docket No. 13802 at 5.

6

The second claimant, Yvonne James-Bivins (who is also a plaintiff in MDL 2543), sought leave to file a class claim against the GUC Trust on behalf of a "Non-Ignition Switch Class," defined as "all persons in the United States who, as of November 30, 2009, either owned or leased a defective Old GM vehicle included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-118 and 14V-153." *Id.*

On April 24, 2018, plaintiffs filed the Notice of Amended Exhibits, which Plaintiffs contend added 58 additional claimants to the proposed class claims annexed to the Initial Late Claims Motion. Bankr. Docket No. 14280. Each of these additional 58 claimants were also named plaintiffs in the operative MDL complaint.

Certain issues raised by the Late Claims Motions have been briefed, but not yet decided in the Bankruptcy Court.[15] Bankr. Docket Nos. 13871, 13872, 13873, 13882, 13883, 13884.

## III.    THE MDL 2543 LITIGATION OVERLAPS WITH THE BANKRUPTCY COURT LITIGATION AND SPECIFICALLY THE LATE CLAIMS MOTIONS.

In 2014, the Judicial Panel on Multidistrict Litigation established MDL 2543, and transferred to this Court claims related to ignition-switch and other alleged defects in vehicles manufactured by Old GM and New GM that were subject to certain recalls. The Fifth Amended Consolidated Complaint ("5ACC") filed by plaintiffs in MDL 2543 alleges economic loss class claims against New GM on behalf of those who purchased or leased certain Old GM or New GM vehicles. *See* 5ACC ¶ 34 (generally defining class as "[a]ll persons who bought or leased (i) a Delta Ignition Switch Vehicle on or before February 14, 2014; (ii) a Low torque Ignition Switch

---

[15]    The briefing schedule for preliminary issues raised by the Late Claims Motions was established in the Bankruptcy Court's March 2, 2017 Order. Bankr. Docket No. 13869. The briefing encompassed "(i) the issue ("**Applicability of *Pioneer* Issue**") of whether the proponents of the Late Claim Motions must satisfy the standard set forth in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) in order to obtain authority to file late proofs of claim, and (ii) the issue ("**Tolling Issue**," and with the Applicability of *Pioneer* Issue, the "**Initial Late Claim Motions Issues**") as to whether and as of when some or all of the proponents of the Late Claim Motions are the beneficiaries of a tolling agreement with respect to the time for filing the Late Claim Motions." *Id.* at 2.

7

Vehicle prior to July 3, 2014; (iii) a Knee-to-Key Camaro Defect Vehicle prior to July 3, 2014;

(iv) a Side Airbag Defect Vehicle prior to March 17, 2014; and/or (v) a Power Steering Defect

Vehicle prior to April 1, 2014").

There is considerable overlap between the economic loss claims asserted against New GM

in MDL 2543 and the claims sought to be asserted against the GUC Trust in the Bankruptcy Court:

- Overlapping Plaintiffs.  Patricia Barker and Yvonne-James Bivins assert class claims in both the Initial Late Claims Motion and in the MDL.  *Compare* Initial Late Claims Motion at 12 *with* 5ACC ¶¶ 58, 64.  In addition, all of the additional claimants named in the Notice of Amended Exhibits are also plaintiffs in the MDL.

- Overlapping Plaintiffs' Counsel.  Steve Berman and Elizabeth Cabraser, who were appointed as Co-Lead Counsel by this Court, represent economic loss claimants seeking certification of class claims in both the Bankruptcy Court (along with designated counsel Ed Weisfelner and Sandy Esserman) and the MDL.

- Overlapping Putative Economic Loss Classes.  The putative Delta Ignition Switch class in the Bankruptcy Court includes many of the same members as the putative Delta Ignition Switch class in the MDL.  *Compare* Initial Late Claims Motion at 12 ("all persons in the United States who, as of November 30, 2009, either owned or leased a defective Old GM vehicle included in Recall No. 14V-047") *with* 5ACC ¶ 34 (general definition of class includes "All persons who bought or leased (i) a Delta Ignition Switch Vehicle on or before February 14, 2014. . . .").

