# **<u>EXHIBIT B</u>**

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 2 of 281

Case 1:14-md-02543-JMF   Document 7816   Filed 03/27/20   Page 1 of 5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION SWITCH LITIGATION<br><br>This Document Relates to:<br><br>*ALL ECONOMIC LOSS ACTIONS* | No. 14-MD-2543 (JMF) |

**NOTICE OF JOINT MOTION AND JOINT MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT, APPROVAL OF NOTICE PROCEDURES,
AND APPOINTMENT OF CLASS COUNSEL & CLASS REPRESENTATIVES**

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 3 of 281

Case 1:14-md-02543-JMF    Document 7816    Filed 03/27/20    Page 2 of 5

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **April 23, 2020, at 9:30 a.m.**, or as soon thereafter as the matter may be heard, a hearing will be held before the Honorable Martin Glenn, United States Bankruptcy Judge for the Southern District of New York, sitting jointly with the Honorable Jesse M. Furman, United States District Court Judge for the Southern District of New York, in the Courtroom of the Honorable Jesse M. Furman, located at 40 Centre Street, New York, NY 10007, or, subject to further order of the Courts, by telephone (the "Joint Hearing"). At the Joint Hearing, the Economic Loss Plaintiffs ("Plaintiffs"), General Motors LLC ("New GM"), and the Motors Liquidation Company GUC Trust (the "GUC Trust") (collectively, the "Parties") will and hereby do move the Court for entry of an Order:

(a) Granting preliminary approval of the proposed Settlement Agreement entered into between the Parties, including establishing and creating the Common Fund as a Qualified Settlement Fund Trust pursuant to Internal Revenue Code § 468B and the Regulations issued thereto;

(b) Directing that notice be disseminated to the Class in the manner specified in the Settlement Agreement;

(c) Determining that the Court, at the final approval stage, will likely certify the Class and Subclasses as defined in the Settlement Agreement for settlement purposes only;

(d) Appointing Plaintiffs as interim class representatives of the proposed Class and certain Plaintiffs as interim representatives of the Subclasses for settlement purposes only;

(e) Appointing, on an interim basis, Steve W. Berman, of Hagens Berman Sobol Shapiro LLP and Elizabeth J. Cabraser of Lieff Cabraser Heimann & Bernstein, LLP as Class Counsel for the proposed Class for settlement purposes only;

(f) Appointing, on an interim basis, (i) Marc Seltzer of Susman Godfrey as Subclass 1 Counsel; (ii) Joe Rice and Kevin Dean of Motley Rice as Subclass 2 Counsel; (iii) Peter Prieto and Matthew Weinshall of Podhurst Orseck, P.A. as Subclass 3 Counsel; (iv) David Boies and Steven Davis of Boies Schiller Flexner LLP as Subclass 4 Counsel; and (v) Adam Levitt and John Tangren of DiCello Levitt Gutzler as Subclass 5 Counsel, each for settlement purposes only;

(g) Appointing Jennifer M. Keough of JND Legal Administration ("JND") as Class Action Settlement Administrator and directing her to carry out the duties and responsibilities of the Class Action Settlement Administrator specified in the Settlement Agreement;

-1-

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 4 of 281

Case 1:14-md-02543-JMF    Document 7816    Filed 03/27/20    Page 3 of 5

(h)     Appointing Flora Bian of JND as Qualified Settlement Fund Administrator and
        Trustee to carry out all duties and responsibilities of the Qualified Settlement
        Fund Administrator and Trustee as specified in the Settlement Agreement and the
        Qualified Settlement Fund Trust Agreement; and

(i)     Setting a Fairness Hearing and certain other dates and procedures in connection
        with the final approval of the Settlement Agreement, including but not limited to
        (i) the deadlines and procedures for Settlement Objections and Opt-Outs, and (ii)
        the deadlines and procedures for Settlement Claims.

This Motion is based on this Notice of Motion and Motion, Plaintiffs' Memorandum in

Support of this Joint Motion, New GM's Memorandum in Support of this Joint Motion, the

Settlement Agreement and all Exhibits attached thereto, the Declarations of Steve W. Berman

and Elizabeth J. Cabraser and all exhibits thereto, the Declaration of the Hon. Layn R. Phillips,

the argument of counsel, all papers and records on file in this matter, and such other matters as

the Court may consider.

Dated:  March 27, 2020                          Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO**          **LIEFF CABRASER HEIMANN**
**LLP**                                  **& BERNSTEIN, LLP**

By:  /s/ Steve W. Berman                 By:  /s/ Elizabeth J. Cabraser

Steve W. Berman                          Elizabeth J. Cabraser
Sean R. Matt                             275 Battery Street, 29th Floor
Andrew M. Volk                           San Francisco, CA  94111
1918 Eighth Avenue, Suite 3300           Telephone: (415) 956-1000
Seattle, WA 98101                        Facsimile: (415) 956-1008
Telephone: (206) 623-7292                ecabraser@lchb.com
Facsimile: (206) 623-0594
steve@hbsslaw.com                        Rachel Geman
seam@hbsslaw.com                         250 Hudson Street, 8th Floor
andrew@hbsslaw.com                       New York, NY 10013
                                         Telephone: (212) 355-9500
*Interim Lead Counsel for Plaintiffs and the*   Facsimile: (212) 355-9592
*Proposed Class*                         rgeman@lchb.com

                                         *Interim Lead Counsel for Plaintiffs and the*
                                         *Proposed Class*

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 5 of 281

Case 1:14-md-02543-JMF   Document 7816   Filed 03/27/20   Page 4 of 5

**KIRKLAND & ELLIS LLP**

By: /s/ Richard C. Godfrey

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
Wendy Bloom, P.C.
300 N. LaSalle
Chicago, IL 60654-3406
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com
wendy.bloom@kirkland.com

*Attorneys for Defendant General Motors LLC*

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 6 of 281

Case 1:14-md-02543-JMF   Document 7816   Filed 03/27/20   Page 5 of 5

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 27, 2020, which will send notification of such filing to the e-mail addresses registered.

*/s/ Steve W. Berman*
Steve W. Berman

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 7 of 281

Case 1:14-md-02543-JMF   Document 7816-1   Filed 03/27/20   Page 1 of 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION<br>SWITCH LITIGATION<br><br>*This Document Relates to:*<br><br>*ALL ECONOMIC LOSS ACTIONS* | No. 14-MD-2543 (JMF) |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS
SETTLEMENT, DIRECTING NOTICE UNDER RULE 23(E), AND GRANTING
RELATED RELIEF**

Before the Court is the Parties' *Joint Motion for Preliminary Approval of Class
Settlement, Approval of Notice Procedures, and Appointment of Class Counsel & Class
Representatives* (the "Joint Motion for Preliminary Approval"), brought pursuant to Rule 23 of
the Federal Rules of Civil Procedure.[1]

WHEREAS, Economic Loss Plaintiffs ("Plaintiffs"), General Motors LLC ("New GM"),
and the Motors Liquidation Company GUC Trust (the "GUC Trust") (collectively, the "Parties")
have entered into a Settlement Agreement (the "Settlement Agreement") subject to preliminary
and final approval by this Court.

WHEREAS, the Settlement Agreement, including the exhibits attached thereto, sets forth
the terms and conditions of a proposed settlement and dismissal with prejudice of (a) all
economic loss claims, whether asserted as class, mass, or individual actions, however
denominated, that are consolidated for pretrial proceedings in the MDL Court in *In re: General*

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning assigned to such terms in the
Settlement Agreement.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 8 of 281

Case 1:14-md-02543-JMF    Document 7816-1    Filed 03/27/20    Page 2 of 21

*Motors Ignition Switch Litigation*, Case No. 14-MD-2543 (JMF) ("MDL 2543"), including those listed in Exhibit 1 to the Settlement Agreement and all economic loss claims relating to the Recalls[2] filed in the past, present or future in any federal or state court, and (b) all economic loss claims, whether asserted as class, mass, or individual claims, including all Late Claims Motions and all Proposed Proofs of Claims involving alleged economic loss, however denominated, filed or asserted in the Bankruptcy Case[3] ((a) and (b) collectively, the "Actions" as defined in the Settlement Agreement);

WHEREAS, the Court, in a separate order, has withdrawn the reference to the Bankruptcy Court of certain aspects of the Bankruptcy Case for purposes of considering and effectuating the terms of the Settlement Agreement;[4]

---

[2] "Recalls" is defined in the Settlement Agreement as the following seven motor vehicle recalls conducted by New GM in 2014 as described by National Highway Transportation Safety Administration ("NHTSA") recall number: NHTSA Recall No. 14v047 (Delta Ignition Switch), NHTSA Recall No. 14v355 (Impala Key Rotation), NHTSA Recall No. 14v394 (Cadillac CTS/SRX Key Rotation), NHTSA Recall No. 14v400 (Malibu Key Rotation), NHTSA Recall No. 14v346 (Knee-to-Key Camaro), NHTSA Recall No. 14v118 (Side Airbag), and NHTSA Recall No. 14v153 (Power Steering). NHTSA Recall No. 14v047 encompassed the following vehicles: (1) 2005-2007 Chevrolet Cobalt; 2006-2007 Chevrolet HHR; 2007 Pontiac G5; 2007 Saturn Sky; 2003 Saturn Ion; and 2006-2007 Pontiac Solstice; and (2) 2008-2010 Chevrolet Cobalt; 2008-2011 Chevrolet HHR; 2008-2010 Pontiac G5; 2008-2010 Saturn Sky; and 2008-2010 Pontiac Solstice. NHTSA Recall No. 14v355 encompassed the 2005-2009 Buick Lacrosse; 2006-2014 Chevrolet Impala; 2000-2005 Cadillac Deville; 2006-2011 Cadillac DTS; 2006-2011 Buick Lucerne; and 2006-2007 Chevrolet Monte Carlo. NHTSA Recall No. 14v394 encompassed certain 2003-2014 Cadillac CTS (as identified by VIN); and certain 2004-2006 Cadillac SRX (as identified by VIN). NHTSA Recall No. 14v400 encompassed the 2000-2005 Chevrolet Impala; 1997-2003 Chevrolet Malibu; 2000-2005 Chevrolet Monte Carlo; 1999-2004 Oldsmobile Alero; 1998-2002 Oldsmobile Intrigue; 1999-2005 Pontiac Grand Am; and 2004-2008 Pontiac Grand Prix. NHTSA Recall No. 14v346 encompassed 2010-2014 Chevrolet Camaros. NHTSA Recall No. 14v118 encompassed some 2008-2009 (as identified by VIN) and all 2010-2013 Buick Enclave; some 2009 (as identified by VIN) and all 2010-2013 Chevrolet Traverse; some 2008-2009 (as identified by VIN) and all 2010-2013 GMC Acadia; and 2008-2010 Saturn Outlook. NHTSA Recall 14v153 encompassed some 2005-2010 Chevrolet Cobalt, some 2009-2010 Chevrolet HHR, some 2007-2010 Pontiac G5, 2004-2007 Saturn Ion, 2004-2005 Chevrolet Malibu; 2004-2005 Chevrolet Malibu Maxx and some 2006 Chevrolet Malibu Maxx (as identified by VIN); some 2005-2006 and 2008-2009 Pontiac G6 (as identified by VIN); and some 2008-2009 Saturn Aura (as identified by VIN).

[3] "Bankruptcy Case" is defined in the Settlement Agreement as the chapter 11 case pending in the United States Bankruptcy Court for the Southern District of New York captioned *In re Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.*, Case No. 09-50026 (MG).

[4] *See* Order Granting General Motors LLC's, the Motors Liquidation Company GUC Trust's, and Economic Loss Plaintiffs' Joint Motion to Withdraw the Reference of the Economic Loss Plaintiffs' Motion for an Order Granting Authority to File Late Class Proofs of Claim and Related Filings.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 9 of 281

Case 1:14-md-02543-JMF   Document 7816-1   Filed 03/27/20   Page 3 of 21

WHEREAS, for purposes of considering and effectuating the terms of the Settlement Agreement, the Court finds that it has jurisdiction over the Settlement Agreement and each of the Parties;

WHEREAS, the Court having reviewed and considered the Settlement Agreement including all accompanying exhibits (including the Declaration of the Class Action Settlement Administrator and Allocation Decision), the briefing and argument of the Parties made in support of preliminary approval of the Settlement Agreement, the Declaration of the Court-Appointed Economic Loss Settlement Mediator, the briefing and argument of any persons filing objections, and the Parties to the Settlement Agreement having requested that the Court enter this Order,

**IT IS HEREBY ORDERED AS FOLLOWS:**

## I.   PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

1.     The Court preliminarily approves the proposed Settlement Agreement, including the Allocation Decision, because the Parties have shown, and the Court concludes, that, pursuant to Federal Rule of Civil Procedure 23(e)(1)(B)(i), the Court will likely be able to grant final approval and find that the Settlement Agreement is fair, reasonable, and adequate, including that (i) Plaintiffs and Plaintiffs' Class Counsel have adequately represented the Class, (ii) the Subclass representatives and Allocation Counsel have adequately represented their respective Subclasses, (iii) the Settlement Agreement was entered into in good faith, free of collusion, through significant arm's-length negotiations assisted by the experienced Court-Appointed Economic Loss Settlement Mediator; (iv) the Allocation Decision was reached through arm's-length negotiations and presentations from Allocation Counsel and then determined by the Court-Appointed Economic Loss Settlement Mediator; (v) the relief provided for the Class and each Subclass is adequate taking into account the costs, risks, and delay of trial and appeal and

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 10 of 281

Case 1:14-md-02543-JMF    Document 7816-1    Filed 03/27/20    Page 4 of 21

the effectiveness of distributing relief; and (vi) the Settlement Agreement and Allocation

Decision treat Class Members equitably relative to each other.

2.      The Court authorizes establishment of the Common Fund in accordance with the

terms of the Qualified Settlement Fund Trust Agreement, which is attached to the Settlement

Agreement as Exhibit 7.  The Common Fund is established as a "qualified settlement fund"

within the meaning of Section 468B of the Internal Revenue Code and the Treasury Regulations

thereunder.  The Common Fund shall be operated in a manner consistent with the rules of

Treasury Regulation Section 1.468B-1, *et seq*.  The Court shall retain continuing jurisdiction and

supervision over the Common Fund, in accordance with the terms of the Qualified Settlement

Fund Trust Agreement.  The Court appoints Flora Bian of JND Legal Administration  as

Qualified Settlement Fund Administrator and Trustee to carry out all duties and responsibilities

of the Qualified Settlement Fund Administrator and Trustee as specified in the Settlement

Agreement, the Qualified Settlement Fund Trust Agreement and herein.

## II.      THE CLASS, CLASS REPRESENTATIVES, AND CLASS COUNSEL

3.      Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, for

purposes of the Settlement only, the Court finds that it will likely be able to certify the following

proposed settlement class:

> [A]ll Persons who, at any time as of or before the Recall Announcement Date of
> the Recall(s) applicable to the Subject Vehicle, own(ed), purchase(d), and/or
> lease(d) a Subject Vehicle in any of the fifty States, the District of Columbia,
> Puerto Rico, Guam, the U.S. Virgin Islands, and all other United States territories
> and/or possessions.

4.      Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, for

purposes of the Settlement only, the Court finds that it will likely be able to certify the following

proposed settlement subclasses:

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 11 of 281

Case 1:14-md-02543-JMF   Document 7816-1   Filed 03/27/20   Page 5 of 21

(i)     Subclass 1:  The Delta Ignition Switch Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall No. 14v047.

(ii)    Subclass 2:  The Key Rotation Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall Nos. 14v355, 14v394, and 14v400.

(iii)   Subclass 3:  The Camaro Knee-Key Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall No. 14v346.

(iv)    Subclass 4:  The Electric Power Steering Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall No. 14v153.

(v)     Subclass 5:  The Side Airbag Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall No. 14v118.

5.      The Court finds, for settlement purposes only, that the Class, including all Subclasses as defined above, will likely meet the requirements for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3)—namely (a) the Class Members are sufficiently numerous such that joinder is impracticable; (b) there are common questions of law and fact; (c) the Plaintiffs' claims are typical of those of the Class Members; (d) the Plaintiffs and Plaintiffs' Class Counsel have adequately represented, and will continue to adequately represent, the interests of the Class Members, and the Subclasses are adequately represented by proposed Subclass Counsel, which includes the attorneys who served as Allocation Counsel; and (e) questions of law and fact common to the Class predominate over the questions affecting only individual Class Members and certification of the Class is superior to other available methods for the fair and efficient adjudication of this controversy.

6.      The Class and Subclasses are subject to the exclusions set forth in Paragraph 12 of the Settlement Agreement.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 12 of 281

Case 1:14-md-02543-JMF    Document 7816-1    Filed 03/27/20    Page 6 of 21

7.     The Class and Subclasses, if certified in connection with Final Approval, shall be for settlement purposes only and without prejudice to the Parties in the event the Settlement is not finally approved by this Court or otherwise does not take effect.

8.     The Court, for settlement purposes only, appoints the following Plaintiffs as interim class representatives for the Class:

Valeria Glenn, Gerald Smith, Marion Smoke, Camille Burns, Joe Glover, Nettleton Auto Sales, Inc., Grace Belford, Barbara Hill, Ray Wieters, Patricia Barker, Chimen Basseri, Michael Benton, Sylvia Benton, Kimberly Brown, Kellie Cereceres, Crystal Hardin, Yvonne James-Bivins, Javier Malaga, Winifred Mattos, Santiago Orosco, David Padilla, Esperanza Ramirez, William Rukeyeser, Michelle Thomas, Trina Bruche, John Marvin Brutche, Jr., Margaret Lesnansky, Yvonne Elaine Rodriguez, Annet Tivin, Nathan Terry, Wandell Littles Beazer, Stacey Bowens, Robert Deleo, Celeste Deleo, Michael Pesce, Lisa Teicher, Tracey Perillo, LaTonia Tucker, Joni Ferden-Precht, Debra Forbes, Kim Genovese, Rhonda Haskins, Maria E. Santiago, Harvey Sobelman, Verlena Walker, Neysa Williams, Rochelle Bankhead, Carla Cartwright, Dale Dowdy, Jennifer Dunn, Towana Ferguson, Jenny Mathis, Billy Mosley, Clifford Turner, Barry Wilborn, Dennis Walther, Patricia Backus, Susan Benner, Debra Cole, Charlene Kapraun, Keith Nathan, Patrick Painter, Cliff Redmon, Lane Blackwell, Jr., Martha Cesco, Heather Holleman, Valerie Mortz Rogers, Cheryl Reed, Karen Rodman, Heidi Wood, Alphonso Wright, James Dooley, Lyle Wirtles, Carl Bosch, Evelyn Bosch, Phyllis Hartzell, Philip Zivnuska, Elizabeth Stewart, Dawn Talbot, Frances Ann Fagans, Lori Green, Raymond Naquin, Lisa West, Debra Quinn, Harry Albert, Marc Koppleman, Madelaine Koppelman, Melody Lombardo, Jerrod Pinkett, Robert Wyman, Debra Companion, Colin

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 13 of 281

Case 1:14-md-02543-JMF   Document 7816-1   Filed 03/27/20   Page 7 of 21

Elliott, Richard Leger, Susan Viens, Brittany Vining, Sheree Anderson, Marquetta Chestnut, Diana Cnossen, Rafael Lanis, Sophia Marks, David Price, Brian Semrau, Jacqueline Smith, Bryan Wallace, Franklin Wloch, Anna Allshouse, David Cleland, Janelle Davis, William Hill, Christine Leonzal, Cynthia Shatek, Jennifer Sullivan, Larry Haynes, Frances Howard, Elizabeth D. Johnson, Ashley Murray, Youloundra Smith, Linda Wright, Brad Akers, Deloris Hamilton, Cynthia Hawkins, Kenneth Robinson, Ronald Robinson, Mario Stefano, Christopher Tinen, Patrice Witherspoon, Laurie Holzwarth, Susan Rangel, Bonnie Hensley, Sandra Horton, Wayne Wittenberg, Crystal Mellen, Michael Amezquita, Heather Francis, Anthony Juraitis, Gene Reagan, Steven Sileo, Javier Delacruz, Lorraine De Vargas, Arteca Heckard, Bernadette Romero, Irene Torres, Renate Glyttov, Sandra Levine, Nicole Mason, Donna Quagliana, Michael Rooney, William Ross, Richelle Draper, Gwen Moore, Leland Tilson, Jolene Mulske, Lisa Axelrod, Gail Bainbridge, Tracie Edwards, Georgianna Parisi, Peggy Robinson, Bradley Siefke, Steven M. Steidle, Bonnie Taylor, William Troiano, Reggie Welch, Carleta Burton, Deneise Burton, Debra Cummings, Jerrile Gordon, Paulette Hand, Jennifer Reeder, Bruce Wright, Denise Wright, William Bernick, Shelton Glass, Janice Bagley, Raymond Berg, Shawn Doucette, Shirley Gilbert, George Mathis, Paul Pollastro, David Schumacher, Greg Theobald, Mary Dias, Garrett Mancieri, Annette Hopkins, Frances James, Cassandra Legrand, Kimberly Mayfield, Edith Williams, Norma Lee Holmes, Catherine Senkle, Helen A. Brown, Alexis Byrd, Felisha Johnson, Sharon Newsome, Louise Tindell, Silas Walton, Gareebah Al-ghamdi, Dawn Bacon, Dawn Fuller, Michael Graciano, Shenyesa Henry, Keisha Hunter, Lisa McClellan, Lisa Simmons, Malinda Stafford, Alexis Crockett, Blair Tomlinson, Paul Jenks, Reynaldo

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 14 of 281

Case 1:14-md-02543-JMF   Document 7816-1   Filed 03/27/20   Page 8 of 21

Spellman, Michael Garcia, Tony Hiller, Stephanie Renee Carden, Melinda Graley, Nancy

Bellow, Thomas Linder, Les Rouse, and Christy Smith.

9.     The Court, for settlement purposes only, appoints the following Plaintiffs as

interim representatives of each Subclass:

Subclass 1: Valeria Glenn, Marion Smoke, Grace Belford, Barbara Hill,

Ray Wieters, Camille Burns, Chimen Basseri, Michael Benton, Sylvia Benton,

Kimberly Brown, Crystal Hardin, Javier Malaga, Winifred Mattos, William

Rukeyeser, Yvonne Elaine Rodriguez, Annet Tivin, Nathan Terry, Michael Pesce,

LaTonia Tucker, Neysa Williams, Jennifer Dunn, Barry Wilborn, Patricia Backus,

Susan Benner, Heather Holleman, Alphonso Wright, James Dooley, Philip

Zivnuska, Dawn Talbot, Lisa West, Debra Quinn, Robert Wyman, Colin Elliott,

Richard Leger, Sheree Anderson, Rafael Lanis, Anna Allshouse, Janelle Davis,

William Hill, Elizabeth D. Johnson, Linda Wright, Kenneth Robinson, Laurie

Holzwarth, Susan Rangel, Sandra Horton, Wayne Wittenberg, Michael

Amezquita, Steven Sileo, Javier Delacruz, Bernadette Romero, Donna Quagliana,

Michael Rooney, William Ross, Leland Tilson, Jolene Mulske, Bonnie Taylor,

Jerrile Gordon, Paulette Hand, William Bernick, Janice Bagley, Shawn Doucette,

Shirley Gilbert, George Mathis, Paul Pollastro, Mary Dias, Garrett Mancieri,

Frances James,  Norma Lee Holmes, Helen A. Brown, Silas Walton, Michael

Graciano, Keisha Hunter, Alexis Crockett, Blair Tomlinson, Melinda Graley, and

Nancy Bellow.

Subclass 2: Gerald Smith, Joe Glover, Yvonne James-Bivins, Michelle

Thomas, Trina Bruche, John Marvin Brutche, Jr., Wandell Littles Beazer, Stacey

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 15 of 281

Case 1:14-md-02543-JMF   Document 7816-1   Filed 03/27/20   Page 9 of 21

Bowens, Debra Forbes, Rhonda Haskins, Verlena Walker, Jenny Mathis, Debra Cole, Charlene Kapraun, Keith Nathan, Martha Cesco, Cheryl Reed, Lyle Wirtles, Lori Green, Raymond Naquin, Jerrod Pinkett, Brittany Vining, Sophia Marks, David Price, Brian Semrau, Franklin Wloch, Christine Leonzal, Larry Haynes, Youloundra Smith, Deloris Hamilton, Ronald Robinson, Heather Francis, Arteca Heckard, Irene Torres, Gwen Moore, Lisa Axelrod, Tracie Edwards, Georgianna Parisi, Bradley Siefke, Steven M. Steidle, William Troiano, Carleta Burton, Shelton Glass, Annette Hopkins, Cassandra Legrand, Kimberly Mayfield, Gareebah Al-ghamdi, Dawn Bacon, Dawn Fuller, and Malinda Stafford.

Subclass 3: Santiago Orosco, Harvey Sobelman, Billy Mosley, Cliff Redmon, Valerie Mortz Rogers, Harry Albert, Ashley Murray, Mario Stefano, Debra Cummings, Bruce Wright, Denise Wright, and Sharon Newsome.

Subclass 4: Celeste Deleo, Dale Dowdy, Lane Blackwell, Jr., Melody Lombardo, Susan Viens, Reggie Welch, Felisha Johnson, and Reynaldo Spellman.

Subclass 5: Kellie Cereceres, Margaret Lesnansky, Joni Ferden-Precht, Rochelle Bankhead, Towana Ferguson, Heidi Wood, Carl Bosch, Evelyn Bosch, Bryan Wallace, Jennifer Sullivan, Christopher Tinen, Bonnie Hensley, Richelle Draper, Gail Bainbridge, Raymond Berg, David Schumacher, Greg Theobald, Alexis Byrd, Paul Jenks, and Christy Smith.

10. The Court appoints, for settlement purposes only, Steve W. Berman, of Hagens Berman Sobol Shapiro LLP and Elizabeth J. Cabraser of Lieff Cabraser Heimann & Bernstein, LLP as interim Class Counsel under Federal Rule of Civil Procedure 23(g)(3). Class Counsel are

9

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 16 of 281

Case 1:14-md-02543-JMF   Document 7816-1   Filed 03/27/20   Page 10 of 21

authorized to act on behalf of the Class with respect to all acts required by, or which may be given pursuant to, the Settlement Agreement or such other acts that are reasonably necessary to consummate the proposed Settlement set forth in the Settlement Agreement.

11.     The Court appoints on an interim basis, for settlement allocation purposes only, (i) Marc Seltzer of Susman Godfrey as Subclass 1 Counsel; (ii) Joe Rice and Kevin Dean of Motley Rice as Subclass 2 Counsel; (iii) Peter Prieto and Matthew Weinshall of Podhurst Orseck, P.A. as Subclass 3 Counsel; (iv) David Boies and Steven Davis of Boies Schiller Flexner LLP as Subclass 4 Counsel; and (v) Adam Levitt and John Tangren of DiCello Levitt Gutzler as Subclass 5 Counsel (collectively, "Subclass Counsel").  Subclass Counsel are authorized to act on behalf of the Subclasses with respect to all acts required by, or which may be given pursuant to, the Settlement Agreement or such other acts that are reasonably necessary to consummate the proposed Settlement set forth in the Settlement Agreement.

### III.     APPROVAL OF THE FORM AND MANNER OF NOTICE

12.     Class Notice will be accomplished through a program overseen by the Class Action Settlement Administrator utilizing a combination of the Short Form Notice, Summary Settlement Notice, nationwide press releases, notice through the Settlement website, and Long Form Notice. Specifically, the Class Action Settlement Administrator shall (i) arrange for publication of the Summary Settlement Notice, substantially in the form attached as Exhibit 12 to the Settlement Agreement, in *People* magazine, and (ii) cause the dissemination of nationwide press releases, as described in the Declaration of the Class Action Settlement Administrator, in substantially the form agreed upon by the Parties and attached to the Settlement Agreement as Exhibits 16 and 17 at the commencement of the Class Notice program and again shortly before the deadline for the Settlement Claim Period.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 17 of 281

Case 1:14-md-02543-JMF    Document 7816-1    Filed 03/27/20    Page 11 of 21

13.    Additionally, the Class Action Settlement Administrator shall send the Short

Form Notice, substantially in the form attached to the Settlement Agreement as Exhibit 11, as

direct notice by postcard via first class U.S. mail, proper postage prepaid, to the Class Members

as identified by vehicle registration data after utilizing a service for updating addresses.  In

addition, the Class Action Settlement Administrator shall: (a) re-mail promptly any Short Form

Notices returned by the United States Postal Service with a forwarding address; and (b) utilize

other methods to identify Class Members for any returned Short Form Notices that do not

include a forwarding address, such as address research firms or email identification services,

deemed proper by the Class Action Settlement Administrator.

14.    The Court finds that both the Short Form and Summary Settlement Notice

sufficiently inform potential Class Members how to obtain the Long Form Notice via the

Settlement website, via regular mail, or via a toll-free telephone number, pursuant to Sections

III.E and III.F of the Settlement Agreement.  The Long Form Notice shall be made available to

Class Members in substantially the form attached as Exhibit 5 to the Settlement Agreement via

the Settlement website and via regular mail upon request made by a Class Member via the

website or the toll-free telephone number.

15.    Pursuant to Federal Rules of Civil Procedure 23(e)(1) and 23(c)(2)(B), the Court

finds that the content, format, and method of disseminating Class Notice set forth in the

Settlement Agreement, including the form and content of the proposed forms of Class Notice

attached as Exhibits 5 (Long Form Notice), 11 (Short Form Notice), and 12 (Summary

Settlement Notice) to the Settlement Agreement, is the best notice practicable under the

circumstances and satisfies all legal requirements, including Federal Rule of Civil Procedure

23(c)(2)(B) and the Due Process Clause.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 18 of 281

Case 1:14-md-02543-JMF   Document 7816-1   Filed 03/27/20   Page 12 of 21

16.     The Court further finds that the proposed forms of Class Notice clearly and concisely state in plain, easily understood language, *inter alia*: (i) the nature of the Actions; (ii) the definition of the Class and the Subclasses; (iii) the nature of the Class claims and issues; (iv) that a Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Class any member who timely and validly requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on Class Members under Federal Rule of Civil Procedure 23(c)(3).

17.     The Court further finds that the Class Notice informs Class Members of the Settlement in a reasonable manner under Federal Rule of Civil Procedure 23(e)(1)(B) because it fairly apprises the prospective Class Members of the terms of the proposed Settlement and of the options that are open to them in connection with the proceedings.

18.     The Court therefore approves the proposed Class Notice plan, and hereby directs that such notice be disseminated to Class Members in the manner set forth in the Settlement Agreement and described in the Declaration of the Class Action Settlement Administrator attached as Exhibit 14 to the Settlement Agreement under Federal Rule of Civil Procedure 23(e)(1).  The Plaintiffs, New GM, and the GUC Trust are directed to take all necessary and appropriate steps to disseminate Class Notice, including Notice substantially in the forms attached as Exhibits 5 (Long Form Notice), 11 (Short Form Notice), and 12 (Summary Settlement Notice) to the Settlement Agreement.

19.     The Court appoints Jennifer Keough of JND Legal Administration ("JND") as Class Action Settlement Administrator and directs Ms. Keough to carry out all duties and responsibilities of the Class Action Settlement Administrator as specified in the Settlement Agreement and herein.  The Court authorizes the Class Action Settlement Administrator, through

12

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 19 of 281

Case 1:14-md-02543-JMF    Document 7816-1    Filed 03/27/20    Page 13 of 21

data aggregators or otherwise, to request, obtain and utilize vehicle registration information from

the Department of Motor Vehicles for all 50 states, the District of Columbia, Puerto Rico, Guam,

the U.S. Virgin Islands and all other United States territories and/or possessions for the purposes

of identifying the identity of and contact information for purchasers and lessees of Subject

Vehicles.  Vehicle registration information includes, but is not limited to, owner/lessee name and

address information, registration date, year, make, and model of the vehicle.

20.    Pursuant to the Settlement Agreement, all Settlement Implementation Expenses,

including but not limited to the costs of Class Notice and retention of the Class Action

Settlement Administrator and the Qualified Settlement Fund Administrator and Trustee, shall be

paid from the Common Fund, but only upon written approval by Plaintiffs' Class Counsel, New

GM, and the GUC Trust.

### IV.    SETTLEMENT PARTICIPATION, EXCLUSION, AND OBJECTION PROCEDURES

21.    Class Members must submit a timely Settlement Claim Form in order to become a

Settlement Claimant eligible for a settlement payment pursuant to Section II.A of the Settlement

Agreement.  All Settlement Claim Forms must be submitted during the Settlement Claim Period.

22.    The Settlement Claim Period, during which Class Members may submit a

Settlement Claim Form for review by the Class Action Settlement Administrator, will begin on

the date of this Order and end 90 days after the Final Effective Date.  Any Settlement Claim

submitted after the Settlement Claim Period concludes will be rejected by the Class Action

Settlement Administrator as untimely, and cannot qualify for a settlement payment.

23.    The Class Action Settlement Administrator shall not begin to review and evaluate

Settlement Claims for eligibility until after the occurrence of the Final Effective Date.

Settlement Claims approved by the Class Action Settlement Administrator shall be paid from the

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 20 of 281

Case 1:14-md-02543-JMF    Document 7816-1    Filed 03/27/20    Page 14 of 21

Net Common Fund by the Qualified Settlement Fund Administrator and Trustee in accordance with the final determinations made by the Class Action Settlement Administrator pursuant to the Settlement Claim Review Protocol, the Allocation Decision, and the terms of the Settlement Agreement and the Qualified Settlement Fund Trust Agreement.

24.    As detailed in Section IV of the Settlement Agreement, all Persons who request to become Opt-Outs must do so by mailing a written, hand-signed request to the Class Action Settlement Administrator at the address provided in the Long Form Notice (Exhibit 5 to the Settlement Agreement), specifying that such Person wants to become an Opt-Out, the dates of ownership or lease of the Subject Vehicle, the make, model, model year, and VIN of the Subject Vehicle, the Person's current address, the Person's address at the time of ownership or lease of the Subject Vehicle, and otherwise complying with the terms stated in the Long Form Notice and this Order.  The Opt-Out request must be postmarked no later than _____, which is 175 days after entry of this Order (the "Opt-Out Deadline").

25.    Potential Class Members who exercise the right to opt out of the Settlement must do so for all claims that the Potential Class Member possesses against the GUC Trust, Old GM, or New GM.

26.    Any potential Class Member who has submitted a timely and valid request to become an Opt-Out may revoke such request by filing written notice of such revocation with the Court at any time prior to entry of the Final Judgment.

27.    The Class Action Settlement Administrator shall provide to Plaintiffs' Class Counsel, New GM's Counsel, and the GUC Trust's counsel a weekly list of the Opt-Outs categorized by Subject Vehicle.

14

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 21 of 281

Case 1:14-md-02543-JMF   Document 7816-1   Filed 03/27/20   Page 15 of 21

28.     No later than thirty (30) days before the date of the Fairness Hearing, the Class
Action Settlement Administrator shall file with this Court, under seal, a list of those Persons who
seek to become Opt-Outs, as well as a declaration outlining the scope, method, and results of the
Class Notice program.

29.     Any potential Class Member who does not file a timely written request to become
an Opt-Out in compliance with paragraph 24 hereof shall be bound by all subsequent
proceedings, orders and judgments, including, but not limited to, the Class Members' Release,
the Final Order, and the Final Judgment, even if such Class Member has litigation pending or
subsequently initiates or attempts to initiate litigation against any Released Party relating to the
claims and transactions released under the Settlement Agreement.

30.     If a potential Class Member files a request to become an Opt-Out, such Person
may not file an objection to the Settlement, Final Order, or Final Judgment.

31.     Any Class Member who has not filed a timely written request to become an Opt-
Out and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement
Agreement, to the award of Attorneys' Fees and Expenses, or the Plaintiff Incentive Awards,
must deliver to Plaintiffs' Class Counsel, New GM's Counsel, and the GUC Trust's Counsel,
each as identified in the Class Notice, and also file with this Court a written statement of the
Class Member's objections (a "Settlement Objection").  The Settlement Objection must be
postmarked by _____, which is 175 days after entry of this Order.

32.     Any such Settlement Objection must include the specific reason(s) for the
objection, including any legal support the Class Member wishes to bring to the Court's attention,
any evidence or other information the Class Member wishes to introduce in support of the
Settlement Objection, and a statement of whether the Class Member intends to appear and speak

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 22 of 281

Case 1:14-md-02543-JMF    Document 7816-1    Filed 03/27/20    Page 16 of 21

at the Fairness Hearing in support of the Settlement Objection.  The Settlement Objection must also include proof that the Person is a Class Member, including, the Person's date(s) of ownership or lease of the Subject Vehicle(s), the make, model, model year and the VINs of the Subject Vehicle(s) to which the Settlement Objection applies, the Person's current address, and the Person's address at the time of ownership or lease of the Subject Vehicle.

33.    Any Class Member who files and serves a Settlement Objection, as described herein and in Section V of the Settlement Agreement, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to speak in support of such objection.  Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear at the Fairness Hearing to Plaintiffs' Class Counsel, New GM's Counsel, and the GUC Trust's Counsel, each as identified in the Class Notice, and also file said notice with this Court.  All attorneys who will be representing Class Members shall, at their own or those Class Members' expense, file a notice of appearance in the MDL as directed in the Settlement Agreement and Long Form Notice.

34.    Only Class Members who have filed and served valid and timely Settlement Objections in accordance with paragraphs 31, 32, and 33 hereof shall be entitled to be heard at the Fairness Hearing.  Any Class Member who does not timely file and serve a Settlement Objection in writing in accordance with the procedures set forth in the Settlement Agreement, and mandated by this Order shall waive and forfeit any and all rights such Class Member may have to appear separately and/or to object to the Settlement at the Fairness Hearing, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments, including, but not limited to, the Class Members' Release, the Final Order, the Final Judgment and the GUC Trust Approval Order.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 23 of 281

Case 1:14-md-02543-JMF    Document 7816-1    Filed 03/27/20    Page 17 of 21

35.    Any Class Member who objects to the Settlement shall be entitled to all of the benefits of the Settlement if the Settlement Agreement and the terms contained therein are approved, as long as the objecting Class Member complies with all requirements of the Settlement Agreement applicable to Class Members, including the timely submission of Settlement Claim Forms and other requirements herein.

### V.    JOINT HEARING, FAIRNESS HEARING, AND DEADLINES

36.    The Parties provided proper notice of, and the MDL Court and the Bankruptcy Court held a Joint Hearing on April 23, 2020 at 9:30 a.m. before the Honorable Jesse M. Furman and the Honorable Martin Glenn regarding: (a) the Parties' *Joint Motion for Preliminary Approval*; (b) the Parties' *Joint Motion to Withdraw the Reference of the Economic Loss Plaintiffs' Motion for an Order Granting Authority to File Late Class Proofs of Claim and Related Filings*; and (c) the GUC Trust's *Motion for Entry of an Order Approving (I) the GUC Trust Administrator's Actions; (II) the Settlement Agreement and the Release Agreement Pursuant to Federal Rule of Bankruptcy Procedure 9019, and (III) the Reallocation of GUC Trust Assets*.

37.    The Court will hold a Fairness Hearing on _____, 2020, at _____ in the Courtroom of the Honorable Jesse M. Furman, United States District Judge for the Southern District of New York, located at 40 Centre Street, New York, NY 10007.  The purpose of the Fairness Hearing will be to: (i) determine whether the proposed Settlement is fair, reasonable and adequate to the Class, and should be approved by the Court; (ii) determine whether judgment should be entered pursuant to the Settlement Agreement, dismissing the Actions with prejudice and granting the Class Members' Release; (iii) determine whether the Class should be finally certified for purposes of settlement; (iv) consider any properly filed Settlement Objections; and

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 24 of 281

Case 1:14-md-02543-JMF   Document 7816-1   Filed 03/27/20   Page 18 of 21

(v) consider any other matters necessary in connection with the final approval of the Settlement Agreement.

38.    The Court may, in its discretion, modify the date and/or time of the Fairness Hearing, the Joint Hearing, or any other dates or deadlines.  In the event the Court changes the date and/or time of the Fairness Hearing, the new date and time shall be posted on the Settlement Website.

39.    No later than _____, *i.e.*, 195 days after entry of this Order, the Parties and/or any Class Member supporting the Settlement may submit briefing and any related materials in response to any Settlement Objections and/or in support of the Settlement.

40.    No later than _____, *i.e.*, 154 days after entry of this Order, Class Counsel shall file the application for Attorneys' Fees and Expenses in accordance with the terms of Section VIII of the Settlement Agreement.

## VI.    OTHER PROVISIONS

41.    Plaintiffs' Class Counsel, New GM's Counsel, and the GUC Trust's Counsel are authorized to take, without further Court approval, all necessary and appropriate steps to implement the Settlement Agreement according to its terms, including the Class Notice program.

42.    If the Settlement Agreement is not approved by the Court or is terminated in accordance with its terms, the Settlement Agreement and any actions taken or to be taken in connection therewith (including this Preliminary Approval Order and any judgment entered herein), shall be terminated and shall become null and void and of no further force and effect except for (i) any obligations to pay for any expense incurred in connection with Notice and administration as set forth in the Settlement Agreement, and (ii) any other orders, obligations or provisions that are expressly designated in the Settlement Agreement to survive the termination of the Settlement Agreement.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 25 of 281

Case 1:14-md-02543-JMF   Document 7816-1   Filed 03/27/20   Page 19 of 21

43.     Plaintiffs' Class Counsel may petition the Court for Plaintiff Incentive Awards for some or all Plaintiffs for their time in connection with the Actions, in addition to the settlement payment amounts they receive for the Settlement Claims.[5]   Any individual incentive/service awards made to Plaintiffs must be approved by this Court and shall be paid by the Qualified Settlement Fund Administrator and Trustee out of the Common Fund, within the later of 30 days of the Final Effective Date or the expiration of any appeal period or the resolution of any and all appeals relating to the individual incentive/service awards.

44.     All Persons, including Plaintiffs, all potential Class Members and any parties in the Bankruptcy Case, are stayed and enjoined from all challenges or other litigation arising out of, in connection with, or related to the Settlement Agreement other than the litigation in this Court concerning final approval of this Settlement Agreement.

45.     Pending determination of whether the Settlement Agreement should be granted final approval, all Actions are stayed and all potential Class Members are enjoined from litigating, pursuing, making, or proceeding with any actions, claims, or other matters involving any economic loss claims relating to the Recalls or any vehicle subject to the Recalls.

46.     Without further order of the Court, the Parties may agree to make non-material modifications to the Settlement Agreement (including the exhibits thereto) in implementing the Settlement that are not inconsistent with this Preliminary Approval Order, including making minor changes to the Settlement Agreement, to the form or content of the Class Notice, or to any other exhibits that the Parties jointly agree in writing are reasonable or necessary.

---

[5] Plaintiffs' Class Counsel will propose that the Plaintiff Incentive Awards be in the amount of $2,000 for each of the Plaintiffs who were deposed in MDL 2543 and $1,000 for all other Plaintiffs.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 26 of 281

Case 1:14-md-02543-JMF   Document 7816-1   Filed 03/27/20   Page 20 of 21

47.    The Court shall retain jurisdiction over the Settlement Agreement and the Actions pending before this Court to consider all further matters arising out of or connected with the Settlement.

**IT IS SO ORDERED.**


Dated: _____          _____
                                  HONORABLE JESSE M. FURMAN
                                  UNITED STATES DISTRICT COURT JUDGE

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 27 of 281

Case 1:14-md-02543-JMF    Document 7816-1    Filed 03/27/20    Page 21 of 21

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 27, 2020, which will send notification of such filing to the e-mail addresses registered.

 */s/ Steve W. Berman*
Steve W. Berman

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 28 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 1 of 67

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION<br>SWITCH LITIGATION | No. 14-MD-2543 (JMF) |
| This Document Relates to:<br><br>*ALL ECONOMIC LOSS ACTIONS* | |

**MEMORANDUM IN SUPPORT OF THE PARTIES' JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF
CLASS FOR PURPOSES OF SETTLEMENT, APPROVAL OF NOTICE
PROCEDURES, AND APPOINTMENT OF CLASS COUNSEL & CLASS
<u>REPRESENTATIVES</u>**

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 29 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 2 of 67

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 4

    A.    This Case Has Been Intensively Litigated for More Than Five Years. ................. 4

    B.    The Proposed Settlement Resulted from Extensive Arm's-Length
          Negotiations Before a Highly Experienced and Respected Mediator. ............... 10

SUMMARY OF PROPOSED SETTLEMENT TERMS ........................................... 11

    A.    The Proposed Class Definition ............................................................. 11

    B.    The Proposed Settlement Fund ............................................................. 12

    C.    Plan of Allocation ............................................................................... 13

    D.    Releases ............................................................................................. 15

    E.    Notice and Class Action Settlement Administrator ............................... 15

    F.    Attorneys' Fees and Expenses .............................................................. 16

    F.    Plaintiff Incentive Awards ................................................................... 16

ARGUMENT ......................................................................................................... 17

I.    THE SETTLEMENT WILL LIKELY BE APPROVED AS FAIR,
      REASONABLE, AND ADEQUATE UNDER RULE 23(e)(2) ....................................... 17

    A.    As the Product of Arm's-Length Negotiations by Informed and
          Knowledgeable Counsel, the Settlement Is Presumptively Fair. .......... 19

    B.    The Terms of the Settlement Are Substantively Fair............................. 21

II.    CERTIFICATION OF THE CLASS, INCLUDING EACH SUBCLASS, AT
      FINAL APPROVAL IS LIKELY ................................................................. 35

    A.    The Proposed Class Meets the Requirements of Rule 23(a)................. 36

    B.    The Class Meets Rule 23(b)(3)'s Predominance and Superiority
          Requirements. ..................................................................................... 43

III.    THE COURT SHOULD APPOINT MR. BERMAN AND MS. CABRASER AS
      COUNSEL FOR THE CLASS, AND SUBCLASS COUNSEL AS COUNSEL
      FOR THE SUBCLASSES. ......................................................................... 47

IV.    THE PROPOSED FORMS AND MANNER OF NOTICE COMPLY WITH
      RULE 23 AND DUE PROCESS. ............................................................... 49

    A.    The Proposed Combination of Individual Mailed Notice, an Extensive
          Multimedia Notice Program, and a Settlement Website Is Reasonably
          Directed to Apprising Class Members of Their Rights. ....................... 49

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 30 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 3 of 67

**TABLE OF CONTENTS**
**(continued)**

Page

B.    The Proposed Notice Clearly and Concisely Informs Class Members About the Settlement's Terms and Their Rights.................................................. 52

C.    The Parties Have Selected an Experienced Class Action Settlement Administrator After a Competitive Bidding Process. .......................................... 53

V.    PROPOSED SCHEDULE .............................................................................................. 54

CONCLUSION......................................................................................................................... 55

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 31 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 4 of 67

## TABLE OF AUTHORITIES

**Page**

### CASES

*Amchem Prods., Inc. v. Windsor*,
　521 U.S. 591 (1997).................................................................................................. *passim*

*Bd. of Trustees of City of Birmingham Employees' Ret. Sys. v. Comerica Bank*,
　No. 09-CV-13201, 2013 WL 12239522 (E.D. Mich. Dec. 27, 2013) ..................................... 20

*Berni v. Barilla G. e R. Fratelli, S.p.A.*,
　332 F.R.D. 14 (E.D.N.Y. 2019) ................................................................................ 34

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
　No. 85 CIV. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ..................................... 24

*Carriuolo v General Motors Co.*,
　823 F.3d 977 (11th Cir. 2016) ................................................................................ 45

*Chamberlan v. Ford Motor Co.*,
　223 F.R.D. 524 (N.D. Cal. 2004)...................................................................... 38, 45

*City of Detroit v. Grinnell Corp.*,
　495 F.2d 448 (2d Cir. 1974) .................................................................................. 21

*Clark v. Ecolab Inc.*,
　Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198
　(S.D.N.Y. May 11, 2010)....................................................................................... 19

*Clemens v. Hair Club for Men, LLC*,
　No. 15-01431-WHA, 2016 WL 1461944 (N.D. Cal. April 14, 2016)..................................... 48

*Consol. Rail Corp. v. Town of Hyde Park*,
　47 F.3d 473 (2d Cir. 1995) .................................................................................... 36

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
　502 F.3d 91 (2d Cir. 2007) ................................................................................... 41

*D'Amato v. Deutsche Bank*,
　236 F.3d 78 (2d Cir. 2001) .................................................................................... 18

*Daffin v. Ford Motor Co.*,
　458 F.3d 549 (6th Cir. 2006) ................................................................................. 40

*Denney v. Jenkens & Gilchrist*,
　230 F.R.D. 317 (S.D.N.Y. 2005) ............................................................................. 46

*Dewey v. Wolkswagen Aktiengesellschaft*,
　681 F.3d 170 (3d Cir. 2012) .................................................................................. 42

*Dornberger v. Metro. Life Ins. Co.*,
　203 F.R.D. 118 (S.D.N.Y. 2001) ................................................................. 33, 34, 52

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 32 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 5 of 67

**TABLE OF AUTHORITIES**
(continued)

Page

*Doyle v. Chrysler Grp. LLC,*
  No. SACV 13-00620 JVS, 2014 WL 7690155 (C.D. Cal. Oct. 9, 2014) ................................. 39

*Edwards v. N. Am. Power & Gas, LLC,*
  No. 3:14-cv-01714 (VAB), 2018 WL 3715273 (D. Conn. Aug. 3, 2018)............................. 50

*Fleisher v. Phoenix Life Insurance,*
  Nos. 11-cv-8405, 14-cv-8714, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ...................... 34

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.,*
  301 F.R.D. 116 (S.D.N.Y. 2014) ............................................................................ 37

*Frank v. Eastman Kodak Co.,*
  228 F.R.D. 174 (W.D.N.Y. 2005)............................................................................ 45

*Ge Dandong v. Pinnacle Performance Ltd.,*
  No. 10 Civ. 8806(JMF), 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) ................................. 42

*Gen. Motors Corp. v. Bryant,*
  285 S.W.3d 634 (Ark. 2008)................................................................................. 45

*Gen. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982)........................................................................................... 37

*Godson v. Eltman, Eltman, & Cooper, P.C.,*
  328 F.R.D. 35 (W.D.N.Y. 2018)............................................................................ 35

*Gortat v. Capala Bros.,*
  257 F.R.D. 353 (E.D.N.Y. 2009)............................................................................ 35

*Green v. Wolf Corp.,*
  406 F.2d 291 (2d Cir. 1968) ................................................................................ 45

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .............................................................................. 47

*Hernandez v. Immortal Rise, Inc.,*
  306 F.R.D. 91 (E.D.N.Y. 2015)............................................................................ 33

*In re "Agent Orange" Prod. Liab. Litig.,*
  597 F. Supp. 740 (E.D.N.Y. 1984) .................................................................. 28, 52

*In re AOL Time Warner ERISA Litig.,*
  No. 02 Civ. 8853, 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006)........................... 20

*In re AOL Time Warner, Inc.,*
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................... 25

*In re Austrian & German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................................... 22

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 33 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 6 of 67

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
   999 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................................ 20

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
   No. 17-MD-02777-EMC, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ........................... 38, 39

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................... 17, 30

*In re Gen. Motors LLC Ignition Switch Litig.*,
   257 F. Supp. 3d 372 (S.D.N.Y. 2017) ........................................................................ 9

*In re Gen. Motors LLC Ignition Switch Litig.*,
   339 F. Supp. 3d 262 (S.D.N.Y. 2018) ........................................................................ 9

*In re Gen. Motors LLC Ignition Switch Litig.*,
   No. 14-MD-2543 (JMF), 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ................................ 9

*In re Gen. Motors LLC Ignition Switch Litig.*,
   No. 14-MD-2543 (JMF), 2017 WL 3382071 (S.D.N.Y. Aug. 3, 2017) ................................. 9

*In re Gen. Motors LLC Ignition Switch Litig.*,
   No. 14-MD-2543 (JMF), 2017 WL 6509256 (S.D.N.Y. Dec. 19, 2017) ................................ 9

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................... 19, 20

*In re Global Crossing Securities and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................ 26

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................ 31

*In re Initial Public Offering Secs. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ..................................................................... 28, 30

*In re Literary Works*,
   654 F.3d 242 (2d Cir. 2011) ................................................................................ 42

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ............................................................................ 51

*In re Michael Milken and Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................................. 21

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015) ...................................................................... 4

*In re Motors Liquidation Co.*,
   580 B.R. 319 (Bankr. S.D.N.Y. 2018) ...................................................................... 7

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 34 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 7 of 67

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Motors Liquidation Co.*,
    591 B.R. 501 (Bankr. S.D.N.Y. 2018) ................................................................. 7

*In re MyFord Touch Consumer Litig.*,
    No. 13-CV-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) ............... 52

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F.2d 1088 (5th Cir. 1977) .......................................................................... 49

*In re Nissan Radiator/Transmission Cooler Litig.*,
    No. 10 CV 7493 VB, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ................. 36, 39

*In re PaineWebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. Mar. 20, 1997) ......................................................... 19

*In re Payment Card Interchange Fee & Merchant Disc. Antitrust Litig.*,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013) ............................................................... 31

*In re Platinum and Palladium Commodities Litig.*,
    10-CV-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................. 18

*In re Prudential Inc. Secs. Ltd. P'ships Litig.*,
    MDL No. 1005, M-21-67, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) .............. 29

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
    No. 3:09CV1293 VLB, 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ................. 32

*In re Telik Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................... 31

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .................................................................... 27

*In re: Motors Liquidation*,
    829 F.3d 135 (2d Cir. 2016) ............................................................................... 6

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    No. 2672 CRB (JSC), 2016 WL 4010049  (N.D. Cal. July 26, 2016) ............... 38, 40

*Jermyn v. Best Buy Stores, L.P.*,
    No. 08 CIV. 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012) .................... 35

*Karic v. Major Auto. Cos.*,
    No. 09 CV 5708 (ENV), 2015 WL 9433847 (E.D.N.Y. Dec. 22, 2015) ................ 43

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ................................................................. 37, 45

*Kindle v. Dejana*,
    308 F. Supp. 3d 698 (E.D.N.Y. 2018) ............................................................... 35

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 35 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 8 of 67

**TABLE OF AUTHORITIES**
(continued)

Page

*Klay v. Humana*, Inc.,
  382 F.3d 1241 (11th Cir. 2004) ................................................... 44

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...................................... 24

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................ 24

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ...................................................... 40

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ...................................................... 39

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1998) ...................................................... 17

*Mba v. World Airways, Inc.*,
  369 F. App'x 194 (2d Cir. 2010) ............................................... 18

*McBean v. City of New York*,
  228 F.R.D. 487 (S.D.N.Y. 2005) ............................................... 44

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009) ...................................................... 17

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) .................................................... 44

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ....................................... 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .................................................................. 53

*n re Marsh & McLennan, Cos. Sec. Litig.*,
  No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................... 24, 25

*Nobles v. MBNA Corp.*,
  No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ...................... 31

*Norflet ex rel. Norflet v. John Hancock Life Ins. Co.*,
  658 F. Supp. 2d 350 (D. Conn. 2009) ....................................... 34

*Parkinson v. Hyundai Motor Am.*,
  258 F.R.D. 580 (C.D. Cal. 2008) ............................................... 45

*Ramirez v. Riverbay Corp.*,
  39 F. Supp. 3d 354 (S.D.N.Y. 2014) ......................................... 36

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 36 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 9 of 67

## TABLE OF AUTHORITIES
### (continued)

Page

*Reade-Alvarez v. Eltman, Eltman & Cooper P..C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ................................................ 22

*Ries v. Ariz. Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ............................................. 37

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ................................................... 39

*Rosen v. J.M. Auto Inc.*,
   270 F.R.D. 675 (S.D. Fla. 2009) ............................................. 45

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) ................................................... 44

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   293 F.R.D. 287 (E.D.N.Y. 2013) ............................................ 41

*Simerlein v. Toyota Motor Corp.*,
   No. 3:17-CV-1091 (VAB), 2019 WL 1435055 (D. Conn. Jan. 14, 2019) ............. 42

*Spann v. AOL Time Warner, Inc.*,
   No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ................. 17

*Strougo ex rel Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................... 18, 23

*Sykes v. Mel Harris & Assocs. LLC*,
   285 F.R.D. 279 (S.D.N.Y. 2012), *aff'd*, 780 F.3d 70 (2d Cir. 2015) ................. 38, 46

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ............................................. 22

*Torres v. Toback, Bernstein & Reiss LLP*,
   No. 11-CV-1368 NGG VVP, 2014 WL 1330957 (E.D.N.Y. Mar. 31, 2014) ......... 34

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ......... 28

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................ 17, 19, 49

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ...................................... 37, 40, 45, 47

*Zivkovic v. Laura Christy LLC*,
   329 F.R.D. 61 (S.D.N.Y. 2018) ............................................. 37

### RULES

Fed. R. Civ. P. 23(a)(2) ...................................................... 36

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 37 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 10 of 67

## TABLE OF AUTHORITIES
### (continued)

**Page**

Fed. R. Civ. P. 23(a)(4) .................................................................................................... 38

Fed. R. Civ. P. 23(b)(3) .............................................................................................. 40, 43

Fed. R. Civ. P. 23(b)(3)(D) ............................................................................................. 43

Fed. R. Civ. P. 23(c)(1)(B) ............................................................................................. 45

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 46, 50

Fed. R. Civ. P. 23(e)(2) .................................................................................................... 17

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................................. 19

Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ...................................... 18

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................................... 30

Fed. R. Civ. P. 23(g) ....................................................................................................... 38

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................................. 45

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 38 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 11 of 67

## PRELIMINARY STATEMENT[1]

The Economic Loss Plaintiffs ("Plaintiffs"), on behalf of themselves and other members

of the proposed Settlement Class,[2] are pleased to present their proposed Settlement with General

Motors LLC ("New GM") and the Motors Liquidation Company GUC Trust (the "GUC Trust")

to the Court.  This proposed Settlement would resolve all economic loss claims, whether asserted

as class, mass, or individual actions, that are consolidated for pretrial proceedings in the MDL

Court in *In re: General Motors Ignition Switch Litigation*, Case No. 14-MD-2543 (JMF) (the

"MDL" or "MDL 2543"),[3] as well all economic loss claims, including all Late Claims Motions

and all Proposed Proofs of Claims involving alleged economic loss, filed or asserted in the

Bankruptcy Case[4] pending before Judge Martin Glenn of the United States Bankruptcy Court for

the Southern District of New York (together, the "Actions").  Plaintiffs are current and/or former

owners/lessees of New GM or General Motors Corporation ("Old GM") vehicles containing

defective ignition switches, side airbags, or electric power steering systems that were included in

certain National Highway Traffic Safety Administration recalls (the "Subject Vehicles").[5]

The proposed Settlement follows six years of litigation, including multiple rounds of Fed.

R. Civ. P. 12(b)(6) and summary judgment motions; complex litigation in this Court, the

---

[1] Capitalized terms have the same meanings as in the Settlement Agreement.  The Declaration of Elizabeth J. Cabraser ("Cabraser Decl."), the Declaration of Steve W. Berman ("Berman Decl.") the Declaration of The Honorable Layn R. Phillips ("Phillips Decl."), and the Declaration of Jennifer M. Keough ("Keough Decl.") are being submitted contemporaneously in support of this motion.

[2] Unless otherwise indicated, all references to the Class refer to the overall Class as well as the five Subclasses, as detailed in the Settlement Agreement and Section III(A), *infra*.

[3] These include those listed in Exhibit 1 to the Settlement Agreement and all economic loss claims relating to the Recalls filed in the past, present or future in any federal or state court.

[4] *In re Motors Liquidation Company, et al., f/k/a General Motors Corp.*, Bankr. No. 09-50026.

[5] Those recalls are NHSTA Recall Nos. 14v049; 14v355, 14v394, 14v400; 14v346; 14v153; and 14v118 (collectively, the "Recalls").

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 39 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 12 of 67

Bankruptcy Court, and the Second Circuit; extensive fact and expert discovery, including production and review of over 23.4 million pages of documents and hundreds of depositions; and multiple mediation sessions over two years.  The Parties have now reached a favorable resolution for the Class that avoids the substantial risks and expense of continued litigation, including the risk of recovering less than the Settlement amount, or nothing at all.  The proposed Settlement Agreement resulted from arm's-length, good faith negotiations between and among experienced counsel under the auspices of a respected and experienced Court-ordered mediator, the Hon. Layn Phillips.  It provides a fair, reasonable, and adequate resolution of this litigation, which will substantially reduce costs and the expenditure of resources, eliminate the risk of uncertain litigation outcomes, and prevent further delay in remedying the harms suffered by Class Members.  Further, this Settlement, along with the personal injury/wrongful death settlements and judgments, and New GM's resolution of government enforcement actions and payment of fines, not only resolves Plaintiffs' claims but goes much of the way to facilitating the end of Old GM's long-running bankruptcy, this MDL, and the closing of a chapter that opened with the revelation of GM's alleged misconduct leading up to the 2014 recalls.

Accordingly, Plaintiffs respectfully request that the Court enter a Preliminary Approval Order, substantially in the form attached as Exhibit 6 to the Settlement Agreement: (1) granting preliminary approval of the proposed Settlement Agreement entered into between the Parties, including establishing and creating the Common Fund as a Qualified Settlement Fund Trust pursuant to Internal Revenue Code § 468B and the Regulations issued thereto; (2) determining that the Court, at the final approval stage, will likely certify the  Class as defined in the Settlement Agreement; (3) directing that notice be provided to proposed Class Members in the form and manner specified in the Settlement Agreement; (4) appointing Plaintiffs as

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 40 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 13 of 67

representatives of the proposed Class for purposes of disseminating notice, and certain Plaintiffs as representatives of the proposed Subclasses; (5) appointing Steve W. Berman, of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Elizabeth J. Cabraser of Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser," and together with Hagens Berman, "Plaintiffs' Class Counsel") as Class Counsel for the proposed Class; (6) appointing the Allocation Counsel and certain counsel appointed by the MDL Court to the Executive Committee (ECF No. 249) as Subclass Counsel; (7) authorizing the retention of Jennifer M. Keough of JND Legal Administration as Class Action Settlement Administrator, and directing Ms. Keough to carry out the duties and responsibilities of the Class Action Settlement Administrator specified in the Settlement Agreement; (8) appointing Flora Bian of JND as Qualified Settlement Fund Administrator and Trustee to carry out all duties and responsibilities of the Qualified Settlement Fund Administrator and Trustee as set forth in the Settlement Agreement and the Qualified Settlement Fund Trust Agreement; (9) establishing certain dates and procedures in connection with final approval of the Settlement Agreement, including but not limited to deadlines and procedures for Settlement objections, Opt-Outs, and Settlement Claims; and (10) scheduling a Fairness Hearing to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2), and whether the Class should be certified.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 41 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 14 of 67

## BACKGROUND

**A.    This Case Has Been Intensively Litigated for More Than Five Years.**

The Court is familiar with this longstanding Action and the allegations and claims in it. Plaintiffs therefore reference such facts below to the extent pertinent to the issues raised in the Motion.[6]

### 1.    Old GM's Bankruptcy and Sale to New GM

This case arises from GM's years-long concealment of multiple serious safety defects in its vehicles.  These hidden defects caused hundreds of fatalities and injuries, but were not disclosed until a series of unprecedented recalls (the "NHTSA Recalls") in 2014.

In June 1, 2009, prior to the NHTSA Recalls, General Motors Corporation ("Old GM") and certain of its affiliates (collectively, the "Debtors") filed for chapter 11 relief in the Bankruptcy Court and entered into an agreement (the "Sale Agreement") to sell substantially all of its assets to New GM in exchange for, *inter alia*, New GM common stock and warrants.  *See In re Motors Liquidation Co.*, 529 B.R. 510, 557 (Bankr. S.D.N.Y. 2015).   The Sale Agreement was approved on July 10, 2009 pursuant to the Sale Order.  A few months later, the Bankruptcy Court established November 30, 2009 as the deadline for filing proofs of claim against Old GM (the "Bar Date").  Old GM did not inform owners and lessees of the Subject Vehicles about the Bar Date at the time—despite its knowledge of the Subject Vehicle defects.  Subsequently, in February 2012, the Bankruptcy Court entered the Late Filed Claims Order, providing that any claims filed after entry of the Late Filed Claims Order would be deemed disallowed unless, *inter*

---

[6]   The background summarized in this section covers only a portion of the lengthy and complex litigation history of this case. Additional information and key case documents from MDL 2543 are available at the official website for the GM ignition switch litigation, https://gmignitionmdl.com/, as well as the case docket.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 42 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 15 of 67

*alia*, the claimant obtained leave of the Bankruptcy Court or written consent of the GUC Trust. *See* Bk. Doc. No. 11394.

### 2.      The Recalls

In February and March 2014, five years after its purchase of Old GM assets, New GM announced the recall of certain General Motors vehicles that had been manufactured with a defective ignition switch.  The ignition switch could accidentally turn off while the car was in motion, shutting down the engine, disabling power steering and braking, and deactivating airbags.  The initial wave of recalls impacted approximately 2.2 million vehicles.  In the subsequent months, New GM issued additional recalls concerning defective ignition switches affecting approximately 10 million additional vehicles.  New GM also issued a recall in March 2014 pertaining to over 1.1 million vehicles with defective side airbags, and another recall in March 2014 pertaining to over 1.3 million vehicles with defective power steering.  Overall, the GM defects at issue are alleged to have been linked to more than 120 deaths and more than 270 injuries.[7]

### 3.      The Old GM Bankruptcy Case

In the wake of the first wave of recalls, dozens of lawsuits were filed against New GM by owners and lessees of defective GM vehicles.  On April 21, 2014, New GM filed its first of three motions with the bankruptcy court seeking a ruling that owners of Old GM vehicles that were the subject of recalls were barred from asserting claims against New GM due to the "free and clear" sale provision.[8]  New GM's request precipitated years of litigation in the Bankruptcy Court

---

[7]  *See* Clifford Atiyeh, *GM Ignition Switch Review Complete: 124 Fatalities, 274 Injuries*, Car and Driver (Aug. 3, 2015), https://www.caranddriver.com/news/a15353429/gm-ignition-switch-review-complete-124-fatalities-274-injuries/.

[8] See *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, dated April 21, 2014* (Bk. Doc. No. 12620); *Motion of General Motors LLC*

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 43 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 16 of 67

involving numerous parties and a host of complex issues, including whether certain Plaintiffs should be granted authority to file proofs of claim after the Bar Date given Old GM's concealment of the vehicle defects, and whether the bankruptcy claims asserted by those owners or lessees were equitably moot.

In April 2015, the Bankruptcy Court ruled that Old GM failed to provide a subset of plaintiffs (the "Delta Ignition Switch Bankruptcy Plaintiffs" or the "Ignition Switch Plaintiffs") with constitutionally adequate notice of the Bar Date, but nonetheless concluded that the Sale Order could be used to enjoin claims related to the majority of GM vehicle defects. The Bankruptcy Court also invoked equitable mootness to bar relief for potential claims against the GUC Trust.

On July 13, 2016, the Second Circuit reversed that ruling in part. Specifically, the Second Circuit held that the timing of the disclosure of the Subject Vehicle defects by New GM effectively denied owners and lessees the right to weigh in on the Sale in violation of due process: "Our lack of confidence, however, is not imputed on plaintiffs denied notice but instead bolsters a conclusion that enforcing the Sale Order would violate procedural due process." *In re: Motors Liquidation*, 829 F.3d 135, 164 (2d Cir. 2016). The Second Circuit also vacated as advisory the Bankruptcy Court's decision on equitable mootness.

On December 22, 2016, certain Plaintiffs filed a motion seeking authority to file late class claims against the Old GM estate. Bk. Doc. No. 13806. On April 24, 2018, Plaintiffs filed amended exhibits to the motion to file late proofs of claim on behalf of the Subject Vehicle

---

*Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated Aug. 1, 2014 (Bk. Doc. No. 12807); and *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions), dated Aug. 1, 2014* (Bk. Doc. No. 12808).

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 44 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 17 of 67

Owners.  Bk. Doc. No. 14280.  These proposed proofs of claim include substantially similar claims to those asserted against New GM in the Fifth Amended and Consolidated Complaint filed against New GM.  Subsequently, counsel for the Economic Loss Plaintiffs, certain other Plaintiffs, the GUC Trust, and the Participating Unitholders engaged in good faith, arm's-length negotiations concerning a potential settlement that would resolve the many disputes related to the late claims motions.  However, GUC Trust decided not to execute the agreement, and, after conducting a trial, the Bankruptcy Court determined that the unexecuted settlement agreement was unenforceable.[9]

 After the GUC Trust retained new counsel and enacted management changes, a new settlement agreement was entered into by certain Plaintiffs and the GUC Trust on April 24, 2018 (and amended on May 22, 2018).  The Court held that that settlement as drafted could not be approved unless those Plaintiffs could certify one or more classes for settlement under Rule 23, and denied the motion without prejudice.  *See In re Motors Liquidation Co.*, 591 B.R. 501 (Bankr. S.D.N.Y. 2018).

 Following that decision, further negotiations ensued and in February 2019, a substantially similar settlement was reached between certain Plaintiffs and the GUC Trust that included class certification for settlement purposes.  However, before the Bankruptcy Court considered the motion to approve that settlement agreement, the MDL Court entered the August 6 Summary Judgment Ruling (defined below).  As a result of the August 6 Summary Judgment Ruling, the GUC Trust terminated the February 2019 settlement agreement and agreed to participate in mediation with New GM and Plaintiffs.  Various issues remain outstanding in the Bankruptcy Case, however, including litigation of (a) late claims, class, and mootness issues for certain

---

[9] *See In re Motors Liquidation Co.*, 580 B.R. 319 (Bankr. S.D.N.Y. 2018).

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 45 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 18 of 67

Ignition Switch Plaintiffs; (b) whether a due process violation exists with respect to other defects; and (c) assorted other matters, including remedies.[10]

### 4.    MDL 2543

In the wake of the Recalls and in parallel with the Old GM bankruptcy proceedings summarized above, numerous owners and lessees of defective vehicles filed suit against New GM.  In 2014, those lawsuits were consolidated in this Court by the Judicial Panel on Multidistrict Litigation, which established separate tracks for the personal injury and economic loss claims and appointed separate legal teams to lead each track.  Steve W. Berman of Hagens Berman Sobol Shapiro LLP and Elizabeth J. Cabraser of Lieff Cabraser Heimann & Bernstein, LLP were appointed Plaintiffs' Co-Lead Counsel with respect to the economic loss claims.

In the MDL action, Plaintiffs brought claims on behalf of putative classes of GM car owners and lessees whose vehicles were subject to those recalls, seeking to recover for "economic losses."  Specifically, the Complaint (as amended) alleges that Old GM and New GM knew about various defects in their vehicles for years but concealed the defects, causing Plaintiffs to overpay for defective vehicles, incur lost time and incidental damages, and (pre-Recalls) bear the costs of repairs while GM reaped the benefit of selling defective vehicles at inflated prices and avoiding the costs of a recall.  Plaintiffs sought monetary relief for their overpayments for the defective cars they purchased.

The operative complaint — the Fifth Amended Consolidated Complaint ("5ACC") — runs nearly 1700 pages and 7500 paragraphs, and includes state law claims in all fifty states and

---

[10] Simultaneous with this motion, Plaintiffs, New GM, and the GUC Trust are filing a *Joint Motion to Withdraw the Reference of the Economic Loss Plaintiffs' Motion for an Order Granting Authority to File Late Class Proofs of Claim and Related Filings* in the Old GM Bankruptcy action.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 46 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 19 of 67

the District of Columbia.  *See* ECF No. 4838.[11]  Over the past five years that the MDL has been

ongoing, Plaintiffs have reviewed more than 23 million pages of documents produced by the

Defendants, and more than 750 witnesses have been deposed, including experts, fact witnesses,

and plaintiffs.  The Parties have also engaged in multiple rounds of briefing on motions to

dismiss, summary judgment, class certification, and discovery issues.

After several rulings on the viability of economic loss claims under the law of various

jurisdictions,[12] the parties and the Court selected three "bellwether" states — California,

Missouri, and Texas (collectively, the "Bellwether States") — for summary judgment, class

certification, and Daubert motion practice.  *See* ECF No. 4499; ECF No. 4521.  Thereafter, the

parties filed a wide array of motions relating to Plaintiffs in these Bellwether States.  Plaintiffs

filed a motion to certify classes in each Bellwether State pursuant to Rule 23 of the Federal Rules

of Civil Procedure; New GM filed a motion for summary judgment with respect to the claims of

each putative class; and each side filed various Daubert motions challenging the testimony of

certain experts for the other side.  *See, e.g.*, ECF No. 5846; ECF No. 5859; ECF No.; ECF No.

6131.

New GM moved for summary judgment against the bellwether plaintiffs in July 2018.

In an Opinion and Order entered on August 6, 2019, the Court granted New GM's motion in

part, concluding in relevant part that Plaintiffs' evidence of the fair market value of the allegedly

defective vehicles they had purchased was insufficient as a matter of Bellwether State law, and

---

[11]  Except where otherwise indicated, references to "ECF No. ___" are to docket entries in the MDL.

[12]  *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262 (S.D.N.Y. 2018); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2017 WL 3382071 (S.D.N.Y. Aug. 3, 2017); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 392-94 (S.D.N.Y. 2017); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2017 WL 6509256 (S.D.N.Y. Dec. 19, 2017); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 3920353 (S.D.N.Y. July 15, 2016).

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 47 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 20 of 67

therefore failed to create a triable issue of fact on the issue of benefit-of-the-bargain damages (the "August 6 Summary Judgment Ruling"). *See* ECF No. 7019. In light of the ruling, the Court advised that "it may well make sense for the parties to revisit the issue of settlement." *Id.* at 43. The Court subsequently denied Plaintiffs' motion for reconsideration, but certified an order for interlocutory appeal with the acknowledgment that the issue on appeal "is a close one." *See* ECF 7616. Plaintiffs filed a petition for interlocutory appeal on December 23, 2019, which remains pending. *See In re: General Motors LLC Ignition Switch Litigation*, No. 19-4314 (2d Cir. Dec. 23, 2019) (Doc. No. 1). Other issues in the Action also remain pending, including New GM's renewed motion for summary judgment (ECF No. 7095), New GM's motion to exclude expert opinion (ECF No. 7100), and Plaintiffs' claims under the laws of forty seven other states and the District of Columbia.

**B.    The Proposed Settlement Resulted from Extensive Arm's-Length Negotiations Before a Highly Experienced and Respected Mediator.**

Section I A(3) above addresses the multiple efforts between Plaintiffs and the GUC Trust to reach resolution following the Second Circuit's July 13, 2016 ruling on due process. In addition to, and at some point parallel to, those discussions, this Court appointed the Hon. Layn R. Phillips, a retired federal judge, as the Economic Loss Settlement Mediator. ECF No. 4525. Plaintiffs and New GM, who had engaged in earlier less formal (and non-fruitful) settlement discussions, participated in in-person mediation sessions with Judge Phillips in December 2017 and two sessions in October 2018, but were unable to resolve the claims. *See* Phillips Decl. ¶¶ 10, 12-13.

After the Court's August 6 Summary Judgment Ruling, Plaintiffs and New GM, joined by GUC Trust and the Participating Unitholders, recommended active settlement discussions. *Id.* ¶ 16. On September 11, 2019, the parties met for an in-person mediation session, and later

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 48 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 21 of 67

participated in two additional in-person sessions with Judge Phillips on December 10, 2019 and

January 8, 2020, and engaged in multiple communications outside the presence of Judge Phillips.

*Id.* ¶¶ 20, 27, 29.  On January 8, 2020, the Parties agreed to certain key terms that could form the

basis of a settlement, subject to Class Counsel and New GM reaching an agreement as to

attorneys' fees and expenses and the Parties reaching a definitive, written Settlement Agreement,

with other material terms yet to be negotiated.  *Id.* ¶ 29.  After the January 8, 2020 mediation

session, the Parties then proceeded to negotiate the terms of the Settlement Agreement, *id.* ¶ 31,

which was fully executed on March 27, 2020.

In parallel to the Parties' negotiations over other terms of the Settlement Agreement,

Judge Phillips also presided over discussions regarding the manner in which the Common Fund

would be allocated among the various Subclasses of the Class.  Judge Phillips held a session on

February 21, 2020 relating to allocation of the Common Fund amongst the Subclasses, at which

Allocation Counsel[13] made presentations as to the Subclasses each was representing for purposes

of the development of an allocation plan.  *Id.* ¶ 14.  Following this session, Judge Phillips issued

an Allocation Decision on March 25, 2020.

## SUMMARY OF PROPOSED SETTLEMENT TERMS

### A.    The Proposed Class Definition

The Class is defined as:

All persons, entities or organizations who, at any time as of or before the date of the
applicable recalls, own or owned, purchase(d), or lease(d) a Subject Vehicle identified as
"personal," "commercial," "financial," and "other" in the IHS Markit "Polk" data (but
not purchasers and lessees identified as "rental" or "governmental" in the Polk data) in
any of the fifty States, the District of Columbia, Puerto Rico, Guam, the U.S. Virgin
Islands, and all other United States territories and/or possessions.

---

[13]  A Court-appointed duty of the Plaintiffs' Executive Committee is to serve as allocation counsel.  *See* ECF
No. 304.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 49 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 22 of 67

The Subject Vehicles are defined as the GM vehicles subject to the Recalls as defined by

the VINs provided by New GM to the Class Action Settlement Administrator.[14]

Additionally, the Settlement Agreement defines five Subclasses (the "Subclasses"):

- Subclass 1: The Delta Ignition Switch Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall No. 14v047.
- Subclass 2: The Key Rotation Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall Nos. 14v355, 14v394, and 14v400.
- Subclass 3: The Camaro Knee-Key Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall No. 14v346.
- Subclass 4: The Electric Power Steering Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall No. 14v153.
- Subclass 5: The Side Airbag Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall No. 14v118.

**B.    The Proposed Settlement Fund**

The Settlement Agreement provides that New GM and the GUC Trust[15] will contribute

$120 million (the "Settlement Amount") in cash to a non-reversionary Common Fund (the

"Common Fund" or the "Settlement Fund") for the benefit of Class Members.[16]  The Common

Fund will be established and created as a Qualified Settlement Fund Trust, pursuant to Internal

Revenue Code § 468B and the Regulations issued thereto.  The Settlement Amount plus interest,

---

[14]  These are comprised of the vehicles set forth in Paragraph 70(a)-(j) of the Settlement Agreement.

[15]  Plaintiffs and New GM will continue to seek a monetary contribution by Motors Liquidation Company Avoidance Action Trust ("AAT"), which will not receive releases under the Settlement absent a contribution. If AAT makes a payment to resolve claims asserted by Plaintiffs, the Class, and/or New GM, against, or recoverable from, the AAT (the "AAT Contribution Amount"), that payment will be split 50/50 between New GM and the Plaintiffs.

[16]  Specifically, within 30 days after entry of the Preliminary Approval Order, New GM will deposit into the Escrow Account $8,800,000 and the GUC Trust will deposit into the Escrow Account $2,000,000.  Within 30 days of the Final Effective Date, GM will deposit into the Escrow Account the sum of $61,200,000, and the GUC Trust will deposit into the Escrow Account the sum of $48,000,000.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 50 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 23 of 67

after the deduction of Settlement Implementation Expenses (including, *inter alia*, Taxes and the fee for the Court-Appointed Economic Loss Mediator and his staff to conduct the Allocation Counsel mediation and prepare the Allocation Decision) and any Plaintiff Incentive Awards (the "Net Common Fund"), will be distributed among Class Members who submit timely and valid claim forms in accordance with the Plan of Allocation to be approved by the Court.  To serve the interest of public safety, no Class Member who is a current owner, purchaser, or lessee of a Subject Vehicle shall receive a settlement payment of any kind under the Settlement unless and until the applicable Recall repair(s) have been performed on the Class Member's Subject Vehicle by an authorized GM dealer.

      **C.**     **Plan of Allocation**

Pursuant to the Plan of Allocation and Allocation Decision, the entire Net Common Fund will be distributed to Class Members with approved Settlement Claims.  Members of Subclass 1 will receive twice (2x) the amount paid to members of Subclasses 3, 4 and 5, and members of Subclass 2 will receive 1.5x the amount paid to members of Subclasses 3, 4, and 5.  The calculation process works as follows:

*First*, the number of all approved Settlement Claims will be divided into the Net Common Fund to determine an initial "Base Payment Amount" for calculation purposes.

*Second*, pursuant to the Allocation Decision, an "Adjusted Base Payment Amount" will be determined by multiplying the Base Payment Amount by a factor of 2 for Subclass 1 claimants, by a factor of 1.5 for Subclass 2 claimants, and by a factor of 1 for Subclass 3, 4, and 5 claimants.

*Third*, the Adjusted Base Payment Amount for each Subclass will be multiplied by the number of claimants for each Subclass to determine the total value of the claims for each Subclass.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 51 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 24 of 67

*Fourth*, the total value of the claims for each Subclass will be totaled so that the value of total claims for each Subclass can be assigned a percentage.

*Fifth*, each Subclass's percentage will be applied to the Net Common Fund in order to determine a prorated value of claims for each Subclass.

*Sixth*, for the final step, each Subclass's prorated value of claims is divided by the number of all approved claims for that Subclass to determine the payment amount for each Subclass claimant.

Thus, and put another way, the final Base Payment Amount—that is, the one that forms the basis for payments to individual claimants—is as follows:  [Net Common Fund]/ [(2)(no. of approved Settlement Claims in Subclass 1) + (1.5)(no. of approved Settlement Claims in Subclass 2) + (1) (no. of approved Settlement Claims in Subclass 3) + (1)(no. of approved Settlement Claims in Subclass 4) + (1)(no. of approved Settlement Claims in Subclass 5)].  Again, members of Subclass 3, 4, and 5 receive this Base Payment Amount, and members of Subclasses 1 and 2 receive the Adjustment Base Payment Amounts.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 52 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 25 of 67

### D.    Releases

In exchange for the benefits provided under the Settlement Agreement, upon entry of the Final Order and Final Judgment, Class Members will release any and all claims against New GM and the GUC Trust related to or arising from any of the facts alleged in the Actions filed in this litigation and in the Bankruptcy Case.[17]   Notably, however, Class Members do not release claims for personal injury, wrongful death, or actual physical property damage arising from any accident.

### E.    Notice and Class Action Settlement Administrator

The Settlement contains robust Class Notice programs designed to satisfy all applicable laws, including Rule 23 and constitutional due process.   Notifying Class Members of the Settlements will be accomplished through a combination of (i) direct mailed notices based on comprehensive vehicle registration data; (ii) distribution of two nationwide press releases, in both English and Spanish, containing the Summary Settlement Notice, first at the launch of the Class Notice program and again just prior to the end of the Settlement Claim Period; and (iii) publication of the Summary Settlement Notice in a leading consumer magazine (*People* magazine) to extend reach to Class Members for whom direct notice is not possible. Additionally, the Class Action Settlement Administrator shall establish a toll-free telephone number that will provide settlement-related information to Class Members, and a Settlement website that will inform Class Members of the terms of the Settlement Agreement, their rights, dates and deadlines, and related information.   The details of each form of notice are set forth in

---

[17]  The AAT shall not constitute a Released Party and the Releasing Parties and New GM shall not release the AAT from any rights, claims or causes of action that the Releasing Parties or New GM have or may assert against the AAT.   Additionally, the Releasing Parties and New GM shall not, and shall not be deemed to, release Old GM or the Old GM Bankruptcy Estates from any Actions or claims solely to the extent that such Actions or claims are asserted only against, or recoverable only from, the AAT.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 53 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 26 of 67

the accompanying Declaration of Jennifer M. Keough of JND, the proposed Class Action Settlement Administrator.

The Class Action Settlement Administrator is charged with administering all aspects of the Settlement, including delivering notice to Class Members, corresponding with Class Members regarding their claims, and overseeing and administering the Settlement Claims Process. The Parties agree that Ms. Keough should serve as Class Action Settlement Administrator, subject to the Court's approval.

### F.    Attorneys' Fees and Expenses

The Parties did not negotiate Attorneys' Fees and Expenses until after agreeing to the principal terms set forth in the Settlement Agreement.  Plaintiffs' Class Counsel will seek an award of reasonable Attorneys' Fees and Expenses, in an amount not to exceed $34.5 million, to be paid solely by New GM and which New GM has agreed not to oppose.  The award of fees and expenses will not come from the Common Fund nor the GUC Trust, and will not reduce Class Members' recovery in any way.  Additionally, the award of attorneys' fees and expenses will be entered as a separate order so that any appeal or invalidation of the fees would not affect the Final Order of Settlement.

Plaintiffs' Class Counsel will provide detailed information in support of its application for Attorneys' Fees and Expenses, which will be filed at least 21 days before the deadline to object to or opt out of the Settlement so that Class Members will have sufficient opportunity to comment on or object to the requested fees prior to the Fairness Hearing.

### F.    Plaintiff Incentive Awards

Plaintiffs' Class Counsel will also seek incentive awards for Plaintiffs to reimburse their time and expenses in representing the Class.  The Plaintiff Incentive Awards shall be paid by the

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 54 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 27 of 67

Qualified Settlement Fund Administrator and Trustee out of the Common Fund as follows:
$2000 for a Plaintiff who was deposed, $1000 for a Plaintiff who was not deposed.

## ARGUMENT

Rule 23(e) requires judicial approval for the settlement of claims brought on a class basis.
Fed. R. Civ. P. 23(e).  Rule 23, as revised as of December 1, 2018, directs that the Court grant
preliminary settlement approval and direct notice to the class if it "will likely be able to" grant
final approval under Rule 23(e)(2) and certify a settlement class.  Fed. R. Civ. P. 23(e)(1)(B).

The approval of a proposed class action settlement is a matter of discretion for the trial
court.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).  In
exercising that discretion, courts are mindful of the "strong judicial policy favoring settlements'
of class action suits."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005);
*see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y.
June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.");
*McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (noting "strong judicial
policy in favor of settlements particularly in the class action context").  Due to the presumption
in favor of settlement, "[a]bsent fraud or collusion," courts "should be hesitant to substitute
[their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls.
Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27,
2007).

## I.    THE SETTLEMENT WILL LIKELY BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)(2)

A court should approve a class action settlement if it is "fair, adequate, and reasonable,
and not a product of collusion."  *Visa U.S.A.*, 396 F.3d at 116 (citation and quotation marks
omitted).  In conducting a preliminary approval inquiry, a court considers both the "'negotiating

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 55 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 28 of 67

process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's

substantive terms, *i.e.*, substantive fairness.'" *In re Platinum and Palladium Commodities Litig.*,

10-CV-3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014).  Procedural evidence includes

whether the settlement is the product of arm's length negotiations between experienced counsel

and is untainted by collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

Substantive evidence includes a comparison of the substantive terms of the settlement with the

likely rewards of litigation.  *Mba v. World Airways, Inc.*, 369 F. App'x 194, 197 (2d Cir. 2010).

Importantly, given the prevailing policy in favor of settlement, there is a strong, bedrock

presumption that a negotiated settlement is fair and reasonable.  *See id.*  Absent "evidence of

fraud or overreaching, courts have consistently refused to act as Monday morning quarterbacks

in evaluating the judgment of counsel."  *Strougo ex rel Brazilian Equity Fund, Inc. v. Bassini*,

258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) (citations omitted).

Pursuant to the recent amendments to Rule 23(e)(2), a court may approve a settlement as

"fair, reasonable, and adequate" after considering the following four factors:

> (A) the class representatives and class counsel have adequately represented the
> class; (B) the proposal was negotiated at arm's length; (C) the relief provided for
> the class is adequate, taking into account: (i) the costs, risks, and delay of trial and
> appeal; (ii) the effectiveness of any proposed method of distributing relief to the
> class, including the method of processing class-member claims; (iii) the terms of
> any proposed award of attorney's fees, including timing of payment; and (iv) any
> agreement required to be identified under Rule 23(e)(3); and (D) the proposal
> treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Those factors are readily satisfied here.  The Settlement Agreement

resulted from extensive, good faith, arm's length negotiations between experienced counsel to

reasonably resolve the many issues arising in this litigation.  Furthermore, the Settlement will

substantially reduce the sizable costs of this protracted litigation and eliminate the risk of

unfavorable litigation outcomes, while providing immediate, adequate compensation to Class

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 56 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 29 of 67

Members.  The proposed Settlement would provide a fair, reasonable, and adequate resolution of this litigation, and should be granted preliminary approval by the Court.

### A.  As the Product of Arm's-Length Negotiations by Informed and Knowledgeable Counsel, the Settlement Is Presumptively Fair.

 "To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012).  "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Visa U.S.A., Inc.*, 396 F.3d at 116 (citation omitted).  Moreover, in such circumstances, "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. Mar. 20, 1997); *see also Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation").  This Settlement embodies all hallmarks of a procedurally fair resolution.

*First*, Plaintiffs' Class Counsel's settlement posture was informed by more than five years of highly active litigation, which included reviewing more than 23.4 million pages of documents, taking or defending more than 750 depositions, and fully briefing class certification, 12(b)(6), summary judgment, and discovery motions.  Counsel thus unquestionably possessed sufficient information about the case to negotiate a fair, reasonable, and adequate Settlement. *See, e.g.*, *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (presumption of fairness where parties were represented by experienced counsel and the case "proceeded well into both class certification and merits discovery before settlement was

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 57 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 30 of 67

reached."); *In re AOL Time Warner ERISA Litig.*, No. 02 Civ. 8853, 2006 WL 2789862, at *5 (S.D.N.Y. Sept. 27, 2006) (approving settlement where negotiations were conducted by counsel well-informed of the merits of the claims at that stage of litigation).

Second, the parties' settlement negotiations were at arm's length, protracted, and facilitated by an experienced court-appointed mediator. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Giant Interactive*, 279 F.R.D. at 160 (approving settlement that was the product of "arms-length negotiation . . . facilitated by a respected mediator."). The Hon. Layn R. Phillips, a highly-respected former federal judge, presided over eight in-person mediation sessions and remained engaged with the parties throughout the course of their ongoing negotiations. *See In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 999 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement where parties "engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator"); *Bd. of Trustees of City of Birmingham Employees' Ret. Sys. v. Comerica Bank*, No. 09-CV-13201, 2013 WL 12239522, at *5 (E.D. Mich. Dec. 27, 2013) (approving settlement where "the record is clear that the parties engaged in extensive negotiations with Judge Layn Phillips, a highly respected mediator with substantial experience with complex actions"); *Giant Interactive*, 279 F.R.D. at 160 (approving settlement and finding it was entitled to a presumption of fairness where the "settlement was the product of prolonged, arms-length negotiation" facilitated by Judge Layn R. Phillips, "a respected mediator"). At those sessions, the parties extensively, and often contentiously, discussed the merits of the claims and defenses and the relief available to the Class. *See* Phillips

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 58 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 31 of 67

Decl. ¶ 37 ("The two-and-a-half-years-mediation process was an extremely hard-fought and lengthy negotiation from beginning to end. . . . At each step of the way, over the course of several years, counsel for the Parties advocated zealously on behalf of their clients working to maximize the settlement outcome to the benefit of their respective clients in a highly adversarial set of mediations."). These discussions were followed by lengthy telephone conferences, as well as exchanges of multiple drafts and related materials.

*Third*, Plaintiffs and Plaintiffs' Class Counsel have prosecuted this action on behalf of the Class with vigor and dedication for over five years. As detailed above, Plaintiffs' Class Counsel engaged in significant motion practice in both the MDL Court and the Bankruptcy Court, and massive offensive discovery efforts in the MDL Court to prosecute the Class claims. *See supra*, § II. Counsel defended against multiple rounds of motions to dismiss, multiple rounds of motions for summary judgment, and moved for and extensively litigated class certification and attendant expert issues. *See id.* The proposed Class representatives were likewise actively engaged—they completed extensive fact sheets, produced documents, in many cases sat for depositions, and have regularly communicated with counsel. *See id.* Under these circumstances, there is "a strong initial presumption that the compromise is fair and reasonable." *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

**B.    The Terms of the Settlement Are Substantively Fair.**

In evaluating the substantive fairness of a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 59 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 32 of 67

range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. In finding that a settlement is fair, not every factor must weigh in favor of settlement; "rather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003). Taken together, the *Grinnell* factors and Rule 23(e)(3) weigh heavily in favor of preliminary approval of the proposed Settlement Agreement.[18]

> **1.    The complexity, expense, and likely duration of this litigation favor preliminary approval.**

Prosecuting the Action would necessarily entail a lengthy and expensive legal battle involving complex legal and factual issues. This sprawling, multidistrict and bankruptcy litigation has been ongoing for years, consuming large sums of money and countless hours of labor for the Parties, the Bankruptcy Court, and this Court. In the absence of settlement, there is a high likelihood of even more expensive, protracted and contentious litigation that will consume significant funds and expose the Plaintiffs to risk and uncertainty.

Class actions are generally complex and time-consuming. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001). But this particular case has involved an especially extensive litigation process – even when compared to average class actions. As this Court has accurately observed, "this litigation is already in its sixth year, with no end in sight absent a settlement." ECF No. 7616.

---

[18]  The second *Grinnell* factor, the reaction of the class to the settlement agreement, is generally inapplicable prior to the dissemination of notice and therefore will not be addressed. *See Reade-Alvarez v. Eltman, Eltman & Cooper P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006). In the event objections are received after notice is disseminated, Plaintiffs' Class Counsel will address them in connection with the motion for final approval of the Settlement Agreement.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 60 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 33 of 67

The conduct underlying this lawsuit dates back nearly 20 years.  Discovery in the MDL required years of extensive investigations, in which Plaintiffs reviewed more than 23 million pages of documents and took and defended more than 750 depositions of experts, plaintiffs, and fact witnesses.  *See* ECF No. 7029.  The litigation in the Bankruptcy Court is still in its early stages.  Thus, while the Parties have already engaged in vigorous litigation before this Court, many critical issues remain pending both here and in the Bankruptcy Court.  These include New GM's renewed motion for summary judgment (ECF No. 7095), New GM's motion to exclude expert opinion (ECF No. 7100), Plaintiffs' motion for class certification, and Plaintiffs' claims under the laws of forty seven other states and the District of Columbia; additionally, the Bankruptcy Court must first decide threshold issues regarding whether late claims are allowed to be filed, and then if late claims were to be filed, the parties would only then begin the process of adjudicating the merits of those claims, along with class certification issues An interlocutory appeal is also pending with the Second Circuit which, the Court has recognized, could result in "potentially lengthy delay."  ECF No. 7616.  If that interlocutory appeal is not taken up or is denied on the merits, Plaintiffs will need to significantly revise previously submitted briefing, including their motion for class certification.

Although the Parties have incurred great expenses and burdens in this litigation already, they would certainly incur much more going forward.  *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery.").  Even if, in the best case scenario, the many pending motions were resolved in Plaintiffs' favor, in the absence of

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 61 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 34 of 67

settlement the Plaintiffs would still face a long road to recovery, including trial, post-trial motions, and an inevitable appeal, with no guarantee of success. *See In re Marsh & McLennan, Cos. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *5 (S.D.N.Y. Dec. 23, 2009) (noting the additional expense and uncertainty of "inevitable appeals" and the benefit of Settlement, which "provides certain and substantial recompense to the Class members now"); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

Additionally, as a matter of economic reality and proportionality, this litigation involves older vehicles, which continue to depreciate and reach the end of their useful lives in the normal course. Already, many have gone out of service and they will continue to do so as the litigation proceeds. Continuing litigation will take time, and that time impacts the damages models, and decreases the value and utility of economic remedies to the class. As courts have recognized, "[d]elay not just at the trial stage, but through post-trial motions and the appellate process, would cause Settlement Class Members to wait years for any recovery, further reducing its value." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *Grinnell*, 495 F.2d at 467). The cost of delay to Class Members is particularly damaging here.

Simply put, the proposed Settlement Agreement avoids several more years of complex and expensive litigation. *See Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987) ("[E]ven assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away."). This factor therefore weighs in favor of preliminary approval.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 62 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 35 of 67

2.      **The stage of the proceedings and the amount of discovery completed favor final approval.**

The advanced stage of the proceedings also supports approval of the settlement.  Under the third *Grinnell* factor, settlement is especially favored when the litigation is at an "advanced stage" and an "extensive amount of discovery [has been] completed." *In re Marsh & McLennan*, 2009 WL 5178546, at *6.  This factor goes to "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."  *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).

This matter has been intensely litigated including, *inter alia*, all merits and class discovery, motions for summary judgment and class certification, multiple appearances before in the MDL and the Bankruptcy Courts regarding a wide variety of substantive and procedural issues, discovery disputes and briefing, renewed motions for summary judgment, and intensive settlement negotiations.  In the Bankruptcy Case, there have been years of motion practice and three separate attempts by certain Plaintiffs and the GUC Trust to reach a settlement agreement to resolve these disputes.  As a result of these years of litigation, including the completion of class and merits discovery, the parties and their counsel are fully cognizant of the relative strengths and weaknesses of various claims and defenses, as well as the risks and potential outcomes absent settlement.  Indeed, this Court has recognized that "after five-plus years of litigation, hundreds of depositions, millions of documents exchanged in discovery, and untold trees felled and ink spilled by the parties and the Court, the parties should have enough data to agree on a settlement value for this litigation."  ECF No. 7616.  The Court should find that this factor weighs heavily in support of preliminary approval of the Settlement Agreement.  *See In re Marsh & McLennan*, 2009 WL 5178546, at *7 (finding the third *Grinell* factor weighed in favor

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 63 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 36 of 67

of settlement approval where, based on their extensive litigation history, the parties were "clearly

in a position to realistically evaluate the strengths and weaknesses of the claims, and . . . the

fairness of the proposed Settlement.").

### 3. The substantial risks of litigation—establishing liability, damages, and maintaining the Actions through trial—also favor approval of the Settlement Agreement.

The substantial risk of proceeding with litigation also weighs in favor of approving the

Settlement Agreement.   Courts approve settlements where "plaintiffs would have faced

significant legal and factual obstacles to proving their case."   *In re Global Crossing Securities*

*and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).   Particularly in light of the Court's

August 6 Summary Judgment Ruling, those obstacles are substantial here.

*First*, as this Court recognized, the August 6 Summary Judgment Ruling "change[d] the

landscape in dramatic ways."   ECF No. 7616.   Judge Furman's ruling—with which Plaintiffs

continue to respectfully disagree—effectively discarded Plaintiffs' primary theory of damages.

Pursuing litigation with respect to the remaining states' claims, which adhere to the same theory

of damages that the Court previously rejected, would require an entirely new theory of damages

and come with a high-degree of risk.   While Plaintiffs are hopeful that the Second Circuit will

reverse on appeal, it is unclear that the Circuit will even take the case.   If they decline

interlocutory review or affirm this Court's decision, Plaintiffs will need to re-assess their entire

damages theory in both this Court and the Bankruptcy Court, and revise all attendant briefing,

including the class certification motion.[19]

---

[19] In the Bankruptcy Case, Plaintiffs relied on damages analysis that the Court rejected in the August 6 Ruling to establish that their claims are worth the amount necessary to require payment of the Adjustment Shares. Like Judge Furman, Judge Glenn acknowledged that the August 6 Summary Judgment had "change[d] the landscape greatly" both in the MDL and the Bankruptcy Court.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 64 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 37 of 67

*Second*, even setting aside the August 6 Summary Judgment Ruling, the litigation has reached a critical inflection point. Plaintiffs face a number of serious challenges, including pending class certification and renewed summary judgment motions. If, for example, the Court were to deny class certification—a distinct possibility given its rejection of Plaintiffs' damages theory—the case would be dead, both here and in the Bankruptcy Court, and Class Members would receive nothing.

*Third*, even if Plaintiffs survived the minefield of pending motions, the Class would face the risk and uncertainty of trial and a potentially lengthy appellate process. Liability and damages have been hotly contested throughout this litigation, and Defendants are well-financed and represented by highly-skilled counsel; they will undoubtedly raise vigorous challenges to both at trial or on appeal. For example, if the case went to trial, Plaintiffs would face the difficulties and complexities inherent in proving damages to the jury. Class Plaintiffs' theory of damages would be strongly contested at trial, as it has been in pretrial proceedings, and there is no doubt that at trial the issue would inevitably involve a "battle of the experts." "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985). Thus, there is a substantial risk that a jury might accept one or more of Defendants' damage arguments, or award substantially less than the total settlement amount of $120,000,000—or nothing at all.

*Fourth*, numerous complex issues remain outstanding in the Bankruptcy Case. These include litigation of (a) late claims, class, and mootness issues for certain Ignition Switch Plaintiffs; (b) whether a due process violation exists with respect to other defects; and (c)

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 65 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 38 of 67

remedies.  Plaintiffs asserting claims against the GUC Trust have been arguing over their ability to even file late claims in the Bankruptcy Case and related matters for over five years.  Thus, even if Plaintiffs are able to establish economic losses in the Bankruptcy Case, in order to collect any portion of those purported losses against the GUC Trust and New GM they face a long and challenging road to recovery.

Evaluated against these risks, the proposed Settlement is an excellent result for the Class: it "benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable to the plaintiffs will emerge from a trial." *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698(SAS) (KNF), 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

### 4. The Settlement Amount is reasonable in light of the best possible recovery and all attendant risks of litigation.

The Court must also balance the risks of establishing liability and damages against the benefits afforded to the Class, and the immediacy and certainty of a substantial recovery against the risks of continuing litigation.  *Grinnell*, 495 F.2d at 463.  In considering the reasonableness of a Settlement Amount, "[d]ollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987).  Consequently, the Second Circuit has recognized that "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." *Grinell*, 495 F.2d at 455 n.2.[20]

---

[20]  Consistent with that principle, courts often approve class settlements even where the benefits represent "only a fraction of the potential recovery." *See, e.g., In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 66 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 39 of 67

In this Action, the proposed Class will receive a meaningful and tangible present recovery—$120 million in monetary relief—from the Settlement.  With Court approval, this money plus interest will likely be distributed in a matter of months—rather than years, or never. *See AOL Time Warner*, 2006 WL 903236, at *13 (concluding that where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").  And the Settlement is just one piece of a broader set of activities that, in totality, address New GM's conduct while making its victims whole.  The relief for economic loss is in addition to the substantial benefits that have been paid to those who suffered personal injury or death; a $595 million voluntary personal injury/wrongful death fund; and a $900 million penalty GM has paid in connection with federal probes.  In its structure, the Settlement also incentivizes Class Members who still possess Subject Vehicles to make the necessary repairs, thereby serving an important public safety interest.

By contrast, as discussed, Plaintiffs would face a lengthy, challenging, and unpredictable path pursuing litigation.  For a successful path forward in the MDL Court and the Bankruptcy Court, realistically Plaintiffs would first need to prevail on an appeal in the Second Circuit.  Especially to the extent the appeals implicates California state law, this could also involve litigation in the California Supreme Court.  This would be a lengthy and uncertain process.  If the Second Circuit declines to take the appeal, Plaintiffs and Defendants would have to litigate, among other things, the propriety and admissibility of revised economic loss damage models.  All of this is against the backdrop that the Court expressly declined to rule on various

---

467, 483-85 (S.D.N.Y. 2009) (approving settlement which provided only 2 percent of defendants' maximum possible liability, observing that "the Second Circuit has held that even a fraction of the potential recovery does not render a proposed settlement inadequate"); *In re Prudential Inc. Secs. Ltd. P'ships Litig.*, MDL No. 1005, M-21-67, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6 percent and 5 percent of claimed damages).

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 67 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 40 of 67

outstanding issues in the earlier-filed summary judgment motion, and has not ruled on class certification at all.  Surviving the class certification stage, defeating summary judgment, and then achieving a litigated verdict at trial (and sustaining any such verdict in the appeals that would inevitably ensue) would be a prolonged, complex, and risky undertaking that would require substantial additional time and expense.  *See In re Initial Pub. Offering Secs. Litig.*, 671 F. Supp. 2d at 481 (finding that the complexity, expense and duration of continued litigation supports final approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable").

Achieving a favorable resolution in the Bankruptcy Court would present similar challenges.  Plaintiffs and the GUC Trust would need to litigate the late claims motions, equitable mootness, and other disputed issues about whether Non-Ignition Switch Plaintiffs have suffered the same due process violation as the Delta Ignition Switch Plaintiffs.  Even if the Plaintiffs were ultimately successful in establishing damages against the GUC Trust, those damage claims would only pay out a small percentage of their total amount pursuant to the distribution mechanism established in the Old GM Plan for allowed claims.  By way of example, current allowed claims against the GUC Trust have only received payment of thirty percent of their allowed claim.

By contrast to ongoing litigation in two courts, "[s]ettlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay."  *In re EVCI Career Coll.*, WL 2230177, at *6 (internal citations omitted).  The $120 million recovery readily falls within the range of reasonable results given the complexity of the Action and the significant barriers that stand between the present juncture of the litigation and final judgment.  *See In re Payment Card Interchange Fee & Merchant Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 68 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 41 of 67

(E.D.N.Y. 2013) ("In assessing the Settlement, the Court should balance the benefits afforded the Class, including the **_immediacy_** and **_certainty_** of a recovery, against the continuing risks of litigation." (emphasis in original)); *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at \*2 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair.").

### 5. The proposed Plan of Allocation is an effective and equitable means of distributing relief to the Class.

The Court must also assess the Settlement's effectiveness in distributing relief to the Class.   Fed. R. Civ. P. 23(e)(2)(C)(ii).   A plan for allocating settlement proceeds, like the Settlement itself, should be approved if it is fair, reasonable, and adequate.  *See, e.g., In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).   "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Maley v. Del Global Technologies Corp.*, 186 F.Supp.2d 358, 367 (S.D.N.Y. 2002); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at \*21 (S.D.N.Y. Nov. 8, 2010) (approving allocation plan that was recommended by "experienced and competent counsel" and based on assessments of the strengths and weaknesses of the claims asserted and the likelihood of recovery).   A plan of allocation that reimburses class members differentially based on the relative strength or value of their claims may be reasonable, even if certain class members ultimately recover more that others.  *See In re Telik Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("A reasonable plan may consider the relative strengths and values of different categories of claims.").

The proposed Plan of Allocation provides for a reasonable and rational means of distributing the Common Fund to the Class Members:  based on the relative strength of each Subclass's claims, as determined by a neutral, third-party mediator. *See Danieli v. IBM*, No. 08

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 69 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 42 of 67

Civ. 3688, 2009 WL 6583144, at *4-5 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where proposed allocation plan is "rationally related to the relative strengths and weaknesses of the respective claims asserted"); *Curtiss-Wright Corp. v. Helfand*, 687 F. 2d 171, 173-75 (7th Cir. 1982) (permitting an unequal allocation of a class action settlement fund based on different defenses available against different class members).   Specifically, after zealous advocacy by experienced and knowledgeable Allocation Counsel on behalf of each Subclass, Judge Phillips— on the basis of Allocation Counsel's presentations and drawing on his extensive experience as a Judge and mediator in complex class actions—issued an Allocation Decision, which reflected his assessment of the relative strength of the liability claims of each of the five proposed Subclasses that comprise the proposed Class.   Consistent with that Allocation Decision, the Plan of Allocation provides for the greatest recovery to the Subclass with the strongest liability claims— Subclass 1—followed by the next strongest liability case, Subclass 2, and then the remaining Subclasses 3, 4, and 5.   "Although some class members will benefit more from this allocation formula that is ultimately appropriate as it recognizes the strengths and weaknesses of each class members' individual claims."   *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09CV1293 VLB, 2012 WL 3589610, at *8 (D. Conn. Aug. 20, 2012); *see also Vargas v. Ford Motor Co.*, No. CV1208388ABFFMX, 2020 WL 1164066, at *10 (C.D. Cal. Mar. 5, 2020) ("[W]hile the Settlement was structured to deliver the most complete relief to those Class Members that experienced persistent defects (e.g., those with more service visits will receive a greater cash payment), this is an objective and logical explanation for the variations in monetary recovery.").

### 6.   The anticipated request for Attorneys' Fees and Expenses poses no hurdle to finding the Settlement adequate.

The Court must also consider the award of attorneys' fees in assessing whether to grant preliminary settlement approval.   Fed. R. Civ. P. 23(e)(2)(C)(iii).   Here, the Settlement

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 70 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 43 of 67

Agreement explicitly separates the Settlement terms from the award of Attorneys' Fees and Expenses: "[t]he proceedings for the MDL Court to determine the amount of Attorneys' Fees and Expenses to award to plaintiffs' counsel and the MDL Court's award of any Attorneys' Fees and Expenses *are to be considered by the MDL Court separately from the MDL Court's consideration of the fairness, reasonableness, and adequacy of the Settlement*." Settlement Agreement ¶ 153 (emphasis added). The Attorney's Fees and Expenses awarded will be set forth in an order separate from the Final Settlement Order, and none of the Settlement benefits will be reduced to pay Court-awarded attorneys' fees or costs to Plaintiffs' Class Counsel. Thus, nothing about Plaintiffs' Class Counsel's fee award and costs should prevent notice from issuing.[21] *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

### 7. The anticipated request for Plaintiff Incentive Awards is well within the range approved for similar cases in this Circuit.

Plaintiff incentive awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (internal quotation marks and citation omitted); *see also Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001) ("An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit."). Courts in this Circuit have recognized that named plaintiffs who are deposed may be entitled to more substantial incentive awards as compensation

---

[21] Plaintiffs' Class Counsel will make, on behalf of all plaintiffs' counsel, a separate application for an award of Attorneys' Fees and Expenses not to exceed $34.5 million, to be paid by New GM in addition to, and not from, the $120 million to be paid by New GM and the GUC Trust detailed above. New GM has agreed not to oppose the $34.5 million award. Class Members will have ample opportunity to weigh in on the proposed fee request.

-33-

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 71 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 44 of 67

for the additional time and expense required of them. *See, e.g.*, *Norflet ex rel. Norflet v. John Hancock Life Ins. Co.*, 658 F. Supp. 2d 350, 354 (D. Conn. 2009) (approving $20,000 incentive award after considering "the time she spent in deposition, responding to discovery, and/or otherwise working with Class Counsel to prosecute and resolve this case"); *Fleisher v. Phoenix Life Insurance*, Nos. 11-cv-8405, 14-cv-8714, 2015 WL 10847814, at *24 (S.D.N.Y. Sept. 9, 2015) (approving an incentive award of $25,000 to named plaintiff who spent "at least 88 hours actively fulfilling his obligations as a Class representative," including by attending all-day deposition, and approving $5,000 incentive awards to other named plaintiffs); *Dornberger*, 203 F.R.D. at 124-25 (approving an award of $10,000, for named plaintiff who provided assistance to class counsel for six years, including by "traveling to New York for her deposition at her own cost," and approving awards of $1,500 each for eight additional subclass representatives); *see also Torres v. Toback, Bernstein & Reiss LLP*, No. 11-CV-1368 NGG VVP, 2014 WL 1330957, at *3 (E.D.N.Y. Mar. 31, 2014) ("An incentive award may also be warranted when a named plaintiff has dedicated significant time and effort to the litigation, for example by preparing and sitting for a deposition.").

Plaintiffs have devoted considerable time and effort to this litigation, including the production of extensive fact sheets, participation in discovery where requested, and regular communication with counsel. Plaintiffs in the Bellwether States have also sat for depositions. Under such circumstances, the proposed Plaintiff Incentive Awards to be paid from the Net Common Fund—$2000 for Plaintiffs who were deposed, and $1000 for Plaintiffs who were not deposed—are reasonable, and fall squarely within the range approved for similar cases in this Circuit. *See, e.g.*, *Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 20, 25 (E.D.N.Y. 2019) (approving award of $1,500 for each named plaintiff and noting that the amount was "modest

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 72 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 45 of 67

relative to others awarded in our Circuit"); *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 214 CM, 2012 WL 2505644, at *8 (S.D.N.Y. June 27, 2012) (approving a "modest" incentive award of $1,000 where "the class representative "participated in discovery," and, "[t]hroughout the long progress of this case, he stayed in contact with Class Counsel"); *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 68 (W.D.N.Y. 2018) (approving a $10,000 incentive award because named plaintiff had "been actively involved in the litigation of this case since its inception" and "provided counsel with assistance"); *Kindle v. Dejana*, 308 F. Supp. 3d 698, 718 (E.D.N.Y. 2018) (awarding named plaintiff $10,000 and collecting cases granting incentive awards in this amount).

## II.   CERTIFICATION OF THE CLASS, INCLUDING EACH SUBCLASS, AT FINAL APPROVAL IS LIKELY.

Certification of a settlement class is a two-step process.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  First, the Court must find that the proposed settlement class satisfies Rule 23(a)'s four prerequisites to class certification: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation.  *Id.* (citing Fed. R. Civ. P. 23(a)).  Second, the Court must find that a class action may be maintained under either Rule 23(b)(1), (2), or (3). *Id.*  "The Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction,' . . . and 'it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.'"  *Gortat v. Capala Bros.*, 257 F.R.D. 353 at 361-62 (E.D.N.Y. 2009).

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 73 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 46 of 67

The proposed Class here, including all Subclasses,[22] satisfies all Rule 23(a)(1)-(4) and 23(b)(3) certification requirements.  The record amply demonstrates that (1) the proposed Class fulfills Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy, and (2) as prescribed by Rule 23(b)(3), common questions of law or fact predominate over any questions affecting only individual Class Members, and a class action is superior to any alternative method of litigating these claims for the fair and efficient adjudication of the controversy.

A.    **The Proposed Class Meets the Requirements of Rule 23(a).**

1.    **The Proposed Class is Sufficiently Numerous.**

Rule 23(a) requires that the members of the Class be so numerous that joinder of all members is impracticable.  While numerosity does not require a fixed number of class members, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, it is undisputed that millions of Subject Vehicles were sold or leased nationwide, and that the proposed Class—which includes current and former owners and lessees of those Vehicles—also includes millions of members.  Each Subclass also contains, at a minimum, tens of thousands of members.  Under such circumstances, joinder is plainly impracticable. *See In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493 VB, 2013 WL 4080946, at *18 (S.D.N.Y. May 30, 2013).

2.    **Questions of Law and Fact Are Common to Class Members.**

Rule 23(a)(2) mandates the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The purpose of the commonality requirement is to test "whether the

---

[22] Rule 23(c)(5) authorizes the creation of subclasses "that are each treated as a class" and, as such, that are subject to Rule 23's requirements.  Fed. R. Civ. P. 23(c)(5); *see, e.g., Ramirez v. Riverbay Corp.*, 39 F.Supp.3d 354, 362 (S.D.N.Y. 2014) (citations omitted).

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 74 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 47 of 67

named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "The claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018). Rather, Rule 23(a)(2) is a "low hurdle," *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014), that may be satisfied by even a single question of law or fact common to the Class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011). Importantly, "variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively 'minimal' showing required to establish commonality." *Ries v. Ariz. Beverages USA LLC,* 287 F.R.D. 523, 537 (N.D. Cal. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Plaintiffs easily satisfy the "low hurdle" of demonstrating commonality. Within each Subclass, the claims of all members involve the same common defect. In this case, as in other automobile defect cases, commonality may be found based upon a common question concerning the existence of a defect. *See, e.g.*, *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (proposed representatives of a class of purchasers of vehicles with alleged alignment defects "easily satisf[ied] the commonality requirement" because all of their claims "involve[d]," among other things, "the same alleged defect," which was "found in vehicles of the same make and model."); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 524 (C.D. Cal. 2012) (finding commonality relating to uniform rear suspension defect, noting that "[t]he fact that some vehicles have not yet manifested premature or excessive tire wear is not sufficient, standing alone, to defeat commonality"); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 75 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 48 of 67

(N.D. Cal. 2004) (finding commonality when Ford knew but concealed the risk that intake manifolds would prematurely crack).

The Class claims are also rooted in "[GM's] common course of conduct," including common questions of fact as to Defendants' knowledge of the Subject Vehicle defects and failure to disclose those defects.[23]  *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049, at *10 (N.D. Cal. July 26, 2016); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-MD-02777-EMC, 2019 WL 536661, at *6 (N.D. Cal. Feb. 11, 2019) ("In the case at bar, the commonality requirement is satisfied because Plaintiffs' claims arise from [Defendants'] common course of conduct.").  As the Class's "injuries derive from [D]efendants' alleged 'unitary course of conduct,'" Plaintiffs have "identified a unifying thread that warrants class treatment."  *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 290 (S.D.N.Y. 2012), *aff'd*, 780 F.3d 70 (2d Cir. 2015).[24]  Conversely, without class certification, individual Class Members would be forced to litigate the same issues of law and fact arising from GM's failure to disclose known defects—including conducting the same fact discovery and presenting the same legal arguments.  This is precisely the sort of inefficient outcome that the class mechanism aims to minimize.  *See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 4010049, at *10.

---

[23]  Plaintiffs have alleged the same causes of action in both the 5ACC and proposed proofs of claim filed in the Bankruptcy Case.

[24]  Additional common issues include: whether GM's omissions were material; whether GM engaged in fraudulent concealment, violated consumer protection statutes, and breached implied warranties; whether GM's law violations harmed Plaintiffs and the members of the Settlement Class; and what relief, if any, are Plaintiffs and the Settlement Class entitled to.  "These issues, which can be resolved on a class-wide basis, are indeed central to the validity of the claims in this litigation," *Ge Dandong*, 2013 WL 5658790, at *5, and the commonality requirement is thus met.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 76 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 49 of 67

### 3.    The Proposed Class Representatives' Claims are Typical.

Typicality requires that the claims of the class representatives be typical of those of the putative class members. Fed. R. Civ. P. 23(a)(2).  The commonality and typicality requirements of Rule 23(a) tend to merge, and demonstrating typicality under Rule 23(a)(3) requires only that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims."  *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493 VB, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013).  Rather, "the typicality requirement requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  *Id.*  Typicality is therefore satisfied "irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993); *see also Marisol*, 126 F.3d at 376-77 (affirming typicality finding where plaintiffs alleging deprivation of child welfare services suffered "broad range of injuries").

Typicality is readily satisfied in cases like this one, where "all class members are alleged to have suffered injury as a result of the same conduct by [GM]." *Doyle v. Chrysler Grp. LLC*, No. SACV 13-00620 JVS, 2014 WL 7690155, at *7 (C.D. Cal. Oct. 9, 2014); *In re Chrysler-Dodge-Jeep Ecodiesel*, 2019 WL 536661, at *6 ("Plaintiffs meet the typicality requirement because their claims 'are based on the same pattern of [FCA's] and Bosch's wrongdoing as those brought on behalf of Class Members.' Plaintiffs and the class were subject to the same misconduct and suffered the same injury.").  Plaintiffs' claims here arise from a common course of conduct and common legal theories: GM sold vehicles with known, concealed defects and, in so doing, violated consumer protection laws, committed fraudulent concealment, and breached

-39-

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 77 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 50 of 67

implied warranties. Further, Plaintiffs' vehicles have the same defect as all other vehicles in the particular Subclass for which Plaintiffs are proposed representatives. Because each Class member's claims arise from the same course of GM's conduct, and each Class member must make similar (if not identical) legal arguments to prove GM's liability in both the MDL and Bankruptcy Case, the typicality requirement is satisfied. *See, e.g., Wolin*, 617 F.3d at 1175 (typicality satisfied because plaintiffs alleged that they, like all class members, were injured by the vehicles' common alignment defect, and plaintiffs sought recovery under the same legal theories as the class); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) ("When a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types."); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (Daffin's claim is typical "because the class members' theory is that Ford breached its express warranty by providing vehicles with defectively designed throttle body assemblies, causing Daffin and other class members to receive vehicles worth less than vehicles that conform to the promises allegedly contained in the warranty agreement. Daffin is typical because her car has the same defective throttle body assembly as the other class members."); *Volkswagen*, 2016 WL 4010049, at *11 ("The Settlement Class Representatives, as well as Class Members, purchased or leased an Eligible Vehicle equipped with a defeat device. Their claims are typical because they were subject to the same conduct as other Class Members, and as a result of that conduct, the Settlement Class Representatives and Class Members suffered the same injury.").

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 78 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 51 of 67

4.      **The Proposed Class Representatives and Class Counsel Will Fairly
and Adequately Protect the Class's Interests.**

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and
adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *id.* at 23(g) (adequacy of
counsel).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest
between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625.
Adequacy under Rule 23(a)(4) therefore turns on "whether '(1) plaintiff's interests are
antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are
qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs., Inc. v. A.G.
Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).  The named Plaintiffs need not have
expert knowledge of the details or legal underpinnings of the case, and are entitled to rely on the
expertise of their counsel.  *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 293
F.R.D. 287, 302 (E.D.N.Y. 2013).

*First*, no conflicting interests between the Plaintiffs and the proposed Class exist here; to
the contrary, Plaintiffs are all members of the proposed Class and have suffered economic loss
from the same course of conduct as other members of the proposed Class.  The interests of
Plaintiffs and proposed Class Members are co-extensive given that each Plaintiff, like each Class
Member, has a strong interest in obtaining redress for the harm caused by New GM and the GUC
Trust.  *See Amchem*, 521 U.S. at 625-26 (named plaintiffs must "possess the same interest [s] and
suffer the same injur[ies] as the class members.").

The lengthy record in the MDL and Bankruptcy Case further confirms Plaintiffs'
adequacy to represent the interests of the proposed Class.  All Plaintiffs have actively
participated in the litigation by producing extensive fact sheets, participating in discovery where
requested, and communicating with counsel.  Plaintiffs in the Bellwether States have sat for

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 79 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 52 of 67

depositions.  Plaintiffs have demonstrated an understanding of the nature of their claims and their

duties as class representatives and have remained "at least somewhat active in monitoring the

litigation."  *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8806(JMF), 2013 WL

5658790, at *7 (S.D.N.Y. Oct. 17, 2013).  Plaintiffs will continue to diligently protect the

interests of the proposed Class, as they have throughout this litigation.

 *Second*, there is no fundamental conflict between the Subclasses.  While "conflict

concerning the allocation of remedies amongst class members with competing interests can be

fundamental and can thus render a representative plaintiff inadequate," *Dewey v. Wolkswagen

Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012), "[w]here such a conflict does exist, it can

be cured by dividing the class into separate 'homogeneous subclasses . . . with separate

representation to eliminate conflicting interests of counsel.'"  *In re Literary Works*, 654 F.3d

242, 249 (2d Cir. 2011).  Here, the Class has been divided into five Subclasses, each of which

was represented by experienced, Court-appointed allocation counsel.

 *Third*, proposed Class Counsel and Subclass Counsel are well-qualified, experienced, and

have diligently prosecuted the proposed Class claims for more than five years.  Mr. Berman and

Ms. Cabraser have extensive experience in litigating complex consumer protection class actions,

and have recovered billions of dollars in class litigation on behalf of consumers, including in

automotive defect-related class claims.[25]  *Simerlein v. Toyota Motor Corp.*, No. 3:17-CV-1091

(VAB), 2019 WL 1435055, at *12 (D. Conn. Jan. 14, 2019) (proposed class counsel who

"appear to be well-experienced and to have litigated complex class actions in the past" would

adequately protect class interests).  Further, Proposed Class Counsel have undertaken an

enormous amount of work, effort, and expense in this MDL and the Bankruptcy Case.  They

---

[25] *See* Cabraser Decl. ¶¶ 5-6; Berman Decl. ¶¶ 9, 13.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 80 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 53 of 67

have demonstrated their willingness to devote whatever resources necessary to reach a successful outcome throughout the six years since filing the Consolidated Complaint and appearing in the Bankruptcy Case. They, too, satisfy Rule 23(a)(4). *See, e.g.*, *Karic v. Major Auto. Cos.*, No. 09 CV 5708 (ENV), 2015 WL 9433847, at *6 (E.D.N.Y. Dec. 22, 2015) (finding proposed class counsel adequately represented class interests where counsel had "done substantial work identifying, investigating, prosecuting, and settling the claims over the past four years"), *report and recommendation adopted Karic v. Major Auto. Cos.*, No. 09CIV5708ENVCLP, 2016 WL 323673 (E.D.N.Y. Jan. 26, 2016). Similarly, Subclass Counsel are members of the Executive Committee and their partners. The Executive Committee members are highly experienced attorneys, selected by the Court, who have been involved with the case for its duration. They have provided substantial assistance to Plaintiffs' Class Counsel and the Court at all stages of litigation, and have heavily invested their time and financial resources into securing a favorable outcome for the Class. The proposed Subclass Counsel also include Allocation Counsel, who zealously represented each of the five Subclasses for the purpose of advocating allocation of the Net Common Fund to members of each Subclass.

### B.   The Class Meets Rule 23(b)(3)'s Predominance and Superiority Requirements.

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather,*

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 81 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 54 of 67

*Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

       **1.**      **Common issues predominate over any individual ones.**

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Class-wide issues predominate if resolution of some of the legal or factual questions . . . can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, questions of law and fact common to the claims of the Class Members predominate over any questions affecting only individual members. A uniform scheme to mislead regulators and consumers by concealing the defects in the Subject Vehicles is central to the claims asserted in both the 5ACC and the Proposed Proofs of Claim. The key evidence necessary to establish Plaintiffs' claims is common to Plaintiffs and all members of each Subclass—they all seek to prove, among other things, that GM's vehicles within each Subclass have a common defect and that GM's conduct was uniformly wrongful. The evidentiary presentation changes little if there are 100 Class members or millions: in either instance, Plaintiffs would present the same evidence in both the MDL and the Bankruptcy Case of Old GM's marketing and promised warranties, and the same evidence of the Subject Vehicles' alleged defects. *Klay v. Humana*, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004) ("[I]f common issues truly predominate over individualized issues in a lawsuit, then 'the addition or subtraction of any of the plaintiffs to or from the class [should

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 82 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 55 of 67

not] have a substantial effect on the substance or quantity of evidence offered.'") (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 322 (5th Cir. 1978)). Courts routinely find that such issues predominate in automotive defect class actions.[26]   Predominance is therefore satisfied.

### 2.    A class action is superior to thousands of individual actions.

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions, and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[27]

---

[26] *See, e.g.*, *Wolin*, 617 F.3d at 1173 (common issues predominate such as whether Land Rover was aware of and had a duty to disclose the defect and violated consumer protection laws); *Keegan*, 284 F.R.D. at 532-34 (predominance found under UCL and CLRA based on common evidence of the nature of the defect, the defect's impact on vehicle safety, Honda's knowledge, and what Honda disclosed to consumers); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596-97 (C.D. Cal. 2008) (predominating common issues under the CLRA and UCL include defendant's knowledge of the alleged defect, whether it had a duty to disclose and did so, whether the alleged failure to disclose was material to a reasonable consumer; and whether the conduct violated the CLRA and UCL); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. at 526-27 (common questions predominate such as "whether the design of the plastic intake manifold was defective, whether Ford was aware of the alleged design defects, whether Ford had a duty to disclose its knowledge, whether it failed to do so, whether the facts that Ford allegedly failed to disclose were material, and whether the alleged failure to disclose violated the CLRA"), *petition denied*, 402 F.3d 952 (9th Cir. 2005); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 681-82 (S.D. Fla. 2009) (the "critical issue of whether the [airbag system] was defective is common to all putative class members" and "predominates over the individual issues"); *Carriuolo v General Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016) (predominance satisfied where plaintiffs alleged "consistent" theories of liability and damages for all class members, including whether GM inaccurately communicated vehicle safety ratings "allow[ing] it to command a price premium"); *Gen. Motors Corp. v. Bryant*, 285 S.W.3d 634, 639 (Ark. 2008) (whether defect existed in class vehicles and "whether or not General Motors concealed that defect are predominating questions.").

[27] Another factor, "the likely difficulties in managing a class action," is not of consequence in the context of a proposed settlement class. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank v. Eastman Kodak Co.,*, 228 F.R.D. 174, 183 (W.D.N.Y. 2005) ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."); *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 335

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 83 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 56 of 67

Resolving this litigation through the class mechanism is plainly superior to litigation by individual Class Members.  Most Plaintiffs and Class Members have insufficient financial resources with which to prosecute individual actions, and the value of any individual claim is simply too low to incentivize most Class Members to pursue litigation.  *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 294 (S.D.N.Y. 2012) ("the class members' interests in litigating separate actions is likely minimal given their potentially limited means with which to do so and the prospect of relatively small recovery in individual actions").  This is especially true here given the high cost of marshalling the evidence necessary to litigate the claims at issue and the disparity in resources between the typical Class Member and well-funded, litigation-savvy defendants like New GM and the GUC Trust: the pooling of resources offered by the class mechanism is required to drive participation.  Plaintiffs' Class Counsel have already devoted significant resources to this litigation: engaged in multiple rounds of briefing on motions to dismiss, summary judgment, class certification, discovery issues, and Late Claims Motions in the Bankruptcy Court; taken depositions of hundreds of GM witnesses and experts and defended hundreds of depositions of Plaintiffs and experts; orchestrated a labor- intensive written-discovery and document-review effort; presented Plaintiffs' vehicles to GM for inspection; retained experts; and engaged in significant motion practice on other issues. No individual litigant pursuing a purely economic loss case could invest the same resources.

Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public

---

(S.D.N.Y. 2005) ("Because this is a settlement-only class, the Court need not be concerned with the feasibility of managing the trial of a class action involving many different states' laws.") *aff'd in relevant part sub nom. Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006).  Because the fourth "superiority" factor—"the likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D)—does not bear on a settlement-only class, any variations among state laws governing the claims at issue are irrelevant to certification.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 84 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 57 of 67

confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims. *See Hanlon*, 150 F.3d at 1023; *Wolin*, 617 F.3d at 1176 ("Forcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication."). Further, numerous class action lawsuits based on the same facts at issue here have been filed against New GM. Through the MDL process, those cases were transferred to this Court and are now part of this consolidated litigation (in addition to the personal injury cases). That the MDL Panel chose this Court to be the transferee court is one indication that having a single case—as opposed to multiple cases—is the sensible approach. Thus, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the proposed Class Members' claims.

In sum, the Class, including the Subclasses, satisfy all elements of Rule 23(a) and (b)(3). The class action mechanism is not only the best and most efficient way to adjudicate the Class members' claims in this case, it is also the only viable method of doing so.

### III.   THE COURT SHOULD APPOINT MR. BERMAN AND MS. CABRASER AS COUNSEL FOR THE CLASS, AND SUBCLASS COUNSEL AS COUNSEL FOR THE SUBCLASSES.

"An order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). In determining whether to appoint Hagens Berman and Lieff Cabraser as Class Counsel for purposes of the Settlement, the Court must examine:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Each of those prerequisites is readily satisfied.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 85 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 58 of 67

At the outset of the MDL, as part of a competitive application process, the Court chose Mr. Berman and Ms. Cabraser as Co-Lead Counsel due to their qualifications, experience, and commitment to the successful prosecution of this case. *See* ECF No. 8. It also selected, *inter alia*, Marc Seltzer of Susman Godfrey, Joe Rice of Motley Rice, Peter Prieto of Podhurst Orseck, P.A., David Boies of Boies Schiller Flexner LLP, and Adam Levitt of DiCello Levitt Gutzler to serve on the Executive Committee. *Id.*

1.      The criteria that the Court considered in appointing Lead Counsel were substantially similar to the considerations set forth in Rule 23(g). *See, e.g.*, *Clemens v. Hair Club for Men, LLC*, No. 15-01431-WHA, 2016 WL 1461944, at *2 (N.D. Cal. April 14, 2016). Plaintiffs' Class Counsel, and their respective law firms, have undertaken an enormous amount of work, effort, and expense in this litigation and demonstrated their willingness to devote whatever resources were necessary to see it through to a successful outcome. *See* Cabraser Decl. ¶ 12 (Lieff Cabraser's "total net expenses to date" in connection with this Action are $3,523,897.78); Berman Decl. ¶ 19 (Hagens Berman has "already advanced more than $5,100,000 in out-of-pocket costs in the prosecution of the case"). Subclass Counsel have also diligently pursued their responsibilities for the duration of this litigation. Each Subclass would be represented by a member of the Executive Committee, a group of highly experienced attorneys who have assisted Plaintiffs' Class Counsel with, *inter alia*, consolidated pleadings; document management and review; electronic and general discovery issues; depositions; non-GM defendants; communication with class members; and other responsibilities. They are intimately familiar with the context and history of this litigation, and have provided substantial assistance to Plaintiffs' Class Counsel and the Court in moving this litigation toward resolution. Notably, the proposed Subclass representatives include Allocation Counsel, who zealously

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 86 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 59 of 67

represented each of the five Subclasses for the purpose of advocating allocation of the Net Common Fund to members of each Subclass.

This Court has already found, and Plaintiffs' Class Counsel and proposed Subclass Counsel have demonstrated in action, their ability to represent the interests of the Class and each Subclass. They should be appointed as Class Counsel and Subclass Counsel under Rule 23(g)(3), and confirmed under 23(g)(1) upon final approval.

## IV.   THE PROPOSED FORMS AND MANNER OF NOTICE COMPLY WITH RULE 23 AND DUE PROCESS.

The polestar for assessing the adequacy of notice, whether through the lens of Rule 23 or constitutional due process, is "reasonableness." *Visa U.S.A., Inc.*, 396 F.3d at 114. Reasonableness is, in turn, "a function of anticipated results, costs, and amount involved." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977). Both the manner of dissemination and the forms of the notice proposed here aim to ensure "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### A.   The Proposed Combination of Individual Mailed Notice, an Extensive Multimedia Notice Program, and a Settlement Website Is Reasonably Directed to Apprising Class Members of Their Rights.

To ensure notice is sufficiently disseminated to Class Members, Plaintiffs propose a comprehensive, multi-pronged approach developed in connection with notice expert Jennifer Keough of JND. Class Notice will consist of (1) individual direct-mail notice "to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B); (2) issuance of multiple nationwide press releases in English and Spanish; (3) media publication of the Summary Settlement Notice in *People* magazine, a leading nationwide consumer magazine; (4) a universally accessible Settlement website; and (5) a toll-free telephone number available to Class Members.

-49-

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 87 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 60 of 67

*First*, the Class Action Settlement Administrator, under the supervision of Plaintiffs' Class Counsel, will launch a nationwide, data-driven effort to identify all Class Members. Specifically, the Class Action Settlement Administrator will retain a service provider that will collect the names and last known address of each Class Member from the Department of Motor Vehicles ("DMVs") utilizing the vehicle identification numbers (VINs) provided to the Class Action Settlement Administrator by New GM for the Subject Vehicles. After Subject Vehicle owners and/or lessees are identified, under the direction of Plaintiffs' Counsel, the Class Action Settlement Administrator will update the addresses with advanced address research using skip trace databases or a comparable service and the United States Postal Service ("USPS") National Change of Address ("NCOA") database. The Class Action Settlement Administrator will then mail notice, substantially in the form attached as Exhibit 11 to the Settlement Agreement ("Short Form Notice"), individually to Class Members via first class mail. *See, e.g.*, *Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-cv-01714 (VAB), 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 2018) (approving notice by short-form postcard directing class members to website). To ensure that all Class Members receive notice, the Class Action Settlement Administrator will (a) promptly re-mail any Short Form Notices returned by the United States Postal Service with a forwarding address, and (b) by itself or using one or more address research firms, research any returned Short Form Notice that does not include a forwarding address to determine the recipient's current, best address, and promptly mail the Short Form notice to that address. The Short Form Notice will provide general information regarding the Settlement and Class Members' rights in connection with it, and direct recipients to the Settlement website for additional information, including a copy of the Long Form Notice and Settlement Agreement.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 88 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 61 of 67

*Second*, the Class Action Settlement Administrator will issue nationwide press releases based on the Summary Settlement Notice.  The press release will be available in both English and Spanish, and issued twice: first at the launch of the Class Notice program, and again, as a reminder of the approaching deadline, just prior the end of the Settlement Claim Period.

*Third*, to extend notice further, particularly among Class Members for whom direct notice data is inaccurate or incomplete, JND will arrange for publication of the Summary Settlement Notice in *People*, a highly read consumer magazine.  *People* is a weekly entertainment magazine with a circulation of over 3.4 million and a total readership of over 34.9 million, making it one of the most read publications in the country.

*Fourth*, the Class Action Settlement Administrator will establish and maintain a settlement website to provide Class Members with detailed information about the case and access to key documents, including the Long Form Notice, the Settlement Claim Form, the Settlement Agreement, the Complaint, and the Preliminary Approval Order, as well as answers to frequently asked questions.

*Fifth*, the Class Action Settlement Administrator will establish and maintain a toll-free telephone number.  Class Members can call the toll-free telephone number, which will be prominently displayed on notice documents, to obtain additional information about the Settlement, listen to answers to FAQs, request a Long Form Notice and/or Settlement Claim Form, or request a return telephone call.

These efforts are directed to maximize the reach of notice under the circumstances of this case, and demonstrate Plaintiffs' Class Counsel "acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) (citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 89 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 62 of 67

Cir. 1988). Indeed, courts have routinely approved comparable notice programs in automotive class action cases. *See, e.g.*, *In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2019 WL 1411510, at *11 (N.D. Cal. Mar. 28, 2019) (court approved notice program where "[n]otice will be sent via U.S. mail (the Short Form Class Notice), email (the Email Notice), and posted on the settlement website (the Long Form Class Notice)"). This Court can thus comfortably exercise its "considerable discretion" to approve the notice program. *Dornberger*, 203 F.R.D. at 123; *see also In re "Agent Orange" Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 169 (2d Cir. 1987) (district court's determination with respect to reasonableness of efforts to identify class members "must be accepted unless clearly erroneous").

### B. The Proposed Notice Clearly and Concisely Informs Class Members About the Settlement's Terms and Their Rights.

The content of the Notice has been drafted to "be understood by the average class member," *Visa U.S.A., Inc.*, 396 F.3d at 114, and informs Class Members of all pertinent aspects of the Settlement. Specifically, it states—in plain, easily understood language—(1) the nature of the lawsuit; (2) the definition of the Class; (3) Class Members' claims; (4) the amount and terms of the Settlement, including information about Class Members' right to obtain a copy of the Settlement Agreement and the applicable waivers and releases; (5) the process to be excluded from the Class, including the timing and manner thereof; (6) the right of any Class Member to object to any aspect of the Settlement; (7) the binding effect of the Settlement on Class Members who do not elect to be excluded; (8) the legal representation of Class Members in court proceedings; (9) the maximum amount of attorneys' fees and expenses that will be sought; (10) the identity and contact information for the representatives of Plaintiffs' Class Counsel who are reasonably available to answer questions from Class Members concerning matters contained in the Notice; and (11) the date and time of the final Fairness Hearing. *See* Fed. R. Civ. P.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 90 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 63 of 67

23(c)(2)(B).[28]  The Notice also contains the Plan of Allocation and provides Class Members with information about how to submit a Claim Form in order to be eligible to receive a distribution from the Settlement Fund.

The Notice is thus "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

### C.   The Parties Have Selected an Experienced Class Action Settlement Administrator After a Competitive Bidding Process.

1.    Plaintiffs propose that the notice and claims process be administered by Jennifer M. Keough of JND Legal Administration ("JND"), an independent settlement and claims administrator selected by Plaintiffs' Class Counsel, New GM, and the GUC Trust after a competitive bidding process.  JND has substantial experience carrying out complex class action notice and payment projects, and has handled the administration of numerous complex, data-driven settlements.  The principals of JND, including Ms. Keough, collectively have over 75 years of experience in class action legal and administrative fields.  Ms. Keough has personally overseen some of the largest legal claims administration matters in the country's history including, among others, the BP Deepwater Horizon Settlement and the Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever).  In addition, JND has been recently appointed to handle notice and claims administration tasks for class action settlements in the following motor vehicle cases: *Amin v. Mercedes-Benz USA, LLC*, No. 17-cv-01701-AT (N.D. Ga.); *In re MyFord Touch Consumer Litig.*, No. 13-cv-3072 (EMC) (N.D.

---

[28] Plaintiffs have left blank the dates of the Fairness Hearing in the proposed Notice so the Court may provide a date and time convenient to it upon entering the Preliminary Approval Order.  Other dates in the Notice are tied to the date the Preliminary Approval Order is entered or to the mailing of the Notice, and are thus likewise left blank.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 91 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 64 of 67

Cal.); *In re Navistar MaxxForce Engines Mktg., Sales Practices and Products*, No. 14-cv-10318 (N.D. Ill.); and *Udeen v. Subaru of Am., Inc.*, No. 18-cv-17334-RBK-JS (D.N.J.).  JND is an approved vendor for the United States Securities and Exchange Commission (SEC) and the Federal Trade Commission (FTC), and has been recognized by the National Law Journal, the Legal Times, and the New York Law Journal, for excellence in class action administration. *See* Keough Decl. ¶¶ 3-10.

## V.    PROPOSED SCHEDULE

In connection with preliminary approval of the Settlement, the Court must set a Fairness Hearing date, dates for mailing and publication of the Notice, and deadlines for objecting to the Settlement or opting out of the Class. The parties respectfully propose the following schedule for the Court's consideration, as agreed to by the parties and set forth in the proposed Preliminary Approval Order:

| Event | Proposed Date |
|---|---|
| Joint Hearing on the Joint Motion for Preliminary Approval, Withdrawal of the Reference of Late Claims Motion, and Rule 9019 Motion | April 23, 2020 at 9:30 a.m. |
| Issuance of Class Notice (including opt-out and objection procedures) | 70-100 Days After Preliminary Approval Order |
| Deadline for Plaintiffs' Class Counsel to file Motion for Attorneys' Fees and Expenses | 154 Days After Preliminary Approval Order |
| Deadline to submit opt-outs from and objections to proposed Class Settlement Agreement. | 175 Days After Preliminary Approval Order |
| Completion of briefing in the MDL Court regarding final approval of proposed Class Settlement Agreement. | 195 Days After Preliminary Approval Order |
| Fairness Hearing conducted by the MDL Court | 215-230 Days After Preliminary Approval Order |

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 92 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 65 of 67

The proposed deadlines exceed the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715(b), and afford ample time for Class Notice to be fully implemented and for Class Members to object to or request exclusion from the Class.  While the dates and deadlines are lengthier than in some other cases, the duration of this litigation and number of Class Members necessitate sufficient lead time to implement the extensive Class Notice program.

## **CONCLUSION**

Plaintiffs request that the Court enter an order, substantially in the form of the proposed Preliminary Approval Order submitted as Exhibit 6 to Settlement Agreement, (1) preliminarily approving the proposed Settlement as set forth in the Settlement Agreement; (2) determining that the Court, at the final approval stage, will likely certify the  Class as defined in the Settlement Agreement; (3) directing that notice be provided to proposed Class Members in the form and manner specified in the Settlement Agreement; (4) appointing Plaintiffs as representatives of the proposed Class for purposes of disseminating notice, and certain Plaintiffs as representatives of the proposed Subclasses; (5) appointing Steve W. Berman, of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Elizabeth J. Cabraser of Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser," and together with Hagens Berman, "Plaintiffs' Class Counsel") as Class Counsel for the proposed Class; (6) appointing the Allocation Counsel and certain counsel appointed by the MDL Court to the Executive Committee (ECF No. 249) as Subclass Counsel; (7) authorizing the retention of Jennifer M. Keough of JND Legal Administration as Class Action Settlement Administrator, and directing Ms. Keough to carry out the duties and responsibilities of the Class Action Settlement Administrator specified in the Settlement Agreement; (8) appointing Flora Bian of JND as Qualified Settlement Fund Administrator and Trustee to carry out all duties and responsibilities of the  Qualified Settlement Fund Administrator and Trustee as specified in the Settlement Agreement and the Qualified Settlement

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 93 of 281

Case 1:14-md-02543-JMF    Document 7817    Filed 03/27/20    Page 66 of 67

Fund Trust Agreement; (9) establishing certain dates and procedures in connection with final approval of the Settlement Agreement, including but not limited to deadlines and procedures for Settlement Objections, Opt-Outs, and Settlement Claims; and (10) scheduling a Fairness Hearing to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2), and whether the Class should be certified.

Dated:  March 27, 2020

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By:  /s/ Steve W. Berman _____

Steve W. Berman
Sean R. Matt
Andrew M. Volk
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
seam@hbsslaw.com
andrew@hbsslaw.com

*Co-Lead Counsel for Plaintiffs and the Proposed Class*

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

By:  /s/ Elizabeth J. Cabraser _____

Elizabeth J. Cabraser
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ecabraser@lchb.com

Rachel J. Geman
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
rgeman@lchb.com

*Co-Lead Counsel for Plaintiffs and the Proposed Class*

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 94 of 281

Case 1:14-md-02543-JMF   Document 7817   Filed 03/27/20   Page 67 of 67

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 27, 2020, which will send notification of such filing to the e-mail addresses registered.

*/s/ Steve W. Berman*
Steve W. Berman

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 95 of 281

Case 1:14-md-02543-JMF    Document 7818    Filed 03/27/20    Page 1 of 11

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION SWITCH LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>*ALL ECONOMIC LOSS ACTIONS* | No. 14-MD-2543 (JMF) |

### DECARLATION OF STEVE W. BERMAN IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF CLASS FOR PURPOSES OF SETTLEMENT, APPROVAL OF NOTICE PROCEDURES, AND APPOINTMENT OF CLASS COUNSEL & <u>CLASS REPRESENTATIVES</u>

I, Steve W. Berman, declare under penalty of perjury as follows:

1.      I am an attorney admitted *pro hac vice* in this litigation, am the managing partner of the law firm of Hagens Berman Sobol Shapiro LLP, and have personal knowledge of the matters described in this declaration and am competent to testify thereto.

2.      Pursuant to Order No. 8, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 14-md-02543-JMF (S.D.N.Y. 2014), I serve as Plaintiffs' Co-Lead Counsel with particular responsibility for the Economic Loss part of the MDL Action, along with Elizabeth Cabraser. I respectfully submit this declaration in support of the Motion for Preliminary Approval (the Motion).

3.      It is my belief that I, along with Ms. Cabraser, have and will continue to adequately represent the interests of the proposed Class. Below is a discussion demonstrating why we satisfy the requirements of Rule 23(g), as well as an explanation on why the Motion should be approved.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 96 of 281

Case 1:14-md-02543-JMF    Document 7818    Filed 03/27/20    Page 2 of 11

I.      **The Court Should Appoint Hagens Berman Sobol Shapiro LLP As Class Counsel For Settlement Purposes.**

A.      **Work Done In Identifying, Investigating, And Prosecuting The Claims.**

4.      I have been diligently discharging my duties as Co-Lead Counsel and have played a very "hands-on" role in this litigation and the MDL Action for more than five years, personally attending to the following tasks, among many others:

- Engaging in fact investigation and drafting of the Proposed Class Claims;

- Supervising all discovery, including discovery motions, depositions of GM personal and third parties, and depositions of class representatives;

- Personally attending a plethora of expert meetings;

- Participating in, and coordinating, all bankruptcy-related issues (including drafting letter briefs, conferring with counsel, attending select hearings, arguing in the Second Circuit, working on proofs of claim, participating in settlement negotiations with the GUC Trust relating to the initial and subsequent GUC Trust settlement, attending the evidentiary hearings on the motion to enforce that settlement;

- Preparing for and attending almost all status conferences (including drafting and editing status conference letters and proposed orders);

- Preparing for and attending all-counsel meetings relating to case organization and management;

- Communicating with Co-Lead Counsel and the Executive Committee;

- Arguing motions before this Court;

- Reviewing and editing all substantive briefing relating to the economic loss class action in the MDL Action;

- Monitoring the bellwether injury and wrongful death cases and, where appropriate, participating in some bellwether trial preparation, as well as select witness examination at the *Scheuer* trial; and

- Negotiating and finalizing all aspects of the proposed Settlement.

5.      As outlined in my application to serve as Interim Lead Counsel, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 14-md-02543-JMF (S.D.N.Y. 2014) (Dkt. No. 170), my firm

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 97 of 281

Case 1:14-md-02543-JMF    Document 7818    Filed 03/27/20    Page 3 of 11

conducted substantial work to identify and investigate potential claims in the MDL Action.  We filed seven class actions against New GM,[1] six of which focused on ignition switch defects.  These detailed complaints demonstrate that we conducted a thorough investigation before filing.  We closely monitored GM recalls and the Congressional investigation, and analyzed the Valukas Report (identifying its shortcomings).

6.    We have maintained extensive contacts with members of the proposed Classes, maintaining a database that tracked vehicle trends and helps us communicate with consumers.  It contains hundreds of putative class members from across the country, and each one has been contacted by a Hagens Berman attorney or staff member.  We have logged several hundred calls from putative class members and have coordinated the depositions of the class representatives, the majority of which have been Hagens Berman clients.

**B.    Our Experience In Handling Class Actions And Other Complex Litigation.**

7.    Hagens Berman's focus is the litigation of complex class actions and MDLs on behalf of plaintiffs throughout the country.  We have been appointed lead or co-lead counsel in many of the largest consumer fraud, product liability, securities, and antitrust cases in history.  I have dedicated myself to complex class-action work for over 30 years.

8.    The dozens of MDLs and multi-state class actions in which our firm has held leadership positions include many—such as this one—where several types of claims are consolidated for prosecution.  We become experts in the facts, the law, and the science of the case and marshal a counsel team committed to doing the same.

---

[1] *Benton v. GM LLC*, No. 5:14-CV-590 (C.D. Cal.); *Dinco v. GM LLC*, No. 2:14-cv-3638 (C.D. Cal.); *Heuler v. GM LLC*, No. 14-cv-492 (C.D. Cal.); *McConnell v. GM LLC*, No. 8:14-cv-424 (C.D. Cal.); *Ratzlaff v. GM LLC*, No. 2:14-cv-2424 (C.D. Cal.); *Satele v. GM LLC*, No. 14-cv-485 (C.D. Cal.); and *Andrews v. GM LLC*, No. 5:14-cv- 1239 (C.D. Cal.).

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 98 of 281

Case 1:14-md-02543-JMF    Document 7818    Filed 03/27/20    Page 4 of 11

9.      Our leadership has achieved substantial, often unprecedented, results for class members.  The following are just a few examples (the balance can be found on our website and in our resume):

- *Volkswagen "Clean Diesel" MDL* (N.D. Cal.). As lead counsel for the Volkswagen Franchise Dealers, we received final approval of a settlement of $1.2 billion, representing a result of nearly full damages for the class.  I also serve on the Plaintiffs' Steering Committee and played a role in obtaining a settlement of $14.7 billion on behalf of consumers that included injunctive relief in the form of an optional buyback of the affected vehicles.

- *In re Stericycle, Inc. Steri-Safe Contract MDL* (N.D. Ill.).  As lead counsel in this contract-based case involving pricing for medical-waste services, we recovered $295 million for the class after intensive discovery, litigation, and economic modeling.  The late Judge Milton Shadur, a true lion of the bench, deeply honored my firm and me by observing: "[I]t must be said that the track record of Hagens Berman and its lead partner Steve Berman is . . . impressive, having racked up such accomplishments as a $1.6 billion settlement in the *Toyota Unintended Acceleration Litigation* and a substantial number of really outstanding big-ticket results."  *In re Stericycle, Inc.,* 2013 WL 5609328, at *2 (N.D. Ill. Oct. 11, 2013).

- *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, *Sales Practices & Prods. Liab. Litig.*, No. 8:10ML2151 JVS (C.D. Cal.).  As co-lead counsel for the economic loss classes in this successful, complex MDL, I and the firm challenged a defect causing dozens of models spanning an 8-year period to undergo sudden, unintended acceleration.  The resulting $1.6 billion settlement included $500 million in cash payments to class members, many of whom received checks for thousands of dollars; installation of a safety- enhancing brake override system on millions of vehicles; and a program that substantially extended warranties for millions of consumers.

- *In re Elec. Books Antitrust Litig.*, No. 11-md-2293 DLC (S.D.N.Y.).  We pioneered this litigation as lead counsel against Apple and the largest brick- and-mortar publishers for antitrust violations.  We worked in novel partnership with the Department of Justice and 33 State Attorneys General, representing purchasers of e-books in 19 states and four U.S. territories.  The case settled for $560 million on single damages of $270 million.

- *In re Charles Schwab Corp. Sec. Litig.*, No. 08-cv-1510 WHA (N.D. Cal.). Appointed sole lead counsel in this class action, we alleged Schwab falsely marketed its YieldPlus Fund as a safe money market alternative.  A $235 million class settlement was reached shortly before we began trial—with checks mailed directly to members for the first time in a securities case, that we are aware of.

010440-11 1250034 V1

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 99 of 281

Case 1:14-md-02543-JMF    Document 7818    Filed 03/27/20    Page 5 of 11

- *New England Carpenters Health & Benefit Fund v. McKesson Corp., et al.*, No. 1:05-cv-11148 PBS (D. Mass.). As co-lead we pioneered these racketeering cases alleging a conspiracy to increase by 4% the list price on most brand-name drugs. After certification of a nationwide class, the case settled for $350 million and a roll back of drug prices for all brand-name drugs. Our work led to follow-on litigation by federal, state and local governments that netted another $500 million in recoveries. The States we represented in those actions received three to nine times the settlement amounts received by States not represented by us.

- *In re Pharm. Indus. Avg. Wholesale Pricing Litig. (AWP)*, No. 01-cv-12257 PBS (D. Mass.). As co-lead counsel in this MDL, and myself as lead trial counsel, we proved that the nation's major pharmaceutical companies fraudulently inflated their prices by billions of dollars. A bellwether trial resulted in a plaintiffs' verdict against three of the four defendants. The cases concluded with $338 million in settlements and consumers received three times actual damages (unprecedented, to our knowledge).

- *Attorneys General Tobacco Litigation*: In the historic litigation against the tobacco industry, we represented 13 states and advanced groundbreaking legal claims to secure a global settlement worth $260 billion, still the largest recovery in history. Only two law firms, including Hagens Berman, went to trial in these Attorneys General actions, and I served as co-lead trial counsel.

10.    We appreciate the many court acknowledgements of our class action leadership. Recently, Judge Griesa lauded Hagens Berman's commitment through ten years of litigation where the risk of non-recovery was "extremely high:" "Even when recovery seemed unlikely . . . , Hagens Berman steadfastly continued to represent the class. Hagens Berman's willingness to take this case on a contingency basis in spite of the risks involved, and to continue to represent the class even when success appeared unlikely, is a testament to its commitment." *Brecher v. Argentina*, No. 1:06-cv-15297, ECF No. 148 (S.D.N.Y. Apr. 27, 2017). In *Toyota*, Judge Selna commented: "Class counsel has consistently demonstrated extraordinary skill and effort." Dkt. No. 3933 at 12. Former Chief Judge Vaughn Walker, in selecting our firm as sole lead in *In re Optical Disk Drive Prod. Antitrust Litig.*, 10-md-2143, Dkt. No. 96 at 4-5 (N.D. Cal.) found, "[a] clear choice emerges. That choice is the Hagens Berman firm."

010440-11 1250034 V1

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 100 of 281

Case 1:14-md-02543-JMF   Document 7818   Filed 03/27/20   Page 6 of 11

11.     My firm and I have also received several industry honors.  I am honored to have been named to *Law360's* Titans of the Plaintiffs' Bar for 2018 and to have been named MVP of the Year for 2017.  I also received *The National Law Journals* 2017 Plaintiffs' Trailblazer Award, which highlighted my work in corporate reform, groundbreaking cases, and novel settlement-distribution methods.  I have been named a member of the 2014-2015 Lawdragon 500 Leading Lawyers in America; voted one of the 100 most influential attorneys in America by *The National Law Journal* three times; voted most powerful lawyer in the State of Washington by *The National Law Journal;* and, along with my team was selected as a Finalist for Public Justice's 2014 Trial Lawyer of the Year.  Additionally, our firm has been recognized on numerous occasions for its outstanding accomplishments.  For example, it was named a firm of Elite Trial Lawyers by *The National Law Journal* in 2016. It also has been chosen as Global Law Experts' Class Actions (Plaintiff) Law Firm of the Year for two years running.  These awards, among others, speak to our dedication to, and outstanding results on behalf of, those we have served.

12.     Attached as Exhibit A is a true and correct copy of the first pages of Hagens Berman's current firm resume.  The full resume is over 200 pages long.  We will be happy to submit the entire resume to the Court very promptly should the Court wish to review it.  Attached as Exhibit B is a true and correct copy of my current resume, which includes an attachment listing leadership and committee roles in certain notable cases.

### C.     Counsel's Knowledge Of The Applicable Law.

13.     We know this area of law very well and have successfully litigated class actions across a range of defective products.  In the auto defect arena alone, we have represented putative or certified classes against Toyota (unintended acceleration defects); Ford (defects in dashboard

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 101 of 281

Case 1:14-md-02543-JMF    Document 7818    Filed 03/27/20    Page 7 of 11

computers,[2] engine defects, and transmission defects); Chrysler (rear lift-gate and paint delamination defects); Nissan (defects in a throttle acceleration system[3]); Hyundai (misrepresentation of fuel economy and horsepower metrics,[4] air bag defects, and defects in sub-frames and rear trailing arms); Kia (defective gas tanks); and Volkswagen, Mercedes, Fiat-Chrysler, and GM in diesel emissions fraud cases.[5]

14.    In *Toyota*, as lead counsel, we extensively researched and briefed, *inter alia*, Article III standing; federal preemption; the Magnuson-Moss Act (15 U.S.C. § 2301); the TREAD Act (49 U.S.C. § 30101, *et seq.*); arbitration clauses; notice, presentment, and privity requirements under various state warranty laws; consumer protection laws of every jurisdiction in the U.S.; proximate causation; and multiple forms of equitable and monetary relief. We are also well-versed in the regulations governing NHTSA and auto manufacturer recall obligations. We also prepared the class certification motion, although the case settled shortly before the deadline for filing it.

15.    We have long-standing relationships with a stable of leading automotive experts in mechanical engineering, electrical engineering, "embedded" computer hardware and software, accident reconstruction, and economic losses and have worked with several of them in this MDL.

**D.    Resources That Counsel Will Commit To Representing the Classes.**

16.    Our track record demonstrates that we regularly commit our national resources of our 65+ lawyer firm in complex multi-state class actions to prosecute in a timely manner. We are fortunate to have the ability to fund litigation costs over many years of litigation and trial, often

---

[2] *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal.).

[3] *Daffin v. Ford Motor Co.*, No. C-1-00-458 (S.D. Ohio).

[4] *In re Hyundai & Kia Fuel Economy Litig.*, No. 13-ml-02424-GW (C.D. Cal.).

[5] *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.); *In re Mercedes-Benz Emissions Litig.*, No. 16-cv-00881-JLL (D.N.J.); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:17-md-02777-EMC (N.D. Cal.); *Counts v. General Motors LLC*, No. 1:16-cv-12541-TLL-PTM (E.D. Mich.); *In re Duramax Diesel Litig.*, No. 1:17-cv-11661-TLL-PTM (E.D. Mich.).

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 102 of 281

Case 1:14-md-02543-JMF    Document 7818    Filed 03/27/20    Page 8 of 11

alone, although here we also have the additional resources of the Lieff Cabraser firm and the Executive Committee members.

17.     As discussed above, I have devoted a substantial amount of time to serving as Co-Lead Counsel in the MDL Action and this litigation.  I have personally devoted over 3,150 hours to carrying out my Co-Lead Counsel duties in this MDL Action, helped try the first personal injury case in the MDL, and helped prosecute the economic loss plaintiffs' claims in the Bankruptcy Court.

18.     Other senior partners of the Hagens Berman team have played critical roles in this case and include Sean Matt, Andrew Volk, and Craig Spiegel.  All told, 19 Hagens Berman attorneys (excluding contract lawyers) have assisted me in prosecuting this case.  As a firm, we have collectively recorded over 57,000 hours of attorney, contract attorney, and paralegal time.

19.     My firm has already advanced more than $5,100,000 in out-of-pocket costs in the prosecution of the case.

20.     In sum, we have devoted substantial resources to pursuing the interests of the putative Classes and will continue to do so for the long-haul.  We have been committed to taking this action to trial, if need be, and beyond.

## II.    The Settlement is Fair, Adequate, And Reasonable.

21.     The Settlement Agreement was negotiated by counsel for the Plaintiffs, New GM, the GUC Trust, and counsel to the Participating Unitholders[6] in good faith and at arm's length using the services of the independent Court-appointed economic loss mediator, retired Judge Layn R. Phillips.  After due diligence, the Parties entered into the Settlement Agreement.

---

[6] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Settlement Agreement.

010440-11 1250034 V1

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 103 of 281

Case 1:14-md-02543-JMF   Document 7818   Filed 03/27/20   Page 9 of 11

22.     The Settlement resolves a number of complex issues in the MDL, some of which have already been decided in New GM's favor.   The challenges confronting Plaintiffs at this juncture are many and include:

- The Court granted summary judgment against Plaintiffs' benefit-of-the-bargain damages in the three bellwether states, thereby posing a fundamental barrier to *any* recovery by plaintiffs nationwide unless overturned by the Second Circuit;[7]

- The Court held that claims for lost time damages generally require proof of lost income; and

- The Court held that many states would not allow the Delta Ignition Switch Plaintiffs' successor liability claims.

23.     The Settlement also resolves a host of complex issues in the Bankruptcy Court arising from the Late Claim Motions, including, but not limited to, whether Plaintiffs should be granted authority to file late proofs of claim (and whether such authority can be granted solely on due process grounds), whether the Plaintiffs' claims are equitably moot, whether additional grounds exist to object to the Plaintiffs' claims, and the amount of said claims in the event that they are allowed.

24.     Litigation of these issues has been ongoing for several years, and has consumed significant time, money, and resources from the Parties and the Court.  Continued litigation of the matters resolved by the Settlement Agreement would be complex and costly, and subjecting the Parties to uncertain results.  The Settlement, on the other hand, will substantially reduce costs and the expenditure of resources and eliminate the risk of uncertain litigation outcomes.

25.     The Settlement Agreement resolves multiple disputes, claims and issues to which the Parties are involved in varying degrees, and in related but not necessarily identical ways, such

---

[7] The Court described its summary judgment ruling as "chang[ing] the landscape in dramatic ways."  *See In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 241 (S.D.N.Y. 2019).

010440-11 1250034 V1

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 104 of 281

Case 1:14-md-02543-JMF    Document 7818    Filed 03/27/20    Page 10 of 11

that each Party's overall obligations to one or more other Parties constitutes good and sufficient consideration for the overall benefits each Party is to receive from one or more of the other Parties. Indeed, as the Court has noted, in "five-plus years of litigation, hundreds of depositions, millions of documents exchanged in discovery, and untold trees felled and ink spilled by the parties and the Court, the parties should have enough data to agree on a settlement value for this litigation; the risks of delay and reversal are merely additional data to factor into the calculus." *In re Gen. Motors LLC Ignition Switch Litig*., 2019 WL 6827277, at *14 (S.D.N.Y. Dec. 12, 2019).

26.    The settlements, compromises, releases and transfers contemplated in the Settlement Agreement are fair, reasonable and given in exchange for valuable and reasonably equivalent consideration.

27.    I also believe that, in light of my intimate familiarity with the liability and damage evidence in the case, Judge Phillips' Allocation Decision is within the range of reasonableness.

28.    In light of the inherent risks and costs associated with litigation, the Settlement Agreement is fair, reasonable, and adequate, and clearly falls above the lowest rung in the range of reasonableness.  Moreover, the Settlement Agreement treats Class members equitably and was the result of good faith, arm's-length negotiations

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States.

Executed this 27th day of March 2020 at Seattle, Washington.

*/s/ Steve W. Berman*
Steve W. Berman

- 10 -

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 105 of 281

Case 1:14-md-02543-JMF   Document 7818   Filed 03/27/20   Page 11 of 11

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 27, 2020, which will send notification of such filing to the e-mail addresses registered.

*/s/ Steve W. Berman*
Steve W. Berman

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 106 of 281

Case 1:14-md-02543-JMF    Document 7818-1    Filed 03/27/20    Page 1 of 8

# Exhibit A

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 107 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 2 of 8



HAGENS BERMAN





EXPERIENCE.
INNOVATION.
RESULTS.



Case 1:14-md-02543-JMF    Document 7818-1    Filed 03/27/20    Page 3 of 9



Hagens Berman is a national leader in class-action litigation driven by a team of legal powerhouses. With a tenacious spirit, we are motivated to make a positive difference in people's lives.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 109 of 281

Case 1:14-md-02543-JMF    Document 7818-1    Filed 03/27/20    Page 4 of 8

HAGENS BERMAN SOBOL SHAPIRO LLP

# Table of Contents

## INTRODUCTION
The Firm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
Locations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

## PRACTICE AREAS
Anti-Terrorism . . . . . . . . . . . . . . . . . . . . . . . . . .9
Antitrust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
Automotive - Non-Emissions Cases . . . . . . . . . . .13
Automotive - Emissions Litigation . . . . . . . . . . . .15
Civil and Human Rights . . . . . . . . . . . . . . . . . . . .17
Consumer Protection - General Class Litigation . .18
Consumer Protection - Drug and Supplement
    Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
Employment Litigation . . . . . . . . . . . . . . . . . . . . .23
Environmental Litigation . . . . . . . . . . . . . . . . . . .25
Governmental Representation . . . . . . . . . . . . . . .27
Intellectual Property . . . . . . . . . . . . . . . . . . . . . .29
Investor Fraud - Individual and Class Action
    Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31
Investor Fraud - Institutional Investor Portfolio
    Monitoring and Recovery Services . . . . . . . . . .33
Personal Injury and Abuse . . . . . . . . . . . . . . . . . .34
Sports Litigation . . . . . . . . . . . . . . . . . . . . . . . . .35
Whistleblower Litigation . . . . . . . . . . . . . . . . . . . .38

## APPELLATE VICTORIES
Strengthening Consumer Law . . . . . . . . . . . . . . . .42

## MANAGING PARTNER
Steve W. Berman . . . . . . . . . . . . . . . . . 44

## PARTNER, EXECUTIVE
## COMMITTEE MEMBER
Thomas M. Sobol . . . . . . . . . . . . . . . . 49
Anthony D. Shapiro . . . . . . . . . . . . . . . 53
Robert B. Carey . . . . . . . . . . . . . . . . . 55

## PARTNER
Leonard W. Aragon . . . . . . . . . . . . . . . 58
Lauren Guth Barnes . . . . . . . . . . . . . . . 59
Ian M. Bauer . . . . . . . . . . . . . . . . . . . . 62
Elaine T. Byszewski . . . . . . . . . . . . . . . . 64
Catherine Y.N. Gannon . . . . . . . . . . . . . 66
Kristen A. Johnson . . . . . . . . . . . . . . . .67
Reed R. Kathrein . . . . . . . . . . . . . . . . . 69
Daniel J. Kurowski . . . . . . . . . . . . . . . .72
Thomas E. Loeser . . . . . . . . . . . . . . . . .74
Robert F. Lopez . . . . . . . . . . . . . . . . . .76
Barbara Mahoney . . . . . . . . . . . . . . . . .79
Sean R. Matt . . . . . . . . . . . . . . . . . . . . 80
Martin D. McLean . . . . . . . . . . . . . . . . 82
David P. Moody . . . . . . . . . . . . . . . . . . 83
David S. Nalven . . . . . . . . . . . . . . . . . . 84
Christopher A. O'Hara . . . . . . . . . . . . . . 85
Matthew F. Pawa . . . . . . . . . . . . . . . . . 86
Shana E. Scarlett . . . . . . . . . . . . . . . . .87
Craig R. Spiegel . . . . . . . . . . . . . . . . . . 89
Ronnie Seidel Spiegel . . . . . . . . . . . . . 90
Shayne C. Stevenson . . . . . . . . . . . . . . 92
Andrew M. Volk . . . . . . . . . . . . . . . . . . 95
Garth Wojtanowicz . . . . . . . . . . . . . . . . 96
Jason A. Zweig . . . . . . . . . . . . . . . . . . 98

## SENIOR COUNSEL
Kevin K. Green . . . . . . . . . . . . . . . . . . . 99
Anne F. Johnson . . . . . . . . . . . . . . . . . .102

## OF COUNSEL
Gregory T. Arnold . . . . . . . . . . . . . . . .103
Karl Barth . . . . . . . . . . . . . . . . . . . . . .106
Molly A. Booker . . . . . . . . . . . . . . . . . .107
Jeniphr A.E. Breckenridge . . . . . . . . . .108
Mark S. Carlson . . . . . . . . . . . . . . . . . .109
Jeannie Evans . . . . . . . . . . . . . . . . . . . . 111
Philip J. Graves . . . . . . . . . . . . . . . . . . 112
John D. Jenkins . . . . . . . . . . . . . . . . . . 114
Wesley Kelman . . . . . . . . . . . . . . . . . . 115
Michella A. Kras . . . . . . . . . . . . . . . . . . 116
Benjamin A. Krass . . . . . . . . . . . . . . . . 117
James J. Nicklaus . . . . . . . . . . . . . . . . 119
Ed Notargiacomo . . . . . . . . . . . . . . . . .120
Jerrod C. Patterson . . . . . . . . . . . . . . . 121
Greer N. Shaw . . . . . . . . . . . . . . . . . . .124
Nick Styant-Browne . . . . . . . . . . . . . . .126
Hannah Schwarzschild . . . . . . . . . . . . .127
Nathaniel A. Tarnor . . . . . . . . . . . . . . .128

## ASSOCIATE
Hannah Brennan . . . . . . . . . . . . . . . . .129
John DeStefano . . . . . . . . . . . . . . . . . . 131
Rachel E. Fitzpatrick . . . . . . . . . . . . . . .133
Lucas E. Gilmore . . . . . . . . . . . . . . . . .134
Anthea D. Grivas . . . . . . . . . . . . . . . . .135
Ben Harrington . . . . . . . . . . . . . . . . . .137
Jeffrey A. Lang . . . . . . . . . . . . . . . . . . .138
Kristie A. LaSalle . . . . . . . . . . . . . . . . .139
Jessica R. MacAuley . . . . . . . . . . . . . . .140
Rio Pierce . . . . . . . . . . . . . . . . . . . . . . 141
Christopher R. Pitoun . . . . . . . . . . . . . .142
Benjamin J. Siegel . . . . . . . . . . . . . . . .143
Whitney K. Siehl . . . . . . . . . . . . . . . . . .144
Emilee Sisco . . . . . . . . . . . . . . . . . . . .146
Danielle Smith . . . . . . . . . . . . . . . . . . .147
Shelby R. Smith . . . . . . . . . . . . . . . . . .148
Zoran (Zoki) Tasic . . . . . . . . . . . . . . . .149
Jessica Thompson . . . . . . . . . . . . . . . .150
Dawn Van Diest . . . . . . . . . . . . . . . . . .152
Breanna Van Engelen . . . . . . . . . . . . . .153
Mark Vazquez . . . . . . . . . . . . . . . . . . .154
Bradley J. Vettraino . . . . . . . . . . . . . . .155
Ted Wojcik . . . . . . . . . . . . . . . . . . . . . .156

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 110 of 281

Case 1:14-md-02543-JMF    Document 7818-1    Filed 03/27/20    Page 5 of 8

HAGENS BERMAN SOBOL SHAPIRO LLP

**INTRODUCTION**

# The Firm

Hagens Berman Sobol Shapiro LLP was founded in 1993 with one purpose: to help victims with claims of fraud and negligence that adversely impact a broad group. The firm initially focused on class action and other types of complex, multi-party litigation, but we have always represented plaintiffs/victims. As the firm grew, it expanded its scope while staying true to its mission of taking on important cases that implicate the public interest. The firm represents plaintiffs including investors, consumers, inventors, workers, the environment, governments, whistleblowers and others.

*We are one of the nation's leading class-action law firms and have earned an international reputation for excellence and innovation in ground-breaking litigation against large corporations.*

**OUR FOCUS.** Our focus is to represent plaintiffs/victims in product liability, tort, antitrust, consumer fraud, securities and investment fraud, employment, whistleblower, intellectual property, environmental, and employee pension protection cases. Our firm is particularly skilled at managing multi-state and nationwide class actions through an organized, coordinated approach that implements an efficient and aggressive prosecutorial strategy to place maximum pressure on defendants.

**WE WIN.** We believe excellence stems from a commitment to try each case, vigorously represent the best interests of our clients, and obtain the maximum recovery. Our opponents know we are determined and tenacious and they respect our skills and recognize our track record of achieving top results.

**WHAT MAKES US DIFFERENT.** We are driven to return to the class every possible portion of its damages—our track record proves it. While many class action or individual plaintiff cases result in large legal fees and no meaningful result for the client or class, Hagens Berman finds ways to return real value to the victims of corporate fraud and/or malfeasance.

**A NATIONWIDE REACH.** The scope of our practice is truly nationwide. We have flourished through our network of offices in eight cities across the United States, including Seattle, Boston, Chicago, Los Angeles, New York, Phoenix, San Francisco and San Diego. Our reach is not limited to the cities where we maintain offices. We have cases pending in courts across the country, with substantial activity in California, New York, Washington, Arizona and Illinois.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 111 of 281

Case 1:14-md-02543-JMF    Document 7818-1    Filed 03/27/20    Page 6 of 8



**INTRODUCTION**

# Locations

**SEATTLE**

1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292 phone
(206) 623-0594 fax

**BERKELEY**

715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000 phone
(510) 725-3001 fax

**BOSTON**

55 Cambridge Parkway. Suite 301
Cambridge, MA  02142
(617) 482-3700 phone
(617) 482-3003 fax

**BOSTON, NEWTON CENTRE**

1280 Centre Street, Suite 230
Newton Centre, MA 02459
(617) 641-9550 phone
(617) 641-9551 fax

**CHICAGO**

455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
(708) 628-4949 phone
(708) 628-4950 fax

**LOS ANGELES**

301 North Lake Avenue, Suite 920
Pasadena, CA 91101
(213) 330-7150 phone
(213) 330-7152 fax

**NEW YORK**

555 Fifth Avenue, Suite 1700
New York, NY 10017
(212) 752-5455 phone
(917) 210-3980 fax

**PHOENIX**

11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
(602) 840-5900 phone
(602) 840-3012 fax

**SAN DIEGO**

533 F Street
Suite 207
San Diego, CA 92101
(619) 929-3340 phone

09-50026-mg Doc 14696-2 Filed 03/27/20 Entered 03/27/20 21:11:57 Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers Pg 112 of 281

Case 1:14-md-02543-JMF Document 7818-1 Filed 03/27/20 Page 7 of 8

HAGENS BERMAN SOBOL SHAPIRO LLP

*...the track record of Hagens Berman['s] **Steve Berman is... impressive**, having racked... a $1.6 billion settlement in the Toyota Unintended Acceleration Litigation and a substantial number of really outstanding big-ticket results.*

— *Milton I. Shadur, Senior U.S. District Judge, naming Hagens Berman Interim Class Counsel in Stericycle Pricing MDL*

Class counsel has **consistently demonstrated extraordinary skill and effort.**

— *U.S. District Judge James Selna, Central District of California, In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liability Litigation*

Berman is considered **one of the nation's top class-action lawyers**.

— *Associated Press*

## Elite Trial Lawyers
### *The National Law Journal*

## The Plaintiffs' Hot List: The Year's Hottest Firms
### *The National Law Journal*

## Most Feared Plaintiffs Firms
### *Law360*

**Landmark consumer cases are business as usual** for Steve Berman.

— *The National Law Journal, naming Steve Berman one of the 100 most influential attorneys in the nation for the third time in a row*

[A] **clear choice** emerges. That choice is the Hagens Berman firm.

— *U.S. District Court for the Northern District of California, In re Optical Disk Drive Products Antitrust Litigation (appointing the firm lead counsel)*

All right, I think I can conclude on the basis with my five years with you all, watching this litigation progress and seeing it wind to a conclusion, that **the results are exceptional**... You did an exceptionally good job at organizing and managing the case...

— *U.S. District Court for the Northern District of California, In re Dynamic Random Access Memory Antitrust Litigation (Hagens Berman was co-lead counsel and helped achieve the $325 million class settlement)*

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 113 of 281

Case 1:14-md-02543-JMF   Document 7818-1   Filed 03/27/20   Page 8 of 8

HAGENS BERMAN SOBOL SHAPIRO LLP

## VISA-MASTERCARD ANTITRUST LITIGATION
The firm served as co-lead counsel in what was then the largest antitrust settlement in history – valued at **$27 billion**.

## VOLKSWAGEN FRANCHISE DEALERS LITIGATION
The firm served as lead counsel representing VW franchise dealers in this suit related to the automaker's Dieselgate scandal. A **$1.6 billion** settlement was reached, and represents a result of nearly full damages for the class.

## VOLKSWAGEN EMISSIONS LITIGATION
Hagens Berman was named a member of the Plaintiffs' Steering Committee and part of the Settlement Negotiating team in this monumental case that culminated in the largest automotive settlement in history – **$17.4 billion**.

## TOYOTA UNINTENDED ACCELERATION LITIGATION
Hagens Berman obtained the then largest automotive settlement in history in this class action that recovered **$1.6 billion** for vehicle owners.

---

### STATE OF WASHINGTON, ET AL. V. PHILIP MORRIS, ET AL.
## Hagens Berman represented 13 states in the largest recovery in litigation history – **$206 billion**.

---

## E-BOOKS ANTITRUST LITIGATION
Hagens Berman served as co-lead counsel in this matter and secured a combined **$560 million** settlement on behalf of consumers against Apple and five of the nation's largest publishing companies.

## LCD ANTITRUST LITIGATION
Hagens Berman served as a member of the Executive Committee representing consumers against multiple defendants in multi-district litigation. The total settlements exceeded **$470 million**.

## MCKESSON DRUG LITIGATION
Hagens Berman was lead counsel in these racketeering cases against McKesson for drug pricing fraud that settled for more than **$444 million** on the eve of trials.

## DAVITA HEALTHCARE PERSONAL INJURY LITIGATION
A Denver jury awarded a monumental **$383.5 million** jury verdict against GranuFlo dialysis provider DaVita Inc. on June 27, 2018, to families of three patients who suffered cardiac arrests and died after receiving dialysis treatments at DaVita clinics.

## DRAM ANTITRUST LITIGATION
The firm was co-lead counsel, and the case settled for **$345 million** in favor of purchasers of dynamic random access memory chips (DRAM).

## AVERAGE WHOLESALE PRICE DRUG LITIGATION
Hagens Berman was co-lead counsel in this ground-breaking drug pricing case against the world's largest pharmaceutical companies, resulting in a victory at trial. The court approved a total of **$338 million** in settlements.

## ENRON ERISA LITIGATION
Hagens Berman was co-lead counsel in this ERISA litigation, which recovered in excess of **$250 million**, the largest ERISA settlement in history.

## CHARLES SCHWAB SECURITIES LITIGATION
The firm was lead counsel in this action alleging fraud in the management of the Schwab YieldPlus mutual fund; a **$235 million** class settlement was approved by the court.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 114 of 281

Case 1:14-md-02543-JMF   Document 7818-2   Filed 03/27/20   Page 1 of 6

# Exhibit B

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 115 of 281

Case 1:14-md-02543-JMF    Document 7818-2    Filed 03/27/20    Page 2 of 6

HAGENS BERMAN SOBOL SHAPIRO LLP



**MANAGING PARTNER**

# Steve W. Berman

*Served as co-lead counsel against Big Tobacco, resulting in the largest settlement in world history, and at the time the largest automotive, antitrust, ERISA and securities settlements in U.S. history.*

**CONTACT**
1301 Second Avenue
Suite 2000
Seattle, WA 98101

(206) 623-7292 office
(206) 623-0594 fax
steve@hbsslaw.com

**YEARS OF EXPERIENCE**
› 39

**PRACTICE AREAS**
› Antitrust/Trade Law
› Consumer Protection
› Governmental Representation
› Securities/Investment Fraud
› Whistleblower/**Qui Tam**
› Patent Litigation

**BAR ADMISSIONS**
› Washington
› Illinois

**COURT ADMISSIONS**
› Supreme Court of the United States
› Supreme Court of Illinois
› Supreme Court of Washington
› U.S. District Court for the Eastern and Western Districts of Washington
› U.S. District Court for the Northern and Central Districts of Illinois
› U.S. District Court for the District of Colorado
› U.S. District Court for the Eastern District of Michigan
› First Circuit Court of Appeals
› Second Circuit Court of Appeals

Steve Berman represents consumers, investors and employees in large, complex litigation held in state and federal courts. Steve's trial experience has earned him significant recognition and led The National Law Journal to name him one of the 100 most powerful lawyers in the nation, and to repeatedly name Hagens Berman one of the top 10 plaintiffs' firms in the country. Steve was named an MVP of the Year by Law360 in 2016 and 2017 for his class-action litigation and received the 2017 Plaintiffs' Trailblazer award. He was recognized for the third year in a row as an Elite Trial Lawyer by The National Law Journal.

Steve co-founded Hagens Berman in 1993 after his prior firm refused to represent several young children who consumed fast food contaminated with E. coli—Steve knew he had to help. In that case, Steve proved that the poisoning was the result of Jack in the Box's cost cutting measures along with gross negligence. He was further inspired to build a firm that vociferously fought for the rights of those unable to fight for themselves. Berman's innovative approach, tenacious conviction and impeccable track record have earned him an excellent reputation and numerous historic legal victories. He is considered one of the nation's most successful class-action attorneys, and has been praised for securing record-breaking settlements and tangible benefits for class members. Steve is particularly known for his tenacity in forging consumer settlements that return a high percentage of recovery to class members.

**CURRENT ROLE**

› Managing Partner, Hagens Berman Sobol Shapiro LLP

**RECENT CASES**

› Emissions Litigation
Steve has pioneered pursuing car manufacturers who have been violating emissions standards, including: Mercedes BlueTEC vehicles, GM Chevy Cruze, Dodge Ram 2500 and 3500 trucks, Dodge Ram 1500 and Jeep Cherokee EcoDiesel vehicles, Chevy Silverado, GMC Sierra as well as other models made by Ford, Audi and BMW. Steve and the firm's unmatched work in emissions-cheating investigations is often ahead of the EPA and government regulators.

› *General Motors Ignition Switch Defect Litigation*
Steve serves as lead counsel seeking to obtain compensation for the millions of GM car owners who overpaid for cars that had hidden safety defects.

› *Climate Change* – New York City, King County, Wash.
Steve has always been a fighter for the rights of the environment. In 2017, he began the firm's latest endeavor to combat global climate change through novel applications of the law. Steve currently represents the city of New York and Washington state's King County in lawsuits filed against the world's largest producers of oil: BP, Chevron Corp., Exxon Mobil Corp., Royal Dutch Shell PLC and

**www.hbsslaw.com**

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 116 of 281

Case 1:14-md-02543-JMF    Document 7818-2    Filed 03/27/20    Page 3 of 6

HAGENS BERMAN SOBOL SHAPIRO LLP

> Third Circuit Court of Appeals
> Fifth Circuit Court of Appeals
> Sixth Circuit Court of Appeals
> Seventh Circuit Court of Appeals
> Eighth Circuit Court of Appeals
> Ninth Circuit Court of Appeals
> Tenth Circuit Court of Appeals
> Eleventh Circuit Court of Appeals
> DC Circuit Court of Appeals
> Federal Circuit Court of Appeals
> U.S. Court of Federal Claims

**EDUCATION**

> University of Chicago Law School, J.D., 1980
> University of Michigan, B.A., 1976

MANAGING PARTNER

# Steve W. Berman

ConocoPhillips. The cases seek to hold the Big Oil titans accountable for their brazen impact on global warming-induced sea level rise and related expenses to protect the cities and their millions of residents.

> *Opioids* - Orange and Santa Clara County, Seattle

Steve has always been a fighter for the rights of the environment. In 2017, he began the firm's latest endeavor to combat global climate change through novel applications of the law. Steve currently represents the city of New York and Washington state's King County in multiple lawsuits filed against the world's largest producers of oil: BP, Chevron Corp., Exxon Mobil Corp., Royal Dutch Shell PLC and ConocoPhillips. The cases seek to hold the Big Oil titans accountable for their brazen impact on global warming-induced sea level rise and related expenses to protect the cities and their millions of residents.

> Antitrust Litigation

Corporate fraud has many faces, and Steve has taken on some of the largest perpetrators through antitrust law. Steve serves as co-lead counsel in Visa MasterCard ATM, Batteries, Optical Disc Drives and is in the leadership of a class-action lawsuit against Qualcomm for orchestrating a monopoly that led to purchasers paying significantly more for mobile devices. He serves as interim class counsel in a case against chicken producers for conspiring to stabilize prices by reducing chicken production. Most recently, Steve filed a proposed class-action lawsuit against the world's largest manufacturers of Dynamic Random Access Memory for cornering the market and driving up DRAM.

> Consumer Protection

Steve is a leader in protecting millions of consumers in large-scale cases that challenge unfair, deceptive and fraudulent practices. He leads a class action on behalf of owners of Ford vehicles equipped with MyFord Touch, an in-car entertainment system, who claim the system is flawed, putting drivers at risk of an accident while causing economic hardship. Steve recently filed a class-action lawsuit against Facebook for allowing personal data to be harvested for psychographic profiling.

**RECENT SUCCESS**

> *Volkswagen Franchise Dealerships* - $1.6 billion

Lead counsel for VW franchise dealers suit, in which a settlement of $1.6 billion has received final approval, and represents a substantial recovery for the class.

> *Stericycle Sterisafe Contract Litigation* – $295 million

Hagens Berman's team, led by Steve Berman, filed a class-action lawsuit against Stericycle, a massive medical waste disposal company and achieved a sizable settlement for hundreds of thousands of its small business customers.

> *NCAA Grant-in-Aid Scholarships* – $208 million

Served as co-lead counsel in the Alston case that successfully challenged the NCAA's limitations on the benefits student-athletes can receive as part of a scholarship, culminating in a $208 million settlement. The recovery amounts to 100 percent of single damages in an exceptional result in an antitrust case. Steve will co-lead a trial this year on the injunctive aspect of the case that could result in a change of NCAA rules limiting the financial treatment of athletes. The trial may change the landscape for how NCAA football and basketball players are compensated.

> *Dairy Price-Fixing* – $52 million

This antitrust suit's filing unearthed a massive collusion between the biggest dairy producers in the

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 117 of 281

Case 1:14-md-02543-JMF    Document 7818-2    Filed 03/27/20    Page 4 of 6

HAGENS BERMAN SOBOL SHAPIRO LLP

MANAGING PARTNER

## Steve W. Berman

country, responsible for almost 70 percent of the nation's milk. Not only was the price of milk artificially inflated, but this scheme ultimately also cost 500,000 young cows their lives.

### CAREER HIGHLIGHTS

› *State Tobacco Litigation* - $206 billion
Special assistant attorney general for the states of Washington, Arizona, Illinois, Indiana, New York, Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont and Rhode Island in prosecuting major actions against the tobacco industry. In November 1998, the initial proposed settlement led to a multi-state settlement requiring the tobacco companies to pay the states $206 billion and to submit to broad advertising and marketing restrictions – the largest civil settlement in history.

› *Visa MasterCard ATM Antitrust Litigation* - $27 billion
Co-lead counsel in what was then the largest antitrust settlement in history: a class-action lawsuit alleging that Visa and MasterCard, together with Bank of America, JP Morgan Chase and Wells Fargo, violated federal antitrust laws by establishing uniform agreements with U.S. banks, preventing ATM operators from setting ATM access fees below the level of the fees charged on Visa's and MasterCard's networks.

› *Toyota Sudden, Unintended Acceleration* - $1.6 billion
Hagens Berman was co-lead counsel in this massive MDL alleging that Toyota vehicles contained a defect causing sudden, unintended acceleration (SUA). It was the largest automotive settlement in history at the time, valued at up to $1.6 billion. The firm did not initially seek to lead the litigation, but was sought out by the judge for its wealth of experience in managing very complex class-action MDLs. Hagens Berman and managing partner Steve Berman agreed to take on the role of co-lead counsel for the economic loss class and head the plaintiffs' steering committee.

› *Washington Public Power Supply System (WPPSS)* - $700 million settlement
Represented bondholders and the bondholder trustee in a class-action lawsuit stemming from the failure of two WPPSS nuclear projects. The case was one of the most complex and lengthy securities fraud cases ever filed. The default was one of the largest municipal bond defaults in history. After years of litigation, plaintiffs were awarded a $700 million settlement agreement brought against more than 200 defendants.

› *E-books Antitrust Litigation* - $560 million settlement
Fought against Apple and five of the nation's top publishers for colluding to raise the price of e-books, resulting in recovery equal to twice consumers' actual damages. The firm recovered an initial settlement of more than $160 million with defendant publishing companies in conjunction with several states attorneys general. Steve then led the firm to pursue Apple for its involvement in the e-book price hike. Apple took the case to the Supreme Court, where it was ruled that Apple had conspired to raise prices, and the firm achieved an additional $450 million settlement for consumers.

› *Enron Pension Protection Litigation* - $250 million settlement
Led the class-action litigation on behalf of Enron employees and retirees alleging that Enron leadership, including CEO Ken Lay, had a responsibility to protect the interests of those invested in the 401(k) program, an obligation they abrogated. The court selected Steve to co-lead the case against Enron and the other defendants.

› *Charles Schwab Securities Litigation* - $235 million settlement
Led the firm to file the first class-action lawsuit against Charles Schwab on Mar. 18, 2008, alleging that

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 118 of 281

Case 1:14-md-02543-JMF   Document 7818-2   Filed 03/27/20   Page 5 of 6

HAGENS BERMAN SOBOL SHAPIRO LLP

MANAGING PARTNER

## Steve W. Berman

Schwab deceived investors about the underlying risk in its Schwab YieldPlus Funds Investor Shares and Schwab YieldPlus Funds Select Shares.

› *JP Morgan Madoff Lawsuit* - $218 million settlement
Represented Bernard L. Madoff investors in a suit filed against JPMorgan Chase Bank, one of the largest banks in the world.

› *Boeing Securities Litigation* - $92.5 million settlement
Represented a class of tens of thousands of shareholders against Boeing, culminating in a proposed settlement that was the second-largest awarded in the Northwest.

› *NCAA Concussions* - $75 million settlement, and 50-year medical monitoring fund
Led the firm's pioneering NCAA concussions suit that culminated in a proposed settlement that will provide a 50-year medical-monitoring program for student-athletes to screen for and track head injuries; make sweeping changes to the NCAA's approach to concussion treatment and prevention; and establish a $5 million fund for concussion research, preliminarily approved by the court.

› *US Youth Soccer Settlement*
Revolutionary settlement that changed U.S. Soccer regulations and bought sweeping safety measures to the game. Steve spearheaded a lawsuit against soccer-governing bodies, achieving a settlement that ended heading of the ball for U.S. Soccer's youngest players and greatly diminished risk of concussions and traumatic brain injuries. Additionally, the settlement highlights the importance of on-staff medical personnel at youth tournaments, as well as ongoing concussion education for coaches.

### RECOGNITION

› 2016-2019 Class Action MVP of the Year, Law360

› 2018-2019 Honoree for Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute

› 2014-2016, 2018-2019 Elite Trial Lawyers, The National Law Journal

› 2003-2019 Washington Super Lawyers

› 2014-2019 Lawdragon 500 Leading Lawyers in America

› 2018, 2016 Practice Group of the Year (Automotive), Law360

› 2018 State Executive Committee member, The National Trial Lawyers

› 2018 Top Attorney of the Year, International Association of Top Professionals

› 2017 Plaintiffs' Trailblazer, The National Law Journal

› 2017 Class Actions (Plaintiff) Law Firm of the Year in California, Global Law Experts

› 2014 Finalist for Trial Lawyer of the Year, Public Justice

› 2013 One of the 100 most influential attorneys in America, The National Law Journal

› 2000 Most powerful lawyer in the state of Washington, The National Law Journal

› One of the top 10 plaintiffs' firms in the country, The National Law Journal

### OTHER NOTABLE CASES

› *VW Emissions Litigation* - $14.7 billion settlement
Steve served as a member of the Plaintiffs Steering Committee representing owners of Volkswagen CleanDiesel vehicles that were installed with emissions-cheating software.

› *McKesson Drug Class Litigation* - $350 million settlement
Lead counsel in an action that led to a rollback of benchmark prices of hundreds of brand name drugs,

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 119 of 281

Case 1:14-md-02543-JMF    Document 7818-2    Filed 03/27/20    Page 6 of 6

HAGENS BERMAN SOBOL SHAPIRO LLP

**MANAGING PARTNER**

# Steve W. Berman

and relief for third-party payers and insurers. His discovery of the McKesson scheme led to follow up lawsuits by governmental entities and recovery in total of over $600 million.

› *Average Wholesale Price Litigation* - $338 million settlement
Steve served as lead trial counsel, securing trial verdicts against three drug companies that paved the way for settlement.

› *DRAM Memory Antitrust* - $345 million settlement
Forged a class-action suit against leading DRAM (Dynamic Random Access Memory) manufacturers, claiming the companies secretly agreed to reduce the supply of DRAM in order to artificially raise prices.

› *Hyundai / Kia Fuel Efficiency* - $210 million settlement
Led the firm's aggressive fight as court-appointed co-lead counsel against Hyundai and Kia on behalf of defrauded consumers who alleged the automakers had misrepresented fuel economies in vehicles, securing what was believed to then be the second-largest automotive settlement in history.

› *Bextra/Celebrex Marketing and Products Liability Litigation* - $89 million settlement
Served as court-appointed member of the Plaintiffs Steering Committee and represented nationwide consumers and third party payers who paid for Celebrex and Bextra. The firm was praised by the court for its "unstinting" efforts on behalf of the class.

› *McKesson Governmental Entity Class Litigation* - $82 million settlement
Steve was lead counsel for a nationwide class of local governments that resulted in a settlement for drug price-fixing claims.

› *NCAA/Electronic Arts Name and Likeness* - $60 million settlement
Represented current and former student-athletes against the NCAA and Electronic Arts concerning illegal use of college football and basketball players' names and likenesses in video games without permission or consent from the players.

› *State and Governmental Drug Litigation*
Steve served as outside counsel for the state of New York for its Vioxx claims, several states for AWP claims and several states for claims against McKesson. In each representation, Steve recovered far more than the states in the NAAG multi-state settlements.

› *Exxon Mobile Oil Spill*
Steve represented clients against Exxon Mobil affected by the 10 million gallons of oil spilled off the coast of Alaska by the Exxon Valdez (multimillion-dollar award).

› *Lumber Liquidators Flooring*
Steve was court-appointed co-lead counsel in litigation against Lumber Liquidators representing consumers who unknowingly purchased flooring tainted with toxic levels of cancer-causing formaldehyde. The consumer settlement was confidential.

## PRESENTATIONS

› Steve is a frequent public speaker and has been a guest lecturer at Stanford University, University of Washington, University of Michigan and Seattle University Law School.

## PERSONAL INSIGHT

Steve was a high school and college soccer player and coach. Now that his daughter's soccer skills exceed his, he is relegated to being a certified soccer referee and spends weekends being yelled at by parents, players and coaches. Steve is also an avid cyclist and is heavily involved in working with young riders on the international Hagens Berman Axeon cycling team.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 120 of 281

Case 1:14-md-02543-JMF   Document 7819   Filed 03/27/20   Page 1 of 11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION<br>SWITCH LITIGATION<br><br>This Document Relates to:<br><br>*ALL ECONOMIC LOSS ACTIONS* | No. 14-MD-2543 (JMF) |

**DECLARATION OF ELIZABETH J. CABRASER IN SUPPORT OF JOINT MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF**
**CLASS FOR PURPOSES OF SETTLEMENT, APPROVAL OF NOTICE**
**PROCEDURES, AND APPOINTMENT OF CLASS COUNSEL &**
**CLASS REPRESENTATIVES**

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 121 of 281

Case 1:14-md-02543-JMF    Document 7819    Filed 03/27/20    Page 2 of 11

I, Elizabeth J. Cabraser, declare under penalty of perjury as follows: [1]

    1.    I am a partner at Lieff, Cabraser, Heimann & Bernstein, LLP ("Lieff Cabraser"). I respectfully submit this declaration in support of the Parties' *Joint Motion for Preliminary Approval of Class Settlement, Approval of Notice Procedures, and Appointment of Class Counsel & Class Representatives* (the "Motion"). Based on personal knowledge or discussions with counsel in my firm of the matters stated herein, if called upon, I could and would competently testify thereto.

    2.    Pursuant to Order No. 8, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 14-md-02543-JMF (S.D.N.Y. 2014), I serve as Plaintiffs' Co-Lead Counsel with particular responsibility for the Economic Loss part of the MDL Action along with Steve W. Berman, of Hagens Berman Sobol Shapiro LLP ("Hagens Berman").

    3.    Lieff Cabraser Heimann & Bernstein LLP is a national law firm with offices in Nashville, New York, and San Francisco. Our practice focuses on complex and class action litigation involving product liability, consumer, employment, financial, securities, environmental, and personal injury matters. I have attached a copy of Lieff Cabraser's current firm resume, which shows some of the firm's experience in complex and class action litigation and gives biographical information about Lieff Cabraser's partners and associates. *See* Ex. A.

    4.    Lieff Cabraser is one of the oldest, largest, most respected, and most successful law firms in the country that represents plaintiffs exclusively, in class actions and mass tort litigation. Lieff Cabraser is frequently recognized as one of the top plaintiffs' law firms in the country. For example:

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning assigned to such terms in the Settlement Agreement.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 122 of 281

Case 1:14-md-02543-JMF   Document 7819   Filed 03/27/20   Page 3 of 11

a. In 2020, Benchmark Litigation named Lieff Cabraser "California Plaintiffs Firm of the Year."  Last year, Benchmark Litigation named Lieff Cabraser to its "Top 10 Plaintiff Firms in America" list, the National Law Journal chose our firm as one of nine "Elite Trial Lawyers" nationwide, and Law360 selected Lieff Cabraser as one of the "Top 50 Law Firms Nationwide for Litigation," highlighting our firm's "laser focus" and noting that Lieff Cabraser routinely finds itself "facing off against some of the largest and strongest defense law firms in the world."

b. For the past six years, U.S. News and Best Lawyers selected Lieff Cabraser as a national "Law Firm of the Year."  In every year other than 2013, we were recognized in the category of Mass Torts Litigation/Class Actions – Plaintiffs.  Only one law firm in each practice area receives the "Law Firm of the Year" designation.

c. For the past fourteen years, The National Law Journal recognized Lieff Cabraser as one of the nation's top plaintiffs' law firms, and we are members of their Plaintiffs' Hot List Hall of Fame.

d. The firm has received a number of other recent honors, awards, and recognition, including the National Law Journal's "2017 Elite Trial Lawyers," Law360's "Most Feared Plaintiffs' Firms," and Benchmark Litigation's "Top 10 Plaintiffs Firms in America."

5.      I have represented individual plaintiffs and plaintiff classes in financial, consumer, employment, civil rights, human rights, and tort cases since my admission to the bar in 1978.  I have served as court-appointed counsel in multidistrict litigation ("MDLs") since 1981.  Over the last two decades, I have been appointed to a lead role in eight significant nationwide automobile defect/consumer fraud class actions, including *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.), *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:17-md-2777-EMC (N.D. Cal.), and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (2d Cir. 1998).  As a lead counsel in automotive-related cases, I negotiated and achieved settlements in *Chrysler-Dodge-Jeep EcoDiesel, Volkswagen "Clean Diesel," Bridgestone/Firestone*, *Toyota Unintended Acceleration*, *Ford Explorer*, *GM Pickups*, *Sears Auto Center*, and *Hanlon v. Chrysler*, among others.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 123 of 281

Case 1:14-md-02543-JMF    Document 7819    Filed 03/27/20    Page 4 of 11

6.      I have served as lead counsel, as class counsel, on plaintiffs' executive committees, or on plaintiffs' steering committees in over 50 MDLs and coordinated or consolidated proceedings.  In March 2018, I was inducted into the National Trial Lawyers Association's Trial Lawyer Hall of Fame, and in 2017 I received the *National Law Journals* Lifetime Achievement Award.  In 2018, I also received the Public Justice "Champion of Justice" award for my work in consumer rights.  I have had a career-long interest in promoting the integrity and effectiveness of our civil justice system, and have devoted substantial time to the work of the American Law Institute, on whose Council I serve; to service as a member of the Advisory Committee for Federal Civil Rules; to teaching complex litigation, class actions, and consumer law as an adjunct professor at Columbia and Berkeley Law Schools, and as an active member of the American Academy of Arts and Sciences. I serve as Executive Editor of the American Bar Association Class Actions & Derivative Suits Committee's annual "Fifty-State Survey: The Law of Class Action."

7.      In addition to my own experience as a class-action litigator in vehicle-related cases, the partners and associates in my firm working on this matter also have extensive experience in class-action and/or vehicle-related litigation.  This team includes partner Rachel Geman, who has represented plaintiffs in MDL consumer litigation as Co-Lead Class Counsel and/or on Plaintiffs' Steering Committee, and who is an AV-Preeminent rated attorney recognized by *Best Lawyers* (2012-2017, 2019) and *Super Lawyers* (2011, 2013-2019).  The Lieff Cabraser partners, associates, and staff who have contributed time to this MDL have, collectively, worked on all matters and were specifically staffed to handle aspects of the case with which they had experience, whether trial preparation/trial, expert work, key depositions, legal analysis, and other responsibilities.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 124 of 281

Case 1:14-md-02543-JMF   Document 7819   Filed 03/27/20   Page 5 of 11

8.      Lieff Cabraser has a decades-long history of serving as court-appointed lead class counsel in large vehicle-related class and complex MDL and other actions.  In addition to serving as Court-appointed Co-Lead Counsel in this litigation, Lieff Cabraser has served as lead counsel in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.), lead counsel in *In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales, Practices & Products Liability Litigation*, MDL No. 2777 (N.D. Cal.), one of three court-appointed lead counsel *In re Navistar Maxxforce Engines Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2590 (N.D. Ill.) and one of five Court-appointed lead counsel in *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, No. 10-ML-02151 (C.D. Cal.).  Other examples of large, complex class actions in which Lieff Cabraser served as one of the court-appointed lead counsel include *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, MDL No. 1373 (S.D. Ind.); *In re Mercedes-Benz Tele Aid Contract Litigation*, MDL No. 1914 (D.N.J.); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998); and *In re Whirlpool Corporation Front-Loading Washer Products Liability Litigation*, 678 F.3d 409 (6th Cir. 2012), *reh'g en banc denied*, 2012 U.S. App. LEXIS 12560 (June 18, 2012), *vacated*, 133 S. Ct. 1722 (2013), *reinstated*, 722 F.3d 838 (6th Cir. 2013); *see also Butler v. Sears, Roebuck and Co.*, 2012 U.S. App. LEXIS 23284 (7th Cir. Nov. 13, 2012), *reh'g en banc denied*, 2012 U.S. App. LEXIS 26202 (Dec. 19, 2012), *vacated*, 133 S. Ct. 2768 (2013), *reinstated*, 2013 U.S. App. LEXIS 17748 (7th Cir. Aug. 22, 2013), *cert. denied*, 2014 U.S. LEXIS 1507 (U.S. Feb. 24, 2014).

### A.  **The Litigation**

9.      Lieff Cabraser has represented the Economic Loss Plaintiffs in this litigation and the Bankruptcy Action for over five years.  Lieff Cabraser filed one of the first consumer class

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 125 of 281

Case 1:14-md-02543-JMF    Document 7819    Filed 03/27/20    Page 6 of 11

actions regarding the Ignition Switch Defect, *Esperanza Ramirez, et al v. General Motors,* and took a leading role in coordinating the litigation with other counsel across the country during the MDL petition phase, culminating in the centralization of these proceedings.  On June 24, 2014, I was appointed one of the Temporary Co-Lead Economic Loss Plaintiffs' Counsel in the MDL Action, and on August 15, 2014, I was appointed Co-Lead Plaintiffs' Counsel for Economic Loss claims in the MDL Action.

10.    Each Co-Lead Plaintiffs' Counsel participated in a competitive leadership application process in the MDL Action during which we established, and the MDL Court recognized, our qualifications, experience, and commitment to the litigation.  Indeed, the criteria the MDL Court considered in appointing Co-Lead Counsel was substantially similar to the considerations set forth in Rule 23(g).  *Compare* Order Nos. 5 & 8, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 14-md-02543-JMF (S.D.N.Y. 2014), *with Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 130-31 (S.D.N.Y. 2011) (quoting Fed. R. Civ. P. 23(g)).

11.    As Co-Lead Plaintiffs' Counsel, the Lieff Cabraser team and I have been involved in all aspects of case prosecution and management in this litigation and the MDL Action.  These efforts include, among other things: the investigation, preparation, and filing of the more than 1600 page Fifth Amended Consolidated Complaint; development of an extensive factual record from New GM and third parties through review of more than 23 million pages of documents and deposition of hundreds of witnesses; ongoing coordination with designated counsel in the Bankruptcy Court; litigation of a number of dispositive and non-dispositive issues in the MDL Court and in the Bankruptcy Court, including appeals of same; multiple rounds of briefing on motions to dismiss, summary judgment, class certification, and discovery issues; trial preparation

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 126 of 281

Case 1:14-md-02543-JMF    Document 7819    Filed 03/27/20    Page 7 of 11

work; extensive work on expert and damage valuation matters; and negotiation of the Settlement Agreement.

12.     Lieff Cabraser remains fully committed to dedicating the necessary resources and collaborating with Co-Lead Plaintiffs' Counsel for the benefit of the Class and Subclasses.  To date, Lieff Cabraser has contributed $3,500,000 to the common benefit assessment fund ($665,000 of which has been reimbursed pursuant to Court orders), and an additional $688,897.78 in unreimbursed held costs.  Lieff Cabraser's total net expenses to date are $3,523,897.78.  Lieff Cabraser has also dedicated more than 38,636 hours to this MDL Action.

13.     The Settlement Agreement was negotiated by counsel for the Plaintiffs, New GM, and the Motors Liquidation Company General Unsecured Creditors Trust (the "GUC Trust") in good faith and at arm's length.  The Settlement Agreement resulted from extensive negotiations between and among experienced counsel for the Parties, under the auspices of a respected and experienced Court-ordered mediator, former federal judge Hon. Layn Phillips.  At multiple in-person mediation sessions, the Parties extensively, and at times contentiously, discussed the merits of the claims and defenses and the relief available to the Class.  These discussions were followed by lengthy telephone conferences, as well as exchanges of multiple drafts and related materials.

14.     In light of the inherent risks and costs associated with litigation, the Settlement Agreement is fair, reasonable, and adequate, and clearly falls above the lowest rung in the range of reasonableness.  This litigation has been ongoing for years, consuming large sums of money and countless hours of labor for the Parties and this Court.  In the absence of settlement, there is a high likelihood of even more expensive, protracted litigation that will expose the Plaintiffs to significant risk and uncertainty.   For a successful path forward, in the MDL, Plaintiffs

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 127 of 281

Case 1:14-md-02543-JMF    Document 7819    Filed 03/27/20    Page 8 of 11

realistically would first need to prevail on an appeal in the Second Circuit.  Especially to the extent the appeals implicates issues of California state law, this could also involve litigation in the California Supreme Court.  This will be a lengthy and uncertain process.  If the Second Circuit declines to take the appeal, Plaintiffs and GM will have to litigate, among other things, the propriety and admissibility of revised economic loss damage models.   Further, even if Plaintiffs were to succeed on appeal, they would immediately face a number of serious and costly challenges, including pending class certification and renewed summary judgment motions. Even if, in the best case scenario, the many pending motions were resolved in Plaintiffs' favor, in the absence of settlement the Plaintiffs would still face a long road to recovery, including trial, post-trial motions, and an almost inevitable appeal, with no guarantee of success.  Additionally, as a matter of economic reality and proportionality, this litigation involves older vehicles, which continue to depreciate and reach the end of their useful lives in the normal course.  Already, many have gone out of service and will continue to do so as the litigation proceeds.  Continuing litigation will take time, and that time impacts the damages models, and decreases the value and utility of economic remedies to the class.

15.    In my opinion, and that of Mr. Berman, the Settlement provides adequate relief to Class Members that substantially reduces costs and the expenditure of resources, while eliminating the risk of uncertain litigation outcomes.  The proposed Settlement Class would receive a meaningful and tangible present recovery— $120 million in monetary relief—to be distributed in a reasonable time period.  The relief for economic loss is in addition to the substantial benefits that have been paid to those who suffered personal injury or death; a $595 million voluntary personal injury/wrongful death fund; and a $900 million penalty GM has paid in connection with federal probes.  In its structure, the Settlement also incentivizes Class

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 128 of 281

Case 1:14-md-02543-JMF   Document 7819   Filed 03/27/20   Page 9 of 11

Members who still possess Subject Vehicles to make the necessary repairs, thereby serving an important public safety interest.

16.     The settlements, compromises, releases and transfers contemplated in the Settlement Agreement are fair, reasonable and given in exchange for valuable and reasonably equivalent consideration.

17.     The Settlement Agreement treats Class members equitably relative to each other. The proposed allocation was issued after presentations made by Allocation Counsel representing each of the five Settlement Subclasses to the Hon. Layn R. Phillips.  The Allocation Decision issued by Judge Phillips provides a crucial component for a straightforward and effective means of distributing the Common Fund to the Settlement Class, and treats Settlement Class Members equitably relative to each other.

18.     Further, based on my significant experience in complex consumer class action litigation and my observations during the course of this case, it is my professional opinion that the named Plaintiffs/proposed Settlement class and Subclass Representatives willingly, constructively, and effectively contributed to the prosecution of the claims on behalf of the Class. All Plaintiffs have actively participated in the litigation by producing extensive fact sheets, participating in discovery where requested, and communicating with counsel.  Plaintiffs in the bellwether states also sat for all-day deposition.  Plaintiffs have demonstrated an understanding of the nature of their claims and their duties as class representatives over the course of this hard-fought and longstanding litigation involving claims in two courts.

I declare under penalty of perjury that the forgoing is true and correct.

Executed in San Francisco, California, this 27th day of March 2020.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 129 of 281

Case 1:14-md-02543-JMF   Document 7819   Filed 03/27/20   Page 10 of 11

*/s/ Elizabeth J. Cabraser*_____
Elizabeth J. Cabraser

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 130 of 281

Case 1:14-md-02543-JMF   Document 7819   Filed 03/27/20   Page 11 of 11

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 27, 2020, which will send notification of such filing to the e-mail addresses registered.

*/s/ Steve W. Berman*
Steve W. Berman

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 131 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 1 of 144

# EXHIBIT A

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 132 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 2 of 144

# Lieff Cabraser Heimann & Bernstein

Attorneys at Law

| | |
|---|---|
| 275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Telephone: 415.956.1000<br>Facsimile: 415.956.1008 | 250 Hudson Street, 8th Floor<br>New York, NY 10013-1413<br>Telephone: 212.355.9500<br>Facsimile: 212.355.9592 |
| 222 2nd Avenue South, Suite 1640<br>Nashville, TN 37201<br>Telephone: 615.313.9000<br>Facsimile: 615.313.9965 | Nymphenburger Strasse 4, 5th Floor<br>80335 Munich, GERMANY<br>Telephone: 49.89.20.80.27.389<br>Facsimile: 49.89.20.80.27.450 |

Email: mail@lchb.com
Website: www.lieffcabraser.com

**FIRM PROFILE:**

Lieff Cabraser Heimann & Bernstein, LLP, is a 100-attorney AV-rated law firm founded in 1972 with offices in San Francisco, New York, Nashville, and Munich. We have a diversified practice, successfully representing plaintiffs in the fields of personal injury and mass torts, securities and financial fraud, employment discrimination and unlawful employment practices, product defect, consumer protection, antitrust, environmental and toxic exposures, False Claims Act, digital privacy and data security, and human rights. Our clients include individuals, classes and groups of people, businesses, and public and private entities.

Lieff Cabraser has served as Court-appointed Plaintiffs' Lead or Class Counsel in state and federal coordinated, multi-district, and complex litigation throughout the United States. With co-counsel, we have represented clients across the globe in cases filed in American courts. Lieff Cabraser is among the largest firms in the United States that only represent plaintiffs.

Described by *The American Lawyer* as "one of the nation's premier plaintiffs' firms," Lieff Cabraser enjoys a national reputation for professional integrity and the successful prosecution of our clients' claims. We possess sophisticated legal skills and the financial resources necessary for the handling of large, complex cases, and for litigating against some of the nation's largest corporations. We take great pride in the leadership roles our firm plays in many of this country's major cases, including those resulting in landmark decisions and precedent-setting rulings.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 133 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 3 of 144

Lieff Cabraser has litigated and resolved thousands of individual lawsuits and hundreds of class and group actions, including some of the most important civil cases in the United States over the past four decades. We have assisted our clients in recovering over $124 billion in verdicts and settlements. Twenty-eight cases have been resolved for over $1 billion; another 54 have resulted in verdicts or settlements at or in excess of $100 million.

*The National Law Journal* has recognized Lieff Cabraser as one of the nation's top plaintiffs' law firms for fourteen years, and we are a member of its Plaintiffs' Hot List Hall of Fame, "representing the best qualities of the plaintiffs' bar and demonstrating unusual dedication and creativity." *The National Law Journal* separately recognized Lieff Cabraser as one of the "50 Leading Plaintiffs Firms in America." In December 2019, *The American Lawyer* included Lieff Cabraser in its "Top 50 Litigation Departments in the U.S.," the only all-plaintiff-side litigation firm included among the firms recognized. In March of 2020, Benchmark Litigation named Lieff Cabraser its "California Plaintiff Firm of the Year."

In September of 2019, *Law360* named Lieff Cabraser a "California Powerhouse" for litigation after naming our firm its "Class Action Firm of the Year" in January 2019. In July of 2019, Public Justice awarded Lieff Cabraser its "Trial Lawyer of the Year" award. In March 2019, *Benchmark Litigation* selected Lieff Cabraser as its "California Plaintiff Firm of the Year" and we were 2018 finalists for *Benchmark's* "Plaintiff Law Firm of the Year." Lieff Cabraser has 21 lawyers named to the "Best Lawyers in America" 2020 listing, and *The National Law Journal* awarded our firm its 2019 "Elite Trial Lawyer" awards in the fields of Consumer Protection and Cybersecurity/Data Breach. We had 38 firm lawyers named to the 2019 *Super Lawyers* "Super Lawyer" and "Rising Star" lists, and were named the *Daily Journal's* "California Lawyers of the Year 2018" as well as having eight lawyers named to *Benchmark's* "40 and Under Hot List 2018."

*U.S. News* and *Best Lawyers* has selected Lieff Cabraser as a national "Law Firm of the Year" six times in the last nine years, in categories including Mass Torts Litigation/Class Actions – Plaintiffs and Employment Law – Individuals. In 2017, Lieff Cabraser's Digital Privacy and Data Security practice group was named "Privacy Group of the Year" by *Law360*, and the firm's Consumer Protection practice group was named "Consumer Protection Group of the Year" by the publication as well.

In 2016, *Benchmark Litigation* named Lieff Cabraser to its "Top 10 Plaintiff Firms in America" list, *The National Law Journal* chose our firm as one of nine "Elite Trial Lawyers" nationwide, and *Law360* selected Lieff Cabraser as one of the "Top 50 Law Firms Nationwide for Litigation." The publication separately noted that our firm "persists as a formidable agency of change, producing world class legal work against some of the most powerful corporate players in the world today."

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 134 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 4 of 144

***CASE PROFILES:***

I.    **Personal Injury and Products Liability Litigation**

    A.    **Current Cases**

        1.    ***Jane Doe et al. v. George Tyndall and the University of
Southern California***, Case No. 2:18-cv-05010 (C.D. Cal.). In June of
2018, Lieff Cabraser and co-counsel filed a class action lawsuit on behalf
of women who were sexually abused, harassed, and molested by
gynecologist George Tyndall, M.D., while they were students at University
of Southern California ("USC"). As alleged in the complaint, despite the
fact that USC has publicly admitted that it received numerous complaints
of Tyndall's sexually abusive behavior, dating back to at least the year
2000, USC actively and deliberately concealed Tyndall's sexual abuse for
years, continuing to grant Tyndall unfettered sexual access to the female
USC students in his care. USC hid the complaints despite the fact that
many of the complaints came directly from its own employees and staff,
including nurses and medical assistants who were physically present
during the examinations as "chaperones," and witnessed the sexual
misconduct firsthand. Despite receiving years of serious complaints of
significant misconduct about Tyndall, including sexual misconduct, USC
failed to take any meaningful action to address the complaints until it was
finally forced to do so in June 2016.

On February 12, 2019, University of Southern California (USC) students
and alumni filed a class action settlement agreement resolving claims
related to gynecologist George Tyndall, M.D. that will require USC to
adopt and implement significant and permanent procedures for
identification, prevention, and reporting of sexual and racial misconduct,
as well as recognize all of Tyndall's patients through a $215 million fund
that gives every survivor a choice in how to participate. The settlement
proposes a tiered structure for recovery that allows victims to choose the
level of engagement they wish to have with the claims process and how
they wish to communicate their stories. All women who USC's records
show saw Tyndall for a women's health visit will automatically get a
$2,500 check, and the further tiers are structured to allow victims to
choose their level of engagement with the process – if they only want to
submit claims in writing, they can choose that, which allows them a
certain range of potential claim payments above the 2,500 floor; if they
are willing and able to provide an interview, they can be eligible for a
range up to the highest $250,000 amount. But at all levels, the settlement
is designed to provide victims with a safe process within which to come
forward, where they have control over how much they want to engage at
their chosen level of comfort.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 135 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 5 of 144

On February 19, 2020, Judge Steven V. Wilson of the U.S. District Court for the Central District of California granted final approval to the $215 million settlement of the gender violence and sexual abuse class action litigation filed on behalf of nearly 18,000 women against Dr. George Tyndall and the University of Southern California.

2. ***Southern California Fire Cases (California Thomas Wildfire & Mudslide Litigation)***, JCCP No. 4965 (Cal. Supr. Ct.). Lieff Cabraser partners Lexi J. Hazam and Robert J. Nelson serve as Co-Lead Counsel in consolidated individual and class action lawsuits against Southern California Edison over the role of the utility's equipment in starting the devastating Thomas Fire that ravaged Southern California in December 2017 and the resulting subsequent mudslides in Montecito that killed 21 people. The action seeks restitution for personal and business losses alleged to have occurred as a result of Southern California Edison's failure to properly and safely maintain its electrical infrastructure in Santa Barbara and Ventura Counties.

Thorough post-fire investigations through the spring of 2019 have determined that what became known as the Thomas Fire was a result of the merging of the Ventura County Koenigstein Fire (caused by the separation of an energized conductor near an insulator on an SCE-operated power pole, which then fell to the ground along with molten metal particles and ignited the dry vegetation below) and the ThomaFvolkds Fire (caused by power lines owned by SCE coming into contact with each other during high winds). Both the Koenigstein Fire and the Thomas Fire started on the same electrical circuit; hours after they began, the Koenigstein Fire merged with the Thomas Fire and collectively became known as the Thomas Fire. The fire burned a total of 281,893 acres, destroying 1,063 structures and resulting in one civilian and one firefighter fatality.

3. ***2017 California North Bay Fire Cases***, JCCP No. 4955 (Cal. Supr. Ct.). Lieff Cabraser founding partner Elizabeth Cabraser and firm partner Lexi Hazam serve as Chairs of the Class Action Committee in the consolidated lawsuits against Pacific Gas & Electric relating to losses from the 2017 San Francisco Bay Wine Country Fires. Cabraser and Hazam also serve on the Individual Plaintiffs Executive Committee in the litigation. In November of 2017, Lieff Cabraser filed individual and class action lawsuits against PG&E for losses relating to the devastating October 2017 North Bay Fires. The lawsuit sought to hold PG&E accountable for damages to real and personal property, loss of income, and loss of business arising from the fires. In the wake of the devastating fires that burned throughout northern California in October of 2017, more than 50 separate lawsuits were filed in multiple courts seeking to hold PG&E liable.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 136 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 6 of 144

In January 2018, the lawsuits were consolidated into a single action in San Francisco Superior Court. Cal Fire has determined that of the 21 major fires last fall in Northern California, at least 17 were caused by power lines, poles and other equipment owned by Pacific Gas and Electric Company. PG&E had attempted to coordinate the actions in five separate clusters, including in counties that to date have no pertinent cases, but the Court held that issues of commonality and efficiency mandated coordination on a single court in San Francisco.

PG&E made multiple demurrers to plaintiffs' inverse condemnation claims, seeking the outright dismissal of plaintiff's' claims for damages against the utility unless PG&E was granted the right to pass any damages award on to its ratepaying customers. In May 2018, the Court issued an order overruling PG&E's demurrers. The Court disagreed with PG&E's arguments on all counts, holding in favor of plaintiffs and directing PG&E to answer plaintiffs' pending complaints. In June of 2018, PG&E announced that it expected to be held liable for damage from most if not all of the deadly and widespread fires that coursed through the North San Francisco Bay Area in October of 2017, recording so far a $2.5 billion charge to cover losses. PG&E noted that the $2.5 billion charge represents the low end of its anticipated potential losses.

4.    ***Camp Fire Cases***, JCCP No. 4995 (Cal. Supr. Court). Lieff Cabraser represents the family of Ernest Francis "Ernie" Foss, beloved father and musician, who was killed in the November 2018 Camp Fire, the deadliest and most destructive wildfire in modern California history. The fire broke out in Northern California near Chico in early November 2018 and quickly grew to massive size, affecting over 140,000 acres and killing at least 80 people, destroying nearly 14,000 homes and nearly obliterating the town of Paradise, and causing the evacuation of over 50,000 area residents.

In addition, Lieff Cabraser represents plaintiffs in a class action lawsuit as well as hundreds of individual suits filed against PG&E for the devastating property damage, economic losses, and disruption to homes, businesses, and livelihoods caused by the Camp wildfire. The lawsuits allege the Camp Fire was started by unsafe electrical infrastructure owned, operated, and improperly maintained by PG&E. The plaintiffs further claim that despite PG&E's knowledge that electrical infrastructure was aging, unsafe, and vulnerable to environmental conditions, PG&E failed to take action that could have prevented the deadliest and most destructive wildfire in California's history.

5.    ***In re PG&E Corporation***, Case No. 19-30088 and In re Pacific Gas and Electric Company, Case No. 19-30089 (U.S. Bankruptcy Court, N.D. Cal. – San Francisco Division). In January of 2019, in the face of

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 137 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 7 of 144

overwhelming liability from pending wildfire litigation, including the North Bay and Camp Fire JCCPs, PG&E Corporation and Pacific Gas and Electric Company filed voluntary petitions for relief under Chapter 11 of the federal Bankruptcy Code. As a result of the bankruptcy filing, the Camp Fire and North Bay Fires proceedings in state court have been stayed. In February 2019, Andrew R. Vara, the Acting United States Trustee for Region 3, appointed an official committee of tort claimants to represent the interests and act on behalf of all persons with tort claims against PG&E, including wildfire victims, in the bankruptcy proceedings. Lieff Cabraser represents Angela Foss Loo as a member of the Official Committee of Tort Claimants.

6.      ***Woolsey Fire Cases***, JCCP No. 5000 (Cal Supr. Ct.). Judge William F. Highberger named Lexi J. Hazam as Co-Lead Counsel for Individual Plaintiffs in the coordinated Woolsey Fire Cases against Southern California Edison relating to the devastating 2018 fire that burned more than 1000 homes and 96,000 acres in Los Angeles and Ventura Counties. The action includes claims for negligence, trespass, inverse condemnation, and violation of the California Public Utilities and Health and Safety codes, and seeks damages for the fires victims' losses.

7.      ***In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation***, MDL No. 2151 (C.D. Cal.).  Lieff Cabraser serves as Co-Lead Counsel for the plaintiffs in the Toyota injury cases in federal court representing individuals injured, and families of loved ones who died, in Toyota unintended acceleration accidents. The complaints charge that Toyota took no action despite years of complaints that its vehicles accelerated suddenly and could not be stopped by proper application of the brake pedal. The complaints further allege that Toyota breached its duty to manufacture and sell safe automobiles by failing to incorporate a brake override system and other readily available safeguards that could have prevented unintended acceleration.

In December 2013, Toyota announced its intention to begin to settle the cases. In 2014, Lieff Cabraser played a key role in turning Toyota's intention into a reality through assisting in the creation of an innovative resolution process that has settled scores of cases in streamlined, individual conferences. The settlements are confidential. Before Toyota agreed to settle the litigation, plaintiffs' counsel overcame significant hurdles in the challenging litigation. In addition to defeating Toyota's motion to dismiss the litigation, Lieff Cabraser and co-counsel demonstrated that the highly-publicized government studies that denied unintended acceleration, or attributed it to mechanical flaws and driver error, were flawed and erroneous.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 138 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 8 of 144

8. **Individual General Motors Ignition Switch Defect Injury Lawsuits**, MDL No. 2543 (S.D. N.Y.). Lieff Cabraser represents over 100 persons injured nationwide, and families of loved ones who died, in accidents involving GM vehicles sold with a defective ignition switch. Without warning, the defect can cause the car's engine and electrical system to shut off, disabling the air bags. For over a decade GM was aware of this defect and failed to inform government safety regulators and public. The defect has been has been implicated in the deaths of over 300 people in crashes where the front air bags did not deploy. On August 15, 2014, U.S. District Court Judge Jesse M. Furman appointed Elizabeth J. Cabraser as Co-Lead Plaintiffs' Counsel in the GM ignition switch litigation in federal court.

9. **Retrievable Inferior Vena Cava Blood Filter Injuries, In re Bard IVC Filters Prods. Liab. Litig.**, MDL No. 2641 (D. Ariz.). Inferior Vena Cava blood filters or IVC filters are small, basket-like medical devices that are inserted into the inferior vena cava, the main blood vessel that returns blood from the lower half of the body to the heart. Tens of thousands of patients in the U.S. are implanted with IVC filters in order to provide temporary protection from pulmonary embolisms. However, these devices have resulted in multiple complications including device fracture, device migration, perforation of various organs, and an increased risk for venous thrombosis. Due to these complications, patients may have to undergo invasive device removal surgery or suffer heart attacks, hemorrhages, or other major injuries. We represent injured patients and their families in individual personal injury and wrongful death lawsuits against IVC filter manufacturers, and Lieff Cabraser attorney Wendy R. Fleishman serves on the Plaintiffs Executive Committee in the IVC Filter cases in the federal multidistrict litigation.

10. **Injury and Death Lawsuits Involving Wrongful Driver Conduct and Defective Tires, Transmissions, Cars and/or Vehicle Parts (Seat Belts, Roof Crush, Defective seats, and Other Defects).** Lieff Cabraser has an active practice prosecuting claims for clients injured, or the families of loved ones who have died, by wrongful driver conduct and by unsafe and defective vehicles, tires, restraint systems, seats, and other automotive equipment. The firm also represent clients in actions involving fatalities and serious injuries from tire and transmission failures as well as rollover accidents (and defective roofs, belts, seat back and other parts) as well as defective transmissions and/or shifter gates that cause vehicles to self-shift from park or false park into reverse. Our attorneys have received awards and recognition from *California Lawyer* magazine (Lawyer of the Year Award), the Consumer Attorneys of California, and the San Francisco

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 139 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 9 of 144

Trial Lawyers Association for their dedication to their clients and outstanding success in vehicle injury cases.

11.    ***In Re: Abilify (Aripiprazole) Products Liability Litigation***, MDL No. 2734 (N.D. Fla.).  We represent clients who have incurred crippling financial losses and pain and suffering from compulsive gambling caused by the drug Abilify. In May 2016 the FDA warned that Abilify can lead to damaging compulsive behaviors, including uncontrollable gambling. The gambling additions can be so severe that patients lose their homes, livelihoods, and marriages. The $6+ billion a year-earning drug was prescribed for nearly 9 million patients in 2014 alone.  In December 2016, Lieff Cabraser partner Lexi Hazam was appointed by the court overseeing the nationwide Abilify gambling injuries MDL litigation to the Plaintiffs Executive Committee and Co-Chairs the Science and Expert Sub-Committee for the nationwide Abilify MDL litigation. Discovery in the case is ongoing.

12.    ***In re Engle Cases***, No. 3:09-cv-10000-J-32 JBT (M.D. Fl.).  Lieff Cabraser represents Florida smokers, and the spouses and families of loved ones who died, in litigation against the tobacco companies for their 50-year conspiracy to conceal the hazards of smoking and the addictive nature of cigarettes.

On February 25th, 2015, a settlement was announced of more than 400 Florida smoker lawsuits against the major cigarette companies Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Lorillard Tobacco Company.  As a part of the settlement, the companies will collectively pay $100 million to injured smokers or their families. This was the first settlement ever by the cigarette companies of smoker cases on a group basis.

Lieff Cabraser attorneys tried over 20 cases in Florida federal court against the tobacco industry on behalf of individual smokers or their estates, and with co-counsel obtained over $105 million in judgments for our clients.  Two of the jury verdicts Lieff Cabraser attorneys obtained in the litigation were ranked by *The National Law Journal* as among the Top 100 Verdicts of 2014.

13.    ***In re Takata Airbag Litigation***, MDL No. 2599 (S.D. Fl.). Lieff Cabraser serves on the Plaintiffs Steering Committee in the national litigation related to Takata Corporation's defective and dangerous airbags manufactured by Japan-based Takata Corporation. Nearly 42 million vehicles have been recalled worldwide, making this the largest automotive recall in U.S. history.

The airbags contain an unstable propellant that can cause the airbag to explode upon impact in an accident, shooting metal casing debris towards

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 140 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 10 of 144

drivers and passengers. Close to 300 injuries, including 23 deaths, have been linked to the airbags. The complaints charge that the company knew of defects in its airbags a decade ago after conducting secret tests of the products that showed dangerous flaws. Rather than alert federal safety regulators to these risks, Takata allegedly ordered its engineers to delete the test data. The complaints also allege that the vehicle manufacturers who used these airbags ignored numerous warning signs that they were not safe.

To date, Lieff Cabraser and our co-counsel have secured over $1.5 billion in settlements from Honda, Toyota, Ford, Nissan, BMW, Subaru, and Mazda. Litigation continues against Volkswagen, Mercedes, Fiat Chrysler, and General Motors.

14.    ***Stryker Metal Hip Implant Litigation***, MDL No. 2441 (D. Minn.). Lieff Cabraser represents over 60 hip replacement patients nationwide who received the recalled Stryker Rejuvenate and ABG II modular hip implant systems.  Wendy Fleishman serves on the Plaintiffs' Lead Counsel Committee of the multidistrict litigation cases.  These patients have suffered tissue damage and have high metal particle levels in their blood stream.  For many patients, the Stryker hip implant failed necessitating painful revision surgery to extract and replace the artificial hip.

On November 3, 2014, a settlement was announced in the litigation against Stryker Corporation for the recall of its Rejuvenate and ABG II artificial hip implants. Under the settlement, Stryker will provide a base payment of $300,000 to patients that received the Rejuvenate or ABG II hip systems and underwent revision surgery by November 3, 2014, to remove and replace the devices.  Stryker's liability is not capped.  It is expected that the total amount of payments under the settlement will far exceed $1 billion dollars. Payments under the settlement program are projected for disbursement at the end of 2015.

15.    ***DePuy Metal Hip Implants Litigation***, MDL No. 2244 (N.D. Tex.). Lieff Cabraser represents nearly 200 patients nationwide who received the ASR XL Acetabular and ASR Hip Resurfacing systems manufactured by DePuy Orthopedics, a unit of Johnson & Johnson.  In 2010, DePuy Orthopedics announced the recall of its all-metal ASR hip implants, which were implanted in approximately 40,000 U.S. patients from 2006 through August 2010.  The complaints allege that DePuy Orthopedics was aware its ASR hip implants were failing at a high rate, yet continued to manufacture and sell the device.  In January 2011, in *In re DePuy Orthopaedics, Inc.* ASR Hip Implant Products, MDL No. 2197, the Court overseeing all DePuy recall lawsuits in federal court appointed Lieff Cabraser partner Wendy R. Fleishman to the Plaintiffs' Steering Committee for the organization and coordination of the litigation.  In July

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 141 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 11 of 144

2011, in the coordinated proceedings in California state court, the Court
appointed Lieff Cabraser partner Robert J. Nelson to serve on the
Plaintiffs' Steering Committee.

In 2013, Johnson & Johnson announced its agreement to pay at least $2.5
billion to resolve thousands of defective DePuy ASR hip implant lawsuits.
Under the settlement, J&J offers to pay a base award of $250,000 to U.S.
citizens and residents who are more than 180 days from their hip
replacement surgery, and prior to August 31, 2013, had to undergo
revision surgery to remove and replace their faulty DePuy hip ASR XL or
ASR resurfacing hip.  The $250,000 base award payment will be adjusted
upward or downward depending on medical factors specific to each
patient.  Lieff Cabraser also represents nearly 100 patients whose DePuy
Pinnacle artificial hips containing a metal insert called the Ultamet metal
liner have prematurely failed.

16.    ***Mirena Litigation***.  A widely-used, plastic intrauterine device (IUD)
that releases a hormone into the uterus to prevent pregnancy, Mirena is
manufactured by Bayer Healthcare Pharmaceuticals.  Lieff Cabraser
represents patients who have suffered serious injuries linked to the IUD.
These injuries include uterine perforation (the IUD tears through the
cervix or the wall of the uterus), ectopic pregnancy (when the embryo
implants outside the uterine cavity), pelvic infections and pelvic
inflammatory disease, and thrombosis (blood clots).

17.    ***Birth Defects Litigation***.  Lieff Cabraser represents children and their
parents who have suffered birth defects as a result of problematic
pregnancies and improper medical care, improper prenatal genetic
screening, ingestion by the mother of prescription drugs during
pregnancy which had devastating effects on their babies.  These birth
defects range from heart defects, physical malformations, and severe
brain damage associated with complex emotional and developmental
delays.  Taking of antidepressants during pregnancy has been linked to
multiple types of birth defects, neonatal abstinence syndrome from
experiencing withdrawal of the drug, and persistent pulmonary
hypertension of the newborn (PPHN).

18.    ***Vaginal Surgical Mesh Litigation***.  Lieff Cabraser represents more
than 300 women nationwide who have been seriously injured as a result
of polypropylene vaginal surgical mesh implantation as a treatment for
pelvic organ prolapse or stress urinary incontinence. Manufactured by
Johnson & Johnson, Boston Scientific, AMS, Bard, Caldera, Coloplast,
and others, these products have been linked to serious side effects
including erosion into the vaginal wall or other organs, infection, internal
organ damage, and urinary problems. As of early 2016, the firm is in all
phases of litigation and settlement on these cases.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 142 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 12 of 144

19.     ***Xarelto Litigation.***  Lieff Cabraser represents patients prescribed
Xarelto sold in the U.S. by Janssen Pharmaceuticals, a subsidiary of
Johnson & Johnson.  The complaints charge that Xarelto, approved to
prevent blood clots, is a dangerous and defective drug because it triggers
in certain patients uncontrolled bleeding and other life-threatening
complications. Unlike Coumadin, an anti-clotting drug approved over 50
years ago, the concentration of Xarelto in a patient's blood cannot be
reversed in the case of overdose or other serious complications.  If a
Xarelto patient has an emergency bleeding event -- such as from a severe
injury or major brain or GI tract bleeding -- the results can be fatal.

20.     ***Benicar Litigation***, MDL No. 2606 (D. N.J.).  Lieff Cabraser represents
patients prescribed the high blood pressure medication Benicar who have
experienced chronic diarrhea with substantial weight loss, severe
gastrointestinal problems, and the life-threatening conditions of sprue-
like enteropathy and villous atrophy in litigation against Japan-based
Daiichi Sankyo, Benicar's manufacturer, and Forest Laboratories, which
marketed Benicar in the U.S.

The complaints allege that Benicar was insufficiently tested and not
accompanied by adequate instructions and warnings to apprise
consumers of the full risks and side effects associated with its use.  Lieff
Cabraser attorney Lexi J. Hazam serves on the Plaintiffs' Steering
Committee for the nationwide Benicar MDL litigation and was appointed
Co-Chair of the Benicar MDL Plaintiffs' Science and Experts Committee.
Plaintiffs recently filed motions to compel defense to produce additional
discovery. The judge ruled with plaintiffs in the fall of 2015. In August
2017, a settlement with Daiichi Sankyo Inc. and Forest Laboratories Inc.
valued at $300 million covering approximately 2,300 Benicar injury cases
in both state and federal courts was announced.

21.     ***Risperdal Litigation***.  In 2013, Johnson & Johnson and its subsidiary
Janssen Pharmaceuticals, the manufacture of the antipsychotic
prescription drugs Risperdal and Invega, entered into a $2.2 billion
settlement with the U.S. Department of Justice for over promoting the
drugs.  The government alleged that J&J and Janssen knew Risperdal
triggered the production of prolactin, a hormone that stimulates breast
development (gynecomastia) and milk production.

Lieff Cabraser represents parents whose sons developed abnormally large
breasts while prescribed Risperdal and Invega in lawsuits charging that
Risperdal is a defective and dangerous prescription drug and seeking
monetary damages for the mental anguish and physical injuries the young
men suffered.

22.     ***Power Morcellators Litigation***, MDL No. 2652 (D. Kan.).  Lieff
Cabraser represents women who underwent a hysterectomy (the removal

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 143 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 13 of 144

of the uterus) or myomectomy (the removal of uterine fibroids) in which a laparoscopic power morcellator was used.  In November 2014, the FDA warned surgeons that they should avoid the use of laparoscopic power morcellators for removing uterine tissue in the vast majority of cases due to the risk of the devices spreading unsuspected cancer.  Based on current data, the FDA estimates that 1 in 350 women undergoing hysterectomy or myomectomy for the treatment of fibroids have an unsuspected uterine sarcoma, a type of uterine cancer that includes leiomyosarcoma.

23.    ***In re New England Compounding Pharmacy Inc. Products Liability Litigation***, MDL No. 2419 (D. Mass.). Lieff Cabraser represents patients injured or killed by a nationwide fungal meningitis outbreak in 2012. More than 14,000 patients across the U.S. were injected with a contaminated medication that caused the outbreak. The New England Compounding Center ("NECC") in Framingham, Massachusetts, manufactured and sold the drug — an epidural steroid treatment designed to relieve back pain.  The contaminated steroid was sold to patients at a number of pain clinics. Nearly 800 patients developed fungal meningitis, and more than 70 patients died.

Lieff Cabraser is a member of the Plaintiffs' Steering Committee in the multi-district litigation, and our attorneys act as federal-state liaison counsel. In May 2015, the U.S. Bankruptcy Court approved a $200 million partial settlement for victims of the outbreak. Bellwether trials against remaining defendants commenced in 2016. Lieff Cabraser is expected to play a lead role in the bellwether trials.

**B.    Successes**

24.    ***Multi-State Tobacco Litigation***.  Lieff Cabraser represented the Attorneys General of Massachusetts, Louisiana and Illinois, several additional states, and 21 cities and counties in California, in litigation against Philip Morris, R.J. Reynolds and other cigarette manufacturers. The suits were part of the landmark $206 billion settlement announced in November 1998 between the tobacco industry and the states' attorneys general.  The states, cities and counties sought both to recover the public costs of treating smoking-related diseases and require the tobacco industry to undertake extensive modifications of its marketing and promotion activities in order to reduce teenage smoking.  In California alone, Lieff Cabraser's clients were awarded an estimated $12.5 billion to be paid through 2025.

25.    ***In re Vioxx Products Liability Litigation***, MDL No. 1657 (E.D. La.). Lieff Cabraser represented patients who suffered heart attacks or strokes, and the families of loved ones who died, after having been prescribed the arthritis and pain medication Vioxx. In individual personal injury lawsuits against Merck, the manufacturer of Vioxx, our clients allege that Merck

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 144 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 14 of 144

falsely promoted the safety of Vioxx and failed to disclose the full range of the drug's dangerous side effects. In April 2005, in the federal multidistrict litigation, the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Steering Committee, which has the responsibility of conducting all pretrial discovery of Vioxx cases in federal court and pursuing all settlement options with Merck. In August 2006, Lieff Cabraser was co-counsel in *Barnett v. Merck*, which was tried in the federal court in New Orleans. Lieff Cabraser attorneys Don Arbitblit and Jennifer Gross participated in the trial, working closely with attorneys Mark Robinson and Andy Birchfield. The jury reached a verdict in favor of Mr. Barnett, finding that Vioxx caused his heart attack, and that Merck's conduct justified an award of punitive damages. In November 2007, Merck announced it had entered into an agreement with the executive committee of the Plaintiffs' Steering Committee as well as representatives of plaintiffs' counsel in state coordinated proceedings. Merck paid $4.85 billion into a settlement fund for qualifying claims.

26. ***In re Silicone Gel Breast Implants Products Liability Litigation***, MDL No. 926 (N.D. Ala.). Lieff Cabraser served on the Plaintiffs' Steering Committee and was one of five members of the negotiating committee which achieved a $4.25 billion global settlement with certain defendants of the action. This was renegotiated in 1995, and is referred to as the Revised Settlement Program ("RSP"). Over 100,000 recipients have received initial payments, reimbursement for the explanation expenses and/or long term benefits.

27. ***Fen-Phen ("Diet Drugs") Litigation***. Since the recall was announced in 1997, Lieff Cabraser has represented individuals who suffered injuries from the "Fen-Phen" diet drugs fenfluramine (sold as Pondimin) and/or dexfenfluramine (sold as Redux). The firm served as counsel for the plaintiff who filed the first nationwide class action lawsuit against the diet drug manufacturers alleging that they had failed to adequately warn physicians and consumers of the risks associated with the drugs. In *In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Management Committee which organized and directed the Fen-Phen diet drugs litigation in federal court. In August 2000, the Court approved a $4.75 billion settlement offering both medical monitoring relief for persons exposed to the drug and compensation for persons with qualifying damage. Lieff Cabraser represented over 2,000 persons that suffered valvular heart disease, pulmonary hypertension or other problems (such as needing echocardiogram screening for damage) due to and/or following exposure to Fen-Phen and obtained more than $350 million in total for clients in individual cases and/or claims.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 145 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 15 of 144

28.    ***In re Actos (Pioglitazone) Products Liability Litigation***, MDL No. 2299 (W.D. La.).  Lieff Cabraser represents 90 diabetes patients who developed bladder cancer after exposure to the prescription drug pioglitazone, sold as Actos by Japan-based Takeda Pharmaceutical Company and its American marketing partner, Eli Lilly.

Lieff Cabraser is a member of the Plaintiffs' Steering Committee in the Actos MDL. In 2014, Lieff Cabraser served on the trial team in the case of ***Allen v. Takeda***, working closely with lead trial counsel in federal court in Louisiana. The jury awarded $9 billion in punitive damages, finding that Takeda and Lilly failed to adequately warn about the bladder cancer risks of Actos and had acted with wanton and reckless disregard for patient safety. The trial judge reduced the punitive damage award but upheld the jury's findings of misconduct, and ruled that a multiplier of 25 to 1 for punitive damages was justified.

In April 2015, Takeda agreed to settle all bladder cancer claims brought by Type 2 diabetes patients who took Actos prior to December 1, 2011 and who were diagnosed with bladder cancer on or before April 28, 2015 and were represented by counsel by May 1, 2015. The settlement amount is $2.4 billion. Average payments of about $250,000 per person will be increased for more severe injuries.

29.    ***Yaz and Yasmin Litigation***.  Lieff Cabraser represented women prescribed Yasmin and Yaz oral contraceptives who suffered blood clots, deep vein thrombosis, strokes, and heart attacks, as well as the families of loved ones who died suddenly while taking these medications.  The complaints alleged that Bayer, the manufacturer of Yaz and Yasmin, failed to adequately warn patients and physicians of the increased risk of serious adverse effects from Yasmin and Yaz.  The complaints also charged that these oral contraceptives posed a greater risk of serious side effects than other widely available birth control drugs. To date, Bayer has announced settlements of 7,660 claims — totaling $1.6 billion — in the Yaz birth control lawsuits.

30.    ***Sulzer Hip and Knee Prosthesis Liability Litigation***.  In December 2000, Sulzer Orthopedics, Inc., announced the recall of approximately 30,000 units of its Inter-Op Acetabular Shell Hip Implant, followed in May 2001 with a notification of failures of its Natural Knee II Tibial Baseplate Knee Implant.  In coordinated litigation in California state court, ***In re Hip Replacement Cases***, JCCP 4165, Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel and Co-Lead Counsel.  In the federal litigation, ***In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation***, MDL No. 1410, Lieff Cabraser played a significant role in negotiating a revised global settlement of the litigation valued at more than $1 billion.  The revised settlement, approved by the

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 146 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 16 of 144

Court in May 2002, provided patients with defective implants almost twice the cash payment as under an initial settlement. On behalf of our clients, Lieff Cabraser objected to the initial settlement.

31.   ***In re Bextra/Celebrex Marketing Sales Practices and Products Liability Litigation***, MDL No. 1699 (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Liaison Counsel and Elizabeth J. Cabraser chaired the Plaintiffs' Steering Committee (PSC) charged with overseeing all personal injury and consumer litigation in federal courts nationwide arising out of the sale and marketing of the COX-2 inhibitors Bextra and Celebrex, manufactured by Pfizer, Inc. and its predecessor companies Pharmacia Corporation and G.D. Searle, Inc.

Under the global resolution of the multidistrict tort and consumer litigation announced in October 2008, Pfizer paid over $800 million to claimants, including over $750 million to resolve death and injury claims.

In a report adopted by the Court on common benefit work performed by the PSC, the Special Master stated:

> [L]eading counsel from both sides, and the attorneys from the PSC who actively participated in this litigation, demonstrated the utmost skill and professionalism in dealing with numerous complex legal and factual issues. The briefing presented to the Special Master, and also to the Court, and the development of evidence by both sides was exemplary. The Special Master particularly wishes to recognize that leading counsel for both sides worked extremely hard to minimize disputes, and when they arose, to make sure that they were raised with a minimum of rancor and a maximum of candor before the Special Master and Court.

32.   ***In re Guidant Implantable Defibrillators Products Liability Litigation***, MDL No. 1708 (D. Minn.). Lieff Cabraser served as Plaintiffs' Co-Lead Counsel in litigation in federal court arising out of the recall of Guidant cardiac defibrillators implanted in patients because of potential malfunctions in the devices. At the time of the recall, Guidant admitted it was aware of 43 reports of device failures, and two patient deaths. Guidant subsequently acknowledged that the actual rate of failure may be higher than the reported rate and that the number of associated deaths may be underreported since implantable cardio-defibrillators are not routinely evaluated after death. In January 2008, the parties reached a global settlement of the action. Guidant's settlements of defibrillator-related claims will total $240 million.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 147 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 17 of 144

33.   ***In re Copley Pharmaceutical, Inc., "Albuterol" Products
      Liability Litigation***, MDL No. 1013 (D. Wyo.).  Lieff Cabraser served
      on the Plaintiffs' Steering Committee in a class action lawsuit against
      Copley Pharmaceutical, which manufactured Albuterol, a bronchodilator
      prescription pharmaceutical.  Albuterol was the subject of a nationwide
      recall in January 1994 after a microorganism was found to have
      contaminated the solution, allegedly causing numerous injuries including
      bronchial infections, pneumonia, respiratory distress and, in some cases,
      death.  In October 1994, the District Court certified a nationwide class on
      liability issues.  *In re Copley Pharmaceutical*, 161 F.R.D. 456 (D. Wyo.
      1995).  In November 1995, the District Court approved a $150 million
      settlement of the litigation.

34.   ***In re Telectronics Pacing Systems Inc., Accufix Atrial "J"
      Leads Products Liability Litigation***, MDL No. 1057 (S.D. Ohio).
      Lieff Cabraser served on the Court-appointed Plaintiffs' Steering
      Committee in a nationwide products liability action alleging that
      defendants placed into the stream of commerce defective pacemaker
      leads.  In April 1997, the District Court re-certified a nationwide class of
      "J" Lead implantees with subclasses for the claims of medical monitoring,
      negligence and strict product liability.  A summary jury trial, utilizing jury
      instructions and interrogatories designed by Lieff Cabraser, occurred in
      February 1998.  A partial settlement was approved thereafter by the
      District Court but reversed by the Court of Appeals.  In March 2001, the
      District Court approved a renewed settlement that included a $58 million
      fund to satisfy all past, present and future claims by patients for their
      medical care, injuries, or damages arising from the lead.

35.   ***Mraz v. DaimlerChrysler***, No. BC 332487 (Cal. Supr. Ct.).  In March
      2007, the jury returned a $54.4 million verdict, including $50 million in
      punitive damages, against DaimlerChrysler for intentionally failing to
      cure a known defect in millions of its vehicles that led to the death of
      Richard Mraz, a young father.  Mr. Mraz suffered fatal head injuries when
      the 1992 Dodge Dakota pickup truck he had been driving at his work site
      ran him over after he exited the vehicle believing it was in park.  The jury
      found that a defect in the Dodge Dakota's automatic transmission, called
      a park-to-reverse defect, played a substantial factor in Mr. Mraz's death
      and that DaimlerChrysler was negligent in the design of the vehicle for
      failing to warn of the defect and then for failing to adequately recall or
      retrofit the vehicle.

      For their outstanding service to their clients in Mraz and advancing the
      rights of all persons injured by defective products, Lieff Cabraser partner
      Robert J. Nelson, the lead trial counsel, received the 2008 California
      Lawyer of the Year (CLAY) Award in the field of personal injury law, and

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 148 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 18 of 144

was also selected as finalists for Attorney of the Year by the Consumer Attorneys of California and the San Francisco Trial Lawyers Association.

In March 2008, a Louisiana-state jury found DaimlerChrysler liable for the death of infant Collin Guillot and injuries to his parents Juli and August Guillot and their then 3-year-old daughter, Madison.  The jury returned a unanimous verdict of $5,080,000 in compensatory damages. The jury found that a defect in the Jeep Grand Cherokee's transmission, called a park-to-reverse defect, played a substantial factor in Collin Guillot's death and the severe injuries suffered by Mr. and Mrs. Guillot and their daughter.  Lieff Cabraser served as co-counsel in the trial.

36.    ***Craft v. Vanderbilt University***, Civ. No. 3-94-0090 (M.D. Tenn.). Lieff Cabraser served as Lead Counsel of a certified class of over 800 pregnant women and their children who were intentionally fed radioactive iron isotopes without consent while receiving prenatal care at the Vanderbilt University hospital as part of a study on iron absorption during pregnancy. The women were not informed of the nature and risks of the study. Instead, they were told that the solution they were fed was a "vitamin cocktail." In the 1960's, Vanderbilt conducted a follow-up study to determine the health effects of the plaintiffs' prior radiation exposure. Throughout the follow-up study, Vanderbilt concealed from plaintiffs the fact that they had been involuntarily exposed to radiation, and that the purpose of the follow-up study was to determine whether there had been an increased rate of childhood cancers among those exposed *in utero*. Vanderbilt also did not inform plaintiffs of the results of the follow-up study, which revealed a disproportionately high incidence of cancers among the children born to the women fed the radioactive iron.

The facts surrounding the administration of radioactive iron to the pregnant women and their children in utero only came to light as a result of U.S. Energy Secretary Hazel O'Leary's 1993 disclosures of government-sponsored human radiation experimentation during the Cold War. Defendants' attempts to dismiss the claims and decertify the class were unsuccessful. 18 F. Supp.2d 786 (M.D. Tenn. 1998). The case was settled in July 1998 for a total of $10.3 million and a formal apology from Vanderbilt.

37.    ***Simply Thick Litigation***.  Lieff Cabraser represented parents whose infants died or suffered gave injuries linked to Simply Thick, a thickening agent for adults that was promoted to parents, caregivers, and health professional for use by infants to assist with swallowing.  The individual lawsuits alleged that Simply Thick when fed to infants caused necrotizing enterocolitis (NEC), a life-threatening condition characterized by the inflammation and death of intestinal tissue.  In 2014, the litigation was resolved on confidential terms.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 149 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 19 of 144

38. ***Medtronic Infuse Litigation***.  Lieff Cabraser represented patients who suffered serious injuries from the off-label use of the Infuse bone graft, manufactured by Medtronic Inc.  The FDA approved Infuse for only one type of spine surgery, the anterior lumbar fusion.  Many patients, however, received an off-label use of Infuse and were never informed of the off-label nature of the surgery. Serious complications associated with Infuse included uncontrolled bone growth and chronic pain from nerve injuries.  In 2014, the litigation was settled on confidential terms.

39. ***Wright Medical Hip Litigation***.  The Profemur-Z system manufactured by Wright Medical Technology consisted of three separate components:  a femoral head, a modular neck, and a femoral stem.  Prior to 2009, Profemur-Z hip system included a titanium modular neck adapter and stem which was implanted in 10,000 patients.  Lieff Cabraser represented patients whose Profemur-Z hip implant fractured, requiring a revision surgery.  In 2013 and 2014, the litigation was resolved on confidential terms.

40. ***In re Zimmer Durom Cup Product Liability Litigation***, MDL No. 2158 (D. N.J.).  Lieff Cabraser served as Co-Liaison Counsel for patients nationwide injured by the defective Durom Cup manufactured by Zimmer Holdings.  First sold in the U.S. in 2006, Zimmer marketed its 'metal-on-metal' Durom Cup implant as providing a greater range of motion and less wear than traditional hip replacement components.  In July 2008, Zimmer announced the suspension of Durom sales.  The complaints charged that the Durom cup was defective and led to the premature failure of the implant.  In 2011 and 2012, the patients represented by Lieff Cabraser settled their cases with Zimmer on favorable, confidential terms.

41. ***Luisi v. Medtronic***, No. 07 CV 4250 (D. Minn.).  Lieff Cabraser represented over seven hundred heart patients nationwide who were implanted with recalled Sprint Fidelis defibrillator leads manufactured by Medtronic Inc.  Plaintiffs charge that Medtronic has misrepresented the safety of the Sprint Fidelis leads and a defect in the device triggered their receiving massive, unnecessary electrical shocks.  A settlement of the litigation was announced in October 2010.

42. ***Blood Factor VIII And Factor IX Litigation***, MDL No. 986 (D. Il.) Working with counsel in Asia, Europe, Central and South America and the Middle East, Lieff Cabraser represented over 1,500 hemophiliacs worldwide, or their survivors and estates, who contracted HIV and/or Hepatitis C (HCV), and Americans with hemophilia who contracted HCV, from contaminated and defective blood factor products produced by American pharmaceutical companies.  In 2004, Lieff Cabraser was appointed Plaintiffs' Lead Counsel of the "second generation" Blood Factor MDL litigation presided over by Judge Grady in the Northern

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 150 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 20 of 144

District of Illinois.  The case was resolved through a global settlement signed in 2009.

43.    ***In Re Yamaha Motor Corp. Rhino ATV Products Liability Litigation***, MDL No. 2016 (W.D. Ky.)  Lieff Cabraser served as Plaintiffs' Lead Counsel in the litigation in federal court and Co-Lead Counsel in coordinated California state court litigation arising out of serious injuries and deaths in rollover accidents involving the Yamaha Rhino.  The complaints charged that the Yamaha Rhino contained numerous design flaws, including the failure to equip the vehicles with side doors, which resulted in repeated broken or crushed legs, ankles or feet for riders.  Plaintiffs alleged also that the Yamaha Rhino was unstable due to a narrow track width and high center of gravity leading to rollover accidents that killed and/or injured scores of persons across the nation.

On behalf of victims and families of victims and along with the Center for Auto Safety, and the San Francisco Trauma Foundation, Lieff Cabraser advocated for numerous safety changes  to the Rhino in reports submitted to the U.S. Consumer Product Safety Commission (CPSC).  On March 31, 2009, the CPSC, in cooperation with Yamaha Motor Corp. U.S.A., announced a free repair program for all Rhino 450, 660, and 700 models to improve safety, including  the addition of spacers and removal of a rear only anti-sway bar.

44.    ***Advanced Medical Optics Complete MoisturePlus Litigation***.  Lieff Cabraser represented consumers nationwide in personal injury lawsuits filed against Advanced Medical Optics arising out of the May 2007 recall of AMO's Complete MoisturePlus Multi-Purpose Contact Lens Solution.  The product was recalled due to reports of a link between a rare, but serious eye infection, *Acanthamoeba keratitis*, caused by a parasite and use of AMO's contact lens solution.  Though AMO promoted Complete MoisturePlus Multi-Purpose as "effective against the introduction of common ocular microorganisms," the complaints charged that AMO's lens solution was ineffective and vastly inferior to other multipurpose solutions on the market.  In many cases, patients were forced to undergo painful corneal transplant surgery to save their vision and some have lost all or part of their vision permanently.  The patients represented by Lieff Cabraser resolved their cases with AMO on favorable, confidential terms.

45.    ***Gol Airlines Flight 1907 Amazon Crash***.  Lieff Cabraser served as Plaintiffs' Liaison Counsel and represents over twenty families whose loved ones died in the Gol Airlines Flight 1907 crash.  On September 29, 2006, a brand-new Boeing 737-800 operated by Brazilian air carrier Gol plunged into the Amazon jungle after colliding with a smaller plane owned by the American company ExcelAire Service, Inc.  None of the 149

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 151 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 21 of 144

passengers and six crew members on board the Gol flight survived the accident.

The complaint charged that the pilots of the ExcelAire jet were flying at an incorrect altitude at the time of the collision, failed to operate the jet's transponder and radio equipment properly, and failed to maintain communication with Brazilian air traffic control in violation of international civil aviation standards. If the pilots of the ExcelAire aircraft had followed these standards, the complaint charged that the collision would not have occurred.

At the time of the collision, the ExcelAire aircraft's transponder, manufactured by Honeywell, was not functioning. A transponder transmits a plane's altitude and operates its automatic anti-collision system. The complaint charged that Honeywell shares responsibility for the tragedy because it defectively designed the transponder on the ExcelAire jet, and failed to warn of dangers resulting from foreseeable uses of the transponder. The cases settled after they were sent to Brazil for prosecution.

46.    ***Comair CRJ-100 Commuter Flight Crash in Lexington, Kentucky***. A Bombardier CRJ-100 commuter plane operated by Comair, Inc., a subsidiary of Delta Air Lines, crashed on August 27, 2006 shortly after takeoff at Blue Grass Airport in Lexington, Kentucky, killing 47 passengers and two crew members. The aircraft attempted to take off from the wrong runway. The families represented by Lieff Cabraser obtained substantial economic recoveries in a settlement of the case.

47.    ***In re ReNu With MoistureLoc Contact Lens Solution Products Liability Litigation***, MDL No. 1785 (D. S.C.). Lieff Cabraser served on the Plaintiffs' Executive Committee in federal court litigation arising out of Bausch & Lomb's 2006 recall of its ReNu with MoistureLoc contact lens solution. Consumers who developed *Fusarium keratitis*, a rare and dangerous fungal eye infection, as well as other serious eye infections, alleged the lens solution was defective. Some consumers were forced to undergo painful corneal transplant surgery to save their vision; others lost all or part of their vision permanently. The litigation was resolved under favorable, confidential settlements with Bausch & Lomb.

48.    ***Helios Airways Flight 522 Athens, Greece Crash***. On August 14, 2005, a Boeing 737 operating as Helios Airways flight 522 crashed north of Athens, Greece, resulting in the deaths of all passengers and crew. The aircraft was heading from Larnaca, Cyprus to Athens International Airport when ground controllers lost contact with the pilots, who had radioed in to report problems with the air conditioning system. Press reports about the official investigation indicate that a single switch for the pressurization system on the plane was not properly set by the pilots, and

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 152 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 22 of 144

eventually both were rendered unconscious, along with most of the passengers and cabin crew.

Lieff Cabraser represented the families of several victims, and filed complaints alleging that a series of design defects in the Boeing 737-300 contributed to the pilots' failure to understand the nature of the problems they were facing. Foremost among those defects was a confusing pressurization warning "horn" which uses the same sound that alerts pilots to improper takeoff and landing configurations. The families represented by Lieff Cabraser obtained substantial economic recoveries in a settlement of the case.

49.    ***Legend Single Engine "Turbine Legend" Kit Plane Crash***. On November 19, 2005, a single engine "Turbine Legend" kit plane operated by its owner crashed shortly after takeoff from a private airstrip in Tucson, Arizona, killing both the owner/pilot and a passenger. Witnesses report that the aircraft left the narrow runway during the takeoff roll and although the pilot managed to get the plane airborne, it rolled to the left and crashed.

Lieff Cabraser investigated the liability of the pilot and others, including the manufacturer of the kit and the operator of the airport from which the plane took off. The runway was 16 feet narrower than the minimum width recommended by the Federal Aviation Administration.  Lieff Cabraser represented the widow of the passenger, and the case was settled on favorable, confidential terms.

50.    ***Manhattan Tourist Helicopter Crash***. On June 14, 2005, a Bell 206 helicopter operated by Helicopter Flight Services, Inc. fell into the East River shortly after taking off for a tourist flight over New York City. The pilot and six passengers were immersed upside-down in the water as the helicopter overturned. Lieff Cabraser represented a passenger on the helicopter and the case was settled on favorable, confidential terms.

51.    ***U.S. Army Blackhawk Helicopter Tower Collision***. Lieff Cabraser represented the family of a pilot who died in the November 29, 2004 crash of a U.S. Army Black Hawk Helicopter.  The Black Hawk was flying during the early morning hours at an altitude of approximately 500 feet when it hit cables supporting a 1,700 foot-tall television tower, and subsequently crashed 30 miles south of Waco, Texas, killing both pilots and five passengers, all in active Army service.  The tower warning lights required by government regulations were inoperative.  The case was resolved through a successful, confidential settlement.

52.    ***Air Algerie Boeing 737 Crash***. Together with French co-counsel, Lieff Cabraser represented the families of several passengers who died in the March 6, 2003 crash of a Boeing 737 airplane operated by Air Algerie. The

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 153 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 23 of 144

aircraft crashed soon after takeoff from the Algerian city of Tamanrasset, after one of the engines failed. All but one of the 97 passengers were killed, along with six crew members. The families represented by Lieff Cabraser obtained economic recoveries in a settlement of the case.

53. ***In re Baycol Products Litigation***, MDL No. 1431 (D. Minn.).  Baycol was one of a group of drugs called statins, intended to reduce cholesterol. In August 2001, Bayer A.G. and Bayer Corporation, the manufacturers of Baycol, withdrew the drug from the worldwide market based upon reports that Baycol was associated with serious side effects and linked to the deaths of over 100 patients worldwide.  In the federal multidistrict litigation, Lieff Cabraser served as a member of the Plaintiffs' Steering Committee (PSC) and the Executive Committee of the PSC.  In addition, Lieff Cabraser represented approximately 200 Baycol patients who suffered injuries or family members of patients who died allegedly as a result of ingesting Baycol.  In these cases, our clients reached confidential favorable settlements with Bayer.

54. ***United Airlines Boeing 747 Disaster***. Lieff Cabraser served as Plaintiffs' Liaison Counsel on behalf of the passengers and families of passengers injured and killed in the United Airlines Boeing 747 cargo door catastrophe near Honolulu, Hawaii on February 24, 1989. Lieff Cabraser organized the litigation of the case, which included claims brought against United Airlines and The Boeing Company.

Among other work, Lieff Cabraser developed a statistical system for settling the passengers' and families' damages claims with certain defendants, and coordinated the prosecution of successful individual damages trials for wrongful death against the non-settling defendants.

55. ***Aeroflot-Russian International Airlines Airbus Disaster***. Lieff Cabraser represented the families of passengers who were on Aeroflot-Russian International Airlines Flight SU593 that crashed in Siberia on March 23, 1994. The plane was en route from Moscow to Hong Kong. All passengers on board died.

According to a transcript of the cockpit voice recorder, the pilot's two children entered the cockpit during the flight and took turns flying the plane. The autopilot apparently was inadvertently turned off during this time, and the pilot was unable to remove his son from the captain's seat in time to avert the plane's fatal dive.

Lieff Cabraser, alongside French co-counsel, filed suit in France, where Airbus, the plane's manufacturer, was headquartered.  The families Lieff Cabraser represented obtained substantial economic recoveries in settlement of the action.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 154 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 24 of 144

56.    ***Lockheed F-104 Fighter Crashes***.  In the late 1960s and extending into the early 1970s, the United States sold F-104 Star Fighter jets to the German Air Force that were manufactured by Lockheed Aircraft Corporation in California. Although the F-104 Star Fighter was designed for high-altitude fighter combat, it was used in Germany and other European countries for low-level bombing and attack training missions.

Consequently, the aircraft had an extremely high crash rate, with over 300 pilots killed. Commencing in 1971, the law firm of Belli Ashe Ellison Choulos & Lieff filed hundreds of lawsuits for wrongful death and other claims on behalf of the widows and surviving children of the pilots.

Robert Lieff continued to prosecute the cases after the formation of our firm.  In 1974, the lawsuits were settled with Lockheed on terms favorable to the plaintiffs. This litigation helped establish the principle that citizens of foreign countries could assert claims in United States courts and obtain substantial recoveries against an American manufacturer, based upon airplane accidents or crashes occurring outside the United States.

## II.    Securities and Financial Fraud

### A.    Current Cases

1.    ***BlackRock Global Allocation Fund, Inc., et al. v. Valeant Pharmaceuticals International, Inc., et al.***, No. 3:18-cv-00343 (D.N.J.); ***Senzar Healthcare Master Fund, LP, et al. v. Valeant Pharmaceuticals International, Inc., et al.***, No. 3:18-cv-02286-MAS-LHG (D.N.J.) (collectively, "Valeant").  Lieff Cabraser represents certain funds and accounts of institutional investors BlackRock and Senzar in these recently-filed individual actions against Valeant Pharmaceuticals International, Inc. and certain of Valeant's senior officers and directors for violations of the Securities Act of 1933 and/or the Securities Exchange Act of 1934 arising from Defendants' scheme to generate revenues through massive price increases for Valeant-branded drugs while concealing from investors the truth regarding the Company's business operations, financial results, and other material facts.  In September 2018, the court denied defendants' partial motions to dismiss in both action, and BlackRock plaintiffs filed an amended complaint.

2.    ***In re Wells Fargo & Company Shareholder Derivative Litigation***, No. 3:16-cv-05541 (N.D. Cal.).  Lieff Cabraser was appointed as Co-Lead Counsel for Lead Plaintiffs FPPACO and The City of Birmingham Retirement and Relief System in this consolidated shareholder derivative action alleging that, since at least 2011, the Board and executive management of Wells Fargo knew or consciously disregarded that Wells Fargo employees were illicitly creating millions of deposit and credit card accounts for their customers, without those

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 155 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 25 of 144

customers' consent, as part of Wells Fargo's intense effort to drive up its
"cross-selling" statistics.  Revelations regarding the scheme, and the
defendants' knowledge or blatant disregard of it, have deeply damaged
Wells Fargo's reputation and cost it millions of dollars in regulatory fines
and lost business.  In May and October 2017, the court largely denied
Wells Fargo's and the Director and Officer Defendants' motions to dismiss
Lead Plaintiffs' amended complaint.  In May 2019, U.S. District Judge Jon
S. Tigar granted preliminary approval to a proposed $320 million
settlement that would end shareholders' derivative litigation relating to
Wells Fargo's fake accounts scandal.

3.    ***Houston Municipal Employees Pension System v. BofI
Holding, Inc., et al.,*** No. 3:15-cv-02324-GPC-KSC (S.D. Cal.).  Lieff
Cabraser serves as lead counsel for court-appointed lead plaintiff,
Houston Municipal Employees Pension System ("HMEPS"), in this
securities fraud class action against BofI Holding, Inc. and certain of its
senior officers.  The action charges defendants with issuing materially
false and misleading statements and failing to disclose material adverse
facts about BofI's business, operations, and performance The action
charges defendants with issuing materially false and misleading
statements and failing to disclose material adverse facts about BofI's
business, operations, and performance.  On March 21, 2018, the court
issued an order and entered judgment dismissing the third amended
complaint, which HMEPS appealed to the Ninth Circuit.

4.    ***Normand, et al. v. Bank of New York Mellon Corp.,*** No. 1:16-cv-
00212-LAK-JLC (S.D.N.Y.).  Lieff Cabraser, together with co-counsel,
represents a proposed class of holders of American Depositary Receipts
("ADRs") (negotiable U.S. securities representing ownership of publicly
traded shares in a non-U.S. corporation), for which BNY Mellon served as
the depositary bank.  Plaintiffs allege that under the contractual
agreements underlying the ADRs, BNY Mellon was responsible for
"promptly" converting cash distributions (such as dividends) received for
ADRs into U.S. dollars for the benefit of ADR holders, and was required to
act without bad faith.  Plaintiffs allege that, instead, when doing the ADR
cash conversions, BNY Mellon used the range of exchange rates available
during the trading session in a manner that was unfavorable for ADR
holders, and in doing so, improperly skimmed profits from distributions
owed and payable to the class.  In September 2016, the court denied, in
substantial part, defendant's motion to dismiss, and plaintiffs
subsequently filed a consolidated amended complaint. The case
proceeded through substantial discovery and full briefing on class
certification before the parties reached a proposed classwide settlement in
late 2018.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 156 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 26 of 144

B.    **Successes**

1.    ***Arkansas Teacher Retirement System v. State Street Corp.***,
Case No. 11cv10230 (MLW) (D. Mass.).  Lieff Cabraser served as co-
counsel for a nationwide class of institutional custodial clients of State
Street, including public pension funds and ERISA plans, who allege that
defendants deceptively charged class members on FX trades done in
connection with the purchase and sale of foreign securities.  The
complaint charged that between 1999 and 2009, State Street consistently
incorporated hidden and excessive mark-ups or mark-downs relative to
the actual FX rates applicable at the times of the trades conducted for
State Street's custodial FX clients.

State Street allegedly kept for itself, as an unlawful profit, the "spread"
between the prices for foreign currency available to it in the FX
marketplace and the rates it charged to its customers.  Plaintiffs sought
recovery under Massachusetts' Consumer Protection Law and common
law tort and contract theories.  On November 2, 2016, U.S. District Senior
Judge Mark L. Wolf granted final approval to a $300 million settlement of
the litigation.

2.    ***Janus Overseas Fund, et al. v. Petróleo Brasileiro S.A. -
Petrobras, et al.***, No. 1:15-cv-10086-JSR (S.D.N.Y.); ***Dodge & Cox
Global Stock Fund, et al. v. Petróleo Brasileiro S.A. -
Petrobras, et al.***, No. 1:15-cv-10111-JSR (S.D.N.Y.).  Lieff Cabraser
represented certain Janus and Dodge & Cox funds and investment
managers in these individual actions against Petróleo Brasileiro S.A. —
Petrobras ("Petrobras"), related Petrobras entities, and certain of
Petrobras's senior officers and directors for misrepresenting and failing to
disclose a pervasive and long-running scheme of bribery and corruption
at Petrobras.  As a result of the misconduct, Petrobras overstated the
value of its assets by billions of dollars and materially misstated its
financial results during the relevant period.  The actions charged
defendants with violations of the Securities Act of 1933 (the "Securities
Act") and/or the Securities Exchange Act of 1934 ("Exchange Act").  The
action recently settled on confidential terms favorable to plaintiffs.

3.    ***In re Facebook, Inc. IPO Securities And Derivative Litigation***,
MDL No. 12-2389 (RWS) (S.D.N.Y.).  Lieff Cabraser is counsel for two
individual investor class representatives in the securities class litigation
arising under the Private Securities Litigation Reform Act of 1995 (the
"PSLRA") concerning Facebook's initial public offering in May 2012.  In
2018, the court granted plaintiffs' motion for final approval of a
settlement of the litigation.

4.    ***The Regents of the University of California v. American
International Group***, No. 1:14-cv-01270-LTS-DCF (S.D.N.Y.).  Lieff

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 157 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 27 of 144

Cabraser represented The Regents of the University of California in this individual action against American International Group, Inc. ("AIG") and certain of its officers and directors for misrepresenting and omitting material information about AIG's financial condition and the extent of its exposure to the subprime mortgage market. The complaint charged defendants with violations of the Exchange Act, as well as common law fraud and unjust enrichment. The litigation settled in 2015.

5.    ***Biotechnology Value Fund, L.P. v. Celera Corp.***, 3:13-cv-03248-WHA (N.D. Cal.). Lieff Cabraser represented a group of affiliated funds investing in biotechnology companies in this individual action arising from misconduct in connection with Quest Diagnostics Inc.'s 2011 acquisition of Celera Corporation. Celera, Celera's individual directors, and Credit Suisse were charged with violations of Sections 14(e) and 20(a) of the Exchange Act and breach of fiduciary duty. In February 2014, the Court denied in large part defendants' motion to dismiss the second amended complaint. In September 2014, the plaintiffs settled with Credit Suisse for a confidential amount. After the completion of fact and expert discovery, and prior to a ruling on defendants' motion for summary judgment, the plaintiffs settled with the Celera defendants in January 2015 for a confidential amount.

6.    ***The Charles Schwab Corp. v. BNP Paribas Sec. Corp.***, No. CGC-10-501610 (Cal. Super. Ct.); ***The Charles Schwab Corp. v. J.P. Morgan Sec., Inc.***, No. CGC-10-503206 (Cal. Super. Ct.); ***The Charles Schwab Corp. v. J.P. Morgan Sec., Inc.***, No. CGC-10-503207 (Cal. Super. Ct.); and ***The Charles Schwab Corp. v. Banc of America Sec. LLC***, No. CGC-10-501151 (Cal. Super. Ct.). Lieff Cabraser, along with co-counsel, represents Charles Schwab in four separate individual securities actions against certain issuers and sellers of mortgage-backed securities ("MBS") for materially misrepresenting the quality of the loans underlying the securities in violation of California state law. Charles Schwab Bank, N.A., a subsidiary of Charles Schwab, suffered significant damages by purchasing the securities in reliance on defendants' misstatements. The court largely overruled defendants' demurrers in January 2012. Settlements have been reached with dozens of defendants for confidential amounts.

7.    ***Honeywell International Inc. Defined Contribution Plans Master Savings Trust. v. Merck & Co.***, No. 14-cv 2523-SRC-CLW (S.D.N.Y.); ***Janus Balanced Fund v. Merck & Co.***, No. 14-cv-3019-SRC-CLW (S.D.N.Y.); ***Lord Abbett Affiliated Fund v. Merck & Co.***, No. 14-cv-2027-SRC-CLW (S.D.N.Y.); ***Nuveen Dividend Value Fund (f/k/a Nuveen Equity Income Fund), on its own behalf and as successor in interest to Nuveen Large Cap Value Fund (f/k/a First American Large Cap Value Fund) v. Merck & Co.***, No. 14-

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 158 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 28 of 144

cv-1709-SRC-CLW (S.D.N.Y.).  Lieff Cabraser represented certain Nuveen, Lord Abbett, and Janus funds, and two Honeywell International trusts in these  individual actions against Merck & Co., Inc. ("Merck") and certain of its senior officers and directors for misrepresenting the cardiovascular safety profile and commercial viability of Merck's purported "blockbuster" drug, VIOXX.  The actions charged defendants with violations of the Exchange Act.  The action settled on confidential terms.

8.   ***In re First Capital Holdings Corp. Financial Products Securities Litigation***, MDL No. 901 (C.D. Cal.).  Lieff Cabraser served as Co-Lead Counsel in a class action brought to recover damages sustained by policyholders of First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company policyholders resulting from the insurance companies' allegedly fraudulent or reckless investment and financial practices, and the manipulation of the companies' financial statements.  This policyholder settlement generated over $1 billion in restored life insurance policies. The settlement was approved by both federal and state courts in parallel proceedings and then affirmed by the Ninth Circuit on appeal.

9.   ***In re Bank of New York Mellon Corp. Foreign Exchange Transactions Litigation***, MDL 2335 (S.D. N.Y.).   Lieff Cabraser served as co-lead class counsel for a proposed nationwide class of institutional custodial customers of The Bank of New York Mellon Corporation ("BNY Mellon").  The litigation stemmed from alleged deceptive overcharges imposed by BNY Mellon on foreign currency exchanges (FX) that were done in connection with custodial customers' purchases or sales of foreign securities. Plaintiffs alleged that for more than a decade, BNY Mellon consistently charged its custodial customers hidden and excessive mark-ups on exchange rates for FX trades done pursuant to "standing instructions," using "range of the day" pricing, rather than the rates readily available when the trades were actually executed.

In addition to serving as co-lead counsel for a nationwide class of affected custodial customers, which included public pension funds, ERISA funds, and other public and private institutions, Lieff Cabraser was one of three firms on Plaintiffs' Executive Committee tasked with managing all activities on the plaintiffs' side in the multidistrict consolidated litigation. Prior to the cases being transferred and consolidated in the Southern District of New York, Lieff Cabraser defeated, in its entirety, BNY Mellon's motion to dismiss claims brought on behalf of ERISA and other funds under California's and New York's consumer protection laws.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 159 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 29 of 144

The firm's clients and class representatives in the consolidated litigation included the Ohio Police & Fire Pension Fund, the School Employees Retirement System of Ohio, and the International Union of Operating Engineers, Stationary Engineers Local 39 Pension Trust Fund.

In March 2015, a global resolution of the private and governmental enforcement actions against BNY Mellon was announced, in which $504 million will be paid back to BNY Mellon customers ($335 million of which is directly attributable to the class litigation).

On September 24, 2015, U.S. District Court Judge Lewis A. Kaplan granted final approval to the settlement. Commenting on the work of plaintiffs' counsel, Judge Kaplan stated, "This really was an extraordinary case in which plaintiff's counsel performed, at no small risk, an extraordinary service. They did a wonderful job in this case, and I've seen a lot of wonderful lawyers over the years. This was a great performance. They were fought tooth and nail at every step of the road. It undoubtedly vastly expanded the costs of the case, but it's an adversary system, and sometimes you meet adversaries who are heavily armed and well financed, and if you're going to win, you have to fight them and it costs money. This was an outrageous wrong committed by the Bank of New York Mellon, and plaintiffs' counsel deserve a world of credit for taking it on, for running the risk, for financing it and doing a great job."

10.   ***In re Broadcom Corporation Derivative Litigation***, No. CV 06-3252-R (C.D. Cal.). Lieff Cabraser served as Court-appointed Lead Counsel in a shareholders derivative action arising out of stock options backdating in Broadcom securities. The complaint alleged that defendants intentionally manipulated their stock option grant dates between 1998 and 2003 at the expense of Broadcom and Broadcom shareholders. By making it seem as if stock option grants occurred on dates when Broadcom stock was trading at a comparatively low per share price, stock option grant recipients were able to exercise their stock option grants at exercise prices that were lower than the fair market value of Broadcom stock on the day the options were actually granted. In December 2009, U.S. District Judge Manuel L. Real granted final approval to a partial settlement in which Broadcom Corporation's insurance carriers paid $118 million to Broadcom. The settlement released certain individual director and officer defendants covered by Broadcom's directors' and officers' policy.

Plaintiffs' counsel continued to pursue claims against William J. Ruehle, Broadcom's former Chief Financial Officer, Henry T. Nicholas, III, Broadcom's co-founder and former Chief Executive Officer, and Henry Samueli, Broadcom's co-founder and former Chief Technology Officer. In May 2011, the Court approved a settlement with these defendants. The

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 160 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 30 of 144

settlement provided substantial consideration to Broadcom, consisting of the receipt of cash and cancelled options from Dr. Nicholas and Dr. Samueli totaling $53 million in value, plus the release of a claim by Mr. Ruehle, which sought damages in excess of $26 million.

Coupled with the earlier $118 million partial settlement, the total recovery in the derivative action was $197 million, which constitutes the third-largest settlement ever in a derivative action involving stock options backdating.

11.    ***In re Scorpion Technologies Securities Litigation I***, No. C-93-20333-EAI (N.D. Cal.); ***Dietrich v. Bauer***, No. C-95-7051-RWS (S.D.N.Y.); ***Claghorn v. Edsaco***, No. 98-3039-SI (N.D. Cal.).  Lieff Cabraser served as Lead Counsel in class action suits arising out of an alleged fraudulent scheme by Scorpion Technologies, Inc., certain of its officers, accountants, underwriters and business affiliates to inflate the company's earnings through reporting fictitious sales.  In Scorpion I, the Court found plaintiffs had presented sufficient evidence of liability under Federal securities acts against the accounting firm Grant Thornton for the case to proceed to trial.  In re Scorpion Techs., 1996 U.S. Dist. LEXIS 22294 (N.D. Cal. Mar. 27, 1996).  In 1988, the Court approved a $5.5 million settlement with Grant Thornton.  In 2000, the Court approved a $950,000 settlement with Credit Suisse First Boston Corporation.  In April 2002, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd.  The jury found that Edsaco aided Scorpion in setting up phony European companies as part of a scheme in which Scorpion reported fictitious sales of its software to these companies, thereby inflating its earnings.  Included in the jury verdict, one of the largest verdicts in the U.S. in 2002, was $165 million in punitive damages.  Richard M. Heimann conducted the trial for plaintiffs.

On June 14, 2002, U.S. District Court Judge Susan Illston commented on Lieff Cabraser's representation:  "[C]ounsel for the plaintiffs did a very good job in a very tough situation of achieving an excellent recovery for the class here.  You were opposed by extremely capable lawyers.  It was an uphill battle.  There were some complicated questions, and then there was the tricky issue of actually collecting anything in the end.  I think based on the efforts that were made here that it was an excellent result for the class. . .  [T]he recovery that was achieved for the class in this second trial is remarkable, almost a hundred percent."

12.    ***In re Diamond Foods, Inc., Securities Litigation***, No. 11-cv-05386-WHA (N.D. Cal.).  Lieff Cabraser served as local counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi ("MissPERS") and the class of investors it represented in this securities class action lawsuit arising under the PSLRA.  The complaint charged

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 161 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 31 of 144

Diamond Foods and certain senior executives of the company with violations of the Exchange Act for knowingly understating the cost of walnuts Diamond Foods purchased in order to inflate the price of Diamond Foods' common stock.  In January 2014, the Court granted final approval of a settlement of the action requiring Diamond Foods to pay $11 million in cash and issue 4.45 million common shares worth $116.3 million on the date of final approval based on the stock's closing price on that date.

13.  ***Merrill Lynch Fundamental Growth Fund and Merrill Lynch Global Value Fund  v. McKesson HBOC***, No. 02-405792 (Cal. Supr. Ct.).  Lieff Cabraser served as counsel for two Merrill Lynch sponsored mutual funds in a private lawsuit alleging that a massive accounting fraud occurred at HBOC & Company ("HBOC") before and following its 1999 acquisition by McKesson Corporation ("McKesson").  The funds charged that defendants, including the former CFO of McKesson HBOC, the name McKesson adopted after acquiring HBOC, artificially inflated the price of securities in McKesson HBOC, through misrepresentations and omissions concerning the financial condition of HBOC, resulting in approximately $135 million in losses for plaintiffs.  In a significant discovery ruling in 2004, the California Court of Appeal held that defendants waived the attorney-client and work product privileges in regard to an audit committee report and interview memoranda prepared in anticipation of shareholder lawsuits by disclosing the information to the U.S. Attorney and SEC.  *McKesson HBOC, Inc. v. Supr. Court*, 115 Cal. App. 4th 1229 (2004).  Lieff Cabraser's clients recovered approximately $145 million, representing nearly 104% of damages suffered by the funds.  This amount was approximately $115-120 million more than the Merrill Lynch funds would have recovered had they participated in the federal class action settlement.

14.  ***Informix/Illustra Securities Litigation***, No. C-97-1289-CRB (N.D. Cal.).  Lieff Cabraser represented Richard H. Williams, the former Chief Executive Officer and President of Illustra Information Technologies, Inc. ("Illustra"), and a class of Illustra shareholders in a class action suit on behalf of all former Illustra securities holders who tendered their Illustra preferred or common stock, stock warrants or stock options in exchange for securities of Informix Corporation ("Informix") in connection with Informix's 1996 purchase of Illustra.  Pursuant to that acquisition, Illustra stockholders received Informix securities representing approximately 10% of the value of the combined company.  The complaint alleged claims for common law fraud and violations of Federal securities law arising out of the acquisition.  In October 1999, U.S. District Judge Charles E. Breyer approved a global settlement of the litigation for $136 million, constituting one of the largest settlements ever involving a high technology company alleged to have committed securities fraud.  Our

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 162 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 32 of 144

clients, the Illustra shareholders, received approximately 30% of the net settlement fund.

15. ***In re Qwest Communications International Securities and "ERISA" Litigation (No. II)***, No. 06-cv-17880-REB-PAC (MDL No. 1788) (D. Colo.). Lieff Cabraser represented the New York State Common Retirement Fund, Fire and Police Pension Association of Colorado, Denver Employees' Retirement Plan, San Francisco Employees' Retirement System, and over thirty BlackRock managed mutual funds in individual securities fraud actions ("opt out" cases) against Qwest Communications International, Inc., Philip F. Anschutz, former co-chairman of the Qwest board of directors, and other senior executives at Qwest. In each action, the plaintiffs charged defendants with massively overstating Qwest's publicly-reported growth, revenues, earnings, and earnings per share from 1999 through 2002. The cases were filed in the wake of a $400 million settlement of a securities fraud class action against Qwest that was announced in early 2006. The cases brought by Lieff Cabraser's clients settled in October 2007 for recoveries totaling more than $85 million, or more than 13 times what the clients would have received had they remained in the class.

16. ***In re AXA Rosenberg Investor Litigation***, No. CV 11-00536 JSW (N.D. Cal). Lieff Cabraser served as Co-Lead Counsel for a class of institutional investors, ERISA-covered plans, and other investors in quantitative funds managed by AXA Rosenberg Group, LLC and its affiliates ("AXA"). Plaintiffs alleged that AXA breached its fiduciary duties and violated ERISA by failing to discover a material computer error that existed in its system for years, and then failing to remedy it for months after its eventual discovery in 2009. By the time AXA disclosed the error in 2010, investors had suffered losses and paid substantial investment management fees to AXA. After briefing motions to dismiss and working with experts to analyze data obtained from AXA relating to the impact of the error, Lieff Cabraser reached a $65 million settlement with AXA that the Court approved in April 2012.

17. ***In re National Century Financial Enterprises, Inc. Investment Litigation***, MDL No. 1565 (S.D. Ohio). Lieff Cabraser served as outside counsel for the New York City Employees' Retirement System, Teachers' Retirement System for the City of New York, New York City Police Pension Fund, and New York City Fire Department Pension Fund in this multidistrict litigation arising from fraud in connection with NCFE's issuance of notes backed by healthcare receivables. The New York City Pension Funds recovered more than 70% of their $89 million in losses, primarily through settlements achieved in the federal litigation and another NCFE-matter brought on their behalf by Lieff Cabraser.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 163 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 33 of 144

18.    ***BlackRock Global Allocation Fund v. Tyco International Ltd.,
et al.***, No. 2:08-cv-519 (D. N.J.); ***Nuveen Balanced Municipal and
Stock Fund v. Tyco International Ltd., et al.***, No. 2:08-cv-518 (D.
N.J.).  Lieff Cabraser represented multiple funds of the investment firms
BlackRock Inc. and Nuveen Asset Management in separate, direct
securities fraud actions against Tyco International Ltd., Tyco Electronics
Ltd., Covidien Ltd, Covidien (U.S.), L. Dennis Kozlowski, Mark H. Swartz,
and Frank E. Walsh, Jr.  Plaintiffs alleged that defendants engaged in a
massive criminal enterprise that combined the theft of corporate assets
with fraudulent accounting entries that concealed Tyco's financial
condition from investors.  As a result, plaintiffs purchased Tyco common
stock and other Tyco securities at artificially inflated prices and suffered
losses upon disclosures revealing Tyco's true financial condition and
defendants' misconduct.  In 2009, the parties settled the claims against
the corporate defendants (Tyco International Ltd., Tyco Electronics Ltd.,
Covidien Ltd., and Covidien (U.S.).  The litigation concluded in 2010.  The
total settlement proceeds paid by all defendants were in excess of $57
million.

19.    ***Kofuku Bank and Namihaya Bank v. Republic New York
Securities Corp.***, No. 00 CIV 3298 (S.D.N.Y.); and Kita Hyogo Shinyo-
Kumiai v. Republic New York Securities Corp., No. 00 CIV 4114
(S.D.N.Y.).  Lieff Cabraser represented Kofuku Bank, Namihaya Bank and
Kita Hyogo Shinyo-Kumiai (a credit union) in individual lawsuits against,
among others, Martin A. Armstrong and HSBC, Inc., the successor-in-
interest to Republic New York Corporation, Republic New York Bank and
Republic New York Securities Corporation for alleged violations of federal
securities and racketeering laws.  Through a group of interconnected
companies owned and controlled by Armstrong—the Princeton
Companies—Armstrong and the Republic Companies promoted and sold
promissory notes, known as the "Princeton Notes," to more than eighty of
the largest companies and financial institutions in Japan.  Lieff Cabraser's
lawsuits, as well as the lawsuits of dozens of other Princeton Note
investors, alleged that the Princeton and Republic Companies made
fraudulent misrepresentations and non-disclosures in connection with the
promotion and sale of Princeton Notes, and that investors' monies were
commingled and misused to the benefit of Armstrong, the Princeton
Companies and the Republic Companies.  In December 2001, the claims
of our clients and those of the other Princeton Note investors were settled.
As part of the settlement, our clients recovered more than $50 million,
which represented 100% of the value of their principal investments less
money they received in interest or other payments.

20.    ***Alaska State Department of Revenue v. America Online***,
No. 1JU-04-503 (Alaska Supr. Ct.).  In December 2006, a $50 million
settlement was reached in a securities fraud action brought by the Alaska

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 164 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 34 of 144

State Department of Revenue, Alaska State Pension Investment Board and Alaska Permanent Fund Corporation against defendants America Online, Inc. ("AOL"), Time Warner Inc. (formerly known as AOL Time Warner ("AOLTW")), Historic TW Inc.  When the action was filed, the Alaska Attorney General estimated total losses at $70 million.  The recovery on behalf of Alaska was approximately 50 times what the state would have received as a member of the class in the federal securities class action settlement.  The lawsuit, filed in 2004 in Alaska State Court, alleged that defendants misrepresented advertising revenues and growth of AOL and AOLTW along with the number of AOL subscribers, which artificially inflated the stock price of AOL and AOLTW to the detriment of Alaska State funds.

The Alaska Department of Law retained Lieff Cabraser to lead the litigation efforts under its direction. "We appreciate the diligence and expertise of our counsel in achieving an outstanding resolution of the case," said Mark Morones, spokesperson for the Department of Law, following announcement of the settlement.

21.    ***Allocco v. Gardner***, No. GIC 806450 (Cal. Supr. Ct.).  Lieff Cabraser represented Lawrence L. Garlick, the co-founder and former Chief Executive Officer of Remedy Corporation and 24 other former senior executives and directors of Remedy Corporation in a private (non-class) securities fraud lawsuit against Stephen P. Gardner, the former Chief Executive Officer of Peregrine Systems, Inc., John J. Moores, Peregrine's former Chairman of the Board, Matthew C. Gless, Peregrine's former Chief Financial Officer, Peregrine's accounting firm Arthur Andersen and certain entities that entered into fraudulent transactions with Peregrine.  The lawsuit, filed in California state court, arose out of Peregrine's August 2001 acquisition of Remedy.  Plaintiffs charged that they were induced to exchange their Remedy stock for Peregrine stock on the basis of false and misleading representations made by defendants.  Within months of the Remedy acquisition, Peregrine began to reveal to the public that it had grossly overstated its revenue during the years 2000-2002, and eventually restated more than $500 million in revenues.

After successfully defeating demurrers brought by defendants, including third parties who were customers of Peregrine who aided and abetted Peregrine's accounting fraud under California common law, plaintiffs reached a series of settlements.  The settling defendants included Arthur Andersen, all of the director defendants, three officer defendants and the third party customer defendants KPMG, British Telecom, Fujitsu, Software Spectrum and Bindview.  The total amount received in settlements was approximately $45 million.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 165 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 35 of 144

22.    ***In re Cablevision Systems Corp. Shareholder Derivative
Litigation***, No. 06-cv-4130-DGT-AKT (E.D.N.Y.).  Lieff Cabraser served
as Co-Lead Counsel in a shareholders' derivative action against the board
of directors and numerous officers of Cablevision.  The suit alleged that
defendants intentionally manipulated stock option grant dates to
Cablevision employees between 1997 and 2002 in order to enrich certain
officer and director defendants at the expense of Cablevision and
Cablevision shareholders.  According to the complaint, Defendants made
it appear as if stock options were granted earlier than they actually were
in order to maximize the value of the grants.  In September 2008, the
Court granted final approval to a $34.4 million settlement of the action.
Over $24 million of the settlement was contributed directly by individual
defendants who either received backdated options or participated in the
backdating activity.

23.    ***In re Media Vision Technology Securities Litigation***, No. CV-94-
1015 (N.D. Cal.).  Lieff Cabraser served as Co-Lead Counsel in a class
action lawsuit which alleged that certain Media Vision's officers, outside
directors, accountants and underwriters engaged in a fraudulent scheme
to inflate the company's earnings and issued false and misleading public
statements about the company's finances, earnings and profits.  By 1998,
the Court had approved several partial settlements with many of Media
Vision's officers and directors, accountants and underwriters which
totaled $31 million.  The settlement proceeds have been distributed to
eligible class members.  The evidence that Lieff Cabraser developed in the
civil case led prosecutors to commence an investigation and ultimately file
criminal charges against Media Vision's former Chief Executive Officer
and Chief Financial Officer.  The civil action against Media Vision's CEO
and CFO was stayed pending the criminal proceedings against them.  In
the criminal proceedings, the CEO pled guilty on several counts, and the
CFO was convicted at trial.  In October 2003, the Court granted Plaintiffs'
motions for summary judgment and entered a judgment in favor of the
class against the two defendants in the amount of $188 million.

24.    ***In re California Micro Devices Securities Litigation***, No. C-94-
2817-VRW (N.D. Cal.).  Lieff Cabraser served as Liaison Counsel for the
Colorado Public Employees' Retirement Association and the California
State Teachers' Retirement System, and the class they represented.  Prior
to 2001, the Court approved $19 million in settlements.  In May 2001, the
Court approved an additional settlement of $12 million, which, combined
with the earlier settlements, provided class members an almost complete
return on their losses.  The settlement with the company included multi-
million dollar contributions by the former Chairman of the Board and
Chief Executive Officer.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 166 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 36 of 144

Commenting in 2001 on Lieff Cabraser's work in Cal Micro Devices, U.S. District Court Judge Vaughn R. Walker stated, "It is highly unusual for a class action in the securities area to recover anywhere close to the percentage of loss that has been recovered here, and counsel and the lead plaintiffs have done an admirable job in bringing about this most satisfactory conclusion of the litigation." One year later, in a related proceeding and in response to the statement that the class had received nearly a 100% recovery, Judge Walker observed, "That's pretty remarkable. In these cases, 25 cents on the dollar is considered to be a magnificent recovery, and this is [almost] a hundred percent."

25.    ***In re Network Associates, Inc. Securities Litigation***, No. C-99-1729-WHA (N.D. Cal.). Following a competitive bidding process, the Court appointed Lieff Cabraser as Lead Counsel for the Lead Plaintiff and the class of investors. The complaint alleged that Network Associates improperly accounted for acquisitions in order to inflate its stock price. In May 2001, the Court granted approval to a $30 million settlement.

In reviewing the *Network Associates* settlement, U.S. District Court Judge William H. Alsup observed, "[T]he class was well served at a good price by excellent counsel . . . We have class counsel who's one of the foremost law firms in the country in both securities law and class actions. And they have a very excellent reputation for the conduct of these kinds of cases . . ."

26.    ***In re FPI/Agretech Securities Litigation***, MDL No. 763 (D. Haw., Real, J.). Lieff Cabraser served as Lead Class Counsel for investors defrauded in a "Ponzi-like" limited partnership investment scheme. The Court approved $15 million in partial, pretrial settlements. At trial, the jury returned a $24 million verdict, which included $10 million in punitive damages, against non-settling defendant Arthur Young & Co. for its knowing complicity and active and substantial assistance in the marketing and sale of the worthless limited partnership offerings. The Appellate Court affirmed the compensatory damages award and remanded the case for a retrial on punitive damages. In 1994, the Court approved a $17 million settlement with Ernst & Young, the successor to Arthur Young & Co.

27.    ***Nguyen v. FundAmerica***, No. C-90-2090 MHP (N.D. Cal., Patel, J.), 1990 Fed. Sec. L. Rep. (CCH) ¶¶ 95,497, 95,498 (N.D. Cal. 1990). Lieff Cabraser served as Plaintiffs' Class Counsel in this securities/RICO/tort action seeking an injunction against alleged unfair "pyramid" marketing practices and compensation to participants. The District Court certified a nationwide class for injunctive relief and damages on a mandatory basis and enjoined fraudulent overseas transfers of assets. The Bankruptcy Court permitted class proof of claims. Lieff Cabraser obtained dual

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 167 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 37 of 144

District Court and Bankruptcy Court approval of settlements distributing over $13 million in FundAmerica assets to class members.

28.     ***In re Brooks Automation, Inc. Securities Litigation***, No. 06 CA 11068 (D. Mass.).  Lieff Cabraser served as Court-Appointed Lead Counsel for Lead Plaintiff the Los Angeles County Employees Retirement Association and co-plaintiff Sacramento County Employees' Retirement System in a class action lawsuit on behalf of purchasers of Brooks Automation securities.  Plaintiffs charged that Brooks Automation, its senior corporate officers and directors violated federal securities laws by backdating company stock options over a six-year period, and failed to disclose the scheme in publicly filed financial statements.  Subsequent to Lieff Cabraser's filing of a consolidated amended complaint in this action, both the Securities and Exchange Commission and the United States Department of Justice filed complaints against the Company's former C.E.O., Robert Therrien, related to the same alleged practices.  In October 2008, the Court approved a $7.75 million settlement of the action.

29.     ***In re A-Power Energy Generation Systems, Ltd. Securities Litigation***, No. 2:11-ml-2302-GW- (CWx) (C.D. Cal.).  Lieff Cabraser served as Court-appointed Lead Counsel for Lead Plaintiff in this securities class action that charged defendants with materially misrepresenting A-Power Energy Generation Systems, Ltd.'s financial results and business prospects in violation of the antifraud provisions of the Securities Exchange Act of 1934.  The Court approved a $3.675 million settlement in August 2013.

30.     ***Bank of America-Merrill Lynch Merger Securities Cases***.  In two cases—*DiNapoli, et al. v. Bank of America Corp.*, No. 10 CV 5563 (S.D. N.Y.) and *Schwab S&P 500 Index Fund, et al. v. Bank of America Corp., et al.*, No. 11-cv- 07779 PKC (S.D. N.Y.).  Lieff Cabraser sought recovery on a direct, non-class basis for losses that a number of public pension funds and mutual funds incurred as a result of Bank of America's alleged misrepresentations and concealment of material facts in connection with its acquisition of Merrill Lynch & Co., Inc.  Lieff Cabraser represented the New York State Common Retirement Fund, the New York State Teachers' Retirement System, the Public Employees' Retirement Association of Colorado, and fourteen mutual funds managed by Charles Schwab Investment Management.  Both cases settled in 2013 on confidential terms favorable for our clients.

31.     ***Albert v. Alex. Brown Management Services; Baker v. Alex. Brown Management Services*** (Del. Ch. Ct.).  In May 2004, on behalf of investors in two investment funds controlled, managed and operated by Deutsche Bank and advised by DC Investment Partners, Lieff Cabraser filed lawsuits for alleged fraudulent conduct that resulted in an aggregate

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 168 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 38 of 144

loss of hundreds of millions of dollars.  The suits named as defendants
Deutsche Bank and its subsidiaries Alex. Brown Management Services
and Deutsche Bank Securities, members of the funds' management
committee, as well as DC Investments Partners and two of its principals.
Among the plaintiff-investors were 70 high net worth individuals.  In the
fall of 2006, the cases settled by confidential agreement.

### III.   Employment Discrimination and Unfair Employment Practices

#### A.   Current Cases

1.   ***Chen-Oster v. Goldman Sachs***, No. 10-6950 (S.D.N.Y.).  Lieff
Cabraser serves as Co-Lead Counsel for plaintiffs in a gender
discrimination class action lawsuit against Goldman Sachs alleging
Goldman Sachs has engaged in systemic and pervasive discrimination
against its female professional employees in violation of Title VII of the
Civil Rights Act of 1964 and New York City Human Rights Law.  The
complaint charges that, among other things, Goldman Sachs pays its
female professionals less than similarly situated males, disproportionately
promotes men over equally or more qualified women, and offers better
business opportunities and professional support to its male professionals.
In 2012, the Court denied defendant's motion to strike class allegations.

On March 10, 2015, Magistrate Judge James C. Francis IV issued a
recommendation against certifying the class.  In April of 2017, District
Court Judge Analisa Torres granted plaintiffs' motion to amend their
complaint and add new representative plaintiffs, denied Goldman Sachs'
motions to dismiss the new plaintiffs' claims, and ordered the parties to
submit proposals by April 26, 2017, on a process for addressing
Magistrate Judge Francis' March 2015 Report and Recommendation on
class certification.

On March 30, 2018, Judge Torres issued an order certifying the plaintiffs'
damages class under Federal Rule of Civil Procedure Rule 23(b)(3). Judge
Torres certified plaintiffs' claims for both disparate impact and disparate
treatment discrimination, relying on statistical evidence of discrimination
in pay, promotions, and performance evaluations, as well as anecdotal
evidence of Goldman's hostile work environment. In so ruling, the court
also granted plaintiffs' motion to exclude portions of Goldman's expert
evidence as unreliable, and denied all of Goldman's motions to exclude
plaintiffs' expert evidence.

2.   ***Moussouris v. Microsoft Corp.,*** No. 15-cv-01483 (W.D. Wash.).  Lieff
Cabraser and co-counsel represent a former female Microsoft technical
professional in a gender discrimination class action lawsuit on behalf of
herself and all current and former female technical professionals
employed by Microsoft in the U.S. since September 16, 2009.  The

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 169 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 39 of 144

complaint alleges that Microsoft has engaged in systemic and pervasive discrimination against female employees in technical and engineering roles with respect to performance evaluations, pay, promotions, and other terms and conditions of employment. The unchecked gender bias that pervades Microsoft's corporate culture has resulted in female technical professionals receiving less compensation than similar men, the promotion of men over equally or more qualified women, and less favorable performance evaluation of female technical professionals compared to male peers.  Microsoft's continuing policy, pattern, and practice of sex discrimination against female technical employees, the complaint alleges, violates federal and state laws, including Title VII of the Civil Rights Act of 1964 and the Washington Law Against Discrimination.

Plaintiffs filed a motion for class certification on October 27, 2017, and subsequently filed a reply brief in support of the motion on February 9, 2018. The motion seeks certification of a class of female employees who worked in the Engineering or I/T Operations Professions and in stock levels 59-67 from September 16, 2012 to the present. In June 2018, the district court denied plaintiffs' motion for class certification. In July 2018, plaintiffs petitioned the court for permission to appeal that denial, which the Ninth Circuit granted.  The appeal has been fully briefed and oral argument will be scheduled for Fall 2019.

3.     ***Kassman v. KPMG, LLP***, Case No. 11-03743 (S.D.N.Y.).  Lieff Cabraser serves as Co-Lead Counsel for plaintiffs in a gender discrimination class and collective action lawsuit alleging that KPMG has engaged in systemic and pervasive discrimination against its female Client Service and Support Professionals in pay and promotion, discrimination based on pregnancy, and chronic failure to properly investigate and resolve complaints of discrimination and harassment.  The complaint alleges violations of the Equal Pay Act, Title VII of the Civil Rights Act of 1964, the New York Executive Law § 296, and the New York City Administrative Code § 8-107.  For purposes of the Equal Pay Act claim, plaintiffs represent a conditionally-certified collective of 1,100 female Client Service and Support Professionals who have opted in to the lawsuit.

On November 27, 2018, Plaintiffs filed a motion in U.S. District Court for the Southern District of New York seeking class certification in the long-running lawsuit challenging gender disparities in pay and promotion on behalf of approximately 10,000 female Advisory and Tax professionals. Plaintiffs also sought final certification of the Equal Pay Act collective on behalf of the approximately 1,100 opt-in plaintiffs.

On November 30, 2018, the Court declined to certify the class and decertified the Equal Pay Act collective. While the Court acknowledged

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 170 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 40 of 144

KPMG's common pay and promotion policies and its gender disparities in pay and promotion, the Court held that the women challenging KPMG's pay and promotion policies cannot pursue their claims together. On December 14, 2018, Plaintiffs filed a Petition to Appeal the Denial of Class Certification under Rule 23(f) with the United States Court of Appeals for the Second Circuit. Plaintiffs are awaiting a decision from the Court of Appeals about whether to hear the appeal.

4.    ***Strauch v. Computer Sciences Corporation***, No. 2:14-cv-00956 (D. Conn.).  In 2005, Computer Sciences Corporation ("CSC") settled for $24 million a nationwide class and collective action lawsuit alleging that CSC misclassified thousands of its information technology support workers as exempt from overtime pay in violation of in violation of the federal Fair Labor Standards Act ("FLSA") and state law.  Notwithstanding that settlement, a complaint filed on behalf of current and former CSC IT workers in 2014 by Lieff Cabraser and co-counsel alleges that CSC misclassifies many information technology support workers as exempt even though they perform primarily nonexempt work.  Plaintiffs are current and former CSC System Administrators assigned the primary duty of the installation, maintenance, and/or support of computer software and/or hardware for CSC clients.  On June 9, 2015, the Court granted plaintiffs' motion for conditional certification of a FLSA collective action.  Since then, more than 1,000 System Administrators have opted into the case.  On June 30, 2017, the Court granted plaintiffs motion for certification of Rule 23 classes for System Administrators in California and Connecticut.

On December 20, 2017, a jury in federal court in Connecticut ruled that Computer Sciences Corporation (CSC), which recently merged with Hewlett Packard Enterprise Services to form DXC Technology (NYSE: DXC), wrongly and willfully denied overtime pay to approximately 1,000 current and former technology support workers around the country. After deliberating over two days, the Connecticut jury unanimously rejected CSC's claim that its System Administrators in the "Associate Professional" and "Professional" job titles are exempt under federal, Connecticut and California law, ruling instead that the workers should have been classified as nonexempt and paid overtime. The jury found CSC's violations to be willful, triggering additional damages. The misclassifications were made despite the fact that, in 2005, CSC paid $24 million to settle similar claims from a previous group of technical support workers. Following the issuance of a Report and Recommendation from a Court-appointed special master, the Court entered judgment ordering CSC to pay damages totaling $18,755,016.46 to class members.

5.    ***Senne v. Major League Baseball***, No. 14-cv-00608 (N.D. Cal.).  Lieff Cabraser represents current and former Minor League Baseball players

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 171 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 41 of 144

employed under uniform player contracts in a class and collective action seeking unpaid overtime and minimum wages under the Fair Labor Standards Act and state laws. The complaint alleges that Major League Baseball ("MLB"), the MLB franchises, and other defendants paid minor league players a uniform monthly fixed salary that, in light of the hours worked, amounts to less than the minimum wage and an unlawful denial of overtime pay.

6.   ***Jang v. E.I. Du Pont De Nemours & Co.,*** No. 15-03719-NC (N.D. Cal.). Lieff Cabraser represents certain former DuPont employees in a breach of contract action alleging that DuPont unlawfully terminated employees' unvested stock options. DuPont's standard stock option award contract states that unvested options will continue to vest in accordance with their vesting schedule. In practice, however, DuPont unilaterally cancelled unvested stock options one year from employees' termination, regardless of whether the options had vested. The complaint was filed on August 15, 2015. DuPont filed a motion to dismiss the complaint, which was granted by United States Magistrate Judge Nathanael Cousins on November 19, 2015. Plaintiffs appealed the decision to the Ninth Circuit Court of Appeals, and oral argument was held on April 21, 2017. The Ninth Circuit has not yet issued a decision.

**B.   Successes**

1.   ***Butler v. Home Depot***, No. C94-4335 SI (N.D. Cal.). Lieff Cabraser and co-counsel represented a class of approximately 25,000 female employees and applicants for employment with Home Depot's West Coast Division who alleged gender discrimination in connection with hiring, promotions, pay, job assignment, and other terms and conditions of employment. The class was certified in January 1995. In January 1998, the Court approved a $87.5 million settlement of the action that included comprehensive injunctive relief over the term of a five-year Consent Decree. Under the terms of the settlement, Home Depot modified its hiring, promotion, and compensation practices to ensure that interested and qualified women were hired for, and promoted to, sales and management positions.

On January 14, 1998, U.S. District Judge Susan Illston commented that the settlement provides "a very significant monetary payment to the class members for which I think they should be grateful to their counsel. . . . Even more significant is the injunctive relief that's provided for . . ." By 2003, the injunctive relief had created thousands of new job opportunities in sales and management positions at Home Depot, generating the equivalent of over approximately $100 million per year in wages for female employees.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 172 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 42 of 144

In 2002, Judge Illston stated that the injunctive relief has been a
"win/win . . . for everyone, because . . . the way the Decree has been
implemented has been very successful and it is good for the company as
well as the company's employees."

2.   ***Rosenburg v. IBM***, No. C 06-0430 PJH (N.D. Cal.).  In July 2007, the
Court granted final approval to a $65 million settlement of a class action
suit by current and former technical support workers for IBM seeking
unpaid overtime.  The settlement constitutes a record amount in litigation
seeking overtime compensation for employees in the computer industry.
Plaintiffs alleged that IBM illegally misclassified its employees who install
or maintain computer hardware or software as "exempt" from the
overtime pay requirements of federal and state labor laws.

3.   ***Satchell v. FedEx Express***, No. C 03-2659 SI; C 03-2878 SI (N.D.
Cal.).  In 2007, the Court granted final approval to a $54.9 million
settlement of the race discrimination class action lawsuit by African
American and Latino employees of FedEx Express.  The settlement
requires FedEx to reform its promotion, discipline, and pay practices.
Under the settlement, FedEx will implement multiple steps to promote
equal employment opportunities, including making its performance
evaluation process less discretionary, discarding use of the "Basic Skills
Test" as a prerequisite to promotion into certain desirable positions, and
changing employment policies to demonstrate that its revised practices do
not continue to foster racial discrimination.  The settlement, covering
20,000 hourly employees and operations managers who have worked in
the western region of FedEx Express since October 1999, was approved by
the Court in August 2007.

4.   ***Gonzalez v. Abercrombie & Fitch Stores***, No. C03-2817 SI (N.D.
Cal.).  In April 2005, the Court approved a settlement, valued at
approximately $50 million, which requires the retail clothing giant
Abercrombie & Fitch to provide monetary benefits of $40 million to the
class of Latino, African American, Asian American and female applicants
and employees who charged the company with discrimination.  The
settlement included a six-year period of injunctive relief requiring the
company to institute a wide range of policies and programs to promote
diversity among its workforce and to prevent discrimination based on race
or gender.  Lieff Cabraser served as Lead Class Counsel and prosecuted
the case with a number of co-counsel firms, including the Mexican
American Legal Defense and Education Fund, the Asian Pacific American
Legal Center and the NAACP Legal Defense and Educational Fund, Inc.

5.   ***Giles v. Allstate***, JCCP Nos. 2984 and 2985.  Lieff Cabraser represented
a class of Allstate insurance agents seeking reimbursement of out-of-
pocket costs.  The action settled for approximately $40 million.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 173 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 43 of 144

6.    ***Calibuso v. Bank of America Corporation, Merrill Lynch & Co.***,
No. CV10-1413 (E.D. N.Y.).  Lieff Cabraser served as Co-Lead Counsel for
female Financial Advisors who alleged that Bank of America and Merrill
Lynch engaged in a pattern and practice of gender discrimination with
respect to business opportunities and compensation.  The complaint
charged that these violations were systemic, based upon company-wide
policies and practices.  In December 2013, the Court approved a $39
million settlement.  The settlement included three years of programmatic
relief, overseen by an independent monitor, regarding teaming and
partnership agreements, business generation, account distributions,
manager evaluations, promotions, training, and complaint processing and
procedures, among other things.  An independent consultant also
conducted an internal study of the bank's Financial Advisors' teaming
practices.

7.    ***Frank v. United Airlines***, No. C-92-0692 MJJ (N.D. Cal.).  Lieff
Cabraser and co-counsel obtained a $36.5 million settlement in February
2004 for a class of female flight attendants who were required to weigh
less than comparable male flight attendants.  Former U.S. District Court
Judge Charles B. Renfrew (ret.), who served as a mediator in the case,
stated, "As a participant in the settlement negotiations, I am familiar with
and know the reputation, experience and skills of lawyers involved.  They
are dedicated, hardworking and able counsel who have represented their
clients very effectively."  U.S. District Judge Martin J. Jenkins, in granting
final approval to the settlement, found "that the results achieved here
could be nothing less than described as exceptional," and that the
settlement "was obtained through the efforts of outstanding counsel."

8.    ***Barnett v. Wal-Mart***, No. 01-2-24553-SNKT (Wash.).  The Court
approved in July 2009 a settlement valued at up to $35 million on behalf
of workers in Washington State who alleged they were deprived of meal
and rest breaks and forced to work off-the-clock at Wal-Mart stores and
Sam's Clubs.  In addition to monetary relief, the settlement provided
injunctive relief benefiting all employees.  Wal-Mart was required to
undertake measures to prevent wage and hour violations at its 50 stores
and clubs in Washington, measures that included the use of new
technologies and compliance tools.

Plaintiffs filed their complaint in 2001.  Three years later, the Court
certified a class of approximately 40,000 current and former Wal-Mart
employees.  The eight years of litigation were intense and adversarial.
Wal-Mart, currently the world's third largest corporation, vigorously
denied liability and spared no expense in defending itself.

This lawsuit and similar actions filed against Wal-Mart across America
served to reform the pay procedures and employment practices for Wal-

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 174 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 44 of 144

Mart's 1.4 million employees nationwide.  In a press release announcing
the Court's approval of the settlement, Wal-Mart spokesperson Daphne
Moore stated, "This lawsuit was filed years ago and the allegations are not
representative of the company we are today."  Lieff Cabraser served as
Court-appointed Co-Lead Class Counsel.

9.  ***Amochaev. v. Citigroup Global Markets, d/b/a Smith Barney***,
No. C 05-1298 PJH (N.D. Cal.).  In August 2008, the Court approved a
$33 million settlement for the 2,411 members of the Settlement Class in a
gender discrimination case against Smith Barney.  Lieff Cabraser
represented Female Financial Advisors who charged that Smith Barney,
the retail brokerage unit of Citigroup, discriminated against them in
account distributions, business leads, referral business, partnership
opportunities, and other terms of employment.  In addition to the
monetary compensation, the settlement included comprehensive
injunctive relief for four years designed to increase business opportunities
and promote equality in compensation for female brokers.

10.  ***Vedachalam v. Tata Consultancy Services***, C 06-0963 CW (N.D.
Cal.).  Lieff Cabraser served as Co-Lead Counsel for 12,700 foreign
nationals sent by the Indian conglomerate Tata to work in the U.S.  After 7
years of hard-fought litigation, the District Court in July 2013 granted
final approval to a $29.75 million settlement.  The complaint charged that
Tata breached the contracts of its non-U.S.-citizen employees by requiring
them to sign over their federal and state tax refund checks to Tata, and by
failing to pay its non-U.S.-citizen employees the monies promised to those
employees before they came to the United States.  In 2007 and again in
2008, the District Court denied Tata's motions to compel arbitration of
Plaintiffs' claims in India.  The Court held that no arbitration agreement
existed because the documents purportedly requiring arbitration in India
applied one set of rules to the Plaintiffs and another set to Tata.  In 2009,
the Ninth Circuit Court of Appeals affirmed this decision.  In July 2011,
the District Court denied in part Tata's motion for summary judgment,
allowing Plaintiffs' legal claims for breach of contract and certain
violations of California wage laws to go forward.  In 2012, the District
Court found that the plaintiffs satisfied the legal requirements for a class
action and certified two classes.

11.  ***Giannetto v. Computer Sciences Corporation***, No. 03-CV-8201
(C.D. Cal.).  In one of the largest overtime pay dispute settlements ever in
the information technology industry, the Court approved a $24 million
settlement with Computer Sciences Corporation in 2005.  Plaintiffs
charged that the global conglomerate had a common practice of refusing
to pay overtime compensation to its technical support workers involved in
the installation and maintenance of computer hardware and software in

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 175 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 45 of 144

violation of the Fair Labor Standards Act, California's Unfair Competition Law, and the wage and hour laws of 13 states.

12. **_Curtis-Bauer v. Morgan Stanley & Co._**, Case No. C-06-3903 (TEH). In October 2008, the Court approved a $16 million settlement in the class action against Morgan Stanley. The complaint charged that Morgan Stanley discriminated against African-American and Latino Financial Advisors and Registered Financial Advisor Trainees in the Global Wealth Management Group of Morgan Stanley in compensation and business opportunities. The settlement included comprehensive injunctive relief regarding account distributions, partnership arrangements, branch manager promotions, hiring, retention, diversity training, and complaint processing, among other things. The settlement also provided for the appointment of an independent Diversity Monitor and an independent Industrial Psychologist to effectuate the terms of the agreement.

13. **_Church v. Consolidated Freightways_**, No. C90-2290 DLJ (N.D. Cal.). Lieff Cabraser was the Lead Court-appointed Class Counsel in this class action on behalf of the exempt employees of Emery Air Freight, a freight forwarding company acquired by Consolidated Freightways in 1989. On behalf of the employee class, Lieff Cabraser prosecuted claims for violation of the Employee Retirement Income Security Act, the securities laws, and the Age Discrimination in Employment Act. The case settled in 1993 for $13.5 million.

14. **_Gerlach v. Wells Fargo & Co._**, No. C 05-0585 CW (N.D. Cal.). In January 2007, the Court granted final approval to a $12.8 million settlement of a class action suit by current and former business systems employees of Wells Fargo seeking unpaid overtime. Plaintiffs alleged that Wells Fargo illegally misclassified those employees, who maintained and updated Wells Fargo's business tools according to others' instructions, as "exempt" from the overtime pay requirements of federal and state labor laws.

15. **_Buccellato v. AT&T Operations_**, No. C10-00463-LHK (N.D. Cal.). Lieff Cabraser represented a group of current and former AT&T technical support workers who alleged that AT&T misclassified them as exempt and failed to pay them for all overtime hours worked, in violation of federal and state overtime pay laws. In June 2011, the Court approved a $12.5 million collective and class action settlement.

16. **_Buttram v. UPS_**, No. C-97-01590 MJJ (N.D. Cal.). Lieff Cabraser and several co-counsel represented a class of approximately 14,000 African-American part-time hourly employees of UPS's Pacific and Northwest Regions alleging race discrimination in promotions and job advancement. In 1999, the Court approved a $12.14 million settlement of the action. Under the injunctive relief portion of the settlement, Class Counsel

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 176 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 46 of 144

monitored the promotions of African-American part-time hourly
employees to part-time supervisor and full-time package car drivers.

17. ***Goddard, et al. v. Longs Drug Stores Corporation, et al.***,
No. RG04141291 (Cal. Supr. Ct.). Store managers and assistant store
managers of Longs Drugs charged that the company misclassified them as
exempt from overtime wages. Managers regularly worked in excess of
8 hours per day and 40 hours per week without compensation for their
overtime hours. Following mediation, in 2005, Longs Drugs agreed to
settle the claims for a total of $11 million. Over 1,000 current and former
Longs Drugs managers and assistant managers were eligible for
compensation under the settlement, over 98% of the class submitted
claims.

18. ***Trotter v. Perdue Farms***, No. C 99-893-RRM (JJF) (MPT) (D. Del.).
Lieff Cabraser represented a class of chicken processing employees of
Perdue Farms, Inc., one of the nation's largest poultry processors, for
wage and hour violations. The suit challenged Perdue's failure to
compensate its assembly line employees for putting on, taking off, and
cleaning protective and sanitary equipment in violation of the Fair Labor
Standards Act, various state wage and hour laws, and the Employee
Retirement Income Security Act. Under a settlement approved by the
Court in 2002, Perdue paid $10 million for wages lost by its chicken
processing employees and attorneys' fees and costs. The settlement was
in addition to a $10 million settlement of a suit brought by the
Department of Labor in the wake of Lieff Cabraser's lawsuit.

19. ***Gottlieb v. SBC Communications***, No. CV-00-04139 AHM (MANx)
(C.D. Cal.). With co-counsel, Lieff Cabraser represented current and
former employees of SBC and Pacific Telesis Group ("PTG") who
participated in AirTouch Stock Funds, which were at one time part of
PTG's salaried and non-salaried savings plans. After acquiring PTG, SBC
sold AirTouch, which PTG had owned, and caused the AirTouch Stock
Funds that were included in the PTG employees' savings plans to be
liquidated. Plaintiffs alleged that in eliminating the AirTouch Stock
Funds, and in allegedly failing to adequately communicate with
employees about the liquidation, SBC breached its duties to 401k plan
participants under the Employee Retirement Income Security Act. In
2002, the Court granted final approval to a $10 million settlement.

20. ***Ellis v. Costco Wholesale Corp.***, No. 04-03341-EMC (N.D. Cal.).
Lieff Cabraser served as Co-Lead Counsel for current and former female
employees who charged that Costco discriminated against women
in promotion to management positions. In January 2007, the Court
certified a class consisting of over 750 current and former female Costco
employees nationwide who were denied promotion to General Manager or

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 177 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 47 of 144

Assistant Manager since January 3, 2002. Costco appealed. In September 2011, the U.S. Court of Appeals for the Ninth Circuit remanded the case to the District Court to make class certification findings consistent with the U.S. Supreme Court's ruling in *Wal-Mart v. Dukes*, 131 S.Ct. 2541 (2011). In September 2012, U.S. District Court Judge Edward M. Chen granted plaintiffs' motion for class certification and certified two classes of over 1,250 current and former female Costco employees, one for injunctive relief and the other for monetary relief. On May 27, 2014, the Court approved an $8 million settlement.

21. ***In Re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation***, MDL No. 1439 (D. Ore.). Lieff Cabraser and co-counsel represented claims representatives of Farmers' Insurance Exchange seeking unpaid overtime. Lieff Cabraser won a liability phase trial on a classwide basis, and then litigated damages on an individual basis before a special master. The judgment was partially upheld on appeal. In August 2010, the Court approved an $8 million settlement.

22. ***Zuckman v. Allied Group***, No. 02-5800 SI (N.D. Cal.). In September 2004, the Court approved a settlement with Allied Group and Nationwide Mutual Insurance Company of $8 million plus Allied/Nationwide's share of payroll taxes on amounts treated as wages, providing plaintiffs a 100% recovery on their claims. Plaintiffs, claims representatives of Allied / Nationwide, alleged that the company misclassified them as exempt employees and failed to pay them and other claims representatives in California overtime wages for hours they worked in excess of eight hours or forty hours per week. In approving the settlement, U.S. District Court Judge Susan Illston commended counsel for their "really good lawyering" and stated that they did "a splendid job on this" case.

23. ***Thomas v. California State Automobile Association***, No. CH217752 (Cal. Supr. Ct.). With co-counsel, Lieff Cabraser represented 1,200 current and former field claims adjusters who worked for the California State Automobile Association ("CSAA"). Plaintiffs alleged that CSAA improperly classified their employees as exempt, therefore denying them overtime pay for overtime worked. In May 2002, the Court approved an $8 million settlement of the case.

24. ***Higazi v. Cadence Design Systems***, No. C 07-2813 JW (N.D. Cal.). In July 2008, the Court granted final approval to a $7.664 million settlement of a class action suit by current and former technical support workers for Cadence seeking unpaid overtime. Plaintiffs alleged that Cadence illegally misclassified its employees who install, maintain, or support computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 178 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 48 of 144

25. ***Zaborowski v. MHN Government Services***, No. 12-CV-05109-SI (N.D. Cal.)  Lieff Cabraser represented current and former Military and Family Life Consultants ("MFLCs") in a class action lawsuit against MHN Government Services, Inc. ("MHN") and Managed Health Network, Inc., seeking overtime pay under the federal Fair Labor Standards Act and state laws.  The complaint charged that MHN misclassified the MFLCs as independent contractors and as "exempt" from overtime and failed to pay them overtime pay for hours worked over 40 per week. In April 2013, the Court denied MHN's motion to compel arbitration and granted plaintiff's motion for conditional certification of a FLSA collective action. In December 2014, the U.S. Court of Appeals for the Ninth Circuit upheld the district court's determination that the arbitration clause in MHN's employee contract was procedurally and substantively unconscionable. MHN appealed to the United States Supreme Court.

MHN did not contest that its agreement had several unconscionable components; instead, it asked the Supreme Court to sever the unconscionable terms of its arbitration agreement and nonetheless send the MFLCs' claims to arbitration. The Supreme Court granted MHN's petition for certiorari on October 1, 2015, and was scheduled to hear the case in the 2016 spring term in *MHN Gov't Servs., Inc. v. Zaborowski*, No. 14-1458. While the matter was pending before the Supreme Court, an arbitrator approved a class settlement in the matter, which resulted in payment of $7,433,109.19 to class members.

26. ***Sandoval v. Mountain Center, Inc., et al.***, No. 03CC00280 (Cal. Supr. Ct.).  Cable installers in California charged that defendants owed them overtime wages, as well as damages for missed meal and rest breaks and reimbursement for expenses incurred on the job.  In 2005, the Court approved a $7.2 million settlement of the litigation, which was distributed to the cable installers who submitted claims.

27. ***Martin v. Bohemian Club,*** No. SCV-258731(Cal. Supr. Ct.). Lieff Cabraser and co-counsel represented a class of approximately 659 individuals who worked seasonally as camp valets for the Bohemian Club.  Plaintiffs alleged that they had been misclassified as independent contractors, and thus were not paid for overtime or meal-and-rest breaks as required under California law.  The Court granted final approval of a $7 million settlement resolving all claims in September 2016.

28. ***Lewis v. Wells Fargo***, No. 08-cv-2670 CW (N.D. Cal.).  Lieff Cabraser served as Lead Counsel on behalf of approximately 330 I/T workers who alleged that Wells Fargo had a common practice of misclassifying them as exempt and failing to pay them for all overtime hours worked in violation of federal and state overtime pay laws.  In April 2011, the Court granted

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 179 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 49 of 144

collective action certification of the FLSA claims and approved a $6.72 million settlement of the action.

29.     ***Kahn v. Denny's***, No. BC177254 (Cal. Supr. Ct.).  Lieff Cabraser brought a lawsuit alleging that Denny's failed to pay overtime wages to its General Managers and Managers who worked at company-owned restaurants in California.  The Court approved a $4 million settlement of the case in 2000.

30.     ***Wynne v. McCormick & Schmick's Seafood Restaurants***, No. C 06-3153 CW (N.D. Cal.).  In August 2008, the Court granted final approval to a settlement valued at $2.1 million, including substantial injunctive relief, for a class of African American restaurant-level hourly employees.  The consent decree created hiring benchmarks to increase the number of African Americans employed in front of the house jobs (*e.g.*, server, bartender, host/hostess, waiter/waitress, and cocktail server), a registration of interest program to minimize discrimination in promotions, improved complaint procedures, and monitoring and enforcement mechanisms.

31.     ***Sherrill v. Premera Blue Cross***, No. 2:10-cv-00590-TSZ (W.D. Wash.).  In April 2010, a technical worker at Premera Blue Cross filed a lawsuit against Premera seeking overtime pay from its misclassification of technical support workers as exempt.  In June 2011, the Court approved a collective and class action settlement of $1.45 million.

32.     ***Holloway v. Best Buy***, No. C05-5056 PJH (N.D. Cal.).  Lieff Cabraser, with co-counsel, represented a class of current employees of Best Buy that alleged Best Buy stores nationwide discriminated against women, African Americans, and Latinos.  The complaint charged that these employees were assigned to less desirable positions and denied promotions, and that class members who attained managerial positions were paid less than white males.  In November 2011, the Court approved a settlement of the class action in which Best Buy agreed to changes to its personnel policies and procedures that will enhance the equal employment opportunities of the tens of thousands of women, African Americans, and Latinos employed by Best Buy nationwide.

33.     ***Lyon v. TMP Worldwide***, No. 993096 (Cal. Supr. Ct.).  Lieff Cabraser served as Class Counsel for a class of certain non-supervisory employees in an advertising firm.  The settlement, approved in 2000, provided almost a 100% recovery to class members.  The suit alleged that TMP failed to pay overtime wages to these employees.

34.     ***Lusardi v. McHugh, Secretary of the Army***, No. 0120133395 (U.S. EEOC).  Lieff Cabraser and the Transgender Law Center represent Tamara Lusardi, a transgender civilian software specialist employed by

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 180 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 50 of 144

the U.S. Army.  In a groundbreaking decision in April 2015, the Equal
Employment Opportunity Commission reversed a lower agency decision
and held that the employer subjected Lusardi to disparate treatment and
harassment based on sex in violation of Title VII of the Civil Rights Act of
1964 when (1) the employer restricted her from using the common female
restroom (consistent with her gender identity) and (2) a team leader
intentionally and repeatedly referred to her by male pronouns and made
hostile remarks about her transition and gender.

Lieff Cabraser attorneys have had experience representing employees in additional
cases, including cases involving race, gender, sexual orientation, gender identity, and age
discrimination; False Claims Act (whistleblower) claims; breach of contract claims; unpaid
wages or exempt misclassification (wage/hour) claims; pension plan abuses under ERISA; and
other violations of the law.  For example, as described in the Antitrust section of this resume,
Lieff Cabraser served as plaintiffs' Co-Lead Counsel in a class action charging that Adobe
Systems Inc., Apple Inc., Google Inc., and Intel Corporation violated antitrust laws by
conspiring to suppress the wages of certain salaried employees.

Lieff Cabraser is currently investigating charges of discrimination, wage/hour violations,
and wage suppression claims against several companies.  In addition, our attorneys frequently
write amicus briefs on cutting-edge legal issues involving employment law.

In 2015, *The Recorder* named Lieff Cabraser's employment group as a Litigation
Department of the Year in the category of California Labor and Employment Law.  The
Litigation Department of the Year awards recognize "California litigation practices that deliver
standout results on their clients' most critical matters."  *The Recorder* editors consider the
degree of difficulty, dollar value and importance of each matter to the client; the depth and
breadth of the practice; and the use of innovative approaches.

*U.S. News* and Best Lawyers selected Lieff Cabraser as a 2013 national "Law Firm of the
Year" in the category of Employment Law – Individuals.  *U.S. News* and Best Lawyers ranked
firms nationally in 80 different practice areas based on extensive client feedback and
evaluations from 70,000 lawyers nationwide.  Only one law firm in the U.S. in each practice area
receives the "Law Firm of the Year" designation.

*Benchmark Plaintiff*, a guide to the nation's leading plaintiffs' firms, has given Lieff
Cabraser's employment practice group a Tier 1 national ranking, its highest rating.  *The Legal
500* guide to the U.S. legal profession has recognized Lieff Cabraser as having one of the leading
plaintiffs' employment practices in the nation for the past four years.

Kelly M. Dermody chairs the firm's employment practice group and leads the firm's
employment cases.  She also serves as Managing Partner of Lieff Cabraser's San Francisco office.

In 2015, the College of Labor and Employment Lawyers named Ms. Dermody a Fellow.
Nomination to the College is by ones colleagues only, and recognizes those lawyers who have

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 181 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 51 of 144

demonstrated sustained and exceptional services to their clients, bar, bench, and public, and the highest level of character, integrity, professional expertise, and leadership.

*The Daily Journal* has selected Ms. Dermody as one of the top 100 attorneys in California (2012-2015), top 75 labor and employment lawyers in California (2011-2015), and top 100 women litigators in California (2007, 2010, 2012-2016). She has been named a Northern California "Super Lawyer" every year since 2004, including being named a "Top 10 Lawyer" in 2014.

Since 2010, Ms. Dermody has annually been recognized by her peers for inclusion in *The Best Lawyers in America* in the fields of Employment Law – Individuals and Litigation – Labor and Employment. In 2014, she was named "Lawyer of the Year" by Best Lawyers in the category of Employment Law – Individuals in San Francisco. In 2007, *California Lawyer* magazine awarded Ms. Dermody its prestigious California Lawyer Attorney of the Year (CLAY) Award.

In 2019, the American Bar Association honored Ms. Dermody with its Margaret Brent Women Lawyers of Achievement Award, considered to be the highest award for women in the legal profession.

## IV.    Consumer Protection

### A.    Current Cases

1. **In re Arizona Theranos, Inc. Litigation**, No. 2:16-cv-2138-HRH (D. Ariz.). This class action alleges that Walgreens and startup company Theranos Inc. (along with its two top executives) committed fraud and battery by prematurely marketing to consumers blood testing services that were still in-development, not ready-for-market, and dangerously unreliable. Hundreds of thousands of consumers in Arizona and California submitted to these "testing" services and blood draws under false pretenses. Consumers also made major health decisions (including taking actions and medication, and refraining from taking actions and medications) in reliance on these unreliable tests. Plaintiffs allege that Walgreens' and Theranos' conduct violates Arizona and California consumer protection statutes and common law.

2. **Fiat Chrysler Dodge Jeep Ecodiesel Litigation**, 17-MD-02777-EMC. Lieff Cabraser represents owners and lessors of affected Fiat Chrysler vehicles in litigation accusing Fiat Chrysler of using secret software to allow excess emissions in violation of the law for at least 104,000 2014-2016 model year diesel vehicles, including Jeep Grand Cherokees and Dodge Ram 1500 trucks with 3-liter diesel engines sold in the United States from late 2013 through 2016 (model years 2014, 2015, and 2016). In June 2017, Judge Edward M. Chen of the Northern District of California named Elizabeth Cabraser sole Lead Counsel for Plaintiffs and Chair of the Plaintiffs' Steering Committee for consolidated litigation of the case.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 182 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 52 of 144

In May 2019, Judge Chen granted final approval to a $307.5 million settlement of the case, which will provide eligible owners and lessees with substantial cash payments and an extended warranty following the completion of a government-mandated emissions modification to affected vehicles.

Under the agreement between consumers and FCA and Bosch, approximately 100,000 owners and lessees of Ram 1500 and Jeep Grand Cherokee 3.0-liter diesel vehicles from model years 2014 to 2016 are eligible to file claims and receive the settlement's benefits. Most owners will receive $3,075 once the repair – a software reflash – is completed. Current owners and lessees have until February 3, 2021 to submit a claim, and until May 3, 2021 to complete the repair and receive compensation.

3.   ***In Re: General Motors Corp. Air Conditioning Marketing and Sales Practices Litigation***, MDL No. 2818 (E.D. Mich.). Lieff Cabraser serves as Co-Lead Plaintiffs' Counsel in a consumer fraud class action MDL against General Motors Company consolidated in Michigan federal court on behalf of all persons who purchased or leased certain GM vehicles equipped with an allegedly defective air conditioning systems. The lawsuit claims the vehicles have a serious defect that causes the air conditioning systems to crack and leak refrigerant, lose pressure, and fail to function properly to provide cooled air into the vehicles. These failures lead owners and lessees to incur significant costs for repair, often successive repairs as the repaired parts prove defective as well. The complaint lists causes of action for violations of various states' Consumer Protection Acts, fraudulent concealment, breach of warranty, and unjust enrichment, and seeks declaratory and injunctive relief, including an order requiring GM to permanently repair the affected vehicles within a reasonable time period, as well as compensatory, exemplary, and statutory damages.

4.   ***In re Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fl.).  Lieff Cabraser serves on the Plaintiffs' Executive Committee ("PEC") in Multi-District Litigation against 35 banks, including Bank of America, Chase, Citizens, PNC, Union Bank, and U.S. Bank.  The complaints alleged that the banks entered debit card transactions from the "largest to the smallest" to draw down available balances more rapidly and maximize overdraft fees.  In March 2010, the Court denied defendants' motions to dismiss the complaints.  The Court has approved nearly $1 billion in settlements with the banks.

In November 2011, the Court granted final approval to a $410 million settlement of the case against Bank of America.  Lieff Cabraser was the lead plaintiffs' law firm on the PEC that prosecuted the case against Bank of America.  In approving the settlement with Bank of America, U.S.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 183 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 53 of 144

District Court Judge James Lawrence King stated, "This is a marvelous result for the members of the class." Judge King added, "[B]ut for the high level of dedication, ability and massive and incredible hard work by the Class attorneys . . . I do not believe the Class would have ever seen . . . a penny."

In September 2012, the Court granted final approval to a $35 million of the case against Union Bank. In approving the settlement, Judge King again complimented plaintiffs' counsel for their outstanding work and effort in resolving the case: "The description of plaintiffs' counsel, which is a necessary part of the settlement, is, if anything, understated. In my observation of the diligence and professional activity, it's superb. I know of no other class action case anywhere in the country in the last couple of decades that's been handled as efficiently as this one has, which is a tribute to the lawyers."

5. ***Hale, et al. v. State Farm Mut. Auto. Ins. Co., et al.***, Case No. 3:12-cv-00660-DRH-SCW. In 1997, Lieff Cabraser and co-counsel filed a class action in Illinois state court, accusing State Farm of approving the use of lower-quality non-original equipment manufacturer (non-OEM) automotive parts for repairs to the vehicles of more than 4 million State Farm policyholders, contrary to the company's policy language. Plaintiffs won a verdict of more than nearly $1.2 billion that included $600 million in punitive damages. The state appeals court affirmed the judgment, but reduced it slightly to $1.05 billion. State Farm appealed to the Illinois Supreme Court in May 2013.

A two-plus-year delay in that Court's decision led to a vacancy in the Illinois Supreme Court. Plaintiffs alleged that State Farm recruited a little-known trial judge, Judge Lloyd A. Karmeier, to run for the vacant Supreme Court seat, and then managed his campaign behind the scenes, and secretly funded it to the tune of almost $4 million. Then, after Justice Karmeier was elected, State Farm hid its involvement in his campaign to ensure that Justice Karmeier could participate in the pending appeal of the $1.05 billion judgment. State Farm's scheme was successful: Justice Karmeier joined the otherwise "deadlocked" deliberations and voted to decertify the class and overturn the judgment.

In a 2012 lawsuit filed in federal court, Plaintiffs alleged that this secretive scheme to seat a sympathetic justice—and then to lie about it, so as secure that justice's participation in the pending appeal—violated the Racketeer Influenced and Corrupt Organization Act ("RICO"), and deprived Plaintiffs of their interest in the billion-dollar judgment. Judge David R. Herndon certified the class in October 2016, and the Seventh Circuit denied State Farm's petition to appeal the ruling in December 2016 and again in May 2017. On August 21, 2018, Judge David R. Herndon issued

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 184 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 54 of 144

two new Orders favorable to plaintiffs relating to evidence and testimony
to be included in the trial. On September 4, 2018, the day the trial was to
begin, Judge Herndon gave preliminary approval to a $250 million
settlement of the case, and on December 13, 2018, Judge Herndon gave
the settlement final approval.

6. ***Dover v. British Airways***, Case No. 1:12-cv-O5567 (E.D.N.Y.).  Lieff
Cabraser represents participants in British Airways' ("BA") frequent flyer
program, known as the Executive Club, in a breach of contract class action
lawsuit.  BA imposes a very high "fuel surcharge," often in excess of $500,
on Executive Club reward tickets.  Plaintiffs alleged that the "fuel
surcharge" was not based upon the price of fuel, and that it therefore
violated the terms of the contract. The case was heavily litigated for five
years, and settled on the verge of trial for a $42.5 million common fund.
Class members have the choice of a cash refund or additional flyer miles
based on the number of tickets redeemed during the class period. If all
class members claim the miles instead of the cash, the total settlement
value will be up to $63 million. U.S. Magistrate Judge Cheryl Pollak
signed off on the settlement on May 30, 2018: "In light of the court's
experience throughout the course of this litigation — and particularly in
light of the contentiousness of earlier proceedings, the inability of the
parties to settle during previous mediation attempts and the parties'
initial positions when they appeared for the settlement conferences with
the court — the significant benefit that the settlement will provide to class
members is remarkable."

7. ***Telephone Consumer Protection Act Litigation***.  Lieff Cabraser
serves as a leader in nationwide Telephone Consumer Protection Act
("TCPA") class actions challenging abusing and harassing automated
calls.  Based on Lieff Cabraser's experience and expertise in these cases,
Judge Amy J. St. Eve appointed Lieff Cabraser as lead counsel in
consolidated TCPA class actions against State Farm.  ***Smith v. State
Farm Mut. Auto. Ins. Co.***, 301 F.R.D. 284 (N.D. Ill. 2014).  Lieff
Cabraser also maintains leadership roles in ongoing nationwide class
actions against American Express (***Ossola v. American Express Co.,
et al.***, Case No. 1:13-CV-4836 (N.D. Ill)), DirecTV (***Brown v. DirecTV
LLC***, Case No. 2:13-cv-O1170-DMG-E (C.D. Cal.)), National Grid
(***Jenkins v. National Grid USA, et al.***, Case No. 2:15-cv-01219-JS-
GRB (E.D.N.Y.), and several other companies that make automated debt-
collection or telemarketing calls.

8. ***Rushing v. The Walt Disney Company, et al.***, Case No. 3:17-cv-
4419 (N.D. Cal.); ***Rushing v. Viacom, Inc., et al.***, Case No. 3:17-cv-
4492 (N.D. Cal.); ***McDonald, et al. v. Kiloo Aps, et al.***, Case No.
3:17-cv-4344 (N.D. Cal.). Lieff Cabraser represents parents, on behalf of
their children, in federal class action litigation against numerous online

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 185 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 55 of 144

game and app producers including Disney, Viacom, and the makers of the vastly popular Subway Surfers game (Kiloo), over allegations the companies unlawfully collected, used, and disseminated the personal information of children who played the gaming apps on smart phones, tablets, and other mobile device. The actions are proceeding under time-honored laws protecting privacy: a California common law invasion of privacy claim, a California Constitution right of privacy claim, a California unfair competition claim, a New York General Business Law claim, a Massachusetts Unfair and Deceptive Trade Practices claim, and a Massachusetts statutory right to privacy claim.

9.   ***The People of the State of California v. J.C. Penny Corporation, Inc.***, Case No. BC643036 (Los Angeles County Sup. Ct); ***The People of the State of California v. Kohl's Department Stores, Inc.***, Case No. BC643037 (Los Angeles County Sup. Ct); ***The People of the State of California v. Macy's, Inc.***, Case No. BC643040 (Los Angeles County Sup. Ct); ***The People of the State of California v. Sears, Roebuck and Co., et al.***, Case No. BC643039 (Los Angeles County Sup. Ct). Working with the office of the Los Angeles City Attorney, Lieff Cabraser and co-counsel represent the People of California in consumer fraud and false advertising civil enforcement actions against national retailers J.C. Penney, Kohl's, Macy's, and Sears alleging that each of these companies has pervasively used "false reference pricing" schemes — whereby the companies advertise products at a purported "discount" from false "original" or "regular" prices — to mislead customers into believing they are receiving bargains. Because such practices are misleading — and effective — California law prohibits them. The suits seek civil penalties and injunctive relief. The cases are ongoing.

10.  ***Cody v. SoulCycle, Inc.***, Case No. 2:15-cv-06457 (C.D. Cal.). Lieff Cabraser represents consumers in a class action lawsuit alleging that indoor cycling fitness company SoulCycle sells illegally expiring gift certificates. The suit alleges that SoulCycle defrauded customers by forcing them to buy gift certificates with short enrollment windows and keeping the expired certificates' unused balances in violation of the U.S. Electronic Funds Transfer Act and California's Unfair Competition Law, and seeks reinstatement of expired classes or customer reimbursements as well as policy changes. In October of 2017, U.S. District Judge Michael W. Fitzgerald  granted final approval to a settlement of the litigation valued between $6.9 million and $9.2 million that provides significant economic consideration to settlement class members as well as meaningful changes to SoulCycle's business practices.

11.  ***Moore v. Verizon Communications***, No. 09-cv-01823-SBA (N.D. Cal.); ***Nwabueze v. AT&T***, No. 09-cv-1529 SI (N.D. Cal.); ***Terry v. Pacific Bell Telephone Co.***, No. RG 09 488326 (Alameda County Sup.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 186 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 56 of 144

Ct.).  Lieff Cabraser, with co-counsel, represents nationwide classes of landline telephone customers subjected to the deceptive business practice known as "cramming."  In this practice, a telephone company bills customers for unauthorized third-party charges assessed by billing aggregators on behalf of third-party providers.  A U.S. Senate committee has estimated that Verizon, AT&T, and Qwest place 300 million such charges on customer bills each year (amounting to $2 billion in charges), many of which are unauthorized.  Various sources estimate that 90-99% of third-party charges are unauthorized.  Both Courts have granted preliminary approval of settlements that allow customers to receive 100% refunds for all unauthorized charges from 2005 to the present, plus extensive injunctive relief to prevent cramming in the future.  The Nwabueze and Terry cases are ongoing.

12.  ***James v. UMG  Recordings, Inc.***, No. CV-11-1613 (N.D. Cal); ***Zombie v. UMG Recordings, Inc.***, No. CV-11-2431 (N.D. Cal).  Lieff Cabraser and its co-counsel represent music recording artists in a proposed class action against Universal Music Group.  Plaintiffs allege that Universal failed to pay the recording artists full royalty income earned from customers' purchases of digitally downloaded music from vendors such as Apple iTunes.  The complaint alleges that Universal licenses plaintiffs' music to digital download providers, but in its accounting of the royalties plaintiffs have earned, treats such licenses as "records sold" because royalty rate for "records sold" is lower than the royalty rate for licenses.  Plaintiffs legal claims include breach of contract and violation of California unfair competition laws.  In November 2011 the Court denied defendant's motion to dismiss plaintiffs' unfair competition law claims.

13.  ***White v. Experian Information Solutions***, No. 05-CV-1070 DOC (C.D. Cal.).  In 2005, plaintiffs filed nationwide class action lawsuits on behalf of 750,000 claimants against the nation's three largest repositories of consumer credit information, Experian Information Solutions, Inc., Trans Union, LLC, and Equifax Information Services, LLC.  The complaints charged that defendants violated the Fair Credit Reporting Act ("FCRA") by recklessly failing to follow reasonable procedures to ensure the accurate reporting of debts discharged in bankruptcy and by refusing to adequately investigate consumer disputes regarding the status of discharged accounts.  In April 2008, the District Court approved a partial settlement of the action that established an historic injunction.  This settlement required defendants comply with detailed procedures for the retroactive correction and updating of consumers' credit file information concerning discharged debt (affecting one million consumers who had filed for bankruptcy dating back to 2003), as well as new procedures to ensure that debts subject to future discharge orders will be similarly treated.  As noted by the District Court, "Prior to the injunctive relief

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 187 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 57 of 144

order entered in the instant case, however, no verdict or reported decision had ever required Defendants to implement procedures to cross-check data between their furnishers and their public record providers." In 2011, the District Court approved a $45 million settlement of the class claims for monetary relief. In April 2013, the Court of Appeals for the Ninth Circuit reversed the order approving the monetary settlement and remanded the case for further proceedings.

14.    ***Healy v. Chesapeake Appalachia***, No. 1:10cv00023 (W.D. Va.); ***Hale v. CNX Gas***, No. 1:10cv00059 (W.D. Va.); ***Estate of Holman v. Noble Energy***, No. 03 CV 9 (Dist. Ct., Co.); ***Droegemueller v. Petroleum Development Corporation***, No. 07 CV 2508 JLK (D. Co.); ***Anderson v. Merit Energy Co.***, No. 07 CV 00916 LTB (D. Co.); ***Holman v. Petro-Canada Resources (USA)***, No. 07 CV 416 (Dist. Ct., Co.). Lieff Cabraser serves as Co-Lead Counsel in several cases pending in federal court in Virginia, in which plaintiffs allege that certain natural gas companies improperly underpaid gas royalties to the owners of the gas. In one case that recently settled, the plaintiffs recovered approximately 95% of the damages they suffered. Lieff Cabraser also achieved settlements on behalf of natural gas royalty owners in five other class actions outside Virginia. Those settlements -- in which class members recovered between 70% and 100% of their damages, excluding interest -- were valued at more than $160 million.

15.    ***Adkins v. Morgan Stanley***, No. 12 CV 7667 (S.D.N.Y.). Five African-American residents from Detroit, Michigan, joined by Michigan Legal Services, have brought a class action lawsuit against Morgan Stanley for discrimination in violation of the Fair Housing Act and other civil rights laws. The plaintiffs charge that Morgan Stanley actively ensured the proliferation of high-cost mortgage loans with specific risk factors in order to bundle and sell mortgage-backed securities to investors. The lawsuit is the first to seek to hold a bank in the secondary market accountable for the adverse racial impact of such policies and conduct. Plaintiffs seek certification of the case as a class action for as many as 6,000 African-Americans homeowners in the Detroit area who may have suffered similar discrimination. Lieff Cabraser serves as plaintiffs' counsel with the American Civil Liberties Union, the ACLU of Michigan, and the National Consumer Law Center.

16.    ***Marcus A. Roberts et al. v. AT&T Mobility LLC***, No. 3:15-cv-3418 (N.D. Cal.). Lieff Cabraser represents consumers in a proposed class action lawsuit against AT&T claiming that AT&T falsely advertised that its "unlimited" mobile phone plans provide "unlimited" data, while purposefully failing to disclose that it regularly "throttles" (*i.e.*, intentionally slows) customers' data speed once they reach certain data usage thresholds. The lawsuit also challenges AT&T's attempts to force

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 188 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 58 of 144

consumers into non-class arbitration, claiming that AT&T's arbitration clause in its Wireless Customer Agreement violates consumers' fundamental constitutional First Amendment right to petition courts for a redress of grievances.

## B.    Successes

1.    ***In re Volkswagen 'Clean Diesel' Marketing, Sales Practices, and Products Liability Litigation***, MDL No. 2672 (N.D. Cal.). In September of 2015, the U.S. Environmental Protection Agency issued a Notice of Violation to Volkswagen relating to 475,000 diesel-powered cars in the United States sold since 2008 under the VW and Audi brands on which VW installed "cheat device" software that intentionally changed the vehicles' emissions production during official testing. Only when the programming detected that the vehicles were undergoing official emissions testing did the cars turn on their full emission control systems. The controls were turned off during actual road use, producing up to 40x more pollutants than the testing amounts in an extraordinary violation of U.S. clean air laws.

Private vehicle owners, state governments, agencies, and attorneys general, as well as federal agencies, all sought compensation and relief from VW through litigation in U.S. courts. More than 1,000 individual civil cases and numerous accompanying government claims were consolidated in federal court in Northern California, and U.S. District Judge Charles R. Breyer appointed Lieff Cabraser founding partner Elizabeth Cabraser as Lead Counsel and Chair of the 22-member Plaintiffs Steering Committee in February of 2016.

After nine months of intensive negotiation and extraordinary coordination led on the class plaintiffs' side by Elizabeth Cabraser, a set of interrelated settlements totaling $14.7 billion were given final approval by Judge Breyer on October 25, 2016. The settlements offer owners and lessees of Volkswagen and Audi 2.0-liter diesel vehicles substantial compensation through buybacks and lease terminations, government-approved emissions modifications, and cash payments, while fixing or removing these polluting vehicles from the road. On May 11, 2017, a further settlement with a value of at least $1.2 billion relating to VW's 3.0-liter engine vehicles received final approval. This deal offers a combination of a projected emissions modification or buybacks for older 3.0-liter models. If a government-approved modification can't be found, VW will have to buy back all the vehicles, which could increase its costs for the 3.0-liter model settlement to as much as $4 billion.

The consumer class settlements have garnered overwhelming approval and response. Over 380,000 diesel owners have already signed up for the

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 189 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 59 of 144

settlement, most doing so even before final approval was granted by Judge Breyer, who is overseeing all federal "clean diesel" litigation.

The Volkswagen emissions settlement is one of the largest payments in American history and the largest known consumer class settlement. It exemplifies the best of the American judicial system, illustrating the resolution of a significant portion of one of the most massive multidistrict class actions at what *Law360* referred to as "lightning speed." The settlements are unprecedented also for their scope and complexity, involving the Department of Justice, Environmental Protection Agency (EPA), California Air Resources Board (CARB) and California Attorney General, the Federal Trade Commission (FTC) and private plaintiffs.

2.   ***Williamson v. McAfee, Inc.***, No. 14-cv-00158-EJD (N.D. Cal.).  This nationwide class action alleged that McAfee falsely represented the prices of its computer anti-virus software to customers enrolled in its "auto-renewal" program.  Plaintiffs alleged that McAfee: (a) offers *non*-auto-renewal subscriptions at stated "discounts" from a "regular" sales price; however, the stated discounts are false because McAfee does not ever sell subscriptions at the stated "regular" price to *non*-auto-renewal customers; and (b) charges the auto-renewal customers the amount of the false "regular" sales price, claiming it to be the "current" regular price even though it does not sell subscriptions at that price to any other customer.  Plaintiffs alleged that McAfee's false reference price scheme violated California's and New York's unfair competition and false advertising laws.  In 2017, a class settlement was approved that included monetary payments to claimants and practice changes.

3.   ***Hansell v. TracFone Wireless***, No. 13-cv-3440-EMC (N.D. Cal.); ***Blaqmoor v. TracFone Wireless***, No. 13-cv-05295-EMC (N.D. Cal.); ***Gandhi v. TracFone Wireless***, No. 13-cv-05296-EMC (N.D. Cal.).  In January 2015, Michael W. Sobol, the chair of Lieff Cabraser's consumer protection practice group, announced that consumers nationwide who purchased service plans with "unlimited data" from TracFone Wireless, Inc., were eligible to receive payments under a $40 million settlement of a series of class action lawsuits.  One of the nation's largest wireless carriers, TracFone uses the brands Straight Talk, Net10, Telcel America, and Simple Mobile to sell mobile phones with prepaid wireless plans at Walmart and other retail stores nationwide.  The class action alleged that TracFone falsely advertised its wireless mobile phone plans as providing "unlimited data," while actually maintaining monthly data usage limits that were not disclosed to customers.  It further alleged that TracFone regularly throttled (*i.e.* significantly reduces the speed of) or terminated customers' data plans pursuant to the secret limits.  Approved by the Court in July 2015, the settlement permanently enjoins TracFone from making any advertisement or other representation about amount of data

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 190 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 60 of 144

its cell phone plans offer without disclosing clearly and conspicuously all material restrictions on the amount and speed of the data plan. Further, TracFone and its brands may not state in their advertisements and marketing materials that any plan provides "unlimited data" unless there is also clear, prominent, and adjoining disclosure of any applicable throttling caps or limits. The litigation is notable in part because, following two years of litigation by class counsel, the Federal Trade Commission joined the litigation and filed a Consent Order with TracFone in the same federal court where the class action litigation is pending. All compensation to consumers will be provided through the class action settlement.

4.    ***Gutierrez v. Wells Fargo Bank***, No. C 07-05923 WHA (N.D. Cal.). Following a two week bench class action trial, U.S. District Court Judge William Alsup in August 2010 issued a 90-page opinion holding that Wells Fargo violated California law by improperly and illegally assessing overdraft fees on its California customers and ordered $203 million in restitution to the certified class. Instead of posting each transaction chronologically, the evidence presented at trial showed that Wells Fargo deducted the largest charges first, drawing down available balances more rapidly and triggering a higher volume of overdraft fees.

Wells Fargo appealed. In December 2012, the Appellate Court issued an opinion upholding and reversing portions of Judge Alsup's order, and remanded the case to the District Court for further proceedings. In May 2013, Judge Alsup reinstated the $203 million judgment against Wells Fargo and imposed post-judgment interest bringing the total award to nearly $250 million. On October 29, 2014, the Appellate Court affirmed the Judge Alsup's order reinstating the judgment.

For his outstanding work as Lead Trial Counsel and the significance of the case, *California Lawyer* magazine recognized Richard M. Heimann with a California Lawyer Attorney of the Year (CLAY) Award. In addition, the Consumer Attorneys of California selected Mr. Heimann and Michael W. Sobol as Finalists for the Consumer Attorney of the Year Award for their success in the case.

In reviewing counsel's request for attorneys' fees, Judge Alsup stated on May 21, 2015: "Lieff, Cabraser, on the other hand, entered as class counsel and pulled victory from the jaws of defeat. They bravely confronted several obstacles including the possibility of claim preclusion based on a class release entered in state court (by other counsel), federal preemption, hard-fought dispositive motions, and voluminous discovery. They rescued the case [counsel that originally filed] had botched and secured a full recovery of $203 million in restitution plus injunctive relief. Notably, Attorney Richard Heimann's trial performance ranks as

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 191 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 61 of 144

one of the best this judge has seen in sixteen years on the bench. Lieff, Cabraser then twice defended the class on appeal. At oral argument on the present motion, in addition to the cash restitution, Wells Fargo acknowledged that since 2010, its posting practices changed nationwide, in part, because of the injunction. Accordingly, this order allows a multiplier of 5.5 mainly on account of the fine results achieved on behalf of the class, the risk of non-payment they accepted, the superior quality of their efforts, and the delay in payment."

5.  ***Kline v. The Progressive Corporation***, Circuit No. 02-L-6 (Circuit Court of the First Judicial Circuit, Johnson County, Illinois). Lieff Cabraser served as settlement class counsel in a nationwide consumer class action challenging Progressive Corporation's private passenger automobile insurance sales practices. Plaintiffs alleged that the Progressive Corporation wrongfully concealed from class members the availability of lower priced insurance for which they qualified. In 2002, the Court approved a settlement valued at approximately $450 million, which included both cash and equitable relief. The claims program, implemented upon a nationwide mail and publication notice program, was completed in 2003.

6.  ***Catholic Healthcare West Cases***, JCCP No. 4453 (Cal. Supr. Ct.). Plaintiff alleged that Catholic Healthcare West ("CHW") charged uninsured patients excessive fees for treatment and services, at rates far higher than the rates charged to patients with private insurance or on Medicare. In January 2007, the Court approved a settlement that provides discounts, refunds and other benefits for CHW patients valued at $423 million. The settlement requires that CHW lower its charges and end price discrimination against all uninsured patients, maintain generous charity case policies allowing low-income and uninsured patients to receive free or heavily discounted care, and protect uninsured patients from unfair collections practices. Lieff Cabraser served as Lead Counsel in the coordinated action.

7.  ***In re Neurontin Marketing and Sales Practices Litigation***, MDL No. 1629 (D. Mass.). Lieff Cabraser served on the Plaintiffs' Steering Committee in multidistrict litigation arising out of the sale and marketing of the prescription drug Neurontin, manufactured by Parke-Davis, a division of Warner-Lambert Company, which was later acquired by Pfizer, Inc. Lieff Cabraser served as co-counsel to Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals ("Kaiser") in Kaiser's trial against Pfizer in the litigation. On March 25, 2010, a federal court jury determined that Pfizer violated a federal antiracketeering law by promoting its drug Neurontin for unapproved uses and found Pfizer must pay Kaiser damages up to $142 million. At trial, Kaiser presented evidence that Pfizer knowingly marketed Neurontin for unapproved uses

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 192 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 62 of 144

without proof that it was effective. Kaiser said it was misled into believing neuropathic pain, migraines, and bipolar disorder were among the conditions that could be treated effectively with Neurontin, which was approved by the FDA as an adjunctive therapy to treat epilepsy and later for post-herpetic neuralgia, a specific type of neuropathic pain. In November 2010, the Court issued Findings of Fact and Conclusions of Law on Kaiser's claims arising under the California Unfair Competition Law, finding Pfizer liable and ordering that it pay restitution to Kaiser of approximately $95 million. In April 2013, the First Circuit Court of Appeals affirmed both the jury's and the District Court's verdicts. In November 2014, the Court approved a $325 million settlement on behalf of a nationwide class of third party payors.

8.    ***Sutter Health Uninsured Pricing Cases***, JCCP No. 4388 (Cal. Supr. Ct.). Plaintiffs alleged that they and a Class of uninsured patients treated at Sutter hospitals were charged substantially more than patients with private or public insurance, and many times above the cost of providing their treatment. In December 2006, the Court granted final approval to a comprehensive and groundbreaking settlement of the action. As part of the settlement, Class members were entitled to make a claim for refunds or deductions of between 25% to 45% from their prior hospital bills, at an estimated total value of $276 million. For a three year period, Sutter agreed to provide discounted pricing policies for uninsureds. In addition, Sutter agreed to maintain more compassionate collections policies that will protect uninsureds who fall behind in their payments. Lieff Cabraser served as Lead Counsel in the coordinated action.

9.    ***Citigroup Loan Cases***, JCCP No. 4197 (San Francisco Supr. Ct., Cal.). In 2003, the Court approved a settlement that provided approximately $240 million in relief to former Associates' customers across America. Prior to its acquisition in November 2000, Associates First Financial, referred to as The Associates, was one of the nation's largest "subprime" lenders. Lieff Cabraser represented former customers of The Associates charging that the company added unwanted and unnecessary insurance products onto mortgage loans and engaged in improper loan refinancing practices. Lieff Cabraser served as nationwide Plaintiffs' Co-Liaison Counsel.

10.    ***Telephone Consumer Protection Act Litigation***. Lieff Cabraser has spearheaded a series of groundbreaking class actions under the Telephone Consumer Protection Act ("TCPA"), which prohibits abusive telephone practices by lenders and marketers, and places strict limits on the use of autodialers to call or send texts to cell phones. The settlements in these cases have collectively put a stop to millions of harassing calls by debt collectors and others and resulted in the recovery by consumers across America of over $300 million.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 193 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 63 of 144

In 2012, Lieff Cabraser achieved a $24.15 million class settlement with Sallie Mae – the then-largest settlement in the history of the TCPA.  See ***Arthur v. Sallie Mae, Inc.***, No. C10-0198 JLR, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012).  In subsequent cases, Lieff Cabraser and co-counsel eclipsed this record, including a $32,083,905 settlement with Bank of America (***Duke v. Bank of America***, No. 5:12-cv-04009-EJD (N.D. Cal.)), a $39,975,000 settlement with HSBC (***Wilkins v. HSBC Bank Nev., N.A.***, Case No. 14-cv-190 (N.D. Ill.)), and a $75,455,098.74 settlement with Capital One (***In re Capital One Telephone Consumer Protection Act Litigation***, Master Docket No. 1:12-cv-10064 (N.D. Ill.)).  In the ***HSBC*** matter, Judge James F. Holderman commented on "the excellent work" and "professionalism" of Lieff Cabraser and its co-counsel.  As noted above, Lieff Cabraser's class settlements in TCPA cases have collectively resulted in the recovery by consumers of over $300 million.

11.     ***Thompson v. WFS Financial***, No. 3-02-0570 (M.D. Tenn.); ***Pakeman v. American Honda Finance Corporation***, No. 3-02-0490 (M.D. Tenn.); ***Herra v. Toyota Motor Credit Corporation***, No. CGC 03-419 230 (San Francisco Supr. Ct.).  Lieff Cabraser with co-counsel litigated against several of the largest automobile finance companies in the country to compensate victims of—and stop future instances of—racial discrimination in the setting of interest rates in automobile finance contracts.  The litigation led to substantial changes in the way Toyota Motor Credit Corporation ("TMCC"), American Honda Finance Corporation ("American Honda") and WFS Financial, Inc. sell automobile finance contracts, limiting the discrimination that can occur.  In approving the settlement in *Thompson v. WFS Financial*, the Court recognized the "innovative" and "remarkable settlement" achieved on behalf of the nationwide class.  In 2006 in *Herra v. Toyota Motor Credit Corporation*, the Court granted final approval to a nationwide class action settlement on behalf of all African-American and Hispanic customers of TMCC who entered into retail installment contracts that were assigned to TMCC from 1999 to 2006.  The monetary benefit to the class was estimated to be between $159-$174 million.

12.     ***In re John Muir Uninsured Healthcare Cases***, JCCP No. 4494 (Cal. Supr. Ct.).  Lieff Cabraser represented nearly 53,000 uninsured patients who received care at John Muir hospitals and outpatient centers and were charged inflated prices and then subject to overly aggressive collection practices when they failed to pay.  In November 2008, the Court approved a final settlement of the *John Muir* litigation.  John Muir agreed to provide refunds or bill adjustments of 40-50% to uninsured patients who received medical care at John Muir over a six year period, bringing their charges to the level of patients with private insurance, at a value of $115 million.  No claims were required.  Every class member

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 194 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 64 of 144

received a refund or bill adjustment.  Furthermore, John Muir was required to (1) maintain charity care policies to give substantial discounts—up to 100%—to low income, uninsured patients who meet certain income requirements; (2) maintain an Uninsured Patient Discount Policy to give discounts to all uninsured patients, regardless of income, so that they pay rates no greater than those paid by patients with private insurance; (3) enhance communications to uninsured patients so they are better advised about John Muir's pricing discounts, financial assistance, and financial counseling services; and (4) limit the practices for collecting payments from uninsured patients.

13. ***Providian Credit Card Cases***, JCCP No. 4085 (San Francisco Supr. Ct.).  Lieff Cabraser served as Co-Lead Counsel for a certified national Settlement Class of Providian credit cardholders who alleged that Providian had engaged in widespread misconduct by charging cardholders unlawful, excessive interest and late charges, and by promoting and selling to cardholders "add-on products" promising illusory benefits and services.  In November 2001, the Court granted final approval to a $105 million settlement of the case, which also required Providian to implement substantial changes in its business practices.  The $105 million settlement, combined with an earlier settlement by Providian with Federal and state agencies, represents the largest settlement ever by a U.S. credit card company in a consumer protection case.

14. ***In re Chase Bank USA, N.A. "Check Loan" Contract Litigation***, MDL No. 2032 (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Liaison Counsel and on the Plaintiffs' Executive Committee in Multi-District Litigation ("MDL") charging that Chase Bank violated the implied covenant of good faith and fair dealing by unilaterally modifying the terms of fixed rate loans.  The MDL was established in 2009 to coordinate more than two dozen cases that were filed in the wake of the conduct at issue.  The nationwide, certified class consisted of more than 1 million Chase cardholders who, in 2008 and 2009, had their monthly minimum payment requirements unilaterally increased by Chase by more than 150%.  Plaintiffs alleged that Chase made this change, in part, to induce cardholders to give up their promised fixed APRs in order to avoid the unprecedented minimum payment hike.  In November 2012, the Court approved a $100 million settlement of the case.

15. ***In re Synthroid Marketing Litigation***, MDL No. 1182 (N.D. Ill.). Lieff Cabraser served as Co-Lead Counsel for the purchasers of the thyroid medication Synthroid in litigation against Knoll Pharmaceutical, the manufacturer of Synthroid.  The lawsuits charged that Knoll misled physicians and patients into keeping patients on Synthroid despite knowing that less costly, but equally effective drugs, were available.  In

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 195 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 65 of 144

2000, the District Court gave final approval to a $87.4 million settlement with Knoll and its parent company, BASF Corporation, on behalf of a class of all consumers who purchased Synthroid at any time from 1990 to 1999. In 2001, the Court of Appeals upheld the order approving the settlement and remanded the case for further proceedings. 264 F.3d 712 (7th Cir. 2001). The settlement proceeds were distributed in 2003.

16.   ***R.M. Galicia v. Franklin; Franklin v. Scripps Health***, No. IC 859468 (San Diego Supr. Ct., Cal.). Lieff Cabraser served as Lead Class Counsel in a certified class action lawsuit on behalf of 60,750 uninsured patients who alleged that the Scripps Health hospital system imposed excessive fees and charges for medical treatment. The class action originated in July 2006, when uninsured patient Phillip Franklin filed a class action cross-complaint against Scripps Health after Scripps sued Mr. Franklin through a collection agency. Mr. Franklin alleged that he, like all other uninsured patients of Scripps Health, was charged unreasonable and unconscionable rates for his medical treatment. In June 2008, the Court granted final approval to a settlement of the action which includes refunds or discounts of 35% off of medical bills, collectively worth $73 million. The settlement also required Scripps Health to modify its pricing and collections practices by (1) following an Uninsured Patient Discount Policy, which includes automatic discounts from billed charges for Hospital Services; (2) following a Charity Care Policy, which provides uninsured patients who meet certain income tests with discounts on Health Services up to 100% free care, and provides for charity discounts under other special circumstances; (3) informing uninsured patients about the availability and terms of the above financial assistance policies; and (4) restricting certain collections practices and actively monitoring outside collection agents.

17.   ***In re Lawn Mower Engine Horsepower Marketing and Sales Practices Litigation***, MDL No. 1999 (E.D. Wi.). Lieff Cabraser served as co-counsel for consumers who alleged manufacturers of certain gasoline-powered lawn mowers misrepresented, and significantly overstated, the horsepower of the product. As the price for lawn mowers is linked to the horsepower of the engine -- the higher the horsepower, the more expensive the lawn mower -- defendants' alleged misconduct caused consumers to purchase expensive lawn mowers that provided lower horsepower than advertised. In August 2010, the Court approved a $65 million settlement of the action.

18.   ***Strugano v. Nextel Communications***, No. BC 288359 (Los Angeles Supr. Ct). In May 2006, the Los Angeles Superior Court granted final approval to a class action settlement on behalf of all California customers of Nextel from January 1, 1999 through December 31, 2002, for compensation for the harm caused by Nextel's alleged unilateral

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 196 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 66 of 144

(1) addition of a $1.15 monthly service fee and/or (2) change from second-by-second billing to minute-by-minute billing, which caused "overage" charges (i.e., for exceeding their allotted cellular plan minutes). The total benefit conferred by the Settlement directly to Class Members was between approximately $13.5 million and $55.5 million, depending on which benefit Class Members selected.

19.    ***Curry v. Fairbanks Capital Corporation***, No. 03-10895-DPW (D. Mass.). In 2004, the Court approved a $55 million settlement of a class action lawsuit against Fairbanks Capital Corporation arising out of charges against Fairbanks of misconduct in servicing its customers' mortgage loans. The settlement also required substantial changes in Fairbanks' business practices and established a default resolution program to limit the imposition of fees and foreclosure proceedings against Fairbanks' customers. Lieff Cabraser served as nationwide Co-Lead Counsel for the homeowners.

20.    ***Payment Protection Credit Card Litigation***. Lieff Cabraser represented consumers in litigation in federal court against some of the nation's largest credit card issuers, challenging the imposition of charges for so-called "payment protection" or "credit protection" programs. The complaints charged that the credit card companies imposed payment protection without the consent of the consumer and/or deceptively marketed the service, and further that the credit card companies unfairly administered their payment protection programs to the detriment of consumers. In 2012 and 2013, the Courts approved monetary settlements with HSBC ($23.5 million), Bank of America ($20 million), and Discover ($10 million) that also required changes in the marketing and sale of payment protection to consumers.

21.    ***California Title Insurance Industry Litigation***. Lieff Cabraser, in coordination with parallel litigation brought by the Attorney General, reached settlements in 2003 and 2004 with the leading title insurance companies in California, resulting in historic industry-wide changes to the practice of providing escrow services in real estate closings. The settlements brought a total of $50 million in restitution to California consumers, including cash payments. In the lawsuits, plaintiffs alleged, among other things, that the title companies received interest payments on customer escrow funds that were never reimbursed to their customers. The defendant companies include Lawyers' Title, Commonwealth Land Title, Stewart Title of California, First American Title, Fidelity National Title, and Chicago Title.

22.    ***Vytorin/Zetia Marketing, Sales Practices & Products Liability Litigation***, MDL No. 1938 (D. N.J.). Lieff Cabraser served on the Executive Committee of the Plaintiffs' Steering Committee representing

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 197 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 67 of 144

plaintiffs alleging that Merck/Schering-Plough Pharmaceuticals falsely marketed anti-cholesterol drugs Vytorin and Zetia as being more effective than other anti-cholesterol drugs. Plaintiffs further alleged that Merck/Schering-Plough Pharmaceuticals sold Vytorin and Zetia at higher prices than other anti-cholesterol medication when they were no more effective than other drugs. In 2010, the Court approved a $41.5 million settlement for consumers who bought Vytorin or Zetia between November 2002 and February 2010.

23.   ***Morris v. AT&T Wireless Services***, No. C-04-1997-MJP (W.D. Wash.).  Lieff Cabraser served as class counsel for a nationwide settlement class of cell phone customers subjected to an end-of-billing cycle cancellation policy implemented by AT&T Wireless in 2003 and alleged to have breached customers' service agreements.  In May 2006, the New Jersey Superior Court granted final approval to a class settlement that guarantees delivery to the class of $40 million in benefits.  Class members received cash-equivalent calling cards automatically, and had the option of redeeming them for cash.  Lieff Cabraser had been prosecuting the class claims in the Western District of Washington when a settlement in New Jersey state court was announced.  Lieff Cabraser objected to that settlement as inadequate because it would have only provided $1.5 million in benefits without a cash option, and the Court agreed, declining to approve it.  Thereafter, Lieff Cabraser negotiated the new settlement providing $40 million to the class, and the settlement was approved.

24.   ***Berger v. Property I.D. Corporation***, No.  CV 05-5373-GHK (C.D. Cal.).  In January 2009, the Court granted final approval to a $39.4 million settlement with several of the nation's largest real estate brokerages, including companies doing business as Coldwell Banker, Century 21, and ERA Real Estate, and California franchisors for RE/MAX and Prudential California Realty, in an action under the Real Estate Settlement Procedures Act on behalf of California home sellers. Plaintiffs charged that the brokers and Property I.D. Corporation set up straw companies as a way to disguise kickbacks for referring their California clients' natural hazard disclosure report business to Property I.D. (the report is required to sell a home in California). Under the settlement, hundreds of thousands of California home sellers were eligible to receive a full refund of the cost of their report, typically about $100.

25.   ***In re Tri-State Crematory Litigation***, MDL No. 1467 (N.D. Ga.).  In March 2004, Lieff Cabraser delivered opening statements and began testimony in a class action by families whose loved ones were improperly cremated and desecrated by Tri-State Crematory in Noble, Georgia.  The families also asserted claims against the funeral homes that delivered the decedents to Tri-State Crematory for failing to ensure that the crematory

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 198 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 68 of 144

performed cremations in the manner required under the law and by human decency. One week into trial, settlements with the remaining funeral home defendants were reached and brought the settlement total to approximately $37 million. Trial on the class members' claims against the operators of crematory began in August 2004. Soon thereafter, these defendants entered into a $80 million settlement with plaintiffs. As part of the settlement, all buildings on the Tri-State property were razed. The property will remain in a trust so that it will be preserved in peace and dignity as a secluded memorial to those whose remains were mistreated, and to prevent crematory operations or other inappropriate activities from ever taking place there. Earlier in the litigation, the Court granted plaintiffs' motion for class certification in a published order. 215 F.R.D. 660 (2003).

26. ***In re American Family Enterprises***, MDL No. 1235 (D. N.J.). Lieff Cabraser served as Co-Lead Counsel for a nationwide class of persons who received any sweepstakes materials sent under the name "American Family Publishers." The class action lawsuit alleged that defendants deceived consumers into purchasing magazine subscriptions and merchandise in the belief that such purchases were necessary to win an American Family Publishers' sweepstakes prize or enhanced their chances of winning a sweepstakes prize. In September 2000, the Court granted final approval of a $33 million settlement of the class action. In April 2001, over 63,000 class members received refunds averaging over $500 each, representing 92% of their eligible purchases. In addition, American Family Publishers agreed to make significant changes to the way it conducts the sweepstakes.

27. ***Walsh v. Kindred Healthcare Inc.***, No. 3:11-cv-00050 (N.D. Cal.). Lieff Cabraser and co-counsel represented a class of 54,000 current and former residents, and families of residents, of skilled nursing care facilities in a class action against Kindred Healthcare for failing to adequately staff its nursing facilities in California. Since January 1, 2000, skilled nursing facilities in California have been required to provide at least 3.2 hours of direct nursing hours per patient day (NHPPD), which represented the minimum staffing required for patients at skilled nursing facilities.

The complaint alleged a pervasive and intentional failure by Kindred Healthcare to comply with California's required minimum standard for qualified nurse staffing at its facilities. Understaffing is uniformly viewed as one of the primary causes of the inadequate care and often unsafe conditions in skilled nursing facilities. Studies have repeatedly shown a direct correlation between inadequate skilled nursing care and serious health problems, including a greater likelihood of falls, pressure sores, significant weight loss, incontinence, and premature death. The

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 199 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 69 of 144

complaint further charged that Kindred Healthcare collected millions of dollars in payments from residents and their family members, under the false pretense that it was in compliance with California staffing laws and would continue to do so.

In December 2013, the Court approved a $8.25 million settlement which included cash payments to class members and an injunction requiring Kindred Healthcare to consistently utilize staffing practices which would ensure they complied with applicable California law. The injunction, subject to a third party monitor, was valued at between $6 to $20 million.

28. ***Cincotta v. California Emergency Physicians Medical Group***, No. 07359096 (Cal. Supr. Ct.). Lieff Cabraser served as class counsel for nearly 100,000 uninsured patients that alleged they were charged excessive and unfair rates for emergency room service across 55 hospitals throughout California. The settlement, approved on October 31, 2008, provided complete debt elimination, 100% cancellation of the bill, to uninsured patients treated by California Emergency Physicians Medical Group during the 4-year class period. These benefits were valued at $27 million. No claims were required, so all of these bills were cancelled. In addition, the settlement required California Emergency Physicians Medical Group prospectively to (1) maintain certain discount policies for all charity care patients; (2) inform patients of the available discounts by enhanced communications; and (3) limit significantly the type of collections practices available for collecting from charity care patients.

29. ***In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation***, MDL No. 1715. Lieff Cabraser served as Co-Lead Counsel for borrowers who alleged that Ameriquest engaged in a predatory lending scheme based on the sale of loans with illegal and undisclosed fees and terms. In August 2010, the Court approved a $22 million settlement.

30. ***ING Bank Rate Renew Cases***, Case No. 11-154-LPS (D. Del.). Lieff Cabraser represented borrowers in class action lawsuits charging that ING Direct breached its promise to allow them to refinance their mortgages for a flat fee. From October 2005 through April 2009, ING promoted a $500 or $750 flat-rate refinancing fee called "Rate Renew" as a benefit of choosing ING for mortgages over competitors. Beginning in May 2009, however, ING began charging a higher fee of a full monthly mortgage payment for refinancing using "Rate Renew," despite ING's earlier and lower advertised price. As a result, the complaint alleged that many borrowers paid more to refinance their loans using "Rate Renew" than they should have, or were denied the opportunity to refinance their loan even though the borrowers met the terms and conditions of ING's original "Rate Renew" offer. In August 2012, the Court certified a class of consumers in ten states who purchased or retained an ING mortgage from

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 200 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 70 of 144

October 2005 through April 2009.  A second case on behalf of California consumers was filed in December 2012.  In October 2014, the Court approved a $20.35 million nationwide settlement of the litigation.  The settlement provided an average payment of $175 to the nearly 100,000 class members, transmitted to their accounts automatically and without any need to file a claim form.

31.   ***Yarrington v. Solvay Pharmaceuticals***, No. 09-CV-2261 (D. Minn.).  In March 2010, the Court granted final approval to a $16.5 million settlement with Solvay Pharmaceuticals, one of the country's leading pharmaceutical companies.  Lieff Cabraser served as Co-Lead Counsel, representing a class of persons who purchased Estratest—a hormone replacement drug.  The class action lawsuit alleged that Solvay deceptively marketed and advertised Estratest as an FDA-approved drug when in fact Estratest was not FDA-approved for any use.  Under the settlement, consumers obtained partial refunds for up to 30% of the purchase price paid of Estratest.  In addition, $8.9 million of the settlement was allocated to fund programs and activities devoted to promoting women's health and well-being at health organizations, medical schools, and charities throughout the nation.

32.   ***Reverse Mortgage Cases***, JCCP No. 4061 (San Mateo County Supr. Ct., Cal.).  Transamerica Corporation, through its subsidiary Transamerica Homefirst, Inc., sold "reverse mortgages" marketed under the trade name "Lifetime."  The Lifetime reverse mortgages were sold exclusively to seniors, *i.e.*, persons 65 years or older.  Lieff Cabraser, with co-counsel, filed suit on behalf of seniors alleging that the terms of the reverse mortgages were unfair, and that borrowers were misled as to the loan terms, including the existence and amount of certain charges and fees.  In 2003, the Court granted final approval to an $8 million settlement of the action.

33.   ***Brazil v. Dell***, No. C-07-01700 RMW (N.D. Cal.).  Lieff Cabraser served as Class Counsel representing a certified class of online consumers in California who purchased certain Dell computers based on the advertisement of an instant-off (or "slash-through") discount.  The complaint challenged Dell's pervasive use of "slash-through" reference prices in its online marketing.  Plaintiffs alleged that these "slash-through" reference prices were interpreted by consumers as representing Dell's former or regular sales prices, and that such reference prices (and corresponding representations of "savings") were false because Dell rarely, if ever, sold its products at such prices.  In October 2011, the Court approved a settlement that provided a $50 payment to each class member who submitted a timely and valid claim.  In addition, in response to the lawsuit, Dell changed its methodology for consumer online advertising, eliminating the use of "slash-through" references prices.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 201 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 71 of 144

34. ***Hepting v. AT&T Corp.***, Case No. C-06-0672-VRW (N.D.
Cal.).  Plaintiffs alleged that AT&T collaborated with the National Security
Agency in a massive warrantless surveillance program that illegally
tracked the domestic and foreign communications and communications
records of millions of Americans in violation of the U.S. Constitution,
Electronic Communications Privacy Act, and other statutes.  The case was
filed on January 2006.  The U.S. government quickly intervened and
sought dismissal of the case.  By the Spring of 2006, over 50 other
lawsuits were filed against various telecommunications companies, in
response to a *USA Today* article confirming the surveillance of
communications and communications records.  The cases were combined
into a multi-district litigation proceeding entitled *In re National Security
Agency Telecommunications Record Litigation*, MDL No. 06-1791.  In
June of 2006, the District Court rejected both the government's attempt
to dismiss the case on the grounds of the state secret privilege and AT&T's
arguments in favor of dismissal.  The government and AT&T appealed the
decision and the U.S. Court of Appeals for the Ninth Circuit heard
argument one year later.  No decision was issued.  In July 2008, Congress
granted the government and AT&T "retroactive immunity" for liability for
their wiretapping program under amendments to the Foreign Intelligence
Surveillance Act that were drafted in response to this litigation.  Signed
into law by President Bush in 2008, the amendments effectively
terminated the litigation.  Lieff Cabraser played a leading role in the
litigation working closely with co-counsel from the Electronic Frontier
Foundation.

35. ***In Re Apple and AT&T iPad Unlimited Data Plan Litigation***, No.
5:10-cv-02553 RMW (N.D. Ca.).  Lieff Cabraser served as class counsel in
an action against Apple and AT&T charging that Apple and AT&T
misrepresented that consumers purchasing an iPad with 3G capability
could choose an unlimited data plan for a fixed monthly rate and switch in
and out of the unlimited plan on a monthly basis as they wished.  Less
than six weeks after its introduction to the U.S. market, AT&T and Apple
discontinued their unlimited data plan for any iPad 3G customers not
currently enrolled and prohibited current unlimited data plan customers
from switching back and forth from a less expensive, limited data plan.  In
March 2014, Apple agreed to compensate all class members $40 and
approximately 60,000 claims were paid.  In addition, sub-class members
who had not yet entered into an agreement with AT&T were offered a data
plan.

## V.   Economic Injury Product Defects

### A.   Current Cases

1. ***Front-Loading Washer Products Liability Litigation***.  Lieff
Cabraser represents consumers in multiple states who have filed separate

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 202 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 72 of 144

class action lawsuits against Whirlpool, Sears and LG Corporations. The complaints charge that certain front-loading automatic washers manufactured by these companies are defectively designed and that the design defects create foul odors from mold and mildew that permeate washing machines and customers' homes. Many class members have spent money for repairs and on other purported remedies. As the complaints allege, none of these remedies eliminates the problem.

2. ***In Re General Motors LLC Ignition Switch Litigation***, MDL No. 2543 (S.D. N.Y.). Lieff Cabraser represents proposed nationwide classes of GM vehicle owners and lessees whose cars include defective ignition switches in litigation focusing on economic loss claims. On August 15, 2014, U.S. District Court Judge Jesse M. Furman appointed Elizabeth J. Cabraser as Co-Lead Plaintiffs' Counsel in the litigation, which seeks compensation on behalf of consumers who purchased or leased GM vehicles containing a defective ignition switch, over 500,000 of which have now been recalled. The consumer complaints allege that the ignition switches in these vehicles share a common, uniform, and defective design. As a result, these cars are of a lesser quality than GM represented, and class members overpaid for the cars. Further, GM's public disclosure of the ignition switch defect has caused the value of these cars to materially diminish. The complaints seek monetary relief for the diminished value of the class members' cars.

3. ***Honda Window Defective Window Litigation***. Case No. 2:21-cv-01142-SVW-PLA (C.D. CA). Lieff Cabraser represents consumers in a class action lawsuit filed against Honda Motor Company, Inc. for manufacturing and selling vehicles with allegedly defective window regulator mechanisms. Windows in these vehicles allegedly can, without warning, drop into the door frame and break or become permanently stuck in the fully-open position.

The experience of one Honda Element owner, as set forth in the complaint, exemplifies the problem: The driver's side window in his vehicle slid down suddenly while he was driving on a smooth road. A few months later, the window on the passenger side of the vehicle also slid down into the door and would not move back up. The owner incurred more than $300 in repair costs, which Honda refused to pay for. Discovery in the action is ongoing.

4. ***Moore, et al. v. Samsung Electronics America and Samsung Electronics Co., Ltd.***, Case No. 2:16-cv-4966 (D.N.J.). Lieff Cabraser represents consumers in federal court in New Jersey in cases focusing on complaints about Samsung top-loading washing machines that explode in the home, causing damage to walls, doors, and other equipment and presenting significant injury risks. Owners report Samsung top-load

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 203 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 73 of 144

washers exploding as early as the day of installation, while others have seen their machines explode months or even more than a year after purchase. The lawsuit seeks injunctive relief as well as remedial and restitutionary actions and damages.

5. ***In re Chinese-Manufactured Drywall Products Liability Litigation***, No. 10-30568 (E.D. La.).  Lieff Cabraser with co-counsel represents a proposed class of builders who suffered economic losses as a result of the presence of Chinese-manufactured drywall in homes and other buildings they constructed.  From 2005 to 2008, hundreds-of-millions of square feet of gypsum wallboard manufactured in China were exported to the U.S., primarily to the Gulf Coast states, and installed in newly-constructed and reconstructed properties. After installation of this drywall, owners and occupants of the properties began noticing unusual odors, blackening of silver and copper items and components, and the failure of appliances, including microwaves, refrigerators, and air-conditioning units. Some residents of the affected homes also experienced health problems, such as skin and eye irritation, respiratory issues, and headaches.

Lieff Cabraser's client, Mitchell Company, Inc., was the first to perfect service on Chinese defendant Taishan Gypsum Co. Ltd. ("TG"), and thereafter secured a default judgment against TG.  Lieff Cabraser participated in briefing that led to the District Court's denial of TG's motion to dismiss the class action complaint for lack of personal jurisdiction.  On May 21, 2014, the U.S. Court of Appeals for the Fifth Court affirmed the District Court's default judgment against TG, finding jurisdiction based on ties of the company and its agent with state distributors.  753 F.3d 521 (5th Cir. 2014).

## B.     Successes

1. ***In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation***, Case No. 1:14-cv-10318 (N.D. Ill.). On January 3, 2020, Judge Joan B. Gottschall of the United States District Court for the Northern District of Illinois issued an Order granting final approval to the proposed $135m settlement of multidistrict litigation brought by Lieff Cabraser and co-counsel on behalf of plaintiff truck owners and lessees alleging that Navistar, Inc. and Navistar International, Inc. sold or leased 2011-2014 model year vehicles equipped with certain MaxxForce 11- or 13-liter diesel engines equipped with a defective EGR emissions system. Judge Gottschall ruled that the proposed class action settlement which had been submitted to the Court on May 28, 2019, was fair, reasonable, and adequate in addressing plaintiffs' claims. Owners and lessees of the affected trucks have until May 11, 2020 to file their settlement claims at the official website.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 204 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 74 of 144

The $135 million settlement provides class members with up to $2,500 per truck or up to $10,000 rebate off a new truck depending on months of ownership or lease, or the option to seek up to $15,000 per truck in out-of-pocket damages caused by the alleged defect.

1. ***Allagas v. BP Solar***, No. 3:14-cv-00560-SI (N.D. Cal.). Lieff Cabraser and co-counsel represented California consumers in a class action lawsuit against BP Solar and Home Depot charging the companies sold solar panels with defective junction boxes that caused premature failures and fire risks. In January 2017, Judge Susan Illston granted final approval to a consumer settlement valued at more than $67 million that extends relief to a nationwide class as well as eliminating the serious fire risks.

2. ***In re Mercedes-Benz Tele-Aid Contract Litigation***, MDL No. 1914 (D. N.J.). Lieff Cabraser represented owners and lessees of Mercedes-Benz cars and SUVs equipped with the Tele-Aid system, an emergency response system which links subscribers to road-side assistance operators by using a combination of global positioning and cellular technology. In 2002, the Federal Communications Commission issued a rule, effective 2008, eliminating the requirement that wireless phone carriers provide analog-based networks. The Tele-Aid system offered by Mercedes-Benz relied on analog signals. Plaintiffs charged that Mercedes-Benz committed fraud in promoting and selling the Tele-Aid system without disclosing to buyers of certain model years that the Tele-Aid system as installed would become obsolete in 2008.

   In an April 2009 published order, the Court certified a nationwide class of all persons or entities in the U.S. who purchased or leased a Mercedes-Benz vehicle equipped with an analog-only Tele Aid system after August 8, 2002, and (1) subscribed to Tele Aid service until being informed that such service would be discontinued at the end of 2007, or (2) purchased an upgrade to digital equipment. In September 2011, the Court approved a settlement that provided class members between a $650 check or a $750 to $1,300 certificate toward the purchase or lease of new Mercedes-Benz vehicle, depending upon whether or not they paid for an upgrade of the analog Tele Aid system and whether they still owned their vehicle. In approving the settlement, U.S. District Court Judge Dickinson R. Debevoise stated, "I want to thank counsel for the . . . very effective and good work . . . . It was carried out with vigor, integrity and aggressiveness with never going beyond the maxims of the Court."

3. ***McLennan v. LG Electronics USA***, No. 2:10-cv-03604 (D. N.J.). Lieff Cabraser represented consumers who alleged several LG refrigerator models had a faulty design that caused the interior lights to remain on even when the refrigerator doors were closed (identified as the "light issue"), resulting in overheating and food spoilage. In March 2012,

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 205 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 75 of 144

the Court granted final approval to a settlement of the nationwide class action lawsuit. The settlement provides that LG reimburse class members for all out-of-pocket costs (parts and labor) to repair the light issue prior to the mailing of the class notice and extends the warranty with respect to the light issue for 10 years from the date of the original retail purchase of the refrigerator. The extended warranty covers in-home refrigerator repair performed by LG and, in some cases, the cost of a replacement refrigerator. In approving the settlement, U.S. District Court Judge William J. Martini stated, "The Settlement in this case provides for both the complete reimbursement of out-of-pocket expenses for repairs fixing the Light Issue, as well as a warranty for ten years from the date of refrigerator purchase. It would be hard to imagine a better recovery for the Class had the litigation gone to trial. Because Class members will essentially receive all of the relief to which they would have been entitled after a successful trial, this factor weighs heavily in favor of settlement."

4.    ***Grays Harbor Adventist Christian School v. Carrier Corporation***, No. 05-05437 (W.D. Wash.). In April 2008, the Court approved a nationwide settlement for current and past owners of high-efficiency furnaces manufactured and sold by Carrier Corporation and equipped with polypropylene-laminated condensing heat exchangers ("CHXs"). Carrier sold the furnaces under the Carrier, Bryant, Day & Night and Payne brand-names. Plaintiffs alleged that starting in 1989 Carrier began manufacturing and selling high efficiency condensing furnaces manufactured with a secondary CHX made of inferior materials. Plaintiffs alleged that as a result, the CHXs, which Carrier warranted and consumers expected to last for 20 years, failed prematurely. The settlement provides an enhanced 20-year warranty of free service and free parts for consumers whose furnaces have not yet failed. The settlement also offers a cash reimbursement for consumers who already paid to repair or replace the CHX in their high-efficiency Carrier furnaces.

An estimated three million or more consumers in the U.S. and Canada purchased the furnaces covered under the settlement. Plaintiffs valued the settlement to consumers at over $300 million based upon the combined value of the cash reimbursement and the estimated cost of an enhanced warranty of this nature.

5.    ***Carideo v. Dell***, No. C06-1772 JLR (W.D. Wash.). Lieff Cabraser represented consumers who owned Dell Inspiron notebook computer model numbers 1150, 5100, or 5160. The class action lawsuit complaint charged that the notebooks suffered premature failure of their cooling system, power supply system, and/or motherboards. In December 2010, the Court approved a settlement which provided class members that paid Dell for certain repairs to their Inspiron notebook computer a reimbursement of all or a portion of the cost of the repairs.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 206 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 76 of 144

6. ***Cartwright v. Viking Industries***, No. 2:07-cv-2159 FCD (E.D. Cal.) Lieff Cabraser represented California homeowners in a class action lawsuit which alleged that over one million Series 3000 windows produced and distributed by Viking between 1989 and 1999 were defective. The plaintiffs charged that the windows were not watertight and allowed for water to penetrate the surrounding sheetrock, drywall, paint or wallpaper. Under the terms of a settlement approved by the Court in August 2010, all class members who submitted valid claims were entitled to receive as much as $500 per affected property.

7. ***Pelletz v. Advanced Environmental Recycling Technologies*** (W.D. Wash.). Lieff Cabraser served as Co-Lead Counsel in a case alleging that ChoiceDek decking materials, manufactured by AERT, developed persistent and untreatable mold spotting throughout their surface. In a published opinion in January 2009, the Court approved a settlement that provided affected consumers with free and discounted deck treatments, mold inhibitor applications, and product replacement and reimbursement.

8. ***Create-A-Card v. Intuit***, No. C07-6452 WHA (N.D. Cal.). Lieff Cabraser, with co-counsel, represented business users of QuickBooks Pro for accounting that lost their QuickBooks data and other files due to faulty software code sent by Intuit, the producer of QuickBooks. In September 2009, the Court granted final approval to a settlement that provided all class members who filed a valid claim with a free software upgrade and compensation for certain data-recovery costs. Commenting on the settlement and the work of Lieff Cabraser on September 17, 2009, U.S. District Court Judge William H. Alsup stated, "I want to come back to something that I observed in this case firsthand for a long time now. I think you've done an excellent job in the case as class counsel and the class has been well represented having you and your firm in the case."

9. ***Weekend Warrior Trailer Cases***, JCCP No. 4455 (Cal. Supr. Ct.). Lieff Cabraser, with co-counsel, represented owners of Weekend Warrior trailers manufactured between 1998 and 2006 that were equipped with frames manufactured, assembled, or supplied by Zieman Manufacturing Company. The trailers, commonly referred to as "toy haulers," were used to transport outdoor recreational equipment such as motorcycles and all-terrain vehicles. Plaintiffs charged that Weekend Warrior and Zieman knew of design and performance problems, including bent frames, detached siding, and warped forward cargo areas, with the trailers, and concealed the defects from consumers. In February 2008, the Court approved a $5.5 million settlement of the action that provided for the repair and/or reimbursement of the trailers. In approving the settlement, California Superior Court Judge Thierry P. Colaw stated that class counsel

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 207 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 77 of 144

were "some of the best" and "there was an overwhelming positive reaction to the settlement" among class members.

10.    ***Lundell v. Dell***, No. C05-03970 (N.D. Cal.).  Lieff Cabraser served as Lead Class Counsel for consumers who experienced power problems with the Dell Inspiron 5150 notebook.  In December 2006, the Court granted final approval to a settlement of the class action which extended the one-year limited warranty on the notebook for a set of repairs related to the power system.  In addition, class members that paid Dell or a third party for repair of the power system of their notebook were entitled to a 100% cash refund from Dell.

11.    ***Kan v. Toshiba American Information Systems***, No. BC327273 (Los Angeles Super. Ct.).  Lieff Cabraser served as Co-Lead Counsel for a class of all end-user persons or entities who purchased or otherwise acquired in the United States, for their own use and not for resale, a new Toshiba Satellite Pro 6100 Series notebook.  Consumers alleged a series of defects were present in the notebook.  In 2006, the Court approved a settlement that extended the warranty for all Satellite Pro 6100 notebooks, provided cash compensation for certain repairs, and reimbursed class members for certain out-of-warranty repair expenses.

12.    ***Foothill/DeAnza Community College District v. Northwest Pipe Company***, No. C-00-20749 (N.D. Cal.).  In June 2004, the Court approved the creation of a settlement fund of up to $14.5 million for property owners nationwide with Poz-Lok fire sprinkler piping that fails.  Since 1990, Poz-Lok pipes and pipe fittings were sold in the U.S. as part of fire suppression systems for use in residential and commercial buildings.  After leaks in Poz-Lok pipes caused damage to its DeAnza Campus Center building, Foothill/DeAnza Community College District in California retained Lieff Cabraser to file a class action lawsuit against the manufacturers of Poz-Lok.  The college district charged that Poz-Lok pipe had manufacturing and design defects that resulted in the premature corrosion and failure of the product.  Under the settlement, owners whose Poz-Lok pipes are leaking today, or over the next 15 years, may file a claim for compensation.

13.    ***Toshiba Laptop Screen Flicker Settlement***.  Lieff Cabraser negotiated a settlement with Toshiba America Information Systems, Inc. ("TAIS") to provide relief for owners of certain Toshiba Satellite 1800 Series, Satellite Pro 4600 and Tecra 8100 personal notebook computers whose screens flickered, dimmed or went blank due to an issue with the FL Inverter Board component.  In 2004 under the terms of the Settlement, owners of affected computers who paid to have the FL Inverter issue repaired by either TAIS or an authorized TAIS service provider recovered the cost of that repair, up to $300 for the Satellite

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 208 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 78 of 144

1800 Series and the Satellite Pro 4600 personal computers, or $400 for the Tecra 8100 personal computers. TAIS also agreed to extend the affected computers' warranties for the FL Inverter issue by 18 months.

14. ***McManus v. Fleetwood Enterprises, Inc.***, No. SA-99-CA-464-FB (W.D. Tex.). Lieff Cabraser served as Class Counsel on behalf of original owners of 1994-2000 model year Fleetwood Class A and Class C motor homes. In 2003, the Court approved a settlement that resolved lawsuits pending in Texas and California about braking while towing with 1994 Fleetwood Class A and Class C motor homes. The lawsuits alleged that Fleetwood misrepresented the towing capabilities of new motor homes it sold, and claimed that Fleetwood should have told buyers that a supplemental braking system is needed to stop safely while towing heavy items, such as a vehicle or trailer. The settlement paid $250 to people who bought a supplemental braking system for Fleetwood motor homes that they bought new. Earlier, the appellate court found that common questions predominated under purchasers' breach of implied warranty of merchantability claim. 320 F.3d 545 (5th Cir. 2003).

15. ***Richison v. American Cemwood Corp.***, No. 005532 (San Joaquin Supr. Ct., Cal.). Lieff Cabraser served as Co-Lead Class Counsel for an estimated nationwide class of 30,000 owners of homes and other structures on which defective Cemwood Shakes were installed. In November 2003, the Court granted final approval to a $75 million Phase 2 settlement in the American Cemwood roofing shakes national class action litigation. This amount was in addition to a $65 million partial settlement approved by the Court in May 2000, and brought the litigation to a conclusion.

16. ***ABS Pipe Litigation***, JCCP No. 3126 (Contra Costa County Supr. Ct., Cal.). Lieff Cabraser served as Lead Class Counsel on behalf of property owners whose ABS plumbing pipe was allegedly defective and caused property damage by leaking. Six separate class actions were filed in California against five different ABS pipe manufacturers, numerous developers of homes containing the ABS pipe, as well as the resin supplier and the entity charged with ensuring the integrity of the product. Between 1998 and 2001, Lieff Cabraser achieved 12 separate settlements in the class actions and related individual lawsuits for approximately $78 million.

Commenting on the work of Lieff Cabraser and co-counsel in the case, California Superior Court (now appellate) Judge Mark B. Simons stated on May 14, 1998: "The attorneys who were involved in the resolution of the case certainly entered the case with impressive reputations and did nothing in the course of their work on this case to diminish these

09-50026-mg Doc 14696-2 Filed 03/27/20 Entered 03/27/20 21:11:57 Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers Pg 209 of 281

Case 1:14-md-02543-JMF Document 7819-1 Filed 03/27/20 Page 79 of 144

reputations, but underlined, in my opinion, how well deserved those reputations are."

17. ***Williams v. Weyerhaeuser***, No. 995787 (San Francisco Supr. Ct.). Lieff Cabraser served as Class Counsel on behalf of a nationwide class of hundreds of thousands or millions of owners of homes and other structures with defective Weyerhaeuser hardboard siding. A California-wide class was certified for all purposes in February 1999, and withstood writ review by both the California Court of Appeals and Supreme Court of California. In 2000, the Court granted final approval to a nationwide settlement of the case which provides class members with compensation for their damaged siding, based on the cost of replacing or, in some instances, repairing, damaged siding. The settlement has no cap, and requires Weyerhaeuser to pay all timely, qualified claims over a nine year period.

18. ***Naef v. Masonite***, No. CV-94-4033 (Mobile County Circuit Ct., Ala.). Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide Class of an estimated 4 million homeowners with allegedly defective hardboard siding manufactured and sold by Masonite Corporation, a subsidiary of International Paper, installed on their homes. The Court certified the class in November 1995, and the Alabama Supreme Court twice denied extraordinary writs seeking to decertify the Class, including in *Ex Parte Masonite*, 681 So. 2d 1068 (Ala. 1996). A month-long jury trial in 1996 established the factual predicate that Masonite hardboard siding was defective under the laws of most states. The case settled on the eve of a second class-wide trial, and in 1998, the Court approved a settlement. Under a claims program established by the settlement that ran through 2008, class members with failing Masonite hardboard siding installed and incorporated in their property between January 1, 1980 and January 15, 1998 were entitled to make claims, have their homes evaluated by independent inspectors, and receive cash payments for damaged siding. Combined with settlements involving other alleged defective home building products sold by Masonite, the total cash paid to homeowners exceeded $1 billion.

19. ***In re General Motors Corp. Pick-Up Fuel Tank Products Liability Litigation***, MDL No. 961 (E.D. Pa.). Lieff Cabraser served as Court-appointed Co-Lead Counsel representing a class of 4.7 million plaintiffs who owned 1973-1987 GM C/K pickup trucks with allegedly defective gas tanks. The Consolidated Complaint asserted claims under the Lanham Act, the Magnuson-Moss Act, state consumer protection statutes, and common law. In 1995, the Third Circuit vacated the District Court settlement approval order and remanded the matter to the District Court for further proceedings. In July 1996, a new nationwide class action was certified for purposes of an enhanced settlement program

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 210 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 80 of 144

valued at a minimum of $600 million, plus funding for independent fuel system safety research projects.  The Court granted final approval of the settlement in November 1996.

20.     ***In re Louisiana-Pacific Inner-Seal Siding Litigation***, No. C-95-879-JO (D. Ore.).  Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide class of homeowners with defective exterior siding on their homes.  Plaintiffs asserted claims for breach of warranty, fraud, negligence, and violation of consumer protection statutes.  In 1996, U.S. District Judge Robert E. Jones entered an Order, Final Judgment and Decree granting final approval to a nationwide settlement requiring Louisiana-Pacific to provide funding up to $475 million to pay for inspection of homes and repair and replacement of failing siding over the next seven years.

21.     ***In re Intel Pentium Processor Litigation***, No. CV 745729 (Santa Clara Supr. Ct., Cal.).  Lieff Cabraser served as one of two Court-appointed Co-Lead Class Counsel, and negotiated a settlement, approved by the Court in June 1995, involving both injunctive relief and damages having an economic value of approximately $1 billion.

22.     ***Cox v. Shell***, No. 18,844 (Obion County Chancery Ct., Tenn.).  Lieff Cabraser served as Class Counsel on behalf of a nationwide class of approximately 6 million owners of property equipped with defective polybutylene plumbing systems and yard service lines.  In November 1995, the Court approved a settlement involving an initial commitment by Defendants of $950 million in compensation for past and future expenses incurred as a result of pipe leaks, and to provide replacement pipes to eligible claimants.  The deadline for filing claims expired in 2009.

23.     ***Hanlon v. Chrysler Corp.***, No. C-95-2010-CAL (N.D. Cal.).  In 1995, the District Court approved a $200+ million settlement enforcing Chrysler's comprehensive minivan rear latch replacement program, and to correct alleged safety problems with Chrysler's pre-1995 designs.  As part of the settlement, Chrysler agreed to replace the rear latches with redesigned latches.  The settlement was affirmed on appeal by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998).

24.     ***Gross v. Mobil***, No. C 95-1237-SI (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Class Counsel in this nationwide class action involving an estimated 2,500 aircraft engine owners whose engines were affected by Mobil AV-1, an aircraft engine oil.  Plaintiffs alleged claims for strict liability, negligence, misrepresentation, violation of consumer protection statutes, and for injunctive relief.  Plaintiffs obtained a preliminary injunction requiring Defendant Mobil Corporation to provide notice to all potential class members of the risks associated with past use of Defendants' aircraft engine oil.  In addition, Plaintiffs negotiated a proposed Settlement,

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 211 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 81 of 144

granted final approval by the Court in November 1995, valued at over $12.5 million, under which all Class Members were eligible to participate in an engine inspection and repair program, and receive compensation for past repairs and for the loss of use of their aircraft associated with damage caused by Mobil AV-1.

## VI.    Antitrust/Trade Regulation/Intellectual Property

### A.    Current Cases

1.    ***In Re: Railway Industry Employee No-Poach Antitrust Litigation***, MDL No. 2850 (W.D. Pa.). In late 2018, Lieff Cabraser was selected as Co-Lead Counsel for plaintiffs in the consolidated "no-poach" employee antitrust litigation against rail equipment companies Knorr-Bremse and Wabtec, the world's dominant rail equipment suppliers.  The complaint charged that the companies entered into unlawful agreements with one another not to compete for each other's employees.  Plaintiffs alleged that these agreements spanned several years, were monitored and enforced by Defendants' senior executives, and achieved their desired goal of suppressing employee compensation and mobility below competitive levels. Plaintiffs' vigorous prosecution of the case led to settlements with both defendants, and the motion for preliminary approval of the settlements will be filed on February 24, 2020. The details of the settlement will be available at that time.

2.    ***In re California Bail Bond Antitrust Litig.***, **3:19-cv-00717-JST (N.D. Cal.)**. Lieff Cabraser serves as Interim lead Class Counsel for a proposed class of purchasers of bail bonds in California.  This first-of-its-kind case alleges a conspiracy among sureties and bail agents to inflate bail bond prices.

3.    ***Charles Schwab Bank, N.A. v. Bank of America Corp.***, MDL No. 2262 (N.D. Cal.).  Lieff Cabraser serves as counsel for The Charles Schwab Corporation and several of The Charles Schwab Family of Funds and the Bay Area Toll Authority ("BATA") in individual lawsuits against Bank of America Corporation, Credit Suisse Group AG, J.P. Morgan Chase & Co., Citibank, Inc., and additional banks for allegedly manipulating the London Interbank Offered Rate ("LIBOR").

The complaints allege that beginning in 2007, the defendants conspired to understate their true costs of borrowing, causing the calculation of LIBOR to be set artificially low.  As a result, Schwab, the Schwab Fund Series, and BATA received less than their rightful rates of return on their LIBOR-based investments.  The complaints assert claims under federal and state law, including the Sherman Act and the statutory and common law of California.  The cases are pending.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 212 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 82 of 144

4.    ***In Re: Generic Pharmaceuticals Pricing Antitrust Litigation***,
MDL No. 2724 (E.D. Pa.). Beginning in February 2015, Lieff Cabraser
conducted an extensive investigation into dramatic price increases of
certain generic prescription drugs. Lieff Cabraser worked alongside
economists and industry experts and interviewed industry participants to
evaluate possible misconduct.

In December of 2016, Lieff Cabraser, with co-counsel, filed the first case
alleging price-fixing of Levothyroxine, the primary treatment for
hypothyroidism, among the most widely prescribed drugs in the world.
Lieff Cabraser also played a significant role in similar litigation over the
drug Propranolol, and the drug Clomipramine.  These cases, and other
similar cases, were consolidated and transferred to the Eastern District of
Pennsylvania as *In Re: Generic Pharmaceuticals Pricing Antitrust
Litigation*, MDL No. 2724. Lieff Cabraser is a member of the End-Payer
Plaintiffs' Steering Committee.

5.    ***In re Lithium-Ion Batteries Antitrust Litigation***, MDL No. 2420
(N.D. Cal.). Lieff Cabraser serves as Interim Co-Lead Indirect Purchaser
Counsel representing consumers in a class action filed against LG, GS
Yuasa, NEC, Sony, Sanyo, Panasonic, Hitachi, LG Chem, Samsung,
Toshiba, and Sanyo for allegedly conspiring from 2002 to 2011 to fix and
raise the prices of lithium-ion rechargeable batteries.  The defendants are
the world's leading manufacturers of lithium-ion rechargeable batteries,
which provide power for a wide variety of consumer electronic products.
As a result of the defendants' alleged anticompetitive and unlawful
conduct, consumers across the U.S. paid artificially inflated prices for
lithium-ion rechargeable batteries. In late 2014, the Court denied in large
part defendants' motion to dismiss.  Indirect Purchasers have settled with
all defendants for a combined total of over $113 million.

6.    ***In re Restasis Antitrust Litigation***, MDL No. 2819 (pending). Lieff
Cabraser serves as interim co-lead counsel for indirect purchasers (i.e.,
consumers) of Restasis, a blockbuster drug used to treat dry-eye disease,
in a case alleging a broad-based and ongoing anticompetitive scheme by
pharmaceutical giant Allergan, Inc. ("Allergan"). The alleged scheme's
goal was and is to maintain Allergan's monopoly. Lieff Cabraser, together
with co-counsel, filed the first two class actions on behalf of indirect
purchasers.

The complaints allege that Allergan (1) fraudulently procured patents it
knew were invalid, (2) caused those invalid patents to be listed in the
FDA's "Orange Book" as being applicable to Restasis, (3) used the
improper Orange Book listings as grounds for filing baseless patent-
infringement litigation, (4) abused the FDA's "citizen petition" process,
and (5) used a "sham" transfer of the invalid patents to the Saint Regis

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 213 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 83 of 144

Mohawk Tribe to obtain tribal sovereign immunity and protect the patents from challenge. This alleged scheme of government petitioning delayed competition from generic equivalents to Restasis that would have been just as safe and cheaper for consumers.

The complaints assert claims under federal and state law, including the Sherman Act and the statutory and common law of numerous states. Several similar lawsuits have since been filed, and the Judicial Panel on Multidistrict Litigation has granted Lieff Cabraser's motion to centralize all cases for pretrial proceedings in the Eastern District of New York before the Hon. Nina Gershon.

7.    ***Nashville General v. Momenta Pharmaceuticals, et al.***, No. 3:15-cv-01100 (M.D. Tenn.). Lieff Cabraser represents Nashville General Hospital (the Hospital Authority of Metropolitan Government of Nashville) and American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan in a class-action antitrust case against defendants Momenta Pharmaceuticals and Sandoz, Inc., for their alleged price-fixing of enoxaparin, the generic version of the anti-coagulant blood clotting drug Lovenox®.

Lovenox, developed by Sanofi-Aventis, is a highly profitable drug with annual sales of more than $1 billion. The drug entered the market in 1995 and its patent was invalidated by the federal government in 2008, making generic production possible. The complaint alleges Momenta and Sandoz colluded to manipulate the process by which the federal government allows drugs to become generic in order to ensure that defendants were the only producers of generic enoxaparin, thereby restraining trade and disrupting the market at consumers' expense.

On September 20, 2019, the court certified a class of hospitals, third-party payors, and uninsured persons that purchased enoxaparin or Lovenox in 29 states and the District of Columbia.  In late 2019, the parties agreed to a proposed settlement totaling $120 million on behalf of uninsured consumers, hospitals, and third-party payors who overpaid for Lovenox or generic enoxaparin from September 2011 through September 2015. The settlement was announced in January of 2020, with court approval anticipated later in 2020.

8.    ***In re Capacitors Antitrust Litigation,*** No. 3:14-cv-03264 (N.D. Cal.). Lieff Cabraser is a member of the Plaintiffs' Steering Committee representing indirect purchasers in an electrolytic and film price-fixing class action lawsuit filed against the world's largest manufacturers of capacitors, used to store and regulate current in electronic circuits and computers, phones, appliances, and cameras worldwide. The defendants include Panasonic Corp., Elna Co. Ltd., Hitachi Chemical Co., Ltd., Nitsuko Electronics Corp., NEC Tokin Corp., SANYO Electric Co., Ltd.,

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 214 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 84 of 144

Matsuo Electric Co., Okaya Electric Industries Co., Nippon Chemi-con Corp., Nichicon Corp., Rubycon Corp., Taitsu Corp., and Toshin Kogyo Co., Ltd. Lieff Cabraser has played a central role in discovery efforts, and assisted in opposing Defendants' motions to dismiss and in opposing Defendants' motions for summary judgment.

Settlements with defendants NEC Tokin Corp., Nitsuko Electronics Corp., and Okaya Electric Industries Co., Ltd. have received final approval, and a settlement with Hitachi Chemical and Soshin Electric Co., Ltd. has received preliminary approval. Discovery continues with respect to the remaining defendants.

9. ***In re Disposable Contact Lens Antitrust Litigation,*** MDL No. 2626 (M.D. Fla.). Lieff Cabraser represents consumers who purchased disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., Bausch + Lomb, and Cooper Vision, Inc.  The complaint challenges the use by contact lens manufacturers of minimum resale price maintenance agreements with independent eye care professionals (including optometrists and ophthalmologists) and wholesalers.  These agreements, the complaint alleges, operate to raise retail prices and eliminate price competition and discounts on contact lenses, including from "big box" retail stores, discount buying clubs, and online retailers.  As a result, the consumers across the United States have paid artificially inflated prices.

10. ***In re Domestic Airline Travel Antitrust Litigation***, 1:15-mc-01404 (District of Columbia). Lieff Cabraser represents consumers in a class action lawsuit against the four largest U.S. airline carriers: American Airlines, Delta Air, Southwest, and United. These airlines collectively account for over 80 percent of all domestic airline travel. The complaint alleges that for years the airlines colluded to restrain capacity, eliminate competition in the market, and increase the price of domestic airline airfares in violation of U.S. antitrust law.  The proposed class consists of all persons and entities who purchased domestic airline tickets directly from one or more defendants from July 2, 2011 to the present. In February 2016, Judge Kollar-Kotelly appointed Lieff Cabraser to the three-member Plaintiffs' Executive Committee overseeing this multidistrict airline price-fixing litigation. Defendants filed a motion to dismiss, which was denied in October 2016. Subsequently, a settlement with Southwest Airlines was granted preliminary approval. Discovery as to the remaining defendants is underway.

11. ***Seaman v. Duke University***, No. 1:15-cv-00462 (M.D. N.C.).  Lieff Cabraser represented Dr. Danielle M. Seaman and a certified class of over 5,000 academic doctors at Duke and UNC in a class action lawsuit against Duke University and Duke University Health System.  The complaint

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 215 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 85 of 144

charged that Duke and UNC entered into an express, secret agreement not to compete for each other's faculty.  The lawsuit sought to recover damages and obtain injunctive relief, including treble damages, for defendants' alleged violations of federal and North Carolina antitrust law.

On February 1, 2018, U.S. District Court Judge Catherine C. Eagles issued an order certifying a faculty class.

On September 24, 2019, Judge Eagles granted final approval to the proposed settlement of the case, valued at $54.5 million.

The settlement includes an unprecedented role for the United States Department of Justice to monitor and enforce extensive injunctive relief, which will ensure that neither Duke nor UNC will enter into or enforce any unlawful no-hire agreements or similar restraints on competition. Assistant Attorney General Delrahim remarked: "Permitting the United States to become part of this settlement agreement in this private antitrust case, and thereby to obtain all of the relief and protections it likely would have sought after a lengthy investigation, demonstrates the benefits that can be obtained efficiently for the American worker when public and private enforcement work in tandem."

**B.    Successes**

1.   ***In re High-Tech Employee Antitrust Litigation***, No. 11 CV 2509 (N.D. Cal.).  Lieff Cabraser served as Co-Lead Class Counsel in a consolidated class action charging that Adobe Systems Inc., Apple Inc., Google Inc., Intel Corporation, Intuit Inc., Lucasfilm Ltd., and Pixar violated antitrust laws by conspiring to suppress the pay of technical, creative, and other salaried employees.  The complaint alleged that the conspiracy among defendants restricted recruiting of each other's employees.  On October 24, 2013, U.S. District Court Judge Lucy H. Koh certified a class of approximately 64,000 persons who worked in Defendants' technical, creative, and/or research and development jobs from 2005-2009.  On September 2, 2015, the Court approved a $415 million settlement with Apple, Google, Intel, and Adobe.  Earlier, on May 15, 2014, the Court approved partial settlements totaling $20 million resolving claims against Intuit, Lucasfilm, and Pixar. The *Daily Journal* described the case as the "most significant antitrust employment case in recent history," adding that it "has been widely recognized as a legal and public policy breakthrough."

2.   ***Cipro Cases I and II***, JCCP Nos. 4154 and 4220 (Cal. Supr. Ct.).  Lieff Cabraser represented California consumers and third party payors in a class action lawsuit filed in California state court charging that Bayer Corporation, Barr Laboratories, and other generic prescription drug manufacturers conspired to restrain competition in the sale of Bayer's

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 216 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 86 of 144

blockbuster antibiotic drug Ciprofloxacin, sold as Cipro. Between 1997 and 2003, Bayer paid its would-be generic drug competitors nearly $400 million to refrain from selling more affordable versions of Cipro. As a result, consumers were forced to pay inflated prices for the drug -- frequently prescribed to treat urinary tract, prostate, abdominal, and other infections.

The Trial Court granted defendants' motion for summary judgment, which the Appellate Court affirmed in October 2011. Plaintiffs sought review before the California Supreme Court and were successful. Following briefing, the case was stayed pending the U.S. Supreme Court's decision in *FTC v. Actavis*. After the U.S. Supreme Court in *Actavis* overturned the Appellate Court's ruling that pay-for-delay deals in the pharmaceutical industry are generally legal, plaintiffs and Bayer entered into settlement negotiations. In November 2013, the Trial Court approved a $74 million settlement with Bayer.

On May 7, 2015, the California Supreme Court reversed the grant of summary judgment to Defendants and resoundingly endorsed the rights of consumers to challenge pharmaceutical pay-for-delay settlements under California competition law. The Court held that "[p]arties illegally restrain trade when they privately agree to substitute consensual monopoly in place of potential competition."

Additional settlements were reached with the remaining defendants, bringing total settlements to $399 million (exceeding plaintiffs' damages estimate by approximately $68 million), a result the Trial Court described as "extraordinary." The Trial Court granted final approval on April 21, 2017, adding that it was "not aware of any case" that "has taken roughly 17 years," where, net of fees, end-payor "claimants will get basically 100 cents on the dollar[.]"

Some objectors are appealing the settlements. Objectors and their counsel objected to part of the settlement notice and to the attorneys' fees. As of early 2018, the appeals are slowly progressing.

In 2017, the American Antitrust Institute honored Lieff Cabraser's *Cipro* team with its Outstanding Private Practice Antitrust Achievement Award for their extraordinary work on the *Cipro* price-fixing and exclusionary drug-pricing agreements case. In addition, their work on the *Cipro* case led Lieff Cabraser attorneys Eric B. Fastiff, Brendan P. Glackin, and Dean M. Harvey to recognition by *California Lawyer* and the *Daily Journal* with the 2016 California Lawyer of the Year Award.

3.    ***In re Municipal Derivatives Litigation***, MDL No. 1950 (S.D.N.Y.). Lieff Cabraser represented the City of Oakland, the County of Alameda, City of Fresno, Fresno County Financing Authority, and East Bay Delta

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 217 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 87 of 144

Housing and Finance Agency in a class action lawsuit brought on behalf of themselves and other California entities that purchased guaranteed investment contracts, swaps, and other municipal derivatives products from Bank of America, N.A., JP Morgan Chase & Co., Piper Jaffray & Co., Societe Generale SA, UBS AG, and other banks, brokers and financial institutions. The complaint charged that Defendants conspired to give cities, counties, school districts, and other governmental agencies artificially low bids for guaranteed investment contracts, swaps, and other municipal derivatives products, which are used by public entities to earn interest on bond proceeds.

The complaint further charged that Defendants met secretly to discuss prices, customers, and markets of municipal derivatives sold in the U.S. and elsewhere; intentionally created the false appearance of competition by engaging in sham auctions in which the results were pre-determined or agreed not to bid on contracts; and covertly shared their unjust profits with losing bidders to maintain the conspiracy.

4. ***Natural Gas Antitrust Cases***, JCCP Nos. 4221, 4224, 4226 & 4228 (Cal. Supr. Ct.). In 2003, the Court approved a landmark of $1.1 billion settlement in class action litigation against El Paso Natural Gas Co. for manipulating the market for natural gas pipeline transmission capacity into California. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel and Co-Liaison Counsel in the *Natural Gas Antitrust Cases I-IV*.

In June 2007, the Court granted final approval to a $67.39 million settlement of a series of class action lawsuits brought by California business and residential consumers of natural gas against a group of natural gas suppliers, Reliant Energy Services, Inc., Duke Energy Trading and Marketing LLC, CMS Energy Resources Management Company, and Aquila Merchant Services, Inc.

Plaintiffs charged defendants with manipulating the price of natural gas in California during the California energy crisis of 2000-2001 by a variety of means, including falsely reporting the prices and quantities of natural gas transactions to trade publications, which compiled daily and monthly natural gas price indices; prearranged wash trading; and, in the case of Reliant, "churning" on the Enron Online electronic trading platform, which was facilitated by a secret netting agreement between Reliant and Enron.

The 2007 settlement followed a settlement reached in 2006 for $92 million partial settlement with Coral Energy Resources, L.P.; Dynegy Inc. and affiliates; EnCana Corporation; WD Energy Services, Inc.; and The Williams Companies, Inc. and affiliates.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 218 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 88 of 144

5.    ***In the Matter of the Arbitration between CopyTele and AU Optronics***, Case No. 50 117 T 009883 13 (Internat'l Centre for Dispute Resolution).  Lieff Cabraser successfully represented CopyTele, Inc. in a commercial dispute involving intellectual property.  In 2011, CopyTele entered into an agreement with AU Optronics ("AUO") under which both companies would jointly develop two groups of products incorporating CopyTele's patented display technologies.  CopyTele charged that AUO never had any intention of jointly developing the CopyTele technologies, and instead used the agreements to fraudulently obtain and transfer licenses of CopyTele's patented technologies.  The case required the review of thousands of pages of documents in Chinese and in English culminating in a two week arbitration hearing.  In December 2014, after the hearing, the parties resolved the matter, with CopyTele receiving $9 million.

6.    ***Wholesale Electricity Antitrust Cases I & II***, JCCP Nos. 4204 & 4205 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Lead Counsel in the private class action litigation against Duke Energy Trading & Marketing, Reliant Energy, and The Williams Companies for claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-2001.  Extending the landmark victories for California residential and business consumers of electricity, in September 2004, plaintiffs reached a $206 million settlement with Duke Energy Trading & Marketing, and in August 2005, plaintiffs reached a $460 million settlement with Reliant Energy, settling claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-01.  Lieff Cabraser earlier entered into a settlement for over $400 million with The Williams Companies.

7.    ***In re TFT-LCD (Flat Panel) Antitrust Litigation***, MDL No. 1827 (N.D. Cal.).  Lieff Cabraser served as Court-appointed Co-Lead Counsel for direct purchasers in litigation against the world's leading manufacturers of Thin Film Transistor Liquid Crystal Displays.  TFT-LCDs are used in flat-panel televisions as well as computer monitors, laptop computers, mobile phones, personal digital assistants, and other devices.  Plaintiffs charged that defendants conspired to raise and fix the prices of TFT-LCD panels and certain products containing those panels for over a decade, resulting in overcharges to purchasers of those panels and products.  In March 2010, the Court certified two nationwide classes of persons and entities that directly purchased TFT-LCDs from January 1, 1999 through December 31, 2006, one class of panel purchasers, and one class of buyers of laptop computers, computer monitors, and televisions that contained TFT-LCDs.  Over the course of the litigation, the classes reached settlements with all defendants except Toshiba.  The case against Toshiba proceeded to trial.  In July 2012, the jury found that Toshiba participated in the price-fixing conspiracy.  The case was subsequently

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 219 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 89 of 144

settled, bringing the total settlements in the litigation to over $470 million.  For his outstanding work in the precedent-setting litigation, California Lawyer recognized Richard M. Heimann with a 2013 California Lawyer of the Year award.

8.    ***Sullivan v. DB Investments***, No. 04-02819 (D. N.J.).  Lieff Cabraser served as Class Counsel for consumers who purchased diamonds from 1994 through March 31, 2006, in a class action lawsuit against the De Beers group of companies.  Plaintiffs charged that De Beers conspired to monopolize the sale of rough diamonds in the U.S.  In May 2008, the District Court approved a $295 million settlement for purchasers of diamonds and diamond jewelry, including $130 million to consumers.  The settlement also barred De Beers from continuing its illegal business practices and required De Beers to submit to the jurisdiction of the Court to enforce the settlement.  In December 2011, the Third Circuit Court of Appeals affirmed the District Court's order approving the settlement.  667 F.3d 273 (3rd Cir. 2011).

For sixty years, De Beers has flouted U.S. antitrust laws.  In 1999, De Beers' Chairman Nicholas Oppenheimer stated that De Beers "likes to think of itself as the world's . . . longest-running monopoly.  [We seek] to manage the diamond market, to control supply, to manage prices and to act collusively with our partners in the business."  The hard-fought litigation spanned several years and nations.  Despite the tremendous resources available to the U.S. Department of Justice and state attorney generals, it was only through the determination of plaintiffs' counsel that De Beers was finally brought to justice and the rights of consumers were vindicated.  Lieff Cabraser attorneys played key roles in negotiating the settlement and defending it on appeal.  Discussing the DeBeers case, The National Law Journal noted that Lieff Cabraser was "among the plaintiffs' firms that weren't afraid to take on one of the business world's great white whales."

9.    ***Haley Paint Co. v. E.I. Dupont De Nemours and Co. et al.***, No. 10-cv-00318-RDB (D. Md.).  Lieff Cabraser served as Co-Lead Counsel for direct purchasers of titanium dioxide in a nationwide class action lawsuit against Defendants E.I. Dupont De Nemours and Co., Huntsman International LLC, Kronos Worldwide Inc., and Cristal Global (fka Millennium Inorganic Chemicals, Inc.), alleging these corporations participated in a global cartel to fix the price of titanium dioxide.  Titanium dioxide, a dry chemical powder, is the world's most widely used pigment for providing whiteness and brightness in paints, paper, plastics, and other products.  Plaintiffs charged that defendants coordinated increases in the prices for titanium dioxide despite declining demand, decreasing raw material costs, and industry overcapacity.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 220 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 90 of 144

Unlike some antitrust class actions, Plaintiffs proceeded without the benefit of any government investigation or proceeding.  Plaintiffs overcame attacks on the pleadings, discovery obstacles, a rigorous class certification process that required two full rounds of briefing and expert analysis, and multiple summary judgment motions.  In August 2012, the Court certified the class.  Plaintiffs prepared fully for trial and achieved a settlement with the final defendant on the last business day before trial.  In December 2013, the Court approved a series of settlements with defendants totaling $163 million.

10. ***In re Lupron Marketing and Sales Practices Litigation***, MDL No. 1430 (D. Mass.).  In May 2005, the Court granted final approval to a settlement of a class action lawsuit by patients, insurance companies and health and welfare benefit plans that paid for Lupron, a prescription drug used to treat prostate cancer, endometriosis and precocious puberty.  The settlement requires the defendants, Abbott Laboratories, Takeda Pharmaceutical Company Limited, and TAP Pharmaceuticals, to pay $150 million, inclusive of costs and fees, to persons or entities who paid for Lupron from January 1, 1985 through March 31, 2005.  Plaintiffs charged that the defendants conspired to overstate the drug's average wholesale price ("AWP"), which resulted in plaintiffs paying more for Lupron than they should have paid.  Lieff Cabraser served as Co-Lead Plaintiffs' Counsel.

11. ***Marchbanks Truck Service v. Comdata Network***, No. 07-cv-01078 (E.D. Pa.).  In July 2014, the Court approved a $130 million settlement of a class action brought by truck stops and other retail fueling facilities that paid percentage-based transaction fees to Comdata on proprietary card transactions using Comdata's over-the-road fleet card.  The complaint challenged arrangements among Comdata, its parent company Ceridian LLC, and three national truck stop chains: defendants TravelCenters of America LLC and its wholly owned subsidiaries, Pilot Travel Centers LLC and its predecessor Pilot Corporation, and Love's Travel Stops & Country Stores, Inc.  The alleged anticompetitive conduct insulated Comdata from competition, enhanced its market power, and led to independent truck stops' paying artificially inflated transaction fees.  In addition to the $130 million payment, the settlement required Comdata to change certain business practices that will promote competition among payment cards used by over-the-road fleets and truckers and lead to lower merchant fees for the independent truck stops.  Lieff Cabraser served as Co-Lead Class Counsel in the litigation.

12. ***California Vitamins Cases***, JCCP No. 4076 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Liaison Counsel and Co-Chairman of the Plaintiffs' Executive Committee on behalf of a class of California indirect vitamin purchasers in every level of the chain of distribution.  In January 2002,

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 221 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 91 of 144

the Court granted final approval of a $96 million settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins.  In December 2006, the Court granted final approval to over $8.8 million in additional settlements.

13.    ***In re Buspirone Antitrust Litigation***, MDL No. 1413 (S.D. N.Y.).  In November 2003, Lieff Cabraser obtained a $90 million cash settlement for individual consumers, consumer organizations, and third party payers that purchased BuSpar, a drug prescribed to alleviate symptoms of anxiety.  Plaintiffs alleged that Bristol-Myers Squibb Co. (BMS), Danbury Pharmacal, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. entered into an unlawful agreement in restraint of trade under which BMS paid a potential generic manufacturer of BuSpar to drop its challenge to BMS' patent and refrain from entering the market.  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

14.    ***Meijer v. Abbott Laboratories***, Case No. C 07-5985 CW (N.D. Cal.).  Lieff Cabraser served as co-counsel for the group of retailers charging that Abbott Laboratories monopolized the market for AIDS medicines used in conjunction with Abbott's prescription drug Norvir.  These drugs, known as Protease Inhibitors, have enabled patients with HIV to fight off the disease and live longer.  In January 2011, the Court denied Abbott's motion for summary judgment on plaintiffs' monopolization claim. Trial commenced in February 2011.  After opening statements and the presentation of four witnesses and evidence to the jury, plaintiffs and Abbott Laboratories entered into a $52 million settlement.  The Court granted final approval to the settlement in August 2011.

15.    ***In re Carpet Antitrust Litigation***, MDL No. 1075 (N.D. Ga.).  Lieff Cabraser served as Class Counsel and a member of the trial team for a class of direct purchasers of twenty-ounce level loop polypropylene carpet.  Plaintiffs, distributors of polypropylene carpet, alleged that Defendants, seven manufacturers of polypropylene carpet, conspired to fix the prices of polypropylene carpet by agreeing to eliminate discounts and charge inflated prices on the carpet.  In 2001, the Court approved a $50 million settlement of the case.

16.    ***In re Lasik/PRK Antitrust Litigation***, No. CV 772894 (Cal. Supr. Ct.).  Lieff Cabraser served as a member of Plaintiffs' Executive Committee in class actions brought on behalf of persons who underwent Lasik/PRK eye surgery.  Plaintiffs alleged that defendants, the manufacturers of the laser system used for the laser vision correction surgery, manipulated fees charged to ophthalmologists and others who performed the surgery, and that the overcharges were passed onto

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 222 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 92 of 144

consumers who paid for laser vision correction surgery.  In December 2001, the Court approved a $12.5 million settlement of the litigation.

17.    ***Methionine Cases I and II***, JCCP Nos. 4090 & 4096 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers of methionine, an amino acid used primarily as a poultry and swine feed additive to enhance growth and production.  Plaintiffs alleged that the companies illegally conspired to raise methionine prices to super-competitive levels.  The case settled.

18.    ***In re Electrical Carbon Products Antitrust Litigation***, MDL No. 1514 (D.N.J.).  Lieff Cabraser represented the City and County of San Francisco and a class of direct purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Sherman Act.

## VII.    Environmental and Toxic Exposures

### A.    Current Cases

1.    ***In Re Oil Spill  by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico***, MDL No. 2179 (E.D. La.).  Lieff Cabraser serves on the Court-appointed Plaintiffs' Steering Committee ("PSC") and with co-counsel represents fishermen, property owners, business owners, wage earners, and other harmed parties in class action litigation against BP, Transocean, Halliburton, and other defendants involved in the Deepwater Horizon oil rig blowout and resulting oil spill in the Gulf of Mexico on April 20, 2010.  The Master Complaints allege that the defendants were insouciant in addressing the operations of the well and the oil rig, ignored warning signs of the impending disaster, and failed to employ and/or follow proper safety measures, worker safety laws, and environmental protection laws in favor of cost-cutting measures.

In 2012, the Court approved two class action settlements that will fully compensate hundreds of thousands of victims of the tragedy. The settlements resolve the majority of private economic loss, property damage, and medical injury claims stemming from the Deepwater Horizon Oil Spill, and hold BP fully accountable to individuals and businesses harmed by the spill.  Under the settlements, there is no dollar limit on the amount BP will pay.  In 2014, the U.S. Supreme Court denied review of BP's challenge to its own class action settlement.  Approval of that settlement is now final, and has so far delivered $11.2 billion to compensate claimants' losses.  The medical settlement is also final, and an additional $1 billion settlement has been reached with defendant Halliburton.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 223 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 93 of 144

2.  ***Andrews, et al. v. Plains All American Pipeline, et al.***, No. 2:15-cv-04113-PSG-JEM (C.D. Cal.).  Lieff Cabraser is Court-appointed Class Counsel in this action arising from an oil spill in Santa Barbara County in May 2015.  A pipeline owned by Plains ruptured, and oil from the pipeline flowed into the Pacific Ocean, soiling beaches and impacting local fisheries.  Lieff Cabraser represents homeowners who lost the use of the beachfront amenity for which they pay a premium, local oil platform workers who were laid off as a result of the spill and subsequent closure of the pipeline, as well as fishers whose catch was impacted by the oil spill.  Plaintiffs allege that defendants did not follow basic safety protocols when they installed the pipeline, failed to properly monitor and maintain the pipeline, ignored clear signs that the pipeline was corroded and in danger of bursting, and failed to promptly respond to the oil spill when the inevitable rupture occurred.

    The Federal District Court recently certified a plaintiff class composed of fishers whose catch diminished as a result of the spill and fish industry businesses that were affected as a result of the decimated fish population.  Lieff Cabraser has recently filed a motion to certify additional classes of groups harmed by the spill, including private property owners and lessees near the soiled shoreline, and oil industry workers and businesses that suffered economic injuries associated with the closure of the pipeline.

3.  ***Southern California Gas Leak Cases***, JCCP No. 4861. Lieff Cabraser has been selected by the Los Angeles County Superior Court to help lead two important class action cases on behalf of homeowners and businesses that suffered economic injuries in the wake of the massive Porter Ranch gas leak, which began in October of 2015 and lasted into February of 2016.  During this time, huge quantities of natural gas spewed out of an old well at Southern California Gas's Aliso Canyon Facility and into the air of Porter Ranch, a neighborhood located adjacent to the Facility and 25 miles northwest of Los Angeles.

    This large-scale environmental disaster forced thousands of residents to leave their homes for months on end while the leak continued and for several months thereafter.  It also caused local business to dry up during the busy holiday season, as many residents had evacuated the neighborhood and visitors avoided the area.  Evidence suggests the leak was caused by at least one old and malfunctioning well used to inject and retrieve gas.  Southern California Gas Company allegedly removed the safety valve on the well that could have prevented the leak.  As a result, the gas leak has left a carbon footprint larger than the *Deepwater Horizon* oil spill.

    Together with other firms chosen to pursue class relief for these victims, Lieff Cabraser filed two class action complaints – one on behalf of Porter

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 224 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 94 of 144

Ranch homeowners, and another on behalf of Porter Ranch businesses. Southern California Gas argued in response that the injuries suffered by homeowners and businesses cannot proceed as class actions. In May 2017, the Superior Court rejected these arguments. The class action cases are proceeding with discovery into Southern California Gas Company's role in this disaster.

### B.    Successes

1.    ***In re Exxon Valdez Oil Spill Litigation***, No. 3:89-cv-0095 HRH (D. Al.).  The *Exxon Valdez* ran aground on March 24, 1989, spilling 11 million gallons of oil into Prince William Sound.  Lieff Cabraser served as one of the Court-appointed Plaintiffs' Class Counsel.  The class consisted of fisherman and others whose livelihoods were gravely affected by the disaster.  In addition, Lieff Cabraser served on the Class Trial Team that tried the case before a jury in federal court in 1994.  The jury returned an award of $5 billion in punitive damages.

In 2001, the Ninth Circuit Court of Appeals ruled that the original $5 billion punitive damages verdict was excessive.  In 2002, U.S. District Court Judge H. Russell Holland reinstated the award at $4 billion.  Judge Holland stated that, "Exxon officials knew that carrying huge volumes of crude oil through Prince William sound was a dangerous business, yet they knowingly permitted a relapsed alcoholic to direct the operation of the *Exxon Valdez* through Prince William Sound."  In 2003, the Ninth Circuit again directed Judge Holland to reconsider the punitive damages award under United States Supreme Court punitive damages guidelines. In January 2004, Judge Holland issued his order finding that Supreme Court authority did not change the Court's earlier analysis.

In December 2006, the Ninth Circuit Court of Appeals issued its ruling, setting the punitive damages award at $2.5 billion.  Subsequently, the U.S. Supreme Court further reduced the punitive damages award to $507.5 million, an amount equal to the compensatory damages.  With interest, the total award to the plaintiff class was $977 million.

2.    ***In re Imprelis Herbicide Marketing, Sales Practices and Products Liability Litigation***, MDL No. 2284 (E.D. Pa.).  Lieff Cabraser served as Co-Lead Counsel for homeowners, golf course companies and other property owners in a nationwide class action lawsuit against E.I. du Pont de Nemours & Company ("DuPont"), charging that its herbicide Imprelis caused widespread death among trees and other non-targeted vegetation across the country.  DuPont marketed Imprelis as an environmentally friendly alternative to the commonly used 2,4-D herbicide.  Just weeks after Imprelis' introduction to the market in late 2010, however, complaints of tree damage began to surface.  Property owners reported curling needles, severe browning, and dieback in trees

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 225 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 95 of 144

near turf that had been treated with Imprelis. In August 2011, the U.S. Environmental Protection Agency banned the sale of Imprelis.

The complaint charged that DuPont failed to disclose the risks Imprelis posed to trees, even when applied as directed, and failed to provide instructions for the safe application of Imprelis. In response to the litigation, DuPont created a process for property owners to submit claims for damages. Approximately $400 million was paid to approximately 25,000 claimants. In October 2013, the Court approved a settlement of the class action that substantially enhanced the DuPont claims process, including by adding an extended warranty, a more limited release of claims, the right to appeal the denial of claim by DuPont to an independent arborist, and publication of DuPont's tree payment schedule.

3. ***In re GCC Richmond Works Cases***, JCCP No. 2906 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Liaison Counsel and Lead Class Counsel in coordinated litigation arising out of the release on July 26, 1993, of a massive toxic sulfuric acid cloud which injured an estimated 50,000 residents of Richmond, California. The Coordination Trial Court granted final approval to a $180 million class settlement for exposed residents.

4. ***In re Unocal Refinery Litigation***, No. C 94-04141 (Cal. Supr. Ct.). Lieff Cabraser served as one of two Co-Lead Class Counsel and on the Plaintiffs' Steering Committee in this action against Union Oil Company of California ("Unocal") arising from a series of toxic releases from Unocal's San Francisco refinery in Rodeo, California. The action was settled in 1997 on behalf of approximately 10,000 individuals for $80 million.

5. ***West v. G&H Seed Co., et al.***, No. 99-C-4984-A (La. State Ct.). With co-counsel, Lieff Cabraser represented a certified class of 1,500 Louisiana crawfish farmers who charged in a lawsuit that Fipronil, an insecticide sold under the trade name ICON, damaged their pond-grown crawfish crops. In Louisiana, rice and crawfish are often farmed together, either in the same pond or in close proximity to one another.

After its introduction to the market in 1999, ICON was used extensively in Louisiana to kill water weevils that attacked rice plants. The lawsuit alleged that ICON also had a devastating effect on crawfish harvests with some farmers losing their entire crawfish crop. In 2004, the Court approved a $45 million settlement with Bayer CropScience, which during the litigation purchased Aventis CropScience, the original manufacturer of ICON. The settlement was reached after the parties had presented nearly a month's worth of evidence at trial and were on the verge of making closing arguments to the jury.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 226 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 96 of 144

6. ***Kingston, Tennessee TVA Coal Ash Spill Litigation***, No. 3:09-cv-09 (E.D. Tenn.).  Lieff Cabraser represented hundreds of property owners and businesses harmed by the largest coal ash spill in U.S. history.  On December 22, 2008, more than a billion gallons of coal ash slurry spilled when a dike burst on a retention pond at the Kingston Fossil Plant operated by the Tennessee Valley Authority (TVA) in Roane County, Tennessee.  A wall of coal ash slurry traveled across the Emory River, polluting the river and nearby waterways, and covering nearly 300 acres with toxic sludge, including 12 homes and damaging hundreds of properties.  In March 2010, the Court denied in large part TVA's motion to dismiss the litigation.  In the Fall of 2011, the Court conducted a four week bench trial on the question of whether TVA was liable for releasing the coal ash into the river system.  The issue of damages was reserved for later proceedings.  In August 2012, the Court found in favor of plaintiffs on their claims of negligence, trespass, and private nuisance.  In August 2014, the case came to a conclusion with TVA's payment of $27.8 million to settle the litigation.

7. ***In re Sacramento River Spill Cases I and II***, JCCP Nos. 2617 & 2620 (Cal. Supr. Ct.).  On July 14, 1991, a Southern Pacific train tanker car derailed in northern California, spilling 19,000 gallons of a toxic pesticide, metam sodium, into the Sacramento River near the town of Dunsmir at a site along the rail lines known as the Cantara Loop.  The metam sodium mixed thoroughly with the river water and had a devastating effect on the river and surrounding ecosystem.  Within a week, every fish, 1.1 million in total, and all other aquatic life in a 45-mile stretch of the Sacramento River was killed.  In addition, many residents living along the river became ill with symptoms that included headaches, shortness of breath, and vomiting.  The spill considered the worst inland ecological disaster in California history.

Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel and Lead Class Counsel, and chaired the Plaintiffs' Litigation Committee in coordinated proceedings that included all of the lawsuits arising out of this toxic spill.  Settlement proceeds of approximately $16 million were distributed pursuant to Court approval of a plan of allocation to four certified plaintiff classes: personal injury, business loss, property damage/diminution, and evacuation.

8. ***Kentucky Coal Sludge Litigation***, No. 00-CI-00245 (Cmmw. Ky.).  On October 11, 2000, near Inez, Kentucky, a coal waste storage facility ruptured, spilling 1.25 million tons of coal sludge (a wet mixture produced by the treatment and cleaning of coal) into waterways in the region and contaminating hundreds of properties.  This was one of the worst environmental disasters in the Southeastern United States.  With co-counsel, Lieff Cabraser represented over 400 clients in property damage

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 227 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 97 of 144

claims, including claims for diminution in the value of their homes and properties.  In April 2003, the parties reached a confidential settlement agreement on favorable terms to the plaintiffs.

9.    ***Toms River Childhood Cancer Incidents***, No. L-10445-01 MT (Sup. Ct. NJ).  With co-counsel, Lieff Cabraser represented 69 families in Toms River, New Jersey, each with a child having cancer, that claimed the cancers were caused by environmental contamination in the Toms River area.  Commencing in 1998, the parties—the 69 families, Ciba Specialty Chemicals, Union Carbide and United Water Resources, Inc., a water distributor in the area—participated in an unique alternative dispute resolution process, which lead to a fair and efficient consideration of the factual and scientific issues in the matter.  In December 2001, under the supervision of a mediator, a confidential settlement favorable to the families was reached.

## VIII.    **False Claims Act**

### A.    **Current Cases**

Lieff Cabraser represents whistleblowers in a wide range of False Claims Act cases, including Medicare kickback and healthcare fraud, defense contractor fraud, and securities and financial fraud.  We have more than a dozen whistleblower cases currently under seal and investigation in federal and state jurisdictions across the U.S.  For that reason, we do not list all of our current False Claims Act and qui tam cases in our resume.

1.    ***United States ex rel. Matthew Cestra v. Cephalon***, No. 14-01842 (E.D. Pa.); ***United States ex rel. Bruce Boise et al. v. Cephalon***, No. 08-287 (E.D. Pa.)  Lieff Cabraser, with co-counsel, represents four whistleblowers bringing claims on behalf of the U.S. Government and various states under the federal and state False Claims Acts against Cephalon, Inc., a pharmaceutical company.  The complaints allege that Cephalon has engaged in unlawful off-label marketing of certain of its drugs, largely through misrepresentations, kickbacks, and other unlawful or fraudulent means, causing the submission of hundreds of thousands of false claims for reimbursement to federal and state health care programs. The Boise case involves Provigil and its successor drug Nuvigil, limited-indication wakefulness drugs that are unsafe and/or not efficacious for the wide array of off-label psychiatric and neurological conditions for which Cephalon has marketed them, according to the allegations.  The Cestra case involves an expensive oncological drug called Treanda, which is approved only for second-line treatment of indolent non-Hodgkin's Lymphoma despite what the relators allege to be the company's off-label marketing of the drug for first-line treatment. Various motions are pending.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 228 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 98 of 144

B.    **Successes**

1.    ***United States ex rel. Mary Hendow and Julie Albertson v.
University of Phoenix***, No. 2:03-cv-00457-GEB-DAD (E.D. Cal.).
Lieff Cabraser obtained a record whistleblower settlement against the
University of Phoenix that charged the university had violated the
incentive compensation ban of the Higher Education Act (HEA) by
providing improper incentive pay to its recruiters.  The HEA prohibits
colleges and universities whose students receive federal financial aid from
paying their recruiters based on the number of students enrolled, which
creates a risk of encouraging recruitment of unqualified students who,
Congress has determined, are more likely to default on their loans.  High
student loan default rates not only result in wasted federal funds, but the
students who receive these loans and default are burdened for years with
tremendous debt without the benefit of a college degree.

The complaint alleged that the University of Phoenix defrauded the U.S.
Department of Education by obtaining federal student loan and Pell Grant
monies from the federal government based on false statements of
compliance with HEA.  In December 2009, the parties announced a
$78.5 million settlement.  The settlement constitutes the second-largest
settlement ever in a False Claims Act case in which the federal
government declined to intervene in the action and largest settlement
ever involving the Department of Education.  The University of Phoenix
case led to the Obama Administration passing new regulations that took
away the so-called "safe harbor" provisions that for-profit universities
relied on to justify their alleged recruitment misconduct.  For his
outstanding work as Lead Counsel and the significance of the case,
*California Lawyer* magazine recognized Lieff Cabraser attorney Robert J.
Nelson with a California Lawyer of the Year (CLAY) Award.

2.    ***State of California ex rel. Sherwin v. Office Depot***, No. BC410135
(Cal. Supr. Ct.).   In February 2015, the Court approved a $77.5 million
settlement with Office Depot to settle a whistleblower lawsuit brought
under the California False Claims Act.  The whistleblower was a former
Office Depot account manager.  The City of Los Angeles, County of Santa
Clara, Stockton Unified School District, and 16 additional California cities,
counties, and school districts intervened in the action to assert their
claims (including common-law fraud and breach of contract) against
Office Depot directly.  The governmental entities purchased office
supplies from Office Depot under a nationwide supply contract known as
the U.S. Communities contract. Office Depot promised in the U.S.
Communities contract to sell office supplies at its best governmental
pricing nationwide.  The complaint alleged that Office Depot repeatedly
failed to give most of its California governmental customers the lowest

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 229 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 99 of 144

price it was offering other governmental customers.  Other pricing misconduct was also alleged.

3.   ***State of California ex rel. Rockville Recovery Associates v. Multiplan***, No. 34-2010-00079432 (Sacramento Supr. Ct., Cal.).  In a case that received widespread media coverage, Lieff Cabraser represented whistleblower Rockville Recovery Associates in a qui tam suit for civil penalties under the California Insurance Frauds Prevention Act ("IFPA"), Cal. Insurance Code § 1871.7, against Sutter Health, one of California's largest healthcare providers, and obtained the largest penalty ever imposed under the statute.  The parties reached a $46 million settlement that was announced in November 2013, shortly before trial was scheduled to commence.

The complaint alleged that the 26 Sutter hospitals throughout California submitted false, fraudulent, or misleading charges for anesthesia services (separate from the anesthesiologist's fees) during operating room procedures that were already covered in the operating room bill.

After Lieff Cabraser defeated Sutter Health's demurrer and motion to compel arbitration, California Insurance Commissioner Dave Jones intervened in the litigation in May 2011.  Lieff Cabraser attorneys continued to serve as lead counsel, and litigated the case for over two more years.  In all, plaintiffs defeated no less than 10 dispositive motions, as well as three writ petitions to the Court of Appeals.

In addition to the monetary recovery, Sutter Health agreed to a comprehensive series of billing and transparency reforms, which California Insurance Commissioner Dave Jones called "a groundbreaking step in opening up hospital billing to public scrutiny."  On the date the settlement was announced, the California Hospital Association recognized its significance by issuing a press release stating that the settlement "compels industry-wide review of anesthesia billing."  Defendant Multiplan, Inc., a large leased network Preferred Provider Organization, separately paid a $925,000 civil penalty for its role in enabling Sutter's alleged false billing scheme.

4.   ***United States ex rel. Dye v. ATK Launch Systems***, No. 1:06-CV-39-TS (D. Utah).  Lieff Cabraser served as co-counsel for a whistleblower who alleged that ATK Launch Systems knowingly sold defective and potentially dangerous illumination flares to the United States military in violation of the federal False Claims Act.  The specialized flares were used in nighttime combat, covert missions, and search and rescue operations.  A key design specification set by the Defense Department was that these highly flammable and dangerous items ignite only under certain conditions.  The complaint alleged that the ATK flares at issue could ignite when dropped from a height of less than 10 feet — and, according to ATK's

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 230 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 100 of 144

own analysis, from as little as 11.6 inches — notwithstanding contractual specifications that they be capable of withstanding such a drop.  In April 2012, the parties reached a settlement valued at $37 million.

5.   ***United States ex rel. Mauro Vosilla and Steven Rossow v. Avaya, Inc.***, No.  CV04-8763 PA JTLx (C.D. Cal.).  Lieff Cabraser represented a whistleblower in litigation alleging that defendants Avaya, Lucent Technologies, and AT&T violated the Federal False Claims Act and state false claims statutes.  The complaint alleged that defendants charged governmental agencies for the lease, rental, and post-warranty maintenance of telephone communications systems and services that the governmental agencies no longer possessed and/or were no longer maintained by defendants.  In November 2010, the parties entered into a $21.75 million settlement of the litigation.

6.   ***State of California ex rel. Associates Against FX Insider State Street Corp.***, No. 34-2008-00008457 (Sacramento Supr. Ct., Cal.) ("***State Street I***").  Lieff Cabraser served as co-counsel for the whistleblowers in this action against State Street Corporation. The Complaint alleged that State Street violated the California False Claims Act with respect to certain foreign exchange transactions it executed with two California public pension fund custodial clients. The California Attorney General intervened in the case in October 2009.

## IX.   **Digital Privacy and Data Security**

### A.   **Current Cases**

1.   ***Balderas v. Tiny Lab Productions, et al.***, Case 6:18-cv-00854 (D. New Mexico). Lieff Cabraser, with co-counsel, is working with the Attorney General of the State of New Mexico to represent parents, on behalf of their children, in a federal lawsuit seeking to protect children in the state from a foreign developer of child-directed apps and its marketing partners.  The lawsuit alleges that the child-app developer Tiny Lab Productions and its co-defendants (including Google, Twitter, and AdMob) surreptitiously harvest children's personal information for the purpose of profiling and targeting children for commercial exploitation, without adequate disclosures and verified parental consent. When children play Tiny Lab's gaming apps on their mobile devices, their geolocation, demographic characteristics, online activity, and other personal data, are exfiltrated to third-parties and their marketing networks in order to target the children with advertisements. The apps at issue, clearly and indisputably designed for children, include Fun Kid Racing, Candy Land Racing, and GummyBear and Friends Speed Racing. The action brings claims under the federal Children's Online Privacy Protection Act, as well as New Mexico state laws.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 231 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 101 of 144

2.  ***In re Google Inc. Street View Electronic Communications
    Litigation***, No. 3:10-md-021784-CRB (N.D. Cal.).  Lieff Cabraser
    represents individuals whose right to privacy was violated when Google
    intentionally equipped its Google Maps "Street View" vehicles with Wi-Fi
    antennas and software that collected data transmitted by those persons'
    Wi-Fi networks located in their nearby homes.  Google collected not only
    basic identifying information about individuals' Wi-Fi networks, but also
    personal, private data being transmitted over their Wi-Fi networks such
    as emails, usernames, passwords, videos, and documents.  Plaintiffs allege
    that Google's actions violated the federal Wiretap Act, as amended by the
    Electronic Communications Privacy Act.  On September 10, 2013, the
    Ninth Circuit Court of Appeals held that Google's actions are not exempt
    from the Act.

3.  ***Campbell v. Facebook***, No. 4:13-cv-05996 (N.D. Cal.). Lieff Cabraser
    serves as Co-Lead Counsel in a nationwide class action lawsuit alleging
    that Facebook intercepts certain Facebook private data in users' personal and
    private messages on the social network and profits by sharing that
    information with third parties. When a user composes a private Facebook
    message and includes a link (a "URL") to a third party website, Facebook
    allegedly scans the content of the message, follows the URL, and searches
    for information to profile the message-sender's web activity. This enables
    Facebook to data mine aspects of user data and profit from that data by
    sharing it with advertisers, marketers, and other data aggregators. In
    December 2014, the Court in large part denied Facebook's motion to
    dismiss. In rejecting one of Facebook's core arguments, U.S. District
    Court Judge Phyllis Hamilton stated: "An electronic communications
    service provider cannot simply adopt any revenue-generating practice and
    deem it 'ordinary' by its own subjective standard." In August of 2017,
    Judge Hamilton granted final approval to an injunctive relief settlement
    of the action. As part of the settlement, Facebook has ceased the offending
    practices and has made changes to its operative relevant user disclosures.

4.  ***In re Carrier IQ Privacy Litigation***, MDL No. 2330 (N.D. Cal.).
    Lieff Cabraser represents a plaintiff in Multi-District Litigation against
    Samsung, LG, Motorola, HTC, and Carrier IQ alleging that smartphone
    manufacturers violated privacy laws by installing tracking software, called
    IQ Agent, on millions of cell phones and other mobile devices that use the
    Android operating system. Without notifying users or obtaining consent,
    IQ Agent tracks users' keystrokes, passwords, apps, text messages,
    photos, videos, and other personal information and transmits this data to
    cellular carriers.  In a 96-page order issued in January 2015, U.S. District
    Court Judge Edward Chen granted in part, and denied in part,
    defendants' motion to dismiss.  Importantly, the Court permitted the core
    Wiretap Act claim to proceed as well as the claims for violations of the

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 232 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 102 of 144

Magnuson-Moss Warranty Act and the California Unfair Competition Law
and breach of the common law duty of implied warranty.

5.    ***Diaz v. Intuit***, No. 5:15-CV-O1778-PSG (N.D. Cal.).  Lieff Cabraser
represents identity theft victims in a nationwide class action lawsuit
against Intuit for allegedly failing to protect consumers' data from
foreseeable and preventable breaches, and by facilitating the filing of
fraudulent tax returns through its TurboTax software program.  The
complaint alleges that Intuit failed to protect data provided by consumers
who purchased TurboTax, used to file an estimated 30 million tax returns
for American taxpayers every year, from easy access by hackers and other
cybercriminals.  The complaint further alleges that Intuit was aware of the
widespread use of TurboTax exclusively for the filing of fraudulent tax
returns.  Yet, Intuit failed to adopt basic cyber security policies to prevent
this misuse of TurboTax.  As a result, fraudulent tax returns were filed in
the names of the plaintiffs and thousands of other individuals across
America, including persons who never purchased TurboTax.

6.    ***Henson v. Turn***, No. 3:15-CV-O1497 (N.D. Cal.).  Lieff Cabraser
represents plaintiffs in class action litigation alleging that internet
marketing company Turn, Inc. violates users' digital privacy by installing
software tracking beacons on smartphones, tablets, and other mobile
computing devices. The complaint alleges that in an effort to thwart
standard privacy settings and features, Turn deploys so-called "zombie
cookies" that cannot be detected or deleted, and that track smartphone
activity across various browsers and applications. Turn uses the data
harvested by these cookies to build robust user profiles and sell targeted
and profitable advertising, all without the user's knowledge or consent.
The complaint alleges that Turn's conduct violates consumer protection
laws and amounts to trespass.

7.    ***McDowell v. CGI Group***, No. 1:15-cv-O1157-GK (D.D.C.).  Lieff
Cabraser represents individuals in class action litigation against CGI
Group, Inc. and CGI Federal, Inc. (collectively "CGI") for allegedly
facilitating a data breach affecting more than 1,000 U.S. citizens.  The
U.S. government contracts with CGI to manage all U.S. passport
application activities.  Passport applicants must provide their name, date
of birth, city of birth, state of birth, country of birth, social security
number, sex, height, hair color, eye color, occupation, and evidence of
U.S. citizenship, such as a previously issued U.S. passport, or U.S. birth
certificate.  Between 2010 and May 2, 2015, CGI employees allegedly stole
and sold personal information of passport applicants to cybercriminals.
The mass identity theft allowed cybercriminals to use stolen information
to buy cell phones and computers, and to obtain lines of credit. The
complaint alleges that CGI failed to fulfill its legal duty to protect
customers' sensitive personal and financial information.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 233 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 103 of 144

B.    **Successes**

1.  ***Fowles v. Anthem***, No. 3:15-cv-2249 (N.D. Cal.).  Lieff Cabraser represents individuals in a class action lawsuit against Anthem for its alleged failure to safeguard and secure the medical records and other personally identifiable information of its members. The second largest health insurer in the U.S., Anthem provides coverage for 37.5 million Americans. Anthem's customer database was allegedly attacked by international hackers on December 10, 2014. Anthem says it discovered the breach on January 27, 2015, and reported it about a week later on February 4, 2015.  California customers were informed around March 18, 2015.  The theft included names, birth dates, social security numbers, billing information, and highly confidential health information. The complaint charged that Anthem violated its duty to safeguard and protect consumers' personal information, and violated its duty to disclose the breach to consumers in a timely manner. In addition, the complaint charged that Anthem was on notice about the weaknesses in its computer security defenses for at least a year before the breach occurred.

    In August 2018, Judge Lucy H. Koh of the U. S. District Court for the Northern District of California granted final approval to a class action settlement which required Anthem to undertake significant additional cybersecurity measures to better safeguard information going forward, and to pay $115 million into a settlement fund from which benefits to settlement class members will be paid.

2.  ***Matera v. Google Inc.***, No. 5:15-cv-04062 (N.D. Cal.). Lieff Cabraser represented consumers in a digital privacy class action against Google Inc. over claims the popular Gmail service conducted unauthorized scanning of email messages to build marketing profiles and serve targeted ads. The complaint alleged that Google routinely scanned email messages that were sent by non-Gmail users to Gmail subscribers, analyzed the content of those messages, and then shared that data with third parties in order to target ads to Gmail users, an invasion of privacy that violated the California Invasion of Privacy Act and the federal Electronic Communications Privacy Act. In February 2018, the Court granted final approval to a $2.2 million settlement of the action. Under the settlement, Google made business-related changes to its Gmail service, as part of which, Google will no longer scan the contents of emails sent to Gmail accounts for advertising purposes, whether during the transmission process or after the emails have been delivered to the Gmail user's inbox. The proposed changes, which will not apply to scanning performed to prevent the spread of spam or malware, will run for at least three years.

3.  ***Ebarle et al. v. LifeLock Inc.***, No. 3:15-cv-00258 (N.D. Cal.). Lieff Cabraser represented consumers who subscribed to LifeLock's identity

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 234 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 104 of 144

theft protection services in a nationwide class action fraud lawsuit. The complaint alleged LifeLock did not protect the personal information of its subscribers from hackers and criminals, and specifically that, contrary to its advertisements and statements, LifeLock lacked a comprehensive monitoring network, failed to provide "up-to-the-minute" alerts of suspicious activity, and did an inferior job of providing the same theft protection services that banks and credit card companies provide, often for free. On September 21, 2016, U.S. District Judge Haywood Gilliam, Jr. granted final approval to a $68 million settlement of the case.

4.  ***Perkins v. LinkedIn***, No. 13-CV-04303-LHK (N.D. Cal.).  Lieff Cabraser represented individuals who joined LinkedIn's network and, without their consent or authorization, had their names and likenesses used by LinkedIn to endorse LinkedIn's services and send repeated emails to their contacts asking that they join LinkedIn.  On February 16, 2016, the Court granted final approval to a $13 million settlement, one of the largest per-class member settlements ever in a digital privacy class action. In addition to the monetary relief, LinkedIn agreed to make significant changes to Add Connections disclosures and functionality.  Specifically, LinkedIn revised disclosures to real-time permission screens presented to members using Add Connections, agreed to implement new functionality allowing LinkedIn members to manage their contacts, including viewing and deleting contacts and sending invitations, and to stop reminder emails from being sent if users have sent connection invitations inadvertently.

5.  ***Corona v. Sony Pictures Entertainment***, No.  2:14-CV-09660-RGK (C.D. Cal.).  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel in class action litigation against Sony for failing to take reasonable measures to secure the data of its employees from hacking and other attacks.  As a result, personally identifiable information of thousands of current and former Sony employees and their families was obtained and published on websites across the Internet.  Among the staggering array of personally identifiable information compromised were  medical records, Social Security Numbers, birth dates, personal emails, home addresses, salaries, tax information, employee evaluations, disciplinary actions, criminal background checks, severance packages, and family medical histories. The complaint charged that Sony owed a duty to take reasonable steps to secure the data of its employees from hacking.  Sony allegedly breached this duty by failing to properly invest in adequate IT security, despite having already succumbed to one of the largest data breaches in history only three years ago. In October 2015, an $8 million settlement was reached under which Sony agreed to reimburse employees for losses and harm.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 235 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 105 of 144

## X.    International and Human Rights Litigation

### A.    Successes

1.    ***Holocaust Cases***.  Lieff Cabraser was one of the leading firms that prosecuted claims by Holocaust survivors and the heirs of Holocaust survivors and victims against banks and private manufacturers and other corporations who enslaved and/or looted the assets of Jews and other minority groups persecuted by the Nazi Regime during the Second World War era.  The firm served as Settlement Class Counsel in the case against the Swiss banks for which the Court approved a U.S. $1.25 billion settlement in July 2000.  Lieff Cabraser donated its attorneys' fees in the Swiss Banks case, in the amount of $1.5 million, to endow a Human Rights clinical chair at Columbia University Law School.  The firm was also active in slave labor and property litigation against German and Austrian defendants, and Nazi-era banking litigation against French banks.  In connection therewith, Lieff Cabraser participated in multi-national negotiations that led to Executive Agreements establishing an additional approximately U.S. $5 billion in funds for survivors and victims of Nazi persecution.

Commenting on the work of Lieff Cabraser and co-counsel in the litigation against private German corporations, entitled *In re Holocaust Era German Industry, Bank & Insurance Litigation* (MDL No. 1337), U.S. District Court Judge William G. Bassler stated on November 13, 2002:

> Up until this litigation, as far as I can tell, perhaps with some minor exceptions, the claims of slave and forced labor fell on deaf ears.  You can say what you want to say about class actions and about attorneys, but the fact of the matter is, there was no attention to this very, very large group of people by Germany, or by German industry until these cases were filed. . . .  What has been accomplished here with the efforts of the plaintiffs' attorneys and defense counsel is quite incredible. . . .  I want to thank counsel for the assistance in bringing us to where we are today.  Cases don't get settled just by litigants.  It can only be settled by competent, patient attorneys.

2.    ***Cruz v. U.S., Estados Unidos Mexicanos, Wells Fargo Bank, et al.***, No. 01-0892-CRB (N.D. Cal.).  Working with co-counsel, Lieff Cabraser succeeded in correcting an injustice that dated back 60 years.  The case was brought on behalf of Mexican workers and laborers, known as Braceros ("strong arms"), who came from Mexico to the United States pursuant to bilateral agreements from 1942 through 1946 to aid American farms and industries hurt by employee shortages during World War II in the agricultural, railroad, and other industries.  As part of the Braceros

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 236 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 106 of 144

program, employers held back 10% of the workers' wages, which were to be transferred via United States and Mexican banks to savings accounts for each Bracero. The Braceros were never reimbursed for the portion of their wages placed in the forced savings accounts.

Despite significant obstacles including the aging and passing away of many Braceros, statutes of limitation hurdles, and strong defenses to claims under contract and international law, plaintiffs prevailed in a settlement in February 2009. Under the settlement, the Mexican government provided a payment to Braceros, or their surviving spouses or children, in the amount of approximately $3,500 (USD). In approving the settlement on February 23, 2009, U.S. District Court Judge Charles Breyer stated:

> I've never seen such litigation in eleven years on the bench that was more difficult than this one. It was enormously challenging. . . . It had all sorts of issues . . . that complicated it: foreign law, constitutional law, contract law, [and] statute of limitations. . . . Notwithstanding all of these issues that kept surfacing . . . over the years, the plaintiffs persisted. I actually expected, to tell you the truth, at some point that the plaintiffs would just give up because it was so hard, but they never did. They never did. And, in fact, they achieved a settlement of the case, which I find remarkable under all of these circumstances.

## *FIRM BIOGRAPHY:*

### PARTNERS

**ELIZABETH J. CABRASER**, Admitted to practice in California, 1978; U.S. Supreme Court, 1996; U.S. Tax Court, 1979; California Supreme Court, 1978; U.S. District Court, Northern District of California, 1978; U.S. District Court, Eastern District of California, 1979; U.S. District Court, Central District of California and Southern District of California, 1992; U.S. District Court, Eastern District of Michigan, 2005; U.S. Court of Appeals, First Circuit, 2011; U.S. Court of Appeals, Second Circuit, 2009; U.S. Court of Appeals, Third Circuit, 1994; U.S. Court of Appeals, Fifth Circuit, 1992; U.S. Court of Appeals, Sixth Circuit, 1992; U.S. Court of Appeals, Seventh Circuit, 2001; U.S. Court of Appeals, Ninth Circuit, 1979; U.S. Court of Appeals, Tenth Circuit, 1992; U.S. Court of Appeals, Eleventh Circuit, 1992; U.S. District Court, District of Hawaii, 1986; Fourth Circuit Court of Appeals, 2013. *Education*: University of California, Berkeley, School of Law (Berkeley Law), Berkeley, California (J.D., 1978); University of California at Berkeley (A.B., 1975). *Awards and Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; selected for inclusion by peers in The Best Lawyers in America in the fields of "Mass Tort Litigation/Class Actions – Plaintiffs" and "Personal Injury Litigation – Plaintiffs, Product Liability Litigation – Plaintiffs," 2005-2020; "Lawdragon 500 Leading Plaintiff

09-50026-mg Doc 14696-2 Filed 03/27/20 Entered 03/27/20 21:11:57 Exhibit B - Motion for Preliminary Approval of Class Settlement Papers Pg 237 of 281

Case 1:14-md-02543-JMF Document 7819-1 Filed 03/27/20 Page 107 of 144

Financial Lawyers in America," Lawdragon, 2020; "Northern California Super Lawyer," *Super Lawyers*, 2004-2019; "Lawyer of the Year," *Best Lawyers*, recognized in the category of Mass Tort Litigation/Class Actions - Plaintiffs and Product Liability Litigation - Plaintiffs for San Francisco, 2014, 2016, 2019; "Elite Women of the Plaintiffs Bar," National Law Journal, 2018; "Champion of Justice," Public Justice, 2018; "Titan of the Plaintiffs' Bar," *Law360*, 2018; "Top California Women Lawyers," *Daily Journal*, 2007-2019; "National Trial Lawyers Hall of Fame," National Trial Lawyers Association, 2018; "Lifetime Achievement Award," *National Law Journal*, 2017; "Plaintiff Lawyer of the Year," *Benchmark Litigation*, 2017; "Top 250 Women in Litigation," *Benchmark Litigation*, 2016-2018; "Top Plaintiff Lawyers," *Daily Journal*, 2016-2017, 2019; "Leader in the Field" for General Commercial Litigation (California); Product Liability – Plaintiffs (Nationwide), *Chambers USA*, 2017; "Energy and Environmental Law Trailblazer," *National Law Journal*, 2017; "Top 10 Northern California Super Lawyers," *Super Lawyers*, 2011-2018; "Top 50 Women Northern California Super Lawyers," *Super Lawyers*, 2005-2018; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2005-2019; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017; "California Litigation Star," *Benchmark Litigation*, 2012-2017; "Litigator of the Week," *American Lawyer Litigation Daily*, October 28, 2016; "25 Most Influential Women in Securities Law," *Law360*, 2016 ; "MVP for Class Action Law," *Law360*, 2016; "Judge Learned Hand Award," American Jewish Committee, 2016; "Top 10 Female Litigators," *Benchmark Litigation*, 2016-2017; "Women Trailblazers in the Law," Senior Lawyers Division, American Bar Association, 2015 "Top 100 Trial Lawyers in America," *Benchmark Litigation*, 2015; "Top Trial Lawyer," *Benchmark Litigation*, 2016; "Top 100 Attorneys in California," *Daily Journal*, 2002-2007, 2010-2016; "Lawdragon 500 Leading Lawyers in America," *Lawdragon*, 2006-2019; "Outstanding Women Lawyer," *National Law Journal*, 2015; "Top 10 Northern California Super Lawyer," *Super Lawyers*, 2011-2018; "Recommended Lawyer," *The Legal 500* (U.S. edition, 2000-2014); "100 Most Influential Lawyers in America," *The National Law Journal*, 1997, 2000, 2006, & 2013; "Lifetime Achievement Award," American Association for Justice, 2012; "Outstanding Achievement Award," Chambers USA, 2012; "Margaret Brent Women Lawyers of Achievement Award," American Bar Association Commission on Women in the Profession, 2010; "Edward Pollock Award," Consumer Attorneys of California, 2008; "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, Winter 2007; "50 Most Influential Women Lawyers in America," *The National Law Journal*, 1998 & 2007; "Award For Public Interest Excellence," University of San Francisco School of Law Public Interest Law Foundation, 2007; "Top 75 Women Litigators," *Daily Journal*, 2005-2006; "Lawdragon 500 Leading Litigators in America," *Lawdragon*, 2006; "Distinguished Leadership Award," Legal Community Against Violence, 2006; "Women of Achievement Award," Legal Momentum (formerly the NOW Legal Defense & Education Fund), 2006; "Top 30 Securities Litigator," *Daily Journal*, 2005; "Top 50 Women Litigators," *Daily Journal*, 2004; "Citation Award," University of California, Berkeley, School of Law (Berkeley Law), 2003; "Distinguished Jurisprudence Award," Anti-Defamation League, 2002; "Top 30 Women Litigators," *California Daily Journal*, 2002; "Top Ten Women Litigators," *The National Law Journal*, 2001; "Matthew O. Tobriner Public Service Award," Legal Aid Society, 2000; "California Law Business Top 100 Lawyers," *California Daily Journal*, 2000; "California Lawyer of the Year (CLAY)," *California Lawyer*, 1998; "Presidential Award of Merit," Consumer Attorneys of California, 1998; "Public Justice Achievement Award," Public Justice, 1997. *Publications & Presentations*: Editor-in-Chief, *California Class Actions Practice and Procedure*, LexisNexis (updated annually); "Punitive Damages," Proving and Defending

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 238 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 108 of 144

Damage Claims, Chapter 8, Aspen Publishers (updated annually); "Symposium: Enforcing the Social Contract through Representative Litigation," 33 Connecticut Law Review 1239 (Summer 2011); "Apportioning Due Process: Preserving The Right to Affordable Justice," 87 Denver U. L.Rev. 437 (2010); "Due Process Pre-Empted: Stealth Preemption As a Consequence of Agency Capture" (2010); "When Worlds Collide: The Supreme Court Confronts Federal Agencies with Federalism in *Wyeth v. Levine*," 84 Tulane L. Rev. 1275 (2010); "Just Choose: The Jurisprudential Necessity to Select a Single Governing Law for Mass Claims Arising from Nationally Marketed Consumer Goods and Services," *Roger Williams University Law Review* (Winter 2009); "California Class Action Classics," Consumer Attorneys of California (January/February Forum 2009); Executive Editor, ABA Section of Litigation, *Survey of State Class Action Law*, 2008-2010; Coordinating Editor, ABA Section of Litigation, *Survey of State Class Action Law*, 2006-2007; "The Manageable Nationwide Class: A Choice-of-Law Legacy of *Phillips Petroleum Co. v. Shutts*," *University of Missouri- Kansas City Law Review*, Volume 74, Number 3, Spring 2006; Co-Author with Fabrice N. Vincent, "Class Actions Fairness Act of 2005," *California Litigation*, Vol. 18, No. 3 (2005); Co-Author with Joy A. Kruse, Bruce Leppla, "Selective Waiver: Recent Developments in the Ninth Circuit and California," (pts. 1 & 2), *Securities Litigation Report* (West Legalworks May & June 2005); Editor-in-Chief, *California Class Actions Practice and Procedures* (2003); "A Plaintiffs' Perspective On The Effect of State Farm v. Campbell On Punitive Damages in Mass Torts" (May 2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law*, updated and re-published in *5 Newberg on Class Actions* (ABA 2001-2004); Co-Author, "Mass But Not (Necessarily) Class: Emerging Aggregation Alternatives Under the Federal Rules," *ABA 8th Annual National Institute on Class Actions*, New York (Oct. 15, 2004), New Orleans (Oct. 29, 2004); Co-Author, "2004 ABA Toxicology Monograph-California State Law," (January 2004); "Mass Tort Class Actions," ATLA's Litigating Tort Cases, Vol. 1, Chapter 9 (June 2003); "Human Rights Violations as Mass Torts: Compensation as a Proxy for Justice in the United States Civil Litigation System"; Co-Author with Fabrice N. Vincent, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-Author with Fabrice N. Vincent, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2001-2002); "Unfinished Business: Reaching the Due Process Limits of Punitive Damages in Tobacco Litigation Through Unitary Classwide Adjudication," *36 Wake Forest Law Review 979* (Winter 2001); "Symposium: Enforcing the Social Contract through Representative Litigation," *33 Connecticut Law Review 1239* (Summer 2001); "Equity for the Victims, Equity for the Transgressor: The Classwide Treatment of Punitive Damages Claims," *74 Tulane Law Review 2005* (June 2000); "Class Action Trends and Developments After Amchem and Ortiz," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 1999); Contributor/Editor, *Moore's Federal Practice* (1999); Co-Author, "Preliminary Issues Regarding Forum Selection, Jurisdiction, and Choice of Law in Class Actions," (December 1999); "Life After Amchem: The Class Struggle Continues," *31 Loyola Law Review 373* (1998); "Recent Developments in Nationwide Products Liability Litigation: The Phenomenon of Non-Injury Products Cases, the Impact of Amchem and the Trend Toward State Court Adjudication," *Products Liability* (ABA February 1998); Contributor/Editor, *California Causes of Action* (1998); "Beyond Bifurcation:

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 239 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 109 of 144

Multi-Phase Structure in Mass Tort Class Actions," *Class Actions & Derivative Suits* (Spring 1997); "The Road Not Taken: Thoughts on the Fifth Circuit's Decertification of the Castano Class," *SB24 ALI-ABA 433* (1996); "Getting the Word Out: Pre-Certification Notice to Class Members Under Rule 23(d)(2)," *Class Actions & Derivative Suits Newsletter* (October 1995); "Mass Tort Class Action Settlements," *24 CTLA Forum 11* (January-February 1994); "Do You Know the Way from San Jose? The Evolution of Environmental and Toxic Nuisance Class Actions," *Class Actions & Derivative Suits* (Spring 1994); "An Oracle of Change? Realizing the Potential of Emerging Fee Award Methodologies for Enhancing The Role and Control of Investors in Derivative and Class Action Suits," *Principles of Corporate Governance* (ALI October 1994); "How To Streamline Complex Litigation: Tailor a Case Management Order to Your Controversy," *21 The Brief 12* (ABA/TIPS Summer 1992); "The Applicability of the Fraud-On-The-Market Theory to Undeveloped Markets: When Fraud Creates the Market," *12 Class Action Reports 402* (1989); "Mandatory Certification of Settlement Classes," *10 Class Action Reports 151* (1987). *Member*: American Academy of Arts and Sciences (Fellow); American Association for Justice (Fight for Justice Campaign; Women Trial Lawyers Caucus; California State Liaison); American Bar Association (Committee on Mass Torts, Past Co-Chair; Committee on Class Actions and Derivative Suits; Tort and Insurance Practice Section; Rules & Procedures Committee, Past Vice-Chair; Civil Procedure & Evidence News Letter, Contributor; Business Law Section); American Constitution Society, Board of Advisors; American Law Institute (1993 - present; Council, 1999 - present; Adviser, the Restatement Third, Consumer Contracts project and the Restatement Third, Torts: Liability for Economic Harm; Members Consultative Group, the Restatement Third, Torts: Liability for Physical Harm; past Adviser, the Recognition & Enforcement of Foreign Judgments project and the Principles of the Law of Aggregate Litigation project); Association of Business Trial Lawyers; Bar Association of the Fifth Federal Circuit; Bar Association of San Francisco (Past President, Securities Litigation Section; Board of Directors, 1997 - 1998; Judiciary Committee); Bay Area Lawyers for Individual Freedom; California Constitution Revision Commission (1993 -1996); California Women Lawyers; Consumer Attorneys of California; Federal Bar Association; Federal Bar Association (Northern District of California Chapter); Federal Civil Rules Advisory Committee (Appointed by Supreme Court, 2011); Lawyers Club of San Francisco; National Center for State Courts (Board Member; Mass Tort Conference Planning Committee); National Judicial College (Board of Trustees); Ninth Circuit Judicial Conference (Lawyer Delegate, 1992 - 1995); Northern District of California Civil Justice Reform Act (Advisory Committee; Advisory Committee on Professional Conduct); Northern District of California Civil Justice Reform Act (CJRA) Advisory Committee; Public Justice Foundation; Queen's Bench; State Bar of California.

**RICHARD M. HEIMANN**, Admitted to practice in Pennsylvania, 1972; District of Columbia, 1974; California, 1975; New York, 2000; U.S. Supreme Court, 1980; U.S. Court of Appeals, Second Circuit, 2013; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. Court of Appeals, Eleventh Circuit, 2015; U.S. Court of Appeals, D.C. Circuit, 1973; U.S. District Court, Central District of California, 2001; U.S. District Court, Northern District of California, 1975; U.S. District Court, Southern District of California, 2005; U.S. District Court, District of Hawaii, 1985;U.S. District Court, District of Colorado, 2006. *Education*: Georgetown University (J.D., 1972); *Georgetown Law Journal*, 1971-72; University of Florida (B.S.B.A., with honors, 1969). *Prior Employment*: Mr. Heimann served as Deputy District Attorney and Acting Assistant District Attorney for Tulare County, California, 1974-75, and as an Assistant Public Defender in

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 240 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 110 of 144

Philadelphia, Pennsylvania, 1972-74. As a private civil law attorney, Mr. Heimann has tried over 30 civil jury cases, including complex cases such as the successful *FPI/Agretech* and *Edsaco* securities class action trials.  In April 2002 in the *Edsaco* case, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd., which included $165 million in punitive damages. *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in The Best Lawyers in America in fields of "Bet the Company Litigation," "Litigation – Antitrust," "Litigation – Securities," and "Mass Tort Litigation/Class Actions – Plaintiffs," 2007-2020; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020; "Lawdragon 500 Leading Lawyers in America," Lawdragon, 2019; "Northern California Super Lawyer," *Super Lawyers*, 2004-2019; "Lawyer of the Year," *Best Lawyers*, Litigation-Securities for San Francisco, 2016-2017; "Top 100 Trial Lawyers in America," *Benchmark Litigation*, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017; "California Litigation Star," *Benchmark Litigation*, 2013-2016; "Trial Ace," *Law360* (one of 50 attorneys in the U.S. recognized by *Law360* in 2015 as the foremost trial lawyers in America); Legal 500 recommended lawyer, *LegalEase*, 2013; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2013; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2011; California Lawyer of the Year (CLAY) Award, *California Lawyer*, 2011, 2013; "Lawdragon Finalist," Lawdragon, 2009-2011; "Top 100 Attorneys in California," *Daily Journal*, 2010-2011; "Top Attorneys In Securities Law," Super Lawyers Corporate Counsel Edition, 2010, 2012. *Publications & Presentations:* Securities Law Roundtable, *California Lawyer* (March 2013); Securities Law Roundtable, *California Lawyer* (September 2010); Securities Law Roundtable, *California Lawyer* (March 2009); Securities Law Roundtable, *California Lawyer* (April 2008); Securities Law Roundtable, *California Lawyer* (April 2007); Co-Author, "Preliminary Issues Regarding Forum Selection, Jurisdiction, and Choice of Law in Class Actions" (December 1999). *Member*:  State Bar of California; Bar Association of San Francisco.

  **DONALD C. ARBITBLIT**, Admitted to practice in Vermont, 1979; California and U.S. District Court, Northern District of California, 1986. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 1979); Order of the Coif; Tufts University (B.S., *magna cum laude*, 1974). *Awards and Honors:* AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Mass Tort Litigation/Class Actions - Plaintiffs" and "Personal Injury Litigation – Plaintiffs," 2012-2020; Northern California Super Lawyers," *Super Lawyers*, 2004, 2006-2008, 2014-2019; Legal 500 recommended lawyer, *LegalEase*, 2013; "*Lawdragon* Finalist," *Lawdragon*, 2009-2011. *Publications & Presentations*:  Co-Author with Wendy Fleishman, "The Risky Business of Off-Label Use," *Trial* (March 2005); "Comment on Joiner: Decision on the Daubert Test of Admissibility of Expert Testimony," *6 Mealey's Emerging Toxic Torts*, No. 18 (December 1997); Co-author with William Bernstein, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," *3 Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996); "The Plight of American Citizens Injured by Transboundary River Pollution," *8 Ecology Law Quarterly*, No. 2 (1979). *Appointments*:  Co-Chair, California JCCP Yaz Science Committee, 2010-Present; Member of the Federal Court-appointed Science Executive Committee, and Chair of the Epidemiology/Clinical Trials Subcommittee, *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La.); Member of the Federal Court-appointed Science and Expert Witness Committees in *In re Diet Drugs (Phentermine/Fenfluramine*

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 241 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 111 of 144

*/Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), *In re Baycol Products Litigation*, MDL No. 1431 (D. Minn.) and *Rezulin Products Liability Litigation*, MDL No. 1348 (S.D.N.Y.). *Member*: State Bar of California; Bar Association of San Francisco.

**STEVEN E. FINEMAN,** Managing Partner. Admitted to practice in California, 1989; U.S. District Court, Northern, Eastern and Central Districts of California and U.S. Court of Appeals, Ninth Circuit, 1995; U.S. Court of Appeals, Fifth Circuit, 1996; New York, U.S. District Court, Eastern and Southern Districts of New York, U.S. District Court, District of Colorado, 2006; U.S. Court of Appeals, Second Circuit and U.S. Supreme Court, 1997; U.S. District Court for the District of Columbia, 1997. *Education*: University of California, Hastings College of the Law (J.D., 1988); University of California, San Diego (B.A., 1985); Stirling University, Scotland (English Literature and Political Science, 1983-84). *Awards & Honors*: Selected for inclusion by peers in The Best Lawyers in America in the fields of "Mass Tort Litigation/Class Actions – Plaintiffs," 2006-2020; "Super Lawyer for New York Metro", *Super Lawyers*, 2006-2019; "Lawyer of the Year," *Best Lawyers*, recognized in the category of Mass Tort Litigation/Class Actions – Plaintiffs for New York City, 2016; "New York Litigation Star," *Benchmark Litigation*, 2013-2016; Member, *Best Lawyers* Advisory Board, a select group of U.S. and international law firm leaders and general counsel, 2011-2012; "Lawdragon Finalist," *Lawdragon*, 2009-present; "Top Attorneys In Securities Law," *Super Lawyers Business Edition*, 2008-present; Consultant to the Office of Attorney General, State of New York, in connection with an industry-wide investigation and settlement concerning health insurers' use of the "Ingenix database" to determine usual and customary rates for out-of-network services, April 2008-February 2009; "100 Managing Partners You Need to Know," *Lawdragon*, 2008; "40 Under 40," selected as one of the country's most successful litigators under the age of 40, *The National Law Journal*, 2002. *Publications & Presentations*: American Association for Justice, The Future of Class Actions: Teamwork, Savvy Defense, and Smart Offense, Panel Member, "Going on Offense: Developing a Proactive Plan" (May 11, 2017, Nashville, Tennessee); University of Haifa Faculty of Law, Dispute Resolution of Consumer Mass Disputes, Panelist, "The Role of the Lead Lawyer in Consumer Class Actions" (March 17, 2017, Haifa, Israel); Global Justice Forum, Presented by Robert L. Lieff – Moderator of Financial Fraud Litigation Panel and Participant on Financing of Litigation Panel (October 4, 2011, Columbia Law School, New York, New York); The Canadian Institute, The 12th Annual Forum on Class Actions – Panel Member, *Key U.S. and Cross-Border Trends: Northbound Impacts and Must-Have Requirements* (September 21, 2011, Toronto, Ontario, Canada); Co-Author with Michael J. Miarmi, "The *Basic*s of Obtaining Class Certification in Securities Fraud Cases: U.S. Supreme Court Clarifies Standard, Rejecting Fifth Circuit's 'Loss Causation' Requirement," *Bloomberg Law Reports* (July 5, 2011); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Representing Plaintiffs in Large-Scale Litigation (March 2, 2011, Stanford, California); Stanford University Law School — Panel Member, Symposium on the Future of the Legal Profession, (March 1, 2011, Stanford, California); Stanford University Law School, Member, Advisory Forum, Center of the Legal Profession (2011-Present); 4th Annual International Conference on the Globalization of Collective Litigation — Panel Member, Funding Issues: Public versus Private Financing (December 10, 2010, Florida International University College of Law, Miami, Florida); "Bill of Particulars, A Review of Developments in New York State Trial Law," Column, *The Supreme Court's Decisions in Iqbol and Twombly Threaten Access to Federal Courts* (Winter 2010); American Constitution Society for Law and Policy,

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 242 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 112 of 144

Access to Justice in Federal Courts — Panel Member, The Iqbal and Twombly Cases (January 21, 2010, New York, New York); American Bar Association, Section of Litigation, The 13th Annual National Institute on Class Actions — Panel Member, Hydrogen Peroxide Will Clear It Up Right Away: Developments in the Law of Class Certification (November 20, 2009, Washington, D.C.); Global Justice Forum, Presented by Robert L. Lieff and Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Co-Host and Moderator of Mediation/Arbitration Panel (October 16, 2009, Columbia Law School, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts/U.S. Lawyers in Foreign Courts (April 6, 2009, Stanford, California); Consultant to the Office of Attorney General, State of New York, in connection with an industry-wide investigation and settlement concerning health insurers' use of the "Ingenix database" to determine usual and customary rates for out-of-network services, April 2008-February 2009; Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts/U.S. Lawyers in Foreign Courts (April 16, 2008, Stanford, California); Benjamin N. Cardozo Law School, The American Constitution Society for Law & Policy, and Public Justice, Co-Organizer of conference and Master of Ceremonies for conference, Justice and the Role of Class Actions (March 28, 2008, New York, New York); Stanford University Law School and The Centre for Socio-Legal Studies, Oxford University, Conference on The Globalization of Class Actions, Panel Member, Resolution of Class and Mass Actions (December 13 and 14, 2007, Oxford, England); Editorial Board and Columnist, "Federal Practice for the State Court Practitioner," New York State Trial Lawyers Association's "Bill of Particulars," (2005-present); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Federal Multidistrict Litigation Practice* (Fall 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Pleading a Federal Court Complaint* (Summer 2007); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts (April 17, 2007, Palo Alto, California); "Bill of Particulars, A Review of Developments in New York State Law," *Initiating Litigation and Electronic Filing in Federal Court* (Spring 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," Column, *Federal Court Jurisdiction: Getting to Federal Court By Choice or Removal* (Winter 2007); American Constitution Society for Law and Policy, 2006 National Convention, Panel Member, Finding the Balance: Federal Preemption of State Law (June 16, 2006, Washington, D.C.); Global Justice Forum, Presented by Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Moderator and Panel Member on Securities Litigation (May 19, 2006, Paris, France); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Court (April 25, 2006, Stanford, California); Global Justice Forum, Presented by Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Moderator and Speaker and Papers, The Basics of Federal Multidistrict Litigation: How Disbursed Claims are Centralized in U.S. Practice and Basic Principles of Securities Actions for Institutional Investors (May 20, 2005, London, England); New York State Trial Lawyers Institute, Federal Practice for State Practitioners, Speaker and Paper, *Federal Multidistrict Litigation Practice*, (March 30, 2005, New York, New York), published in "Bill of Particulars, A Review of Developments in New York State Trial Law" (Spring 2005); Stanford University Law School, The Stanford Center on Conflict and Negotiation, Interdisciplinary Seminar on Conflict and Dispute Resolution, Guest Lecturer, In Search of "Global Settlements": Resolving Class Actions and Mass Torts with Finality (March 16, 2004, Stanford, California); Lexis/Nexis, Mealey's Publications and Conferences Group, Wall

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 243 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 113 of 144

Street Forum: Mass Tort Litigation, Co-Chair of Event (July 15, 2003, New York, New York); Northstar Conferences, The Class Action Litigation Summit, Panel Member on Class Actions in the Securities Industry, and Paper, Practical Considerations for Investors' Counsel - Getting the Case (June 27, 2003, Washington, D.C.); The Manhattan Institute, Center for Legal Policy, Forum Commentator on Presentation by John H. Beisner, Magnet Courts: If You Build Them, Claims Will Come (April 22, 2003, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's Courses on Complex Litigation, Selecting The Forum For a Complex Case — Strategic Choices Between Federal And State Jurisdictions, and Alternative Dispute Resolution ADR In Mass Tort Litigation, (March 4, 2003, Stanford, California); American Bar Association, Tort and Insurance Practice Section, Emerging Issues Committee, Member of Focus Group on Emerging Issues in Tort and Insurance Practice (coordinated event with New York University Law School and University of Connecticut Law School, August 27, 2002, New York, New York); Duke University and University of Geneva, "Debates Over Group Litigation in Comparative Perspective," Panel Member on Mass Torts and Products Liability (July 21-22, 2000, Geneva, Switzerland); *New York Law Journal*, Article, Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme (November 23, 1998); Leader Publications, Litigation Strategist, "Fen-Phen," Article, *The Admissibility of Scientific Evidence in Fen-Phen Litigation and Daubert Developments: Something For Plaintiffs*, Defense Counsel (June 1998, New York, New York); "Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme," New York Law Journal (November 23, 1998); The Defense Research Institute and Trial Lawyer Association, Toxic Torts and Environmental Law Seminar, Article and Lecture, A Plaintiffs' Counsels' Perspective: What's the Next Horizon? (April 30, 1998, New York, New York); Lexis/Nexis, Mealey's Publications and Conference Group, Mealey's Tobacco Conference: Settlement and Beyond 1998, Article and Lecture, The Expanding Litigation (February 21, 1998, Washington, D.C.); New York State Bar Association, Expert Testimony in Federal Court After Daubert and New Federal Rule 26, Article and Lecture, Breast Implant Litigation: Plaintiffs' Perspective on the Daubert Principles (May 23, 1997, New York, New York); Plaintiff Toxic Tort Advisory Council, Lexis/Nexis, Mealey's Publications and Conferences Group (January 2002-2005). *Member*: American Association for Justice; American Bar Association; American Constitution Society (Board of Directors, 2016-present);  Anti-Defamation League, National Commission Member; Anti-Defamation League New York Region, Chair (2019); Association of the Bar of the City of New York; Bar Association of the District of Columbia; Civil Justice Foundation (Board of Trustees, 2004-present); Fight for Justice Campaign; Human Rights First; National Association of Shareholder and Consumer Attorneys (Executive Committee, 2009-present); New York State Bar Association; New York State Trial Lawyers Association (Board of Directors, 2001-2004); New York State Trial Lawyers Association's "Bill of Particulars" (Editorial Board and Columnist, "Federal Practice for the State Court Practitioner," 2005-present); Plaintiff Toxic Tort Advisory Council (Lexis/Nexis, Mealey's Publications and Conferences Group, 2002-2005); Public Justice Foundation (President, 2011-2012; Executive Committee, July 2006-present; Board of Directors, July 2002-present); Co-Chair, Major Donors/Special Gifts Committee, July 2009-present; Class Action Preservation Project Committee, July 2005-present); State Bar of California; Supreme Court Historical Society.

**ROBERT J. NELSON**, Admitted to practice in California, 1987; California Supreme Court; U.S. District Court, Central District of California, 1987; U.S. District Court, Northern

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 244 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 114 of 144

District of California, 1988; U.S. Court of Appeals, Ninth Circuit, 1988; U.S. Court of Appeals, Sixth Circuit, 1995; U.S. Court of Appeals, Seventh Circuit, 2016; District of Columbia, 1998; U.S. District Court, Eastern District of California, 2006; U.S. District Court, Northern District of Ohio; U.S. District Court, Southern District of Ohio; U.S. District Court, Middle District of Tennessee. *Education*: New York University School of Law (J.D., 1987): Order of the Coif, Articles Editor, *New York University Law Review*; Root-Tilden-Kern Scholarship Program. Cornell University (A.B., *cum laude* 1982): Member, Phi Beta Kappa; College Scholar Honors Program. London School of Economics (General Course, 1980-81): Graded First. *Prior Employment:* Judicial Clerk to Judge Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 1987-88; Assistant Federal Public Defender, Northern District of California, 1988-93; Legal Research and Writing Instructor, University of California-Hastings College of the Law, 1989-91 (Part-time position). *Awards & Honors*: Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Personal Injury Litigation – Plaintiffs" and "Product Liability Litigation – Plaintiffs," 2012-2020; "Trial Lawyer of the Year," 2019, Public Justice; "Northern California Super Lawyer," *Super Lawyers*, 2004-2019; "California Litigation Star," *Benchmark Litigation*, 2013-2016; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2007, 2010, 2014-2015; Legal 500 recommended lawyer, *LegalEase*, 2013-Present; "Lawdragon Finalist," *Lawdragon*, 2009-2011; "California Lawyer Attorney of the Year (CLAY)" Award, *California Lawyer*, 2008, 2010; "San Francisco Trial Lawyer of the Year Finalist," San Francisco Trial Lawyers' Association, 2007. *Publications:* False Claims Roundtable, California Lawyer (January 2013); False Claims Roundtable, California Lawyer (April 2012); False Claims Roundtable, California Lawyer (June 2011); False Claims Roundtable, *California Lawyer* (June 2010); Product Liability Roundtable, *California Lawyer* (March 2010); Product Liability Roundtable, *California Lawyer* (July 2009); "Class Action Treatment of Punitive Damages Issues after *Philip Morris v. Williams*: We Can Get There from Here," 2 Charleston Law Review 2 (Spring 2008) (with Elizabeth J. Cabraser); Product Liability Roundtable, California Lawyer (December 2007); Contributing Author, California Class Actions Practice and Procedures (Elizabeth J. Cabraser editor in chief, 2003); "The Importance of Privilege Logs," The Practical Litigator, Vol. II, No. 2 (March 2000) (ALI-ABA Publication); "To Infer or Not to Infer a Discriminatory Purpose: Rethinking Equal Protection Doctrine," 61 New York University Law Review 334 (1986). *Member*: American Association for Justice, Fight for Justice Campaign; American Bar Association; American Civil Liberties Union of Northern California; Bar Association of San Francisco; Bar of the District of Columbia; Consumer Attorneys of California; Human Rights Watch California Committee North; RE-volv, Board Member; San Francisco Trial Lawyers Association; State Bar of California.

**KELLY M. DERMODY**, Admitted to practice in California (1994); U.S. Supreme Court (2013); U.S. Court of Appeals for the First Circuit (2012); U.S. Court of Appeals for the Second Circuit (2010); U.S. Court of Appeals for the Third Circuit (2001); U.S. Court of Appeals for the Fourth Circuit (2008); U.S. Court of Appeals for the Sixth Circuit (2008); U.S. Court of Appeals for the Seventh Circuit (2006); U.S. Court of Appeals for the Ninth Circuit (2007); U.S. District Court, Northern District of California (1995); U.S. District Court, Central District of California (2005); U.S. District Court, Eastern District of California (2012); U.S. District Court of Colorado (2007). *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 1993); Moot Court Executive Board (1992-1993); Articles Editor, *Industrial Relations Law Journal/Berkeley Journal of Employment and Labor Law* (1991-1992); Harvard University

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 245 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 115 of 144

(A.B. *magna cum laude*, 1990), Senior Class Ames Memorial Public Service Award. *Prior Employment*: Law Clerk to Chief Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, 1993-1994; Adjunct Professor of Law, Golden Gate University School of Law, Employment Law (Spring 2001). *Awards & Honors:* AV Preeminent Peer Review Rated, Martindale-Hubbell; "Margaret Brent Women Lawyers of Achievement Award," American Bar Association Commission on Women in the Profession, 2019; "Top California Women Lawyers," *Daily Journal*, 2007, 2010, 2012-2018; Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Employment Law – Individuals" and "Litigation – Labor and Employment," 2010-2020; "500 Leading Lawyers in America," Lawdragon, 2010-2017, 2019; "Employment Law Trailblazer, National Law Journal, 2019; "Northern California Super Lawyer," *Super Lawyers*, 2004-2019; "Lawyer of the Year," *Best Lawyers*, Employment Law-Individuals for San Francisco, 2014, 2018; "Top Labor & Employment Lawyers," Daily Journal, 2018; "Top 250 Women in Litigation," *Benchmark Litigation*, 2016-2018; "Gender Justice Honoree," Equal Rights Advocates, 2017; "California Litigation Star," *Benchmark Litigation*, 2013-2017; Fellow, The College of Labor and Employment Lawyers, 2015; "Top 100 Attorneys in California, *Daily Journal*, 2012-2015; "Top 75 Labor and Employment Attorneys in California," *Daily Journal*, 2011-2015; "Top 50 Women Northern California Super Lawyers," *Super Lawyers*, 2007-2018; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2007, 2009-2016; Distinguished Jurisprudence Award, Anti-Defamation League, 2014; "Lawyer of the Year," *Best Lawyers*, recognized in the category of Employment Law – Individuals for San Francisco, 2014, 2018; "Top 10 Northern California Super Lawyers, *Super Lawyers*, 2014; "Dolores Huerta Adelita Award," California Rural Assistance, 2013; "Recommended Lawyer," *The Legal 500* (U.S. edition, 2013); "Women of Achievement Award," Legal Momentum (formerly the NOW Legal Defense & Education Fund), 2011; "Irish Legal 100" Finalist, *The Irish Voice*, 2010; "Florence K. Murray Award," National Association of Women Judges, 2010 (for influencing women to pursue legal careers, opening doors for women attorneys, and advancing opportunities for women within the legal profession); "Lawdragon Finalist," *Lawdragon*, 2007-2009; "Community Service Award," Bay Area Lawyers for Individual Freedom, 2008; "Community Justice Award," Centro Legal de la Raza, 2008; "Award of Merit," Bar Association of San Francisco, 2007; "California Lawyer Attorney of the Year (CLAY) Award," *California Lawyer*, 2007; "500 Leading Plaintiffs' Lawyers in America," *Lawdragon*, Winter 2007; "Trial Lawyer of the Year Finalist," Public Justice Foundation, 2007; "Consumer Attorney of the Year" Finalist, Consumer Attorneys of California, 2006; "California's Top 20 Lawyers Under 40," *Daily Journal*, 2006; "Living the Dream Partner," Lawyers' Committee for Civil Rights of the San Francisco Bay Area, 2005; "Top Bay Area Employment Attorney*," The Recorder*, 2004. *Member*: American Law Institute, Elected Member, 2019; American Bar Association, Labor and Employment Law Section (Governing Council, 2009-present; Co-Chair, Section Conference, 2008-2009; Vice-Chair, Section Conference, 2007-2008; Co-Chair, Committee on Equal Opportunity in the Legal Profession, 2006-2007); American Bar Association, Section of Litigation (Attorney Client Privilege Task Force, 2017-2018); Bar Association of San Francisco (Board of Directors, 2005-2012; President, 2011-2012; President-Elect, 2010-2011; Treasurer, 2009-2010; Secretary, 2008-2009; Litigation Section; Executive Committee, 2002-2005); Bay Area Lawyers for Individual Freedom; Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 1998-2005; Secretary, 1999-2003; Co-Chair, 2003-2005; Member, 1997-Present); Carver Healthy Environments and Response to Trauma in Schools (Steering Committee, 2007); College of Labor and Employment Lawyers (Fellow, 2015);

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 246 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 116 of 144

Consumer Attorneys of California; Equal Rights Advocates (Litigation Committee, 2000-2002); National Association of Women Judges (Independence of the Judiciary Co-Chair, 2011-2014; Resource Board, Co-Chair, 2009-2011, Member, 2005-2014); National Center for Lesbian Rights (Board of Directors, 2002-2008; Co-Chair, 2005-2006); National Employment Lawyers' Association; Northern District of California Historical Society (Board of Directors, 2015-Present); Northern District of California Lawyer Representative to the Ninth Circuit Judicial Conference (2007-2010); Pride Law Fund (Board of Directors, 1995-2002; Secretary, 1995-1997; Chairperson, 1997-2002); Public Justice Foundation; State Bar of California.

**JONATHAN D. SELBIN**, Admitted to practice in California, 1994; District of Columbia, 2000; New York, 2001; U.S. Supreme Court, 2012; U.S. Court of Appeals, Second Circuit, 2016; U.S. Court of Appeals, Third Circuit, 2009; U.S. Court of Appeals, Fifth Circuit, 2002; U.S. Court of Appeals, Sixth Circuit, 2012; U.S. Court of Appeals, Ninth Circuit, 2007; U.S. Court of Appeals, Tenth Circuit, 2014; U.S. District Court, Northern District of California, 1997; U.S. District Court, Central District of California, 1995; U.S. District Court, Northern District of Florida, 2009; U.S. District Court Northern District of Illinois, 2010; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2008; U.S. District Court, Eastern District of Michigan, 2007; U.S. District Court, Eastern District of Wisconsin, 2013. *Education*: Harvard Law School (J.D., *magna cum laude*, 1993); University of Michigan (B.A., *summa cum laude*, 1989). *Prior Employment*: Law Clerk to Judge Marilyn Hall Patel, U.S. District Court, Northern District of California, 1993-95. *Awards & Honors*: Selected for inclusion by peers in *The Best Lawyers in America* in field of " Product Liability Litigation – Plaintiffs," 2013-2020; "New York Super Lawyers," Super Lawyers, 2006-2018; Distinguished Service Award, American Association for Justice, 2016; "New York Litigation Star," *Benchmark Litigation*, 2013-2016; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: On Class Actions (2009) Contributing Author, "Ninth Circuit Reshapes California Consumer-Protection Law," American Bar Association (July 2012); Contributing Author, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser editor-in-chief, 2003); "Bashers Beware:  The Continuing Constitutionality of Hate Crimes Statutes After R.A.V.," 72 *Oregon Law Review* 157 (Spring, 1993). *Member*: American Association for Justice; American Bar Association; District of Columbia Bar Association; Equal Justice Works, Board of Counselors; New York Advisory Board, Alliance for Justice; New York State Bar Association; New York State Trial Lawyers Association; State Bar of California.

**MICHAEL W. SOBOL**, Admitted to practice in Massachusetts, 1989; California, 1998; United States District Court, District of Massachusetts, 1990; U.S. District Court, Northern District of California, 2001; U.S. District Court, Central District of California, 2005; U.S. District Court, Eastern District of California, 2011; U.S. District Court, Southern District of California, 2010; U.S. Court of Appeals for the Ninth Circuit (2009); U.S. Court of Appeals for the Eleventh Circuit (2012). *Education*: Boston University (J.D., 1989); Hobart College (B.A., *cum laude*, 1983). *Prior Employment*: Lecturer in Law, Boston University School of Law, 1995-1997. *Awards & Honors:* Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Mass Tort Litigation/Class Actions – Plaintiffs" and "Product Liability Litigation – Plaintiffs," 2013-2020; "Super Lawyer for Northern California," *Super Lawyers*, 2012 – 2019; "Top Cyber/Artificial Intelligence Lawyer," Daily Journal, 2018-2019; "MVP for Cybersecurity and

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B - Motion for Preliminary Approval of Class Settlement Papers   Pg 247 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 117 of 144

Privacy," Law360, 2017; "Cybersecurity & Data Privacy Trailblazer," The National Law Journal, 2017; California Litigation Star," *Benchmark Litigation*, 2013-2015; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2013; "Top 100 Attorneys in California," *Daily Journal*, 2012-2013; "Trial Lawyer of the Year Finalist," Public Justice, 2012; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2011; "*Lawdragon* Finalist," *Lawdragon*, 2009; "New York Litigation Star,". *Publications & Presentations*: Panelist, National Consumer Law Center's 15th Annual Consumer Rights Litigation Conference, Class Action Symposium; Panelist, Continuing Education of the Bar (C.E.B.) Seminar on Unfair Business Practices—California's Business and Professions Code Section 17200 and Beyond; Columnist, *On Class Actions*, Association of Business Trial Lawyers, 2005 to present; *The Fall of Class Action Waivers* (2005); *The Rise of Issue Class Certification* (2006); *Proposition 64's Unintended Consequences* (2007); *The Reach of Statutory Damages* (2008). *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California, Board of Governors, (2007-2008, 2009-2010); National Association of Consumer Advocates.

*FABRICE N. VINCENT*, Admitted to practice in California, 1992; U.S. District Court, Northern District of California, Central District of California, Eastern District of California, Ninth Circuit Court of Appeals, 1992. *Education*: Cornell Law School (J.D., *cum laude*, 1992); University of California at Berkeley (B.A., 1989). *Awards & Honors:* Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Mass Tort Litigation/Class Actions — Plaintiffs," "Product Liability Litigation — Plaintiffs," and "Personal Injury Litigation — Plaintiffs," 2012-2020; "Super Lawyer for Northern California," *Super Lawyers*, 2006–2019; "Outstanding Subcommittee Chair for the Class Actions & Derivative Suits," *ABA Section of Litigation*, 2013. *Publications & Presentations*: Lead Author, *Citizen Report on Utility Terrain Vehicle (UTV) Hazards and Urgent Need to Improve Safety and Performance Standards; and Request for Urgent Efforts To Increase Yamaha Rhino Safety and Avoid Needless New Catastrophic Injuries, Amputations and Deaths*, Lieff Cabraser Heimann & Bernstein, LLP (2009); Co-Author with Elizabeth J. Cabraser, "Class Actions Fairness Act of 2005," *California Litigation*, Vol. 18, No. 3 (2005); Co-Editor, *California Class Actions Practice and Procedures* (2003-06); Co-Author, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law* (ABA 2000-09), updated and re-published in 5 *Newberg on Class Actions* (2001-09); Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-06); Co-Editor-In-Chief, *Fen-Phen Litigation Strategist* (Leader Publications 1998-2000); Author of "Off-Label Drug Promotion Permitted" (Oct. 1999); Co-Author, "The Future of Prescription Drug Products Liability Litigation in a Changing Marketplace," and "Six Courts Certify Medical Monitoring Claims for Class Treatment," 29 *Forum* 4 (Consumer Attorneys of California 1999); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study 1999); Co-Author, "How Class Proofs of Claim in Bankruptcy Can Help in Medical Monitoring Cases," (Leader Publications 1999); Author, "AHP Loses Key California Motion In Limine," (February 2000); Co-Author, Introduction, "Sanctioning Discovery Abuses in the Federal Court," (LRP

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 248 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 118 of 144

Publications 2000); "With Final Approval, Diet Drug Class Action Settlement Avoids Problems That Doomed Asbestos Pact," (Leader Publications 2000); Author, "Special Master Rules Against SmithKline Beecham Privilege Log," (November 1999). *Member*: American Association for Justice; Association of Business Trial Lawyers; State Bar of California; Bar Association of San Francisco; American Bar Association; Fight for Justice Campaign; Association of Business Trial Lawyers; Society of Automotive Engineers.

*DAVID S. STELLINGS*, Admitted to practice in New York, 1994; New Jersey; 1994; U.S. District Court, Southern District of New York, 1994. *Education*: New York University School of Law (J.D., 1993); Editor, *Journal of International Law and Politics;* Cornell University (B.A., *cum laude*, 1990). *Awards & Honors*: "Super Lawyer for New York Metro," *Super Lawyers*, 2012-2017; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017; "Trial Lawyer of the Year Finalist," Public Justice, 2012; "*Lawdragon* Finalist, *Lawdragon*, 2009. *Member*: New York State Bar Association; New Jersey State Association; Bar Association of the City of New York; American Bar Association.

*ERIC B. FASTIFF,* Admitted to practice in California, 1996; District of Columbia, 1997; U.S. Courts of Appeals for the Third, Ninth and Federal Circuit; U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, District of Columbia; U.S. District Court, Eastern District of Wisconsin; U.S. Court of Federal Claims. *Education*: Cornell Law School (J.D., 1995); Editor-in-Chief, *Cornell International Law Journal;* London School of Economics (M.Sc.(Econ.), 1991); Tufts University (B.A., *cum laude, magno cum honore in thesi*, 1990). *Prior Employment*: Law Clerk to Hon. James T. Turner, U.S. Court of Federal Claims, 1995-1996; International Trade Specialist, Eastern Europe Business Information Center, U.S. Department of Commerce, 1992. *Awards & Honors*: Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Litigation - Antitrust," 2013-2020; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020; "Lawdragon 500 Leading Lawyers in America," Lawdragon, 2019 ; "Northern California Super Lawyer," *Super Lawyers*, 2010-2019; "Top Plaintiff Lawyers," *Daily Journal*, 2016-2017; "Plaintiffs' Law Trailblazer," *National Law Journal*, 2018; "Leader in the Field" for Antitrust (California), Antitrust (National), *Chambers USA*, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017; "California Litigation Star," *Benchmark Litigation*, 2013-2015; Legal 500 recommended lawyer, *LegalEase*, 2013; "Top 100 Lawyers in California," *Daily Journal*, 2013; "Top Attorneys in Business Law," *Super Lawyers* Corporate Counsel Edition, 2012; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: General Editor, *California Class Actions Practice and Procedures*, (2003-2009); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2003-2008); Author, "US Generic Drug Litigation Update," 1 *Journal of Generic Medicines* 212 (2004); Author, "The Proposed Hague Convention on the Recognition and Enforcement of Civil and Commercial Judgments: A Solution to Butch Reynolds's Jurisdiction and Enforcement Problems," 28 *Cornell International Law Journal* 469 (1995). *Member*: American Antitrust Institute (Advisory Board, 2012-Present); Committee to Support the Antitrust Laws, President, 2017; Bar Association of San Francisco; Children's Day School (Board of Trustees); District of Columbia Bar Association; *Journal of Generic Medicines* (Editorial Board Member, 2003-Present); State Bar of California; U.S. Court of Federal Claims Bar Association.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 249 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 119 of 144

**WENDY R. FLEISHMAN**, Admitted to practice in New York, 1992; Pennsylvania, 1977; U.S. Supreme Court, 2000; U.S. Court of Appeals 2nd Circuit, 1998; U.S. Court of Appeals 3rd Circuit, 2010; U.S. Court of Appeals 8th Circuit, 2009; U.S. Court of Appeals 9th Circuit, 2010; U.S. District Court, District of Arizona, 2013; U.S. District Court, Western District of New York, 2012; U.S. District Court Eastern District of New York, 1999; U.S. District Court Northern District of New York, 1999; U.S. District Court Southern District of New York, 1995; U.S. District Court, Eastern District of Wisconsin, 2013; U.S. District Court, Eastern District of Pennsylvania, 1984; U.S. District Court, Western District of Pennsylvania, 2001; U.S. Court of Appeals 5th Circuit, March 5, 2014. *Education*: University of Pennsylvania (Post-Baccalaureate Pre-Med, 1982); Temple University (J.D., 1977); Sarah Lawrence College (B.A., 1974). *Prior Employment*: Skadden, Arps, Slate, Meagher & Flom LLP in New York (Counsel in the Mass Torts and Complex Litigation Department), 1993-2001; Fox, Rothschild O'Brien & Frankel (partner), 1988-93 (tried more than thirty civil, criminal, employment and jury trials, and AAA arbitrations, including toxic tort, medical malpractice and serious injury and wrongful death cases); Ballard Spahr Andrews & Ingersoll (associate), 1984-88 (tried more than thirty jury trials on behalf of the defense and the plaintiffs in civil personal injury and tort actions as well as employment—and construction—related matters); Assistant District Attorney in Philadelphia, PA, 1977-84 (in charge of and tried major homicide and sex crime cases). *Awards and Honors*: Life Fellow, American Bar Foundation; AV Preeminent Peer Review Rated, Martindale-Hubbell; "Top 100 Trial Lawyers," The National Trial Lawyers; Selected for inclusion by peers in The Best Lawyers in America in the field of "Mass Tort Litigation/Class Actions – Plaintiffs," 2019, 2020; "New York Super Lawyers," Super Lawyers, 2006-2018; "New York Litigation Star," *Benchmark Litigation*, 2013-2016; Legal 500 recommended lawyer, *LegalEase*, 2013; Officer of New York State Trial Lawyers Association, 2010-present; New York State Academy of Trial Lawyers, 2011; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: Moderator, "Jurisdiction: Defining State Courts' Authority," Pound Civil Justice Institute Judges Forum; Boston, MA, July 2017; Speaker, "Diversity in Mass Torts," AAJ Education Programs, Boston, MA, July 2017; Speaker, "Mass Torts & Criminality," JAMS Mass Torts Judicial Forum, New York, NY, April 2017; Speaker, "Settling Strategies for MDLs," JAMS Mass Torts Judicial Forum, New York, NY, April 2016; Moderator & Chair, "Toxic, Environmental & Pharmaceutical Torts," American Association for Justice Annual Convention, Baltimore, MD, July 2014; "Where Do You Want To Be? Don't Get Left Behind, Creating a Vision for Your Practice," Minority Caucus and Women Trial Lawyers Caucus (July 22, 2013); Editor, Brown & Fleishman, "Proving and Defending Damage Claims: A Fifty-State Guide" (2007-2010); Co-Author with Donald Arbitblit, "The Risky Business of Off-Label Use," *Trial* (March 2005); Co-Author, "From the Defense Perspective," *Scientific Evidence, Chapter 6, Aspen Law Pub* (1999); Editor, *Trial Techniques Newsletter*, Tort and Insurance Practices Section, American Bar Association (1995-1996; 1993-1994); "How to Find, Understand, and Litigate Mass Torts," NYSTLA Mass Torts Seminar (April 2009); "Ethics of Fee Agreements in Mass Torts," AAJ Education Programs (July 2009). *Appointments:* Plaintiffs' Executive Committee, *IVC Filters Litigation*; Lead Counsel, Joint Coordinated California Litigation, *Amo Lens Solution Litigation*; Co-Liaison, *In re Zimmer Durom Cup Hip Implant Litigation*; Plaintiffs' Steering Committee, DePuy ASR Hip Implant Litigation; Liaison, NJ Ortho Evra Patch Product Liability Litigation; Co-Liaison, NJ Reglan Mass Tort Litigation; Co-Chair, Mealey's Drug & Medical Device Litigation Conference (2007); Executive Committee, *In re ReNu MoistureLoc Product Liability Litigation*, MDL; Discovery Chair, *In re Guidant Products Liability Litigation*; Co-Chair Science Committee, *In re*

09-50026-mg Doc 14696-2 Filed 03/27/20 Entered 03/27/20 21:11:57 Exhibit B - Motion for Preliminary Approval of Class Settlement Papers Pg 250 of 281

Case 1:14-md-02543-JMF Document 7819-1 Filed 03/27/20 Page 120 of 144

*Baycol MDL Litigation*; Pricing Committee, *In re Vioxx MDL Litigation*. *Member*: New York State Trial Lawyers Association (Treasurer, 2010-present; Board of Directors, 2004-Present); Association of the Bar of the City of New York (Product Liability Committee, 2007-present; Judiciary Committee, 2004-Present); American Bar Association (Annual Meeting, Torts & Insurance Practices Section, NYC, Affair Chair, 1997; Trial Techniques Committee, Torts and Insurance Practices, Chair-Elect, 1996); American Association for Justice (Board of Governors); American Association for Justice (Board of Governors, Women Trial Lawyers' Caucus); Pennsylvania Bar Association (Committee on Legal Ethics and Professionalism, 1993-Present; Committee on Attorney Advertising, 1993-Present; Vice-Chair, Task Force on Attorney Advertising, 1991-92); State Bar of New York; Federal Bar Association; Member, Gender and Race Bias Task Force of the Second Circuit, 1994-present; Deputy Counsel, Governor Cuomo's Screening Committee for New York State Judicial Candidates, 1993-94; New York Women's Bar Association; New York County Lawyers; Fight for Justice Campaign; PATLA; Philadelphia Bar Association (Member of Committee on Professionalism 1991-92).

    **RACHEL GEMAN**, Admitted to practice in New York, 1998; Southern and Eastern Districts of New York, 1999; U.S. District Court, Eastern District of Michigan, 2005; U.S. District Court of Colorado, 2007; U.S. Supreme Court, 2013. *Education*: Columbia University School of Law (J.D. 1997); Stone Scholar; Equal Justice America Fellow; Human Rights Fellow; Editor, *Columbia Journal of Law and Social Problems*; Harvard University (A.B. *cum laude* 1993). *Prior Employment*: Adjunct Professor, New York Law School; Special Advisor, United States Mission to the United Nations, 2000; Law Clerk to Judge Constance Baker Motley, U.S. District Court, Southern District of New York, 1997-98. *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in *The Best Lawyers in America* in field of "Employment Law – Individuals," 2012-2020; "Lawyer of the Year," *Best Lawyers*, recognized in the category of Employment Law – Individuals for New York City, 2014-2019; "Super Lawyer for New York Metro," *Super Lawyers*, 2011, 2013-2018; Legal 500 recommended lawyer, *LegalEase*, 2013; "Rising Star for New York Metro," *Super Lawyers*, 2011; Distinguished Honor Award, United States Department of State, 2001. *Publications & Presentations*: Speaker and Moderator, "Statistics for Lawyers - Even Those Who Hate Math," National Employment Lawyers Association Annual Convention (2015); Speaker, "Gender Pay Disparities: Enforcement, Litigation, and Remedies," New York City Conference on Representing Employees (2015); Speaker, "Protecting Pay: Representing Workers With Wage and Hour Claims," National Employment Lawyers Association (2015); Speaker and Author, "What Employment Lawyers Need to Know About Non-Employment Class Actions," ABA Section of Labor and Employment Law Conference (2014); Moderator, "Dodd-Frank and Sarbanes-Oxley Whistleblower Issues," National Employment Lawyers Association/New York (2014); Author, "Whistleblower Under Pressure," *Trial Magazine* (April 2013); Panelist, "Class Certification Strategies: Dukes in the Rear View Mirror," Impact Fund Class Action Conference (2013); Author & Panelist, "Who is an Employer Under the FLSA?" National Employment Lawyers Association Conference (2013); Panelist, "Fraud and Consumer Protection: Plaintiff and Defense Strategies," Current Issues in Pharmaceutical and Medical Device Litigation, ABA Section of Litigation (2012); Participant and Moderator, "Ask the EEOC: Current Insights on Enforcement and Litigation," ABA Section of Labor and Employment Law (2011); Panelist, "Drafting Class Action Complaints," New York State Bar Association (2011); Participant and Moderator, "Ask the EEOC: Current Insights on Enforcement and Litigation," ABA Section of

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 251 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 121 of 144

Labor and Employment Law (2011); *The New York Employee Advocate*, Co-Editor (2005-2009), Regular Contributor (2008-present); Moderator, "Hot Topics in Wage and Hour Class and Collective Actions," American Association for Justice Tele-Seminar (2010); Author & Panelist, "Class Action Considerations: Certification, Settlement, and More," American Conference Institute Advanced Forum (2009); Panelist, "Rights Without Remedies," American Constitutional Society National Convention, Revitalizing Our Democracy: Progress and Possibilities (2008); Panelist, Fair Measure: Toward Effective Attorney Evaluations, American Bar Association Annual Meeting (2008); Panelist, "Getting to Know You: Use and Misuse of Selection Devices for Hiring and Promotion," ABA Labor & Employment Section Annual Meeting (2008); Author, "'Don't I Think I Know You Already?': Excessive Subjective Decision-Making as an Improper Tool for Hiring and Promotion," ABA Labor & Employment Section Annual Meeting (2008); Author & Panelist, "Ethical Issues in Representing Workers in Wage & Hour Actions," Representing Workers in Individuals & Collective Actions under the FLSA (2007); Author & Panelist, "Evidence and Jury Instructions in FLSA Actions," Georgetown Law Center/ACL-ABA (2007); Author & Panelist, "Crucial Events in the 'Life' of an FLSA Collective Action: Filing Considerations and the Two-step 'Similarly-Situated' Analysis," National Employment Lawyers Association, Annual Convention (2006); Author & Panelist, "Time is Money, Except When It's Not: Compensable Time and the FLSA,"  National Employment Lawyers Association, Impact Litigation Conference (2005); Panelist, "Electronic Discovery," Federal Judicial Center & Institute of Judicial Administration, Workshop on Employment Law for Federal Judges (2005); "Image-Based Discrimination and the BFOQ Defense," *EEO Today: The Newsletter of the EEO Committee of the ABA's Section of Labor and Employment Law*, Vol. 9, Issue 1 (2004); "Fair Labor Standards Act Overtime Exemptions: Proposed Regulatory Changes," *New York State Bar Association Labor and Employment Newsletter* (2004); Chair & Panelist, "Current Topics in Fair Labor Standards Act Litigation," Conference, Association of the Bar of the City of New York (2003); Moderator, "Workforce Without Borders," ABA Section of Labor & Employment Law, EEOC Midwinter Meeting (2003).  *Member*: American Bar Association [Labor and Employment Law Section, Standing Committee on Equal Employment Opportunity (Member, Past Employee Co-Chair, 2009-2011)]; Association of the Bar of the City of New York; Certified Fraud Examiners, New York Chapter, Member; National Employment Lawyers' Association - New York Chapter (Chair of Amicus Committee, 2017; Board Member, 2005-2011); National Employment Lawyers' Association – National; Public Justice Foundation; Rutter Federal Employment Guide, Contributing Editor (2017-present); Taxpayers Against Fraud Education Fund.

**BRENDAN P. GLACKIN**, Admitted to practice in California, 1998; New York, 2000; U.S. District Court, Northern, Central, Eastern and Southern Districts of California, 2001; U.S. Court of Appeals for the Ninth Circuit, 2004; U.S. District Court, Southern District of New York, 2001; U.S. Court of Appeals for the Second Circuit, 2013; U.S. Court of Appeals for the Fourth Circuit, 2016; U.S. Court of Appeals for the Ninth Circuit.  *Education*: Harvard Law School (J.D., *cum laude*, 1998); University of Chicago (A.B., Phi Beta Kappa, 1995).  *Prior Employment*: Contra Costa Public Defender, 2005-2007; Boies, Schiller & Flexner, 2000-2005; Willkie Farr & Gallagher, 1999-2000; Law Clerk to Honorable William B. Shubb, U.S. District Court, Eastern District of California, 1998-1999. *Awards & Honors:* "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020; "Northern California Super Lawyer," *Super Lawyers*, 2013-2019; "California Lawyer Attorney of the Year," *California Lawyer*, 2016.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 252 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 122 of 144

*Member*: State Bar of California; BASF Antitrust Section, Executive Committee. *Seminars:*
Ramifications of *American Needle, Inc. v. National Football League*, 2010; Antitrust Institute
2011: Developments & Hot Topics, 2011; Antitrust Trials: The View From the Trenches, 2013;
Applying Settlement Offsets to Antitrust Judgments, ABA Spring Meetings, 2013; California
Trial Advocacy, PLI, 2013; Building Trial Skills, NITA, 2013, California Trial Advocacy, PLI,
2013, Applying Settlements Offsets to Antiftust Judgments, ABA Spring Meetings, 2013,
Antitrust Trials: The View From the Trenches, 2013, Antitrust and Silicon Valley: New Themes
and Direction in Competition Law and Policy, Santa Clara University School of Law, March
2019.

   **MARK P. CHALOS**, Admitted to practice in Tennessee, 1998; U.S. Court of Appeals,
Sixth Circuit, 1998; U.S. Court of Appeals, Seventh Circuit, 2012; U.S. District Court, Middle
District of Tennessee, 2000; U.S. District Court, Western District of Tennessee, 2002; U.S.
District Court, Eastern District of Tennessee, 2006; U.S. District Court, Northern District of
Florida, 2006; U.S. District Court, Northern District of California, 2007; U.S. Supreme Court,
2012. *Education*: Emory University School of Law (J.D., 1998); Dean's List; Award for Highest
Grade, Admiralty Law; Research Editor, *Emory International Law Review*; Phi Delta Phi Legal
Fraternity; Vanderbilt University (B.A., 1995). *Honors & Awards*: AV Peer Review Rated,
Martindale-Hubbell; Selected for inclusion by peers in *The Best Lawyers in America* in the field
of "Mass Tort Litigation/Class Actions – Plaintiffs," 2012-2020; American Bar Foundation
Fellow, 2016; "Tennessee Litigation Star," *Benchmark Litigation*, 2013-2015; "Best of the Bar,"
Nashville Business Journal, 2008-2010, 2015-2016; "Super Lawyer for Mid-South," *Super
Lawyers*, 2011 - 2018; "Tennessee Top 100," *Super Lawyers*, 2015; "Rising Star for Mid-South,"
*Super Lawyers*, 2008 - 2010; "Top 40 Under 40," The Tennessean, 2004. *Publications &
Presentations*: "Supreme Court Limits The Reach Of Alien Tort Statute In *Kiobel*," Legal
Solutions Blog, April 2013; "The Rise of Bellwether Trials," Legal Solutions Blog, March 2013;
"*Amgen*: The Supreme Court Refuses to Erect New Class Action Bar," Legal Solutions Blog,
March 2013; "Are International Wrongdoers Above the Law?," *The Trial Lawyer Magazine*,
January 2013; "*Kiobel v. Royal Dutch Petroleum*: Supreme Court to Decide Role of US Courts
Abroad," *ABA Journal*, January 2013. "Legislation Protects the Guilty [in Deadly Meningitis
Outbreak]," *The Tennessean*, December 2012; Litigating International Torts in United States
Courts, 2012 ed., Thomson Reuters/West (2012); "Successfully Suing Foreign Manufacturers,"
*TRIAL Magazine*, November 2008; "Washington Regulators Versus American Juries: The
United States Supreme Court Shifts the Balance in *Riegel v. Medtronic*," *Nashville Bar Journal*,
2008; "Washington Bureaucrats Taking Over American Justice System," *The Tennessean*
(December 2007); "The End of Meaningful Punitive Damages," *Nashville Bar Journal*,
November 2001; "Is Civility Dead?" *Nashville Bar Journal*, October 2003; "The FCC: The
Constitution, Censorship, and a Celebrity Breast," *Nashville Bar Journal*, April 2005. *Member*:
American Bar Foundation (Fellow, 2016); American Association for Justice (Chair, Public
Education Committee, 2015); American Bar Association (Past-Chair, YLD Criminal & Juvenile
Justice Committee; Tort Trial and Insurance Practice Section Professionalism Committee); First
Center for the Visual Arts (Founding Member, Young Professionals Program); Harry Phillips
American Inn of Court; Kappa Chapter of Kappa Sigma Fraternity Alumni Association
(President); Metropolitan Nashville Arts Commission (Grant Review Panelist); Nashville Bar
Association (YLD Board of Directors; Nashville Bar Association YLD Continuing Legal
Education and Professional Development Director); Nashville Bar Journal (Editorial Board);

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 253 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 123 of 144

Tennessee Association for Justice (Board of Directors, 2008-2011; Legislative Committee); Tennessee Bar Association (Continuing Legal Education Committee); Tennessee Trial Lawyers Association (Board of Directors; Vice-President, 2018-2019; Treasurer & Secretary, 2017-2018); Historic Belcourt Theatre (Past Board Chair; Board of Directors); Nashville Cares (Board of Directors).

**PAULINA do AMARAL**, Admitted to practice in New York, 1997; California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Southern District of New York, 2004; U.S. District Court, Western District of Michigan, 2004; U.S. District Court, Eastern District of Michigan, 2007. *Education*: University of California Hastings College of Law (J.D., 1996); Executive Editor, *Hastings Constitutional Law Quarterly*; National Moot Court Competition Team, 1995; Moot Court Executive Board; University of Rochester (B.A., 1988). *Employment*: Law Clerk to Chief Judge Richard Alan Enslen, U.S. District Court, Western District of Michigan, 1996-98. *Publications & Presentations:* Co-Chair, HarrisMartin Opioid Litigation Conference, San Francisco, 2018; "Rapid Response: Opioid Litigation," American Association for Justice Seminar, September 2017; Co-Author, "Class Action Fairness Act of 2005," California Litigation, Vol. 18, No. 3, 2005. *Awards & Honors:* Selected for inclusion by peers in The Best Lawyers in America in the field of "Mass Tort Litigation/Class Actions – Plaintiffs," 2017-2020; Legal 500 recommended lawyer, *LegalEase*, 2013. *Member*: American Association for Justice; UC Hastings College of the Law, Board of Trustees; Association of the Bar of the City of New York, (2007-2010, Committee on the Judiciary); American Bar Association; State Bar of New York; State Bar of California; Bar Association of San Francisco; American Trial Lawyers Association; New York State Trial Lawyers Association.

**KENNETH S. BYRD**, Admitted to practice in Tennessee, 2004; U.S. District Court of Appeals, 6th Circuit, 2009; U.S. District Court, Western District of Tennessee, 2007; U.S. District Court, Eastern District of Tennessee, 2006; U.S. District Court, Middle District of Tennessee, 2005. *Education:* Boston College Law School (J.D., *cum laude*, 2004), Law Student Association (President, 2003-2004), National Moot Court Team (Regional Champion, 2003-2004), American Constitution Society (Secretary, 2002-2003), Judicial Process Clinic (2003), Criminal Justice Clinic (2003-2004); Samford University (B.S., *cum laude*, in Mathematics with Honors, minor in Journalism, 1995). *Prior Employment:* Harwell Howard Hyne Gabbert & Manner, P.C., 2004-2010; Summer Associate, Harwell Howard Hyne Gabbert & Manner, P.C., 2003; Summer Associate, Edward, Angell, Palmer, Dodger, LLP, 2003. *Awards:* Selected for inclusion by peers in The Best Lawyers in America in fields of Consumer Protection Law, Personal Injury Litigation-Plaintiffs, and Product Liability Litigation-Plaintiffs, 2018-2020; "Paladin Award," Tennessee Association for Justice, 2015; "Rising Star for Mid-South," Super Lawyers, 2014. *Member:* American Bar Association; American Constitution Society, Nashville Chapter (Member & Chair of 2008 Supreme Court Preview Event); Tennessee Trial Lawyers Association (Board of Governors, 2018-2019); Camp Ridgecrest Alumni & Friends (Board Member); Harry Phillips American Inn of Court, Nashville Chapter (Associate Member, 2008-2010; Barrister, 2010-2014); Historic Edgefield, Inc. (President, 2009-2011); Nashville Bar Association; Tennessee Bar Association.

**LIN Y. CHAN**, Admitted to practice in California, 2008; U.S. District Court, Northern District of California, 2008; U.S. District Court, Central District of California, 2010; U.S. Court

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 254 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 124 of 144

of Appeals for the Fifth Circuit, 2011; U.S. Court of Appeals for the Ninth Circuit, 2011; U.S. Court of Appeals for the Tenth Circuit, 2010. Education: Wellesley College (B.A. summa cum laude 2001); Stanford Law School (J.D. 2007); Editor-in-Chief, Stanford Journal of Civil Rights and Civil Liberties; Fundraising Chair, Shaking the Foundations Progressive Lawyering Conference. Prior Employment: Associate, Goldstein, Borgen, Dardarian & Ho (formerly Goldstein, Demchak Baller Borgen & Dardarian), 2008-2013; Law Clerk to Judge Damon J. Keith, Sixth Circuit Court of Appeals, 2007-2008; Clinic Student, Stanford Immigrants' Rights Clinic, 2006-2007; Union Organizer, SEIU and SEIU Local 250, 2002-2004; Wellesley-Yenching Teaching Fellow, Chinese University of Hong Kong, 2001-2002. Awards & Honors: "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020; "Super Lawyer for Northern California," Super Lawyers, 2019; "Rising Star for Northern California," Super Lawyers, 2015-2018; "40 and Under Hot List," Benchmark Litigation, 2018"; "Outstanding Antitrust Litigation Achievement by a Young Lawyer," American Antitrust Institute, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017. Presentations & Publications: Panelist, "Class Certification – The Evolving Relationship Between Damages and Predominance," ABA Sixth Annual Class Actions and Mass Torts Regional CLE Program; Moderator, "Antitrust for HR: No-Poach and Wage Fixing Agreements," Bar Association of San Francisco (January 2018); Moderator, "Challenging Non-Price Restraints," American Antitrust Institute 11th Annual Private Antitrust Enforcement Conference (November 2017); Panelist, "Settlement Ethics: Negotiating Class Action Settlements the Right Way," Impact Fund Annual Class Action Conference (February 2016); Author, "Do Federal Associated General Contractors Standing Requirements Apply to State Illinois Brick Repealer Statutes?," Business Torts & Rico News, Winter 2015; Panelist, "Federal and State Whistleblower Laws: What You Need to Know," Asian American Bar Association (November 2014); Author, "California Supreme Court Clarifies State Class Certification Standards in Brinker," American Bar Association Labor & Employment Law Newsletter (April 2013); Presenter, "Rule 23 Basics in Employment Cases," Impact Fund's 11th Annual Employment Discrimination Class Action Conference (February 2013); Chapter Author, The Class Action Fairness Act: Law and Strategies; Co-Author, "Clash of the Titans: Iqbal and Wage and Hour Class/Collective Actions," BNA, Daily Labor Report, 80 DLR L-1 (April 2010); Chapter Co-Chair, Lindemann & Grossman, Employment Discrimination Law Treatise, Fifth Edition; Chapter Monitor, Lindemann & Grossman, Employment Discrimination Law Treatise 2010 Cumulative Supplement. Member: American Antitrust Institute, Advisory Board, 2018; Asian Americans Advancing Justice - Asian Law Caucus, Board Member and Board Secretary, 2013 – 2018; Asian American Bar Association, Board of Directors and Board Secretary, 2017 – Present; American Bar Association, Fair and Impartial Courts Committee Co-Chair, 2017 – 2019; Bar Association of San Francisco Antitrust and Business Regulation Section, Chair, 2018-2019; Committee to Support the Antitrust Laws, Treasurer, 2019; Public Justice; State Bar of California.

**DANIEL P. CHIPLOCK**, Admitted to practice in New York, 2001; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2001; U.S. District Court, District of Colorado, 2006; U.S. Court of Appeals for the Second Circuit, 2009; U.S. Court of Appeals for the Third Circuit, 2016; U.S. Court of Appeals for the Sixth Circuit, 2011; U.S. Supreme Court, 2011. *Education*: Stanford Law School (J.D., 2000); Article Review Board, *Stanford Environmental Law Journal*; Recipient, Keck Award for Public Service;

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 255 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 125 of 144

Columbia University (B.A., *summa cum laude*, 1994); Phi Beta Kappa. *Awards & Honors:* "Super Lawyer for New York Metro," *Super Lawyers*, 2016-2017; "Keck Award for Public Service," Stanford Law School, 2000. *Member*: State Bar of New York; American Association for Justice; Fight for Justice Campaign; Public Justice; National Association of Shareholder and Consumer Attorneys (Executive Committee/Secretary); American Constitution Society for Law and Policy (Advocate's Circle). *Classes/Seminars:* "Fraud on the Market," Federal Bar Council, Feb. 25, 2014 (CLE panel participant).

**DOUGLAS CUTHBERTSON**, Admitted to practice in New York, 2008; U.S. Court of Appeals for the Eleventh Circuit, 2017; U.S. Court of Appeals for the Second Circuit, 2016; U.S. Court of Appeals for the Seventh Circuit, 2015; U.S. District Court, District of Connecticut, 2017; U.S. District Court, Northern District of New York, 2018; U.S. District Court, Eastern District of New York, 2008; U.S. District Court, Southern District of New York, 2008; U.S. District Court, District of Colorado, 2013; U.S. District Court, Eastern District of Wisconsin, 2013; U.S. District Court, Western District of Wisconsin, 2014; U.S. District Court, Northern District of Illinois, 2014. *Education*: Fordham University School of Law (J.D. *cum laude* 2007); President, Fordham Law School Chapter of Just Democracy; Senior Articles Editor, Fordham Urban Law Journal; Fordham University School of Law Legal Writing Award, 2004-2005; Legal Writing Teaching Assistant, 2005-2006; Dean's List, 2004-2007; Alpha Sigma Nu Jesuit Honor Society. Bowdoin College (B.A. *summa cum laude*, 1999), Sarah and James Bowdoin Scholar for Academic Excellence (1995-1999). *Prior Employment*: Associate, Debevoise & Plimpton, LLP, 2009-2012; Law Clerk to Honorable Magistrate Judge Andrew J. Peck, U.S. District Court, Southern District of New York, 2007-2009. *Awards & Honors*: "Rising Star for New York Metro," *Super Lawyers*, 2013-2017. *Member*: Federal Bar Council; New York Civil Liberties Union, Board of Directors; New York State Bar Association.

**NIMISH R. DESAI**, Admitted to practice in Texas, 2017; Admitted to practice in California, 2006; U.S. Court of Appeals, Ninth Circuit, 2009; US District Court, Northern District of California, 2007; Texas, 2017; US District Court, Central District of California, 2008; US District Court, Northern District of Florida, 2009; US District Court, Eastern District of Texas, 2017; US District Court, Southern District of Texas, 2019. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2006), Finalist and Best Brief, McBaine Moot Court Competition (2006), Moot Court Best Brief Award (2004); University of Texas, Austin, (B.S. & B.A., High Honors, 2002). *Prior Employment*: Extern, Sierra Club Environmental Law Program, 2004; Researcher, Public Citizen, 2003; Center for Energy and Environmental Resources, 2001-2002. *Awards & Honors:* Selected for inclusion by peers in *The Best Lawyers in America* in field of "Qui Tam Law," 2016-2020; "Northern California Super Lawyer," *Super Lawyers*, 2013-2019; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2014; "Rising Star for Northern California," *Super Lawyers*, 2012. *Publications & Presentations*: "BP, Exxon Valdez, and Class-Wide Punitive Damages," 21 Class Action and Derivative Suit Committee Newsletter (Fall 2010); "American Chemistry Council v. Johnson: Community Right to Know, But About What? D.C. Circuit Takes Restrictive View of EPCRA," 33 *Ecology L.Q.* 583 (Winter 2006); "Lessons Learned and Unlearned: A Case Study of Medical Malpractice Award Caps in Texas," *The Subcontinental*, (Winter 2004, Vol. 1, Issue 4, pp. 81-87); "Separation of Fine Particulate Matter Emitted from Gasoline and Diesel Vehicles Using Chemical Mass Balancing Techniques," *Environmental Science Technology*, (2003;

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 256 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 126 of 144

37(17) pp. 3904-3909); "Analysis of Motor Vehicle Emissions in a Houston Tunnel during Texas Air Quality Study 2000," *Atmospheric Environment*, 38, 3363-3372 (2004). *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California; American Bar Association; American Constitution Society; East Bay Community Law Center (Board Member, 2010-present); South Asian Bar Association (Board Member, 2010-present). *Languages*: Gujarati (conversational).

**NICHOLAS DIAMAND**, Admitted to practice in England & Wales, 1999; New York, 2003; U.S. District Court for the District of Colorado, 2007; U.S. District Court, Southern, Eastern, and Western Districts of New York; US. Court of Appeals, Seventh Circuit, Ninth Circuit; U.S. Supreme Court, 2013; U.S. Court of Appeals, Second Circuit, 2016. *Education*: Columbia University School of Law (LL.M., Stone Scholar, 2002); College of Law, London, England (C.P.E.; L.P.C.; Commendation, 1997); Columbia University (B.A., *magna cum laude*, 1992). *Awards & Honors:* "Super Lawyer for New York Metro," *Super Lawyers*, 2013-2018; "Super Lawyers Business Edition" (Securities Edition), Super Lawyers, 2016; "Rising Star for New York Metro," *Super Lawyers*, 2012. *Prior Employment*: Solicitor, Herbert Smith, London (1999-2001); Law Clerk to the Honorable Edward R. Korman, Chief Judge, U.S. District Court, Eastern District of New York (2002-03). *Publications & Presentations*: Panelist, Federal Bar Council: Webinar on Amendment to Fed R. Civ. P. 23: Impact on Securities, Antitrust, Consumer & Date Breach Class Action Practice, December 2018; "Spokeo Still Standing: No Sign of a Circuit Split" (with Andrew Kaufman), *Law360*, 2016; "Spotlight on Spokeo: A Win for Consumers" (with Andrew Kaufman), *Law360*, 2016; "U.S. Securities Litigation & Enforcement Action," *Corporate Disputes* magazine, April-June 2015; Speaker, Strafford CLE webinar "Ethical Risks in Class Litigation," 2015; Speaker, International Corporate Governance Network Conference, 2014; "Fraud on the Market in a Post-*Amgen* World" (with M. Miarmi), *Trial Magazine*, November 2013; Contributing Author, *California Class Actions Practice and Procedure* (Elizabeth J. Cabraser, Editor-in-Chief), 2006; Panelist, "Obstacles to Access to Justice in Pharmaceutical Cases," *Pharmaceutical Regulation and Product Liability*, British Institute of International and Comparative Law, April 21, 2006; Panelist, "Pre-Trial Discovery in the United States," Union Internationale des Avocats, Winter Seminar, February 2006. *Member*: American Association for Justice (Chair, Consumer Privacy/Data Breach Litigation Group, 2016); New York City Bar Association; New York State Bar Association; Public Justice Foundation; International Corporate Governance Network; Peer Articles Reviewer; *Trial* magazine.

**DEAN M. HARVEY**, Admitted to practice in California, 2007; U.S. District Court, Northern District of California, 2007; U.S. District Court, Central District of California, 2007; U.S. District Court, Eastern District of California, 2008; U.S. District Court, Southern District of California, 2008; U.S. Court of Appeals for the Ninth Circuit, 2008; U.S. District Court, Eastern District of Wisconsin, 2013; U.S. Court of Appeals for the Fourth Circuit, 2016; U.S. Supreme Court, 2018; U.S Court of Appeals for the Sixth Circuit, 2019. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2006); Articles Editor, *California Law Review* (2005-2006); Assistant Editor, *Berkeley Journal of International Law* (2004); University of Minnesota, Twin Cities (B.A. *summa cum laude*, 2002). *Prior Employment*: Partner, Lieff Cabraser Heimann & Bernstein, LLP (2013-Present); Associate, Lieff Cabraser Heimann & Bernstein, LLP (2009-2013); Associate, Boies, Schiller & Flexner LLP (2007-2008);

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 257 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 127 of 144

Law Clerk, The Honorable James V. Selna, U.S. District Court for the Central District of
California (2006-2007); Law Clerk, U.S. Department of Justice, Antitrust Division, San
Francisco Field Office (2006); Summer Law Intern, U.S. Department of Justice (2005); Summer
Associate, Boies, Schiller & Flexner LLP (2005). *Awards & Honors*: "Lawdragon 500 Leading
Plaintiff Financial Lawyers in America," Lawdragon, 2020; "Super Lawyer for Northern
California," *Super Lawyers*, 2013-2019; "On the Rise – Top 40 Young Lawyers," American Bar
Association, 2017; "Top 40 Under 40" Lawyer in California, *Daily Journal*, 2017; "Outstanding
Private Practice Antitrust Achievement," American Antitrust Institute, 2017; "California Lawyer
Attorney of the Year (CLAY) Award," *California Lawyer*, 2016; "Lawyers on the Fast Track,"
*The Recorder*, 2013; "Rising Star for Northern California," *Super Lawyers*, 2010-2012; "William
E. Swope Antitrust Writing Prize," 2006. *Publications & Presentations*: Speaker, "Current and
Future Antitrust and Labor Issues," National Association of Attorneys General, April 2019;
Panelist, "Competition Tort Claims Around the Globe," ABA Antitrust Section Spring Meeting,
March 2019; Speaker, "Antitrust and Silicon Valley: New Themes and Direction in Competition
Law and Policy," Santa Clara University School of Law, March 2019Speaker, "Antitrust Analysis
in Two-Sided Markets," California Lawyers Association, February 2019; Speaker, "Latest
Developments in No-Poach Agreements," California Lawyers Association (January 2019);
Panelist, "Antitrust and Workers — Agreements, Mergers, and Monopsony," American Antitrust
Institute Conference (June 2018); Speaker, "Anticompetitive Practices in the Labor Market,"
Unrigging the Market Program, Harvard Law School (June 2018); Speaker, "Tech-Savvy and
Talented: Competition in Employment Practices," American Bar Association (May 2018);
Speaker, "Antitrust for HR: No-Poach and Wage Fixing Agreements," Bar Association of San
Francisco (January 2018); Moderator, "Competition Torts in the Trenches: Lessons From
Recent High-Profile Cases," American Bar Association (November 2016); Speaker, "Are
Computers About to Eat Your Lunch (Or At Least Change the Way You Practice)?", Association
of Business Trial Lawyers Panel (August 2016); Moderator, "The Law and Economics of
Employee Non-Compete Agreements," American Bar Association Panel (June 2016); Speaker,
"Lessons from the Headlines: In re: High-Tech Employee Antitrust Litigation," The Recorder
and Corporate Counsel's 13th Annual General Counsel Conference West Coast (November
2015); Speaker, "The Future of Private Antitrust Enforcement," American Antitrust Institute
Panel (November 2015); Moderator, "From High-Tech Labor to Sandwich Artists: The Law and
Economics of Employee Solicitation and Hiring," American Bar Association Panel (March 2015);
Panelist, "Tech Sector 'No Poaching' Case Update - What Antitrust Counselors and HR
Departments Need to Know," American Bar Association (2015); Speaker, "Cases at the
Intersection of Class Actions and Employee Protection Regulations," Law Seminars
International (2015); Speaker, Town Hall Meeting, American Bar Association Section of
Antitrust Law Business Torts & Civil RICO Committee (December 2014); Panelist, "If You Don't
Steal My Employees, I Won't Steal Yours: The Antitrust Treatment of Non-Poaching and Non-
Solicitation Agreements," American Bar Association (2013); Panelist, "In the Wake of AT&T
Mobility v. Concepcion: Perspectives on the Future of Class Litigation," American Bar
Association (2011);Co-Author, "Play Ball: Potential Private Rights of Action Emerging From the
FIFA Corruption Scandal," 11 Business Torts & RICO News 1 (Summer 2015); Contributing
Author, *The Class Action Fairness Act: Law and Strategy*, American Bar Association, 2013;
Contributing Author, *Concurrent Antitrust Criminal and Civil Proceedings: Identifying
Problems and Planning for Success*, American Bar Association (2013); Co-Editor, *California
Class Actions Practice and Procedures* (2010-2013); Articles Editor, *Competition* (the Journal

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 258 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 128 of 144

of the Antitrust and Unfair Competition Law Section of the State Bar of California) (2012); Contributing Author, *ABA Annual Review of Antitrust Law Developments* (2011); *New Guidance for Standard Setting Organizations: Broadcom Corp. v. Qualcomm Inc. and In the Matter of Rambus, Inc., 5 ABA Sherman Act Section 1 Newsl. 35* (2008); *Anticompetitive Social Norms as Antitrust Violations*, 94 Calif. L. Rev. 769 (2006). *Member*: American Antitrust Institute, Advisory Board; American Bar Association (Antitrust Section), and Co-Chair, Competition Torts Committee; Bar Association of San Francisco; San Francisco Trial Lawyers Association.

**LEXI J. HAZAM**, Admitted to practice in California, 2003; U.S. Court of Appeals for the Second Circuit, 2008; U.S. Court of Appeals for the Seventh Circuit, 2006; U.S. Court of Appeals for the Eighth Circuit, 2008; U.S. District Court, Northern District of California, 2003; U.S. District Court, Southern District of CA, 2013; U.S. District Court, Western District of Michigan, 2017. *Education*: Stanford University (B.A., 1995, M.A., 1996), Phi Beta Kappa. University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2001); *California Law Review* and *La Raza Law Journal* (Articles Editor); Berkeley Law Foundation Summer Grant for Public Service; Federal Practice Clinic; Hopi Appellate Clinic). *Prior Employment*: Law Clerk, Mexican American Legal Defense and Education Fund, 1999; Law Clerk, Judge Henry H. Kennedy, Jr., U.S. District Court for the District of Columbia, 2001-2002; Associate, Lieff Cabraser Heimann & Bernstein, LLP, 2002-2006; Partner, Lieff Global LLP, 2006-2008. *Honors & Awards*: Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Mass Tort Litigation/Class Actions – Plaintiffs" and "Qui Tam Law," 2015-2020; "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020; "Northern California Super Lawyer," *Super Lawyers*, 2015-2019; "Lawyer of the Year," *The Best Lawyers in America*, Mass Tort Litigation/Class Actions-Plaintiffs for San Francisco, 2017; "California Litigation Star," *Benchmark Litigation*, 2016; "California Future Star," *Benchmark Litigation*, 2015; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2015; Legal 500 recommended lawyer, *LegalEase*, 2013; "Northern California Rising Stars," *Super Lawyers*, 2009-2011, 2013. *Publications & Presentations:* "Supreme Court Review of Escobar," Qui Tam Litigation Group and "Opioid Litigation: the Next Tobacco?" Litigation at Sunrise, American Association for Justice Annual Convention, Boston, 2017; "Discovery Following the 2015 Federal Rules Amendments: What Does Proportionality Mean in the Class Action and Mass Tort Contexts?" ABA 4th Annual Western Regional CLE on Class Actions & Mass Torts, San Francisco, 2017; "Increasing the Number of Women & Minority Lawyers Appointed to Leadership Positions in Class Actions & MDLs," Duke Law Center for Judicial Studies Conference, Atlanta, 2017; "2015 Rules Amendments," "Search Methodology and Technology," "New Forms of Communications and Data Protection," Innovation in eDiscovery Conference, San Francisco, 2016; "Technology-Assisted Review: Advice for Requesting Parties," Practical Law, October/November 2016; "Technology-Assisted Review," Sedona Conference Working Group 1 Drafting Team, 2015; "The Benicar Litigation," Mass Torts Made Perfect, Las Vegas, 2015; "The Benicar Litigation," HarrisMartin's MDL Conference, San Diego, 2015; "Now You See Them, Now You Don't: The Skill of Finding, Retaining, and Preparing Expert Witnesses For Trial," Women En Mass, Aspen; 2014. *Member*: American Association for Justice (Chair, Section on Toxic, Environmental, and Pharmaceutical Torts, 2017); American Association for Justice (Co-Secretary, Section on Qui Tam Litigation, 2016); Consumer Attorneys of California;

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 259 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 129 of 144

Board of Governors, Consumer Attorneys of California (2015); Bar Association of San Francisco; San Francisco Trial Lawyers Association; State Bar of California.

*ROGER N. HELLER*, Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001; U.S. District Court, Eastern District of California, 2017; U.S. District Court, District of Colorado, 2015; U.S. Court of Appeals for the Second Circuit, 2017; U.S. Court of Appeals for the Ninth Circuit, 2001. *Education*: Columbia University School of Law (J.D., 2001); Columbia Law Review, Senior Editor. Emory University (B.A., 1997). *Prior Employment*: Extern, Honorable Michael Dolinger, U.S. District Court, Southern District of New York, 1999; Associate, O'Melveny & Myers LLP, 2001-2005; Senior Staff Attorney, Disability Rights Advocates, 2005-2008. *Honors & Awards*: "Northern California Super Lawyer," *Super Lawyers*, 2013-2019; "Partners Council Rising Star," National Consumer Law Center, 2015; "Rising Star," *Law 360*, 2014-2015; "Finalist for Consumer Attorney of the Year," Consumer Attorneys of California, 2012-2013; "Trial Lawyer of the Year Finalist," Public Justice, 2012; "Northern California Rising Star," *Super Lawyers*, 2011-2012; Harlan Fiske Stone Scholar, 1998-2001. *Publications & Presentations*: Co-author, Fighting For Troops on the Homefront, Trial Magazine (September 2006). *Member*: American Bar Association; Bar Association of San Francisco; Consumer Attorneys of California; State Bar of California; Advisory Committee Member, Santa Venetia Community Plan.

*DANIEL M. HUTCHINSON*, Admitted to practice in California, 2005; U.S. District Court, Central District of California, 2012; U.S. District Court, Southern District of California, 2012; U.S. Court of Appeals for the Eleventh Circuit, 2018; U.S. Court of Appeals for the First Circuit, 2012; U.S. Court of Appeals for the Ninth Circuit, 2006; U.S. District Court, Northern District of California, 2006; U.S. Court of Appeals for the Fourth Circuit, 2008; U.S. District Court Eastern District of Wisconsin, 2013; U.S. District, Northern District of Illinois, 2014. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2005), Senior Articles Editor, *African-American Law & Policy Report*, Prosser Prizes in Constitutional Law and Employment Law; University of California, Berkeley, School of Law (Berkeley Law) Teaching & Curriculum Committee (2003-2004); University of California, Berkeley Extension (Multiple Subject Teaching Credential, 2002); Brown University (B.A., 1999), Mellon Mays Fellowship (1997-1999). *Prior Employment*: Judicial Extern to the Hon. Martin J. Jenkins, U.S. District Court, Northern District of California, 2004; Law Clerk, Lewis & Feinberg, P.C., 2003-2004; Teacher, Oakland Unified School District, 1999-2002. *Honors & Awards*: Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Employment Law— Individuals," 2020; "Northern California Super Lawyer," *Super Lawyers*, 2013-2019; "Rising Star," *Law360*, 2014; Legal 500 recommended lawyer, *LegalEase*, 2013; "50 Lawyers on the Fast Track," *The Recorder*, 2012; "Northern California Rising Stars," *Super Lawyers*, 2009-2012. *Publications & Presentations:* Panelist, "Ascertainability isn't a thing. Or is it?" Impact Fund Class Action Conference, February 2019; Panelist, "Employment Discrimination Class Actions Post-*Dukes*," Consumer Attorneys of California 50th Annual Convention (2011); "Ten Points from *Dukes v. Wal-Mart Stores, Inc.*," 20(3) *CADS Report 1* (Spring 2010); Panelist, "Rethinking Pro Bono: Private Lawyers and Public Service in the 21st Century," UCLA School of Law (2008); Author and Panelist, "Pleading an Employment Discrimination Class Action" and "EEO Litigation:  From Complaint to the Courthouse Steps," ABA Section of Labor and Employment Law Second Annual CLE Conference (2008); Co-Presenter, "Rule 23 Basics in

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 260 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 130 of 144

Employment Cases," Strategic Conference on Employment Discrimination Class Actions (2008). *Member*: American Bar Association (Section of Labor & Employment Law Leadership Development Program, 2009 - 2010); Association of Business Trial Lawyers (Leadership Development Committee, 2008 - 2010); Bar Association of San Francisco (Vice Chair, Cybersecurity and Privacy Law Section); Consumer Attorneys of California; Lawyer's Committee for Civil Rights of the San Francisco Bay Area (Board Chair, 2015; Chair-Elect, 2014; Board Secretary, 2011 - 2013; Board of Directors, 2009 - Present); National Bar Association; National Employment Lawyers Association; State Bar of California.

**SHARON M. LEE**, Admitted to practice in New York, 2002; U.S. District Court, Southern District of New York, 2003; U.S. District Court, Eastern District of New York, 2003; Washington State, 2005; U.S. District Court, Western District of Washington, 2015. *Education*: St. John's University School of Law (J.D. 2001); *New York International Law Review*, Notes & Comments Editor, 2000-2001; St. John's University (M.A. 1998); St. John's University (B.A. 1997). *Awards and Honors:* "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020. *Prior Employment*: Milberg Weiss & Bershad, LLP, 2003-2007. *Publications & Presentations*: Author, *The Development of China's Securities Regulatory Framework and the Insider Trading Provisions of the New Securities Law*, 14 N.Y. Int'l L.Rev. 1 (2001); Co-author, *Post-Tellabs Treatment of Confidential Witnesses in Federal Securities Litigation*, 2 J. Sec. Law, Reg. and Compliance 205 (3d ed. 2009). *Member*: American Bar Association; Asian Bar Association of Washington; Washington State Bar Association; Washington State Joint Asian Judicial Evaluation Committee.

**BRUCE W. LEPPLA**, Admitted to practice in California, 1976; New York, 1978; Colorado, 2006; U.S. Court of Appeals Ninth Circuit, 1976; U.S. District Court Central District of California, 1976; U.S. District Court Eastern District of California, 1976; U.S. District Court Northern District of California, 1976; U.S. District Court Southern District of New York, 2015. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., M.G. Reade Scholarship Award); University of California at Berkeley (M.S., Law and Economics, Quantitative Economics); Yale University (B.A., *magna cum laude*, Highest Honors in Economics). *Prior Employment*: California-licensed Real Estate Broker (2009-present); FINRA and California-licensed Registered Investment Adviser (2008-present); Chairman, Leppla Capital Management LLC (2008-present); Chairman, Susquehanna Corporation (2006-present); Partner, Lieff Cabraser Heimann & Bernstein, LLP (2004-2008), Counsel (2002-2003); CEO and President, California Bankers Insurance Services Inc., 1999-2001; CEO and President, Redwood Bank (1985-1998), CFO and General Counsel (1981-1984); Brobeck, Phleger & Harrison (1980); Davis Polk & Wardwell (1976-80). *Publications*: Author or co-author of 11 different U.S. and International patents in electronic commerce and commercial product design, including "A Method for Storing and Retrieving Digital Data Transmissions," United States Patent No. 5,659,746, issued August 19, 1997; "*Stay in the Class or Opt-Out? Institutional Investors Are Increasingly Opting-Out of Securities Class Litigation*," Securities Litigation Report, Vol. 3, No. 8, September 2006, West LegalWorks; reprinted by permission of the author in Wall Street Lawyer, October 2006, Vol. 10, No. 10, West LegalWorks; "*Selected Waiver: Recent Developments in the Ninth Circuit and California, Part 1;*" Elizabeth J. Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, May 2005, Vol. I, No. 9, pp. 1, 3-7; "*Selected Waiver: Recent Developments in the Ninth Circuit and California,*

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 261 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 131 of 144

*Part 2;*" Elizabeth J. Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, June 2005, Vol. I, No. 10, pp. 1, 3-9; Author, *"Securities Powers for Community Banks,"* California Bankers Association Legislative Journal (Nov. 1987). *Teaching Positions*: Lecturer, University of California at Berkeley, Haas School of Business, Real Estate Law and Finance (1993-96); Lecturer, California Bankers Association General Counsel Seminars, Lending Documentation, Financial Institutions Litigation and similar topics (1993-96). *Panel Presentations*: Union Internationale des Avocats, Spring Meeting 2010, Frankfurt, Germany, *"Recent Developments in Cross-Border Litigation;"* Union Internationale des Avocats, Winter Meeting 2010, Park City, Utah, *"Legal and Economic Aspects of Securities Class and Opt-out Litigation;"* EPI European Pension Fund Summit, Montreux, Switzerland, *"Legal and Global Economic Implications of the U.S. Subprime Lending Crisis,"* May 2, 2008; Bar Association of San Francisco, "*Impact of Spitzer's Litigation and Attempted Reforms on the Investment Banking and Insurance Industries,*" May 19, 2005; Opal Financial Conference, National Public Fund System Legal Conference, Phoenix, AZ, "*Basic Principles of Securities Litigation,*" January 14, 2005; American Enterprise Institute, "*Betting on the Horse After the Race is Over— In Defense of Mutual Fund Litigation Related to Undisclosed After Hours Order Submission,*" September 30, 2004. *Member*: American Association for Justice; Bar Association of San Francisco, Barrister's Club, California Bankers Association, Director, 1993 – 1999, California State Small Business Development Board, 1989 – 1997, Community Reinvestment Institute, Founding Director, 1989 – 1990, National Association of Public Pension Attorneys, New York State Bar Association, San Francisco Chamber of Commerce, Leadership Council, 1990 – 1992, State Bar of California, Union Internationale des Avocats, Winter Corporate Governance Seminar, Seminar Chairman, 2012; University of California at Berkeley, University of California, Berkeley, School of Law (Berkeley Law) Alumni, Board of Directors, 1993 – 1996, *Wall Street Lawyer*, Member, Editorial Board, Yale University Alumni Board of Directors, Director, 2001 - 2005.

**JASON L. LICHTMAN**, Admitted to practice in Illinois, 2006; New Jersey, 2011; New York, 2011; U.S. Supreme Court, 2012; District of Columbia, 2007; U.S. Court of Appeals, Second Circuit, 2016; U.S. Court of Appeals, Third Circuit, 2012; U.S. Court of Appeals, Fifth Circuit, 2016; U.S. Court of Appeals, Sixth Circuit, 2010; U.S. Court of Appeals, Seventh Circuit, 2011; U.S. Court of Appeals, Ninth Circuit, 2012; U.S. Court of Appeals, Tenth Circuit, 2014; U.S. Court of Appeals, Eleventh Circuit, 2013; U.S. District Court, Northern District of Illinois, 2006; U.S. District Court, New Jersey, 2011; U.S. District Court, Northern District of Ohio, 2010; U.S. District Court, Eastern District of New York, 2012, U.S. District Court, Southern District of New York, 2012; U.S. Court of Appeals Federal Circuit, 2015; U.S. District Court, Eastern District of Wisconsin, 2014; U.S. District Court, Eastern District of Texas, 2016. *Education*: University of Michigan Law School (J.D., *cum laude*, 2006), Campbell Moot Court Executive Board; Clarence T. Darrow Scholar; Northwestern University (B.A. in Economics, 2000). *Prior Employment*: Judicial Law Clerk to Honorable Kathleen M. O'Malley, United States District Court, Northern District of Ohio, 2008-2010; Litigation Associate, Howrey LLP, 2006-2008; Summer Associate, Howrey LLP, 2005; Summer Associate, Reed Smith LLP, 2004. *Awards & Honors*: "Rising Star," Consumer Protection, *Law360*, 2017; "Super Lawyer for New York Metro," *Super Lawyers*, 2017-2018; "Rising Star for New York Metro," *Super Lawyers*, 2013-2016. *Member*: American Association for Justice; Public Justice; Chair, Class Action Committee, Public Justice; Sedona Conference. *Publications and Presentations:* Contributing

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 262 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 132 of 144

Author, "Ninth Circuit Reshapes California Consumer-Protection Law," American Bar Association (July 2012).

**SARAH R. LONDON**, Admitted to practice in California, 2009; U.S. District Court, Northern District of California, 2009; U.S. Court of Appeals for the Ninth Circuit, 2009; U.S. District Court, Central District of California, 2010; U.S. Court of Appeals for the Eleventh Circuit, 2012. *Education*: National Institute for Trial Advocacy, Building Trial Skills: Boston (Winter 2013); University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2009), Order of the Coif, National Runner-Up Constance Baker Motley Moot Court Competition; Northwestern University (B.A., *cum laude*, 2002). *Prior Employment*: Public Policy Manager, Planned Parenthood of Kansas and Mid-Missouri (2004-2006). *Publications & Presentations*: "Reproductive Justice: Developing a Lawyering Model," *Berkeley Journal of African-American Law & Policy* (Volume 13, Numbers 1 & 2, 2011); "Building the Case for Closing Argument: Mass Torts," Presentation at Consumer Attorneys of California Annual Conference (Fall 2014). *Awards & Honors*: Selected for inclusion by peers in The Best Lawyers in America in the fields of "Mass Tort Litigation/Class Actions - Plaintiffs," 2017-2020; "Rising Star for Northern California," *Super Lawyers*, 2012-2019; "Street Fighter of the Year Award Finalist," Consumer Attorneys of California,"2015; Coro Fellow in Public Affairs (St. Louis, 2002-2003). *Member*: American Association for Justice (Executive Committee Member, Section on Toxic, Environmental, and Pharmaceutical Torts, 2016); The Bar Association of San Francisco; Consumer Attorneys of California (Board of Governors 2012-2013); San Francisco Trial Lawyers Association; State Bar of California; Bar Association San Francisco; American Association for Justice; YWCA San Francisco and Marin County (Board of Directors 2014-2016).

**ANNIKA K. MARTIN**, Admitted to practice in New York, 2005; U.S. District Court, Southern District of New York, 2005; U.S. District Court Eastern District of New York, 2005. *Education:* Law Center, University of Southern California (J.D., 2004); Review of Law & Women's Studies; Jessup Moot Court; Medill School of Journalism, Northwestern University (B.S.J., 2001); Stockholm University (Political Science, 1999). *Publications & Presentations*: Faculty Member, "Mass Tort MDL Certificate Program," Duke Law School Bolch Judicial Institute, March 2019; Speaker, "Certifying a Class on Women's Issues — Pay Equity, Sexual Assault, and More," Women's Issues in Litigation Conference, Santa Monica, CA, October 25, 2018; Co-founder and Producer, "Complex Litigation E-Discovery Forum; Speaker, "Proportionality: What's Happened since the Amendments," Minneapolis, MN, September 28, 2018; Producer & Speaker, "Getting the Most Out of Your Team," AAJ Class Action Litigation Group CLE, Denver, CO, July 18, 2018; Speaker, "Careful What You Wish For: Protecting Data Security in Discovery," ABA 12th Annual National Institute on E-Discovery, Chicago, IL, May 18, 2018; Speaker, "Class Certification," HB Class Action Mastery Conference, New York, NY, May 9, 2018; Producer & Faculty Member, AAJ Effective Legal Writing Workshop, New York, NY, April 12-13, 2018; Co-Editor-in-Chief, "The Sedona Conference Federal Rule of Civil Procedure 34 Primer," 19 Sedona Conf. J. 447, March 2018; aserSpeaker, "Lawyers as Managers," Emory Law's Institute for Complex Litigation & Mass Claims Leadership Conference - Atlanta, GA, January 19, 2018; Speaker, "From Terabytes to Binders: Fusing Discovery and Advocacy Strategies," Georgetown Law's 14th Annual Advanced eDiscovery Institute - Washington DC, November 17, 2017; Co-Editor-in-Chief & Steering Committee Liaison, "The Sedona Conference Federal Rule of Civil Procedure 34 Primer," The Sedona Conference Working Group Series,

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 263 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 133 of 144

September 2017; Drafting Team Member, "The Sedona Conference Commentary on Proportionality in Electronic Discovery," The Sedona Conference Journal, Volume 18, May 2017; Producer & Moderator, "The Future of Class Actions," AAJ Class Action Litigation Group seminar – Nashville, TN, May 11, 2017; Producer & Speaker, "Examining Amended Rule 34," The Sedona Conference Working Group 1 Mid-Year Meeting – Minneapolis, MN, May 4-5, 2017; Speaker, "The Economic Influence and Role of the Class Representative – Ethical and Policy Issues," Class Action Money & Ethics Conference – New York, NY, May 1, 2017; Producer & Speaker, "Diversity in Law: The Challenges and How to Overcome Them," AAJ Education webinar, March 27, 2017; Co-chair, "Staying Ahead of the eDiscovery Curve: Retooling Your Practice Under the New Federal Rules," 10th Annual Sedona Conference Institute Program on eDiscovery, March 2-3, 2017; Faculty Member, "The Sedona Conference eDiscovery Negotiation Training: Practical Cooperative Strategies," Miami, FL, February 8-9, 2017; Speaker, "Proportionality: What's Happened since the Amendments," Western Trial Lawyers Association CLE, Steamboat Springs, CO, February 2017; "Quality In, Quality Out," Trial Magazine, January 2017; Testified before the Federal Rules Advisory Committee concerning proposed amendments to Federal Rule 23, Phoenix, AZ, January 4, 2017; Profiled in "Women of Legal Tech: From Journalism to Law", LegalTech News – December 8, 2016; Speaker, "Closure Mechanisms," Federal Judicial Center / Judicial Panel on Multidistrict Litigation Conference, Atlanta, GA, December 15, 2016; Speaker, "Getting Selected for Leadership – What Decisionmakers Look For and How to Overcome Common Barriers," Emory Law Insitute for Complex Litigation & Mass Claims, Atlanta, GA, December 14, 2016; Producer & Speaker, "Mitigating Explicit and Implicit Bias in Associate Recruitment and Retention," AAJ Hot Topics: Diversity in the Law, Charlotte, NC, November 30, 2016; Speaker, "The New Rules x 1 Year: Sanctions," Georgetown Law Advanced E-Discovery Institute, Washington DC, November 10-11, 2016; Faculty Member, AAJ Effective Legal Writing Workshop, Washington DC, November 3-4, 2016; Speaker, "Proportionality under the Amended FRCP 26", Complex Litigation E-Discovery Forum, Minneapolis, MN, September 25, 2016; Speaker, "Proportionality: What's Happened since the Amendments," Complex Litigation E-Discovery Forum, Minneapolis, MN, September 23, 2016; Moderator, "Who Will Write Your Rules—Your State Court or the Federal Judiciary?," Pound Civil Justice Institute Forum for State Appellate Court Judges, Los Angeles, CA, July 23, 2016; Producer, Moderator & Speaker, "Dissecting the U.S. Supreme Court Decision in Spokeo, Inc. v. Robins," American Association for Justice webinar, May 26, 2016; Moderator & Speaker, "Consumer Class Actions," HB Litigation Conference, San Juan, PR, May 4, 2016; Faculty Member, The Sedona Conference eDiscovery Negotiation Training: Practical Cooperative Strategies, Washington, DC, March 1-2, 2016; Producer & Speaker, "The 2015 Amendments to the Federal Rules of Civil Procedure," New York, NY, February 9, 2016; "How to Stop Worrying and Love Predictive Coding," Trial Magazine, January 2016; Speaker, "How Will New Rule 26(b)(1) on Proportionality Impact Search and the Use of Search Technology?," Innovation in E-Discovery Conference, New York, NY, December 9, 2015; Speaker, "New Forms of Communication," Innovation in E-Discovery Conference, New York, NY, December 9, 2015; Speaker, "2015 Amendments to Federal Civil Rules," Tennessee Bar Association CLE, Nashville, TN, December 2, 2015; "Discovery Proportionality Guidelines and Practices," 99 Judicature, no. 3, Winter 2015, at 47—60 (Complex Litigation Drafting Team Leader); Speaker, "Check Your Sources: Understanding the Technical Aspects of Data Collection", Georgetown Advanced E-Discovery Institute, Washington, DC, November 19, 2015; Speaker, "The Contentious Battle over Search Protocols in e-Discovery", Association of Certified E-Discovery Specialists webinar,

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 264 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 134 of 144

October 8, 2015; Speaker, "Proportionality in Preservation and Discovery," The Sedona Conference Working Group 1 Mid-Year Meeting, Dallas, TX, April 30, 2015; Speaker, "Ethical Challenges in eDiscovery: Representing Clients Responsibly," The Sedona Conference Institute, Nashville, TN, March 20, 2015; Speaker, "Issue Classes under Rule 23," Western Trial Lawyers Association CLE, Squaw Valley, NV, February 2015; Speaker, "Issue Classes under Rule 23," American Association for Justice Winter Convention, Palm Desert, CA, February 24, 2015; "An Introduction to Issue Classes under Rule 23(c)(4)," American Association for Justice Winter Convention published materials, February 2015; Speaker, "Shifting and Sharing the Costs of Preservation and Discovery: How, When, and Why," Bloomberg BNA webinar, November 18, 2014; Speaker, "Application of Proportionality in Preservation and Discovery," The Sedona Conference All Voices Meeting, New Orleans, LA, November 5, 2014; Speaker, "A Tour of TAR (Technology-Assisted Review)," The Sedona Conference All Voices Meeting, New Orleans, LA, November 7, 2014; Speaker, "Data Privacy and Security Are Front and Center in Litigation News — Substantive Claims and eDiscovery Issues Abound," Georgetown Advanced E-Discovery Institute, Tysons Corner, VA, November 21, 2014; Interviewed re class action litigation regarding defective products on China Central Television for China's national "Consumer Protection Week" feature programming — CCTV, March 15, 2014; Organizer & Speaker, "Introduction to TAR," Lieff Cabraser Heimann & Bernstein CLE, New York, NY, August 18, 2014; Speaker, "Motions to Strike Class Allegations Using 'Predominance'," Strafford webinar, August 6, 2014; "Wit and Wisdom," Trial Magazine, Volume 49, No. 12, December 2013;Speaker, "Status of Subsistence Claims in BP Oil Spill Settlement," American Association for Justice Annual Convention, San Francisco, CA, July 2013; "Stick a Toothbrush Down Your Throat: An Analysis of the Potential Liability of Pro-Eating Disorder Websites," Texas Journal of Women & the Law, Volume 14 Issue 2, Spring 2005; "The Gift of Legal Vision," USC Law, Spring 2003; "Welcome to Law School," monthly column on www.vault.com, 2001 - 2004. *Awards and Honors*: "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020; "Super Lawyer for New York Metro," Super Lawyers, 2018-2019; "40 and Under Hot List, Benchmark Litigation, 2018; "Rising Star for Class Action Law, Law360, 2018; Certificate of Recognition, American Association for Justice, 2018; "Leaders in the Field - Litigation: E-Discovery," *Chambers USA*, 2017; "Rising Star for New York Metro," *Super Lawyers*, 2013-2015; Wiley W. Manuel Award for Pro Bono Legal Services awarded by the State Bar of California for voluntary provision of legal services to the poor, 2005. *Member*: American Association for Justice (Co-Chair, Class Action Litigation Group, 2016); American Association for Justice (Steering Committee of the Public Education Committee); Barrister of the New York American Inn of Court; Emory University Law School Institute for Complex Litigation & Mass Claims (Next Generation Advisory Board Member); Georgetown Law Advanced E-Discovery Institute (Advisory Board and Planning Committee); New York City Bar Association; New York County Lawyer's Association; New York State Bar Association; Swedish American Bar Association; The Sedona Conference Working Group 1 (Steering Committee Member). *Languages*: Swedish (fluent); French (DFA1-certified in Business French); Spanish (conversational).

**MICHAEL J. MIARMI**, Admitted to practice New York, 2006; U.S. District Court, Eastern District of New York, 2012; U.S. District Court, Southern District of New York, 2012; U.S. Court of Appeals for the Second Circuit, 2011; U.S. Court of Appeals for the Third Circuit, 2007; U.S. Court of Appeals for the Sixth Circuit; U.S. Court of Appeals for the Eighth Circuit,

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B - Motion for Preliminary Approval of Class Settlement Papers    Pg 265 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 135 of 144

2007; U.S. Supreme Court, 2011. *Education*: Fordham Law School (J.D., 2005); Yale University (B.A., *cum laude*, 2000). *Prior Employment*: Milberg Weiss LLP, Associate, 2005-2007. *Awards & Honors:* "Rising Star for New York Metro," *Super Lawyers*, 2013-2017. *Publications & Presentations*: Co-Author with Steven E. Fineman, "The *Basics* of Obtaining Class Certification in Securities Fraud Cases: U.S. Supreme Court Clarifies Standard, Rejecting Fifth Circuit's 'Loss Causation' Requirement," *Bloomberg Law Reports* (July 5, 2011). *Member:* State Bar of New York; New York State Trial Lawyers Association; Public Justice Foundation; American Bar Association; New York State Bar Association.

**DAVID RUDOLPH**, Admitted to practice in California, 2004; U.S. District Court, Northern District of California, 2008; U.S. District Court, Southern District of California, 2008; U.S. Court of Appeals for the Ninth Circuit, 2009; U.S. Court of Appeals for the Federal Circuit, 2012. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2004); Moot Court Board; Appellate Advocacy Student Advisor; Berkeley Technology Law Journal; Berkeley Journal of International Law; Rutgers University (Ph.D. Program, 1999-2001); University of California, Berkeley (B.A. 1998). *Awards & Honors:* "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017. *Prior Employment:* Associate, Quinn Emanuel Urquhart & Sullivan, LLP, 2008-2012; Law Clerk to the Honorable Saundra Brown Armstrong, U.S. District Court for the Northern District of California, 2007-2008.

**DANIEL E. SELTZ**, Admitted to practice in New York, 2004; U.S. District Court, Southern District of New York, 2005; U.S. District Court, Eastern District of New York, 2011; U.S. Court of Appeals for the First Circuit, 2011; U.S. Court of Appeals for the Fourth Circuit, 2013; U.S. Court of Appeals for the Ninth Circuit, 2011. *Education:* New York University School of Law (J.D., 2003); *Review of Law and Social* Change, Managing Editor; Hiroshima University (Fulbright Fellow, 1997-98); Brown University (B.A., *magna cum laude*, Phi Beta Kappa, 1997). *Awards & Honors:* "Lawdragon 500 Leading Plaintiff Financial Lawyers in America," Lawdragon, 2020; Super Lawyers, 2016-2018. *Prior Employment*: Law Clerk to Honorable John T. Nixon, U.S. District Court, Middle District of Tennessee, 2003-04. *Publications & Presentations*: Co-Author with Jordan Elias, "The Limited Scope of the Ascertainability Requirement," American Bar Association, Section of Litigation, March 2013; Panelist, "Taking and Defending Depositions," New York City Bar, May 20, 2009; Contributing Author, *California Class Actions Practice & Procedures* (Elizabeth J. Cabraser, Editor-in-Chief, 2008); "Remembering the War and the Atomic Bombs: New Museums, New Approaches," in *Memory and the Impact of Political Transformation in Public Space* (Duke University Press, 2004), originally published in *Radical History Review*, Vol. 75 (1998); "Issue Advocacy in the 1998 Congressional Elections," with Jonathan S. Krasno (Urban Institute, 2001); *Buying Time: Television Advertising in the 1998 Congressional Elections*, with Jonathan S. Krasno (Brennan Center for Justice, 2000); "Going Negative," in *Playing Hardball*, with Kenneth Goldstein, Jonathan S. Krasno and Lee Bradford (Prentice-Hall, 2000). *Member*: American Association for Justice; State Bar of New York.

**ANNE B. SHAVER**, Admitted to practice in California, 2008; Colorado, 2008; U.S. District Court, Northern District of California, 2009; U.S. Court of Appeals for the Second Circuit, 2012; U.S. Supreme Court, 2013; U.S. Court of Appeals of the Ninth Circuit, 2009.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 266 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 136 of 144

*Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2007), Order of the Coif; University of California, Santa Cruz (B.A. *cum laude*, 2003), Phi Beta Kappa. *Awards & Honors:* "Rising Star for Northern California," *Super Lawyers*, 2013-2019; "40 & Under Hot List," Benchmark Litigation, 2018, "Top Labor & Employment Lawyers," Daily Journal, 2018; "Plaintiff Employment Lawyers," Lawdragon 500, 2018. *Prior Employment:* Law Clerk to Honorable Betty Fletcher, U.S. Court of Appeals for the Ninth Circuit, 2008-2009; Davis, Graham & Stubbs, LLP, Litigation Associate, 2008; Public Defender's Office of Contra Costa County, 2007; Davis, Cowell & Bowe, LLP, Summer Law Clerk, 2006; Centro Legal de la Raza, Student Director, Workers' Rights Clinic, 2005-2006; Human Rights Watch, Legal Intern, 2005. *Publications*: "Winning Your Class Certification Motion Post-Brinker," Consumer Attorneys of California, November 2013 (panelist); "Counseling HR on National Origin & Language Issues in the Workplace," ABA Labor & Employment Section, November 2012 (moderator); "*U.S. v. Fort* and the Future of Work-Product in Criminal Discovery," 44 Cal. W. L. Rev. 127, 12293 (Fall 2007); "Rule 23 Basics," Impact Fund Class Action Training Institute, May 2011; "A Place At The Table? Recent Developments in LBGT Rights," ABA Labor & Employment Section Conference, April 2012 (moderator); "Transgender Workplace Issues After the EEOC's Landmark Macy Ruling," Bar Association of San Francisco, September 2012 (moderator); CAOC, "Latest Developments in Employment and Wage and Hour Law," February 25, 2014 (speaker). *Member*: Bar Association of San Francisco; Consumer Attorneys of California; National Employment Lawyers Association; American Bar Association Equal Employment Opportunity Committee (Co-Chair); Programs Committee.

**KATHERINE LUBIN BENSON,** Admitted to practice in California, 2008; Ninth Circuit Court of Appeals; U.S. District Court, Northern District of California; U.S. District Court, Southern District of California; U.S. District Court, Central District of California. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2008); University of California, Berkeley, School of Law (Berkeley Law) Mock Trial Team, 2006-2008; *First Place*, San Francisco Lawyer's Mock Trial Competition. University of California Los Angeles (B.A., Political Science, minor in Spanish, *cum laude*); Phi Beta Kappa; UCLA Honors Program; Political Science Departmental Honors; GPA 3.8. Universidad de Sevilla (2003). *Awards & Honors:* "Rising Star for Northern California," Super Lawyers, 2016-2019; "40 and Under Hot List," Benchmark Litigation, 2018. *Prior Employment:* Associate, Orrick, Herrington & Sutcliff, LLP, 2008-2013; Summer Associate, Orrick, Herrington & Sutcliff, LLP, 2007; Judicial Extern to Honorable Dean D. Pregerson, 2006. *Member*: American Bar Association; State Bar of California; Board of Directors, Northern District Court Practice Program; Board of Directors, East Bay Community Law Center.

**KEVIN R. BUDNER,** Admitted to practice in California; U.S. Court of Appeals, Seventh Circuit, 2016; U.S. Court of Appeals, Ninth Circuit, 2016; U.S. District Court, Northern District of California, 2014; U.S. District Court, Central District of California, 2014; U.S. District Court of Colorado, February 25, 2014. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2012); American Jurisprudence Award in Advanced Legal Research (first in class); Prosser Prize in Negotiation (second in class); Edwin A. Heafey, Jr. Trial Fellowship Recipient; Board of Advocates Trial Team Member; American Association of Justice Trial Competition, 2012 National Semi-finalist, 2011 Regional Finalist; *Berkeley Journal of International Law*, Senior Editor. University of California Hastings College of the Law (2009-

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 267 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 137 of 144

2010); CALI and Witkins Awards (first in class); Wesleyan University (B.A., Political Science, 2005). *Honors & Awards:* "Trial Lawyer of the Year," Public Justice, 2019; "Trial Lawyer Excellence Award," Law Bulletin, 2019; "Rising Star for Northern California," Super Lawyers, 2019; "California Lawyer of the Year," California Daily Journal, 2018; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017; "40 and Under Hot List", Benchmark Litigation, 2018. *Prior Employment:* Judicial Clerk to U.S. District Judge Barbara M.G. Lynn, 2012-2013; Certified Student Counsel, East Bay Community Law Center, 2011-2012; Research Assistant, Duckworth Peters Lebowitz Olivier, LLP, 2011-2012; Summer Associate, Lieff Cabraser Heimann & Bernstein, LLP , 2011-2012; Judicial Extern to U.S. District Judge Phyllis J. Hamilton, 2010; Homeless Policy Assistant, Office of Mayor Gavin Newsom, 2009; Project Manager, Augustyn & Co. 2007-2009; Visiting Professor, University of Liberal Arts Bangladesh, 2006-2007; Researcher, Rockridge Institute, 2005, 2006. *Languages:* Spanish (proficient), Portuguese (proficient), Bengali (basic). *Publications*: Co-Author, "Play Ball: Potential Private Rights of Action Emerging From the FIFA Corruption Scandal," 11 Business Torts & RICO News 1 (Summer 2015). *Member*: American Association for Justice, Bar Association of San Francisco, Consumer Attorneys of California, State Bar of California, San Francisco Trial Lawyers Association.

**PHONG-CHAU G. NGUYEN**, Admitted to practice in California, 2012; U.S. District Court, Northern District of California, 2013; U.S. District Court, Central District of California, 2013; U.S. Court of Appeals for the Ninth Circuit, 2013. *Education:* University of San Francisco School of Law (J.D. 2012); Development Director, USF Moot Court Board; Merit Scholar; Zief Scholarship Recipient; University of California, Berkeley (B.A., Highest Honors; Distinction in General Scholarship, 2008). *Honors & Awards:* "Rising Star for Northern California," Super Lawyers, 2018-2019; "40 and Under Hot List," Benchmark Litigation, 2018, 2019; "California Lawyer of the Year," California Daily Journal, 2018; "Outstanding Volunteer for Pro Bono Work," Justice & Diversity Center of the Bar Association of San Francisco, 2018; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017. *Prior Employment:* Attorney, Minami Tamaki, 2013; Post-Bar Law Clerk, Velton Zegelman PC, 2012; Law Clerk, Minami Tamaki, 2011-2012; Housing and Economic Rights Advocates, 2011; Greenlining Institute, 2008-2009, 2012. *Member:* State Bar of California; Asian American Bar Association for the Greater Bay Area; Barristers Club of the San Francisco Bar Association, Board of Directors; San Francisco Trial Lawyers Association.

**MELISSA GARDNER**, Admitted to practice in California, 2013; New York, 2013; U.S. District Court, Northern District of California, 2013; Central District of California, 2019. *Education*: Harvard Law School (J.D. 2011); Student Attorney, Harvard Prison Legal Assistance Project and South Brooklyn Legal Services; Semi-Finalist, Harvard Ames Moot Court Competition; *Harvard International Law Journal*. Western Washington University (B.A. *magna cum laude*, 2005). *Awards & Honors:* "Rising Star for Northern California," *Super Lawyers*, 2017-2019. *Prior Employment*: Associate, Emery Celli Brinckherhoff & Abady (2012); Law Clerk, South Brooklyn Legal Services (2011-2012); Peace Corps Volunteer, China (2005-2008). *Publications*: Co-Author, "Play Ball: Potential Private Rights of Action Emerging From the FIFA Corruption Scandal," 11 Business Torts & RICO News 1 (Summer 2015). *Member*: American Association for Justice; American Bar Association; Bar Association of San Francisco;

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 268 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 138 of 144

California Women Lawyers; Consumer Attorneys of California; Ms. JD; State Bar of New York; State Bar of California.

**ANDREW KAUFMAN**, Admitted to practice in New York, 2013; Tennessee, 2015; U.S. District Court, Middle District of Tennessee, 2015. *Education:* Harvard Law School (J.D. *cum laude*, 2012); Executive Editor, *Harvard Law and Policy Review*; Dean's Scholar Prizes in Federal Courts, Civil Procedure, and Legislation & Regulation. Carleton College (B.A. *magna cum laude*, Political Science, 2007). *Professional Associations & Memberships:* Member, Nashville Bar Foundation Leadership Forum, 2017 – 2018, *Publications:* "Spokeo Still Standing: No Sign of a Circuit Split" (with Nicholas Diamand), *Law360*, 2016; "Spotlight on Spokeo: A Win for Consumers" (with Nicholas Diamand), *Law360*, 2016; "Lochner for the Executive Branch: The Torture Memo as Anticanon," 7 *Harv. L. & Pol'y Rev.* 199 (2013); "American Foreign Policy Opinion in 2004: Exploring Underlying Beliefs," *27 Am. Rev. of Pol.* 295 (2007). *Prior Employment:* Law clerk to the Honorable Martha Craig Daughtrey, U.S. Court of Appeals, Sixth Circuit (2014-15); Law Clerk to the Honorable Stephen Glickman, D.C. Court of Appeals (2013-14); Fellow, Public Citizen Litigation Group (2012-13).

**KELLY MCNABB,** Admitted to practice in Minnesota, 2012; New York, 2015; U.S. District Court, District of Minnesota, 2012. *Education:* University of Minnesota Law School (J.D. *cum laude* 2012); Managing/Research Editor, *Minnesota Law Review*, 2010-2012; University of Minnesota Twin Cities College of Liberal Arts (B.A. 2008). *Honors & Awards:* "Rising Star for NY Metro," Super Lawyers, 2016-2017; Attorney of the Year – Pritzker Trial Team, *Minnesota Lawyer*, 2014. *Publications*: "The Relevant Scope of General Causation: Internal Company Documents and Communications," *American Association for Justice Newsletter*, 2018 ; "What 'Being a Watchdog' Really Means: Removing the Attorney General from the Supervision of Charitable Trusts," *Minnesota Law Review*, 2012. *Prior Employment*: Pritzker Olsen, P.A., Attorney, 2012-2014. *Member:* American Association for Justice, Minnesota Association for Justice, Minnesota Women Lawyers.

**JOHN T. NICOLAOU**, Admitted to practice in New York, 2013. *Education*: Columbia Law School (J.D., 2012), James Kent Scholar (2011, 2012), Harlan Fiske Stone Scholar (2010); Northwestern University (M.A., 2009); Vanderbilt University (B.A. summa cum laude, 2008). *Publications*: Note, Whistle While You Work: How the False Claims Act Amendments Protect Internal Whistleblowers, 2011 Colum. Bus. L. Rev. 531 (2011). *Prior Employment*: Boies Schiller Flexner, LLP. *Member*: State Bar of New York.

**YAMAN SALAHI,** Admitted to practice in California, 2013; U.S. District Court, Central District of California, 2013; U.S. District Court, Northern District of California, 2014; U.S. Court of Appeals, Ninth Circuit, 2013. *Education:* Yale Law School (J.D. 2012); University of California, Berkeley (B.A. 2009). *Prior Employment:* Judicial Clerk to Judge Edward M. Chen in the U.S. District Court for the Northern District of California; Arthur Liman Fellow, American Civil Liberties Union of Southern California; National Security and Civil Rights program, Advancing Justice-Asian Law Caucus. *Awards & Honors:* Kathi Pugh Award for Exceptional Mentorship, U.C. Berkeley School of Law; American Antitrust Institute's 2017 Antitrust Enforcement Award for Outstanding Antitrust Litigation Achievement in Private Law Practice in *In re Cipro Cases I & II*. *Member:* State Bar of California.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 269 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 139 of 144

**TISEME ZEGEYE**, Admitted to practice in California, 2018; New York, 2013; U.S. Court of Appeals for the 2nd Circuit, 2014; U.S. Court of Appeals for the Ninth Circuit, 2014; U.S. Supreme Court, 2016. *Education:* New York University School of Law (J.D. 2011), BLAPA Kim Barry '98 Memorial Graduation Prize for Academic Excellence and Commitment to International and Human Rights Work; Dean's Scholarship. The College of William and Mary (B.A. *cum laude*, 2008). *Prior Employment:* Staff Attorney, Center for Reproductive Rights, New York; Legal Fellow, American Civil Liberties Union Women's Rights Project. *Member:* American Bar Association, Labor & Employment Law Section (Employee-side Vice-Chair of the Member Services Committee); American Constitution Society Bay Area Lawyer Chapter (Board Member); Equal Rights Advocates (Litigation Committee Member).

### OF COUNSEL

**ROBERT L. LIEFF**, Admitted to practice in California, 1966; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1969; U.S. Supreme Court, 1969; U.S. Court of Appeals, Seventh Circuit, 1972; U.S. Tax Court, 1974; U.S. District Court, District of Hawaii, 1986. *Education*: Columbia University (M.B.A., 1962; J.D., 1962); Cornell University; University of Bridgeport (B.A., 1958). Member, Columbia Law School Dean's Council; Member, Columbia Law School Board of Visitors (1992-2006); Member, Columbia Law School Center on Corporate Governance Advisory Board (2004). *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Mass Tort Litigation/Class Actions — Plaintiffs," 2015-2020; "Super Lawyer for Northern California," Super Lawyers, 2005-2009, "*Lawdragon* Finalist," *Lawdragon*, 2005. *Member*: Bar Association of San Francisco; State Bar of California (Member: Committee on Rules of Court, 1971-74; Special Committee on Multiple Litigation and Class Actions, 1972-73); American Bar Association (Section on Corporation, Banking and Business Law); Lawyers Club of San Francisco; San Francisco Trial Lawyers Association; California Trial Lawyers Association; Consumer Attorneys of California; Fight for Justice Campaign.

**WILLIAM BERNSTEIN**, Admitted to practice in California, 1975; U.S. Court of Appeals, Ninth Circuit, 1987; U.S. District Court, Northern District of California, 1975; New York and U.S. Supreme Court, 1985; U.S. District Court, Central and Eastern Districts of California, 1991; U.S. District Court, Southern District of California, 1992; U.S. Court of Appeals, Third Circuit, 2008. *Education*: University of San Francisco (J.D., 1975); *San Francisco Law Review*, 1974-75; University of Pennsylvania (B.A., general honors, 1972). *Community Service*: Adjunct Professor of Law, University of San Francisco, Settlement Law, 2006-present; Judge Pro Tem for San Francisco Superior Court, 2000-present; Marin Municipal Court, 1984; Discovery Referee for the Marin Superior Court, 1984-89; Arbitrator for the Superior Court of Marin, 1984-1990. *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; "California Litigation Star," *Benchmark Plaintiff* (ranked as one of California's leading litigators in antitrust law); Selected for inclusion by peers in *The Best Lawyers in America* in field of "Litigation - Antitrust," 2013-2020; "Northern California Super Lawyer," *Super Lawyers*, 2004-2019; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2014; "Lawdragon Finalist," *Lawdragon*, 2009-2011; "Top Attorneys In Antitrust Law," *Super Lawyers Corporate Counsel Edition*, 2010, 2012; Princeton Premier Registry, Business Leaders

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 270 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 140 of 144

and Professionals, 2008-2009; "Top 100 Trial Lawyers in California," American Trial Lawyers Association, 2008; *Who's Who Legal*, 2007; Unsung Hero Award, Appleseed, 2006. *Publications & Presentations*: "The Rise and Fall of Enron's One-To-Many Trading Platform," American Bar Association Antitrust Law Section, Annual Spring Meeting (2005); Co-Author with Donald C. Arbitblit, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," *Hastings West-Northwest Journal of Environmental and Toxic Torts Law and Policy*, No. 3 (Spring 1996). *Member*: Board of Governors, Association of Business Trial Lawyers; Bar Association of San Francisco; Marin County Bar Association (Admin. of Justice Committee, 1988); State Bar of California.

**LYDIA LEE**, Admitted to practice in Oklahoma 1983; U.S. District Court, Western and Eastern Districts of Oklahoma; U.S. Court of Appeals, 10th Circuit. *Education*: Oklahoma City University, School of Law (J.D., 1983); University of Central Oklahoma (B.A., 1980). *Prior Employment*: Partner, Law Office of Lydia Lee (2005-2008); Partner, Oklahoma Public Employees Retirement System (1985-2005); Associate, law firm of Howell & Webber (1983-1985). *Publications & Presentations*: "QDROs for Oklahoma's Public Pension Plans," *Oklahoma Family Law Journal*, Vol. 13, September, 1998; Co-Author, "Special Problems in Dividing Retirement for Employees of the State of Oklahoma," *OBA/FLS Practice Manual*, Chapter 27.3, 2002; Featured Guest Speaker, *Saturday Night Law*, KTOK Radio; Contributor and Editor, INFRE Course Books for CRA program. *Member*: Ruth Bader Ginsberg Inn of Court (2015-present), Outstanding Master of the Bench (2016-2017); Edmond Neighborhood Alliance Board of Directors (2005-Present), President (2012-2013, 2006-2007); Oklahoma Bar Association, Member (1983-present); OBA Women in Law Committee (2007-2013); Bench and Bar Committee (2013-present); National Association of Public Pension Attorneys (1988-Present), President (2002-2004), Vice-President (2001-2002), Executive Board member (1998-2004), Chair of Benefits Section, Emeritus Board member (2004); Edmond Planning Commission (2008-2010); Central Edmond Urban Development Board (2006-2008); Midwest City Regional Hospital, Board of Governors, Served on Physician/Hospital Organization Board, Pension and Insurance Trust Committees, and Chairman of Woman's Health Committee (1992-1996); City of Midwest City, Planning Commission (1984-1998), Chairman (1990-1995), Vice-Chairman (1987-1990), Served on Capital Improvement Committee, Airport Zoning Commission (Tinker AFB), and Parkland Review Board, served on Midwest City Legislative Reapportionment Committee (1991).

### ASSOCIATES

**EVAN J. BALLAN**, Admitted to practice in California, 2017; U.S. Court of Appeals, Fourth Circuit, 2018; U.S. District Court, Northern District of California, 2018. *Education:* University of Michigan Law School (J.D. Magna cum laude, Order of the Coif, 2017); Articles Editor, Michigan Law Review; McGill University (B.A., 2010). *Publications:* Protecting Whistleblowing (and Not Just Whistleblowers), Note, 116 Mich. L. Rev. 475 (2017). *Prior Employment:* Clerk to the Honorable Albert Diaz of the U.S. Court of Appeals for the Fourth Circuit. *Member:* State Bar of California.

**FACUNDO BOUZAT**, Admitted to practice in California, 2017; U.S. District Court, Northern District of California, 2017; U.S. District Court, Central District of California, 2019.

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 271 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 141 of 144

*Education:* University of Michigan Law School (J.D., 2017); Michigan Law Review, Associate Editor; Judge Avern Cohn Summer Fellowship; Vice-President, ACLU Michigan Law Chapter; Bowling Green State University(B.A., summa cum laude, 2013). *Publications:* American Medical Tourism: Regulating a Cure that Can Damage Consumer Health, 25 L. Consumer L. Rev. 319 (2013); The Contingent Ethics of Market Transactions: Linking the Regulation of Business to Specific Forms of Markets, 6 Charleston L. Rev. 163 (2012); Changing Demographics and Language: A New Challenge to Legal Services Programs, 26 J. Mgmt. Info. Exchange (Winter Issue) 9 (2011). *Member:* State Bar of California.

**WILSON M. DUNLAVEY**, Admitted to practice in California, 2015; U.S. Court of Appeals, Ninth Circuit, 2016; U.S. District Court, Central District of California, 2016; U.S. District Court, Northern District of California, 2016; U.S. District Court, Middle District of North Carolina, 2016. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2015); Berkeley Technology Law Journal, Associate Editor; University of California, Berkeley, School of Law (Berkeley Law) Queer Caucus, Co-Chair; Board of Advocates Moot Court Team. Humboldt University in Berlin (Ph.D., *cum laude*, Modern History, 2015; Dual M.A., *Magister Artium*, History and Philosophy, 2015); Friedrich-Naumann Foundation; Master's and Ph.D. Fellow; Queer Initiative, Director; Student Government, Executive Counsel. St. John's College (B.A., History of Math and Science, Philosophy, 2003); Faculty Toast Prize; Delegate Council. *Honors & Awards:* "Rising Star for Northern California," Super Lawyers, 2019; "California Lawyer of the Year," California Daily Journal, 2018; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017. *Prior Employment:* Summer Associate, McDermott Will & Emery (2014); Law Clerk, Transgender Law Center (2014); Legal Research and Writing Teaching Assistant, First Year Skills Program, UC Berkeley School of Law (2013-2014); Judicial Extern to the Honorable William A. Alsup, U.S. District Court for the Northern District of California (2013); Legal Counselor, Berkeley Workers' Rights Clinic (2012-2013). *Member:* State Bar of California.

**ADAM GITLIN**, Admitted to practice in California, 2017; New York, 2009; U.S. District Court, Central District of California, 2018; U.S. District Court, Southern District of California, 2018. *Education:* University of Michigan Law School (J.D., 2007), Executive Editor and Editorial Board Member, University of Michigan Law Review. Princeton University (A.B., 2003). *Honors & Awards:* "Rising Star for Northern California," Super Lawyers, 2019. *Publications & Presentations:* The Justice Department's Voter Fraud Scandal: Lessons (with Wendy Weiser), New York: Brennan Center for Justice (January 2017); Lecturer, "Voter Intimidation and Discrimination in the 2016 Election: Rhetoric and Reality," U.S. Presidential Election of 2016 Conference on Domestic & International Aspects, Inter-Disciplinary Center, Herzliya, Israel (January 2017); Lecturer, "Modernizing Elections," Washington House of Representatives State Government Committee (January 2017); Dangers of "Ballot Security" Operations: Preventing Intimidation, Discrimination, and Disruption (with Wendy Weiser), New York: Brennan Center for Justice (August 2016); Automatic Motor-Voter Registration Now Law in Four States, BillMoyers.com (May 2016); Lecturer, "Nonpartisan Voter Education Workshop," Nassau County, NY (October 2016); Lecturer, "Voting in 2016: The Good, the Bad, and the Potentially Very Ugly," Westchester Women's Bar Association, White Plains, NY (September 2016); Witness, Voting Rights Town Hall Meeting: "Setting the Democracy Agenda,"

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 272 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 142 of 144

Hon. John Conyers & Hon. Brenda Lawrence, U.S. House of Representatives, Detroit, MI (June 2016); Witness, Congressional Forum: "Fragile at fifty: The urgent need to strengthen and restore the Voting Rights Act," Hon. Nydia Velazquez, Hon. Hakeem Jeffries, and Hon. Grace Meng, U.S. House of Representatives Democratic Outreach and Engagement Task Force, New York, NY (May 2016); Witness, Hearing on SB 350 [automatic voter registration bill], Senate Education, Health, and Environmental Affairs Committee, Maryland Senate (February 2016); Christie Misses a Golden Opportunity for the Garden State, The Huffington Post (November 2015); Panelist, "Voting Rights Panel," SiX National Legislator Conference, Washington, DC (October 2015). *Prior Employment*: Counsel, Brennan Center for Justice at NYU School of Law (2015-2017); Trial Attorney, U.S. Department of Justice Antitrust Division, Litigation I Section (2008-2015); Law Clerk to Judge Noël A. Kramer, District of Columbia Court of Appeals (2007-2008).

***AVERY S. HALFON***, Admitted to practice in New York, 2016; District of Columbia, 2017; U.S. Court of Appeals for the Sixth Circuit, 2017; U.S. Court of Appeals for the Second Circuit, 2017; U.S. District Court, Eastern District of New York, 2018. *Education*: Harvard Law School (J.D. *cum laude*, 2015); Editor-in-Chief, Harvard Law & Policy Review; Dean's Scholar Prizes in Law and the Political Process, Transnational Corruption, and Environmental Law. Stanford University (B.A., 2010). *Prior employment*: Law Clerk to the Honorable Jane B. Stranch of the U.S. Court of Appeals for the Sixth Circuit (2016-2017); Fellow, Cohen Milstein Sellers & Toll, PLLC (2015-2016). *Member*: American Association of Justice; New York State Academy of Trial Lawyers.

***MICHELLE LAMY***, Admitted to practice in California, 2015; U.S. Court of Appeals for the Ninth Circuit, 2017; U.S. District Court, Northern District of California, 2017; U.S. District Court, Western District of Wisconsin, 2016. *Education:* Stanford Law School (J.D., 2015); Gerald Gunther Prize for Outstanding Performance in Research and Legal Writing; Gerald Gunther Prize for Outstanding Performance in Statutory Interpretation; Executive Board, Stanford Journal of Civil Rights & Civil Liberties. College of Arts & Sciences, Boston College (B.A. *summa cum laude*, 2009); Phi Beta Kappa; Dean's List First Honors, Dean's Scholar - Economics; Rev. Robert Cheney Economics Scholar. *Prior Employment:* Law Clerk to the Honorable Thelton E. Henderson, U.S. District Court for the Northern District of California. *Member:* American Bar Association; State Bar of California. *Honors & Awards:* "Rising Star for Northern California," Super Lawyers, 2019.

***DANIEL R. LEATHERS***, Admitted to practice in New Jersey, 2010; New York, 2010; Pennsylvania, 2009; U.S. Court of Appeals, 3rd Circuit, 2012; U.S. District Court, District of New Jersey, 2010; U.S. District Court, Eastern District of New York, 2012; U.S. District Court, Southern District of New York, 2012; U.S. District Court, Eastern District of Wisconsin, 2013. *Education:* Case Western Reserve University Law School, Cleveland, Ohio (J.D. cum laude, 2009), Case Western Reserve Journal of International Law, Executive Articles Editor; Pennsylvania State University (B.A., History & Journalism, 2005). *Professional Associations:* American Association of Justice; American Bar Association; New Jersey Association of Justice. *Honors & Awards:* "Rising Star for New York Metro Area in Class Action/Mass Torts," Super Lawyers, 2013, 2014, 2015, 2016, 2017; "Rising Star for New Jersey in Class Action/Mass Torts," Super Lawyers, 2019; Federal Bar Association Award for Excellence in Constitutional Law,

09-50026-mg    Doc 14696-2    Filed 03/27/20    Entered 03/27/20 21:11:57    Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers    Pg 273 of 281

Case 1:14-md-02543-JMF    Document 7819-1    Filed 03/27/20    Page 143 of 144

2009; International Academy of Trial Lawyers Award for Overall Trial Advocacy Excellence, 2009; CALI Excellence for the Future Awards: Trial Tactics, 2009; Constitutional Law II, 2007. *Prior Employment:* Clerk to the Honorable Carol Higbee, New Jersey Superior Court Civil Division Presiding Judge (deceased). *Member:* New Jersey State Bar Association; New York State Bar Association; Pennsylvania State Bar Association.

**MICHAEL LEVIN-GESUNDHEIT,** Admitted to practice in California, 2013; U.S. District Court, District of New Mexico, 2017; U.S. District Court, Northern District of California, 2015; U.S. Court of Appeals for the Second Circuit, 2019; U.S. Court of Appeals for the Ninth Circuit, 2018. *Education:* Stanford Law School (J.D., 2013), Managing Editor, *Stanford Law & Policy Review*; Gerald Gunther Prize for Outstanding Performance in Intellectual Property. Harvard University (A.B. *magna cum laude*, 2008). *Professional Associations:* American Bar Association, Equal Employment Opportunity Committee; Bar Association of San Francisco; Consumer Attorneys of California. *Prior Employment:* Law Clerk to the Honorable Jacqueline Nguyen, Ninth Circuit Court of Appeals (2014-2015); Law Clerk to the Honorable Garland Burrell, Jr., U.S. District Court, Sacramento, California (2013-2014).

**RHEA GHOSH**, Admitted to practice in New York, 2017. *Education:* University of Pennsylvania Law School (J.D., 2016), Moot Court Board, Bench Memorandum Committee Chair; *University of Pennsylvania Journal of Constitutional Law*, Senior Editor; Extraordinary Service Award; Dean's Merit Scholarship; Wharton Certificate in Management; South Asian Law Student Association, Executive Board; Prisoner's Education and Advocacy Project, Co-Director; University of Pennsylvania Student Animal Legal Defense Fund, Co-Director; Federal Appellate Litigation Extern; Amherst College (B.A., 2010), Five-College International Relations Certificate; Horizons for Homeless Children, Campus Director. *Prior Employment:* Judicial Clerk to the Hon. Charles S. Haight, Jr., of the Southern District of New York; Associate Attorney, Kirkland & Ellis LLP. *Member:* State Bar of New York.

**KATHERINE MCBRIDE**, Admitted to practice in New York, 2016. *Education:* Stanford Law School (J.D. pro bono distinction, 2015) (Levin Center Public Interest Fellow; Stanford Law Association; Stanford Journal of International Law; Iraqi Legal Education Initiative Rule of Law Project; Policy Director, Iraqi Refugee Assistance Project; Student Leader, DACA Pro Bono Project). Boston College (B.A. summa cum laude, 2011) (Phi Beta Kappa, Alpha Sigma Nu). *Prior employment:* Judicial Clerk to Judge I. Leo Glasser of the U.S. District Court for the Eastern District of New York; Ford Foundation Public Interest Fellow, Human Rights First. *Member:* State Bar of New York.

**VALERIE COMENENCIA ORTIZ**, Admitted to practice in California, 2018. *Education*: Yale Law School (J.D., 2018), Articles Editor, *Yale Journal of International Law*; Community Service Chair, Black Law Students Association & Latino Law Students Association; Vice President for Membership and Community Engagement, American Constitution Society. Columbia University, School of International and Public Affairs (M.A. 2015). Columbia University (B.A. 2014). *Prior Employment*: Jerome N. Frank Legal Services Organization; Asylum Seeker Advocacy Project. *Member*: State Bar of California.

**SEAN A. PETTERSON**, Admitted to practice in New York, 2016; U.S. District Court, Eastern District of New York, 2017; U.S. District Court, Southern District of New York, 2017.

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 274 of 281

Case 1:14-md-02543-JMF   Document 7819-1   Filed 03/27/20   Page 144 of 144

*Education:* New York University School of Law (J.D., 2015); Senior Quorum Editor, Journal of Legislation and Public Policy; Robert McKay Scholar; Brandeis University (B.A., Summa Cum Laude 2011). *Prior Employment:* Civil Litigation Extern, U.S. District Court for the Southern District of New York; Boies Schiller Flexner, LLP. *Member:* State Bar of New York.

**MIKE SHEEN,** Admitted to practice in California, 2012; U.S. District Court, Northern District of California, 2013; U.S. District Court, Southern District of California, 2013; U.S. Court of Appeals, Ninth Circuit, 2018; U.S. Court of Appeals, Federal Circuit, 2015. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2012); Articles Editor (2010-2012), Executive Editor (2011-2012), *Berkeley Technology Law Journal*; Senior Articles Editor, *Asian American Law Journal*; Student Member, Berkeley Law Admissions Committee; Funding Officer, U.C. Berkeley Graduate Assembly. University of California, Berkeley (B.A., 2004). *Prior Employment*: Judicial Clerk to Judge Dale A. Drozd of the U.S. District Court for the Eastern District of California; Milbank, Tweed, Hadley & McCloy LLP. *Member*: State Bar of California.

Notice on the Firm's AV Rating:  AV is a registered certification mark of Reed Elsevier Properties, Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies.  Martindale-Hubbell is the facilitator of a peer review process that rates lawyers.  Ratings reflect the confidential opinions of members of the Bar and the Judiciary. Martindale-Hubbell Ratings fall into two categories—legal ability and general ethical standards.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION<br>SWITCH LITIGATION<br><br>*This Document Relates to:*<br><br>*ALL ECONOMIC LOSS ACTIONS* | No. 14-MD-2543 (JMF) |

### DECLARATION OF COURT-APPOINTED ECONOMIC LOSS MEDIATOR, LAYN R. PHILLIPS, IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT

I, LAYN R. PHILLIPS, declare under penalty of perjury as follows:

1.      I submit this Declaration in my capacity as the MDL Court-Appointed Economic Loss Settlement Mediator in the above-captioned matter and in connection with the Joint Motion for Preliminary Approval of Class Settlement, by Plaintiffs, New GM, and the GUC Trust, pursuant to Federal Rule of Civil Procedure 23.[1]

2.      Pursuant to a court order entered on September 11, 2017 (Docket No. 292), the MDL Court selected me to serve as mediator to facilitate and supervise confidential settlement discussions pertaining to the economic loss claims asserted in MDL 2543. All participants agreed that the entire mediation process was to be regarded as settlement negotiations under Rule 408 of the Federal Rules of Evidence, protecting disclosure made during such process from later discovery, dissemination, publication and/or use in evidence. By making this declaration, neither the Parties nor I waive in any way the provisions of this confidentiality agreement or the protections of Rule 408. While I cannot disclose the contents of the mediation negotiations, the Parties have authorized me to inform the Court of the procedural and substantive matters set forth below to be used in support of their Joint Motion for Preliminary Approval of Class Settlement. Thus, without in any way waiving the mediation privilege, I make this declaration based on personal knowledge.

### I.      BACKGROUND AND QUALIFICATIONS

3.      I have served as a United States District Judge, a United States Attorney, and I was a litigation partner with the firm of Irell & Manella LLP. Presently, I am a mediator and arbitrator with my own alternative dispute resolution company, Phillips ADR Enterprises ("PADRE"), based in Corona Del Mar, California. I am a member of the bars of Oklahoma, Texas, California, and the District of Columbia, as well as the U.S. Courts of Appeals for the Ninth and Tenth Circuits and the Federal Circuit.

---

[1] Capitalized terms not defined herein have the definitions set forth in the Parties' Settlement Agreement.

4.      I earned my J.D., as well as my Bachelor of Science Degree in Economics, from the University of Tulsa.  I completed two years of L.L.M. work at Georgetown University Law Center in the area of economic regulation of industry.

5.      After serving as an antitrust prosecutor and an Assistant United States Attorney in Los Angeles, California, I was appointed by President Reagan to serve as United States Attorney for the Northern District of Oklahoma, where I served for approximately four years.  I was then appointed by President Reagan to serve as a United States District Judge for the Western District of Oklahoma.  While on the bench, I presided over more than 140 federal trials and sat by designation on the United States Court of Appeals for the Tenth Circuit.  I also presided over federal cases in Texas, New Mexico, and Colorado.

6.      I left the federal bench in 1991 and joined Irell & Manella, specializing in alternative dispute resolution, complex civil litigation, and internal investigations. In 2014, I left Irell & Manella to found PADRE where I focus exclusively on providing mediation and other alternative dispute resolution services.

7.      Over the past 29 years, while at Irell & Manella and since then at PADRE, I have served as a mediator and arbitrator in connection with large, complex cases, including numerous consumer class action lawsuits such as this one.

## II.      THE ARM'S-LENGTH SETTLEMENT NEGOTIATIONS

8.      As noted above, I was appointed by the Court on September 11, 2017 to serve as mediator to facilitate discussions among the parties to resolve Plaintiffs' economic loss claims, which they sought to assert on behalf of the Class in the MDL.  I understand from counsel for New GM and Plaintiffs' Class Counsel that a settlement demand to New GM from Plaintiffs' Class Counsel in March 2016 was unsuccessful, as was another settlement demand from Plaintiffs' Class Counsel to New GM in March 2017.  Later that year, on August 11, 2017, the Court ordered New GM and Plaintiffs' Class Counsel to propose a procedure for appointing a mediator for economic loss claims, and the Court selected me pursuant to the process proposed by counsel for New GM and Plaintiffs.

9.      On October 10, 2017, my office confirmed with Plaintiffs' Class Counsel and New GM's Counsel a mediation date for December 1, 2017.  On November 7, 2017, Plaintiffs' Class Counsel and New GM's Counsel submitted opening mediation briefs to PADRE, and both parties submitted reply briefs on November 21, 2017. Their submissions included multiple exhibits, as did other of their later submissions, including various motions and other pleadings filed in the MDL and Bankruptcy proceedings, as well as hearing transcripts and excerpts of proceedings in both courts.

10.     Plaintiffs' Class Counsel and New GM met with me for the December 1, 2017 mediation session at my PADRE office in Corona del Mar, California.  Both sides made adversarial presentations to me, in which they vigorously sought to maximize the benefits to their respective clients.  After a full-day mediation session, no settlement had been reached.  I concluded that further litigation developments would need to occur before the next mediation session, including dispositive motion practice and an opportunity for New GM to respond to Plaintiffs' expert reports.  I proposed tentatively reconvening the mediation in April 2018.  Ultimately, counsel for Plaintiffs and New GM informed me that an April 2018 mediation session would be premature and

unproductive, so no mediation session occurred at that time.

11.    On August 22, 2018, my office confirmed with Plaintiffs' Class Counsel and New GM's counsel a two-day mediation session for October 19 and October 26 at PADRE's Corona del Mar office. On October 11, 2018, I received supplemental adversarial materials along with status reports on developments regarding the economic loss claims in both MDL 2543 and the Bankruptcy Court. The parties' perspectives reflected very different assessments of the litigation proceedings in the courts, with each side advocating vigorously for their view of possible litigation outcomes.

12.    On October 19, 2018, counsel for Plaintiffs and New GM participated in a full-day mediation session. In independent caucus sessions with me and then in joint sessions facilitated by me, over the course of the day, the Parties negotiated various non-monetary, structural aspects of a potential resolution.

13.    On October 26, 2018, counsel for Plaintiffs and New GM convened at my offices for a third full day of mediation. In independent caucus sessions with me and then in joint sessions facilitated by me, over the course of the day, the Parties' negotiations focused upon a potential Common Fund payment by New GM for the benefit of the Class.

14.    Negotiations over the two-day session on October 19 and October 26 were hard fought and concluded with a final demand from Plaintiffs' Class Counsel to New GM. On November 1, 2018, New GM's counsel informed me that New GM rejected the final demand by Plaintiffs' Class Counsel.

15.    Nine months later, on August 6, 2019, Judge Furman issued an order granting New GM's motion for summary judgment on named Plaintiffs' economic loss benefit-of-the-bargain damages claims for the bellwether states of California, Missouri, and Texas, and noting that "given that changed landscape, it may well make sense for the parties to revisit the issue of settlement." (*Id.* at 43.) (Dkt. 7019). The Court subsequently denied Plaintiffs' motion for reconsideration but granted their request to certify the Court's ruling for interlocutory review. (Dkt. 7616)

16.    The next day, on August 7, 2019, Plaintiffs' Class Counsel shared the Court's opinion with me and inquired as to my availability to facilitate an in-person mediation session.

17.    Two new participants who were not involved in the prior mediations, the Motors Liquidation Company GUC Trust (the "GUC Trust") and counsel for the Participating Unitholders (as defined in the Settlement Agreement, they are "certain unaffiliated holders in excess of 65% of the beneficial units of the GUC Trust" represented by Akin Gump Strauss Hauer & Feld LLP) voluntarily agreed to participate in the new mediation. I understand from the Parties' submissions to me at various of the mediation sessions, including Bankruptcy Court filings, that the GUC Trust and Plaintiffs had for years been vigorously litigating in the Bankruptcy Case before Judge Glenn and had made several prior attempts to settle their disputes. I received the hearing transcript of a conference on August 12, 2019, where Judge Glenn noted that Judge Furman's summary judgment opinion had implications for Plaintiffs' related motions to assert economic loss claims in the Bankruptcy Court against the GUC Trust which overlap with their claims asserted against New GM in MDL 2543.

18.    On August 19, 2019, my office confirmed with all counsel – for Plaintiffs, New GM, the GUC Trust and Participating Unitholders – a mediation session for September 11, 2019

to occur at PADRE's Corona del Mar office.

19.     Prior to the session, counsel for the Parties each submitted mediation statements per my request. My office distributed the submissions to all Parties so that each knew of the others' respective adversarial positions ahead of our in-person mediation session.

20.     On September 11, 2019, counsel for Plaintiffs, New GM, the GUC Trust and Participating Unitholders convened at PADRE's office for a full-day mediation. In break-out sessions with one or more of the participants, the Parties negotiated in a manner always seeking to maximize the benefits to their respective clients.

21.     I am informed that on September 26, 2019, counsel for the Participating Unitholders informed Plaintiffs' Class Counsel and counsel to New GM that the GUC Trust / Participating Unitholders were rejecting a joint demand advanced by Plaintiffs' Class Counsel and New GM to the GUC Trust and counsel to the Participating Unitholders at the September 11 mediation. Arm's-length negotiations subsequently continued, with demands and counter-offers facilitated through me.

22.     On October 10, 2019, counsel for the GUC Trust, with the full support of counsel for the Participating Unitholders, conveyed a settlement proposal to counsel for New GM and Plaintiffs, copying me on the proposal.

23.     The next day, on October 11, 2019, I conveyed a new demand from Plaintiffs' Class Counsel to New GM.

24.     On November 1, 2019, New GM's counsel sent me a proposed term sheet and authorized me to share it with counsel for Plaintiffs, the GUC Trust and Participating Unitholders, which I did. A week later, on November 8, 2019, I reported to New GM's counsel that Plaintiffs' Class Counsel rejected New GM's proposal, and I conveyed Plaintiffs' Class Counsel's new demand.

25.     On November 20, 2019, counsel for Participating Unitholders proposed an in-person mediation session to be held in New York in December.

26.     On November 27, 2019, New GM's counsel sent me a counter-offer to Plaintiffs' November 8 settlement demand, which I shared with counsel for Plaintiffs, the GUC Trust and Participating Unitholders. New GM also agreed to meet in December for another in-person mediation session.

27.     On December 10, 2019, I conducted a mediation session with the Parties in New York. Per my recommendation, Plaintiffs' Class Counsel and New GM engaged in hard-fought bilateral negotiations resulting in a global proposal that I conveyed to the GUC Trust. The GUC Trust rejected the proposal, and the mediation session ended.

28.     Counsel for Plaintiffs and New GM then asked me to facilitate an in-person mediation session to include counsel for the GUC Trust and Participating Unitholders in early January 2020.

29.     On January 8, 2020, I facilitated an in-person mediation session with counsel for Plaintiffs, New GM, the GUC Trust and counsel for the Participating Unitholders. After much

arm's-length negotiation, in separate break-out sessions with me and in some joint sessions that I facilitated, the Parties reached a tentative agreement as to certain key settlement terms that were memorialized over the next week. Those terms were contingent upon (i) the Parties negotiating and reaching a final, definitive, mutually acceptable and binding Settlement Agreement; (ii) Plaintiffs' Class Counsel and New GM reaching agreement on proposed Attorneys' Fees and Expenses to be negotiated and agreed under my supervision, and (iii) Court approval.

30.     On each of the next three days, on January 9, 10, and 11, 2020, I conducted multiple, separate phone calls with counsel for Plaintiffs and counsel for New GM in which each Party conveyed to me their respective demands and counter-offers regarding a maximum amount of proposed Attorneys' Fees and Expenses. Counsel for Plaintiffs and New GM did not speak directly with one another; rather, all negotiations regarding proposed Attorneys' Fees and Expenses occurred with each side conveying their positions to me and I, in turn, relating that position to opposing counsel.

31.     On the afternoon of January 11, 2020, I informed counsel for Plaintiffs, New GM, the GUC Trust and Participating Unitholders that the dispute between Plaintiffs' Class Counsel and New GM over proposed Attorneys' Fees and Expenses was resolved, and I encouraged the parties to move forward to negotiate and draft the settlement documents.

32.     I received the hearing transcript of the February 5, 2020 Case Management Conference in Bankruptcy Court, where the Motors Liquidation Company Avoidance Action Trust ("AAT") stated to Judge Glenn that it considered itself ordered to mediation. The mediation between the Class Action Plaintiffs' Counsel, New GM and AAT went forward on February 14, 2020. All sides made adversarial presentations to me, in which they vigorously sought to maximize the benefits to their respective clients. After a full-day mediation session, no settlement had been reached.

33.     On or around February 14, 2020, Plaintiffs' Class Counsel informed me that they had solicited volunteers from members of the Executive Committee to serve as Allocation Counsel—*i.e.*, separate counsel representing five Subclasses for the purpose of advocating allocation of the Net Common Fund to members of each Subclass—following which Allocation Counsel were established. Plaintiffs' Class Counsel asked if I would conduct a process whereby I would issue an Allocation Decision after advocacy by the Allocation Counsel. I agreed to do so.

34.     On February 21, 2020, I held a mediation session where I heard from each Allocation Counsel in which they advocated for their own Subclass. I had subsequent mediation submissions from, and follow-up communications with, all of the Allocation mediation participants.

35.     My Allocation Decision, which I understand will be an Exhibit to the Settlement Agreement, describes the materials I considered and the process by which I reached my decision on allocation of the Net Common Fund.

36.     From time to time up through the date of this Declaration, counsel for various of the Parties informed my staff and me of their work negotiating the terms of and drafting a Settlement Agreement and other related documents and motions to be filed in the MDL 2543 Court and the Bankruptcy Court.

37.     The two-and-a-half-years-mediation process was an extremely hard-fought and

lengthy negotiation from beginning to end.  Although I cannot disclose specifics regarding the
Parties' positions, there were many complex issues that required significant thought and practical
solutions.  Throughout the mediation process, the negotiations between the Parties were vigorous
and conducted at arm's length and in good faith.  I was in a position to evaluate the substance of
the proposals made by counsel, and there was no indication of collusion at any point.  At each step
of the way, over the course of several years, counsel for the Parties advocated zealously on behalf
of their clients working to maximize the settlement outcome to the benefit of their respective
clients in a highly adversarial set of mediations.

## III.    CONCLUSION

38.    I strongly support the Court's approval of the Settlement in all respects.  Based on
my experience as a litigator, a former United States District Judge and a mediator, I believe that
the Settlement represents a recovery and outcome that is reasonable, adequate and fair for the Class
and Subclasses and all Parties involved.

39.    I further believe the Settlement is in the best interests of the Parties, allowing each
to avoid the burdens and risks associated with litigating claims of this complexity to trial.

I declare under penalty of perjury that the foregoing facts are true and correct and that this
declaration was executed this _26th_ day of March, 2020.

_____
LAYN R. PHILLIPS
Former U.S. District Judge

09-50026-mg   Doc 14696-2   Filed 03/27/20   Entered 03/27/20 21:11:57   Exhibit B -
Motion for Preliminary Approval of Class Settlement Papers   Pg 281 of 281

Case 1:14-md-02543-JMF   Document 7820   Filed 03/27/20   Page 7 of 7

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 27, 2020, which will send notification of such filing to the e-mail addresses registered.

*/s/ Steve W. Berman*
Steve W. Berman