UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 09-50026-mg |
|  | . | Chapter 11 |
|  | . |  |
| MOTORS LIQUIDATION COMPANY, | . | One Bowling Green |
|  | . | New York, NY 10004 |
|  | . |  |
| Debtors. | . | Thursday, March 26, 2020 |
| . . . . . . . . . . . . . . | . | 1:23 p.m. |

TRANSCRIPT OF TELEPHONIC HEARING RE: MOTION TO AUTHORIZE
GENERAL MOTORS LLC TO ENFORCE THE BANKRUPTCY COURT'S
JULY 5, 2009 SALE ORDER AND INJUNCTION AND RULINGS
IN CONNECTION THEREWITH, WITH RESPECT TO
ROBERT RANDALL BUCHANAN [14667, PTBS: 14674, 14684]
**BEFORE THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY COURT JUDGE**

TELEPHONIC APPEARANCES:

For New GM:                King & Spalding
                          By:  ARTHUR J. STEINBERG, ESQ.
                               SCOTT DAVIDSON, ESQ.
                          1185 Avenue of the Americas
                          New York, NY 10036-2601
                          (212) 556-2158

                          Lightfoot Law Firm
                          By:  MICHAEL BELL, ESQ.
                          400 20th Street North
                          Birmingham, AL 35203
                          (205) 581-0721

TELEPHONIC APPEARANCES CONTINUED

Audio Operator:           Court Personnel

Transcription Company:    Access Transcripts, LLC
                          517 Dell Road
                          Landing, NJ  07850
                          (855) 873-2223
                          www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

TELEPHONIC APPEARANCES (Continued):

For Robert
Randall Buchanan:                 Cole Schotz
                                  By:  MARK TSUKERMAN, ESQ.
                                  1325 Avenue of the Americas
                                  New York, NY 10019
                                  (646) 563-8948

                                  The Cooper Firm
                                  By:  LANCE COOPER, ESQ.
                                  531 Roselane Street, Suite 200
                                  Marietta, GA 30060
                                  (770) 427-5588

For the GUC Trust                 McDermott Will & Emery
Unitholders:                      By:  KRISTIN GOING, ESQ.
                                  340 Madison Avenue
                                  New York, NY  10173-1922
                                  (212) 547-5482

3

1      (Proceedings commence)

2           THE CLERK:  Hello, everyone.  This is the judge's

3   courtroom deputy.  Has anyone heard from Ms. Going?

4           MR. TSUKERMAN:  No, but I --

5           MR. STEINBERG:  This is Arthur Steinberg.  I don't

6   think she's part of this proceeding.

7           THE COURT:  She had signed -- this is Judge Glenn.

8   She had registered to participate, but she's not an essential

9   party to the proceeding.  She had indicated that she was going

10  to participate in the hearing, but we'll go forward now.

11          We're here on Motors Liquidation Company, 09-50026.

12  This is a telephone hearing in connection with the General

13  Motors, LLC motion to enforce the July 5, 2009 sale order and

14  injunction in connection -- with respect to the lawsuit of

15  Robert Randall Buchanan in state court in Georgia.

16          May I have the appearances, please, first for New GM.

17          MR. STEINBERG:  Arthur Steinberg, and I think Scott

18  Davidson is on the line, too, from King & Spalding.  And I

19  think my trial counsel has a live line, is Michael Bell from

20  the Lightfoot firm, as well.

21          MR. BELL:  Yes, I'm here.

22          THE COURT:  Yes.  Okay.

23          And now for Buchanan, who's appearing?

24          MR. TSUKERMAN:  Your Honor, good afternoon.  Mark

25  Tsukerman from Cole Schotz on behalf of Buchanan.  And I also

4

1  believe that Mr. Cooper, lead litigation counsel in the Georgia

2  proceedings, is also on the line.

3          MR. COOPER:  I am.

4          THE COURT:  All right.  Okay.  Thank you very much,

5  Mr. Cooper.

6          All right.  Before we begin -- under these

7  extraordinary circumstances that we all live under, the Court

8  is doing telephone hearings rather than live in-court hearings

9  -- it's very important that before each of you speaks, and each

10  time you speak, you identify yourself for the record.

11          The Court has designated Court Solutions as the

12  provider for our telephone hearings.  Court Solutions records

13  the hearing and at the end of the day they email an mp3 file

14  with a voice recording of the hearing to the Court.  And any

15  party who wishes to obtain a copy of a transcript directs that

16  request to the Court and a transcript is prepared in the usual

17  way.

18          Again, before we get into the arguments, let me say

19  copies of the email exchange starting with Mr. Tsukerman, who

20  forwarded a second amended complaint earlier today, and then

21  Mr. Steinberg's response to that, I consider the -- I won't say

22  a filing, I don't know whether it actually was filed on the

23  docket or not, but submitting to the Court today a proposed

24  second amended complaint is, in my view, improper.  It is -- if

25  it was intended as a (indiscernible) it's untimely and without

5

1  permission of the Court.

2       We're going forward today on the basis of the

3  Buchanan amended complaint upon which all of the briefing took

4  place.  So that's how we'll proceed.

5       Mr. Steinberg, are you or Mr. Davidson going to

6  argue?

7       MR. STEINBERG:  It will be me, Arthur Steinberg.  And

8  if now is an appropriate time, I'm prepared to start.

9       THE COURT:  Go ahead, Mr. Steinberg.

10       MR. STEINBERG:  First, Your Honor, I'd like to thank

11  you and my adversary for participating telephonically over very

12  difficult circumstances, and appreciate the time that the Court

13  has extended and the circumstances in which the Court is

14  conducting this hearing.

15       I'd like to give Your Honor just a brief background

16  of how we came to be filing the motion to enforce, because I

17  think it helps set the groundwork of what I think is happening

18  here.  My firm reviewed the answer to the complaint when the

19  originally filed, the original complaint.  And there were --

20  there was in the answer the raising of the typical bankruptcy

21  defense that if they're seeking things that are contrary to

22  court rulings that they needed to address that, and that the

23  complaint was otherwise improper.

