**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------x
In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                                               Debtors.
--------------------------------------------------------------------------x

**FOR PUBLICATION**

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART NEW GM'S MOTION TO ENFORCE THE SALE ORDER WITH RESPECT TO THE BUCHANAN STATE COURT COMPLAINT

*A P P E A R A N C E S:*

KING & SPALDING LLP
*Attorneys for General Motors LLC*
1185 Avenue of the Americas
New York, New York 10036
By:    Arthur Steinberg, Esq.
        Scott Davidson, Esq.

COLE SCHOTZ P.C.
*Bankruptcy Counsel for Robert Randall Buchanan,*
*Individually and as Administrator of the*
*Estate of Glenda Marie Buchanan*
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
By:    Mark Tsukerman, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

       Pending before the Court is the *Motion by General Motors LLC to Enforce the*

*Bankruptcy Court's July 5, 2009 Sale Order and Injunction and the Rulings in Connection*

*Therewith, With Respect to Robert Randall Buchanan* filed on February 4, 2020.  ("Motion,"

ECF Doc. # 14667).  General Motors LLC's ("New GM") Motion is supported by several

exhibits, including the complaint (the "Buchanan Complaint," ECF Doc. # 14667-3) and first amended complaint ("Buchanan Amended Complaint," ECF Doc. #14667-2) filed by Robert Randall Buchanan ("Buchanan"), individually, and as administrator of the estate of Glenda Marie Buchanan in the State Court of Cobb County, Georgia, Case No. 16A-1280-7 (the "Buchanan Action"). The Motion requests that this Court enjoin Buchanan from proceeding with the Buchanan Amended Complaint until it is appropriately amended to strike Buchanan's request for punitive damages. (Motion ¶ 10.)

On March 12, 2020, Buchanan filed an objection to the Motion. ("Objection," ECF Doc. # 14684.) The Objection also attaches the Buchanan Amended Complaint and an order issued in the Buchanan Action denying New GM's motion for a protective order to prevent Buchanan from deposing Mary Barra, the Chief Executive Officer of New GM. ("Buchanan Discovery Order," ECF Doc. # 14684-2.)

On March 23, 2020, New GM filed a reply to the Objection. ("Reply," ECF Doc. # 14689.) The Reply is supported by a transcript of the oral argument on the motion for a protective order in the Buchanan Action ("Buchanan Action Transcript," ECF Doc. # 14689-1), an order granting in part and denying in part New GM's motion to enforce the ruling in this Court's *June 2017 Opinion* (as defined below) with respect to the Pitterman Plaintiffs ("Pitterman Order," ECF Doc. # 14689-2), a transcript from an oral argument on New GM's Motion to Enforce the Sale Order in Pitterman's case ("June 2017 Oral Argument," ECF Doc. # 14689-3), and New GM's answer and affirmative defenses in the Buchanan Action ("Answer and Affirmative Defenses," ECF Doc. # 14689-4).

For the reasons discussed below, New GM's Motion is **GRANTED IN PART** and **DENIED IN PART**.

# I.    BACKGROUND

While a more complete history of the General Motors Corporation ("Old GM") bankruptcy can be found in this Court's prior opinions, some of those opinions are discussed below to the extent necessary with respect to the issues raised by the current motion.

## A.  The Sale Order, June 2015 Judgment, and 2016 Second Circuit Opinion

On the same day it filed its bankruptcy petition (June 1, 2009), Old GM filed a motion to sell substantially all of its assets to New GM.  *See In re Gen. Motors Corp.*, 407 B.R. 463, 473 (Bankr. S.D.N.Y. 2009), *aff'd in part, vacated in part, reversed in part sub nom. Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S. Ct. 1813 (2017).  The Sale Order (ECF Doc. # 2968) was entered on July 5, 2009, and the sale (the "363 Sale") closed on July 10, 2009.  (Motion ¶ 11.)  Under the Sale Agreement (ECF Doc. # 2968-2), New GM assumed Product Liabilities[1] for Old GM vehicles (*e.g.*, claims arising out of post-363 Sale accidents).  (*See* Sale Agreement § 2.3(a), as amended.)  New GM acknowledges that certain of Buchanan's claims fall within the definition of Assumed Product Liabilities, including any claim based on Old GM's failure to warn.  (Motion ¶ 12.)

The Sale Order provides that, except for Assumed Liabilities, New GM is not liable for claims based on Old GM conduct, including successor liability claims.  *See, e.g.*, Sale Order, ¶ AA; *Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-09803 (REG), 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013).  Paragraph 71 of the Sale Order affirms the Bankruptcy Court's exclusive jurisdiction over matters regarding the 363 Sale. (Sale Order ¶ 71.)

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in *In re Motors Liquidation Co.*, Case No. 09-50026 (MG), 2017 WL 2963374 (Bankr. S.D.N.Y. July 12, 2017) [defined below as the *July 2017 Opinion*].

In 2014, New GM announced a number of recalls relating to the ignition switches in certain Old GM vehicles.  Thereafter, lawsuits were filed against New GM asserting personal injury and economic loss claims allegedly arising from these defects in Old GM vehicles.  New GM filed three motions to enforce the Bankruptcy Court's Sale Order and Injunction.  On June 1, 2015, the Bankruptcy Court entered its Judgment (the "June 2015 Judgment," ECF Doc. # 13177) holding, among other things, that the Sale Order and Injunction would be modified because Ignition Switch Plaintiffs[2] established a due process violation in connection with Old GM's notice of the 363 Sale.  While Judge Gerber concluded that Ignition Switch Plaintiffs were not prejudiced and, therefore, remained bound by the free and clear provisions of the Sale Order, those plaintiffs could assert Independent Claims against New GM based only on New GM's alleged post-sale conduct.

After an appeal of the June 2015 Judgment, the Second Circuit entered an Opinion on July 13, 2016 (the "*2016 Second Circuit Opinion*"), ruling that, because of a due process violation by Old GM in failing to provide notice to known claimants owning vehicles that had been recalled because of certain ignition switch defects, Ignition Switch Plaintiffs were prejudiced by lack of notice and were not bound by the free and clear provisions of the Sale Order.  The Second Circuit agreed with Judge Gerber with respect to Ignition Switch Plaintiffs' ability to assert Independent Claims against New GM, which the Second Circuit defined as those "sorts of claims [that] are based on New GM's post-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct."  *2016 Second Circuit Opinion*, 829 F.3d 135, 157 (2d Cir. 2016).

