**BINDER & SCHWARTZ LLP**

Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 510-7008

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                                      Debtors.

        Chapter 11

        Case No. 09-50026 (MG)
        (Jointly Administered)

-------------------------------------------------------------------------x

MOTORS LIQUIDATION COMPANY AVOIDANCE
ACTION TRUST, by and through the Wilmington Trust
Company, solely in its capacity as Trust Administrator and
Trustee,

                                   Plaintiff,

               against

JPMORGAN CHASE BANK, N.A., *et al.*,

                                 Defendants.

        Adversary Proceeding

        Case No. 09-00504 (MG)

-------------------------------------------------------------------------x

## MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR ENTRY OF AN ORDER APPROVING THE DISTRIBUTION PLAN TO THE AVOIDANCE ACTION TRUST'S BENEFICIARIES

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 4

    I.     THE ELP OBJECTION TO THE AAT'S DISTRIBUTION SHOULD BE
           DENIED BECAUSE IT HAS BEEN SUPERSEDED BY EVENTS AND IS
           MOOT ............................................................................................................... 4

    II.    THE CURRENTLY PROPOSED SETTLEMENT DOES NOT POSE AN
           OBSTACLE TO THE AAT'S DISTRIBUTION PLAN BECAUSE THERE IS NO
           VIABLE MECHANISM FOR THE ELPS TO EVER BECOME ALLOWED
           CLAIMHOLDERS AND RECOVER AGAINST THE AAT ............................... 4

           A.     The ELPs Are Not Claimholders and There Is No Viable Mechanism
                    Under the Plan for their "Disputed" Claims to Ever Become Allowed
                    Claims ........................................................................................................ 6

           B.     Any Effort by the ELPs to Seek Future Recoveries from the AAT Would
                    Involve Years of Meritless Litigation and Would Undercut the
                    Justification for the Fourth Proposed Settlement ....................................... 9

           C.     Even if, After Years of Litigation, the ELPs' Disputed Claim is Resolved
                    in Their Favor, They Would Still Have No Right to Recover from the
                    AAT .......................................................................................................... 12

    III.   NEW GM LACKS STANDING TO OBJECT .................................................... 15

    IV.   IF THE COURT REQUIRES THE AAT TO ESTABLISH A RESERVE FOR
           THE ELPS AS A CONDITION OF PROCEEDING WITH ITS DISTRIBUTION
           PLAN, THE AMOUNT OF THE RESERVE SHOULD BE $500,000 ................ 17

CONCLUSION ............................................................................................................ 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Boelter v. Hearst Commc'ns, Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016) ....................................................................... 14

*Greene v. Gerber Prod. Co.*,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) ........................................................................ 14

*In re Motors Liquidation Co.*,
  580 B.R. 319 (Bankr. S.D.N.Y. 2018) ................................................................. 16, 17

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ........................................................................................ 13, 14, 15

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................................... 16

**Statutes**

28 U.S.C. § 2072(b) ...................................................................................................... 15

TO:    **THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

The Motors Liquidation Company Avoidance Action Trust (the "**AAT**") submits this

brief: (i) in reply to (a) the Response of the Economic Loss Plaintiffs (the "**ELPs**") to the Motors

Liquidation Company Avoidance Action Trust's Supplemental Brief in Further Support of its

Motion for Entry of an Order Approving the Distribution Plan to the Avoidance Action Trust's

Beneficiaries, Bank. Dkt. No. 14694 (the "**ELP Response**"), and (b) the Reply of General

Motors LLC with Respect to Motors Liquidation Company Avoidance Action Trust's

Supplemental Brief in Further Support of its Motion for Entry of an Order Approving the

Proposed Distribution Plan, Bankr. Dkt. No. 14692 (the "**New GM Response**"); and (ii) in

further support of its motion for approval of the plan for distributing proceeds to its beneficiaries

(the "**AAT Distribution Motion**").[1]

## **PRELIMINARY STATEMENT**

1.    The ELPs' shifting objection to the AAT's distribution of proceeds to its

beneficiaries lays bare what has always been the case:  The ELPs are attempting to use threats of

endless litigation against the Old GM estate – threats on which the ELPs cannot follow through

because the preservation of their litigation is premised on an approach irreconcilable with the

Plan and applicable trust agreements – to leverage undeserved payments from the AAT.  The fact

that the ELPs are persisting with these litigation threats, even as their newly proposed supposed

global settlement is pending before the Court, suggests that either: (i) it is not true that the

proposed global settlement will once and for all resolve their claims against the Old GM estate

