**BINDER & SCHWARTZ LLP**
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 510-7008

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                        Debtors.
-----------------------------------------------------------------------x

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

**MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION**
**TRUST'S OBJECTION TO THE MOTION OF THE GUC TRUST**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ........................................................................................................................... 4

    I.    THE DIFFERENTIATED ROLES OF THE GUC TRUST AND THE AAT .............. 4

    II.    RELEVANT PROVISIONS IN THE SETTLEMENT AGREEMENT ....................... 5

OBJECTION .................................................................................................................................. 7

    I.    THE GUC TRUST SHOULD NOT BE AUTHORIZED TO ENTER INTO THE SETTLEMENT AGREEMENT BECAUSE THE SETTLEMENT IS NOT FAIR AND EQUITABLE TO THE ESTATE'S CREDITORS ............................................ 7

        A.    The Settlement Agreement Does Not Resolve the Plaintiffs' Claims Against the Old GM Bankruptcy Estate ................................................................................. 9

        B.    The Proposed Settlement Violates the Plan, the GUC Trust Agreement and the AAT Agreement ............................................................................................... 11

        C.    The Proposed Settlement Is Not Fair and Equitable ................................................ 16

CONCLUSION ............................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ditech Holding Corp.*,
  606 B.R. 544 (Bankr. S.D.N.Y. 2019) ............................................................................... 9, 17

*In re Drexel Burnham Lambert Grp.*,
  995 F.2d 1138 (2d Cir. 1993) ................................................................................................ 9

*In re Masters Mates & Pilots Pension Plan & IRAP Litig.*,
  957 F.2d 1020 (2d Cir. 1992) ................................................................................................ 9

*In re Miami Metals I, Inc.*,
  603 B.R. 531 (Bankr. S.D.N.Y. 2019) ................................................................................... 8

*In re Oakhurst Lodge, Inc.*,
  582 B.R. 784 (Bankr. E.D. Cal. 2018) ................................................................................. 16

*In re Rickel & Assocs., Inc.*,
  260 B.R. 673 (Bankr. S.D.N.Y. 2001) ............................................................................ 16, 17

*In re U.S. Brass Corp.*,
  255 B.R. 189 (Bankr. E.D. Tex. 2000) ................................................................................ 17

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
  478 F.3d 452 (2d Cir. 2007) .................................................................................................. 8

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ............................................................................................................... 8

*Rosenstein & Hitzeman, AAPLC v. Eliminator Custom Boats, Inc. (In re Eliminator Custom Boats, Inc.)*,
  No. BAP CC-19-1003-KuFL, 2019 WL 4733525 (B.A.P. 9th Cir. Sept. 23, 2019) ............. 16

*Stanwich Fin. Servs. Corp. v. Pardee (In re Stanwich Fin. Servs. Corp.)*,
  377 B.R. 432 (Bankr. D. Conn. 2007) ................................................................................... 9

ii

TO:   **THE HONORABLE MARTIN GLENN**
      **UNITED STATES BANKRUPTCY JUDGE**

The Motors Liquidation Company Avoidance Action Trust (the "**AAT**") submits this objection to the motion of the Motors Liquidation Company GUC Trust (the "**GUC Trust**") for entry of an order approving a settlement agreement among a putative class of economic loss plaintiffs (the "**Plaintiffs**"), the GUC Trust and New GM (the "**Settlement Agreement**"), approving certain actions to be undertaken by the GUC Trust Administrator in connection therewith, and authorizing the reallocation of GUC Trust Assets, Bankr. Dkt. No. 14691 (the "**GUC 9019 Motion**").[1]

## PRELIMINARY STATEMENT

1.  The GUC Trust should not be authorized to enter into the Settlement Agreement and the settlement should not be approved because (i) the proposed settlement does not resolve the litigation against the Old GM bankruptcy estate; (ii) the proposed settlement violates the Debtors' Second Amended Joint Chapter 11 Plan (as confirmed, the "**Plan**"), the Second Amended and Restated Motors Liquidation Company GUC Trust Agreement (the "**GUC Trust Agreement**") and the Fourth Amended and Restated Motors Liquidation Company Avoidance Action Trust Agreement (Bankr. Dkt. No. 14443) (the "**AAT Agreement**"); and (iii) the proposed settlement is not fair and equitable to the unsecured creditors of the Old GM bankruptcy estate.

