**MCDERMOTT WILL & EMERY LLP**
340 Madison Ave.
New York, New York 10173-1922
Telephone: (212) 547-5429
Facsimile: (212) 547-5444
E-mail: kgoing@mwe.com
Kristin K. Going

<u>**HEARING DATE AND TIME:**</u> **April 23, 2020**
**@ 9:30 A.M. (EDT)**
<u>**OBJECTION DEADLINE:**</u> **April 16, 2020**
**@ 4:00 P.M. (EDT)**

*Attorney for the Motors Liquidation Company*
*GUC Trust Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
**In re**                                                         :
:                  **Chapter 11 Case No.**
:
:                  **09-50026 (MG)**
**MOTORS LIQUIDATION COMPANY,** *et al.*,                         :
**f/k/a General Motors Corp.,** *et al.*                          :  **(Jointly Administered)**
:
**Debtors.**                                      :
------------------------------------------------------------------x

<u>**REPLY OF GUC TRUST TO OBJECTIONS BY (A) MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST AND (B) ADDITIONAL IGNITION SWITCH PRE-CLOSING ACCIDENT PLAINTIFFS TO MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE GUC TRUST ADMINISTRATOR'S ACTIONS; (II) APPROVING THE SETTLEMENT AGREEMENT AND THE RELEASE AGREEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019; AND (III) AUTHORIZING THE REALLOCATION OF GUC TRUST ASSETS**</u>

The Motors Liquidation Company GUC Trust (the "<u>GUC Trust</u>") submits this reply (the "<u>Reply</u>") to the objections (the "<u>Objections</u>")[1] filed by the Motors Liquidation Company Avoidance Action Trust (the "<u>AAT</u>") and the Additional Ignition Switch Pre-Closing Accident Plaintiffs objecting to the *Motion for Entry of an Order (I) Approving the GUC Trust Administrator's Actions; (II) Approving the Settlement Agreement and the Release Agreement Pursuant to Federal Rule of Bankruptcy Procedure 9019; and (III) Authorizing the*

---

[1]     *Motors Liquidation Company Avoidance Action Trust's Objection to the Motion of the GUC Trust Pursuant to Federal Rule of Bankruptcy Procedure 9019* [ECF No. 14708] and *Additional Ignition Switch Pre-Closing Accident Plaintiffs' Objection to the GUC Trust's 9019 Motion for Approval of Settlement With Economic Loss Plaintiffs* [ECF No. 14709].

*Reallocation of GUC Trust Assets* [ECF No. 14691] (the "Settlement Approval Motion"). In further support of the Settlement Approval Motion, the GUC Trust Administrator respectfully represents as follows:[2]

### I. The AAT's Objection Should Be Overruled

1. By its Objection, the AAT requests that the Court deny the Settlement Approval Motion. The principle bases for the AAT's Objection are that the Settlement does not fully resolve litigation against the Old GM Bankruptcy Estate and that, under the Plan, the AAT is not responsible for resolving disputed claims. This Objection should be overruled.

2. Under the terms of the Plan, the Old GM Bankruptcy Estate was divided among four separate trusts: the GUC Trust, Asbestos Trust, Environmental Response Trust, and AAT. Specifically section 10.1 of the Plan delineates how property of the estate was vested in each of these trusts. The Plan also provides that each trust has an obligation to act in the best interests of its respective trust beneficiaries, not the interests of the Old GM Bankruptcy Estate as whole.

3. The AAT's argument would prohibit the GUC Trust from entering into any settlement unless it benefitted not only the GUC Trust, but also the Asbestos Trust, Environmental Response Trust, and the Avoidance Action Trust. However, that is not how the Plan works. Rather, the Plan carved up the Old GM Bankruptcy Estate and made the various trusts responsible for certain actions and made each trust duty bound to represent specific parties in interest.

4. Specifically relevant here, section 6.2(f) of the Plan provides "In all circumstances the GUC Trust Administrator shall act in the best interests of all beneficiaries of the GUC Trust." Section F of the GUC Trust Agreement lists the beneficiaries of the GUC

---

[2] Capitalized terms not defined in this Reply shall have the meaning ascribed to them in the Settlement Approval Motion. Any description herein of the terms of the Plan or the GUC Trust Agreement is qualified in its entirety by the terms of the Plan or the GUC Trust Agreement, as applicable.

