Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
David Giller
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

*Counsel for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.*, | Case No. 09-50026 (MG) |
| Debtors. | (Jointly Administered) |

**OMNIBUS REPLY OF GENERAL MOTORS LLC WITH RESPECT
TO OBJECTIONS TO THE MOTION OF THE GUC TRUST PURSUANT TO
<u>FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019</u>**

## TABLE OF CONTENTS

                                                                                                    **Page**

Table of Authorities ................................................................................................ ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 4

    A.    Relevant Provisions of the Plan, Avoidance Trust Agreement and GUC
        Trust Agreement. .................................................................................... 4

    B.    The Settlement. ....................................................................................... 6

REPLY ..................................................................................................................... 8

    1.    The Settlement Is Appropriate Because It Resolves Claims Between the GUC
Trust, Economic Loss Plaintiffs and New GM .................................................... 9

    2.    The Settlement Does Not Violate the Plan, the GUC Trust Agreement or the AAT
Agreement ............................................................................................................ 12

    3.    The Settlement Does Not Effect An Impermissible Plan Modification .............. 18

    4.    The Proposed Settlement is Fair and Equitable ................................................... 19

    5.    The AAT Is Acting As The Typical Class-Action Hold-Out Objector Who Did
Not Obtain What It Wanted in Settlement Negotiations. .................................... 20

    6.    The Andrew Meyers Objection Should be Overruled. ........................................ 22

CONCLUSION ......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of America, N.A.* v. *Caulkett*,
  575 U.S. 790 (2015)……………………………………………………………………13

*In re Ames Dept. Stores, Inc.*,
  582 F.3d 422 (2d Cir. 2009)……………………………………………………………..13

*In re Boylan Int'l, Ltd.*,
  452 B.R. 43 (Bankr. S.D.N.Y. 2011) (Glenn, J.)...................................................... 18

*In re Ditech Holding Corp.*,
  606 B.R. 544 (Bankr. S.D.N.Y. 2019)................................................................ 8, 9

*In re Eliminator Custom Boats, Inc.*,
  No. BAP CC-19-1003 (KUFL), 2019 WL 4733525 (B.A.P. 9th Cir. Sept. 23, 2019)……......19

*In re Enron Corp.*,
  No. 02-CV-8489 (AKH), 2003 WL 230838, at *2–3 (S.D.N.Y. Jan. 31, 2003)………...…8, 19

*In re G.A.F. Seelig, Inc.*,
  No. 17-46968 (ESS), 2020 WL 1486785 (Bankr. E.D.N.Y. Mar. 19, 2020)…………………14

*In re Initial Pub. Offering Sec. Litig.*,
  728 F. Supp. 2d 289 (S.D.N.Y. 2010)...................................................................... 21

*In re Iridium Operating LLC*,
  478 F.3d 452, 462 (2d Cir. 2007)…………………………………………………………8

*In re Joint Eastern & Southern District Asbestos Litig.*,
  982 F.2d 721 (2d Cir. 1992), *modified on reh'g*, 993 F.2d 7 (2d Cir. 1993)........................... 18

*In re Manchester Gas Storage, Inc*,
  309 B.R. 354 (Bankr. N.D. Okla. 2004)……………………………………………………14

*In re Masters Mates & Pilots Pension Plan & IRAP Litig.*,
  957 F.2d 1020 (2d Cir. 1992)………………………………………………….........9

*In re Mechanisburg Fitness, Inc.*,
  592 B.R. 798 (Bankr. M.D. Pa. 2018)……………………………………………...14

*In re Miami Metals I, Inc.*,
  603 B.R. 531 (Bankr. S.D.N.Y. 2019)……………………………………………………9

*In re Petrobras Sec. Litig.*,
   363 F. Supp. 3d 426 (S.D.N.Y. 2019)…………………………………………...22

*In re Rickel & Assocs., Inc.*,
   260 B.R. 673, 676 (Bankr. S.D.N.Y. 2001)…………………………………………...19

*In re Roche*, 2017 WL 746232, at *1 (Bankr. M.D. Pa. Feb. 24, 2017)………………………...15

*In re Smith*, 2010 WL 5018379, at *2 (Bankr. W.D. Wash. Dec. 3, 2010)…………………13, 14

*In re Solutia, Inc.*,
   No. 03–17949 (PCB), 2006 WL 2640641 (Bankr. S.D.N.Y. Sept. 14, 2006)………………...14

*In re Stanwich Fin. Servs. Corp.*,
   377 B.R. 432 (Bankr. D. Conn. 2007)…………………………………………………9

*In re U.S. Brass Corp.*,
   255 B.R. 189, 193 (Bankr. E.D. Tex. 2000)…………………………………………..19

*In re W.T. Grant Co.*,
   699 F.2d 599 (2d Cir. 1983)……………………………………………………….8

*Nellis* v. *Shugrue*,
   165 B.R. 115 (Bankr. S.D.N.Y. 1994) …………………………………………………..8

*Oakhurst Lodge, Inc.*,
   582 B.R. 784 (Bankr. E.D. Cal. 2018)…………………………………………………..18

*Pearson* v. *Target Corp.*,
   893 F.3d 980 (7th Cir. 2018) ...............................................................................................22

*Travelers Cas. And Sur. Co. of Am.* v. *Pacific Gas and Elec. Co.*,
   549 U.S. 443 (2007)…………………………………………………………………..13

**Statutes**

11 U.S.C. § 502……………………………………………………………………3, 5, 13

11 U.S.C. § 1127 ...................................................................................................... 18

Fed. R. Civ. P. 23 ...................................................................................................... 22

**Treatises**

7 Collier on Bankruptcy ¶ 1127.03 (16th ed. 2020) ................................................... 18

**OTHER AUTHORITIES**

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623
 (2009) ........................................................................................................................ 21-22

Intro. Materials Rule 23 Subcommittee Advisory Committee On Civil Rules Min-
 Conference On Rule 23 Issues (Sept. 11, 2015) .................................................... 22

Manual for Complex Litigation, Fourth, § 21.643 ..................................................... 21

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC ("New GM") submits this omnibus reply (the "Reply") to (i) the

Motors Liquidation Company Avoidance Action Trust's (the "AAT") objection (the "Objection")[1]

to the Motors Liquidation Company GUC Trust's (the "GUC Trust") motion (the "GUC Trust

