**MCDERMOTT WILL & EMERY LLP**
340 Madison Ave.
New York, New York 10173
Telephone:  (212) 547-5429
Facsimile:  (646) 417-7313
E-mail: kgoing@mwe.com
Kristin K. Going

*Attorneys for the Motors Liquidation Company*
*GUC Trust Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
```
                                        :
In re:                                  :   Chapter 11
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :   Case No. 09-50026 (MG)
f/k/a General Motors Corp., et al.      :
                                        :   (Jointly Administered)
Debtors.                                :
                                        :
```
---------------------------------------------------------------x

**THE GUC TRUST'S OMNIBUS OBJECTION TO MOTIONS FILED BY**
**CERTAIN PRE-CLOSING ACCIDENT PLAINTIFFS FOR AUTHORITY**
**TO FILE LATE PROOFS OF CLAIM FOR PERSONAL INJURIES AND**
**WRONGFUL DEATHS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................2

BACKGROUND ......................................................................................................2

I.      Old GM's Bankruptcy...................................................................................2

II.     The Bar Date ..............................................................................................3

III.    Recalls and Subsequent Proceedings ..........................................................4

IV.     The PIWD Motions......................................................................................5

OBJECTION............................................................................................................9

I.      The Goodwin Motions Should Be Denied for Failure to Prosecute ...................9

II.     The Pioneer Standard Applies to All of the Andrews Movants........................11

        A.      The Law of the Case Doctrine Is Inapplicable......................................14

        B.      The Law of the Case Doctrine Does Not Excuse any of the
                Andrews Movants From Having to Satisfy Pioneer ...............................17

        C.      Case Law Does Not Support the Andrews Movants' Efforts to
                Avoid the Application of Pioneer .........................................................18

        D.      The Andrews Movants' Deliberate Delay Warrants Application of
                Pioneer ............................................................................................22

III.    The Length of the Andrews Movants' Delay ................................................23

        A.      The "Tolling" Agreement Does Not Apply to the Andrews
                Movants............................................................................................24

        B.      The Equitable Mootness Ruling Did Not Postpone Late Claims
                Motions.............................................................................................26

        C.      The Court's Scheduling Orders Did Not Postpone Any Late
                Claims Motions..................................................................................28

IV.     The Andrews Movants Cannot Satisfy the Pioneer Test ................................30

        A.      The Risk of Prejudice.........................................................................31

        B.      The Length of the Delay .....................................................................32

        C.      The Reason for the Delay ...................................................................34

        D.      The Andrews Movants' Good Faith .....................................................36

NOTICE........................................................................................................................................37

CONCLUSION.............................................................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AMR Corp.*,
    492 B.R. 660 (Bankr. S.D.N.Y. 2013) ................................................................. 21, 33

*In re Andover Togs, Inc.*,
    231 B.R. 521 (Bankr. S.D.N.Y. 1999) ........................................................................ 30

*Atlas v. Chrysler, LLC (In re TALT)*,
    No. 05-10576–05-10601 (ALG), 2010 WL 2771841 (Bankr. S.D.N.Y. July
    13, 2010) ....................................................................................................................... 31

*In re BGI, Inc.*,
    476 B.R. 812 (Bankr. S.D.N.Y. 2012) ..................................................................... 31, 33

*In re Bicoastal Corp.*,
    147 B.R. 807 (Bankr. M.D. Fla. 1992) ...................................................................... 35

*City of New York v. New York, N. H. & H. R. Co.*,
    344 U.S. 293 (1953) .................................................................................................... 20

*In re Combustion Eng'g, Inc.*,
    391 F.3d 190 (3d Cir. 2004) ....................................................................................... 17

*In re Dana Corp.*,
    No. 06–10354, 2008 WL 2885901 (Bankr. S.D.N.Y. 2008) ...................................... 33

*De Johnson v. Holder*,
    564 F.3d 95 (2d Cir. 2009) .......................................................................................... 14

*U.S. ex rel. Drake v. Norden Sys., Inc.*,
    375 F.3d 248 (2d Cir. 2004) ........................................................................................ 10

*In re Drexel Burnham Lambert Grp. Inc.*,
    151 B.R. 674 (Bankr. S.D.N.Y. 1993) ..................................................................... 21, 22

*Egiazaryan v. Zalmayev*,
    880 F. Supp. 2d 494 (S.D.N.Y. 2012) ......................................................................... 16

*Elliott v. General Motors LLC*,
    829 F.3d 135 (2d Cir. 2016) ............................................................................... *passim*

*In re Enron Corp.*,
    298 B.R. 513 (Bankr. S.D.N.Y. 2003), *subsequently aff'd*, 419 F.3d 115 (2d
    Cir. 2005) ..................................................................................................................... 26

*In re Enron Corp.*,
419 F.3d at 128–29 ...........................................................................................32, 33

*Enron Creditors Recovery Corp.*,
370 B.R. at 103 ...........................................................................................................33

*GAC Enters. v. Medaglia (In re Medaglia)*,
52 F.3d 451 (2d Cir. 1995)........................................................................................20

*Gillispie v. Wilmington Trust Co. (In re Motors Liquidation Co.)*,
599 B.R. 706 (S.D.N.Y. 2019)..................................................................................31

*In re GM Corp.*,
407 B.R. 463 (Bankr. S.D.N.Y. 2009) ...................................................................2, 3

*In re Golden Distribs., Ltd.*,
128 B.R. 349 (Bankr. S.D.N.Y. 1991) .................................................................21, 22

*Graves v. Deutsche Bank Sec., Inc.*,
No. 07 CIV. 05471 BSJ, 2011 WL 1044357 (S.D.N.Y. Mar. 4, 2011)...................34

*Great Am. Audio Corp. v. Metacom, Inc.*,
938 F.2d 16 (2d Cir. 1991)........................................................................................17

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*,
73 F.3d 497 (2d Cir. 1996)........................................................................................16

*In re Keene Corp.*,
188 B.R. 903 (Bankr. S.D.N.Y. 1995).......................................................................32

*In re Kmart Corp.*,
381 F.3d 709 (7th Cir. 2004) .....................................................................................33

*In re Lehman Bros. Holdings Inc.*,
433 B.R. 113 (Bankr. S.D.N.Y. 2010) ..............................................28, 31, 32, 37

*Link v. Wabash R. Co.*,
370 U.S. 626 (1962)...................................................................................................10

*Longway v. Jefferson Cty. Bd. of Supervisors*,
24 F.3d 397 (2d Cir. 1994).........................................................................................15

*Meadows v. AMR Corp.*,
539 B.R. 246 (S.D.N.Y. 2015)...................................................................................32

*Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*,
419 F.3d 115 (2d Cir. 2005)..................................................................................21, 33

*Midland Funding, LLC v. Johnson*,
   137 S. Ct. 1407 (2017) ...................................................................................27, 28

*In re Mirant Corp.*,
   No. 03-46590-DML-11, 2006 Bankr. LEXIS 4548 (Bankr. N.D. Tex. May 3,
   2006) .................................................................................................................35

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015), *Decision on Motion to Enforce Sale
   Order* ................................................................................................4, 12, 16, 27

*In re Motors Liquidation Co.*,
   571 B.R. 565 (Bankr. S.D.N.Y. 2017), *aff'd in part, vacated in part*, 590 B.R.
   39 (S.D.N.Y. 2018) ....................................................................................4, 5, 13

*In re Motors Liquidation Co.*,
   591 B.R. 501 (Bankr. S.D.N.Y. 2018) ..............................................................27

*In re Motors Liquidation Co.*,
   598 B.R. 744 (Bankr. S.D.N.Y. 2019) ..........................................................31, 32

*Nicholson v. City of Warren*,
   467 F.3d 525 (6th Cir. 2006) ............................................................................31

*In re Nortel Networks, Inc.*,
   531 B.R. 53 (Bankr. D. Del. 2015) ...................................................................35

*In re Pettibone Corp.*,
   162 B.R. 791 (Bankr. N.D. Ill. 1994) ...............................................................19

*Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*,
   507 U.S. 380 (1993) .................................................................................. *passim*

*In re Queen Elizabeth Realty Corp.*,
   No. 13-12335 (SMB), 2017 WL 1102865 (Bankr. S.D.N.Y. Mar. 24, 2017),
   *aff'd*, 586 B.R. 95 (S.D.N.Y. 2018) ......................................................18, 19, 20

*In re Queen Elizabeth Realty Corp.*,
   586 B.R. 95 (S.D.N.Y. 2018) ............................................................................19

*In re Residential Capital, LLC*,
   No. 12-12020 (MG), 2015 WL 2256683 (Bankr. S.D.N.Y. May 11, 2015) ....................20, 21

*Richcourt Euro Strategies Inc. v. Soundview Capital Mgmt. Ltd. (In re Soundview
   Elite Ltd.)*,
   594 B.R. 108 (Bankr. S.D.N.Y. 2018) ...............................................................10

*Silivanch v. Celebrity Cruises, Inc.*,
    333 F.3d 355 (2d Cir. 2003)................................................................30, 31, 34, 37

*SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*,
    530 F.3d 230 (3d Cir. 2008).............................................................................19

*In re Thomson McKinnon Sec. Inc.*,
    130 B.R. 717 (Bankr. S.D.N.Y. 1991).........................................................21, 22

*In re Tronox Inc.*,
    09-10156 (ALG), 2014 WL 5801058 (Bankr. S.D.N.Y. Nov. 7, 2014)..................34

*In re Turney*,
    No. 18-80674-TRC, 2019 Bankr. LEXIS 3934 (Bankr. E.D. Okla. Dec. 31,
    2019) ................................................................................................................36

*United States v. Cardinal Mine Supply*,
    916 F.2d 1087 (6th Cir. 1990) ..........................................................................36

*United States v. Hussein*,
    178 F.3d 125 (2d Cir. 1999)..............................................................................16

*United States v. Williams*,
    205 F.3d 23 (2d Cir. 2000)................................................................................18

*In re Xechem Int'l, Inc.*,
    424 B.R. 836 (Bankr. N.D. Ill. 2010) ................................................................36

