**HEARING DATE AND TIME: May 8, 2020 at 2:00 p.m. (Eastern Time)**
**OBJECTION DEADLINE: May 6, 2020 at 12:00 p.m. (Eastern Time)**

**BINDER & SCHWARTZ LLP**
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Telephone: (212) 510-7008

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

                                              Debtors.

------------------------------------------------------------------------x

MOTORS LIQUIDATION COMPANY AVOIDANCE
ACTION TRUST, by and through the Wilmington Trust
Company, solely in its capacity as Trust Administrator and
Trustee,

                                              Plaintiff,

                          against

JPMORGAN CHASE BANK, N.A., *et al.*,

                                              Defendants.

------------------------------------------------------------------------x

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

Adversary Proceeding

Case No. 09-00504 (MG)

**MOTION OF MOTORS LIQUIDATION COMPANY AVOIDANCE ACTION TRUST**
**FOR ENTRY OF AN ORDER APPROVING ENTRY INTO AMENDED**
**SETTLEMENT AGREEMENT AND RELEASE AGREEMENT**

# CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

JURISDICTION AND VENUE ................................................................................................... 1

PRELIMINARY STATEMENT .................................................................................................. 2

BACKGROUND .......................................................................................................................... 3

    I.     The ELPs And New GM Object To The AAT's Distribution Of Proceeds To Its
            Beneficiaries ................................................................................................................. 3

    II.    The GUC Trust Reaches A Settlement With The ELPs And New GM ....................... 5

    III.   The AAT Reaches A Settlement with The ELPs And New GM And Becomes A Party
            To The Global Settlement ............................................................................................ 6

BASIS FOR REQUESTED RELIEF ........................................................................................... 8

    I.     The AAT's Entry Into The Amended Settlement Agreement Should Be Approved .... 8

    II.    The *Iridium* Factors Support Approval Of The AAT's Entry Into The Amended
            Settlement Agreement ................................................................................................... 9

    III.   The Court Should Authorize The AAT To Allocate $2.2 Million From Its Expense
            Reserve To Fund The Settlement ................................................................................ 11

CONCLUSION ........................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*HSBC Bank USA, Nat'l Ass'n v. Fane (In re MF Global Inc.)*,
 466 B.R. 244 (Bankr. S.D.N.Y. 2012) ................................................................. 8

*In re Adelphia Commc'ns Corp.*,
 327 B.R. 143 (Bankr. S.D.N.Y. 2005) ................................................................. 8

*In re Ambac Fin. Grp., Inc.*,
 457 B.R. 299 (Bankr. S.D.N.Y. 2011) ............................................................. 9, 11

*In re Motors Liquidation Co.*,
 555 B.R. 355 (Bankr. S.D.N.Y. 2016) ................................................................. 8

*In re Residential Capital, LLC*,
 497 B.R. 720 (Bankr. S.D.N.Y. 2013) ................................................................. 8

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
 478 F.3d 453 (2d Cir. 2007) ............................................................................. 9

*Nuevo Pueblo, LLC v. Napolitano (In re Nuevo Pueblo, LLC)*,
 608 F. App'x 40 (2d Cir. 2015) ......................................................................... 8

**Statutes**

11 U.S.C § 1142 .................................................................................................. 1

11 U.S.C § 363 ................................................................................................... 1

11 U.S.C. § 105 ............................................................................................... 1, 2

28 U.S.C. § 1334 ................................................................................................ 1

28 U.S.C. § 1409 ................................................................................................ 2

28 U.S.C. § 157 ............................................................................................... 1, 2

**Rules**

Fed. R. Bank. P. 9019 ..................................................................................... 1, 2, 8

TO:    **THE HONORABLE MARTIN GLENN**
       **UNITED STATES BANKRUPTCY JUDGE**

The Motors Liquidation Company Avoidance Action Trust (the "**AAT**"), as established

under the Debtors' Second Amended Joint Chapter 11 Plan (as confirmed, the "**Plan**") (Bankr.

