UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                                                         :
IN RE:                                                                   :
                                                                         :
MOTORS LIQUIDATION COMPANY,                                              :    19-CV-5666 (JMF)
    f/k/a GENERAL MOTORS CORPORATION, et al.,                            :
                                                                         :
                                  Debtors.                               :
                                                                         :
------------------------------------------------------------------------ X
                                                                         :
CELESTINE ELLIOTT et al.,                                                :
                                                                         :
                                  Appellants,                            :
                                                                         :
                                                                         :    OPINION AND ORDER
               -v-                                                       :
                                                                         :
THE MOTORS LIQUIDATION COMPANY GUC                                       :
TRUST ADMINISTRATOR et al.,                                              :
                                                                         :
                                  Appellees.                             :
                                                                         :
------------------------------------------------------------------------ X

JESSE M. FURMAN, United States District Judge:

       In this bankruptcy appeal, Appellants Celestine Elliott and Lawrence Elliott challenge the Memorandum Opinion and Order of the United States Bankruptcy Court for the Southern District of New York (Martin Glenn, B.J.) denying their motion to file an untimely proof of claim in connection with the General Motors Corporation ("Old GM") bankruptcy. For the reasons that follow, the Bankruptcy Court's decision is affirmed.

## BACKGROUND

       The Court presumes general familiarity with the lengthy procedural history of the GM bankruptcy and describes here only the facts relevant to the issues presented in this appeal.

1

On June 1, 2009, Old GM filed for bankruptcy in the Southern District of New York. *See In re Motors Liquidation Co.*, 590 B.R. 39, 44 (S.D.N.Y. 2018). Pursuant to Section 363 of the Bankruptcy Code, Old GM sold substantially all of its assets, "free and clear" of most liabilities, to an entity that later became General Motors LLC ("New GM"). *Id.* On July 5, 2009, the Bankruptcy Court (Robert Gerber, B.J.) entered an order approving the terms of the sale agreement and enjoining parties from suing New GM for the successor liabilities of Old GM (the "Sale Order"). *Id.* at 45. Not long after, the Bankruptcy Court issued an order setting November 30, 2009, as the deadline (the "Bar Date") for the filing of all claims against Old GM that arose prior to the commencement of bankruptcy proceedings. ECF No. 8-1, at 79 (A-74). The Bankruptcy Court's order provided that "any holder of a Claim against the Debtors that is required but fails to [timely] file a Proof of Claim . . . shall be forever barred, estopped and enjoined from asserting such Claim" against Old GM. *Id.* at 82 (A-77). The Elliotts did not file any proof of claim by the Bar Date. *See* ECF No. 8-6, at 78 (A-1341). On February 8, 2012, the Bankruptcy Court ordered that "all claims filed against the Debtors on or after the date of entry of this Order shall be deemed disallowed (each, a 'Late Claim')," unless, as relevant here, the claimant filed "a motion with the Court seeking to have its Late Claim deemed timely filed" *and* the Court "entered an order deeming such Late Claim timely filed." *In re Motors Liquidation Co.*, No. 09-50026-mg, ECF No. 11394 (Bankr. S.D.N.Y. Feb. 8, 2012) ("Late Claims Order"), at 1-2.

From 2012 to 2014, New GM disclosed to the National Highway Traffic Safety Administration various defects in certain General Motors vehicles, including what became known as the "Ignition Switch Defect" — a defect that allowed a vehicle's ignition switch to inadvertently rotate from the "run" position to the "accessory" or "off" position, even while in

2

motion, disabling critical safety features such as airbags. ECF No. 8-6, at 69 (A-1332); *see also In re Motors Liquidation Co.*, 829 F.3d 135, 148-49 (2d Cir. 2016). New GM issued a recall for vehicles affected by the Ignition Switch Defect (Recall No. 14v047), which included the 2007 Chevrolet Cobalt. ECF No. 8-6, at 69 (A-1332). New GM also issued three recalls (Recall Nos. 12v406, 13v248, and 14v404) relating to a defect in the driver's door module of certain vehicles, which included the 2006 Chevrolet Trailblazer ("DDM Defect"). *Id.* at 71 (A-1334). The DDM Defect does not relate to the Ignition Switch Defect (in other words, it is a "Non-Ignition Switch Defect").[1] The Elliotts own a 2007 Chevrolet Cobalt and a 2006 Chevrolet Trailblazer, both of which they had purchased new. *Id.*, at 70 (A-1333).

