| | |
|---|---|
| **MCDERMOTT WILL & EMERY LLP**<br>340 Madison Ave.<br>New York, New York 10173<br>Telephone: (212) 547-5429<br>Facsimile: (646) 417-7313<br>E-mail: kgoing@mwe.com<br>Kristin K. Going | **HEARING DATE AND TIME:** August 11, 2020<br>@ 2:00 p.m. EDT<br><br>**OBJECTION DEADLINE:**  August 4, 2020<br>@ 4:00 p.m. EDT |

*Attorneys for the Motors Liquidation Company*
*GUC Trust Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re    :
:    **Chapter 11 Case No.**
:
:    **09-50026 (MG)**
**MOTORS LIQUIDATION COMPANY**, *et al.*,   :
**f/k/a General Motors Corp.**, *et al.*   :    **(Jointly Administered)**
:
:
Debtors.   :
------------------------------------------------------------------x

**NOTICE OF HEARING ON WILMINGTON TRUST COMPANY'S**
**MOTION FOR APPROVAL OF PARTICIPATING UNITHOLDERS' REQUESTED**
**REIMBURSEMENT OF ATTORNEYS FEES AND EXPENSES**

**PLEASE TAKE NOTICE** that on July 22, 2020, Wilmington Trust Company, solely in its capacity as trust administrator and trustee (in such capacity, the "**GUC Trust Administrator**"), of the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan dated March 18, 2011, filed a motion (the "**Motion**") for an order approving the Participating Unitholders' (as defined in the Motion) requested reimbursement of certain past and future attorneys' fees incurred and paid by Participating Unitholders in connection with, among other things, resolving the ongoing contingent late claims being asserted against the GUC Trust, and that a hearing (the "**Hearing**") on the Motion will be held before the Honorable Judge Martin Glenn, United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court for the Southern District of New York, One

Bowling Green, New York, New York 10004, on **August 11, 2020 at 2:00 p.m. (Eastern Daylight Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to this Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) McDermott Will & Emery LLP, attorneys for Wilmington Trust Company as GUC Trust Administrator, 340 Madison Avenue, New York, New York 10173 (Attn: Kristin K. Going, Esq.); (ii) FTI Consulting, as the GUC Trust Monitor, 3 Times Square, 11th Floor New York, NY 10036 (Attn: Conor Tully); (iii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, New York 10036 (Attn: David Zensky, Esq.); and (iv) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: William K. Harrington, Esq.), so as to be received no later than **August 4, 2020 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that in the event the Hearing is held remotely, the provisions of General Order M-543 ("**General Order M-543**"), dated March 20, 2020, will apply, and the Hearing will be conducted telephonically. In such case, any parties wishing to participate in the Hearing must make arrangements through CourtSolutions LLC. Instructions to register for CourtSolutions LLC are attached to General Order M-543.

2

**PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served with respect to the Motion, Wilmington Trust Company, acting in its capacity as GUC Trust Administrator may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
July 22, 2020

        McDERMOTT WILL & EMERY LLP

By:   /s/  Kristin K. Going
     Kristin K. Going
     340 Madison Avenue
     New York, New York 10173
     Tel: (212) 547-5429
     E-mail: kgoing@mwe.com

*Attorneys for the Motors Liquidation Company GUC Trust Administrator*

**MCDERMOTT WILL & EMERY LLP**
340 Madison Ave.
New York, New York 10173
Telephone: (212) 547-5429
Facsimile: (646) 417-7313
E-mail: kgoing@mwe.com
Kristin K. Going

*Attorneys for the Motors Liquidation Company*
*GUC Trust Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

In re:

**MOTORS LIQUIDATION COMPANY,** *et al.*,
**f/k/a General Motors Corp.,** *et al.*

**Debtors.**

------------------------------------------------------------------x

**Chapter 11**

**Case No. 09-50026 (MG)**

**(Jointly Administered)**

### WILMINGTON TRUST COMPANY'S MOTION FOR APPROVAL OF THE PARTICIPATING UNITHOLDERS' REQUESTED REIMBURSEMENT OF ATTORNEYS FEES AND EXPENSES

Wilmington Trust Company ("Wilmington"), in its capacity as the trust administrator and trustee of the Motors Liquidation Company General Unsecured Creditors Trust (the "GUC Trust"), hereby moves the Court (the "Motion") for approval of the Participating Unitholders' (as defined herein) requested reimbursement of certain past and future attorneys' fees incurred and paid by Participating Unitholders in connection with, among other things, resolving the ongoing contingent late claims being asserted against the GUC Trust.

