**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*,<br>f/k/a GENERAL MOTORS CORP., *et al.*,<br><br>                                                            Debtors. | NOT FOR PUBLICATION<br><br>Case No. 09-50026 (MG)<br><br>Chapter 11<br><br>(Jointly Administered) |

**MEMORANDUM OPINION AND ORDER DENYING CLAIMAINT'S MOTION TO TRANSFER SETTLEMENT FUNDS DIRECTLY TO ESCROW**

*A P P E A R A N C E S:*

DAVID V. SCOTT, ESQ.
*Counsel to Claimant Billy England, Husband*
*and Surviving Spouse of Fannie L. England*
1338 Miller Lane
New Albany, IN 47150
By:    David V. Scott, Esq.

McDERMOTT WILL & EMERY LLP
*Attorneys for the Motors Liquidation GUC Trust*
340 Madison Ave.
New York, NY 10173
By:    Kristin K. Going, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

　　　　Pending before the Court is the motion of David V. Scott, Esq., counsel ("Counsel") to the now-deceased claimant Billy England ("Claimant" or "Mr. England"), for an order directing the Wilmington Trust Company ("Wilmington"), administrator of the Motors Liquidation Company GUC Trust (the "GUC Trust"), to pay Claimant's settlement distribution (the "Distribution") to an escrow account in Counsel's name, using Counsel's Tax Identification Number ("TIN"). ("Motion," ECF Doc. # 14753.) Counsel seeks this relief for the stated purpose of directing the Distribution to the Claimant's two children, Jacqueline Nicole Coleman

and Billy Lee England, Jr. (together, the "Descendants"), rather than to Claimant's estate. (*Id.* at 5.) Counsel acknowledged that Billy England died with substantial creditors. If the Distribution must be made to Billy England's estate, Counsel has acknowledged that it is unlikely that his two children will receive anything from the Distribution. The GUC Trust filed a response, acknowledging Billy England's entitlement to the Distribution, but not taking a position on whether the requested relief is proper. ("Response," ECF Doc. # 14758.)

Kentucky law, rather than bankruptcy law, provides the answer to this matter. The Court concludes that an estate proceeding must be opened in Kentucky, with the Distribution held by the estate, subject to a determination by a Kentucky court about any entitlements to the Distribution. For that reason, the Motion is **DENIED**.

## I.  BACKGROUND

On August 17, 2007, Fannie England ("Mrs. England"), Claimant's wife, was driving a 1995 Chevrolet, Model K10753, pick-up truck, that was involved in a serious accident. (Motion at 1.) Mrs. England sustained injuries in the crash that were allegedly enhanced because of General Motor's ("GM") failure to exercise reasonable care in the design of the truck. (*Id.* at 2.)

On February 24, 2009, Mrs. England filed a products liability complaint against GM and other defendants in Kentucky state court. The action was removed to the U.S. District Court for the Western District of Kentucky. (*Id.*) On March 11, 2009, Mrs. England died of causes unrelated to the injuries sustained in the collision. (*Id.*) On June 24, 2009, the District Court ordered the product liability action against GM stayed because of GM's Bankruptcy filing. (*Id.*)

On November 30, 2009, Mr. England filed a $250,000 claim in GM's bankruptcy case, seeking recovery for both loss of consortium and the reimbursement of medical expenses for which he and Mrs. England were jointly liable. (*Id.* at 3.) Claimant's right to recovery was

2

allegedly based on the Kentucky survival statute, which states that "no right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured . . . ." (*Id.* at 3–4 (citing Ky. Rev. Stat. § 411.140).)

On July 2, 2010, the Debtors objected to Claimant's claim for "insufficient documentation." (ECF Doc. # 6260, Ex. A.) On July 30, 2010, Claimant filed a detailed response and the Debtors subsequently withdrew the objection. (ECF Doc. # 6452.) On August 25, 2012, Mr. England passed away without any distribution having been made from the GUC Trust to Mr. England. (Motion, Ex. B ¶ 2.)

On April 21, 2017, Wilmington sent a distribution letter to Claimant. ("Distribution Letter," Motion, Ex. A.) The Distribution Letter states that Wilmington continues to make distributions to holders of Allowed Class 3 General Unsecured Claims,[1] which includes Mr. England, pursuant to the Second Amended Joint Chapter 11 Plan of Motors Liquidation Company (the "Plan") and the Trust Agreement. (*Id.* at 8 (citing (Plan, ECF Doc. # 9941), Ex. A).) The Distribution Letter provides that a distribution of the $65,000 is to be made in the form of a mix of cash and GUC Trust Units to the settlement beneficiary–"Billy England"–into a securities account maintained by the beneficiary. (Distribution Letter at 9, 13.) But Billy England died before the Distribution was made. The issue, therefore, is where, or to whom, the Distribution should now be made?

