**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:

                                                                    **FOR PUBLICATION**

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,                               Chapter 11

                                                                    Case No. 09-50026 (MG)
                                                    Debtors.        (Jointly Administered)

------------------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER DENYING MOTION SEEKING AUTHORITY TO FILE LATE PROOFS OF CLAIM

*A P P E A R A N C E S :*

ANDREWS MYERS, P.C.
*Attorneys for Additional Ignition Switch Pre-Closing Plaintiffs*
1885 St. James Place, 15th Floor
Houston, Texas 77056
By:    Lisa M. Norman, Esq.
       T. Joshua Judd, Esq.

McDermott Will & Emery LLP
*Attorneys for the Motors Liquidation Company GUC Trust Administrator*
340 Madison Avenue
New York, New York 10173
By:    Kristin K. Going, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

This Opinion addresses whether the twenty Andrews Plaintiffs (as defined below), who

were involved in personal injury or wrongful death accidents between 1998 and 2009 in

connection with General Motors Corporation ("Old GM") vehicles, may file late proofs of claim.

On July 28, 2017, five Andrews Plaintiffs first moved for authority to file late proofs of claim.

Considerable time has passed since those accidents took place.  The Andrews Plaintiffs filed

their motion nearly twenty years after the first Andrews Plaintiff's airbag failed to deploy in a

multi-car accident; over seven years after the bar date for creditors to file proofs of claim; over

three years since General Motors LLC ("New GM") issued recalls relating to the ignition-switch

defects; and over one year after the Second Circuit ruled that plaintiffs whose vehicles were

subject to the ignition-switch recall were denied due process as a result of Old GM's failure to

provide actual notice of the Sale.  After the first five Andrews Plaintiffs moved for leave to file

late proofs of claim, thirteen additional Andrews Plaintiffs moved for authority to file late proofs

of claim between August and December 2017.  Two Andrews Plaintiffs seeking authority to file

late proofs of claim in the pending motion never even filed a proposed proof of claim in this

case.

The Court expended considerable time evaluating each Andrews Plaintiff's proof of

claim to assess whether the facts and circumstances warrant granting leave to file late claims.

While the Andrews Plaintiffs state in a conclusory fashion that they are all "Ignition-Switch

Plaintiffs," the Court's independent analysis found that only four Andrews Plaintiffs owned

vehicles that were subject to the ignition-switch recall.  Three of the Andrews Plaintiffs were in

accidents involving vehicles with a non-ignition switch defect.  Three of the Andrews Plaintiffs

did not own vehicles subject to any applicable ignition-switch or non-ignition switch recall.  For

the remaining ten Andrews Plaintiffs, there is insufficient information to determine whether their

vehicles had defects that were the subject of the 2014 recalls, or the basis for their claims against

Old GM that would warrant consideration so many years later.  Against this backdrop, the Court

finds that the Andrews Plaintiffs have not met their burden under the *Pioneer* test (explained

below) for excusable neglect and cannot establish their entitlement to file late proofs of claim.

For the reasons set forth below, the Andrews Myers Motion (as defined below) is

**DENIED.**

## I.    BACKGROUND

Pending before the Court is the *Motion by Additional Ignition Switch Pre-Closing Accident Plaintiffs[1] for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths* ("Andrews Myers Motion," ECF Doc. # 14018), as supplemented on August 10, 2017, September 19, 2017, December 12, 2017, and July 19, 2018 (the "Andrews Myers Supplements," ECF Doc. ## 14046, 14112, 14195, 14346), and a brief in support of the Andrews Myers Motion ("Andrews Myers Brief," ECF Doc. # 14690, and together with the Andrews Myers Motion and Andrews Myers Supplements, the "Andrews Myers Motions").  Twenty Additional Ignition Switch Pre-Closing Accident Plaintiffs' (the "Andrews Plaintiffs") late claims remain at issue in the pending Andrews Myers Motions.  On April 20, 2020, the Wilmington Trust Company, as the General Unsecured Creditors Trust (the "GUC Trust") administrator filed an omnibus objection.  ("Objection," ECF Doc. # 14724.)

On April 20, 2020, the Andrews Plaintiffs filed an untimely supplement to the Andrews Myers Brief.  ("Supplemental Andrews Myers Motion," ECF Doc. # 14716.)  On May 8, 2020, the GUC Trust filed a supplemental objection.  ("Supplemental Objection," ECF Doc. # 14744.)  On May 11, 2020, the Andrews Plaintiffs filed a reply brief.  ("Reply," ECF Doc. # 14745.)  On July 23, 2020, this Court held a hearing on the Andrews Myers Motions ("Late Claims Hearing").

---

[1]    The "Additional Ignition Switch Pre-Closing Accident Plaintiffs" are 389 individuals who were not included in the Omnibus Motion filed by Goodwin Procter LLP on behalf of Certain Ignition Switch Pre-Closing Accident Plaintiffs for Authority to File Late Proofs of Claim for Personal Injuries and Wrongful Deaths (ECF Doc. # 13807), but they are seeking the same relief set forth in that motion.  (Andrews Myers Motion at 1 n.1.)  The Additional Ignition Switch Pre-Closing Accident Plaintiffs state that they did not receive notice of ECF Doc. # 13807 or the deadline to join that motion.  (*Id.*)

3

A.    **Old GM's Bankruptcy**

On June 1, 2009, General Motors Corporation ("Old GM") and affiliated entities

(collectively, the "Debtors") filed chapter 11 bankruptcy petitions in this Court.  *See In re*

*Motors Liquidation Co.*, 529 B.R. 510, 530 (Bankr. S.D.N.Y. 2015) [hereinafter the "*April 2015*

*Opinion*"].  That same day, Old GM filed a motion to sell substantially all of its assets (the

"Sale") to General Motors LLC ("New GM").  *See id.*  Pursuant to a sale procedures order issued

by Judge Gerber on June 2, 2009, Old GM was required to send direct mail notice of the

proposed sale to interested parties, including "all parties who are known to have asserted any

lien, claim, encumbrance, or interest in or on [the to-be-sold] assets."  *See id.* at 531.  Old GM

was also required to publish notice of the Sale in several major newspapers.  *See id.*  On July 5,

2009, the Court issued an order approving the Sale.  ("Sale Order," ECF Doc. # 2968.)  The Sale

closed on July 10, 2009.

On September 2, 2009, the Court entered an order establishing November 30, 2009 as the

deadline for filing proofs of claim against Old GM (the "Bar Date").  ("Bar Date Order," ECF

Doc. # 4079.)  The Bar Date Order also required Old GM to publish notice of the Bar Date in

several global, national, and local newspapers.  Two years after the Bar Date, over 200 late

claims were filed.  *April 2015 Opinion*, 529 B.R. at 537.  In an effort to reduce the administrative

burden associated with responding to hundreds of late-filed claims, the GUC Trust filed a motion

seeking an order disallowing late-filed claims.  ("Late Filed Claims Motion," ECF Doc. #

11351.)  The Court granted the Late Filed Claims Motion and entered an order disallowing late-

filed claims, but also provided: "Nothing in this Order shall prevent any claimant submitting a

Late Claim from filing a motion with the Court seeking to have its Late Claim deemed timely

filed."  ("Late Filed Claims Order," ECF Doc. # 11394.)

### B.     The Recalls

In February and March 2014, New GM disclosed the existence of defective ignition

switches (the "Ignition-Switch Defect") and conducted a recall, NHTSA Recall No. 14v047 (the

"Ignition Switch Recall"), impacting approximately 2.1 million vehicles.  (*See* Objection at 4;

*April 2015 Opinion*, 529 B.R. at 538.)  An extensive investigation determined that Old GM knew

of the Ignition Switch Defect as early as 2005.  (Objection at 4.)  After the Ignition Switch

Recall, New GM conducted other recalls, specifically National Highway Transportation Safety

Administration ("NHTSA") Recall Numbers 14v355, 14v394, 14v400, 14v346, 14v118 (the

"Non-Ignition Switch Recalls" and together with the Ignition Switch Recall, the "Recalls"),

affecting approximately 10 million other vehicles.[2]  *Id.*  Thereafter, owners and lessees of

vehicles manufactured by Old GM and New GM filed a large number of individual and class

action lawsuits against New GM asserting personal injury, wrongful death and economic loss

claims allegedly arising from these defects.  *Id.*  New GM sought to enjoin related litigations by

filing motions to enforce the Sale Order in the Bankruptcy Court (the "Motions to Enforce"),

arguing that both the Sale Order's free and clear provisions and the injunctions against successor

liability proscribed such claims.  *April 2015 Opinion*, 529 B.R. at 538–39.

After New GM filed its Motions to Enforce, Judge Gerber issued an order on May 16,

2014, identifying initial threshold issues to be addressed in New GM's Motions to Enforce with

respect to fifty-four plaintiffs involved in Ignition-Switch actions (*see* "Chart of Ignition Switch

---

[2]       The recent proposed settlement agreement between the Economic Loss Plaintiffs, Avoidance Action Trust,
New GM and the GUC Trust defines "Recalls" as the following seven motor vehicle recalls conducted by New GM
in 2014 as described by NHTSA:

> NHTSA Recall No. 14v047 (Delta Ignition Switch), NHTSA Recall No. 14v355 (Impala
> Key Rotation), NHTSA Recall No. 14v394 (Cadillac CTS/SRX Key Rotation), NHTSA
> Recall No. 14v400 (Malibu Key Rotation), NHTSA Recall No. 14v346 (Knee-to-Key
> Camaro), NHTSA Recall No. 14v118 (Side Airbag), and NHTSA Recall No. 14v153
> (Electronic Power Steering).

("Economic Loss Plaintiff Amended Proposed Settlement Agreement," ECF Doc. # 14737-2 ¶ 67.)

Actions," ECF Doc. # 12620-1) against New GM. ("Tolling Order," ECF Doc. # 12697.) Judge

Gerber tolled the fifty-four plaintiffs' time to file their late claims motions until final resolution

of the threshold issues, including appeals. The Tolling Order provided that:

> [T]he GUC Trust agrees that it shall not assert a timeliness objection to any
> claims that the Plaintiffs may attempt to assert against the Old GM
> bankruptcy estate and/or the GUC Trust, based directly or indirectly on the
> ignition switch issue, as a result of Plaintiffs' delay in asserting claims
> during the "Interval." For purposes hereof, (a) the "Interval" shall
> commence on the date of this Order and shall end 30 days after a Final Order
> is entered with respect to an adjudication of the Threshold Issues . . . and
> (b) "Final Order" shall mean the entry of an order by a court of competent
> jurisdiction, and there are no pending appeals . . . .

(*Id.*) But as explained below, "Plaintiffs," as used in the Tolling Order, described a limited

group of specifically-identified plaintiffs, which did *not* include any of the Andrews Plaintiffs.

### C.    April 2015 Opinion, June 2015 Judgment, and Second Circuit Opinion

On April 15, 2015, Judge Gerber issued the *April 2015 Opinion* interpreting the Sale

Order's "free and clear" provision. Judge Gerber held that while claimants whose vehicles

possessed the Ignition-Switch Defect ("Ignition-Switch Plaintiffs")[3] had been denied due process

because they did not receive actual notice of the Sale Order, they were not prejudiced by the

denial of due process and were therefore bound by the "free and clear" provisions of the Sale

Order. *See April 2015 Opinion*, 529 B.R. at 568. The Court issued the judgment enforcing that

decision on June 1, 2015 (the "June 2015 Judgment," ECF Doc. # 13177), and certified the June

Judgment and *April 2015 Opinion* for direct appeal to the Second Circuit. (ECF Doc. # 13178.)

---

[3]    The term "Ignition Switch Plaintiff" has been used throughout this proceeding to refer to economic loss
plaintiffs whose vehicles were subject only to NHTSA Recall No. 14v047. *See In re Motors Liquidation Co.*, 571
B.R. 565, 572–73 (Bankr. S.D.N.Y. 2017), *aff'd in part, vacated in part*, 590 B.R. 39 (S.D.N.Y. 2018) ("It is clear
from the April Decision that Judge Gerber used the terms 'Ignition Switch Defect' to mean only the defect in the
Subject Vehicles that gave rise to NHTSA Recall No. 14v047, and plaintiffs without the specific Ignition Switch
Defect—whether the defect in their cars involved the ignition switch or not—were therefore not Ignition Switch
Plaintiffs.").

Judge Gerber also found that Ignition-Switch Plaintiffs were known creditors of Old GM

at the time it filed for bankruptcy, but Old GM did not inform them about the Ignition-Switch

Defect before the Bar Date.  As a result, those claimants could not file timely proofs of claim

based on the Ignition-Switch Defect.  *April 2015 Opinion*, 529 B.R. at 574.  The Court held that:

"The remedy with respect to the denial of notice sufficient to enable the filing of claims before

the Bar Date is obvious.  That is leave to file late claims.  And the Court may grant leave from

the deadline imposed by the Court's Bar Date order . . . ."  *Id.* at 583; *see also* June 2015

Judgment at 2 (stating that claimants "may petition the Bankruptcy Court (on motion and notice)

for authorization to file a late or amended proof of claim against the Old GM bankruptcy

estate").  However, Judge Gerber also found that any late proofs of claim filed by claimants

against the GUC Trust would be proscribed by the doctrine of equitable mootness.  *See* June

2015 Judgment ¶ 6.

On July 13, 2016, the Second Circuit issued an opinion on direct appeal affirming in part

and reversing in part the *April 2015 Opinion* and June 2015 Judgment.  *See In re Motors*

*Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016) [hereinafter the "*Second Circuit Opinion*"].  The

Second Circuit held that plaintiffs with the Ignition-Switch Defect, including those who had

purchased their vehicles used, had been prejudiced by Old GM's failure to disclose the defect,

and thus, by their lack of actual notice of the impending Sale.  *Id.* at 163.  Therefore, those

plaintiffs were not bound by the Sale Order's "free and clear" provisions.  *Id.*

The Second Circuit also vacated Judge Gerber's equitable mootness ruling as an advisory

opinion.  The court explained:

> Neither GUC Trust nor Old GM are parties to the multi-district litigation
> now ongoing in the district court.  Only one defendant is named: New GM.
> Likewise, as GUC Trust confirmed at oral argument, plaintiffs have not
> filed any proofs of claim with GUC Trust, nor have they even asked the

7

> bankruptcy court for permission to file late proofs of claim or to lift the bar
> date, as would be required before relief could be granted.

*Id.* at 168.

The Second Circuit further explained:

> Instead, it appears from the record that GUC Trust became involved at *New
> GM's* behest . . . .  We acknowledge that the parties have expended
> considerable time arguing about equitable mootness.  We are likewise
> cognizant that plaintiffs at one point sent a letter to the GUC Trust
> suggesting that it should freeze distributions pending the bankruptcy
> proceedings.  But plaintiffs did not pursue any claims.  Ultimately, it is the
> *parties*, and not the court, that must create the controversy.

*Id.* at 168–69 (record citation omitted) (emphasis in original).  Finally, in a footnote, the Second

Circuit noted that:

> The bankruptcy court lifted the bar date for independent claims as a remedy.
> We note, however, that neither the Groman Plaintiffs nor Ignition Switch
> Plaintiffs requested this as relief.  The Ignition Switch Plaintiffs only
> mentioned in a footnote in their opposition to the motion to enforce that Old
> GM failed to provide notice of the bar date.  The Pre-Closing Accident
> Plaintiffs stated that on behalf of all plaintiffs that "Plaintiffs are not
> asserting a due process challenge to the bar date order or a discharge
> injunction issued in favor of a debtor."

*Id.* at 168 n.31.

Following the *Second Circuit Opinion*, this Court issued an order to show cause

identifying initial issues to be addressed on remand, including whether the Pre-Closing Accident

Plaintiffs, the Ignition Switch Plaintiffs and/or Non-Ignition Switch Plaintiffs satisfy the

requirements for authorization to file late proof(s) of claim against the GUC Trust and/or

whether such claims are equitably moot.  ("2016 Order to Show Cause," ECF Doc. # 13802.)

The 2016 Order to Show Cause also established December 22, 2016 as the deadline for Brown

Rudnick LLP and Goodwin Procter LLP (on behalf of their respective clients) to file motions

seeking authority to file late proofs of claim.  (*Id.* at 5 ¶ 1.)  The 2016 Order to Show Cause

further provided that:

> If other plaintiffs wish to join in a Late Claim Motion, they shall file
> a joinder (not to exceed two pages) with the Court by January 6,
> 2017.  Any plaintiff filing a joinder need not file a proof of claim
> until further order of the Court.

(*Id.*)

The 2016 Order to Show Cause stayed any briefing or adjudication of the motions to file late claims by plaintiffs with the Non-Ignition Switch Defect pending resolution of the threshold issues.  (*Id.* at 5 ¶ 2.)  Briefing and adjudication with respect to the late claims motions filed by Brown Rudnick LLP and/or Goodwin Procter LLP could nevertheless proceed.  (*Id.*)  After the Court entered the 2016 Order to Show Cause, Goodwin Procter filed omnibus motions by certain pre-closing accident plaintiffs seeking authority to file late proofs of claim for personal injuries and wrongful deaths.  ("Initial Goodwin Motion," ECF Doc. # 13807, "Supplemental Goodwin Motion," ECF Doc. # 14325.)  The parties subsequently engaged in limited written discovery and briefed two issues for the Court: (1) whether the *Pioneer* factors applied to a situation in which proper notice of the bar date was not given to a known claimant, and (2) if the factors did apply, whether the issues of "tolling" impacted whether the late claims motions should be granted.  ("Late Claims Order," ECF Doc. # 13869.)

The Andrews Plaintiffs argue that they did not receive notice of the 2016 Order to Show Cause because they were not involved in the bankruptcy case when the order was entered. (Andrews Myers Brief ¶ 15.)  At the Late Claims Hearing, Lisa Norman, counsel to the Andrews Plaintiffs, represented that she only learned about the bankruptcy case and the 2016 Order to Show Cause sometime in 2017.  Ms. Norman further stated that she believes an attorney from Hilliard Martinez Gonzalez LLP ("Hilliard"), counsel for the plaintiffs in the multi-district proceeding before the Hon. Jesse Furman, U.S.D.J. in the Southern District of New York ("MDL"), notified other personal injury lawyers about Hilliard's pending late claims motion.

9

Those personal injury lawyers relayed this information to the Andrews Plaintiffs.  The Andrews

Plaintiffs then retained Ms. Norman to file their late claims motions.  She does not recall the

exact date when that occurred.

Around May 2017, certain plaintiffs, the GUC Trust and the GUC Trust Unitholders

notified this Court that they were engaging in ongoing settlement discussions.  ("May 19, 2017

Tr.," ECF Doc. # 13943.)  Edward Weisfelner, bankruptcy counsel to plaintiffs claiming

economic loss based on the Ignition-Switch Defect, filed several status letters during the summer

of 2017 indicating that settlement discussions amongst the parties had meaningfully progressed.

(ECF Doc. ## 13962, 13981, 14027.)  On September 11, 2017 and May 3, 2018, the parties filed

two motions to approve a compromise under Bankruptcy Rule 9019, but those motions were

denied.  *See In re Motors Liquidation Co.*, 580 B.R. 319 (Bankr. S.D.N.Y. 2018).  Seventeen of

the Andrews Plaintiffs were parties to those proposed settlement agreements.

### D.    Procedural History Regarding the Andrews Myers Motion

On July 28, 2017—one year after the *Second Circuit Opinion* and seven months after the

deadline imposed by the Court in the 2016 Order to Show Cause for other plaintiffs to seek leave

to file late proofs of claim—171 Andrews Plaintiffs sought authority to file late proofs of claim

with this Court.  (Andrews Myers Motion.)  Two days prior, on July 26, 2017, Lisa Norman,

counsel to the Andrews Plaintiffs, filed a motion for *pro hac vice* admission to this Court.  (ECF

Doc. # 14000.)  Five of the twenty Andrews Plaintiffs—Kathryn Enders, Sandra Samuels, Ruby

Merritt, Ryan Dullen, and Shanga Johnson—filed proposed proofs of claim on July 28, 2017.

(Andrews Myers Motion, Ex. B.)  The proofs of claim state that the basis for their claim is

"Personal Injury–Ignition Switch," based on accidents that took place between 2004 and 2009,

but the proofs of claim provide no further information.  (*Id.*)  The proposed proofs of claim for

10

these five Andrews Plaintiffs do not provide explanations for the delay in seeking leave to file a late claim.

On August 10, 2017, the Andrews Plaintiffs supplemented their first filing, attaching 113 additional proposed claimants. (ECF Doc. # 14046.) Two of the twenty Andrews Plaintiffs filed proposed proofs of claim: Jared Bednar and Sheryl El-Cheikh. The proofs of claim state that the basis for their claim is "Personal Injury – Ignition Switch," based on accidents that took place in 2008 and 2001, respectively, but provide no further information. (*Id.*)

On September 19, 2017, the Andrews Plaintiffs filed a second supplement to their first filing, introducing 64 additional claimants. (ECF Doc. # 14112.) Nine of the twenty Andrews Plaintiffs filed proposed proofs of claim: Bertha Brown, Joann Donato, Rodney Gentry, Chas Grant, Melinda Lynch, Louella Martinez, John McDonough, David Pier, and Shakiria Stephenson. The proposed proofs of claim state that the basis for their claims are "Personal Injury – Ignition Switch," based on accidents that took place between March 1998 and April 2009. Seven of the twenty Andrews Plaintiffs indicate that they were in pre-Sale accidents involving Ignition-Switch or Non-Ignition Switch Recall vehicles and provide sparse details on the accidents that took place. The proof of claim for John McDonough does not specify the type of vehicle at issue in his pre-Sale accident. In addition, the proposed proofs of claim for David Pier and Chas Grant state that they were involved in accidents involving 1996 and 1997 Grand Ams, *which were not subject to any Recall*. (Objection at 16.)

On December 12, 2017, Andrews Myers filed a third supplement to the Andrews Myers Motion, introducing an additional three claimants. Two Andrews Plaintiffs filed proposed proofs of claim: Michael Gillis and Jibreel Riley. (ECF Doc. # 14195.) Their proposed proofs of claim state that the basis for their claims are "Personal Injury – Ignition Switch" for accidents that took

place in 2007 in 2006 Chevy Cobalts (a vehicle that was part of the Ignition Switch Recall).  On

July 19, 2018, the Andrews Plaintiffs filed a fourth supplement to the Andrews Myers Motion,

attaching 42 additional proposed proofs of claim.  (ECF Doc. # 14346.)  None of the Andrews

Plaintiffs were included in the fourth supplement.  On December 6, 2019 and February 20, 2020,

the Andrews Plaintiffs filed two status reports indicating that only twelve of the 389 Andrews

Plaintiffs originally seeking authority to file late claims against the GUC Trust remained.[4]  (ECF

Doc. ## 14643, 14676.)

    On January 28, 2020, the Court entered a scheduling order for briefing the Andrews

Myers Motions.  (ECF Doc. # 14661.)  The scheduling order provided that the Andrews

Plaintiffs must each file and serve a brief in support of their Andrews Myers Motion by March

27, 2020.  (*See id.*)  On March 27, 2020, pursuant to this Court's directive, the remaining

Andrews Plaintiffs filed the Andrews Myers Brief in support of the Andrews Myers Motions.

    On April 20, 2020, the Andrews Plaintiffs filed a supplemental brief, indicating that eight

additional claimants who were part of the original 389 movants also wanted to continue to

pursue their rights to assert late claims.  (Supplemental Andrews Myers Motion.)  Two of the

eight individuals—Deborah Overcast and Kenneth Salm—never previously sought leave to file a

late claim before this Court.  The Andrews Plaintiffs did not attach proposed proofs of claim for

those claimants.  (*Id.*)

### E.    The Andrews Myers Motions

    The Andrews Myers Motions first argue that the Andrews Plaintiffs do not need to satisfy

the *Pioneer* factors to obtain authority to file late proofs of claim.  They argue that the *April 2015*

---

[4]    Following extended mediation, New GM settled most pre-Sale accident personal injury and wrongful death
claims, including claims of most of the plaintiffs represented by Andrews Myers and by other counsel.  The alleged
claims of the twenty Andrews Plaintiffs at issue in these motions were not settled.

*Opinion* establishes that Ignition Switch Plaintiffs are known creditors who did not receive constitutionally adequate notice of the Bar Date and that the remedy for this due process violation is leave to file late claims.  (Andrews Myers Brief ¶ 19.)

Even if the *Pioneer* factors are applicable, the Andrews Plaintiffs argue that this Court's analysis of the *Pioneer* factors must take into account the GUC Trust's agreement not to assert a timeliness objection against certain plaintiffs for any delay in asserting claims in the time period prescribed by the Tolling Order.  (*Id.* ¶ 28.)  While the Andrews Plaintiffs were not yet involved in this case when the Tolling Order was entered, they argue that the Tolling Order also applies to them as similarly situated plaintiffs.  (*Id.* ¶ 29.)  In addition, the Andrews Plaintiffs argue that the *April 2015 Opinion*'s equitable mootness ruling effectively postponed any late claims motions until that ruling was set aside.  It was not until the Second Circuit vacated the equitable mootness ruling in July 2016 that the Andrews Plaintiffs had a basis to argue that they should be permitted to file their proofs of claim.  (*Id.* ¶ 33.)

The Andrews Plaintiffs also argue that adjudication of their late claims motions ahead of the Court's determination of the threshold issues, as defined in the Tolling Order, would not make any sense given that the focus of the threshold issues was on whether a due process violation had occurred.  Absent such a determination, they argue, a late claims motion would either be premature or denied outright because claims filed five years after the Bar Date would be late and disallowed *per se*.  (*Id.* ¶ 35.)  Finally, the Andrews Plaintiffs represent that they were not aware that the Court had entered the 2016 Order to Show Cause allowing late claims motions to be filed.  The Andrews Plaintiffs argue that once they discovered that the late claims motions were being considered by this Court, they promptly filed their Motion.  (*Id.* ¶¶ 37–40.)

13

F.    **The GUC Trust's Objection**

The GUC Trust argues that the *Pioneer* standard applies to the Andrews Myers Motions.
As an initial matter, the Second Circuit only found that notice of *the Sale* was insufficient with
respect to Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs; the
Second Circuit never ruled whether notice of the Bar Date was insufficient to meet the standards
for due process for any plaintiff.  (Objection at 19 (quoting *Second Circuit Opinion*, 829 F.3d at
166) ("Because enforcing the *Sale Order* would violate procedural due process in these
circumstances, the bankruptcy court erred in granting New GM's motion to enforce . . . .")
(emphasis added).)

The Second Circuit vacated Judge Gerber's equitable mootness finding, and implicitly
Judge Gerber's bar date finding, because those issues had not been presented to the Court—the
plaintiffs had not asked this Court to lift the Bar Date or sought leave to file late claims.
(Objection at 20 (quoting *Second Circuit Opinion*, 829 F.3d at 168–69 n.31) ("Ultimately, it is
the parties, and not the court, that must create the controversy.")); *accord* FED. R. BANKR. P.
9006(b)(1) (permitting courts to extend a passed deadline only "on motion made").  As a result,
the GUC Trust argues, there is no ruling in force  that would permit the Andrews Plaintiffs to
wait to file late claims for as long as they wish because they did not receive adequate notice of
the Bar Date Order.  (Objection at 19–20.)

The GUC Trust further rejects the Andrews Plaintiffs' argument that their motion should
be granted without application of the *Pioneer* factors under the law of the case doctrine.  (*Id.* at
22.)  The GUC Trust argues that any finding regarding late claims was advisory and thus had no
legal force because plaintiffs in the *April 2015 Opinion* were only seeking relief from New GM,
not from the GUC Trust.  (*Id.* at 23.)  In addition, because plaintiffs had not sought relief from

14

the GUC Trust, any so-called "finding" with respect to claims against the GUC Trust was

entirely "unnecessary to the disposition of the case" and was therefore dictum. Accordingly, the

GUC Trust argues, the law of the case doctrine does not apply. (*Id.* at 25.)

The GUC Trust also argues that there is case law from this District explicitly rejecting the

Andrews Plaintiffs' position that *Pioneer*'s excusable neglect standard does not apply to late

claims once a due process violation has been established. (*Id.* at 26 (citing *In re Queen Elizabeth

Realty Corp.*, No. 13-12335 (SMB), 2017 WL 1102865 (Bankr. S.D.N.Y. Mar. 24, 2017), *aff'd*,

586 B.R. 95 (S.D.N.Y. 2018)).) The GUC Trust further highlights that the Andrews Plaintiffs'

delay was not entirely attributable to lack of notice. Even after the Recalls in 2014, the Andrews

Plaintiffs waited years to pursue their claims against the GUC Trust. While hundreds of

plaintiffs were filing complaints across the country after 2014, the Andrews Plaintiffs made no

effort to recover against the GUC Trust in either the MDL or the Bankruptcy Court. (Objection

at 31.) Despite acknowledging that they were aware of potential claims in 2014, and despite the

Court's post-remand 2016 Order to Show Cause fixing December 22, 2016 as the deadline to file

late claims motions, the Andrews Plaintiffs waited until July 28, 2017 to seek permission to file

late proofs of claim. The Andrews Plaintiffs' post-Recalls delay is therefore solely attributable

to their own actions. Whether they received adequate notice in 2009 is therefore immaterial.

(*Id.* at 30–31.)

In the Supplemental Objection, the GUC Trust argues that the Supplemental Andrews

Myers Motion was untimely. (Supplemental Objection at 2–3.) The GUC Trust states that two

of the eight individuals identified in the Supplemental Andrews Myers Motion are completely

new and never previously sought to file a late claim. (*Id.*) Of the remaining six, four do not

provide any information regarding the make and model of the vehicle allegedly giving rise to the

proposed claim, making it impossible to determine the basis for their proposed late claims, and the remaining two assert personal injuries related to a 2006 Chevy Cobalt which is a vehicle that was part of the Ignition-Switch Recall.  (*Id.*)

### G.    Reply

In the Reply, the Andrews Plaintiffs assert that the twenty Andrews Plaintiffs have sought authority from this Court to file late claims since 2017.  On two separate occasions, they were parties to settlement agreements with the GUC Trust, but ultimately neither settlement agreement was approved.  Accordingly, their last resort for recovery in this case is to obtain authority to file late claims.  (Reply ¶ 1.)

The Andrews Plaintiffs address the *Pioneer* factors to the extent that the Court intends to consider them in its analysis.  (*Id.* ¶ 2.)  The Andrews Plaintiffs argue that they meet the standard of excusable neglect.  First, there is no danger of prejudice to the GUC Trust if the Andrews Plaintiffs are allowed to file late claims because the GUC Trust previously represented that it had sufficient resources to pay the Andrews Plaintiffs' late claims, if they are allowed.  The Andrews Plaintiffs' proofs of claim are the last remaining late claims before this Court for consideration, so there is no continuous risk of additional late claims, as alleged by the GUC Trust.  (*Id.* ¶ 5.)

Second, with regard to the length of delay, the Andrews Plaintiffs filed their motion to allow late claims as soon as they became aware that this Court was still considering potential late claims.  Just as the Andrews Plaintiffs did not receive notice of the initial order setting the Bar Date, they also did not receive notice of the 2016 Order to Show Cause setting the deadline for filing late claims motions.  Once they became aware of the 2016 Order to Show Cause, each of the Andrews Plaintiffs joined in seeking relief.  (*Id.* ¶ 6.)

Third, the Andrews Plaintiffs argue that the earliest that any of them became aware of the 2016 Order to Show Cause was mid-2017. Prior to that time, they believed that there was no longer an avenue to recover in this bankruptcy case. (*Id.* ¶ 7.) Finally, the Andrews Plaintiffs acted in good faith and filed their claims as soon as they became aware that such an opportunity might still exist in this Court. (*Id.* ¶ 8.)

## II.    <u>LEGAL STANDARD</u>

Bankruptcy Rule 9006(b)(1) governs the filing of proofs of claim after a bar date. *See In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005). Bankruptcy Rule 9006 states in part:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

FED. R. BANKR. P. 9006(b)(1). Thus, "a proof of claim filed after the bar date will only be permitted if the failure to file before the bar date 'was the result of excusable neglect.'" *In re Motors Liquidation Co.*, 600 B.R. 482, 487–88 (Bankr. S.D.N.Y. 2019), *aff'd*, No. 19-CV-5666 (JMF), 2020 WL 3120379 (S.D.N.Y. June 12, 2020).

In *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) [hereinafter "*Pioneer*"], "[t]he Supreme Court [] interpreted 'excusable neglect' to be a flexible standard—one that can include 'inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *In re Lehman Bros. Holdings Inc., et al.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010) (quoting *Pioneer*, 507 U.S. at 395). "However, 'the determination is at bottom an equitable one' that must take 'account of all relevant circumstances surrounding the party's omission.'" *Id.* (quoting *Pioneer*, 507 U.S. at 395). The *Pioneer* Court established four factors to assist bankruptcy courts in evaluating excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial

17

proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395. "The Second Circuit strictly observes bar dates and has adopted what has been characterized as a 'hard line' in applying the Pioneer test," meaning that this Court should focus its analysis "primarily on the reason for the delay, and specifically whether the delay was in the reasonable control of the movant." *In re Lehman Bros.*, 433 B.R. at 119–20 (quoting *In re Enron*, 419 F.3d at 122).

### III.    DISCUSSION

The Court denies the Andrews Myers Motions as to all twenty Andrews Plaintiffs. The *April 2015 Opinion* is not law of the case and does not require this Court to grant the Andrews Plaintiffs leave to file late claims without application of the *Pioneer* factors. Under the *Pioneer* standard, the Court finds that the reason for the delay and the length of the delay weigh heavily in favor of denying the Andrews Myers Motions. The third and fourth factors—prejudice to the debtor and good faith of the proposed claimant—are neutral and, even if present, cannot overcome the other two factors.

### A.    The *Pioneer* Standard Applies to All of the Andrews Plaintiffs

The Andrews Plaintiffs argue that the *April 2015 Opinion* established that plaintiffs with the Ignition-Switch Defect are known creditors who did not receive constitutionally adequate notice of the Bar Date and that the remedy for this violation is leave to file late claims without demonstrating excusable neglect under *Pioneer*.[5] (Andrews Myers Brief ¶ 19.) In their view, this decision must be followed by this Court because it remains law of the case and was not appealed. (*Id.* ¶ 23.) The Court rejects the Andrews Plaintiffs' argument.

---

[5]    Only four of the twenty Andrews Plaintiffs allege that the vehicles involved in their accidents were subject to NHTSA Recall No. 14v047. That is the only recall for which Judge Gerber and the Second Circuit found a due process violation. The due process issue remains undecided for any of the other 2014 Recalls. The Court concludes it is unnecessary to resolve that issue now for any of the other recalls.

As a preliminary matter, this Court previously applied *Pioneer* when denying certain

creditors' motion for leave to file late claims in this bankruptcy proceeding despite the alleged

due process violation. *See In re Motors Liquidation Co.*, 600 B.R. at 488–89. Citing to *Pioneer*,

this Court held that a proof of claim filed after the bar date will only be permitted if the failure to

file before the bar date "was the result of excusable neglect." *Id.; see also Queen Elizabeth*,

2017 WL 1102865, at *6. The *April 2015 Opinion* and law of the case doctrine do not change

this result.

The law of the case doctrine provides that "when a court has ruled on an issue, that

decision should generally be adhered to by that court in subsequent stages in the same case"

unless "cogent and compelling reasons militate otherwise." *De Johnson v. Holder*, 564 F.3d 95,

99 (2d Cir. 2009). Judge Gerber's ruling that leave to file late claims is the appropriate remedy

for Ignition-Switch Plaintiffs' lack of actual notice of the Bar Date is not law of the case. That

ruling is intrinsically linked to his finding that such relief would be equitably moot.[6] Judge

Gerber's equitable mootness ruling was vacated by the Second Circuit as advisory because there

was no justiciable controversy involving the GUC Trust. *See Second Circuit Opinion*, 829 F.3d

at 168 ("[P]laintiffs have not filed any proofs of claim with the GUC Trust, nor have they even

asked the bankruptcy court for permission to file late proofs of claim or to lift the bar date, as

would be required before relief could be granted."). Accordingly, the Court finds that there is no

law of the case permitting the Andrews Plaintiffs to wait to file late claims until almost eight

---

[6]       Specifically, Judge Gerber found that fashioning the appropriate relief for the Ignition-Switch Plaintiffs'
denial of due process with respect to the Bar Date would require: (1) allowing the Ignition-Switch Plaintiffs to file
late claims after the Bar Date and (2) allowing the GUC Trust's limited assets to be used to satisfy those claims. *See
April 2015 Opinion*, 529 B.R. at 586. In his view, "the initial step would be effective relief for the Plaintiffs *only if
the second step* could likewise be achieved." *Id.* (emphasis added). The second step could not be achieved because
there were no available assets not otherwise allocated for other purposes and "taking away value previously reserved
for those whose claims have not yet been either allowed nor disallowed would be inequitable wholly apart from the
unfairness to GUC Trust investors." *Id.* Thus, Judge Gerber's ruling with respect to the appropriate remedy for a
due process violation—leave to file late claims—is related to his finding that such relief would be equitably moot.

years after the Bar Date.  Thus, the *Pioneer* analysis applies to the Andrews Plaintiffs' proposed

late proofs of claim.

> **B.      The Andrews Plaintiffs' Failure to Timely File a Proof of Claim Was Not Due to Excusable Neglect**

> 1.      <u>The Reason for the Delay</u>

The Court has considered several possible reasons for the Andrews Plaintiffs' delay in

filing proofs of claim.  These explanations include: (1) Old GM's failure to provide the Andrews

Plaintiffs with actual notice of the Bar Date in violation of their due process rights; (2) the GUC

Trust's agreement not to assert a timeliness objection against certain plaintiffs in the Tolling

Order; (3) the appeal of Judge Gerber's *April 2015 Opinion* in July 2016; and (4) the Andrews

Plaintiffs' lack of knowledge regarding the 2016 Order to Show Cause.  None of the Andrews

Plaintiffs' explanations persuade the Court that the reason for their delay in filing late proofs of

claim was due to excusable neglect.  *See In re O'Shaughnessy*, 252 B.R. 722, 730 (Bankr. N.D.

Ill. 2000) ("The creditor seeking to have its proof of claim deemed timely filed has the burden of

proving 'excusable neglect' by a preponderance of the evidence.").

> *a.      The Due Process Violations*

Courts analyzing the reason for the delay under *Pioneer* consider whether the movant

received adequate notice of the bar date consistent with due process.  *See Queen Elizabeth*, 2017

WL 1102865, at *6 ("In this case, the reason for the delay weighs heavily in [claimant's] favor.

[Claimant's predecessor] did not receive actual or constructive notice of the Bar Date, and its

successors did not find out about the bankruptcy until December 2015, two years after the Bar

Date.").  In a conclusory fashion, the twenty Andrews Plaintiffs' proofs of claim assert that they

are "Ignition-Switch Plaintiffs" who suffered a due process violation because they did not

receive actual notice of the Bar Date.  (Andrews Myers Brief ¶ 11 (quoting *April 2015 Opinion*

at 574).)  However, only four Andrews Plaintiffs are plaintiffs whose accidents allegedly resulted

from an Ignition-Switch Defect.  As discussed below, any finding that their due process rights

were violated only explains a portion of their delay in filing late proofs of claim.

i.        The Four Ignition-Switch Andrews Plaintiffs

Four of the Andrews Plaintiffs—Donato, Gillis, Riley and Stephenson (the "Four

Ignition-Switch Andrews Plaintiffs")—have alleged that they are Ignition-Switch Plaintiffs

based on the vehicle type that they included on their proofs of claim.  But the Four Ignition-

Switch Andrews Plaintiffs' delay is not solely attributable to lack of actual notice of the Bar

Date.  The Four Ignition-Switch Andrews Plaintiffs were involved in accidents dating back to

2005 and 2007 where the "airbag did not deploy, resulting in bodily harm" or "ignition switch

failed, airbag did not deploy."  The Four Ignition-Switch Andrews Plaintiffs are differently

situated than other plaintiffs alleging economic loss due to the Ignition-Switch Defect, who may

have owned a vehicle that they did not know had a product defect until the 2014 Recalls.  A

serious accident in which an airbag did not deploy would immediately raise the question "Why?"

Most vehicle accident product liability claims do not involve vehicles that were subject to

NHSTA recalls.  Thus, the lack of actual notice of the Bar Date does not fully explain why the

Four Ignition-Switch Andrews Plaintiffs made no effort to recover from the GUC Trust in this

case, or from New GM in the MDL after the 2014 Recalls (when hundreds of other plaintiffs

were filing complaints against New GM across the country).

ii.        Non-Ignition Switch Plaintiffs

With respect to the remaining sixteen Andrews Plaintiffs, the Court finds that they were

not in accidents involving the Ignition-Switch Defect or that there is insufficient information to

determine what defect applies to their vehicle.  Three of the twenty Andrews Plaintiffs—Melinda

Lynch, Bertha Brown, and Rodney Gentry (the "Non-Ignition Switch Andrews Plaintiffs")—

characterize themselves as "Ignition-Switch Plaintiffs" on their proofs of claim. However, they

were involved in alleged accidents involving the Non-Ignition Switch Recalls. This Court has

not found that plaintiffs in accidents involving Non-Ignition Switch Defects suffered a due

process violation because they did not receive actual notice of the Bar Date. The Andrews

Plaintiffs' papers do not offer any evidence that they were "known" creditors to Old GM entitled

to actual notice of the Bar Date. (Objection at 43.) As a result, the Court does not find by a

preponderance of the evidence that the reason for the delay resulted from a due process violation.

### iii.    Andrews Plaintiffs Who Have Not Established Any Basis for Liability

Thirteen of the Andrews Plaintiffs have not established any basis for asserting a claim

against the GUC Trust that warrants this Court's consideration. Two of these claimants, Chas

Grant and David Pier, listed 1996 and 1997 Pontiac Grand Ams that were not subject to the

Recalls. Recall number 14v400 lists Pontiac Grand Am only for the years 1999–2005. Their

accidents occurred in 2006 and 2005 respectively. Nine of these thirteen claimants do not

provide any information regarding the type of car driven when their accident occurred. Eight

merely state that the basis for their claim is the "Personal Injury-Ignition Switch" without

providing information regarding their vehicle type.[7] The ninth individual, Louella Martinez, lists

her vehicle as a Pontiac Grand Prix but failed to provide the year, precluding this Court from

ascertaining whether her car is part of the 14v400 recall. None of these individuals provided a

description of their accident on their proof of claim. Two Andrews Plaintiffs—Deborah

Overcast and Kenneth Salm—have not filed proposed proofs of claim and did not enter the case

---

[7]    These Andrews Plaintiffs and the dates of their respective accidents are: Kathryn Enders (2008), John McDonough (1998), Ruby Merritt (2008), Sandra Samuels (2008), Jared Bednar (2008), Ryan Dullen (2004), Sheryl El-Cheikh (2001), Shanga Johnson (2009), and Louella Martinez (2008).

until August 20, 2020.  Therefore, these thirteen Andrews Plaintiffs have not met their burden by

a preponderance of the evidence to show that the reason for their delay was due to excusable

neglect.

> b.      *The Tolling Order Does Not Apply to the Andrews Plaintiffs*

The Andrews Plaintiffs also argue that this Court must consider the GUC Trust's

agreement to not assert a timeliness objection against fifty-four plaintiffs for any delay in

asserting claims from May 16, 2014 until 30 days after a "Final Order" is entered on the

threshold issues.  (Andrews Myers Brief ¶¶ 28–29 (citing Tolling Order at 3).)  The Andrews

Plaintiffs contend that, as similarly situated plaintiffs, they are beneficiaries of the Tolling Order

and filed their late claims motions prior to the expiration of the Tolling Order.  (*Id.* ¶ 29.)  By

contrast, the GUC Trust maintains that the Tolling Order did not apply to the Andrews Plaintiffs.

The Andrews Plaintiffs' reliance on the Tolling Order is misplaced; the Tolling Order

does not apply to the Andrews Plaintiffs.  The Tolling Order provided that:

> [T]he GUC Trust agrees that it shall not assert a timeliness objection to any
> claims that the Plaintiffs may attempt to assert against the Old GM
> bankruptcy estate and/or the GUC Trust, based directly or indirectly on the
> ignition switch issue, as a result of Plaintiffs' delay in asserting such claims
> during the "Interval."

(Tolling Order at 3.)  The Tolling Order indicated that capitalized terms—like "Plaintiff"—have

the meaning ascribed to that term in the "Motion" (*id.*), which in turn, refers to New GM's April

21, 2014 motion pursuant to sections 105 and 363 of the Bankruptcy Code, seeking to enforce

the Sale Order and Injunction.  (ECF Doc. # 12620.)  "Plaintiffs" specifically included 54

ignition-switch economic loss plaintiffs who filed lawsuits between February 27, 2014 and April

18, 2014.  (*Id.*, Schedule 1.)  The Andrews Plaintiffs were not included.  Thus, the Tolling Order

does not apply to the Andrews Plaintiffs.

c.    *The Equitable Mootness Ruling*

The Andrews Plaintiffs also argue that Judge Gerber's *April 2015 Opinion* on equitable

mootness rendered the Andrews Plaintiffs' act of seeking to file a late proof of claim relating to

the Ignition Switch Defect "a waste of time and resources."  (Andrews Myers Brief ¶ 33.)  In

their view, "there was an uninterrupted period of seven years during which no legitimate basis

existed for the Andrews Plaintiffs to seek allowance of late claims relating to the Ignition Switch

Defect."  (*Id.*)  The GUC Trust responds that the absence of a source of recovery due to Judge

Gerber's equitable mootness ruling did not alleviate the Andrews Plaintiffs of their burden to

timely assert their claims.  (Objection at 36.)

The Court finds the GUC Trust's argument persuasive.  The filing of a poof of claim is a

protective measure that does not guarantee a creditor will receive a distribution.  The fact that a

claim cannot be paid does not obviate the requirement that a creditor assert the claim in order to

preserve its rights.  As the GUC Trust points out, the fact that the Andrews Plaintiffs' claims

against the GUC Trust were unenforceable against the GUC Trust until the equitable mootness

issue was resolved did not alter the Andrews Plaintiffs' duty to timely assert their claims.  (*Id.*)

Whether pursuing a claim is a "waste of time and resources" is a calculus left to each individual

creditor, but a creditor that wishes to preserve its rights must always act diligently to assert those

rights.  *See In re Lehman Bros.*, 433 B.R. at 126 ("Creditors act at their peril where they fail to

adequately investigate and pursue their rights.").

Even assuming the Andrews Plaintiffs were justified in waiting to file late proofs of claim

relating to the Ignition Switch Defect until after the *Second Circuit Opinion*, the Andrews

Plaintiffs do not provide an explanation for why they waited more than a year after the *Second*

*Circuit Opinion* to file the first set of late claims.  In fact, they provide no explanation for why

two Andrews Plaintiffs never filed proofs of claim in this case.

*d.*     *The 2016 Order to Show Cause*

The Andrews Plaintiffs argue that the Court's administration of the case suggested that

all late claims would be decided at one time, rendering any late claims issues unripe until the

*Second Circuit Opinion* was issued.  (Andrews Myers Brief ¶ 44.)  To streamline the late claims

process, this Court issued the 2016 Order to Show Cause, imposing a deadline of January 6,

2017 for plaintiffs to file joinders to the Goodwin Plaintiffs and Economic Loss Plaintiffs' late

claims motions.  (2016 Order to Show Cause at 5 ¶ 1.)  At the Late Claims Hearing, Ms. Norman

represented that she only became aware of the 2016 Order to Show Cause and pending late

claims motions sometime in 2017.  It is her understanding that Hilliard, counsel for the plaintiffs

in the MDL, may have communicated to other personal injury attorneys handling the Andrews

Plaintiffs' cases about the 2016 Order to Show Cause.  That was when the Andrews Plaintiffs

retained Andrews Myers, P.C. to file their late claims motions.  In light of the 2014 Recalls and

the *2016 Second Circuit Opinion*, the Court finds this to be an insufficient justification for their

failure to not adhere to the 2016 Order to Show Cause deadline.

Furthermore, the 2016 Order to Show Cause did not guarantee that a late proof of claim

filed by the January 6, 2017 deadline would be permitted by the Court.  Given the sparse details

provided on the Andrews Plaintiffs' proofs of claim, the Court has serious doubts whether the

proofs of claim would have been permitted had they been filed by the 2016 Order to Show Cause

deadline.

Thus, none of the justifications provided by the Andrews Plaintiffs for their delay in

filing late proofs of claim resulted from excusable neglect.

25

2.    The Length of the Delay

The Second Circuit has held that there is no bright-line test governing when the lateness of a claim will be considered "substantial." *In re Enron Corp.*, 419 F.3d at 128. Some courts have allowed claims two years after the bar date, and others have rejected claims filed just one day late. *See id.* "In determining how long is too long, courts generally consider the degree to which, in the context of a particular proceeding, the delay may disrupt the judicial administration of the case." *Id.* Context is important here. Between the Bar Date and now, the Debtors sold their assets, confirmed a chapter 11 plan, and the plan was substantially consummated. (Objection at 40–41.) Allowing the Andrews Plaintiffs' late claims to proceed over a decade after the Bar Date would be unprecedented. (*Id.*)

The Court is now tasked with considering the length of the delay from several different vantage points: the Bar Date, the 2014 Recalls, the *Second Circuit Opinion*, and the deadline imposed by the 2016 Order to Show Cause. The Court finds that the length of the delay measured from *any* of these time periods weighs in favor of denying the Andrews Myers Motions. The Andrews Plaintiffs filed the first set of late claims motions in July 2017[8], almost twenty years after the first Andrews Plaintiff's accident in March 1998. July 2017 was also eight years after the Bar Date and three years after the 2014 Recalls. In absolute terms, a three—or eight—year delay far exceeds the delays that courts have found to be substantial in similar cases. *See, e.g.*, *In re Dana Corp.*, No. 06-10354, 2008 WL 2885901, at *6 (Bankr. S.D.N.Y. 2008) (determining that a twenty-one month delay is substantial); *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) (finding that a fifteen-month delay is substantial). This delay is especially long given that several Andrews Plaintiffs were on notice

---

[8]    The Court notes that the delay for the Four Ignition-Switch Andrews Plaintiffs is more substantial, as their proposed proofs of claim were filed in September 2017 and December 2017.

of serious defects in their Old GM vehicles when their airbags did not deploy during their

accidents, long before the Bar Date and the 2014 Recalls.

Even if the Court finds that the applicable length of the delay here is one year—*i.e.*, from

July 13, 2016, when the Second Circuit issued its *2016 Second Circuit Opinion*, to July 28, 2017,

when the Andrews Plaintiffs first filed late proofs of claim—the delay is substantial and

unjustified.  Counsel for the Andrews Plaintiffs failed to provide any explanation for the one-

year delay.  Lisa Norman stated at the Late Claims Hearing that she did not know about the 2016

Order to Show Cause until she was contacted by the Andrews Plaintiffs.  But that still does not

explain why the Andrews Plaintiffs, who were on notice of a serious potential defect in their

vehicles after their accidents in which their airbags did not deploy, did not file proofs of claim

after the Recalls or the *Second Circuit Opinion*.  *In re Enron*, 419 F.3d at 128 ("[A] long delay . .

. with a strong explanation might be more acceptable than a short delay with a weak explanation

. . . .").

Finally, the Court is mindful that the Andrews Plaintiffs' claims may be time-barred

given that their accidents took place over eleven years ago.  *See Lewis v. Lvnv Funding, LLC*,

2015 WL 5819992, at *5 (S.D. Fla. 2015) (citing *In re Simpson*, No. 08-00137, 2008 WL

4216317, at *2 (Bankr. N.D. Ala. Aug. 29, 2008)) ("The claims allowance process of the

Bankruptcy Code contemplates that time-barred claims may be filed and expressly preserves the

statute of limitations as a defense and a ground for disallowance of the claim.").  While the Court

has not considered the applicable statutes of limitation for each proof of claim, the considerable

amount of time that has passed since the accidents took place likely renders many of the

Andrews Plaintiffs' claims subject to disallowance.

3.    <u>The Risk of Prejudice to the GUC Trust</u>

The GUC Trust argues that the risk of prejudice from granting the Andrews Myers

Motion is immense because the GUC Trust has limited funds to satisfy outstanding claims.

(Objection at 39.)  The Andrews Plaintiffs respond that there is no prejudice to the GUC Trust if

the Andrews Plaintiffs are allowed to file late proofs of claim because the GUC Trust maintains

sufficient resources to pay their late proofs of claim (if allowed).  (Andrews Myers Reply ¶ 6.)

The Court finds that this factor is neutral.  On the one hand, the GUC Trust argued in its

settlement motion to the Court in late April that it maintained sufficient resources to pay the

Andrews Plaintiffs' late proofs of claim (if they were allowed).  Specifically, the GUC Trust

stated:

> the GUC Trust will retain an amount sufficient to pay any newly allowed
> claims in excess of $233,000,000 (as allowed claims are entitled to a
> recovery of 30% of the estimated value of the allowed claim).  That is the
> equivalent of an estimated amount of $19.4 million per Andrews Movant.
> Based on the damages alleged, the Andrews Movants are not prejudiced by
> the Settlement Agreement because the GUC Trust has more than enough
> funds to pay any newly allowed claims.

(ECF Doc. # 14712 ¶ 15.)  Thus, the GUC Trust acknowledged that funds would be available to

pay allowed claims of any Andrews Plaintiffs who ultimately prevailed without having to claw

back distributions already made on allowed claims.

On the other hand, every dollar paid to the Andrews Plaintiffs would reduce the

recoveries on all other allowed claims.  Further, allowing the Andrews Plaintiffs' late proofs of

claim to move forward in the bankruptcy case does raise the "fear of rampant late-claims

litigation, [which] is especially germane in a case like this one where the universe of potential

creditors is practically limitless."  *In re Motors Liquidation Co.*, 598 B.R. 744, 759 (Bankr.

S.D.N.Y. 2019).  In fact, this Court has stated in prior *Motors Liquidation* opinions that:

As other late-claims litigation in this case illustrates, *see, e.g.*, *In re Motors Liquidation Co*., 576 B.R. 761, determining whether a given creditor's "neglect" is sufficiently "excusable" frequently entails time-consuming litigation at great expense to the estate. The mere prospect of litigating additional motions to file post-bar-date proofs of claim is enough to prejudice the debtor. *In re Keene Corp*., 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995) (finding "the legal fees the estate would potentially expend in litigating [late claims] supports a finding of prejudice").

*Id.* Thus, this factor is not dispositive.

4.   <u>The Andrews Plaintiffs' Good Faith</u>

As to the fourth and final factor, there is no reason to suspect that the Andrews Plaintiffs acted in bad faith. Nevertheless, the presence of good faith is almost never a determinative factor in the *Pioneer* analysis. *See Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) ("And rarely in the decided cases is the absence of good faith at issue."). Thus, the Andrews Plaintiffs' good faith cannot singlehandedly overcome the fact that they failed to meet the other requirements of excusable neglect. *See In re Motors Liquidation Co.*, 598 B.R. at 759.

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, the Andrews Myers Motions are **DENIED**.

**IT IS SO ORDERED.**

Dated:  August 11, 2020
        New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge
