**Barry Spencer**
15 Tiffany Dr
Brockton, MA 02301

Phone: 857 615 1103
Email: bhspencerii@gmail.com

**WILLIAM K. HARRINGTON**
UNITED STATES TRUSTEE

OFFICE OF THE UNITED STATES TRUSTEE
U.S. FEDERAL OFFICE BUILDING
201 VARICK STREET, SUITE 1006
NEW YORK, NY 10014

Trustee Harrington,            12 December 2020

RE:  In re Motor Liquidation Company
     Chapter 11 Case: 09-50026
     Conversion and Stealing of $160,000 worth of GM Stocks and Warrants in
     Barry Spencer Bodily $200,000 Injury Settlement

Dear Trustee,

I entered a Stipulation and Settlement with Motor liquidation Company (MLC) September 7, 2010 (Exhibit 1). Wilmington Trust was appointed by the United States Southern District of New York Bankruptcy Court to oversee the MLC Trust Bond. On 12/12/2011 Wilmington Trust in its initial release on MLC's Debt sent Me, GM Warrants and Stocks with a value of $25,551.43. And several other payments with a total shy of $40,000 by a few thousand give or take $5-6,000, $160,000 less the Contracted Settlement with ME.

I hadn't worked and was just released I opened an account with MorganStanley SmithBarney LLC 12/2011(Exhibit 2). After the transfer from Wilmington Trust I had a credit of $25,551.43 in GM Warrants and Stocks. I informed the Financial Advisor this was an initial payment on a $200,000 settlement for bodily injury from MLC's Bankruptcy and if so, I would be affected by selling any stocks or warrants. He said, "No. I needed to diversify and invest for profit." This question was repeated several times different ways to ensure I was on the correct course of action based upon his professional advice, however, allegedly his professional advice was incorrect and or based upon trickery, deceit, and fraud. However, in addition to that Wilmington Trust's

Agent's and Lawyers compounded my injury by alleging that by selling the GM Warrants and Stocks I breached the Settlement agreement albeit it is not mentioned in the Settlement agreement nor the MLC Bankruptcy Plan (Exhibit 3).

I have not abondoned my right to this MLC Debt and just came to learn prior to COVID-19 the Bankruptcy court agreed to final liquidation of Stock and ash(Exhibit 4). I Have a legal right and entitlement to my protion of the $300,000,000.00 (Excess Distribution). The Court expressed to all parties I am only entitled to the original settlement agreement and no future claims. (Exhibit 5).

Respectfully,

/s/Barry Spencer
Barry Spencer
15 Tiffany Dr
Brockton, MA 02301

Dated: December 12, 2020

CC    Honorable Judge Martin Glen
United States Bankruptcy Court for Southern District of New York
One Bowling Green
New York, NY 10004

2/19/2018

BARRY SPENCER II
78 Pioneer Ave
Brockton, MA 02301

GIBSON DUNN
Matthew J. Williams
200 Park Ave
New York, NY 10166-0193

RE:   Erroneous Distribution of Settlement of $200,000 Disbursement
      From Motor Liquidation Company GUC Trust

Dear Gentlemen,

I received your message of May 9, 2017, regarding the Wilmington Trust Company's 2/8th disbursement of its client Motor Liquidation Company's $200,000 general unsecured claim debt owed to me. However it seems as though you have not read my settlement agreement with General Motors – Motor Liquidation Company nor any of the other documents concerning my claim. Albeit, your Client Wilmington Trust Company and your office believes that it has fulfilled its obligation towards Motor Liquidation Company's Debt to me, as its Creditor you are incorrect, your obligation to fulfill the full terms of my settlement has not been fulfilled based upon my bodily injury. Nowhere in the order of the Bankruptcy Court did it state you will pay only a portion or less than 2/8th of Motor Liquidations Debt and if any part of the initial disbursement was sold there will be not be any other disbursements to fulfill the terms. This is fraud and unfair business practices.

Per your letter, on November 16, 2011, you have provided securities, however, I received my securities on November 3, 2011, consisting of 795 shares of common stock issued by General Motors Company (New GM Common Stock) valued at $19,103.85 , 723 warrants issued by General Motors Company valued at $11,002.61, 723 warrants issued by General Motors Company valued at $7,546.67, with a combined net value of $37,653.13. On *June 12*, 2012, 200 trust units were distributed with a total value of $2,520.00, and the pence valued less than $100 if so . The $40,173.13 payed, disbursed or received by me from Wilmington Trust Company only represents close to 2/8 of the $200,000 settlement leaving 7/8 $175,000 of Debt owed in future disbursement. Now you can provide me the settlement contract, the court order and your policy stating your position. Or you can allege that the Smith Barney committed improper practices by not properly explaining the consequences of its advice to sell the stock. The foregoing initial disbursement of less than 2/8th of my claim while you keep more than 6/8th does not represent the entire distribution to which I am entitled by law.

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Matt J. Williams
Direct: +1 212.351.2322
Fax: +1 212.351.5232
MJWilliams@gibsondunn.com

Client: 98520-00018

May 9, 2017

VIA FIRST CLASS MAIL

Mr. Barry Spencer
SID# 95357-038
Wyatt Detention Center
950 High Street
Central Falls, RI 02863

Re:   Distributions from the Motors Liquidation Company GUC Trust

Dear Sir:

We are in receipt of your letters dated April 1, 2017, one of which was delivered to Wilmington Trust Company, and one of which was addressed the Clerk of the Court for the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") [Dkt. No. 13904], concerning distributions in respect of your $200,000 general unsecured claim in the Motors Liquidation Company (the former General Motors Corporation) ("MLC") bankruptcy proceeding. This firm represents Wilmington Trust Company as trust administrator and trustee of the Motors Liquidation Company GUC Trust (the "Trust") which was established to resolve claims against MLC and to make distributions to holders of claims that were allowed by the Bankruptcy Court.

While we regret any difficulties you may have encountered with regard to your finances, we must inform you that the Trust has reviewed its records and has verified that on November 16, 2011 you received a distribution of (i) 795 shares of common stock issued by General Motors Company ("New GM Common Stock"), (ii) 723 warrants issued by General Motors Company with a strike price of $10.00 per share ("New GM Class A Warrants"), (iii) 723 warrants issued by General Motors Company with a strike price of $18.33 per share ("New GM Class B Warrants," and collectively with the New GM Common Stock and New GM Class A Warrants, "New GM Securities"), and (iv) on June 12, 2012, 200 "Trust Units," which are financial instruments issued by the Trust that represent a right to potentially receive additional distributions in the future (collectively, your "Initial Distribution").

The foregoing Initial Distribution represents the entire distribution to which you are entitled in respect of your $200,000 general unsecured claim from the Trust. While the Trust has made subsequent distributions of New GM Securities and cash since the time of your Initial Distribution, those subsequent distributions are made in respect of your Trust Units, and not

# GIBSON DUNN

Mr. Barry Spencer
May 9, 2017
Page 2

your general unsecured claim. Accordingly, if you have sold your Trust Units, you will not be receiving any additional distributions from the Trust.

In sum, while the Trust is saddened to hear of your unfortunate circumstances, it is bound by the terms of MLC's bankruptcy plan and is permitted only to make subsequent distributions to holders of Trust Units, not to holders of previously allowed general unsecured claims.

Sincerely,

Matthew J. Williams

CC: Honorable Judge Martin Glenn
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004

2/19/2018

BARRY SPENCER II
78 Pioneer Ave
Brockton, MA 02301

GIBSON DUNN
Matthew J. Williams
200 Park Ave
New York, NY 10166-0193

RE: Erroneous Distribution of Settlement of $200,000 Disbursement
From Motor Liquidation Company GUC Trust

Dear Gentlemen,

I received your message of May 9, 2017, regarding the Wilmington Trust Company's 2/8th disbursement of its client Motor Liquidation Company's $200,000 general unsecured claim debt owed to me. However it seems as though you have not read my settlement agreement with General Motors – Motor Liquidation Company nor any of the other documents concerning my claim. Albeit, your Client Wilmington Trust Company and your office believes that it has fulfilled its obligation towards Motor Liquidation Company's Debt to me, as its Creditor you are incorrect, your obligation to fulfill the full terms of my settlement has not been fulfilled based upon my bodily injury. Nowhere in the order of the Bankruptcy Court did it state you will pay only a portion or less than 2/8th of Motor Liquidations Debt and if any part of the initial disbursement was sold there will be not be any other disbursements to fulfill the terms. This is fraud and unfair business practices.

Per your letter, on November 16, 2011, you have provided securities, however, I received my securities on November 3, 2011, consisting of 795 shares of common stock issued by General Motors Company (New GM Common Stock) valued at $19,103.85 , 723 warrants issued by General Motors Company valued at $11,002.61, 723 warrants issued by General Motors Company valued at $7,546.67, with a combined net value of $37,653.13. On June 12, 2012, 200 trust units were distributed with a total value of $2,520.00, and the pence valued less than $100 if so . The $40,173.13 payed, disbursed or received by me from Wilmington Trust Company only represents close to 2/8 of the $200,000 settlement leaving 7/8 $175,000 of Debt owed in future disbursement. Now you can provide me the settlement contract, the court order and your policy stating your position. Or you can allege that the Smith Barney committed improper practices by not properly explaining the consequences of its advice to sell the stock. The foregoing initial disbursement of less than 2/8th of my claim while you keep more than 6/8th does not represent the entire distribution to which I am entitled by law.

In conclusion the information you provided is erroneous and your client needs to reevaluate its position concerning my claims' disbursement. You are not living up to the terms of my bodily injury settlement. Nor is it written that to sell, trade or transfer the stocks will result in the lost of its value.

Barry Spencer ii
Creditor
78 Pioneer Ave
Brockton, MA 02301

CC:   Honorable Judge Martin Glenn
      United States Bankruptcy Court for the Southern District of New York
      One Bowling Green
      New York, NY 10004

      Morgan Stanley Smith Barney LLC
      Ruven Rodriguez
      Financial Advisor
      53 State Street   39th Floor
      Boston, MA 02109



July 9, 2010

**BY FIRST CLASS MAIL**

Barry Henry Spencer Jr.
P.O. Box 1218
Shirley, MA 01464

Re:   In re Motors Liquidation Company *et. al.* ("MLC" or the "Debtors")
      Case No. 09-50026 (REG) -ADR Procedures –
      Proof of Claim Nos. 64658 and 64659 (Barry H. Spencer)

Dear Mr. Spencer,

On or around November 30, 2009 you caused the filing of two Proofs of Claims against Motors Liquidation Company ("MLC"), for the same dollar amount, and on account of the same obligation (*see* Proofs of Claims Nos. 64658 and 64659, a copy of which is annexed herein).

As we have discussed, both MLC and you agree that MLC should promptly designate your claim to the alternative resolution procedures established in the Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation (the "**ADR Procedures**") [Docket No. 5037] entered by the United States Bankruptcy Court for the Southern District of New York on February 23, 2010, subject to the following agreements that shall be effective upon the countersignatures of you and your brother Sylvester, as outlined below:

A.   Proof of Claim No. 64659 (the "**Duplicate Claim**") is expunged from the Debtors' claim register as it is a duplicate of Proof of Claim No. 64658 and that the Debtors' claim agent shall be authorized to remove the Duplicate Claim from the Debtors' claim register. Proof of Claim No. 64658 (the "**Surviving Spencer Claim**") shall be subject to the other agreements herein.

B.   The Surviving Spencer claim is capped for all purposes to a general unsecured, nonpriority claim of no more than **$9,000,000 (nine million dollars)** (the "**Claim Amount Cap**").

C.   MLC shall transmit to you at the above address, with a copy to your brother Sylvester at the address set forth in the Surviving Spencer Claim, an ADR Notice (as such term is defined in the ADR Procedures) within five (5) business days of receiving a fully countersigned letter. The ADR Notice shall contain an initial settlement offer to

resolve the Surviving Spencer Claim of a general unsecured, nonpriority claim against MLC equal to or greater than **$200,000 (two hundred thousand dollars)** (the "**Claim Settlement Floor.**"

D. In the event the Surviving Spencer Claim is not settled under the ADR Procedures, and a trial court values the Surviving Spencer Claim less than the Claim Settlement Floor or disallows the Surviving Spencer Claim in its entirety, MLC agrees to offer to settle the Surviving Spencer Claim for a general unsecured, nonpriority claim in the amount of **$200,000 (two hundred thousand dollars)** in exchange for your agreement not to appeal such trial court's determination. Should you or any authorized signatory nevertheless file an appeal to such trial court's determination of the Surviving Spencer Claim (which you shall expressly have a right to do), it is hereby understood that the Debtors shall be relieved of any further obligation to offer any settlement to resolve the Surviving Spencer Claim.

E. By signing this letter, you understand and agree that the Claim Amount Cap includes all damages and relief to which you believe you are entitled to, including all interest, taxes, attorney's fees, other fees, and costs.

F. By signing this letter, you understand that the Claim Amount Cap and any settlement offers in connection with the resolution of the Surviving Spencer Claim shall be for **an allowed general unsecured, nonpriority claim against MLC in full satisfaction of the Surviving Spencer Claim, to be satisfied in accordance with any chapter 11 plan or plans confirmed in the Debtors' chapter 11 cases.**

G. You further agree that in accordance with the ADR Procedures, your brother Sylvester shall be fully authorized to speak on your behalf and any agreement reached with your brother shall be binding on you in all respects.

H. In the event this letter is not fully countersigned and returned to Joseph Smolinsky at the undersigned address by July 20, 2010, this offer shall expire and this letter and its contents shall not be admissible in any court under Rule 408 of the Federal Rules of Evidence.

| | |
|---|---|
| *[signature]*<br>Harvey R. Miller<br>Stephen Karotkin<br>Joseph H. Smolinsky<br><br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br>*Attorneys for Debtors and Debtors in Possession* | *[signature]*<br>Barry Henry Spencer Jr.    UCC-1-207<br>P.O. Box 1218                    7-13-2010<br>Shirley, MA 01464<br><br>CONSENTED AND AGREED TO<br>*[signature]*<br>Sylvester Richard Spencer |

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

RECEIVED
SEP 07 2010

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                     :    Chapter 11 Case No.
                                                          :
MOTORS LIQUIDATION COMPANY, et al.,                       :    09-50026 (REG)
       f/k/a General Motors Corp., et al.                 :
                                                          :
                         Debtors.                         :    (Jointly Administered)
                                                          :
----------------------------------------------------------x

## STIPULATION AND SETTLEMENT RESOLVING CLAIM NO. [ 64658 & 64659 ]

This Stipulation and Settlement (the "Stipulation and Settlement") is entered into as of 9/1/2010 (the "Effective Date") by and among Motors Liquidation Company ("MLC") and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors"), on the one hand, and Barry Spencer (the "Claimant", and together with the Debtors, the "Parties"), on the other hand.

### RECITALS:

WHEREAS, on June 1, 2009 (the "Commencement Date"), certain of the Debtors (the "Initial Debtors") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the Southern District of New York (the "Court"), Case No. 09-50026 (REG);

WHEREAS, on September 16, 2009, the Court entered the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") Establishing the Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section 503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice Thereof (the "Bar Date Order") establishing November 30, 2009 at 5:00 p.m. (Eastern Time) as the deadline to file proofs of claim against the Initial Debtors based on prepetition claims;

WHEREAS on October 6, 2009, the Court entered that certain Order pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) Authorizing the Debtors to (i) File Omnibus Claims Objections and (ii) Establish Procedures for Settling Certain Claims (the "Settlement Procedures Order");

WHEREAS pursuant to the Settlement Procedures Order, the Debtors are authorized, with certain exceptions, to settle any and all claims asserted against the Debtors without prior approval of the Court or other party in interest whenever (i) the aggregate amount to be allowed for an individual claim (the "Settlement Amount") is less than or equal to $1 million or (ii) the Settlement Amount is within 10 percent of the noncontingent, liquidated amount listed on the Debtors' schedules of assets and liabilities so long as the difference in amount does not exceed $1 million (any settlement amount within (i) or (ii) being a "*De Minimis Settlement Amount*");

WHEREAS pursuant to Settlement Procedures Order, if the Settlement Amount is not a *De Minimis* Settlement Amount but is less than or equal to $50 million, the Debtors must submit the proposed settlement to the official committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee"). Within five business days of receiving the proposed settlement, the Creditors' Committee may object or request an extension of time within to object. If there is a timely objection made by the Creditors' Committee, the Debtors may either (a) renegotiate the settlement and submit a revised notification to the Creditors' Committee or (b) file a motion with the Court seeking approval of the existing settlement under Bankruptcy Rule 9019 on no less than ten days' notice. If there is no timely objection made by the Creditors' Committee or if the Debtors receive written approval from the Creditors' Committee of the proposed settlement prior to the objection deadline (either of such events hereafter defined as "Committee Consent"), then the Debtors may proceed with the settlement;

WHEREAS, Claimants filed the following proofs of claim (the "Claims");

| Date of Filing | Claim Number | Filed Amount    | Claim Amount Cap |
|----------------|--------------|-----------------|------------------|
| 11/30/2009     | 64658        | $794,500,000.00 | $9,000,000.00    |
| 11/30/2009     | 64659        | $794,500,000.00 | $0.00            |

WHEREAS after good-faith, arms'-length negotiations, the Parties have reached an agreement (the "Settlement") to resolve the Claims;

WHEREAS the Debtors have provided notice of the Settlement to the Creditors' Committee in accordance with the Settlement Procedures Order and the Creditors' Committee has not timely objected or has provided written approval of the Settlement prior to the objection deadline.

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed that:

1. The Claims shall be treated as allowed general unsecured claims against Motors Liquidation Company in the amounts set forth below (the "Allowed Claims"), which Allowed Claims shall not be subject to any defense, counterclaim, right of setoff, reduction,

2

avoidance, disallowance (including under Section 502(d) of the Bankruptcy Code) or subordination.

| Claim Number | Allowed Amount |
|---|---|
| 64658 | $200,000.00 |
| 64659 | $0.00 |

2.  The Claimant shall receive distributions on account of the Allowed Claims in the form set forth in and pursuant to the terms of a confirmed chapter 11 plan or plans in these chapter 11 cases (the "Plan").

3.  Upon receipt of such distributions on account of the Allowed Claims as set forth in the Plan, the Claims shall be deemed satisfied in full.

4.  With respect to the Claims, other than the right to receive distributions on account of the Allowed Claims under the Plan, the Claimant and its affiliates, successors and assigns, and its past, present and future members, officers, directors, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys (collectively, the "Claimant Parties"), shall have no further right to payment from the Debtors, their affiliates, their estates or their respective successors or assigns (collectively, the "Debtor Parties"). With respect to the Claims, except as set forth in this Stipulation and Settlement, the Claimant Parties hereby irrevocably waive any and all claims (as defined in section 101(5) of the Bankruptcy Code) against any of the Debtor Parties, and are hereby barred from asserting any and all claims whatsoever, whether known or unknown, presently existing, whether or not asserted, and whether found in fact or law or in equity, in existence as of the execution of this Stipulation and Settlement by the Parties.

5.  The Debtors' claims agent shall be authorized and empowered to adjust the claims register to reduce and allow Proof of Claim Nos. 64658 & 64659 to reflect the Allowed Claims.

6.  This Stipulation and Settlement contains the entire agreement between the Parties as to the subject matter hereof and supersedes all prior agreements and undertakings between the Parties relating thereto. This Stipulation and Settlement is subject in all respects to Creditor Committee Consent, and if such consent is not obtained by the Debtors, then the Debtors may determine in their sole discretion whether to proceed forward with seeking Court approval of the Stipulation and Settlement in accordance with the Settlement Procedures Order or abandon the Stipulation and Settlement.

7.  This Stipulation and Settlement may not be modified other than by signed writing executed by the Parties hereto or by order of the Court.

8.  Each person who executes this Stipulation and Settlement represents that he or she is duly authorized to do so on behalf of the respective Parties hereto and that each such party has full knowledge and has consented to this Stipulation and Settlement.

9. This Stipulation and Settlement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation and Settlement to present any copy, copies, or facsimiles signed by the Parties hereto to be charged.

10. This Stipulation and Settlement shall be exclusively governed by and construed and enforced in accordance with the laws of the state of New York, without regard to conflicts of law principles thereof. The Court shall retain exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Stipulation and Settlement.

**THE UNDERSIGNED WARRANT THAT THEY HAVE READ THE TERMS OF THIS STIPULATION AND SETTLEMENT, HAVE HAD THE ADVICE OF COUNSEL OR THE OPPORTUNITY TO OBTAIN SUCH ADVICE IN CONNECTION WITH READING, UNDERSTANDING AND EXECUTING THE AGREEMENT, AND HAVE FULL KNOWLEDGE OF THE TERMS, CONDITIONS AND EFFECTS OF THIS STIPULATION AND SETTLEMENT.**

Barry J. Spencer

By: _Barry Henry Spencer Junior_ [signature]
   must rep

Print Name: BARRY H. SPENCER
Title: Claimant
Dated: Sept 1, 2010

4

# Morgan Stanley

100 South Charles, 4th Floor
Baltimore, MD 21201
Early Dispute Resolution
Farheen Malik, Esq.
667-312-4051

June 18, 2018

Barry Spencer II
104 Hutchings Street
Boston, MA 02121

Re: Your Morgan Stanley Inquiry
    Our Matter #265285

Dear Mr. Spencer,

Pursuant to Firm policies, and in order to continue in our efforts to better serve our clients, certain communication is forwarded to this department for review. Accordingly I am in receipt of your communication to Financial Advisor Ruven Rodriguez, in which you expressed concerns regarding the December 2011 sale of your General Motors Company (GE) investments in your Morgan Stanley account ending in -4246F. We appreciate your patience while we reviewed your concerns.

Our records indicate that the account was a non-discretionary brokerage account. As we trust you understand, when Morgan Stanley acts as a broker dealer, the Firm does not have discretion to buy and sell securities for the account holder but facilitates the execution of transactions based on the account holder's instructions. Further, this mean that the client will provide approval for each trade before it is executed and that the client, not the Firm will make individual buy, sell, and hold decisions. Our records show that the Firm mailed you client confirmations on December 7, 2011 for the sale order of the following investments: 500 shares of General Motors Company, and 1400 warrants of General Motors Company.[1] We note the client confirmations state that these transactions were unsolicited orders.

In light of the above, we respectfully decline your request for remedial action in this matter.

Thank you for bringing this matter to our attention and giving us the opportunity to review your concerns. Should you have any questions or wish to discuss further, please contact me at 667-312-4052.

Very truly yours,

*Farheen Malik*

Farheen Malik, Esq.
Legal and Compliance Division

---

[1] 700 Warrants of General Motors Company Exp. 7/10/2016 and 700 Warrants of General Motors Company Exp. 7/10/2019