UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

In re:

MOTORS LIQUIDATION COMPANY, f/k/a
GENERAL MOTORS CORPORATION, *et al.*,

Debtors.

------------------------------------------------------------------------x

**FOR PUBLICATION**

Chapter 11

Case No. 09-50026 (MG)
(Jointly Administered)

# MEMORANDUM OPINION GRANTING MOTIONS OF THE GUC TRUST AND OF THE AAT, AND CLOSING THE REMAINING CASE

*A P P E A R A N C E S :*

McDermott Will & Emery LLP
*Attorneys for the Motors Liquidation Company GUC Trust Administrator*
340 Madison Avenue
New York, New York 10173
By:   Kristin K. Going, Esq.

Binder & Schwartz LLP
*Attorneys for the Motors Liquidation Company Avoidance Action Trust*
366 Madison Avenue, 6th Floor
New York, New York 10017
By:   Eric B. Fisher, Esq.
      Neil S. Binder, Esq.
      Lindsay A. Bush, Esq.
      Lauren K. Handelsman, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

This is a momentous time in the history of the General Motors bankruptcy cases. After more than 11 years, the cases have reached a final conclusion, and the one remaining open case may now be closed.

That remaining case involves the Motors Liquidation Company GUC Trust (the "GUC Trust") and Motors Liquidation Company Avoidance Action Trust (the "AAT"), formed by the above-captioned debtors (the "Debtors") under the Debtors' Second Amended Joint Chapter 11

Plan (the "Plan," ECF Doc. # 9836). Wilmington Trust Company, in its capacity as trust administrator and trustee of the GUC Trust and AAT (in such capacity, "GUC Trust Administrator" and "AAT Administrator," respectively), filed the two motions now pending before this Court.

By its motion, the GUC Trust Administrator seeks entry of an order and final decree pursuant to Bankruptcy Code section 350, Bankruptcy Rule 3022 and Local Rule 3022-1 (i) closing the Chapter 11 case; (ii) authorizing the wind-down and dissolution of the GUC Trust; and (iii) granting related relief. ("GUC Motion," ECF Doc. # 14784.)

By its motion, the AAT Administrator seeks entry of an order (i) authorizing the wind-down and dissolution of the AAT and (ii) granting related relief. ("AAT Motion," ECF Doc. # 14786, and together with the GUC Motion, the "Motions.")

The objection deadline for the Motions was on March 9, 2021. No objections were filed. Pursuant to Local Rule 9075-2, certificates of no objection were filed regarding each of the Motions. (ECF Doc. ## 14791, 14792.)

For the reasons that follow, both Motions are **GRANTED**. Separate orders granting the requested relief will be entered.

### I.    BACKGROUND

#### A.    Case Background

Over 11 years ago, in the midst of the financial crisis, General Motors Corporation ("Old GM") and various affiliates filed Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009. (GUC Motion ¶ 1.) That bankruptcy filing, one of the largest chapter 11 bankruptcy cases ever filed, contemplated a

2

unique expedited sale process supported by debtor-in-possession financing from the United States Treasury and the government of Canada.  (*Id.* at 2.)

On July 5, 2009, this Court approved the sale of substantially all of Old GM's assets to General Motors Company ("New GM").  (*Id.* ¶ 3.)  The sale of substantially all of Old GM's assets in the first month of the bankruptcy case allowed for the successful revitalization of the automaker.  (*Id.* at 2.)

The consequences of a complete collapse and liquidation of Old GM would potentially have been catastrophic for the U.S. automobile industry and, indeed, for the U.S. economy.  Before its bankruptcy filing, Old GM employed over 90,000 employees in the United States and more outside the U.S.  Old GM operated 47 manufacturing plants in the U.S.  Its U.S. network of 5,900 dealerships operated in every state.  Old GM's network of suppliers and vendors employed many thousands more in the U.S. and in other countries.  New GM continued to employ nearly 70,000 employees in more than 30 U.S. plants, and while its dealer network was reduced to about 5,000, many dealerships survived Old GM's bankruptcy, benefiting the economies in their respective locales.  No doubt, a heavy toll was paid by Old GM's workers, creditors and stockholders.  But the results of liquidation would have been far worse.

On March 29, 2011, Judge Robert E. Gerber of this Court, who presided over these cases from the time they were filed until he retired in January 2016, confirmed the plan of reorganization that provided for the creation of various trusts, including the GUC Trust and the AAT.  (*Id.* ¶ 5.)  On April 18, 2013, the Court entered a final decree closing all but one of Old GM's chapter 11 cases, but left open Case No. 09-50026, Motors Liquidation Company (the "Remaining Case"), for the continued administration of GM's estates and any potential matters pertaining to the Debtors' cases that may arise.  (*Id.* ¶ 6.)

It could not have predicted then that nearly eight more years would be required to close out the story of the Old GM bankruptcy cases. The pending motions, hopefully, bring an end to the story.

### B. The GUC Trust

The GUC Trust was created to resolve "disputed general unsecured claims, distribute trust assets to GUC Trust beneficiaries, and wind down the estates of the dissolved Debtors, including through the resolution of the residual wind-down claims." (*Id.* ¶ 7.) The GUC Trust is a Qualified Settlement Fund ("QSF"), pursuant to section 1.468B-1 of the Treasury Regulations. (*Id.*) The GUC Trust was tasked with resolving approximately 4,460 disputed general unsecured claims against the Debtors' estates. (*Id.* ¶ 8.) Additionally, the GUC Trust retained the responsibility to resolve 191 disputed secured, administrative expense, and priority claims post-dissolution of the Debtors. Presently, the GUC Trust "has resolved all 191 disputed secured, administrative expense and priority claims that were transferred to the GUC Trust upon dissolution of the Debtors, and all distributions on account of those claims have been made." (*Id.* ¶ 10.) From 2011 to 2015, this Court authorized the liquidation of New GM's Securities to fund administrative and reporting costs that "substantially exceeded the wind-down cash designated to pay these costs." (*Id.* ¶ 13.) In July 2015, the GUC Trust Administrator liquidated all of the GUC Trust's holdings of New GM Securities, leading to all future distributions to Allowed Claims to be paid in cash. (*Id.* ¶ 14.) As of the date of the filing, holders of Allowed Claims have received a 30.7% recovery via cash distribution. (*Id.*) The GUC Trust Agreement states that the Trust will remain in full force and effect until:

> (x)    *the earlier of*:
>
>> (i)    the date on which (A) all of the GUC Trust Distributable Assets have been distributed by the GUC Trust

>   Administrator in accordance with this Trust Agreement, the Plan, the Liquidation Order and the Confirmation Order, and (B) if the Residual Wind-Down Assets are transferred to the GUC Trust upon the dissolution of the Debtors, the GUC Trust Administrator has completed the resolution of the Residual Wind-Down Claims and distribution of the Residual Wind-Down Assets; and
>
>   (ii)    the third anniversary of the Effective Date,
>
>   *or*
>
>   (y)    such shorter or longer period authorized by the Bankruptcy Court upon application of the GUC Trust Administrator with the approval of the GUC Trust Monitor (I) in order to resolve all Disputed General Unsecured Claims, the Term Loan Avoidance Action and other Avoidance Actions, and (II) to complete the resolution of the Residual Wind-Down Claims and distribution of the Residual Wind-Down Assets.

(*Id.* ¶ 15.)

This Court has ordered the extension of the GUC Trust six times.[1]  (*Id.* ¶ 16.)  The GUC Trust is scheduled to terminate after March 31, 2021.  (*Id.*)  Currently, the GUC Trust has made the distributions required under the plan and GUC Trust Agreement with the exception of (i) repayment of amounts owing to the DIP Lenders and (ii) one final "clean-up" distribution (the "Final Distribution"), which the GUC Trust Administrator expects to make following the Bankruptcy Court's entry of the order and final decree. (*Id.* ¶ 18.)

The GUC Trust was heavily involved in litigation faced by New GM from 2014 through 2020 (the "Recall Period") regarding recalled vehicles.  During the Recall Period, New GM was hit with numerous class-action lawsuits and thousands of

---

[1]    Specifically, this Court ordered extensions on February 6, 2014; January 29, 2015; December 7, 2015; February 21, 2017; March 6, 2018; and January 23, 2019.

5

individual lawsuits claiming that defects in ignition switches in numerous models of GM-manufactured cars caused wrongful death, personal injuries, property damage, and economic losses.[2] (*Id.* ¶ 25.) In February 2021, the GUC Trust Administrator "made the final $48 million settlement payment, thereby resolving all remaining claims against the Debtors' estates and effectively bringing this case to its long-awaited conclusion." (*Id.* ¶ 30.)

    C.    **The Avoidance Action Trust**

Shortly after Old GM filed its bankruptcy cases, it was discovered that the UCC lien on personal property thought to secure Old GM's approximately $1.5 billion term loan was mistakenly released before the bankruptcy cases were filed. Believing the loan to be secured, the Debtor, with the agreement of the Creditors Committee, requested, and the Court approved, the repayment of the outstanding loan using a portion of the proceeds of the estate's debtor-in-possession financing. But the right of the Creditors Committee to challenge the validity and perfection of the lien was expressly preserved. The purpose of the AAT was to "prosecute and then distribute the proceeds of the avoidance action styled *Official Committee of Unsecured Creditors of Motors Liquidations Co. v. JPMorgan Chase Bank, N.A. et al.*, Adv. Pro. No. 09-00504 (the 'Term Loan Avoidance Action')." (*Id.* ¶ 19.) The proceeds were to be directed to the DIP Lenders and unsecured creditors that hold allowed claims. (AAT Motion ¶ 3.) After many years of litigation, including a trial in this Court, an order was entered on June 13, 2019 approving the $231 million settlement between JPMorgan Bank, N.A., and the AAT. (GUC Motion ¶¶ 21–22.) On April 24, 2020, this Court approved AAT's motion seeking to distribute the settlement proceeds to its beneficiaries. (*Id.* ¶ 23.) The AAT is currently making final

---

[2]    *In re General Motors LLC Ignition Switch Litigation*, Case No. 14-MD-2543.

6

distributions. The final distribution will be "approximately $4.2 million, which amount is net of the funds necessary to meet the AAT's wind down expenses." (AAT Motion ¶ 7.) Accordingly, the AAT submits that it "has nearly completed its work and fulfilled its purpose." (*Id.* ¶ 8.)

## II. RELIEF REQUESTED

The GUC Motion seeks entry of an order and final decree:

> (i) Authorizing the wind-down and dissolution of the GUC Trust;
> (ii) Approving procedures for making the Final Distribution;
> (iii) Authorizing the termination of the Units;
> (iv) Discharging and exculpating the GUC Trust Administrator, the GUC Trust Monitor, and their respective employees and professionals;
> (v) Authorizing the destruction of the books and records;
> (vi) Closing the Remaining Case; and
> (vii) Terminating Epiq's engagement.

(GUC Motion ¶ 32.) Furthermore, the AAT joins and supports the relief requested in the GUC Trust Motion. (AAT Motion ¶ 10.)

The AAT Motion seeks entry of an order:

> (i) Authorizing the wind-down and dissolution of the AAT;
> (ii) Discharging and exculpating the AAT Administrator and AAT Monitor and their employees and professionals;
> (iii) Authorizing the destruction of the AAT's books and records; and
> (iv) Authorizing the Clerk's Office to dispose of any hard copies of, or electronic storage devices with, documents filed under seal in the adversary proceeding commenced by the AAT, Adv. Pro. No. 09-00504, in a way that protects the confidentiality of those documents consistent with the orders that authorized the filing of documents under seal.

(*Id.*)

7

### III. DISCUSSION

#### A. Wind-Down and Dissolution of the GUC Trust and the AAT

1. GUC Trust

The GUC Trust Administrator requests that this Court enter an order and final decree authorizing the wind-down and dissolution of the GUC Trust. Pursuant to this Court's prior order, the GUC Trust is scheduled to terminate on March 31, 2021. (ECF Doc. # 14401.) However, because the purposes of the GUC Trust under the Plan and GUC Trust Agreement have been achieved, the GUC Trust Administrator believes that there is no sound business purpose for the GUC Trust to remain in existence. (GUC Motion ¶ 40.)

Moreover, the GUC Trust Administrator believes that allowing the GUC Trust to remain in existence longer than necessary would contravene the GUC Trust Agreement's directive to terminate the trust as quickly as is practicable. (*Id.* ¶ 41.) Following entry of the order and final decree, the GUC Trust Administrator will make the Final Distribution, close the GUC Trust's bank accounts, destroy the GUC Trust's books and records, complete the tax reporting for payments made in 2021, file any required tax returns, comply with an IRS audit (if any), acquire a tail insurance policy, and pay the fees of professionals for services rendered in winding down the trust (collectively, the "Remaining Tasks"). (*Id.*) Upon the completion of the Remaining Tasks, the GUC Trust Administrator will terminate the GUC Trust in accordance with section 3808 of the Delaware Act governing the termination and dissolution of Delaware statutory trusts. (*Id.*) After the entry of the order and final decree, the GUC Trust will also cease to qualify as a QSF.[3] (*Id.* ¶ 42.)

---

[3] In essence, there are three tax-related requirements that allow a QSF to terminate per the applicable IRS regulations—the QSF (1) no longer has any assets, (2) will not receive any more transfers, and (3) this court's continuing jurisdiction has ceased. (GUC Motion ¶ 42.) Following the Final Distribution, all GUC Trust Assets will have been fully disbursed to the GUC Trust Beneficiaries. Moreover, all GUC Trust Assets have already been

No objections to the GUC Trust's Motion have been filed. There is no sound business purpose for the GUC Trust remaining in existence. Therefore, the request for approval of the wind-down and dissolution of the GUC Trust is **GRANTED**.

    2. AAT

The AAT requests that this Court authorize the wind-down and dissolution of the AAT. Following entry of the requested order, the AAT Administrator will distribute any remaining distributable proceeds, file any required tax returns, and take any other steps required to wind up the AAT. (AAT Motion ¶ 14.) Once these final tasks have been completed, the AAT Administrator will terminate the AAT in accordance with section 3808 of the Delaware Act governing the termination and dissolution of Delaware statutory trusts. (*Id.*)

The AAT has fulfilled its purpose under the Plan and the AAT Agreement. No objections to the requested relief have been filed. Therefore, the request for approval of the wind-down and dissolution of the AAT is **GRANTED**.

    **B.**    **GUC Trust's Proposed Procedures for Making the Final Distribution**

The GUC Trust Administrator further requests that this Court approve the GUC Trust Administrator's proposed procedures for effectuating the Final Distribution (the "Final Distribution Procedures"). The Final Distribution Procedures are necessary to provide a distribution to Allowed Claimholders that have never received a distribution on account of their Allowed Claims, and never took possession of the Units they were entitled to under the terms of the Plan and GUC Trust Agreement. (GUC Motion ¶ 44.)

Approximately 474 of the GUC Trust Beneficiaries have not claimed their respective Units. Consequently, as of the date hereof, the GUC Trust continues to hold 8,968 Units (the

---

transferred to the GUC Trust, and the GUC Trust is entitled to no further transfers under the Plan. Finally, this Court's jurisdiction will cease upon the closing of the Remaining Case and the dissolution of the GUC Trust. (*Id.*)

"Unclaimed Units"). (*Id.* ¶ 45.) In anticipation of making the Final Distribution, the GUC Trust Administrator sent a letter (the "Final Notice Letter") to the parties entitled to the Unclaimed Units notifying them that the GUC Trust is being wound down and requiring them to respond to the Final Notice Letter by February 22, 2021. (*Id.* ¶ 46.) As of that date, 153 beneficiaries (the "Responding Beneficiaries") responded to the Final Notice Letter and notified the GUC Trust Administrator that they were unable to comply with the procedures for claiming their Units. The remaining beneficiaries (the "Non-Responding Beneficiaries") have never contacted the GUC Trust regarding their Units.

With respect to the Responding Beneficiaries, the GUC Trust Administrator proposes sending the Responding Beneficiaries only their cash distribution and then cancelling their Units. As the GUC Trust is at the end of its life and will only be making one more distribution, estimated to total less than $10 million, the Responding Beneficiaries would only receive a de minimis distribution on account of their Units. (*Id.* ¶ 49.) Due to the minimal value of their Units, the Responding Beneficiaries have been unable to comply with the DTC designee requirement under Section 3.3(a) of the GUC Trust Agreement that "holders of Allowed General Unsecured Claims must designate a direct or indirect participant in DTC with whom such holder has an account." (*Id.* ¶ 51.) Accordingly, the GUC Trust Administrator proposes to cancel the Responding Beneficiaries' Units, but still provide them with the cash distribution that they would have otherwise been entitled to receive.

With respect to the Non-Responding Beneficiaries, the GUC Trust intends to cancel their Units and redistribute the amounts that would have been paid on account of those Units to those GUC Trust Beneficiaries that have complied with the procedures for claiming their Units. (*Id.* ¶ 54.)

No objections have been filed and the requested relief complies with the GUC Trust Agreement. Therefore, so that all Allowed Claimholders can receive a recovery on account of their Allowed Claim, and the remaining value held by the GUC Trust can be distributed to the appropriate parties as contemplated by the Plan and GUC Trust Agreement, the request for approval of the Final Distribution Procedures is **GRANTED**.

**C.    Discharge and Releases**

1. GUC Trust

The GUC Trust Administrator requests that the order and final decree expressly discharge and release the GUC Trust Administrator, the GUC Trust's monitor[4] and their respective members, officers, directors, employees, counsel, advisors, professionals, or agents (collectively, the "GUC Related Parties") from all liability related to the GUC Trust and the Debtors' chapter 11 cases, subject to the limitations in section 12.6 of the Plan and section 9.4 of the GUC Trust Agreement.

Section 12.6 of the Plan provides that, to the maximum extent permitted by law, neither the GUC Trust Administrator, the GUC Trust Monitor, nor any of the Related Parties, shall have or incur any liability to any holder of a claim or interest for any act or omission in connection with, related to, or arising out of the Debtors' chapter 11 cases or the GUC Trust Agreement (with the exception of actions found to be willful misconduct, gross negligence, fraud, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, breach of fiduciary duty, and ultra vires acts). (*See* Plan § 12.6.) Section 9.4 of the GUC Trust Agreement similarly provides that the GUC Trust Administrator and Related Parties shall be

---

[4]    FTI Consulting serves as the GUC Trust's monitor (the "GUC Trust Monitor"). (GUC Motion at 2.) The GUC Trust Monitor is charged with "oversee[ing] the activities of the GUC Trust Administrator as set forth in the GUC Trust Agreement." (Plan § 6.2(g).)

11

exculpated by all persons from any and all claims, causes of action and other assertions of liability arising out of the discharge of their respective powers and duties conferred by the Plan, the Confirmation Order, the Liquidation Order, the GUC Trust Agreement, or any order of the Bankruptcy Court (subject to the same limitations as section 12.6 of the Plan).  (*See* GUC Trust Agreement § 9.4.)

No objections have been filed and the relief requested complies with the Plan and Trust Agreement.  Therefore, the request for approval of the discharge and release of the GUC Trust Administrator, the GUC Trust Monitor, and the GUC Related Parties from all liability related to the GUC Trust and the Debtors' chapter 11 cases, subject to the limitations in section 12.6 of the Plan and section 9.4 of the GUC Trust Agreement, is **GRANTED**.

2. AAT

The AAT requests that the Order expressly discharge and release the AAT Administrator, the AAT's monitor[5] and their members, officers, directors, employees counsel, advisors, professionals, or agents (collectively, the "AAT Related Parties") from all liability related to the AAT and the Debtors' chapter 11 cases, subject to the limitations in section 12.6 of the Plan and section 9.4 of the AAT Agreement.  Section 9.4 of the AAT Agreement, together with Section 11.4, similarly provide that the AAT Administrator, the AAT Monitor and the Related Parties shall be exculpated by all persons from any and all claims, causes of action and other assertions of liability arising out of the discharge of their respective powers and duties conferred by the Plan, the Confirmation Order, the AAT Agreement, or any order of the Bankruptcy Court (subject to the same limitations as section 12.6 of the Plan). *See* AAT Agreement §§ 9.4, 11.4.

---

[5]     Arthur J. Gonzalez serves as the trust's monitor (the "AAT Monitor").  (AAT Motion ¶ 4.)  The Avoidance Action Trust Monitor is charged with "oversee[ing] the activities of the Avoidance Action Trust Administrator as set forth in the Avoidance Action Trust Agreement."  (Plan § 6.5(g).)

Further, section 12.6 of the Plan provides that, to the maximum extent permitted by law, the AAT Administrator, the AAT Monitor and AAT Related Parties, shall not have or incur any liability to any holder of a claim or interest for any act or omission in connection with, related to, or arising out of the Debtors' chapter 11 cases or the AAT Agreement (with the exception of actions found to be willful misconduct, gross negligence, fraud, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, breach of fiduciary duty, and ultra vires acts). (*See* Plan § 12.6.)

No objections have been filed and the relief requested complies with the AAT Agreement and the Plan. Therefore, the request for the discharge and release of the AAT Administrator, AAT Monitor and the AAT Related Parties from all liability related to the AAT and the Debtors' chapter 11 cases, subject to the limitations in section 12.6 of the Plan and section 9.4 of the AAT Agreement, is **GRANTED**.

### D.  Destruction of Books and Records

Bankruptcy Code section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).

1. <u>GUC Trust</u>

The GUC Trust Administrator submits that the relief requested herein with respect to the Debtors' books and records is necessary, prudent and in the best interests of the Debtors' estates. (GUC Motion ¶¶ 17, 65.) Because the books and records are no longer necessary to winding up the Remaining Case, the Plan has been substantially consummated, and the GUC Trust has been fully administered, the books and records are simply of no value, and the GUC Trust should not be required to incur any further costs associated with maintaining and storing the books and

records—an asset with no value. (*Id.* ¶ 65.) The GUC Trust Administrator has therefore determined, in its discretion, that that books and records should be destroyed, as authorized under Section 4.3 of the GUC Trust Agreement. (*Id.* ¶ 18.)

No objections have been filed and the requested relief complies with the GUC Trust Agreement. Therefore, the request to destroy the Debtor's books and records is **GRANTED**.

    2. <u>AAT</u>

Because the books and records are no longer necessary to winding up the estate and the AAT has been fully administered, the books and records are no longer of value, and the AAT should not have to incur any further costs associated with maintaining and storing the books and records. (AAT Motion ¶ 23.) The AAT Administrator has therefore determined, in its discretion, that the books and records should be destroyed, as authorized under Section 4.3 of the AAT Agreement. (*Id.*)

No objections have been filed and the requested relief complies with the AAT Agreement. Therefore, the request to destroy the Debtor's books and records is **GRANTED**.

    E.    **Disposal of AAT Sealed Documents by the Clerk's Office**[6]

During the pendency of the Term Loan Avoidance Action, the AAT and other parties in interest sought, and obtained, permission to file documents, or submit electronic copies of documents, under seal pursuant to section 107(b) of the Bankruptcy Code. (*Id.* ¶ 24.) These orders were entered in the Term Loan Avoidance Action. All the claims and cross-claims in the Term Loan Avoidance Action were dismissed on or around July 2019. Because the Term Loan Avoidance Action has been fully resolved, there is no reason for the Clerk's office to be required

---

[6] The GUC Trust Administrator seeks similar relief by Notice of Presentment for Motion for Entry of Order Authorizing Clerk's Office to Dispose of Any Hard Copies of, or Electronic Storage Devices with, Documents Filed under Seal. (*See* ECF Doc. # 14788.)

to maintain hard copies of, or electronic storage devices with, documents filed under seal in the Term Loan Avoidance Action.

Therefore, the Clerk's Office shall dispose of the documents filed under seal.

### F.     Final Decree Closing the Remaining Case

All claims against the AAT and GUC Trust have been resolved and the GUC Trust's assets have been fully distributed (with the exception of the Final Distribution described above). Accordingly, as provided in section 6.2(q) of the Plan, the GUC Trust Administrator brings this Motion seeking to close the Remaining Case in accordance with the applicable Bankruptcy Code provisions and Bankruptcy Rules.

Bankruptcy Code section 350(a) provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Bankruptcy Rule 3022, which implements section 350, provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." FED. R. BANKR. P. 3022. The Bankruptcy Code does not define "fully administered." Courts have wide discretion in determining whether to close a chapter 11 case and "Bankruptcy Rule 3022 is intended to allow bankruptcy courts flexibility in determining whether an estate is fully administered." *In re Federated Dep't Stores, Inc.*, 43 Fed. App'x 820, 823 (6th Cir. 2002) (affirming issuance of final decree despite outstanding litigation of claims that could take many years to resolve); *see In re Shotkoski*, 420 B.R. 479, 483 (B.A.P. 8th Cir. 2009) ("[W]e believe that the decision as to whether an estate is 'fully administered' is one that falls within the discretion of the bankruptcy judge."); *see also In re Johnson*, 402 B.R. 851, 856 (Bankr. N.D. Ind. 2009) (holding that the

15

decision to close a case calls for a "flexible, case-by-case evaluation" weighing the costs and benefits).

Courts, however, have looked to the following factors in deciding whether a final decree shall be issued:

> (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

1991 Advisory Comm. Note to Fed. R. Bankr. P. 3022 (the "Advisory Committee Note"). Although courts should apply and weigh the factors, no one factor is dispositive. *See In re Kliegel Bros.*, 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999); *In re JMP-Newcor Int'l*, 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998). Rather, the six factors act as mere guidelines to aid a court in its determination. *Kliegel Bros*, 238 B.R. at 541–42 ("The factors set forth in the [Advisory Committee] Note are plainly an aid or checklist that serves to insure that there is no unfinished business before the Court or in the case."); *In re Mold Makers, Inc.*, 124 B.R. 766, 768–69 (Bankr. N.D. Ill. 1990) ("[A]ll of the factors in the Committee Note need not be present before the Court will enter a final decree.").

Courts have considered whether the plan of reorganization has been substantially consummated. *See, e.g., In re Gates Cmty. Chapel*, 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997) ("[S]everal courts have concluded that a Chapter 11 case should be considered 'fully administered' when it reaches the point of substantial consummation as defined in Section 1101(2)") (citations omitted); *Walnut Assocs. v. Saidel*, 164 B.R. 487, 493 (E.D. Pa. 1994) (same). Both this Court and Judge Gerber previously found that the Plan has been substantially

16

consummated. *Morgenstein v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 462 B.R. 494, 501 n.36 (Bankr. S.D.N.Y. 2012) ("[T]he Plan already has been substantially consummated."), *aff'd* 2012 U.S. Dist. LEXIS 190892 (S.D.N.Y. Aug. 9, 2012); *In re Motors Liquidation Co.*, 598 B.R. 744, 759 (Bankr. S.D.N.Y. 2019) (noting the Debtors have "confirmed a chapter 11 plan of reorganization, and substantially consummated that plan").

Here, all the factors identified in the Advisory Committee Note and all the elements of substantial consummation have been satisfied. Specifically, the confirmation order has become final; all transfers contemplated by the Plan and GUC Trust Agreement have occurred; the successor of the Debtor (New GM) has assumed the business the Debtors; and all adversary and contested matters have been resolved. (GUC Motion ¶ 75.) Further, all actions contemplated by section 6.2(q) of the Plan have been performed. (*Id.*)

Therefore, the request for entry of an order and final decree closing the Remaining Case is **GRANTED**.

### G.    Termination of Epiq

The GUC Trust Administrator submits that the termination of Epiq's engagement is appropriate under the circumstances. (*Id.* ¶ 78.) The GUC Trust Administrator requests that Epiq be directed to comply with the instructions and guidelines set forth by the Clerk's Office with respect to procedures for preparation of a final claims register in accordance with the provisions of Local Rule 5075-1. (*Id.*)

All claims against the Debtors have been resolved. (*Id.*) Pursuant to the terms of the Plan, all payments and distributions under the Plan and GUC Trust Agreement have been made or will be made shortly after entry of the order and final decree. (*Id.*) Therefore, the request for entry of an order terminating the retention of Epiq and directing Epiq to comply with the Clerk's

17

Office with respect to procedures for preparation of a final claims register in accordance with the provisions of Local Rule 5075-1 is **GRANTED**.

Separate orders granting the relief set forth above will be entered.

Dated:    March 16, 2021
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge