```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
In re                                                 :
                                                      :
MOTORS LIQUIDATION COMPANY,                           :
                                                      :
                            Debtor.                   :      18-CV-3658 (VSB)
                                                      :
------------------------------------------------------X      OPINION & ORDER
                                                      :
PAT J. BOMBARD,                                       :
                                                      :
                            Appellant,                :
                                                      :
            - against -                               :
                                                      :
GENERAL MOTORS LLC,                                   :
                                                      :
                            Appellee.                 :
                                                      :
------------------------------------------------------X
```

VERNON S. BRODERICK, United States District Judge:

Pro se Appellant Pat J. Bombard ("Bombard") brings this appeal from a bankruptcy court order (the "Underlying Order"), entered in the course of enforcing one of the bankruptcy court's prior orders, that enjoined Bombard from pursuing an administrative proceeding against General Motors LLC ("New GM") before the New York State Department of Motor Vehicles ("NYDMV"). The only question presented on appeal is whether the bankruptcy court had jurisdiction to enter the Underlying Order. Because the bankruptcy court had jurisdiction, the Underlying Order is AFFIRMED.

I. **Factual Background**

On June 1, 2009, General Motors Corporation ("Old GM") filed a chapter 11 bankruptcy action before the United States Bankruptcy Court for the Southern District of New York. Old

1

GM's bankruptcy ultimately led to a court-approved agreement, known as the "Sale Agreement," under which New GM was to purchase substantially all of Old GM's assets. *See In re Gen. Motors Corp.*, 407 B.R. 463, 473 (Bankr. S.D.N.Y. 2009), *aff'd in part, vacated in part, reversed in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017). On July 5, 2009, the bankruptcy court entered an order approving the sale (the "Sale Order"). (SA-0019.)[1] As part of the transactions approved by the Sale Order, Old GM was allowed to enter into certain "Wind-Down Agreements" and "Deferred Termination Agreements" with "franchised motor vehicle dealers." (SA-0036). The bankruptcy court "retain[ed] exclusive jurisdiction to enforce and implement the terms and provisions of this [Sale] Order," including jurisdiction to "resolve any disputes with respect to or concerning" the Wind-Down and Deferred Termination Agreements. (SA-0066 ¶ 71.)

Bombard was the proprietor of a car dealership called Bombard Car Company ("Bombard Car Co.") in Skaneateles, New York. (SA-0352.) In a letter dated June 1, 2009, the same day that Old GM filed for bankruptcy, Old GM informed Bombard that his prior dealership agreement "w[ould] not be continued" as "part of GM's court supervised restructuring efforts." (*Id.*) Old GM offered Bombard a Wind-Down Agreement, the "Bombard WD Agreement," under which Bombard would terminate his dealership agreement with Old GM and release all claims against Old GM, its successor, "and their related parties," and in return, Bombard would receive "financial assistance in installments in connection with the orderly winding down of" his "operations" with respect to GM vehicles. (*Id.*)

Bombard signed the Bombard WD Agreement on or around June 1, 2009. (*See* SA-0204, SA-0212.) Under the Bombard WD Agreement, Bombard Car Co. would receive payments

---

[1] "SA-____" refer to pages in the Supplemental Appendix filed by New GM as part of this appeal. (Docs. 7-1–7-6.) Bombard did not file an appendix as part of his appeal.

2

totaling $128,163, with "25%" of that being payable up front, and the rest to be paid upon the satisfaction of various conditions. (SA-0205–06.) Bombard also released all claims he may have had against Old GM or New GM in connection with the termination of Bombard Car Co.'s dealership agreement with GM, and he agreed not to sue them concerning the termination. (SA-0207–08.) Additionally, Bombard "consent[ed] and agree[d] that the Bankruptcy Court shall retain full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of th[is] [Bombard WD] Agreement and any other matter related hereto." (SA-0210.)

As the assignee of the Bombard WD Agreement, New GM made an initial payment to Bombard of "$32,000." (SA-0926.) However, New GM did not make further payments because, according to a sworn declaration from one of its attorneys, Bombard failed to satisfy the Bombard WD Agreement's conditions precedent to New GM's making further payment. (SA-1008.)

Sometime after signing the Bombard WD Agreement, Bombard sought reinstatement of his dealership agreement with GM, which led New GM to send Bombard a letter of intent on March 11, 2020. (SA-0354–65.) In this letter of intent, New GM explained that it would allow Bombard to be a "Dealer Operator" if, "within sixty (60) days" of March 11, 2010, Bombard satisfied conditions stated in the letter, including that he dismiss an arbitration he filed against New GM and return the initial payment New GM had made under the Bombard WD Agreement. (*Id.*) According to New GM, Bombard did not timely comply with the letter of intent's terms, including not returning the payment he had already received under the Bombard WD Agreement. (SA-1008). New GM sent Bombard a letter dated July 16, 2010 to let him know the letter of intent had expired and that the Bombard WD Agreement would govern the relationship between

3

Bombard and New GM.  (SA-0358.)

Bombard sent New GM requests for a new dealer agreement in October 2014, (SA-0282), as well as in July, September, and October 2015, (SA-0507).  In a letter dated January 5, 2016, New GM once again informed Bombard that he had not complied with the letter of intent and that the Bombard WD Agreement still governed.  (SA-0426.)

Eventually, in December of 2017, Bombard filed an administrative proceeding with the NYDMV seeking to compel GM to give him a new dealership agreement.  (SA-0214–18.)  This led New GM to send Bombard's counsel a letter stating that the claims Bombard sought to pursue before the NYDMV had to be pursued in the bankruptcy court, as per the terms of the Sale Order, and that, in any case, he could not sue given that he covenanted not to sue New GM as part of the Bombard WD Agreement.  (*See* SA-0429–30.)  On February 16, 2018, counsel representing Bombard in connection with the proceeding before the NYDMV responded by email and said Bombard would continue to pursue his claims before the NYDMV.[2]  (SA-0449.)

On February 28, 2018, New GM filed a motion in the bankruptcy court to enjoin Bombard from proceeding before the NYDMV.  (SA-0003.)  The bankruptcy court held a hearing on the motion on March 29, 2018, during which the parties disputed whether Bombard had complied with the terms of the March 11, 2010 letter of intent it had sent Bombard.  (SA-0924–32.)  The bankruptcy court gave the parties an opportunity to gather and submit evidence regarding whether Bombard had in fact satisfied the terms of the letter of intent.  (SA-0932–34.)

The bankruptcy court entered its opinion and order on New GM's motion on April 13, 2018.  *In re Motors Liquidation Co.* (the "Underlying Order), Case No. 09-50026 (MG), 2018 WL 1801234 (Bankr. S.D.N.Y. Apr. 13, 2018).  After finding that it had "exclusive jurisdiction .

---

[2] Bombard proceeded pro se before the bankruptcy court and has continued to represent himself in this appeal.

4

. . to enforce and implement . . . the Sale Order" and the "Bombard WD Agreement" due to terms of each, *id.* at *6–7, the bankruptcy court held that the evidence favored granting New GM "the relief requested," *id.* at *7. Conversely, it found that Bombard's filings "contain[ed] no contentions of fact or law, d[id] not include any legal argument in support of Bombard's position, and fail[ed] to refute any of New GM's argument presented in its Motion." *Id.* The bankruptcy court thus enjoined Bombard from proceeding before the NYDMV. *Id.* at *9.

## II.     Procedural History

Bombard docketed his notice of appeal from the underlying order on April 25, 2018. (Doc. 1.) I entered a scheduling order on April 26, 2018. (Doc. 2.) Bombard filed his brief on June 28, 2018. (Doc. 6.) New GM filed its brief on July 10, 2018, (Doc. 7), along with a supplemental appendix, (Docs. 7-1–7-6). Bombard filed papers in reply on August 3, 2018. (Doc. 9.)

## III.    Legal Standard

A district court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) "to hear appeals" from "final judgments, orders, and decrees" of a bankruptcy court. On such an appeal, a district court reviews the bankruptcy court's findings of fact for clear error, and any conclusions of law are reviewed de novo. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). A bankruptcy court's discretionary decisions are reviewed for abuse of discretion. *See, e.g.*, *In re Boodrow*, 126 F.3d 43, 47 (2d Cir. 1997). A bankruptcy court's "rulings on the credibility of witnesses . . . are [also] reviewed under an abuse of discretion standard." *In re CBI Holding Co.*, 419 B.R. 553, 563 (S.D.N.Y. 2009) (citing *Universal Church v. Geltzer*, 463 F.3d 218, 226 (2d Cir. 2006), and *BIC Corp. v. Far E. Source Corp.*, 23 F. App'x 36, 38–39 (2d Cir. 2001) (summary order)).

In reviewing a decision of a bankruptcy court, the district court "may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below." *Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010). The district court may not consider evidence outside the record. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (S.D.N.Y. 2008). Any arguments not raised in the bankruptcy court are considered waived, and unless such a waiver results in manifest injustice, the new arguments will not be considered on appeal. *See In re Barquet Grp., Inc.*, 486 B.R. 68, 73 n.3 (S.D.N.Y. 2012) (citing *In re Enron Corp.*, 419 F.3d 115, 126 (2d Cir. 2005)); *In re Lionel Corp.*, 29 F.3d 88, 92 (2d Cir. 1994).

## IV.  Discussion

Bombard raises a single issue on appeal: whether "the Bankruptcy Court [had] the jurisdiction to adjudicate this matter, superseding the jurisdiction of the New York State Department of Motor Vehicles." (Bombard Br. 4.)[3] Bombard contends that "[t]he bankruptcy court lacks jurisdiction in this matter," because the NYDMV "was the proper venue" for Bombard's administrative proceeding. (*Id.* at 5.) Bombard's argument is legally and factually incorrect. Whether or not a dispute like the one Bombard filed with the NYDMV normally could be heard by the NYDMV need not be resolved here, since that fact does not control whether the bankruptcy court had jurisdiction to enter the Underlying Order and to enjoin Bombard from pursuing the claims in question before the NYDMV.

A bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). The Second Circuit has held that "[a] bankruptcy court's decision to interpret and enforce a prior sale order falls under" its

---

[3] "Bombard Br." refers to the Brief on Behalf of Appellant. (Doc. 6.)

6

"'arising in' jurisdiction" as provided for by 28 U.S.C. § 157(a). *In re Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016). Accordingly, if a "sale order" entered by a bankruptcy court provides for it, the bankruptcy court will have "jurisdiction . . . to enjoin claims" that are "inconsistent with" that sale order. *In re Motors Liquidation Co.*, 590 B.R. 39, 50 (S.D.N.Y. 2018) (citing *Motors Liquidation Co.*, 829 F.3d at 152–54), *aff'd*, 943 F.3d 125 (2d Cir. 2019). That is precisely what happened here, because the Sale Order let the bankruptcy court "retain[] exclusive jurisdiction" to "resolve any disputes with respect to or concerning" any Wind-Down Agreements it authorized, (SA-0066 ¶ 71), which includes the Bombard WD Agreement, (SA-0210). The bankruptcy court thus correctly found that it had "exclusive jurisdiction . . . to enforce and implement . . . the Sales Order," which meant Bombard's claims before the NYDMV were "covered by the jurisdiction clause of the Bombard WD Agreement and must exclusively be dealt with in [the bankruptcy court]." Underlying Order, 2018 WL 1801234, at *8. The Underlying Order merely "enforces a prior sale order," which is an action within the bankruptcy court's jurisdiction. *Motors Liquidation Co.*, 829 F.3d at 153. Bombard does not even mention the Bombard WD Agreement in his briefing, much less provide an argument that would invalidate the provision in which he "consent[ed] . . . that the Bankruptcy Court shall retain full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this Agreement and any other matter related thereto." (SA-0210.)

  The only legal authority that Bombard cites in support of his position, *Beck Chevrolet Co. v. General Motors LLC*, 845 F.3d 68 (2d Cir. 2016) (per curiam), is inapposite since it has nothing to do with bankruptcy court jurisdiction. In *Beck Chevrolet*, the Second Circuit reversed in part and vacated in part a district court judgment because the judgment was premised on erroneous interpretations of provisions of "New York's Franchised Motor Vehicle Dealer Act"

7

related to (i) whether a "franchisor" had used "an unreasonable, arbitrary, or unfair . . . performance standard in determining a franchised motor vehicle dealer's compliance with a franchise agreement;" and (ii) whether a revision to a franchise agreement "constituted an 'unfair' 'modification'" within the meaning of the Dealer Act. *See id.* at 69–71 (citations omitted). Bombard asserts that "[t]he bankruptcy court lacks jurisdiction in this matter, as can be seen in the case of Beck Chevrolet . . . ." (Bombard Br. 5.) Bombard does not explain this assertion, and *Beck Chevrolet* does not address the scope of a bankruptcy court's jurisdiction to enforce its own prior order, or even mention the NYDMV.

## V.    Conclusion

For the foregoing reasons, the Underlying Order is AFFIRMED. The Clerk of Court is respectfully directed to terminate all pending motions and to terminate this action.

SO ORDERED.

Dated:  March 31, 2022
        New York, New York

*[signature]*
Vernon S. Broderick
United States District Judge