# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No. 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |

------------------------------------------------------------------------

ANNUAL REPORT AND ACCOUNT OF THE
MLC ASBESTOS PI TRUST
FOR THE FISCAL YEAR ENDING DECEMBER 31, 2022

Kirk Watson, the Asbestos Trust Administrator and Trustee of the MLC Asbestos PI Trust (the "Trust"), created pursuant to the Debtors' Second Amended Joint Chapter 11 Plan (the "Plan") submits this Annual Report, Financial Statements, and Claims Summary for the fiscal year ending December 31, 2022.

I.      INTRODUCTION

The purpose of this Annual Report is to fulfill the reporting requirements of the MLC Asbestos PI Trust Agreement (the "Trust Agreement") and to report to the Court on the actions taken by the Trustee on behalf of the Trust during the period January 1, 2022 to December 31, 2022 (the "Reporting Period").

Section 2.2(c) of the Trust Agreement provides:

The Trustee shall timely account to the Bankruptcy Court as follows:

(i)      The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "Annual Report") containing financial statements of the PI Trust (including, without limitation, a balance sheet of the PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustee and accompanied by an opinion of such firm as to the fairness of the financial

statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the financial statements with generally accepted accounting principles. The Trustee shall provide a copy of such Annual Report to the TAC and the Futures Representative when such reports are filed with the Bankruptcy Court.

(ii)     Simultaneously with the filing of the Annual Report, the Trustee shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements. The Trustee shall provide a copy of such report to the TAC and the Futures Representatives when such report is filed.

(iii)    All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee").

The Trust Agreement further provides for the inclusion of a description of the amounts paid to the Trustee, TAC, and FCR in the accounts filed with the Bankruptcy Court. See Sections 4.5(c), 5.6, and 6.5.

## II.    BACKGROUND

On June 1, 2009,[1] Motors Liquidation Company ("MLC") and its affiliated debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* in the United States District Court for the Southern District of New York (the "Bankruptcy Court"). On March 29, 2011, the Bankruptcy Court entered an order confirming the Plan. On March 31, 2011 (the "Effective Date"), the Plan became effective and the Trustee began to operate the Trust.

The purpose of the Trust is to assume the liabilities of MLC and its affiliated debtors for all Asbestos Personal Injury Claims, as defined in the Plan, and to use the Trust's assets and the proceeds and income from such assets to pay both present and future asbestos claimants in

---

[1] Remediation and Liability Management Company, Inc. and Environmental Corporate Remediation Company, Inc filed voluntary petitions on October 9, 2009.

2

accordance with the Trust Agreement and the Trust Distribution Procedures (the "Trust Documents"), in such a way that holders of Asbestos Personal Injury Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims.

On or after the Effective Date, the Trust was funded as provided for in Section 6.3 (d) of the Plan and the Stipulation and Order Fixing Asbestos Trust Claim and Resolving Debtors' Estimation Motion approved by this Court on February 14, 2011.

III.    TRUST ADMINISTRATION

A.    Trustee

Kirk Watson served as the Trustee of the Trust during the Reporting Period. Wilmington Trust served as the Delaware Trustee during the Reporting Period.

1.    Meetings

During the Reporting Period, the Trustee held formal meetings, or obtained waivers of the formal meeting requirement, in accordance with the requirements of the Trust Agreement. In addition to these formal meetings, the Trustee communicated with TAC Members, the FCR, and their respective counsel, and met individually with Trust advisors, held special purpose meetings, and devoted time to Trust matters outside of scheduled meetings. Activities included receiving and deploying trust assets with investment managers, ensuring compliance with the Trust Documents, communicating with claimants, responding to discovery requests directed to the Trust, consideration of the Payment Percentage, and monitoring the processing and payment of claims pursuant to the Trust Distribution Procedures.

2.    Compensation

The compensation and expenses paid to the Trustee during the Reporting Period are set forth in the Trust's financial statements attached hereto as Exhibit "A." The inclusion of this

information in the Trust's financial statements satisfies the requirements of Section 4.5 of the Trust Agreement. All distributions related to Trustee compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines.

B.    Trust Advisory Committee

Steven Kazan, John Cooney, Perry Weitz, and Lisa Busch served as Members of the Trust Advisory Committee ("TAC Members") during the Reporting Period. The compensation and expenses paid to the TAC Members during the Reporting Period are set forth in the Trust's financial statements. The inclusion of this information in the Trust's financial statements satisfies the requirements of Section 5.6 of the Trust Agreement. All distributions related to TAC Member compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines.

C.    Legal Representative for Future Claimants

Hon. Dean M. Trafelet (Ret.) served as the Legal Representative for Future Claimants (the "FCR") during the Reporting Period. The compensation paid to the FCR during the Reporting Period is set forth in the Trust's financial statements. The inclusion of this information in the Trust's financial statements satisfies the requirements of Section 6.5 of the Trust Agreement. All distributions related to FCR compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines.

D.    Claims Processing

The Trust used MFR Claims Processing, Inc. as claims the processor for the Trust during the Reporting Period. Claims Resolution Management Corporation started to serve as the claims processor for the Trust starting February 15, 2023.

4

F.    Investment Management

Cambridge Associates, LLC of Boston, Massachusetts served as the Trust's investment advisor. Cambridge Associates represents other asbestos settlement trusts and has experience advising such trusts regarding investment management. Cambridge Associates advises the Trustee on the asset allocation, meeting liquidity needs, and the selection and oversight of individual investment managers for the investable portions of the Trust's portfolio. The Trust Agreement sets forth certain general investment guidelines, primarily addressing credit quality and asset diversification. The asset allocation at the end of the Reporting Period is as follows: 54.5% of the Trust's invested assets are committed to fixed income, 18.0% to hedge funds and private investments, and 27.4% to equities.

The Trust retains the following investment managers: Northern Trust as equity manager; BlueMountain Capital, Governors Lane, Sculptor Capital, Farallon Capital, Sachem Head Capital, Taconic Capital, Tilden Park, and Valinor Capital as hedge funds; Breckinridge Capital and Income Research & Management as bond managers; and Accolade, Davidson Kempner and Ultra Capital as private investment managers.

The Northern Trust Bank serves as custodian for the Trust's separately-managed investment accounts. The Trust utilizes custodian accounts, wire transfers and zero-balance banking accounts to reduce its exposure to systemic banking system risk.

During the Reporting Period, the Trustee regularly met with Cambridge Associates to review investment performance and strategy, as well as to receive an update on the current market environment.

G.      General Counsel

Campbell & Levine, LLC of Pittsburgh, Pennsylvania and Wilmington, Delaware served as general counsel to the Trust.

IV.      ANNUAL REPORT AND ACCOUNT:

A.      Summary of Claims

The Trust began accepting and processing Unliquidated claims on April 30, 2012.  As of December 31, 2022, the Trust had received 69,305 Unliquidated Claims and paid a total of 17,289 claims since the date of inception of the Trust.  Of the claims paid, there were 9,791 malignancy claims and 7,498 non-malignancy claims.  The Trust paid approximately $103.6 million to asbestos victims in settlement of their Unliquidated Claims since the date of inception of the Trust.

During the Reporting Period, the Trust had received 5,181 Unliquidated Claims and paid a total of 3.393 claims.  Of the claims paid during the Reporting Period, there were 1,807 malignancy claims and 1,586 non-malignancy claims.  The Trust paid approximately $17.9 million to asbestos victims in settlement of their Unliquidated Claims during the Reporting Period.

On August 1, 2022, the Payment Percentage applicable to claims against the Trust was reduced to 12.2%.

A summary of the claims processing procedures and policies may be found at the Trust website at http://mlc.mfrclaims.com.

6

## V.    FINANCIAL INFORMATION

The Trust's audited financial statements for the Reporting Period are attached hereto as

Exhibit "A."  The financial statements were audited by CohenReznick.


Respectfully submitted,


Date:  New York, New York              Respectfully submitted,
       April 27, 2023

                                       KLESTADT WINTERS JURELLER
                                       SOUTHARD & STEVENS, LLP

                                       By: /s/ Brendan M. Scott
                                            Brendan M. Scott
                                       200 West 41st Street, 17th Floor
                                       New York, New York 10036
                                       Tel:  (212) 972-3000
                                       Fax: (212) 972-2245

                                       CAMPBELL & LEVINE, LLC
                                       Kathleen Campbell Davis
                                       222 Delaware Avenue, Suite 1620
                                       Wilmington, DE 19801
                                       Tel. 302.426.1900
                                       Fax 302.426.9947

                                       -and-

                                       Douglas A. Campbell
                                       Stanley E. Levine
                                       1700 Grant Building
                                       Pittsburgh, PA 15219
                                       Tel. 412.261.0310
                                       Fax 412.261.5066

                                       *Counsel to MLC Asbestos PI Trust*

7

EXHIBIT A

**MLC Asbestos PI Trust**

**Special-Purpose Financial Statements**
**(With Supplementary Information)**
**and Independent Auditor's Report**

**December 31, 2022 and 2021**



**MLC Asbestos PI Trust**

<u>Index</u>

|  | <u>Page</u> |
|---|---|
| Independent Auditor's Report | 2 |
| Special-Purpose Financial Statements | |
|     Special-Purpose Statements of Assets, Liabilities and Net Assets Available for the Payment of Claims | 5 |
|     Special-Purpose Statements of Changes in Net Assets Available for the Payment of Claims | 6 |
|     Special-Purpose Statements of Cash Flows | 7 |
|     Notes to Special-Purpose Financial Statements | 8 |
| Supplementary Information | |
|     Independent Auditor's Report on Supplementary Information | 19 |
|     Supplementary Schedules of Operating Expenses | 20 |



CohnReznick LLP
cohnreznick.com

Independent Auditor's Report

To the Trustee of
MLC Asbestos PI Trust

*Opinion*

We have audited the accompanying special-purpose financial statements of the MLC Asbestos PI Trust (the "Trust"), which comprise the special-purpose statement of assets, liabilities, and net assets available for the payment of claims as of December 31, 2022, and the related special-purpose statement of changes in net assets available for the payment of claims and special-purpose statement of cash flows for the year then ended, and the related notes to the special-purpose financial statements (collectively, the "Financial Statements").

In our opinion, the Financial Statements referred to above present fairly, in all material respects, the net assets of the Trust as of December 31, 2022, and the changes in net assets and cash flows for the year then ended, in accordance with the basis of accounting described in Note 2 to the Financial Statements.

*Basis for Opinion*

We conducted our audit in accordance with auditing standards generally accepted in the United States of America ("GAAS"). Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section of our report. We are required to be independent of the Trust and to meet our other ethical responsibilities in accordance with the relevant ethical requirements relating to our audits. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

*Basis of Accounting*

We draw attention to Note 2 of the Financial Statements, which describes the basis of accounting. The Financial Statements are prepared on a special-purpose basis of accounting which is a basis of accounting other than accounting principles generally accepted in the United States of America. The special-purpose basis of accounting has been adopted by the Trustee to communicate the amount of net assets presently available to fund current and future claims. As a result, the Financial Statements may not be suitable for another purpose. Our opinion is not modified with respect to this matter.

*Other Matter - Prior Year Financial Statements*

The Financial Statements of the Trust for the year ended December 31, 2021, were audited by another auditor, whose report dated April 29, 2022, expressed an unmodified opinion on those statements. The Auditor's report included an emphasis of matter indicating that the Trust's Financial Statements were prepared on the special-purpose basis of accounting which is a basis of accounting used to communicate the amount of net assets presently available to fund current and future claims.

CohnReznick

*Responsibilities of Management for the Financial Statements*

Management is responsible for the preparation and fair presentation of these Financial Statements in accordance with the special-purpose basis of accounting; this includes determining that the special-purpose basis of accounting is an acceptable basis for the preparation of the Financial Statements in these circumstances. Management is also responsible for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of the Financial Statements that are free from material misstatement, whether due to fraud or error.

*Auditor's Responsibilities for the Audit of the Financial Statements*

Our objectives are to obtain reasonable assurance about whether the Financial Statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with GAAS will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the Financial Statements.

In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.

- Identify and assess the risks of material misstatement of the Financial Statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the Financial Statements.

- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Trust's internal control. Accordingly, no such opinion is expressed.

- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the Financial Statements.

- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about Trust's ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control related matters that we identified during the audit.

CohnReznick

*Restriction on Use*

This report is intended solely for the information and use of the management of the Trust, the Trustee, the beneficiaries of the Trust and the United States Bankruptcy Court for the Southern District of New York and is not intended to be and should not be used by anyone other than these specified parties. Upon filing with the United States Bankruptcy Court for the Southern District of New York, the report is a matter of public record, which public filing does not expand the list of specified users.

*CohnReznick LLP*

Dallas, Texas
April 26, 2023

**MLC Asbestos PI Trust**

**Special-Purpose Statements of Assets, Liabilities and Net Assets Available**
**for the Payment of Claims**
**December 31, 2022 and 2021**

Assets

|  | 2022 | 2021 |
|---|---|---|
| Cash and cash equivalents | $ 7,237,963 | $ 4,936,822 |
| Investments at fair market value |  |  |
| Equity securities | 33,979,886 | 41,508,207 |
| Bonds | 64,738,343 | 88,665,887 |
| Alternative investments | 22,335,768 | 23,120,058 |
| Investment income receivable | 1,021,619 | 1,150,038 |
| Income tax receivable | 702,206 | 344,273 |
| Total assets | $ 130,015,785 | $ 159,725,285 |

Liabilities and Net Assets Available for the Payment of Claims

|  | 2022 | 2021 |
|---|---|---|
| Accounts payable and accrued expenses | $ 106,356 | $ 107,546 |
| Settled claims payable | 363,019 | 3,951,551 |
| Total liabilities | $ 469,375 | $ 4,059,097 |
| Net assets available for the payment of claims | $ 129,546,410 | $ 155,666,188 |

See Accompanying Notes to the Special-Purpose Financial Statements.

5

**MLC Asbestos PI Trust**

**Special-Purpose Statements of Changes in Net Assets Available
for the Payment of Claims
Years Ended December 31, 2022 and 2021**

|  | 2022 | 2021 |
|---|---|---|
| Additions | | |
| Interest and dividends, net | $ 2,104,018 | $ 2,802,889 |
| Funding under joint plan of reorganization | - | 1,300,895 |
| Settlement proceeds | - | 87,530 |
| Income tax benefit | 730,136 | - |
| Net appreciation in fair value of investments | - | 7,193,273 |
| Total additions | 2,834,154 | 11,384,587 |
| Deductions | | |
| Operating expenses | 1,301,350 | 1,267,613 |
| Net depreciation in fair value of investments | 13,108,193 | - |
| Personal injury claims expenses | 14,405,629 | 14,102,173 |
| Income tax expense | - | 285,196 |
| Claims processing expenses | 138,760 | 87,910 |
| Total deductions | 28,953,932 | 15,742,892 |
| Decrease in net assets available for the payment of claims | (26,119,778) | (4,358,305) |
| Net assets available for the payment of claims | | |
| Beginning of year | 155,666,188 | 160,024,493 |
| End of year | $ 129,546,410 | $ 155,666,188 |

See Accompanying Notes to the Special-Purpose Financial Statements.

**MLC Asbestos PI Trust**

**Special-Purpose Statements of Cash Flows**
**Years Ended December 31, 2022 and 2021**

|  | 2022 | 2021 |
|---|---|---|
| **Cash flows from operating activities** |  |  |
| Decrease in net assets available for the payment of claims | $ (26,119,778) | $ (4,358,305) |
| Adjustments to reconcile decrease to net assets available for the payment of claims to net cash used in operating activities |  |  |
| Net depreciation (appreciation) on investments | 11,393,393 | (7,193,273) |
| Amortization of bond premiums, net | 1,782,579 | 1,870,545 |
| Changes in assets and liabilities |  |  |
| Interest receivable | 128,419 | 71,057 |
| Income tax receivable | (357,933) | (194,804) |
| Accounts payable and accrued expenses | (1,190) | 14,080 |
| Settled but unpaid claims | (3,588,532) | 3,191,020 |
| Net cash used in operating activities | (16,763,042) | (6,599,680) |
| **Cash flows from investing activities** |  |  |
| Sales of equity securities | 5,670,771 | 8,332,597 |
| Sales and maturities of bonds | 40,543,334 | 13,780,973 |
| Liquidation of alternative investments | 586,264 | 2,427,717 |
| Purchase of equity securities | (4,554,978) | (4,120,754) |
| Purchase of bonds | (23,181,208) | (11,424,536) |
| Contributions to alternative investments | - | (2,012,500) |
| Net cash provided by investing activities | 19,064,183 | 6,983,497 |
| Net increase (decrease) in cash and cash equivalents | 2,301,141 | 383,817 |
| Cash and cash equivalents, beginning of year | 4,936,822 | 4,553,005 |
| Cash and cash equivalents, end of year | $ 7,237,963 | $ 4,936,822 |

See Accompanying Notes to the Special-Purpose Financial Statements.

7

**MLC Asbestos PI Trust**

## Notes to Special-Purpose Financial Statements
### December 31, 2022 and 2021

### Note 1 - Description of Trust

On June 1, 2009, Motors Liquidation Company ("MLC") (formerly known as General Motors Corporation) and certain of its subsidiaries (collectively, the "Debtors"), filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). On October 9, 2009, two additional Debtors, Remediation and Liability Management Company, Inc. ("REALM") and Environmental Corporate Remediation Company, Inc. (ENCORE) filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

On December 7, 2010, the Debtors filed a Disclosure Statement (the Disclosure Statement) with the Bankruptcy Court describing the Debtors' Amended Joint Chapter 11 Plan. On March 29, 2011, the Bankruptcy Court confirmed the Second Amended Joint Chapter 11 Plan (the "Plan"). The Plan is final and can no longer be appealed.

The essential elements of the Plan include, among other things, the creation of the MLC Asbestos PI Trust (the "Trust") on March 31, 2011, pursuant to which the Trust assumes all liabilities for Asbestos Personal Injury Claims in accordance with the Plan. Governance of the Trust is dictated by the terms and provisions of the Trust Agreement, which provides, inter alia, for the appointment of the Asbestos Trust Administrator and Trustee (the "Trustee"). The processing and payment of Asbestos Personal Injury Claims is, in turn, determined by reference to the detailed provisions of the Trust Distribution Procedures (the "TDP").

The Trustee is responsible for supervising and administering the Trust and utilizing the Trust's assets and income to pay the holders of all Asbestos Personal Injury Claims in accordance with the Trust Agreement and the TDP in such a way that holders of such claims are treated fairly, equitably, and reasonably in light of the limited assets available to satisfy such claims.

### Funding under joint plan of reorganization

In accordance with the Plan and Stipulation and Order Fixing Asbestos Trust Claim and Resolving Debtor's Estimation Motion (the "Stipulation") entered by the Bankruptcy Court on February 14, 2011, the Trust was funded with the Asbestos Trust Assets that were comprised of cash in the amount of $2,000,000 and an allowed general unsecured claim of $625,000,000. The Plan provided that general unsecured creditors, including the Trust, shall receive a pro rata share of New GM Securities (a combination of General Motors Company common stock, stock rights, and stock warrants) and General Unsecured Trust (the "GUC Trust") Units in accordance with the terms of the Motors Liquidation Company GUC Trust Agreement (the "GUC Trust Agreement"). The initial distribution on the Trust's general unsecured claim was made directly to the Trust rather than through the GUC Trust pursuant to the terms of the Stipulation. All subsequent distributions were made in accordance with the Plan. The Trust received total distributions from the GUC Trust during the period from 2012 through 2021 of approximately $28,563,000. The Trust's interest in the GUC Trust was fully liquidated as of December 31, 2021.

In addition, during the year ended, December 31, 2021 and 2020, respectively, the Trust received settlement proceeds in the amount of approximately $87,500 and $2,010,000, as a result of the settlement of the Term Loan Avoidance Action. The administrator of the Avoidance Action Trust distributed the funds to the MLC Asbestos PI Trust in accordance with the Fourth Amended and Restated Avoidance Action Trust Agreement and the Second Amended Joint Chapter 11 Plan of Motors Liquidation Company.

**MLC Asbestos PI Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2022 and 2021**

**Termination**

The Trust Agreement (Section 7.2) provides that the Trust shall automatically dissolve on the date ("Dissolution Date") ninety (90) days after the first to occur of the following:

- The Trustee, with the consent of the TAC and the LR, decide to dissolve the Trust because (A) the Trustee deems it unlikely that any new asbestos claims will be filed against the Trust, (B) all asbestos personal injury claims duly filed with the Trust have been liquidated and paid to the extent provided the Trust Agreement and the TDP or disallowed by a final, non-appealable order or judgment, to the extent possible based upon the funds and Trust Assets available through the Plan, and (C) twelve (12) consecutive months have elapsed during which no new asbestos personal injury claims have been filed with the Trust.

- If the Trustee has procured and has in place irrevocable insurance policies and has established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses (including without limitation Trust expenses) of the Trust in a manner consistent with the Agreement and the asbestos distribution procedures, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a final order, or

- To the extent that any rule against perpetuities shall be deemed applicable to the Trust, that date which is twenty-one (21) years less ninety-one (91) days after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof.

On the Dissolution Date or as soon as reasonably practicable, after the wind-up of the Trust's affairs by the Trustee and payment of all the Trust's liabilities have been provided for as required by applicable law, all remaining assets shall be applied to such charitable purposes, if practicable, which shall be related to the treatment of, research on, or the relief of individuals suffering from asbestos related lung disease or disorders.

**Note 2 - Summary of significant accounting policies**

**Basis of presentation**

The Trust's special-purpose financial statements ("Financial Statements") are prepared using special-purpose accounting methods adopted by the Trustee which differ from accounting principles generally accepted in the United States of America ("GAAP"). The special-purpose accounting methods were adopted in order to communicate to the beneficiaries of the Trust the net assets available for the payment of claims and related operating expenses of the Trust. Since the accompanying Financial Statements and transactions are not based upon GAAP, accounting treatment by other parties for these same transactions may differ as to timing and amount. These special-purpose accounting methods and the differences from GAAP are summarized as follows:

- Assets are generally recorded when they are received by the Trust and available for the payment of asbestos claims.

- Future fixed liabilities under contractual obligations and other agreements entered into by the Trust are recorded as deductions from net assets available for the payment of claims in the same period that such contractual obligations or agreements are signed. Under GAAP, liabilities and contractual obligations are recorded over the period that is benefited by the underlying contract or agreement.

**MLC Asbestos PI Trust**

### Notes to Special-Purpose Financial Statements
### December 31, 2022 and 2021

- The full amounts of claims will be expensed in the period in which the confirmed claims are settled. A settled claim is a claim that has been allowed by the Trust and accepted by the claimant, with an approved release, Under GAAP, a liability would be recorded for an estimate of the amount to be paid for claims that have been incurred but not yet reported, and for those claims that have been submitted but not yet approved for payment by the Trust. There were settled but unpaid claims of approximately $363,000 and $3,952,000 for the years ended December 31, 2022 and 2021, respectively. Total claims paid during the years ended December 31, 2022 and 2021 aggregated to approximately $17,994,000 and $10,911,153, respectively.

- Payments for services to be received over an extended period in the future are expensed as paid since these amounts are no longer available for the payment of claims. Under GAAP, an asset would be recorded and amortized over the period in which the related benefits are received.

- Payments for property and equipment are expensed as incurred. Under GAAP, payments for property and equipment are capitalized and depreciated over the useful lives of the assets. To date, the Trust has incurred no expenses related to purchases of property and equipment.

- Income tax expense is estimated and recorded as incurred in the period in which certain income and expense items affect current federal income taxes. Under GAAP, the provision for income taxes is recorded based upon income (loss) reported for financial statement purposes, which includes federal income taxes both currently payable and changes in deferred taxes due to differences between financial reporting and tax bases of assets and liabilities. Under GAAP, deferred taxes would include a provision for taxes attributable to changes in unrealized gains and losses on investments and capital loss carryforwards or net operating losses, if any.

- Asbestos insurance recoveries are not recorded until the funds are received or collection is assured from the insurance carriers. Under GAAP, asbestos insurance recoveries are recorded upon settlement.

- Under GAAP, for financial statement disclosure purposes, all investments would be categorized based on the priority of inputs used to measure fair value. Under GAAP, inputs used in measuring fair value are categorized into three levels. Level 1 includes inputs that are based upon quoted prices for identical instruments traded in active markets. Level 2 includes inputs that are based upon quoted prices for similar instruments in active markets, quoted prices for identical or similar investments in markets that are not active, or models based on valuation techniques for which all significant assumptions are observable in the market or can be corroborated by observable market data for substantially the full term of the investment. Level 3 includes inputs that are generally unobservable and typically reflect management's estimates of assumptions that market participants would use in pricing the asset or liability. The fair values are therefore determined using model-based techniques that include option pricing models, discounted cash flow models, and similar techniques. Alternative investments that are measured at net asset value per share (or its equivalent) are not classified in the fair value hierarchy. They are included in the table to permit reconciliation of the fair value hierarchy. The accompanying special-purpose financial statements do not categorize investments into these levels.

**MLC Asbestos PI Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2022 and 2021**

### Use of estimates

The preparation of the Financial Statements in conformity with the special-purpose accounting methods requires the Trustee and management of the Trust to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosures of contingent assets and liabilities at the date of the Financial Statements, and the reported amounts of additions and deductions to the net assets available for the payment of claims during the reporting periods. The significant item subject to such estimates and assumptions includes the fair value of investments Actual results could differ from these estimates and such differences could have a material effect on the net assets available for the payment of claims.

### Cash and cash equivalents

The Trust considers all highly liquid instruments with original maturities three (3) months or less, to be cash equivalents.

### Investments

Investment securities are stated at fair market value. Fair market value for investment securities, other than alternative investments, are based on quoted market prices for identical or similar instruments traded in active markets as of the date of the special-purpose financial statements. The fair market value for alternative investments is based on the Trust's proportionate share of each fund's net assets, as reported as of the date of the special-purpose financial statements. The net appreciation or depreciation in fair value of investments in the accompanying special-purpose statements of changes in net assets available for the payment of claims consists of realized gains or losses on sales of investments and the changes in unrealized gains or losses on investments held. Investment income is recognized when earned. Interest and dividend income, net of investment expenses and amortization and accretion of bond premiums or discounts, are included in interest and dividend income, net in the accompanying special-purpose statements of changes in net assets available for the payment of claims. Gains and losses on sales of investment securities are determined using the average cost method.

### Settled claims payable

Settled claims payable consist of certain injury claims that are settled but unpaid at year end.

### Accrued expenses and accounts payable

Accrued expenses and accounts payable consist of accruals and outstanding invoices associated with managing and operating the Trust.

### Operating expenses

Operating expenses of the Trust are paid from the net assets available for the payment of claims when invoices are received.

### Claims processing expenses

Claims processing expenses are recorded as incurred.

### Federal income tax expense

The Trust is classified as a Qualified Settlement Fund pursuant to the Internal Revenue Code and Regulations (the "Code"). As a result, the Trust is subject to federal income taxes based on modified gross income, as defined by the Code. In the opinion of the Trustee and advisors, the Trust is not subject to state income taxes, and therefore, the Financial Statements do not include any provision or liability for state income taxes. The funding received at the inception of the Trust as well as any subsequent funding received from insurers does not represent taxable income to the Trust. In addition, payments to claimants do not represent tax deductions of the Trust.

**MLC Asbestos PI Trust**

### Notes to Special-Purpose Financial Statements
### December 31, 2022 and 2021

The Trust records income tax expense (or benefit) associated with amounts payable (or receivable) under current federal income taxes, and does not record a provision for (or benefit from) deferred taxes. Accordingly, there is no provision for deferred taxes associated with changes in cumulative unrealized gains and losses on investments (see Note 4). The income taxes associated with gains on investments will be recorded in the Trust's special-purpose financial statements when the net gains are realized (i.e., the securities are sold) and the taxes become currently payable.

The Trust records the amount of income taxes the Trust pays is subject to ongoing audits by federal authorities.

**Risks and uncertainties**
Certain of the Trust's assets are exposed to credit risk. Cash and cash equivalents are maintained at financial institutions, and, at times, balances may exceed federally insured limits. The Trust has never experienced any losses related to these balances. There were no amounts on deposit in excess of federally insured limits at December 31, 2022.

The Trust invests in a professionally managed portfolio that contains municipal bonds and Treasury bills, common shares of publicly traded companies, money market funds, and alternative investments. Such investment securities are exposed to various risks such as interest rate and credit risks. Due to the level of risk associated with certain investment securities, it is at least reasonably possible that changes in the values of investment securities will occur in the near term and that such changes could materially affect the Trust's account balance and the amounts reported in the special-purpose statements of assets, liabilities and net assets available for the payment of claims.

**Subsequent events**
The Trust has evaluated events and transactions subsequent to the date of the Financial Statements for matters requiring recognition or disclosure in the Financial statements. The accompanying Financial Statements consider events through April 26, 2023 the date which the Financial Statements were available to be issued.

**Note 3 - Investments**

Investments consist of the following at December 31:

| | 2022 | | | |
|---|---|---|---|---|
| | Amortized Cost | Gross Unrealized Gains | Gross Unrealized Losses | Fair Market Value |
| Equities | $ 16,294,010 | $ 17,808,058 | $ (122,182) | $ 33,979,886 |
| Bonds | 65,910,451 | 209,035 | (1,381,143) | 64,738,343 |
| | $ 82,204,461 | $ 18,017,093 | $ (1,503,325) | $ 98,718,229 |

**MLC Asbestos PI Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2022 and 2021**

|  | 2021 | | | |
|  | Amortized Cost | Gross Unrealized Gains | Gross Unrealized Losses | Fair Market Value |
|---|---|---|---|---|
| Equities | $ 17,412,195 | $ 24,096,012 | $        - | $ 41,508,207 |
| Bonds | 85,062,641 | 3,603,246 | - | 88,665,887 |
|  | $ 102,474,836 | $ 27,699,258 | $        - | $ 130,174,094 |

**Net unrealized gains and losses**

The net change in unrealized gains (losses) from market appreciation (depreciation) of investments consist of the following as of December 31:

|  | 2022 | 2021 |
|---|---|---|
| Equities | $ (6,412,528) | $ 5,855,624 |
| Bonds | (4,782,838) | (2,033,014) |
| GUC Trust | - | (1,106,250) |
|  | $ (11,195,366) | $ 2,716,360 |

**Realized gains and losses**

Net realized gains (losses) from investment sales consist of the following as of December 31:

|  | 2022 | 2021 |
|---|---|---|
| Equities | $ (54,063) | $ 1,789,333 |
| Bonds | (1,660,737) | 210,053 |
|  | $ (1,714,800) | $ 1,999,386 |

**Summary of changes in alternative investments**

|  | 2022 | 2021 |
|---|---|---|
| Balance, beginning of the year | $ 23,120,058 | $ 21,057,748 |
| Liquidation | (1,440,183) | (2,427,717) |
| Contributions | 853,919 | 2,012,500 |
| Increase (decrease) in fair value | (198,026) | 2,477,527 |
| Balance, end of year | $ 22,335,768 | $ 23,120,058 |

13

**MLC Asbestos PI Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2022 and 2021**

The major categories of the Trust's alternative investments, including general information related to each category, are as follows:

| Category | Fair Value 2022 | 2021 | Frequency (if Currently Eligible) | First/Next Redemption | Notice Period (days) | Gate |
|---|---|---|---|---|---|---|
| **(a)** | | | | | | |
| Long/short fund | $ 203,245 | $ 169,256 | ** | ** | ** | ** |
| Long/short fund | 3,801,777 | 4,570,201 | 25% Quarterly | March 31, 2023 | 65 | 0% |
| Long/short fund | - | 69,404 | * | * | * | * |
| | 4,005,022 | 4,808,861 | | | | |
| **(b)** | | | | | | |
| Multi-strategy fund | 2,431,219 | 2,456,348 | Annually | December 31, 2022 | 60 | 10% |
| Multi-strategy fund | 69,177 | 81,846 | ** | ** | ** | ** |
| Multi-strategy fund | 2,730,279 | 4,215,108 | Annually | June 30, 2023 | 45 | 0% |
| Multi-strategy fund | - | 1,967 | * | * | * | * |
| Multi-strategy fund | 3,047,245 | 2,837,151 | 25% Quarterly | March 31, 2023 | 67 | 0% |
| Multi-strategy fund | 2,217,697 | 2,195,832 | 50% semi-annually | June 30, 2023 | 60 | 25% |
| | 10,495,617 | 11,788,252 | | | | |
| **(c)** | | | | | | |
| Credit opportunities fund | 2,670,685 | 2,567,369 | 25% Quarterly | March 31, 2023 | 95 | 0% |
| Credit opportunities fund | 41,394 | 186,639 | ** | ** | ** | ** |
| Credit opportunities fund | 1,962,741 | 1,780,792 | Not eligible | N/A | N/A | N/A |
| | 4,674,820 | 4,534,800 | | | | |
| **(d)** | | | | | | |
| Growth equity | 1,597,235 | 1,409,141 | Not eligible | N/A | N/A | N/A |
| **(e)** | | | | | | |
| Infrastruction fund | 1,563,074 | 579,004 | Not eligible | N/A | N/A | N/A |
| | $ 22,335,768 | $ 23,120,058 | | | | |

*This fund is fully liquidated, thus no longer eligible for any further redemption.

**This fund has started to return liquid capital, thus only eligible for redemption of remaining amount.

(a) This category includes alternative investments that hold securities traded primarily in the U.S. equity market. The investment strategy is managed by engaging in short-sale equity transactions based on individual company fundamentals and, to a far lesser extent, by shorting broad market and sector indices.

(b) This category includes alternative investments that focus on event-driven investing which is defined as investing in securities and instruments of companies undergoing extraordinary events that affect the value of one or more securities of a company. Mergers and acquisitions, corporate restructurings and spin-offs, credit investments, and capital structure arbitrage are the primary focuses of the alternative investments in this category.

(c) This category includes alternative investments that focus on generating risk adjusted returns through a multi-disciplinary investment approach using a broad array of securities and strategies, primarily through active leveraged trading and investments in mortgage

14

**MLC Asbestos PI Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2022 and 2021**

securities, related financial instruments, and North American, European, and Asian credit markets. The funds seek to make investments with capital preservation as a primary investment objective. The investment managers seek to accomplish this strategy through investing in distressed securities, long/short securities, relative value securities and macro securities and by taking long or short positions in credit derivatives, equity derivatives, corporate and convertible bonds, loans, public equities, private equities, real estate related assets, collateralized debt obligations, and other asset-backed securities.

(d)  This alternative investment will invest primarily in growth equity funds and direct and indirect investments in the equity or other securities of public or private companies offered as co-investment opportunities by growth equity fund managers or sponsors.

(e)  This alternative investment invests in sustainable infrastructure projects and enterprises that are expected to generate returns through operating cash flows, increased asset value, and transition to markets with higher valuation multiples upon exit.

Certain alternative investments are made through limited partnerships, limited liability companies, and subscriptions. Under the terms of these arrangements, the Trust is obligated to remit additional funding periodically as capital calls are exercised by the manager. These funds have a limited existence, and such arrangements may provide for annual extensions for the purposes of disposing of portfolio positions and returning capital to investors. However, depending on market conditions, the inability to execute the fund's strategy, and other factors, a manager may extend the term of a fund beyond its original anticipated existence or may wind the fund down prematurely. As a result, the timing and amount of future capital liquidity calls expected to be exercised in any particular future year is uncertain. Unfunded commitments will be funded either by cash available in the investment portfolio or by liquidating other investments based on the Trust's assessment.

**Note 4 - Income taxes**

During the year ended December 31, 2022, the Trust made no estimated tax payments. During the year ended December 31, 2021, the Trust made estimated income tax payments totaling $480,000. At December 31, 2022, the Trust has on account with the IRS tax payments of approximately 702,000.

As of December 31, 2022 and 2021, the estimated deferred tax liability associated with unrealized gains on investments is approximately $6,000,000 and $10,000,000, respectively. As disclosed in Note 2 to the special-purpose financial statements, the Trust does not record a provision for (or benefit from) deferred taxes. Accordingly, there is no provision for deferred taxes associated with cumulative unrealized gains and losses on investments.

**Note 5 - Trustee, trust advisory committee and future claimants' representative**

The Trust Agreement sets forth the role and responsibility of the Trust Advisory Committee ("TAC") and the Future Claimants' Representative ("FCR") The members of the TAC serve in a fiduciary capacity representing all holders of present Asbestos Claims (Current Claimants). The FCR serves in a fiduciary capacity, representing the interests of the individuals who may file as Asbestos Claimants in the future, but who at this time are unknown to the Trust ("Future Asbestos Claimants"). This role, in part, is to protect rights of the Future Asbestos Claimants. The Trustee is required to consult with or obtain the consent of TAC and FCR on certain matters identified in the Trust Agreement and the TDP.

15

**MLC Asbestos PI Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2022 and 2021**

Fees and expenses of the Trustee, TAC, TAC Counsel, FCR, and FCR Counsel for the years ended December 31, 2022 and 2021 were as follows:

| | 2022 | | | |
|---|---|---|---|---|
| | Fees | Retainer | Expenses | Total |
| Trustee | $ 72,545 | $ 94,731 | $ 2,415 | $ 169,691 |
| TAC | 2,460 | - | 350 | 2,810 |
| TAC Counsel | 41,778 | - | 565 | 42,343 |
| TAC Counsel Retained Professional | 21,790 | - | - | 21,790 |
| FCR | 52,650 | - | - | 52,650 |
| FCR Counsel | 72,025 | - | - | 72,025 |
| FCR Counsel Retained Professional | 50,922 | - | - | 50,922 |
| | $ 314,170 | $ 94,731 | $ 3,330 | $ 412,231 |

| | 2021 | | | |
|---|---|---|---|---|
| | Fees | Retainer | Expenses | Total |
| Trustee | $ 44,272 | $ 87,572 | $ - | $ 131,844 |
| TAC | 1,205 | - | - | 1,205 |
| TAC Counsel | 17,335 | - | 282 | 17,617 |
| FCR | 40,500 | - | - | 40,500 |
| FCR Counsel | 40,850 | - | - | 40,850 |
| FCR Counsel Retained Professional | 40,522 | - | - | 40,522 |
| | $ 184,684 | $ 87,572 | $ 282 | $ 272,538 |

The above amounts are included in operating expenses in the special-purpose statements of changes in net assets available for payment of claims for the years ended December 31, 2022 and 2021.

**Note 6 - Contingent liabilities**

The Plan Documents (as defined in the Confirmed Plan) subject the Trust to certain reimbursement and indemnification obligations that may result in future claims against the Trust. The probability of such claims cannot be reasonably determined. Accordingly, no associated liability has been recorded in the accompanying special-purpose financial statements. Such claims, if any, are not expected to be material. The Trust has obtained insurance for purposes of supporting its obligation to indemnify the Trustee.

**MLC Asbestos PI Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2022 and 2021**

**Note 7 - Liability for Asbestos claims**

The settled claims payable at December 31, 2022 and 2021 consists of personal injury claims that were settled and approved for payment by the Trust, but unpaid as of December 31, 2022 and 2021. The ultimate number of Asbestos Personal Injury Trust Claims to be filed and the liability for all such claims are uncertain at this time. The net assets available for the payment of claims at December 31, 2022 and 2021 represents funding available for all Asbestos Personal Injury Trust Claims for which no fixed liability has yet been established. The net assets available for the payment of claims at December 31, 2022 and 2021 may or may not be sufficient to meet all future obligations of the Trust.

**Note 8 - Trust liability insurance**

The Trust purchased liability insurance requiring a premium of approximately $71,000 and $73,000 for the years ended December 31, 2022 and 2021, respectively. The current policy term is from March 3, 2022 through March 3, 2023 and was renewed through March 3, 2024. The Trust's accounting policy is to expense in the current period any amounts that will not be available to pay future Asbestos Personal Injury Trust Claims or expenses of the Trust. Accordingly, the entire premium was recorded as a deduction in net assets available for the payment of claims for each of the years ended December 31, 2022 and 2021, respectively.

**Supplementary Information**



CohnReznick LLP
cohnreznick.com

Independent Auditors Report on Supplementary Information

To the Trustee
MLC Asbestos PI Trust

We have audited the special-purpose financial statements ("Financial Statements") of the MLC Asbestos PI Trust (the Trust) as of and for the year ended December 31, 2022, and our report thereon dated April 26, 2023, which expressed an unmodified opinion on those financial statements, appears on pages one through three. Our audit was conducted for the purpose of forming an opinion on the Financial Statements as a whole. The Supplemental Schedule of Operating Expenses is presented for purposes of additional analysis and is not a required part of the basic Financial Statements. Such information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the Financial Statements. The information has been subjected to the auditing procedures applied in the audit of the Financial Statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the Financial Statements or to the Financial Statements themselves, and other additional procedures in accordance with auditing standards generally accepted in the United States of America. In our opinion, the information is fairly stated in all material respects in relation to the Financial Statements as a whole. The 2021 information was subjected to the auditing procedures applied in the 2021 audit of the basic Financial Statements by other auditors, whose report dated April 29, 2022, on such information stated that it was fairly stated in all material respects in related to the 2021 Financial Statements as a whole.

This report is intended solely for the information and use of the management of the Trust, the Trustee, the beneficiaries of the Trust and the United States Bankruptcy Court for the Southern District of New York and is not intended to be and should not be used by anyone other than these specified parties. Upon filing with the United States Bankruptcy Court for the Southern District of New York, the report is a matter of public record, which public filing does not expand the list of specified users.

*CohnReznick LLP*

Dallas, Texas
April 26, 2023

**MLC Asbestos PI Trust**

**Supplementary Schedules of Operating Expenses**
**December 31, 2022 and 2021**

| | Years Ended December 31, | |
| --- | --- | --- |
| | 2022 | 2021 |
| Investment management fees | $ 381,852 | $ 501,996 |
| Administration and reporting | 172,758 | 235,324 |
| Consulting expenses | 175,471 | 137,483 |
| Trustee fees and expenses | 169,692 | 131,844 |
| Trust liability insurance | 71,220 | 72,563 |
| General legal fees | 84,665 | 41,041 |
| Future Claimants' Representative Counsel | 72,025 | 40,850 |
| Future Claimants' Representative Counsel Retained Professional | 50,922 | 40,522 |
| Future Claimants' Representative | 52,650 | 40,500 |
| Trust Advisory Committee Counsel fees | 42,343 | 17,617 |
| Trust Advisory Committee Counsel Retained Professional | 21,790 | - |
| Office expenses | 3,152 | 4,251 |
| Trust meeting and expenses | - | 2,417 |
| Trust Advisory Committee fees and expenses | 2,810 | 1,205 |
| Total operating expenses | $ 1,301,350 | $ 1,267,613 |



**Independent Member of Nexia International**

**cohnreznick.com**