KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222
Scott Davidson
sdavidson@kslaw.com

*Attorneys for General Motors LLC and OnStar, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------X
In re                                    :    Chapter 11
                                         :
MOTORS LIQUIDATION COMPANY, et al.,      :    Case No.:  09-50026 (MG)
       f/k/a General Motors Corp., et al. :
                                         :    (Jointly Administered)
                       Debtors.          :
                                         :
-------------------------------------------------------------X
```

**MOTION BY GENERAL MOTORS LLC AND ONSTAR, LLC TO**
**ENFORCE THE BANKRUPTCY COURT'S JULY 5, 2009**
**SALE ORDER AND INJUNCTION, AND THE RULINGS IN**
**CONNECTION THEREWITH, AGAINST THE STATE OF TEXAS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**PRELIMINARY STATEMENT** ................................................................................................ 1

**BACKGROUND FACTS** ....................................................................................................... 5

    **A.**    **Sale Order and Injunction** ................................................................................. 5

    **B.**    **The November 2015 Decision/December 2015 Judgment** ................................. 7

    **C.**    **The Texas Lawsuit** ........................................................................................ 8

**REQUEST FOR RELIEF** ..................................................................................................... 12

**NOTICE** ......................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Gen. Motors Corp.*,
407 B.R. 463 (Bankr. S.D.N.Y. 2009), *aff'd in part, vacated in part, reversed in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017) ..................................5, 10

*In Matter of Motors Liquidation Co.*,
541 B.R. 104 (Bankr. S.D.N.Y. 2015) ......................................................................................4

*In re Motors Liquidation Co.*,
549 B.R. 607 (Bankr. S.D.N.Y. 2016) ......................................................................................6

*In re Motors Liquidation Co.*,
576 B.R. 313 (Bankr. S.D.N.Y. 2017), *aff'd in part, rev'd in part, In re Motors Liquidation Co.*, 590 B.R. 39 (S.D.N.Y. 2018) ......................................................4, 13

*In re Motors Liquidation Co.*,
604 B.R. 138 (Bankr. S.D.N.Y. 2019) ..............................................................................4, 13

*Matter of Motors Liquidation Co.*,
829 F.3d 135 (2d Cir. 2016) .................................................................................................10

*Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.*), Adv. Proc. No. 09-09803 (REG), 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013) ....................................4, 5

**Statutes**

Tex. Civ. Prac. & Rem. Code § 17.47(g) ......................................................................................3

ii

The State of Texas is violating this Court's Sale Order and Injunction by transforming what until recently was a consumer-protection lawsuit about data collection into a broad-based attempt to recover civil penalties based on *decades* of unrelated pre-bankruptcy conduct by General Motors Corporation. General Motors LLC ("**GM LLC**") and OnStar, LLC ("**OnStar**," and with GM LLC, collectively, the "**Movants**")[1] therefore respectfully submit this Motion:

(i)   to enforce the Sale Order and Injunction entered on July 5, 2009, which approved the sale of assets from Motors Liquidation Company (f/k/a General Motors Corporation) ("**Old GM**") to a predecessor of GM LLC,[2]

(ii)  to enforce other rulings by the Bankruptcy Court made in connection with the Sale Order and Injunction, and

(iii) to order the State of Texas ("**Texas**") to (a) withdraw *Texas's Second Amended Petition* ("**Second Amended Petition**") filed in the Texas state court,[3] (b) file a new petition which complies with the Sale Order and Injunction and the other related rulings by the Bankruptcy Court, and (c) cease any discovery efforts based on allegations that are barred by the Sale Order and Injunction as described more fully below.[4]

## PRELIMINARY STATEMENT

1.      The Texas Attorney General filed the Texas Lawsuit against Movants in August 2024 asserting claims under the Texas Deceptive Trade Practices Act (the "**DTPA**"). Until recently, the claims were based exclusively on Movants' alleged collection and sharing of data from customer vehicles post-bankruptcy, and did not contain allegations about Old GM's conduct.

---

[1]   Capitalized terms not otherwise defined in this opening paragraph and in the Preliminary Statement are defined in later sections of this Motion.

[2]   The full title of the Sale Order and Injunction is *Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief.* A copy of the Sale Order and Injunction, and the accompanying Sale Agreement, is attached hereto as **Exhibit "A."**

[3]   The Texas lawsuit is captioned *State of Texas v. General Motors LLC and OnStar, LLC* (the "**Texas Lawsuit**") and pending in the District Court of Montgomery County, Texas, 457th Judicial District ("**Texas Court**"), Cause No.: 24-08-12392.

[4]   A copy of the Second Amended Petition, with its exhibits, is attached hereto as **Exhibit "B."**

2.     On May 20, 2025, however, Texas filed an amended petition (the "**First Amended Petition**") which completely changed the case.[5]  It included dozens of paragraphs complaining about Old GM's pre-bankruptcy conduct.  On numerous occasions, it offered an introductory paragraph with a sentence to the effect that "[t]he jury must consider General Motors' history of [a category of conduct] . . . when determining the civil penalties to impose," then followed with multiple succeeding paragraphs concerning Old GM conduct, often decades in the past, without distinguishing Old GM from GM LLC.  *See* First Amended Petition, ¶¶ 148-157 (allegedly tracking Ralph Nader in the 1960s and related settlement in 1970); ¶¶ 158-162 (TARP loans and bankruptcy in 2008 and 2009); ¶¶ 168-215 (fuel tank fires from the 1970s through 1990s); ¶¶ 216-243 (ignition-switch issues dating back to 2002); *see also id.* at ¶¶ 253-54 (allegedly monopolistic and anti-consumer conduct based on court cases from 1941 and 1951, and vehicle emissions issues based on a news article in 1995).

3.     By letter dated May 30, 2025 ("**May 2025 Letter**"),[6]  Movants informed Texas of this Court's prior rulings barring specifically identified allegations, claims, and the request for civil penalties based thereon.  Movants demanded that Texas immediately address the infirmities in the First Amended Petition by withdrawing same and filing a new petition that complied with the Bankruptcy Court's Orders and rulings.  In addition, Movants demanded that Texas withdraw certain discovery requests and a deposition notice (which is already subject to a motion to quash for other reasons in the Texas Court) (collectively, the "**Discovery Documents**")[7] because they seek discovery based on the same improper allegations that violate the Sale Order and Injunction and other Bankruptcy Court rulings.

---

[5]     A copy of the First Amended Petition, without exhibits, is attached hereto as **Exhibit "C."**

[6]     A copy of the May 2025 Letter is attached hereto as **Exhibit "D."**

[7]     Copies of the Discovery Documents are attached hereto, collectively, as **Exhibit "E."**

4.     Texas agreed to file an amended petition, but ignored for multiple days Movants' requests that the Discovery Documents be withdrawn.  At 7:00 a.m. this morning (June 5, 2025), however, Texas filed a Second Amended Petition which it had not conferred about with Movants. The Second Amended Petition still violates this Court's orders by repeatedly alleging that "the jury must consider" various conduct of Old GM "when determining the civil penalties to impose" against Movants and the factors governing such penalties under Tex. Civ. Prac. & Rem. Code § 17.47(g).  *See* Second Amended Petition, ¶¶ 150, 160, 174-75, 222-23, 259, 264.[8]  The Second Amended Petition also claims in self-contradictory fashion that "[t]he assessment of penalties is only sought based on GM LLC's conduct post-closing of the bankruptcy sale" and that it is not raising successor liability claims.  *See* Second Amended Petition, ¶ 19 n.1 & ¶ 278 n.3.  But these bare assertions do not change the substance of Texas' petition, which continues to seek to impose penalties against Movants based on the conduct of Old GM that still violates the Sale Order and Injunction.  Texas has also refused to withdraw its violative Discovery Documents seeking related discovery.

5.     Since the entry of the Sale Order and Injunction, issues concerning whether plaintiffs in non-bankruptcy lawsuits can make certain allegations, assert certain claims, and seek certain damages against GM LLC have been repeatedly litigated in this Court.[9]  This Court has

---

[8]     A redline comparing, without exhibits, the Second Amended Petition with the First Amended Petition is attached hereto as **Exhibit "F."**

[9]     Paragraph 71 of the Sale Order and Injunction provides that "[t]his Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the [Sale Agreement], all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith . . . in all respects, including, but not limited to, retaining jurisdiction to . . . (d) interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the Retained Liabilities or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets."  Pursuant to the *Order and Final Decree* entered by the Bankruptcy Court on March 16, 2021 ("**Closing Order**"), this Court retained "jurisdiction as provided in the . . . Sale Order [and Injunction]." *Id.*, ¶ 2.  A copy of the Closing Order is attached hereto as **Exhibit "G."**  Accordingly, this Court continues to have exclusive jurisdiction to decide the issues raised in this Motion.

unequivocally held on multiple occasions that lawsuits must be stayed if they contain allegations, claims, and/or requests for relief barred by the Sale Order and Injunction, and can only proceed after the pleadings are brought into compliance.[10]

6.     Fundamentally, the Second Amended Petition is improper because it seeks to base, or at a minimum to enhance, Texas's request for civil penalties against Movants based on allegations concerning (i) Old GM-manufactured vehicles, and/or (ii) Old GM conduct that occurred before the 363 Sale.  Texas is prohibited from doing so by (1) the Sale Order and Injunction, which provides that Movants are not liable for Old GM conduct (*see, e.g., Trusky v. Gen. Motors LLC (In re Motors Liquidation Co*.), Adv. Proc. No. 09-09803 (REG), 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013)) and (2) the December 2015 Judgment that provides that GM LLC cannot be held liable for any violations of consumer protection statutes that took place before the 363 Sale.  *See* December 2015 Judgment, ¶ 25.  Thus, Texas is barred from relying on Old GM conduct in support of requests for civil penalties in the Texas Lawsuit.

7.     Texas' attempt to "end run" this Court's rulings should not be tolerated.  Texas was on notice of the 363 Sale and filed an objection thereto (on different grounds) in June 2009.  Texas appeared at the sale hearing in 2009 and, after reaching a settlement with Old GM, withdrew its objection.  There thus is no doubt that Texas had actual knowledge about and is bound by the Sale Order and Injunction.  *See* Sale Order and Injunction, ¶ 6 (providing that the Sale Order and Injunction and Sale Agreement are binding on "all interested parties").

---

[10]    *See, e.g., In re Motors Liquidation Co.*, 604 B.R. 138 (Bankr. S.D.N.Y. 2019) ("**July 2019 Opinion**"); *In re Motors Liquidation Co.*, 576 B.R. 313 (Bankr. S.D.N.Y. 2017) ("**August 2017 Opinion**"), *aff'd in part, rev'd in part, In re Motors Liquidation Co.*, 590 B.R. 39 (S.D.N.Y. 2018); Judgment dated December 4, 2015 [ECF No. 13563] ("**December 2015 Judgment**"); *In Matter of Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015) ("**November 2015 Decision**").

8.     Accordingly, for the reasons set forth herein, this Court should order Texas to cease

proceeding with the Texas Lawsuit until it files a new petition that fully complies with the Sale

Order and Injunction and other Bankruptcy Court rulings.

## **BACKGROUND FACTS**

### A.     **Sale Order and Injunction**

9.     On the same day it filed for bankruptcy (June 1, 2009) in the United States

Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**" or "**Court**"), Old

GM filed a motion to sell substantially all of its assets to a predecessor of GM LLC.  *See In re*

*Gen. Motors Corp.*, 407 B.R. 463, 473 (Bankr. S.D.N.Y. 2009), *aff'd in part, vacated in part,*

*reversed in part*, 829 F.3d 135 (2d Cir.), *cert. denied*, 137 S.Ct. 1813 (2017).   On June 12, 2009,

the State of Texas filed an objection ("**Texas Sale Objection**") to the sale. *See* ECF No. 712.[11]

The sale hearing took place from June 30, 2009, through July 2, 2009, and the State of Texas

(through its assistant attorney general) appeared each day.   The Texas Sale Objection was

ultimately settled and it was withdrawn on the record at the sale hearing.[12]   The Sale Order and

Injunction was entered on July 5, 2009, and the sale ("**363 Sale**") closed on July 10, 2009.

10.     The Sale Order and Injunction provides that, except for Assumed Liabilities, GM

LLC is not liable for any other claims against Old GM, including without limitation, claims based

on Old GM conduct and successor liability claims.  *See, e.g.*, Sale Order and Injunction, ¶ AA;

*Trusky*, 2013 WL 620281, at *2.   This Court has previously found that "the record in this

bankruptcy case and the prior decisions of this Court make it abundantly clear that [GM LLC] is

---

[11]   While the objection filed by the State of Texas to the sale was filed on behalf of the Texas Department of
Transportation, Motor Vehicle Division, the fact that Texas' assistant attorney general filed the objection and
appeared at the hearing demonstrates that the State of Texas was on notice of the sale proceedings.

[12]   *See* ECF No. 3962 (Transcript of Hearing on July 2, 2009, at 116:11-13) ("[The State of Texas] filed a limited
standalone objection. We've reached an agreement with the debtors, subject to entry of that agreement on the
record, we will be prepared to withdraw.").

not a successor in interest to Old GM" and that GM LLC "is a completely separate legal entity from Old GM." *In re Motors Liquidation Co.*, 549 B.R. 607, 608, 612-13 (Bankr. S.D.N.Y. 2016).

11.    The Sale Order and Injunction specifically precludes any successor liability claims against GM LLC in what has been referred to as the "free and clear" provisions. *See, e.g.*, Sale Order and Injunction, ¶ 7; *see also id.*, ¶¶ AA, 8-9, and 46-48. In addition, the Sale Order and Injunction expressly provides that GM LLC (or its affiliates, including OnStar) did not assume liabilities arising from, among other things, statements attributable to Old GM, implied warranties, or marketing materials. *See* Sale Order and Injunction, ¶ 56; *see also id*. ¶ 46; Sale Agreement, § 2.3(b)(xvi) (Retained Liabilities include "all Liabilities arising out of, related to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers.").

12.    The Sale Agreement provides that GM LLC and its affiliates assumed only three categories of liabilities for vehicles sold by Old GM, none of which is relevant here:

(a)    Product Liabilities (as defined in the Sale Agreement, as amended) related to ***post-sale*** accidents or incidents involving Old GM vehicles causing personal injury, loss of life or property damage;

(b)    Repairs provided for under the "Glove Box Warranty"—a specific ***written warranty***, of limited duration, that only covers repairs and replacement of parts and not monetary damages; and

(c)    ***Lemon Law*** claims (as defined in the Sale Agreement) essentially tied to the failure to honor the Glove Box Warranty.

Sale Agreement, § 2.3(a). All other liabilities relating to vehicles sold by Old GM were "Retained Liabilities" of Old GM. *See* Sale Agreement § 2.3(b).

13.    Paragraph 6 of the Sale Order and Injunction expressly provides that the Sale Order and Injunction "and the [Sale Agreement] shall be binding in all respects upon . . . all known and

6

unknown creditors of, and holders of equity security interests in, any Debtor, including any holders

of liens, claims, encumbrances, or other interests, including rights or claims based on any successor

or transferee liability, . . . [and] all interested parties . . . ."  Texas is thus bound by the Sale Order

and Injunction and Sale Agreement.

14.     The Sale Order and Injunction affirms the Bankruptcy Court's exclusive

jurisdiction over matters regarding the 363 Sale, including interpreting and enforcing the provision

of the Sale Order and Injunction,[13] and enjoins all actions that are contrary to the provisions of the

Sale Order and Injunction.  *See* Sale Order and Injunction, ¶¶ 46-47.

### B.     The November 2015 Decision/December 2015 Judgment

15.     In late 2015, the Bankruptcy Court made certain rulings in the November 2015

Decision and the December 2015 Judgment relating to the interpretation and enforcement of the

Sale Order and Injunction.  Pursuant to the December 2015 Judgment, the Bankruptcy Court ruled

that plaintiffs cannot (i) allege or suggest that GM LLC is the successor to Old GM (*see* December

2015 Judgment, ¶ 16), (ii) assert allegations that do not distinguish between Old GM and GM LLC,

or between Old GM-manufactured vehicles and GM LLC vehicles (*see* December 2015 Judgment,

¶ 17), or (iii) allege or suggest that GM LLC manufactured or designed an Old GM vehicle, or

performed other actions relating to an Old GM vehicle before the closing of the 363 Sale (*i.e.*, July

10, 2009) (*see* December 2015 Judgment, ¶ 18).

16.     In addition, the December 2015 Judgment explicitly rejected consumer protection

claims by governmental entities such as Texas.  Specifically, the December 2015 Judgment

provides that GM LLC cannot be held liable by any State for any violations of consumer protection

statutes that took place before the 363 Sale.  *Id.*, ¶ 25; *cf. id.* ¶ 19 (claims based on consumer

---

[13]   *See* Sale Order and Injunction, ¶ 71; Closing Order, ¶ 2.

protection statutes are not included within the definition of "Product Liabilities" and were not

assumed by GM LLC; they were retained by Old GM). Moreover, the Sale Order and Injunction

provides that neither GM LLC nor its affiliates (including OnStar) can "have any liability for any

claim that arose prior to the Closing Date[.]" Sale Order and Injunction, ¶ 46. And, as

demonstrated above, Movants cannot be held liable for Old GM conduct.

17.    Significantly, no one appealed the December 2015 Judgment with respect to these

rulings.

**C.    The Texas Lawsuit**

18.    On or about August 13, 2024, Texas filed its original petition with the Texas Court

which alleged that Movants violated the DTPA by collecting and sharing vehicle data. Until very

recently (*i.e.*, on or about May 20, 2025), however, Texas had not pled any allegations which

violated the Sale Order and Injunction. Texas had not referenced Old GM's bankruptcy filing, it

did not complain about alleged Old GM conduct, and it had not asserted that Movants were

somehow responsible for Old GM conduct or that such conduct could be used to award civil

penalties against Movants under Texas law.

19.    That all changed when Texas filed its First Amended Petition. It made numerous

allegations that (i) failed to differentiate between GM LLC and Old GM, (ii) failed to differentiate

between GM LLC conduct and Old GM conduct, and (iii) alleged or suggested that GM LLC was

responsible for Old GM conduct. *See, e.g.*, First Amended Petition, ¶¶ 18, 20, 149-156, 158-165,

168-227, 235-241, 252-254. Texas argued based on these improper allegations that any civil

penalties awarded by the Texas Court against Movants should be increased. *See* First Amended

Petition, ¶¶ 148, 158, 168, 216-17, 252-54. This blatantly violated the Sale Order and Injunction

and other Bankruptcy Court rulings, including the December 2015 Judgment. *See* Sale Order and

Injunction, ¶ AA (no successor liability); ¶ 9 (same; expressly enjoining governmental authorities

from asserting any rights or claims based on successor liability); ¶ 46 (neither GM LLC nor its affiliates "shall have any liability for any claim that arose prior to the [363 Sale], relates to the production of vehicles prior to the [363 Sale], or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the [363 Sale]"); and ¶¶ 47-48 (additional protections against successor liability); *see also* December 2015 Judgment, ¶ 6 (GM LLC is not liable for punitive damages based on anything that took place at Old GM); ¶¶ 16-17 (plaintiffs must distinguish between Old GM and GM LLC); and ¶¶ 19 & 25 (GM LLC is not liable under consumer protection statutes based on Old GM vehicles or conduct before the 363 Sale).

20.     Surprisingly, even though Texas was on notice of the 363 Sale, filed an objection thereto, appeared at the hearing on the sale and withdrew that objection at the sale hearing, the First Amended Petition also complained about the Old GM bankruptcy itself and asked that GM LLC be punished for it, suggesting it violated a "social contact with American taxpayers." *See, e.g.*, First Amended Petition, ¶ 158 ("The jury must consider Defendants history of bankruptcy and being bailed out by U.S. taxpayers only to turn around and offshore American working-class jobs when determining the amount of civil penalties to impose."); *id.*, ¶ 161 ("Taxpayers lost approximately $11.2 billion bailing out General Motors"); *id.*, ¶ 162 ("General Motors entered a social contract with American taxpayers when it accepted the bail out . . ."). As this Court clearly and expressly stated in 2009:

> GM cannot survive with its continuing losses and associated loss of liquidity, and without the governmental funding that will expire in a matter of days. And there are no options to this sale—especially any premised on the notion that the company could survive the process of negotiations and litigation that characterizes the plan confirmation process. As nobody can seriously dispute, the only alternative to an immediate sale is liquidation—a disastrous result for GM's creditors, its employees, the suppliers who depend on GM for their own existence, and the

communities in which GM operates. In the event of a liquidation, creditors now trying to increase their incremental recoveries would get nothing.

*Gen. Motors Corp.*, 407 B.R. at 474. For Texas to suggest GM LLC should be punished for Old GM's filing a bankruptcy petition and for its conduct during the bankruptcy proceeding is ludicrous—and barred by the Sale Order and Injunction.

21.    At 7:00 a.m. Central Time this morning (June 5, 2025), the State filed its Second Amended Petition. As previewed above, the Second Amended Petition does not cure the violations of the Sale Order and Injunction. Although it acknowledges the bankruptcy and the Sale Order and Injunction and denies that it seeks successor liability, *see* Second Amended Petition ¶ 19 & n.1, it retains substantially all of the First Amended Petition's violative allegations and continues to specifically demand that the jury consider Old GM's conduct in determining the civil penalties to be assessed against Movants. In other words, it continues to assert successor-liability claims. In fact, the violations are ***even more brazen*** in the Second Amended Petition, because the Second Amended Petition often expressly acknowledges that Old GM was responsible for the complained-of conduct. *See* Second Amended Petition, ¶ 150 (demanding that the jury consider "[Old GM]'s history of surveilling consumers [*i.e.*, Ralph Nader in the 1960s] . . . when determining the civil penalties to impose" against Movants); ¶ 160 (demanding that the jury consider "GM Corp.'s bankruptcy and the circumstances surrounding it being bailed out by U.S. taxpayers . . . when determining the amount of civil penalties to impose" against Movants); ¶ 174 (same as to allegedly defective fuel tanks from the 1970s and 1980s); ¶ 222-223 (same as to allegedly defective ignition switches starting in 2002);[14] ¶ 260 (same as to allegedly monopolistic and anti-consumer conduct based on court cases from 1941 and 1951).

---

[14]    Texas cites *Matter of Motors Liquidation Company*, 829 F.3d 135 (2d Cir. 2016), in an attempt to justify its inclusion of pre-and-post-363 Sale ignition-switch allegations. But Texas also attaches an Agreed Final Consent

22.    Paragraph 259 of the Second Amended Petition crystallizes the problem by alleging

that "The jury must consider GM LLC **and GM Corp's** prior bad acts when determining the

amount of civil penalties to impose" (emphasis added).

23.    These allegations constitute a successor liability claim, except in name only,

because they seek to hold Movants liable for Old GM's conduct.  This violates the free-and-clear

provisions in the Sale Order and Injunction and other Bankruptcy Court rulings in connection

therewith.  Texas has not cured those violations by including a contradictory footnote disclaiming

successor liability.  *See* Second Amended Petition, ¶ 278 n.3.  Nor was it curative for Texas to

allege that (some unidentified) GM LLC personnel previously were employed by Old GM and

therefore had knowledge of alleged past conduct that has absolutely nothing to do with the claims

asserted in the Second Amended Petition, or that GM LLC obtained Old GM's documents and

files.  *See id.* at ¶¶ 261-62.  Complaints and requests for penalties based on tracking Ralph Nader

in the 1960s and vehicle fires in the 1970s through 1990s are not complaints about how GM LLC

employees behaved post-363 Sale.  They are unquestionably an attempt to penalize Movants based

on Old GM's alleged conduct itself, *i.e.*, events from the past.

24.    Likewise, requests that the jury consider the bankruptcy and the so-called "bailout"

in determining penalties have no bearing on the knowledge or conduct of GM LLC employees;

they are merely complaints about the past.  And if receiving the debtor's documents and files were

enough to avoid the free-and-clear provisions of a sale order, section 363 of the Bankruptcy Code

would lose its force.  *See also* Sale Order and Injunction, ¶¶ AA, 7-9, 46-48 (Purchased Assets

were transferred free and clear, without successor liability).  Indeed, the Second Amended Petition

Judgment from 2017—the year after the Second Circuit decision—in which it released any such claims and agreed
not to sue based thereon, including under the DTPA.  *See* Exhibit E to the Second Amended Complaint, §§ 5.9,
8.1, 11.9.  Although Movants disagree that the Second Circuit decision somehow justifies Texas's ignition-switch
allegations here, the Agreed Final Consent Judgment independently bars such claims from the Texas Lawsuit.

incorporates all prior allegations into its causes of action and request for civil penalties "as if set forth fully [t]herein," which makes footnote 3 to paragraph 278 ring hollow.  *See* Second Amended Petition, ¶¶ 265 & 275.

**REQUEST FOR RELIEF**

25.    The Second Amended Petition improperly seeks to punish Movants for the conduct of Old GM.  Accordingly, Texas must be ordered to remove the violative allegations from its petition, directed to not seek to base its requests for civil penalties on Old GM conduct, and cease any attempt to take discovery thereon.

26.    More than fifteen years ago, this Court ordered a sale ***free and clear*** of Old GM's liabilities without any successor liability other than three irrelevant categories of Assumed Liabilities.  *See* Sale Order and Injunction, ¶¶ AA, 6-8, 46-48.  The Second Amended Petition blatantly violates these provisions by attempting to base civil penalties against Movants on alleged Old GM conduct.  The Second Amended Petition also violates the December 2015 Judgment, which expressly bars states—including Texas—from asserting claims against GM LLC for violations of consumer protection statutes that are based on Old GM-manufactured vehicles and/or Old GM conduct.  *See* December 2015 Judgment, at ¶¶ 19 & 25-27.

27.    Relatedly, the Discovery Documents are improper because they seek information based on and in furtherance of the improper allegations in the First Amended Petition.[15]

28.    Until its pleadings are appropriately corrected and the Discovery Documents withdrawn, Texas must be stayed from proceeding with the Texas Lawsuit.  *See, e.g.*, December 2015 Judgment, ¶ 16 ("complaints that contain such allegations are and remain stayed, unless and until they are amended consistent with the [November 2015] Decision and this Judgment"); *see*

---

[15]    The Discovery Documents have not been amended to account for Texas's filing of the Second Amended Petition.

*also id.* at ¶¶ 25-27 (staying consumer-protection lawsuits by various states); July 2019 Opinion, 604 B.R. at 154 ("These allegations are improper and prohibited by the December 2015 Judgment. Thus, the McCalls must amend their complaints and remove those allegations."); August 2017 Opinion, 576 B.R. at 324 ("The Plaintiff and her counsel in the Reichwaldt Action are hereby stayed and enjoined from prosecuting the Reichwaldt Action in the Georgia Federal Court pending further order of this Court.").

29.    Texas, therefore, must be directed to remove all requests for civil penalties based on Old GM conduct, remove all currently pleaded allegations about Old GM's conduct because they violate the Sale Order and Injunction, and cease any attempt to take discovery on allegations related to Old GM, its conduct, or its bankruptcy.

## NOTICE

30.    Notice of this Motion has been provided to counsel for Texas, and all entities that continue to receive electronic notice from the Court's ECF system.  Movants submit that such notice is sufficient, and no other or further notice need be provided.

31.    No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, Movants respectfully request that this Court enter an order, substantially in the form set forth in **Exhibit "H"** hereto, granting the relief sought herein and such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
   June 5, 2025         Respectfully submitted,


           */s/ Scott Davidson*
           Scott Davidson
           KING & SPALDING LLP
           1185 Avenue of the Americas
           New York, New York 10036
           Telephone: (212) 556-2100
           Facsimile: (212) 556-2222
           sdavidson@kslaw.com

           *Attorneys for General Motors LLC*
           *and OnStar, LLC*