**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § | Ch. 11 |
| | § | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | § | Case No. 1:09-BK-50026 |
| f/k/a General Motors Corp., *et al.* | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |

## <u>TEXAS'S RESPONSE TO MOVANTS' MOTION TO ENFORCE</u>

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT .................................................................................1

BACKGROUND ..................................................................................................1

ARGUMENTS AND AUTHORITIES..........................................................................5

I.   THE COURT LACKS SUBJECT MATTER JURISDICTION ...................................5

   A.   *There is No Abrogation or Waiver of Sovereign Immunity* .................................. 6

   B.   *This Court Cannot Enjoin the State of Texas* .................................................... 8

II.  THE COURT SHOULD ABSTAIN ...................................................................11

   A.   *Mandatory Abstention Divests the Court of Jurisdiction* ................................... 11

      i.    *The Younger Abstention Doctrine* ...........................................................12

      ii.   *Mandatory Statutory Abstention* ...........................................................14

   B.   *This Case Warrants Permissive Abstention*.....................................................18

      i.    *Permissive Statutory Abstention* .............................................................18

      ii.   *Burford Abstention* ...............................................................................21

III. TEXAS IS NOT ASSERTING SUCCESSOR LIABILITY CLAIMS AGAINST MOVANTS .... 22

   A.   *Texas's DTPA Claims Against Movants are Not Successor Liability Claims*.....................23

   B.   *Texas's Statutory Methodology for Determining Civil Penalties is Not a "Claim"* ........... 24

IV.  TEXAS'S CLAIMS ARE NOT BARRED BY THE 2009 SALE ORDER ................................27

   A.   *Texas's Claims are Independent*....................................................................27

   B.   *The Court's Prior Rulings Do Not Bar Texas's Claims*..........................................29

   C.   *The 2009 Sale Order Does Not Bar Texas's Allegations Relating to Old GM* ...................31

      I.    *Texas Seeks to Use Old GM as a Comparator to Movants* ...............................31

*II.    Scienter and Knowledge of Old GM's History of Prior Violations Can be Imputed on Movants From Old GM* ...........................................................................................32

*III.    Justice Requires the Jury Considering Old GM's History* ...........................................34

CONCLUSION ...................................................................................................................35

CERTIFICATE OF SERVICE ..........................................................................................36

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Ali v. Mukasey*,
529 F.3d 478 (2d Cir.2008)..................................................................................29

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*,
398 U.S. 281 (1970) ...................................................................................... 8, 11

*Austin v. United States*,
509 U.S. 602 (1993)............................................................................................29

*Baker v. Simpson*,
613 F.3d 346 (2d Cir. 2010)..............................................................................14

*Bologna v. Allstate Ins. Co.*,
138 F. Supp. 2d 310 (E.D.N.Y. 2001) ...............................................................13

*Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644 (2020)...........................................................................................17

*Bronx Defs. v. Office of Court Admin.*,
475 F. Supp. 3d 278 (S.D.N.Y. 2020) ...............................................................11

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943).................................................................................1, 21, 22

*In re Cabrini Med. Ctr.*,
489 B.R. 7 (S.D.N.Y. 2012).................................................................................8

*In re Casual Male Corp.*,
317 B.R. 472 (Bankr.S.D.N.Y.2004) ................................................................16

*Celebrity Cruises Inc. v. Essef Corp.*,
434 F. Supp. 2d 169 (S.D.N.Y. 2006) ...............................................................31

*In re Charter Oak Assocs.*,
361 F.3d 760 (2d Cir.2004) .................................................................................6

*In re Chateaugay Corp.*,
53 F.3d 478 (2d Cir. 1995) ................................................................................ 24

*In re Chateaugay Corp.*,
944 F.2d 997 (2d Cir. 1991)...............................................................................26

*Chick Kam Choo v. Exxon Corp.*,
486 U.S. 140 (1988) ........................................................................................10

*Chittenden v. Connors*,
460 F. Supp. 2d 463 (S.D.N.Y. 2006) .......................................................... 11

*City of Syracuse v. Loomis Armored US, LLC*,
900 F.Supp.2d 274 (N.D.N.Y. 2012), *aff'd,* 943 F.3d 125 (2d Cir. 2019) ..............................23

*Crawley v. Hamilton County Comm'rs*,
744 F.2d 28 (6th Cir.1984)............................................................................12

*In re Crysen/Montenay Energy Co.*,
226 F.3d 160 (2d Cir. 2000)............................................................................4

*Delaware Tr. Co. v. Wilmington Tr., N.A.*,
534 B.R. 500 (S.D.N.Y. 2015).......................................................................19

*Diamond "D" Constr. Corp. v. McGowan*,
282 F.3d 191 (2d Cir. 2002) .........................................................12, 13, 14

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
747 F.3d 145 (2d Cir. 2014)......................................................................... 22

*In re Ebury St. Capital, LLC*,
664 B.R. 639 (Bankr. S.D.N.Y. 2024) .........................................................14

*In re Eight-115 Associates, LLC*,
626 B.R. 383 (Bankr. S.D.N.Y. 2021) .................................................. 14, 15

*In re Fairchild Aircraft Corp.*,
184 B.R. 910 (Bankr. W.D. Tex. 1995), *vacated on other grounds*, 220 B.R. 909
(Bankr. W.D. Tex. 1998)................................................................................23

*In re Fusion Connect, Inc.*,
634 B.R. 22 (S.D.N.Y. 2021).........................................................................30

*In re Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MD-2543, 2017 WL 5195234 (S.D.N.Y. Nov. 9, 2017) ................... 15, 16, 20

*In re Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MD-2543 (JMF), 2018 WL 2899642 (S.D.N.Y. June 11, 2018) ......16, 19, 21

*State of Texas v. General Motors LLC, and OnStar, LLC*,
Cause No. 24-08-12392............................................................................3

*Global Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir.2006) ........................................................................33

*In re Go W. Entm't, Inc.*,
    387 B.R. 435 (Bankr. S.D.N.Y. 2008) .......................................................12

*Tex. v. Google LLC*,
    2025 WL 1713256 (E.D. Tex. June 18, 2025)...........................................25

*In re Green*,
    Civil Action No. 1-18-41652-ESS, 2020 WL 3412679 (Bankr. E.D.N.Y. June
    18, 2020) ....................................................................................................12

*Gristina v. Merchan*,
    131 F.4th 82 (2d Cir. 2025) .......................................................................13

*Gunn v. Minton*,
    568 U.S. 251 (2013) .....................................................................................5

*Hachamovitch v. DeBuono*,
    159 F.3d 687 (2d Cir.1998) ........................................................................21

*Handberry v. Thompson*,
    446 F.3d 335 (2d Cir. 2006) .......................................................................13

*In re Hellas Telecommunications (Luxembourg) II SCA*,
    535 B.R. 543 (Bankr. S.D.N.Y. 2015) .......................................................18

*In re John Renton Young, Ltd.*,
    87 B.R. 635 (Bankr. D. Nev. 1988) ..............................................................8

*Johnson v. City of New York*,
    593 F. Supp. 3d 58 (S.D.N.Y. 2022) ..........................................................25

*Joremi Enters., Inc. v. Hershkowitz*,
    396 B.R. 885 (Bankr. S.D.N.Y. 2008) .......................................................15

*Kaplan v. Reed Smith LLP*,
    919 F.3d 154 (2d Cir. 2019) .........................................................................8

*Kimel v. Fla. Bd. of Regents*,
    528 U.S. 62 (2000)........................................................................................6

*Kirschenbaum v. U.S. Dep't of Labor (In re Robert Plan Corp.)*,
    777 F.3d 594 (2d Cir. 2015) .......................................................................15

*Kirschner v. Klemons*,
    225 F.3d 227 (2d Cir.2000) ................................................................. 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................5

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir.1991) ................................................................ 33

*Tenn. v. Lane*,
    541 U.S. 509 (2004) ............................................................................6

*Lapides v. Bd. of Regents*,
    535 U.S. 613 (2002) ............................................................................6

*Lee v. Edwards*,
    101 F.3d 805 (2d Cir. 1996) ..............................................................25

*Lemelle v. Universal Mfg. Corp.*,
    18 F.3d 1268 (5th Cir. 1994) .............................................................26

*Liberty Mut. Ins. Co. v. Hurlbut*,
    585 F.3d 639 (2d Cir. 2009) ..............................................................21

*Lightfoot v. Cendant Mortg. Corp.*,
    580 U.S. 82 (2017) ..............................................................................5

*Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*,
    487 B.R. 158 (S.D.N.Y. 2013) ..................................................... 16, 19

*Mandeville v. Canterbury*,
    318 U.S. 47 (1943) (per curiam) .........................................................9

*Mekeel v. U.S. Bank Nat. Ass'n*,
    355 S.W.3d 349 (Tex. App. – El Paso 2011) ......................................4

*In re Millennium Lab Holdings II, LLC*,
    543 B.R. 703 (Bankr. D. Del. 2016) ..................................................15

*Morrison v. Nat'l Austl. Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) ..................6

*In re Mosdos Chofetz Chaim Inc.*,
    No. 22-33, 2023 WL 105715 (2d Cir. Jan. 5, 2023) ..........................14

*In re Motors Liquidation*,
    568 B.R. 217 (Bankr. S.D.N.Y. 2017) ........................................23, 27

*In re Motors Liquidation Co.*,
   2015 WL 11070293 (Bankr. S.D.N.Y. Dec. 4, 2015) .................................................. 24, 31, 32

*In re Motors Liquidation Co.*,
   428 B.R. 43 (S.D.N.Y. 2010) ............................................................................................... 16

*In re Motors Liquidation Co.*,
   457 B.R. 276 (Bankr. S.D.N.Y. 2011) ................................................................................. 23

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015), *aff'd, Elliot*, 829 F.3d ........................................... 23

*In re Motors Liquidation Co.*,
   541 B.R. 104 (Bankr. S.D.N.Y. 2015), *vacated and remanded*, 590 B.R. 39
   (S.D.N.Y. 2018) ................................................................................................................... 34

*In re Motors Liquidation Co.*,
   571 B.R. 565 (Bankr. S.D.N.Y. 2017), *aff'd in part, vacated in part*, 590 B.R. 39
   (S.D.N.Y. 2018), *aff'd*, 943 F.3d 125 (2d Cir. 2019) .......................................................... 29

*In re Motors Liquidation Co.*,
   585 B.R. 708 (Bankr. S.D.N.Y. 2018) ........................................................................... 27, 28

*In re Motors Liquidation Co.*,
   590 B.R. 39 (S.D.N.Y. 2018) .......................................................................................... 23, 26

*In Matter of Motors Liquidation Co.*,
   829 F.3d 135 (2d Cir. 2016) ......................................................................................... *passim*

*In re Murphy*,
   282 F.3d 868 (5th Cir. 2002) .............................................................................................. 30

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.*,
   351 F.3d 86 (2d Cir.2003) ...................................................................................................... 9

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
   491 U.S. 350 (1989) ............................................................................................................. 13

*E.E.O.C. v. Nichols Gas & Oil, Inc.*,
   688 F.Supp.2d 193 (W.D.N.Y. 2010) ................................................................................. 29

*Northern Ins. Co. of N.Y. v. Chatham County*,
   Ga., 547 U.S. 189 (2006) ....................................................................................................... 6

*In re Old Carco LLC*,
   636 B.R. 347 (Bankr. S.D.N.Y. 2022) ........................................................................... 10, 23

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
671 F.3d 261 (2d Cir. 2012) .................................................................. 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
638 F. Supp. 3d 227 (E.D.N.Y. 2022) .................................................... 31

*Pennsylvania Dep't of Pub. Welfare v. Davenport*,
495 U.S. 552 (1990) ......................................................................... 24, 25

*Pension Ben. Guar. Corp. v. Oneida Ltd.*,
562 F.3d 154 (2d Cir. 2009) .................................................................. 24

*In re Peters*,
642 F.3d 381 (2d Cir. 2011) (per curiam) ......................................... 16, 29

*In re Petrie Retail, Inc.*,
304 F.3d 223 (2d Cir. 2002) .................................................................. 17

*Pettaway v. Nat'l Recovery Sols., LLC*,
955 F.3d 299 (2d Cir. 2020) .................................................................... 4

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*,
554 U.S. 33 (2008) ................................................................................. 2

*Planned Parenthood of Dutchess–Ulster, Inc., v. Steinhaus*,
60 F.3d 122 (2d Cir.1995) ..................................................................... 11

*Railroad Commission of Texas v. Pullman Co.*,
312 U.S. 496 (1941) ............................................................................. 13

*In re Red River Talc, LLC*,
2025 Bankr. LEXIS 863 (Bankr. S.D. Tex. Mar. 31, 2025) ...................... 34

*In re Residential Capital, LLC*,
488 B.R. 565 (Bankr. S.D.N.Y. 2013) .................................................... 11

*In re S.G. Phillips Constructors, Inc.*,
45 F.3d 702 (2d Cir. 1995) .................................................................... 17

*Schlagler v. Phillips*,
166 F.3d 439 (2d Cir. 1999) .................................................................. 13

*United States v. Schurkman*,
728 F.3d 129 (2d Cir. 2013) .................................................................. 10

*Scott v. AIG Prop. Cas. Co.*,
2017 WL 1380607 (S.D.N.Y. Apr. 17, 2017) ......................................... 15

*Sec. & Exch. Comm'n v. Collector's Coffee, Inc.*,
    No. 19 Civ. 4355, 2025 WL 752221 (S.D.N.Y. Mar. 10, 2025) ................................................. 30

*In re September 11 Litig.*,
    802 F.3d 314 (2d Cir. 2015) ...................................................................................... 31

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011) .......................................................................................... 10, 11

*Spargo v. New York State Comm'n on Judicial Conduct*,
    351 F.3d 65 (2d Cir. 2003) ...................................................................................... 12, 14

*Speedfit LLC v. Woodway USA, Inc.*,
    No. 13-CV-1276, 2019 WL 1436306 (E.D.N.Y. Mar. 29, 2019) ................................................. 31

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013) .......................................................................................... 12

*Staehr v. Hartford Fin. Services Group, Inc.*,
    547 F.3d 406 (2d Cir. 2008) .................................................................................. 33

*In re Teligent, Inc.*,
    417 B.R. 197 (Bankr. S.D.N.Y. 2009) ........................................................................... 9

*In re Texaco, Inc.*,
    668 B.R. 1 (Bankr. S.D.N.Y. 2025) ............................................................................ 21

*Thompson v. Magnolia Petroleum Co.*,
    309 U.S. 478 (1940) .......................................................................................... 18

*Torres v. DeMatteo Salvage Co., Inc.*,
    34 F. Supp. 3d 286 (E.D.N.Y. 2014) ........................................................................... 12

*In re Tronox*,
    603 B.R. 712 (Bankr. S.D.N.Y. 2019), *subsequently aff'd sub nom. In re Tronox
    Inc.*, No. 20-3949-BK, 2022 WL 16753119 (2d Cir. Nov. 8, 2022) ........................................... 19

*Trump v. CASA, Inc.*,
    No. 24A884, 2025 WL 17720091 (U.S. June 27, 2025) ......................................................... 17

*Tull v. United States*,
    481 U.S. 412 (1987) .......................................................................................... 25, 26

*United States (Internal Revenue Serv.) v. Ries*,
    765 F. Supp. 3d 564 (N.D. Tex. 2025) .......................................................................... 8

*Weber v. United States*,
    484 F.3d 154 (2d Cir. 2007) ................................................................ 16

*In re WorldCom, Inc.*,
    546 F.3d 211 (2d Cir. 2008) ............................................................... 25

*Wyly v. Weiss*,
    697 F.3d 131 (2d Cir.2012) ............................................................... 10

*Younger v. Harris*,
    401 U.S. 37 (1971) ..................................................................... *passim*

**Statutes**

28 U.S.C.A. § 1334(d) ........................................................................ 11

11 U.S.C. § 101(2) ........................................................................... 22

11 U.S.C. § 101(5)(A) ....................................................................... 22

11 U.S.C. § 105(a) ............................................................................ 9

11 U.S.C. § 106(a)(1) ...................................................................... 7, 9

11 U.S.C. § 106(b) ............................................................................ 7

11 U.S.C. § 362(b)(4) ....................................................................... 30

11 U.S.C. § 363 ........................................................................ *passim*

11 U.S.C. § 363(f) ........................................................................... 22

11 U.S.C. § 501 ............................................................................. 26

11 U.S.C. § 523(a)(7) .................................................................. 29, 30

28 U.S.C. §§ 157 and 1334 ............................................................... 6, 9

28 U.S.C. § 157(b)(2) ....................................................................... 16

28 U.S.C. § 157(b)(2)(N) .............................................................. 16, 17

28 U.S.C. § 1334 ...................................................................... *passim*

28 U.S.C. § 1334 (6) ........................................................................ 18

28 U.S.C. § 1334(c)(1) ............................................................. 1, 18, 22

28 U.S.C. § 1334(c)(2) ............................................................................................ 1, 14

Anti-Injunction Act, 28 U.S.C. § 2283 ....................................................................6, 8

Tex. Bus. & Com. Code § 17.46(a) ...........................................................................25

Tex. Bus. & Com. Code § 17.47(a) ...........................................................................30

Tex. Bus. & Com. Code § 17.47(c) ...............................................................3, 25, 29

Tex. Bus. & Com. Code § 17.47(g) .............................................................................4

Tex. Bus. & Com. Code § 17.47(g)(1)-(2), (5) ........................................................33

Tex. Bus. & Com. Code § 17.47(g)(2), (4) ...............................................................32

Tex. Bus. & Com. Code § 17.47(g)(3) .......................................................................32

Tex. Bus. & Com. Code § 17.47(g)(6) ................................................................34, 35

**Other Authorities**

Seventh Amendment ...................................................................................................25

Eleventh Amendment ...................................................................................................6

Black's Law Dictionary (5th ed. 1979) ......................................................................17

Black's Law Dictionary (12th ed. 2024) ....................................................................17

James Woodrick, *The Gonzales Cannon: A Symbol of the Texas Revolution* .......................7

Fed. R. Civ. P. 12(b)(1) ...........................................................................................5, 7

Tex. R. Civ. P. 65 ........................................................................................................4

17A Wright & Miller, Federal Practice & Procedure § 4225 (3d ed.)...............................9

## SUMMARY OF ARGUMENT

The State of Texas comes before this Court clothed in sovereign immunity, engaged in ongoing state proceedings warranting abstention, and asserting claims wholly independent of federal bankruptcy law and any prior bankruptcy proceedings.

*First*, this Court lacks subject matter jurisdiction over Texas under the Eleventh Amendment's sovereign immunity doctrine. Moreover, the Court cannot grant the injunctive relief sought because Movants fail to satisfy any exception to the Anti-Injunction Act's prohibition on federal interference with ongoing state court proceedings.

*Second*, abstention is both mandatory and appropriate on permissive grounds. Mandatory abstention applies under *Younger v. Harris*, 401 U.S. 37, 43–45 (1971), and 28 U.S.C. § 1334(c)(2), as Texas satisfies all required elements and Movants cannot demonstrate any applicable exception. Alternatively, the Court should exercise permissive abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and 28 U.S.C. § 1334(c)(1), where the balance of factors strongly favors allowing the state proceedings to continue.

*Third*, Texas's Second Amended Petition violates neither bankruptcy law, prior court orders, nor the 2009 Sale Order, as it does not seek to hold Movants liable for Old GM's conduct but rather for their own independent violations of state law.

This Court should deny Movants' Motion to Enforce so that Texas can promptly resume its state court proceedings and bring Movants to justice by holding them accountable for their violations of state consumer protection laws.

## BACKGROUND

Between 2007 and 2008, General Motors Corp. (Old GM) experienced over $70 billion in

net losses. *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 144 (2d Cir. 2016) (hereafter *Motors Liquidation*). Despite the prospect that Old GM might collapse, Congress chose not to bail the company out. *Id.* President George W. Bush disagreed and, on December 19, 2008, announced "the executive branch would provide emergency loans to help automakers stave off bankruptcy while they develop plans for viability." *Id.* (internal quotations omitted). Old GM received $13.4 billion in treasury loans on the condition that it submit a business plan "to the President." *Id.* If the President found the business plan unsatisfactory then the $13.4 billion would be due in 30 days. *Id.* On March 30, 2009, President Barak Obama announced that Old GM's business plan was not viable, but that the treasury would nevertheless provide the company with another $6 billion loan and give it another 60 days to develop a viable business plan. *Id.* Despite the taxpayer assistance, Old GM experienced $5.9 billion in net losses in the first quarter of 2009. *Motors Liquidation* at 145.

On June 1, 2009, Old GM petitioned for Ch. 11 bankruptcy protection and sought permission to conduct a quick sell pursuant to 11 U.S.C. § 363. App'x 1 (Ex. A—Old GM's Bankruptcy Filing). A § 363 bankruptcy sale can occur within a matter of weeks and, instead of the debtor simply reorganizing under Ch. 11, the debtor "sells its primary assets to a successor corporation, which immediately takes over the business." *Id.* (citing *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 37 n. 2 (2008)).

On July 5, 2009, this Court approved the § 363 sale (the 2009 Sale Order). App'x 39 (Ex. C—Movants' § 363 Sale Order). The 2009 Sale Order transferred substantially all of Old GM's business to New GM (Movants), a company that was, at the time, majority owned by the U.S. Treasury. *Motors Liquidation* at 147. Aside from a few enumerated liabilities, the 2009 Sale Order

2

"provided that New GM would acquire Old GM assets 'free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability." *Id*. New GM assumed the name GM and continues to operate the automobile manufacturing business. *Id*. Old GM retained its liabilities and debts, renamed itself "Motors Liquidation Company," and liquidated. *Id*. Old GM's bankruptcy closed on March 16, 2021. App'x 223 (Ex. D—Old GM Bankruptcy Closing Order); Dkt. 14793.

Beginning in 2011, New GM initiated a mass surveillance program wherein it secretly collected real-time geolocation data, driving behavior, and biometric information about consumers from devices it installed in New GM manufactured vehicles, including from internal vehicle cameras. App'x 232-69 (Ex. E—Texas's Second Amended Petition). New GM sold the data collected about consumers, without their consent or knowledge, to third parties, including data brokers who then sold the information to fourth party insurance companies for, *inter alia*, marketing, underwriting, and in the determination of premiums. *Id*.

On August 13, 2024, Texas filed suit in state court against Movants alleging the mass surveillance program violated the Deceptive Trade Practices Act (DTPA) and sought restitution, civil penalties, and injunctive relief. *See* Plaintiff's Original Petition, *State of Texas v. General Motors LLC, and OnStar, LLC*, Cause No. 24-08-12392, In the 457th District Court, Montgomery County, Texas.

The DTPA provides that Texas "may request, and the trier of fact may award, a civil penalty to be paid to the state in an amount of … not more than $10,000 per violation." Tex. Bus. & Com. Code § 17.47(c). "In determining the amount of" civil penalties to impose for each violation, "the trier of fact shall consider: (1) the seriousness of the violation, including the nature,

circumstances, extent, and gravity of any prohibited act or practice; (2) the history of previous violations; (3) the amount necessary to deter future violations; (4) the economic effect on the person against whom the penalty is to be assessed; (5) knowledge of the illegality of the act or practice; and (6) any other matter that justice may require." Tex. Bus. & Com. Code § 17.47(g) (hereafter "the G-Factors").

On June 5, 2025, Texas filed a Second Amended Petition adding additional G-Factor allegations the jury must consider when "determining the amount" of civil penalties to impose.[1] *See* App'x 270-90. The G-Factor allegations relating to Old GM largely consists of undisputed information the state court can take judicial notice of, including judgments, opinions, consent decrees, and settlements. *Id.* Texas contends that this G-Factor evidence *must* be considered by the jury for at least three independent grounds: (1) Old GM is a comparator that the jury can use when calculating the amount necessary to deter future misconduct by automobile manufacturers like New GM; (2) knowledge of Old GM's history of prior violations can be imputed on New GM because it assumed possession of Old GM's records (and the prior violations alleged are public record); and (3) justice requires that the jury consider all prior mistreatment of consumers by the manufacturers of GM vehicles.[2] *See id.*

On June 5, 2025, Movants filed a Motion to Enforce (Motion) contending that Texas is violating the 2009 Sale Order by alleging, and conducting discovery relating to, G-Factor evidence

---

[1]    In federal court, "an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000). The same is true under Texas law. Tex. R. Civ. P. 65; *see also Mekeel v. U.S. Bank Nat. Ass'n*, 355 S.W.3d 349, 354 (Tex. App. – El Paso 2011).

[2]    To redress Movants professed confusion, Texas agrees to withdraw footnote 3 in Texas's Second Amended Petition. App'x 293.

involving Old GM. Dkt. 14826. Movants ask that this Court enjoin Texas to amend its pleadings

to withdraw allegations regarding the G-Factors, enjoin Texas from engaging in any discovery

seeking information about Old GM, and prohibit Texas from presenting to the jury *statutorily

mandated* information about Old GM. Dkt. 14826-1 at 12-13.

On June 20, 2025, Movants filed an Answer to Texas's Second Amended Petition asserting

17 affirmative defenses, including the same arguments they raised in this Court. App'x 446-51 (Ex.

F—Movants' Answer).

## ARGUMENTS AND AUTHORITIES

This Court should deny the Motion because it lacks subject matter jurisdiction where there

is no abrogation or waiver of sovereign immunity and no exception to the Anti-Injunction Act.

Even if this Court has jurisdiction, it should still abstain on either mandatory or permissive grounds

from enjoining an ongoing state proceeding involving an important state interest. Finally, should

this Court reach the merits of the Motion, the Court should deny the request because Texas does

not seek to hold Movants **liable** for the conduct of Old GM—Texas only seeks to hold Movants

**liable** for their own conduct occurring after approval of the 2009 Sale Order. App'x 232-69.

## I.    The Court Lacks Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256,

(2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), and may not

preside over cases absent subject-matter jurisdiction, *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S.

82, 83 (2017) ("[A] court's subject-matter jurisdiction defines its power to hear cases.").

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is

properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district

court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010).

This Court lacks jurisdiction to grant the Motion because Texas has sovereign immunity from suit, U.S. CONST. amend. XI, there has been no clear waiver of immunity or a valid congressional abrogation of sovereign immunity, and the Anti-Injunction Act, 28 U.S.C. § 2283, prohibits federal courts from enjoining ongoing state court proceedings.

A.    There is No Abrogation or Waiver of Sovereign Immunity

The Eleventh Amendment prohibits the "Judicial power of the United States" from extending to "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. This jurisdictional bar also immunizes a state entity that is an "arm of the State," *see Northern Ins. Co. of N.Y. v. Chatham County*, Ga., 547 U.S. 189 (2006). State sovereign immunity is not absolute. By statute Congress may abrogate sovereign immunity provided that its intention to do so is "unequivocally expressed" in the statutory language and the legislation is enacted "pursuant to a valid grant of constitutional authority." *Tenn. v. Lane*, 541 U.S. 509, 517 (2004); *Kimel v. Fla. Bd. of Regent*s, 528 U.S. 62, 73 (2000). States may also waive sovereign immunity by, for example, removing a case from state to federal court. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 618–20 (2002); *In re Charter Oak Assocs.*, 361 F.3d 760, 767–70 (2d Cir.2004).

Movants cannot show abrogation or waiver of sovereign immunity. Movants contend that the Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. Dk. 14826-1 at ¶ 14; App'x 40 ("This Court has jurisdiction over the Motion, the MPA, and the 363 Transaction pursuant to 28 U.S.C. §§ 157 and 1334."). But neither §§ 157 nor 1334 are among the list of enumerated sections in the

Bankruptcy Code for which Congress abrogated sovereign immunity. 11 U.S.C. § 106(a)(1). And, while the Texas Department of Motor Vehicles—a governmental unit, not the State of Texas—objected to the § 363 sale 15 years ago, App'x 25 (Ex. B—TX DMV Objection to § 363 Sale), this did not waive sovereign immunity, *see* 11 U.S.C. § 106(b) ("A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose."); Dkt. 712. Texas's DTPA claims in the ongoing state court proceedings are unrelated to the objections or proof of claims filed by the Texas Department of Motor Vehicles. *Compare* App'x 35 ("GM's mandatory modifications of its Dealer Agreement unquestionably violate Texas law."), *with* App'x 228 ("Defendants General Motors LLC and OnStar LLC engaged in false, deceptive, and misleading business practices in the collection and use of millions of Texas consumers' data."). To the extent there was a waiver of jurisdiction relating to those claims, it is a waiver only as to the Texas Department of Motor Vehicles and it's claims against Old GM. Texas did not, does not, and will not consent. *See* James Woodrick, *The Gonzales Cannon: A Symbol of the Texas Revolution*, Handbook of Texas (July 1, 2024) (recounting the history of the phrase "Come and Take It"), https://tinyurl.com/26x6d3dy. Congress has not abrogated Texas's entitlement to sovereign immunity and Texas has not clearly waived its entitlement to sovereign immunity; consequently, this Court must dismiss Movant's Motion to Enforce pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction.

Even if there were abrogation or a clear waiver of sovereign immunity (and there is not), this Court still lacks jurisdiction to grant the requested relief because Movants meet none of the

exceptions to the Anti-Injunction Act.

    B.    <u>This Court Cannot Enjoin the State of Texas</u>

The Anti–Injunction Act permits a federal court to enjoin a state court proceeding only where "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283; *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 159 (2d Cir. 2019). When interpreting the Anti–Injunction Act, the Supreme Court has directed that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970). Movants have not and cannot meet any of the exceptions to the Anti-Injunction Act.

*First*, Congress has not expressly authorized this Court to grant the requested injunction. The Bankruptcy Code does not supersede the Anti-Injunction Act and Congress did not include "bankruptcy proceedings" among the Anti-Injunction Act exceptions. *See United States (Internal Revenue Serv.) v. Ries*, 765 F. Supp. 3d 564, 572 (N.D. Tex. 2025) (collecting cases); *see also In re John Renton Young, Ltd.*, 87 B.R. 635, 638 (Bankr. D. Nev. 1988) (observing that "the cases which have held that the Anti-Injunction Act did not bar relief by the bankruptcy court have either been reversed or have relied upon cases which have been reversed"). Even assuming, *arguendo*, that Congress intended the Bankruptcy Code to supersede the Anti-Injunction Act, Movants cannot identify a specific provision within the Bankruptcy Code authorizing this Court to enjoin Texas in the ongoing state court proceedings. *See In re Cabrini Med. Ctr.*, 489 B.R. 7, 19–20 (S.D.N.Y. 2012) ("Outside of bankruptcy, a federal court may enter an injunction to stay proceedings in a state court only when an exception to the Anti–Injunction Act is met ... Within bankruptcy, the

automatic stay—an express exception to the Anti–Injunction Act—operates as a permanent injunction staying state court proceedings within its scope."). This Court has previously held that the general powers afforded in 11 U.S.C. § 105(a) are not a standalone exception to the Anti-Injunction Act, *In re Teligent, Inc.*, 417 B.R. 197, 213 (Bankr. S.D.N.Y. 2009) (citing *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir.2003)), *aff'd sub nom. In re Telignet Services, Inc.*, No. 09 CIV. 09674 (PKC), 2010 WL 2034509 (S.D.N.Y. May 13, 2010), *aff'd sub nom. In re Teligent, Inc.*, 640 F.3d 53 (2d Cir. 2011), and 11 U.S.C. § 105(a) cannot be read in combination with the specific authority relied on by Movants in 28 U.S.C. §§ 157 and 1334 because, as discussed *supra*, Congress did not abrogate sovereign immunity for claims brought under these sections, 11 U.S.C. § 106(a)(1). Thus, the injunctive relief sought does not fall within an exception to the Anti-Injunction Act because it is not expressly authorized by Congress.

*Second*, Movants cannot show that the "in aid of jurisdiction" exception applies. The Supreme Court has held that the "in aid of jurisdiction" exception only applies when (1) both the federal and state suits constitute *in rem* or *quasi in rem* proceedings and (2) the federal court was the first to take possession of the *res* (the property under dispute in the federal and state actions). *See Mandeville v. Canterbury*, 318 U.S. 47, 48–49 (1943) (per curiam). Unlike this *in rem* bankruptcy proceeding involving the estate of Old GM, Texas's DTPA suit against Movants is an *in personam* proceeding. *See* 17A Wright & Miller, Federal Practice & Procedure § 4225 (3d ed.) (explaining that the general "in aid of jurisdiction" rule is that "an injunction cannot issue to restrain a state action *in personam* involving the same subject matter from going on at the same time."). Even if Texas's DTPA suit were an *in rem* proceeding (and it is not), it still would not meet the "in aid of jurisdiction" exception because it does not involve the same *res* as the bankruptcy proceeding

(Texas does not seek to impose liability on Movants for the pre-bankruptcy conduct of Old GM).
*See* App'x 232-69. Finally, Movants' reliance on the "exclusive jurisdiction" language in the 2009
Sale Order, App'x 86 at ¶ 71, and Closing Order, App'x 224 at ¶ 2, is misplaced. It is well-settled
that the mere presence of "exclusive jurisdiction over enforcement" language in an Order does
not satisfy the "in aid of jurisdiction" exception to the Anti-Injunction Act. *See Wyly v. Weiss*, 697
F.3d 131, 137-40 (2d Cir.2012); *see also In re Old Carco LLC*, 636 B.R. 347, 356 n.3 (Bankr. S.D.N.Y.
2022) (holding that the 2009 Sale Order in the Chrysler bankruptcy "purports to provide the
Bankruptcy Court with exclusive jurisdiction to interpret and enforce the sale order. But a court
order can neither confer jurisdiction on a court that is not provided by statute, nor can it strip
another court of jurisdiction provided by applicable law."). As the Second Circuit has correctly
reasoned, "the [mere] *possibility* that a potential judgment in a subsequent state court suit might
conflict with a prior federal judgment … is not a basis to enjoin the state court suit." *United States
v. Schurkman*, 728 F.3d 129, 138 (2d Cir. 2013) (emphasis added). Movants have not and cannot,
therefore, meet the "in aid of jurisdiction" exception to the Anti-Injunction Act.

    *Third*, the "protect or effectuate its judgments" exception does not apply. This exception,
also known as the "relitigation exception" is intended to prevent state litigation of a claim or issue
"that previously was presented to and decided by the federal court." *Smith v. Bayer Corp.*, 564
U.S. 299, 306–07 (2011) (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988)). The
Supreme Court has counseled that this exception must be *strictly* and *narrowly* construed because
courts do not "get to dictate to other courts the preclusion consequences of its own judgment …
deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the second
court." *Id*. at 307. The Supreme Court has warned that "issuing an injunction under the

relitigation exception is resorting to heavy artillery" and "for that reason every benefit of the doubt goes toward the state court … [and] an injunction can issue only if preclusion is clear beyond peradventure." *Id.* (citing *Atlantic Coast Line*, 398 U.S. at 287). Movants cannot identify any claims in Texas's DTPA suit that seek to relitigate an issue that was previously decided by this Court in the bankruptcy proceeding—much less an issue that is so clearly decided as to warrant the "heavy artillery" of a federal court enjoining the State of Texas from enforcing its consumer protection laws. Movants, consequently, cannot meet the "relitigation exception" to the Anti-Injunction Act.

This Court lacks subject matter jurisdiction because Texas, as a sovereign, is immune from suit and because the Court cannot grant the relief sought where Movants do not meet any of the exceptions to the Anti-Injunction Act. Nonetheless, even if this Court found that it had jurisdiction, it should still abstain from enjoining Texas from enforcing its state laws.

## II.    The Court Should Abstain

"Abstention is a narrow exception to the generally broad duty on the part of federal courts to exercise jurisdiction." *Chittenden v. Connors*, 460 F. Supp. 2d 463, 468 (S.D.N.Y. 2006) (quoting *Planned Parenthood of Dutchess–Ulster, Inc., v. Steinhaus*, 60 F.3d 122, 126 (2d Cir.1995)).

Abstention in this suit is warranted on both mandatory and permissive grounds.[3]

### A.    Mandatory Abstention Divests the Court of Jurisdiction

When, as here, abstention is mandatory "its application deprives the federal court of jurisdiction in the matter." *Bronx Defs. v. Office of Court Admin.*, 475 F. Supp. 3d 278, 284

---

[3]    Should the Court find that *both* mandatory and permissive abstentions apply, Texas asks that the Court specifically abstain on permissive grounds. *See In re Residential Capital, LLC*, 488 B.R. 565, 575 (Bankr. S.D.N.Y. 2013) (electing to dismiss on permissive abstention grounds where strong arguments also supported mandatory abstention); *see also* 28 U.S.C.A. § 1334(d) (providing that permissive abstention decisions, unlike mandatory abstention decisions, are final and cannot be appealed).

(S.D.N.Y. 2020) (quoting *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002) (citation omitted)).

        *i.*      *The Younger Abstention Doctrine*

    "*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) (citing *Younger*, 401 U.S. at 43–45)); *see also In re Go W. Entm't, Inc.*, 387 B.R. 435, 443 (Bankr. S.D.N.Y. 2008) (holding that *Younger* abstention applies in bankruptcy proceedings); *In re Green*, Civil Action No. 1-18-41652-ESS, 2020 WL 3412679, at *12–13 (Bankr. E.D.N.Y. June 18, 2020) (same). "In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceedings." *Torres v. DeMatteo Salvage Co., Inc.*, 34 F. Supp. 3d 286, 288–89 (E.D.N.Y. 2014) (quoting *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 30 (6th Cir.1984)). Here, Movants directly implicate *Younger* by seeking to enjoin Texas to amend its pleadings to withdraw the G-Factor allegations referencing Old GM, enjoin Texas to withdraw its discovery requests seeking G-Factor evidence relating to Old GM, and prohibit the jury from considering *any* information about Old GM. Dkt. 14826-1 at ¶¶ 25–29.

    This Court must abstain because Texas meets all the necessary elements for *Younger* abstention. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (mandating that federal courts must refrain from enjoining pending civil proceedings such that they interfere with the state

court's ability to perform their judicial functions) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). There is an ongoing state court proceeding, App'x 228, Texas's enforcement of its consumer protection laws implicates an important state interest, *see e.g. Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 327 (E.D.N.Y. 2001), and Movants can—and have—raised the same arguments made in Movant's Motion to Enforce in the state court proceedings, App'x 448 at ¶ 11.

Movants, moreover, cannot meet their burden of showing an exception to *Younger* abstention. *See Kirschner v. Klemons*, 225 F.3d 227, 235–36 (2d Cir.2000) (plaintiff seeking to avoid *Younger* abstention bears the burden of establishing one of the exceptions applies). Despite the strong policy in favor of abstention, a federal court may nevertheless intervene in a state proceeding upon a showing of "bad faith, harassment or any other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 54. But Movants cannot produce *any* evidence showing that Texas has acted in bad faith or for the purposes of harassment. *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002) ("To invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive.") (citing *Schlagler v. Phillips*, 166 F.3d 439, 442-44 (2d Cir. 1999)). And to the extent Movants contend that the DTPA is unconstitutional, it has not raised those arguments in this Court and such arguments would not constitute extraordinary circumstances warranting an exception to the *Younger* abstention doctrine.[4] App'x 449-50 (affirmative defenses challenging the constitutionality of the DTPA); *Gristina v. Merchan*, 131 F.4th 82, 88 (2d Cir. 2025)

---

[4]    Should Movants raise constitutional claims in this proceeding, this Court should abstain under the *Pullman* abstention doctrine. *See Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941); *Handberry v. Thompson*, 446 F.3d 335, 355–56 (2d Cir. 2006).

("*Younger* generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction.") (quoting *Spargo*, 351 F.3d at 75 (internal quotation marks omitted)); *Diamond "D" Const. Corp.*, 282 F.3d at 200 ("Federal interference with state proceedings, because it necessarily presumes that state court review will be inadequate, affronts the dignity of the state sovereign.").

This Court lack jurisdiction because *Younger* abstention is mandatory, and no exceptions apply. Nonetheless, should this Court fail to abstain under *Younger*, statutory abstention is still mandatory pursuant to 28 U.S.C. § 1334(c)(2).

### ii.   *Mandatory Statutory Abstention*

Bankruptcy courts must abstain when (1) a party files a timely motion for abstention; (2) the proceeding is non-core; (3) the only basis for federal jurisdiction is 28 U.S.C. § 1334; and (4) the action is based on a state-law claim, commenced in state court, and can be timely adjudicated in state court. 28 U.S.C. § 1334(c)(2); *see In re Mosdos Chofetz Chaim Inc.*, No. 22-33, 2023 WL 105715, at *3 (2d Cir. Jan. 5, 2023) (citing *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010)). The party opposing mandatory abstention bears the burden of showing that such abstention is not warranted. *See In re Ebury St. Capital, LLC*, 664 B.R. 639, 648 (Bankr. S.D.N.Y. 2024).

This Court must abstain because Texas satisfies each of the necessary elements for mandatory statutory abstention in 28 U.S.C. § 1334(c)(2).[5] Texas's request is timely sought less than 30 days after Movant's Motion to Enforce was filed with this Court. S*ee In re Eight-115 Associates, LLC*, 626 B.R. 383, 392 (Bankr. S.D.N.Y. 2021) (listing timely requests for abstention

---

[5]   Texas, without waiving the preceding jurisdictional challenges, affirmatively asks that this Court abstain under 28 U.S.C. § 1334(c)(2).

factors) (quoting *Joremi Enters., Inc. v. Hershkowitz*, 396 B.R. 885, 893 (Bankr. S.D.N.Y. 2008); *see also In re New 118th LLC*, 396 B.R. 885 (Bankr. S.D.N.Y. 2008) (holding that an eight-month interval before seeking mandatory abstention was still timely). Movants sole basis for jurisdiction is 28 U.S.C. § 1334. Dkt. 14826-1 at ¶ 14; App'x 40.  Movant's Motion further relates to a state-law claim, commenced in state court, and that can be timely adjudicated in state court at or before the trial scheduled for November 2025. *See Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 266 (2d Cir. 2012) (listing timely adjudication in state court factors).

Moreover, Texas meets the final element for mandatory abstention because the Motion is not a "core proceeding" as the challenged state court proceedings do not "arise under" nor "arise in" Title 11. Bankruptcy cases and civil proceedings "arising in" and "arising under" Title 11 are "core" proceedings, while civil proceedings "related to" cases under Title 11 are "non-core." *In re Eight-115 Associates, LLC*, 626 B.R. 383, 394 (Bankr. S.D.N.Y. 2021) (citing *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 709 (Bankr. D. Del. 2016)). Movants' claims do not "arise under" Title 11 because Texas DTPA claims do not involve "substantive rights created by federal bankruptcy law." *Scott v. AIG Prop. Cas. Co.*, 2017 WL 1380607, at *3 (S.D.N.Y. Apr. 17, 2017) (quoting *Kirschenbaum v. U.S. Dep't of Labor (In re Robert Plan Corp.)*, 777 F.3d 594, 596–97 (2d Cir. 2015). The Southern District of New York has remanded similar attempts by Movants to remove, and enjoin, state court personal injury claims on mandatory jurisdiction grounds. *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2017 WL 5195234, at *2 (S.D.N.Y. Nov. 9, 2017) (holding that, as an initial matter, there was no serious argument that the personal injury case fell within the Court's "arising under" Title 11 jurisdiction because none of the state law claims were asserted under a provision of the Bankruptcy Code) (hereafter *Synott*). As was the case

in *Synott*, Texas's claims do not "arise under" Title 11.

Further, like in *Synott*, the state court claims do not "arise in" Title 11 because Texas seeks only to hold Movants liable for conduct occurring after the 2009 Sale Order. *Id*. at *3 ("there is no need in this case to interpret any prior order of the Bankruptcy Court."); *see also In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2018 WL 2899642, at *3 (S.D.N.Y. June 11, 2018) (hereinafter *Schmidt*) (remanding on mandatory abstention grounds a suit against Movants where the vehicle was manufactured before the 2009 Sale Order but the crash occurred after the 2009 Sale Order, for the same reasons as those in *Synott*). This case is like *Synott* and *Schmidt* because Texas similarly does not seek to hold Movants liable for the conduct of Old GM. App'x 232-69; *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158, 162 (S.D.N.Y. 2013) (holding that claims "arise in" bankruptcy when, although not based on any right expressly created by Title 11, they "would have no practical existence but for the bankruptcy.") (quoting *In re Casual Male Corp.*, 317 B.R. 472, 476 (Bankr.S.D.N.Y.2004)).

Moreover, "enforcing the injunctive terms in a sale order" is *not* among the "core proceedings" enumerated by Congress. *See* 28 U.S.C. § 157(b)(2) (listing "core proceedings."). The Southern District of New York *incorrectly* held in *In re Motors Liquidation Co.,* 428 B.R. 43, 57 (S.D.N.Y. 2010) that subsequent proceedings to enforce the injunctive terms in those sales orders were "core proceedings" because they are an extension of the "orders approving the sale of property." *See* 28 U.S.C. § 157(b)(2)(N). This wrongly decided decision lacks *stare decisis* value, *Weber v. United States*, 484 F.3d 154, 158 (2d Cir. 2007), and its nonbinding holding can be revisited to correct a clear error of law, *In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011) (per curiam).

This Court should, instead, hold that "approving a sale order" and "enforcing the

injunctive terms in a sale order" would not have been understood to be synonymous when 28

U.S.C. § 1334 was amended to add the core/non-core distinctions in 1984. *See Bostock v. Clayton*

*Cnty., Georgia*, 590 U.S. 644, 654 (2020) (Courts "normally interpret[] a statute in accord with the

ordinary public meaning of its terms at the time of its enactment."); *In re Petrie Retail, Inc.*, 304

F.3d 223, 229 (2d Cir. 2002) (citing *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2d Cir.

1995). In 1984, Black's Law Dictionary defined "approve" as "to be satisfied with; to confirm,

ratify, sanction, or consent to some act or thing done by another. To sanction officially; to ratify;

to confirm; to pronounce good; think or judge well of; admit the propriety or excellence of; be

pleased with." Black's Law Dictionary (5th ed. 1979). Black's Law Dictionary, conversely, defined

"enforce" in 1984 as "to put into execution; to cause to take effect; to make effective; as, to

enforce a particular law, a writ, a judgment, or the collection of a debt or fine; to compel obedience

to." *Id*. The terms "approve" and "enforce" were distinguishable in 1984 and remain

distinguishable to this day, *compare* "APPROVE" Black's Law Dictionary (12th ed. 2024) ("to

give formal sanction to; to confirm authoritatively") *with* "ENFORCE," *id*. ("to give force or

effect to (a law, etc.); to compel obedience to." The Supreme Court has warned district courts

against acting as an imperial Judiciary without express congressional authority. *See Trump v.*

*CASA, Inc.*, No. 24A884, 2025 WL 17720091 (U.S. June 27, 2025) (holding that that Judiciary Act

of 1789 does not grant district courts the equitable authority to issue universal injunctions). A

textualist interpretation of 28 U.S.C. § 157(b)(2)(N) necessarily results in the conclusion that

"approving a sale order" is a "core proceeding" *whereas* "enforcing the injunctive terms of a sale

order" is not.

Texas satisfies the requirements for mandatory *Younger* abstention where Movants ask this

Court to enjoin ongoing state court proceedings involving an important state interest and Texas satisfies the requirements for mandatory statutory abstention because this is not a "core proceeding," the sole basis for jurisdiction is § 1334, and the contentions can be timely adjudicated in state court. In the unlikely event that this Court finds that mandatory abstention is inapt; it should still exercise its discretion to grant permissive abstention in the interest of justice, in the interest of comity with state courts, or out of respect for state law.

B.    This Case Warrants Permissive Abstention

Federal courts have discretion whether to permissively abstain. *See In re Hellas Telecommunications (Luxembourg) II SCA*, 535 B.R. 543, 589 n.36 (Bankr. S.D.N.Y. 2015). The Supreme Court has found that permissive abstention is most appropriate when, as here, a case is dominated by state law issues or raises unsettled issues of state law. *See Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483 (1940).

i.    *Permissive Statutory Abstention*

Bankruptcy courts may abstain from hearing a proceeding "in the interest of justice, or in the interest of comity with [s]tate courts or respect for [s]tate law." 28 U.S.C. § 1334(c)(1). In deciding whether permissive abstention is warranted, courts may consider one or more of the following factors:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by

one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 512 (S.D.N.Y. 2015) (citing *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158, 165 (S.D.N.Y. 2013)). Courts "need not plod through a discussion of each factor in the laundry lists developed in prior decisions." *In re Tronox*, 603 B.R. 712, 726 (Bankr. S.D.N.Y. 2019), *subsequently aff'd sub nom. In re Tronox Inc.*, No. 20-3949-BK, 2022 WL 16753119 (2d Cir. Nov. 8, 2022).

In *Schmidt*, the Southern District abstained on permissive statutory grounds where New GM removed a state court personal injury suit relating to defective ignition switches manufactured by Old GM. 2018 WL 2899642 at *3. The Southern District held that, among other things, abstention would have no effect on the administration of the bankruptcy estate because Schmidt only brought claims against New GM (not Old GM), the state common law claims predominate any bankruptcy issues that may exist, and Schmidt made a jury demand in the state court proceedings. *Id.* As in *Schmidt*, and for the same reasons, here the balance of factors weighs in favor of permissive statutory abstention. The first factor weighs heavily in favor of abstention where doing so will have no impact on the administration of Old GM's bankruptcy estate because Texas does not seek to hold Movants **liable** for conduct that occurred prior to entry of the 2009 Sale Order and any judgment against Movants will be against same—not the estate of Old GM. The second factor weighs heavily in favor of abstention because interpretation of the DTPA's G Factors predominates over any bankruptcy issues that may exist. *See* App'x 290-94.

The third and fourth factors weigh in favor of abstention because Movant's arguments involve a novel interpretation of "liabilities" that it similarly raised in the pending state court proceedings. Dkt. 14826-1 at ¶¶ 6, 11, 19; App'x 448 at ¶ 11. Movants' idiosyncratic interpretation

of "liability" appears to be a matter of first impression—as evidenced in part by the fact that Movants have not cited to any case law in support of their interpretation. Dkt. 14826-1 at ¶ 23. Movant's argument that the 2009 Sale Order enjoins the civil penalty provisions in the Texas DTPA is also inextricably intertwined with Movants' constitutional challenges in the state court proceeding. *See* App'x 446. This, too, appears to be an issue of first impression, and interpretation of state law should be decided in the pending state court proceedings in Montgomery County, Texas—not by a Bankruptcy Court in Manhattan, New York. The fifth factor weighs in favor of abstention because Movants have no other basis for jurisdiction other than § 1334. Dkt. 14826-1 at ¶ 14; App'x 40. The sixth and seventh factors weigh in favor of abstention because Movant's Motion to Enforce is only remotely related to the 2009 Sale Order in both degree and substance. *Id.* The eighth factor is either neutral or weighs in favor of abstention because it is not feasible to sever the state law claims from the bankruptcy proceedings such that enforcement is left to the bankruptcy court. The ninth factor weighs in favor of abstention because resolving Movant's Motion to Enforce will unnecessarily burden this Court's docket when the same matter is already pending before the state court—who is far more familiar with the Texas DTPA and more than capable of reading the four corners of the 2009 Sale Order and the Bankruptcy Code. The tenth factor weighs in favor of abstention because Movant's conduct is blatant forum shopping. Movants made the same arguments in the state court action and only sought a stay of those proceedings when Texas's noticed depositions of Movants' corporate representatives. App'x 448 at ¶ 11; *Synott*, 2017 WL 5195234, at *4. The eleventh factor weighs in favor of abstention because the state court proceedings will be determined by a jury. App'x 293 at ¶ 279. Finally, the twelfth factor weighs in favor of abstention because Movant's Motion involves the presence of nondebtor

parties—both Movants and Texas. Dkt. 14826.

This Court should find, as the Southern District has aptly stated before when granting permissive abstention, that "the bankruptcy of Old GM does not provide New GM with an open-ended ticket to remove cases from state court at will merely because they involve vehicles manufactured by Old GM. Where, as here, the relevant legal principles have been settled and all that is left is to apply those principles to a case in a straightforward manner, the arguments for removal fall short." *Schmidt*, 2018 WL 2899642, at *3.

>    ii.    *Burford Abstention*

The *Burford* abstention doctrine instructs a federal court to abstain from exercising jurisdiction when (1) "there are difficult questions of state law bearing on policy problems of substantial public import" or (2) "the exercise of federal review ... would be disruptive of state efforts to establish a coherent policy." *Burford*, 319 U.S. 315; *see also In re Texaco, Inc.*, 668 B.R. 1, 26 (Bankr. S.D.N.Y. 2025) (apply *Burford* in bankruptcy proceedings). The Second Circuit has identified the following three factors to consider in determining whether federal court review would disrupt the state's purpose in establishing a coherent public policy on a matter involving substantial concern to the public: (1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern. *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009) (citing *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir.1998)).

Texas meets all the requirements for *Burford* abstention. Movants contend that the 2009 Sale Order enjoins Texas's reliance on G Factors evidence about Old GM, App'x 448 at ¶ 11, and

prevents the state court judge from exercising his discretion to determine what information the
jury is permitted to consider when calculating the amount of civil penalties to award, Dkt. 14826-1
at ¶ 21–24. Should this Court effectively enjoin portions of the DTPA, it will disrupt Texas's
efforts to establish a coherent policy with respect to how it imposes civil penalties on corporations
who violate its consumer protection laws. Thus, Court should abstain under *Burford*.

The balance of the twelve factors in 28 U.S.C. § 1334(c)(1) weighs in favor of permissive
abstention, as do the three *Burford* factors, and this Court should, accordingly, exercise its
discretion and abstain in this matter. Should this Court find jurisdiction and decline to abstain, it
should still deny the Motion on the merits because Texas seeks only to hold Movants liable for
their own conduct—not the conduct of Old GM.

## III.    Texas is Not Asserting Successor Liability Claims Against Movants

The Bankruptcy Code permits corporations to discharge "debts" that arose prior to the
confirmation of a Ch. 11 plan or approval of a § 363 sale order. *Compare* 11 U.S.C. § 363(f) ("free
and clear of any interest in such property"), *with* § 1141(c) ("free and clear of all claims and
interests"). "The discharge of such claims serves the bankruptcy policy of providing debtors with
a 'fresh start' to permit their continued operation free of pre-bankruptcy debts." *DPWN Holdings
(USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014).

The Bankruptcy Code defines a "debt" as "liability on a claim." 11 U.S.C. § 101(2). It
defines a "claim," in relevant parts, as a "right to payment, whether or not such right is reduced
to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,
undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Liability claims are,
generally, barred against the successor corporation post-bankruptcy or, in the case of a § 363 sale,

against the purchaser.[6]

Here, there are no successor liability claims against Movants because Texas does not

contend that Movants are liable for violating the DTPA based on the conduct of Old GM.

A.    Texas's DTPA Claims Against Movants are Not Successor Liability Claims

This Court has repeatedly recognized the well-settled law that claims against a § 363

purchaser involving only post-sale conduct by the purchaser are not barred by the "free and clear"

provisions in a § 363 sale order. *See In re Old Carco LLC*, 636 B.R. 347, (Bankr. S.D.N.Y. 2022)

(citing *In re Motors Liquidation Co.*, 457 B.R. 276, 288–89 (Bankr. S.D.N.Y. 2011)); *see also In re*

*Motors Liquidation*, 590 B.R. 39, 60 (Bankr. S.D.N.Y. 2018) (same) (citing *In re Motors Liquidation*,

568 B.R. 217, 230 (Bankr. S.D.N.Y. 2017)).

Texas's suit against Movants seeks only to hold Movants liable for their violations of the

DTPA from 2011, two years after approval of the 2009 Sale Order, through the present. *See* App'x

232-69, 290-94. It is indisputable that these claims are wholly independent of the bankruptcy

proceedings because the "claims arose from New GM's own wrongful conduct." *In re Motors*

*Liquidation Co.*, 529 B.R. 510, 598 (Bankr. S.D.N.Y. 2015) (holding that the plaintiffs could "assert

otherwise viable claims against New GM for any causes of action that might exist arising solely out

of New GM's own, independent, post-Closing acts, so long as those Plaintiffs' claims do not in any

way rely on any acts or conduct by Old GM."), *aff'd*, *Elliot*, 829 F.3d at 153 (holding "[t]he Sale

---

[6]    *See In re Motors Liquidation Co.*, 590 B.R. 39, 63 (S.D.N.Y. 2018) (holding that "successor liability is not a separate cause of action but merely a theory for imposing liability on a defendant based on the predecessor's conduct.") (citing *City of Syracuse v. Loomis Armored US, LLC*, 900 F.Supp.2d 274, 290 (N.D.N.Y. 2012), *aff'd*, 943 F.3d 125 (2d Cir. 2019) *and aff'd*, 792 Fed. Appx. 28 (2d Cir. 2019) *and aff'd*, 957 F.3d 357 (2d Cir. 2020); *see also In re Fairchild Aircraft Corp.*, 184 B.R. 910, 920 (Bankr. W.D. Tex. 1995) ("successor liability does not *create* a new cause of action against the purchaser so much as it *transfers* the liability of the predecessor to the purchaser."), *vacated on other grounds*, 220 B.R. 909 (Bankr. W.D. Tex. 1998).

Order, on its face, does not bar independent claims against New GM. . . .). Movants have not and

cannot show that Texas is seeks to hold them liable for violating the DTPA based on the actions of

Old GM. *See In re Motors Liquidation Co.*, 2015 WL 11070293, at *4 (Bankr. S.D.N.Y. Dec. 4, 2015)

(holding that "New GM shall not be liable to the States for any violations of consumer protection

statutes that took place before the 363 Sale."), *judgment entered*, 549 B.R. 607 (Bankr. S.D.N.Y.

2016).

While Texas does not seek to hold Movants liable for the conduct of Old GM, G-Factor

evidence about Old GM can be considered by the jury, after deciding liability, when determining

the amount to award, between 1¢ and $10,000, as a remedy for each violation of the DTPA because

the statutory methodology for calculating a civil penalty award is not a "claim" under the

Bankruptcy Code.

> B.    Texas's Statutory Methodology for Determining Civil Penalties is Not a "Claim"

The Second Circuit defines a "claim" under the Bankruptcy Code as "(1) a right to

payment (2) that arose **before** the filing of the [bankruptcy] petition." *In Matter of Motors

Liquidation Co.*, 829 F.3d 135, 156 (2d Cir. 2016) (emphasis added) (citing *Pension Ben. Guar. Corp.

v. Oneida Ltd.*, 562 F.3d 154, 157 (2d Cir. 2009)). The Supreme Court has held that Congress

intended to invest "claim" in the Bankruptcy Code with the "broadest possible" scope that so

that "all legal obligations of the debtor ... will be able to be dealt with in a bankruptcy case." *In re

Chateaugay Corp.*, 53 F.3d 478, 496–97 (2d Cir. 1995) (quoting *Pennsylvania Dep't of Pub. Welfare

v. Davenport*, 495 U.S. 552, 558 (1990)). But there are limits. *In re Chateaugay Corp.*, 53 F.3d 478,

497 (2d Cir. 1995) (stating that, in "common sense," "claim" is "not infinite").

Texas's G-Factor allegations related to Old GM are not "claims" because they do not

involve a "right to payment." The Supreme Court has held that "the plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation." *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990). Here, the "right to payment" is the initial liability determination that a violation of the DTPA occurred. Tex. Bus. & Com. Code § 17.46(a). That determination, that a violation occurred, necessarily results in Texas's entitlement to civil penalties between 1¢ and $10,000 for each violation. Tex. Bus. & Com. Code § 17.47(c). The determination as to liability for civil penalties is *categorically different* than the determination of how much to award in civil penalties. *See Tull v. United States*, 481 U.S. 412 (1987) (holding that the Seventh Amendment provides that liability for civil penalties may be determined by a jury, but the quantum of civil penalties to award is determined by a judge); *see also Tex. v. Google LLC*, 2025 WL 1713256 (E.D. Tex. June 18, 2025) (same). The "right to payment" in Texas's suit only involves Movants (not Old GM' estate) and, therefore, cannot be a "claim" for the purposes of the Bankruptcy Code. *In re WorldCom, Inc.*, 546 F.3d 211, 216 (2d Cir. 2008) ("a 'claim' should be deemed to exist whenever, in the absence of bankruptcy, a particular claimant has the right to reach the debtor's assets."). Compare, for instance, punitive damage claims, which require proving **liability** by establishing that the defendants conduct was "motivated by an evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Johnson v. City of New York*, 593 F. Supp. 3d 58, 67–68 (S.D.N.Y. 2022) (quoting *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996) (cleaned up). Not so with civil penalties. A statutory violation of the DTPA is all that is required to prove liability. This makes Texas's use of the information about Old GM in civil penalty calculations different from punitive damages claims where the information is used to show liability ("evil motive or intent") such that the plaintiff can punitive damages (in

any amount). *See Tull*, 81 U.S. at 427 (noting the "highly discretionary calculations that take into account multiple factors are necessary in order to set civil penalties….").

Texas's allegations referencing Old GM, moreover, cannot be "claims" against Movants because they did not "arise before" the 2009 Sale Order. *In re Motors Liquidation Co.*, 590 B.R. 39, 50 (S.D.N.Y. 2018) (holding that successor liability claims qualify as "interests," but can only be precluded by the 2009 Sale Order if they constitute claims that could be barred under Ch. 11 more generally). The Second Circuit has held that a "claim' *cannot be extended* to include … claimants whom the record indicates were completely unknown and unidentified at the time [the debtor] filed its petition and whose rights depended entirely on the fortuity of future occurrences." *In Matter of Motors Liquidation Co.*, 829 F.3d at 156 (emphasis added) (quoting *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir. 1994)). So too, interpreting Texas's allegations concerning Old GM's past conduct as "claims" against Movants stretches to definition of "claims" beyond the breaking point. Such a "claim" is applicable in every bankruptcy and, at the time, is no more than speculation. It would be unduly burdensome and undermine the purpose of bankruptcy proceedings to expect the state to file "proof of claims," 11 U.S.C. § 501, in a bankruptcy proceeding alleging that it may use *past* conduct by the debtor when calculating civil penalties against the successor in interest for violations that the successor may commit in the *future. See In re Chateaugay Corp.*, 944 F.2d 997, 1003 (2d Cir. 1991) (holding that "to expect claims to be filed by those who have not yet had any contact whatever with the tort-feasor" is "absurd.").

This Court should find that Texas's DTPA claims against Movants are not "claims" subject to the Bankruptcy Code. Nevertheless, in the unlikely event that the Court finds that they are claims, it should still dismiss Movants' Motion to Enforce because the claims are not prohibited

by the 2009 Sale Order.

## IV. Texas's Claims are Not Barred by the 2009 Sale Order

In a previous motion to enforce filed by New GM in 2018, this Court described its role "as a 'gatekeeper,' determining whether claims asserted against New GM are barred by the Sale Order and prior decisions of this Court." *In re Motors Liquidation Co.,* 585 B.R. 708, 713 (Bankr. S.D.N.Y. 2018) (hereafter *Moore*). The Court was unequivocal that "its role is as a 'gatekeeper,' not to decide issues of state law." *Id.* at 723.

### A.    Texas's Claims are Independent

In 2018, the Court considered the extent to which the 2009 Sale Order and the Court's prior orders barred a group of plaintiff property owners from bringing claims related to groundwater contamination. *Id.* at 712-13. In its 2018 motion to enforce, Movants argued that to "pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct." *Id.* at 723 (quoting *Motors Liquidation Co.*, 568 B.R. at 231).

That is precisely what Texas alleges. App'x 232-69, 290-94. Movants claim that Texas's original, and now superseded, petition was "based exclusively on Movants' alleged collection and sharing of data from customer vehicles post-bankruptcy, and did not contain allegations about Old GM's conduct." Dkt. 14826 -1 at ¶ 1. But Texas's Second Amended Petition is no different because it similarly only seeks to hold Movants liable for their "alleged collection and sharing of data," App'x 228, which Movants admit is permissible. Dkt. 14826 -1 at ¶ 1.

In *Moore*, the Court permitted "independent claims against New GM with allegations that hinge on New GM conduct." 585 B.R. at 726. This was the case even when the *Moore* allegations

were "that New GM *continued* contaminating the groundwater," because New GM had "independent liability, regardless of Old GM's actions before the 363 Sale." *Id.* (emphasis added). In the instant case, the State's claims exclusively hinge on New GM conduct—and Movants have not argued otherwise. App'x 232-69, 290-94. While the 2009 Sale Order does prohibit Movants from being held liable for *claims* based upon Old GM conduct, it does not establish the *Thou Shalt Not Speak of Old GM* rule the Movants ostensibly believe exists. *See generally* Dkt. 14826-1.

The *Moore* plaintiffs' Complaint is illustrative of the issue. There, Movants presented the Court with a marked-up copy of the *Moore* complaint (Dkt. 14277-1), and the Court ruled on particular paragraphs that had been objected to by Movants. *Order Ruling on New GM's Objections to Mark-up of the Moore, et al. Plaintiffs' Amended Complaint*, May 4, 2018, Dkt. 14296. In that ruling, the Court sustained Movants' objections to paragraphs that alleged New GM was a successor or continuing enterprise of Old GM (*e.g.*, "…Defendant operated as a continuing enterprise of Old GM," and "Plaintiffs allege that, under Michigan law, New GM is the successor corporation to Old GM."). But many paragraphs which were not objected to by Movants or (by extension) ruled upon by the Court nevertheless discussed Old GM and its bad conduct.[7]

The outcome of the Court's review of the *Moore* Complaint demonstrates that the Sale Order did not create an opaque barrier preventing fact finders from looking past July 2009. The

---

[7] For example, "[New GM], since July 10, 2009, and Old GM, until July 9, 2009, released hundreds of thousands of tons of salt . . . leading to [contamination] in surface and groundwater." (Dkt. 14277-1 at ¶ 13); "From 1985 to July 9, 2009 Old GM was well-aware of the Releases and Contamination." (*Id.* at ¶ 16); "After receiving [a Water Supply Study], Old GM did not disclose the Contamination to regulatory authorities or local residents." (*Id.* at ¶ 21); "Beginning in 1998, Old GM commissioned a series of reports . . . designed to refute or at least obfuscate [the Michigan Dep't of Environmental Quality's] hypothesis that Old GM's prodigious use of salt . . . was the source of the Contamination." (*Id.* at ¶ 28); "Despite its knowledge of the Releases and Contamination, Old GM took no action to remediate the Contamination or stop it from spreading." (*Id.* at ¶ 52); "Despite its knowledge of the Releases and Contamination, until July 9, 2009, Old GM made affirmative misrepresentations that were designed to prevent discovery that their Releases . . . were the predominant causes of the Contamination." (*Id.* at ¶ 54).

same is true in Texas's DTPA suit against Movants and, for similar reasons, this Court should

deny Movants' Motion.

    B.    <u>The Court's Prior Rulings Do Not Bar Texas's Claims</u>

    This Court previously found that Movants did not assume liability for punitive damages

based on Old GM's conduct in the 2009 Sale Order. *In re Motors Liquidation Co.*, 571 B.R. 565, 575

(Bankr. S.D.N.Y. 2017), *aff'd in part, vacated in part*, 590 B.R. 39 (S.D.N.Y. 2018), *aff'd*, 943 F.3d

125 (2d Cir. 2019) *and aff'd*, 792 Fed. Appx. 28 (2d Cir. 2019) *and aff'd*, 957 F.3d 357 (2d Cir.

2020). First, this Court reasoned that punitive damages are never available when, as here, the

debtor was insolvent because of the liability prioritization. *Id.* at 580. Second, this Court held that

it was consistent with the general purpose of punitive damages "to punish the actual wrongdoer

and to deter him from acting illegally again." *Id.* (quoting *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 688

F.Supp.2d 193, 204–05 (W.D.N.Y. 2010) (cleaned up) (holding that punitive damages are not

available against successor corporation in a Title VII discrimination case because "awarding

punitive damages against [the successor] would not serve the purpose of punitive damages").

    But civil penalties are not the same as punitive damages—and neither of the Court's

rationales are applicable to Movants.[8] *First*, unlike punitive damages, civil penalties *cannot* be

discharged in bankruptcy. *See* 11 U.S.C. § 523(a)(7) (providing that civil penalties owed to the

government are nondischargeable in bankruptcy). *Second*, unlike punitive damages, civil penalties

are *only* available to the government. Tex. Bus. & Com. Code § 17.47(c); *Austin v. United States*,

---

[8]    The Court's prior ruling is not the law of the case as to Texas because the ruling dealt with claims for punitive damages, not the methodology for calculating civil penalties. *In re Motors Liquidation Co.*, 571 B.R. at 575. The ruling, to the extent it is applied to Texas, is nonbinding and, even if it were, the ruling should be reconsidered as to Texas to "correct a clear error or prevent manifest injustice." *In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011) (citing *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir.2008)).

509 U.S. 602, 610 (1993) ("a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." (cleaned up)); *Sec. & Exch. Comm'n v. Collector's Coffee, Inc.*, No. 19 Civ. 4355, 2025 WL 752221, at *7 (S.D.N.Y. Mar. 10, 2025). *Third*, as discussed *supra*, unlike with punitive damages where information about Old GM is used to show liability ("evil motive or intent"), Texas's claims involve statutory violations and information about Old GM is used purely for calculating the amount to award for each violation of the DTPA. *Fourth*, enjoining Texas's allegations against Old GM will thwart the purpose of the Bankruptcy Code. The *reason* the Code does not allow debtors to discharge civil penalty awards to governmental entities, 11 U.S.C. § 523(a)(7), is to prevent mischief and avoid incentivizing companies from repeatedly engaging in misconduct and then simply filing for Ch. 11 reorganization or conducting a § 363 sale to avoid responsibility for their harms to the public. *In re Fusion Connect, Inc.*, 634 B.R. 22, 38–39 (S.D.N.Y. 2021) (warning that the Bankruptcy Code should not be interpreted in a manner that creates perverse incentives for debtors that do not align with Code's purpose) (citing *In re Murphy*, 282 F.3d 868, 874 (5th Cir. 2002)) (declining to adopt interpretation of § 523(a)(8) that "would create perverse incentives for student borrowers, squarely at odds with the only purposes that Congress has ascribed"). Indeed, governmental regulatory actions, such as the instant case, are expressly exempt from the automatic stay in the Bankruptcy Code. 11 U.S.C. § 362(b)(4); *see also* Tex. Bus. & Com. Code § 17.47(a) (authorizing the state to seek temporary and permanent injunctive relief for violations of the DTPA).

This Court should find that the Court's prior rulings interpreting the 2009 Sale Order are inapt as to Texas; but even if they were, Texas still meets the exceptions enumerated by this Court

in suits seeking punitive damages.

    C.    <u>The 2009 Sale Order Does Not Bar Texas's Allegations Relating to Old GM</u>

This Court has previously held that:

> A claim for punitive damages with respect to a post-Sale accident involving vehicles manufactured by Old GM with the Ignition Switch Defect may be asserted against New GM to the extent—but only to the extent—it relates to an otherwise viable Independent Claim and is based solely on New GM conduct or knowledge, including (a) knowledge that can be imputed to New GM under the principles set forth in the Decision and this Judgment (and under nonbankruptcy law), and (b) information obtained by New GM after the 363 Sale. The extent to which any such claim is "viable" shall be determined under nonbankruptcy law by the nonbankruptcy court presiding over that action. Except as expressly stated in this Judgment, this Court expresses no view as to whether any claim is viable.

*In re Motors Liquidation Co.*, No. 09-50026(REG), 2015 WL 11070293, at *2 (Bankr. S.D.N.Y. Dec. 4, 2015), *judgment entered*, 549 B.R. 607 (Bankr. S.D.N.Y. 2016)

Texas's G-Factor allegations relating to Old GM plainly fall within these exceptions. *See generally* App'x 232-69.

    *I.    Texas Seeks to Use Old GM as a Comparator to Movants*

The use of comparators when calculating damages is ubiquitous in the law. *See e.g. In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 638 F. Supp. 3d 227, 252 (E.D.N.Y. 2022), and *Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 179 (S.D.N.Y. 2006), and *Speedfit LLC v. Woodway USA, Inc.*, No. 13-CV-1276, 2019 WL 1436306, at *9 (E.D.N.Y. Mar. 29, 2019), and *In re September 11 Litig.*, 802 F.3d 314, 335 (2d Cir. 2015).

Here, Texas seeks to use Old GM as a comparator to Movants when determining "the amount necessary to deter future violations" by a major automobile manufacturer. *See* App'x 270-90. Both Old GM and Movants manufactured GM vehicles and sold them to consumers in the U.S. Both have engaged in repeated violations of consumer protection laws resulting in settlements,

judgments, penalties, and consent decrees. *Id.* Texas contends that the amount levied against Old

GM was insufficient to deter it from engaging in future misconduct. *Id.* The jury can use this

information about similarly situated automobile manufacturers as a floor when determining the

amount of civil penalties necessary to prevent Movants from committing future violations. Tex.

Bus. & Com. Code § 17.47(g)(3). Movants cannot point to anything in the Bankruptcy Code, 2009

Sale Order, and case law that prevents a Texas jury from using Old GM, or any other automobile

manufacturer, such as Stellantis, BMW, or Ford, as a comparator to Movants for the purposes of

determining the amount of civil penalties to impose to deter future violations. This Court should,

consequently, deny Movants' Motion to Enforce.

## II. Scienter and Knowledge of Old GM's History of Prior Violations Can be Imputed on Movants From Old GM

This Court expressly permitted punitive damage claims against Movants where

"knowledge of Old GM may be imputed to New GM … to the extent such knowledge was

'inherited' from Old GM if such information (a) was actually known to a New GM employee (e.g.,

because it is the knowledge of the same employee or because it was communicated to a New GM

employee), or (b) could be ascertained from New GM's books and records, even if such books and

records were transferred by Old GM to New GM as part of the 363 Sale…" *In re Motors Liquidation

Co.*, No. 09–50026, 2015 WL 11070293 at *1 (S.D.N.Y. Dec. 4, 2015).

The exact same situation exists here. Movants obtained Old GM's books and records in

the 2009 Sale Order and, therefore, "inherited" knowledge of Old GM's storied history. *See*

App'x 270-90; Tex. Bus. & Com. Code § 17.47(g)(2), (4). Indeed, this Court has already ruled

that, with respect the Ignition Switch Scandal, knowledge *can* be imputed on Movants for the

purposes of punitive damages. *In re Motors Liquidation Co.*, No. 09–50026, 2015 WL 11070293 at

*1; *See* App'x 281-88 (allegations relating to the Ignition Switch Scandal). The allegations involving the Ignition Switch Scandal should, therefore, already be resolved in Texas's favor by this Court's earlier rulings.

Movants further inherited knowledge about Old GM's history of prior violations, which goes towards scienter and the seriousness of their Movants' violations. Tex. Bus. & Com. Code § 17.47(g)(1)-(2), (5). Alternatively, Movants were aware of Old GM's prior violations impacting consumers because they should have disclosed liabilities and debts in the Ch. 11 proceedings, *see* App'x 1, that were discharged by the § 363 Sale, *id.* at 39. Finally, Movants knew about Old GM's history of prior violations relating to consumers because they are matters of public record—indeed, every allegation Movants find objectionable cite to articles in the press, judgements, appellate opinions, settlement agreements, or consent decrees. *See generally* App'x 270-90. Movants knowledge about Old GM's history of harming consumers increases the severity of Movants' violation because, knowing GM's history, it *still* chose to continue harming consumers after taking over the company's assets, production, and name (*meet New GM, same as the Old GM*). *See Staehr v. Hartford Fin. Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (courts routinely take judicial notice of press coverage, prior lawsuits and regulatory filings to show "notice" or "scienter" without regard to the truth of their contents) (citing G*lobal Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir.2006)); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991) ("[C]ourts routinely take judicial notice of documents filed in other courts ... to establish the fact of such litigation and related filings."). This Court should, therefore, refrain from enjoining Texas from making allegations involving the imputation of knowledge from Old GM to Movants.

### III.    Justice Requires the Jury Considering Old GM's History

Movants were not born innocent. *Contra In re Motors Liquidation Co.*, 541 B.R. 104, 137 n.94 (Bankr. S.D.N.Y. 2015), *vacated and remanded*, 590 B.R. 39 (S.D.N.Y. 2018). Courts, <u>including Bankruptcy Courts</u>, often "review the corporate history and transactions preceding the existence of" a successor company to decide issues in a case. *See, e.g., In re Red River Talc, LLC*, 2025 Bankr. LEXIS 863, at *88 (Bankr. S.D. Tex. Mar. 31, 2025) (detailing the history of *Johnson & Johnson*, the lawsuits and claims against it, and the facts surrounding the multiple bankruptcies). The Second Circuit observed about the Valukas Report studying the culture at GM that led to the Ignition Switch Scandal:

> For eleven years, GM heard over and over from various quarters—including customers, dealers, the press, and their own employees—that the car's ignition switch led to moving stalls, group after group and committee after committee within GM that reviewed the issue failed to take action or acted too slowly. Although everyone had responsibility to fix the problem, nobody took responsibility … With the 'GM salute,' employees would attend action meetings and literally cross their arms and point fingers at others to shirk responsibility. With the 'GM nod,' employees would (again) literally nod in agreement to endorse a proposed plan, understanding that they and others had no intention of following through … GM employees, instead of taking action, would claim the need to keep searching for the 'root cause' of the moving stalls and airbag non-deployments. This 'search for root cause became a basis for doing nothing to resolve the problem for years.' Indeed, New GM would not begin recalling cars for ignition switch defects until February 2014.

*In Matter of Motors Liquidation Co.*, 829 F.3d 135, 150 (2d Cir. 2016).

Texas intends to show, *inter alia*, that Movants adopted and continued the same Old GM *culture* at New GM and that this led, in part, to its mass surveillance program. *See generally* App'x 228-95. This too, goes to the severity of Movants violations of the DTPA and the amount of civil penalties necessary to deter it from future violations. Tex. Bus. & Com. Code § 17.47(g)(6).

It is also highly relevant to a jury deciding how much to award in civil penalties for violating the DTPA that taxpayers stood on both sides of the GM bankruptcy, as part owners of Old GM

and majority owners (at the time) of New GM. Movants reliance on taxpayer funds, and its subsequent treatment of those taxpayers, is information that the jury is entitled to consider in the interest of justice. *Id.* New GM ran nationwide advertisements in 2010 thanking the American public for the bailout and promising to change. *See* General Motors, *Thank You (We All Fall Down)*, YouTube (Nov. 26, 2010), https://tinyurl.com/yesc2hvd. The CEO of New GM **promised** the American public that because of the taxpayer bailout, it would "**exceed every goal and expectation <u>you've</u> set for us**" going forward. General Motors, *Trust*, Youtube (Apr. 22, 2010) (emphasis added), https://tinyurl.com/28w8a7au. It is for the jury to decide if Movants met their promise to "exceed every expectation" that the taxpayers "set for them" when, after the taxpayers lost over $10 billion in the bailout, Movants shipped American jobs overseas, closed American plants, partnered with the Chinese Communist Party, and implemented a mass surveillance program of American citizens. App'x 272-74; Tex. Bus. & Com. Code § 17.47(g)(6).

This Court should find that Texas's allegations concerning Old GM are not prohibited by its prior rulings or the 2009 Sale Order, and that the jury in **Texas** should decide what weight to afford the evidence concerning Old GM when determining the amount of civil penalties to award against Movants for their violations of the DTPA.

## CONCLUSION

For all the foregoing reasons, Texas asks that this Court deny Movants' Motion to Enforce and for any further relief to which it is justly entitled.

Dated: July 3, 2025

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
**JOHNATHAN STONE**, Lead Counsel
Chief, Consumer Protection Division
Texas State Bar No. 24071779
*Pro Hac Vice*

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Consumer Protection Division
P.O. Box 12548
Austin, Texas 78711
Telephone: (512) 936-2613
Fax: (512) 473-8301
Johnathan.Stone@oag.texas.gov

**ATTORNEYS FOR THE STATE OF TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF by the United States Bankruptcy Court, Southern District of New York, on July 3, 2025, to all counsel of record.

*/s/ Johnathan Stone*
**JOHNATHAN STONE**, Lead Counsel
Chief, Consumer Protection Division
Texas State Bar No. 24071779
*Pro Hac Vice*