KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Scott Davidson
sdavidson@kslaw.com

*Attorneys for General Motors LLC and OnStar, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11** |
|  | : |  |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **Case No.:  09-50026 (MG)** |
| **f/k/a General Motors Corp.,** *et al.* | : |  |
|  | : | **(Jointly Administered)** |
|  | **Debtors.** | : |  |
|  | : |  |

--------------------------------------------------------------X

**REPLY SUPPORTING GENERAL MOTORS LLC AND ONSTAR, LLC'S**
**MOTION TO ENFORCE THE SALE ORDER AND INJUNCTION, AND THE**
**RULINGS IN CONNECTION THEREWITH, AGAINST THE STATE OF TEXAS**

# TABLE OF CONTENTS

**Page**

I. This Court has jurisdiction to enforce its own Sale Order and Injunction.................................2

   A. Ancillary jurisdiction and bankruptcy jurisdiction exist.......................................................2

   B. Sovereign immunity does not protect Texas from enforcement. .........................................3

   C. The Anti-Injunction Act does not bar enforcement. ............................................................4

II. Abstention is unwarranted. ....................................................................................................6

   A. *Younger* abstention does not apply. ....................................................................................6

   B. *Burford* abstention does not apply. .....................................................................................8

   C. Bankruptcy abstention does not apply. .................................................................................9

III. Texas seeks successor liability in violation of the Sale Order and Injunction........................12

   A. Prior rulings barring punitive damages based on Old GM conduct apply equally to civil penalties. ....................................................................................................................12

   B. Texas improperly pursues claims and rights based on successor liability in violation of the Sale Order and Injunction.......................................................................15

IV. Texas has not satisfied any exceptions to the Sale Order and Injunction. ...............................16

   A. Texas does not assert "independent" rights or claims when seeking to penalize Movants based on alleged conduct of Old GM. ................................................................17

   B. Texas's other arguments are unpersuasive. .......................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Boeing Co.*,
  2005 WL 6011245 (N.D. Okla. Aug. 2, 2005) ....................................................... 18

*Cavanaugh v. Geballe*,
  28 F.4th 428 (2d Cir. 2022) ...................................................................................... 7

*CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*,
  396 B.R. 602 (S.D.N.Y. 2008) ................................................................................ 10

*Cent. Va. Cmty. Coll. v. Katz*,
  546 U.S. 356 (2006) .................................................................................................. 3

*Dep't of Agric. v. Kirtz*,
  601 U.S. 42 (2024) .................................................................................................... 3

*Falco v. Justs. of the Matrim. Parts of Sup. Ct. of Suffolk Cnty.*,
  805 F.3d 425 (2d Cir. 2015) ..................................................................................... 7

*Huffman v. Pursue, Ltd.*,
  420 U.S. 592 (1975) .................................................................................................. 7

*In re Adelphia Comms. Corp.*,
  293 B.R. 337 (Bankr. S.D.N.Y. 2003) ...................................................................... 5

*In re Celsius Network LLC*,
  658 B.R. 643 (Bankr. S.D.N.Y. 2024) ..................................................................... 10

*In re Gawker Media LLC*,
  581 B.R. 754 (Bankr. S.D.N.Y. 2017) ................................................................ 11, 12

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2017 WL 5195234 (S.D.N.Y. Nov. 9, 2017) ........................................................... 10

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2018 WL 2899642 (S.D.N.Y. June 11, 2018) .......................................................... 10

*In re Globo Comunicacoes e Participacoes S.A.*,
  317 B.R. 235 (S.D.N.Y. 2004) .................................................................................. 6

*In re Go W. Ent., Inc.*,
   387 B.R. 435 (Bankr. S.D.N.Y. 2008) ...................................................................... 7

*In re Green*,
  No. 1-18-41652-ESS, 2020 WL 3412679 (Bankr. E.D.N.Y. June 18, 2020)............ 6

*In re Grumman Olson Indus., Inc.*,
  445 B.R. 243 (Bankr. S.D.N.Y. 2011) ....................................................................... 3

*In re John Renton Young, Ltd.*,
  87 B.R. 635 (Bankr. D. Nev. 1988) ........................................................................... 5

*In re Lacher*,
  669 B.R. 548 (9th Cir. B.A.P. 2025) ......................................................................... 6

*In re Millenium Seacarriers, Inc.*,
  458 F.3d 92 (2d Cir. 2006) ...................................................................................... 10

*In re Motors Liquidation Co.*,
  2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013) ................................................. 15

*In re Motors Liquidation Co.*,
  2015 WL 11070293 (Bankr. S.D.N.Y. Dec. 4, 2015) ........................................... 4, 19

*In re Motors Liquidation Co.*,
  2021 WL 1085362 (Bankr. S.D.N.Y. Mar. 22, 2021) ................................................ 6

*In re Motors Liquidation Co.*,
  514 B.R. 377 (Bankr. S.D.N.Y. 2014) ....................................................................... 3

*In re Motors Liquidation Co.*,
  541 B.R. 104 (Bankr. S.D.N.Y. 2015) .................................................... 4, 10, 19, 20

*In re Motors Liquidation Co.*,
  549 B.R. 607 (Bankr. S.D.N.Y. 2016) ..................................................................... 13

*In re Motors Liquidation Co.*,
  571 B.R. 565 (Bankr. S.D.N.Y. 2017) ..................................................................... 14

*In re Motors Liquidation Co.*,
  585 B.R. 708 (Bankr. S.D.N.Y. 2018) ................................................................. 3, 17

*In re Motors Liquidation Co.*,
  943 F.3d 125 (2d Cir. 2019) ........................................................... 12, 13, 14, 16

*In re of Motors Liquidation Co.*,
  829 F.3d 135 (2d Cir. 2016) ................................................................... 2, 4, 9, 13

*In re Old Carco LLC*,
  593 B.R. 182 (Bankr. S.D.N.Y. 2018) ....................................................................... 6

*In re Old Carco LLC*,
  636 B.R. 347 (Bankr. S.D.N.Y. 2022) ..................................................................... 11

*In re Parker*,
499 F.3d 616 (6th Cir. 2007) ................................................................ 5

*In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*,
471 B.R. 331 (Bankr. S.D.N.Y. 2012) .................................................. 10

*In re Teligent, Inc.*,
417 B.R. 197 (Bankr. S.D.N.Y. 2009) .................................................... 5

*In re Texaco, Inc.*,
668 B.R. 1 (Bankr. S.D.N.Y. Feb 21, 2025) ...................................... 9, 11

*In re U.S.H. Corp. of N.Y.*,
280 B.R. 330 (Bankr. S.D.N.Y. 2002) .................................................... 5

*In re Williams*,
2020 WL 3412775 (Bankr. E.D.N.Y. Jun. 18, 2020) ............................. 7

*Local Loan Co. v. Hunt*,
292 U.S. 234 (1934) .............................................................................. 2

*McPherson v. Lamont*,
457 F. Supp. 3d 67 (D. Conn. 2020) ...................................................... 8

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
457 U.S. 423 (1982) .............................................................................. 7

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
491 U.S. 350 (1989) .............................................................................. 9

*Pa. Dep't of Pub. Welfare v. Davenport*,
495 U.S. 552 (1990) .............................................................................. 6

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) ............................................................................ 7, 8

*Travelers Indem. Co. v. Bailey*,
557 U.S. 137, 151 (2009) ................................................................. 2, 15

*Tribune Co. v. Abiola*,
66 F.3d 12 (2d Cir. 1995) ...................................................................... 9

*Trump v. Vance*,
591 U.S. 786 (2020) .............................................................................. 8

*Tull v. United States*,
481 U.S. 412 (1987) ............................................................................ 15

*United States (Internal Revenue Serv.) v. Ries*,
   765 F. Supp. 3d 564  (N.D. Tex. 2025) ...................................................................... 5

*Vasquez v. Rackauckas*,
   734 F.3d 1025 (9th Cir. 2013) ............................................................................... 8

*Winstar Holdings, LLC v. Blackstone Grp. L.P.*,
   2007 WL 4323003 (S.D.N.Y. Dec 10, 2007) ......................................................... 11

**Statutes**

11 U.S.C. § 101(27) ........................................................................................................ 3

11 U.S.C. § 101(5) ........................................................................................................ 16

11 U.S.C. § 105 ................................................................................................... 3, 4, 5, 7

11 U.S.C. § 106(a) ..................................................................................................... 3, 4

11 U.S.C. § 106(a)(1) ..................................................................................................... 3

11 U.S.C. § 106(a)(2) ..................................................................................................... 3

11 U.S.C. § 106(a)(3) ..................................................................................................... 3

11 U.S.C. § 106(b) ......................................................................................................... 4

11 U.S.C. § 362(b)(4) ................................................................................................... 14

11 U.S.C. § 363 ..................................................................................................... passim

11 U.S.C. § 523(a)(7) .............................................................................................. 14, 15

11 U.S.C. § 726(a) ....................................................................................................... 14

26 U.S.C. § 7421(a) ....................................................................................................... 5

28 U.S.C. § 1334(b) ....................................................................................................... 2

28 U.S.C. § 1334(c)(1) ................................................................................................. 10

28 U.S.C. § 1334(c)(2) ................................................................................................... 9

28 U.S.C. § 157(b)(1) ................................................................................................... 10

28 U.S.C. § 157(b)(2) ................................................................................................... 10

28 U.S.C. § 2283 ....................................................................................................... 4, 5

Tex. Bus. & Com. Code § 17.47(c) ........................................................................... 13

Tex. Bus. & Com. Code § 17.47(g) ........................................................................... 15

Tex. Civ. Prac. & Rem. Code § 41.011(a) ................................................................. 15

**Other Authorities**

17A Fed. Prac. & Proc. Juris. § 4224 (3d ed.) ............................................................ 5

H.R. Rep. No. 95-595,
    1st Sess. 316 (1977) ............................................................................................. 5

S. Rep. No. 95-989,
    95th Cong., 2d Sess. 29 (1978) ............................................................................ 5

Texas's Second Amended Petition blatantly violates this Court's Sale Order and Injunction by seeking to punish New GM for decades of alleged Old GM conduct.[1] In a defiant response,[2] Texas suggests that it can do so with impunity because it is immune from this Court's jurisdiction, that this Court lacks jurisdiction to enforce its own orders, and that this Court must abstain from doing so. There is no basis in law or fact for these positions. This Court plainly has jurisdiction to enforce its own order against Texas, a party bound thereby, and is in the best position to do so.

Abstention is especially unwarranted given recent developments in the Texas Lawsuit. Upon being informed of the Motion in this Court, the Texas Court took three actions deferring to this Court for the interpretation and enforcement of its own Sale Order and Injunction:

- First, on June 9, the Texas Court postponed its decision on Texas's motion to compel a deposition on topics including the bankruptcy and Old GM's pre-bankruptcy conduct by 60 days, expressly "to see what happens in the Bankruptcy action;"[3]
- Second, on June 23, the Texas Court entered an *agreed* order generally staying the Texas Lawsuit until August 8, 2025, again "to see what happens in the . . . Bankruptcy Court . . . with Defendants' Motion to Enforce;"[4] and
- Third, the Texas Court marked the Texas Lawsuit as "Inactive" and canceled the jury trial previously set for November 17, 2025.[5]

Texas's July 3 Response to the Motion fails to mention any of these important developments.

Texas cannot shield or justify its wrongful attempt to penalize Movants based on alleged Old GM conduct, some of which occurred decades before the bankruptcy petition, and thereby impose successor liability this Court has repeatedly enjoined. For the same reasons punitive damages are barred based on Old GM conduct, civil penalties based on Old GM conduct also are barred. Respectfully, the Motion should be granted.

---

[1] Capitalized terms not defined in this reply have the meanings assigned in the Motion (Dkt. 14826-1).

[2] Dkt. 14836 (the "**Response**").

[3] **Exhibit A**, *Order on the State's Motion to Compel Defendants' Witness to Attend Deposition*.

[4] **Exhibit B**, *Agreed Order Granting, In Part, Defendants' Motion to Abate or Stay*.

[5] **Exhibit C**, Texas Lawsuit Status and Docket, pp. 1 & 9.

I.     **This Court has jurisdiction to enforce its own Sale Order and Injunction.**

There is no merit to Texas's position that this Court somehow lacks jurisdiction to enforce the Sale Order and Injunction against it. Bankruptcy courts have jurisdiction to enforce their own orders. Neither the Eleventh Amendment nor the Anti-Injunction Act ("AIA") provides otherwise.

A.     **Ancillary jurisdiction and bankruptcy jurisdiction exist.**

First, the Court has ancillary jurisdiction to enforce its own orders. In *Travelers Indemnity Co. v. Bailey*, the Supreme Court held that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders." 557 U.S. 137, 151 (2009) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)). Such jurisdiction is "ancillary to [the] original case or proceeding in the same court," and exists "irrespective of whether the court would have jurisdiction if the [follow on] proceeding were an original one." *Local Loan*, 292 U.S. at 239. Thus, "[b]ankruptcy courts have jurisdiction to decide a motion seeking enforcement of a pre-existing injunction issued as part of the bankruptcy court's sale order." *In re Motors Liquidation Co.*, 829 F.3d 135, 153-54 (2d Cir. 2016) (cleaned up). Indeed, this Court expressly retained jurisdiction over that very issue. *See* Sale Order and Injunction, ¶ 71.

Second, the Court has original jurisdiction to enforce its own orders under 28 U.S.C. § 1334(b). Federal bankruptcy jurisdiction extends to "all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* As the Second Circuit held in this very litigation, "[a] bankruptcy court's decision to interpret and enforce a prior sale order falls under . . . 'arising in' jurisdiction." *Motors Liquidation*, 829 F.3d at 153. "Arising in" jurisdiction therefore exists over a proceeding, like this one, asking the Court to "interpret[] the 'free and clear' provision that barred successor liability claims—a provision that was integral to resolving Old GM's bankruptcy—and then determine[] whether to enforce that provision." *Id.* In fact, this Court previously rejected as "frivolous" an argument that it lacked jurisdiction to interpret and enforce

the Sale Order and Injunction. *In re Motors Liquidation Co.*, 514 B.R. 377, 379-80 (Bankr. S.D.N.Y. 2014), *see also id.* at 379 nn.4-9 (collecting similar precedent).

**B.      Sovereign immunity does not protect Texas from enforcement.**

Texas also is not immune from this Court's jurisdiction. Sovereign immunity is not implicated by a bankruptcy court's order that property be sold free-and-clear under § 363(f) because such orders are *in rem*.[6] Likewise, because the Motion is "merely ancillary to the Bankruptcy Court's exercise of its *in rem* jurisdiction," it does "not implicate state sovereign immunity." *See Cent. Va. Cmty. Coll.*, 546 U.S. at 371.

In any event, Congress has abrogated any such immunity. Under the Bankruptcy Code, sovereign immunity is "abrogated as to a governmental unit . . . with respect to' [59] enumerated provisions of the Code." *Dep't of Agric. v. Kirtz*, 601 U.S. 42, 49 (2024) (quoting 11 U.S.C. § 106(a)). A "[s]tate" is a "governmental unit." 11 U.S.C. § 101(27). Both § 363 and § 105, the key provisions authorizing this Court to enter the Sale Order and Injunction and enforce it today, are listed among the 59 enumerated provisions in 11 U.S.C. § 106(a)(1). Because the Motion asks this Court to "determine" an "issue[] arising with respect to the application of [§§ 363 and 105] to [Texas]"—whether the Sale Order and Injunction prohibits Texas from imposing liability on Movants for Old GM's conduct—it falls within the scope of § 106(a) abrogation.[7] *Id.* § 106(a)(2).

---

[6] "Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 369-70 (2006). Section 363(f) provides "*in rem* relief" because it "'cleanses the transferred assets of any attendant liabilities, and allows the buyer to acquire them without fear that an estate creditor can enforce its claim against those assets.'" *In re Motors Liquidation Co.*, 585 B.R. 708, 721 (Bankr. S.D.N.Y. 2018) (quoting *In re Grumman Olson Indus., Inc.*, 445 B.R. 243, 249 (Bankr. S.D.N.Y. 2011)).

[7] Texas concedes that "Congress may abrogate sovereign immunity provided that its intention to do so is unequivocally expressed in the statutory language and the legislation is enacted pursuant to a valid grant of constitutional authority." Response, p. 6 (quotations omitted). Section 106(a) of the Bankruptcy Code could not be clearer: sovereign immunity is abrogated with respect to §§ 105 and 363, and this Court may "issue against [Texas] an order, process, or judgment under such sections . . . ." *See* 11 U.S.C. § 106(a)(1), (3).

Consistent with the foregoing, both the December 2015 Judgment and the related November 2015 Decision construe and enforce the Sale Order and Injunction against states that violated it when acting as plaintiffs—including under consumer-protection statutes. *See In re Motors Liquidation Co*., 541 B.R. 104, 136-38 (Bankr. S.D.N.Y. 2015) ("New GM cannot be held to be monetarily liable to the States (any more than it can be held liable to other plaintiffs) for any violations (necessarily by Old GM) that took place before the 363 Sale."), *vacated and remanded on other grounds*, 590 B.R. 39 (S.D.N.Y. 2018); *In re Motors Liquidation Co*., 2015 WL 11070293, at *4 (Bankr. S.D.N.Y. Dec. 4, 2015) (staying complaints by California and Arizona pending amendments to bring them into compliance with Bankruptcy Court orders).

## C.      The Anti-Injunction Act does not bar enforcement.

Texas also contends that the AIA, 28 U.S.C. § 2283, leaves this Court without jurisdiction to enforce its own Order. This is wrong for multiple reasons.

First, Movants are not seeking a new injunction, but rather the enforcement of an existing one. *See Motors Liquidation*, 829 F.3d at 153-54 ("New GM was not seeking an injunction to stop plaintiffs from violating that prior injunction; New GM wanted the bankruptcy court to confirm that the Sale Order covered these plaintiffs. In other words, New GM did not seek a new injunction but, rather, sought to enforce an injunction already in place.").

Second, the AIA does not apply where an injunction is "expressly authorized by Act of Congress," and here, § 105 of the Bankruptcy Code—coupled with § 363—provide such express authorization.[8] Congress intended § 105 to operate as express authorization for purposes of the

---

Texas's attempt to distinguish § 106 abrogation by citing § 106(b) and arguing that a different department filed the proof of claim against Old GM fails because it is § 106(a), not § 106(b) (which governs compulsory counterclaims against a governmental unit that filed a proof of claim), that creates the relevant abrogation.

[8] 11 U.S.C. § 105 ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); 11 U.S.C. § 363 (authorizing free-and-clear sales of estate property).

AIA. *See* H.R. Rep. No. 95-595, 1st Sess. 316 (1977) ("This Section [105] is also an authorization, as required under 28 U.S.C. § 2283, for a court of the United States to stay the action of a state court."); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 29 (1978) (same); 17A Fed. Prac. & Proc. Juris. § 4224 (3d ed.) ("[I]t is clear that the 'expressly authorized' exception includes those injunctions authorized by the bankruptcy laws"). It is widely recognized that § 105 provides an "expressly authorized" exception to the AIA. *See, e.g.*, *In re Adelphia Comms. Corp.*, 293 B.R. 337, 352 (Bankr. S.D.N.Y. 2003) ("It is indeed clear . . . that under section 105(a), a bankruptcy court has the power to stay proceedings in other courts, including state courts.") (collecting cases); *In re U.S.H. Corp. of N.Y.,* 280 B.R. 330, 338 (Bankr. S.D.N.Y. 2002) ("Section 105(a) is an 'expressly authorized' exception to the Anti–Injunction Act."); *see also In re Parker*, 499 F.3d 616, 628 (6th Cir. 2007) ("Where the challenging party fails to obtain a stay of a sale authorized under § 363, the bankruptcy court must have a means of enjoining conduct in complete defiance of a consummated sale.").

Texas cites no case to the contrary. *United States (Internal Revenue Serv.) v. Ries*, 765 F. Supp. 3d 564, 571 (N.D. Tex. 2025), and *In re John Renton Young, Ltd.*, 87 B.R. 635, 637-38 (Bankr. D. Nev. 1988), involve a ***different*** Anti-Injunction Act found in the ***tax*** code: 26 U.S.C. § 7421(a). Critically, 26 U.S.C. § 7421(a) does not contain 28 U.S.C. § 2283's broad exception for injunctions expressly authorized by an Act of Congress, and is governed by different case law. As for *In re Teligent, Inc.*, it merely recognizes that "an exercise of section 105 power must be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective." 417 B.R. 197, 213 (Bankr. S.D.N.Y. 2009) (cleaned up). That principle is inapposite here, because Movants seek enforcement of an order entered under § 363, not § 105 alone.

## II.    Abstention is unwarranted.

This Court should reject Texas's request that it abstain from exercising its jurisdiction here, whether under principles of *Younger*, *Burford*, or bankruptcy abstention. This Court has a "virtually unflagging obligation" to exercise the jurisdiction given by Congress. *See In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 253 (S.D.N.Y. 2004). In doing so, it "plays a gatekeeper role, determining what claims and allegations should get through the gate, under the Sale Order[.]" *In re Motors Liquidation Co.*, 2021 WL 1085362, at *2 (Bankr. S.D.N.Y. Mar. 22, 2021) (quotations omitted); *In re Old Carco LLC*, 593 B.R. 182, 189 (Bankr. S.D.N.Y. 2018) ("[T]he Court's role is to serve as a gatekeeper to determine whether the claims asserted against [a buyer] are barred by a [s]ale [o]rder.").

### A.    *Younger* abstention does not apply.

*Younger* abstention plays a limited role in bankruptcy because it "does not apply to actions that Congress has expressly authorized, or where the injunction is necessary for the federal court to carry out its jurisdiction or enforce its own judgments." *In re Lacher*, 669 B.R. 548, 561 (9th Cir. B.A.P. 2025) (holding that "*Younger* abstention . . . does not apply when a debtor . . . seeks to enforce the discharge . . . against a state in federal court"). In other words, "the concerns animating *Younger* cannot justify rewriting the [Bankruptcy] Code to avoid federal intrusion" into state cases. *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 564 (1990), *superseded by statute on other grounds*, Pub. L. No. 101-581, 104 Stat. 2865.

Sections 363 and 105 of the Bankruptcy Code expressly authorize this Court to interpret and enforce the Sale Order and Injunction, and the Court retained jurisdiction to do so. Unsurprisingly, none of Texas's cited cases involves a bankruptcy court declining to interpret and enforce its own order under *Younger*. *See In re Green*, 2020 WL 3412679, at *29 (Bankr. E.D.N.Y. June 18, 2020) (declining to abstain under *Younger*); *In re Go W. Ent., Inc.*, 387 B.R. 435, 439-46

6

(Bankr. S.D.N.Y. 2008) (concluding that a state proceeding which revoked the debtor's liquor license pre-petition did not fall within § 362's automatic stay and refusing to restore the license under § 105).

Texas has the burden to support *Younger* abstention but cannot do so. *In re Williams*, 2020 WL 3412775, at *13 (Bankr. E.D.N.Y. Jun. 18, 2020). Following *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013), *Younger* extends only to "three 'exceptional' categories" of circumstances. They are: "(1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Falco v. Justs. of the Matrim. Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Sprint*, 571 U.S. at 78). This is not a criminal case, so the first category is inapplicable. As for the second, the Supreme Court's "decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects.'" *Sprint*, 571 U.S. at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). Texas does not argue that the DTPA is akin to a criminal prosecution. The third category fares no better: "the Supreme Court [has only] identified two types of orders that clearly fall within that category: civil contempt orders and orders requiring the posting of bonds pending appeal." *Cavanaugh v. Geballe*, 28 F.4th 428, 433 (2d Cir. 2022) (citing *Sprint*, 571 U.S. at 79). This proceeding will not interfere with any state **_judicial_** function, even if the Court enforces the Sale Order and Injunction by limiting what Texas may pursue **_as a plaintiff_**. Texas thus failed to support *Younger* abstention.

Even if Texas had met its burden under one of *Sprint's* three "exceptional" categories, the additional factors from *Middlesex*[9] independently show that *Younger* abstention is unwarranted

---

[9] *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

here. Those factors are "(1) whether there is 'an ongoing state judicial proceeding,' (2) whether that proceeding "implicates important state interests, and" (3) whether that proceeding "provides an adequate opportunity to raise federal challenges." *Sprint*, 571 U.S. at 81 (cleaned up).

There is no ongoing state proceeding parallel to the Motion. Movants did not remove the Texas Lawsuit, and the merits of Texas's DTPA claims are not before this Court. The requested relief would not constrain the ***Texas Court*** in any way; it would only affect Texas's ability ***as plaintiff*** to violate the Sale Order and Injunction. *See Vasquez v. Rackauckas*, 734 F.3d 1025, 1038 (9th Cir. 2013) (affirming decision not to abstain under *Younger* where granting relief would "not create a conflict with any decision by the state court [or] preemptively decide any question the state court may be called upon to address"); *McPherson v. Lamont*, 457 F. Supp. 3d 67, 84–85 (D. Conn. 2020) (same; explaining that "[a]bstention is not warranted simply because a pending state-court proceeding involves the same subject matter") (quoting *Sprint*, 571 U.S. at 72).[10]

Moreover, especially under the present circumstances, where the Texas Court immediately stayed events in the Texas Lawsuit upon learning of the Motion, *Younger*'s "core justification" of "preventing friction between States and the Federal Government[,]" *Trump v. Vance*, 591 U.S. 786, 792 (2020) (quotation omitted), does not apply.

**B.      *Burford* abstention does not apply.**

*Burford* abstention allows a federal court to abstain when: (1) "there are difficult questions of state law bearing on policy problems of substantial public import" or (2) "the exercise of federal review . . . would be disruptive of state efforts to establish a coherent policy." *New Orleans Pub.*

---

[10] Texas notes that Movants pled an affirmative defense in the Texas Court based on the Sale Order and Injunction. Response p. 13. Movants did so, two weeks *after* filing the Motion, because June 20, 2025 was the deadline for amended pleadings in the Texas Lawsuit. Movants were concerned Texas would argue that Movants had waived the protections of the Sale Order and Injunction as applied to the Texas Lawsuit if such a defense were not timely pled. <u>Movants have not litigated any bankruptcy issues in the Texas Court.</u>

*Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (quotation omitted). *Burford* offers

an "extraordinary and narrow exception[] to a federal court's duty to exercise jurisdiction."

*Tribune Co. v. Abiola*, 66 F.3d 12, 17 (2d Cir. 1995) (cleaned up).

*In re Texaco, Inc*. shows why *Burford* cannot apply here. 668 B.R. 1, 26 (Bankr. S.D.N.Y.

Feb 21, 2025). There, this Court rejected the state court plaintiffs' *Burford* argument, explaining

that it was "based on the incorrect premise that Reorganized Texaco [was] asking th[e] Court to

decide the merits of the Louisiana Lawsuits." *Id*. at 26. Instead, Reorganized Texaco simply asked

this Court "to interpret its own prior orders and decide the bankruptcy-law question of whether the

Louisiana Lawsuits are barred by the Plan's discharge provisions." *Id*. And, "[o]nce such a

determination [was] made, assuming the Louisiana Lawsuits [went] forward, the state courts

[would] decide those cases' controlling merits issues." *Id*. The Court therefore "decline[d] to

abstain on *Burford* abstention grounds." *Id*.

The same is true here. Movants do not ask this Court to decide the merits of the underlying

claims in the Texas Lawsuit or to "enjoin portions of the DTPA." *Contra* Response, p. 22. Instead,

like Reorganized Texaco, Movants merely ask this Court "to interpret [and enforce] its own prior

orders," *Texaco*, 668 B.R. at 26, by staying the Texas Lawsuit until Texas complies therewith.

There is no basis to conclude that such relief would "disrupt Texas's efforts to establish a coherent

policy with respect to how it imposes civil penalties on corporations who violate its consumer

protection laws[,]" as Texas suggests. Response, p. 22. Texas is free to pursue claims under the

DTPA in accord with Texas law, but it cannot do so in violation of bankruptcy court sale orders.

## C.    Bankruptcy abstention does not apply.

Mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply to a proceeding, like

this one, "arising under title 11 or arising in a case under title 11," *i.e.*, a core proceeding. *See id*.

A motion to enforce a sale order falls within the Court's "arising in jurisdiction." *Motors*

*Liquidation*, 829 F.3d at 153 (2d Cir. 2016);[11] *see also In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 95 (2d Cir. 2006) (similar). Numerous courts have confirmed that proceedings "arising in a case under title 11" are "core proceedings." *See, e.g., In re Celsius Network LLC*, 658 B.R. 643, 660 (Bankr. S.D.N.Y. 2024) ("core proceedings are matters 'arising under' the Bankruptcy Code or 'arising in' bankruptcy cases"). Texas's citations to the *Synott* and *Schmidt* cases are unpersuasive because those were personal injury cases removed to district court and found non-core because they did not require interpretation of the Sale Order and Injunction.[12] Movants did not remove the Texas Lawsuit, and the ***only*** issues before this Court are construction and enforcement of the Sale Order and Injunction. The Motion is core, so mandatory abstention fails.[13]

Permissive abstention under 28 U.S.C. § 1334(c)(1) is likewise unwarranted. "Courts must be sparing in their exercise of permissive abstention, and may abstain only for a few extraordinary and narrow exceptions." *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008) (internal citations and quotation marks omitted).

"[B]ankruptcy courts should enforce and construe their own orders, particularly when doing so can protect a free and clear purchaser from successor liability." *In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*, 471 B.R. 331, 337-38 (Bankr. S.D.N.Y. 2012) (declining

---

[11] Without acknowledging the Second Circuit's holding or citing any contrary cases, Texas argues that this Court was wrong in 2010 when it characterized enforcement of a sale order and injunction as core. Response p. 16. This Court was not wrong then, nor was it wrong when it cited "nearly a dozen" cases for the same proposition in 2014, *see Motors Liquidation*, 541 B.R. at 381 (also characterizing non-movants' jurisdictional challenge as "frivolous" at p. 379), and the Second Circuit was not wrong when it ruled in the same way in 2016.

[12] *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 5195234 (S.D.N.Y. Nov. 9, 2017); *In re Gen. Motors LLC Ignition Switch Litig.*, 2018 WL 2899642 (S.D.N.Y. June 11, 2018).

[13] Although Texas also notes that an enforcement proceeding is not one of the "core" proceedings enumerated by Congress in 28 U.S.C. § 157(b)(2), its textual analysis is deficient (in addition to being contrary to *Millennium Seacarriers*) because the list in § 157(b)(2) plainly is not exclusive. *See id.* ("Core proceedings include, but are not limited to . . . ."); *see also* 28 U.S.C. § 157(b)(1) (describing "core proceedings" as those "arising under title 11, or arising in a case under title 11"). Section 157(b)(2) merely provides ***examples*** of the core proceedings defined in § 157(b)(1).

permissive abstention and enforcing sale order, finding that bankruptcy issues predominated on the enforcement motion). Texas's arguments for permissive abstention continue its pattern of conflating the underlying DTPA claims with this Motion and erroneously acting as if Movants removed the entire Texas Lawsuit. Bankruptcy issues clearly predominate as to the Motion actually pending before this Court, which is all that matters. *See id.*; *see also Texaco*, 668 B.R. at 25 (in declining to abstain, noting that "this Court need not interpret the complex issues raised in the [state court], but rather must construe this Court's prior orders in Reorganized Texaco's bankruptcy case); *In re Old Carco LLC*, 636 B.R. 347, 359 (Bankr. S.D.N.Y. 2022) (interpreting a free and clear provision "is primarily a bankruptcy law issue"); *Winstar Holdings, LLC v. Blackstone Grp. L.P.*, 2007 WL 4323003, at *6 (S.D.N.Y. Dec 10, 2007) (denying abstention and recognizing that since the sale "was a central aspect and basic function of the bankruptcy proceedings" . . . "common sense dictates the conclusion that the Bankruptcy Court is the proper forum for resolving [the sale-related] disputes").

This Court faced a similar issue in *In re Gawker Media LLC*, and declined to abstain from enforcing its prior sale order. 581 B.R. 754, 757 (Bankr. S.D.N.Y. 2017). There, the Court was asked to rule on a § 363 buyer's motion to enforce a sale order against state court plaintiffs. *Id.* The Court rejected arguments that the Court lacked jurisdiction and should abstain from adjudicating the state court actions, and, in doing so, explained that they were "based on a misunderstanding of the issue before the Court" as "[t]he Court [was] not ruling on the sufficiency of the Plaintiffs' [state law] claims, but instead, whether the claims, as pleaded, [were] barred by the Sale Order." *Id.* at 759-61 (explaining further that "principles of permissive abstention do not require this Court in the exercise of its discretion to foist this burden on the state court").

This is precisely the situation here—especially with the Texas Court's own recent orders showing its intent to defer to this Court for an interpretation and enforcement of the Sale Order and Injunction. As in *Gawker*, "[t]his Court is in the best position to interpret its own orders, and its interpretation is entitled to substantial deference." *See id.* at 760-61.

## III.    Texas seeks successor liability in violation of the Sale Order and Injunction.

The Sale Order and Injunction specifically precludes plaintiffs from seeking to hold Movants liable on any successor liability theory. *See, e.g.*, Sale Order and Injunction, ¶ 7; *see also id.*, ¶¶ AA, 8-9, and 46-48. Movants do not challenge Texas's ability to bring DTPA claims based on post-sale conduct. But Texas seeks much more. *See* Second Am. Pet., ¶ 259 ("The jury ***must*** consider GM LLC ***and GM Corp's prior bad acts*** when determining the amount of civil penalties to impose.") (emphasis added). Therein lies the violation.

### A.    Prior rulings barring punitive damages based on Old GM conduct apply equally to civil penalties.

For the same reasons the Second Circuit and this Court have barred plaintiffs from relying on Old GM's conduct in support of punitive damages against New GM, Texas cannot rely on Old GM's conduct in support of civil penalties against New GM.

The Second Circuit held in 2019 that "the Sale Order's free and clear provision bars punitive damages claims under a theory of successor liability." *In re Motors Liquidation Co.*, 943 F.3d 125, 133 (2d Cir. 2019). That opinion addressed plaintiffs seeking punitive damages based on post-sale accidents involving automobiles manufactured by Old GM. *Id.* at 127-28. Like Texas, plaintiffs argued that "they had no pre-Sale relationship with Old GM," no detectible injury at the time of the sale, and therefore should not be barred from seeking punitive damages against New GM based on Old GM conduct. *Id.* at 133. The Second Circuit disagreed, explaining that:

> [A] punitive damages claim is not a tort claim; it does not compensate for a 'tortious' injury; and there is no 'detectible injury.' Moreover, any alleged

12

egregious act committed by Old GM that might justify punitive damages was over and done by the time of the Sale Order. Therefore, such claims are subject to the Sale Order's successor liability bar.

*Id*. The same holdings are equally true about civil penalties. Civil penalties do not compensate for a tortious injury and any Old GM conduct that Texas points to was "over and done" by the time the Sale Order and Injunction was entered. Texas, therefore, cannot use Old GM's conduct to penalize New GM just like other plaintiffs cannot use Old GM conduct to obtain punitive damages against New GM.

Texas's reliance on the Second Circuit's 2016 opinion in *Motors Liquidation*, 829 F.3d at 156, is misplaced. That opinion does not address punitive damages or civil penalties. And as Texas acknowledges on Response, p. 23, the 2016 opinion held that "[b]y definition, independent claims are claims based on New GM's own post-closing wrongful conduct." *Motors Liquidation*, 829 F.3d at 157. To acknowledge that an independent claim must be based solely on New GM's own post-closing conduct, but then argue that the ***amount*** of such claim is not subject to the same limitation, finds no support in the 2016 Second Circuit opinion or any other decision.[14]

Equally unavailing is Texas's protest, again based on the 2016 Second Circuit opinion, that it would be unreasonable to expect it to have filed a proof of claim against Old GM "alleging that it may use *past* conduct by the debtor when calculating civil penalties against the successor in interest for violations that the successor may commit in the *future*." Response, p. 26 (emphasis in original). The absence of a proof of claim is not the problem. The problem is that "New GM is *not* a successor in interest to Old GM; it is a completely separate legal entity from Old GM." *In re Motors Liquidation Co.*, 549 B.R. 607, 609 (Bankr. S.D.N.Y. 2016) (emphasis in original; cleaned

---

[14] Although Texas argues on Response, p. 25 that "[a] statutory violation of the DTPA is all that is required to prove liability" for civil penalties, that is not what the statute provides. Tex. Bus. & Com. Code § 17.47(c) provides that the factfinder "*may* award" a penalty of "not more than $10,000 per violation" (emphasis added). The civil penalty thus could be zero, even if the factfinder concludes a violation occurred.

up). Importantly, when the post-sale accident plaintiffs in the 2019 Second Circuit opinion attempted to rely on the 2016 opinion's discussion of the scope and effect of a free-and-clear sale, the Second Circuit held that such reasoning "has no bearing on punitive damages."[15]

In *In re Motors Liquidation Co*., 571 B.R. 565 (Bankr. S.D.N.Y. 2017), this Court gave three additional reasons why New GM cannot be held liable for punitive damages based on Old GM's conduct: (1) the Bankruptcy Code's priority scheme under 11 U.S.C. § 726(a)(3)-(4) requires unsecured creditors to be paid in full before punitive damages receive any distribution; (2) exposing buyers to punitive damages based on the conduct of the seller would "seriously chill a robust section 363 sale process;" and (3) punitive damages are for punishing the actual wrongdoer, which does not fit in a liquidating case "like this one." *See id*. at 575-77, 580.

All three reasons apply equally to civil penalties. The same subsections of the Bankruptcy Code's priority scheme that forbid payment on punitive damages unless unsecured creditors are paid in full—11 U.S.C. § 726(a)(3)-(4)—impose the exact same restrictions on payment of "any fine, penalty, or forfeiture." Exposing buyers to civil penalties based on conduct of the seller would have the same chilling effect as exposure to punitive damages. And, as with punitive damages, imposing civil penalties on a free-and-clear buyer in a liquidating chapter 11 case based on the seller's conduct does not fit.[16]

---

[15] *See* 943 F.3d at 133. The 2016 Second Circuit opinion held that a § 363 order may bar successor liability claims "if those claims flow from the debtor's ownership of the sold assets. Such a claim must arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim. Further, there must be some contact or relationship between the debtor and the claimant such that the claimant is identifiable." Although the 2019 Second Circuit opinion clarifies that these requirements do not apply to punitive damages, all elements are met here in any event: The past conduct pled by Texas involved rights to payment against Old GM which arose before the petition, and the claimants not only were identifiable—they had *already pursued remedies against Old GM*. *See* Second Am. Pet., ¶¶ 150-68, 174-221, 259-60 (referencing various such resolutions).

[16] Texas also cites 11 U.S.C. § 523(a)(7) for the proposition that civil penalties are nondischargeable and 11 U.S.C. § 362(b)(4) for the proposition that regulatory actions are exempted from the automatic stay. *See*

Ultimately, all of Texas's attempts to distinguish civil penalties from punitive damages fail

because, as the Supreme Court stated in *Tull v. United States* (a case relied on by Texas), "the

remedy of civil penalties is similar to the remedy of punitive damages." 481 U.S. 412, 422 n.7

(1987).[17] Texas thus is barred from seeking civil penalties based on Old GM's alleged conduct for

the same reasons it could not seek punitive damages based on such conduct.

**B.     Texas improperly pursues claims and rights based on successor liability in violation of the Sale Order and Injunction.**

Paragraph 8 of the Sale Order and Injunction makes clear that New GM cannot be liable

for Old GM's conduct—either through "rights" or "claims" based on successor liability:

> [A]ll persons and entities, including . . . *all* . . . *governmental* . . . *and regulatory authorities* . . . holding . . . rights or claims based on any successor or transferee liability . . . in any way relating to, the Sellers, the Purchased Assets, [or] the operation of the Purchased Assets prior to the Closing . . . *are forever barred, estopped, and permanently enjoined* . . . *from asserting against the Purchaser* . . . *rights or claims based on any successor* or transferee *liability*. [Emphasis added].

*See also In re Motors Liquidation Co.*, 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013)

("New GM is not liable for Old GM's conduct"). Texas therefore violates the Sale Order and

Injunction by seeking to assess penalties, or higher penalties, on Movants based on conduct of Old

GM in connection with the operation of the Purchased Assets prior to the Closing, because in doing

so it asserts a successor liability "right" and "claim" prohibited by the Sale Order and Injunction.[18]

The Sale Agreement also broadly defines "Claims" as "all *rights*, claims . . . *assessments*,

[or] *rights of recovery* . . . *of any kind or nature*, whether known or unknown . . . *and all rights*

---

Response, pp. 29-30. But Texas overlooks that § 523(a)(7) applies only if the debtor is an individual (obviously not the case here), and the Motion has nothing to do with automatic-stay violations.

[17] The factors Texas law considers for DTPA civil penalties also are similar to those it considers for punitive damages. *Compare* Tex. Bus. & Com. Code § 17.47(g) *with* Tex. Civ. Prac. & Rem. Code § 41.011(a).

[18] Res judicata prevents Texas, which attended the sale hearing, from collaterally attacking the breadth of the language used in the Sale Order and Injunction. *See Travelers*, 557 U.S. at 152.

*and remedies with respect thereto*." Sale Agreement, p. 4. Unless specifically assumed by New

GM, Old GM contractually retained all Liabilities (including for Claims). *See id.* §§ 2.3(a)-(b).[19]

Contractually, the relevant question then is not limited to whether New GM assumed liability for

successor-liability "claim[s]" as defined in 11 U.S.C. § 101(5), but also whether Texas can assert

"rights," "assessments," "rights of recovery" or "rights and remedies" based on successor liability

against New GM. *See* Sale Agreement, p. 4. The answer to both parts is **_no_**. Texas's attempt to

impose or increase civil penalties against New GM based on Old GM conduct is an attempt to (a)

base civil penalties (*i.e.*, a claim) on successor liability, and (b) fix rights of recovery and remedies

based on successor liability. Both are impermissible attempts to hold New GM liable as a successor

for Claims and Liabilities of Old GM.

Finally, Texas's allegations about Old GM not only arose from pre-petition rights to

payment, but had also been adjudicated, penalized, and/or settled between Old GM and the actual

underlying claimants prior to bankruptcy. These efforts to pursue a "right to payment" resulting

from pre-petition conduct therefore remain "claim[s]" under the Bankruptcy Code even when

improperly recycled as a purported basis for civil penalties. *See* n.15, *supra*; 11 U.S.C. § 101(5).[20]

## IV. Texas has not satisfied any exceptions to the Sale Order and Injunction.

More than fifteen years after the 363 Sale, Texas seeks to defy the Sale Order and

Injunction by arguing that "[m]ovants were not born innocent," accusing Movants of "taking over

[Old GM]'s assets, production, and name (*meet New GM, same as the Old GM*)," and suggesting

that a jury should be allowed to use "information about Old GM . . . for calculating the amount to

---

[19] GM LLC did not contractually assume Liabilities for civil penalties based on conduct of Old GM. *Id.*;
*see also Motors Liquidation*, 943 F.3d at 132 ("New GM did not contractually assume claims for punitive
damages based on Old GM's conduct.").

[20] The Response's focus on the discharge of debts is misplaced, because Old GM filed a liquidating plan.
*See* Response, pp. 22, 29. Movants seek to enforce a Sale Order and Injunction, not a discharge.

award [against Movants] for each violation of the DTPA." *See* Response, pp. 30, 33 (emphasis in original), 34. None of Texas's excuses justifes its violations of the Sale Order and Injunction.

###### A.    Texas does not assert "independent" rights or claims when seeking to penalize Movants based on alleged conduct of Old GM.

Texas first tries to analogize its case to *In re Motors Liquidation Co*., 585 B.R. 708 (Bankr. S.D.N.Y. 2018) ("*Moore*"). But *Moore* does not help Texas. *Moore* barred plaintiffs from complaining about groundwater contamination from road salt that migrated from Old GM's property *before* the § 363 sale, while allowing plaintiffs to complain about contamination that migrated from GM LLC's property *after* the § 363 sale and about GM LLC's own alleged dumping of road salt. *Id*. at 715-16. GM LLC "assumed liability for its own violations of environmental laws occurring after the closing," and is bound to comply with environmental responsibilities going forward. *Id*. at 718, 726. So, it is unsurprising that allegations that GM LLC "continued contaminating the groundwater" were found "not problematic, as they are claims independent of Old GM and that could support [GM LLC's] independent liability, regardless of Old GM's actions before the 363 Sale." *See id*. Importantly, however, this Court ordered the *Moore* plaintiffs to "remove their claim for exemplary damages based on conduct of Old GM." *Id*. at 715, 727.

Texas has not limited its claims to those which "could support New GM's independent liability, regardless of Old GM's actions before the 363 Sale" as the Court allowed in *Moore*. Instead, Texas has pled dozens of paragraphs about alleged antitrust and anti-consumer conduct from the 1940s and 50s, surveilling Ralph Nader in the 1960s, vehicle fires from the 1970s-90s, the "bailout" and bankruptcy, and other pre-sale alleged conduct which obviously *could not* support independent liability for Movants today. *See, e.g*., Second Am. Pet., ¶¶ 150-68, 174-221, 259-60. For each category of pre-sale conduct, Texas demands that the jury consider Old GM's conduct and penalize Movants based thereon. Second Am. Pet., ¶¶ 150, 160, 174-75, 259-60, 264.

This violates the Sale Order and Injunction by attempting to impose successor liability, and the closest analogue in *Moore* is the punitive damages claims against GM LLC based on conduct of Old GM—which this Court ordered the *Moore* plaintiffs to remove. *See* 585 B.R. at 716, 727.

### B.    Texas's other arguments are unpersuasive.

Texas next suggests that it merely wants to use Old GM's conduct, judgments, and settlements as a *comparator* to show the amount of penalty it takes to deter future violations by a "major automobile manufacturer." *See* Response, p. 31. None of Texas's cases supports its argument—they deal with sales, royalty, and fee comparables used in damages and valuation analyses, often by expert witnesses. Although Texas pleads that it might have relied on other manufacturers' conduct and penalties, such as Stellantis and BMW, as "comparators," it has not done so; nor has Texas cited any case holding that this would be permissible (under Texas law or otherwise). *Cf. Anderson v. Boeing Co.*, 2005 WL 6011245, at *2 (N.D. Okla. Aug. 2, 2005) ("[S]ince a defendant's own dissimilar acts cannot serve as the basis of a punitive damages award, there is no justification for admitting the matters in Mr. Partin's report . . . related to penalties assessed against *other* companies.") (emphasis in original).

Texas's allegations also go far beyond the *size* of previous payments: It has loaded its Second Amended Petition with decades of allegations about Old GM's conduct untethered to the alleged violations asserted in its lawsuit—often with inflammatory pictures and captions such as "illustrative of what could happen to consumers trapped in a GM inferno." *See* Second Am. Pet., ¶ 187. This is a transparent effort to enrage a jury based on Old GM's alleged conduct and punish Movants for it (*i.e.*, impose successor liability). The Court should not let Texas launder its forbidden successor-liability theories by disingenuously characterizing conduct by the § 363 seller as just a "comparator" for seeking civil penalties against a free-and-clear buyer.

Contrary to the arguments on Response, pp. 32-33, the December 2015 Judgment also does not authorize Texas to seek higher civil penalties against New GM based on conduct of Old GM through an imputation theory. *See In re Motors Liquidation Co.*, 2015 WL 11070293, at *2 (holding that "punitive damages may not be premised on Old GM knowledge or conduct, or anything else that took place at Old GM"); *see also id.* at *1 ("[k]nowledge of Old GM personnel may not be imputed to New GM based on any type of successorship theory"). Although the December 2015 Judgment allowed imputation of knowledge from Old GM to New GM based on overlapping employees, communications between employees, or transferred books and records in the context of "Independent Claims," it defined "Independent Claims" as those "based solely on New GM's own independent post-Closing acts or conduct." *Id.* at *1 n.3. By pleading dozens of paragraphs about pre-Closing alleged conduct by Old GM, complete with pictures of Ralph Nader and burning vehicles built in the 1980s, Texas belies any argument that its claims are based solely on independent conduct by Movants. The imputation exception for "Independent Claims" on which Texas relies is inapplicable.[21]

If vague allegations about imputed knowledge were sufficient to allow litigants to seek penalties against a § 363 buyer for conduct by the seller, there would be no such thing as a free and clear sale.[22] For good reason, this Court previously held that "imputation must ultimately be

---

[21] Even where the December 2015 Judgment allowed "claim[s] for punitive damages with respect to a post-Sale accident involving vehicles manufactured by Old GM with the Ignition Switch Defect" it did so "to the extent—but only to the extent—it relates to an ***otherwise viable Independent Claim*** and is ***based solely on New GM conduct or knowledge***," imputed or otherwise. 2015 WL 11070293, at *2 (emphasis added). This cannot be stretched so far as to authorize Texas to seek a higher penalty against Movants for OnStar data issues from 2011-24 based on a vehicle fire in the 1980s or dealings with Ralph Nader in the 1960s.

[22] This Court previously criticized as "push[ing] the envelope way too far" plaintiffs who "plead[] paragraph after paragraph of Old GM acts as 'background'; assert[] that New GM was not 'born without sin'; and mak[e] other allegations of similar character." *Motors Liquidation*, 541 B.R. at 108. Texas does all of this and more. *See* Second Am. Pet., ¶¶ 150-68, 174-221, 259-60; *see also* Response, p. 34 ("Movants were not born innocent"). When Arizona levied the exact same "not born innocent" accusation in 2015, this Court rightfully barred it as "impermissible." 541 B.R. at 137 n.94.

found in the context of the imputation of identified individuals or identified documents, for particular purposes." *See Motors Liquidation*, 541 B.R. at 115. Texas offers no such thing; only vague, conclusory allegations following nearly 100 paragraphs of allegations about conduct by Old GM that has no connection to the alleged violations at issue in the Second Amended Complaint.[23] *See* Second Am. Pet. ¶¶ 261-63. Likewise, Texas's attempt to sanitize voluminous paragraphs complaining about Old GM with a few non-specific references to knowledge by Movants in Second Am. Pet. ¶¶ 261-63 is substantially identical to Arizona's attempt—previously rejected by this Court—to sanitize 40 paragraphs of allegations about Old GM's conduct with a non-specific reference to knowledge by GM LLC. *See Motors Liquidation*, 541 B.R. at 137 n.95. This Court also already rejected the argument, repeated by Texas on Response, p. 33, that buyers from a 363 sale owe duties in connection with the Debtors' disclosure schedules.[24]

Ultimately, Texas is wrong to allege that "Justice Requires the Jury Considering Old GM's History." *See* Response, pp. 34-35. As this Court held almost ten years ago: "New GM *was* born innocent, and the focus must be instead on its own knowledge and acts after it was born." *Motors Liquidation*, 541 B.R. at 137 n.94 (emphasis in original; vacated in part and remanded on other grounds). Accordingly, this Court, as gatekeeper, should bar Texas from proceeding with the Texas Lawsuit until it corrects its violations of the Sale Order and Injunction, enter an order in substantially the form attached as **Exhibit "H"** to the Motion, and grant Movants such other and further relief as is just and proper.

---

[23] This is not a situation—like the ignition switch matter—where an Old GM employee allegedly had knowledge of certain conduct, became an employee of GM LLC, and then when a claim was asserted based on that conduct, the employee's knowledge could be imputed to GM LLC regardless of whether it was acquired at Old GM or GM LLC. Texas simply wants to argue that Old GM committed bad acts for 100 years—and then impute those bad acts to Movants. This brazenly seeks successor liability, and it is barred.
[24] *See* 541 B.R. at 136.

Dated:  July 18, 2025

Respectfully submitted,

/s/ Scott Davidson
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:(212) 556-2100
Facsimile: (212) 556-2222
sdavidson@kslaw.com

*Attorneys for General Motors LLC
and OnStar, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Reply Supporting General Motors LLC and OnStar, LLC's Motion to Enforce the Sale Order and Injunction, and the Rulings in Connection Therewith, Against the State of Texas* ("Reply") has been served by electronic notification through ECF by the United States Bankruptcy Court, Southern District of New York, on July 18, 2025, to all counsel of record.

I further certify that a true and correct copy of the Reply has been served by e-mail transmission on the following on July 18, 2025:

> sahrish.soleja@oag.texas.gov
> layla.milligan@oag.texas.gov
> johnathan.stone@oag.texas.gov

/s/ Scott Davidson
Scott Davidson