- Overlapping Recalls.  Six of the recalls at issue in the Bankruptcy Court are the same as the recalls at issue in the MDL:  (i) MDL Delta Ignition Switch (14v047); (ii) Lacrosse / Impala Slotted Key (14v355); (iii) CTS / SRX Key Bump & Inadvertent Rotation (14v394); (iv) Malibu / Impala Inadvertent Key Rotation (14v400); (v) SIAB Wiring Harness (14v118); and (vi) Electric Power Steering Assist (14v153).[16]

- Overlap With Respect to Successor Liability Claims.  Plaintiffs are required to prove Old GM's liability to prevail on both (i) claims against the GUC Trust in the Bankruptcy Court and (ii) their successor liability claims against New GM in the MDL.

- Overlapping Damages Theories.  Claimants in the Bankruptcy Court, like plaintiffs in the MDL, seek purported economic loss damages relating to overpayment at purchase.

---

[16]    The Camaro Ignition Key Bump (14v346) recall, which only involves New GM vehicles, is at issue in the MDL but is not asserted in the Bankruptcy Court.

- <u>Overlapping Causes of Action</u>.  The proposed economic loss class proofs of claim attached to the Initial Late Claims Motion include the same causes of action that are asserted in the MDL, including: (i) fraudulent concealment; (ii) unjust enrichment; (iii) consumer protection claims; (iv) breach of the implied warranty of merchantability; and (v) negligence.  Initial Late Claims Motion at 13-14; 5ACC at 3-4.  These overlapping claims raise the same legal issues being addressed in the MDL.

## IV.    THE PROPOSED CLASS SETTLEMENT WOULD RESOLVE THE PUTATIVE CLASS CLAIMS IN MDL 2543 AND CLASS CLAIMS AGAINST THE GUC TRUST IN THE BANKRUPTCY COURT.

The proposed Settlement Agreement filed today covers both the class claims alleged against New GM in this Court and those alleged against the GUC Trust in the Bankruptcy Court.[17] The terms of the proposed Settlement Agreement are set forth in a single agreement entered into by the GUC Trust, New GM, and Plaintiffs (as defined in the Settlement Agreement).  This proposed Settlement Agreement involves:

- <u>One Common Fund</u>.  The Settlement Agreement establishes a single Common Fund, to be funded by New GM and the GUC Trust, that will be allocated among putative class members.  Settlement Agreement ¶¶ 17, 78, 81.

- <u>One Class Comprised of Five Subclasses</u>.  The Settlement Agreement seeks to certify a settlement Class, comprised of five Subclasses, to settle all putative economic loss class claims in this Court and those against the GUC Trust in the Bankruptcy Court.  *Id.* ¶¶ 4, 12.

- <u>One Short Form Notice, Summary Settlement Notice, and Long Form Notice</u>.  The Settlement Agreement establishes a single Short Form Notice, Summary Settlement Notice, and Long Form Notice, all to be issued by a single entity.  *Id.* ¶¶ 86-90.

- <u>One Class Action Settlement Administrator</u>.  The Settlement Agreement provides for a single Class Action Settlement Administrator to be appointed by the MDL Court to implement the Class Notice, the Settlement Claims Process, receipt and maintenance of requests of Class Members to become an Opt-Out, and other aspects of administration required pursuant to the Settlement Agreement.  *Id.* ¶¶ 13, 95-102.

- <u>One Qualified Settlement Fund Administrator and Trustee</u>.  The Settlement Agreement establishes a single Qualified Settlement Fund Administrator and Trustee to implement the process for distributing the proceeds of the Qualified Settlement Fund.  *Id.* ¶¶ 57, 78-

---

[17]    A true and complete copy of the Settlement Agreement was filed contemporaneously with the Preliminary Approval Motion.  Docket No. 7815.

79.

- One Claiming Process.  The Settlement Agreement establishes a single Settlement Claim Review Protocol for reviewing claims.  *Id.* ¶ 83, 85 & Ex. 10.

- <u>One Settlement Claim Form</u>.  The Settlement Agreement establishes a single Settlement Claim Form for submitting claims.  *Id.* ¶ 84 & Ex. 9.

- <u>One Objection and Opt-Out Process</u>.  The Settlement Agreement establishes a single process for requesting exclusion from the alleged classes and a single process for objecting to the fairness, reasonableness, or adequacy of the proposed settlement.  *Id.* ¶¶ 104-111.  Likewise, the Settlement Agreement contemplates a single fairness hearing.  *Id.* ¶ 22.

The Court's evaluation and approval of these provisions of the Settlement Agreement will be the same for the class claims sought to be asserted against the GUC Trust in the Late Claims Motions and asserted in the 5ACC.  Given that, there is no reason to have two courts separately and independently rule on preliminary and final approval; nor would withdrawing the reference preclude the two courts from sitting jointly so that the Bankruptcy Court can simultaneously consider the GUC Trust Approval Motion.

## **ARGUMENT**

United States District Courts have "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(a), (b).  In the Southern District of New York, such cases and proceedings are referred automatically from the District Court to the Bankruptcy Court.  *See In re Standing Order of Reference Re: Title 11*, Case No. 1:12-mc-32 (S.D.N.Y. Feb. 1, 2012).

28 U.S.C. § 157(d) provides for withdrawal of the reference "for cause" (*i.e.*, permissive withdrawal).  Here, permissive withdrawal is appropriate, [18] and indeed is necessary for

---

[18]    The Settling Parties do not seek mandatory withdrawal of the reference.

consideration and approval of the Settlement Agreement.  This Court should therefore withdraw the reference to the Bankruptcy Court of the Late Claims Motions.

In *In re Orion Pictures Corp.*, the Second Circuit enumerated certain factors relevant in determining whether there is "cause" to withdraw the reference, including:  "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."  4 F.3d 1095, 1101 (2d Cir. 1993).  However, applying these factors is not a straightforward mechanical exercise, but instead an analysis that relies on the District Court's "discretion."  *In re Dana Corp.*, 379 B.R. 449, 454 (S.D.N.Y. 2007).  Moreover, the *Orion* factors are "non-exhaustive," *Scott v. AIG Prop. Cas. Co.*, 2017 WL 1380607, at *2 (S.D.N.Y. Apr. 17, 2017), and courts may consider "other related factors."  *Orion*, 4 F.3d at 1101.

Here, the most important factor demonstrating cause is the need to bring all claims and parties into a single forum for consideration of whether the Settlement Agreement should be approved.  District Courts regularly withdraw the reference in situations where it is necessary to facilitate or effectuate a settlement involving claims (including class claims) and parties in both the Bankruptcy Court and District Court.  *See* authorities cited in Section I, *infra*.  "[T]he [other] critical question is efficiency and uniformity," *Mishkin*, 220 B.R. at 800 (citing *Orion*, 4 F.3d at 1100), and, here, withdrawing the reference best achieves these objectives, as discussed in Section II, *infra*.  Finally, several of the *Orion* factors are not relevant here, where the withdrawal of the reference is necessary for approval and implementation of a settlement and the Settling Parties are not asking this Court to decide the Late Claims Motions on the merits.  *See* Section III, *infra*.

## I.    WITHDRAWAL OF THE REFERENCE IS PROPER IN ORDER TO EFFECTUATE THE PROPOSED CLASS SETTLEMENT.

The Settling Parties agree that withdrawal of the reference is appropriate and necessary to

effectuate the proposed Settlement.  The Settlement Agreement covers claims and parties in both this Court and the Bankruptcy Court, and withdrawal of the reference is necessary to bring all claims and parties subject to the proposed Settlement Agreement into a single forum, subject to a single court's jurisdiction.  As described above, the proposed Settlement Agreement settles the claims of a single proposed Class via a single Settlement Agreement.  *See* Background Section IV, *supra*.  It would be inefficient and risk inconsistent rulings for two Courts to preliminarily or finally rule on the components of a single Settlement Agreement and its provisions.  Once the Court withdraws the reference, all claims and parties subject to the proposed Settlement Agreement will be before this Court.

District Courts regularly withdraw the reference in order to facilitate or effectuate a class or other settlement involving both bankruptcy and non-bankruptcy claims and parties.  *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d at 288 (noting that the district court judge withdrew certain claims from the bankruptcy court pursuant to 28 U.S.C. § 157(d) to "facilitate settlement"), *affirming In re Drexel Burnham*, 130 B.R. at 915 (noting that "the Court withdrew the reference as to all of the Debtors' Chapter 11 cases, retained jurisdiction of the Securities Litigation Claims and other non-core, non-related matters and re-referred all core matters to the Bankruptcy Court"); *In re Reliance Sec. Litig.*, 2002 WL 35645209, at *6 n.7 (noting that district court agreed to grant an uncontested motion to withdraw the reference, which was "necessary for the implementation of the settlement"); *In re AremisSoft Corp. Sec. Litig.,* 210 F.R.D. 109, 115 (D.N.J. 2002) (noting that after the parties filed a stipulation of settlement, the district court granted a motion to withdraw the reference, "ensuring that this [District] Court would maintain jurisdiction over the entire matter"); *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 269 B.R. 139, 146 (D. Md. 2001) (noting that district court entered an order granting a motion for withdrawal of reference with

12

respect to certain subsidiaries' participation in a Global Settlement Agreement because "the matters in question are closely related to the settlement reached by the Trustee"); *In re GCC-Chase, LLC*, 2016 WL 4427042, at *1 (Bankr. W.D.N.C. July 29, 2016) (recommending that district court withdraw the reference of an adversary proceeding for the limited purpose of ordering a global mediation between the parties to the adversary proceeding and a nearly identical case pending in district court), adopted and approved by *Providence Real Estate Venture, LLC v. Great Circle Capital, LLC*, 2016 WL 4134571, at *1 (W.D.N.C. Aug. 2, 2016); *In re Guthrie*, 2013 WL 2350355, at *2-3 (Bankr. E.D. Mich. May 2, 2013) (recommending that district court withdraw the reference in order to enter a proposed consent order when the parties' agreement was conditioned on such withdrawal of the reference), consent order noting withdrawal of the reference entered by District Court in Case No. 2:13-cv-11964 (E.D. Mich. June 5, 2013), attached as Ex. 2.

Withdrawal here is likewise appropriate for approval and implementation of the Settlement Agreement. Thus, cause exists for permissive withdrawal of the reference.

## II.    PERMISSIVE WITHDRAWAL WILL PROMOTE EFFICIENCY AND UNIFORMITY.

Withdrawal of the reference here will also promote efficiency and uniformity. The proposed Settlement Agreement covers both putative class claims against New GM that are pending in this Court in the 5ACC and proposed class claims against the GUC Trust that are before the Bankruptcy Court via the Late Claims Motions. Where, as here, the Bankruptcy Court and the District Court would face nearly identical issues and arguments absent withdrawal, "concerns of judicial efficiency" constitute a "higher interest" justifying withdrawal. *In re G.M. Crocetti, Inc.*, 2008 WL 4601278, at *5 (S.D.N.Y. Oct. 15, 2008) ("Failure to withdraw the reference in this case would subject the parties to the risk of inconsistent verdicts on these issues, not to mention significant inefficiency and expense from having to duplicate efforts and litigate the same issues

13

twice.").  Indeed, given the substantial overlap and identity of issues here, withdrawal of the reference will result in the most efficient use of judicial resources.  *See In re Motors Liquidation Co.*, 538 B.R. 656, 663 (S.D.N.Y. 2015) (citing "judicial efficiency" as a "higher interest" that may warrant withdrawal of the reference, but declining to withdraw the reference because Judge Gerber was already "fully versed" in the underlying issues that plaintiffs previously sought to withdraw from the Bankruptcy Court); *see also In re Parmalat Finanziaria S.p.A.*, 320 B.R. 46, 50–51 (S.D.N.Y. 2005); *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 4 n.1 (S.D.N.Y. 2005).  This is particularly true where, as here, the MDL Court is already steeped in the issues giving rise to the Settlement Agreement.

*First*, as discussed above, the proposed settlement would resolve the class claims against the GUC Trust and New GM under the terms of a single Settlement Agreement.  *See* Argument Section I, *supra*.  It would be impractical and inefficient for the District Court and Bankruptcy Court to separately evaluate and rule on the same proposed Settlement Agreement.  Such a procedure would be especially inefficient because the District Court would be tasked with deciding any appeal of the Bankruptcy Court's rulings.  Instead, once the Court withdraws the reference, all claims subject to the proposed Settlement Agreement and the Preliminary Approval Motion will be before this Court, promoting efficiency.

*Second*, in addition to the fact that the proposed Settlement Agreement presents a unified procedure for resolving the bankruptcy and non-bankruptcy economic loss claims subject to the proposed Settlement Agreement under a single umbrella, there is also overwhelming overlap between the class claims against New GM and the class claims sought to be asserted against the GUC Trust.  *See* Background Section III, *supra*.  Given this overlap, withdrawal of the reference will result in the most efficient use of judicial and party resources.  *See*, *e.g.*, *1800Postcards, Inc.*,

14

153 F. Supp. 2d at 367; *Mishkin*, 220 B.R. at 800.

*Third*, preliminary approval of the settlement of the class claims against the GUC Trust will involve application of the same legal standards as preliminary settlement approval of the class claims against New GM.  Both sets of claims require application of Federal Rule of Civil Procedure 23(e), Rule 23(a), and Rule 23(b).  These legal standards should not be applied by two different Courts, which would create a risk of inconsistent rulings—which, if they occurred, would result in an appeal to and ultimate decision by the District Court.  Withdrawal of the reference will permit these legal standards to be uniformly applied to the proposed Settlement Agreement by this Court.

Finally, courts regularly hold that where, as here, a bankruptcy proceeding shares overlapping questions of law and fact with an already pending District Court action, the reference should be withdrawn.  *See, e.g., Solutia, Inc. v. FMC Corp.*, 2004 WL 1661115, at *3 (S.D.N.Y. July 27, 2004) (granting motion to withdraw reference; noting "[b]y litigating this non-core matter in the district court, judicial resources will be conserved instead of having two courts administer two rounds of briefing and argument on the same issues."); *see also 1800Postcards, Inc.*, 153 F. Supp. 2d at 367; *Mishkin*, 220 B.R. at 800; *In re Casimiro*, 2006 WL 1581897, at *6 (E.D. Cal. June 6, 2006) ("Although bankruptcy courts are empowered to oversee class actions, there is little reason to assume that they regularly do so.  On the other hand, the district court has long experience in the management of this complex class of litigation."); *ResCap Liquidating Trust v. PHH Mortgage Corp.*, 518 B.R. 259, 265-66 (S.D.N.Y. 2014) (finding that withdrawal of the reference was warranted to, *inter alia*, prevent duplicative work); *In re Durso Supermarkets, Inc.*, 170 B.R. 211, 213-14 (S.D.N.Y. 1994) (noting "unnecessary costs could be avoided by a single proceeding in the district court").  The substantial overlap between the two proceedings and the gains in efficiency and uniformity to be achieved by withdrawal of the reference provide further cause for

withdrawal here.

### III.    VARIOUS *ORION* FACTORS DO NOT APPLY BECAUSE THE SETTLING PARTIES AGREE THAT WITHDRAWAL OF THE REFERENCE IS NECESSARY FOR APPROVAL AND IMPLEMENTATION OF THE PROPOSED CLASS SETTLEMENT.

Here, the Settling Parties do not ask this Court to withdraw the Late Claims Motions in order to decide that motion on the merits.  Instead, if the Court approves the proposed Settlement Agreement, it will necessarily resolve the Late Claims Motions and claims against the GUC Trust (though not claims against, or recoverable from, the AAT), because the proposed class proofs of claims against the GUC Trust in those Motions are among the claims encompassed by the Settlement Agreement.[19]

Because the Settling Parties are seeking withdrawal of the reference as to the Late Claims Motions only in order to facilitate the approval and implementation of the proposed Settlement Agreement, several of the *Orion* factors are irrelevant to the withdrawal analysis here.  For example, whether the Late Claims Motions concern a core matter is irrelevant when approval of the proposed Settlement Agreement will not require the Court to decide the merits of the Late Claims Motions.  Similarly, whether the Late Claims Motions seek legal or equitable relief is irrelevant, because relief will be provided through the proposed Settlement Agreement.  Nor is forum shopping a concern here, because the Settling Parties all agree that the proper forum for consideration of the proposed Settlement Agreement is the District Court, as that is the only forum where both bankruptcy and non-bankruptcy claims can be resolved together.

### CONCLUSION

The Settling Parties respectfully request that this Court withdraw the reference as to:  (i) the

---

[19]    If this Court does not finally approve the settlement, the Settling Parties submit that the Late Claims Motions should be returned to the Bankruptcy Court.

16

Initial Late Claims Motion, (ii) the Notice of Amended Exhibits, (iii) the Peller Joinder, and (iv) the Groman Plaintiffs' Joinder so that the Court can take jurisdiction over all parties and claims covered by the proposed Settlement Agreement.  For the avoidance of doubt, the Settling Parties do not request that this Court withdraw the reference with respect to any other matters currently pending before the Bankruptcy Court, including (i) the GUC Trust Motion; (ii) the GUC Trust Approval Order; (iii) the Excess Distribution Motion; (iv) personal injury or wrongful death claims in the Bankruptcy Case relating to the Subject Vehicles; (v) claims and Actions asserted against the AAT, Old GM or the Old GM Bankruptcy Estates to the extent such claims or Actions are recoverable solely against the AAT or its assets; and/or (vi) individual claims or motions, if any, in the Bankruptcy Case filed by a Person who would have been a Class Member who becomes an Opt-Out.  A proposed order is attached as Exhibit 13 to the Settlement Agreement, and is also attached as Exhibit 3 hereto.

Dated: March 27, 2020

Respectfully submitted,

*/s/ Paul M. Basta*

Richard C. Godfrey, P.C.
Wendy L. Bloom
Andrew Bloomer, P.C.
Mark J. Nomellini
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654-3406
Telephone:  (312) 862-2000
Facsimile: (312) 862-2200

*MDL 2543 Counsel for*
*General Motors LLC*

Paul M. Basta
Kyle J. Kimpler
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

*Bankruptcy Counsel for General Motors LLC*

**HAGENS BERMAN SOBOL SHAPIRO
LLP**

*/s/ Steve W. Berman*

Steve W. Berman
Sean R. Matt
Andrew M. Volk
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
seam@hbsslaw.com
andrew@hbsslaw.com

*Interim Lead Counsel for Plaintiffs and the*
*Proposed Class*

**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**

*/s/ Elizabeth J. Cabraser*

Elizabeth J. Cabraser
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ecabraser@lchb.com

Rachel Geman
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
rgeman@lchb.com

*Interim Lead Counsel for Plaintiffs and the*
*Proposed Class*

MᴄDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP

*/s/ Kristin K. Going*

Kristin K. Going
340 Madison Ave.
New York, New York 10173
Telephone:  (212) 547-5429
Facsimile:  (646) 417-7313
E-mail:  kgoing@mwe.com

*Counsel for the Motors Liquidation Company*
*GUC Trust Administrator*