24       But this thing came to more of a head.  And GM -- New

25  GM doesn't like to bring these matters to Your Honor's

6

1  attention unless we feel we need to, to ask Your Honor to

2  intervene, because we hopefully try to deal with these issues

3  at the trial level and minimize the time that we're asking Your

4  Honor to deal with this.  But this came to our attention when

5  there was a skirmish -- a discovery skirmish in the Georgia

6  state court about taking the deposition of Mary Barra relating

7  to the Buchanan litigation.  And at that point in time, after

8  the Georgia state court had ordered the deposition of Mary

9  Barra, we got into further -- further involved.

10         And when I reviewed the original complaint, it was

11  clear that they had asked for punitive damages, and the

12  original complaint didn't have an independent claim at all.  It

13  had two counts, which were assumed product liability.  And the

14  attorney -- the trial counsel attorney who was involved in this

15  matter, was specifically notified of the 2016 threshold issues

16  that Your Honor was ruling on with regard to punitive damages,

17  and was a party to that, and didn't file a pleading in the

18  case, and Your Honor ruled that you couldn't assert punitive

19  damages as an assumed product liability, and trial counsel

20  never appealed that ruling.

21         Ultimately, other trial counsel, Mr. Butler, and his

22  bankruptcy colleague, appealed that decision.  Judge Furman

23  affirmed.  And then ultimately, in what I consider a

24  significant decision in 2019, the Second Circuit affirmed.

25         But when we saw the complaint that asked for punitive

7

1  damages in the context of an assumed liability, we wrote a

2  demand letter to Mr. Cooper as the trial counsel, and the

3  immediate response was to amend the complaint to assert an

4  independent claim.  So it was clear that they knew they had

5  done something wrong.  But they never informed the Georgia

6  state court that they had obtained an order seeking Mary

7  Barra's deposition on punitive damages based on a violation of

8  this Court's ruling, and frankly the Second Circuit ruling.

9       They never informed the Georgia court that they had

10 done something that was contrary to those rulings.  New GM did

11 bring it to the Court's attention in a motion for

12 reconsideration, and we said that either the Court should

13 reconsider its decision based on what happened at the

14 bankruptcy court, or should certify this for an interlocutory

15 appeal.  And the Georgia state court certified it for an

16 interlocutory appeal.  And ultimately the Georgia appellate

17 court granted the interlocutory appeal.  So that matter is

18 going forward in the Georgia court.

19      Plaintiff's bankruptcy counsel, when they got the

20 motion to enforce papers that we filed on February 4th, asked

21 for a professional courtesy because of conflicts in his

22 schedule to extend the time to respond to our motion to

23 enforce.  And we granted that, but we had said that because of

24 the delay in time, and because of the uncertainty whether the

25 Georgia court was going to grant the interlocutory appeal, we

8

1 wanted the time period for Mary Barra's deposition to be

2 extended so that we wouldn't be hurt by extending the

3 professional courtesy.  And they agreed to do that, and they

4 tied it to the Georgia appellate court either accepting the

5 appeal or ultimately ruling on the appeal, and then whatever

6 fallout from that ruling.

7         So the Mary Barra deposition aspect of all this thing

8 is now going to await the ruling by the Georgia appellate

9 court, and they've agreed to hear that hearing.  Whether they

10 have the original complaint or whether they tried to dress it

11 up in the first amended complaint, which is the basis of the

12 ruling, it all comes down to two central themes.

13         In the Georgia court, when they asked for Mary

14 Barra's deposition, they said that they needed it for punitive

15 damages, and the punitive damages related to New GM's failure

16 to warn.  And when they presented the issue on failure to warn

17 to the Georgia court, they cited to the manufacturer's duty to

18 warn, which was an Old GM obligation.  And Judge Gerber had

19 ruled in the context of the November 2015 decision that the

20 assumed product liability that GM -- New GM took on in the sale

21 agreement included Old GM's duty to warn.  So, to the extent

22 that state law recognized such a claim, it would be part of the

23 assumed product liability.  It obviously relates to Old GM

24 conduct, as well, too.  And all parties have been clear that,

25 except for assumed liabilities, New GM is not responsible for

9

1 Old GM conduct.

2           So I think counsel in his response papers has

3 acknowledged that you can't get punitive damages on an assumed

4 liability.  But it's New GM's contention that all they've

5 actually asserted is the assumed Old GM product liability on

6 failure to warn.  And we cited to the recitation to the

7 manufacturer duty to warn, which was the basis upon which they

8 were seeking punitive damages, and we pointed to the specific

9 reference in the handout that they handed to the Georgia state

10 court, and we cited to the transcript that was done in

11 connection with the Georgia state court.

12          And so, to the extent that it's an assumed product

13 liability, I think even counsel would agree that they're not

14 entitled to have punitive damages.  But they've asserted that

15 what they've asserted is not an assumed liability, it's an

16 independent claim.  And so you need to look at what it is -- is

17 the basis for them asserting an independent claim.  And there

18 is no conduct that they're asserting about what New GM did,

19 other than that New GM didn't warn; meaning that there was no

20 relationship with Buchanan, there was nothing about any

21 obligation that after the sale New GM agreed to take on

22 vis-a-vis the Buchanan car, which was bought as a used car, a

23 transaction in 2011.  This is all a matter of basically Old GM

24 knew that there was a problem with the defect.  They didn't do

25 anything.  There were lots of warranty claims during the Old GM

10

1    period of time.  Some of those employees who knew about it

2    became New GM employees and they didn't do anything either.

3            And our view is that that is an Old GM duty to warn,

4    that to the extent that they're alleging anything, it is based

5    on the fact that New GM bought Old GM's assets, and as pursuant

6    to the Old GM assets, it assumed certain liabilities, and that

7    which it didn't assume was not going to be a liability that

8    emanated from Old GM.

9            Now we have brought the motion to enforce issue and

10   independent claim issue to Your Honor on a couple of different

11   occasions.  And Your Honor has ruled in the Pitterman context,

12   Your Honor has ruled in a Reichwaldt context, and we cite in

13   our papers various statements that Your Honor has made in the

14   context of ruling on specific allegations in the complaint, and

15   whether they constitute or rise to the level of an independent

16   claim.

17           And I think all --

18           THE COURT:  Let me stop you for a minute --

19           MR. STEINBERG:  -- of those decisions --

20           THE COURT:  -- Mr. Steinberg.  Mr. Steinberg, let me

21   stop you, because I want, if you would, tell me how the failure

22   to warn claim against New GM as an independent claim differs in

23   Buchanan from what I ultimately permitted through the

24   bankruptcy gate in Pitterman.

25           MR. TSUKERMAN:  Sorry, Your Honor.  Was that question

1  directed to me?

2          THE COURT:  No, it's to Mr. Steinberg.

3          MR. TSUKERMAN:  I apologize.  Okay.

4          MR. STEINBERG:  So there are two things, Your Honor.

5  One is that in Pitterman -- well, let me just tell you the four

6  differences that are clear with Pitterman, but there's one

7  glaring difference.  One is Pitterman withdrew his request for

8  punitive damages.  So the issue that is central here is not

9  there.

10         THE COURT:  I thought I was affirmed --

11         MR. STEINBERG:  The second --

12         THE COURT:  Mr. Steinberg, stop.  I thought I was

13 affirmed by Judge Furman with respect to the Pitterman

14 independent claim issue.

15         MR. STEINBERG:  You were.  In the --

16         THE COURT:  Okay.

17         MR. STEINBERG:  -- in Judge Furman's 2018 decision.

18 But Pitterman himself --

19         THE COURT:  But I -- stop just a second.

20         MR. STEINBERG:  Sure.

21         THE COURT:  I ultimately held that the Pitterman

22 independent claim and request for punitive damages passed the

23 bankruptcy gate, whether or not it stated a claim under state

24 law, which wasn't for me to decide, and Judge Furman affirmed

25 that ruling.  So how does what Buchanan is alleging differ from

12

1  what I permitted to pass through the bankruptcy gate in

2  Pitterman and which Judge Furman affirmed?

3          MR. STEINBERG:  Right.  So I was going to say, Your

4  Honor, that I just was pointing out that Pitterman's case

5  himself didn't ask for punitive damages.  Pitterman wanted to

6  assert an independent claim, but he wanted to do it merely to

7  be able to present to a jury that there were post-363 sale

8  incidences that New GM was aware of.  So he wanted to include

9  the old instances -- the Old GM instances and what he believed

10  to be the New GM instances.  But none of them --

11          THE COURT:  Would you agree that --

12          MR. STEINBERG:  -- added up punitive damages --

13          THE COURT:  Would you agree that Pitterman permitted

14  a duty to warn claim against New GM to go forward based on New

15  GM post-sale conduct?

16          MR. STEINBERG:  Yes.  I agree that that's what Your

17  Honor ruled and I agree --

18          THE COURT:  That doesn't --

19          MR. STEINBERG:  I'm sorry.

20          THE COURT:  And don't prior cases -- my case -- my

21  decisions and others permit claims for punitive damages to be

22  asserted with respect to independent claims?  I mean, Judge

23  Gerber held that in 2015 and I've held that since.  So why --

24          MR. STEINBERG:  Yes, I --

25          THE COURT:  Why can't Buchanan assert an independent

13

1   claim -- I mean, essentially what I read Buchanan as saying is

2   that specifically-named employees of Old GM with knowledge

3   about this alleged defect went to work for New GM.  They also

4   point to a 2011 press release from New GM relating to the part

5   that's alleged to have been defective and the importance of

6   that part.

7          Whether they could prove an independent claim against

8   New GM or not is a different issue, and not my issue.  But why

9   haven't they -- in the amended complaint, why haven't they

10  reasonably alleged an independent claim against New GM for

11  failure to warn about the defective part based on the knowledge

12  of an employee from Old GM who now -- I don't know whether he

13  still works for New GM, but did at the time.  That's my

14  question.

15         MR. STEINBERG:  Yes.  Your Honor, Pitterman was

16  decided in 20 -- I think '17, and was affirmed by Judge Furman

17  in 2018.  And it's New GM's position that the Second Circuit

18  petition -- the Second Circuit's decision in 2019 changed the

19  landscape of how independent claims should be viewed, and

20  therefore --

21         THE COURT:  That was my next question, Mr. Steinberg.

22  What is it -- I don't read anything in the 2019 opinion that

23  changed the landscape with respect to punitive damage claims

24  asserted on independent claims.  Point me to the language in

25  the Second Circuit opinion that you believe changed the

1  landscape.

2        I'm certainly bound to follow the Second Circuit, but

3  I'm not aware of what it is in the Second Circuit opinion that

4  you believe -- to use your frame, your term, "alters the

5  landscape."  Go ahead.

6        MR. STEINBERG:  So the Second Circuit decision

7  decided two things with regard to a different plaintiff, Eason,

8  who was also a used car purchaser.  So Eason had bought after

9  the sale and Eason argued in the Second Circuit that he was not

10 bound by the restrictions of the sale order, and therefore that

11 -- and he also argued that he wasn't liable on the contractual

12 assumption theory, that when they assumed -- New GM assumed

13 liabilities it assumed punitive damages.

14        For purposes of this argument, I think Buchanan

15 concedes that that aspect of the Second Circuit ruling has not

16 been challenged, that to the extent it's an assumed liability

17 you're not entitled to punitive damages.

18        So when Your Honor ruled on the issue, Your Honor had

19 a different theory as to why a used car purchaser would not be

20 liable for punitive damages.  You didn't rest on the sale

21 order.  You rested on the fact of -- or at least the primary

22 reasoning of Your Honor's decision, which was also upheld by

23 Judge Furman on the same basis, was that the bankruptcy code

24 says that an insolvent debtor couldn't get punitive damages;

25 and therefore, if Old GM's not going to be liable for punitive

15

1  damages, New GM was not going to be liable under a successor or

2  transferee type of liability because it wouldn't have anything

3  more than what Old GM had.

4         That actually was the ruling that Buchanan never

5  appealed.  But when it got to the Second Circuit, the Second

6  Circuit confirmed the ultimate decision that Your Honor made,

7  but didn't do it based on your reasoning.  The Second Circuit

8  actually --

9         THE COURT:  That part of it -- Mr. Steinberg --

10        MR. STEINBERG:  -- changed --

11        THE COURT:  Mr. Steinberg, that part of my decision,

12  affirmed by Judge Furman, not addressed by the Second Circuit,

13  really deals with whether New GM could be liable for punitive

14  damages for conduct of Old GM, and doesn't deal with the issue

15  of whether New GM could be liable for punitive damages on

16  independent claims that deal with post-sale conduct.  Do you

17  agree with that?

18        MR. STEINBERG:  I agree with what Your Honor just

19  said, but I do think that there's a nuance that I'm not being

20  clear about.  So if you'll give me just a little, I'd like to

21  be able to see if I can connect the dots for Your Honor.

22        THE COURT:  Go ahead.

23        MR. STEINBERG:  The Second Circuit did say that the

24  sale order was binding on the used car purchaser; so that

25  whatever the provisions of the sale order were that prevented

16

1  the assertions of punitive damages, they were going to be

2  assessed against the used car purchaser.  And so that actually

3  reflected a change of, frankly, the 2016 Second Circuit

4  opinion, where the 2016 Second Circuit opinion said used car

5  purchasers would not be liable and -- would not be bound by the

6  sale order.

7        Here, there was a clear annunciation by the Second

8  Circuit that the sale order would be effective.  And it was

9  that basis upon which they found that the punitive damages

10 couldn't be asserted under a successor or transferee liability.

11 And so --

12       THE COURT:  That all had to do with punitive -- that

13 had to do with the issue of whether New GM could be liable for

14 punitive damages based on Old GM conduct.  They didn't deal

15 with the issue of whether New GM could be liable for punitive

16 damages based on its own post-sale conduct.  Isn't that

17 correct?

18       MR. STEINBERG:  That's correct, but the sale order

19 and what the Second Circuit was saying was that New GM could

20 not be liable on a claim that is derived from the fact that

21 New GM bought Old GM's assets, unless --

22       THE COURT:  Point me to the language --

23       MR. STEINBERG:  -- it was --

24       THE COURT:  Excuse me, Mr. Steinberg.  Point me

25 specifically to the language in the Second Circuit opinion that

17

1  you think precludes punitive damages claims against New GM

2  based on its own post-sale conduct.

3           MR. STEINBERG:  Oh, I don't think, Your Honor, that

4  language is there.  So to the extent that --

5           THE COURT:  I agree with you, Mr. Steinberg.

6           MR. STEINBERG:  Yeah.  No, but the language --

7           THE COURT:  I agree with you.  I don't read anything

8  -- I was certainly pleased that the Second Circuit affirmed

9  Judge Furman who had affirmed me; and I understand that it

10 didn't reach an issue that I had addressed and that Judge

11 Furman had affirmed, that all of that dealt with pre-sale Old

12 GM conduct.  I don't see anything in the Second Circuit

13 opinion, to use your phrase, that changes the landscape with

14 respect to whether New GM can be liable for punitive damages

15 based on its own post-sale conduct.

16          And the decisions on -- the Bankruptcy Court

17 decisions on that go back to Judge Gerber's 2015 decision, and

18 my subsequent decision, and of course Judge Furman's

19 affirmance.  But that -- so the Second Circuit, in my view,

20 hasn't dealt with the punitive damages for post-sale conduct by

21 New GM.

22          Whether or not the conduct -- whether they could

23 prove it, whether the conduct rises to the level of it, that's

24 not really a bankruptcy court issue.  But that's what -- I've

25 tried to look very carefully at this, Mr. Steinberg, and it

18

1  seems to me what you're arguing is contrary to my decision in

2  Pitterman, contrary to Judge Furman's decision affirming what I

3  did in Pitterman -- and, yes, if the Second Circuit adopted a

4  different rule, I would obviously be bound to follow it, but I

5  don't see where the Second -- the Second Circuit didn't do

6  that.

7          MR. STEINBERG:  Your Honor, this is the connection.

8  The Second Circuit -- look, the Second Circuit acknowledged

9  that the sale order would be binding on a post-sale accident

10  plaintiff.  That was new.  People didn't -- under the 2016

11  decision, which was the Second Circuit, which was the basis

12  upon which you analyzed the issue, they had held that used car

13  purchasers were not bound by the sale order.

14          Now, in the 2019, the Second Circuit reversed course.

15  It said that the sale order would apply to the used car

16  purchaser, to the post-closing accident plaintiff; and

17  therefore, you go to the sale order and you look to see what

18  does the sale order say.  And clearly --

19          THE COURT:  Mr. Steinberg --

20          MR. STEINBERG:  -- the sale order said --

21          THE COURT:  Mr. Steinberg?

22          MR. STEINBERG:  Mm-hmm.

23          THE COURT:  Is there anything in the sale order that

24  absolves New GM for any liability for compensatory or punitive

25  damages based on its own post-sale conduct?

19

1          MR. STEINBERG:  There is -- the provisions of -- the

2   two provisions of the sale order that I would point to Your

3   Honor that doesn't address it the way that you phrased it, but

4   gets to the point, in a different way -- which I think, Your

5   Honor, the point that I'm trying to make is that -- is that New

6   GM is liable -- and let me be clear here.  New GM is liable as

7   an independent claim for its post-closing conduct which relates

8   to a new duty that new GM took on affirmatively after the sale.

9   If New GM assumed the liability, then it's not an independent

10  claim.  It's an assumed liability.

11         THE COURT:  Yeah, we're not dealing -- we're not

12  dealing with assumed liabilities.  Clearly not.

13         MR. STEINBERG:  Right.  So it has to be a new duty.

14  In the Buchanan case, he's arguing the manufacturer duty to

15  warn.  Pitterman didn't argue the manufacturer duty to warn as

16  the basis for his independent claim.  Pitterman said --

17         THE COURT:  I read the --

18         MR. STEINBERG:  -- that there were --

19         THE COURT:  -- amended complaint in purporting to

20  assert an independent claim as asserting that New GM had a duty

21  to warn, in part predicated on the fact that if specific

22  employees knowledgeable about the alleged defect who worked for

23  Old GM worked for New GM, that New GM obtained -- uses the same

24  part from the same manufacturer that is alleged to have been

25  defective.  And whether that satisfies state law or not is not

20

1  for me to say.  But Buchanan is alleging, at least as I read

2  it, in the second -- in the first amended complaint, and

3  alleging that I, Buchanan, am asserting an independent claim

4  against New GM because under the facts and circumstances here

5  it had a duty to warn and it did not do so.  And the breach of

6  that duty -- that failure to warn, Buchanan argues, entitles

7  the Buchanans to punitive damages -- compensatory damages and

8  punitive damages against New GM.

9          What is incorrect about what I just said?

10          MR. STEINBERG:  I don't think there's anything that's

11  incorrect of what you said.  The only issue is whether what you

12  just said is really the assertion of Old GM's duty to warn as

13  compared to a newly created duty by New GM after the sale.  I

14  think --

15          THE COURT:  Well, I will ask Buchanan's counsel to

16  address whether it's relying on Old GM's duty to warn or

17  whether it's asserting a separate duty to warn on the part of

18  New GM based on the post-sale facts and circumstances, the

19  knowledge that it's specifically alleged to have gained from

20  the employees of Old GM, thereafter employed by New GM, but --

21  that's the way I read what they're saying.

22          There may be some other problems with their pleading,

23  but that's essentially the essence of what I have read their

24  alleged independent claim about -- against New GM to be.

25  Whether that rises to the level that would support an award of

21

1  punitive damages under Georgia state law is a different issue,

2  not for me to decide.

3          MR. STEINBERG:  So, Your Honor, I'd like to be able

4  to focus your attention on two provisions of the sale order

5  which I think are relevant, because to the extent --

6          THE COURT:  Go ahead.

7          MR. STEINBERG:  -- that the Second Circuit has ruled

8  that the sale order applies to the used car purchaser, and

9  we've taken out the assumed liability context, then Paragraphs

10 46 and 48 of the sale order, which are set forth in footnotes

11 in our reply brief, I think are irrelevant.  And there,

12 Paragraph 46 says that New GM is not going to have -- be deemed

13 to have de facto merged or be considered a mere continuation of

14 Old GM or its enterprise.

15         So you have to look to see whether Buchanan has

16 essentially asserted anything that would constitute the

17 equivalent of being -- Old GM -- new GM being a mere

18 continuation of Old GM or its enterprise.  It then goes on to

19 say --

20         THE COURT:  Buchanan did allege that, and that

21 paragraph may have to be stricken.  That's what happened in

22 Pitterman, as well.  I granted the motion in part with respect

23 to --

24         MR. STEINBERG:  Your Honor?

25         THE CLERK:  Judge?

22

1          MR. STEINBERG:  I don't hear Judge Glenn anymore.  I

2    just wanted to be sure I wasn't the one cut off.

3          THE CLERK:  Judge?  Okay.  Hold on a moment.

4          MR. STEINBERG:  Sure.

5       (Pause)

6          THE COURT:  Mr. Steinberg?

7          MR. STEINBERG:  Yeah, I'm here Your Honor.

8          THE COURT:  Yes.  Deanna --

9          MR. STEINBERG:  You had been cut off.

10         THE COURT:  Yes.  I apologize, Mr. Steinberg.  I'll

11   try and repeat it.  I think with my laptop it all works well

12   until the screen closes, and then my voice goes away as well.

13   And I apologize.

14         Deanna, thank you for trying to call me back.  I saw

15   that.

16         Let me reframe my question, Mr. Steinberg.  You may

17   have heard part of it, maybe not, but let me make sure the

18   record's clear.  In Pitterman, and I think elsewhere, I'd

19   stricken allegations that found in -- a continuation of the

20   business.  And indeed there is a similar allegation made in the

21   Buchanan complaint -- amended complaint.  And that allegation

22   probably should be stricken.

23         But the question I asked myself is in the absence of

24   that allegation, have they sufficiently alleged an independent

25   claim based on a separate duty by New GM of a duty to warn.

23

1    And in that respect, it seems to me that this really is

2    virtually on all fours with <u>Pitterman</u>, where I allowed that to

3    pass through the bankruptcy gate.

4              But I'll let you address that.  Go ahead.  Can you

5    hear me now?

6              MR. STEINBERG:  Yeah, I can, Your Honor.  I just want

7    to go through --

8              THE COURT:  Go ahead.

9              MR. STEINBERG:  -- the other provisions of the sale

10   order to get them out, and then I want to double back to the

11   point that you're trying to make.

12             The other provision in -- two other provisions of

13   Paragraph 46, which are relevant, which says the New GM is not

14   going to have derivative or vicarious liability of any kind,

15   including under any product liability, whether known before or

16   after the sale.  So there was an intention -- and then the

17   third thing is that any actions New GM takes pursuant to the

18   sale agreement cannot be, in effect, the basis for successor or

19   transferee liability.

20             So New GM agreed to take the glove box warranty

21   claims, and New GM agreed to comply with Old GM's recall

22   obligations, if New GM hired employees, which was contemplated

23   by the sale, if New GM bought the books and records of Old GM,

24   none of those things, which all derive from the fact that New

25   GM is a purchaser, which under certain provisions of state law,

24

1  New GM, as the purchaser of assets, could be labeled as a

2  successor, none of that has to -- none of that applies.

3       The only way that New GM is liable under Paragraph

4  46, unless it's an assumed liability, is if New GM did

5  something new after the sale which established a duty to this

6  particular entity unrelated to the sale agreement and unrelated

7  to the fact that it was the purchaser of the assets.  And

8  that's not Buchanan has alleged.  Buchanan -- everything that

9  Buchanan has --

10       THE COURT:  Mr. Steinberg, may I ask you this?

11  Georgia law recognized a cause of action for a duty to warn

12  where New GM -- and assume this to be true.  Assume that

13  employees of New GM knew that a specific part that was in the

14  Buchanan vehicle was defective and could lead to horrible

15  results.  State law under those circumstances -- in other

16  words, specific employees, not general books and records or

17  anything like that, specific -- assume that a specific employee

18  of New GM knew because he or she worked for Old GM, knew the

19  part was defective, and knew that New GM was still purchasing

20  the same part, could a state -- could state law recognize a

21  duty -- an independent duty to warn claim in those

22  circumstances?  Isn't that <u>Pitterman</u>?

23       MR. STEINBERG:  That was what <u>Pitterman</u> alleged under

24  Connecticut law.  I don't know specifically if the Georgia law

25  allows that.  That is not what Buchanan told the Georgia court

1 was the basis upon which Old GM should be liable on a duty to

2 warn theory.  It said that it would liable, and cited to a

3 Georgia statute, which talked about the manufacturer's duty to

4 warn.  You can't divorce what he represented to another court

5 was the basis of his duty to warn obligation.

6      THE COURT:  Well, New GM could --

7      MR. STEINBERG:  And Pitterman --

8      THE COURT:  -- certainly argue that -- if there's

9 further proceedings in Georgia, New GM is free to argue it.

10 What I deal with is a pleading in front me that you're trying

11 to enjoin them from going forward on.  And the question is, as

12 the gatekeeper in bankruptcy court, does it get through the

13 gate.  And it seems to me, yes, Connecticut -- and I don't know

14 what the ultimate result in Pitterman was, whether it settled

15 or what happened.  It was in federal court in Connecticut --

16      MR. STEINBERG:  It did settle.  It did settle.

17      THE COURT:  Okay.  Connecticut, at least as I

18 understand it, the district court judge concluded that that

19 stated a claim under Connecticut law.  Whether it does under

20 Georgia law, I don't know.  It's not for me to decide.  It's

21 for the trial judge to decide.

22      MR. STEINBERG:  Yeah, but -- Your Honor, what the

23 difference is --

24      THE COURT:  I let Pitterman (indiscernible) with

25 that.

26

1          MR. STEINBERG:  Where the difference is -- and let's

2   assume that Buchanan now changes its argument to be consistent

3   with what Pitterman tried to argue, the difference is that the

4   Pitterman was decided before the Second Circuit opinion.  And

5   the Second Circuit has said that the sale order applies, and

6   that the sale order applies so that you can't base your claim

7   against New GM based on the fact that it was a purchaser of the

8   asset.  So that knowledge that -- of Old GM that gets imputed

9   to New GM if there's an imputation theory that holds -- is

10  really the Old GM duty to warn.

11          No one's arguing that -- and in Pitterman there was

12  no punitive damages.  No one's arguing that Old GM -- that new

13  GM doesn't have the inherited knowledge of Old GM.  The only

14  issue is whether that is really a restatement of an assumed

15  product liability.  And if you wanted to say, no, that's

16  definitely not what I'm arguing, it's not an assumed product

17  liability, then what is your basis of saying that New GM is

18  liable under any theory?

19          Remember, knowledge divorced from a duty is

20  irrelevant.  I could have all the knowledge in the world about

21  anything; but unless I have a legally imposed duty to do

22  something, it's irrelevant.

23          And here, if the duty's imposed on New GM because

24  it's a purchaser of the assets of Old GM, that's a barred

25  successor liability claim under the sale order.  That is what

27

1   Paragraph 48 says.  Paragraph 48 says that with respect to a

2   non-assumed liability, New GM shall have no responsibility or

3   obligation of Old GM relating to the purchased assets.  New GM

4   doesn't have -- and that was the basis upon which New GM bought

5   its assets.  New GM doesn't have a duty to warn separate from

6   Old GM unless New GM had a relationship with the customer which

7   imposed and created that new duty.

8           It doesn't emanate strictly because someone who

9   worked at Old GM moved over to New GM.  And that's all that's

10  being alleged here.  And that's what I believe is the change of

11  the landscape relating to the Second Circuit decision.

12          Your Honor, before the Second --

13          THE COURT:  Mr. Steinberg, take a breath.

14          MR. STEINBERG:  -- Circuit ruled --

15          THE COURT:  Mr. Steinberg --

16          MR. STEINBERG:  I'm sorry.

17          THE COURT:  -- stop.  Take a breath.

18          MR. STEINBERG:  I apologize.  I'm sorry.

19          THE COURT:  I've been trying to tell you to stop and

20  you're either not hearing me or you're just ignoring me.  Do

21  you have anything else you --

22          MR. STEINBERG:  (Indiscernible.)

23          THE COURT:  -- want to argue?  I've heard all of

24  these arguments already.

25          MR. STEINBERG:  Yes, Your Honor.  The allegation

28

argument that exists in the <u>Pitterman</u> complaint.  The <u>Pitterman</u>

complaint doesn't actually isolate any facts that relate to the

independent complaint -- claim versus the assumed liability

claim.  It's just jumbled together.  So the complaint itself is

relying on Old GM conduct, clearly, to establish the

independent claim.

        Also I think we referenced in our reply Paragraph 35C

of the first amended complaint, says that New GM failed to warn

Buchanan of the defect in the product.  And it was put in Count

1, which is the assumed liability section.  Since Buchanan was

a used car purchaser, the only person who could have warned New

GM [sic] was New GM.  The only one who could have warned

Buchanan was New GM.  So they've asserted in the first amended

complaint New GM's duty to warn, and they've asserted there as

an assumed liability.

        The actual allegations which they put in their

objection to support their independent claim relate to the fact

that Old GM was aware of liabilities.  Old GM had the same

parts supplier as New GM.  Old GM received warranty claims and

tried to get reimbursement from its supplier.  Those types of

allegations are based on old GM conduct.

        The 2011 statement raised by Mary Barra that said

that the particular part was an important safety feature, that

is a true statement, but that doesn't relate in any way to a

duty to warn or a breach of a duty to warn.  It's just a

29

1  statement of fact relating to the importance of that feature.

2  It's not a consumer product type claim that there was --

3          THE COURT:  Okay.  Is there anything else you wish to

4  argue, Mr. Steinberg?

5          MR. STEINBERG:  No, and I apologize, Your Honor.  I

6  apparently didn't hear you when you were trying to cut me off.

7  So --

8          THE COURT:  Okay.

9          MR. STEINBERG:  -- if I was in the courtroom I would

10 have been -- clearly been able to see that, and I apologize.

11         THE COURT:  Okay.  Thank you.

12         Mr. Tsukerman.

13         MR. TSUKERMAN:  Yes, Your Honor.  Thank you.

14         MR. STEINBERG:  Okay.  Thank you.  I think Your Honor

15 addressed probably much of my responses to New GM's motion and

16 reply brief in your inquiries to Mr. Steinberg.  And so I don't

17 want to belabor the record and the points, but obviously we

18 agree with Your Honor's reading of the 2019 Second Circuit

19 opinion.  That opinion only -- did not address independent

20 claims.  It only addressed a used car purchaser's ability to

21 assert punitive damages as part of a second -- a successor

22 liability claim, which is not what we're trying to do here.

23 And so that's why we did not cite to that decision in our

24 response.

25         Mr. Buchanan is a used car purchaser, but again, we

30

1  are not purporting to or are not seeking to assert punitive

2  damages based on a successor liability claim.  It is purported

3  to be a truly independent claim based on New GM's duty under

4  Georgia law as a non-manufacturer in this case.  And of course

5  that's --

6           THE COURT:  Is there any case --

7           MR. TSUKERMAN:  -- why the claim is --

8           THE COURT:  Is there case law in Georgia that finds a

9  non-manufacturer has a duty to warn?

10          MR. TSUKERMAN:  Your Honor, our position is that

11  Georgia law recognizes that cause of action, and of course

12  that's an issue that the Georgia state court can decide.  I

13  can't answer the question about whether there are cases in

14  Georgia law because I haven't researched it, though Mr. Cooper,

15  who is on the phone, probably can answer that discrete

16  question.  I can't speak to that right now.  But of course we

17  would --

18          THE COURT:  I have some questions -- I have some

19  questions for Mr. Cooper, but I'll let you finish arguing

20  first.

21          MR. TSUKERMAN:  Okay.

22          THE COURT:  Go ahead.

23          MR. TSUKERMAN:  So to circle back, so again we agree

24  with Your Honor that to use New GM's way of putting it, the

25  Second Circuit 2019 opinion did not change the landscape.  The

31

1   rulings and principals regarding imputation and allegations of

2   punitive damages and imputation that were issued by this Court

3   in the November 2015 -- let's call it the imputation decision

4   -- still apply, and that decision still constitutes law of the

5   case, which of course those principals have been developed with

6   Your Honor's subsequent opinions, but not contradicted, and

7   they still apply.  And the --

8           THE COURT:  Tell me what are the facts that Buchanan

9   relies upon to establish New GM's knowledge of the defect in

10  the parts.

11          MR. TSUKERMAN:  Your Honor, I'm happy to go through

12  the complaint, but I think that you aptly summarized in your

13  inquiries to Mr. Steinberg that our allegations are that New GM

14  -- not -- first there's a general allegation that's completely

15  on all fours with the allegations that's in the Pitterman

16  complaint that was affirmed by the district court, which is --

17  if I may -- Paragraph 27, where the plaintiff alleges that

18  despite New GM's knowledge of the high failure rates of the

19  SWAS, which is an acronym for steering wheel angle sensor, in

20  the subject vehicle, including Mrs. Buchanan's vehicle, and the

21  steering wheel angle sensor had well-known technological

22  issues, New GM chose not to warn Mrs. Buchanan of the defective

23  SWAS in her Trailblazer on or before November 10th, 2014, which

24  was the date of her accident.

25          In addition, the first amended complaint has

32

1  allegations regarding Old GM employees, one that's named

2  specifically, that had knowledge of the defect who later became

3  New GM employees.  Again, as Your Honor mentioned, the

4  complaint also references that New GM and Old GM used the same

5  component supplier that manufactured and supplied the defective

6  steering wheel angle sensors, and that there were -- that New

7  GM had records of high warranty claims for failures of the SWAS

8  which were then transferred to New GM.

9        So New GM -- so the first amended complaint alleges

10  that New GM had this knowledge based on Old GM records and Old

11  GM employees, which were then inherited by New GM.  And also it

12  has a more generalized action, which was approved in Pitterman,

13  that New GM itself knew about the defect and failed to warn

14  Mrs. Buchanan.

15        THE COURT:  Okay.  Let me ask -- do you have anything

16  else you want to add, Mr. Tsukerman?

17        MR. TSUKERMAN:  Could you say that again, Your Honor?

18  I don't think I heard you.

19        THE COURT:  Yeah.  Do you have anything else you want

20  to add?  Otherwise, I have questions for Mr. Cooper.

21        MR. TSUKERMAN:  No, Your Honor.  I'll let you direct

22  your questions to Mr. Cooper.  Thank you.

23        THE COURT:  Okay.

24        All right.  Mr. Cooper, thank you for appearing this

25  afternoon.  Can you tell me, are there any existing Georgia

1 court decisions, state or federal, but dealing with Georgia

2 state law, that impose a duty to warn on non-manufacturers?

3          MR. COOPER:  Yes, Your Honor.  Georgia follows the

4 Restatement, and that is a person or a corporation who

5 undertakes a duty -- or I say -- undertakes a duty or

6 responsibility, they're required to do that non-negligently.

7 I don't have the cite in front of me, but it's essentially the

8 Restatement.  And what that means is, of course, common sense

9 is, if you undertake a duty, you have to do it non-negligently.

10 In this case -- so I'll -- let me -- I want to answer your

11 question specifically.  Yes, there are.

12          THE COURT:  Can you point me to any specific

13 decisions that do that?

14          MR. COOPER:  No, Your Honor, but I can certainly do

15 that as a supplemental briefing.

16          THE COURT:  Let me ask -- let me turn to -- tell me

17 what the status of the Georgia proceeding is.  First, are the

18 Georgia trial courts operating for civil matters now?  We're

19 basically --

20          MR. COOPER:  Bare-bones.

21          THE COURT:  -- we're basically on hold in New York,

22 as you know --

23          MR. COOPER:  Yeah, we're more or less on hold except

24 for, you know, extreme criminal justice issues and those sorts

25 of things.

34

1          THE COURT:  Right.  That's why I asked about civil

2    matters.

3          MR. COOPER:  Right.  So where we are is we're in a

4    little bit of a hybrid situation with the Buchanan case

5    because, as counsel says, the Court of Appeals has taken

6    interlocutory appeal, but there continue to be filings in the

7    Georgia state court, which oftentimes happens.  And oftentimes

8    discovery proceeds informally -- although the Court of Appeals

9    now has jurisdiction over the case, because they've taken the

10   interlocutory appeal and they'll hear the Mary Barra issue

11   sometime in the near future.

12         THE COURT:  Does the appellate court have

13   jurisdiction over the entire case, or only over the issue of

14   whether Ms. Barra can be deposed?

15         MR. COOPER:  Only over the issue of whether Ms. Barra

16   can be deposed, at this point.

17         THE COURT:  And what does --

18         MR. COOPER?  The case is basically -- I'm sorry.

19         THE COURT:  What's the status of the appeal?  Has it

20   been briefed and argued, or they just accepted the appeal?

21         MR. COOPER:  They've just accepted, and a record is

22   being prepared to go up, and then there will be a briefing

23   scheduled.

24         THE COURT:  If we weren't living in such difficult

25   times, would you have an estimate of how long it might take for

35

1  the appellate court -- and this is, what, the intermediate

2  appellate court in Georgia?

3          MR. COOPER:  Yes.  Six months to a year.  They can --

4          THE COURT:  Okay.

5          MR. COOPER:  Normally, they'll rule within -- well,

6  six months to a year, depending upon whether they decide to

7  hear oral arguments or not.

8          THE COURT:  Okay.  And what was the status of this

9  case in the trial court as of recently, you know, before

10 everything has been shutting down?

11         MR. COOPER:  Discovery was almost complete and expert

12 depositions would begin shortly.

13         THE COURT:  Do you have any -- but for the current

14 circumstances, what would be the -- I guess there would be no

15 trial until Mary Barra deposition issue was resolved?

16         MR. COOPER:  Right.  That will delay the trial.

17         THE COURT:  Okay.  All right.  Is there anything else

18 you want to add, Mr. Cooper?

19         MR. COOPER:  No, Your Honor.

20         THE COURT:  All right.  Mr. Steinberg, you also have

21 your state court counsel on the phone?  Is that correct?

22         MR. STEINBERG:  I do.  Mr. Bell is on the line.

23         MR. BELL:  Yes, Your Honor.

24         THE COURT:  Okay.  Mr. Bell, is there anything you

25 want to raise with me?

36

1          MR. BELL:  Well, I guess -- we don't have a trial

2     date.  We don't have a pretrial date.  So there's no schedule

3     in place.  I wanted to make sure that was clear.  Mr. Cooper

4     mentioned that there is case law in Georgia.  We have not found

5     a single Georgia appellate decision that extends the

6     manufacturer's duty to a non-manufacturer, non-seller,

7     non-distributor, not a single Georgia appellate decision on

8     that.

9          THE COURT:  Okay.  And has the trial court ruled on

10    that issue, in this case?

11         MR. COOPER:  No, Your Honor.

12         MR. BELL:  No --

13         MR. COOPER:  I'm sorry.  This is Lance Cooper.  No,

14    Your Honor.  I apologize I interrupted.

15         THE COURT:  Okay.  Mr. Bell, go ahead.

16         MR. BELL:  No, the court has not -- we filed an

17    answer to the amended complaint, so there's no issue teed up on

18    that at this time.

19         THE COURT:  Okay.

20         MR. STEINBERG:  Your Honor, I --

21         THE COURT:  Mr. Steinberg, is there anything you want

22    to add in your reply?

23         MR. STEINBERG:  Yes.  Just very, very briefly, Your

24    Honor.  One is as far as the trial court goes, the argument on

25    duty to warn was made based on the manufacturer's duty to warn.

37

1 So the issue wasn't teed up because Mr. Cooper was arguing the

2 manufacturer's duty to warn, not the non-manufacturer's duty to

3 warn.

4         The other thing that I'd like to just mention, when

5 you asked him specifically for -- does he have a case that

6 would support that, and although he didn't have a case, the way

7 he phrased it was that if you -- in Georgia, if you undertake a

8 duty, you can't do it negligently.  And the question that is

9 begged by that response is how did New GM undertake this duty

10 when it had no relationship with Buchanan and did not interact

11 with them at all, unless it was derivative of the fact that it

12 purchased the assets from Old GM, which would be a

13 successor/transferee type of liability, which is barred by the

14 sale order.

15         THE COURT:  Let me ask -- I guess Mr. Tsukerman and

16 Mr. Cooper.  Do you agree that you can't predicate an argument

17 for a duty on the part of New GM based on its purchase of the

18 assets from Old GM?  First Mr. Tsukerman.

19         MR. TSUKERMAN:  Your Honor -- yes, this is Mark

20 Tsukerman.  We agree, Your Honor, that a punitive damages claim

21 cannot be predicated on knowledge or conduct of Old GM.  That

22 is clear based on the opinions and decisions of this Court.  So

23 the punitive damages claim would only go forward based on New

24 GM knowledge and conduct as may be actionable under Georgia

25 law.

                                                                38

1              THE COURT:  And Mr. Cooper, you agree with that?

2              MR. COOPER:  Yes, Your Honor.  And if I could just

3  make one more point, with your permission.

4              THE COURT:  Yes.  Go ahead.

5              MR. COOPER:  If you take GM's argument and understand

6  it in the context of where a lot of this arose of, and that was

7  out of the initial ignition switch litigation, and we handled

8  the initial -- the seminal case, the <u>Melton</u> case.  GM is saying

9  under Georgia law, when the sale order happened, New GM had no

10 duty to tell anyone about that ignition switch defect.  Any

11 consumers, up until today, it would still not have a duty to

12 tell consumers of that defect.

13             And just to give Your Honor some perspective, this

14 case from a defect standpoint is no different than the ignition

15 switch case, in that you have an internal investigation in both

16 cases, engineers determined there's a defect, Old GM chooses to

17 do nothing, Old GM becomes New GM, and those New GM engineers

18 and employees choose to do nothing, even though they have a

19 separate, independent duty under Georgia law.

20             So -- and I can tell you we've had numerous cases --

21 not only in Georgia state courts, but before Judge Furman,

22 where we've made allegations under Georgia law that there was

23 an independent duty to warn and punitive damages are

24 appropriate.  None of those were ever contested until we got an

25 order on Mary Barra's deposition.  And that's really the

1  context of what happened here.

2         And the claim is appropriate under Georgia law, for

3  the reasons I've said, is if GM is to be believed or GM's

4  counsel is to be believed, they still today would have had no

5  duty to warn about these ignition switches under Georgia law.

6  And that's just not the law -- it is the law in some states.

7  In some states there is no post-sale duty to warn.  I think

8  Texas is one, for example.  In Georgia, it's almost the

9  opposite.  They have the duty to warn up until today of this

10 steering wheel angle sensor defect, and they've chosen not to.

11 And so, for that reason, we believe we've stated a claim under

12 Georgia law in our complaint.

13        THE COURT:  Okay.

14        MR. STEINBERG:  Your Honor, to be clear -- to be

15 clear on what he just said, let me just get this for the record

16 -- I never said that New GM didn't have a duty to warn if the

17 applicable state law provided it.  I just argued that that is

18 part of the assumed liability that -- and therefore, if

19 applicable state law had imposed a post-sale duty to warn, that

20 -- and New GM had no relationship or contact with the

21 underlying customer, nothing to do with the subject vehicle,

22 then that would be part of the assumed liability, but that

23 would not be stating an independent claim.

24        THE COURT:  All right.  I think I understand

25 everybody's arguments.  And I appreciate everybody's

40

1   participation in the telephone hearing.  It obviously makes it

2   more difficult for everyone, the Court included.  I'm going to

3   take the matter under submission and will issue a written

4   opinion.  Since there -- I mean, I never let things linger too

5   long.  There obviously is no impending trial date.  Matters are

6   sort of in hold in Georgia because of the pandemic, but also

7   because of the pending appellate proceeding, so -- but in due

8   course I will issue an opinion on it.  Thank you very much,

9   everybody.  We're adjourned.

10          COUNSEL:  Thank you, Your Honor.

11       (Proceedings concluded at 2:00 p.m.)

12                    * * * * *

13

14              **C E R T I F I C A T I O N**

15

16          I, Ilene Watson, do hereby certify that the foregoing

17   is a correct transcript from the electronic sound recording

18   provided for transcription and prepared to the best of my

19   professional skills and ability.

20

21

22   _Ilene Watson_____          March 31, 2020

23   Ilene Watson

24   AAERT CET/CER 447

25   Certified Court Transcriptionist


ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)