---

[2]    The June 2015 Judgment defines the term Ignition Switch Plaintiffs as those plaintiffs who assert claims against New GM based on the first three ignition switch recalls issued by New GM in February/March 2014.  (*See* June 2015 Judgment, at 1 n.1.)  Buchanan is not an "Ignition Switch Plaintiff."

### B.  The November 2015 Opinion and December 2015 Judgment

After the June 2015 Judgment, but before the *2016 Second Circuit Opinion*, Judge Gerber made further rulings (*In re Motors Liquidation Co*., 541 B.R. 104 (Bankr. S.D.N.Y. 2015) [hereinafter *November 2015 Opinion*], and the "December 2015 Judgment," ECF Doc. # 13563), relating to the interpretation and enforcement of the Sale Order and Injunction.  Pursuant to the *November 2015 Opinion* and December 2015 Judgment, Judge Gerber ruled that although New GM expressly assumed liability for Product Liabilities arising from post-closing accidents of vehicles manufactured by Old GM, New GM did not contractually assume liability for punitive damages based on Old GM knowledge or conduct, or anything else that took place at Old GM. (*November 2015 Opinion* at 121; December 2015 Judgment ¶ 6; Motion ¶ 3.)  The *November 2015 Opinion* held, however, that "on Product Liabilities Claims and Independent Claims alike, New GM may be held responsible, on claims for both compensatory and punitive damages, for its own knowledge and conduct."  *November 2015 Opinion*, 541 B.R. at 122.

Importantly for the pending Motion, the Court stated that:

> New GM might have acquired relevant knowledge when former Old GM employees came over to New GM or New GM took custody of what previously were Old GM records.  Reliance on that, for punitive damages purposes, is permissible . . . .  [T]o the extent New GM employees actually had knowledge relevant to post-Sale accident claims or Independent Claims (even if it was inherited), plaintiffs in actions asserting such claims are free to base punitive damages claims on evidence of such knowledge to the extent nonbankruptcy law permits.

*Id.*  Thus, the Court concluded that "punitive damages may still be sought in actions based on post-Sale accidents involving vehicles manufactured by Old GM to the extent the punitive damages claims are premised on New GM action or inaction after it was on notice of information 'inherited' by New GM, or information developed by New GM post-Sale."  *Id.* at 123.

In the December 2015 Judgment, the Court also prohibited plaintiffs from making certain claims against New GM, including, among others: (i) "[a]llegations that do not distinguish between Old GM and New GM (*e.g.*, referring to 'GM' or 'General Motors') . . . " (December 2015 Judgment ¶ 17); and (ii) "[a]llegations that allege or suggest that New GM manufactured or designed an Old GM Vehicle, or performed other conduct relating to an Old GM Vehicle before the Sale Order . . . ." (*Id.* ¶ 18). Complaints "containing such allegations are and remain stayed, unless and until they are amended consistent with the Decision and this Judgment." (*Id.* ¶¶ 17, 18.)

The December 2015 Judgment was not appealed with respect to these rulings. (Motion ¶ 16.) In addition, Lance A. Cooper, Esq. with The Cooper Firm, counsel for Buchanan in the Buchanan Action, was timely served with the scheduling order commencing the proceedings leading to the November 2015 Decision and December 2015 Judgment. (Motion at 7 n.14, Ex. F (Certificate of Service, dated September 10, 2015 (ECF Doc. # 13428)).)

### C. The December 2016 Order to Show Cause and the 2016 Threshold Issues

After the Second Circuit issued its decision affirming in part and reversing in part the June 2015 Judgment, the case was remanded to the bankruptcy court for proceedings consistent with the *2016 Second Circuit Opinion*. Many questions remained about what claims could be asserted against New GM, or as late claims against Old GM. After Judge Gerber retired in January 2016, all of the Motors Liquidation matters pending in the bankruptcy court were reassigned to this Court.

On December 13, 2016, this Court entered an order to show cause (the "December 2016 OSC," ECF Doc. # 13802), defining the 2016 Threshold Issues, identified by the plaintiffs and by New GM, that the bankruptcy court would address, and the procedures for resolving them.

The December 2016 OSC stated that plaintiffs served with that order would be bound by the Court's rulings on the 2016 Threshold Issues. (December 2016 OSC at 1.) Buchanan's counsel was served with the December 2016 OSC on December 21, 2016. (Motion, Ex. G.) Buchanan did not file any objections to the procedures set forth in the December 2016 OSC and did not appear in connection with the proceedings concerning the 2016 Threshold Issues. (Motion ¶ 18.)

### D. The June 2017, July 2017 and August 2017 Opinions

On June 7, 2017, the Court issued an Opinion deciding Threshold Issue Two (whether Non-Ignition Switch Plaintiffs may assert Independent Claims against New GM). *In re Motors Liquidation Co.*, 568 B.R. 217 (Bankr. S.D.N.Y. 2017) [hereinafter *June 2017 Opinion*]. The Court ruled that claims based on post-closing wrongful conduct of New GM could go forward as Independent Claims, but such claims must clearly distinguish between actions of Old GM and New GM. *June 2017 Opinion*, 568 B.R. at 220 n.1. The Court indicated that as pleaded, plaintiffs' claims could not pass through the bankruptcy gate because it based allegations on generalized knowledge of Old GM and New GM. *See id.* at 231.[3] Instead, plaintiffs could amend their failure to warn claims against New GM to allege causes of action based solely on New GM's post-closing wrongful conduct. *See id.* Plaintiffs did so, by amending paragraph 27 of their complaint to allege:

> Despite information and knowledge available and known to [New GM], including knowledge of numerous "rollaway" incidents caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, [New GM] took no steps after June 2009 to directly notify and/or warn owners or the public of these defects.

---

[3]    Of relevance to this decision, paragraphs 25 and 26 of the Pitterman Complaint stated that Old GM "issued a Technical Service Bulletin in which it acknowledged that the ordinary owner may expect the brake transmission shift interlock to function when the key is in the ACC position. Despite this knowledge, and the knowledge of numerous 'rollaway' incidents caused by the defects described herein in which numerous people, especially children, were catastrophically injured or killed, GMC and the Defendant took no steps to directly notify and/or warn owners or the public of these defects." In a July 10 Order, this Court enjoined the Pitterman Plaintiffs from relying on the 2006 Technical Bulletin to support their Independent Claims against New GM. (Pitterman Order.)

Pitterman Amended Complaint, 3:14-CV-00967-JCH.  This Court permitted these failure to warn claims against New GM to pass through the bankruptcy gate as alleged.  The Pitterman Amended Complaint did not seek punitive damages against New GM based on Independent Claims so the Court did not address whether punitive damages might be available on Independent Claims.

On July 12, 2017, this Court issued an Opinion deciding 2016 Threshold Issues Nos. 1, 3 and 4.  *See In re Motors Liquidation Co.*, 571 B.R. 565 (S.D.N.Y. 2017) [hereinafter *July 2017 Opinion*].  In the *July 2017 Opinion*, the Court affirmed that "truly Independent Claims" are "claims based solely on wrongful post-closing conduct of New GM . . . ."  *Id.* at 569 n.2.  The Court also held that "Post-Closing Accident Plaintiffs may not assert claims against New GM for punitive damages based on conduct of Old GM."  *Id.* at 580; *see also* December 2015 Judgment ¶ 6.  In addition, the Court ruled in the *July 2017 Opinion* that "Judge Gerber's [December 2015] ruling therefore remains law of the case and New GM cannot be held liable for punitive damages on a contractual basis."  *July 2017 Opinion*, 571 B.R. at 576.  Buchanan did not appeal the *July 2017 Opinion*.  (Motion ¶ 22.)

On August 31, 2017, this Court entered a third Opinion in response to a personal injury lawsuit filed by Kaitlyn Reichwaldt in Georgia state court, arguing that she could maintain claims against New GM for punitive damages based on Old GM conduct.  *See In re Motors Liquidation Co.*, 576 B.R. 313 (Bankr. S.D.N.Y. 2017) [hereinafter *August 2017 Opinion*].  In the *August 2017 Opinion*, this Court held that Reichwaldt's failure to warn claims could not pass through the bankruptcy gate because Reichwaldt's complaint did not "sufficiently distinguish between the conduct of Old GM and New GM" and "fail[ed] to specify conduct of New GM upon which the purportedly Independent Claims are based."  *Id.* at 322–23.  Invoking the

doctrines of *res judicata* and law of the case, this Court reiterated that Reichwaldt was bound by

the *July 2017 Opinion* and could not seek punitive damages from New GM based on conduct of

Old GM. *Id.* at 323–24.

### E.   The 2018 District Court Opinion

On May 29, 2018, the United States District Court for the Southern District of New York

(the "District Court") affirmed (1) the *November 2015 Opinion*, finding that New GM did not

contractually assume liability for punitive damages, is law of the case, and that this Court's *July*

*2017 Opinion* holding that punitive damages claims against New GM based on Old GM conduct

are barred by federal bankruptcy law. *See In re Motors Liquidation Co.*, 590 B.R. 39, 62–63

(S.D.N.Y. 2018) [hereinafter *2018 District Court Opinion*].  The District Court also affirmed the

*August 2017 Opinion*, holding that Reichwaldt could not seek punitive damages against New

GM based on Old GM conduct because of *res judicata* and the law of the case doctrines.  *See*

*2018 District Court Opinion*, 590 B.R. at 66.

The District Court agreed with this Court's decision to allow the Pitterman Plaintiffs'

amended complaint to pass through the bankruptcy gate because "[o]n its face . . . the amended

complaint alleges that New GM had independent knowledge of the alleged defect *after* the

Closing Date of the 363 Sale and that its duty to warn arose from that knowledge; despite New

GM's claims to the contrary, the amended complaint does not attempt to 'bootstrap' the

knowledge or conduct of Old GM onto purportedly Independent Claims."  *Id.* at 61 (emphasis in

original).

### F.   The 2019 Second Circuit Opinion

On November 19, 2019, the Second Circuit affirmed the *2018 District Court Opinion's*

holding that New GM did not assume liability for punitive damages based on Old GM conduct.

*See In re Motors Liquidation Co.*, 943 F.3d 125 (2d Cir. 2019) [hereinafter *2019 Second Circuit Opinion*]. It has now conclusively and finally been determined that New GM is not liable for punitive damages based on Old GM conduct. *See id.* at 132 ("[T]he terms of the Sale Agreement reflect—and extrinsic evidence confirms—that New GM did not contractually assume claims for punitive damages based on Old GM's conduct"). The Second Circuit unequivocally held that "punitive damages are not an Assumed Liability in the Sale Agreement, and the Sale Order's free and clear provision bars punitive damages claims under a theory of successor liability." *Id.* at 133.

On November 19, 2019, the Second Circuit also entered a Summary Order affirming the *2018 District Court Opinion* with respect to this Court's *August 2017 Opinion*. *See In re Motors Liquidation Co.*, 792 F. App'x 28 (2d Cir. 2019) [hereinafter *2019 Second Circuit Summary Order*]. The Second Circuit found that Reichwaldt was barred by the doctrine of *res judicata* from arguing that New GM assumed liability for punitive damages based on Old GM conduct. *See id.*

### G.  Buchanan and the Buchanan Action

Buchanan is the administrator of the estate of his late wife, Glenda Marie Buchanan. (Objection ¶ 3.) On or about November 10, 2014, Mrs. Buchanan was in a one-vehicle accident involving a 2007 Chevrolet Trailblazer (generally, the "Vehicle") that resulted in her death. (Motion ¶ 29.) Mrs. Buchanan had purchased the Vehicle as a used vehicle on February 8, 2011. (Buchanan Amended Complaint ¶ 27.) On May 3, 2016, Buchanan commenced the Buchanan Action against New GM and Terry Reid Group, Inc., alleging that the accident was caused by a defective "steering wheel angle sensor" (or "SWAS") in the Trailblazer. (*Id.*) Buchanan's

theory of the case is that a defective SWAS was installed in Mrs. Buchanan's Trailblazer,

causing her to lose control of the Vehicle and resulting in her accident.  (Objection ¶ 3.)

The Buchanan Complaint contained two allegations against New GM for strict liability

and negligence.  These claims were based on Old GM conduct resulting from design,

manufacturing, and marketing defects existing when the Vehicle was distributed and sold by Old

GM, prior to the Sale Order.  (Buchanan Complaint.)  The Buchanan Complaint also contained a

request for punitive damages on these claims:

> GM through their conduct in designing, testing, manufacturing,
> assembling, marketing and selling the Trailblazer, demonstrated an
> entire want of care, evidencing a reckless indifference and disregard
> to the consequences of its actions.  Plaintiff, pursuant to O.C.G.A.
> §51-12-5.1, is entitled to an award of punitive damages to deter GM
> from such conduct in the future.

(*Id.* ¶ 35.)

The Motion contends that until January 2020, Buchanan had not attempted to assert an

Independent Claim against New GM and had not pressed the punitive damages claim in the

Buchanan Action.  (Motion ¶ 31.)  Buchanan recently sought discovery regarding his request for

punitive damages, including a deposition of Mary Barra, New GM's Chief Executive Officer.

(*Id.*)  New GM filed a motion for a protective order, opposing Ms. Barra's deposition.  Oral

argument on the motion for a protective order took place before the Buchanan Complaint was

amended.  (*Id.* ¶ 5.)  Buchanan argued before the Georgia state court that Ms. Barra's deposition

was required on the punitive damages issue, citing to Pattern Jury Instructions referring to the

duty to warn imposed on a manufacturer.  (*Id.* ¶ 5 n.8; Buchanan Action Transcript at 38.)  On

January 27, 2020, the Georgia state court orally denied New GM's discovery motion and, on

February 4, 2020, entered an order denying New GM's motion.  (Buchanan Discovery Order.)

New GM appealed the Buchanan Discovery Order to the Georgia Court of Appeals, arguing that

Ms. Barra's deposition should not be allowed because it only pertains to Buchanan's improper punitive damages claim, thereby violating the Sale Order.  (Objection ¶ 24.)

On January 29, 2020, New GM sent Buchanan a letter stating that, while the Sale Agreement provided that New GM assumed Product Liabilities related to post-Sale accidents involving Old GM vehicles, the December 2015 Judgment, *July 2017 Opinion* and *August 2017 Opinion* (each of which were affirmed on appeal by the District Court and Second Circuit) expressly hold that the Sale Agreement did not provide for the assumption of punitive damages by New GM relating to assumed Product Liabilities.  ("New GM January 2020 Letter," ECF Doc. # 14667-5.)  New GM's January 2020 Letter also referred to the December 2016 OSC, and explained that, because Buchanan did not object to that Order, Buchanan (like the Georgia plaintiff in the *August 2017 Opinion*) was bound by the rulings in the *July 2017 Opinion*.  (*Id.*)  New GM demanded that Buchanan immediately address the infirmities in the Buchanan Complaint.  (*Id.*)

On January 31, 2020, Buchanan amended his complaint to address various impermissible allegations conflating Old GM and New GM conduct.  (Buchanan Amended Complaint.)  Shortly thereafter, Buchanan responded to the New GM January 2020 Letter, attaching the Buchanan Amended Complaint.  ("Buchanan January 2020 Letter," ECF Doc. # 14667-8.)

The Buchanan Amended Complaint alleges that the Vehicle had a StabiliTrak, which "helps improve vehicle stability, particularly during emergency maneuvers."  (Buchanan Amended Complaint ¶ 17.)  Pursuant to the Buchanan Amended Complaint, "Old GM's and New GM's component supplier, Alps Electric (North America), Inc. ('Alps') manufactured the SWAS [a steering wheel angle censor critical for StabilitTrak performance] in Mrs. Buchanan's

Trailblazer." (*Id.* ¶ 20.)  The SWAS is a critical component of a StabiliTrak system. (*Id.* ¶¶ 17,

19.)

The Buchanan Amended Complaint further alleges certain pre-Sale conduct relating to

Old GM, including:

- Old GM began receiving high rates of warranty claims for SWAS failures in the
  [Vehicle] almost immediately upon the first sale of the 2006 model year vehicles
  (*id.* ¶ 22);

- The Design Release Engineer for the SWAS, Paul Shaub, as well as other Old
  GM employees, knew that the technology had "well known issues," meaning the
  SWAS in the [Vehicle] were failing at a high rate and disabling the StabiliTrak
  system (*id.* ¶ 23); and

- Old GM never warned owners and operators of the Subject Vehicles[4] that these
  sensors were failing at high rates and that these failures disabled the StabiliTrak in
  their vehicles (*id.* ¶ 24).

With respect to New GM, the Buchanan Amended Complaint states that:

- New GM emerged out of bankruptcy and continued the business of Old GM with
  many, if not most, of Old GM's employees, and on information and belief, with
  most of the same senior-level management, officers, and directors, as well as its
  records, tests, and documents generated in the creation of the defective steering
  wheel angle sensors (*id.* ¶ 11);

- Mr. Shaub, as well as numerous other Old GM employees, became New GM
  employees.  After becoming New GM employees, New GM also chose not to
  warn owners and operators of the [Vehicle] that these sensors were failing at high
  rates and that these failures disabled the StabiliTrak in their vehicles (*id.* ¶ 25);

- In a 2011 Press Release, New GM said that StabiliTrak is the most significant
  safety feature since the development of the safety belt.  It is already making a big
  difference in improving safety on America's roads.  According to the Insurance
  Institute for Highway Safety, electronic stability control systems such as
  StabiliTrak have reduced the risk of being involved in a fatal crash by 33 percent
  during the past 10 years (*id.* ¶ 18); and

---

[4]    "Subject Vehicles" is defined in the Buchanan Amended Complaint as "2006-2009 Chevrolet Trailblazer
and GMC Envoy, 2006-2007 Buick Rainier, 2006-2009 Saab 9-7x and 2006-2007 Isuzu Ascender vehicles."  (*Id.* ¶
21.)

- Despite its knowledge of the high failure rates of the SWAS in the [Vehicle], including Mrs. Buchanan's vehicle, and that the SWAS had well-known technology issues, New GM chose not to warn Mrs. Buchanan of the defective SWAS in her Trailblazer on or before November 10, 2014.  (*Id.* ¶ 27.)

The claims in the Buchanan Amended Complaint are: (Count I) strict liability claims against New GM resulting from Old GM's design, manufacture, marketing, and sale of the Vehicle (*id.* ¶¶ 31–37); (Count II) negligence claims against New GM for Old GM's aforementioned negligence (*id.* ¶¶ 38–42); (Count III) negligence claims against New GM for their failure to warn Mrs. Buchanan about the defective SWAS in her Vehicle (*id.* ¶¶ 43–45); (Count IV) general and special damages for pain and suffering, funeral and burial expenses, and deprivation of full society, companionship and services of Mrs. Buchanan (*id.* ¶¶ 46–51); and finally (Count V) for punitive damages because:

> New GM, through its conduct in failing to warn of a known defect in the Subject Vehicles, including the Trailblazer, demonstrated, and continues to demonstrate, an entire want of care, evidencing a reckless indifference and disregard to the consequences of its actions.  Plaintiff, pursuant to O.C.G.A. § 51-12-5.1, is entitled to an award of punitive damages to punish New GM and deter New GM from such conduct in the future.

(*Id.* ¶ 52.)  Buchanan maintains that Counts I and II are Product Liability claims assumed by New GM in the Sale Agreement and Counts III and V are Independent Claims.  (Objection ¶ 5.)

### H.  The Motion

The Motion contends that the Buchanan Amended Complaint seeks to impermissibly hold New GM liable for punitive damages based on Old GM conduct.  In support of this argument, the Motion states that several rulings in this Circuit unequivocally hold that New GM did not contractually assume punitive damages when it assumed Product Liabilities and that New GM is not liable for punitive damages on a successor liability theory.  (Motion ¶ 1.)  While the Buchanan Amended Complaint purported to add an Independent Claim based on New GM's

14

failure to warn Mrs. Buchanan about an alleged defect in the Vehicle, that Independent Claim is

not based solely on specific and identifiable New GM conduct. (*Id.* ¶ 7.) The Buchanan

Amended Complaint is not based on any expressly stated New GM volitional conduct or

identified post-363 Sale event because New GM had no relationship to Mrs. Buchanan (it did not

manufacture, design or sell the Vehicle). (*Id.*) Thus, according to New GM, the Buchanan

Amended Complaint is nothing more than a failure to warn claim that Old GM allegedly had as

the manufacturer and original seller of the Vehicle. (*Id.* ¶¶ 2, 7.) According to the Motion, that

is the essence of a successor liability-type claim, and it has been squarely held that New GM

does not have punitive damage liability for such claims. (*Id.* ¶ 7.) Further, assuming Old GM

had a failure to warn obligation, that obligation is part of the assumed Product Liability in which

New GM is potentially liable for only compensatory, and not punitive, damages. (*Id.*)

New GM's proposed order provides that:

> Count III in the Buchanan Amended Complaint, entitled
> "Negligence of General Motors LLC," alleges a duty to warn claim
> based on Old GM's role as the manufacturer of the Subject Vehicle.
> As such, Buchanan is alleging an Assumed Product Liability claim
> against New GM in Count III which, if established, is payable by
> compensatory damages only, and not punitive damages.
> Accordingly, Buchanan is directed to amend the Buchanan
> Amended Complaint to dismiss with prejudice all requests for
> punitive damages against New GM.

("Proposed Order," ECF Doc. # 14667-10 ¶ 2.) The Proposed Order also enjoins Buchanan and

his counsel from further prosecuting their lawsuit until the actions mandated by the Proposed

Order are fully complied with.

## I.  The Objection

The Objection frames the issue presented for this Court as a narrow question regarding

whether Buchanan has properly asserted an independent failure to warn claim and related

punitive damages claim against New GM in the Buchanan Amended Complaint.  (Objection ¶ 1.)

The Objection states that Buchanan is not seeking punitive damages in connection with any

liability of Old GM assumed in connection with the 363 Sale, successor liability theory, or

knowledge or conduct of Old GM.  (*Id.*)  Instead, the Buchanan Amended Complaint is based

solely on New GM's post-Sale knowledge and misconduct in failing to warn Mrs. Buchanan

about a defect in the Vehicle.  (*Id.*)  The Objection maintains that New GM knew that the SWAS

in the Vehicle was defective because New GM inherited that knowledge from Old GM's

employees and records.  (*Id.* ¶ 4.)  The Buchanan Amended Complaint also specifically identifies

an Old GM employee who became a New GM employee and whose knowledge of the defect was

imputed to New GM.  (*Id.* (citing Buchanan Amended Complaint ¶¶ 22–25).)  As such,

Buchanan has alleged Independent Claims for failure to warn and punitive damages based on

New GM's own inherited knowledge and conduct, not Old GM's.  (Objection ¶ 12.)

The Objection further contends that New GM brought this Motion after the Buchanan

Discovery Order was issued, and nearly four years after Buchanan first asserted the punitive

damages claim.  They did so to gain perceived leverage over Buchanan and to block Buchanan's

ability to depose Ms. Barra.  (*Id.* ¶ 22.)  Buchanan states, however, that Ms. Barra's deposition is

also relevant for other claims, not just punitive damages.  (*Id.* ¶ 24.)  Nevertheless, the Objection

cites to the *August 2017 Opinion*, holding that the proper scope of discovery is a matter for the

Georgia Court, not for this Court.  (*Id.* ¶ 25.)

### J.  The Reply

Relying on the *2019 Second Circuit Opinion*, New GM argues that the Buchanan

Amended Complaint violates the Sale Order because Buchanan's Independent Claim for failure

to warn is really disguised as a claim against the manufacturer (*i.e.*, Old GM).  (Reply at 4–5.)  If

16

allowed to proceed, this Court would be allowing plaintiffs to seek punitive damages against New GM for Assumed Liability.  (*Id.*)

New GM relies on paragraph 46 of the Sale Order, which states that New GM shall have no successor, transferee, derivative or vicarious liabilities of any kind for any claim including under any product liability, whether known before or after the 363 Sale.  (Reply at 5.)  Thus, the Reply maintains that an Independent Claim cannot be based on the fact that New GM purchased the majority of Old GM's assets or on duties or obligations that New GM agreed to perform under the Sale Agreement.  (*Id.* at 6.)  Rather, an Independent Claim against New GM must be based solely on New GM's post-363 Sale, newly-incurred duties, in its capacity as a non-successor, and a non-manufacturer/non-seller of an Old GM vehicle.  (*Id.*)

New GM also places weight on paragraph 48 of the Sale Order, which provides that for non-Assumed Liabilities, New GM shall have no responsibility or obligation of Old GM relating to the purchased assets.  (Reply at 6.)  The Reply argues that Buchanan is impermissibly seeking punitive damages based on a failure to warn claim against New GM premised on Old GM's duty to warn.  (*Id.*)  As such, Buchanan's claim are an Assumed Liability, not an Independent Claim. (*Id.*)

Responding to the Objection's reliance on the *November 2015 Opinion*, New GM states that knowledge (by a former employee of Old GM that is hired by New GM as contemplated by the Sale Agreement) is not actionable, as a separate claim, unless it is coupled with a separate legal duty incurred after the 363 Sale.  (*Id.* at 7.)  As argued by New GM, the legal duty to warn was the manufacturer's duty to warn, which is an Assumed Liability, not an Independent Claim. (*Id.*)

Finally, New GM maintains that the facts forming the basis of Buchanan's alleged

Independent Claim cannot form the factual predicate of an Independent Claim because they are

not clearly based solely on New GM conduct.  (*Id.* at 9.)  Instead, they are allegations supporting

a claim based on Old GM's duty to warn.  (*Id.*)

## II.    <u>LEGAL STANDARD</u>

### A.  Jurisdiction

The Sale Order conferred exclusive jurisdiction on this Court to enforce the provisions of

the Sale Order and the Sale Agreement.  Paragraph 71 of the Sale Order provides, in relevant

part:

> This Court retains exclusive jurisdiction to enforce and implement
> the terms of this Order, the [Sale Agreement], . . . and each of the
> agreements executed in connection therewith . . . , in all respects,
> including, but not limited to, retaining jurisdiction to . . . (c) resolve
> any disputes arising under or related to the [Sale Agreement], except
> as otherwise provided therein, (d) interpret, implement, and enforce
> the provisions of this Order, (e) protect the Purchaser against any of
> the Retained Liabilities or the assertion of any lien, claim,
> encumbrance, or other interest, of any kind or nature whatsoever,
> against the Purchased Assets . . . .

(Sale Order ¶ 71.)  As stated by this Court in *In re Motors Liquidation Company*, Case No. 09–

50026 (MG), 2018 WL 1801234, at *6 (Bankr. S.D.N.Y. Apr. 13, 2018), the Sale Order "granted

exclusive jurisdiction to this Court to enforce and implement the provisions of the Sale Order."

### B.  Independent Claims

In light of the Sale Order, in the *June 2017 Opinion*, the Court specified requirements for

pleading independent claims against New GM, holding that only "truly independent claims based

solely on New GM's wrongful conduct" may pass through the bankruptcy gate as "Independent

Claims."  *June 2017 Opinion*, 568 B.R. at 231.  The Court noted that its role as a "gatekeeper" is

not to decide issues of state law.  *Id.* at 222 ("The Court's role, then, is a 'gatekeeper' role.  It

should be the court to decide what claims and allegations should get through the 'gate,' under the

Sale Order and this Court's prior decisions.") (citation omitted).

In the *June 2017 Opinion*, the Court wrote:

> The Court emphasizes that its analysis here applies only to claims
> based solely on *New GM's alleged wrongful conduct*. It is not
> acceptable, as the Pitterman Complaint does in several paragraphs,
> to base allegations on generalized knowledge of both Old GM and
> New GM.  To pass the bankruptcy gate, a complaint must clearly
> allege that its causes of action are based solely on New GM's post-
> closing wrongful conduct.   The Pitterman Plaintiffs' counsel
> acknowledged during oral argument that the current complaint
> crosses the line, basing the purported independent claims on conduct
> of both Old GM and New GM.  Such allegations are not permissible.

*Id.* at 231 (emphasis in original).

Similarly, in the *August 2017 Opinion*, this Court stated that "[t]o pass through the

bankruptcy gate, an Independent Claim must clearly allege specific conduct of New GM upon

which it is based.  Simply adding 'and GM LLC' to paragraphs of a complaint concerning Old

GM conduct is not enough to pass through the gate as an Independent Claim." *August 2017*

*Opinion*, 576 B.R. at 322.  The Court noted several impermissible allegations conflating Old GM

and New GM conduct.  *See id.*  The Court also found that general public statements by New

GM's CEO, Mary Barra, made to Congress in the context of the ignition switch scandal do not

satisfy this Court's requirement that Independent Claim plaintiffs "clearly allege that its causes

of action are based solely on New GM's post-closing wrongful conduct." *Id.* at 323.

Additionally, allegations "that New GM purchased Old GM's books and records and has profited

from maintenance, repair, and selling parts for Old GM vehicles—without a specific tie to the

truck model or alleged design defect at issue here—are impermissible bases for an Independent

Claim." *Id.* at 323.

### C. Punitive Damages

The Court's *July 2017 Opinion* clearly holds that (i) New GM did not contractually assume liability for punitive damages arising from Old GM's conduct in connection with Post-Closing Accidents; and (ii) such punitive damages are not available against New GM on a successor liability theory. *July 2017 Opinion*, 571 B.R. at 580.

In the *2019 Second Circuit Opinion*, the Second Circuit considered whether New GM is liable for punitive damages with respect to claims brought by individuals who never owned Old GM vehicles (but collided with one) and persons who bought Old GM cars used after the Sale. *2019 Second Circuit Opinion*, 943 F.3d at 127. The Court found that as a matter of contract interpretation, "the terms of the Sale Agreement reflect—and extrinsic evidence confirms—that New GM did not contractually assume claims for punitive damages based on Old GM's conduct." *Id.* at 132. Further, the Second Circuit held that "the Sale Order's free and clear provision bars punitive damages claims under a theory of successor liability." *Id.* at 133. Accordingly, the Court found that "Appellants may not seek punitive damages against New GM based on Old GM's conduct." *Id.*

## III.    DISCUSSION

As set forth in the parties' briefing, the backdrop for the pending Motion appears to be a discovery dispute in the Buchanan Action pending in Georgia state court regarding whether Buchanan's counsel may depose New GM's CEO, Ms. Barra. That issue is not for this Court to decide because the proper scope of discovery is a matter for the Georgia state court. *See August 2017 Opinion*, 576 B.R. at 319. Instead, the narrow question presented is whether the Buchanan Amended Complaint's failure to warn claim against New GM and corresponding punitive damages request may pass through the bankruptcy gate. The Court concludes that the Buchanan

Amended Complaint, with several further amendments that must be made as described below, may pass through the bankruptcy gate with respect to an Independent Claim against New GM, for which it may seek to recover punitive damages if permitted by applicable non-bankruptcy law.[5]

### A. Buchanan's Failure to Warn Claim Against New GM Based Solely On New GM's Wrongful Conduct May Pass Through the Bankruptcy Gate As An Independent Claim

Buchanan's failure to warn claim against New GM is an Independent Claim that cannot be enjoined by the Sale Order and may pass through the bankruptcy gate. *See June 2017 Opinion*, 568 B.R. at 230 (citing *2016 Second Circuit Opinion*, 829 F.3d at 157).   As defined in Judge Gerber's *November 2015 Opinion*, "Independent Claims" are "claims based solely on New GM's alleged wrongful conduct" and cannot be barred by a section 363 sale order.  *See November 2015 Opinion*, 541 B.R. at 109; *June 2017 Opinion*, 568 B.R. at 230.

The *June 2017 Opinion* and *2018 District Court Opinion* are instructive in this regard.  In the *June 2017 Opinion*, this Court rejected the Pitterman Plaintiffs' argument that they had alleged Independent Claims against New GM for failure-to-warn because the complaint based several allegations on generalized knowledge of both Old GM and New GM (without distinguishing between the two).  The Court held that "[t]o pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct." *Id.* at 231.  The Pitterman Plaintiffs thereafter amended their complaint to allege post-Sale wrongful conduct against New GM alone.  The amended paragraph stated that despite New GM post-Sale knowledge about rollaway defects, New GM failed to warn plaintiffs. *See*

---

[5]    New GM concedes that Buchanan is not barred from bringing failure to warn claims against New GM based on the conduct of Old GM, as set forth in Counts I and II of the Buchanan Amended Complaint.  (Motion ¶ 12.)

Pitterman Amended Complaint, 3:14-CV-00967-JCH.  The *2018 District Court Opinion*
concluded that this Court correctly allowed those claims to proceed through the bankruptcy gate
because "[o]n its face . . . the amended complaint alleges that New GM had independent
knowledge of the alleged defect *after* the Closing Date of the 363 Sale and its duty to warn arose
from that knowledge. . . ."  *2018 District Court Opinion*, 590 B.R. at 61 (emphasis in original).

    The same is true here.  The Buchanan Amended Complaint contains specific allegations
that New GM had independent knowledge of the SWAS defect post-Sale and failed to warn
plaintiffs, like the Buchanans, about that defect.  The Buchanan Amended Complaint alleges that
the Design Release Engineer for the SWAS, Paul Shaub, worked at Old GM and knew that the
technology had "well known issues," meaning the SWAS in the Subject Vehicles was failing at a
high rate and disabling the StabiliTrak system, because of increased warranty claims.  (Buchanan
Amended Complaint ¶ 23.)  After the Sale, Mr. Shaub transitioned to New GM where he (and
other New GM employees) chose not to warn owners and operators of the Subject Vehicles that
these sensors were failing at high rates and that these failures disabled the StabiliTrak in their
vehicles.  (*See id.* ¶¶ 25, 27.)  The Buchanan Amended Complaint also alleges that in 2011, New
GM said, "StabiliTrak is the most significant safety feature since the development of the safety
belt.  It is already making a big difference in improving safety on America's roads.  According to
the Insurance Institute for Highway Safety, electronic stability control systems such as
StabiliTrak have reduced the risk of being involved in a fatal crash by 33 percent during the past
10 years." (*See id.* ¶ 18.)

    Like the allegations in the Pitterman Plaintiffs' amended complaint, this Court concludes
that the Buchanan Amended Complaint alleges that New GM had post-Sale independent
knowledge inherited from Old GM employees of the alleged defect, and its duty to warn arose

22

from that knowledge.  (*See 2018 District Court Opinion*, 590 B.R. at 61; Objection ¶ 10.)  As

Judge Furman stated in the *2018 District Court Opinion*, New GM may be correct that given its

lack of relationship to the Buchanans and other factors, it did not have a post-Sale duty to warn

them, but that determination is a question of non-bankruptcy law for the Georgia state court to

decide.  *See 2018 District Court Opinion*, 590 B.R. at 61.[6]

 The Court rejects New GM's contention that these allegations are impermissibly based on

wholesale imputation.  (Reply at 16.)  Pursuant to the *November 2015 Opinion* and December

2015 Judgment, allegations in the Buchanan Amended Complaint that New GM inherited

knowledge from Old GM are permissible predicates for an Independent Claim and pass through

the bankruptcy gate.  (Objection ¶¶ 13–14.)  In the *July 2017 Opinion* and the *2018 District

Court Opinion*, this Court and the District Court held that these decisions are law of the case.

*See 2018 District Court Opinion*, 590 B.R. at 62 ("Under the law of the case doctrine, a decision

on an issue of law made at one stage of a case becomes binding precedent to be followed in

subsequent stages of the same litigation.") (internal quotation marks and citations omitted).

Pursuant to the December 2015 Judgment, "knowledge of Old GM may be imputed to New GM,

if permitted by non-bankruptcy law, to the extent such knowledge was 'inherited' from Old GM

if such information was (a) actually known to a New GM employee (*e.g.*, because it is the

knowledge of the same employee or because it was communicated to a New GM employee), or

(b) could be ascertained from New GM's books and records, even if such books and records

were transferred by Old GM to New GM as part of the 363 Sale and, therefore, first came into

existence before the 363 Sale."  (December 2015 Judgment ¶ 4.)

---

[6] At oral argument, the parties disagreed about whether Georgia state law would recognize a duty to warn claim against a non-manufacturer, non-seller.  Under certain circumstances the RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 13 would recognize such a claim.  Whether or not Georgia state law would do so based on the facts in the Buchanan case is an issue for the Georgia state court, not for this Court.

Nevertheless, there are certain allegations in the Buchanan Amended Complaint that may not be used to support a failure to warn claim against New GM, seeking punitive damages against New GM based on its own post-sale conduct.  The allegations identified below impermissibly conflate Old GM and New GM conduct.  *See June 2017 Opinion*, 568 B.R. at 221–22 (noting that "the Pitterman Complaint frequently refers to both Old GM's and New GM's conduct in the same numbered paragraph, making it difficult to determine exactly which claims are based solely on New GM's alleged wrongful conduct and which are based on Old GM's conduct that the Pitterman Plaintiffs' argue are assumed Liabilities").  Therefore, the following allegation in the Buchanan Amended Complaint cannot be used to support the Independent Claim against New GM, and is unnecessary (and therefore surplusage) with respect to the Assumed Liability Claims:

- "New GM emerged out of bankruptcy and continued the business of Old GM with many, if not most, of Old GM's employees. . . ." (Buchanan Amended Complaint ¶ 11.)[7]

Therefore, the Court concludes that the Buchanan Amended Complaint must be further amended to remove paragraph 11 which does not properly distinguish between Old GM and New GM, to support an Independent Claim.[8]  *See* Pitterman Order.

Assuming those allegations are addressed, the Buchanan Amended Complaint passes through the bankruptcy gate and the Georgia state court will have to decide whether the

---

[7]    The *2017 August Opinion* found that similar allegations stating that "GM LLC, the company that emerged from bankruptcy" were impermissible.  *2017 August Opinion*, 576 B.R. at 323.  Assuming Buchanan can allege in good faith that specifically identified employees of New GM previously worked for Old GM, and during such employment learned of the product defects alleged in the complaint, the Buchanan Amended Complaint may be further amended to allege such facts.

[8]    Additionally, paragraph 19 of the Buchanan Amended Complaint alleges that "One of the components that is integral to the performance of StabiliTrak is the steering wheel angle sensor ('SWAS').  According to GM, 'The (SWAS) is a critical part of the ESC system and measures the steering wheel position and rate of turn.'  If the SWAS fails, the StabiliTrak will not work."  (*Id.* ¶ 19.)  Paragraph 19 should be amended to make it consistent with paragraph 18, referring to "New GM," rather than just "GM," and state that "According to New GM, 'The (SWAS) is . . . .'"

Buchanan Amended Complaint sufficiently alleges a failure to warn claim against New GM

under applicable non-bankruptcy law.  *See August 2017 Opinion*, 576 B.R. at 320.

### B. Buchanan May Seek Punitive Damages Based on the Independent Claim Against New GM

Buchanan may seek punitive damages on the Independent Claim based "only on New

GM knowledge and acts."  *November 2015 Opinion*, 541 B.R. at 125; *see also August 2017*

*Opinion*, 576 B.R. at 319 ("[T]he only way for a plaintiff to obtain punitive damages from New

GM is to bring a claim based on conduct of *New GM itself*, not conduct of Old GM.") (emphasis

in original).  Evidence supporting such claims "can include inherited knowledge and knowledge

acquired after the 363 Sale, but not any acts, or non-inherited knowledge, of Old GM."

*November 2015 Opinion*, 541 B.R. at 125.  As set forth above, to the extent Buchanan's failure

to warn claim is based on New GM conduct alone, supported by specific allegations of inherited

knowledge of Old GM, punitive damages may be permissible if permitted by Georgia state law.

The *2019 Second Circuit Opinion*, relied upon by New GM, does not change this result.

While that decision conclusively held that used car purchasers may not seek punitive damages

against New GM based on Old GM conduct, it does not bar Buchanan from seeking punitive

damages based on an Independent Claim alleging New GM post-Sale knowledge and conduct

(which may include knowledge inherited from Old GM by New GM employees).  The *2019*

*Second Circuit Opinion* addressed arguments on appeal from the *2018 District Court Opinion*

and *July 2017 Opinion* that are distinguishable from Buchanan's situation in the pending Motion.

First, the *2019 Second Circuit Opinion* rejected Appellants' argument that they could seek

punitive damages based on New GM's Assumed Liabilities in the Sale Agreement.  Here,

Buchanan concedes that he cannot seek punitive damages based on any Assumed Liability.

(Objection ¶ 5.)  Second, the *2019 Second Circuit Opinion* rejected Appellants' argument that

New GM must pay punitive damages under a theory of successor liability because "any alleged egregious act committed by Old GM that might justify punitive damages was over and done by the time of the Sale Order. Therefore, such claims are subject to the Sale Order's successor liability bar." *2019 Second Circuit Opinion*, 943 F.3d at 133. However, Buchanan is not seeking punitive damages against New GM under a successor liability theory. Buchanan is instead seeking punitive damages against New GM on an Independent Claim alleging New GM post-Sale knowledge and conduct.[9] The Second Circuit did not address that issue. The Court concludes that the *2019 Second Circuit Opinion* does not preclude Buchanan from seeking punitive damages on his Independent Claim.

The *November 2015 Opinion*, which remains law of the case (as discussed above), supports this view. There, Judge Gerber stated that on Independent Claims "New GM might have acquired relevant knowledge when former Old GM employees came over to New GM or New GM took custody of what previously were Old GM records. Reliance on that, for punitive damages purposes, is permissible." *November 2015 Opinion*, 541 B.R. at 122. On that basis, the Court held that "punitive damages may still be sought in actions based on post-Sale accidents involving vehicles manufactured by Old GM to the extent the punitive damages claims are premised on New GM action or inaction after it was on notice of information 'inherited' by New GM, or information developed by New GM post-Sale." *See id.* at 123.

Thus, the Court rejects New GM's argument that the *2019 Second Circuit Opinion* forecloses used car purchasers, like Buchanan, from seeking punitive damages against New GM for Independent Claims alleging New GM's post-Sale knowledge and conduct.

---

[9]     Buchanan's counsel agreed at oral argument that New GM's duty to warn cannot be premised on its purchase of assets from Old GM or on any successor liability theory. Whether New GM had a duty to warn based solely on New GM's post-Sale conduct is an issue of Georgia law for the Georgia courts.

## IV.    **CONCLUSION**

For the reasons explained above, New GM's Motion is **GRANTED IN PART** and

**DENIED IN PART**.  In order to pass through the bankruptcy gate with respect to an

Independent Claim against New GM for which punitive damages may be sought, the Buchanan

Amended Complaint must be further amended to remove paragraph 11 and to revise paragraph

19; to that extent, New GM's Motion is **GRANTED**.  In all other respects, New GM's Motion is

**DENIED**.  To be clear, however, the Court does not address whether the Buchanan Amended

Complaint states a failure to warn claim against New GM based on its own post-Sale conduct, a

non-bankruptcy law issue for the Georgia state court, and not for this Court, to decide.

**IT IS SO ORDERED.**

Dated:    April 2, 2020
                New York, New York


_Martin Glenn_
MARTIN GLENN
United States Bankruptcy Judge