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meaning set forth in the AAT
Distribution Motion (Bankr. Dkt. No. 14552), the AAT's Omnibus Response to the Objections to the
AAT Distribution Motion (Bankr. Dkt. No. 14598), or the AAT's Supplemental Brief in Further Support
of its Distribution Motion (Bankr. Dkt. No. 14681).

and allow the estate to finally wind down; or (ii) it is not true that the ELPs actually plan to

pursue the threatened baseless litigation against the Old GM estate to recover future payments

from the AAT.  It is the AAT's view that, in fact, the proposed global settlement holds the

promise of resolving all of the ELPs' disputes with the Old GM estate and permitting the estate

to finally wind down.  But the worthy objective of paving the path to the end of the Old GM

bankruptcy case can only be realized if the ELPs' effort to extract even more money from the

estate while purporting to settle their claims is squarely rejected, and the AAT is permitted to

proceed with its distribution.

   2. In the alternative, if, as a condition to making its distribution, the Court

requires the AAT to set aside a reserve from distribution amounts that would otherwise go to

allowed general unsecured creditors sufficient to cover the ELPs' potential future claims against

the Old GM estate, the reserve should be in an amount not to exceed $500,000.  This is the

maximum amount that the ELPs would be entitled to recover from the AAT based on the

economic premise of the current proposed global settlement.  Specifically, under the current

proposed global settlement, the GUC Trust proposes to pay $48 million towards the settlement of

the ELPs' potential claims against the Old GM bankruptcy estate, which, based on the GUC

Trust's recovery percentage of approximately 30 cents per dollar of allowed claim amount,

implies an allowed claim amount against the estate for the ELPs of approximately $160 million.

An allowed claim amount of $160 million would yield a payment of approximately $480,000 for

the benefit of the ELPs from the AAT calculated at the AAT's recovery percentage of

approximately $3 per $1,000 of allowed claim amount.  Accordingly, while the AAT contends

that the ELPs are not entitled to any allowed claim against the Old GM estate, a reserve fund of

$500,000 is sufficient to ensure that the AAT has the wherewithal to pay the ELPs an amount

consistent with the allowed claim amount implied by the current proposed settlement.[2]

    3.  As set forth in detail below, the objections of the ELPs and New GM to

the AAT's distribution should be rejected for the following reasons.

- The pending objections before the Court have been superseded because they were based on a settlement that has since been terminated.  This point is conceded by the objectors, who now base their objections on the currently proposed settlement, which did not even exist when they filed their objections to the AAT's distribution plan.

- The currently proposed settlement is no obstacle to the AAT's distribution as the proposed settlement does not successfully preserve the ELPs' claims against the Old GM estate.  The relevant provisions in the proposed settlement conflict with the Plan, the GUC Trust Agreement and the AAT Agreement; accordingly, the ELPs can never become allowed claimholders entitled to payments from the AAT.

- If, contrary to the Plan, the GUC Trust Agreement and the AAT Agreement, the ELPs were nonetheless to be permitted to proceed with litigating their claims against the Old GM estate solely to be recovered against the AAT, it would be inequitable for distributions to beneficiaries of the AAT to be held up indefinitely pending the outcome of time-consuming litigation that New GM and the GUC Trust have both properly characterized as meritless and as facing insurmountable obstacles.

- If, notwithstanding all of the above hurdles, the ELPs litigated their claims to a successful outcome against the Old GM estate, they still would not be entitled to recover against the AAT because of the $25 distribution threshold.

- Finally, New GM's objections fail on the merits for all of the same reasons as the ELPs' objections, but also fail to even cross the threshold for consideration by the Court because New GM lacks standing to object.  New GM's last-minute effort to obtain standing by acquiring a 50% economic interest in the ELPs' potential future litigation recoveries against the Old GM bankruptcy estate does not confer standing and is to no avail.

---

[2] As set forth in the AAT's opening brief and further explained herein, the ELPs are not actually entitled to any distribution at all from the AAT, even if they ultimately were to succeed in continued litigation against the Old GM estate, because of the $25 minimum distribution threshold set forth in the AAT Agreement.

## **ARGUMENT**

I.    **THE ELP OBJECTION TO THE AAT'S DISTRIBUTION SHOULD BE DENIED BECAUSE IT HAS BEEN SUPERSEDED BY EVENTS AND IS MOOT**

4.    When the ELPs filed their objection to the AAT Distribution Motion in July 2019, they requested a "brief" delay while the pending motions relating to the Third ELP/GUC Trust Settlement Agreement were adjudicated.  The Third ELP/GUC Trust Settlement Agreement did not contemplate any payment by the AAT and would have provided a release to the AAT following final court approval of the Settlement.

5.    The ELPs acknowledge that the "landscape . . . has been altered," and the original grounds for their objection have been superseded because the Third Settlement, on which their objection hinged, was terminated after their objection was filed.  ELP Response ¶ 1.

6.    It is now almost nine months later.  The Third ELP/GUC Trust Settlement Agreement has been terminated by the GUC Trust, and the basis for the ELP Objection is now moot.  The "brief" delay sought in the ELP Objection has now morphed into an indefinite delay untethered to anything other than potential lengthy, complex litigation against the AAT that has not been, and may never be, filed.  On this basis alone, the Court should grant the AAT Distribution Motion, and overrule the ELP Objection.

II.    **THE CURRENTLY PROPOSED SETTLEMENT DOES NOT POSE AN OBSTACLE TO THE AAT'S DISTRIBUTION PLAN BECAUSE THERE IS NO VIABLE MECHANISM FOR THE ELPS TO EVER BECOME ALLOWED CLAIMHOLDERS AND RECOVER AGAINST THE AAT**

7.    Attempting to change course from its filed objection, the ELPs now assert that the current proposed settlement among the ELPs, the GUC Trust and New GM (the "**Fourth Proposed Settlement**") "ripens and bolsters" the ELPs' request to delay the AAT's distributions

4

because their claims against the AAT are supposedly "preserved" in this new global settlement. ELP Response ¶¶ 15-16. [3]

8.      The parties to the Fourth Proposed Settlement have tried in vain to structure the agreement in a way that would "preserve" the ELPs' potential claims against the AAT following the settlement.  However, the mechanism contemplated by the settlement agreement does not work, because it is inconsistent with the Plan, and the GUC Trust and AAT Agreements, and disregards the claims-resolution procedures and dual-trust structure set forth in the Plan and the two trust agreements.

9.      Further, even if the ELPs were to be permitted to come forward more than a decade later to fundamentally rewrite the claims-allowance process mandated under the Plan, they still would not have a credible path to a successful litigation outcome.

10.     Finally, even if the ELPs could overcome these obstacles, they still would not be entitled to a distribution from the AAT because of the minimum distribution threshold in the AAT Agreement.

11.     On the basis of the Fourth Proposed Settlement, the ELPs now urge this Court to hold up the AAT's distribution into the far distant and unspecified future, so that they can supposedly make good on a threat to pursue expensive, time-consuming and meritless litigation against the AAT related to proposed proofs of claim to be filed against the Old GM estate, notwithstanding the ELPs' proposed settlement of these very same disputes with the GUC Trust.  The ELPs' request to delay the AAT Distributions for many years should be denied.

---

[3] A copy of the Fourth Proposed Settlement Agreement was filed as Exhibit A to the Motion for Entry of an Order (I) Approving the GUC Trust Administrator's Actions, (II) Approving the Settlement Agreement and the Release Agreement Pursuant to Federal Rule of Bankruptcy Procedure 9019, and (III) Authorizing the Reallocation of GUC Trust Assets, ECF Doc. No. 14691 (the "**GUC 9019 Motion**").

**A.      The ELPs Are Not Claimholders and There Is No Viable Mechanism Under the Plan for their "Disputed" Claims to Ever Become Allowed Claims**

12.      The ELPs acknowledge that they have not filed a proof of claim, and thus they are not claimholders.  ELP Response ¶ 18.  They have no current right to recover from the AAT.  In order to become eligible for a distribution from the AAT, the ELPs must become holders of an Allowed General Unsecured Claim.  AAT Agreement § 5.1(d)(v) (stating that, following payment of trust expenses, distributions are made to the DIP Lenders and the holders of Allowed General Unsecured Claims).  For a holder of a Disputed General Unsecured Claim to become an Allowed claimholder, a claim must be filed against the estate and then resolved "in accordance with the claims resolution procedures administered under the Plan."  AAT Agreement § 1.1 (ffff) ("For the avoidance of doubt, unless and until a Disputed General Unsecured Claim . . . becomes a Resolved Allowed General Unsecured Claim, the holders of such claim shall not receive any distribution from the Trust").

13.      Under the Fourth Proposed Settlement, the ELPs will be deemed to hold Disputed Claims.  Settlement Agreement ¶ 143.  However, while the GUC Trust is agreeing that the ELPs may have Disputed Claims, the settlement agreement states that "the GUC Trust shall not have any obligation to defend, object to, or otherwise respond to the Proposed Proofs of Claim, the Actions asserted thereby, or any motion related to claims or Actions against, or recoverable from, the AAT."  *Id.*  Instead, contrary to the Plan, the GUC Trust Agreement and the AAT Agreement, the parties to the Fourth Proposed Settlement have agreed among themselves that it is the AAT that "shall have standing to, or otherwise, may, assert any and all objections and defenses to the allowance and estimation" of the ELPs' late claims. *Id.* 142(a).

14.      Because the Fourth Proposed Settlement offers a mechanism for the continued litigation of the ELPs' Proposed Proofs of Claim that flatly contradicts key provisions,

and the basic architecture, of the Plan, the GUC Trust Agreement and the AAT Agreement, it is

not a workable mechanism to preserve the ELPs' purported claims against the Old GM estate.

15.     Under the Plan and the GUC Trust Agreement, the only entity with the

power to resolve disputed claims is the GUC Trust.  The governments of the United States and

Canada (the DIP Lenders) specifically funded the GUC Trust so that it had sufficient resources

to wind down Old GM's affairs and complete the claims resolution process.  As stated in the

GUC Trust Agreement, following Plan Confirmation, "objections to, and requests for estimation

of Disputed General Unsecured Claims against the Debtors may be interposed and prosecuted

only by the GUC Trust Administrator."  GUC Trust Agreement § 5.1(a); *see also* Plan § 7.1(b)

(stating that following Plan Confirmation, "the GUC Trust Administrator shall have the

exclusive right to object and/or continue prosecution of objections, to General Unsecured

Claims.").

16.     One of the two core purposes for which the GUC Trust was established

was to "resolve[e] outstanding Disputed General Unsecured Claims."  Plan § 6.2(b).  Moreover,

the GUC Trust may not dissolve until it completes its duty to resolve all Disputed General

Unsecured Claims. Plan § 6.2(o) (stating that the GUC Trust shall be dissolved "upon

completion of their duties . . . including when . . . all Disputed General Unsecured Claims have

been resolved").  Either the GUC Trust must continue to perform its claims administration

function for which it is funded, or the ELPs must accept that they have agreed to a Disputed

General Unsecured Claim for which there is no mechanism to resolve.

17.     The parties to the Fourth Proposed Settlement do not have the authority to

shift the claims administration burden to the AAT, which is not authorized or funded to litigate

disputed claims; it is authorized only to pay on claims allowed by the GUC Trust.  The

provisions in the Fourth Proposed Settlement, which strain to preserve claims against the Old

GM bankruptcy estate with respect to potential recoveries from the AAT while simultaneously

releasing those same claims against the estate with respect to any right of recovery from the

GUC Trust, are ineffectual.

18.     There is no basis for the ELPs to disregard the claims resolution procedure

in the Plan and the GUC Trust Agreement.  The ELPs could have attempted to litigate all of the

issues surrounding their proposed proofs of claim to conclusion in an effort to secure an allowed

claim in an amount to which they contend they are entitled.  Instead, under the Fourth Proposed

Settlement, they have elected to compromise those claims against the Old GM estate, in

exchange for a $48 million payment from the GUC Trust.

19.     In substance, the ELPs have resolved their dispute with the GUC Trust by

effectively agreeing to an Allowed General Unsecured Claim against the Old GM estate of

approximately $160 million (yielding a 30% payment of $48 million from the GUC Trust).  The

parties have chosen to hide this economic reality by treating the GUC Trust's proposed

settlement payment as though it were entirely unrelated to the bankruptcy claims process.  But

this is form over substance; and the reality of the settlement should not be ignored to permit the

ELPs to resolve their claim against the estate with the GUC Trust and then try to relitigate that

same claim against the estate for the sake of trying to obtain a recovery from the AAT.

20.     They cannot have it both ways.  The ELPs cannot resolve their claim

against the Old GM estate in exchange for a payment by the GUC Trust, and then seek to create

a *post hoc* and *ad hoc* mechanism that is inconsistent with the Plan and related post-confirmation

creditor trust agreements to keep litigating the same claim against the Old GM estate forever to

try to recover against the AAT.  Such a process conflicts with the Plan provisions that have been

8

in effect and followed by all stakeholders for many years and would be detrimental to Old GM's

estate and its unsecured creditors.

21.    Finally, the very justification for the GUC Trust's settlement payment is to

avoid the costs that the GUC Trust would have to incur on behalf of the Old GM estate in

litigating all of the issues surrounding the ELPs' disputed claims to completion.  Because it is the

GUC Trust's plan-mandated responsibility to litigate disputed claims to resolution (and not the

AAT's responsibility), the GUC Trust's proposed settlement payment already reflects its

compromise of the overall risk to the Old GM estate posed by the ELPs' threatened claims.  By

seeking to deputize the AAT to fight these same disputed claims in contravention of the Plan

structure, the ELPs are being provided a second, unwarranted opportunity to impose redundant

litigation costs on the estate and obtain a second undeserved payment on account of the same

disputed claims and litigation threats.

**B.**    **Any Effort by the ELPs to Seek Future Recoveries from the AAT Would
      Involve Years of Meritless Litigation and Would Undercut the Justification
      for the Fourth Proposed Settlement**

22.    Even if the ELPs succeed in persuading this Court that the claims-

resolution process set forth in the Plan and the GUC Trust Agreement, which has been relied on

by all stakeholders to adjudicate more than $32 billion in unsecured claims over a decade, should

be cast aside, the ELPs' purported claims against the estate would still be unlikely to succeed

over the coming years of costly litigation.  Further, the fact that complex, costly litigation will

continue indefinitely, even if the Fourth Proposed Settlement is approved, undercuts the central

justification for its approval.  The ELPs' litigation threats suggest that, rather than resolve

litigation against the estate, the Fourth Proposed Settlement simply promises continued litigation

of these same disputed claims.

23.     Unfortunately, even after mediation before Layn Phillips and subsequent settlement discussions among all counsel, the ELPs and the AAT have been unable to reach a mediated resolution of their dispute and remain far apart on the appropriate way to value the ELPs' threatened claim against the AAT.  Accordingly, any future right to recover from the AAT would turn on years of litigation over the ELPs' entitlement to assert a class claim, and the amount of that claim.  The threatened litigation against the AAT is groundless and the ELPs would never actually follow through on the threat because it is apparent that the ultimate value of the litigation is far less than the cost of the fight.

24.     The GUC Trust, which has been litigating these objections and defenses regarding the ELPs' filing of late claims for many years, described the litigation path forward against the ELPs as "fraught with difficult issues, both legal and factual."  GUC 9019 Motion ¶ 50.  The GUC Trust also acknowledges that some of these issues "would necessitate an enormous amount of additional fact discovery."  *See, e.g.*, *id.* ¶ 53.

25.     The difficult "threshold issues" that would need to be adjudicated include, but are not limited to whether the ELPs are entitled to assert late claims; whether the *Pioneer* factors are satisfied; whether equitable mootness bars the ELPs claims; whether the ELPs other than those whose vehicles contained an "Ignition Switch Defect" suffered a due process violation; and whether class certification for the proposed class claims is appropriate.  *See generally* GUC 9019 Motion ¶¶ 50-56.  Of course, even if all these threshold issues are overcome, the ELPs would then need to prove the amount of their claim, perhaps one of the thorniest issues of all.

26.     It is undisputed that Judge Furman's summary judgment decision, which rejected the ELPs' damage calculation, has significantly weakened the ELPs' claims, including

their ability to certify a class absent a viable damage methodology. *See, e.g.*, New GM Response ¶ 3 ("Plaintiffs face nearly insurmountable obstacles in light of Judge Furman's August 2019 summary judgment decision"). If the proposed settlement goes forward, the appeal from Judge Furman's ruling will be terminated and that decision will remain the final word on damages.

27.    Moreover, even after adjudication of each of the "threshold issues" (and assuming the ELPs prevail on each issue), there would be an additional phase of litigation involving "a time-consuming and expensive claims allowance process to determine which of the Plaintiffs actually hold a valid claim." GUC 9019 Motion ¶ 57.

28.    The reality, as recognized by the GUC Trust and New GM, is that the ELPs have countless hurdles and an extensive litigation path to pursue claims against the Old GM estate for recovery from the AAT—and, even after the substantial effort that would be required, are unlikely to succeed. *See id.* ¶ 66 ("the GUC Trust has strong litigation defenses, and believes it would be highly likely to succeed"); *see also* New GM Reply ¶ 3 ("New GM (and the GUC Trust) agrees that Plaintiffs' claims lack merit and that Plaintiffs face nearly insurmountable obstacles in light of Judge Furman's August 2019 summary judgment decision.").

29.    In addition, the primary basis upon which the GUC Trust asks this Court to approve the Fourth Proposed Settlement is that it "will resolve the contentious litigation and disputes with economic loss plaintiffs that have sought to assert claims against the GUC Trust and which has been ongoing in the Bankruptcy Court for many years." GUC 9019 Motion ¶ 8; *see also id.* ¶ 23 (stating that the Fourth Proposed Settlement "truly represents a resolution of all outstanding issues that the GUC Trust, Plaintiffs and New GM have fought over for the last six years"). According to the GUC Trust, "[i]n the absence of a settlement, there is a high likelihood

11

of even more expensive, protracted, and contentious litigation that will consume significant estate funds and expose the estate to risk and uncertainty." *Id.* ¶ 58.

30.    However, if the ELPs pursue their "claims" against the AAT, far from avoiding the consumption of "significant estate funds," the Fourth Proposed Settlement merely seeks to replace the GUC Trust with the AAT and proceed with the "expensive, protracted, and contentious litigation." The funds for such litigation will necessarily come out of the funds that the AAT is seeking to distribute to Old GM's unsecured creditors. Thus, the provisions of the Fourth Proposed Settlement that seek to preserve the ELPs' claims against the AAT significantly undercut the basis for the Fourth Proposed Settlement because there will be no litigation avoided and no estate or Court resources preserved as a result of the settlement.

**C.    Even if, After Years of Litigation, the ELPs' Disputed Claim is Resolved in Their Favor, They Would Still Have No Right to Recover from the AAT**

31.    Even if the ELPs' claims were not substantively meritless, the AAT Agreement's $25 distribution threshold would still prevent the ELPs from having any entitlement to a distribution from the AAT, even on a classwide basis.

32.    Assuming that the Fourth Proposed Settlement is approved, Judge Furman's summary judgment opinion will be the final word on the calculation of the ELPs' economic loss. The ELPs recognize that absent reversal of Judge Furman's decision on appeal, or the ability to present "an alternative damages model," the ELPs will not have damages in an amount sufficient to meet the $25 threshold and would thus not be entitled to a distribution from the AAT. ELP Response ¶ 25.

33.    The ELPs and New GM resist this conclusion by pointing to Section 5.11 of the Plan, which provides that "[i]f a class proof of claim is Allowed, it shall be treated as a single Claim for purposes of Article V of this Plan." That the ELPs may be able to proceed via a

single class claim for purposes of the Plan, however, does not necessarily confer upon them a substantive right to a recovery from the AAT.  Further, even if the District Court approves the ELPs as a settlement class in the litigation brought against New GM, that does not mean that the ELPs may seek recovery from the AAT by litigating their disputed claims as class claims against the Old GM estate in the bankruptcy case.  In fact, any attempt by the ELPs to use Rule 23 to obtain as a class what no individual ELP could hope to obtain on his or her own would operate to "enlarge" the ELPs' substantive rights, in violation of the Rules Enabling Act.  *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 423 (2010) (Stevens, J., concurring).

34.     In response, the ELPs and New GM have argued that "there are no substantive rights at issue here," and that section 5.6 of the AAT Agreement, which contains the $25 distribution threshold, is a mere "administrative provision that avoids the costs and administrative burdens of requiring the AAT to send *de minimis* distributions to its beneficiaries."  New GM Response ¶ 24; *see also* ELP Response ¶ 26.  This is incorrect. Because it determines whether a beneficiary of the AAT will get any distribution at all—and, therefore, any substantive relief on his or her claim—the AAT Agreement's $25 distribution threshold is a substantive provision, not a procedural one.  Under *Shady Grove*, therefore, any attempt to use Rule 23 to get around the $25 distribution threshold would constitute a violation of the Rules Enabling Act.

35.     In *Shady Grove*, the Supreme Court was asked to determine whether New York's CPLR § 901(b), which precludes a suit to recover a "penalty" from proceeding as a class action, applies to diversity cases brought as class actions in federal court.  The Court determined that the question should turn on "the nature of the state law that is being displaced by a federal rule," and more specifically, "whether the state law actually is part of a State's framework of

substantive rights or remedies." *Shady* Grove, 559 U.S. at 419 (Stevens, J., concurring).[4]  Thus,

CPLR § 901(b) had to give way to Rule 23 because it "expressly and unambiguously applies not

only to claims based on New York law but also to claims based on federal law or the law of any

other State," which meant that it was a procedural rule, rather than "a rule that, though

procedural in form, serves the function of defining New York's rights or remedies." *Id.* at 432.

        36.      Here, as noted above, the AAT Agreement's $25 distribution threshold is

substantive, not procedural—it establishes whether a holder of an allowed claim will get *any*

*distribution at all*.  Although Section 5.6 does require the Trust Administrator, if it receives a

claim that fails to meet the $25 threshold, to "carry the entitlement" of such holder . . . on its

books and records," "aggregate such amount with any subsequent amount to which such holder

shall become entitled," and "make payment of such amount to such holder at such time as the

amounts due such holder in the aggregate shall equal $25 or more," Section 5.6 also provides

that if a sub-$25 distribution remains owing to a claimholder on "the final Distribution Date," the

Trust Administrator must make a *cy pres* distribution of such funds.  *See* AAT Agreement § 5.6

(providing that "if any such amount shall be owing to a holder of an Allowed General Unsecured

Claim or Unit as of the date determined by the Trust Administrator to be the final Distribution

Date, such amount shall be disposed of as provided in the final sentence of Section 2.6(c)"); *id.*

§ 2.6(c) (requiring the Trust Administrator, if "the remaining GUC Trust Supplemental Cash is

less than $100,000," to "request an order from the Bankruptcy Court authorizing the Trust

Administrator to distribute any such remaining GUC Trust Supplemental Cash to such an

---

[4] Justice Stevens' concurring opinion in *Shady Grove* "controls because it provides the 'narrowest grounds' or the 'common denominator' of the majority position." *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 60 (E.D.N.Y. 2017); *accord Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 443 (S.D.N.Y. 2016) ("Most courts consider Justice Stevens' concurrence in *Shady Grove* to be the controlling opinion; thus, the Court looks to that opinion for guidance.") (internal citation omitted).

organization [*i.e.*, "an organization described in Section 501(c)(3) of the Tax Code and exempt

from U.S. federal income tax under section 501(a) of the Tax Code that is unrelated to the

Debtors, the Trust, any Trust Administrator Parties or any Trust Monitor Parties"], or authorizing

such other disposition as recommended by the Trust Administrator and approved by the

Bankruptcy Court").

37.    Under *Shady Grove*, the distribution threshold is thus "so intertwined with

a state right or remedy" (*i.e.*, a claim holder's state-law right to a distribution from the AAT) that

using Rule 23 to aggregate the ELPs' claims and overcome the threshold would serve to

"enlarge" each class member's "substantive rights."  It therefore qualifies as a "supplemental

right" whose abridgement, enlargement, or modification would violate the Rules Enabling Act.

*See* 28 U.S.C. § 2072(b) (forbidding any interpretation of the Federal Rules of Civil Procedure

that would "abridge, enlarge or modify any substantive right"); *Shady Grove*, 559 U.S. at 423

(Stevens, J., concurring) (under the Rules Enabling Act, "[a] federal rule cannot govern" where it

would displace a state-law provision that is "procedural in the ordinary use of the term but is so

intertwined with a state right or remedy that it functions to define the scope of the state-created

right").

## III.    NEW GM LACKS STANDING TO OBJECT

38.    Aside from the ELPs, the only other objection to the AAT Distribution

Motion was filed by New GM, which lacks standing to object.  New GM will suffer no injury if

this Court approves the AAT Distribution Motion because it will never be entitled to any

distributions from the AAT and has no economic stake at all in the outcome of this motion.  New

GM's vague assertion that it "has a substantial interest in ensuring that Plaintiffs, to the extent

they have valid claims, receive the maximum possible recovery in these chapter 11 cases,

including from the AAT" does not suffice to confer standing for New GM to "police" the claims

recovery process of the Old GM estate.  New GM Response ¶ 13.  New GM's statement is particularly dubious since it conceded in its Response that it agrees with the GUC Trust "that Plaintiffs' claims lack merit and that Plaintiffs face nearly insurmountable obstacles" in pursuing their alleged claims.  *Id.* ¶ 3.

39.    Under the judge-made prudential standing doctrine, litigants are barred "from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves."  *In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018) (internal citation and quotation marks omitted).  Nor can New GM demonstrate constitutional standing, which requires a showing of "an invasion of a legally protected interest that is concrete and particularized and actual or imminent."  *In re Motors Liquidation Co.*, 580 B.R. at 341 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)) (internal quotation marks and citation omitted).  The ELPs have not assigned their claims against the AAT to New GM, and thus New GM has no basis to make arguments on their behalf in connection with this motion.

40.    In arguing to the contrary, New GM asserts that it has successfully obtained party-in-interest standing under section 1190(b) of the Code by entering into the Fourth Proposed Settlement under which any recovery that the ELPs obtain from the AAT will be "split equally" between the ELPs and New GM.  *See* New GM Response ¶ 14.  By virtue of this arrangement, New GM claims to have acquired what it calls a "direct financial stake in ensuring that [the ELPs], to the extent they hold valid claims, may recover from the AAT."  *Id.* New GM's contrived claim to standing only serves to highlight the baseless threats that are being made against the AAT for the sake of extracting hold-up value.  In essence, New GM is threatening to join the ELPs in waging war against the AAT for the sake of New GM's potential 50% interest in the amounts recovered by the ELPs from the AAT.  As set forth below in Section

IV, the logic of the current settlement demonstrates that New GM's likely 50% stake would be approximately $250,000.  In any event, the fact that New GM has cut a deal with the ELPs to share in recoveries from a litigation that New GM itself has described for many years as meritless does not confer standing on New GM.  *See In re Motors Liquidation Co*., 580 B.R. at 340.  Notwithstanding its economic deal with the ELPs, New GM is not a potential plaintiff and has no right to assert the ELPs' claims on their behalf.

## IV.    IF THE COURT REQUIRES THE AAT TO ESTABLISH A RESERVE FOR THE ELPs AS A CONDITION OF PROCEEDING WITH ITS DISTRIBUTION PLAN, THE AMOUNT OF THE RESERVE SHOULD BE $500,000

41.    The ELPs' contention that they intend to vigorously litigate against the estate for the sake of seeking recovery from the AAT, even after settling the very same disputes with the GUC Trust, shows disregard for the interests of unsecured creditors and is out of proportion to the value at stake for them.

42.    To put this into perspective for the Court, the economics of the GUC Trust's $48 million settlement payment are consistent with an Allowed General Unsecured Claim against the Old GM estate of approximately $160 million (creditor recoveries from the GUC Trust are approximately 30 cents for each dollar of allowed claim – 30%).  With an allowed claim in that amount, the payment on account of their claim from the AAT would be approximately $500,000, assuming *arguendo* that the ELPs could overcome the $25 distribution threshold issue discussed above (creditor recoveries from the AAT are approximately $3 dollars for every thousand dollars of allowed claim – 0.3%).

43.    The Fourth Proposed Settlement Agreement ties itself in knots in an effort to avoid labeling the ELPs' claim as an "allowed" claim in a transparent effort by the ELPs to preserve their claim against the Old GM estate and seek recovery from the AAT. Notwithstanding the obfuscating terms used in the Fourth Proposed Settlement, in substance, the

17

GUC Trust is paying $48 million to settle the ELPs' claim against the Old GM bankruptcy

estate.  That is the heart of the matter from the point of view of the Old GM bankruptcy estate.

44.    By choosing not to call the ELPs' claim an "allowed" claim in the Fourth

Proposed Settlement, the parties cannot mask the fundamental nature of their agreement: a

payment by the GUC Trust to settle a claim asserted by the ELPs.  It is irrelevant that the parties

characterize the ELPs' claim as "disputed" and not "allowed" in the Fourth Proposed Settlement

because the payment amount by the GUC Trust still implies an appropriate value for the claim.

As recognized by the GUC Trust, when determining whether to approve the Fourth Proposed

Settlement, this "Court must determine whether the settlement is fair and equitable, reasonable,

and in the best interests of the estate."  GUC 9019 Motion ¶ 43.  A payment to the ELPs out of

proportion to their potential claim amount would be unprincipled, would not meet this standard,

and would be detrimental to the estate.

45.    The AAT Agreement requires that if there are Disputed General

Unsecured Claims (as that term is defined in the Plan) at the time of the initial AAT distribution,

then the AAT Trust Administrator is required to retain a reserve of the proceeds that would be

distributable to the holders of Disputed General Unsecured Claims if such claims were to be

allowed.  AAT Agreement § 5.5(a); *see also id.* § 1.1(kk).

46.    Even though there will not be a determination as to whether the Fourth

Proposed Settlement reaches its final effective date—and thus whether the ELPs will ever obtain

Disputed General Unsecured Claims—for more than a year, should the Court hold that the AAT

is required to reserve some amount until that time, requiring the AAT to reserve $500,000—the

amount the AAT would pay on account of a $160 million allowed claim—is sufficient based on

the economics of the agreement reached between the GUC Trust and the ELPs in the Fourth Proposed Settlement.

## **CONCLUSION**

WHEREFORE, the AAT respectfully requests that the Court enter an order: (i) approving the AAT's plan for distributing proceeds to its beneficiaries; (ii) approving the Notice Form; (iii) authorizing the AAT to take all other actions necessary or appropriate to effectuate the distribution to its beneficiaries; (iv) overruling the objections asserted by New GM and the Economic Loss Plaintiffs; and (v) granting such other and further relief as the Court deems necessary.

Dated:  New York, New York
        April 15, 2020

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

/s/ Eric B. Fisher
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 510-7008

*Attorneys for the Motors Liquidation Company Avoidance Action Trust*