2.  First, the GUC Trust's entry into the Settlement Agreement does not meet the standard for Bankruptcy Court approval under Rule 9019 because it fails to resolve the litigation against the Old GM bankruptcy estate. To the contrary, the Settlement Agreement

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meaning set forth in the GUC 9019 Motion. A copy of the Settlement Motion was attached to the GUC 9019 Motion as Exhibit A.

1

seeks to ensure that the Plaintiffs have the ability to continue to litigate their purported claims against the Old GM estate into the distant and unspecified future, only now the litigation will also be fomented by New GM, which has acquired a 50% interest in the very same litigation that it has described for many years (and continues to describe) as utterly lacking in merit. Thus, from the point of view of the Old GM bankruptcy estate, the Settlement Agreement should not be approved because it accomplishes nothing, apart from allowing a well-resourced group of beneficiaries that have acquired concentrated positions in GUC Trust units to receive large distributions from the GUC Trust sooner than later.

3. Second, in its contorted attempt to preserve the Plaintiffs' litigation claims against the Old GM bankruptcy estate but make those claims recoverable only against the AAT, the Settlement Agreement flouts the Plan, the GUC Trust Agreement and the AAT Agreement. In particular, the Settlement Agreement purports to allow the Plaintiffs to litigate their claims against the Old GM estate, while simultaneously relieving the GUC Trust of its plan-mandated duty to litigate and resolve disputed claims and placing that responsibility on the AAT. The GUC Trust's claims-resolution responsibilities are set forth in the Plan and reflected in the GUC Trust Agreement, and the GUC Trust was funded with U.S. and Canadian government money under the Plan and wind-down budget to carry out those duties to their completion. To the contrary, the AAT was not funded with sufficient resources to undertake a claims-resolution role, and the AAT Agreement makes clear that the AAT does not have any claims-resolution powers, and that it must make payments to unsecured creditor beneficiaries solely on the basis of claims that are allowed by the GUC Trust.

4. Thus, in fact, the Settlement Agreement seeks to do more than authorize a payment from the GUC Trust; it asks this Court to provide affirmative relief in the form of

2

requiring the AAT to undertake the administrative responsibility of resolving disputed claims. But the GUC Trust has provided no basis or legal support for such affirmative relief. Moreover, such request is particularly inappropriate in light of the fact that the GUC Trust seeks to retain for its beneficiaries the benefit of the funds the Government previously provided for its claims administrative duties. Accordingly, the Settlement Agreement's mechanism for preserving the Plaintiffs' claims against the Old GM estate cannot be approved because it violates the Plan, the GUC Trust Agreement and the AAT Agreement.

5. Third, having failed to acquire an allowed claim through their litigation and settlement efforts with the GUC Trust, the Settlement Agreement in essence gives the Plaintiffs a second opportunity to secure an allowed claim by litigating these same issues against the AAT. Such an approach is contrary to the Plan, the GUC Trust Agreement, and the AAT Agreement.

6. Finally, the Settlement Agreement should not be approved because it favors a sophisticated group of creditors who have accumulated large positions in units issued by the GUC Trust at the expense of the original allowed unsecured creditors of the Old GM bankruptcy estate who would stand to benefit from the AAT's proposed distribution. Under the Settlement Agreement, those original unsecured creditors, unlike the beneficiaries of the GUC Trust, could be forced to wait for years while the Plaintiffs continue to prosecute their claims against the Old GM estate and eat into creditor recoveries by requiring the estate to continue to expend time and money in defending against those claims.

7. For all of these reasons, the GUC Trust should not be authorized to enter into the Settlement Agreement.

## BACKGROUND[2]

### I. THE DIFFERENTIATED ROLES OF THE GUC TRUST AND THE AAT

8. Pursuant to the Plan, the GUC Trust and the AAT were created as separate Trusts, with distinct roles in managing the liquidation of the Old GM estate. *Compare* Plan § 6.2 (addressing the creation of the GUC Trust) *with* § 6.5 (addressing the creation of the AAT).

9. The GUC Trust was to be responsible for resolving claims, distributing the New GM Securities to unsecured creditors with allowed claims, and winding down the affairs of the Old GM estate. Under the Plan and the GUC Trust Agreement, the GUC Trust is the only entity with the power to resolve disputed claims. The governments of the United States and Canada (the DIP Lenders) specifically funded the GUC Trust so that it had sufficient resources to wind down Old GM's affairs and complete the claims resolution process. As stated in the GUC Trust Agreement, following confirmation of the Plan, "objections to, and requests for estimation of Disputed General Unsecured Claims against the Debtors may be interposed and prosecuted only by the GUC Trust Administrator." GUC Trust Agreement § 5.1(a); *see also* Plan § 7.1(b) (stating that following confirmation of the Plan, "the GUC Trust Administrator shall have the exclusive right to object and/or continue prosecution of objections, to General Unsecured Claims."). One of the two core purposes for which the GUC Trust was established was to "resolve[e] outstanding Disputed General Unsecured Claims," Plan § 6.2(b), and, accordingly, the GUC Trust cannot be dissolved until all Disputed Unsecured Claims have been resolved. *See id.* § 6.2(o) (stating that the GUC Trust shall be dissolved "upon completion of their duties . . . including when . . . all Disputed General Unsecured Claims have been resolved").

---

[2] The Court's familiarity with the lengthy history of the litigation surrounding the Plaintiffs' claims is assumed for purposes of this Objection and is not restated herein. *See generally* GUC 9019 Motion ¶¶ 15-25.

10. The AAT was created with the sole objective of prosecuting the avoidance action styled *Motors Liquidation Company Avoidance Action Trust v. JPMorgan Chase Bank, N.A., et al.*, Adv. Proc. No. 09-00504 (Bankr. S.D.N.Y.) and distributing the proceeds to its beneficiaries: the DIP Lenders and unsecured creditors with claims allowed by the GUC Trust. It is not the AAT's role to allow or disallow claims, as it plays no role in the claims resolution process. Following confirmation of the Plan, claims allowance became the exclusive domain of the GUC Trust. The AAT Agreement dictates that the AAT shall rely on the GUC Trust to provide any necessary information regarding identification of the holders of Allowed or Disputed General Unsecured Claims and the amounts of any such claims. AAT Agreement § 8.5.

11. At the time the two Trusts were created, the same population of unsecured creditors were beneficiaries of both the GUC Trust and the AAT. However, after creation of the GUC Trust, and as contemplated by the Plan, the GUC Trust sought and obtained no-action relief from the United States Securities and Exchange Commission thereby allowing the GUC Trust to change the form of its units from entries on the books and records of the GUC Trust to tradeable global certificates registered in the name of the Depository Trust Company. In June 2012, the GUC Trust units became transferable in accordance with DTC procedures.

12. After that time, the population of original unsecured creditors that are beneficiaries of the AAT became distinct from the holders of freely-tradable GUC Trust units. Thus, while the beneficiaries of the AAT remain the original unsecured creditors of Old GM, the majority of GUC Trust units are now held by a group of creditors referred to as the "Participating Unitholders."

## II. RELEVANT PROVISIONS IN THE SETTLEMENT AGREEMENT

13. Under the Settlement Agreement, the GUC Trust would pay a total of $50 million ($48 million into the settlement fund and $2 million for costs), in exchange for a release

5

of the GUC Trust with regard to the Plaintiffs' claims against the Old GM bankruptcy estate. Settlement Agreement ¶¶ 35, 113.

15. The Settlement Agreement also provides that the Plaintiffs will be deemed to hold Disputed Claims as of the final effective date of the Settlement Agreement. Settlement Agreement ¶ 143.[3] However, while the GUC Trust is permitting the filing of the Plaintiffs' late, Disputed Claims, the Settlement Agreement states that "the GUC Trust shall not have any obligation to defend, object to, or otherwise respond to the Proposed Proofs of Claim, the Actions asserted thereby, or any motion related to claims or Actions against, or recoverable from, the AAT." *Id.* Instead, contrary to the Plan, the GUC Trust Agreement and the AAT Agreement, the parties to the Settlement Agreement have agreed among themselves that it is the AAT that "shall have standing to, or otherwise, may, assert any and all objections and defenses to the allowance and estimation" of the Plaintiffs' late claims. *Id.* ¶ 142(a).

15. Because the Settlement Agreement attempts to provide a mechanism for the continued litigation of the Plaintiffs' Proposed Proofs of Claim against the AAT (albeit one that is inconsistent with the Plan, and the GUC Trust and AAT Agreements), the AAT is not a released party, and is specifically excluded from the definition of GUC Trust Released Party. Settlement Agreement ¶ 36. Further, as made explicit in paragraph 61(d) of the Settlement

---

[3] The AAT is not and has never been a party to the multidistrict litigation that has been pending before the MDL Court, nor has it been involved in the litigation in the Bankruptcy Court regarding the Plaintiffs' Late Claims Motions and the Proposed Proofs of Claim seeking class certification in the bankruptcy proceedings. The lack of participation on the part of the AAT is by design of the Plan and the GUC Trust and AAT Agreements, which make clear that the AAT is not a claims resolution entity. In the event that this Court grants the GUC 9019 Motion over the AAT's objection, the AAT reserves the right to challenge the certification of a class (or classes) to the extent that the Plaintiffs will argue that a "settlement class" may litigate claims against the AAT in the bankruptcy proceedings.

6

Agreement, the proposed settlement does not release Old GM or the Old GM Bankruptcy Estates from litigation concerning the Plaintiffs' Proposed Proofs of Claim; nor does the Settlement Agreement release Old GM or the Old GM bankruptcy estate from claims that could be asserted by New GM. *See id.* ¶ 129 (claims against or recoverable from the AAT are expressly preserved); *id.* ¶ 142 (Proposed Proofs of Claim shall be unaffected by the settlement as against the AAT, Old GM and the Old GM Bankruptcy Estates to the extent recoverable from the AAT).

16. Recognizing that there is no existing framework for the AAT to now assume the GUC Trust's responsibilities with regard to adjudicating the Proposed Proofs of Claim, the Settlement Agreement effectively attempts to use the settlement document to rewrite the fundamental plan architecture. The Plaintiffs and New GM reserve their right to disregard the Plan and the two trust agreements by expressly "reserv[ing] their rights to contest or object to" the Plan or the trust agreements that may "impair their rights to recovery from the AAT." Settlement Agreement ¶ 142(a).

## OBJECTION

I. **THE GUC TRUST SHOULD NOT BE AUTHORIZED TO ENTER INTO THE SETTLEMENT AGREEMENT BECAUSE THE SETTLEMENT IS NOT FAIR AND EQUITABLE TO THE ESTATE'S CREDITORS**

17. In considering whether to authorize the GUC Trust to enter into the Settlement Agreement, the Court "must make an informed and independent judgment as to whether [the] proposed compromise is 'fair and equitable' after apprising itself of 'all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.'" *In re Miami Metals I, Inc.*, 603 B.R. 531, 535 (Bankr. S.D.N.Y. 2019) (*quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)) (denying approval of settlement).

7

18. In order to "assess the fairness and equitability of a proposed settlement, the Second Circuit has articulated certain factors to consider, namely:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether the parties in interest support the proposed settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*In re Miami Metals,* 603 B.R. at 535 (citing *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (internal citation omitted).

19. Importantly in this instance where the AAT is a non-settling party, "when the rights of non-settling parties are implicated by the terms of a settlement, the court cannot approve it without considering the interests of those non-settling parties. *Stanwich Fin. Servs. Corp. v. Pardee (In re Stanwich Fin. Servs. Corp.)*, 377 B.R. 432, 437 (Bankr. D. Conn. 2007) (*citing In re Drexel Burnham Lambert Grp.*, 995 F.2d 1138, 1146-47 (2d Cir. 1993)); *see also In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992) ("Where the rights of one who is not a party to the settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval."). For example, in *In re Ditech Holding Corp.*, 606 B.R. 544 (Bankr. S.D.N.Y. 2019), the court denied approval of a settlement that was supported by a GUC trust when that settlement was objected to by a committee of consumer creditors not party to the settlement.

8

20. Here, the proposed settlement does not satisfy the Second Circuit's *Iridium* factors and does not meet the threshold for approval because: (a) the Settlement Agreement provides for the continuation of "complex and protracted litigation" against the Old GM estate, not its final resolution; (b) the Settlement Agreement ignores the "interests of creditors," insofar as it is to the detriment of allowed original unsecured claimholders of the Old GM estate who are beneficiaries of the AAT; and (c) the AAT is a key party in interest that does not support the settlement because it undermines the interests of the AAT's beneficiaries and conflicts with the Plan and its related governing documents.

### A. The Settlement Agreement Does Not Resolve the Plaintiffs' Claims Against the Old GM Bankruptcy Estate

21. The Proposed Settlement should not be approved under Rule 9019 as a reasonable compromise of the Plaintiffs' litigation against the Old GM bankruptcy estate because it does not actually resolve that litigation. Instead, the Settlement Agreement seeks to ensure that the litigation will continue against the estate with recoveries waived only as against the GUC Trust.

22. In support of its request to have the Bankruptcy Court approve its entry into the Settlement Agreement, the GUC Trust contends that the proposed settlement resolves the Late Claims Motion. GUC 9019 Motion ¶ 2. This contention is misleading. In fact, the proposed settlement simply shifts the burdens of litigating the Plaintiffs' claims against the Old GM bankruptcy estate from the GUC Trust to the AAT. The GUC Trust (and New GM) both acknowledge that litigation of the issue raised by the Plaintiffs' Proposed Proofs of Claim will be costly and complicated, and could drag on for a very long time. Rather than fully resolve the claims against the Old GM bankruptcy estate, the Settlement Agreement merely shifts responsibility for litigating those claims to the AAT.

9

23. The Bankruptcy Court serves an important gatekeeping function with regard to the proposed settlement, because the Bankruptcy Court's threshold approval of the GUC Trust's entry into the Settlement Agreement is a "condition precedent to the MDL Court's entry of an order preliminarily approving the Settlement Agreement." Settlement Agreement ¶ 5. In particular, it is up to the Bankruptcy Court to decide whether the Plaintiffs and New GM should be entitled to preserve all of their claims against the Old GM bankruptcy estate (subject only to the condition that they no longer seek recovery on account of those claims from the GUC Trust). The Bankruptcy Court should not authorize entry into the Settlement Agreement as currently drafted because, from the vantage point of the Old GM bankruptcy estate, it accomplishes nothing. Indeed, the proposed settlement simply ensures that all of that litigation will continue – and that now New GM will have an economic interest in the Plaintiffs' litigation because, under the settlement, New GM has acquired a 50% interest in any recoveries from the continued litigation.

24. In sum, the only benefit conferred on the Old GM estate by the Settlement Agreement is that it will allow the GUC Trust to distribute $300 million to its unit holders. The proposed settlement, however, confers no benefit on the Old GM bankruptcy estate as a whole. Under the Settlement Agreement, the Plaintiffs' messy, endless litigation will simply be foisted upon the AAT to defend, and neither the GUC Trust nor the AAT will be any closer to being able to wind down their affairs.

25. There is a straightforward fix to this fundamental problem with the Settlement Agreement. Under the proposed settlement, the GUC Trust proposes to pay $48 million towards the settlement of the Plaintiffs' potential claims against the Old GM bankruptcy estate, which, based on the GUC Trust's recovery percentage of approximately 30 cents per

dollar of allowed claim amount, implies an allowed claim amount against the estate for the Plaintiffs of approximately $160 million. An allowed claim amount of $160 million would yield a payment of approximately $480,000 for the benefit of the Plaintiffs from the AAT calculated at the AAT's recovery percentage of approximately $3 per $1,000 of allowed claim amount. Allowance of the Plaintiffs' claim in this amount would be consistent with the economic substance of the Settlement Agreement, altogether resolve the Plaintiffs' claims against the Old GM estate, put an end to all of their litigation, and finally facilitate the winding up of the Old GM bankruptcy case.

26. Accordingly, while the AAT contends that the Plaintiffs are not entitled to any allowed claim against the Old GM estate, granting the Plaintiffs an allowed claim against the estate in the amount of $160 million would be consistent with the economics of the proposed settlement, would require a payment from the AAT to the Plaintiffs that would be *pro rata* with its distributions to all other allowed unsecured claimholders, and, most importantly, would fully and finally resolve all of the Plaintiffs' litigation claims against the Old GM estate – the most important objective that the currently proposed settlement fails to realize.

27. In its current form, however, for the reasons set forth above and herein, the Settlement Agreement does not meet the threshold standard for bankruptcy court approval.

B.  **The Proposed Settlement Violates the Plan, the GUC Trust Agreement and the AAT Agreement**

28. The claims resolution mechanism set forth in the Settlement Agreement is unworkable and cannot be approved because it conflicts with the Plan, the GUC Trust Agreement and the AAT Agreement.

29. Under the Settlement Agreement, the Plaintiffs will be deemed to hold Disputed Claims. Settlement Agreement ¶ 143. However, while the GUC Trust is agreeing that

11

the Plaintiffs may have Disputed Claims, the Settlement Agreement states that "the GUC Trust shall not have any obligation to defend, object to, or otherwise respond to the Proposed Proofs of Claim, the Actions asserted thereby, or any motion related to claims or Actions against, or recoverable from, the AAT." *Id.* Instead, contrary to the Plan, the GUC Trust Agreement and the AAT Agreement, the parties to the Settlement Agreement have agreed that it is the AAT that "shall have standing to, or otherwise may, assert any and all objections and defenses to the allowance and estimation" of the Plaintiffs' late claims. *Id.* ¶ 142(a).

30. Because the Settlement Agreement offers a mechanism for the continued litigation of the Plaintiffs' Proposed Proofs of Claim that flatly contradicts key provisions, and the basic architecture, of the Plan, the GUC Trust Agreement and the AAT Agreement, it is not a workable mechanism to preserve the Plaintiffs' purported claims against the Old GM estate.

31. Under the Plan and the GUC Trust Agreement, the only entity with the power to resolve disputed claims is the GUC Trust. The governments of the United States and Canada (the DIP Lenders) specifically funded the GUC Trust so that it had sufficient resources to wind down Old GM's affairs and complete the claims resolution process. As stated in the GUC Trust Agreement, following confirmation of the Plan, "objections to, and requests for estimation of Disputed General Unsecured Claims against the Debtors may be interposed and prosecuted only by the GUC Trust Administrator." GUC Trust Agreement § 5.1(a); *see also* Plan § 7.1(b) (stating that following confirmation of the Plan, "the GUC Trust Administrator shall have the exclusive right to object and/or continue prosecution of objections, to General Unsecured Claims.").

32. One of the two core purposes for which the GUC Trust was established was to "resolve[e] outstanding Disputed General Unsecured Claims." Plan § 6.2(b); *see also id.*

12

§ 6.2(o) (stating that the GUC Trust shall be dissolved "upon completion of their duties . . . including when . . . all Disputed General Unsecured Claims have been resolved"). To the extent that the GUC Trust is permitting the Plaintiffs to file claims against the estate, classifying such claims as "disputed," but declining to litigate those claims, the Plaintiffs are left with no mechanism to resolve their claims under the claims resolution process set forth in the Plan and the GUC Trust Agreement.

33. The parties to the Settlement Agreement do not have the authority to shift the claims administration burden to the AAT, which is not authorized or funded to litigate disputed claims. The GUC Trust is asking this Court to provide affirmative relief by requiring the AAT to undertake the claims resolution responsibilities assigned to the GUC Trust under the Plan. The GUC Trust provides no legal basis for this requested relief. The provisions in the Settlement Agreement, which strain to preserve claims against the Old GM bankruptcy estate with respect to potential recoveries from the AAT while simultaneously releasing those same claims against the estate with respect to any right of recovery from the GUC Trust, are ineffectual.

34. There is no basis for the Plaintiffs to disregard the claims resolution procedure in the Plan and the GUC Trust Agreement. The Plaintiffs could have attempted to litigate all of the issues surrounding their Proposed Proofs of Claim to conclusion in an effort to secure an allowed claim in an amount to which they contend they are entitled; instead, under the Settlement Agreement, they have elected to compromise those claims against the Old GM estate, in exchange for a $48 million payment from the GUC Trust without securing an allowed claim. That is their choice.

35. While in substance, the Plaintiffs have resolved their dispute with the GUC Trust by effectively agreeing to an Allowed General Unsecured Claim against the Old GM estate of approximately $160 million (yielding a 30% payment of $48 million from the GUC Trust), the parties have chosen to hide this economic reality by treating the GUC Trust's proposed settlement payment as though it were entirely unrelated to the bankruptcy claims process. But this is form over substance; and the reality of the settlement should not be ignored to permit the Plaintiffs to resolve their claim against the estate with the GUC Trust and then try to relitigate that same claim against the estate for the sake of trying to obtain a recovery from the AAT.

36. They cannot have it both ways. The Plaintiffs cannot resolve their claim against the Old GM estate in exchange for a payment by the GUC Trust, and then seek to create a *post hoc* and *ad hoc* mechanism that is inconsistent with the Plan and related post-confirmation creditor trust agreements to keep litigating the same claim against the Old GM estate forever to try to recover against the AAT. Such a process conflicts with the Plan provisions that have been in effect and followed by all stakeholders for many years and would be detrimental to Old GM's estate and its unsecured creditors.

37. Finally, the very justification for the GUC Trust's settlement payment is to avoid the costs that the GUC Trust would have to incur on behalf of the Old GM estate in litigating all of the issues surrounding the Plaintiffs' disputed claims to completion. Because it is the GUC Trust's plan-mandated responsibility to litigate disputed claims to resolution (and not the AAT's responsibility), the GUC Trust's proposed settlement payment already reflects its compromise of the overall risk to the Old GM estate posed by the Plaintiffs' threatened claims. By seeking to deputize the AAT to fight these same disputed claims in contravention of the Plan

structure, the Plaintiffs are being provided a second, unwarranted opportunity to impose redundant litigation costs on the estate and obtain a second undeserved payment on account of the same disputed claims and litigation threats.

38. The parties to the Settlement Agreement cannot modify the Plan more than a decade after its confirmation under the guise of a settlement. "Section 1127(b) provides the sole means for modifying a confirmed plan." *In re Rickel & Assocs., Inc.*, 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001). "And modifying the confirmed plan requires adherence to procedural safeguards for all parties affected . . . and compliance with specific statutory standards." *In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 797 (Bankr. E.D. Cal. 2018); *see also* Plan § 12.9 (stating that "[u]pon reasonable notice to the Creditors' Committee, the Asbestos Claimants' Committee, and the Future Claimants' Representative, the Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law"). This limitation is even imposed on bankruptcy courts, which "cannot exercise [their] equitable powers . . . [to] modify a plan under § 105(a), and produce a result at odds with the specific provisions of § 1127(b)." *In re Rickel & Assocs.*, 260 B.R. at 678.

39. Thus, "a post-confirmation settlement that materially changes the rights and duties of the reorganized debtor, creditors, or equity security holders must be reviewed under § 1127(b)'s standards for plan modification. This is true despite the existence of alternative standards under Rule 9019 because a rule of procedure cannot override a substantive right provided for by the Bankruptcy Code when they conflict." *In re Oakhurst Lodge,* 582 B.R. at 796–97 (Bankr. E.D. Cal. 2018); *see also Rosenstein & Hitzeman, AAPLC v. Eliminator Custom Boats, Inc. (In re Eliminator Custom Boats, Inc.)*, No. BAP CC-19-1003-KuFL, 2019 WL

15

4733525, at *7 (B.A.P. 9th Cir. Sept. 23, 2019) ("Absent relief from the confirmation order or a court-approved modification, the plan continues to bind the parties and restricts a reorganized debtor from settling disputes in a way that impacts the distribution provisions of the plan."). "[M]odification of a substantially consummated plan will not be allowed regardless of the attempt to clothe the motion as a settlement or clarification of an order." *In re Rickel & Assocs.*, 260 B.R. at 677 (Bankr. S.D.N.Y. 2001) (citing *In re U.S. Brass Corp.*, 255 B.R. 189, 194 (Bankr. E.D. Tex. 2000)).

### C. The Proposed Settlement Is Not Fair and Equitable

40. The Settlement Agreement should not be approved because it is not "fair and equitable, and in the best interests of the estate." *In re Ditech Holding Corp.*, 606 B.R. at 623 (denying Debtors' request to enter into settlement agreement because it was not "fair and equitable" to the estate in cutting off certain creditor claims that were not involved in the settlement).

41. The Settlement Agreement would result in a distribution to beneficiaries of the GUC Trust while distributions to unsecured creditor beneficiaries are at risk of being delayed for years pending the Plaintiffs' continued litigation of their purported claims against the Old GM bankruptcy estate.

42. As explained above, the unsecured creditor beneficiaries of the AAT are the original allowed unsecured creditors with claims against the Old GM bankruptcy estate. In effect, the proposed settlement would require those creditors to bear all of the future expenses of continued litigation with the Plaintiffs concerning their Disputed Claims, while the GUC Trust steps away from its plan-mandated claims resolution function and distributes $300 million to its creditors, including the many creditors that have acquired large positions in the tradable units issued by the GUC Trust and that were instrumental to the GUC Trust's entry into the Settlement

16

Pg 20 of 20

Agreement. As already set forth above, a fair and equitable settlement would include a *pro rata* payment of $480,000 to the Plaintiffs from the AAT that would then fully and finally resolve all of the Plaintiffs' claims against the Old GM estate, ensuring distributions to GUC Trust unit holders as well as the original allowed unsecured creditors who are beneficiaries of the AAT. The current Settlement Agreement is only a partial settlement with the Plaintiffs, which advantages beneficiaries of the GUC Trust at the expense of Old GM's original allowed unsecured creditors. Because it is not fair and equitable to all creditors, it should not be approved.

## CONCLUSION

WHEREFORE, the AAT respectfully requests that the Bankruptcy Court (i) deny the GUC Trust's motion for authorization to enter into the Proposed Settlement and (ii) grant such other and further relief as the Court deems necessary.

Dated: New York, New York
April 16, 2020

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

/s/ Eric B. Fisher
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 510-7008

*Attorneys for the Motors Liquidation Company Avoidance Action Trust*

17