Trust, and they do not include the AAT nor the AAT's beneficiaries. Yet the AAT is asking this Court to deny a settlement that benefits the GUC Trust's beneficiaries because it does not also benefit the AAT. Furthermore, by insisting that the only way the GUC Trust can settle with the Economic Loss Plaintiffs is by providing them an allowed claim against the GUC Trust, the AAT is proposing a solution that would actually dilute the GUC Trust's beneficiaries future recoveries and only benefit the AAT. If the Economic Loss Plaintiffs had a claim against the GUC Trust, then they would be entitled to a pro rata share of any future GUC Trust distributions, which would dilute future recoveries to existing GUC Trust beneficiaries, but would cap the amount the AAT would be required to contribute.

5.  Litigation with the Economic Loss Plaintiffs has dragged on for many years, resulting in significant litigation costs for the GUC Trust. And contrary to the assertions by the AAT, the costs of this litigation are being shouldered solely by the GUC Trust beneficiaries.[3] At stake in the litigation with the Economic Loss Plaintiffs are the remaining assets of the Old GM Bankruptcy Estate, including the assets of the GUC Trust and the AAT. As this Court is aware, the Economic Loss Plaintiffs have alleged damages in a magnitude that, if proven, would exhaust the remaining assets of the GUC Trust and massively dilute the recoveries to AAT beneficiaries. In the event that the Economic Loss Plaintiffs were victorious, the beneficiaries of the GUC Trust would not receive any further distributions and the beneficiaries of the AAT would have their potential recovery diminished to the point where very few AAT beneficiaries would ever receive a distribution.

6.  The GUC Trust, as the party responsible for resolving claims under the Plan, is the proper party to determine whether, and on what terms, to settle these claims. In a valid

---

[3] While the DIP Lenders provided some funding for the administrative expenses associated with the GUC Trust, the funding was based on an estimated three-year life of the GUC Trust. The funding for claims resolution was completely depleted at the time the ignition switch litigation began in 2014.

exercise of its power and business judgment, the GUC Trust determined that the Settlement Agreement represented the best possible resolution of this litigation.

7. As this Court is also aware, as settlement discussions were ongoing between the GUC Trust, New GM, and the Economic Loss Plaintiffs, the AAT—although invited—elected not to participate in such discussions.[4] Rather, the AAT elected to chart its own course and sought to make a final distribution of its assets.[5] The Economic Loss Plaintiffs objected to the AAT's planned distribution because, among other reasons, the Economic Loss Plaintiffs believed that they had a claim against the AAT's assets, as part of the Old GM Bankruptcy Estate.

8. As the parties got closer to reaching a global settlement, New GM and the Economic Loss Plaintiffs attempted again to have the AAT join the settlement negotiations. Indeed, before the Settlement Agreement was reached, the AAT was instructed by this Court to attend mediation with New GM and the Economic Loss Plaintiffs. *See* 2/5/20 Hr'g Tr. 11:16-17, 13:18-19, 16:14-16 [ECF No. 14675]. However, despite their best efforts, the Parties were unable to reach a global settlement agreement whereby the AAT would settle the claims New GM and the Economic Loss Plaintiffs have asserted against the AAT.

9. In light of the pending objections by the Economic Loss Plaintiffs and New GM against the AAT's distribution motion, the GUC Trust agreed to ensure that its entering into the Settlement Agreement did not impact the status quo vis-à-vis the AAT. As a result, the Settlement Agreement preserves the Economic Loss Plaintiffs' right to bring claims against the AAT while also preserving the right of the AAT to object to such claims.

---

[4]     *See* 12/10/19 Hr'g Tr. 67:21-25 [ECF No. 14646].

[5]     *See Motion of Motors Liquidation Company Avoidance Action Trust for Entry of an Order Pursuant to Sections 105 and 1142 of the Bankruptcy Code and Bankruptcy Rule 3020 Approving the Distribution Plan to the Avoidance Action Trust's Beneficiaries* [ECF No. 14552].

10. After refusing to participate in settlement discussions, the AAT now wishes to play spoiler and scuttle the parties' hard-fought settlement. In a particularly audacious claim, the AAT—as a holder of assets of the Old GM Bankruptcy Estate—claims that it was the GUC Trust's responsibility to secure the AAT a full release using the assets of the GUC Trust without the AAT making any contribution whatsoever to the settlement. Frankly, the Plan never contemplated that the AAT would be able to exercise a veto right over the claims resolution powers of the GUC Trust, but that is exactly what the AAT seeks here. To allow the AAT to do so would be profoundly inequitable.

11. Rather, the issues raised by the AAT can be addressed separate and apart from the Settlement Agreement; either through the AAT's distribution motion or in separate motion practice concerning whether the Economic Loss Plaintiffs have any claim whatsoever against the assets of the AAT. The Settlement Agreement preserves these alternative avenues of resolving the differences between the Economic Loss Plaintiffs and the AAT while maximizing the benefits for the remaining beneficiaries of the Old GM Bankruptcy Estate.

## II.    The Andrews Movants' Objection Should Be Overruled

12. After the objection deadline passed, a group calling themselves the "Additional Ignition Switch Pre-Closing Accident Plaintiffs" (the "Andrews Movants") also filed an objection to the Settlement Approval Motion. These twelve individuals are not Ignition Switch Pre-Closing Accident Plaintiffs as that term of art has been used for the last five years in this bankruptcy proceeding, and most importantly, only two of the twelve have sought to file late proofs of claim on account of the Delta Ignition Switch Recall (NHTSA Recall No. 14v047).[6]

13. The Andrews Movants are not creditors, nor are they beneficiaries of the GUC Trust. Rather, they have a pending motion to file late proofs of claim in the Old GM Bankruptcy Case—a motion that was initially filed eight years after the Bar Date and three

---

[6]    Copies of the 12 proposed proofs of claim are attached here as Exhibit A.

years after the Delta Ignition Switch Recall was announced. This motion is currently being briefed pursuant to the *Scheduling Order for Briefing Late Claims Motions* [ECF No. 14661].

14. Contrary to the Andrews Movants' assertion, their pending motion to file late claims does not need to be resolved prior to the approval of the Settlement Agreement, if for no other reason than the fact that the GUC Trust will still have in excess of $70,000,000 in GUC Trust Distributable Assets after all amounts are distributed pursuant to the Settlement Agreement, including the Excess Distribution and the $50,000,000 paid as Settlement consideration.

15. As this Court is aware, allowed claims have received approximately thirty percent in recovery, thus the GUC Trust will retain an amount sufficient to pay any newly allowed claims in excess of $233,000,000 (as allowed claims are entitled to a recovery of 30% of the estimated value of the allowed claim). That is the equivalent of an estimated amount of $19.4 million per Andrews Movant. Based on the damages alleged, the Andrews Movants are not prejudiced by the Settlement Agreement because the GUC Trust has more than enough funds to pay any newly allowed claims.

16. The Andrews Movants would have to be successful not only in having their late claims allowed to be filed, which is highly unlikely given their specific facts and circumstances, but would then have to prove damages totaling hundreds of millions of dollars. Furthermore, despite the fact that hundreds of individuals alleging personal injury and wrongful death resulting from the Ignition Switch and Non-Ignition Switch recalls initially sought to file late claims against the GUC Trust, to date, not a single late claim has been allowed to be filed, and many of those individuals had much stronger fact patterns than the Andrews Movants.

**CONCLUSION**

WHEREFORE, the GUC Trust Administrator respectfully requests that the Court overrule the Objections and enter the GUC Trust Approval Order, substantially in the form attached as <u>Exhibit B</u> to the Settlement Approval Motion, (i) approving the actions to be undertaken by the GUC Trust Administrator under the terms and conditions of the Settlement Agreement; (ii) approving the Settlement Agreement and Release Agreement and authorizing the GUC Trust to enter into the Settlement Agreement and the Release Agreement; (iii) authorizing the reallocation of $50,000,000.00 of GUC Trust Assets; (iv) authorizing the $300,000,000.00 Excess Distribution to be made immediately; and (v) granting such other and further relief as is just and equitable.

Dated:  New York, New York  
        April 20, 2020

Respectfully submitted,

By:   /s/  *Kristin K. Going*  
      Kristin K. Going  
      MCDERMOTT WILL & EMERY LLP  
      340 Madison Ave.  
      New York, NY 10173-1922  
      Tel: (212) 547-5429  
      E-mail: kgoing@mwe.com

      *Attorneys for the Motors Liquidation Company GUC Trust Administrator*