Approval Motion")[2] seeking approval of the GUC Trust's actions in furtherance of the settlement,

and entry of an order approving the Settlement Agreement and the Release Agreement, and (ii) the

Additional Ignition Switch Pre-Closing Accident Plaintiffs (the "Andrews Myers Plaintiffs")

objection (the "Andrew Meyers Objection")[3] to the GUC Trust Approval Motion.  In support of

this Reply, New GM respectfully states as follows:

## INTRODUCTION

1.      The Court should deny the AAT's opportunistic Objection to the GUC Trust

Approval Motion seeking approval of the Settlement between New GM, the GUC Trust, and the

named plaintiffs (representing a putative class of economic loss plaintiffs, the "Plaintiffs" and

together with the GUC Trust and New GM, the "Parties").  The Settlement follows years of hard-

fought litigation and months of hard-fought negotiations, and reflects a comprehensive settlement

that would resolve Plaintiffs' claims entirely in the MDL and as against the GUC Trust in the

---

[1]     *Motors Liquidation Company Avoidance Action Trust's Objection to the Motion of the GUC Trust Pursuant to Federal Rule of Bankruptcy Procedure 9019* [ECF No. 14708], filed on April 16, 2020.

[2]     *See Motion For Entry Of An Order (I) Approving The GUC Trust Administrator's Actions; (II) Approving The Settlement Agreement And The Release Agreement Pursuant To Federal Rule Of Bankruptcy Procedure 9019; And (III) Authorizing The Reallocation Of GUC Trust Assets* (the "GUC Trust Approval Motion") [ECF No. 14691], filed on Mar. 27, 2020.  Reference is made to the Settlement Agreement attached as Exhibit A to the GUC Trust Approval Motion (the "Settlement Agreement" or "Settlement") and to the Release Agreement attached as Exhibit 8 to the Settlement Agreement (the "Release Agreement").  Capitalized terms not otherwise defined herein shall have the meanings given to them in the GUC Trust Approval Motion.

[3]     *Additional Ignition Switch Pre-Closing Accident Plaintiffs' Objection to the GUC Trust's 9019 Motion for Approval of Settlement With Economic Loss Plaintiffs* [ECF No. 14709], filed on April 16, 2020.

Bankruptcy Court. The AAT—neither a party nor a beneficiary of the Settlement—should not be permitted at the last moment to scuttle a Settlement that it refused to participate in simply because the Settlement does not give the AAT a "free ride."

2.      The true purpose of the AAT's objection is to ride the coattails of this Settlement to ensure that it receives all of its benefits without making any contribution. Indeed, the AAT's argument is precisely that: once the GUC Trust settles a disputed matter, the AAT is *entitled* under the Plan to hold out until such time that it is able to declare victory by default. Under the AAT's rationale, it is powerless to object to any claim regardless of size or validity and, as such, must be viewed as one entity with the GUC Trust for settlement purposes. This symbiotic view of two independent trusts created under the Plan is not supported by the Plan, the GUC Trust Agreement, the Avoidance Trust Agreement, or case law.

3.      The AAT and GUC Trust are separate and distinct trusts, each having its own distinct set of beneficiaries, though holders of Allowed General Unsecured Claims are beneficiaries of both trusts. Critically, the test for being an AAT beneficiary is *not* whether a general unsecured creditor is also a beneficiary of the GUC Trust. Instead, the Avoidance Trust Agreement defines its beneficiaries as being those creditors with Allowed General Unsecured Claims *against the Debtors*.

4.      The AAT incorrectly claims that the Settlement is improper because "it fails to resolve the litigation against the Old GM bankruptcy estate" and "accomplishes nothing." (Obj. ¶ 2). Nothing could be further from the truth. The Settlement resolves long-standing litigation in a mutually beneficial manner for all *Parties to the Settlement*. As part of this Settlement, the Parties will provide one another broad mutual releases—including Plaintiffs' release of all claims against the GUC Trust—the Plaintiffs will receive $50 million from the GUC Trust, and the GUC

2

Trust will be permitted to distribute $300 million to its Unitholders. It is simply not the case, and the AAT cannot identify such a provision in either the Plan or the GUC Trust Agreement, that the GUC Trust is required to only enter into a settlement if every party in interest also joins the Settlement or receives the benefits of the Settlement. Such a rule has no basis in fact or law, as it would all but eliminate the potential for settlements in multi-party cases. Further, the GUC Trust has no obligation to resolve all litigation as it pertains to every trust created under the Plan—it is resolving all litigation as it relates to the GUC Trust. This is entirely appropriate because the GUC Trust's responsibility is to act for the sole benefit of the GUC Trust Beneficiaries, and not the AAT's beneficiaries.

5.      Nor does the Settlement Agreement violate the Plan, the GUC Trust Agreement, or the Avoidance Trust Agreement by allegedly imposing new affirmative obligations on the AAT with regard to claim reconciliation or by giving Plaintiffs a "second opportunity" at litigation. (Obj. ¶¶ 3–5.) The Settlement was specifically designed to be neutral to the interests of the AAT. Because the AAT is not a Settlement Party, it will not receive a release under the Settlement, and Plaintiffs' claims against the AAT will be preserved. The AAT will then have the choice to: (i) do nothing, in which case Plaintiffs' claims would be deemed allowed under the Bankruptcy Code, (ii) settle with Plaintiffs, as the GUC Trust has done, or (iii) object to Plaintiffs' claims. The AAT will therefore retain all its rights concerning the claims against it that are preserved under the Settlement. The AAT alleges that it is a "key party in interest." (Obj. ¶ 20.) As such, the AAT has the right to object to claims pursuant to Section 502(a) of the Bankruptcy Code. *See* 11 U.S.C. § 502(a) (providing that a claim is deemed allowed "unless a party in interest . . . objects."). Nothing in the Plan or the Avoidance Trust Agreement would prohibit the AAT from objecting to Plaintiffs' claims, if the AAT chose to do so, especially since the GUC Trust has agreed that the

3

AAT may do so.   Nor does any provision of the Plan prohibit the AAT from settling or allowing Plaintiffs' claims against it.

6.      Perhaps most importantly, the Court does not have to determine the effectiveness of the Settlement Agreement's provisions preserving claims against the AAT in order to approve it.  The Settlement preserves all claims and arguments the AAT might have regarding Plaintiffs' claims, and, post-Settlement, the AAT will have the ability to seek dismissal of Plaintiffs' claims on the grounds outlined in its Objection.  As such, there is no need for this Court to deny the GUC Trust's motion, which seeks to effectuate a mutually beneficial settlement for all Parties.

7.      The Andrew Meyers Objection suffers from the same flaws as the AAT's Objection, suggesting, without any support, that the Andrew Meyers Plaintiffs are somehow entitled to the benefits of the Settlement.   They are not, and the Settlement does not prejudice the Andrew Meyers Plaintiffs' claims against any party.

8.      For all these reasons and those below, the Court should approve the GUC Trust Approval Motion, and allow the approval of the Settlement to proceed to the MDL Court.

## BACKGROUND

**A.      Relevant Provisions of the Plan, Avoidance Trust Agreement and GUC Trust Agreement.**

9.      Pursuant to the Plan, holders of Allowed General Unsecured Claims against Old GM were entitled to distributions from both the GUC Trust and the AAT.  (Plan § 4.3(c).)

10.      This dual-entitlement is reflected in the structure of the Avoidance Trust Agreement and GUC Trust Agreement.  Each trust agreement contains its own, stand-alone, definition of which persons constitute trust beneficiaries.  The Avoidance Trust Agreement defines "Trust Beneficiaries" as the "holders of DIP Credit Agreement Claims and the holders of Allowed General Unsecured Claims."  (Avoidance Trust Agreement § 1.1(bbbbb).)  The definition of

4

"Allowed General Unsecured Claims" traces back to the definition of "General Unsecured Claim" in the Plan, which defines such term as "any Claim *against the Debtors*." (Plan § 1.79; *see also* Avoidance Trust Agreement § 1.1(kk) (defining "Disputed General Unsecured Claims" as "General Unsecured Claims *against the Debtors*").) Accordingly, to be a beneficiary of the AAT, a party must hold an allowed unsecured claim against the Debtors. The GUC Trust Agreement defines "GUC Trust Beneficiaries" as being those holders of Allowed General Unsecured Claims, and also defines such claims as being claims *against the Debtors*. (GUC Trust Agreement § Preamble F.) Accordingly, to be a beneficiary of the GUC Trust, a party must hold an allowed unsecured claim against the Debtors. No provision of the Avoidance Trust Agreement or the GUC Trust Agreement requires a beneficiary of one trust to also be a beneficiary of the other trust.

11.     The AAT was created solely for the benefit of the AAT Trust Beneficiaries, and the AAT Administrator is charged with acting in the best interest of the AAT Trust Beneficiaries. (Avoidance Trust Agreement §§ 2.3(a), 2.4.) The GUC Trust's "sole purpose" is to act "for the benefit[] of the GUC Trust Beneficiaries [and] serve as a mechanism for distributing the GUC Trust Distributable Assets under the Plan." (GUC Trust Agreement § 2.2.) Although the initial beneficiaries of the GUC Trust were the same persons as the current beneficiaries of the AAT, many AAT beneficiaries elected to sell their interests in the GUC Trust, resulting in significantly different respective trust beneficiaries today.

12.     Under the Plan, all General Unsecured Claims that are not already Allowed are considered "Disputed" once filed. (Plan § 1.54.) A Claim will be "Allowed" under the Plan if no objection is filed. (Plan § 1.4; *see also* 11 U.S.C. § 502(a).)

13.     Under the Plan, the GUC Trust Administrator was provided with the exclusive right to "object, and/or continue prosecution of objections" to Disputed General Unsecured Claims.

(Plan § 7.1(b); *see also* GUC Trust Agreement § 5.1(a).)  Neither Section 7.1(b) of the Plan nor

Section 5.1(a) of the GUC Trust Agreement vest the GUC Trust with the exclusive right to settle

or allow Disputed General Unsecured Claims.

14.     Pursuant to Section 2.3(c) of the Avoidance Trust Agreement, the Debtors were

required to deliver—directly to the AAT—a:

> [C]omplete list of all General Unsecured Claims, both Allowed and
> Disputed, reflected on the claims registry as of the Avoidance
> Action Trust Transfer Date, including the name and addresses of all
> holders of such General Unsecured Claims, whether such claims
> have been Allowed or are Disputed, and the details of all objections
> in respect of such Disputed General Unsecured Claims.

15.     To the extent the AAT required additional information concerning the universe of

General Unsecured Claims against the Debtors, the Avoidance Trust Agreement authorized the

AAT to seek such information from the GUC Trust.  (*Id*. § 8.5.)

16.     No provision of the Avoidance Trust Agreement prohibits the AAT from objecting

to Disputed Claims.  Notably, the Avoidance Trust Agreement states that the AAT has the "rights,

powers and privileges expressly set forth in the Plan, the Confirmation Order or this Trust

Agreement and *as otherwise provided by applicable law*."  (Avoidance Trust Agreement § 8.1(b)

(emphasis added).)  Further, the Plan notes that the Avoidance Trust Agreement may "provide

powers, duties, and authorities" that extend beyond the Plan.  (Plan § 6.5(a).)

17.     There is no provision in the Plan or the Avoidance Trust Agreement which limits

the import of applicable law or the Bankruptcy Code as it relates to the rights of the AAT to

discharge its duties to holders of claims against the Debtors.

**B.     The Settlement.**

18.     Following four years of failed attempts to resolve issues related to Plaintiffs'

potential late claims, the Parties—with the exception of the AAT—engaged in mediation.  After

6

the AAT refused to participate in settlement discussions, this Court ordered the AAT to mediation on February 5, 2020. (Feb. 5, 2020 Hr'g Tr. 11:16–17.) Despite repeated efforts by New GM and the Plaintiffs to reach a reasonable resolution with the AAT, the parties have, so far, been unable to come to an agreement. The parties, however, are still negotiating.

19.    Because the AAT is not a party to the Settlement, the Settlement Agreement contains several provisions that preserve certain of the Releasing Parties' claims against the AAT. In particular:

- The releases provided by Plaintiffs, the Class, and New GM under the Settlement do not benefit the AAT (*see* Settlement Agreement ¶¶ 36, 61(d), 113, 129, 139, 152);

- Plaintiffs expressly preserve all claims against "Old GM or the Old GM Bankruptcy Estate" solely to the extent such claims are recoverable from the AAT (*id.)*;

- Pursuant to the GUC Trust's authority pursuant to that certain *Order Disallowing Certain Late Filed Claims* [ECF No. 11394], the GUC Trust will exercise its authority to allow Plaintiffs to file late claims (*id.* ¶ 142(b));

- Because the late claim issues will be resolved, Plaintiffs' Proposed Proofs of Claim will be deemed filed and recorded as Disputed General Unsecured Claims on the claims register (*id.* ¶ 143); and

- If it chooses, the AAT will have standing to assert all defenses against Plaintiffs' Proposed Proofs of Claim, and the GUC Trust will not oppose the AAT doing so (*id.* ¶¶ 142(a), 142(c).)

20.    The Settlement does not guarantee Plaintiffs any recovery from the AAT.[4]  Nor does the Settlement require the AAT to take any action or impose any affirmative obligation on the AAT. Rather, the Settlement is neutral as to the AAT, and simply preserves the AAT's ability to defend against Plaintiffs' claims.

---

[4]    Because New GM increased its contribution to the Settlement to make-up for the AAT's absence, the Parties agreed that New GM would be entitled to fifty percent of any recoveries that Plaintiffs obtained from the AAT. (Settlement Agreement ¶ 81.)

## **REPLY**

21.     When determining whether to approve a settlement, "courts do not conduct a mini-trial on the merits of the settlement or otherwise resolve disputed issues of law or fact underlying the settlement." *In re Ditech Holding Corp.*, 606 B.R. 544, 623 (Bankr. S.D.N.Y. 2019).  Instead, courts need only  "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (internal citation omitted).  As a "general rule [] settlements are favored and, in fact, encouraged . . . ." *Nellis* v. *Shugrue*, 165 B.R. 115, 123 (Bankr. S.D.N.Y. 1994).

22.     The test for whether a settlement falls "below the lowest point in the range of reasonableness" involves an analysis of the *Iridium* factors.  *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007).  As the GUC Trust noted, all of those factors support the Settlement Agreement and argue in favor of its approval.  (GUC Trust Approval Motion ¶¶ 46–47.)

23.     The Court does not need to evaluate the Settlement from the AAT's perspective because the Settlement Agreement does not affect any of the AAT's interests.  *In re Enron Corp.*, No. 02-CIV-8489 (AKH), 2003 WL 230838, at *2–3 (S.D.N.Y. Jan. 31, 2003) (affirming approval of settlement after finding that the bankruptcy court "discharged its duty to consider [non-settling parties'] rights" and "need not have gone further" once it opined that the non-settling parties' claims would not be affected by the settlement).  As will be discussed in more detail below, the Settlement Agreement does not harm or disadvantage the AAT, guarantee any potential recovery from the AAT, or impose any new obligation on it—in fact, it leaves the AAT in the same position that it was in before the Settlement.  Even if the Court does consider the interests of the AAT, the Settlement is fair and equitable because it does not adversely affect the AAT's interests.

24.     All of the cases cited by the AAT are inapposite.  (Obj. ¶¶ 17–19.)  Unlike here, those cases all involved settlements that directly threatened harm to the non-settling parties'

interests. *See In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020 (2d Cir. 1992) (proposed class action settlement could have made non-settling parties responsible for disproportionate share of liability as compared to settling parties); *In re Stanwich Fin. Servs. Corp.*, 377 B.R. 432 (Bankr. D. Conn. 2007) (proposed settlement created risk that settlement payment could be perceived as having been paid on non-settling defendants' behalf, which could have reduced or eliminated the non-settling defendants' recovery in an indemnification action); *In re Miami Metals I, Inc.*, 603 B.R. 531 (Bankr. S.D.N.Y. 2019) (proposed settlement created a reserve to satisfy non-settling customers' claims that set a limit on the customers' recovery, which the parties agreed might not be sufficient to satisfy the non-settling customers' claims); *In re Ditech Holding Corp.*, 606 B.R. 544 (Bankr. S.D.N.Y. 2019) (proposed settlement would have limited satisfaction of non-settling parties' claims to an undercapitalized fund).

### 1.    The Settlement Is Appropriate Because It Resolves Claims Between the GUC Trust, Economic Loss Plaintiffs and New GM

25.    The AAT's argument that the Settlement should not be approved because it does not "actually resolve" Plaintiffs' litigation against the Old GM bankruptcy estate and only "shifts responsibility for litigating those claims" to the AAT (Obj. ¶¶ 21–22) is both misleading and meritless.

26.    There is no requirement—in either the Plan or the GUC Trust Agreement—that the GUC Trust can *only* settle a potential claim if it *also* resolves that claim for other third parties (*i.e.* the AAT). Nor could there be, because the GUC Trust Agreement explicitly states that the GUC Trust's *sole* purpose is to act "for the benefit[] of the GUC Trust Beneficiaries." (GUC Trust Agreement § 2.2.) Thus, where the GUC Trust is able to resolve protracted litigation in order to realize a substantial benefit for its Unitholders, it is obligated to do so. Notably, no Unitholder of the GUC Trust has objected to the Settlement.

27.    The Court also should not, as the AAT implies, look to the propriety of the Settlement from "the vantage point of the Old GM bankruptcy estate." (Obj. ¶¶ 23–24.) The question for the Court is whether the Settlement meets the "lowest point in the range of reasonableness" as it relates to the Parties, *i.e.*, the GUC Trust, Plaintiffs, and New GM. It unquestionably does. The AAT's attempt to frame the issues in the context of the "Old GM bankruptcy estate" is simply another means of arguing that the GUC Trust is somehow obligated to settle claims on behalf of the AAT, despite the AAT's inability to cite any provision of the Plan or GUC Trust Agreement requiring such.

28.    But even if the Court were to consider the Settlement from the perspective of the Old GM bankruptcy estate, the Settlement would obviously provide a substantial benefit to the estate that would easily warrant approval under Rule 9019. The Settlement, among other things, (i) resolves all claims Plaintiffs have against the GUC Trust, (ii) fully resolves the late claim and other "threshold" issues that have been pending in this Court for years, (iii) resolves potential "clawback" litigation that Plaintiffs have threatened against GUC Trust Beneficiaries, (iv) ends litigation concerning the Adjustment Shares, (v) resolves parallel litigation in the MDL Court that has justifiably caused this Court to defer issuing rulings that would "get in front" of the MDL Court, (vi) authorizes the GUC Trust to make an immediate distribution of $300 million to its Unitholders, and (vii) provides $120 million of compensation to Plaintiffs. The Settlement thus provides overwhelming benefits to the Old GM bankruptcy estates. The AAT cannot impute *its lack of benefit* from the Settlement—a product of its deliberate strategy not to engage meaningfully in the settlement process—to the Parties and falsely claim that the Settlement accomplishes nothing.

29.     Perhaps regretting its previous decision to not engage meaningfully in settlement talks, the AAT now seeks to propose a potential resolution in its Objection.[5]  (Obj. ¶¶ 25–26.)  This Johnny-come-lately offer, which ignores the significant sacrifices made by the Parties, identifies an alleged "straightforward fix"—a $480,000 settlement based on the AAT's purported calculation of Plaintiffs' allowed claim against the GUC Trust.  This argument is flawed for many reasons.  First, settlement negotiation should not take place in briefing, and the AAT does not have a "right of first refusal" that allows it to veto the parties' settlement or to hold out until the very last minute and then sign onto a deal to avoid further risks.  Second, the AAT's self-serving offer improperly assumes that the GUC Trust's $50 million payment to Plaintiffs represents a 30% distribution on an allowed claim of $160 million.  It does not.  Instead, the Settlement reflects the resolution of many different issues.  For example, the GUC Trust and the Unitholders have consistently argued that, even if Plaintiffs did hold Allowed General Unsecured Claims, they would not be entitled to priority catch-up distributions under the GUC Trust Agreement, and would be entitled—at most— to *pro rata* distributions on a go forward basis.  If this were true, Plaintiffs' "imputed" allowed claim amount would total more than $3.2 billion, thus entitling it to roughly 10% of the remaining GUC Trust Assets.[6]  Similarly, the AAT's reverse engineering fails to account for the equitable mootness issues that are being resolved, which means that the settlement payment is less than an otherwise allowed claim amount.

---

[5]   If anything, the AAT's offer is evidence that it has, and has always had, an obligation to address and resolve claims against the Old GM estate.

[6]   Currently, there are approximately $32 billion of Allowed General Unsecured Claims.  To recover ten percent of the remaining GUC Trust Assets without receiving a priority catch-up distribution, Plaintiffs' must hold ten percent of all Allowed General Unsecured Claims, or more than $3.2 billion.

30.     At bottom, the AAT's $480,000 "proposal" is plainly not "consistent with the economic substance of the Settlement Agreement." (*Id.* ¶ 25.) The GUC Trust's contribution of $50 million represents approximately 10% of its remaining assets; the AAT is proposing to contribute less than *half of one percent* of its own remaining assets.

###     2.     The Settlement Does Not Violate the Plan, the GUC Trust Agreement or the AAT Agreement

31.     The AAT's argument that the Settlement Agreement conflicts with the Plan, the GUC Trust Agreement, and the Avoidance Trust Agreement because it allows the AAT to "assert any and all objections and defenses" to Plaintiffs' claims (Obj. ¶¶ 28–29), is meritless. As a threshold issue, the Settlement Agreement does not "require" the AAT to take any action, including objecting to Plaintiffs' claims. Further, there is nothing in the Avoidance Trust Agreement that would prevent the AAT from raising an objection to Plaintiffs' claims, if it chose to do so. Finally, there is no need or reason for the Court to decide this issue at this juncture.

32.     The Settlement Agreement does not impose any new or "affirmative" obligations on the AAT. In fact, the Settlement was specifically crafted to have no effect on the AAT and to leave it in the same position as it was before the Settlement.

33.     The AAT does not—because it cannot—contest the Settlement Parties' ability to not grant the AAT a release under the Settlement. Rather, its sole objection is based on the possibility that the AAT may be the only party remaining with an interest in opposing Plaintiffs' claims. That, of course, is a direct consequence of the AAT's hold-out strategy, and the AAT's objection is more a negotiation tactic than an actual objection to the merits of the Settlement.

34.     With regard to Plaintiffs' claims, the Settlement Agreement, provides three things: (1) the GUC Trust will permit the late filing of the Proposed Proofs of Claim, (2) the Proposed Proofs of Claim will be listed on the claims register as Disputed General Unsecured Claims (*i.e.*,

12

claims not yet allowed), and (3) the AAT will have the ability to object to the Proposed Proofs of

Claim.  None of these features violate the Plan, GUC Trust Agreement or the Avoidance Trust

Agreement.

35.    Initially, the GUC Trust has the right to allow a late claim to be filed.  *See Order*

*Disallowing Certain Late Filed Claims* [ECF No. 11394].  The AAT's Objection does not contest

this; nor could it, since the gravamen of the AAT's objection is that claims reconciliation is in the

exclusive domain of the GUC Trust.

36.    Once the Proposed Proofs of Claim are filed, it does not violate the Plan to treat

them as Disputed General Unsecured Claims.  Indeed, the Plan treats all filed claims as Disputed

until such time that they are allowed.  (Plan §§ 1.4, 1.54.)  The AAT implies that because the

claims will be recorded as "Disputed," then the AAT will have an affirmative obligation to litigate

those claims, but this ignores the definition of "Disputed" under the Plan.  Once the Proposed

Proofs of Claim are filed, they will be deemed allowed if no party in interest objects.  11 U.S.C.

§ 502(a); *see also Bank of America, N.A.* v. *Caulkett*, 575 U.S. 790 (2015) (stating that "a claim

filed by a creditor is deemed 'allowed' under § 502 if no interested party objects"); *Travelers Cas.*

*And Sur. Co. of Am.* v. *Pacific Gas and Elec. Co.*, 549 U.S. 443, 449 (2007) (same); *In re Ames*

*Dept. Stores, Inc.*, 582 F.3d 422, 429 (2d Cir. 2009) (same); *see also In re Smith*, 2010 WL

5018379, at *2 (Bankr. W.D. Wash. Dec. 3, 2010) ("[t]imeliness is not a condition precedent to

the filing of a claim under § 501 or § 502.  In the absence of objection, even an *untimely* proof of

claim is allowed under § 502(a) and entitled to payment through the plan in the same manner as

other claims of its class.").

37.    Providing that the AAT may, if it chooses, object to Plaintiffs' Proposed Proofs of

Claim also does not violate the Plan or the GUC Trust Agreement.  Contrary to the AAT's

argument, the Settlement Agreement does not "*requir[e]* the AAT to undertake [] claims resolution responsibilities." (Obj. ¶ 33 (emphasis added).) The Settlement in fact does not require the AAT to do anything. As set forth above, the AAT can elect to do nothing, in which case the claims will be deemed allowed as filed. Alternatively, the AAT could seek to settle Plaintiffs' claims rather than litigate them. Similarly, there is no requirement under the Plan or any of the trust agreements that any party, including the GUC Trust, object to a Disputed Claim. The GUC Trust did not object to all claims asserted against Old GM, and many were allowed as filed.

38.     While the AAT does not *need* to object to Plaintiffs' Disputed General Unsecured Claims, it has the right to object. In its objection, the AAT asserts that it is a "key party in interest." (Obj. ¶ 20.) As such, it has the right under Section 502(a) of the Bankruptcy Code to object to any claim. Courts routinely interpret section 502(a) of the Bankruptcy Code to hold that any party in interest—such as the AAT—may object to the allowance of a claim. *See, e.g.*, *In se Solutia, Inc.*, No. 03–17949 (PCB), 2006 WL 2640641, at *1 (Bankr. S.D.N.Y. Sept. 14, 2006) (". . . § 502(a) states that 'a claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.' Thus any party in interest may object to a claim."); *In re G.A.F. Seelig, Inc.*, No. 17-46968 (ESS), 2020 WL 1486785, at *11 (Bankr. E.D.N.Y. Mar. 19, 2020) (same); *In re Mechanisburg Fitness, Inc.*, 592 B.R. 798, 803 (Bankr. M.D. Pa. 2018) (same).

39.     Nothing in the Avoidance Trust Agreement or the Plan limits the AAT's authority under the Bankruptcy Code to object to Plaintiffs' claims as a party in interest. Courts have held that even where a plan provides one agent with standing to object to a claim, the other parties in the Bankruptcy retain their ability to object. *See In re Manchester Gas Storage, Inc*, 309 B.R. 354, 369–70 (Bankr. N.D. Okla. 2004) (finding that the plan agent did not have the exclusive right to

object to claims and, in any event, the plan "does not preclude other parties in interest from exercising the authority granted to them by Section 502(a) to object to claims"); *see also In re Roche*, 2017 WL 746232, at *1 (Bankr. M.D. Pa. Feb. 24, 2017) ("The argument that the confirmation of the plan prevents parties in interest from disputing a proof of claim appears to fly directly in the face of 11 U.S.C. § 502(a).").

40.    Further, the Plan allows the Avoidance Trust Agreement to "provide powers, duties, and authorities" beyond the Plan, while the Avoidance Trust Agreement states that the AAT's powers include those "*as otherwise provided by applicable law*," such as Section 502(a) of the Bankruptcy Code.  (Plan § 6.5(a); Avoidance Trust Agreement § 8.1(b).)

41.    The provisions cited by the AAT do not require a different result.  While the Plan and the GUC Trust Agreement each provide that the GUC Trust would have the "exclusive" right to object to or seek estimation of claims, such provisions do not prohibit the AAT from doing so under Section 502(a), especially where the GUC Trust "waives any objection it may have to the AAT objecting to, settling, allowing, requesting an estimation of, or otherwise resolving" Plaintiffs' claims.  (Settlement ¶ 142(c).)  The AAT asserts, without any citation, that the "exclusive" right of the GUC Trust to object to claims was intended to benefit the *AAT*, but similar provisions in plans are generally intended to benefit *claimants* who otherwise risk facing objections from multiple parties, an issue not present here.

42.    Further, the AAT misrepresents the scope of Section 7.1 of the Plan and Section 5.1 of the GUC Trust Agreement.  Those provisions only concern the right to "object" or "estimate" claims, and do not provide the GUC Trust with the exclusive right to resolve or allow claims.  *See, e.g.*, Obj. ¶ 31 (arguing that the "only entity with the power to *resolve* disputed claims is the GUC Trust") (Emphasis added).

15

43.    But even if Section 7.1 of the Plan did prohibit other parties in interest from objecting to Plaintiffs' claims, such provision is not implicated here, where the GUC Trust has been disputing Plaintiffs' ability to file claims for four years, has resolved those claims, and has consented to the AAT defending Plaintiffs' claims.  Whatever purpose Section 7.1 of the Plan once had, it has no application once the GUC Trust has resolved its own liability to Plaintiffs and there is no risk that multiple parties will object to Plaintiffs' claims.  Ultimately, the AAT pushes Section 7.1 of the Plan to the breaking point, using it as the lynch pin to its argument that the GUC Trust is effectively required to obtain releases for the AAT in any settlement with any creditor.  The far better view, however, is that Section 7.1 of the Plan was intended to prevent multi-party and uncoordinated claims litigation, a risk that will no longer exist here.

44.    The AAT also points to Section 8.5 of the Avoidance Trust Agreement, which provides that the AAT may communicate with the GUC Trust to receive information regarding the identity of holders of Allowed and Disputed Claims.  From this, the AAT asserts that the Avoidance Trust Agreement "dictates that the AAT shall rely on the GUC Trust."  (Obj. ¶ 10).  The AAT ignores, however, Section 2.3(c) of the Avoidance Trust Agreement, which required the Debtors to *directly provide* the AAT with all claim information, which would be wholly unnecessary if the AAT was strictly limited to relying on the GUC Trust.

45.    Ultimately, under the AAT's rationale, the GUC Trust could have allowed Plaintiffs' claims, in full, as part of the Settlement, and the AAT would have had no recourse.  It strains credulity to believe that, in such a scenario, the AAT would not have sought to object to such allowance.  It also strains credulity to believe that, if the Court denies the AAT's Objection, the AAT will not later object to Plaintiffs' claims.  Ultimately, it is no surprise that the AAT is the

only party arguing that it is powerless to object to Plaintiffs' claims, as the AAT hopes to receive a "free pass" on this basis.

46.     The AAT asserts that, under the Settlement, Plaintiffs' claims against Old GM are being resolved, and that the Parties are creating a *new* payment mechanism that allows Plaintiffs to "relitigate" and pursue a "redundant litigation." (Objection ¶¶ 34–37.) This is simply untrue. The GUC Trust is not resolving all litigation as it pertains to Old GM. It is resolving all economic loss litigation as it relates to the *GUC Trust*. This is entirely appropriate since, as noted above, the GUC Trust's responsibility is to act in the best interests of its beneficiaries. Further, and as discussed above, the GUC Trust is under no obligation to *only* engage in a Settlement if such settlement will also resolve claims against the AAT.

47.     Notably, under the Plan, holders of Allowed General Unsecured Claims against Old GM are entitled to distributions from the GUC Trust *and* the AAT. As such, the proposed Settlement resolves one of the entitlements that Plaintiffs, as potential holders of Allowed General Unsecured Claims, are entitled to under the Plan. The Settlement does not affect the AAT, which *independently* has obligations to holders of Allowed General Unsecured Claims, and which has known of Plaintiffs' claims for years. The AAT is simply attempting to reap the benefits of the Settlement—the resolution of claims—without any contribution or involvement in the actual Settlement itself.

48.     Finally, there is no need to decide any of the above issues today. After the Final Effective Date of the Settlement, at which time Plaintiffs' Proposed Proofs of Claim are filed as Disputed General Unsecured Claims, the AAT can raise the same arguments it has made in its papers as a basis to dismiss Plaintiffs' claims or absolve itself of liability. The question before the

17

Court is a far more narrow one: whether the Settlement meets the minimum levels of reasonableness necessary for the Parties.  As explained above, it clearly does.

### 3.    The Settlement Does Not Effect An Impermissible Plan Modification

49.    For the reasons stated above, the provisions of the Settlement Agreement do not conflict with the Plan.  However, even if permitting the AAT to object to Plaintiffs' claims was inconsistent with the Plan, such provisions do not constitute an improper plan modification under 11 U.S.C. § 1127(b), (Obj. ¶¶ 38–39), because there is no substantive right at issue here.  As this Court has recognized, "[t]he term 'modification' is not defined in the Bankruptcy Code and courts determine what constitutes a 'modification' on a case-by-case basis."  *In re Boylan Int'l, Ltd.*, 452 B.R. 43, 47 (Bankr. S.D.N.Y. 2011) (Glenn, J.).  The Court of Appeals for the Second Circuit has characterized a plan modification as "a restructuring that effectively alter[s] a payment right."  7 Collier on Bankruptcy ¶ 1127.03 (16th ed. 2020) (citing *In re Joint Eastern & Southern District Asbestos Litig.*, 982 F.2d 721, 747 (2d Cir. 1992), *modified on reh'g*, 993 F.2d 7 (2d Cir. 1993)).  Here, there are no substantive rights affected, because the Settlement Agreement does not alter the payment right for any parties, let alone the AAT.  As noted above, the Settlement Agreement does not affect the AAT and leaves it in the same position as it was in prior to the Settlement.  Indeed, the proposed Settlement preserves Plaintiffs' rights to receive distributions from both the GUC Trust and the AAT; it is the AAT's interpretation of the Plan that would deprive Plaintiffs of substantive rights.

50.    The cases the AAT cites (Obj. ¶¶ 38–39), are inapposite as they each involve an alteration of substantive rights.  *See Oakhurst Lodge, Inc.*, 582 B.R. 784, 798–99 (Bankr. E.D. Cal. 2018) (improper plan modification where the settlement did not provide for payment of claims in full to secured creditors contrary to the plan, paid unsecured creditors "only slightly more than one-half of the amount provided for in the plan," and "relegate[d] equity holders to ownership of

18

an empty shell with no shares of value"); *In re Rickel & Assocs., Inc.*, 260 B.R. 673, 676 (Bankr. S.D.N.Y. 2001) (improper plan modification where the debtor sought to amend the plan to ensure equity holders would receive a distribution in the event of surplus); *see also In re Eliminator Custom Boats, Inc.*, No. BAP CC-19-1003 (KUFL), 2019 WL 4733525, at *8 (B.A.P. 9th Cir. Sept. 23, 2019) (improper plan modification where "[t]he payment and priority for the payment of post-confirmation professional fees materially altered the right of R&H with respect to the payment of its fees"); *In re U.S. Brass Corp.*, 255 B.R. 189, 193 (Bankr. E.D. Tex. 2000) (improper plan modification where the parties agreed to "substitute an arbitration process" for disputed claims as opposed to resolving such claims in court).

### 4.    The Proposed Settlement is Fair and Equitable

51.    The Settlement Agreement is fair and equitable to the settling Parties, and does not affect non-settling parties. *See In re Enron Corp.*, 2003 WL 230838, at *2–3 (affirming approval of settlement after finding that the bankruptcy court had "discharged its duty to consider [non-settling parties'] rights" by opining that the non-settling parties' claims would not be affected by the settlement and had "found that the Settlement Agreement as a whole was fair and equitable").

52.    The Settlement Agreement includes unquestioned benefits for the GUC Trust, New GM, and the Plaintiffs, the parties actually entering into the Settlement. Among other benefits, the GUC Trust will be allowed to: (i) distribute $300 million in assets to its beneficiaries, (ii) avoid expensive protracted litigation that could take years to resolve and which, no matter the outcome, would result in the depletion of the GUC Trust's assets, and (iii) receive releases from the Plaintiffs. Similarly, the Plaintiffs are receiving $50 million from the GUC Trust as well as their own releases. These are substantial sums and benefits, especially considering the otherwise protracted nature of the legal fight facing all Parties.

53.     The AAT's argument that the Settlement Agreement is somehow unfair because the GUC Trust Beneficiaries will receive distributions while the AAT is "at risk of being delayed for years pending Plaintiffs' continued litigation" (Obj. ¶ 41), is disingenuous.  As discussed above, a settlement is *not* unfair simply because a party in the settlement benefits more than a non-settling party.  Indeed, the purpose of the Settlement, and one of the benefits that the GUC Trust negotiated for, was the resolution of Plaintiffs' continued litigation against the GUC Trust.  Similarly, the AAT's suggestion that the Settlement is unfair to its beneficiaries because they will be forced to bear the cost of litigating Plaintiffs' claims is also wrong.  There is no obligation to litigate Plaintiffs' claims, and the AAT could seek—as the GUC Trust does here—to settle such claims to avoid wasteful litigation.  In short, the alleged harm is a direct result of the AAT's own negotiation tactics and decision not to meaningfully participate in the proposed Settlement.

### 5.     The AAT Is Acting As The Typical Class-Action Hold-Out Objector Who Did Not Obtain What It Wanted in Settlement Negotiations.

54.     Finally, and unfortunately, it is apparent that the real motivation for the AAT's objection has nothing to do with whether the proposed settlement is lawful or inconsistent with the Plan.  Instead, the AAT's objection is nothing more than a settlement negotiation tactic, as its real complaint is that it was *left out* of the Settlement Agreement because it was unable to extract from the economic loss plaintiffs a low-ball settlement payment in exchange for a release.  The AAT admitted as much a few days ago, when it told this Court that "the [plaintiffs] and the AAT have been unable to reach a mediated resolution of their dispute and remain far apart on the appropriate way to value the [plaintiffs'] threatened claim against the AAT."[7]

---

[7]     *Reply Brief in Further Support of Its Motion for Entry of an Order Approving the Distribution Plan to the Avoidance Action Trust's Beneficiaries* [ECF No. 14706] at 10; *see also id.* (plaintiffs should have provided a release of their claims against the AAT because "the ultimate value of the litigation [against the AAT] is far less than the cost of the fight.").

55.      In other words, if the Parties had agreed to the AAT's settlement price, then the AAT would not have objected to the Settlement.  But the AAT knows that approval of the GUC Trust Approval Motion "is a 'condition precedent to the MDL Court's entry of an order preliminarily approving the Settlement Agreement" (Obj. ¶ 23), and because the AAT has been unable to get the price it wants to settle Plaintiffs' claims, it has objected for the purpose of holding up preliminary approval of the class settlement in the hope of extracting a lower settlement price. In fact, the AAT candidly admits that its "problem" with the Settlement Agreement would go away if the economic loss plaintiffs simply would agree to a lower settlement price in mediation, and the AAT even publicly names its settlement price—$480,000.  (Obj. ¶ 25.)

56.      The AAT's statements in the context of Rule 23 review and approval procedures are astounding.  By its own words the AAT has established that it is acting as the typical class-settlement hold-out objector who, because they did not receive the result they wanted in settlement negotiations, files a specious objection to extract a better settlement price.  This sort of objection is universally condemned as illegitimate in the class settlement context, and provides no basis for denying others the benefits of a meritorious class action settlement.  *See*, *e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) (discussing objectors who "disrupt[] settlement in the hopes of extorting a greater share of the settlement for themselves and their clients."); Manual for Complex Litigation, Fourth, § 21.643 ("An objection, even of little merit, can be costly and significantly delay implementation of a class settlement.").[8]

---

[8]      *See also Pearson* v. *Target Corp.*, 893 F.3d 980, 982 (7th Cir. 2018) (describing "objector blackmail" in class actions, where "an absent class member objects to a settlement with no intention of improving the settlement for the class" but instead converts "[a]potential benefit for the class—a better settlement—… [into] a purely personal gain—a side bargain"); *In re Petrobras Sec. Litig.*, 363 F. Supp. 3d 426, 428 (S.D.N.Y. 2019) ("Courts must strike a balance between protecting class interests by preserving the role of legitimate objectors and protecting the class from a second victimization by unscrupulous, extortionate objectors."); Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1625 (2009) ("Courts and commentators believe that objector

57.    Indeed, Rule 23 was amended in 2018 precisely to address such objector misconduct by requiring disclosure and court approval of any payments to objectors in exchange for dismissal of their objections.[9] *See* Fed. R. Civ. P. 23(e)(5)(B).

58.    In sum, the purported problems the AAT identifies are without merit for the reasons explained above.  But this is further confirmed by the AAT's own statements that its objections would not be raised if only the parties would agree to settle for a lesser amount.  The Court should reject the AAT's attempt to gain negotiation leverage by seeking to block approval of the class settlement on the basis of an objection that the AAT concedes is readily capable of resolution for an acceptable price.

### 6.    The Andrew Meyers Objection Should be Overruled.

59.    The Andrew Meyers Objection should be overruled for the same reasons that the AAT Objection should be overruled.  The GUC Trust did not have any obligation to settle the Andrew Meyers Plaintiffs' claims in connection with the Settlement, and such *personal injury* claims would not have been capable of being resolved in a *class* settlement of economic loss claims.  The Andrew Meyers Plaintiffs' claims will not be affected by the Settlement, and they will retain whatever rights they had.  As noted in the GUC Trust's Omnibus Reply, in which New

---

blackmail is a serious problem.").  Here, unlike the typical objector who seeks more money, the AAT seeks to pay less money as its price for not objecting to the settlement.  The Courts should not approve of such conduct.

[9]    Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("At least in some instances, it seems that objectors—or their counsel—have sought to obtain consideration for withdrawing their objections or dismissing appeals. . . . [A]llowing payment perpetuates a system that can encourage objections advanced for improper purposes."); *see also* Intro. Materials Rule 23 Subcommittee Advisory Committee On Civil Rules Min-Conference On Rule 23 Issues (Sept. 11, 2015), available at https://www.uscourts.gov/sites/default/files/rule_23_mini-conference_materials.pdf, at 23 (noting that inappropriate objections have "[led] class counsel to conclude that a substantial payment to the objector or the objector's counsel is warranted–without particular regard to the merits of the objection–in order to finalize the settlement and deliver the settlement funds to the class.").

GM joins and fully adopts, the GUC Trust will have sufficient assets to satisfy any claims, to the extent such claims are valid.

## **<u>CONCLUSION</u>**

WHEREFORE, for all of the reasons set forth herein and in the GUC Trust Approval Motion, New GM respectfully requests that this Court grant the GUC Trust Approval Motion and grant such other and further relief as the Court may deem just and proper.

Dated:    April 20, 2020
New York, New York

*/s/ Paul M. Basta*
Paul M. Basta
Aidan Synnott
Kyle J. Kimpler
David Giller
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

*Counsel for General Motors LLC*