**Statutes and Rules**

11 U.S.C. §101(5)(A)................................................................................................28

Fed. R. Bankr. P. 3003(c)(2)....................................................................................27

Fed. R. Bankr. P. 7041.............................................................................................10

Fed. R. Bankr. P. 9006(b)(1)........................................................................... *passim*

Fed. R. Bankr. P. 9014(b) .......................................................................................10

Fed. R. Civ. P. 41(b) ...............................................................................................10

**Other Authorities**

9 Collier on Bankruptcy (16th ed. 2019) .................................................................35

10 Collier on Bankruptcy (16th ed. 2019) ...............................................................30

Black's Law Dictionary (11th ed. 2019)...................................................................16

Wright & Miller, 18B Fed. Prac. & Proc. Juris. (2d ed. 2019)......................................................16

The Motors Liquidation Company GUC Trust (the "GUC Trust") respectfully submits this omnibus objection (the "Omnibus Objection") to the *Omnibus Motion by Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths* [ECF No. 13807] (the "Initial Goodwin Motion") and the *Supplemental Omnibus Motion by Certain Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths in Connection with Settlement with the Motors Liquidation Company GUC Trust* [ECF No. 14325] (the "Supplemental Goodwin Motion" and, together with the Initial Goodwin Motion, the "Goodwin Motions") filed by Goodwin Procter LLP ("Goodwin"), and the *Motion by Additional Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths* [ECF No. 14018], as supplemented on August 10, 2017, September 19, 2017, December 12, 2017, and July 19, 2018 [ECF Nos. 14046, 14112, 14195, 14346] and the *Brief in Support of Motion Filed by Additional Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths* [ECF No. 14690] (collectively, the "Andrews Motion" and, together with the Goodwin Motions, the "PIWD Motions") filed by Andrews Myers, P.C. ("Andrews Myers").  For the reasons stated below, the GUC Trust respectfully requests that the Court deny the PIWD Motions.[1]

---

[1]    At 1:29 p.m. on the day that the GUC Trust brief was due pursuant to the January 28, 2020 scheduling order, Andrews Myers filed a document captioned "*Supplement to the Brief in Support of Motion Filed by Additional Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*" purporting to add eight additional claimants to its brief in support of late claims against the GUC Trust.  This was a complete surprise and the GUC Trust cannot respond fully to such an ambush on the day its brief is due.  The GUC Trust respectfully requests the Court deny the relief sought by those additional eight individuals for failure to timely file pleadings pursuant to the January 28, 2020 scheduling order.  The GUC Trust is reviewing the late filed pleadings from Andrews Myers and will file a supplemental objection to address these additional eight plaintiffs in more detail.

## PRELIMINARY STATEMENT

This Omnibus Objection addresses two different groups of plaintiffs that have sought to file late claims against the GUC Trust on account of alleged personal injury or wrongful death accidents involving General Motors vehicles manufactured before July 10, 2009. The first group is comprised of the twelve remaining plaintiffs represented by Andrews Myers (the "Andrews Movants") who are identified in the Andrews Motion. The Andrews Motion should be denied because the Andrews Movants fail to satisfy the *Pioneer* standard for excusable neglect and therefore cannot establish their right to file late proofs of claim. Further, a number of the twelve Andrews Movants have also failed to demonstrate that they have any basis for asserting a claim against the GUC Trust that would warrant consideration.

The second group is the fifty-nine remaining plaintiffs formerly represented by Goodwin (the "Goodwin Movants") who are identified in the Goodwin Motions, 45 of which claim to have been impacted by the Ignition Switch defect, and four allege claims resulting from the Non-Ignition Switch defect. However, none of these 59 plaintiffs have complied with this Court's January 24, 2020 show cause order or filed a brief pursuant to the Court's January 28, 2020 briefing schedule. Thus, the Goodwin Motions should be denied for want of prosecution as well as for a failure to demonstrate excusable neglect under the *Pioneer* factors.

## BACKGROUND

### I.    Old GM's Bankruptcy

The facts of the General Motors bankruptcy are well documented in prior decisions of this Court, so this Omnibus Objection offers only an abbreviated summary. On June 1, 2009, General Motors Corporation ("Old GM") and affiliated entities (collectively, the "Debtors") petitioned for chapter 11 bankruptcy protection in this Court. *In re GM Corp.*, 407 B.R. 463, 479–80 (Bankr. S.D.N.Y. 2009). The same day, Old GM filed a motion seeking approval to sell

substantially all of its assets (the "Sale") to NGMCO, Inc. (now known as "New GM").  *Id*.  On

July 5, 2009, the Bankruptcy Court issued an order (the "Sale Order")[2] approving the sale.  *See*

*Elliott v. General Motors LLC*, 829 F.3d 135, 146-47 (2d Cir. 2016).  The Sale closed on July 10,

2009.

## II.   **The Bar Date**

On September 2, 2009, the Debtors filed a motion requesting that the Court set a deadline

(the "Bar Date") for filing proofs of claims against the Debtors.[3]  On September 16, 2009, the

Court issued an order (the "Bar Date Order") approving the motion and establishing November

30, 2009 at 5:00 p.m. (Eastern Time) as the Bar Date.[4]  Despite establishing November 30, 2009

as the Bar Date, by 2012 over 200 late claims had been filed.  In an effort to reduce the

administrative burden associated with responding to hundreds of late filed claims, Old GM

sought, and obtained an order disallowing late filed claims (the "Late Filed Claims Order").

Importantly, the Late Filed Claims Order provided "[n]othing in this Order shall prevent any

claimant submitting a Late Claim from filing a motion with the Court seeking to have its Late

Claim deemed timely filed.[5]

---

[2]      *Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement With NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection  With the Sale; And (III) Granting Related Relief* [ECF No. 2968].

[3]      *Debtors' Motion for Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim (Including Claims Under Section 503(b)(9) of the Bankruptcy Code) and Procedures Relating Thereto and Approving the Form and Manner of Notice Thereof* [ECF No. 3940].

[4]      *Order Pursuant to Section 502(b)(9) of the  Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section 503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice Thereof* [ECF No. 4079].

[5]      *Order Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for an Order Disallowing Certain Late Filed Claims* [ECF No. 11394].

III.    **Recalls and Subsequent Proceedings**

In February and March 2014, New GM disclosed the existence of the defective ignition

switches and conducted a recall, NHTSA Recall Number 14v047, impacting approximately 2.1

million vehicles (the "Ignition Switch Recall").  It was later determined that Old GM knew of the

existence of the Ignition Switch defect as early as 2005.  After this recall, New GM conducted

other recalls related to power steering and airbags affecting approximately 10 million other

vehicles.  They are: NHTSA Recall Numbers 14v355, 14v394, 14v400, 14v346, 14v118, and

14v153 (collectively, the "Non-Ignition Switch Recalls," and together with the Ignition Switch

Recall, the "Recalls").  The GUC Trust is not aware of any evidence that Old GM had

knowledge of the Non-Ignition Switch defects prior to the issuance of these recall notices.  Many

owners and lessees of Old GM and New GM vehicles subject to the Ignition Switch Recall and

the Non-Ignition Switch Recalls immediately filed lawsuits against New GM.  New GM sought

to enjoin certain litigation by filing motions to enforce the Sale Order in the Bankruptcy Court

(the "Motions to Enforce").[6]

On April 15, 2015, the Court issued its decision regarding the Motions to Enforce (the

"April 15 Decision").  *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015).[7]  In

the April 15 Decision, the Court held that the "Ignition Switch Plaintiffs"[8] were known creditors

---

[6]    *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009
Sale Order and Injunction* [ECF No. 12620]; *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363
to Enforce This Court's July 5, 2009 Sale Order and Injunction Against  Plaintiffs in Pre-Closing Accident Lawsuits*
[ECF No. 12807];  *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's
July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)* [ECF No.
12808].

[7]    *Decision on Motion to Enforce Sale Order* [ECF No. 13109].

[8]    The term "Ignition Switch Plaintiff" has been used throughout this proceeding to refer to economic loss
plaintiffs whose vehicles were subject only to NHTSA Recall No. 14v047.  *See In re Motors Liquidation Co.*, 571
B.R. 565, 572–73 (Bankr. S.D.N.Y. 2017), *aff'd in part, vacated in part*, 590 B.R. 39 (S.D.N.Y. 2018) ("It is clear
from the April Decision that Judge Gerber used the terms 'Ignition Switch Defect' to mean only the defect in the
Subject Vehicles that gave rise to NHTSA Recall No. 14v047, and plaintiffs without the specific Ignition Switch

who did not receive constitutionally adequate notice of the Sale from Old GM.  *See id.*  The

Court further held that, while late proofs of claim filed by claimants might still be allowed

against the GUC Trust, assets transferred to the GUC Trust under the Plan could not be tapped to

pay them under the doctrine of equitable mootness.  *Id.* at 529.  On direct appeal, the Second

Circuit affirmed the due process finding with respect to the Sale and vacated the equitable

mootness ruling as an advisory opinion.  *See Elliott*, 829 F.3d at 168–69.

## IV.    **The PIWD Motions**

In December 2016, after remand by the Second Circuit, the Court issued an order to show

cause (the "Order to Show Cause")[9] identifying five threshold issues for resolution in light of the

Second Circuit's decision.  The Order to Show Cause also established December 22, 2016 as the

deadline to file motions seeking authority to file late claims.  Order to Show Cause at 5 ¶ 1.  In

addition, the Order to Show Cause provided that briefing and adjudication of any motions to file

late claims filed by Non-Ignition Switch Plaintiffs[10] and Pre-Closing Accident Plaintiffs[11] would

be stayed pending resolution of the other 2016 Threshold Issues.  *See id.* at 5 ¶ 2.

In accordance with the Order to Show Cause, on December 22, 2016, Goodwin filed the

Initial Goodwin Motion seeking the Court's permission to file late proofs of claim against the

---

Defect—whether the defect in their cars involved the ignition switch or not—were therefore not Ignition Switch
Plaintiffs.").

[9]      *Order to Show Cause Regarding Certain Issues Arising from Lawsuits with Claims Asserted Against
General Motors LLC That Involve Vehicles Manufactured by General Motors Corporation* [ECF No. 13802]

[10]      The term Non-Ignition Switch Plaintiffs refers to all plaintiffs or claimants asserting late claims based on or
arising from an alleged defect other than the Ignition Switch defect.  *See Judgment* [ECF No. 13177] at 1; *see also
In re Motors Liquidation Co.*, 571 B.R. at 578 ("'Non–Ignition Switch Plaintiffs' are plaintiffs asserting economic
losses arising from a defect other than the Ignition Switch Defect.").

[11]      The term "Pre-Closing Accident Plaintiffs" refers to plaintiffs or claimants asserting late claims for
personal injury or wrongful death based on or arising from an accident or incident that occurred before the closing of
the bankruptcy sale.  *See Judgment* [ECF No. 13177] at 1; *see also In re Motors Liquidation Co.*, 571 B.R. at 578
("'Pre–Closing Accident Plaintiffs' are plaintiffs asserting claims based on an accident or incident that occurred
prior to the Closing Date.").

GUC Trust.  The Initial Goodwin Motion covered 175 Ignition Switch Pre-Closing Accident

Plaintiffs who were listed in Exhibit A to the motion.  On May 25, 2018, Goodwin filed the

Supplemental Goodwin Motion that covered 69 additional Non-Ignition Switch Pre-Closing

Accident Plaintiffs who were listed in Exhibit A to the motion.  As noted above, none of these

claimants are continuing to participate in the litigation, and the Goodwin Motions should be

denied.

Seven months after the court-imposed deadline to file motions seeking authority to file

late claims, on July 28, 2017, Andrews Myers filed the Andrews Motion seeking authority to file

late proofs of claim on behalf of 171 personal injury and wrongful death plaintiffs, including

Kathryn Enders, Sandra Samuels and Ruby Merritt, three of the twelve remaining Andrews

Movants.  Copies of the proposed proofs of claim for Enders, Samuels and Merritt are attached

here as Exhibit A.  In considering whether to allow these three Andrews Movants' late claims to

be filed, the absolute earliest date the Court should deem leave to have been sought is July 28,

2017.  A review of the Enders, Samuels and Merritt proposed proofs of claim reveals that these

claims do not provide any allegations identifying a GM automobile, much less one that was

subject to a recall  The only information provided in these proofs of claim was the fact that these

three individuals were involved in accidents in 2008.  More importantly for present purposes,

neither the Andrews Motion nor the three proposed proofs of claim provide any explanation for

the delay in seeking leave to file a late claim until July 2017.  In fact, in their brief, the Andrews

Movants acknowledge that they were aware that they had claims against the GUC Trust as early

as 2014.  *See* Andrews Br. at 12 ("The Movants were unaware of the existence of their Ignition

Switch Defect claims ***until the recall notices were issued in 2014***.") (emphasis added).  The

Andrews Movants further acknowledge that they had retained counsel by October 2014.  *See* Andrews Br. at 16 n.12.

On August 10, 2017, Andrews Myers filed its first supplement to the Andrews Motion (the "First Supplement").[12]  The First Supplement asserted that it was providing "additional information and evidence to be considered in conjunction with the Motion filed by movants on July 28, 2017", but in fact the supplement simply attached proofs of claim for 113 additional proposed claimants.  None of the claimants in the First Supplement are the subject of the current motion.

On September 19, 2017, Andrews Myer filed its second supplement to the Andrews Motion (the "Second Supplement").[13]  The Second Supplement also asserted it was providing "additional information and evidence to be considered in conjunction with the motion filed by movants on July 28, 2017", but rather than include any additional information or evidence, it simply introduced 64 additional claimants.  Included in the Second Supplement were the remaining nine Movants that are the subject of the present motion: John McDonough, Rodney Gentry, Chas Grant, Melinda Lynch, Joann Donato, Bertha Brown, Louella Martinez, David Pier, and Shakiria Stephenson.  Copies of these nine proofs of claim are attached hereto as Exhibit B.  In considering whether to allow the late claims of this group to be filed, September 19, 2017 is the absolute earliest date the Court should deem leave to have been sought.

Certain of these nine proofs of claim provide additional information in the form of a "Proof of Claim Summary."  Based on these summaries, only Shakiria Stephenson and Joann

---

[12]    *First Supplement to Motion [ECF No. 14018] by Additional Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths* [ECF No. 14046].

[13]    *Second Supplement to Motion [Ecf No. 14018] by Additional Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths* [ECF No. 14112].

Donato allegedly were involved in accidents involving a vehicle subject to the Ignition Switch

Recall.  Melinda Lynch, David Pier, Louella Martinez, Bertha Brown, and Rodney Gentry were

all involved in alleged accidents involving a Non-Ignition Switch Recall vehicle.  With respect to

Chas Grant, the vehicle involved in the accident was a 1996 Pontiac Grand Am, which was not

part of any recall in 2014.  There is no information about the type of vehicle involved in John

McDonough's accident, and no information has ever been provided for the three Movants

included in the initial Andrews Motion.[14]

Andrews Myers filed a third supplement on December 12, 2017 that added 3 new

plaintiffs and a fourth supplement on July 19, 2018, that added 42 new claimants.[15]  Neither the

third or fourth supplements included claimants that are the subject of the present motion.

On December 5, 2019, Andrews Myers filed a status report alerting this Court to the fact

that of the 389 Plaintiffs the firm originally represented in seeking to file late claims against the

GUC Trust, "the only Andrews Myers Plaintiffs who have not reached settlements with New

GM and/or who still desire to continue pursuing their claims through the pending Late Claims

Motions are the following 9 Plaintiffs, all of whom are represented by one personal injury firm,

Kirkendall Dwyer … Bertha Brown, Joann Donato, Rodney Gentry, Chas Grant, Melinda Lynch,

Louella Martinez, John McDonough, David Pier, and Shakiria Stephenson."  Andrews Myers

filed another status report on February 25, 2020 indicating that "there are three (3) other

Plaintiffs whose claims were included in the Late Claims Motion [Doc. 14018] who have also

---

[14]     Bertha Brown, Rodney Gentry, Joann Donato and John McDonough all filed suit against New GM and had their suits dismissed for failure to submit discovery.

[15]     *Third Supplement to Motion [ECF No. 14018] by Additional Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths* [ECF No. 14195] and *Fourth Supplement to Motion [ECF No. 14018] by Additional Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths* [ECF No. 14346].

not settled their claims and were inadvertently not included in the list in the prior status report.

The three Plaintiffs are as follows: 1. Kathryn Enders 2. Sandra Samuels 3. Ruby Merritt."

On January 28, 2020, the Court entered a scheduling order[16] for the briefing of late

claims motions.  The scheduling order required the Goodwin Movants and Andrews Movants to

each file and serve a brief in support of their respective PIWD Motions by March 27, 2020.  On

March 27, 2020, in accordance with the Court's order, the Andrews Movants filed a brief[17] in

support of the Andrews Motion (the "Andrews Br.").

## OBJECTION

By this Objection, the GUC Trust respectfully requests that this Court enter an order

denying the relief sought in the PIWD Motions.

## I.    The Goodwin Motions Should Be Denied for Failure to Prosecute

On December 22, 2016, Goodwin filed the Initial Goodwin Motion seeking authority to

file late proofs of claim on behalf of 175 Ignition Switch Pre-Closing Accident Plaintiffs.  On

May 25, 2018, Goodwin filed the Supplemental Goodwin Motion seeking authority to file late

claims on behalf of 69 additional Non-Ignition Switch Pre-Closing Accident Plaintiffs.

On December 9, 2019, Goodwin filed a notice of withdrawal,[18] notifying the Court that a

majority of the Pre-closing Accident Plaintiffs that had sought to file late claims pursuant to the

Initial and Supplemental Goodwin Motions had settled their claims against New GM and the

GUC Trust.  As a result, Goodwin was withdrawing as counsel for the remaining 59 Pre-closing

---

[16]      *Scheduling Order for Briefing Late Claims Motions* [ECF No. 14661].

[17]      *Brief in Support of Motion Filed by Additional Ignition Switch Pre-Closing Accident Plaintiffs for
Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths* [ECF No. 14690].

[18]      *Notice of Withdrawal as Counsel of Record for Certain Movants Under Omnibus Motions by Certain Pre-
Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful
Deaths[Docket Nos. 13807 and 14325]* [ECF No. 14644].

Accident Plaintiffs but was not withdrawing the Goodwin Motions.[19]  Following Goodwin's

withdrawal, the Goodwin Motions remained live with respect to just 59 movants (the

"Remaining Goodwin Movants").

On January 23, 2020, the GUC Trust filed a motion[20] requesting that the Court establish a

deadline by which the Remaining Goodwin Movants would be required to indicate whether they

intended to continue prosecuting the Goodwin Motions.  On January 24, 2020, the Court entered

a show cause order[21] establishing February 26, 2020 as the deadline by which the Remaining

Goodwin Movants were required to file a notice of intention either to proceed *pro se* or to retain

new counsel.  None of the Remaining Goodwin Movants filed a notice of intention as required.[22]

Rule 41 of the Federal Rules of Civil Procedure provides that "[i]f the plaintiff fails to

prosecute . . . a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ.

P. 41(b).  Rule 41 is made applicable to adversary proceedings by Bankruptcy Rule 7041, and

Bankruptcy Rule 7041, in turn, is made applicable to contested matters by Bankruptcy Rule

9014(b).  A court also possesses "authority to dismiss *sua sponte* for lack of prosecution as part

of its 'inherent power' to manage [its] own affairs and control the docket."  *Richcourt Euro*

*Strategies Inc. v. Soundview Capital Mgmt. Ltd. (In re Soundview Elite Ltd.)*, 594 B.R. 108, 140

(Bankr. S.D.N.Y. 2018) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962)); *see also U.S.*

---

[19]     Goodwin had previously withdrawn as counsel for other Pre-Closing Accident Plaintiffs who had settled their claims with New GM.

[20]     *Ex Parte Motion of Wilmington Trust Company, as GUC Trust Administrator, for an Order Pursuant to Bankruptcy Code Section 105(A) and Local Bankruptcy Rule 9077-1 Establishing February 26, 2020 as the Deadline by Which: (I) the Remaining Late Claimants Must File a Notice of Intention to Proceed Pro Se or (II) Counsel to the Remaining Late Claimants (If Any) Must File a Notice of Appearance in This Chapter 11 Case* [ECF No. 14657].

[21]     *Show Cause Order Establishing February 26, 2020 as the  Deadline by Which: (I) the Remaining Late Claim Movants Must File a Notice of Intention to Proceed Pro Se or (II) Counsel to the Remaining Late Claim Movants (If Any) Must File a Notice of Appearance in This Chapter 11 Case* [ECF No. 14658].

[22]     Four of the Remaining Goodwin Movants contacted the Bankruptcy Court or EPIQ for further information, which was provided to them.

*ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 250-51 (2d Cir. 2004) ("[I]nvoluntary dismissal is an important tool for preventing undue delays and avoiding docket congestion.").

Because none of the Remaining Goodwin Movants has responded to the show cause order or have otherwise sought to prosecute the Goodwin Motions, the GUC Trust requests that the Goodwin Motions be denied for failure to prosecute, as well as a failure to satisfy the *Pioneer* factors (discussed below) to establish excusable neglect necessary to file a late claim.

## II.    The *Pioneer* Standard Applies to All of the Andrews Movants

The Andrews Movants argue that their ability to file late claims does not depend on demonstrating excusable neglect under the test established by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993) because their due process rights were violated.  Andrews Br. at 10.  This argument fails for a number of reasons.

As an initial matter, the Second Circuit only found that notice of the ***Sale*** was insufficient with respect to Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs; the Second Circuit never ruled whether notice of the ***Bar Date*** was insufficient to meet the standards for due process for any plaintiff.  *See Elliott*, 829 F.3d at 166 ("Because enforcing the ***Sale Order*** would violate procedural due process in these circumstances, the bankruptcy court erred in granting New GM's motion to enforce…") (emphasis added).

The Andrews Movants (purposely) ignore that there is no extant ruling that any plaintiff did not receive due process in connection with the orders that prohibit their late claims—the Bar Date Order that set November 30, 2009 as the deadline to file claims in the Old GM bankruptcy and the Late Filed Claims Order that presumptively disallowed claims filed after February 2012.

Although the Bankruptcy Court found that the Ignition Switch Plaintiffs alleging economic loss had not received due process when the Bar Date Order was entered (even though that issue was expressly excluded from the threshold issues to be decided), the litigants did not seek a determination on that issue.  In fact, the plaintiffs expressly disavowed arguments that they did not receive due process when the Bar Date Order issued.  As the Second Circuit recognized:

> The bankruptcy court lifted the bar date for independent claims as a remedy.  We note, however, that neither the Groman Plaintiffs nor Ignition Switch Plaintiffs requested this as relief.  The Ignition Switch Plaintiffs only mentioned in a footnote in their opposition to the motion to enforce that Old GM failed to provide notice of the bar date.  ***The Pre-Closing Accident Plaintiffs stated on behalf of all plaintiffs that "Plaintiffs are not asserting a due process challenge to a bar date order or a discharge injunction issued in favor of a debtor."***

*Elliott*, 829 F.3d at 168 n.31 (emphasis added).

Judge Gerber also found that the Ignition Switch Plaintiffs were precluded from recovering from the GUC Trust on equitable mootness grounds, *Motors Liquidation*, 529 B.R. at 592.  However, the Second Circuit subsequently vacated that finding and implicitly Judge Gerber's bar date finding as well because these issues were not actually presented—the plaintiffs had not asked the Bankruptcy Court to lift the Bar Date or sought leave to file late claims.  *See Elliott*, 829 F.3d at 168-69 & n.31 ("Ultimately, it is the parties, and not the court, that must create the controversy."); *accord* Fed. R. Bankr. P. 9006(b)(1) (permitting courts to extend a passed deadline only "on motion made").

As a result, even under the Andrews Movants' erroneous view that they are entitled to wait to file late claims for as long as they wish because they did not receive due process as to the Bar Date Order, there is no such ruling in force that would allow them to do so.  In other words, the Andrews Movants would still need to satisfy the *Pioneer* standard here because there is no

viable finding that they did not receive due process in connection with the Bar Date or Late Filed
Claims Orders.

Further, even assuming the notice requirements to satisfy due process were the same for
notice of the Sale and notice of the Bar Date (which they are not), a due process violation was
only established with respect to "Ignition Switch Plaintiffs." Prior to the April 2015 Decision,
the Court adopted stipulated facts, which included key definitions. "Ignition Switch Defect" was
defined to refer exclusively to the defect in vehicles that gave rise to NHTSA Recall No. 14v-
047. *See In re Motors Liquidation Co.*, 571 B.R. at 572–73, *aff'd in part, vacated in part*, 590
B.R. 39 (S.D.N.Y. 2018) ("It is clear from the April Decision that Judge Gerber used the term
'Ignition Switch Defect' to mean only the defect in the Subject Vehicles that gave rise to
NHTSA Recall No. 14v047, and plaintiffs without the specific Ignition Switch Defect—whether
the defect in their cars involved the ignition switch or not—were therefore not Ignition Switch
Plaintiffs.").

The Second Circuit specifically remanded the decision back to the Bankruptcy Court for
a determination as to whether there was a due process violation with regard to the Non-Ignition
Switch Recalls. *Elliott*, 829 F.3d at 166 ("As to claims based in non-ignition switch defects, we
vacate the bankruptcy court's decision to enjoin those claims and remand for further proceedings
consistent with this opinion.") (citation omitted).

According to the proofs of claim attached to the Andrews Motion, only two movants—
Shakiria Stephenson and Joann Donato—are alleging claims as a result of the Ignition Switch
defect. Thus, even assuming, arguendo, the due process analysis would be the same for notice of
the Sale and notice of the Bar Date, only those two Andrews Movants could arguably rely upon
the Second Circuit's due process finding. The other ten Andrews Movants received the

constructive notice of the bar date to which they were entitled. These ten Andrews Movants have not offered any proof that they were entitled to actual notice, let alone proof of a due process violation as to their Non-Ignition Switch vehicles and unequivocally must satisfy *Pioneer* before their claims can be filed.

However, even as to Stephenson and Donato, their argument that *Pioneer* is inapplicable nevertheless fails. The Andrews Movants cannot cite a single case in which a court declined to apply the *Pioneer* test because of a due process violation. In support of their argument, the Andrews Movants make two primary points. First, they maintain that the law of the case doctrine negates the need for them to satisfy *Pioneer*. Second, they argue that case law demonstrates *Pioneer* is inapplicable when a creditor did not receive adequate notice in violation of due process. The Andrews Movants are wrong on both counts.

## A.    The Law of the Case Doctrine Is Inapplicable

The Andrews Movants contend that the motion should be granted without application of the *Pioneer* factors under the law of the case doctrine. See Andrews Br. at 10–11. The law of the case doctrine provides that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case" unless "cogent and compelling reasons militate otherwise." *De Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009).

The Andrews Movants argue that the Court "concluded" in the April 2015 Decision that the proper remedy for a due process violation was leave to file late claims and that such leave could be granted without reference to *Pioneer*. Andrews Br. at 11. The Movants go on to say that because these "holdings" were not appealed, they cannot be challenged now because they constitute the law of the case. *Id*. According to the Movants, the law of the case therefore dictates that their late claims be allowed without application of the *Pioneer* factors. *Id.* As noted, the only due process violation discussed in the prior rulings invoked by the Movants

related to the Ignition Switch recall, which, according to the Movant's proposed claims, relates

only to two of the 12 Andrews Movants—Stephenson and Donato.  However, even as to them

the law of the case doctrine is inapplicable for many reasons.

First, any finding regarding late claims was advisory and thus had no legal force.  Federal

courts "only have jurisdiction over live cases or controversies" and therefore cannot "issue an

advisory opinion."  *Longway v. Jefferson Cty. Bd. of Supervisors*, 24 F.3d 397, 400 (2d Cir.

1994).  As the Second Circuit explained in *Elliott*:

> The oldest and most consistent thread in the federal law of justiciability is that
> federal courts will not give advisory opinions.  A controversy that is "appropriate
> for judicial determination . . . must be definite and concrete, touching the legal
> relations of parties having adverse legal interests."  "[F]ederal courts are without
> power to decide questions that cannot affect the rights of litigants in the case before
> them."  That is, courts may not give "an opinion advising what the law would be
> upon a hypothetical state of facts," for instance, where a party did not "seek the
> adjudication of any adverse legal interests[.]"

829 F.3d 135, 167–68 (citations omitted).

As discussed, at the time of the April 2015 Decision, the plaintiffs were seeking relief

only from New GM, not the GUC Trust.  *See id*. at 168.  Thus, when Judge Gerber found claims

against the GUC Trust were equitably moot, this finding constituted an impermissible advisory

opinion.  *Id*.  ("But plaintiffs never sought relief from GUC Trust.  The bankruptcy court's ruling

on equitable mootness was therefore advisory.").

Everything the Second Circuit said regarding equitable mootness is equally true with

respect to other late claim issues—including the Andrews Movants' right to file late claims.

Because no claim had been filed against the GUC Trust, there was no justiciable controversy

involving the GUC Trust.  Therefore, even if the Court's comment about the appropriate remedy

was a "holding" (as opposed to merely dictum), it would be a legally inoperative advisory

opinion in the absence of a live case or controversy.  Therefore, Judge Gerber's observation cannot be law of the case.

Second, and relatedly, the law of the case doctrine only applies to a court's holding and does not apply to dictum.  *See, e.g.*, *United States v. Hussein*, 178 F.3d 125, 130 (2d Cir. 1999) ("finding was mere dictum" so "the law of the case doctrine ha[d] no application"); *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 502 (S.D.N.Y. 2012) ("dictum, i.e., a statement not essential to the holding, is not the law of the case"); *see also* Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478 (2d ed. 2019) ("dictum is not the law of the case").

Black's Law Dictionary (11th ed. 2019) defines "obiter dictum" (often shortened to "dictum") as a "judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential." *See also Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 508 (2d Cir. 1996) ("'Dictum' generally refers to an observation which appears in the opinion of a court which was unnecessary to the disposition of the case before it.") (internal quotations admitted).

In the April 2015 Decision, Judge Gerber commented:  "The remedy with respect to the denial of notice sufficient to enable the filing of claims before the Bar Date is obvious.  That is leave to file late claims." *In re Motors Liquidation Co.*, 529 B.R. at 583, *aff'd in part, vacated in part, rev'd in part sub nom. Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 167 (2d Cir. 2016).  This statement, upon which the Movants' entire argument relies, falls squarely within the definition of dictum.

The April 2015 Decision did not concern the plaintiffs' rights vis-à-vis the GUC Trust; rather, the Court was deciding whether the Sale Order prevented the plaintiffs from proceeding against New GM.  Indeed, no one had sought relief from the GUC Trust at that point, and the

GUC Trust had no reason or opportunity to address whether late claims could be brought against it. *See Elliott*, 829 F.3d at 167 ("There were, however, no claims asserted against Old GM or GUC Trust in bankruptcy court or in the multi-district litigation.").

Because no relief had been sought from the GUC Trust, any so-called "finding" with respect to claims against the GUC Trust was entirely "unnecessary to the disposition of the case" and was therefore dictum. Accordingly, the law of the case doctrine does not apply.

Finally, the Movants' argument presumes (incorrectly) that the GUC Trust could have appealed the April 2015 Decision. Andrews Br. at 11 ("holdings in the April 2015 Decision were not appealed and cannot now be challenged under the law of the case doctrine"). However, "to have standing to appeal, a party must be aggrieved by the judicial action from which it appeals." *Great Am. Audio Corp. v. Metacom, Inc.*, 938 F.2d 16, 19 (2d Cir. 1991).

The GUC Trust was not "aggrieved by" the Court's April 15 Decision. Thus, there is no reason to think the GUC Trust would have satisfied the requirements for Article III standing, let alone the more restrictive standards for appellate standing in bankruptcy. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 215 (3d Cir. 2004) ("Appellate standing in the bankruptcy context is more restrictive than Article III standing."). Given that the GUC Trust lacked standing to appeal, it would be perverse to say the GUC Trust is now bound by the law of the case for failing to appeal.

## B. The Law of the Case Doctrine Does Not Excuse any of the Andrews Movants From Having to Satisfy *Pioneer*

Even if none of the foregoing were true, the law of the case would still not carry the day. The law of the case doctrine is not nearly as strict or inflexible as the Plaintiffs would like to believe. Rather, the doctrine is, "at best, a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen

what has been decided." *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000).  In the April

2015 Decision, the Court never "decided" anything concerning the applicability of *Pioneer* to

claims made against the GUC Trust because no such claims had been made.

### C.    Case Law Does Not Support the Movants' Efforts to Avoid the Application of *Pioneer*

The Andrews Movants further argue that case law supports their view that *Pioneer*'s

excusable neglect standard does not apply to late claims once a due process violation has been

established.  Again, such argument would be available only to Stephenson and Donato, but even

as to them it is incorrect.  In fact, there is case law from this District explicitly rejecting the

Andrews Movants' position.

Judge Bernstein addressed this very issue in *In re Queen Elizabeth Realty Corp.*, No. 13-

12335 (SMB), 2017 WL 1102865 (Bankr. S.D.N.Y. Mar. 24, 2017), *aff'd*, 586 B.R. 95

(S.D.N.Y. 2018).  A creditor, SMS Financial, had moved to file a late claim in the debtor's

chapter 11 case.  SMS argued that its predecessor in interest, All Points Capital, had not received

actual notice of the bar date in violation of its due process rights.  Judge Bernstein agreed with

the creditor and found the debtor had failed to provide notice consistent with due process.

*Id.* at *4.  A "threshold question" on which the parties disagreed was whether the *Pioneer*

standard applied.  *Id.* at *5.  Judge Bernstein correctly observed that the "appropriate test

depends on the relief that the creditor is seeking."  *Id.*  When a creditor seeks to file a claim after

the bar date, Bankruptcy Rule 9006 applies.  *Id.*  ("Rule 9006(b)(1) governs the permissibility of

filing a late claim in a chapter 11 case.").

Rule 9006 provides that the court may extend the time to file a claim only "where the

failure to act was the result of excusable neglect."  Excusable neglect is determined by reference

to the *Pioneer* factors.  Accordingly, because "SMS moved to file a late claim," the court found

"*Pioneer* govern[ed] disposition of the Motion." *Id.* at *6. Judge Bernstein's decision was affirmed on appeal. *See In re Queen Elizabeth Realty Corp.*, 586 B.R. 95, 103 (S.D.N.Y. 2018); *see also In re Pettibone Corp.*, 162 B.R. 791, 806 (Bankr. N.D. Ill. 1994) (applying *Pioneer* to determine excusable neglect even though creditor "received no notice of the bar date until years after it had passed").

Here, as in *Queen Elizabeth*, the Movants are seeking to file proofs of claim after the Bar Date. Therefore, the relief being sought by the Movants brings their motions under the *Pioneer* rubric. This is true for many reasons.

First, the Supreme Court's opinion in *Pioneer* supports the view that *Pioneer* applies even where a party lacked notice. In *Pioneer*, the Court considered the sufficiency of notice as just one of many "relevant circumstances" to be considered under the *Pioneer* test for excusable neglect. *Pioneer*, 507 U.S. at 398 (deeming it "significant that the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases").

Second, the text of Rule 9006 itself dictates that *Pioneer* applies. The rule provides that if a party seeks additional time to act, the court may "permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). Determining excusable neglect requires application of the *Pioneer* factors. Rule 9006 provides no exception for cases where a party did not receive notice. Instead, the rule, by its terms, applies in every case where a party seeks to take an action outside the designated time for doing so, which includes filing a late claim. The Court must apply the rule as written and cannot create an exception where one does not exist. *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 235 (3d Cir. 2008) ("The [Bankruptcy] Rules are binding and courts must

abide by them unless there is an irreconcilable conflict with the Bankruptcy Code."). As a result, Rule 9006 and the excusable neglect standard apply to the Andrews Movants' motions.

The Andrews Movants cite a number of cases in support of their argument, but these cases have no bearing on the question of whether *Pioneer* applies to their late filed claims. The majority of the cases cited by the Andrews Movants were decided before the Supreme Court's decision in *Pioneer*, making their precedential value questionable at best. And the Andrews Movants cannot cite a single case decided after *Pioneer* where a court allowed a late claim without first applying Rule 9006 on the grounds that the proponent of the claim had been denied due process.

The Andrews Movants cite *City of New York v. New York, N. H. & H. R. Co.*, 344 U.S. 293, 294 (1953), a case involving a railroad reorganization under § 77 of the Bankruptcy Act of 1898 that predated both the Bankruptcy Code and *Pioneer* by decades. In *City of New York*, the Supreme Court addressed whether publishing the bar order in newspapers constituted the statutorily-required "reasonable notice" under section 77 (c)(8) of the Bankruptcy Act. *Id.* at 296. As Judge Bernstein noted in *Queen Elizabeth*, "*City of New York* was not a constitutional decision; the Supreme Court was construing a statutory notice requirement." 2017 WL 1102865, at *6; *see also GAC Enters. v. Medaglia (In re Medaglia)*, 52 F.3d 451, 456 (2d Cir. 1995) (discussing *City of New York* and finding it "apparent that the Court was construing what was then § 77 of the Act, dealing with railroad reorganizations, and not the Constitution."). Thus, *City of New York* not once references "due process," "excusable neglect," or any related concept.

The Andrews Movants cite other, more recent decisions, but these cases are equally inapposite. In *In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 2256683, at *6 (Bankr. S.D.N.Y. May 11, 2015), this Court found that without "reasonable notice to a creditor

of the bankruptcy proceeding and the applicable bar date(s), the creditor's proof of claim cannot

be constitutionally discharged." However, the question here is not whether the Movants' claims

were discharged in bankruptcy. Further, the Court in *Residential Capital* went on to apply

*Pioneer* without ever suggesting circumstances exist where *Pioneer* would not apply. In *In re

AMR Corp.*, 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013), the court found the creditor had

received actual notice and then applied *Pioneer* to determine whether the creditor could file a

late claim. *Id*. at 665–66. Like *Residential Capital*, the decision says nothing about *Pioneer*'s

applicability where a creditor does not receive notice. *See generally id.*

       The Andrews Movants rely on three additional cases from this District that were decided

before the Supreme Court's *Pioneer* decision: *In re Drexel Burnham Lambert Grp. Inc.*, 151

B.R. 674 (Bankr. S.D.N.Y. 1993), *In re Thomson McKinnon Sec. Inc.*, 130 B.R. 717 (Bankr.

S.D.N.Y. 1991), and *In re Golden Distribs., Ltd.*, 128 B.R. 349 (Bankr. S.D.N.Y. 1991).

Because these cases predate *Pioneer*, their continued validity—at least as it relates to excusable

neglect—is doubtful. Even at a glance, it is clear that the standard applied in these cases does

not conform to the test laid out by the Supreme Court in *Pioneer*.[23]

       Setting that deficiency aside, the cases do not even support the Andrews Movants'

argument. In direct contradiction to the Andrews Movants' position, "adequacy of notice" was

found to be one of the factors considered by the court when determining whether a creditor's

---

[23]      For example, in *Drexel Burnham*, the court stated: "There are three factors to be considered in determining whether a party's failure to file a claim was the result of excusable neglect:" (1) "the adequacy of the notice provided"; (2) the source of the delay and the sophistication of the creditor"; and (3) "the prejudice that will inure to the debtor should the failure to act be overlooked." 151 B.R. at 680; *see also Golden Distribs.*, 128 B.R. at 351 (describing the "three factors underlying the doctrine of excusable neglect").

      However, this test is contradicted by more recent binding precedent. *See, e.g.*, *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 122 (2d Cir. 2005) (the four *Pioneer* factors for determining excusable neglect are: (1) "the danger of prejudice to the debtor"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) the reason for the delay, including whether it was within the reasonable control of the movant"; and (4) "whether the movant acted in good faith.").

neglect was excusable.  *Drexel Burnham*, 151 B.R. at 680 (one factor in the excusable neglect

analysis is "the adequacy of the notice provided"); *Thomson McKinnon*, 130 B.R. at 719–20

("The primary factor in determining the existence of excusable neglect for purposes of enlarging

a bar date is whether or not the creditor was given adequate notice to file a timely proof of

claim."); *In re Golden Distribs., Ltd.*, 128 B.R. 349, 351 (Bankr. S.D.N.Y. 1991) ("The three

factors underlying the doctrine of excusable neglect are (1) the adequacy of the notice provided .

. ."). These cases reinforce the notion that the excusable neglect standard applies—*even in the*

*absence of notice*.  Said differently, a lack of notice may contribute to a finding of excusable

neglect, but lack of notice does not make the excusable neglect inquiry inapplicable.

Accordingly, the Andrews Movants' reliance on these cases is misplaced.

Rule 9006 and its excusable neglect standard must be satisfied in every instance where a

party is seeking to file a late claim in chapter 11.  Because excusable neglect is determined by

reference to the *Pioneer* factors, *Pioneer* governs whether the Movants are able to file late

claims.

### D.    The Movants' Deliberate Delay Warrants Application of *Pioneer*

The Andrews Movants' theory—that *Pioneer* is inapplicable when a creditor does not

receive notice—is wrong.  But even if that were the rule, *Pioneer* would still apply because the

Andrews Movants' delay was not entirely attributable to a lack of notice.

Even after the Recalls, the Andrews Movants waited years to pursue their claims against

the GUC Trust.  New GM issued the first recall on February 7, 2014.  *Elliott*, 829 F.3d at 148.

The first lawsuit in response to the recall was filed on February 27, 2014, and by April 18, 2014,

fifty-four lawsuits had been filed against New GM.[24]  However, while hundreds of plaintiffs

---

[24]    *See Chart of Ignition Switch Actions* [ECF No.12620-1].

were filing complaints across the country, the Andrews Movants made no effort to recover

against the GUC Trust in either the MDL or the Bankruptcy Court. *Elliott*, 829 F.3d at 167.

Despite acknowledging that they were aware of potential claims in 2014, and despite the Court's

post-remand Order to Show Cause fixing December 22, 2016 as the deadline for late claims

motions, three of the Andrews Movants waited until July 28, 2017 to seek permission to file late

proofs of claim, and the remaining nine Andrews Movants waited until September 19, 2017.[25]

The Andrews Movants' *post-Recalls* delay is solely attributable to their own actions and has

nothing to do with whether they received adequate notice in 2009.

If the Andrew Movants' view is correct, and they are automatically entitled to file late

claims, they could have opted to continuously lie-in-wait, believing they had not received due

process, only to spring claims on the GUC Trust when the *in terrorem* effect of such claims

reached its peak. In the Andrews Movants' world, the Court would not be allowed to apply

*Pioneer* and consider whether such a delay was excusable because the excusable neglect

standard never applies where a creditor did not initially receive notice. That notion is

fundamentally incompatible with the Supreme Court's command that the analysis of whether to

allow late claims is "at bottom an equitable one, taking account of all relevant circumstances."

*Pioneer*, 507 U.S. at 395. Thus, at a minimum, *Pioneer* must be applied to the Andrews

Movants' post-Recalls delay.

### III. __The Length of the Movants' Delay__

Having established that *Pioneer*'s excusable neglect standard applies to all the Andrews

Movants' claims, the analysis must turn to the length of the delay and whether such delay is

---

[25]    *See Motion by Additional Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths* [ECF No. 14018].

excusable.  The Andrews Movants offer a number of arguments in support of the mistaken view

that their delay in asserting their claims was actually shorter than it truly was.  For the reasons

discussed below, these arguments fail.

### A.    The "Tolling" Agreement Does Not Apply to the Movants

The Andrews Movants all claim they are the unintended beneficiaries of the so-called

"tolling" provision in the Court's May 2014 scheduling order[26] (the "May 2014 Scheduling

Order").  However, the "Plaintiffs" referred to in the May 2014 Scheduling Order—to whom the

tolling provision applied—are a defined group of parties that does not include personal injury

wrongful death plaintiffs, or any other non-economic loss plaintiffs, like the Andrews Movants.

Therefore, the tolling provision by its terms does not apply to the Andrews Movants and does not

advance the dates on which their late claims motions should be deemed filed.

The May 2014 Scheduling Order states that "the GUC Trust agrees that it shall not assert

a timeliness objection to any claims that the *Plaintiffs* may attempt to assert against the Old GM

bankruptcy estate and/or the GUC Trust, based directly or indirectly on the ignition switch issue,

as a result of the Plaintiffs' delay in asserting such claims during the 'Interval.'"  May 2014

Scheduling Order at 3 (emphasis added).  "Plaintiffs" is not defined, but the order provides that

"Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to

such terms in the *Motion*."  *Id*. (emphasis added).

"Motion," in turn, refers to New GM's initial Motion to Enforce, filed on April 22,

2014.[27]  That Motion to Enforce defined the term "Plaintiffs" by reference to a list of actions for

---

[26]    *Scheduling Order Regarding (I) Motion of General Motors LLC  Pursuant to 11 U.S.C. §§ 105 and 363  to Enforce the Court's July 5, 2009 Sale Order and  Injunction, (II) Objection Filed by Certain Plaintiffs in  Respect Thereto, and (III) Adversary Proceeding No. 14-01929* [ECF No. 12697].

[27]    *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* [ECF No. 12620].

economic loss attached as Schedule 1 to the Motion to Enforce.  Schedule 1 lists 54 ignition-switch economic loss lawsuits filed between February 27, 2014 and April 18, 2014.[28]  Only those listed parties are "Plaintiffs" that can claim to benefit from the tolling provision.

Moreover, the initial Motion to Enforce is explicit that the "Motion to Enforce involves *only* litigation in which the plaintiffs seek economic losses against New GM."  Because the May 2014 Scheduling Order applied to that litigation (i.e., litigation in which the plaintiffs seek *economic losses* against New GM"), the only "Plaintiffs" who benefited from the toll are those *economic loss* plaintiffs whose lawsuits were listed in the schedule attached to New GM's motion.  The Andrews Movants are not economic loss plaintiffs, and, therefore, the tolling provision does not apply to them.

The Andrews Movants themselves concede that they had no involvement in the case when the May 2014 Scheduling Order was entered.  Andrews Br. at 13.  Nevertheless, they posit in conclusory fashion that "as similarly situated Ignition Switch Plaintiffs, Movants assert that they, too, are beneficiaries of the aforementioned tolling period."  *Id*.  This is simply a naked request lacking any factual or legal support.[29]

At bottom, the tolling provision referenced by the Andrews Movants applied to a discrete group of economic loss plaintiffs.  Subsequent scheduling orders incorporated by reference only the "initial case schedule" in the May 2014 Scheduling Order.  There is no mention of tolling in

---

[28]    Schedule 1 of the motion was supplemented periodically to include additional economic loss actions.  *See, e.g.*, *Notice of Filing of Tenth Supplement to Schedule "1" to the Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* [ECF No. 12950].  However, Schedule 1 did not include personal injury wrongful death plaintiffs like the Andrews Movants.

[29]    In a January 2017 status conference, former GUC Trust counsel acknowledged that for "*ignition switch economic loss plaintiffs*" the relevant delay in filing would be from February to May 2014—the time between disclosure of the Ignition Switch Defect and the start of the tolling agreement benefitting those putative plaintiffs. See Hr'g Tr. 41:4-7, dated Jan. 12, 2017 [ECF No. 13826].  However, the Andrews Movants are not "ignition switch economic loss plaintiffs," so this statement is clearly inapplicable to them.  The GUC Trust never agreed to not assert a timeliness objection against plaintiffs other than the specific group of economic loss plaintiffs that were defined "Plaintiffs."

the subsequent scheduling orders, and for good reason.  No such provision was requested at the time, and no such request was granted by the GUC Trust.  Therefore, the Andrews Movants have no basis for asserting they somehow indirectly benefited from the toll.  In reality, the Andrews Movants' delay was, at a minimum, from February 2014, when the Recalls were initiated, until July 2017, when the Andrews Motion was filed.

**B.**       **The Equitable Mootness Ruling Did Not Postpone Late Claims Motions**

The Andrews Movants also argue that the April 15 Decision's equitable mootness ruling "effectively postponed" late claims motions until after that ruling was vacated.  Andrews Br. at 15.  They contend this is true because the ruling made seeking to file a late proof of claim "a waste of time and resources."  *Id*.  Thus, it "was not until the Second Circuit vacated the equitable mootness ruling in July 2016, that the Movants had a basis to argue that they should be permitted to file their proofs of claim."  *Id*.

To begin, even if this argument were correct (it is not), it would not explain why the Andrews Movants waited more than a year after the *Elliott* decision to file their late claims motion.  The Second Circuit vacated the equitable mootness ruling (and implicitly, as already noted, the companion bar date ruling) in July 16, 2016, *see Elliott*, 829 F.3d at 169, but the Andrews Movants did not attempt to assert their claims until July 28, 2017 and September 19, 2017, more than a year later.  Standing alone, this unjustified one-year delay is more than sufficient to warrant denial of the Andrews Motion.  *See, e.g.*, *In re Enron Corp.*, 298 B.R. 513, 526 (Bankr. S.D.N.Y. 2003), *subsequently aff'd*, 419 F.3d 115 (2d Cir. 2005) (refusing to allow late claim where claim "was filed more than six months after Bar Date" and the claimant "failed to articulate any genuine reason for the delay").  It would also not explain in the least why the Andrews Movants missed the December 22, 2016 deadline established by this Court post-remand for late claims motions.

More importantly, this argument fundamentally misunderstands the claims process. Essentially, the Andrews Movants argue that because their claims could not be paid from the GUC Trust's assets, they were under no obligation to pursue those claims. Said differently, the Andrews Movants' view is that the obligation to assert claims did not arise until there was a potential source of recovery. However, the question of whether a creditor has a "claim," and therefore must file a proof of claim, is entirely separate from the question of whether the claim will ultimately be paid. Indeed, the April 15 Decision recognized this distinction when Judge Gerber found that "late claims filed by the Plaintiffs might still be allowed" despite the fact "assets transferred to the GUC Trust under the Plan could not now be tapped to pay them." *In re Motors Liquidation Co.*, 529 B.R. at 529.

The filing of a proof of claim is a protective measure; it does not guarantee a creditor will receive a distribution. Nevertheless, creditors who wish to preserve their right to a potential distribution must file a proof of claim. Fed. R. Bankr. P. 3003(c)(2) ("Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest" before the bar date set by the bankruptcy court). A "creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." *Id.*; *see also In re Motors Liquidation Co.*, 591 B.R. 501, 515 (Bankr. S.D.N.Y. 2018) ("To participate in a distribution from the debtor's estate, a creditor must generally file a proof of claim—a written statement setting forth the creditor's claim.").

The fact a claim cannot be paid does not obviate the requirement that a creditor assert the claim in order to preserve its rights. Indeed, a claim may ultimately be unenforceable for a variety of reasons, but it is still a claim. *See Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407,

1412 (2017) (noting that the "word 'enforceable' does not appear in the Code's definition of

'claim.'").  Indeed, by using terms like "unliquidated," "contingent," "unmatured," and

"disputed," the Bankruptcy Code's definition of "claim" expressly includes "rights to payment"

that are not presently payable or enforceable.  11 U.S.C. §101(5)(A).  As the Supreme Court

explained:

> Section 502(b)(1) of the Code, for example, says that, if a "claim" is
> "unenforceable," it will be disallowed.  It does not say that an "unenforceable"
> claim is not a "claim."  Similarly, §101(5)(A) says that a "claim" is a "right to
> payment," "whether or not such right is . . . fixed, contingent, . . . [or] disputed."  If
> a contingency does not arise, or if a claimant loses a dispute, then the claim is
> unenforceable.  Yet this section makes clear that the unenforceable claim is
> nonetheless a "right to payment," hence a "claim," as the Code uses those terms.

*Midland Funding*, 137 S. Ct. at 1412.

Thus, the fact that the Andrews Movants' claims, if ultimately allowed, were

unenforceable against the GUC Trust until the equitable mootness issue was resolved did not

alter the Andrews Movants' duty to promptly assert their claims.  Filing a claim never guarantees

a creditor will receive a distribution on account of the claim.  To the contrary, unsecured

creditors often receive nothing in bankruptcy.  Thus, the absence of a source of recovery cannot

possibly alleviate a creditor of its burden to timely assert its claim.  Whether pursuing a

particular claim is a "waste of time and resources" is a calculus left to each individual creditor,

but a creditor that wishes to preserve its rights must always act diligently to assert those rights.

*In re Lehman Bros. Holdings*, Inc., 433 B.R. 113, 126 (Bankr. S.D.N.Y. 2010) ("Creditors act at

their peril where they fail to adequately investigate and pursue their rights.").

### C.    The Court's Scheduling Orders Did Not Postpone Any Late Claims Motions

The Andrews Movants also argue that the Court's scheduling orders postponed the filing

of any late claims motions until after the due process issue was decided.  Andrews Br. at 15.  The

Movants state that "[t]here would have been no purpose to any Ignition Switch Plaintiff filing a late claims motion until after the Four Threshold Issues had been determined." *Id.* at 17.

Reading the scheduling orders reveals this argument is also hopelessly flawed. Nothing in the scheduling orders for the Four Threshold Issues discussed the filing of proofs of claim against the GUC Trust. And nothing in the scheduling orders prevented parties from filing a motion to allow late claims during this period. In fact, a footnote in one of the scheduling orders for the Four Threshold Issues specifically provided that "[f]or the avoidance of doubt, the issue of whether a claim asserted in the Ignition Switch Actions is timely and/or meritorious against the Old GM bankruptcy estate (and/or the GUC Trust) is not a Threshold Issue." *See*, *Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect Thereto, and (III) Adversary Proceeding No. 14-01929)* Dkt. No. 12770.

As a final related point, the Andrews Movants argue that the Court's adoption of various scheduling orders, its efforts to coordinate the briefing process, and its refusal to hear one group ahead of another or to take issues out of order justifies their failure to pursue their claims promptly after becoming aware of their claims. Andrews Br. at 18–19. In the Andrews Movants' view, "it would have been a fool's errand to pursue Movant's late claims back in 2014." *Id.* at 9. The GUC Trust agrees that throughout this litigation the Court has gone to great lengths to ensure late claims motions are adjudicated in a fair and orderly fashion. However, the Court's efforts to establish orderly procedures for deciding late-claims issues did not allow parties to wait indefinitely until those issues were resolved before seeking to assert their rights.

**IV.**    **The Movants Cannot Satisfy the *Pioneer* Test**

Because the Bar Date has passed, parties must receive the Court's permission before filing any late proof of claim. *Elliott*, 829 F.3d at 168 ("If the bar date has passed, then the initial step for an individual seeking relief against the estate would be to seek permission to file a late proof of claim: only after permission is granted can that individual claim that she is entitled to relief.").

Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure allows for the filing of late claims under limited circumstances. As provided by the Rule, the court can enlarge the period of time to act where "the failure to act was the result of *excusable neglect*." Fed. R. Bankr. P. 9006(b)(1) (emphasis added). The burden is on the claimant to prove that he or she did not timely file the proof of claim because of excusable neglect. *In re Andover Togs, Inc.*, 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999). Excusable neglect is determined by reference to the *Pioneer* factors. The factors are:

(1)    the risk of prejudice to the debtor;

(2)    the length of the delay and its potential impact on judicial proceedings;

(3)    the reason for the delay, including whether it was within the reasonable control of the movant; and

(4)    the movant's good faith.

*Pioneer*, 507 U.S. at 395.

The *Pioneer* factors are rigorously applied. The leading bankruptcy treatise accurately describes a "reluctance on the part of the courts to be generous in determining whether the situation is one resulting from neglect that is excusable." 10 Collier on Bankruptcy ¶ 9006.06 (16th ed. 2019). The Second Circuit, in particular, takes a "hard line" in applying *Pioneer*. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003). Accordingly, the

expectation is that "a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Id.* at 366–67; *see also In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 127 (Bankr. S.D.N.Y. 2010) ("Excusable neglect is tough to demonstrate under *Pioneer* especially where the bar date order in question is clear."); *Nicholson v. City of Warren*, 467 F.3d 525, 526 (6th Cir. 2006) ("Excusable neglect has been held to be a strict standard which is met only in extraordinary cases."). Where, as here, a chapter 11 plan has been consummated, courts use "added caution" in evaluating claims of excusable neglect. *Atlas v. Chrysler, LLC (In re TALT)*, No. 05-10576–05-10601 (ALG), 2010 WL 2771841, at *3 (Bankr. S.D.N.Y. July 13, 2010).

Because the Andrews Movants have failed to demonstrate excusable neglect under the *Pioneer* standard, the Andrews Motion must be denied.

### A.    The Risk of Prejudice

First, the risk of prejudice to the GUC Trust, as successor to the debtor, is immense. The GUC Trust has limited funds from which to satisfy outstanding claims, and these funds would dissipate quickly if the GUC Trust were inundated with late-filed claims. Additional late claims motions would also prejudice the holders of the GUC Trust's units, who have either acquired or retained their units with the expectation of future distributions. *In re BGI, Inc.*, 476 B.R. 812, 825 (Bankr. S.D.N.Y. 2012) (refusing to allow a late claim that would "drastically change the estimated recovery for unsecured creditors").

The GUC Trust is under constant threat of late claims, and these claims may arise in unimaginable ways. From ex-employees alleging civil rights violations, *see Gillispie v. Wilmington Trust Co. (In re Motors Liquidation Co.)*, 599 B.R. 706 (S.D.N.Y. 2019), to auto parts suppliers seeking CERCLA contributions, *see In re Motors Liquidation Co.*, 598 B.R. 744 (Bankr. S.D.N.Y. 2019), late claims pose a continuous risk to the GUC Trust. As this Court recently acknowledged, the prejudice factor is particularly relevant in a case of this size. *In re*

-31-

*Motors Liquidation Co.*, 598 B.R. at 759 (finding that the "fear of rampant late-claims litigation is especially germane in a case like this one where the universe of potential creditors is practically limitless").

As prior late-claims litigation in this case illustrates, determining whether a given creditor's "neglect" is sufficiently "excusable" frequently entails time-consuming litigation at great expense to the GUC Trust. The mere prospect of litigating additional post-bar-date proofs of claim is enough to prejudice the GUC Trust. *In re Keene Corp.*, 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995) (finding "the legal fees the estate would potentially expend in litigating [late claims] supports a finding of prejudice").

Bankruptcy courts recognize that allowing even a single late claim risks inspiring similar efforts from other creditors who also missed the bar date. *Meadows v. AMR Corp.*, 539 B.R. 246, 252 (S.D.N.Y. 2015) (finding that the allowance of late claims "years after the confirmation of the debtors' reorganization plan would create a serious risk of opening the floodgates to other potential late claims"). Thus, prejudice to the GUC Trust is traceable to not only these particular claims, but to "the impact of permitting exceptions that will encourage others to seek similar leniency." *Lehman Bros. Holdings*, 433 B.R. at 121. For this reason, the prejudice factor weighs heavily against allowing the Movants' claims.

### B. The Length of the Delay

Second, the delay is obviously substantial. Allowing additional proofs of claim to be filed over a decade after the Bar Date passed would be unprecedented. *See In re Enron Corp.*, 419 F.3d 115, 128 (2d Cir. 2005) (surveying case law and finding that "claims filed as late as two years after the bar date" represent the outer limit of what courts have allowed). Significantly, in the interim between the Bar Date and now, the Debtors sold their assets, confirmed a chapter 11 plan, and that plan was substantially consummated. Given the amount of

time that has passed and the fact that nearly all case activity has already occurred, the delay also weighs heavily against allowing late claims.

There was, at a minimum, a period of forty months where the Andrews Movants were aware of the facts giving rise to their claims, yet they failed to assert the claims. The Recalls took place in February and March of 2014. From that point forward, the Andrews Movants could have asserted the claims, yet the Andrews Motion was not filed until July of 2017 and then supplemented in September. In absolute terms, this delay, far exceeds delays that courts have found to be substantial in similar cases. *In re BGI, Inc.*, 476 B.R. 812, 826 (Bankr. S.D.N.Y. 2012) (delay of "nearly eight months" weighed against allowing late claim); *In re Dana Corp.*, No. 06–10354, 2008 WL 2885901, at *6 (Bankr. S.D.N.Y. 2008) (twenty-one month delay is substantial); *Enron Creditors Recovery Corp.*, 370 B.R. at 103 (fifteen month delay is substantial); *In re AMR Corp.*, 492 B.R. 660, 667 (Bankr. S.D.N.Y. 2013) (finding that filing claim "more than five months after the Court entered the Bar Date Order and more than three months after the Bar Date had passed" was "significant").

The Andrews Movants attempt unsuccessfully to argue their delay was in fact shorter. As discussed at length above, these arguments are unfounded. But, assuming the delay was shorter, the Court would still be well within its rights to deny the Andrews Motion. For example, the Andrews Movants contend that they were not required to assert their claims until the equitable mootness ruling was vacated. However, they cannot explain why they waited a full year after this ruling was vacated before filing their motion.

Case law makes clear that even a very minor delay is ground for denying a late claim when the reason for the delay is inadequate. *See In re Enron Corp.*, 419 F.3d at 128–29 (noting that filing "one day late" may be inexcusable if the reason is insufficient); *In re Kmart Corp.*,

381 F.3d 709, 714 (7th Cir. 2004) (finding the court did not abuse its discretion in refusing to allow a late claim even though the "proof of claim was only one day late"); *Graves v. Deutsche Bank Sec., Inc.*, No. 07 CIV. 05471 BSJ, 2011 WL 1044357, at *2 (S.D.N.Y. Mar. 4, 2011) (same). In addition, a delay in seeking late-claim relief, after full knowledge of the operative facts, will cause the denial of such relief. *See In re Tronox Inc.*, 09-10156 (ALG), 2014 WL 5801058, at *2 (Bankr. S.D.N.Y. Nov. 7, 2014) (denying motion to file late claims where claimant's "delay even after it learned the key facts on which it relies is substantial and insufficiently explained").

Because the Andrews Movants waited over three years after the Recalls to assert their claims, the length of the delay also weighs against allowing their late claims.

### C.    The Reason for the Delay

The third factor—the reason for the delay—is normally the pivotal factor in the *Pioneer* analysis. The reason is that, in a typical case, "three of the factors [i.e., prejudice, length of delay and good faith] usually weigh in favor of the party seeking the extension," so "[the Second Circuit] and other circuits have focused on the third factor." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d at 366. This case, however, is not a typical case. As discussed, the first two factors— prejudice and length of delay—do not weigh in favor of the party seeking the extension. To the contrary, these factors strongly favor ***not*** allowing late claims.

The Andrews Movants state that the reason for their delay was the Debtors' "failure to provide appropriate notice of the Bar Date to its known creditors with claims relating to the Ignition Switch Defect." Andrews Motion at 12. To start, the due process violation related to the ***Sale Order***; no due process violation was established with respect to the ***Bar Date Order***. Moreover, only those Movants whose claim arose out of NHTSA Recall Number 14v047 can plausibly argue that their delay was attributable, at least in part, to lack of notice. No due

process violation has been established as to non-Ignition Switch Plaintiffs and no evidence has been offered by the ten Non-Ignition Switch Plaintiffs supporting the claim that they were known creditors entitled to notice of the Bar Date.  Therefore, non-Ignition Switch Plaintiffs were only entitled to constructive notice, which they adequately received.

For the Andrews Movants, a due process violation argument would only be potentially viable with respect to the two "Ignition Switch Plaintiffs"— Shakiria Stephenson and Joann Donato—whose claims are based on NHTSA Recall Number 14v047.  But even as to them, a lack of notice would only account for part of their delay.  At the latest, the Andrews Movants were on notice that they had a potential claim against Old GM in early 2014 when their vehicles were recalled.  The Andrews Movants concede this point.  Andrews Br. at 12.  However, the Andrews Motion was not filed until July 2017.  This portion of the delay is obviously not attributable to a lack of notice.  Following the Recalls, the Andrews Movants had all of the facts needed to decide whether or not to file a claim, but they nevertheless waited for over three years to do so.  This delay is solely attributable to the Andrews Movants' own actions.

Even when a creditor does not initially receive notice, a creditor that subsequently learns it has a claim must still promptly assert its rights.  9 Collier on Bankruptcy ¶ 3003.03 (16th ed. 2020) ("A creditor must act promptly to seek an extension of the bar date once it has notice of it."); *see also In re Nortel Networks, Inc.*, 531 B.R. 53, 66 (Bankr. D. Del. 2015) (refusing to allow late claim where creditors "waited approximately six months to file the Motion after 'discovering' their potential claims"); *In re Bicoastal Corp.*, 147 B.R. 807, 810 (Bankr. M.D. Fla. 1992) (refusing to allow late proof of claim where creditor "did not attempt to file a claim in the Debtor's case for a full year after it admittedly knew of the Debtor's case"); *In re Mirant Corp.*, No. 03-46590-DML-11, 2006 Bankr. LEXIS 4548, at *6 (Bankr. N.D. Tex. May 3, 2006)

("the excusable neglect rule requires diligence on the part of the claimant"). *Cf. United States v. Cardinal Mine Supply*, 916 F.2d 1087, 1089 (6th Cir. 1990) (finding insufficiently notified creditor "must be permitted to file tardily ***when the creditor does so promptly after learning of the bankruptcy***") (emphasis added).

The Andrews Movants offer no legitimate reason for why they waited to assert their claims against the GUC Trust. Therefore, the third factor also supports denying the Andrews Motions.

### D.    The Movants' Good Faith

As to the fourth and final element, the GUC Trust does not propose that the Andrews Movants' claims and motions were necessarily filed in bad faith; however, the Andrews Movants' excessive delay certainly weighs against a finding of good faith. *In re Xechem Int'l, Inc.*, 424 B.R. 836, 845 (Bankr. N.D. Ill. 2010) (finding that creditor's "lack of diligence in asserting his claims against the Debtor . . . weigh[ed] against a finding of good faith"); *In re Turney*, No. 18-80674-TRC, 2019 Bankr. LEXIS 3934, at *5 (Bankr. E.D. Okla. Dec. 31, 2019) ("Acting promptly and pursuing its rights diligently is critical and reflects upon the good faith of the movant in seeking an extension of an expired deadline."). Furthermore, it must be noted that the Andrews Movants do not claim they were unaware of the Court's order establishing December 22, 2016 as the deadline for filing late claims motions, and, in fact, they acknowledge that they were aware of the proceedings in this Court as early as October 2014. Yet, the Andrews Movants did not seek to file late claims until after it was disclosed that the GUC Trust was in settlement discussions with certain other personal injury, wrongful death plaintiffs.[30]

---

[30]    *See* 5/17/17 Bankr. Hr'g Tr. at 266:21–23 (explaining to the Court that "if we are going to have a deal, it's within the next certainly 30 days and maybe before that"); 6/16/17 Letter to Judge Glenn [ECF No. 13962] (informing the Court "that discussions are ongoing between the Ignition Switch Plaintiffs, Non-Ignition Switch Plaintiffs, Pre-Closing Accident Plaintiffs, and the GUC Trust . . ."); 6/30/17 Letter to Judge Glenn [ECF No.

Moreover, the presence of good faith is almost never a determinative factor in the *Pioneer* analysis. *See Silivanch*, 333 F.3d at 366 ("And rarely in the decided cases is the absence of good faith at issue."). Assuming the Andrews Movants acted in good faith, this single factor cannot singlehandedly overcome the Andrews Movants failure to meet the other requirements for excusable neglect. *See In re Lehman Bros.*, 433 B.R. at 121 (although there was no evidence of movants' having acted in bad faith, movants' good faith was insufficient to overcome their inability to demonstrate excusable neglect).

All four *Pioneer* factors weigh against allowing the Andrews Movants to file late proofs of claim. The Andrews Motion should therefore be denied.

## **NOTICE**

Notice of this Objection has been provided in accordance with the Court-approved notice procedures. *See Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rules 1015(c) and 9007 Establishing Notice and Case Management Procedures*, dated May 5, 2011 [ECF No. 10183]. The GUC Trust submits that no other or further notice need be provided.

---

13981] ("discussions continue between the Ignition Switch Plaintiffs, certain Non-Ignition Switch Plaintiffs, certain Pre-Closing Accident Plaintiffs, and the GUC Trust, which may obviate the need for scheduling a hearing on the Initial Late Claims Motion Issues").

## CONCLUSION

WHEREFORE, for the reasons stated herein, the GUC Trust respectfully requests that the

Court deny the PIWD Motions.

Dated: New York, New York
      April 20, 2020

Respectfully submitted,

   /s/  Kristin K. Going_____

**MCDERMOTT WILL & EMERY LLP**
Kristin K. Going
340 Madison Ave.
New York, New York 10173
Telephone:    (212) 547-5429
Facsimile:    (646) 417-7313
E-mail:    kgoing@mwe.com

*Attorneys for the Motors Liquidation
Company GUC Trust*