Dkt. No. 9836)[1], respectfully submits this motion (the "**Motion**") pursuant to sections 105(a),

363, and 1142 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of an

order, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Approval Order**"): (i)

approving the AAT's entry into a global settlement agreement, as amended on May 1, 2020,

attached hereto as <u>Exhibit B</u> (the "**Amended Settlement Agreement**") and the release

agreement attached thereto (the "**Release Agreement**"), which resolves all potential claims that

could have been asserted by the economic loss plaintiffs (the "**ELPs**") and General Motors LLC

("**New GM**") related to this bankruptcy proceeding and the other matters defined in the

Amended Settlement Agreement and Release Agreement; (ii) authorizing the AAT to allocate

$2.2 million in funds from the AAT's expense reserve to make the settlement payment described

in the Amended Settlement Agreement; (iii) authorizing the AAT to take all actions necessary or

appropriate to effectuate the Amended Settlement Agreement; and (iv) granting such other and

further relief as the Court deems proper.

## **JURISDICTION AND VENUE**

1.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334; paragraph II of the order of the Court confirming the Plan, Bankr. Dkt. No. 9941 (the

"**Confirmation Order**"); Article XI of the Plan; and Paragraph K and Sections 8.1(e) and 13.3

---

[1] All references to the Bankruptcy Docket are to *In re Motors Liquidation Company f/k/a General Motors Corporation*, Case No. 09-50026.

of the Fourth Amended and Restated Motors Liquidation Company Avoidance Action Trust

Agreement, Bankr. Dkt. No. 14443 (the "**AAT Agreement**").

2.        This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before

this Court pursuant to 28 U.S.C. § 1409.  The statutory predicates for the relief requested are

section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**PRELIMINARY STATEMENT**

3.        Now that the settlement agreement among the Motors Liquidation

Company GUC Trust (the "**GUC Trust**"), the ELPs and New GM has been amended to include

the AAT, it promises to bring complete resolution of all disputes concerning the ELPs' potential

claims against the bankruptcy estate of General Motors Corporation ("**Old GM**").  The

agreement reached among all parties has already benefited the estate greatly because it

immediately removed all remaining obstacles to the AAT's distribution of proceeds to its

unsecured creditor beneficiaries; and, on that basis, the Court already has authorized the AAT to

proceed with its distribution.

4.        Absent the AAT's participation in the settlement agreement, the cloud of

continued potential litigation concerning the ELPs' purported claims against the Old GM estate

would continue to hang over the estate.  Even if the AAT were ultimately to defeat those claims,

the economic costs of reaching that outcome could be significant, and creditor distributions could

be meaningfully delayed in the process.

5.        Relative to the potential costs and delays, the cost of the settlement to the

AAT is modest.  The AAT has agreed to use $2.2 million from its expense reserve to contribute

to the common settlement fund established under the Amended Settlement Agreement, provided

that the settlement is finally approved in the MDL case.  The AAT has agreed to treat this

payment as allocable solely against its unsecured creditor beneficiaries to ensure that the

2

settlement payment will not diminish the share of any future distributions that may be made to

the United State Department of the Treasury and Export Development Canada (together, the

"**DIP Lenders**").

6.    Importantly, the peace that this settlement achieves for the Old GM estate

is not dependent upon final approval of the settlement in the MDL case.  The Release Agreement

becomes effective upon the earlier of (a) the AAT making its distribution to unsecured creditors

or (b) the order approving this motion becoming a final non-appealable order.

7.    As previously authorized by the Court, this motion is being made upon

shortened notice and without a hearing unless an objection is filed.  Applying the *Iridium* factors,

and for all of the reasons set forth below, the relief requested herein should be approved.

## **BACKGROUND**

### I.    **The ELPs And New GM Object To The AAT's Distribution Of Proceeds To Its Beneficiaries**

8.    Pursuant to the Plan, the AAT was created for the "sole purpose" of

maximizing the value of its only asset—the avoidance action initially commenced by the

unsecured creditors' committee styled *Motors Liquidation Company Avoidance Action Trust v.*

*JPMorgan Chase Bank, N.A., et al.*, Adv. Proc. No. 09-00504 (Bankr. S.D.N.Y.) (the "**Term**

**Loan Avoidance Action**")—and distributing the proceeds to its beneficiaries: the DIP Lenders

and unsecured creditors that hold allowed claims.  AAT Agreement ¶ E & § 2.2.

9.    After years of litigation, the AAT successfully resolved the Term Loan

Avoidance Action by entering into a settlement, approved by the Court on June 13, 2019.  Bankr.

Dkt. No. 14530.  The AAT received $231 million in settlement proceeds on July 1, 2019 and a

week later filed a motion with this Court seeking approval of its plan to distribute the net

settlement proceeds to its beneficiaries (the "**AAT Distribution Motion**").

3

10.     Both the ELPs and New GM objected to the AAT Distribution Motion based on the ELPs' alleged potential future claims against the AAT.  Bankr. Dkt. Nos. 14571 & 14572.  At the time the AAT Distribution Motion was filed, a motion was pending that sought the Court's approval of a settlement agreement between the ELPs and the GUC Trust, which would have fully resolved the ELPs' motions seeking to file late proofs of claim (the "**Proposed Proofs of Claim**") against the Old GM bankruptcy estate and waived any right by the ELPs to recover from the AAT.  On the basis of that pending settlement, the ELPs sought a delay of the AAT's distribution until after the Court decided whether to approve the settlement.  In the event that the settlement were not approved, the ELPs planned to pursue a motion seeking leave to file their Proposed Proofs of Claim that, if ultimately successful, could have resulted in potential distributions from the GUC Trust and the AAT to the ELPs as unsecured claimholders.[2]

11.     Following a hearing on August 12, 2019, the Court permitted the AAT's initial distribution to the DIP Lenders, but reserved decision on the AAT's distributions to unsecured claimholders on the basis of the objections that had been filed.  Bankr. Dkt. No. 14611.

12.     In September 2019, the proposed settlement between the ELPs and the GUC Trust was terminated following an August 2019 summary judgment decision by Judge Furman in the MDL litigation that resulted in uncertainty regarding whether the pending settlement could be approved.  Beginning in September 2019, New GM, the ELPs, and the GUC Trust engaged in negotiations in an effort to reach a settlement of both the MDL and bankruptcy litigation involving the ELPs.

---

[2] New GM also argued that the AAT should be required to establish a reserve in advance of its initial distribution in the event that the ELPs became allowed claimholders who were entitled to a distribution from the AAT.

13.     The Court held additional hearings relating to the remaining aspects of the

AAT Distribution Motion on December 10, 2019, and February 5, 2020.  On February 5, 2020,

the Court ordered the AAT to participate in a mediation with the ELPs and New GM to see

whether they could reach a resolution of their dispute.  The ELPs, New GM, and the AAT

participated in a mediation before retired Judge Layn Phillips and engaged in subsequent

settlement discussions among all counsel but were unable to reach a mediated resolution of their

dispute at that time.

## II.    The GUC Trust Reaches A Settlement With The ELPs And New GM

14.     While the AAT Distribution Motion was still pending, the GUC Trust, the

ELPs and New GM reached a settlement (the "**Settlement Agreement**") to resolve the MDL

litigation between the ELPs and New GM pending before the MDL Court.[3]  The Settlement

Agreement also released the GUC Trust from any potential liability with respect to the ELPs'

Proposed Proofs of Claim, thereby resolving the litigation between the GUC Trust and the ELPs.

The AAT was not a party to the Settlement Agreement and was not released.

15.     The Settlement Agreement, while resolving all claims between the GUC

Trust and the ELPs, permitted the filing of the ELPs' Proposed Proofs of Claim and purported to

preserve the ELPs' potential claims against the Old GM bankruptcy estate for potential recovery

from the AAT.  Settlement Agreement ¶¶ 142-43.  The Settlement Agreement did not release, to

the extent recoverable from the AAT, Old GM or the Old GM bankruptcy estate from litigation

concerning the ELPs' Proposed Proofs of Claim to the extent recoverable from the AAT; nor did

the Settlement Agreement release Old GM or the Old GM bankruptcy estate from claims that

---

[3] A copy of the Settlement Agreement was attached as Exhibit A to the GUC Trust's motion seeking
approval of the Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "**GUC
9019 Motion**").  Bankr. Dkt. No. 14691.

could be asserted by New GM to the extent recoverable from the AAT.  *See id.* ¶ 129 (claims

against or recoverable from the AAT are expressly preserved); *id.* ¶ 142 (Proposed Proofs of

Claim shall be unaffected by the settlement as against the AAT, Old GM and the Old GM

bankruptcy estate to the extent recoverable from the AAT).  Thus, while the Settlement

Agreement resolved the GUC Trust's potential liability on account of the Proposed Proofs of

Claim, it preserved those claims as against the estate to the extent recoverable from the AAT.

16.    On March 27, 2020, the GUC Trust filed its 9019 Motion with the Court

seeking approval of the Settlement Agreement.  Bankr. Dkt. No. 14691.

17.    The AAT filed an objection to the GUC 9019 Motion, contending, among

other things, that the GUC 9019 Motion should be denied because the Settlement Agreement

failed to resolve the litigation against the Old GM bankruptcy estate and would result in

continued expense, delay and potential exposure for the estate to the extent recoverable from the

AAT.  The AAT also asserted that the Settlement Agreement was inconsistent with the Plan, the

GUC Trust Agreement and the AAT Agreement because it imposed claims-resolution

responsibilities upon the AAT that were specifically and exclusively entrusted to the GUC Trust

under the Plan and the governing post-confirmation agreements.  The GUC Trust and New GM

filed replies that disputed the AAT's contentions.

## III.    The AAT Reaches A Settlement with The ELPs And New GM And Becomes A Party To The Global Settlement

18.    Late in the evening prior to the April 23, 2020 joint hearing on the GUC

9019 Motion and the motion for preliminary approval of the settlement pending before the MDL

Court (the "**Joint Hearing**"), the AAT reached a settlement in principle with the ELPs and New

GM, resolving the ELPs' potential claims against the AAT that were preserved under the

Settlement Agreement.

19.     Under the settlement in principle reported to the Court at the Joint Hearing, upon final approval of the class action settlement in the MDL, the AAT will contribute $2.2 million to the Common Fund (as defined in the Amended Settlement Agreement); and the ELPs, New GM, and the AAT will agree to mutual releases to include the release of all potential claims related to this case against Old GM, the Old GM bankruptcy estate and the AAT.

20.     In addition, and on the basis of the settlement in principle, (i) the AAT withdrew its objection to the GUC 9019 Motion, Bankr. Dkt. No. 14708 (the "**AAT Objection**"); (ii) the DIP Lenders withdrew their joinder to the AAT Objection, Bankr. Dkt. No. 14714; and (iii) the ELPs and New GM withdrew their objections to the AAT Distribution Motion, Bankr. Dkt. Nos. 14571 and 14572.

21.     The terms of the settlement in principle were previewed for the Court by letter in advance of the Joint Hearing, Bankr. Dkt. No. 14729, and discussed in more detail at the Joint Hearing.  At the Joint Hearing, the Court directed the AAT to file a motion seeking approval of the AAT's entry into the settlement on or before May 1, 2020, and authorized the AAT to do so on shortened notice such that any objections must be filed on or before noon on May 6, 2020.  Following the Joint Hearing, the Court issued orders approving the GUC 9019 Motion (Bankr. Dkt. No. 14730) and the AAT Distribution Motion (Bankr. Dkt. No. 14731).

22.     The Settlement Agreement previously approved by this Court has now been amended to add the AAT as a party and to document the settlement in principle that was reported to the Court at the Joint Hearing.  The AAT respectfully requests that that Court approve the AAT's entry into the Amended Settlement Agreement.

## BASIS FOR REQUESTED RELIEF

### I.    The AAT's Entry Into The Amended Settlement Agreement Should Be Approved

23.    The AAT's entry into the Amended Settlement Agreement should be approved under Bankruptcy Rule 9019, which provides that the court "may approve a compromise or settlement."  The decision to approve a particular settlement under Rule 9019 lies within the sound discretion of the court.  *In re Residential Capital, LLC*, 497 B.R. 720, 750 (Bankr. S.D.N.Y. 2013).  And this discretion should be exercised "in light of the general public policy favoring settlements."  *Id.* at 749 (quotations omitted).

24.    The bankruptcy court "must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable, and in the best interests of the estate before it may approve a settlement." *In re Motors Liquidation Co.*, 555 B.R. 355, 365 (Bankr. S.D.N.Y. 2016).  The settlement proposed need not constitute the best possible outcome for the settling party, and the bankruptcy court need not conduct an independent investigation into the reasonableness of the settlement.  *See In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005); *see also HSBC Bank USA, Nat'l Ass'n v. Fane (In re MF Glob. Inc.)*, 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012) (stating "the court is not required to go so far as to conduct a trial on the terms to approve a settlement").  Instead, the bankruptcy court must "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  *Nuevo Pueblo, LLC v. Napolitano (In re Nuevo Pueblo, LLC)*, 608 F. App'x 40, 42 (2d Cir. 2015) (internal citation and quotations omitted).

25.    The Second Circuit has set forth the following seven interrelated factors (the "***Iridium* Factors**") to evaluate whether a proposed settlement is fair and equitable:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay; (3) the paramount interests of

8

creditors; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*In re Ambac Fin. Grp., Inc.*, 457 B.R. 299, 303 (Bankr. S.D.N.Y. 2011) (citing *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 453, 462 (2d Cir. 2007)).

26.    Approval of the AAT's entry into the Amended Settlement Agreement pursuant to Bankruptcy Rule 9019 is justified under the *Iridium* Factors.

## II.    The *Iridium* Factors Support Approval Of The AAT's Entry Into The Amended Settlement Agreement

27.    The first two *Iridium* Factors—(1) the balance between the litigation's likelihood of success and the settlement's benefits and (2) the likelihood of complex and protracted litigation—are easily met.

28.    The Amended Settlement Agreement will rescue the Old GM estate from continued complex and protracted litigation.  Although the AAT believes that the Proposed Proofs of Claim would not ultimately result in liability for the AAT for reasons argued to the Court on a number of occasions, there is no question that disputing and defending against those claims would be costly and eat away at the funds available for distribution to creditors and could potentially have delayed the AAT's ability to move forward with its initial distribution of approximately $103 million to unsecured creditors for many months, and even years. Accordingly, the Amended Settlement Agreement is justified when measured by the cost-savings to the estate and the time-value of further protracted delays of the AAT's distribution of proceeds to its beneficiaries.

9

29.    The third and fourth *Iridium* Factors—the paramount interests of creditors and whether other interested parties support the settlement—also favor approving the settlement.

30.    Because the Amended Settlement Agreement now includes the AAT, if the AAT's entry into the settlement is approved and the Amended Settlement Agreement is approved on a final basis by the MDL Court, the Old GM bankruptcy estate will have achieved complete peace with regard to any further risk of claims asserted by the ELPs.  This will assist the AAT in maximizing creditor recoveries by proceeding apace with its distribution plan and then winding down without further delay, distraction or cost occasioned by having to fend off the ELPs' claims.

31.    The AAT's largest beneficiaries are the DIP Lenders.  The DIP Lenders do not object to the AAT's entry into the Amended Settlement Agreement.  Further, because the AAT's $2.2 million settlement payment will be funded from its expense reserve and, for distribution-calculation purposes, will be considered as though it is a distribution solely to unsecured creditors, the Amended Settlement Agreement will not diminish any future distribution to the DIP Lenders in the event that there are sufficient proceeds remaining to warrant a further distribution.

32.    The AAT is not aware of any party in interest that opposes the AAT's entry into the Amended Settlement Agreement.

33.    With respect to the sixth *Iridium* Factor, the nature and breadth of releases, as already set forth above, the Amended Settlement Agreement and the Release Agreement provide for releases that are tailored to release the estate from any future liability related to this bankruptcy case to the parties to the settlement.  The releases will ensure complete and final resolution of all of the claims asserted in this case and potential claims that could be asserted.

*See In re Ambac Fin. Grp., Inc.*, 457 B.R. at 307 (releases acceptable because they were an integral and necessary aspect of settlement).  Finally, the Release Agreement is not contingent upon final approval of the class action settlement in the MDL.

34.    With respect to the fifth and seventh *Iridium* Factors, the global settlement is the product of arm's-length, good faith negotiations.  All parties to the Amended Settlement Agreement were represented by skilled counsel, who negotiated zealously on behalf of their clients' respective interests.  Further, the AAT consulted closely with its monitor, Arthur Gonzalez, throughout the negotiation of the Amended Settlement Agreement and benefited from his independent insight into how best to achieve the most favorable resolution for the AAT and its beneficiaries.  The path to the Amended Settlement Agreement was arduous, including an unsuccessful mediation session that ultimately spurred continued, fruitful dialogue and negotiations among the parties.  As the Court is aware, the AAT was prepared to litigate its objection to the GUC 9019 Motion to conclusion and agreed to withdraw its objection only after achieving a fair compromise.

35.    In sum, the AAT's entry into the Amended Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019 because it is fair and equitable to the AATs' beneficiaries and falls well within the range of reasonableness.

## III.    The Court Should Authorize The AAT To Allocate $2.2 Million From Its Expense Reserve To Fund The Settlement

36.    As described in the AAT's Distribution Motion (Bankr. Dkt. No. 14552), the AAT has established an expense reserve to meet its anticipated expenses through its wind-down and termination of the trust.  Although the AAT is not required under the AAT Agreement to distribute any remaining funds in its expense reserve to its beneficiaries, it has determined in its discretion that it will do so if sufficient funds remain at the end of the case to make a further

distribution economically feasible.  Any such further distribution would be allocated among holders of allowed unsecured claims (70%) and the DIP Lenders (30%) (all as defined in the AAT Agreement).

37.    If the Court approves the Amended Settlement Agreement pursuant to Bankruptcy Rule 9019, the AAT will fund its contribution to the Common Fund from the expense reserve.  Solely for purposes of calculating the allocation of any future distributions from the expense reserve, it will regard the $2.2 million settlement payment as a distribution to unsecured creditors, so as to not diminish the DIP Lenders' allocable share of any future distribution.

## NOTICE

38.    Notice of this Motion has been provided in accordance with the Court-approved notice procedures, *see Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rules 1015(c) and 9007 Establishing Notice and Case Management Procedures*, dated May 5, 2011 (Bankr. Dkt. No. 10183), which includes notice to (a) the potential beneficiaries of the AAT, including the holders of Allowed General Unsecured Claims (as defined in the AAT Agreement); (b) the GUC Trust; (c) the DIP Lenders; (d) the Office of the United States Trustee for the Southern District of New York; (e) counsel to the ELPs Signatory Plaintiffs, and (f) counsel to New GM.  Further, this Motion shall be filed on the bankruptcy docket in the chapter 11 cases and will be published on the GUC Trust's website located at https://www.mlcguctrust.com.

## **CONCLUSION**

WHEREFORE, the AAT respectfully requests that the Court enter an order substantially in the form of the Approval Order attached as Exhibit A: (i) approving the Amended Settlement Agreement and the Release Agreement pursuant to Bankruptcy Rule 9019; (ii) authorizing the AAT to allocate $2.2 million in funds from the AAT's expense reserve as described herein and to make the settlement payment described in the Amended Settlement Agreement; (iii) authorizing the AAT to take all actions necessary or appropriate to effectuate the Amended Settlement Agreement; and (iv) granting such other and further relief as may be necessary.

Dated:  New York, New York
      May 1, 2020

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

/s/ Eric B. Fisher
Eric B. Fisher
Neil S. Binder
Lindsay A. Bush
Lauren K. Handelsman
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 510-7008

*Attorneys for the Motors Liquidation*
*Company Avoidance Action Trust*

13