The defects and recalls spawned many lawsuits and claims, including a lawsuit by the Elliotts, filed on April 1, 2014, in the Superior Court of the District of Columbia. *See* ECF No. 8-1, at 201-205 (A-196 to A-200); ECF No. 8-6, at 71-72 (A-1334 to A-1335). In April 2015, Bankruptcy Judge Gerber ruled that many of the claims against New GM were barred by the Sale Order, and also ruled that late claims by plaintiffs seeking to recover economic losses against Old GM were barred under the doctrine of equitable mootness. *See In re Motors Liquidation Co.*, 529 B.R. 510, 528-29 (Bankr. S.D.N.Y. 2015), *rev'd and vacated in part*, 829 F.3d 135 (2d Cir. 2016). In July 2016, the Second Circuit reversed that decision in part, holding, as relevant here, that the Bankruptcy Court had erred in enforcing the Sale Order as to the New GM claims based on a due process violation and that it was premature to rule on the question of equitable mootness. *See In re Motors Liquidation Co.*, 829 F.3d at 166, 169-70.

---

[1] Plaintiffs asserting claims based on the Ignition Switch Defect are referred to below as "Ignition Switch Plaintiffs," and those asserting claims based on Non-Ignition Switch Defects are referred to as Non-Ignition Switch Plaintiffs.

3

On remand, the case was reassigned to Bankruptcy Judge Glenn (following the retirement of Bankruptcy Judge Gerber), who held a hearing on November 16, 2016, at which counsel appeared on behalf of the Elliotts. ECF No. 8-1, at 649, 683 (A-644, A-678). Among other things, Bankruptcy Judge Glenn addressed "the late proof of claim" issue, indicating that he did not want to wait to address motions seeking leave to file late proofs of claims and noting that, in a different case, he had "denied . . . leave to file a late claim because once [the party] had notice that they . . . hadn't been given proper notice of the bankruptcy, there was nothing to keep them from filing a motion for leave to file [a] late claim, and they waited a year and I said no." *Id.* at 718-19 (A-713 to A-714). The Court explained: "I'm not deciding anything, but as I understand it and decided once before, . . . you've got to act with some diligence. So if somebody turns around a year from now and files a motion to file a late claim, good luck." *Id.* at 719 (A-714).

On December 12, 2016, the Bankruptcy Court issued an order to show cause (the "2016 OTSC"), requiring briefing on a series of issues (the "2016 Threshold Issues"), including whether Non-Ignition Switch Plaintiffs, such as the Elliotts, could "satisfy the requirements for authorization to file late proof(s) of claim against the GUC Trust" or whether "such claims [were] equitably moot" (the "Late Claims Issue"). *Id.* at 738-39 (A-733 to A-734). For all but the Late Claims Issue, the Bankruptcy Court directed Brown Rudnick LLP and Goodwin Procter LLP ("Designated Counsel"), who represented certain Ignition and Non-Ignition Switch Plaintiffs, to file an opening brief on behalf of all plaintiffs, and required any other plaintiffs who wished to be heard separately to seek leave of the Bankruptcy Court first. *Id.* at 738-39 (A-733 to A-734). As to the Late Claims Issue, however, the Bankruptcy Court directed Designated Counsel to file motions "on behalf of their respective clients" "seeking authority to file late proof(s) of claim by no later than December 22, 2016." *Id.* at 741 (A-736). The Bankruptcy

4

Court further provided that other plaintiffs could file a joinder by January 6, 2017, if they "wish[ed] to join in a Late Claim Motion." *Id.* at 741 (A-736). The Bankruptcy Court stated that "[a]ny plaintiff filing a joinder need not file a proof of claim until further order of the Court." *Id.* at 741 (A-736). The Bankruptcy Court also stated that "while the briefing and adjudication of the Late Claim Motions filed by Brown Rudnick LLP and/or Goodwin Procter LLP on behalf of Ignition Switch Plaintiffs is intended to go forward, the relief sought by Non-Ignition Switch Plaintiffs shall be stayed . . . and no briefing with respect to the Late Claim Motions filed on behalf of Non-Ignition Switch Plaintiffs shall take place pending such stay." *Id.* at 741 (A-736).

On December 22, 2016, Designated Counsel filed late claim motions. *Id.* at 751 (A-746); *id.* at 981 (A-976). First, Brown Rudnick LLP filed a motion on behalf of Ignition Switch Plaintiffs and "certain Non-Ignition Switch Plaintiffs," namely, "those plaintiffs who, as of November 30, 2009, owned or leased a vehicle with defects in ignition switches, side airbags, or power steering included in Recall Nos. 14V-355, 14V-394, 14V-400, 14V-118, and 14V-153." *Id.* at 755 n.1 (A-750 n.1). The Brown Rudnick LLP motion sought "authority to file two late Proposed Class Claims" concerning "defects in ignition switches, defects in side airbags, and defects in power steering for years prior to the Bar Date." *Id.* at 756 (A-751). Second, Goodwin Procter LLP filed a motion on behalf of "Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles." *Id.* at 987 n.1 (A-982 n.1). The Goodwin Procter LLP motion sought leave to file late claims against Old GM specifically concerning the Ignition Switch Defect. *See Id.* at 989 n.6 (A-984 n.6) (noting that "this Motion . . . does not address Non-Ignition Switch claims or any other claims for which a due process violation predicate for a late claim has not yet been established").

5

On January 3, 2017, the Elliotts filed a document joining "the motions filed by other parties for leave to file late proofs of claim in these proceedings." *Id.* at 1002 (A-997). The Elliotts' joinder stated that they "seek to recover for the economic loss they suffered when they purchased hazardous vehicles containing the Delta Ignition Switch defect," as well as "a non-ignition switch safety hazard in another GM vehicle they purchased prior to the Sale." *Id.* The Elliotts did not file a separate motion for leave to file late claims based on the DDM Defect. At a conference on December 20, 2018, counsel for the GUC Trust addressed the Elliotts' desire to bring a claim "alleging a door handle defect," and acknowledged that their counsel "did file a joinder to the motion to file a late claim." ECF No. 8-2, at 192 (A-1191). The GUC Trust's attorney pointed out, however, that all the Elliotts had filed was a document "joining the late-claim motion that was filed by the economic loss plaintiffs," attaching "their proof of claim that was for ignition switch defects." *Id.* at 192-93 (A-1191 to A-1192). Accordingly, counsel for the GUC Trust "asked [counsel for the Elliotts] to actually file something on behalf of the Elliotts specifically addressing the Trailblazer and the door handle and their allegations for why they would be entitled to file a late claim." *Id.* Counsel for the Elliotts agreed to file their late claim motion "by January 21st," with a response from the GUC Trust due "by February 11th." *Id.* at 195 (A-1194).

On January 21, 2019, the Elliotts filed a motion to lift the Bar Date and proposed proof of claims. *Id.* at 220 (A-1219). Their motion sought leave to file "individual, class and representative claims . . . for economic loss relating to a dangerous and defective driver's power door switch installed in their jointly owned 2006 Chevrolet Trailblazer and in thousands of other vehicles manufactured by Old GM, subject to NHTSA Recall No. 14-404000 (July 2, 2014), and owned by residents of the District of Columbia." *Id.* at 224 (A-1223). With respect to the

6

timeliness of the motion, the Elliotts argued that they had "joined the Omnibus Motions to File Late Claims submitted by Designated and Lead Counsel representing other parties," and thus "were not then required to submit proofs of their claim," citing the 2016 OTSC. *Id.* at 229 (A-1228). The GUC Trust and New GM objected. *See* ECF No. 8-6, at 69 (A-1332).

On May 28, 2019, Bankruptcy Judge Glenn denied the Elliotts' motion. *Id.* at 68 (A-1331). The Bankruptcy Court noted that the Elliotts had "filed the Motion . . . almost ten years after the bar date in this case." *Id.* at 69 (A-1332). The Bankruptcy Court acknowledged, however, that the Elliotts claimed that they did not receive proper notice of the Bar Date and therefore should not be bound by it. *Id.* The Bankruptcy Court set aside that issue and focused on the period between the 2016 OTSC, which set the schedule for filing late claim motions, and January 21, 2019, when the Elliotts filed their motion. *Id.* The Bankruptcy Court concluded that the Elliotts should have filed their motion "no later than January 2017" and that their joinder of Designated Counsel's motions failed to preserve their right to raise claims based on the DDM Defect, which was not addressed in Designated Counsel's motions. ECF No. 8-6, at 77-78 (A-1340 to A-1341). Applying the test for excusable neglect under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), the Bankruptcy Court concluded that there was no reason justifying the delay from January 2017 to January 2019; that the delay was significant; and that excusing the delay would prejudice the GUC Trust by "open[ing] the door . . . to the potential for numerous additional late claims." ECF No. 8-6, at 78-82 (A-1341 to A-1345). For these reasons, the Bankruptcy Court held that the delay was inexcusable and denied the Elliotts' motion. ECF No. 8-6, at 82 (A-1345).

This appeal followed. ECF No. 1.

7

## DISCUSSION

The threshold question on appeal is what standard of review applies to the Bankruptcy Court's ruling.  The Second Circuit has held that because the decision of whether "to allow or disallow late-filed claims" is expressly committed to a bankruptcy court's discretion, appellate review of such a decision is for abuse of discretion only.  *In re Enron Corp.*, 419 F.3d 115, 125 (2d Cir. 2005); *accord In re Drexel Burnham Lambert Grp., Inc.*, 146 B.R. 84, 87 (S.D.N.Y. 1992).  Relying on *In re Duplan Corp.*, 212 F.3d 144 (2d Cir. 2000), however, the Elliotts maintain that the Court should review the Bankruptcy Court's ruling *de novo* because it "turns on the interpretation and legal effect of language contained in the Elliotts' 2017 Joinder and in the Bankruptcy Court's 2016 Order to Show Cause."  ECF No. 8 ("Opening Br."), at 26.  The Court is unpersuaded.  First, *Duplan Corp.* did not involve a decision to allow or disallow a late claim.  Second, although *Duplan Corp.* held that a bankruptcy court's interpretation of its own order is a conclusion of law to be reviewed *de novo*, the propriety of the Bankruptcy Court's ruling here does not turn solely on its interpretation of the 2016 OTSC.  Finally, given the larger context, the fact that the Bankruptcy Court's ruling may have been based in part on an interpretation of a prior order does not alter the standard of review.  *See, e.g.*, *In re Firstcent Shopping Ctr., Inc.*, 141 B.R. 546, 549 (S.D.N.Y. 1992) (reviewing a bankruptcy court's rulings for abuse of discretion even though they involved, in part, an interpretation of its own prior order).

Accordingly, the Court will review the Bankruptcy Court's ruling for abuse of discretion only.  A bankruptcy court abuses its discretion when its decision (1) "rest[s] on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding," or (2) "though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions."  *In re Aquatic Dev. Grp., Inc.*, 352

8

F.3d 671, 678 (2d Cir. 2003) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)). In the absence of such circumstances (which, to be clear, would encompass a misinterpretation by the Bankruptcy Court of its own prior order), this Court must defer to the Bankruptcy Court's judgment. Such deference is particularly appropriate here given the length and complexity of the bankruptcy proceedings and the Bankruptcy Court's superior familiarity with those proceedings, the parties, and the potential impact of allowing any late-filed claims. *See In re Enron Corp.*, 419 F.3d at 129 ("In considering these issues, . . . we are particularly reluctant — absent evident arbitrariness — to substitute our judgment for that of the bankruptcy judge who has presided over the proceedings, who is most familiar with the parties and the potential impact of any late-filed claim, and whose ability to oversee an efficient reorganization would be undermined by the very process of second-guessing itself.").

Applying that standard here, the Court concludes that the Bankruptcy Court's ruling must be affirmed. The Elliotts' principal (and perhaps only) argument is that the Bankruptcy Court erred in concluding that the joinder they filed in January 2017 did not preserve their right to seek leave to file late claims based on the DDM Defect. *See* Opening Br. 2. But the motions filed by Designated Counsel sought leave to file late proofs of claims based on specifically enumerated defects, none of which encompassed the DDM Defect at issue here. *See* ECF No. 8-1, at 756 (A-751) (describing "defects in ignition switches, defects in side airbags, and defects in power steering"); *Id.* at 989 n.6 (A-984 n.6) (noting that "this Motion . . . does not address Non-Ignition Switch claims or any other claims for which a due process violation predicate for a late claim has not yet been established"); Opening Br. 29 n.25 (acknowledging that Designated Counsel "assert no claims relating to the [DDM Defect] recall"). By joining in these motions, the Elliotts sought leave to file late claims based on these same defects only. If the Elliotts wished to expand the

9

requested relief to include claims based on an additional defect, they needed to either file a separate motion or, at a minimum, specify the additional relief requested in their joinder and attach the necessary supplemental briefing.  Instead, the Elliotts wrote only that they sought to "recover for the economic loss they suffered when they purchased hazardous vehicles containing the Delta Ignition Switch" — which was addressed in the Goodwin Procter LLP motion — as well as "for economic loss they suffered . . . from a non-ignition switch safety hazard in another GM vehicle," ECF No. 8-1, at 1002 (A-997) — presumably referring to the Brown Rudnick LLP motion, which identified several Non-Ignition Switch Defects, *see* ECF No. 8-1, at 755 n.1 (A-750 n.1).  As the Bankruptcy Court noted, "[e]ven if filing a joinder were sufficient to preserve the Elliotts' right to file a late claims motion at a later date, the Elliott Joinder fails to indicate that the Elliotts wished to file a late claim based on the DDM defect." ECF No. 8-6, at 80 (A-1343).  Thus, the Bankruptcy Court correctly found that there was delay from 2017 to 2019.[2]

In arguing otherwise, the Elliotts claim that the 2016 OTSC required only Designated Counsel to file late claim motions and allowed other plaintiffs to preserve any late claims, whether addressed in Designated Counsel's motions or not, simply by filing a joinder.  ECF No. 12 ("Reply"), at 3.  The 2016 OTSC is admittedly somewhat ambiguous when read in isolation, as it set a schedule for Designated Counsel to file motions without expressly addressing counsel for other plaintiffs such as the Elliotts.  But when viewed in context, the order did not allow the Elliotts to preserve their DDM Defect claims merely by joining motions that sought relief only for claims based on specified other defects, not including the DDM Defect.  In 2012, the

---

[2]  The Elliotts claim that their "Trailblazer does not contain any of the defects asserted by Designated Counsel on behalf of their clients in their late claims motions." Opening Br. 29 n.25.  That may be true, but the Elliotts' joinder did not make this assertion or in any way indicate that they sought to file claims based on defects other than those identified by Designated Counsel.

10

Bankruptcy Court made clear that a claimant seeking to preserve a late claim needed to "fil[e] a motion with the Court seeking to have its Late Claim deemed timely filed." Late Claims Order at 2. Then, in November 2016, the Bankruptcy Court held a conference with plaintiffs' counsel, including counsel for the Elliotts, and cautioned the parties that it had recently rejected a late claim motion that had not been filed promptly. *See* ECF No. 8-6, at 78-79 (A-1341 to A-1342). The Bankruptcy Court urged the parties to act with "diligence" in filing motions for leave to file late claims. *Id.* Finally, in the 2016 OTSC, the Bankruptcy Court was careful to separate the Late Claims Issue from the other 2016 Threshold Issues, for which the Bankruptcy Court ordered consolidated briefing and prohibited separate filings absent leave of court. *See* ECF No. 8-1, at 739-40 (A-734 to A-735). As to the Late Claims Issue, the Bankruptcy Court directed Designated Counsel to file motions "on behalf of their respective clients" only, *id.* at 741 (A-736), but the Bankruptcy Court did not prohibit other plaintiffs from filing separate motions. In fact, the Bankruptcy Court indicated that they should do so by staying briefing only for "Late Claim motions *filed* on behalf of Non-Ignition Switch Plaintiffs." ECF No. 8-1, at 741 (A-736) (emphasis added).

The Elliotts also suggest that the GUC Trust "indicated that [it] understood the Elliotts' January 3, 2017 Joinder to have preserved the Elliotts' rights regarding their DDM claims about their 2006 Trailblazer," citing the transcript from the December 20, 2018 conference held by the Bankruptcy Court. *See* Opening Br. 21. But putting aside the question of whether such an understanding should have any bearing on the legal question of whether the Elliotts' joinder extended beyond the motions filed by Designated Counsel, the transcript actually shows that counsel for the GUC Trust argued that the DDM Defect was "completely separate and apart from the ignition switch, both [the] defined term and undefined term 'ignition switch defects,'" and

11

that the Elliotts therefore needed to "actually file something . . . specifically addressing the Trailblazer and the door handle and their allegations for why they would be entitled to file a late claim." ECF No. 8-2, at 192-93 (A-1191 to A-1192). Counsel for the Elliotts, rather than challenging the GUC Trust's assertion, "agreed to do that." *Id.* Far from adopting the view that the Elliotts now advance, therefore, the GUC Trust's interpretation of the joinder was consistent with that of the Bankruptcy Court in its ruling. And in any event, the Elliotts' view is not a proper interpretation of their joinder in light of the full record.

In short, contrary to the Elliotts' contention, the Bankruptcy Court did not abuse its discretion in concluding that the propriety of their late claim motion turned, at a minimum, on whether their delay in filing the motion between 2017 and 2019 was "excusable." That may be enough to dispose of the Elliotts' appeal, as they do not seem to otherwise challenge the Bankruptcy Court's weighing of the *Pioneer* factors — or, more to the point, to the extent they do in their opening brief, they expressly abandon any such argument in their reply. *See* Reply 2 ("The *sole* issue in this appeal is whether, by filing their Joinder in January 2017 . . . , the Elliotts preserved their rights with respect to their late claims." (emphasis added)); *id.* at 6 ("The application of the *Pioneer* factors is not relevant, because the Elliotts do not seek to have a delay in filing excused."). In any event, the Bankruptcy Court did not abuse its discretion in concluding that the Elliotts' delay in filing their motion was not "the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1).

To determine whether a party's neglect is excusable, the Court must take into account "'all relevant circumstances surrounding the party's omission,' including '[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control

12

of the movant, and [4] whether the movant acted in good faith.'" *In re Enron Corp.*, 419 F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395). The Second Circuit has adopted a "hard line" approach to applying *Pioneer* that "emphasizes the reason for the delay." *Id.* at 122-23 (internal quotation marks omitted); *see also Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004) (noting that "it is the third factor — the reason for the delay — that predominates, and the other three are significant only in close cases"). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' . . . is a somewhat 'elastic concept' and is not limited strictly to those omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 391 (discussing Rule 6(b) of the Federal Rules of Civil Procedure, on which Bankruptcy Rule 9006(b) was modeled).

Here, the Bankruptcy Court properly applied the four *Pioneer* factors and the Second Circuit's guidance. At most, the Elliotts challenge the Bankruptcy Court's application of only two *Pioneer* factors. First, the Elliotts seem to argue that they had good reason for their delay because they reasonably interpreted the 2016 OTSC to allow them to preserve any late claims, whether addressed in Designated Counsel's motions or not, simply by filing a joinder. But as discussed above, the 2016 OTSC did not give the Elliotts that option; certainly, the order contained no "dramatic ambiguity" that would justify finding an abuse of discretion. *See Pioneer*, 507 U.S. at 398 (finding a party's neglect excusable where there was a "dramatic ambiguity" in the bar date notice and there was no "evidence of prejudice to petitioner or to judicial administration . . . , or any indication at all of bad faith"). Thus, the Bankruptcy Court acted well within its broad discretion in finding that the third *Pioneer* factor weighed against the Elliotts. *See In re AMR Corp.*, No. 14-CV-8673 (JMF), 2015 WL 4393036, at *3 (S.D.N.Y. July

15, 2015) (noting that "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule" (quoting *In re Enron Corp.*, 419 F.3d at 122-23)).

The Elliotts also suggest that the Bankruptcy Court abused its discretion in finding that allowing their late claims would prejudice the GUC Trust. The Second Circuit has stated that, when evaluating the risk of prejudice, "the more relevant question [than the effect of the individual proposed claim] is whether allowing one such claim would lead to a mountain of such claims, which the bankruptcy court, having admitted the first claim, would be hard pressed to reject." *In re Enron Corp.*, 419 F.3d at 132 (internal citation and quotation marks omitted). Thus, in *Enron*, the Second Circuit affirmed the Bankruptcy Court's decision to deny a motion for leave to file late claims where the proposed claim was "sufficiently large and insufficiently indistinguishable" from others to create a "floodgate" concern, especially given that the movant "introduced no evidence concerning the number of *potential* claimants who might have been prompted to file late claims in the wake of a ruling in [the movant's] favor." *Id.* at 132-33.

Here, the Bankruptcy Court explained that "[a]ccepting the Elliotts' argument would open the door to the potential for numerous additional late claims based on defects that were not specifically identified in the earlier late claims motions but were the subject of other vehicle recalls." ECF No. 8-6, at 81-82 (A-1344 to A-1345). This was especially true in light of the fact that the Elliotts sought to file "individual, class and representative claims" based on a defect allegedly present in "thousands of other vehicles manufactured by Old GM." ECF No. 8-2, at 224 (A-1223). The Elliotts argue that there are no other potential claimants because no other party filed "a Joinder on behalf of a non-ignition switch plaintiff claiming economic loss." Opening Br. 34. But, as discussed, the filing of the joinder did nothing to preserve the DDM Defect claims; thus, the Elliotts are in essentially the same position as claimants who filed

14

neither a separate motion nor a joinder by January 2017. Accordingly, the Bankruptcy Court acted within its discretion in finding a risk of prejudice. And in any event, the Bankruptcy Court acted within its discretion in denying the motion based on all of the circumstances, including the Elliotts' failure to provide a good reason for their delay under the weighty third factor, which is normally determinative. *See In re Enron Corp.*, 419 F.3d at 122-23.

## CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: June 12, 2020
New York, New York

_____
JESSE M. FURMAN
United States District Judge