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern*

*District of New York*, dated January 31, 2012 (Preska, C.J.).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b).

## Background

**A.    Old GM's Bankruptcy and the Creation of the GUC Trust**

2.    On June 1, 2009, General Motors Corporation ("Old GM") and certain of its affiliates (collectively, the "Debtors") filed for protection under chapter 11 of the Bankruptcy Code and entered into an agreement to sell substantially all of its assets to NGMCO, Inc. (now known as "New GM") in exchange for, *inter alia*, New GM common stock and warrants.  *See In re Motors Liquidation Co.*, 529 B.R. 510, 535 (Bankr. S.D.N.Y. 2015).  On July 5, 2009, the sale was approved by the Bankruptcy Court.  *See Elliott v. General Motors LLC*, 829 F.3d 135, 146-47 (2d Cir. 2016).

3.    In September 2009, the Court established November 30, 2009 (the "Bar Date") as the deadline for filing proofs of claim against Old GM.  *See In re Motors Liquidation Co.*, 529 B.R. at 535.

4.    On March 29, 2011, the Court entered an order confirming Old GM's *Second Amended Joint Chapter 11 Plan*, which, among other things, provided for the establishment of the GUC Trust pursuant to the terms set forth in the GUC Trust Agreement.  *See id*. at 535-36.  Under the Plan and the GUC Trust Agreement, the GUC Trust is responsible for, among other things, making distributions to the holders of allowed claims against the Debtors, resolving and satisfying disputed claims asserted against the Debtors and distributing any excess assets of the GUC Trust to the holders (collectively, the "Unitholders") of beneficial interests in the GUC Trust (each, a "GUC Trust Unit").

**B.    Recalls and Subsequent Proceedings in the Bankruptcy Court and Second Circuit**

5.      In February and March 2014, over four years after the Bar Date, New GM publicly disclosed the existence of the defective ignition switches and conducted a recall, NHTSA Recall Number 14v047, impacting approximately 2.1 million Old GM vehicles. After this recall, New GM conducted additional recalls in 2014 affecting approximately 10 million additional Old GM vehicles (collectively, with NHTSA Recall Number 14v047, the "Recalls").

6.      Owners and lessees of Old GM vehicles subject to the Recalls (collectively, the "Plaintiffs") filed more than 100 actions against New GM. In April and August 2014, New GM sought to enjoin certain litigation by filing motions to enforce the order approving the sale to New GM in this Court (the "Motions to Enforce"). Following the filing of the Motions to Enforce, the Court issued a scheduling order setting forth certain issues (the "Threshold Issues") raised by the Motions to Enforce, including whether the Plaintiffs' claims may be claims against Old GM or the GUC Trust and whether such claims, to the extent were found to be claims against Old GM, must be disallowed on the grounds of equitable mootness. The parties to the proceedings, including the GUC Trust and the Participating Unitholders, briefed and argued the Threshold Issues.

7.      On April 15, 2015, the Court issued its Decision on Motion to Enforce Sale Order, *In re Motors Liquidation Co.*, 529 B.R. 510 [ECF No. 13109]. The Court held that the "Ignition Switch Plaintiffs" were known creditors who did not receive constitutionally adequate notice of the Sale from Old GM. *See id*. The Court further held that while "late claims" filed by claimants might still be allowed against the GUC Trust, assets transferred to the GUC Trust under the Plan could not now be tapped to pay them under the doctrine of equitable mootness. *Id*. at 529; *see also* June 2015 Judgment ¶ 6. On direct appeal, the Second Circuit vacated this

3

equitable mootness ruling as an advisory opinion and remanded for further proceedings, including a determination as to whether those certain non-ignition switch plaintiffs received constitutionally adequate notice of the Sale.  *See Elliott*, 829 F.3d at 166-69.

**C.     Developments Following The Second Circuit's Decision**

8.     In December 2016, after remand by the Second Circuit, the Bankruptcy Court issued the *Order to Show Cause Regarding Certain Issues Arising from Lawsuits with Claims Asserted Against General Motors LLC That Involve Vehicles Manufactured by General Motors Corporation* [ECF No. 13802] (the "Order to Show Cause").  The Order to Show Cause identified five threshold issues (the "2016 Threshold Issues") for resolution in light of the Second Circuit decision including whether "the Ignition Switch Plaintiffs and/or Non-Ignition Switch Plaintiffs satisfy the requirements for authorization to file late proof(s) of claim against the GUC Trust and/or are such claims equitably moot."[1]

9.     The Order to Show Cause also established a December 22, 2016 deadline to file motions seeking authority to file late claims.  *See Order to Show Cause* at 5 ¶ 1.  In accordance with the Order to Show Cause, on December 22, 2016, the Plaintiffs filed motions seeking the Court's permission to file late proofs of claim against the GUC Trust.[2]  The motions attached proposed proofs of claim, including proposed class proofs of claim asserted on behalf of

---

[1] *Order to Show Cause Regarding Certain Issues Arising from Lawsuits with Claims Asserted Against General Motors LLC ("New GM") that Involve Vehicles Manufactured by General Motors Corporation ("Old GM")*, dated Dec. 13, 2016 [ECF No. 13802], at 2-3.

[2] *See Motion for an Order Granting Authority to File Late Class Proofs of Claim*, dated Dec. 22, 2016 [ECF No. 13806] (the "Economic Loss Late Claim Motion"); *Omnibus Motion by Certain Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths*, dated Dec. 22, 2016 [ECF No. 13807]; *Supplemental Omnibus Motion by Certain Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths in Connection with Settlement with the Motors Liquidation Company GUC Trust* [ECF No. 14325]; *Motion by Additional Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths* [ECF No. 14018], as supplemented on August 10, 2017, September 19, 2017, December 12, 2017, and July 19, 2018 [ECF Nos. 14046, 14112, 14195, 14346].

4

purported class representatives for Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs, and 175 individual proofs of claim on behalf of certain Pre-Closing Accident Plaintiffs. *See id.* Certain other Plaintiffs asserting purported economic loss claims subsequently filed joinders to the late claims motions filed on December 22, 2016 pursuant to the terms of the Order to Show Cause. Further, certain other Plaintiffs asserting personal injury and/or wrongful death also filed motions seeking to file late claims.

10. Prior to and since various economic loss plaintiffs first sought to file late claims against the GUC Trust in 2016, the GUC Trust with the active participation of the Participating Unitholders had attempted to globally resolve the economic loss claims in three separate agreements finally culminating in the Settlement Agreement with economic loss Plaintiffs (as described below).

**D.    The Settlement Agreement**

11. On April 23, 2020, the Court entered the *Order (I) Approving the GUC Trust Administrator's Actions; (II) Approving the Settlement Agreement and the Release Agreement Pursuant to Federal Rule of Bankruptcy Procedure 9019; and (III) Authorizing the Reallocation of GUC Trust Assets* [ECF No. 14730]. The Settlement Agreement represents a resolution of all outstanding issues that the GUC Trust, Plaintiffs, and New GM have fought over for the last six years.

12. The Settlement Agreement resolves (a) all economic loss actions resulting from the Recalls asserted against both New GM and the GUC Trust; (b) the GUC Trust's Excess Distribution Motion; and (c) certain potential claims between the GUC Trust and New GM (including any issue concerning the Adjustment Shares). The Settlement Agreement reflects an integrated, commercially reasonable, and comprehensive settlement of the Plaintiffs' putative

5

class claims against the GUC Trust and New GM, and of any and all claims between the GUC Trust and New GM. Each component and protection contained in the Settlement Agreement was heavily negotiated among the Parties and forms part of the overall Settlement.

### E.  The Participating Unitholders

13. Wilmington has been advised by Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") that Akin Gump was retained by certain unaffiliated holders (the "Participating Unitholders") of GUC Trust Units in 2014 following the disclosure by New GM of the Recalls. Wilmington has further been advised by Akin Gump that, initially, the Participating Unitholders held approximately 40% of the outstanding GUC Trust Units and from June 2014 through the end of 2016, the aggregate holdings held by the Participating Unitholders ranged from approximately 40% to just under 50% of the outstanding GUC Trust Units. Akin Gump further reported that since the first quarter of 2017, the Participating Unitholders have held in excess of 60 percent of the outstanding GUC Trust Units and presently hold approximately 71 percent of the GUC Trust Units.

14. Since being retained, Akin Gump has been an active participant in these cases and has advocated on behalf of the Participating Unitholders. In addition to litigation in connection with the Threshold Issues, the 2016 Threshold Issues, and the settlement of Plaintiffs' asserted claims against Old GM, the Participating Unitholders, represented by Akin Gump, were active participants in litigation regarding Plaintiffs' requests to stay GUC Trust distributions and the GUC Trust's motion (at the request of the Participating Unitholders) to convert to cash New GM stock and warrants held by the GUC Trust for future distributions.

15. On several occasions since the Participating Unitholders became involved in these proceedings, they have advised Wilmington that they believe their efforts have inured to the

6

09-50026-mg    Doc 14762    Filed 07/22/20    Entered 07/22/20 20:35:53    Main Document
Pg 10 of 14

benefit of all Unitholders and, thus, it would be appropriate and reasonable for the GUC Trust to reimburse the Participating Unitholders for the fees paid to Akin Gump for the services performed in connection with these matters. The Participating Unitholders believe that because their efforts were benefitting all Unitholders, but the costs associated therewith were being borne only by the Participating Unitholders, the Unitholders who received the benefits but did not participate in the costs were "free-riders" and that such result was unfair.

16. In light of the Participating Unitholders' reimbursement request, and as required pursuant to the liquidation basis of accounting to which the GUC Trust is subject, the GUC Trust has maintained a reserve for such fees and expenses. Such reserve was disclosed in the GUC Trust's public filings. S*ee Motors Liquidation Company GUC Trust Quarterly GUC Trust Reports as of December 31, 2019* [ECF No. 14671] ("included in its estimates of expected Wind-Down Costs for the nine months ended December 31, 2019 are $10.0 million in expected reimbursements to certain holders of a majority of GUC Trust Units for legal fees in connection with monitoring the actions of the GUC Trust and participating in litigation related to the General Motors vehicle recalls.").

17. Following discussions between counsel for Wilmington and the Participating Unitholders, Wilmington received a letter dated June 30, 2020 (the "Reimbursement Letter") on behalf of the Participating Unitholders, formally requesting that the GUC Trust reimburse the Participating Unitholders for the past and future fees and expenses of Akin Gump. The Reimbursement Letter is attached hereto as **Exhibit A**. The Reimbursement Letter provides that through May 31, 2020, the Participating Unitholders have paid approximately $8,381,736.15 in the aggregate to Akin Gump for services on behalf of the Participating Unitholders. Moreover,

7

copies of the invoices, including timekeeper summaries, were provided to the GUC Trust with the Reimbursement Letter and are also attached hereto as **Exhibit A**.

### Relief Requested

18. By this Motion, the GUC Trust requests a determination regarding the requested reimbursement and whether such reimbursement is an appropriate exercise of the GUC Trust administrator's rights, powers, and privileges. Further, the GUC Trust respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit B**, authorizing the GUC Trust to reimburse the Participating Unitholders for the fees and expenses incurred by Akin Gump, as counsel to the Participating Unitholders.

### Basis for Requested Relief

19. For years, the Participating Unitholders have been key participants in the litigation and settlement efforts arising from the Recalls. The result of those efforts culminated in the Court's recent approval of the Settlement Agreement. Akin Gump, as counsel to the Participating Unitholders, has been involved in the (i) drafting of various pleadings filed with the Court both on behalf of the Participating Unitholders and jointly with the GUC Trust, (ii) participating in settlement discussions and mediation regarding these matters and (iii) advocating on behalf of the Participating Unitholders in Court. Akin Gump's advocacy in both pleadings and hearings on behalf of the Participating Unitholders has necessarily conferred a benefit to all holders of the GUC Trust Units.

20. The GUC Trust recognizes that Akin Gump has played a significant role in the negotiations, motion practice, and hearings throughout these proceedings, including with respect to, among other things, the matters described in the Reimbursement Letter. The GUC Trust further appreciates the so-called "free rider" problem caused by Akin Gump's representation of

8

the majority of unitholders. Although Akin Gump was retained by a subset of the Unitholders, all Unitholders benefitted from Akin Gump's efforts on behalf of the Participating Unitholders. For that reason, the GUC Trust believes that it would be equitable to reimburse the Participating Unitholders from GUC Trust Distributable Assets (cash that would otherwise be distributed to all Unitholders) as requested by the Participating Unitholders, because it would spread costs proportionately amongst all the parties that benefited from Akin Gump's representation of the Participating Unitholders.

21. Section 8.1(e) of the GUC Trust Agreement provides:

> where the GUC Trust Administrator determines, in its reasonable discretion, that it is necessary, appropriate, or desirable, the GUC Trust Administrator will have the right to submit to the Bankruptcy Court . . . any question or questions regarding any specific action proposed to be taken by the GUC Trust Administrator with respect to the [GUC Trust Agreement], the GUC Trust, or the GUC Trust Assets . . . . Pursuant to the Plan, the Bankruptcy Court has retained jurisdiction for such purposes and may approve or disapprove any such proposed action upon motion by the GUC Trust Administrator.

22. On prior occasions, the GUC Trust has sought the Court's approval of certain proposed actions, utilizing section 8.1(e) of the GUC Trust Agreement. The GUC Trust believes that seeking the Court's guidance is similarly appropriate here.

23. "The practice is well established by which trustees seek instructions from the court, given upon notice to creditors and interested parties, as to matters which involve difficult questions of judgment." *Mosser v. Darrow*, 341 U.S. 267, 274 (1951); *see also In the Matter of the Application of U.S. Bank Nat'l Ass'n*, No. 651625/2018, NYSCEF No. 1 (N.Y. Sup. Ct. April 4, 2018) (petition seeking an order, following an estimation proceeding, that instructs and authorizes trustees to make distributions pursuant to method proposed); *In re Am. Home Mort. Inv. Trust 2005-2*, No. 14 Civ. 2494 (AKH), 2014 U.S. Dist. LEXIS 111867, at *29-30 (explaining that "[t]rust instruction proceedings are a well-established procedure by which

9

trustees (and other affected parties) can seek judicial guidance from the court about how to resolve immediate and difficult issues of interpretation of governing documents"), *In re Peierls Family Inter Vivos Trusts*, 59 A.3d 471, 477 (Del. Ch. 2012) (noting that a "request for judicial relief involving a trust can be appropriate in many circumstances").

24. The GUC Trust does not believe that any provision of the GUC Trust Agreement expressly authorizes or prohibits the requested reimbursement. However, under the terms of the GUC Trust Agreement, the GUC Trust cannot utilize Distributable Assets absent Court approval. Thus, for all of the reasons set forth herein, the GUC Trust seeks approval of the requested reimbursement and authority to utilize Distributable Assets to reimburse the Participating Unitholders for Akin Gump's fees and expenses.

### Notice

25. Notice of this Motion has been provided in accordance with the Court-approved notice procedures. *See Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rules 1015(c) and 9007 Establishing Notice and Case Management Procedures*, dated May 5, 2011 [ECF No. 10183]. Notice of this Motion has also been provided to any other required notice parties under Section 6.1(b)(iv) of the GUC Trust Agreement, including to all holders of GUC Trust Units.[3] The GUC Trust submits that no other or further notice need be provided.

### Conclusion

WHEREFORE, the GUC Trust respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit B** granting the relief requested in this Motion and such other and further relief as may be just and proper.

---

[3] Applications pursuant to Section 6.1(iv) of the GUC Trust Agreement require service on Unitholders, the GUC Trust Monitor and holders of Disputed General Unsecured Claims. While the GUC Trust does not believe there are any remaining holders of Disputed General Unsecured Claims, out of an abundance of caution it is serving bankruptcy counsel for the Economic Loss Plaintiffs and certain personal injury plaintiffs.

10

| | |
|---|---|
| Dated: New York, New York<br>July 22, 2020 | Respectfully submitted,<br><br> /s/   Kristin K. Going<br><br>**MCDERMOTT WILL & EMERY LLP**<br>Kristin K. Going<br>340 Madison Ave.<br>New York, New York 10173<br>Telephone:    (212) 547-5429<br>Facsimile:    (646) 417-7313<br>E-mail:    kgoing@mwe.com<br><br>*Attorneys for the Motors Liquidation Company GUC Trust* |