Wilmington directed Counsel to open an estate for Billy England to process the Distribution. (Motion at 4.) The Descendants represent in their affidavits that Claimant passed away without sufficient assets to warrant probating an estate. (*Id.*, Ex. B ¶ 3.) Counsel requests that Wilmington direct the Distribution into an escrow account, opened under Counsel's TIN, for

---

[1]    See definition in the Motors Liquidation Company GUC Trust Agreement (the "Trust Agreement"). (Plan, Ex. D.)

3

the purpose of distributing it to the Descendants. Such an arrangement, Counsel asserts, would prevent Mr. England's creditors from recovering their debts against the proposed estate. Counsel cites to Kentucky's intestate succession laws in support of his argument. (Motion at 5 (citing Ky. Rev. Stat. §§ 391.010, 391.030).)

Counsel proposes that he be allowed to set up an escrow account at Axiom Financial Strategies Group, a financial institution authorized to maintain a securities account, located in New Albany, Indiana and to use his TIN. (*Id.*) The escrow account would receive the Distribution from Wilmington, and Counsel would distribute the proceeds to the Descendants, or to the individuals he claims have an interest in the proceeds. Counsel argues that the result would have been the same in any other personal injury or wrongful death claim. (*Id.* at 6.) Counsel also maintains that whether the check included all the interested parties' names, or the money was deposited directly into the attorney's escrow account, the result would be the same. (*Id.*) Counsel asserts that he is responsible for a proper distribution and that the TIN on the documentation provided to the company issuing the proceeds of the settlement would be that of plaintiff's counsel. (*Id.*)

Wilmington's Response acknowledged that Mr. England has an Allowed Class 3 General Unsecured Claim in the amount of $65,000.00 and that no distribution has been made on account of that Allowed Claim. (Response at 1.) Wilmington takes no position on the laws of intestate succession in the Commonwealth of Kentucky. (*Id.* at 1–2.) Wilmington does not oppose the requested relief, but it seeks direction from the Court before making a distribution to someone other than the party listed as the creditor holding the Allowed Unsecured Claim, and to determine whether such a distribution is both authorized and appropriate. (*Id.*)

4

## II. LEGAL STANDARD

### A. Survival Action and Wrongful Death Under Kentucky Law

Under Kentucky law, a "survival action" is distinct from a wrongful death claim. *See Ping v. Beverly Enters.*, 376 S.W.3d 581, 598 (Ky. 2012). The Kentucky survival action statute explains that:

> No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured . . . . For any other injury an action may be brought or revived by the personal representative, or against the personal representative, heir or devisee, in the same manner as causes of action founded on contract.

Ky. Rev. Stat. § 411.140.

"[W]hile a survival action is derivative of a personal injury claim which belongs to the estate, a wrongful death action is an independent claim belonging to the intended beneficiaries under [Ky. Rev. Stat. §] 411.130, a claim that accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss." *See Pete v. Anderson*, 413 S.W.3d 291, 300 (Ky. 2013) (internal quotation marks and citation omitted). The personal representative of the estate is authorized to raise a survival action for claims belonging to the estate. *See Overstreet v. Kindred Nursing Ctrs. Ltd. P'ship*, 479 S.W.3d 69, 71 (Ky. 2015) (determining that personal injury claims belonging to the estate, "pursuant to [Ky. Rev. Stat. §] 411.140, survive the resident's death and may be brought by the personal representative of an injured resident's estate").

### B. Loss of Consortium

In Kentucky, loss of consortium is a statutory claim derived from the common law. The statute provides that "either a wife or husband may recover damages against a third person for loss of consortium, resulting from a negligent or wrongful act of such third person." Ky. Rev. Stat. § 411.145. The loss of consortium claim survives the death of a spouse, *see Martin v. Ohio*

5

*Cty. Hosp. Corp.*, 295 S.W.3d 104, 109 (Ky. 2009), and is an independent claim which accrues directly to the spouse and not to the estate of the deceased. *See Life Care Ctrs. of Am., Inc. v. Estate of Neblett*, No. 5:14-CV-00124-TBR, 2014 U.S. Dist. LEXIS 174127, at *8 (W.D. Ky. Dec. 17, 2014) (citation omitted). The Supreme Court of Kentucky has also recognized a common law right for children to raise a claim for loss of parental consortium. *Giuliani v. Guiler*, 951 S.W.2d 318 (Ky. 1997).

### C.   Settlements and Third-Party Beneficiaries

Under Kentucky law, an individual is a third-party beneficiary of an agreement if it is shown that the contract in question was made for the actual or direct benefit of the third party. *See Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky. App. 1985). The third-party beneficiary may "in his own right and name enforce [the] promise made for his benefit." *Presnell Construction Managers, Inc. v. EH Construction, LLC*, 134 S.W.3d 575, 579 (Ky. 2004). While the general rule is that only parties to a contract may enforce and be bound by its terms, some contracts anticipate third-party beneficiaries who are bound as if they were a party. *Brown v. Mitsui Sumitomo Ins. Co.*, 492 S.W.3d 566, 573 (Ky. Ct. App. 2016). Further, "[o]ne who sues on a contract made for his benefit must accept the contract *as made*." *Id.* (quoting *Northern States Contracting Co. v. Swope*, 271 Ky. 140, 111 S.W.2d 610, 614 (1937) (emphasis added).

### III.   DISCUSSION

Counsel has failed to demonstrate that the Distribution should be directed to his escrow account. The Distribution Letter from Wilmington to the Claimant states that "Billy England" is "entitled to participate" in the claim distribution plan under the Trust Agreement and does not name the Descendants. (Distribution Letter at 8.) The Claimant's natural legal successor under Kentucky law is his estate. His creditors may have priority over the heirs to the estate's assets in

probate. Ky. Rev. Stat. § 391.030(1) ("[W]here any person dies intestate as to his or her personal estate, or any part thereof, the surplus, after payment of funeral expenses, charges of administration, and *debts*, shall pass and be distributed . . . .") (emphasis added). The Descendants have not established a legal or factual basis to permit Wilmington to make the Distribution directly (or indirectly through Counsel) to the Descendants. In addition, Counsel's argument asking this Court to consider this as akin to a wrongful death action is devoid of legal reasoning.

Further, whether Mr. England's claim is a survival action does not affect the result here. Counsel mischaracterizes Mr. England's claim, at least in part, as a survival action. (Motion at 3.) Kentucky law provides that a loss of consortium claim accrues directly to the spouse. *See Ohio Cty. Hosp.*, 295 S.W.3d at 107 ("[T]he General Assembly made loss of consortium a statutory cause of action, which belongs specifically to a spouse . . . ."). Mr. England's loss of consortium claim is not a survival action; it never belonged to Mrs. England's estate. *See Pete*, 413 S.W.3d at 300 (explaining that a survival action is derivative to the personal injury claim of the deceased and is attributed to the decedent's estate). The Descendants did not raise their own common law loss of parental consortium claim in these bankruptcy proceedings. Therefore, at least part of Mr. England's claim is solely attributed to him, and thus any settlement proceeds arising from that claim would be the property of Mr. England, and now his estate. Any rights the Descendants hold against Mr. England's property can be probated in Kentucky court.

The record is insufficient to make a similar determination about the ownership of the medical expenses portion of Mr. England's claim. However, even if Mr. England's claim was a survival action, the Descendants would still have to assert any resulting rights in Kentucky court. In a survival action, the claims raised are brought on behalf of the deceased's estate. *See Ping*,

7

376 S.W.3d at 598 ("[U]nder [Ky. Rev. Stat. § 411.140,] a personal injury claim does not lapse upon the death of the injured person . . . but may be 'brought or revived by the personal representative' on behalf of the decedent's estate."). And as Mrs. England's next of kin, the Descendants could be considered third-party beneficiaries to the agreement settling claims owned by Mrs. England's estate. In an agreement made for their benefit, third-party beneficiaries retain the right to enforce the promise as if they were parties to the contract. *See Presnell Construction Managers*, 134 S.W.3d at 579 (determining that a third-party beneficiary to an agreement retains the right to enforce an agreement in "his own right and name," when such an agreement was intended by the parties to benefit him). Here, even construing Mr. England's claim as a survival action, under the terms of the Distribution Letter, Wilmington would still need to direct the Distribution to the Claimant's *estate* and not to the Descendants. *See Mitsui Sumitomo Ins.*, 492 S.W.3d at 573 ("[O]ne who sues on a contract made for his benefit must accept the contract as made."). The Descendants are then able to raise any of their rights against the estate in Kentucky.

Kentucky law contains specific provisions exempting some of a deceased's assets from his creditors, but that would still first necessitate directing the Distribution to the estate. Under Kentucky law:

> Personal property or money on hand or in a bank or other depository to the amount of thirty thousand dollars ($30,000) shall be exempt from distribution and sale and shall be set apart by the District Court having jurisdiction over the estate on application to the surviving spouse, or, if there is no surviving spouse, to the surviving children.

Ky. Rev. Stat. § 391.030(1). Kentucky state law therefore directs the district court having jurisdiction over the *estate* to "set apart" the sum. *See id.* The statute does not provide that an attorney can first set aside any sums and direct them first to the heirs. Further, while some Kentucky statutory provisions, such as those governing workers' compensation, are non-

8

assignable and exempt from debts, such an exemption does not exist for loss of consortium claims under any provision of Kentucky law. *See, e.g.*, Ky. Rev. Stat. § 342.180.

The Court concludes that it would be improper to authorize Wilmington to direct the Distribution to Counsel's escrow account for the purpose of paying the Descendants. The Distribution should first be directed to the Claimant's estate in a Kentucky probate proceeding. Whether the Descendants are entitled to recover some or all of the Distribution ahead of Billy England's creditors is a question that must be determined by a Kentucky court in the administration of his estate. The Descendants remain free to argue that they, rather than the estate's creditors, should receive some or all of the Distribution.

## IV. CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 4, 2020
   New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge